Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>Defendants. | CASE NO. 5:18-cv-7182 EJD<br><br>**Date: March 19, 2020**<br>**Time: 9:00 a.m.**<br><br>**DECLARATION OF JOHN MARK SUHY IN SUPPORT OF DEFENDANTS PURETHINK LLC, AND IGOV INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO STRIKE FIRST AMENDED COMPLAINT** |

I, John Mark Suhy hereby declare as follows:

1. I am a defendant in this action.

2. I signed on behalf of PureThink LLC, the Neo4j Solution Partner Agreement between PureThink LLC and and Neo Technology, Inc., effective on September 30, 2014. Neo Technology, Inc. changed its name to NEO4J, Inc. This is the "Partner Agreement" referenced in the First Amended Complaint.

Attached as Exhibit A is a true and correct copy of the Neo4j Solution Partner Agreement between Purethink LLC and NEO4J, Inc.

I declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Executed on November 12th, 2019 in the Commonwealth of Virginia, County Of Fairfax

*/s/ John Mark Suhy*
John Mark Suhy

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: November 13, 2019

           */s/ Adron G. Beene*
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY

**EXHIBIT A**

# NEO4J SOLUTION PARTNER AGREEMENT

| Partner: | PureThink LLC | Neo Representative: | Erik Nolten; erik.nolten@neotechnology.com Phone: +31 652 721 808 |
|---|---|---|---|
| Address: | 4202 Adrienne Dr | Address: | Neo Technology, Inc. 111 East 5th Avenue San Mateo, CA 94401 |
| Contact Name: | John Mark Suhy Jr | Phone: | 1-855-636-4532 |
| Contact Phone: | 703-348-3968 x 101 | Web: | www.neotechnology.com |
| Contact Email: | jmsuhy@purethink.com | E-mail: | accounting@neotechnology.com |
| | | | |
| Support contact 1 | | Support contact 2 | |
| Name: | John Mark Suhy | Name: | Nikhil Budhiraja |
| Email: | jmsuhy@purethink.com | Email: | nikhil@purethink.com |
| Mobile: | 703-348-3968 x 101 | Mobile: | 703-348-3968 x 109 |
| | | | |
| Payment Information | Wire payment information: Silicon Valley Bank 3003 Tasman Drive Santa Clara, CA 95054, USA | Routing and Transit #:  121140399 SWIFT code: SVBKUS6S Credit Account #: 330072 6656 | |
| Neo4j Solution Partner Program Fee: | | | |
| Agreement Period | 1 Year | Annual fees: | USD 1,995.00 |
| Special condition: Fee is payable with the first Product order/referral. | | | |
| Territory.  Subject to the terms and conditions of this Agreement, Partner may sell the Products in the following "Territory" (check all that apply). Applicable territories: ___X__North America; _____ Central and South America; _____Europe; _____Middle Eastern; _____Africa; _____Japan; _____ India; ____ Australia and New Zealand; _____Asia Pacific excluding Australia, New Zealand, Japan and India; _____ (Other). | | | |

By signing below, "Partner" shall be entitled to the benefits set forth on Exhibit A and Partner acknowledges and agrees to the terms and conditions of the Partner Terms attached hereto as Exhibit B effective as of ____09-30-2014_____ ("Effective Date"), by and between Neo Technology, Inc. ("Neo Technology"), a corporation having its principal place of business at 111 East Fifth Ave., First Floor, San Mateo, CA 94401 ("Neo Technology") and the "Partner" below.

| Partner: | | Neo Technology, Inc. | |
|---|---|---|---|
| Name: | PureThink LLC | Name: | LARS NORDWALL |
| Title: | CTO / Director | Title: | COO |
| Date: | 09-30-2014 | Date: | 10/6/2014 |
| Signature: | *[signature]* | Signature: | *[DocuSigned by: LARS NORDWALL — 5E9692354E8643E...]* |

NEO TECHNOLOGY INC. CONFIDENTIAL

EXHIBIT A

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0
Case 5:18-cv-07182-EJD   Document 49-1   Filed 11/13/19   Page 5 of 8

neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

**Exhibit A**
Benefits

In consideration for Partner's pre-payment of applicable fees and ongoing compliance with all of the other terms and conditions of this Agreement, and any Exhibits hereto, Neo Technology agrees to offer Partner the non-exclusive benefits described below.

| NEO4J SOLUTION PARTNER BENEFIT & QUALIFICATION TABLE | |
|---|---|
| Revenue sharing on sold subscriptions based on price list | 25% or as otherwise mutually agreed in an order form |
| Referral fee on sold new subscription | optional |
| Internal use of Neo4j for training and demo purposes | ✓ |
| Press release support for customer case studies | ✓ |
| Invitation to Neo events (fees may apply) | ✓ |
| Neo4j Partner Logo Usage | ✓ |
| Invitation to Product Roadmap Discussions | ✓ |
| Strategic Account Support | ✓ |
| Listing on Partner Page | ✓ |
| Access to training and certification program subject to execution of Authorized Training Partner Addendum | |
| Partner Portal Access | ✓ |
| Access to Neo4j Support | ✓ |
| Training discount | 20% |
| **Qualification and Partner Guidelines** | |
| Proven ability to commit and deliver on consulting engagements with high success rate | ✓ |
| Complete and submit Neo Partner Agreement | ✓ |
| 2 or more Certified Neo Consultants | ✓ |
| Joint Business & Marketing Plan for Territory | ✓ |
| Generate Case study(s) for joint customer | ✓ |
| Two Annual new customer acquisition target | ✓ |
| Organize Neo4j events | ✓ |

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0
Case 5:18-cv-07182-EJD   Document 49-1   Filed 11/13/19   Page 6 of 8

neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

### Exhibit B
### Partner Terms

1. **PARTNER PROGRAM AND ORDERS.** In exchange for the payment of applicable fees, Partner will be entitled to the benefits of the Partner Program for described on Exhibit A. Partner may submit orders for Products to Neo Technology from time to time. All orders must be consistent with the terms of this Agreement and are subject to Neo Technology's acceptance or rejection. If accepted, Partner shall execute the Neo Technology Order Form and shall: (i) shall cause the applicable End User to execute Neo Technology's Acknowledgement Form as Neo Technology provides to Partner from time to time or (ii) Partner hereby agrees to be responsible and jointly and severally liable for all of the End User/Licensee obligations found at http://www.neotechnology.com/terms/enduser-partner-us/ with respect to (a) the State of Maryland as the End User/Licensee under such terms and (b) with respect to any other governmental entity that Neo Technology approves of in a mutually agreed upon Neo Technology Order Form. All licenses to use the Products will be between Neo Technology and the applicable End User. Partner will inform Neo Technology of the status of each Product order renewal in writing at least thirty (30) days before the expiration date of each End User's subscription license period. In the event Partner fails to notify Neo Technology within the thirty (30) day period described above, Neo Technology may, in its sole discretion, renew the Product subscription directly with the End User.

2. **PAYMENTS AND FEES.**

    2.1 **Partner Program Fees.** During the term of this Agreement, Partner will pay to Neo Technology the annual Partner Program fees as specified on the front page of this Agreement. The first year's annual Program fees are due on the Effective Date of this Agreement. Thereafter, the annual Program fees for renewal years will be invoiced at the then current annual Partner Program fees and such renewal Partner Program fees will be invoiced annually in advance on each anniversary of the Effective Date of this Agreement.

    2.2 **Product Orders and Fees.** Fees for orders for subscriptions to the Products, including for renewals subject to Section 1, will be at the discounted prices set forth in Exhibit A and will be invoiced in advance after Neo Technology's Acknowledgement Form is executed by Partner and the End User or as otherwise set forth in Section 1. Partner shall not enable any End User to download, install or use the Products unless and until the End User has duly executed Neo Technology's Acknowledgement Form or as otherwise set forth in Section 1. Neo Technology shall have the right to modify the discounted prices set forth in Exhibit A at any time. Neo Technology will provide the renewal amount to Partner for each End User renewal within a reasonable period of time after Partner informs Neo Technology of the status of each Product order renewal as set forth in Section 1 above.

    2.3 **Taxes/Duties.** All fees and charges payable by Partner under this Agreement are exclusive of any (a) duties or (b) present or future sales, use, value added, excise, or other governmental or similar taxes applicable to this Agreement. Neo Technology will separately itemize any applicable taxes and duties of which it is aware on each invoice, unless Partner furnishes Neo Technology with a properly executed tax exemption certificate certifying that it does not owe such taxes and duties. Partner will be responsible for paying any applicable taxes and duties currently or hereafter assessed by a government agency, other than taxes based on Neo Technology's net income. If all or any part of any payment owed to Neo Technology under this Agreement is withheld, based upon a claim that such withholding is required pursuant to the tax laws of any country or its political subdivisions and/or any tax treaty between the U.S. and any such country, such payment shall be increased by the amount necessary to result in a net payment to Neo Technology of the amounts otherwise payable under this Agreement.

    2.4 **Payment.** Unless otherwise indicated in addendums to this Agreement, payments of all invoices: (a) will be paid within thirty (30) days of the date of the invoice; and (b) will be made in EUROS or U.S. dollars as set forth on the front page of this Agreement or as Neo Technology otherwise specifies without right of set off or chargeback. All fees are non-refundable. All amounts not paid when due are subject to a late fee of the lesser of one percent (1%) per month or the maximum amount allowable by law.

    2.5 **Notification of Changes.** Neo Technology will provide Partner with sixty (60) days written notice of any changes in the Partner program benefits set forth on Exhibit A.

    2.6 **Audit Rights.** Partner will, during this Agreement and for a period of one (1) year after termination, maintain records relating to its performance under this Agreement. Partner agrees that Neo Technology, upon at least ten (10) days prior written notice during business hours may at its own cost and expense directly or through an agent inspect such accounts, records and other information as may be required to verify Partner's compliance with this Agreement. The cost of the audit will be borne by Neo Technology unless the audit reveals an underpayment by Partner to Neo Technology, in which case Partner will immediately pay the amount of the underpayment and will pay for the cost of the audit.

3. **CONFIDENTIALITY.** Each party acknowledges that it acquires only the right to use the other party's Confidential Information under the terms and conditions of this Agreement and does not acquire any rights of ownership or title in the other party's Confidential Information. Each party will hold in confidence any Confidential Information received by it from the other and will protect the confidentiality of such with the same degree of care that it exercises with respect to its own information of like import, but in no event less than reasonable care, for a period of five (5) years from receipt. Each party will only disclose Confidential Information to its employees, agents, representatives and authorized contractors (collectively "Representatives") having a need to know for the purposes of this Agreement. Each party will notify and inform such Representatives of each party's limitations, duties, and obligations regarding use, access to, and nondisclosure of Confidential Information and will obtain or have obtained its Representatives' agreements to comply with such limitations, duties, and obligations with regard to such Confidential Information no less restrictive than those contained herein. Each party is liable for all acts and omissions of the Representatives related to the other party's Confidential Information. Each party agrees to give notice to the other party immediately after learning of or having reason to suspect a breach of any of the proprietary restrictions set forth in this Section. In the event that a party is required to disclose Confidential Information pursuant to any applicable statute, regulation or order of a court of competent jurisdiction, that party will use commercially reasonable efforts to notify the other party of the required disclosure.

4. **LICENSES AND OWNERSHIP.**

    4.1 **Licenses.** Neo Technology hereby grants to Partner a non-exclusive, non-transferable limited license during the term of this Agreement to: (i) use the Products solely to demonstrate the Products to potential customers in connection with its performance under this Agreement; (ii) provided that Partner has executed an Authorized Training Partner Addendum, use the Products to provide training and Level 1 and Level 2 Support to End Users that have licensed the Products from Neo Technology, with all such Support as described on Exhibit C; (iii) use the Neo Technology trademarks solely to market and promote the Products in accordance with the terms of this Agreement; and (iv) market and resell licenses to the Products (in object code only) to End Users, for use by End Users for their internal business purposes and subject to the End Users' agreement to Neo Technology's Acknowledgement Form and license agreement or as otherwise set forth in Section 1. Partner will use Neo Technology trademarks only in accordance with Neo Technology's then-current trademark usage guidelines. Any use by Partner of Neo Technology trademarks will inure to the benefit of Neo Technology  Neo Technology will provide Partner with Level 3 Support as described on Exhibit C.

    4.2 **Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to its pre-existing technology, and all associated Intellectual Property Rights, and that this Agreement does not affect such ownership. Each party acknowledges that it acquires no rights under this Agreement to the other party's pre-existing technology other than the limited rights specifically granted in this Agreement. Neo Technology will own all right, title, and interest in and to all Products and derivative works of the Products and all associated Intellectual Property Rights. If Partner acquires any rights, including any Intellectual Property Rights, in the Products or derivative works thereof, Partner hereby assigns and agrees to assign to Neo Technology all such rights.

    4.3 **Modifications to Pre-Existing Technology.** Each party acknowledges and agrees that, as between the parties, each party is and will remain the sole and exclusive owner of all right, title, and interest in and to any modifications and/or derivative works to its pre-existing technology regardless of who created such modifications and/or derivative works, and all associated Intellectual Property Rights. Each party acknowledges that it acquires no rights under this Agreement to the modifications and/or derivative works of the other party's pre-existing technology other than the limited rights specifically granted in this Agreement.

    4.3 **Restrictions.**

    4.3.1 During the term of this Agreement, Partner may not use or run on any of Partner's hardware, or have deployed for internal use, any Neo Technology Community Edition Products for commercial or production use.  In no event shall Partner reverse engineer, distribute or otherwise use the Products for its own internal use.  There are no implied rights.  Partner will not fork or bifurcate the source code for any Neo Technology Community Edition Products into a separately maintained source code repository so that development done on the original code requires manual work to be transferred to the forked software or so that the forked software starts to have features not present in the original software.

    4.3.2 During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

    4.3.3 During the term of this Agreement, Partner will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with Partner's obligations, or the scope of services to be rendered for Neo Technology, under this Agreement.  Partner warrants that, to the best of Partner's knowledge, there is no other existing contract or duty on Partner's part that conflicts with or is inconsistent with this Agreement.  Partner agrees to indemnify and hold harmless Neo Technology from any and all losses and liabilities incurred or suffered by Neo Technology by reason of the alleged breach by Partner of any services agreement between Partner and any third party.

    4.3.4 Partner shall conduct and perform its obligations under this Agreement in a manner that reflects favorably on Neo Technology at all times.  Partner shall not make any representations or warranties regarding Neo Technology or the Products.  Partner agrees to indemnify, defend and hold harmless Neo Technology from any and all claims arising from any representations or warranties made by Partner regarding Neo Technology and/or Product(s) and/or Neo Technology Services. Partner may not approach any End Users who purchased Products directly from Neo Technology for the purpose of renewing or upgrading the End User's subscription to the Products through Partner.

5. **DISCLAIMER.** NEO TECHNOLOGY MAKES NO WARRANTIES REGARDING THE PRODUCTS OR ANY INFORMATION PROVIDED BY NEO TECHNOLOGY HEREUNDER, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE.

6. **LIMITATION OF LIABILITY.** NEO TECHNOLOGY WILL NOT BE LIABLE FOR ANY INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGE IN CONNECTION WITH OR ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING LOSS OF BUSINESS, REVENUE, PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER IT ARISES, WHETHER FOR BREACH OR IN TORT (INCLUDING NEGLIGENCE), EVEN IF NEO TECHNOLOGY HAS BEEN PREVIOUSLY ADVISED OF THE

NEO TECHNOLOGY INC. CONFIDENTIAL

# EXHIBIT A

# NEO4J SOLUTION PARTNER AGREEMENT

POSSIBILITY OF SUCH DAMAGE. NEO TECHNOLOGY'S AGGREGATE CUMULATIVE LIABILITY FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OR IN TORT, WILL BE LIMITED TO THE AMOUNT PAID BY PARTNER TO NEO TECHNOLOGY UNDER THIS AGREEMENT IN THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE ACT OR OMISSION FIRST GIVING RISE TO THE CLAIM.    LIABILITY FOR DAMAGES WILL BE LIMITED AND EXCLUDED, EVEN IF ANY EXCLUSIVE REMEDY PROVIDED FOR IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE.

**7.** **TERM AND TERMINATION.**

**7.1** **Term.** This Agreement will commence on the Effective Date, and remain in effect for a period of one (1) year.  Thereafter, this Agreement will automatically renew at additional one (1) year periods unless either party provides at least sixty (60) days prior written notice to the other party of its intent not to renew.

**7.2** **Termination.** This Agreement may be terminated by a party for cause immediately if (a) the other ceases to do business, or otherwise terminates its business operations; or (b) the other materially breaches any material provision of this Agreement and fails to cure such breach within thirty (30) days of written notice describing the breach. In addition, Neo Technology may terminate this Agreement at any time by providing Partner with ninety (90) days prior written notice.  This Agreement may be terminated as set forth on Exhibit C.

**7.3** **Effect of Termination.** Upon termination of this Agreement by either party (a) all rights and licenses of Partner hereunder will terminate  and Partner shall cease all communications with End Users regarding the Products; and (b) each party will immediately return to the other party all Confidential Information in its possession, custody or control in whichever form held (including all copies or embodiments of the Confidential Information) and will cease using any trademarks, service marks and other designations of the other party; and (c) Partner shall pay to Neo Technology all outstanding fees. To remove all doubt, except as set forth in this Agreement, it is hereby clarified that Partner will not be entitled to any additional remuneration, or reimbursement of any expenses based on the expiration or termination of this Agreement.  An addendum to this Agreement may specify additional effects of termination of this Agreement.  After any termination of this Agreement, Neo Technology shall not be restricted in any manner from licensing or contracting with End Users.

**7.4** **Survival.** In addition to any provisions set forth on an addendum to this Agreement that expressly survive termination or expiration of this Agreement, any definitions any payment obligations that accrued prior to the effective termination or expiration date and Sections 2.6, 3, 4.2, 4.3.2 (as set forth therein), 4.3.4, 5, 6, 7, 8, 10 and 11 will survive the expiration or termination of this Agreement.

**8.** **INDEMNITY.** Partner will indemnify, defend and hold harmless Neo Technology from and against any and all third party claims, suits, actions, demands and proceedings against Neo Technology and all losses, costs and liabilities related thereto arising out of or related to any negligence by Partner or any other act or omission of Partner, including without limitation any breach of this Agreement by Partner.

**9.** **MARKETING**

**9.1** **Marketing.** Provided that Partner complies with all of the obligations herein, Neo Technology will include the Partner company logo and profile on the Neo Technology website.  Partner will include the Neo Technology company logo on Partner website in accordance with the Neo Technology trademark usage guidelines.  Each party may issue a press release announcing that Partner is a Partner as the other party approves in writing.  Each party will provide a quote from an executive to support the other party's press release.  All marketing activities are subject to approval by both Partner and Neo Technology.

**9.2** **Surveys.** Neo Technology may issues surveys to Partner once per quarter in an effort to improve customer satisfaction.  Partner will provide responses within ten (10) business days of receipt of each survey.

**10.** **GENERAL TERMS.**

**10.1** **Force Majeure.** A party is not liable under this Agreement for non-performance caused by events or conditions beyond that party's control if the party makes reasonable efforts to perform.

**10.2** **Relationship of Parties.** This Agreement is not intended to create a relationship such as a partnership, franchise, joint venture, agency, or employment relationship.  Neither party may act in a manner which expresses or implies a relationship other than that of independent contractor, nor bind the other party.

**10.3** **Notices.** All written notices required by this Agreement must be delivered to the addresses specified above, either in person or by a means evidenced by a delivery receipt.  All notices will be effective upon receipt.

**10.4** **Assignment.** Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement, without the prior written consent of the other party; provided, however, either party may assign this Agreement without the other party's consent to a parent or subsidiary of such party or in the case of a merger or sale of all or substantially all of its assets or stock.

**10.5** **Waiver or Delay.** Any express waiver or failure to exercise promptly any right under this Agreement will not create a continuing waiver or any expectation of non-enforcement.

**10.6** **Provisions Found Invalid.** If any term or provision of this Agreement is found to be invalid under any applicable statute or rule of law then, that provision notwithstanding, this Agreement will remain in full force and effect and such provision will be deemed omitted; provided, however, in lieu of such omitted provision there will be added to this Agreement a valid provision which is as nearly identical to the omitted provision as possible.

**10.7** **Construction.** This Agreement has been negotiated by the parties, each of which has been represented by counsel.  This Agreement will be fairly interpreted in accordance with its terms, without any strict construction in favor of or against either party.

**10.8** **Governing Law.** Any action related to this Agreement will be governed by the laws of California without regard for its choice of law provisions.  The United Nations Convention on Contracts for the International Sale of Goods will not apply.

**10.9** **Venue.** Except as set forth below, the courts seated in San Mateo, California, will have sole and exclusive jurisdiction for all purposes in connection with any action or proceeding that arises from, or relates to, this Agreement, and each party hereby irrevocably waives any objection to such exclusive jurisdiction.  Notwithstanding anything in this Agreement to the contrary, Neo Technology may seek injunctive or other equitable relief in any court of competent jurisdiction to protect any actual or threatened misappropriation or infringement of its intellectual property rights or those of its licensors, and Partner hereby submits to the exclusive jurisdiction of such courts and waives any objection thereto on the basis of improper venue, inconvenience of the forum or any other grounds.

**10.10** **Export.** Partner will not export the Products in violation of the export laws of the United States or of any other country.

**10.11** **Non-solicitation.** During the term of this Agreement and for a period of one (1) year thereafter Partner will not directly or indirectly, either alone or in association with others, (a) solicit, or permit any of its affiliates to solicit, any employee of Neo Technology or its affiliates to leave the employ of Neo Technology or any of its affiliates, or (b) solicit for employment, hire, or engage as an independent contractor, or permit any of its affiliates to solicit for employment, hire, or engage as an independent contractor, any person who was employed by Neo Technology or its affiliates; provided, that this clause (b) will not apply to any individual whose employment with Neo Technology or any of its affiliates has been terminated for a period of six (6) months or longer and provided further that this Section 10.11 will not prohibit general advertisement of employment opportunities not specifically targeting any employee(s) of Neo Technology or its affiliates.

**10.13** **Other.** This Agreement and attached Exhibit(s) is the entire agreement between the parties.  This Agreement supersedes and cancels any prior documents or agreements, whether written or oral, regarding the subject matter addressed in this Agreement and attached Exhibit(s).  If any terms on Partner's orders conflict with the terms of this Agreement, the conflicting terms of this Agreement shall control. Any preprinted terms on Partner's purchase order or similar ordering or other document are hereby rejected.

**11.** **DEFINITIONS.**

"Confidential Information" means information which has value because it is not generally known and which the disclosing party uses reasonable means to protect and includes without limitation any information designated as confidential or proprietary by either party to this Agreement upon disclosure.  Confidential Information may include proprietary information of third parties who have granted licenses to or have contractual relationships with the disclosing party.  Confidential Information excludes information that receiving party can clearly establish by written evidence: (a) was in the possession of, or was known by, receiving party prior to its receipt from disclosing party; (b) is or becomes generally known to the public without violation of this Agreement; (c) is obtained by receiving party from a third party not under any obligation of confidentiality; or (d) is independently developed by receiving party without use of Confidential Information.  Furthermore, disclosure of Confidential Information will not be prohibited if disclosure is required by law, regulation or order of a court of competent jurisdiction.

"End User" means an end customer that may use the Products for their own internal use and not for resale or distribution.

"Intellectual Property Rights" means all intellectual property rights worldwide arising under statutory or common law or by contract and whether or not perfected, now existing or hereafter filed, issued, or acquired, including all: (a) patent rights; (b) rights associated with works of authorship including copyrights and mask work rights; (c) rights relating to the protection of trade secrets and confidential information; (d) trademarks, service marks, trade dress and trade names; and (e) any right analogous to those set forth in this Agreement and any other proprietary rights relating to intangible property.

"Neo Technology Community Edition Product" means an open source version of a Neo Technology software product.

"Products" means the Neo4J commercial software provided by Neo Technology and licensed to the End User.

"Support" refers generally to the provision of support as described in Exhibit C of this Agreement.

# EXHIBIT A

DocuSign Envelope ID: 41331AB3-36EE-4B2C-BB85-AC039E73A2D0
Case 5:18-cv-07182-EJD   Document 49-1   Filed 11/13/19   Page 8 of 8

neotechnology graphs are everywhere

# NEO4J SOLUTION PARTNER AGREEMENT

**Exhibit C**
Support

**1. Introduction**. This Support Summary is an attachment to the Partner Agreement between Neo Technology and the applicable Partner and is automatically deemed part of, and governed by, the Partner Agreement. Unless otherwise defined in this Support Summary, any capitalized term used in this Support Summary will have the meaning given it in the Partner Agreement.

**2. Partner's Support Obligations**. Partner will provide First and Second Line Support to End User(s) for the Products. This First and Second Line Support shall be provided in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms, and be provided in the time zone and local language of End User(s) unless agreed otherwise with End User(s) and Neo Technology. Additionally, Partner commits to agreeing with End User(s) on the manner in which Partner will provide First and Second Line Support, including the minimum response time(s). Partner will provide for any First and Second Line Support request by End User(s), and will provide Neo Technology with a summary of each such agreement.

**3. Deficiencies**. In the event an End User is dissatisfied with Partner's Support, or Neo Technology otherwise reasonably believes that Partner is not providing such Support in accordance with accepted industry standards, then Neo Technology will notify Partner in writing and both parties will work together in good faith to resolve the deficiencies. If within thirty (30) days, Neo Technology does not believe, in its sole discretion, that such deficiencies have been resolved, Neo Technology may require that Partner cease the provision of Support and allow Neo Technology, or a nominated representative of Neo Technology, to provide such Support directly to the applicable End User(s). In such event, Partner agrees to provide reasonable cooperation in the transition of Support to Neo Technology, or the nominated representative of Neo Technology, and, if Partner was paid in advance for future Support, Partner will pay Neo Technology agreed-to amounts for the period of Support to be provided by Neo Technology or its nominated representative.

**4. Partner Certification**. Partner must meet any certification requirements specified by Neo Technology from time to time in writing, including, without limitation, the requirement to have on Partner's staff at least two (2) Neo Technology certified engineers within six (6) months of the Effective Date. Neo Technology will offer, and Partner may order, training programs in accordance with Neo Technology's then-current program rates or as agreed by the parties in writing. In addition, Partner will comply with any additional certification and training requirements established by Neo Technology from time to time, within ninety (90) days notice from Neo Technology. Support certification is based on a combination of performance-based tests and attended training days that measure competency on Products.

**5. Neo Technology's Support Obligations**. For the purposes of Support, Neo Technology will consider Partner as a customer and provide Partner with Second Line Support in accordance with Neo Technology's standard Support Terms, available at http://neotechnology.com/support-terms. Partner will meet all obligations of a customer described in the Support Terms. Partner agrees to contact Neo Technology for Second Line Support only when, after reasonable commercial efforts, Partner has identified an issue related specifically to Product and is unable to determine a resolution. If any terms of the Support Terms at http://neotechnology.com/support-terms conflict with any terms of this Exhibit C, the conflicting terms of this Exhibit C shall control.

**6. Cooperation**. Partner will cooperate with and provide assistance to Neo Technology as Neo Technology may reasonably request in connection with Neo Technology's Support obligations, including, without limitation, the following:

*6.1. Test Code*. Partner will use its best efforts to provide Neo Technology functioning test code that reproduces and isolates the issue in Product. Such test code must be reproducible using systems and tooling available to Neo Technology. In addition, Partner will remove extraneous comments and code from the test code provided and to the extent possible, such code will be fully self-contained, automated and will demonstrate the precise issue reported rather than other possible problems. If Partner cannot provide test code that reproduces the issue, Partner acknowledges that Neo Technology may be unable to provide a resolution to the issue. In such cases, Neo Technology will work with Partner to assist in the development of a test case.

*6.2. Access*. Partner will use its best efforts to provide Neo Technology with access (via remote telecommunications and, if applicable, on-site access at the End User's or Partners premises) to the extent reasonably necessary to allow Neo Technology to provide Support. If Partner cannot provide remote access, Neo Technology may be unable to provide a resolution to the issue.

*6.3. Assistance*. Partner will provide Neo Technology with a continually-available engineer who will promptly assist Neo Technology with data gathering, testing, and applying all fixes to the applicable environment for Severity Level 1 and Severity Level 2 issues.

**7. Data**. In connection with any activities provided hereunder, Partner will only share or otherwise disclose data to Neo Technology for which Partner has obtained the rights, and express consent of the data subject, to disclose to Neo Technology.

**8. Reporting**. Partner will provide Neo Technology with a monthly report detailing the status of all Severity Level 1 and Severity Level 2 Support cases, as defined in the Support Terms, provided to each End User, including all information reasonably requested by Neo Technology. Such reports will be provided on the first Friday of every month and cover the previous month's activities. Partner acknowledges that Neo Technology may change the reporting obligations described in this Section, and Partner will comply with any new reporting obligations within thirty (30) days of Neo Technology's request. The Support report will provide the following:

- Case number (provided by Partner to End User)
- Partner ID (provided by Neo Technology)
- End user name and contact details
- Status (e.g. new, open, hold, solved, closed)
- Severity Level, based on the categories defined in Neo Technology's standard Support Terms.
- Initial response time; opened and closed date
- Responsible support representative
- Product
- Issue description and type, and root cause description

**9. Exclusions**. Neo Technology will not be obliged to provide Support to Partner for any issue arising out of any of the following events:

- A failure of hardware, equipment or programs not provided by Neo Technology
- Support for any versions of the Product that are not obtained by Partner via the Neo Technology Customer Support Portal
- Use in a Production Environment of versions of the Product not marked as 'Generally Available'
- Support for any version of the Product in production more than two years from the date of its general availability
- Any cause or causes beyond the reasonable control of Neo Technology (e.g. floods, fires, loss of electricity or other utilities)
- Partner's or End User's failure to comply with operating instructions contained in the Product documentation
- Any modification, enhancement or customization of the Product by anyone other than Neo Technology
- APIs, interfaces, web services or data formats other than those included with the Product

**10. Other Terms**. Neo Technology may modify its processes and requirements from time to time upon reasonable written notice to Partner; provided that any such changes will apply only prospectively.

**11. Termination**. Neo Technology reserves the right, at any time, to withdraw the availability of Support for a Product with twelve (12) months prior written notice.

EXHIBIT A