1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  Cary Chien, Bar No. 274078
   cchien@hopkinscarley.com
4  HOPKINS & CARLEY
   A Law Corporation
5  The Letitia Building
   70 South First Street
6  San Jose, CA  95113-2406

7  *mailing address:*
   P.O. Box 1469
8  San Jose, CA 95109-1469
   Telephone:     (408) 286-9800
9  Facsimile:     (408) 998-4790

10 Attorneys for Plaintiffs and Counter-Defendants
   NEO4J, INC. and NEO4J SWEDEN AB

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14 NEO4J, INC., a Delaware corporation,        CASE NO.  5:18-cv-07182-EJD
   NEO4J SWEDEN AB, a Swedish
15 corporation,                                **PLAINTIFF NEO4J, INC.'S REPLY IN
                                               SUPPORT OF MOTION FOR
16               Plaintiffs,                    JUDGEMENT ON THE PLEADINGS**

17        v.                                   **[Fed. R. Civ. P. 12(c)]**

18 PURETHINK LLC, a Delaware limited           Date:      May 7, 2020
   liability company, IGOV INC., a Virginia    Time:      9:00 a.m.
19 corporation, and JOHN MARK SUHY, an         Dept.:     Courtroom 4, 5th Floor
   individual,                                 Judge:     Hon. Edward J. Davila
20
                 Defendants.
21

22 AND RELATED COUNTERCLAIMS.                  **JURY TRIAL DEMANDED**

23

24

25

26

27

28

I.    **INTRODUCTION**

Defendants and Counterclaimants John Mark Suhy, PureThink LLC and iGov Inc. (collectively "Defendants") concede that their counterclaims and affirmative defense seeking the cancellation of the NEO4J® mark pursuant to 15 U.S.C. §1119 fails to establish a legally plausible claim. *See* Dkt. No. 63 at 2:26-28. As such, the Court should enter an order dismissing those counterclaims and defense with prejudice.

With respect to their equally unmeritorious trademark abandonment counterclaims and affirmative defenses, Defendants argue that their non-specific allegations of "confusion" and an alleged failure to "exercise adequate quality controls" over certain NEO4J® native graph database software amounts to naked licensing. However, the sparse allegations across three defensive pleadings do not come close to meeting the plausibility standard articulated by the Supreme Court in *Twombly* and *Iqbal.*

In particular, Defendants fail to reconcile that their abandonment theory based on unspecified "confusion" over the use the NEO4J® mark as both a company and product name is not legally sufficient to establish abandonment. Their argument that confusion results from the shared use the NEO4J® mark by Neo4j USA and Neo4j Sweden AB ("Neo4j Sweden") in their company names, along with software owned by Neo4j Sweden is equally untenable. Defendants ignore that the Lanham Act expressly contemplates "related companies" using the NEOJ4® mark without affecting the mark's validity, and in particular, the Ninth Circuit has found that a subsidiary's authorized use of a mark owned by its parent corporation does not amount to abandonment. It is also presumed that the parent who owns the mark exercises sufficient control over the nature and quality of goods sold under the mark by the subsidiary unless there is evidence to the contrary. Since Defendants do not allege any material facts establishing Neo4j USA's lack of control over Neo4j Sweden and that ***the public*** has been deceived by the parent-subsidiary relationship between Neo4j USA and Neo4j Sweden and their joint use of the NEO4J® mark, Defendants' abandonment defense fails as a matter of law.

Likewise, Defendants' insistence that they can maintain a legally viable naked licensing theory based on NEO4J® native graph database software being licensed on an open source basis

1    via the GNU General Public License ("GPL") and the GNU Affero General Public License

2    ("AGPL") is unavailing.  Because these licenses require licensees who wish to copy, distribute, or

3    modify the software to provide notice of any modifications they make to the software to

4    differentiate it from unaltered versions offered by Neo4j USA and Neo4j Sweden, the licenses

5    establish Neo4j USA's efforts to control the use of the NEO4J® mark.  The use of the GPL and

6    AGPL and their underlying terms also directly contradict Defendants' allegations that there is no

7    agreement in place that allows Neo4j USA to control the quality of NEO4J® native graph

8    database software.  Since Defendants cannot identify any material facts that purport to establish

9    abandonment beyond this discredited open source licensing theory, Defendants clearly cannot

10   maintain a plausible abandonment counterclaim or defense based on the naked licensing doctrine.

11          Lastly, the deficiencies in Defendants' abandonment counterclaims and affirmative

12   defense are legal in nature or are otherwise undermined by the open source licenses they rely

13   upon.  As a result, they cannot be cured via amendments.  Defendants appear to recognize the

14   futility of seeking leave to amend as they did not bother to request it in their opposition.

15   Defendants also do not identify any additional facts that would establish a viable theory of

16   trademark abandonment via naked licensing or otherwise.  Accordingly, the Court should grant

17   Neo4j USA's motion for judgment on the pleadings and dismiss Defendants' two counterclaims

18   and affirmative defenses that allege that Neo4j USA abandoned the NEO4J® mark.

19   **II.    LEGAL ARGUMENT**

20           **A.    Defendants Admit They Never Had a Plausible Legal and Evidentiary Basis
             to Assert Counterclaims and Affirmative Defense Seeking Cancellation of the
21           NEO4J® Mark Based on Any Alleged Fraud on the USPTO.**

22          Defendants concede that John Mark Suhy's first counterclaim (Dkt. No. 48 at ¶¶ 4-7),

23   PureThink and iGov's eleventh counterclaim (Dkt. No. 55 at ¶¶ 88-92) and Defendants' seventh

24   affirmative defense (Dkt. No. 54 at 18:20-19:3) fail to establish a legally plausible claim the

25   cancellation of the NEO4J® mark pursuant to 15 U.S.C. §1119.  *See* Dkt. No. 63 at 2:26-28.

26   However, they attempt to justify asserting what were clearly frivolous counterclaims by engaging

27   in further conjecture that Neo4j USA might have been seeking to create an earlier use date "to

28   ward off prior users."  Dkt. No. 63 at 3:14-21.  Neo4j USA takes exception to this suggestion –

1    especially since Defendants admit they had no legal or factual basis to accuse Neo4j USA of

2    fraud on the USPTO in the first place.  Accordingly, the Court should ignore Defendants'

3    additional tripe and dismiss their fraud-based counterclaims and defense with prejudice.

4    **B.**    **Defendants' Naked Licensing Counterclaims and Affirmative Defense Fail to Allege Sufficient Facts Establishing a Legally Viable Theory of Trademark Abandonment**

5

6    Defendants engage in a rambling attempt to explain how Suhy's second counterclaim

7    (Dkt. No. 48 at ¶¶ 9-10), PureThink and iGov's tenth counterclaim (Dkt. No. 55 at ¶¶ 85-86) and

8    Defendants' ninth affirmative defense (Dkt. No. 54 at 19:12-25) allege a plausible theory of

9    trademark abandonment.  As discussed below, their effort simply highlights the legal and factual

10   deficiencies of their abandonment counterclaim/defense.

11   **1.**    **Defendants' Allegations that the Use of the NEO4J® Mark as Both Company and Product Names Does Not Amount to a Legally Viable Theory of Trademark Abandonment**

12

13   Defendants argue that Neo4j USA misconstrues their "confusion" allegations supporting

14   their abandonment counterclaim/defense as applying to only them rather than the general public.

15   Dkt. No. 63 at 4:18-21 5:3.  Defendants then argue that this "confusion is caused by two

16   companies using the same name on two software products licensed in entirely different manners."

17   *Id*. at 4:21-23. These are ***arguments***, not ***facts*** alleged in support of their abandonment

18   counterclaims and defense.  *See, e.g.,* Dkt. No. 55 at 24:10-12 "[[Defendants] claim there is

19   confusion whether Neo4j is a company name trademark or product name trademark"); *see also*

20   Dkt. No. 48 at 3:10-12; Dkt. No. 54 at 19:13-21.  Thus, they are irrelevant for purposes of

21   considering whether Defendants have alleged sufficient facts establishing abandonment of a

22   trademark as defined by 15 U.S.C § 1127.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194,

23   1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court ***may***

24   ***not*** look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

25   opposition to a defendant's motion to dismiss.") (emphasis in original).

26   Next, relying on the second definition of abandonment under 15 U.S.C § 1127,

27   Defendants conclude that because Neo4j Sweden uses the NEO4J® mark "in its name and calls

28   / / /

its free open source product," it causes unspecified confusion amounting to abandonment.[1] Dkt. No. 63 at 4:4-5. Rather than cite to any factual allegations in the pleadings and applicable legal authority to support this novel theory, Defendants insist that Neo4j USA "is free to present evidence to dispute the fact that mixing its trademark up between two companies with different licensing practice and different software quality controls should lead to abandonment." *Id.* at 5:20-21. Again, Defendants are impermissibly asking the Court to consider attorney argument rather than what is actually alleged in the challenged pleadings in ruling on this motion. *See Schneider,* 151 F.3d at 1197 n. 1. Indeed, there are **no facts** alleged therein concerning Neo4j USA and Neo4j Sweden engaging in different licensing practices or software quality controls.

Even if any of the foregoing were actually set forth in the challenged pleadings and taken as true, they are still do not establish abandonment under the Lanham Act. As detailed in Neo4j USA's moving papers, the use of the NEO4J® mark as both a product name and a trade name constitutes a legitimate and protected use of that mark.[2] *See* Dkt. No. 60 at 13:3-12. Likewise, the Lanham Act expressly recognizes that a registered mark "may be used legitimately by related companies, such use shall inure to the benefit of the registrant … and such use shall not affect the validity of such mark or of its registration…." 15 U.S.C. § 1055; *see also* 15 U.S.C. § 1127 ("The term 'related company' means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used.").

Notably, Defendants do not allege in their pleadings that Neo4j Sweden's use of the NEO4J® mark in its company name and software is unlicensed or is otherwise not authorized by Neo4j USA. Likewise, they do not set forth any ***facts*** establishing that there has been any

---

[1] Defendants do not address, and thus concede the correctness of Neo4j USA's argument that their two theories of abandonment fail to meet the first definition of abandonment under 15 U.S.C. § 1127, which requires discontinuation of use with an intent not to resume such use. *Compare* Dkt. No. 60 at 12:15-25, 13:21-5 *and* Dkt. No. 63 at 4:23-5:3.

[2] Defendants do not address the legal authority cited in Neo4j USA's moving papers that the use of the NEO4J® mark as both a company name and a product name is permissible, and does not establish any alleged abandonment of that mark.

1   *consumer confusion* resulting from the NEO4J® mark being used by Neo4j USA and Neo4j

2   Sweden or in conjunction with different versions of their software products.  This is because it is

3   generally known that Neo4j Sweden is a subsidiary of Neo4j USA.  *See* Declaration of Jeffrey M.

4   Ratinoff in support of Neo4j, Inc.'s Reply Brief ("Ratinoff Reply Decl."), Exh. A; Request for

5   Judicial Notice in support of Neo4j, Inc.'s Reply Brief ("Reply RJN"), ¶ 1; *see also* Dkt. No. 50

6   at 2:15-16 ("Neo4j Sweden …. is a wholly owned subsidiary of Neo4j USA.").

7          Defendants are careful to avoid this inconvenient fact because the inherent ability of a

8   parent corporation to control the affairs of a subsidiary corporation is generally "sufficient to

9   presume that the parent is adequately exercising control over the nature and quality of goods and

10   services sold by the subsidiary under a mark owned by the parent…."  *Noble House Home*

11   *Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413, 1421, 2016 WL 3357265

12   (T.T.A.B. 2016); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 299, 108 S. Ct. 1811, 100

13   L. Ed. 2d 313 (1988) (observing that "the parent corporation—not the subsidiary whose every

14   decision it controls—better fits the bill as the true owner of any [trademark] property that the

15   subsidiary nominally possesses.").  Indeed, a subsidiary's authorized use of a trademark owned

16   by its parent corporation does not normally amount to abandonment.  *See Hokto Kinoko Co. v.*

17   *Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013) (finding that license of a mark from a

18   Japanese parent to its wholly owned United States subsidiary was not a naked license even though

19   the license contained no formal quality control provisions); *see also Sterling Drug Inc. v. Lincoln*

20   *Laboratories, Inc.*, 322 F.2d 968 (7th Cir. 1963) (where products were manufactured by

21   trademark owner and sold and distributed by its wholly owned marketing subsidiary under the

22   latter's name, enforcement of trademark was not precluded on ground of lack of product quality

23   control by trademark owner over its licensee); *Letica Corp. v. Sweetheart Cup Co.*, 805 F.Supp.

24   482, 487 (E.D. Mich. 1992) (recognizing that under 15 U.S.C. § 1055, "if two companies are

25   related, use by one company of the other's trade dress rights does not constitute abandonment").

26          In sum, Defendants' allegations that "there is confusion whether Neo4j is a company

27   name trademark or product name trademark," and more specifically, that Neo4j Sweden uses

28   "Neo4j as part of the company and call the open source software product Neo4j too" are

1    insufficient to establish a legally sufficient abandonment counterclaim/defense (via naked

2    licensing or otherwise) under the Lanham Act.  *See* Dkt. No. 55 at 24:10-18, Dkt. No. 54 at

3    19:13-21, Dkt. No. 48 at 3:10-18.  Accordingly, Defendants' abandonment counterclaims and

4    defense based on their confusion theory fails as a matter of law.

5              **2.    Defendants Cannot Establish Naked Licensing Based on Certain
                       NEO4J® Native Graph Database Software Being Licensed Under the**

6              **GPL and AGPLv3**

7              Defendants cite to their allegation, "[a]s the [NEO4J® mark] is used and licensed as open

8    source software there is no ability to maintain quality control over the software product called

9    Neo4j as any licensees may modify combine the software with other code and distributed or

10   convey Neo4j without required quality control by Neo4j USA," as the sole basis to justify their

11   naked licensing theory of abandonment.  *See* Dkt. No. 63 at 6:14-18.  Defendants do not contest

12   Neo4j USA's assertion in its moving papers that the GPL and AGPL are licenses governing the

13   open source distribution of certain NEO4J® native graph database software and form the basis

14   for their naked licensing counterclaim/defense.  *See* Dkt. No. 60 at 13:21-14:13.  Instead,

15   Defendants argue that the GPL and AGPL establish that Neo4j USA does not control the

16   NEO4J® mark under those agreements because Neo4j Sweden is the actual licensor of that

17   software.  Dkt. No. 63 at 6:19-7:3.  They further argue that the GPL and AGPL amount to a naked

18   license because they have no trademark quality control provisions and "anyone can use, modify,

19   support, combine and convey the Neo4j software."  *Id.* at 7:14-17.

20             Defendants' position is meritless since they ignore the parent-subsidiary relationship of

21   Neo4j USA and Neo4j Sweden.  Their failure to conduct a meaningful analysis of the GPL and

22   AGPL is also telling because a review of their terms make clear that Defendant's claim that

23   Neo4j USA (and Neo4j Sweden as its subsidiary) lack control over the quality over the software

24   is untenable.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a court

25   need not accept as true allegations contradicted by judicially noticeable facts, or by exhibits

26   attached to or incorporated in the pleading when ruling on a motion to dismiss).

27             Under the Section 5(a) of the referenced GPL, a licensee may "convey a work based on

28   the Program, or the modifications to produce it from the Program, in the form of source code

under the terms of section 4, provided that… [t]he work must carry prominent notices stating that [the licensee] modified it, and giving a relevant date."  Reply RJN, ¶ 2; Ratinoff Reply Decl., Exh. B.[3]  Section 5(a) of the referenced AGPL similarly provides that a licensee "may convey a work based on the Program, or the modifications to produce it from the Program, in the form of source code under the terms of section 4, provided that… [t]he work must carry prominent notices stating that the licensee modified it, and giving a relevant date."  Dkt. No. 55, Exhibit A.

The foregoing provisions refute Defendants' claim that "there is no ability to maintain quality control over the software product called Neo4j as any licensees may modify combine the software with other code and distributed or convey Neo4j without required quality control by [Neo4j USA]."  *See* Dkt. No. 55 at 24:18-23.  These provisions expressly require licensees to identify any and all modifications they make to the software to ensure that such modifications (and any related quality issues associated therewith) are ***not attributed*** to any goodwill associated with the NEO4J® mark.[4]  This is more than legally sufficient to ensure that the public will not be deceived as to the source of modified versions based on the underlying code of NEO4J® native graph database software released under the GPL and AGPL, and thus negate Defendants naked licensing counterclaim/defense as a matter of law – especially since there are ***no other facts alleged in their pleadings*** establishing a lack of quality control.  *See Barcamerica*, 289 F.3d at 596 (recognizing that "[t]he lack of an express contract right to inspect and supervise a licensee's

---

[3] Neo4j USA respectfully requests that the Court consider the entire contents of the GPL under the doctrine of incorporation by reference, or in the alternative take judicial notice thereof.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US 308, 322, 127 S.Ct. 2499 (2007); *accord Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019).  Defendants also do not contest the authenticity of the GPL, which is publicly available via the Free Software Foundation's website, and concede in their opposition that it one of the underlying open source licenses supporting their naked licensing counterclaims/defense.  Thus, the Court may also consider it in determining the legal viability of their naked licensing counterclaim/defense.

[4] For this same reason, Defendants' reliance on *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010) for the proposition that the "absence of an agreement with provisions restricting or monitoring the quality of goods or services produced under a trademark supports a finding of naked licensing" is misplaced.  In *FreecycleSunnyvale*, the trademark owner allowed anyone to use their registered mark, as long as it was not used for commercial purposes and kept all online content that they associated with the mark "Free, legal, and appropriate for all ages." *Id.* at 513. In sharp contrast, the provisions of the AGPL and GPL operate to outwardly distinguish unaltered Neo4j® open source software from licensee-modified versions thereof.

1    operations is not conclusive evidence of lack of control"); *Hokto Kinoko Co.*, 738 F.3d at 1098

2    ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its

3    trademark where 'the particular circumstances of the licensing arrangement suggests that the

4    public will not be deceived'") (internal quotes and citation omitted).

5          Moreover, no formal quality control requirements are necessary where the agreement

6    between a licensor and licensee is not considered an actual trademark license.  *See Exxon Corp. v.*

7    *Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997) (recognizing that courts will not find

8    existence of trademark license when authorization of trademark use is structured in such way as

9    to avoid misleading or confusing consumer as to origin and/or nature of respective parties'

10   goods).  Arguably, the GPL and AGPL are not trademark licenses requiring express quality

11   control provisions because they mandate that licensees provide "prominent notice" for any

12   modifications they make to code from the underlying NEO4J® software released under the GPL

13   or AGPL to ensure there is no confusion as to origin of such modified software that may still

14   nominally bare the NEO4J® mark.

15         Defendants further argue that Neo4j USA "rel[ies] on the terms of the AGPL license

16   which plainly contradicts Neo4j USA's claim they are the AGPL licensor" and that "Neo4j USA

17   claims it licenses the software under the AGPL when it does not illustrates the confusion over the

18   mark Neo4j USA."  Dkt. No. 63 at 7:6-11.  Not only is this unsupported by Defendants'

19   challenged pleadings, but at no point has Neo4j USA claimed to be the owner of the copyright to

20   the underlying software or the licensor thereof under the AGPL or GPL.  Indeed, Neo4j USA

21   expressly alleges in its operative complaint that "Neo4j Sweden is the owner of all copyrights

22   related to the Neo4j® graph platform, including the source code, and has licensed said copyrights

23   to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell,

24   importation, performance, display, reproduction and distribution of the copyrighted material, and

25   the sublicensing of such rights."   Dkt. No. 50 at 2:17-20.  It is thus disingenuous for Defendants

26   argue the contrary.  More importantly, as discussed above, it is entirely permissible for a related

27   company such as Neo4j Sweden to use the NEO4J® mark in this manner.  The Court should

28   therefore disregard Defendants' argument to the contrary.  *See Schneider*, 151 F.3d at 1197 n. 1.

Finally, Defendants' argument that *Planetary Motion* is inapplicable because it was a "use in commerce" case and did not address the GPL in the context of naked licensing is equally without merit.  *See* Dkt. No. 63 at 7:23-8:13.  This is a distinction without a difference.  The distribution of NEO4J® software under the GPL and the AGPL – whether in the context of acquiring ownership rights via use in commerce or the intent to control the mark in the context of open source licensing – does not "in any way compel a finding" that a trademark owner abandons its trademark rights.  *See Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1198 & fn. 16 (11th Cir. 2001) (recognizing that the GPL allows users to copy, distribute and/or modify the software under certain restrictions, e.g., users modifying licensed files must carry prominent notices stating that the user changed the files and the date of any change).  Defendants' bare allegation that Neo4j USA has no right to maintain control over how licensees redistribute modified versions of software based on underlying code for NEO4J® software released under the AGPL and GPL simply do not amount to a plausible naked licensing counterclaim/defense.  Accordingly, Defendants' open source naked licensing theory fails as a matter of law.

**C.      The Court Should Deny Defendants Leave to Amend**

It is well established that the Court should deny leave to amend "where doing so would be an exercise in futility." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012); *accord Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reaffirming that a court need not grant leave to amend if granting leave would be futile).  The Court should also deny leave to amend "if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  Likewise, the Court should deny leave to amend where the sole issue presented is a matter of substantive law.  *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).  The Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 690 (9th Cir. 2010).

As detailed above, the defects in Defendants' abandonment counterclaims and affirmative defense are legal in nature and cannot be cured by amendment.  Their "confusion" theory of

1  abandonment does not meet either statutory definition of abandonment under 15 U.S.C. § 1127,

2  and does not otherwise allege facts that legally amount to the naked licensing of the NEO4J®

3  mark.  Similarly, Defendants' naked licensing theory based on the open source licensing of

4  NEO4J® native graph database software is directly contradicted by the license upon which they

5  are based.  Defendants do not request leave to amend in their opposition and do not offer any

6  additional facts outside what is alleged that would save their abandonment counterclaims and

7  affirmative defense from dismissal. *See Weisbuch v. Cty. of L.A*., 119 F.3d 778, 783 n.1 (9th Cir.

8  1997) (recognizing that a party may plead itself out of court where that party alleges facts

9  establishing that it cannot prevail on its claim).  Thus, Defendants effectively concede that

10  granting leave to amend would be futile, especially since they have had over a year to develop

11  their abandonment theories and recently amended their pleadings without offering any new or

12  additional facts to support either theory.  Accordingly the Court should dismiss their

13  abandonment counterclaims and affirmative defenses with prejudice.

14  **III.    CONCLUSION**

15        For the foregoing reasons and those set forth in Neo4j USA's moving papers, the Court

16  should grant Neo4j USA's motion for a judgment on the pleadings in its entirety and dismiss (a)

17  the Second Cause of Action for Declaratory Relief for Abandonment of Trademark asserted in

18  John Mark Suhy's Counterclaim; (b) the Tenth Cause of Action for Declaratory Relief for

19  Abandonment of Trademark asserted in the First Amended Counterclaim filed by PureThink and

20  iGov; and (c) the Ninth Affirmative Defense for Naked License Abandonment of Trademark

21  asserted in the Answer to the Second Amended Complaint filed by Defendants with prejudice.

22  Dated: March 3, 2020                        HOPKINS & CARLEY
                                                A Law Corporation
23

24                                            By: */s/ Jeffrey M. Ratinoff*
25                                                John V. Picone III
                                                Jeffrey M. Ratinoff
                                                Cary Chien
26                                                Attorneys for Plaintiff
                                                NEO4J, INC., NEO4J SWEDEN AB
27

28