John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Cary Chien, Bar No. 274078
cchien@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 5:18-cv-07182-EJD<br><br>**PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION FOR MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>**[Fed. R. Civ. P. 12(c)]**<br><br>Date:     August 13, 2020<br>Time:     9:00 a.m.<br>Dept.:    Courtroom 4, 5th Floor<br>Judge:    Hon. Edward J. Davila<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

The opposition filed by Defendants and Counterclaimants John Mark Suhy, PureThink LLC and iGov Inc. (collectively "Defendants") reaffirms that their trademark abandonment counterclaim and affirmative defense is solely based on the erroneous assumption that software licensed on an open source basis via the GNU General Public License ("GPL") and the GNU Affero General Public License ("AGPL") amounts to naked licensing. Defendants continue to ignore this Court's directive that in order to maintain their naked licensing theory they must allege facts (1) "showing why the level of control exerted under the GPL [or AGPL] is not also sufficient to overcome a claim of abandonment;" and (2) "indicating that Plaintiff has failed to exercise actual control over licensees' use of the trademark." *See* Dkt. No. 70 at 12:2-13:26.

The use of the GPL and AGPL and their underlying terms continue to contradict Defendants' insistence that there are no provisions in place that allow Neo4j USA to control the use of the NEO4J® mark. Since Defendants still do not identify a single material fact that establishes abandonment beyond this discredited open source licensing theory, Defendants clearly cannot maintain a plausible abandonment counterclaim or defense based on naked licensing.

Defendants also continue to ignore that the Lanham Act expressly contemplates "related companies" using the NEOJ4® mark without affecting the mark's validity, and in particular, the Ninth Circuit has found that a subsidiary's authorized use of a mark owned by its parent corporation does not amount to abandonment. They also once again fail to reconcile the presumption that the parent who owns the mark exercises sufficient control over the nature and quality of goods sold under the mark by the subsidiary. Since Defendants do not allege any material facts establishing Neo4j USA's lack of control over either the NEO4J® mark or Neo4j Sweden use thereof, ***and*** that the public has been deceived by the parent-subsidiary relationship between Neo4j USA and Neo4j Sweden and their joint use of the NEO4J® mark, Defendants' abandonment defense cannot survive this latest challenge.

Defendants' reliance on their own modification and distribution of Neo4j® software to establish naked licensing fares no better. Defendants attempt to argue around the doctrine of licensee estoppel fails because the actual allegations in their counterclaim and in the underlying

1  Partner Agreement make clear that their modification and distribution of Neo4j Government
2  Edition was subject to trademark license in that agreement.  As a result, any suggestion that Neo4j
3  USA failed to police Defendants' use of the NEO4J mark is irrelevant.

4  Lastly, Defendants' proposed amendment does not cure any of the foregoing deficiencies
5  in Defendants' abandonment counterclaims and affirmative defense, which they have had ample
6  opportunities to sufficiently allege a viable naked license theory.  Accordingly, the Court should
7  grant Neo4j USA's motion for judgment on the pleadings and dismiss Defendants' abandonment
8  counterclaim and strike their corresponding affirmative defense.

## II. LEGAL ARGUMENT

### A. Defendants' Failure to Allege Facts Establishing a Lack of Actual Quality Control Beyond the Distribution of Neo4j Software Subject to the Terms of the AGPL and GPL is Fatal to Their Naked Licensing Defense

Defendants ignore virtually every argument raised by Neo4j USA's motion.  Instead, they again seek to equate their naked licensing defense to the one raised in *FreecycleSunnyvale v. Freecycle Network*, 626 F.2d 509, 516 (9th Cir. 2010) (hereinafter "*Freecycle*").  Defendants only cite to conclusory allegation that the NEO4J® mark "should be abandoned because Neo4J Sweden and Neo4J USA did not have contractual, actual or adequate controls of the quality of third party modifications of the open source versions of Neo4j licensed under the GPL and APGL licenses" and repeatedly insist this is sufficient.  Dkt. No. 78 at 3:22-4:3, 5:10-6:3.

Defendants, however, completely disregard the Court's holding that "the absence of specific quality control provisions—either in the GPL, AGPL, or in a separate trademark license—is not dispositive" and "the notice requirements in the GPL and AGPL evidence an effort to control the use of the mark."  Dkt. No. 70 at 13:15-23; *see also id.* at 13:2-4 ("Defendants fail to show why the level of control exerted under the GPL is not also sufficient to overcome a claim of abandonment").  The Court further held "the fact that Plaintiff distributed Neo4j software on an open source basis pursuant to the GPL and AGPL ***is not, without more***, sufficient to establish a naked license or demonstrate abandonment."  *Id.* at 13:24-26 (emphasis added); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1198 (11th Cir. 2001) (recognizing that "[b]ecause [the GPL] requires licensees who wish to copy, distribute, or modify the software to include a copyright

notice, the license itself is evidence of [plaintiff's] efforts to control the use of the . . . mark in connection with the Software"). The Court made clear that Defendants must allege specific facts establishing that "Plaintiffs failed to exercise actual control over licensees' use of the trademark." Dkt. No. 70 at 13:24-14:2.

Despite the Court's directives, Defendants cannot point to an allegation in either challenged pleading establishing the "more" required by the Court. As detailed in Neo4j USA's moving papers, there are no allegations identifying which Neo4j® software features were actually modified, how they were supposedly modified, and importantly, how the modification resulted in a loss of quality in relation to the NEO4J® mark. *See* Dkt. No. 73 at 11:19-13:5. Likewise, there are no allegations establishing that the public was deceived into believing that third party modified software was an official unmodified version of Neo4j® software. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013) ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its trademark where the particular circumstances of the licensing arrangement suggests that the public will not be deceived") (internal quotes and citation omitted).

Instead, Defendants reargue that the AGPL lacks quality control provisions, while ignoring that third parties are only able to modify and distribute Neo4j® software **subject to the notice requirements imposed by the AGPL and GPL**. Dkt. No. 70 at 5:17-21. The is fatal to Defendants' naked licensing theory because these provisions expressly require licensees to identify any and all modifications they make to the software to ensure that such modifications (and any related quality issues associated therewith) are ***not attributed*** to any goodwill associated with the NEO4J® mark.[1] As a result, Defendants' naked licensing theory still does not overcome the presumption in

---

[1] For this same reasons, Defendants' reliance on *Freecycle* continues to be misplaced. In that case, the trademark owner allowed anyone to use their registered mark, as long as it was not used for commercial purposes and kept all online content that they associated with the mark "Free, legal, and appropriate for all ages." 626 F.2d at 513. In sharp contrast, the notice provisions of the AGPL and GPL operate to outwardly distinguish unaltered Neo4j® software from third party licensee-modified versions thereof. Moreover, the AGPL and GPL are not trademark licenses so the fact that they do not allegedly have quality control provisions, such as the right to inspect and supervise third party licensees of the software, is not determinative.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3566357.3                                    - 3 -
PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE; CASE NO. 5:18-CV-07182-EJD

*Planetary Motion* "that the notice requirements in the GPL and AGPL evidence an effort to control the use of the mark."[2] Dkt. No. 70 at 13:21-23.

Defendants also attempt to downplay the significance of Neo4j USA's Trademark Policy because it clearly contradicts their conclusory assertion that Neo4j USA has no actual control over licensees' use of the NEO4J® Mark. *See* Dkt. No. 78 at 4:4-10. This is disingenuous given that Defendants agreed to be bound to that policy in the Neo4j Solutions Partner Agreement. Since that agreement is attached to Defendants' counterclaim and expressly incorporates the Trademark Policy by reference, it is entirely appropriate for the Court to take judicial notice thereof. *See* Dkt. Nos. 73-2, 73-3 and 74. Defendants also overstate the *Freecycle* court's fact-specific finding that TFN's reliance on Yahoo! Groups' service terms did not establish contractual or actual quality control. *Compare* Dkt. No. 78 at 4:6-10 *and Freecycle*, 626 F.3d at 517. Notably, the court in that case found the terms of service to be insufficient because they "regulate[d] generic online activity like sending spam messages and prohibiting harassment" rather than the "TFN's member groups' services and use of the trademarks." *Freecycle*, 626 F.3d at 517. Unlike *Freecycle*, the Trademark Policy are directly implemented by Neo4j USA and specifically address the usage of the NEO4J® Mark.

Finally, Defendants misconstrue *Monster v. Dolby* as setting a standard for quality control requirements necessary to defeat a naked licensing claim. *See* Dkt. No. 78 at 6:4-7:1. In *Monster* a specific trademark license for the use of its mark was in place, while in this case licensees are explicitly not granted trademark rights. In that regard, Defendants ignore that no formal quality control requirements are necessary where the agreement between a licensor and licensee is not considered an actual trademark license. *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997) (recognizing that courts will not find existence of trademark license when authorization of trademark use is structured in such way as to avoid misleading or confusing

---

[2] Defendants discount *Planetary Motion* because it "was not a naked license case and made no finding on the contractual quality controls required to avoid a naked license claim." Dkt. No. 78 at 7:5-6. Defendants cannot be so dismissive since the Court already found *Planetary Motion* to be persuasive on this point and that even under *Freecycle,* "[t]he lack of an express contract right . . . is not conclusive evidence of lack of control." *See* Dkt. No. 70 at 13:21-22.

consumer as to origin and/or nature of respective parties' goods). As discussed in Neo4j USA's moving papers, the GPL and AGPL are not trademark licenses requiring express quality control provisions because they mandate that licensees provide "prominent notice" for any modifications they make to code from the underlying NEO4J® software released under the GPL or AGPL to ensure there is no confusion as to origin of such modified software that may still nominally bare the NEO4J® mark. *See* Dkt. No. 73 at 13:4-16. Accordingly, Defendants' open source naked licensing theory fails as a matter of law and should be dismissed with prejudice.

### B. Defendants Do Not Alleged Facts That Rebut the Presumption Under the Lanham Act that Neo4j Sweden is a "Related Company"

Defendants argue that because Neo4j Sweden is the licensor of the *software* bearing the NEO4J® mark, Neo4j USA "has no contractual control of open source licensees' use of the Neo4J software." Dkt. No. 87 at 4:4-16. In doing so, Defendants accidently admit that Neo4j Sweden's ownership of the copyright to the software is not the same as Neo4j USA's ownership of the Neo4j® Mark. Indeed, the AGPL and GPL are not trademark licenses as noted above. As a result, the fact that Neo4j Sweden is the licensor of the copyright is not dispositive.

Defendants also fail to cite to a single factual allegation in their pleadings that overcome the presumption under the Lanham Act that Neo4j Sweden's prior use of the NEO4J® mark properly inured to the benefit of Neo4j USA as the registrant. *See* 15 U.S.C. §§ 1055, 1127; *see also* Dkt. No. 10:19-26. More importantly, Defendants fail to cite to any allegations in either pleading at issue that overcome the legal presumption that at Neo4j USA and Neo4j Sweden continue to operate as "related companies" under 15 U.S.C. § 1127 and their continued combined use of the NEO4J® mark "shall not affect the validity of such mark." 15 U.S.C. § 1055.

Defendants instead *argue* without support that "[a]ny concept that there is a parent subsidiary relationship establishing control is wrong for two reasons 1) there is no allegation that Neo4J USA controls Neo4J Sweden and 2) there could be no control when Neo4J USA did not exist for many years." Dkt. No. 78 at 6:19-7:3. Defendants' nonsensical assertion that Neo4j USA could not control the NEO4J® mark prior to its formation is contradicted by Defendants' *allegations* that Neo4j Sweden has always distributed Neo4j® software subject to the GPL and

AGPL. *Id*. at ¶ 88 ("[f]or a period of 5 years before the plaintiff existed and thereafter…Neo4j Sweden used the GPL and AGPL licenses to proliferate the free use, development and modification of Neo4J software"). Their argument is also contrary to the aforementioned legal presumption that Neo4J Sweden's prior use of the NEO4J® mark properly inured to the benefit of Neo4j USA. *See* 15 U.S.C. § 1055 ("Where a [] mark sought to be registered is [] used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration….").

Defendants' other assertion is also untenable given that they ***concede*** in their counterclaim that Neo4j USA is the parent of Neo4J Sweden. *See* Dkt. No. 72 at ¶ 87; *see also* Reply RJN, ¶ 3; Chien Reply Decl., Exh. B. Merely ***arguing*** that "there is no allegation that Neo4j USA owns all the intellectual property rights to Neo4j and can control Neo4j Sweden" amounts to an improper attempt to shift Defendants' burden of overcoming the aforementioned presumption of control imparted by the Lanham Action to Plaintiffs.[3] *See* Dkt. No. 78 at 5:1-3. Defendants also attempt to defy logic because by definition, a parent controls a wholly owned subsidiary. As discussed above, it is entirely permissible for a related company such as Neo4j Sweden as defined by the Lanham Act to use the NEO4J® mark in licensing the software, and the fact that Defendants fail to allege facts establishing that the public has been deceived by this arrangement defeats their naked licensing defense as a matter of law. *See Hokto Kinoko*, 738 F.3d at 1098 (no naked licensing where subsidiary used parent company's trademark).

**C. Defendants Were Subject to Trademark License in the Partner Agreement During the Period Where They Allege Neo4j USA Failed to Control Quality and Therefore Estopped From Challenging the Validity of the NEO4J® Mark**

Defendants do not dispute that a licensee cannot challenge the validity of a trademark based on a failure to police the licensee's own licensed use of that trademark or that the license itself

---

[3] Defendants hint that unspecified "contrary documents" produced during discovery show a Neo4j USA's lack of control over Neo4J Sweden and that Neo4j Sweden has allegedly produced "no document showing an assignment of its trademarks to Neo4J USA." The Court should ignore these vague assertions as Defendants had ample opportunity to allege specific facts in their challenged pleadings since discovery in this case has been ongoing for over a year and half. Moreover, they cannot ask the Court to consider "new" facts alleged in opposition papers. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 fn 1 (9th Cir. 1998) ("[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss").

constituted a naked license. Dkt. No. 73 at 16:26-17:8; *see also Monster*, 920 F.Supp.2d at 1076–1077 (licensee estoppel prevents licensee's attempt to challenge the trademark based on failure to police its own licensed use); *STX, Inc. v. Bauer USA, Inc.*, 1997 WL 337578, 43 U.S.P.Q.2d 1492 (N.D. Cal. June 5, 1997) (former licensee may not challenge the licensor's mark based upon facts which arose during the term of the license). Instead, they argue that Neo4j USA cannot rely on licensee estoppel because Suhy allegedly modified an open source version licensed by Neo4j Sweden under the AGPL, which PureThink then distributed to the federal government without any alleged quality controls.[4] *See* Dkt. No. 78 at 7:13-17. Defendants further argue that Neo4j USA did not license the NEO4J® mark to them under the Partner Agreement for use with the APGL version of Neo4j software. *Id.,* 8:3-11.

Defendants misapprehend the doctrine of licensee estoppel by incorrectly focusing on the underlying licenses to the software, while ignoring the express terms of the Partner Agreement governing the usage of the NEO4J® mark.[5] In Section 4.1 of that agreement, Neo4j USA provided Defendants with a non-exclusive, non-transferable limited license for the term of the Partner Agreement to, *inter alia*, use the NEO4J® mark solely to market and promote Neo4j® commercial software products "in accordance with the terms of this Agreement." Dkt. No. 72, Exh. B. This section also broadly stated that Defendants "will use Neo Technology trademarks only in

---

[4] Defendants misleadingly suggest that Suhy acted in his individual capacity in seeking to modify and distribute Neo4j Government Edition. The alleged writing governing this modification attached to Defendants' counterclaim makes clear that Suhy was acting on behalf of PureThink, and not in his individual capacity. *See* Dkt. No. 72, Exh. C. Likewise, Defendants' website also states that PureThink "created, managed and sold Neo4j Government Edition to all US Federal agencies…." Reply RJN, ¶¶ 1-2; Chien Reply Decl., Exh. A. The Court should thus disregard such contradictory allegations and unwarranted inferences regarding Suhy. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[5] Defendants admit that Suhy formed iGov to evade the restrictions imposed on PureThink by the Partner Agreement. *See* Dkt. No. 72 at ¶ 21; *see also* Reply RJN, ¶¶ 1-2; Chien Reply Decl., Exh. A. Controlling California law does not permit an individual or entity to circumvent its legal obligations by fraudulently forming a, purportedly separate, entity. *See Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816, 826-27 (N.D. Cal. 2015) (enforcing confidentiality and exclusivity protections personally against corporate president who started competing business; noting, "it would be plainly inequitable" for corporate president to escape personal liability for breach of a contract "he negotiated and agreed to on behalf of Start Science simply because he was not personally a party to the agreement."). As a result, by their own admissions, Defendants are all legally bound by the terms of the Partner Agreement.

842\3566357.3 - 7 -
PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE; CASE NO. 5:18-CV-07182-EJD

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

accordance with Neo Technology's then-current trademark usage guidelines." *Id.* In Section 4.3.2, Defendants further agreed that they would not "develop, market, distribute or offer any services related to any [NEO4J®] Community Edition Products, derivative works of such products, or any [PureThink] software code made to work with [NEO4J®] Community Edition Products…."[6] *Id.*

      Defendants thus entered into the Partner Agreement where they knowingly gave up any alleged right to freely modify and market Neo4j® software they may have had under the AGPL. *See Universal Gym Equip., Inc. v. ERWA Exercise Equip. Ltd.*, 827 F.2d 1542, 1550 (Fed. Cir. 1987) (contracting parties may limit their right to take action they previously had been free to take). Defendants also agreed to specific limitations on the use of the NEO4J® mark that superseded any rights they believe they had to freely use that mark under the AGPL and GPL. *See Progress Software Corp. v. MySQL AB*, 195 F.Supp.2d 328, 329 (D. Mass. 2002) (recognizing that use of trademark for GPL-licensed MySQL software was unauthorized after trademark owner terminated a separate agreement licensing the MySQL trademark). The **allegations** in Defendants' **pleadings** align with these legal principles and contradict the illogical **arguments** made in their **opposition**. Consistent with the restrictions imposed by the Partner Agreement, Defendants allege that Suhy went to Neo4j USA and asked **permission**, *i.e.* an exception to the restriction imposed by Section 4.3.2 and subject to the trademark license in Section 4.1, for PureThink to modify Neo4j® software subject to the AGPL and call it Neo4j Government Edition. *See* Dkt. No. 72, ¶ 16; *see also* ¶ 15, Exh. B. As such, it is disingenuous for Defendants to now argue that the doctrine of licensee estoppel does not apply because Neo4j USA was not in privity with Defendants. *See* Dkt. No. 78 at 7:18-23.

      Even if Defendants were not estopped, Defendants are wrongfully dismissive of Neo4j USA's arguments that Defendants fail to allege specific facts establishing that it was unreasonable for Neo4j USA to rely on Suhy and Purethink to control the quality of Neo4j Government Edition. *Compare* Dkt. No. 73 at 14:23-16:23 and Dkt. No. 78 at 8:12-17. Merely arguing that it is a

---

[6] Under Section 11 of the Partner Agreement, "Community Edition Products" is broadly defined as all open source versions of Neo4j software and would therefore encompass the open source versions of Neo4j® software licensed under the GPL and AGPL. *See* Dkt. No. 72, Exh. B.

842\3566357.3        - 8 -

question of fact whether a longstanding relationship existed between Defendants and Neo4j USA ignores that the allegations in their counterclaim dispel any notion that there was a lack of quality control by either Neo4j USA or Defendants in relation to Neo4j Government Edition amounted amounting to naked licensing.  *See* Dkt. No. 78 at 8:12-17.

Defendants bear the burden to alleging specific facts that plausibly meets stringent standard of proof required to prevail on a naked licensing claim.  *See Monster*, 920 F. Supp. 2d at 1076.  Their failure to cite to any specific, non-conclusory allegations that Neo4j USA allegedly engaged in naked licensing by allowing Defendants to offer Neo4j Government Edition is telling and falls well short of this exacting standard.  More importantly, Defendants fail to address that there are no facts alleged in the challenged pleadings that the public was somehow deceived by Defendants offering Neo4j Government Edition.  This is fatal to Defendants' naked license claim to the extent it is based on that modified version of Neo4j® software.  *See Hokto Kinoko*, 738 F.3d at 1098 ("a trademark owner does not abandon its trademark where 'the particular circumstances of the licensing arrangement' suggest that the public will not be deceived").

### D. Defendants' Proposed Amendment is Futile and Will Not Save its Naked Licensing Theory of Abandonment

Defendants ask that the Court grant them leave to amend to "allege Neo4J Sweden is the owner of the Neo4J trademark which was licensed to Neo4J USA on a non-exclusive basis" and that this would somehow "eliminate any of the suggestions of control, and successor-in-interest.  Neo4J Sweden controls Neo4J USA from a licensing perspective."  As discussed in Plaintiffs' moving papers the Court should deny leave to amend where the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

Defendants' proposed amendment fails to cure the deficiencies in their naked licensing defense discussed above.  First, Defendants do not explain how this would alter the relationship between Neo4j USA and Neo4j Sweden as "related companies" under the Lanham Act and the presumption that their continued combined use of the NEO4J® mark "shall not affect the validity of such mark." 15 U.S.C. § 1055.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3566357.3 — - 9 -
PLAINTIFF NEO4J, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE; CASE NO. 5:18-CV-07182-EJD

Second, Defendants' naked licensing claim and defense would still be entirely based on Neo4j Sweden's distribution of the software licensed under the AGPL and GPL. Even if Sweden were the actual owner of the NEO4J® mark under this theory, this proposed amendment continues to discount that these licenses contain notice provisions recognized by this Court to be evidence of an effort to control the use of the mark. It also does not address the reality that the AGPL and GPL explicitly do not grant trademark rights to licensees.

Finally, the proposed amendment does not address the Court's prior findings that Defendants must alleged specific facts establishing that Plaintiffs failed to actual control over licensees' use of the NEO4J® Mark. Moreover, Defendants do not offer any establishing that public has been deceived by the parent-subsidiary relationship between Neo4j USA and Neo4j Sweden and their joint use of the NEO4J® mark. Accordingly, the Court should dismiss Defendants' abandonment counterclaims and affirmative defenses with prejudice since granting them leave would clearly be futile. *See Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

### III. CONCLUSION

For the foregoing reasons and those set forth in Neo4j USA's moving papers, the Court should grant Neo4j USA's motion to dismiss and strike in its entirety, and dismiss with prejudice (a) the Tenth Cause of Action for Declaratory Relief in Defendants' Second Amended Counterclaim and; (b) the Ninth Affirmative Defense for Naked License Abandonment of Trademark in Defendants' First Amended Answer.

Dated: July 13, 2020

HOPKINS & CARLEY
A Law Corporation

By: */s/ Cary Chien*
　　Cary Chien
　　Attorneys for Plaintiff
　　NEO4J, INC., NEO4J SWEDEN AB