1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, CA  95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:    (408) 286-9800
8   Facsimile:    (408) 998-4790

9   Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J, INC., a Delaware corporation,        CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                **PLAINTIFFS' REPLY IN SUPPORT OF
                                                THEIR MOTION TO STRIKE
15              Plaintiffs,                      DEFENDANTS' ANSWER TO THE
                                                THIRD AMENDED COMPLAINT**
16          v.
                                                **[Fed. R. Civ. P. 12(c)]**
17  PURETHINK LLC, a Delaware limited
    liability company, IGOV INC., a             Date:    February 11, 2021
18  Virginia corporation, and JOHN MARK         Time:    9:00 a.m.
    SUHY, an individual,                        Dept.:   Courtroom 4, 5th Floor
19                                              Judge:   Hon. Edward J. Davila
                Defendants.
20                                              **JURY TRIAL DEMANDED**

21  AND RELATED COUNTERCLAIMS.

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3647357.4
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                    5:18-CV-07182-EJD

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL ARGUMENT ........................................................................................ 2

     A.    Defendants' Misapprehend the Applicable Authority on What is Permitted in Responding to Plaintiffs' Third Amended Complaint ...................................... 2

     B.    Defendants' Reliance on Neo4j USA's Purported Status as a Licensee of the Neo4j® Mark Violates the Northern District's Local Rules Governing Reconsideration of Interlocutory Orders .................................................................. 4

     C.    The Existence of the License Agreement is an Insufficient Basis for Defendants to Revive their Cancellation Defense Based on Fraud in the Procurement of the Neo4j® Mark ........................................................................ 6

     D.    Defendants Offer No New Facts or Law that Justify Their Attempt to Revive an Abandonment Defense Based on Naked Licensing ............................ 11

     E.    Defendants' Opposition Confirms that the Court Should Issue an Order to Show Cause as to Why it Should Not Sanction Defendants .................................. 13

III.   CONCLUSION ................................................................................................ 14

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3647357.4

- i -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED COMPLAINT;

5:18-CV-07182-EJD

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**Cases**

5

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
   2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) .............................................................................. 3

6

*Beavers-Gabriel v. Medtronic, Inc.*,
   2014 WL 4723802 (D. Haw. Sept. 22, 2014) ............................................................................. 3

7

8

*Benamar v. Air France-KLM*,
   2015 WL 4606751 (C.D. Cal., July 31, 2015) ........................................................................... 3

9

*In re Bose Corp.*,
   580 F.3d 1240 (Fed.Cir.2009) ................................................................................................... 7

10

11

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 5731817 (N.D.Cal. Oct. 22, 2013) ............................................................................ 3

12

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ................................................................................................. 11

13

14

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................................................................... 14

15

16

*Cont'l Distilling Corp. v. Old Charter Distillery Co.*,
   188 F.2d 614 (D.C. Cir. 1950) ................................................................................................... 8

17

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984) ................................................................................................................... 7

18

19

*DEP Corp. v. Interstate Cigar Co.*,
   622 F.2d 621 (2nd Cir.1980) ................................................................................................... 10

20

*Exxon Corp. v. Oxxford Clothes, Inc.*,
   109 F.3d 1070 (5th Cir. 1997) ................................................................................................. 12

21

22

*Far Out Prods., Inc. v. Oskar*,
   247 F.3d 986 (9th Cir.2001) ................................................................................................ 7, 11

23

24

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ................................................................................................... 14

25

26

*FreecycleSunnyvale v. Freecycle Network*,
   626 F.2d 509 (9th Cir. 2010) ................................................................................................... 11

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Fusco Grp., Inc. v. Loss Consultants Int'l, Inc.,*
    462 F.Supp.2d 321 (N.D.N.Y. 2006) ........................................................... 8

4

5

*Helfand v. Gerson,*
    105 F.3d 530 (9th Cir. 1997) .................................................................. 4

6

7

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
    738 F.3d 1085 (9th Cir. 2013) ........................................................... 6, 12

8

9

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
    810 F.Supp.2d 1013 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013) ........................ 10

10

*Kona Enters., Inc. v. Estate of Bishop,*
    229 F.3d 877 (9th Cir. 2000) ............................................................... 5, 6

11

12

*Lacey v. Maricopa Cty.,*
    693 F.3d 896 (9th Cir. 2012) .............................................................. 3, 13

13

*Metro Traffic Control, Inc. v. Shadow Network, Inc.,*
    104 F.3d 336 (Fed. Cir. 1997) .............................................................. 8

14

15

*Quabaug Rubber Co. v. Fabiano Shoe Co.,*
    567 F.2d 154 (1st Cir.1977) ................................................................ 10

16

17

*Rissetto v. Plumbers and Steamfitters Local 343,*
    94 F.3d 597 (9th Cir.1996) .................................................................. 4

18

19

*Scat Enterprises, Inc. v. FCA US LLC,*
    2017 WL 5749771 (C.D. Cal. June 8, 2017) .................................................. 7

20

*Schneider v. Cal. Dep't of Corr.,*
    151 F.3d 1194 (9th Cir. 1998) ............................................................. 10

21

22

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013) .............................................................. 10

23

*Synopsys, Inc. v. Magma Design Automation, Inc.,*
    2005 WL 8153035 (N.D. Cal. Oct. 19, 2005) ................................................. 3

24

25

*Turner v. City & Cty. of San Francisco,*
    892 F.Supp.2d 1188 (N.D. Cal. 2012) ..................................................... 5, 6

26

27

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.,*
    31 F.3d 1122 (Fed. Cir. 1994) .............................................................. 7

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3647357.4

- iii -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;

5:18-CV-07182-EJD

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

4

*In re Wella A.G.*,
787 F.2d 1549 (Fed. Cir. 1986)........................................................... 2, 8, 9, 13

5

*In re Wella A.G.*,
858 F.2d 725 (Fed. Cir. 1988)............................................................. 2, 8, 9, 13

6

**Statutes**

7

8

15 U.S.C. § 1055 ................................................................................ 1, 8, 9, 12

9

15 U.S.C. § 1114(1)(a) .......................................................................... 10

10

15 U.S.C. § 1125(a) ................................................................................ 11

11

**Other Authorities**

12

Civil Local Rule 1-4.......................................................................... 5, 13

13

Civil Local Rule 7-9 ........................................................................... *passim*

14

Civil Local Rule 7-9(b)(1) ....................................................................... 5

15

Civil Local Rule 7-9(c) ........................................................................... 5

16

Fed. R. Civ. Proc. 9(b) ........................................................................... 6

17

Fed. R. Civ. Proc. 12(b)(6) ..................................................................... 10

18

T.M.E.P. § 1201.03(b) ........................................................................... 7

19

T.M.E.P. § 1201.03(c) ........................................................................... 7

20

T.M.E.P. § 1201.07(b) ........................................................................... 9

21

T.M.E.P. § 1201.07(b)(i) ......................................................................... 9

22

23

T.M.E.P. § 1201.07(b)(ii) ........................................................................ 9

24

T.M.E.P. §§ 1201.07 et seq.................................................................... 13

25

26

27

28

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

The opposition filed by Defendants and Counterclaimants John Mark Suhy, PureThink LLC and iGov Inc. (collectively "Defendants") confirms that their Answer to the Third Amended Complaint (TAC) was an attempt to circumvent the limitations on amending responsive pleadings to amended complaints.  As detailed in Plaintiffs' moving papers, courts in this District adhere to the "moderate approach" in allowing a party to file an answer containing new defenses or counterclaims *only when the amended complaint changes the theory or scope of the case*. Defendants make no effort to identify how the TAC expanded the scope of the case in a way that would allow them to reassert or expand their fraud on the PTO or naked licensing defenses that were previously dismissed/stricken with prejudice.  Nor can Defendants do so because they entered into a stipulation to the contrary.

Defendants excuse themselves from adhering to this rule and ignore their prior stipulation by pointing to "new" evidence in the form of a license agreement produced by Plaintiffs during discovery that purports to breathe new life into their Seventh and Ninth Affirmative Defenses.  In doing so, they violate Civil Local Rule 7-9's express requirement that a party *must first seek leave of court before filing a motion for reconsideration of any interlocutory order*.  To obtain such leave, *inter alia,* Defendants would have to establish the discovery of a new fact that in the exercise of reasonable diligence was unknown at the time the interlocutory order issued.  Defendants failed to seek such leave and would have been unable to meet both the new fact and reasonable diligence requirements because they admittedly have known about this agreement *since March 2020*, and previously identified it in their opposition to Plaintiffs' motion to dismiss and strike their counterclaims and answer to the Second Amended Complaint ("SAC").  Defendants also do not offer any explanation as to why they did not immediately seek leave for reconsideration once they received the license agreement.

Finally, Defendants still fail to reconcile that Neo4j USA's alleged status as a licensee of the Neo4j® Mark is irrelevant to both their cancellation and naked license theories since Neo4j Sweden is a wholly-owned subsidiary of Neo4j USA.  The Lanham Act expressly contemplates "related companies" using the Neo4j® Mark without affecting the mark's validity under 15 U.S.C.

§ 1055, and the USPTO does not require disclosure of an intercompany licensing arrangement when an applicant relies upon the related company doctrine. The authority Defendants cite to the contrary is not controlling, and in the case of the concurring opinion in *In re Wella A.G.*, 787 F.2d 1549 (Fed. Cir. 1986) ("*Wella I*"), any reliance thereon is improper. To be sure, in *In re Wella A.G.*, 858 F.2d 725 (Fed. Cir. 1988) ("*Wella II*"), the Federal Circuit subsequently reversed the TTAB's decision that was based on the same concurring opinion that Defendants primarily rely upon in justifying their revival of their fraud in the procurement defense. Thus, there is no material misrepresentation upon which Defendants can seek to cancel the Neo4j® Mark.

Defendants' Opposition also confirms that their abandonment defense is mainly based on Neo4j Sweden's licensing source code of the Neo4j® graph database software via the GPL and AGPL copyright licenses. Because the Court previously recognized that because the GPL and AGPL are not trademark licenses, there can be no naked licensing based on Plaintiffs' alleged failure to exercise quality control over third parties modifying that source code. Since Defendants do not allege any new material facts establishing Plaintiffs' lack of control over the NEO4J® Mark, ***and*** no facts that the public has been deceived by Plaintiffs' parent-subsidiary relationship or their use of the Neo4J® Mark, Defendants cannot revive their abandonment defense.

## II.    LEGAL ARGUMENT

### A.    Defendants' Misapprehend the Applicable Authority on What is Permitted in Responding to Plaintiffs' Third Amended Complaint

Defendants acknowledge that they are not required to re-plead claims dismissed with prejudice to preserve them for appeal. Dkt. No. 95 at 2:10-3:7 (citing *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012)). Notably, Defendants previously asserted virtually identical counterclaims and affirmative defenses for cancellation of the Neo4j® Mark based on the same theories of fraud in the procurement and abandonment of the mark via naked licensing, which the Court struck with prejudice. *See* Dkt. No. 70 at 8:4-18 (cancellation); Dkt. No. 70 at 11:21-13:24-26 (naked licensing). Thus, by Defendants' admission, the re-pleading of these theories in the Seventh and Ninth Affirmative Defenses was unnecessary to preserve appellate rights.

Under *Lacey*, courts in the Ninth Circuit regularly dismiss or strike re-pled claims already

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3647357.4                                    - 2 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                          5:18-CV-07182-EJD

1    dismissed with prejudice in order to preserve judicial resources and avoid confusion in the

2    remainder of the proceedings.  *See, e.g., Benamar v. Air France-KLM*, 2015 WL 4606751 *3 (C.D.

3    Cal., July 31, 2015) ("inclusion of claims already dismissed with prejudice in the non-operative

4    complaint has the potential to confuse the scope of discovery and any dispositive motions");

5    *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 5731817, at *3 (N.D. Cal. Oct. 22, 2013)

6    (dismissing with prejudice claims realleged solely in order to preserve right to appeal); *Beavers-*

7    *Gabriel v. Medtronic, Inc.*, 2014 WL 4723802, at *2 (D. Haw. Sept. 22, 2014) (striking amended

8    complaint and noting that the court's prior order "did not grant Plaintiff leave to file an amended

9    complaint asserting claims for which this court already dismissed without leave to amend").   This

10   is exactly what Defendants have done by re-pleading affirmative defenses based on fraud in the

11   procurement and naked licensing.  The parties previously stipulated to move out the deadlines for

12   Phase 1 summary judgment motions to ensure that the pleadings were settled with respect to

13   Plaintiffs' Lanham Act claims and Defendants' affirmative defenses and counterclaims thereto.

14   *See* Dkt. No. 81 at ¶ 4; *see also* Dkt. No. 87.   By reviving these two Lanham Act defenses,

15   Defendants have now created uncertainty as to whether these defenses are now part of Phase 1.

16         Defendants then argue there "appears no case discussing what happens when the plaintiff

17   files a new amended complaint to which the defendants must answer."  Dkt. No. 95 at 2:22-24.

18   This ignores the prevailing rule "that an answer containing new defenses or counterclaims 'may be

19   filed without leave only when the amended complaint changes the theory or scope of the case, and

20   then, the breadth of the changes in the amended response must reflect the breadth of the changes in

21   the amended complaint.'"  *Synopsys, Inc. v. Magma Design Automation, Inc.*, 2005 WL 8153035,

22   at *3 (N.D. Cal. Oct. 19, 2005) (internal citation omitted); *accord Adobe Sys. Inc. v. Coffee Cup*

23   *Partners, Inc.*, 2012 WL 3877783, at *5 (N.D. Cal. Sept. 6, 2012) (citing same).

24         Defendants concede they have been aware of the license agreement since March 2020 (Dkt.

25   No. 95 at 3:8-16) and raised it as the basis for seeking leave to amend in opposition to Plaintiffs'

26   prior motion to dismiss/strike (Dkt. No. 78 at 9:3-13).  Yet, Defendants did not revisit this issue

27   when Plaintiffs sought their agreement on filing the TAC, and instead ***stipulated*** that "because the

28   scope and theory of Plaintiffs' Lanham Act claims against Defendants are not materially expanded

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3647357.4                                          - 3 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                                        5:18-CV-07182-EJD

1   by Plaintiffs' proposed amendments… they would need to seek leave to amend their operative

2   Counterclaim if they intend to assert additional counterclaims."   Dkt. No. 88 at 2:19-22.

3   Consequently, Defendants are judicially estopped from attempting to allege new fraud in the

4   procurement and naked licensing theories since they agreed they would not do so without seeking

5   leave to amend.  *See Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th

6   Cir.1996) (judicial estoppel "precludes a party from gaining an advantage by taking one position,

7   and then seeking a second advantage by taking an incompatible position"); *see also Helfand v.*

8   *Gerson*, 105 F.3d 530 (9th Cir. 1997) ("judicial estoppel applies to a party's stated position,

9   regardless of whether it is an expression of intention, a statement of fact, or a legal assertion").  On

10  the above grounds alone, the Court should strike the Seventh and Nine Affirmative Defenses.

11  **B.      Defendants' Reliance on Neo4j USA's Purported Status as a Licensee of the**
12          **Neo4j® Mark Violates the Northern District's Local Rules Governing**
           **Reconsideration of Interlocutory Orders**

13          Plaintiffs' moving papers argued that the doctrines of claim preclusion and law of the case

14  barred them from reviving their Seventh and Ninth Affirmative Defenses. *See* Dkt. No. 93 at 12:13-

15  14:24. Defendants did not address these arguments in their opposition, thereby conceding that these

16  doctrines apply and that they are bound by the Court's prior dismissal with prejudice of their

17  cancellation and abandonment counterclaims and affirmative defenses.  Thus, the only possible

18  avenue for them to attempt to revive these defenses is to seek leave for reconsideration of the

19  Court's prior orders as provided by Civil Local Rule 7-9.

20          To be sure, Defendants admit that the real reason they reasserted their Seventh and Ninth

21  Affirmative Defenses is because they allegedly discovered a "new fact," namely that Plaintiffs

22  produced an intercompany license agreement allegedly referencing Neo4j Sweden as owner of the

23  Neo4j® Mark. Dkt. No. 95 at 3:8-16, 4:3-11.  Defendants argue that this justifies their revival of

24  their Seventh and Ninth Affirmative Defenses.   However, they are improperly seeking

25  reconsideration of this Court's prior orders without complying with Civil Local Rule 7-9, which

26  mandates that a party must first seek leave of court before it can file a motion for reconsideration

27  of any interlocutory order.  Since Defendants failed to properly seek leave, the Court should strike

28  these affirmative defenses as a consequence for violating the rules.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3647357.4                                          - 4 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                         5:18-CV-07182-EJD

1    Even if Defendants had followed the rules, they cannot meet the perquisites enumerated by

2    Civil Local Rule 7-9.  A key requirement is they must establish that the new fact or evidence was

3    unknown to them despite the exercise of reasonable diligence to procure the information.  *See* Civ.

4    L.R. 7-9(b)(1). This is because a motion for reconsideration cannot "be used to raise arguments or

5    present evidence for the first time when they could reasonably have been raised earlier in the

6    litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *accord Turner*

7    *v. City & Cty. of San Francisco*, 892 F.Supp.2d 1188, 1219-1224 (N.D. Cal. 2012) (denying

8    reconsideration where plaintiff failed to show that it could not have offered a new fact prior to the

9    Court granting defendants' motion to dismiss).  Further, reconsideration is an "extraordinary

10   remedy, to be used sparingly in the interests of finality and conservation of judicial resource" and

11   should not be granted "absent highly unusual circumstances."  *Turner*, 892 F.Supp.2d at 1224

12   (internal quotes and citations omitted).  Defendants likely did not move for reconsideration since

13   they previously raised Neo4j USA's status under the license agreement in opposing Plaintiffs' last

14   motion and would risk sanctions in improperly seeking reconsideration.  *See* Civ. L.R. 1-4, 7-9(c).

15        Nonetheless, Defendants argue that the license agreement constitutes a new fact because it

16   was produced in discovery by Neo4j Sweden on March 30, 2020.  Dkt. No. 95 at 3:8-16; Dkt. No.

17   95-1 at ¶¶ 2-5.  As a result, Defendants did not have that agreement when they filed their opposition

18   to Plaintiffs' motion for judgment on February 25, 2020 and conceded their fraud in the

19   procurement counterclaim and defense were not viable.  *See id.; see also* Dkt. No. 63.  What

20   Defendants fail to explain, however, is why they did not immediately raise this issue ***before*** the

21   Court issued its order dismissing that counterclaim and defense with prejudice almost two months

22   later on May 21, 2020, or why they did not immediately seek leave for reconsideration thereafter.

23   *See* Dkt. No. 70.  Likewise, Defendants do not explain their failure to allege the existence of this

24   agreement in their Amended Answer to the Second Amended Complaint (Dkt. No. 71) and Second

25   Amended Counterclaim (Dkt. No. 72), which were filed on June 5, 2020.  Thus, Defendants are

26   barred from seeking reconsideration because they had more than a reasonable opportunity prior to

27   filing their answer to the TAC to raise arguments or assert counterclaims and defenses based on the

28   license agreement.  *See Kona Enters.*, 229 F.3d at 890; *Turner*, 892 F.Supp.2d at 1219-1224.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3647357.4                                     - 5 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                          5:18-CV-07182-EJD

1   Lastly, Defendants ignore that they argued this same "new fact" as the basis to obtain leave

2   to amend in opposition to Plaintiffs' motion to dismiss/strike.  Dkt. No. 78 at 9:3-13.  Plaintiffs

3   addressed why this was an insufficient basis to save their abandonment counterclaim and defense

4   in their reply.  *See* Dkt. No. 79 at 5:8-6:19, 9:15-10:14.  Since the Court found granting Defendants

5   further leave to amend would be futile, they have no basis to seek reconsideration on that same

6   issue.  *See* Dkt. No. 85 at 11:23-12:3.  Consequently, the Court should strike Defendants' Seventh

7   and Ninth Affirmative Defenses as they effectively violate Civil Local Rule 7-9.

8   **C.     The Existence of the License Agreement is an Insufficient Basis for**
        **Defendants to Revive their Cancellation Defense Based on Fraud in the**
9        **Procurement of the Neo4j® Mark**

10   Defendants make no effort to respond to Plaintiffs' opening arguments that a cancellation

11   defense based on Neo4j USA allegedly misrepresenting the dates of first use in the application for

12   the Neo4j® Mark remains invalid.  *See* Dkt. No. 93 at 17:16-18:5.  Thus, they once again conceded

13   they cannot reassert their Seventh Affirmative Defense on that theory.  *See* Dkt. No. 70 at 8:4-18.

14   The only argument that Defendants make to justify the reassertion of this defense is that Plaintiffs

15   failed to disclose that Neo4j Sweden was the owner of the Neo4j® Mark.  This is insufficient to

16   revive their cancellation defense based on fraud in the procurement of that mark.

17   As discussed in Plaintiffs' moving papers, Defendants must meet Rule 9(b)'s heightened

18   pleading standards and allege with particularity: (1) a false representation regarding a material fact

19   in the application; (2) Neo4j USA's knowledge or belief that the representation is false; (3) its intent

20   to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the

21   misrepresentation; and (5) damages proximately caused by that reliance.  *Hokto Kinoko Co. v.*

22   *Concord Farms, Inc.,* 738 F.3d 1085, 1098 (9th Cir. 2013).  A false representation in the original

23   trademark application may be grounds for cancellation ***only if all five of the above requirements***

24   ***are met***.  *See id.*

25   In their opposition, Defendants focus on the first element, i.e. the alleged misrepresentation

26   made by Neo4j USA, while ignoring that their Answer ***still*** fails to allege facts establishing Neo4j

27   USA's knowledge and intent.  This is not enough because the falsity and intent prongs are separate,

28   and "absent the requisite intent to mislead the PTO, even a material misrepresentation would not

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3647357.4                                          - 6 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                          5:18-CV-07182-EJD

1    qualify as fraud under the Lanham Act warranting cancellation." *In re Bose Corp.*, 580 F.3d 1240,

2    1243 (Fed.Cir.2009); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir.2001) (an

3    affidavit was fraudulent only if the affiant acted with scienter); *Scat Enterprises, Inc. v. FCA US*

4    *LLC*, 2017 WL 5749771, at *2 (C.D. Cal. June 8, 2017) (cancellation claim failed because

5    "[m]erely demonstrating that Plaintiff made a misrepresentation is insufficient to establish that

6    Plaintiff possessed the requisite intent to deceive").  Defendants' failure to allege a single fact

7    establishing Neo4j USA's willful intent to deceive is inexcusable since they had six months after

8    receiving the license agreement in March 2020 to conduct further discovery before the fact

9    discovery cutoff on all Lanham Act claims and defenses. *See* Dkt. No. 82.

10       More importantly, Neo4j USA's purported failure to disclose that Neo4j Sweden was the

11   owner of the Neo4j® Mark cannot amount to an intentional material misrepresentation.  Neo4j

12   USA was not required to disclose that information in the application under the USPTO's rules. *See*

13   T.M.E.P. § 1201.03(c) ("Frequently, related companies comprise parent and wholly owned

14   subsidiary corporations. Either a parent corporation or a subsidiary corporation may be the proper

15   applicant, depending on the facts concerning ownership of the mark. The USPTO will consider the

16   filing of the application in the name of either the parent or the subsidiary to be the expression of

17   the intention of the parties as to ownership in accord with the arrangements between them."); *see*

18   *also* T.M.E.P. § 1201.03(b) ("where the application states that use of the mark is by a related

19   company or companies, the USPTO does not require an explanation of how the applicant controls

20   the use of the mark").  This is because a parent and its wholly owned subsidiary have a complete

21   unity of interest. *See W. Fla. Seafood, Inc. v. Jet Restaurants, Inc*., 31 F.3d 1122, 1126-27 (Fed.

22   Cir. 1994) (separate entities that operate as a single entity in the eyes of the consuming public may

23   be treated as such for trademark purposes); *see also In Copperweld Corp. v. Independence Tube*

24   *Corp*., 467 U.S. 752, 772-73 (1984) ("a corporation may adopt the subsidiary form of organization

25   for valid management and related purposes" and that this structure "may improve management,

26   avoid special tax problems arising from multistate operations, or serve other legitimate interest").

27       Defendants conceded that Neo4j USA is the parent of Neo4J Sweden.  Dkt. No. 91 at 11:12-

28   15; Dkt. No. 72 at ¶¶ 87, 90.  They also have never alleged facts contesting that Neo4j USA and

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3647357.4                                        - 7 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                      5:18-CV-07182-EJD

1  Neo4j Sweden are "related companies" under the Lanham Act and do not allege otherwise in their

2  Answer.   As a result, the intercompany division of assets, such as a trademark, between Neo4j

3  USA and Neo4j Sweden as parent and wholly-owned subsidiary does not damage the validity of

4  the mark.  *See* 15 U.S.C. § 1055; *see also Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 104

5  F.3d 336, 340–41 (Fed. Cir. 1997) (complexity of a relationship with another party that was using

6  the same mark in a different territory did not render applicant's representation that it was exclusive

7  user of the mark did not represent a "conscious effort to obtain for his business a registration to

8  which he knew it was not entitled"); *Cont'l Distilling Corp. v. Old Charter Distillery Co.*, 188 F.2d

9  614, 620 (D.C. Cir. 1950) ("[a] court of equity, in order to do justice, does not hesitate to disregard

10  a corporate entity and to recognize that all the assets of a solvent wholly owned subsidiary are

11  equitably owned by the parent corporation").

12         Finally, Defendants' reliance on *Wella I*, and in particular Judge Nies' ***concurring opinion***,

13  to support the proposition that "a parent subsidiary relation does not support a theory that either

14  related party may apply for registration" is erroneous and improper.[1]  *See* Dkt. No. 95 at 4:14-6:13.

15  Defendants make the same error that the TTAB did by considering the non-controlling views of

16  Judge Nies on remand when the TTAB was reversed in *Wella II*.

17         In the *Wella* cases, a foreign corporation applied to register a WELLA mark and the USPTO

18  cited prior registrations owned by U.S. subsidiaries of applicant as confusingly similar under § 2(d)

19  as owned "by another."  In *Wella I*, the Federal Circuit reversed the TTAB's refusal to register a

20  trademark, finding that it was improper to cite registrations owed by "another" without regard to

21  the relationship between the companies.  In that regard, if the WELLA marks connoted only a single

22  source, then there could be no likely confusion.  The court found that the TTAB had misinterpreted

23  § 2(d) of the Trademark Act and that "the only issue for the [TTAB] to consider on the remand is

24  _____

25  [1] Defendants' citation to *Fusco Grp., Inc. v. Loss Consultants Int'l, Inc.*, 462 F.Supp.2d 321, 327 (N.D.N.Y. 2006) for the proposition that "Neo4j USA does not does not acquire ownership of a trademark through its registration of the mark" is similarly misplaced.  Dkt. No. 95 at 6:8-13. This non-controlling case did not address ownership of a mark in the context of a related company's prior use properly inuring to the benefit of the registrant as provided in 15 U.S.C. § 1055.  Rather, the issue was whether plaintiff had acquired the right to the mark at issue before defendant via prior use.  Here, Defendants do not dispute that Neo4j Sweden acquired the rights to the Neo4j® Mark via use in commerce before it became a wholly-owned subsidiary of Neo4j USA.

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3647357.4                                   - 8 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                5:18-CV-07182-EJD

1   whether, considering all the circumstances, there is a likelihood of confusion between the mark

2   sought to be registered and the four Wella U.S. marks which under section 2(d) would warrant

3   refusal of registration." *Wella I,* 787 F.2d at 1553; *see also Wella II,* 858 F.2d at 726.

4        After the case was remanded, the TTAB denied registration on a new and separate ground

5   that the applicant was not the owner of the mark, based on Judge Nies' "additional views" that if

6   applicant claims that it is the owner of all rights in these marks, it must change the title records of

7   the registrations owned by its subsidiaries, since there can be only one "owner" and nothing in the

8   Lanham Act confers a right to register on a non-owner, whether a licensee or subsidiary. *Wella II,*

9   858 F.2d at 727. The applicant appealed again, and the Federal Circuit held that in refusing the

10  mark on this new ground that had not been raised in the first appeal, the TTAB failed to carry out

11  the court's instructions.  *Id.* at 727-29.  It noted the majority of the court did not join in or accept

12  Judge Nies' "additional views."  *Id.* at 728. Instead, the majority limited the TTAB's authority on

13  remand to consideration of only the section 2(d) issue. *Id.*  The court then found that because the

14  parent owned substantially all of the stock of the subsidiary, it controlled the subsidiary's actions

15  and thus were the "same source" such that there was no likelihood of confusion.  *Id.* at 728-29.

16       The Court should therefore disregard Defendants' erroneous reliance on a concurring

17  opinion in *Wella I* and focus on the ***majority's holdings*** in *Wella I and Wella II.*   In doing so, it is

18  clear that USPTO would presume a unity of control over the Neo4j® Mark exists because Neo4j

19  USA wholly owns and controls Neo4j Sweden and no resulting likelihood of confusion by Neo4j

20  USA's registration of the Neo4® Mark. *See* T.M.E.P. §§ 1201.07(b), 1201.07(b)(i), 1201.07(b)(ii);

21  *see also* 15 U.S.C. § 1055 ("Where a registered mark or a mark sought to be registered is or may

22  be used legitimately by related companies, such use shall inure to the benefit of the registrant or

23  applicant for registration, and such use shall not affect the validity of such mark or of its registration,

24  provided such mark is not used in such a manner as to deceive the public.").  Since Defendants

25  have failed to allege any facts establishing that Plaintiffs used the Neo4j® Mark in a manner that

26  deceived the public or otherwise refuted Plaintiffs' unity of interest in that mark, any alleged failure

27  by Neo4j USA to disclose the explicit nature of its wholly controlled corporate group is immaterial

28  and cannot support a fraud in the procurement defense as a matter of law.

842\3647357.4                                                        - 9 -

Finally, Defendants insinuate that the "license agreement will also, on a proper evidentiary motion, show Neo4j USA lacks standing to bring the trademark claims at all." Dkt. No. 95 at 6:21-25. The Court should ignore Defendants' conjecture as they have had ample opportunity in their successive pleadings to allege specific facts establishing an alleged lack of standing. The fact that Defendants failed to allege such facts strongly suggests they would not matter. *See Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (plaintiff's claim she "might later establish some set of undisclosed facts" establishing antitrust injury not enough to survive a motion to dismiss) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 561 (2007)).   It is also improper for Defendants to ask the Court to consider "facts" alleged in opposition papers. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 fn 1 (9th Cir. 1998) (in ruling on a Rule 12(b)(6) motion, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss").

In impermissibly doing so, Defendants misconstrue the holdings in *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir.1977) and *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621 (2nd Cir.1980) as supporting their unsubstantiated standing argument.  However, both cases recognize that the **registrant** has standing to file a trademark infringement suit under 15 U.S.C. § 1114(1)(a).  It is indisputable that Neo4j USA is the **registrant** of the Neo4j® Mark (*see* Dkt. No. 93-1, Exh. 3 and Dkt. No. 93-2, ¶ 1), and since Neo4j USA and Neo4j Sweden are parties to this action, there would be no lack of standing due to the absence of an indispensable party even if Neo4j Sweden were the registrant rather than Neo4j USA. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1046 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013) (granting summary judgment on affirmative defense for failure to join indispensable party where subsidiary brought trademark infringement action and parent company that purported to be the actual owner of the marks was also a party to the action).

Accordingly, the Court should once again strike Defendants' Seventh Affirmative Defense with prejudice and make clear that Defendants may not reassert any fraud-in-the-procurement counterclaim or defense in any subsequent pleading filed in this action.

/ / /

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3647357.4                   - 10 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED COMPLAINT;                              5:18-CV-07182-EJD

1

2

**D.     Defendants Offer No New Facts or Law that Justify Their Attempt to Revive Their Abandonment Defense Based on Naked Licensing**

3     Defendants' opposition unsurprisingly confirms that they are re-alleging the same

4  abandonment defense based on Plaintiffs' alleged failure "to control the use of the Neo4J mark

5  when third parties modified and distributed the open source versions of the software." Dkt. No. 95

6  at 7:2-8.  Defendants then rehash their prior arguments that Neo4j Sweden never had contractual

7  control or actual control over the "millions" who downloaded source code for the Neo4j® graph

8  database software and modified and redistributed the source code under the GPL and AGPL

9  copyright licenses. *Id.* at 7:23-8:11.  They again seek to equate their naked licensing defense to the

10  one raised in *FreecycleSunnyvale v. Freecycle Network*, 626 F.2d 509, 516 (9th Cir. 2010) without

11  any consideration of the related companies doctrine. *Id.* at 8:11-9:2.  As the Court previously held,

12  however, Defendants cannot assert an abandonment defense based on these facts because the GPL

13  and AGPL are not trademark licenses and third party developers who modify the source code

14  contained within Neo4j® graph database software pursuant to these licenses do not have any right

15  to use the Neo4j® Mark.  *See* Dkt. No. 85 at 7:18-10:17; *see also* Dkt. No. 70 at 10:26-14:6.

16     Defendants also do not adequately explain how the alleged "new fact" resuscitates their

17  naked licensing theory in light of the Court's prior rulings.  Rather, they merely argue in passing

18  that Neo4j USA is asserting an "invalid registered trademark." Dkt. No. 95 at 7:9-10.  This is

19  irrelevant because even if the registration were invalid, which it is not, Plaintiffs' common law

20  rights in the mark would still persist and could still maintain infringement claims pursuant to 15

21  U.S.C. § 1125(a).  *See Far Out Prods.*, 247 F.3d at 997 (recognizing that common law rights to a

22  registered trademark continue even if registration was fraudulently obtained); *Brookfield*

23  *Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 fn 6, 8 (9th Cir. 1999) (recognizing

24  that 15 U.S.C. § 1125(a) applies to both registered and unregistered trademarks).

25     Defendants then argue that because Neo4j USA is allegedly a non-exclusive licensee of the

26  Neo4J® Mark, it "does not have standing to challenge that use" and "cannot control open source

27  software users' use of Neo4j Sweden's trademark." Dkt. No. 95 at 7:16-22.  Aside from not being

28  based on any plausible facts alleged, this argument is contrary to the Court's prior finding that

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3647357.4

- 11 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED COMPLAINT;

5:18-CV-07182-EJD

Neo4j Sweden did not license the Neo4j® Mark to third parties via the GPL and AGPL copyright licenses and that "[n]aked licensing does not occur where there is no trademark license at issue." Dkt. No. 85 at 7:27-8:25.  Indeed, Defendants made the **same** argument based on Neo4j USA's alleged status as non-exclusive licensee in their prior request for leave to amend (Dkt. No. 78 at 9:3-13), which the Court denied as futile (Dkt. No. 85 at 11:23-12:3).  Further, as noted above, there is no standing issue because Neo4j USA is the registrant for the Neo4j® Mark and Neo4j Sweden is also a plaintiff in this action.  Defendants also fail to reconcile that there are no facts alleged in the Answer that overcome the legal presumption that Neo4j USA and Neo4j Sweden continue to operate as "related companies" and their continued combined use of the NEO4J® Mark "shall not affect the validity of such mark." 15 U.S.C. § 1055; *see also See Hokto Kinoko*, 738 F.3d at 1098 (no naked licensing where subsidiary used parent company's trademark).

In addition, Defendants still fail to reconcile that their Ninth Affirmative Defense does not allege any facts establishing consumer confusion resulting from the licensing arrangement between Neo4j USA and Neo4j Sweden.  Nor can they do so because it is entirely permissible for a related company such as Neo4j Sweden to use the Neo4j® Mark in licensing source code to the software.  Without plausibly alleging any such facts, their naked licensing theory of abandonment fails as a matter of law.  *See Hokto Kinoko*, 738 F.3d at 1098 ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its trademark where the particular circumstances of the licensing arrangement suggests that the public will not be deceived") (internal quotes and citation omitted).

Finally, Defendants ignore that no formal quality control requirements are necessary where the agreement between a licensor and licensee is not considered an actual trademark license.  *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997) (recognizing that courts will not find existence of trademark license when authorization of trademark use is structured in such a way as to avoid misleading or confusing consumers as to origin and/or nature of respective parties' goods).  As the Court already found that the GPL and AGPL are not trademark licenses, Defendants cannot continue to maintain a naked licensing defense based on the purported absence of quality control provisions in those licenses.  Dkt. No. 85 at 7:27-8:25.  Accordingly, Defendants' open

Hopkins & Carley
ATTORNEYS AT LAW
San Jose ♦ Palo Alto

842\3647357.4

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED COMPLAINT;

5:18-CV-07182-EJD

1    source naked licensing theory should again be stricken with prejudice.

2         **E.    Defendants' Opposition Confirms that the Court Should Issue an Order to Show Cause as to Why it Should Not Sanction Defendants**

3

4         Defendants argue that sanctions are not warranted because they were merely attempting to

5    preserve their appellate rights in reasserting their Seventh and Ninth Affirmative Defenses.  *See*

6    Dkt. No. 95 at 9:4-13.  As detailed above, Defendants knew full well under *Lacey* their rights were

7    preserved after the Court dismissed their identically plead counterclaims, and are seeking

8    reconsideration by re-alleging those counterclaims and defenses based on a single "new fact" that

9    they previously presented to the Court.  If it was not clear before that Defendants were acting in

10   bad faith by ignoring the Court's prior orders and their stipulation with counsel, it is certainly clear

11   now that Defendants are effectively seeking reconsideration of those orders without complying

12   with Civil Local Rule 7-9, which in and of itself warrants sanctions.  *See* Civil Local Rule 1-4

13   ("[f]ailure by counsel or a party to comply with any duly promulgated local rule or any Federal

14   Rule may be a ground for imposition of any authorized sanction").

15        What is even more egregious is that Defendants' attempt to revive their affirmative defense

16   seeking to cancel the Neo4j® Mark is not based on binding legal authority.  As detailed above,

17   Defendants admittedly rely upon a concurring opinion in *Wella I* to argue that a "parent-subsidiary

18   relation does not support a theory that either related party may apply for registration."  Not only

19   did the majority in *Wella I* reject that premise, but the court in *Wella II* admonished the TTAB for

20   doing the exact same thing Defendants are attempting to do in this litigation.  To be sure, T.M.E.P.

21   §§ 1201.07 et seq. incorporated the majority opinion in the *Wella* cases that is inapposite to

22   Defendants' position.  This is probably why Defendants refused to provide any legal authority to

23   justify their actions when requested by Plaintiffs before filing the present motion.

24        Plaintiffs have now incurred substantial attorneys' fees as a direct result of Defendants'

25   refusal to follow the rules and reliance on bad law.  Indeed, Plaintiffs would have never needed to

26   file this motion had Defendants followed the Court's orders, the Local Rules and controlling

27   authority.  Accordingly, the Court should issue an order to show cause as to why Defendants should

28   not pay the attorneys' fees incurred by Plaintiffs in filing this motion as sanctions to ensure that

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3647357.4                                          - 13 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' ANSWER TO THE THIRD AMENDED
COMPLAINT;                                                                    5:18-CV-07182-EJD

1   Defendants follow the rules and the law.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991);

2   *see also Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

3   **III.    CONCLUSION**

4           For the foregoing reasons and those set forth in Neo4j USA's moving papers, Plaintiffs

5   respectfully request that the Court strike with prejudice Defendants' Seventh Affirmative Defense

6   for Cancellation of Trademark Procured by Fraud and Ninth Affirmative Defense for Naked

7   License Abandonment of Trademark asserted in Defendants' Answer to the Third Amended

8   Complaint. Plaintiffs also respectfully request that the Court consider sanctioning Defendants for

9   their bad faith litigation conduct that has unnecessarily increased the costs of litigation and caused

10  undue prejudice and delay.

11  Dated:  November 20, 2020                         HOPKINS & CARLEY
                                                      A Law Corporation
12

13

14                                            By: */s/ Jeffrey M. Ratinoff*
                                                  Jeffrey M. Ratinoff
15                                                Attorneys for Plaintiff
                                                  NEO4J, INC., NEO4J SWEDEN AB
16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO