Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,
Plaintiffs,
v.

PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,
Defendants.

AND RELATED COUNTERCLAIMS

CASE NO. 5:18-cv-7182 EJD

**DECLARATION OF JOHN MARK SUHY IN SUPPORT OF DEFENDANTS CONSOLIDATED OPPOSITION AND MOTION FOR SUMMARY JUDGMENT**

Date: March 25, 2021
Time: 9:00 a.m.
Dept. Courtroom 4, 5th floor
Judge: Hon. Edward J. Davila

I, John Mark Suhy, declare:

1. I am a defendant and counter-claimant in this action. I have personal knowledge of the facts set forth in this declaration.

2.     The PT defendants use of the Neo4J trademark is nominative to identify NEO4J as a company and the Neo4J software and for comparative advertisement to provide knowledgeable consumers with information for fair competition.

3.     The PureThink references are to Sweden's open source versions of Neo4J and proper nominative use of Sweden's mark.

4.     iGov was formed as a separate entity by Suhy for several reasons. The restrictions are for purposes of non-competition and void.

5.     PureThink and iGov used the same office address for a mailing address until iGov could setup a new office.   iGov did not "use" the office address other than for correspondence. The support telephone number is a 3rd party number that neither PureThink or iGov owned.  The website template used was a commercial template.  PureThink and iGov purchased the same template because Suhy was familiar with it. iGov did not use PT's computers.

6.     Solicitations to Sania National Laboratories were for use of Sweden's open source Neo4J.

7.     USA interfered with PT's potential business with the IRS. iGov did not take over PT's potential business relationship with the IRS. A true and correct copy of an email showing USA's interference is attached as Exhibit 1.

8.     Suhy and PureThink did develop the Neo4j Government Edition. the PT Defendants do not "tout" PT's prior relationship; they said it was terminated.

9.     iGov references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement.

10.    The email address is for Sweden's open source Neo4j for inquires for that product. The email address was discontinued in the hopes USA would discontinue this litigation. "Neo4j Enterprise" is needed to distinguish between the open source "Neo4j Community" and "Neo4j Enterprise" distributions, both of which are built when compiling the Neo4j source code. iGov does not "tout" PT's prior relationship; they said it was terminated.

11.    iGov offers support for both Neo4j Enterprise open source licensed distributions, and ONgDB Enterprise open source distributions. Neo4j Enterprise distributions below 3.5 are still in use and available to the public. iGov no longer offers distributions from it's website and only recommends ONgDB Enterprise distributions. iGov links to the GraphFoundation download page.

12.     iGov used neo4j@igovsol.com and neo4j.html as a way to inquire about iGov support services and support for the neo4j open source database. 'neo4j' is Sweden's Github repository name for the official Sweden open source Neo4j repository.  It was not just a means for consumers to inquire about ONgDB but of the services and support around open source neo4j and ongdb open source license support.

13.    Neo4j Enterprise and ONgDB Enterprise are open source and free to use under the open source AGPL license.  After versions 3.4.x – the term Neo4j Enterprise Edition was not applicable as Neo4j Inc stopped contributing to the enterprise code. iGov does not promote Neo4j Enterprise

Edition 3.5.x as being open source. Many of the exhibits are showing the same page over and over from different snapshot dates but with matching content giving the illusion that there were more pages than existed. ONgDB 3.5.5 is a drop in replacement for Neo4j 3.5.5 (Community and Enterprise commercial.) After reading Plaintiffs' Fact 21 - iGov realizes that the next line needs to have the grammar cleaned up to say: "The AGPLv3 Open Source License, has no limitations on causal cluster instances, cores or production usage"

14. GraphStack is a graph development stack aimed at building out large scale AI and graph solutions. GraphStack is to promote iGov software packages and solution development, not specifically Neo4j. Both Neo4j and ONgDB will drop into GraphStack – so using the names is important to explain that GraphStack will work with both.

15. Suhy and iGov are not parties to the Partner agreement. The PT defendants have not used USA's disputed trademark to market, sell or service and USA products. All marketing and services are limited to Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL.

16. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement.

17.     All exhibits referenced in support of Plaintiffs' fact 26, except for exhibit 14, (which are Exh. 15, 16, 17, 18, 21, 62-65 ) are all for iGov Inc sites, but have been incorrectly referenced in fact 26 as being PT Defendants.

18.     When Sweden's  Neo4j open source code is compiled from the official Sweden Neo4j Github repository - it creates 2 distributions called "Neo4j Community" and "Neo4j Enterprise".  Enterprise is a standard term for software used for business as in an "Enterprise" is a generic identifier.

19.     ONgDB is a fork of Sweden's open source Neo4j, nominatively identified as such, and licensed under the AGPL.

20.     PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products.

21.     The iGov and PT websites state that PT has ceased their partnership with Neo Technology and Neo4j Inc. This shows a lack of sponsorship or endorsement.

22.     Because ONgDB is a fork of Neo4j which the core code is unmodified, the release notes and whats new page are relevant and provide important information.

23.     The Sweden GitHub repository for open source Neo4J provides content including USA's documentation. Under the GitHub Terms of Services, all users may use all content. Referring licensees to such documentation is permissive. Nevertheless, when Neo4j Inc complained  - the links were removed.

24.     PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products.

25.     Regarding evidence purported to support Plaintiffs' fact 35, Ratinoff Decl. Exhibit 115 shows an anonymous user named "stephanie" asking about trying to use ONgDB with Neo4j Desktop, it does not mention a specific version or anything more.  There is no way of knowing if there was a "compatibility" issue, in fact the issue could have been caused because of an incorrect version number and could have occurred with Neo4j Enterprise distributions packaged by Neo4j.  Furthermore, USA responds and in no way explains or tells the user that ONgDB is not even provided by them.  The omissions in Neo4j's response would actually cause confusion because they are not saying anything about ONgDB being a 3rd party product. The confusion is caused by USA and Sweden's dual channel marketing of commercial and open source software through two different companies with the same name.  Ratinoff Decl. Exhibit 116 is simply forwarding this post to Brad Nussbaum.

26.     Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners. Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.

27.     For distributions of "ONgDB" "Neo4j Enterprise" and "Neo4j EE", defendants made all the facts clear and never misled consumers. The inference drawn by Plaintiffs is not supported by the evidence:  Exhibit 35 shows no confusion or misleading of customers.   The user is asking a question on the ongdb github issue list and the content does not lead to any

confusion. Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead. "where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?" Exhibit 42 shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB. Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.  The statements in exhibits are true and not misleading.

28.     The technical issues could be caused by Neo4j Core code that it does not modify or simply because an end-user did not read the instructions on configuring a specific feature.  I am not aware of a bug fix for this issue indicating it could have just been user error. The inference drawn is not supported by the statement:  In many of the exhibits Neo4j tries to show a problem, but does not show any proof that the problem was simply user error or configuration or an analysis of what the problem was. Exhibit 121 does not give enough information to identify if there is a technical issue, and furthermore the user from the exhibit said that they figured out the problem on their own indicating it was user error. Exhibit 122 seems to indicate that a plugin or misconfiguration of the JVM is the problem. Exhibit 123 indicates that the user is using ONgDB 3.2.3 which would have had the same source code as the Neo4j Enterprise branded distribution.  Furthermore it seems that the issue was with the a 3rd party plugin called "tinker pop" and therefore was not even specific to Neo4j or ONgDB.  Because the source code for Neo4j and ONgDB was the same for that specific 3.2.3 version - if there

was a technical issue - then it would have also been present in the Neo4j Enterprise 3.2.3 version as well. USA charges customers and provides technical support for its commercial Neo4J products because consumers have technical issues with their "commercial" Neo4J products as well. Technical issues with software is not indicative of any difference in the software.

29. I did not remove commercial restrictions imposed by Neo4j. I followed the instructions of the License.txt copyright holder (free software foundation) making it verbatim. The commons clause restrictions were still in effect and referenced in 1000s of files which I did not modify because the other files were copyrighted to Neo4j Sweden. Following the rules for the License.txt file did not remove any restrictions on the software.

30. The following statements are all truthful: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number"; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3"; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition"; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number."; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" ; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" (7) "ONgDB is a drop in replacement for the Neo4j

Community and Enterprise branded distributions"; (8) "[ONgDB] is an open source fork of #Neo4j"; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open."

31.    The PT Defendants did not all say what is represented in Plaintiff's fact 78. Only iGov's website stated: that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Defendants do not sell ONgDB, ONgDB is licensed under AGPL and AGPL is an open source license for free software. The PT defendants are not using the Neo4J mark to sell USA's commercial software.

32.    None of the evidence cited identifies any party that would have used Neo4j EE.  Further, Plaintiffs present no evidence that they competed with GraphGrid or provided similar services.  Plaintiffs are misidentified as if they both do the same thing. Sweden is not a party to the cause of action. Sweden licenses the open source software; USA does not. See APGL license. USA does not support open source software licensed by Sweden.

33.    Plaintiffs did not release Neo4j EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause, as it was Neo4J Sweden who made the release, and not Neo4J USA.

34.    The author of the commons clause, Heather Meeker, clarifies the intention and meaning of the commons clause as well. Support services are not barred as they do not consist entirely or substantially of the Software or Functionality of the Software as limited in the commons clause. The restriction of services is using the software as a service as in a SaaS

implementation. A true and correct print from comment from Neo4J's Heather Meeker located on Sweden's Neo4J's repository on this issue is attached as Exhibit 2.

35. AGPL §7 allowed me to remove the commons clause from the Neo4J Sweden Software License. I did not remove any commercial restrictions. I simply ensured the LICENSE.txt file was verbatim as required by the copyright holder of the LICENSE.txt files : the free software foundation. I did not modify any other files, and the commons commercial restrictions were still in effect. Following the FSF copyright instructions for the AGPL License.txt file did not remove any restrictions from the distribution - as the restrictions were documented across the repository. Following the rules for just the specific files did not remove legal terms from the distributions. All the other files which Neo4j held the copyright for were not modified by me and clearly stated that the commons clause was there.

36. PT, Suhy, and iGov Inc did not use the term "equivalent" in any references. For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code. So this statement would be true for specific versions of Neo4j and ONgDB. PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent. Furthermore - ONgDB is a current free fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date. This is allowed under the AGPL.

37. There are no pre-release terms in the GitHub repository. It's possible that a pre-release agreement was added to the compiled packages -

but that would be in the actual download of the package, not the GitHub source code as they state. Furthermore - enterprise code was not available in v3.5.0-RC1 but it was available in 3.5.0-beta03.

38. The AGPL license.txt file is copyrighted to the free software foundation. Suhy followed the guidance from the free software foundation relating to the license being verbatim. By following the FSF copyright guidance he did not remove the legal terms from the distribution as a whole. There are 1000s of Neo4j files in the repository which clearly state the commons clause is still part of the license. I.E. Using the verbatim AGPL license content as instructed by the Free software foundation did not remove the commons license in any way as it was stated in many other places. There is no obligation to repeat Sweden's copyright notice on every file. And Sweden owns the copyright (Undisputed Fact 80) USA has not standing to argue about the copyright notice. Phase 1 does not address the DCMA claim.

39. ONgDB is not a "patchwork" or "glue" of code - it has been proven in large production deployments. After the enterprise code was closed - I and other contributors continued it's development. The enterprise code came from Neo4j - so it is calling the code it developed a patchwork of code.

40. The older approach for the enterprise features (which include the tests) is more stable and higher quality than newer re-implementations. See GitHub bug tickets. I have not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software.

41. The neo4j word is only used in a descriptive manner. The Neo4j® Mark was not used.

42.     The statements referenced are true. The statements made by Suhy and iGov were made to educate the community about ONgDB and Neo4j.  Furthermore - the word drop-in replacement was used which is still true for all versions of ONgDB.  The term "drop in replacement/equivalent" not used in combination the way Neo4j fact suggests.  The term "drop in replacement" was used on its own.

43.     The agencies mentioned in Plaintiff's fact 105 would not have have been effected by the commons clause restriction as they are using ONgDB for their projects and not creating or selling anything.

44.     Price is the material concern on the purchase, not the license or drop in capability. This is obvious in the analysis. Consumers can test whether the software is drop in and review the license. As users of ONgDB do not sell the software, whether the commons clause is valid or not has no impact. Under the AGPL, if you use the open source software internally, as for example what the IRS does, there is no issue with the commons clause. Consumers do not face any copyright infringement claim from Sweden as they are licensed under the AGPL.

45.     Because ONgDB is an unmodified fork of Neo4j Core code, and a superset of Neo4j Core - then anyone who is currently using Neo4j commercial or open source distributions can switch over to ONgDB.   In other words - people that use Neo4j are the people who would want to switch to ONgDB if they wanted enterprise features with no limitations on cores or cluster instances for free.

46. Neo4j USA does not directly respond to contracts. Neo4j partners bid on a contracts. Purthink has no contracts with the government. Igov does not license software to the government.

47. When I made the AGPL license verbatim - the commit message clearly stated the intention: The commit which replaced the modified License.txt file copyrighted to the FSF has a commit message which clarifies the intent of replacing the modified license with the verbatim. “Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license.”

48. *Reserved*

49. IRS created a competitive procurement which Neo4j or Resellers could have competed on. I am not aware of Neo4j Inc or other resellers providing competitive responses to the procurement.

50. The word Neo4J is used to describe various software versions and companies, so it is not distinct, and the recognition is not as a company brand but as a type of graph database widely distributed on GitHub under open source licenses. For example the Wikipedia entry for Neo4j is for the graph software, not the company.

51. USA provides no evidence that Sweden controlled quality on Sweden’s software the years before the software and trademark was licensed to USA.

52. The Partner Agreement seeks to prevent PT from dealing in all versions of Sweden’s Neo4J open source software when USA is not the licensor under the AGPL and the AGPL freely allows anyone to use the software.

53.    The purpose of USA' restriction in the Partner Agreement is to prevent any terminated partner from supporting Sweden's open source version of Neo4J which is unlawful.

54.    USA wrongfully and successfully asserted the unlawful restriction to interfere with PT efforts to get business from the IRS.

55.    USA even admits, the open source version has the same great features as the commercial version.

56.    Data and queries, the key function of a databases, from either version work on both versions.

57.    ONgBD allows users of other versions of Neo4J (including older versions of commercial and open source) to drop in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database. Defendants have not heard of any consumer suggest otherwise.

58.    Any user of open source software from Sweden's Neo4J GitHub repository are allowed to use all content on the site. This is permitted under the GitHub Terms of Service.  GitHub Terms of service A. 4 definition of Content and ¶ D 5 license. (including "You may grant further rights… " inferring rights to End Users under the GitHub license may not be limited.)

59.    Neo4J is a type of database that must be identified so consumers looking for the database may find it.

60.    The common clause, valid or not, only restricts licensees from selling the software. It does not prevent a licensee from internally using the software.

61. I never asked consent for the PSA to be assigned to iGov and never obtained consent from USA for an assignment. USA was terminating the PSA and there was no reason for an assignment. Purethink did not sell assets, stock to or merge with iGov. They are distinct entities. iGov does not market, sell or provide services to USA's software.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 15, 2021 in Reston, Virginia.

John Mark Suhy

**FILER'S ATTESTATION**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.
Dated: January 15, 2021

_____*/s/ Adron G. Beene*_________

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY

**EXHIBIT 1**



John Mark Suhy <jmsuhy@purethink.com>

## FW: Termination of Neo4j Solution Partner PureThink LLC

**Dunn Michael C** <Michael.C.Dunn@irs.gov> Wed, Jul 12, 2017 at 6:13 AM
To: "Suhy John M Jr [Contractor]" <John.M.SuhyJr@irs.gov>, "jmsuhy@purethink.com" <jmsuhy@purethink.com>
Cc: Hess Chris <Christopher.E.Hess@irs.gov>, Goss Renee Y <Renee.Y.Goss@irs.gov>, Rosenmerkel Lisa S <Lisa.S.Rosenmerkel@irs.gov>, Butler Jeff <Jeff.Butler@irs.gov>

Hello John Mark,

We received this notification from Jason (Neo4j), and so it's been passed onto Procurement too: Vivian and Genevieve. One question I have for this existing contract is if services are stopped due to what Neo4j states below regarding Purethink's inability to provide open-source version support in the below? Now this is me asking from an initial statement, and so there's probably also a need to either work through Renee to the Procurement folks and/or talk with them too, since I figured they're going to reach out after receiving this email from Jason.

"Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services and support on open source versions of Neo4j products… prohibit them from providing any consulting services on these products during the term of their agreement and for a period of thirty six (36) months following termination. Neo will work with IRS to ensure that it receives the correct product and services from an authorized Neo4j partner."

---

**Michael C. Dunn**

Data Management Division/Business Systems Planning

Research, Applied Analytics, & Statistics

(o) 202.803.9009

---

**From:** Dunn Michael C
**Sent:** July-12-17 6:03 AM
**To:** 'Jason Zagalsky' <jason@neo4j.com>
**Cc:** vvivian.d.daniels@irs.gov; John Broad <john.broad@neo4j.com>; Goss Renee Y <Renee.Y.Goss@irs.gov>
**Subject:** RE: Termination of Neo4j Solution Partner PureThink LLC

Hello, Thank Jason. I'm looping in Renee Goss, our COR on the Purethink contract.

---

EXHIBIT 1

**Michael C. Dunn**

Data Management Division/Business Systems Planning

Research, Applied Analytics, & Statistics

(o) 202.803.9009

**From:** Jason Zagalsky [mailto:jason@neo4j.com]
**Sent:** July-11-17 7:49 PM
**To:** Dunn Michael C <Michael.C.Dunn@irs.gov>
**Cc:** vvivian.d.daniels@irs.gov; John Broad <john.broad@neo4j.com>
**Subject:** Termination of Neo4j Solution Partner PureThink LLC

July 11, 2017

Internal Revenue Service

Attn: Michael Dunn

Cc: Vivian Daniels

Department of Treasury

To: Michael Dunn

Re: Termination of Neo4j Solution Partner PureThink LLC (“PureThink”)

I write to inform you that Neo4j, Inc., formerly Neo Technology, Inc. ("Neo"), recently terminated its partnership agreement with PureThink. I understand that IRS has a relationship with PureThink relating to Neo’s products. Because this change in PureThink’s status may affect the services and support IRS receives, Neo wanted to notify IRS of this development and to offer Neo’s assistance in transitioning IRS to an authorized Neo4j partner to ensure IRS continues to receive the support it requires in a manner that respects Neo’s intellectual property rights and contractual relationships.

Neo understands that IRS entered into an agreement with PureThink in September 2016 to purchase a commercial license to Neo4j Government Edition and for consulting services and support. We understand that the term of that agreement expires on September 22, 2017. We further understand that IRS paid PureThink $229,000 for a Neo4j subscription and the consulting services.

Regarding IRS’s purchase of a Neo4j subscription, Neo still has not received a purchase order from PureThink. As a result of PureThink’s termination, please be advised that PureThink is no longer authorized to purchase a Neo4j subscription on behalf of IRS. Neo will work with IRS to purchase a subscription through an authorized Neo4j partner.

Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services and support on open source versions of Neo4j products. This prohibition applies not only to the APGL-licensed Enterprise Edition but also to the GPL-licensed Community Edition. While IRS has stated its intention to proceed with the AGPL-licensed Enterprise Edition, please understand that Neo’s agreements with its partners, including PureThink, prohibit them from providing any consulting services on these products during the term of their agreement and for a period of thirty six (36) months following termination. Neo will work with IRS to ensure that it receives the correct product and services from an authorized Neo4j partner.

We appreciate that this news may come as a surprise to IRS, and Neo wanted to make sure that IRS was promptly notified of this action so that it can make the appropriate decisions. Neo is available to answer any questions you may have and to assist in transitioning your subscription and support to an authorized Neo4j partner. We appreciate your continued interest in Neo4j and look forward to continuing to work with you.

Please do not hesitate to reach out to me with any questions regarding this notification.

**EXHIBIT 1**

Sincerely,

**Jason Zagalsky**

**Federal Technical Account Manager | Neo4j**

410-280-9697 | jason@neo4j.com






**EXHIBIT 1**

# EXHIBIT 2

**heathermeeker** commented on Aug 23, 2018

Bear with a legal technicality, but the Commons Clause is not a restriction on performing services -- it can't be. The license grant for the software is in the underlying license, and the Commons Clause claws back one kind of commercial use right. So, picture the original grant as a Venn diagram circle, and the excluded right to Sell as a little circle inside that. Providing services was not in the big circle in the first place, so the small circle can't change it.

But perhaps you are thinking, can I use the software in order to provide my services? That's a reasonable question. In other words, is the right to use the software in support of professional services -- like development, maintenance, or analysis, clawed back by the exclusion? No, because that use is not a service that derives its value from the functionality of the software. Your professional services derive their value from your expertise, not what the software does. The exclusion has to cover services, though, or it would have a big loophole. Offering the software via SaaS as a substitute for distributing it, and selling that access, is the main kind of service that is meant to be limited. Your consulting is not an economic substitute for the software. SaaS is.

Of course, I'm not your lawyer, so technically I can't give you advice. The clause means what it means, and although I led the drafting of the clause, that doesn't mean I have authority to interpret documents. That's not how the law works -- in the end, only a court has that power, no matter who wrote the document. But I hope to be helpful and dispel any confusion.

**EXHIBIT 2**