1　John V. Picone III, Bar No. 187226
　　jpicone@hopkinscarley.com
2　Jeffrey M. Ratinoff, Bar No. 197241
　　jratinoff@hopkinscarley.com
3　HOPKINS & CARLEY
　　A Law Corporation
4　The Letitia Building
　　70 South First Street
5　San Jose, CA  95113-2406

6　*mailing address:*
　　P.O. Box 1469
7　San Jose, CA 95109-1469
　　Telephone:　　(408) 286-9800
8　Facsimile:　　(408) 998-4790

9　Attorneys for Plaintiff and Counter-Defendants
　　NEO4J, INC. and NEO4J SWEDEN AB

10

11　　　　　　　　UNITED STATES DISTRICT COURT

12　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

13　NEO4J, INC., a Delaware corporation, and    CASE NO.  5:18-cv-07182-EJD
　　NEO4J SWEDEN AB, a Swedish
14　corporation,                                **CONSOLIDATED REPLY IN SUPPORT**
　　　　　　　　　　　　　　　　　　　　　　**OF PLAINTIFFS' MOTION FOR**
15　　　　　　　　　Plaintiffs,                  **SUMMARY JUDGMENT AND**
　　　　　　　　　　　　　　　　　　　　　　**OPPOSITION TO DEFENDANTS'**
16　　　　v.                                    **CROSS-MOTION FOR SUMMARY JUDGMENT**

17　PURETHINK LLC, a Delaware limited
　　liability company, IGOV INC., a Virginia      Date:　　April 15, 2021
18　corporation, and JOHN MARK SUHY, an           Time:　　9:00 a.m.
　　individual,                                   Dept.:　　Courtroom 4, 5th Floor
19　　　　　　　　　Defendants.                    Judge:　　Hon. Edward J. Davila

20　AND RELATED COUNTERCLAIM.

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  EVIDENTIARY OBJECTIONS .......................................................................... 1

III.  LEGAL ARGUMENT ......................................................................................... 2

A.  Neo4j USA Has Standing to Assert its Lanham Act Claims Against Defendants ................................................................................................ 2

B.  Defendants Do Not Establish that the Neo4j® Mark is Invalid ............... 4

1.  Defendants Fail to Meet Their Burden of Proof Establishing that the Registration for the Neo4j® Mark was Fraudulently Obtained ................. 5

2.  Defendants Fail to Establish the Naked Licensing of the Neo4j® Mark ......................................................................................................... 8

C.  Defendants Have Not Engaged in Nominative Fair Use of the Neo4j® Mark ......................................................................................................... 9

1.  The Undisputed Facts Establish that Defendants Impermissibly Used the Neo4j® Mark to Refer to Their Products and Services ............ 10

2.  The Undisputed Facts Establish that Defendants Used the Neo4j® Mark More Than Was Reasonably Necessary and Not for the Purpose of Comparative Advertising ........................................................ 12

3.  Defendants Misappropriate the Cachet of the Neo4j® Mark ................. 14

D.  Defendants Fail to Address their Liability for Infringement as Ex-Licensees ...... 16

E.  Defendants' Licensee Estoppel Arguments are Meritless .................................. 17

F.  Plaintiffs are Entitled to Summary Judgment on Neo4j USA's False Advertising Claims Under the Lanham Act and the UCL ................................... 18

1.  The Terms of the Neo4j Sweden Software License Do Not Give a Licensee the Right to Remove Restrictions Imposed by the Copyright Holder and Licensor of the Underlying Software .................. 18

2.  Defendants' Claims that ONgDB is a Drop-in Replacement for Equivalent versions of official Neo4j® EE are Demonstratively False ......................................................................................................... 22

3.  Defendants Falsely Advertising ONgDB as a Free version of Neo4j® EE licensed under the APGL is Material to Customers' Decisions .................................................................................................. 23

G.  False Designation of Origin ................................................................................ 24

H.  Plaintiffs are Entitled to Either Preliminary or Permanent Injunctive Relief ....... 25

I.  The Court Should Deny Defendants' Cross-Motion for Summary Judgment ...... 25

IV.  CONCLUSION ................................................................................................... 25

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Adidas America, Inc. v. Athletic Propulsion Labs, LLC*,
  120 U.S.P.Q.2d 1303, 2016 WL 3896826 (D. Or. 2016) ....................................... 3

5

6

*AECOM Energy & Constr., Inc. v. Ripley*,
  348 F.Supp.3d 1038 (C.D. Cal. 2018) ....................................................... 24

7

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
  2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ............................................ 10

8

9

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) .............................................................. 21

10

11

*Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*,
  367 F. Supp. 3d 1072 (N.D. Cal. 2019) ...................................................... 5

12

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011) .............................................................. 20

13

14

*In re Bose Corp.*,
  580 F.3d 1240 (Fed.Cir.2009) ................................................................ 6

15

16

*Brookfield Commc'ns Inc. v. West Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir.1999) ........................................................... 11, 15

17

*Cont'l Distilling Corp. v. Old Charter Distillery Co.*,
  188 F.2d 614 (D.C. Cir. 1950) ............................................................... 8

18

19

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984) ......................................................................... 8

20

*DEP Corp. v. Interstate Cigar Co.*,
  622 F.2d 621 (2nd Cir.1980) ................................................................. 3

21

22

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*,
  448 F.3d 1118 (9th Cir. 2006) .............................................................. 11

23

24

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ......................................................................... 8

25

*Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*,
  2010 WL 2104239 (W.D. Wash. May 19, 2010) ............................................ 11

26

*Far Out Prods., Inc. v. Oskar*,
  247 F.3d 986 (9th Cir. 2001) ............................................................. 4, 6

27

28

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
    547 F.3d 1213 (9th Cir. 2008)...................................................................................... 2

5

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993) (per curiam)...................................................................... 2

6

7

*Heaton Distributing Co. v. Union Tank Car Co.*,
    387 F.2d 477 (8th Cir. 1967)...................................................................................... 17

8

9

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    738 F.3d 1085 (9th Cir. 2013).............................................................................. 5, 8, 9

10

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    810 F.Supp.2d 1013 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013)............ 3

11

12

*Horphag Research Ltd. v. Garcia*,
    475 F.3d 1029 (9th Cir. 2007)........................................................................... 9, 14, 15

13

14

*Idaho Potato Commission v. M & M Produce Farm & Sales*,
    335 F.3d 130 (2d Cir. 2003)........................................................................................ 17

15

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008).................................................................................. 20

16

17

*McSherry v. City of Long Beach*,
    584 F.3d 1129 (9th Cir. 2009)...................................................................................... 2

18

19

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998).................................................................................... 21

20

*Milenbach v. C.I.R.*,
    318 F.3d 924 (9th Cir.2003)........................................................................................ 21

21

22

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    795 F.3d 997 (9th Cir. 2015)...................................................................................... 19

23

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992)................................................................................ 13, 14

24

25

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004)...................................................................................... 9

26

27

*Playboy Enters., Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002)...................................................................................... 13

28

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3690595.10

- iii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014)................................................................................................. 10

4

*Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*,
    872 F.2d 317 (9th Cir. 1989)..................................................................................................... 6

5

6

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
    567 F.2d 154 (1st Cir.1977) ....................................................................................................... 3

7

8

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012)................................................................................................... 5

9

*Rise Basketball Skill Dev. LLC v. K Mart Corp.*,
    2017 WL 4865561 (N.D. Cal. Oct. 27, 2017)........................................................................ 10

10

11

*Scat Enterprises, Inc. v. FCA US LLC*,
    2017 WL 5749771 (C.D. Cal. June 8, 2017) ........................................................................... 7

12

13

*Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*,
    339 F.Supp. 973 (M.D. Tenn. 1971)........................................................................................ 5

14

*Segal v. Silberstein*,
    156 Cal.App.4th 627 (2007) .................................................................................................... 20

15

16

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997).................................................................................................. 22

17

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    431 F.Supp.3d 322 (S.D.N.Y. 2020)....................................................................................... 11

18

19

*Storm Impact, Inc. v. Software of the Month Club*,
    44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) ....................................................... 21

20

21

*STX, Inc. v. Bauer USA, Inc.*,
    43 U.S.P.Q.2d 1492 (N.D. Cal. June 5, 1997) ....................................................................... 17

22

23

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010)................................................................................................... 9

24

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011)..................................................................................................... 4

25

26

*U.S. v. King Features Entm't, Inc.*,
    843 F.2d 394 (9th Cir. 1988)................................................................................................... 18

27

28

842\3690595.10

- iv -

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.,*
  108 F.Supp.3d 816 (N.D. Cal. 2015) ...................................................................... 17

4

5

*Universal Sales Corp. v. Cal., Press Mfg. Co.,*
  20 Cal.2d 751 (1942) ............................................................................................... 21

6

*Villiarimo v. Aloha Island Air, Inc.,*
  281 F.3d 1054 (9th Cir. 2002)................................................................................... 2

7

8

*Vuitton et Fils S.A. v. J. Young Enters., Inc.,*
  644 F.2d 769 (9th Cir. 1981) .................................................................................... 4

9

10

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.,*
  31 F.3d 1122 (Fed. Cir. 1994) .................................................................................. 7

11

*In re Wella A.G.,*
  787 F.2d 1549 (Fed. Cir. 1986)................................................................................. 7

12

13

*In re Wella A.G.,*
  858 F.2d 725 (Fed. Cir. 1988)................................................................................... 7

14

15

*Wetzel's Pretzels, LLC v. Johnson,*
  797 F.Supp.2d 1020 (C.D. Cal. 2011) ..................................................................... 17

16

*Zalkind v. Ceradyne, Inc.,*
  194 Cal.App.4th 1010 (2011) ............................................................................ 19, 20

17

18

*Zobmondo Entm't, LLC v. Falls Media, LLC,*
  602 F.3d 1108 (9th Cir. 2010).................................................................................. 4

19

**Statutes**

20

15 U.S.C.
  § 1055...........................................................................................................6, 8, 9
  § 1114................................................................................................................ 3
  § 1114(1)........................................................................................................... 2
  § 1114(1)(a)....................................................................................................... 3
  § 1115(a)........................................................................................................... 4
  § 1117(a)........................................................................................................... 11
  § 1125(a)........................................................................................................... 3
  § 1125(a)(1)....................................................................................................... 4
  § 1127............................................................................................................... 2

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                    - v -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

Cal. Civ. Code
§ 1638................................................................................................................ 13, 19

4

§ 1639................................................................................................................ 13

5

§ 1641................................................................................................................ 19, 20

6

**Other Authorities**

7

Trademark Manual of Examining Procedure
§ 1201.03(b)...................................................................................................... 6

8

§ 1201.03(c)...................................................................................................... 6

9

§ 1201.07(b)...................................................................................................... 7
§ 1201.07(b)(i).................................................................................................. 7

10

§ 1201.07(b)(ii)................................................................................................. 7
§ 903.05............................................................................................................. 6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1

## I.   INTRODUCTION

2   Defendants' Opposition fails to establish a disputed issue of fact with respect to Neo4j

3   USA's trademark claims.  This is because they offer no admissible evidence that would allow a jury

4   to conclude that they engaged in fair use of the Neo4j® Mark in promoting their pirated versions of

5   Neo4j® EE.  Instead, Defendants attempt to revive their already-stricken naked licensing and fraud

6   in the procurement defenses to attack the validity of the Neo4j® Mark.  Aside from ignoring this

7   Court's orders striking them, they fail to comprehend that Neo4j USA rightfully owns the

8   registration for that mark because of Plaintiffs' status as related companies due to their parent-

9   subsidiary relationship.  Defendants also argue that they were fairly using the Neo4j® Mark merely

10   for comparative advertising.   Their unsubstantiated arguments do not change the fact that

11   Defendants repeatedly use the Neo4j® Mark on their websites to promote ONgDB rather than

12   merely describe Plaintiffs' Neo4j® EE.  Their use of the Neo4j® Mark also goes well beyond what

13   is reasonably necessary, and suggests sponsorship or endorsement by Plaintiffs.   Defendants

14   therefore cannot rely upon a nominative fair use defense, entitling Neo4j USA to entry of summary

15   judgment in its favor.

16   Defendants' primary argument in opposition to Neo4j USA's Section 43(a) claims is that

17   they were entitled to remove the commercial restrictions imposed by the Neo4j Sweden Software

18   License and promote ONgDB as a no-cost "drop in" replacement for Neo4j® EE.  As previously

19   recognized by this Court, the plain language of the Neo4j Sweden Software License does not permit

20   those restrictions to be removed by licensees.  Defendants' promotion of ONgDB is thus false and

21   misleading as a matter of law.  Defendants further concede that price is material to consumers

22   decision to choose ONgDB rather than pay for a license for Neo4j® EE.  Consequently, Neo4j USA

23   is also entitled to summary judgment on its false advertising and designation of origin claims.

24

## II.   EVIDENTIARY OBJECTIONS

25   Defendants offer over five pages of "background facts" in support of their opposition and

26   cross-motion for summary judgment that are not supported by any admissible evidence.  *See* Opp.

27   at 1:23-6:18. Defendants then acknowledge that "[a] party cannot create a genuine issue of material

28   fact simply by making assertions in its legal papers. [] Rather, there must be specific, admissible,

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10

- 1 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    evidence identifying the basis for the dispute." *Id.* at 9:15-19 (citations omitted).  Thus, by their
2    own admission, the Court should disregard this section.

3        Defendants' responsive separate statements are also problematic (Neo4j USA's further
4    responses are attached hereto as Exhibits A and B) because they almost exclusively rely on the
5    declaration of John Mark Suhy, which consists of uncorroborated argument and immaterial "facts"
6    lacking any foundation, inadmissible opinion testimony and self-serving denials lacking any
7    evidentiary value.  It is well-settled that, "[w]hen the non-moving party relies only on its own
8    affidavits to oppose summary judgment, it cannot rely on conclusory allegations … to create an
9    issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam);
10   "Summary judgment requires facts, not simply unsupported denials or rank speculation." *McSherry*
11   *v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009).  The Court also need not find "a 'genuine
12   issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo*
13   *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  Thus, the Court should disregard
14   Suhy's declaration and the "facts" that rely upon it.  Plaintiffs' specific evidentiary objections to this
15   declaration are included in a chart attached hereto as Exhibit C.

16   **III.   LEGAL ARGUMENT**

17       **A.      Neo4j USA Has Standing to Assert its Lanham Act Claims Against Defendants**
18           Defendants' standing and ownership arguments do nothing more than attempt to re-litigate
19   their unsuccessful arguments made in opposing Plaintiffs' prior dispositive motions.  *Compare* Opp.
20   at 7:10-8:2, 11:5-11:16, 12:15-14:9; *and* Dkt. Nos. 70, 85.[1]  In doing so, they confuse the legal
21   principles of standing and validity.  To have standing under the Lanham Act, a plaintiff must prove
22   that he is "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3)
23   a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v.*
24   *Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).  In particular, trademark claims
25   under 15 U.S.C. § 1114(1) may be brought **by the registrant of the trademark**, and the registrant's
26   "legal representatives, predecessors, successors, and assigns."  15 U.S.C. § 1127.

27           Defendants do not dispute that Neo4j Sweden is a wholly owned subsidiary controlled by

28

---

[1] All docket references are to the PureThink Action unless otherwise referenced as "GFI Dkt."

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

Neo4j USA, or that Neo4j USA is the ***registrant*** of the Neo4j® Mark.  *See* Fact 1; *see also* Opp. at 7:21-23, Dkt. No. 72 at 24:24-25:1.   Conversely, Defendants fail to offer any admissible evidence contesting that Neo4j USA has a cognizable interest in stopping Defendants' infringement of the Neo4j® Mark.  Moreover, since both Neo4j USA and Neo4j Sweden are parties to this action and have a unity of interest in enforcing the Neo4j® Mark, they have standing.  *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1046 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013) (granting summary judgment in favor of plaintiffs on defense for failure to join indispensable party where subsidiary brought infringement action and parent company that purported to be the actual owner of the marks was also a party).

Defendants also misapprehend the holdings in *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir.1977) and *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621 (2nd Cir.1980) as supporting their standing argument.  *See* Opp. at 13:10-21.  Both cases recognize that the ***registrant*** has standing to file a trademark infringement suit under 15 U.S.C. § 1114(1)(a).  Yet, *Quabaug* is distinguishable because the licensee bringing the Section 1114 claim was not the owner of the registration for the mark, instead it had a non-exclusive license ***from the registrant of the mark***. *See* 567 F.2d at 158-160.  The circumstances in *DEP* were even more attenuated where plaintiff lacked direct ties to the owner of the registration and merely had a sub-license from one of the registrant's distributors that expressly precluded it from enforcing the mark.  622 F.2d at 621-623.  These are critical distinctions because Neo4j USA is the proper registrant for the Neo4j® Mark and the owner thereof under the related company doctrine.

Even assuming *arguendo* that Neo4j USA were not the owner of the registration for the Neo4j® Mark, it is well-established that one does not need to be the owner to have standing to assert such claims under Section 43(a).  *See* 15 U.S.C. § 1125(a); *see also Quabaug,* 567 F.2d at 160 ("one who may suffer adverse consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark"); *Adidas America, Inc. v. Athletic Propulsion Labs, LLC*, 120 U.S.P.Q.2d 1303, 2016 WL 3896826, *3-4 (D. Or. 2016) (Adidas America, a nonexclusive licensee of Adidas AG, had standing to sue under Section 43(a)). Similarly, even if the registration was invalid, which it is not, Plaintiffs' common law rights in the Neo4j®

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   Mark would still persist.  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

2         Defendants' argument that Neo4j USA does not have standing because its Lanham Act

3   claims revolve around their use and mention of software owned by Neo4j Sweden bearing the

4   Neo4j® Mark, and that Neo4j Sweden licenses it under the AGPL is unsupported and is wrong.  *See*

5   PT Opp. at 11:5-24.  As the Court recognized, the "GPL and AGPL are copyright licenses, not

6   trademark licenses."  *See* Dkt. No. 85 at 7:27.  Defendants' breach of the Neo4j Sweden Software

7   License is a separate issue from their infringement of the Neo4j® Mark.[2]  The trademark claims

8   asserted by Neo4j are based on Defendants' improper use of the Neo4j® Mark in the promotion of

9   ***Defendants' software***, not their use of the underlying copyrighted source code.

10        Finally, there is no standing issue created by Neo4j USA raising Defendants' unauthorized

11  removal of the Commons Clause from the Neo4j Sweden Software License to establish their false

12  and misleading advertisement of ONgDB as "free and open source" Neo4j® EE.  The Lanham Act

13  confers standing on "any person who believes that he or she is or is likely to be damaged by such

14  act."  15 U.S.C. § 1125(a)(1).  Here, there is uncontroverted evidence that Defendants compete with

15  Neo4j USA for the same customers and a nexus between Neo4j USA losing business and

16  Defendants' false and misleading promotion of ONgDB.  *See, e.g.,* Fact 93, 110-111; *see also* Dkt.

17  No. 98-1, Exhs. 42-54, 100, 103.  Defendants' standing arguments thus fail.  *See TrafficSchool.com,*

18  *Inc. v. Edriver Inc.,* 653 F.3d 820, 825 (9th Cir. 2011) (plaintiff alleging competitive injury under

19  the false advertising prong of Section 43(a) "need only believe that [it] is likely to be injured").

20        **B.    Defendants Do Not Establish that the Neo4j® Mark is Invalid**

21        The registration for the Neo4j® Mark is prima facie evidence of the validity of the mark and

22  the registrant's ownership of the mark.  *See* 15 U.S.C. § 1115(a).  Importantly, this "presumption

23  of validity is a strong one, and the burden on the defendant necessary to overcome that presumption

24  at summary judgment is heavy."  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115

25  (9th Cir. 2010); *see also Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir.

26  1981) (defendant bears the burden of establishing the invalidity of a registration and the court draws

27

28

---

[2] Defendants also ignore that Neo4j Sweden obtained a stipulated judgment in its favor on its DMCA and breach of license claims against GFI.  GFI Dkt. No. 65 at ¶¶ 118-128; GFI Dkt. No. 110.

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

any inference from the facts in favor of the registrant of the mark).  While Defendants claim to contest Neo4j USA's ownership of the Neo4j® Mark, they are actually challenging the validity of the registration for that mark.[3]  *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) ("[i]t is axiomatic in trademark law that the standard test of ownership is priority of use") (internal quotes and citation omitted); *accord Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1088 (N.D. Cal. 2019).  Specifically, Defendants attempt to rebut the presumption of validity offering "facts" that were identical to those underpinning their fraud in the procurement and naked licensing defenses that this Court ***previously struck with prejudice*** (Dkt. Nos. 70, 85)*,* which Defendants improperly revived in their Answer to the TAC (Dkt. No. 91) and now raise here (PT Dkt. 100, Exhibit B at D Fact 130-132).[4]

### 1.    Defendants Fail to Meet Their Burden of Proof Establishing that the Registration for the Neo4j® Mark was Fraudulently Obtained

To invalidate the registration for the Neo4j® Mark based on fraud in the procurement, Defendants must offer undisputed evidence that: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1098 (9th Cir. 2013).  Notably, Defendants offer no evidence establishing a knowing intent to deceive by Neo4j USA, or reliance by and any alleged damage to them.  *See* D Fact 130.

As for the first element, it is immaterial whether Neo4j USA existed at the time of claimed first use.  Indeed, the PT Defendants previously conceded this was not grounds for invalidating the

---

[3] Defendants rely upon *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973, 979 (M.D. Tenn. 1971), a non-controlling 50-year old case, for the proposition "that the ownership to a trademark is not conferred by registration." *See* Opp. at 12:20-23. That court made no such ruling and Defendants misconstrue the meaning "ownership," which the court noted "stems from prior appropriation and use." *See id*. The *Schwinn* court also made clear that challenging the validity of the registration was the appropriate way to rebut the presumptions conferred by a registration.

[4] Defendants' violation of the Court's orders and local rules, as well as the doctrines of claim preclusion and the law of case are discussed in detail in Plaintiffs' pending motion to strike their answer to the TAC wherein they impermissibly reasserted these defenses. *See* Dkt. Nos. 93-96.

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

registration for the Neo4j® Mark.  *See* Dkt. No. 70 at 8:4-18.  This is because an applicant's claimed date of first use cannot form the basis for cancellation of registration so long as the first use in fact preceded the application date.  *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989).  Defendants also do not offer evidence that Neo4j USA failed to use the Neo4j word mark in commerce prior to the April 30, 2014 filing date of the application.  Nor can they do so because Neo4j USA was using the Neo4j® Mark in interstate commerce before that date.  Fact 1 (Reply Ratinoff Decl., Exhs. A-D). Further, Neo4j USA was *legally entitled* to rely on Neo4j Sweden's prior use of the Neo4j® Mark.  *See* 15 U.S.C. § 1055 ("Where a [] mark sought to be registered is [] used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration…."); *see also* Trademark Manual of Examining Procedure ("TMEP") § 903.05.

Neo4j USA's purported failure to disclose that Neo4j Sweden was the owner of the rights to the Neo4j word mark to the USPTO is also not a material omission.  The USPTO's rules did not require Neo4j USA to disclose that information in the application.  *See* TMEP § 1201.03(c) ("Either a parent corporation or a subsidiary corporation may be the proper applicant, depending on the facts concerning ownership of the mark.  The USPTO will consider the filing of the application in the name of either the parent or the subsidiary to be the expression of the intention of the parties as to ownership in accord with the arrangements between them."); *see also* TMEP § 1201.03(b) ("where the application states that use of the mark is by a related company or companies, the USPTO does not require an explanation of how the applicant controls the use of the mark").

As for the second element, Defendants baselessly *speculate* there is a "strong inference" that Neo4j USA's COO allegedly knew that Neo4j USA did not own rights in the Neo4j word mark at the time it filed the application.  *See* D Fact 130.  This does not invalidate the resulting registration because "absent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation."  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed.Cir.2009); *see also Far Out Prods.*, 247 F.3d at 996 (an affidavit was fraudulent only if the affiant acted with scienter).  Indeed, Defendants offer no admissible evidence of any intent to deceive by either Mr. Nordwall or Neo4j USA, and Defendants apparently knew that such

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3690595.10                                                    - 6 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    evidence does not exist since they did not bother to take their depositions during discovery.  *See*

2    *Scat Enterprises, Inc. v. FCA US LLC*, 2017 WL 5749771, at *2 (C.D. Cal. June 8, 2017)

3    (cancellation claim failed because "[m]erely demonstrating that Plaintiff made a misrepresentation

4    is insufficient to establish that Plaintiff possessed the requisite intent to deceive").

5          Defendants also misconstrue the scope and application of the related companies' doctrine by

6    arguing that it is "only for registration and only allows the 'owner' of the trademark to use its

7    subsidiaries 'use' of the mark in the application."  Opp. at 14:3-6.  Defendants' reliance on Judge

8    Nies' concurring opinion from *In re Wella A.G.*, 787 F.2d 1549, 1554 (Fed. Cir. 1986) ("*Wella I*")

9    to support this proposition is improper since the Federal Circuit subsequently reversed the TTAB's

10   decision that was based on the same concurring opinion.  *See In re Wella A.G.*, 858 F.2d 725 (Fed.

11   Cir. 1988) ("*Wella II*").  In the *Wella* cases, a foreign corporation applied to register a WELLA mark

12   and the USPTO cited prior registrations owned by its subsidiaries as confusingly similar under § 2(d)

13   as owned "by another."  The *Wella II* court **rejected** Judge Nies' "additional views" that there can

14   be only one "owner" of a mark and nothing in the Lanham Act confers a right to register on a non-

15   owner, whether a licensee or subsidiary.  *Wella II*, 858 F.2d at 727.  The *Wella II* court further held

16   that because the parent owned substantially all of the stock of the subsidiary, it controlled the

17   subsidiary's actions and thus were the "same source" such that there was no likelihood of confusion

18   and the marks could be registered accordingly.  *Id*. at 728-29.  Defendants do note cite any

19   undisputed evidence that Plaintiffs used the Neo4j® Mark in a manner that deceived the public.

20         Again, it is undisputed that Neo4j USA wholly owns and controls Neo4j Sweden.  *See* Fact

21   1; *see also* Dkt. No. 98-2 at 1:17-18.  Further, Mr. Nordwall's declaration indicates that Neo4j USA

22   relied upon the related company provisions in the Lanham Act to register the Neo4j word mark.

23   Dkt. No. 100-3, Exh. 6 (p. 101 of 125).  Thus, Plaintiffs' unity of control over the Neo4j® Mark is

24   presumed.  *See* TMEP §§ 1201.07(b), 1201.07(b)(i), 1201.07(b)(ii); *see also W. Fla. Seafood, Inc.*

25   *v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1126-27 (Fed. Cir. 1994) (separate entities operating as a

26   single entity in the eyes of the consuming public may be treated as such for trademark purposes).

27         The Supreme Court has recognized that "a corporation may adopt the subsidiary form of

28   organization for valid management and related purposes" and that this structure "may improve

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                                   - 7 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

management, avoid special tax problems arising from multistate operations, or serve other legitimate interest." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 772-73 (1984) ("[a]t least when a subsidiary is wholly owned … the ultimate interests of the subsidiary and the parent are identical"). Here, the Intercompany Agreement relied upon by Defendants simply reflects the intercompany division of assets, including trademarks, between Neo4j USA and Neo4j Sweden as parent and wholly-owned subsidiary, and does not damage the validity of the mark either at the time of registration or thereafter. *See* 15 U.S.C. § 1055 ("***Where a registered mark … is or may be used legitimately by related companies***, such use shall inure to the benefit of the registrant …, ***and such use shall not affect the validity of such mark*** …, provided such mark is not used in such a manner as to deceive the public.") (emphasis added); *see also Cont'l Distilling Corp. v. Old Charter Distillery Co.*, 188 F.2d 614, 620 (D.C. Cir. 1950) ("[a] court of equity… does not hesitate to disregard a corporate entity and to recognize that all the assets of a solvent wholly owned subsidiary are equitably owned by the parent corporation"). Thus, any alleged failure by Neo4j USA to disclose the internal management of intellectual property within its wholly controlled corporate group is immaterial and cannot be used by Defendants to invalidate the registration for the Neo4j® Mark.[5]

## 2. Defendants Fail to Establish the Naked Licensing of the Neo4j® Mark

Defendants' attempt to revive their failed naked license defense based on Plaintiffs allegedly failing to offer evidence that Neo4j Sweden controlled the quality of Neo4j®-branded software used by third parties fares no better. *See* D Fact 131. As discussed above, Defendants have the burden of producing uncontroverted evidence to rebut the presumption of validity. This is also an ***argument*** that the Court rejected in striking their naked licensing defense with prejudice. *See* Dkt. No. 85 at 7:27-10:17. It is also controverted by the Court's prior ruling that "the GPL and AGPL are copyright

---

[5] Defendants cite to dicta in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) to suggest that Neo4j USA does not have legal title to Neo4j Sweden's assets, *i.e.*, the Neo4j® Mark. This case is not instructive because it addressed the issue whether a corporation is deemed an instrumentality of a foreign state where that state owns less than a majority of shares for purposes of sovereign immunity, and did not involve the ownership of trademark rights or take into account the aforementioned provisions of the Lanham Act. Further, the fact that Neo4j Sweden registered marks for "Neo4j" outside the United States is irrelevant for purposes of determining the validity of a U.S. registration, and is consistent with Plaintiffs' parent-subsidiary relationship. *See Hokto Kinoko*, 738 F.3d at 1097-99.

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   licenses, not trademark licenses" and that "[n]aked licensing does not occur when there is no

2   trademark license at issue." *Id.* at 7:27-8:25.  As a result, they cannot invalidate the Neo4j® Mark

3   based on third party modifications to source code licensed under the GPL or AGPL. *See id.*

4        Likewise, Defendants' suggestion that an absence of quality control provisions in the

5   Intercompany Agreement amounts to the naked licensing of the Neo4j® Mark is wrong.  *See* Fact

6   132.  This "fact" does not overcome the legal presumption that Neo4j USA and Neo4j Sweden

7   continue to operate as "related companies" and their continued combined use of the Neo4j® Mark

8   "shall not affect the validity of such mark." 15 U.S.C. § 1055; *see also See Hokto Kinoko*, 738 F.3d

9   at 1098 (no naked licensing where subsidiary used parent company's trademark).  Moreover,

10   Defendants ignore that Plaintiffs offered uncontroverted evidence that they work closely to ensure

11   that the software bearing the Neo4j® Mark is of the highest quality.  *See* Dkt. No. 98-2 at ¶¶ 19-22.

12        Finally, Defendants do not offer any admissible evidence establishing consumer confusion

13   resulting from the licensing arrangement between Neo4j USA and Neo4j Sweden.  Nor can they do

14   so because it is entirely permissible for a related company such as Neo4j Sweden to use the Neo4j®

15   Mark alongside Neo4j USA.  *See Hokto Kinoko*, 738 F.3d at 1098 ("[e]ven absent formal quality

16   control provisions, a trademark owner does not abandon its trademark where the particular

17   circumstances of the licensing arrangement suggests that the public will not be deceived") (internal

18   quotes and citation omitted).  As a result, the Court should again reject this defense.

19   **C.    Defendants Have Not Engaged in Nominative Fair Use of the Neo4j® Mark**

20        In order to rely upon nominative fair use, (1) defendant's product must be one not readily

21   identifiable without use of plaintiffs' trademark; (2) only so much of that mark may be used as is

22   reasonably necessary to identify defendant's product; and (3) defendant must do nothing that would,

23   in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Toyota*

24   *Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010).  Plaintiffs need only

25   negate one of these elements to defeat Defendants' reliance on the nominative fair defense.  *See*

26   *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004)

27   (because defendants use of plaintiff's mark ran afoul of the first prong for nominative use, no need

28   to consider the other two); *see also Horphag Research Ltd. v. Garcia,* 475 F.3d 1029, 1041 (9th Cir.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3690595.10                                    - 9 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

2007) (defendant's use must meet all three fair use prongs).  Despite Plaintiffs setting forth how Defendants' use of the Neo4® Mark to promote ONgDB software does not meet each element, Defendants only unsuccessfully attempt to address the third.  *See* Opp. at 15:15-17:17.

### 1.     The Undisputed Facts Establish that Defendants Impermissibly Used the Neo4j® Mark to Refer to Their Products and Services

Defendants cannot rely on a nominative fair use defense where they use the Neo4j® Mark to refer to Defendants' products rather than Plaintiffs' products. *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at *5-7 (N.D. Cal. Apr. 12, 2019) ("[i]n nominative fair use, the defendant uses the trademarked term not to describe its product but to describe the plaintiff's [product]"). Defendants do not dispute that they used Neo4j® Mark to promote "Government Packages for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Fact 8, 15-16, 25, 27.  Instead, Defendants argue that they cannot be held liable for trademark infringement because did not use the Neo4j® Mark "for the promotion of [Neo4j] USA's products" and were instead referring to "Sweden's open source software called Neo4j." *See* Opp. at 11:5-13, 14:17-20.

This is a distinction without a difference because the Neo4j® Mark is registered as a standard character mark, and as a result Neo4j USA's exclusive right to use the mark "is extremely broad, covering the word in all types of depictions."  *Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118, 1125 (9th Cir. 2014); *accord Rise Basketball Skill Dev. LLC v. K Mart Corp.*, 2017 WL 4865561, at *3 (N.D. Cal. Oct. 27, 2017) (citing same) ("ownership of a word mark entitles the owner exclusive rights in the word for the class of goods specified in the trademark").  This argument also echoes their failed defense that Plaintiffs cannot use the Neo4j® Mark as both a company name for Neo4j USA and Neo4j Sweden, as well as the name of its software products.  *See* Dkt. No. 70 at 9:3-10:24.  In this regard, the Court held that "[t]he Lanham Act expressly recognizes that a registered mark "may be used legitimately by related companies." *See id.* at 10:8-11.  More importantly, a review of iGov's website shows the overly-repetitive use of the Neo4j® Mark to promote its recompiled patchwork binaries.  Fact 15-17, 19, 26-28, 30-32, 34.

Defendants also argue that their promotion of iGov's patchwork binaries "have been to marketing and service [sic] Sweden's open source Neo4J software and derivatives of such software

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3690595.10                                                      - 10 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    as permitted under the GitHub Terms of Service and the AGPL." *See* Fact 25-28. It is immaterial

2    that the underlying source code used by iGov was licensed by Neo4j Sweden under the AGPL

3    because it is not a trademark license and does not give licensees "any rights to use the [Neo4j®

4    Mark]." Dkt. No. 85 at 7:27-8:2.  Likewise, there is nothing in the GitHub Terms of Service (GTOS)

5    that expressly or implicitly contemplates a user licensing their trademark to other GitHub users, and

6    Defendants cite no evidence establishing that Plaintiffs agreed to license the Neo4j® Mark to third

7    parties under any GTOS.  *See Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118,

8    1129-30 (9th Cir. 2006) (normally a mark owner intentionally enters into an express license, and for

9    an implied license to exist, there must be "evidence of an agreement or course of conduct by the

10   parties to contract for a trademark license").  To the contrary, the GTOS warns them that "use of the

11   Website and Service must not violate any applicable laws, including copyright or trademark

12   laws…." Dkt. No. 100-3, Exh. 9 at § C.  It also does not include trademarks in the definition of

13   "Content" that other users may have a right to use under the GTOS, and a plain reading of this

14   definition makes clear that it is intended to cover copyrightable works.  *Id.*, §§ A.4, D.5.

15        Further, Defendants do not refute their use of the Neo4j® Mark in the URL

16   "https://igovsol.com/neo4j.html" to promote their patchwork binaries of Neo4J® EE.  Fact 16.  They

17   even ***admit*** that "iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to

18   promote ONgDB until it deactivated that page sometime after July 27, 2020."  Fact 18.  Thus, they

19   cannot claim this is fair use.  *See Brookfield Commc'ns Inc. v. West Coast Ent. Corp.*, 174 F.3d

20   1036, 1064-65 (9th Cir.1999) ("[u]sing another trademark in one's metatags is much like posting a

21   sign with another's trademark in front of one's store"); *see also Experience Hendrix, L.L.C. v.*

22   *Hendrixlicensing.com, Ltd.*, 2010 WL 2104239, at *6 (W.D. Wash. May 19, 2010) (use of plaintiff's

23   HENDRIX mark in defendants' URL addresses and business names did not describe plaintiffs'

24   products but rather defendants' products); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F.Supp.3d

25   322, 342 (S.D.N.Y. 2020) (holding that use of a trademark in a URL is not fair use).  The fact that

26   iGov ceased using this URL after July 27, 2020 – almost two years ***after*** Plaintiffs filed suit – does

27   not absolve it of liability for past infringement of the Neo4j® Mark.  *See* 15 U.S.C. § 1117(a).

28        Similarly, Defendants do not refute that they used neo4j@igovsol.com as means for

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3690595.10

- 11 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

consumers to inquire about the patchwork of ONgDB binaries claimed be equivalent to Neo4j® EE. Fact 16, 19 (Dkt. No. 93-1, Exhs. 15-16, 62-64, 67-69 [purple highlights]).  Instead, they argue they the email address is for inquiries about "Sweden's open source Neo4j," as "as a way to inquire about iGov support services and support for the neo4j open source database," and "a means to inquire about ONgDB" and "ongdb open source license support." Fact 16, 19.  This is still not fair use because they are using the goodwill associated with the Neo4j® Mark to promote their patchwork binaries for ONgDB, rather than merely referring to Plaintiffs' unmodified software.

Finally, Defendants claim that their use of the Neo4j® Mark *ad nauseam* throughout iGov's website was merely for "comparative advertisement" purposes.  *See* Fact 25-27.  A review of Defendants' website from 2018 through 2020, the contents of which are not disputed, completely undermines this claim.  *See* Fact 15-21, 25-27 (cited webpages).  Defendants' website does not independently promote ONgDB as a graph database software with minimal or nominative use of the Neo4j® Mark, and Defendants used the mark to promote ONgDB and related support services for ONgDB.  *See* Fact 29.  For example, Defendants do not dispute that iGov used a "Download Neo4j Enterprise" hyperlink on its 'downloads' page to redirect consumers to download links for ONgDB until July 27, 2020."  Fact 20; *see also* Fact 27(3).  Thus, there is no disputed issue of fact that Defendants used the Neo4j® Mark to impermissibly promote their products, and therefore cannot rely upon nominative fair use to preclude the Court from entering summary judgment against them.

### 2. The Undisputed Facts Establish that Defendants Used the Neo4j® Mark More Than Was Reasonably Necessary and Not for the Purpose of Comparative Advertising

Defendants completely ignore incontrovertible evidence that they use the Neo4j® Mark far more than what is reasonably necessary to describe ONgDB 3.5 as a divergent fork of official Neo4j® EE.  Rather, any reasonable jury would conclude from the undisputed evidence that Defendants extensively used the Neo4j® Mark (albeit without proper trademark usage and notices) on their websites and in direct solicitations to customers to describe their patchwork of binaries as official Neo4j® EE, except with a fraudulently altered license.  *See* Fact 28-30.  No matter how hard Mr. Suhy ***argues*** in his declaration to the contrary, Defendants go far beyond what is reasonably necessary and are not engaging in comparative advertising.  *See id.*  It constitutes a misuse of the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10
- 12 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

Neo4j® Mark that defeats its source-identification function.  *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002) (holding that "[t]he repeated depiction of 'PMOY '81' is not necessary to describe" a former "Playmate of the Year" on her website).

Likewise, Defendants can only use the Neo4j® Mark "in advertising and other channels of communication *if the use is not false or misleading*." *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) (emphasis added).  This is not the case here because as detailed below, Defendants are misleadingly promoting ONgDB *as Neo4j® EE* except without the commercial limitations imposed by the Commons Clause in the Neo4j Sweden Software License.  Defendants' suggestion that they are fairly using the Neo4j® Mark to advertise their support and consulting services for either ONgDB or official Neo4j® EE is equally problematic.  In this regard, Defendants argue that the Commons Clause does not prevent their offering of such services and "they have a right to tell consumers they can use Sweden's Neo4J open source software for free instead of paying for USA's commercial license."  *See* Opp. at 15:11-12, 19:19-21; Suhy Decl., ¶ 23, Exh. 2.  The evidence relied upon by Defendants supporting this argument is unauthenticated and inadmissible hearsay, as well as is irrelevant and lacks foundation because Ms. Meeker was not speaking on behalf of Plaintiffs, was not specifically discussing the Neo4j® Sweden Software License, and is not a party to that agreement.  *See* F.R.E. 602, 801 et seq.

More importantly, it contradicts the plain language of the Commons Clause, which states this "License does not grant to you, the right to Sell the Software" and defines "Sell" as "practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (*including without limitation fees for hosting or consulting/ support services related to the Software*), a product or service whose value derives, entirely or substantially, from the functionality of the Software."  Dkt. No. 98-1, Exh. 39 (emphasis added).  Where "the language [of a contract] is clear and explicit, and does not involve an absurdity," the language must govern the contract's interpretation.  Cal. Civ. Code § 1638; *see also* Cal. Civ. Code § 1639.  Such is case here.

This further begs the question that if Defendants believed the services they offer do not violate the Commons Clause, then why remove the clause in the first place?  The answer is simple: Defendants are advertising paid services "aimed at building a solution around Neo4j," the value of

1   which is entirely derived from Neo4j® EE's enhanced features and functionality over Neo4j® CE.

2   *See, e.g.,* Dkt. No. 98-1, Exh. 62-66 ("there is no reason you should be using community edition …

3   you should use the enterprise edition under it's open source license"), ("iGov Development

4   Packages $25K+ … 100% of the cost goes into services aimed at building a solution around Neo4j"

5   and "iGov Inc provides umbrella support across all the components of your Neo4j solution,

6   including Neo4j itself"), ("[w]e only focus on only supporting 100% free and open source ONgDB

7   Enterprise").  The undisputed facts thus establish that Defendants use the Neo4j® Mark more than

8   reasonably necessary to identify their product and services, and do so in a false and misleading

9   manner.  As a result, they cannot establish the second prong of nominative fair use.

10          **3.    Defendants Misappropriate the Cachet of the Neo4j® Mark**

11          Defendants offer no admissible evidence refuting they made the statements on their website

12   and directly to customers suggesting sponsorship or endorsement of Defendants' "Neo4j Enterprise"

13   and ONgDB products by Neo4j USA.  *See* Fact 31-33.  Defendants also offer no admissible evidence

14   refuting that they used hyperlinks to redirect consumers to Neo4j USA's official release and

15   Plaintiffs' other documentation in promoting ONgDB.  *See* Fact 34.  Instead, Defendants argue that

16   their website makes clear that they are not affiliated with Neo4j USA, and without citing to any

17   admissible evidence, that "[a] reasonable consumer would not be confused that defendants' websites

18   are … sponsored by [Plaintiffs]."  Dkt. 100 at 16:18-20.

19          Defendants miss the mark by focusing on website affiliation, while ignoring their use of the

20   Neo4j® Mark misleadingly suggests Plaintiffs' sponsorship or approval of their "Neo4j Enterprise,"

21   "Government Package for Neo4j" and ONgDB products.  This is because they are misappropriating

22   the goodwill associated with the Neo4j® Mark and "appropriate[ing] the cachet of one product for

23   a different one." *See New Kids on the Block*, 971 F.2d at 308-309; *see also Horphag*, 475 F.3d at

24   1038.  Defendants' representations about their products on their website and directly to customers

25   in conjunction with the use of Neo4j® Mark would lead any reasonable consumer to assume they

26   are getting official Neo4j® EE as free open source software, when in fact, it is receiving an

27   improperly licensed, non-identical build of that software not compiled by Plaintiffs.  Fact 31-34.

28          Neo4j USA is not required to prove actual customer confusion to negate the third prong of

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

Defendants' nominative fair use defense. *Brookfield*, 174 F.3d at 1050 (absence of actual confusion is not dispositive and is "generally unnoteworthy").  Nonetheless, Defendants fail to adequately refute all of the evidence of customer confusion cited by Plaintiffs.  *See, e.g.*, Fact 36 (only addressing 3 of the 14 cited exhibits showing Suhy misleading consumers into believing that ONgDB and Neo4j® EE were one and the same); Fact 37 (not addressing any cited evidence showing Suhy creating customer confusion by falsely equating ONgDB with commercially licensed Neo4j® EE, and claiming it is "free and open source").  One example of customer confusion Defendants ignore is the RFQ for Northrup Grumman signed by Suhy states "Neo4j Enterprise open source distribution licenses and basic support. Aka ONGDB."  Fact 36-37 (Dkt. No. 98-1, Exh. 55 at p. 4 of 5, Exh. 3 at 235:21-237:14, Exhs. 130-131).  Perhaps the best example of Defendants capitalizing on consumer confusion that they ignore is their misrepresentations to Next Century about the Commons Clause being invalid and that ONgDB was a drop-in equivalent to Neo4j® EE except it was free to use under the APGL.  Fact 36 and 37 (Dkt. No. 98-1, Exhs. 47-49); Fact 76 (Dkt. No. 98-1, Exh. 48-50, 120); Dkt. No. 98-3, ¶¶ 20-24, Exhs. 12-13); Fact 111.

Lastly, Defendants' attempt to downplay the customer issues cited by Neo4j USA by arguing that the issues are user error or are inherent in Neo4j Sweden's code and miss the mark.  *See* Fact. No. 38; *see also* Opp. at 17:4-7. The fact that consumers sought help from either Plaintiffs or other users of Neo4j® software when they encounter issues with ONgDB implicates the source-identification function of the Neo4j® Mark, and thus supports a strong inference of uncertainty and confusion in the minds of consumers caused by Defendants.  *See Horphag*, 475 F.3d at 1038.  Their hearsay objection to this evidence is also unsustainable. *See* Opp. at 17:4-8; Fact 35.  For example, when asked about why Defendants found a user complaining to Neo4j USA that ONgDB was not compatible with Neo4j® Desktop was funny (Dkt. No. 98-2, Exhs. 115-116), GFI confirmed actual confusion because it was ***not compatible*** (*id.,* Exh 31 at 230:12-233:10), and iGov effectively conceded that Neo4j® EE appealed to less sophisticated customers than they originally believed (*id.,* Exh. 3 at 207:12-209:3).  Fact 35.  This means there is a broader customer base that is more likely to be confused by Defendants' use of Neo4j® Mark in promoting ONgDB.  Accordingly, the Court should grant partial summary judgment in favor of Neo4j USA on its trademark infringement

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10
- 15 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1   claims based on Defendants' ***unfair*** use of the Neo4j® Mark to promote their products.

2   **D.      Defendants Fail to Address their Liability for Infringement as Ex-Licensees**

3          Defendants do not dispute that they agreed to certain restrictions in exchange for a non-

4   exclusive license to the Neo4j® Mark under Section § 4.1 of the Neo4j Solution Partner Agreement

5   ("SPA"), and agreed to be bound by the additional restrictions imposed by Neo4j USA's trademark

6   usage guidelines.  Fact 2-5.  They also do not dispute that they agreed to cease using the Neo4j®

7   Mark upon termination, or refute that they continued to use the Neo4j® Mark after termination.

8   Fact 6-8. Defendants then ignore that their subsequent usage of the Neo4j® Mark to first promote

9   their patchwork binaries, and then ONgDB as genuine Neo4j® EE violated these guidelines.[6]

10  Compare Dkt No. 98 at 21:20-23:10 and Opp. at 17:19-20:14.  They further ignore the controlling

11  authority cited by Plaintiffs that an ex-licensee's continued use of a trademark alone establishes a

12  likelihood of consumer confusion and thus concede infringement of the Neo4j® Mark.  *See id.*

13         Instead, Defendants argue that the open source restrictions in Section 4.3.2 of the SPA are

14  unenforceable. Opp. at 19:12-20:7.  This is irrelevant because Neo4j USA is not seeking to enforce

15  these restrictions in Section 4.3.2, and issue of whether that provision violates public policy is a

16  Phase 2 issue.  To the extent that that provision may later found to be invalid does not negate the

17  presumed consumer confusion created by Defendants' status as a hold-over infringer of the Neo4j®

18  Mark.[7]  *See* Fact Dkt. No. 98-1, Exh. 4 at § 10.6 (severability).  In this regard, Defendants ***admit***

19  PureThink's successors-in-interest are bound by the SPA (Fact 9) and ***repeatedly admitted*** to

20  forming iGov to circumvent the restrictions imposed by the SPA irrespective of their validity (Fact

21  10).  Defendants websites also make this clear (Fact 10 [Dkt. No. 98-1, Exhs. 14-16]), and Suhy

22  testified that iGov continued PureThink's business relationship with the IRS (Fact 13 [Dkt. No. 98-

23  1, Exh. 3 at 53:4-11]).  Yet, Defendants fail to reconcile that California law does not permit

24  PureThink from circumventing *all* of its legal obligations under the SPA by forming iGov (Dkt. No.

25

26  [6] Defendants attempt to dispute their continued usage of Neo4j® Mark by arguing they were only
    referring to "Sweden's open source versions of Neo4J and proper nominative use of Sweden's
27  mark."  Fact Nos. 8, 24.  As detailed above, this is a meritless distinction.

28  [7] For this same reason, Defendants' reliance on licensee estoppel based on the SPA being against
    public policy is untenable.  *See* Opp. 21:1-6.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
842\3690595.10                                    - 16 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

23:24-24:6).  As the owner of PureThink and iGov, Suhy and his customer contacts are the main assets.  His use of the same website template, and the same offices and support telephone number simply confirms that no reasonable finder of fact would conclude otherwise.  *See* Fact 11-14.

Thus, iGov and Suhy are imputed with the knowledge of Neo4j USA's guidelines and the presumption that they are precluded from using the Neo4® Mark resulting in a violation thereof. *See Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816, 826-27 (N.D. Cal. 2015). Likewise, they are equally guilty of creating consumer confusion by promoting recompiled software as being identical to official Neo4j® EE or otherwise affiliated with or endorsed by Plaintiffs.  *See Wetzel's Pretzels, LLC v. Johnson*, 797 F.Supp.2d 1020, 1028 (C.D. Cal. 2011).

## E.    Defendants' Licensee Estoppel Arguments are Meritless

Defendants raise two licensee estoppel arguments in their opposition – none are germane to the Phase 1 claims and defenses.  First, they argue that licensee estoppel does not bar Defendants from attacking Neo4j USA's ownership of the Neo4j® Mark.  Opp. at 20:16-25.  While Plaintiffs did not assert licensee estoppel against Defendants in their moving papers, this doctrine bars a former licensee from challenging the licensor's mark based upon facts that arose before or during the term of the license.  *See Heaton Distributing Co. v. Union Tank Car Co.*, 387 F.2d 477 (8th Cir. 1967) (subsequent validity challenges by former licensees not allowed); *Idaho Potato Commission v. M & M Produce Farm & Sales,* 335 F.3d 130, 135 (2d Cir. 2003) ("licensee estoppel provides that when a licensee enters into an agreement to use the intellectual property of a licensor, the licensee effectively recognizes the validity of that property"); *see also STX, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q.2d 1492 (N.D. Cal. June 5, 1997).  Since Defendants cite facts from 2010 and 2014, before they entered the license, they are estopped from challenging the validity of the Neo4j® Mark.

Second, they erroneously argue that because Neo4j USA is a licensee of the Neo4j® Mark, it is estopped from "disput[ing] that Sweden owns the Neo4j mark."  Opp. at 21:8-16.  The doctrine is inapplicable here because, as discussed above, Neo4j USA ***is the owner of that registration***, not a licensee thereof.  Dkt No. 98 at Exh. 1.  Defendants further contend that because Neo4j USA claims it is the owner of the Neo4j® Mark, a dispute exists. Opp. at 21:13-14. Defendants ignore that there is no dispute between Neo4j USA and Neo4j Sweden regarding the ownership or validity

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                                   - 17 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

of the Neo4j® Mark, and they are in agreement that Neo4j USA is the owner of the registration of Neo4j® Mark.  Fact 1; Rathle Decl. ¶¶ 3-4; Broad Decl. ¶ 3.  Simply put, there is nothing to estop.

**F.**     **Plaintiffs are Entitled to Summary Judgment on Neo4j USA's False Advertising Claims Under the Lanham Act and the UCL**

Neo4j USA's moving papers address all five elements necessary to prove a false advertising claim under Section 43(a) of the Lanham Act and the UCL.  Defendants only address the falsity and materiality elements thereby conceding Neo4j USA established the other three elements.  *See* Opp. at 22:8-23:12.  As discussed below, Defendants cannot refute the falsity of their advertisements in question, which they do not deny making, and the deception caused by those statements is material to consumers' decision to use ONgDB for free rather than pay for license to use Neo4j® EE.

**1.**     **The Terms of the Neo4j Sweden Software License Do Not Give a Licensee the Right to Remove Restrictions Imposed by the Copyright Holder and Licensor of the Underlying Software**

Defendants do not dispute that their marketing of ONgDB as "free and open source" Neo4j® EE is primarily based on their (mis)interpretation of the Neo4j Sweden Software License and the form AGPL upon which it was based.  They also concede that the falsity of that assertion hinges on the interpretation of these license agreements.  *See* Opp. at 27:8-24; *see also* Fact 77-78, 81-84, 88-91, 93. Contrary to Defendants, "[s]ummary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *U.S. v. King Features Entm't, Inc.,* 843 F.2d 394, 398 (9th Cir. 1988). While interpretation of these agreements is disputed, their terms are not ambiguous as previously recognized by the Court.  *See* Dkt. No. 88 at 6:19-8:4. Since Neo4j USA has asserted false advertising claims under the Lanham Act and the UCL, it necessarily requires such a determination of the underlying license agreement to establish falsity.

Defendants justify their removal of the Commons Clause from Neo4j Sweden Software License based on the erroneous assumption that "This License" as defined in that agreement means the form AGPL without the commons clause.  *See* Opp. 28:1-9; *see also* Fact 88-91 ("Suhy did not replace the Neo4j Software License … He only followed the instructions given by the AGPL license copyright holder to make the actual license verbatim"); Fact 93 ("[t]he [FSF] owns the copyright for the AGPL License.txt file and clearly states that the license must be verbatim").  This is wrong

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                                          - 18 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    because third parties do not have standing to enforce FSF's copyright.  *See Minden Pictures, Inc. v.*

2    *John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an

3    exclusive licensee of a right enumerated by §106 has standing to bring an infringement action); *see*

4    *also* GFI Dkt. No. 88 at 6:12-18 (citing same).

5         Further, the terms of the Neo4j Sweden Software License and their intent are not determined

6    by Suhy's email exchanges with the Free Software Foundation ("FSF").  *See* Opp. 29:14-23.  They

7    are irrelevant and inadmissible hearsay because FSF is not the actual licensor or a party to the actual

8    license.  Suhy conceded as much in his deposition.  Dkt. 98-1 at 187:12-188:15.  In any case, the

9    FSF did not bless Suhy's removal of the Commons Clause.  *See* Dkt. No. 100-2, Exh. B.  Suhy

10   admitted that the FSF did not seem to understand his questions, which prompted him to send second

11   a second email.  Dkt. No. 98-1, Exh. 3 at 183:2-184:10.  In response, the FSF did not agree with his

12   interpretation and stated that it could not give him legal advice.  *Id.,* Exh. 34 ("[i]f a work was

13   previously available under a free license, and later that license is changed, users can always use that

14   earlier version under the terms of the free license"); *see also* Exh. 3 at 189:1-191:3, 192:18-193:24.

15        Defendants then twist the definition of "License" and misconstrue the NOTICE provision at

16   the beginning of the Neo4j Sweden License to justify removing the Commons Clause.  *See* Opp. at

17   28:1-9, 28:23-29:13.    Defendants' arguments violate the cardinal principles of contract

18   interpretation.  In this regard, where "the language [of a contract] is clear and explicit, and does not

19   involve an absurdity," the language must govern the contract's interpretation.  Cal. Civ. Code §

20   1638.  In addition, "the meaning of a contract must be derived from reading the whole of the contract,

21   with individual provisions interpreted together, in order to give effect to all provisions and to avoid

22   rendering some meaningless." *Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1027 (2011); *see*

23   *also* Cal. Civ. Code § 1641 ("if reasonably practicable" a contract must be interpreted as a whole,

24   "so as to give effect to every part ... each clause helping to interpret the other").

25        The NOTICE provision clearly states that Neo4j® EE is developed and owned by Neo4j

26   Sweden… and is subject to the terms of the [AGPL], ***with the Commons Clause as follows***…." *See*

27   Dkt. No. 98-2, Exh. 3 (emphasis added).  The only logical way to read this and give effect to the

28   entirely of the agreement is that Neo4j Sweden is offering Neo4j® EE under a ***new license*** that

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10

- 19 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    incorporates the terms of the AGPL with the additional terms in the Common Clause.  *See* Cal. Civ.

2    Code. § 1641; *see also Segal v. Silberstein*, 156 Cal.App.4th 627, 633 (2007) ("[w]hen interpreting

3    contracts, the language used controls if it is clear and explicit").  Defendants also ignore that their

4    view nullifies the entire purpose of a license agreement by negating Neo4j Sweden's exclusive right

5    to control the modification and distribution of copyrighted code under the terms of its choosing.  *See*

6    GFI Dkt. No. 88 at 7:10-8 (citing *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011)

7    and *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008)).

8            Defendants' claim that Section 7 explicitly grants a licensee permission to remove additional

9    restrictions added by the original licensor, i.e. copyright holder, fares no better.  *See* Opp. at 28:15-

10   29:7.  In making that claim, the cite to the clause "If the Program as you received it, or any part of

11   it, contains a notice stating that it is governed by this License along with a term that is a further

12   restriction, you may remove that term."  *Id.*  This clause, however, cannot be read in isolation.

13   Rather, it must be put in context within the surrounding clauses in Section 7 and the Neo4j Sweden

14   Software License.  *See* Cal. Civ. Code. § 1641; *Zalkind*, 194 Cal.App.4th at 1027.  Notably, the

15   excerpt cited by them is preceded by the following in Section 7: "Notwithstanding any other

16   provision of this License, *for material you add to a covered work*, *you* may (if authorized by the

17   copyright holders of that material) supplement the terms of this License with terms: [six enumerated

18   terms omitted]…."  *See* Dkt. No. 98-2, Exh. 3 at §7 (emphasis added).  Defendants do not dispute

19   that "you" is defined as the "licensee," i.e. Defendants, in Section 0 of the Neo4j Sweden Software

20   License.  *See* Opp. 28:10-14; *see also* Dkt. No. 98-2, Exh. 3 at §0.   Thus, Section 7 clearly governs

21   the actions of *licensees* alone, ergo the repeated use of the defined term "you" and the fact that

22   subject matter of Section 7 pertains to what additional permissions and restrictions *licensees* may

23   place on a covered work when adding source code and redistributing it as required by the license.

24           The clause cited by Defendants is also immediately preceded by a clause stating that a

25   licensee who adds material to the original work may add any of the six enumerated "additional

26   restrictions" and that any other "non-permissive additional terms" are "further restrictions" *as*

27   *defined by Section 10*.  *See* Dkt. No. 98-12, Exh. 3 at §7.  In this regard, Section 10 makes clear that

28   only *licensees* are precluded from adding further restrictions:  "*You* may not impose any further

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10                                            - 20 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1  restrictions on the exercise of the rights granted or affirmed under this License." *See id.* at §10

2  (emphasis added).  Since the Neo4j Sweden Software License – and the AGPL – defines "you" as

3  the *licensee*, it only prohibits *licensees*, such as Defendants, from imposing further restrictions, but

4  does not prohibit Neo4j Sweden as the *licensor* of the *Program* from doing so.  *See* GFI Dkt. No.

5  88 at 7:6-9 (holding that "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further

6  restrictions, but do not prohibit a *licensor* from doing so") (emphasis in original); Reply Ratinoff

7  Decl., Exh. I, ¶ 5 (affirming that the Neo4j Sweden Software License with the Common Clause is

8  valid, and GFI's removal thereof and distribution of ONgDB violated that license and the DMCA).

9  　　　Defendants' strained view that licensees may alter or remove terms from the Neo4j Sweden

10 Software License also goes against Neo4j Sweden's express intent of precluding others from

11 commercially benefiting from the software and the express language of terms such as the Commons

12 Clause. *See* Dkt. No. 98-2, ¶¶ 11-14.  A licensor's intent to limit the commercialization of its

13 software generally should be given effect as intended by the *licensor*, not the licensee.  *See Altera*

14 *Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. 2005) (giving broad interpretation of "use"

15 clause that effectuated licensor's intent to prevent competitors from benefitting from its software);

16 *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (term in a license allowing users

17 of a computer game to develop enhancements, but barring the resale of the enhancements for a profit,

18 was enforceable); *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL

19 566378 (N.D. Ill. 1997) (distribution for commercial purposes was infringement where terms of

20 license limited use to non-commercial purposes).

21 　　　Finally, the Commons Clause must be harmonized with the balance of the Neo4j Sweden

22 Software License.  Aside from its obligation to ascertain whether a contract is clear or ambiguous,

23 a Court has a duty to construe a contract to avoid a forfeiture, if at all possible. *Milenbach v. C.I.R.*,

24 318 F.3d 924, 936 (9th Cir.2003) ("[w]here there are two possible interpretations of a contract, one

25 that leads to a forfeiture and one that avoids it, California law requires the adoption of the

26 interpretation that avoids forfeiture, if at all possible"); *accord Universal Sales Corp. v. Cal., Press*

27 *Mfg. Co.*, 20 Cal.2d 751, 771 (1942).  As detailed above, accepting Defendants' interpretation would

28 result in a forfeiture of Neo4j Sweden's right to license Neo4j® EE as it sees fit.  As such, there is

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                                   - 21 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

no disputed issue of fact that Defendants' statements, such as "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" are demonstratively false.  *See* Fact 77-78.

### 2. Defendants' Claims that ONgDB is a Drop-in Replacement for Equivalent versions of official Neo4j® EE are Demonstratively False

Defendants argue their advertising ONgDB as a "drop-in replacement" for Neo4j® EE is merely an opinion, and cannot support a false advertising claim because the statement does not expressly mention the quality or features of ONgDB. Opp. at 23:15-25:2.  Their arguments are legally and factually incorrect.  As acknowledged by Defendants, Neo4j USA "may show that this statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse **consumers**." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (emphasis added); *accord* Opp. at 22:23-23:1.  Thus, whether Defendants believe these statements were an opinion or factually true is irrelevant.

Defendants primarily rely upon GFI's testimony about ONgDB version 3.5.4 to refute that their representations were a drop in replacement for Neo4j® EE version 3.5.4 were false and/or misleading.  This does nothing to refute that Defendants' subsequent versions of ONgDB were not true drop-in replacements and such statements were false or likely to mislead or confuse consumers. To be sure, GFI *again* confirmed that it "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." *See* Fact 96-97, 101.  This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent.  Fact 101 (Dkt. No. 98-1, Exh. 31 at 188:5-17, 188:23-189:23).  Notwithstanding GFI's admission, iGov *continues to* makes drop-in replacement claims for ONgDB v3.5.5 and ONgDB v3.5.11.  *See* Dkt. No. 98-1, Exhs. 64-69, 71-74 [green highlights]; Exh. 46 ("All ONgDB distributions are drop-in replacements for Neo4j Enterprise and Neo4j Community as they use the same code base and versioning.  Ex: ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8 and so on.").  Since the producer of ONgDB says otherwise, any reasonable jury would conclude Defendants'

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3690595.10

- 22 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    post-version 3.5.4 representations were false or misleading.

2            Defendants' effort to create a disputed issue of fact concerning the actual qualitative

3    differences between ONgDB versus Neo4j® EE also falls flat.  Defendants attempt to downplay

4    their drop-in replacement statements by arguing that Plaintiffs failed to offer actual empirical testing

5    to show that ONgDB is of inferior quality and has an increased potential for instability.  Opp. 25:3-

6    26:10.  Defendants admit to having no visibility into enterprise-only source code after Neo4j®

7    v3.5.0-RC1 and the testing Plaintiffs employed with subsequent versions.  Fact 95, 98 (Dkt. No. 98-

8    1, Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9). Defendants also fail to offer evidence that the

9    testing done by GFI is equivalent to Plaintiffs' rigorous testing regiment.  As a result, Mr. Suhy's

10   declaration insisting that ONgDB is of the same quality has no evidentiary value. *See* Dkt. No. 100-

11   1 at ¶¶ 39-40.  The fact that GFI admitted it stopped calling ONgDB a drop-in replacement for

12   equivalent versions of Neo4® EE after version 3.5.4 also negates Defendants' assertions to the

13   contrary.  As noted above, Neo4j USA must either show that these statements are demonstratively

14   false *or likely to mislead or confuse consumers*.  The unrefuted evidence concerning Defendants'

15   statements, at minimum, would lead any reasonable jury to find the latter since ONgDB is not 100%

16   identical, contains glue code, does not include every feature, and is not subject to the same level of

17   quality control as Neo4j® EE as conceded by GFI.  *See* Fact 95-97, 99-101.

18           **3.    Defendants Falsely Advertising ONgDB as a Free version of Neo4j® EE
                     licensed under the APGL is Material to Customers' Decisions**
19

20           Defendants concede that price is material to customers' decision to choosing ONgDB by

21   arguing that customers can decide to pay $500,000 for Neo4j® EE or ONgDB for *free* without the

22   commercial limitations imposed by the Commons Clause.  *See* Opp. at 30:18-31:2.  Defendants then

23   argue that they made no false claims based on pricing.  *See id.*  This is undermined by undisputed

24   evidence that Defendants' websites and tweets contain statements that ONgDB is licensed under

25   AGPL as a free drop-in replacement for Neo4j® EE available under a paid commercial license.  *See*

26   Fact 77-78.  To be sure, Defendants' main selling point for ONgDB is that the money customers

27   save by not having to pay Plaintiffs for a license to Neo4j® EE can be used to pay iGov for support

28   and development services.  *See* Dkt. No. 98-1, Exhs. 62-66; *see also* Exhs. 42-43, 76-77.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3690595.10                          - 23 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

Defendants' additional argument that purchasing decisions were based on price - "there is no evidence that a customer would have paid for a commercial Neo4J version of the software given the availability of free ONgDB," defies logic.  *See* Opp. at 31:2-6.  Indeed, had Defendants not illegally replaced the Neo4j Sweden Software License with the AGPL, they could not offer ONgDB as a free, no-cost "drop-in" replacement.  Defendants' additional argument that there is no evidence of materiality ignores that "where a statement is literally false … both actual deception and materiality are presumed." *AECOM Energy & Constr., Inc. v. Ripley*, 348 F.Supp.3d 1038, 1056 (C.D. Cal. 2018).  They also ignore evidence that customers chose ONgDB over Neo4j® EE for this reason.  *See* Fact 105-106.  Simply arguing that the statements are true or that Defendants never used the terms "drop in replacement/equivalent" together do nothing to refute this fact.  *See id.*  To the contrary, in their email exchanges with Next Century, Defendants assure that it can use ONgDB under the AGPL at no-cost, and did not need to worry about the Commons Clause or have to obtain a paid license from Plaintiffs.  *See* Dkt. No. 98-1, Exh. 48-50. Next Century then ***chose*** ONgDB over Neo4j® EE: "I work with Shahak Nagiel who wrote to you earlier regarding the possibility of using OngDB instead of the enterprise edition of Neo4j. I am currently leading the Graph Database team responsible for deploying an OngDB-based solution into production." *Id.*, Exh. 120; *see also* Dkt. No. 98-3, ¶¶ 22-23; Exh. 12-13.  Therefore, Neo4j USA is entitled to summary judgment on its false advertising claims against Defendants as there are no disputed facts as to falsity and materiality.

## G.    False Designation of Origin

Defendants' only response to Plaintiffs' argument in response to Neo4j USA's false designation of origin claim is that there is an issue of fact on whether Defendants' statements concerning ONgDB being "free and open source" Neo4j® EE under the AGPL are false.  Opp. at 22:1-5.  This is entirely based on Defendants erroneous belief that they could replace the Neo4j Sweden Software License with a form AGPL.  *See id.*  As detailed above, their position is untenable and not supported by the language of either of those agreements.  Plaintiffs are therefore entitled to summary judgment on their Section 43(a) false designation of origin claim against Defendants.

## H.    Plaintiffs are Entitled to Either Preliminary or Permanent Injunctive Relief

Defendants argue that Neo4j USA is not entitled to injunctive relief because their unclean

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3690595.10

- 24 -

CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

1    hands defense may preclude it and the requested injunction is "overbroad." Opp. at 31:21-33:18
2    However, they do not explain how this defense, even if they were to succeed on it, would stop Neo4j
3    USA from obtaining an injunction to halt their infringement of the Neo4j® Mark and false
4    advertising of ONgDB.  This is because it does not apply to these claims, which is why it was
5    relegated to Phase 2. *See* Dkt. No. 81, ¶¶ 1-3.  Even if the unclean hands defense were applicable,
6    Defendants offer no explanation beyond insisting their discredited view of the APGL and do not
7    explain why the Court could not issue it as a preliminary injunction until their defense is adjudicated.

8    **I.      The Court Should Deny Defendants' Cross-Motion for Summary Judgment**

9           Defendants cross-move for summary judgment on Neo4j USA's trademark claims based the
10   same theories that Neo4j USA does not own the Neo4j® Mark and they merely use mark for
11   comparative advertising.  Opp. at 33:21-34:4.  As detailed above, they fail to meet their burden of
12   proof on their invalidity defense, and fail to create a disputed issue of fact on the validity of the
13   registration for the Neo4j® Mark.  Likewise, Defendants' misuse of the Neo4j® Mark to promote
14   their patchwork binaries of Neo4j® EE source code and ONgDB does not qualify as nominative fair
15   use.  Defendants also cross-move on Neo4j USA's false advertising claims based an alleged lack of
16   evidence that consumers do not chose ONgDB because of price. *Id.* at 34:6-19. This makes no sense
17   because they concede that customers choose ONgDB over Neo4j® EE because the former costs
18   nothing, and Next Century chose it for this precise reason.  As discussed above, the undisputed
19   evidence establishes falsity because Defendants removed the Commons Clause in order to promote
20   ONgDB as no-cost Neo4j® EE.  The Court should therefore deny Defendants' cross-motion.

**IV.    CONCLUSION**

21          For the reasons set forth herein and in their moving papers, Plaintiffs respectfully request
22   that the Court (1) grant partial summary judgment in favor of Neo4j USA on its Lanham Act and
23   UCL claims; (2) enter either a preliminary or permanent injunction as set forth in the previously
24   filed proposed order; and (3) deny Defendants' cross-motion for summary judgment.

25   Dated: February 16, 2021                    HOPKINS & CARLEY
                                                 A Law Corporation

26                                               By: */s/ Jeffrey M. Ratinoff*
                                                 Jeffrey M. Ratinoff
27                                               Attorneys for Plaintiffs NEO4J, INC. and
                                                 NEO4J SWEDEN AB
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3690595.10                              - 25 -
CONSOLIDATED REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

**EXHIBIT A**

**PLAINTIFFS' REPLY SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Trademark Infringement Against the PT Defendants and Their Nominative Fair Use Defense** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | <u>Fact 1</u>: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark").  Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Declaration of Adron G. Beene ("Beene Dec."), Ex. 1 at §2.1.1., 2 and 3. |
| | <u>Additional Fact</u>: Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is a "related company" as referenced in the US application for the Neo4j® Mark.  Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125).  Neo4j USA actively offered licenses to Neo4j® software via its website from at least as early as July 2011 and immediately before it filed the application for the Neo4j® Mark. *Id.*, Exhs. A-D. | |
| 2.  The PT Defendants impermissibly used the Neo4j® Mark after Neo4j USA terminated the Partner Agreement | <u>Fact 2</u>: On September 30, 2014, PureThink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement"). Ratinoff Decl., Exh. 4. | **DISPUTED**: The PT defendants use of the Neo4J trademark is nominative to identify NEO4J as a company and the Neo4J software and for comparative advertisement.  Declaration of John Mark Suhy ("Suhy Dec.") ¶2, |
| | <u>Additional Fact</u>: Defendants admitted that PureThink entered into this agreement with Neo4j USA.  Dkt. No. 90, ¶29; Dkt. No. 91, ¶ 29. | |
| | <u>Fact 3</u>: Under the Partner Agreement, PureThink was granted a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to market and resell commercial licenses to Neo4j® Enterprise Edition ("Neo4j® EE") and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11. | **UNDISPUTED** |
| | <u>Fact 4</u>: PureThink further agreed to the terms of the limited license under the Partner Agreement to use the Neo4j® Mark in accordance | **UNDISPUTED** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | with Neo4j USA's "then-current trademark usage guidelines." *Id.*, Exh. 4 at § 4.1. | |
| | <u>Fact 5:</u> The Partner Agreement was subject to a 1-year term, and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the operative trademark guidelines at that time. Ratinoff Decl., Exh. 4 at §7.1; Exh. 3 at 67:18-24.   As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016. *See* Rathle Decl., ¶ 16, Exh. 5. | **UNDISPUTED** |
| | <u>Fact 6:</u> All rights and licenses to Neo4j® Software and the Neo4j® Mark would terminate upon the expiration or termination, and upon such an event, PureThink agreed to "cease using any trademarks, service marks and other designations of Plaintiffs." Ratinoff Decl., Exh. 4 at §7.3. | **UNDISPUTED** |
| | <u>Fact 7:</u> On July 11, 2017, Neo4j terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement. Ratinoff Decl., Exh. 12. | **DISPUTED**: Moving Party's reference to [Neo4j] is vague and misleading as the Partner Agreement provides "will cease using any trademarks, service marks and other designations of the *other party*" emphasis added. Ratinoff Decl., Exh. 4 at §7.3. Neo4J USA is not the owner, assignee or exclusively licensee of the mark and lacks standing to assert the mark. Beene Dec., Ex. 1. |
| | <u>Fact 8:</u> PureThink continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Ratinoff Decl., Exh. 14. It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy. *See id.*, Exh. 16. | **DISPUTED:**   The PureThink references are to Sweden's open source versions of Neo4J and proper nominative use of Sweden's mark. Suhy Dec. ¶3 |
| | <u>Fact 9:</u> Under the Partner Agreement, PureThink agreed that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of substantially all of its assets. Ratinoff Decl., Exh. 4 at § 10. | **UNDISPUTED** |
| | | **Additional Facts** |
| | **DISPUTED:** Section 7.3 of the Partner Agreement relates to its termination, and does not contain an assignment provision.  Suhy's testimony that there is no evidence of consent is inadmissible argument. | Under the Partner Agreement, assignment of the agreement, outside of a successor in interest required consent of Neo4J USA. Ratinoff Decl., Exh. 4 at |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | §7.3. No evidence of consent to the assignment exists. Suhy Dec. ¶61. |
| | **Fact 10:** Suhy and PureThink formed iGov on or about June 23, 2017 to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. | **DISPUTED:** iGov was formed as a separate entity by Suhy for several reasons. Suhy Dec. ¶4., Beene Dec. Ex. 4 at 45:4-47:5. The restrictions are for purposes of non-competition and void. Suhy Dec. ¶4. |
| | **Fact 11:** Suhy is sole owner and employee of PureThink and iGov, used the same website template, and initially used the same offices and support telephone number for both entities. Ratinoff, Decl, Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-40:23, 47:20-49:8, 52:9-11. | **DISPUTED** - PureThink and iGov used the same office address for a mailing address until iGov could setup a new office.   iGov did not "use" the office address other than for correspondence.

The support telephone number is a 3rd party number that neither PureThink or iGov owned.  The website template used was a commercial template. PureThink and iGov purchased the same template because Suhy was familiar with it. iGov did not use PT's computers.   Suhy Dec. ¶5. |
| | **Fact 12:** Suhy used both his iGov and PureThink email accounts to solicit customers that he had previously contacted under the Partner Agreement.  Ratinoff, Decl., Exhs. 19, 25, 29, 45-46, 54. | **DISPUTED:**  All new business development was done using iGov Inc emails (Exhibit 19, 46, and 54). Exhibit 25, 29 were discussions and not solicitations.)
The only entity who was a customer listed in this fact was Sandia National Laboratories.  They were a customer of PureThink and the communication was through PureThink. (See Ratinoff, Decl. Exhibit 45). The solicitations were for use of Sweden's open source Neo4J. Suhy Dec. ¶6. |
| | **Additional Facts:** Exh. 19 was sent to the NGA and Exh. 54 was sent to the USAF via Suhy's iGov account, both which were originally PureThink relationships. Reply Ratinoff Decl., Exh. E at Resp. Nos. 5.24, 6.23-6.24, 13.5.  Exh. 46 was sent to the US Army via Suhy's iGov account, and was originally a PureThink relationship.   Reply Ratinoff Decl., Exh. E at Resp. 8.16. | |
| | **Fact 13:** iGov took over PureThink's business relationship with the IRS. Ratinoff, Decl, Exh. 3 at 53:4-54:25; Exh. 127. | **DISPUTED:** USA interfered with PT's potential business with the IRS. iGov did not take over PT's potential business relationship with the IRS. Suhy Dec. ¶7., Exhibit 1 |

842\3697141.3

3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  | **Additional Fact:** Suhy established a relationship with the IRS via PureThink, and continued that relationship via iGov.  *See* Reply Ratinoff Decl., Exh. E, Resp. No. 1.16(a)-(b), 8.3-8.4, 14.3-14.4. |  |
|  | Fact 14: The PureThink Defendants ("PT Defendants") claimed to be "the developer of the retired Neo4j Government Edition" in close connection with touting their prior relationship with Neo4j USA. Ratinoff Decl., Exhs. 15-19, 21, 62-64. | **DISPUTED:** Suhy and PureThink did develop the Neo4j Government Edition. the PT Defendants do not "tout" PT's prior relationship; they said it was terminated.  Suhy Dec. ¶8 |
|  | Fact 15: iGov used the Neo4j® Mark on its website without authorization to promote "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise," and related support services.  *See* Ratinoff Decl., Exhs. 15-18, 21, 62-64. | **DISPUTED:** A nominative use does not require authorization.  iGov references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 |
|  | Fact 16:  iGov's other unauthorized uses of the Neo4j® Mark on its website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**;" (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's patchwork binaries of Neo4J® EE; and (5) touting PT Defendants' prior relationship with Neo4j USA and to be "the developer of the retired Neo4j Government Edition."  Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69. | **DISPUTED:** Objection this is not a fact; it is argument.  A nomantive use does not require authorization. USA does not own the trademark. D Fact . Beene Dec Exhibit 1,2,3.  (4) "Government Packages for Neo4j" and "Neo4j Enterprise" were used to describe the government packages iGov provided support for around the free and open source neo4j database.  Neo4j® Mark was never used. The email address is for Sweden's open source Neo4j for inquires for that product. The email address was discontinued in the hopes USA would discontinue this litigation. "Neo4j Enterprise" is needed to distinguish between the open source "Neo4j Community" and "Neo4j Enterprise" distributions, both of which are built when compiling the Neo4j source code. iGov does not "tout" PT's prior relationship; they said it was terminated. Suhy Dec. ¶10 |
|  | **Additional Fact:**  The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions, including Plaintiffs' |  |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | exclusive right of use in connection with the Neo4j® products and services. Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24.  The AGPL is not a trademark license, and thus does not permit Defendants to use the Neo4j® Mark to promote their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. | |
| | <u>Fact 17:</u> iGov continues to offer "Neo4j enterprise open source licensed distributions" and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on its website.   Ratinoff Decl., Exhs. 62-70 (highlighted in yellow). | **DISPUTED:**  iGov offers support for both Neo4j Enterprise open source licensed distributions, and ONgDB Enterprise open source distributions. Neo4j Enterprise distributions below 3.5 are still in use and available to the public.<br><br>iGov no longer offers distributions from it's website and only recommends ONgDB Enterprise distributions. iGov links to the GraphFoundation download page.<br>Suhy Dec. ¶11 |
| 3.  The PT Defendants used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | <u>Fact 18:</u>  After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page sometime after July 27, 2020.  Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5.  While iGov replaced this url with "https://igovsol.com/graph.html," the contents of the page remained the same. *Compare id.*, Exh. 65 *and* Exh. 66. | **UNDISPUTED** |
| | <u>Fact 19:</u>  iGov used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 62-65) and "downloads.html" page (*id.*, Exhs. 67-69) as means for consumers to inquire about ONgDB until sometime in July 2020.  Ratinoff Decl., Exh. 13 at RFA Nos. 7-11. | **DISPUTED:**  iGov used neo4j@igovsol.com and neo4j.html as a way to inquire about iGov support services and support for the neo4j open source database.  'neo4j' is Sweden's Github repository name for the official Sweden open source Neo4j repository.  It was not just a means for consumers to inquire about ONgDB but of the services and support around open source neo4j and ongdb open source license support. Suhy Dec. ¶12 |
| | **Additional Facts:** Suhy testified that he used the neo4j@igovsol.com for "any questions relating to the open-source Neo4j project around graphs. Anything where somebody would want consulting around that project" without Neo4j's authorization. Reply Ratinoff Decl., Exh. F at 41:4-16. The AGPL is not a trademark license, and thus does not permit | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Defendants to use the Neo4j® Mark with their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. | |
| | Fact 20: GFI used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Ratinoff Decl., Exhs. 66-68 (highlighted in red), Exh. 13 at RFA Nos. 10, 14. | **UNDISPUTED** |
| | **Additional Fact:** This should state that iGov, not GFI used the hyperlink as admitted by the PT Defendants in requests for admissions. | |
| | Fact 21: iGov continues to promote "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" versions 3.5.x as open source Neo4j® EE that can be used for free under the AGPL.  Ratinoff Decl., Exhs. 62-74. | **DISPUTED:** Neo4j Enterprise and ONgDB Enterprise are open source and free to use under the open source AGPL license.<br><br>After versions 3.4.x – the term Neo4j Enterprise Edition was not applicable as Neo4j Inc stopped contributing to the enterprise code.<br><br>iGov does not promote Neo4j Enterprise Edition 3.5.x as being open source.<br><br>Many of the exhibits are showing the same page over and over from different snapshot dates but with matching content giving the illusion that there were more pages than existed.<br><br>ONgDB 3.5.5 is a drop in replacement for Neo4j 3.5.5 (Community and Enterprise commercial.)<br><br>After reading this - iGov realizes that the next line needs to have the grammar cleaned up to say:  "**The AGPLv3 Open Source License, has** no limitations on causal cluster instances, cores or production usage"<br><br>Suhy Dec. ¶13 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 22:** iGov operated www.graphstack.io to further promote ONgDB using the Neo4j® Mark, and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies." Ratinoff Decl., Exh. 75. | **DISPUTED:** GraphStack is a graph development stack aimed at building out large scale AI and graph solutions. GraphStack is to promote iGov software packages and solution development, not specifically Neo4j. Both Neo4j and ONGDB will drop into GraphStack – so using the names is important to explain that GraphStack will work with both. Suhy Dec. ¶14 |
| | <u>Fact 23:</u> The GraphStack website used hyperlinks to redirect consumers to Neo4j USA's official release notes and "What's New" page in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43]. | **UNDISPUTED** |
| 4. The PT Defendants knew their uses of the Neo4j® Mark were unauthorized and violated Neo4j USA's Trademark Guidelines | <u>Fact 24:</u> The trademark guidelines the PT Defendants had agreed to be bound by in the Partner Agreement prohibited the use of the Neo4j® Mark: (1) with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind;" and (2) "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5; *see also* Exh. 4 at §7.1; Exh. 3 at 67:18-24 | **DISPUTED:** The Partner Agreement terminated on July 11, 2017 (Fact 7 above). Suhy and iGov are not parties to the Partner agreement. The PT defendants have not used USA's disputed trademark to market, sell or service and USA products. All marketing and services are limited to Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. Suhy Dec. ¶15 |
| 5. The PT Defendants did not use the Neo4j® Mark to describe Plaintiffs' products | <u>Fact 25:</u> The PT Defendants used the Neo4j® Mark to promote their "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise" rather than comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 14-18, 21, 62-65. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

All exhibits referenced except for exhibit 14 (15, 16, 17, 18, 21, 62-65 ) are all for iGov Inc sites are iGov sites, but have been incorrectly referenced in this fact as being PT Defendants. Suhy Dec. ¶17 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | <u>Fact 26:</u> The PT Defendants often used the Neo4® Mark to promote ONgDB instead of to comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 62-74; Exh. 13 [RFA Nos. 4-11, 14]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | <u>Fact 27:</u> The PT Defendants used the Neo4j® Mark on iGov's website as (1) an URL address for a page promoting their "Neo4j Enterprise" packages and ONgDB; (2) an email address for customers to obtain more information about their "Neo4j Enterprise" packages while referring to ONgDB; and (3) a hyperlink to redirect consumers to download ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. 16 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| 6. Defendant's product was readily identifiable without use of plaintiffs' trademark | <u>Fact 28:</u> Rather than naming their version of Neo4j® EE something else without using the Neo4j® Mark, the PT Defendants used the mark to name and promote their "Neo4j Enterprise" packages and while referring to ONgDB, as well as using the Neo4j® Mark to offer related support services for ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>When Sweden's  Neo4j open source code is compiled from the official Sweden Neo4j Github repository - it creates 2 distributions called "Neo4j Community" and "Neo4j Enterprise".  Enterprise is |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | a standard term for software used for business as in an "Enterprise" is a generic identifier.  Suhy Dec. ¶18 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| | **Fact 29:** Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, Defendants used the mark to promote ONgDB and related support services for ONgDB. Ratinoff Decl., Exhs. 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14]. | **DISPUTED:**  Objection this is not a fact its argument.  ONgDB is a fork of Sweden's open source Neo4j and nominatively identified as such. Suhy Dec. ¶19 |
| 7. The PT Defendants prominently used the Neo4j® Mark beyond what was reasonably necessary | **Fact 30:** The PT Defendants extensively used the Neo4j® Mark (without proper trademark usage and notices) on their website, and in direct solicitations beyond describing "Neo4j Enterprise" packages and ONgDB as a forks of Neo4j EE.  Ratinoff Decl., Exhs. 14-18, 24-26, 42-47, 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| 8. The PT Defendant's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | **Fact 31:**   The PT Defendants claimed that (a) "By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!" [Ratinoff Decl., Exhs 14-15]; (b) "The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j" [*id.*, Exh. 16]; (c) "US Federal Government Packages for Neo4j Solutions" [*id.*, Exh. 17]; (d) "Government Development Packages for Neo4j" [*id.*]; (5) "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [sic] free Open Source license!" [*id.*, Exh. 18]; (e) "Get the open source licensed Neo4j Enterprise distributions we package for our government customers" [*id.*, Exh. 21]; (f) "We compile and packaged the open source licenced [sic] distributions from the same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" [*id.*]; (g) "I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. If you don't know about Neo4j - here is their website: http://neo4j.com" [*id.*, Exh. 26].  *See also id.*, Exhs. 19-20, 62-66. | **DISPUTED** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | <u>Fact 32:</u>  The PT Defendants also claimed on iGov's website that (a) "We only focus on only supporting 100% free and open source ONgDB Enterprise & Neo4j Enterprise open source licensed distributions." [Ratinoff Decl., Exh. 66]; (b) "ONgDB Enterprise is a drop In replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*]; (c) "The distributions we package for the federal government and community as a whole are drop in replacements for Neo4j Enterprise commercial packages you download from neo4j.com" [*id.*]; and (d) "ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be used in production, in closed source projects, and with no limitations on # of cores or causal cluster instances." [*id.*, Exh. 74]. *See also, id.* at Exhs. 62-65, 71-73. | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). Defendants promoted ONgDB as Neo4j® EE except that ONgDB is free and without commercial restrictions only because they removed the Commons Clause. Rathle Decl., ¶¶ 5-13, 27, 29, Exh. 3. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 33:**  The PT Defendants solicited customers about ONgDB stating that (a) "I can explain why the foundation was created and how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS…" [Ratinoff Decl., Exh. 24]; (b) "the Graph Foundation was setup to ensure Neo4j/ONgDB remains free and open.  It is Neo4j Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version. (Ex: 3.5.5)" [*id.*, Exh. 44]; (c) "ONgDB (Open Native Graph Database): Neo4j Enterprise OSS distribution downloads 3.5.8 will be up next week" and "ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8" [*id.*, Exh. 46]; (d) "We compile Neo4j branded distributions for agencies who added Neo4j branded distributions instead of ONgDB branded distributions to their white lists. We have all versions of the Neo4j branded distributions up to 3.5 available" [*id.*,]; and (e) "Neo4j Enterprise open source distribution licenses and basic support. Aka: ONGDB" [*id.*, Exhs. 55, 131]. *See also, id.* Exhs. 43, 47, 54. | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | **Fact 34:**  In its promotion of ONgDB software, iGov used hyperlinks on its website to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until it removed those references sometime in July 2020.  *See* Ratinoff, Exhs. 67-69 (highlighted in blue). | **DISPUTED:**  Because ONgDB is a fork of Neo4j which the core code is unmodified, the release notes and whats new page are relevant and provide important information.  Suhy Dec. ¶22<br><br>Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21<br><br>The Sweden GitHub repository for open source Neo4J provides content including USA's documentation. Under the GitHub Terms of Services, all users may use all content. Referring licensees to such documentation is permissive. Nevertheless, when Neo4j Inc complained - the links were removed. Suhy Dec. ¶23 |
| 8. The PT Defendant's use of the Neo4j® Mark caused actual consumer confusion | <u>Fact 35</u>: The PT Defendant's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED:** Objection, the evidence is hearsay and there is no showing the use of the Name Neo4J caused consumer confusion. Consumers choose ONgDB because of price. This fact is conceded by Plaintiffs. Dkt. 98, p. 2:12-13; p. 32:6-10<br><br>PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶24<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References |

842\3697141.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>Exhibit 115:  Shows an anonymous user named "stephanie" asking about trying to use ONgDB with Neo4j Desktop, it does not mention a specific version or anything more.  There is no way of knowing if there was a "compatibility" issue, in fact the issue could have been caused because of an incorrect version number and could have occurred with Neo4j Enterprise distributions packaged by Neo4j.  Furthermore, USA responds and in no way explains or tells the user that ONgDB is not even provided by them.  The omissions in Neo4j's response would actually cause confusion because they are not saying anything about ONgDB being a 3rd party product. The confusion is caused by USA and Sweden's dual channel marketing of commercial and open source software through two different companies with the same name.  Exhibit 116 is simply forwarding this post to Brad Nussbaum.  Suhy Dec. ¶25 |
| | Fact 36: Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  *See, e.g.,* Exhs. 35, 40, 42-44, 46, 53, 55, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners.  Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25<br><br>Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the evidence: **Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | ongdb github issue list and the content does not lead to any confusion.<br>**Exhibit 40:** Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead.<br>"where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?"<br>**Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB.   Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The statements in exhibits are true and not misleading. Suhy Dec. ¶27 |
| | Fact 37: The PT Defendant's use of the Neo4j® Mark to promote ONgDB as free open source and falsely [equate] it with commercially licensed Neo4j® EE created actual customer confusion.  Ratinoff Decl., Exh. 48-49, 117-120, 130-131, 134-135. | **DISPUTED:**  Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners.  Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25<br><br>Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the statement:<br><br>**Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the ongdb github issue list and the content does not lead to any confusion.<br><br>**Exhibit 40:**  Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | the binaries himself. There is nothing in the exhibit supporting that this user was mislead. "where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?" **Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB.   Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The facts in exhibit are true and not misleading.  Suhy Dec. ¶27 |
| | Fact 38: Consumers who have downloaded ONgDB rather than official Neo4j® EE have experienced technical issues with ONgDB.  Ratinoff Decl., Exh. 121-124, 133. In one instance, Suhy sent a user to Neo4j USA's operations manual for assistance. *Id.,* Exh. 125. | DISPUTED:  Mr. Suhy believes that the technical issues could be caused by Neo4j Core code that it does not modify or simply because an end-user did not read the instructions on configuring a specific feature.   Mr Suhy is not aware of a bug fix for this issue indicating it could have just been user error. The inference drawn is not supported by the statement:  In many of the exhibits Neo4j tries to show a problem, but does not show any proof that the problem was simply user error or configuration or an analysis of what the problem was.  Exhibit 121 does not give enough information to identify if there is a technical issue, and furthermore the user from the exhibit said that they figured out the problem on their own indicating it was user error.  Exhibit 122 seems to indicate that a plugin or misconfiguration of the JVM is the problem.  Exhibit 123 indicates that the user is using ONgDB 3.2.3 which would have had the same source code as the Neo4j Enterprise branded distribution. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Furthermore it seems that the issue was with the a 3rd party plugin called "tinker pop" and therefore was not even specific to Neo4j or ONgDB.  Because the source code for Neo4j and ONgDB was the same for that specific 3.2.3 version - if there was a technical issue - then it would have also been present in the Neo4j Enterprise 3.2.3 version as well.<br><br>USA charges customers and provides technical support for its commercial Neo4J products because consumers have technical issues with their "commercial" Neo4J products as well. Technical issues with software is not indicative of any difference in the software.  Suhy Dec.  ¶28 |
| **Claim 2: Trademark Infringement Against Graph Foundation Inc.** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | Fact 39: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark").  Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Beene Dec, Exh. 1 at §2.1.1., 2 and 3. |
| 3. GFI used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 40: Defendants copied the code, removed the commercial restrictions imposed by the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28-29, 37, 62, 86; *see also* Exh. 3 at 28:25-29:11, 171:23-172:23, 199:22-200:20; Exh. 31 at 87:24-90:9. | **DISPUTED:** Suhy did not remove commercial restrictions imposed by Neo4j.  He only followed the instructions of the License.txt copyright holder (free software foundation) making it verbatim.  The commons clause restrictions were still in effect and referenced in 1000s of files which Mr Suhy did not modify because the other files were copyrighted to Neo4j Sweden.  Following the rules for the License.txt file did not remove any restrictions on the software. Suhy Dec.  ¶29 |
| | **Additional Facts:**  GFI testified that Defendants removed the Commons Clause from the Neo4j Sweden Software License for open EE v3.4 and offered it as ONgDB.  Ratinoff Decl., Exh. 31 at 87:24-89:8. The AGPL and the Neo4j Sweden Software License also requires | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | each copy of the software subject to the license to bear copyright notices.  Rathle Decl., Exh. 3 at §§ 4-5. | |
| | <u>Fact 41:</u> GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB.  GFI Dkt. No. 89, ¶ 18, Exh. 18; Ratinoff Decl., Exh. 31 at 81:14-20. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18. |
| | **Additional Fact:** There was no overt difference between GFI's original landing page for ONgDB and Plaintiffs' landing page on GitHub. Compare Dkt. No. 89, Exh. 18 *and* Ratinoff Decl., Exh. 59. | |
| | <u>Fact 42:</u> On January 17, 2019, GFI modified its landing page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," adding references "ONgDB & Neo4j" and that "ONgDB & **Neo4j Enterprise** consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository," but the content still remained almost identical to Plaintiffs' GitHub landing page and contained wide-spread misuse of the Neo4j® Mark.  Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21 (emphasis added). | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.<br><br>**DISPUTED** that the landing page contained "wide-spread misuse" of the Neo4® Mark.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 43:</u>  On April 14, 2020, GFI started to remove the Neo4j® Mark and Neo4j USA's URLs from that page.  *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.  However, GFI's landing page was still titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout.  *Id.*, ¶¶ 29-31, Exhs. 29-31. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.<br><br>**DISPUTED** that the landing page used the Neo4® Mark.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 44:</u>   On April 21, 2020, GFI removed instances of the Neo4j® Mark and hyperlinks to Neo4j USA's website, but still used Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project."  GFI Dkt. No. 89, Exhs. 32-33. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.<br><br>**DISPUTED** that the "neo4j project" is mislabeling. The term "neo4j project" is used to describe the fact |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| | <u>Fact 45:</u> Rather than create its support documentation for ONgDB, GFI relied upon Neo4j USA's official documentation and used hyperlinks on its website to redirect users to Plaintiffs' official documentation, including Neo4j USA's copyrighted operation and developer manuals, located on its website.  Dkt. No. 89, ¶¶ 3-8, 13-16, Exhs. 3-8, 13-16; Ratinoff Decl., Exhs. 78-83, Exh. 129 [RFA Nos. 81-84, 88-89, 93-94, 98-100, 104, 108, 111, 123-126, 130-136]. | **UNDISPUTED** |
| | <u>Fact 46:</u> GFI's website directed users to ***Plaintiffs'*** change logs for each new release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89, ¶¶ 3-8, Exhs. 3-8; Ratinoff Decl., Exh. 84; Exh. 129 [RFA Nos. 87, 92, 97, 103, 107, 110]. | **UNDISPUTED** |
| | <u>Fact 47:</u> Up until April 14, 2020, GFI's GitHub landing page stated "To build the documentation see the Neo4j documentation" with an embedded hyperlink: https://github.com/neo4j/neo4j-documentation/. Dkt. No. 89, Exhs. 18-19, 23. | **UNDISPUTED** |
| | <u>Fact 48:</u> GFI's document repository on GitHub also uses hyperlinks that send consumers to Neo4j USA's official documentation on Neo4j USA's corporate website.  Dkt. No. 89, ¶¶ 9-16; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:12, 284:2-285:18; Exhs. 128-129 [RFA Nos. 81-84, 115-126]. | **UNDISPUTED** |
| | <u>Fact 49:</u> The Neo4j USA developer and operation manuals are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License, which expressly prohibits the use of Plaintiffs' documents for commercial purposes. Ratinoff Decl., Exh. 85, Exh. 31 at 286:1-288:13. | **UNDISPUTED** |
| | <u>Fact 50:</u> GFI used the Neo4j® Mark in the title tags of webpages on its website featuring ONgDB. Ratinoff Decl., Exhs. 128-129 [RFA Nos. 85-86, 90-91, 95-96, 101-102, 105-106]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 51:** GFI did not seek or obtain Neo4j USA's authorization to use the Neo4j® Mark on GFI's website and GitHub repository in the foregoing manner.  Ratinoff Decl., Exh. 31 at 181:6-182:3, Exh. 129 [RFA Nos. 5-9, 22-26, 69, 71, 73-76, 78]. | **UNDISPUTED** |
| | **Fact 52:** GFI used the Neo4j® Mark as a hashtag (#Neo4j) in tweets published from GFI's Twitter Account to promote ONgDB.  Ratinoff Decl., Exhs. 89-92, 95-96, Exhs. 128-129 [RFA Nos. 149-150, 157-158, 165-166, 173-174, 181-182, 187-188]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| 4. GFI's ONgDB product was readily identifiable without the Neo4j® Mark | **Fact 53:** ONgDB can be readily identified as such or as "Open Native Graph Database" without use of the Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 172:23-173:16, 175:5-20, 176:7-19, 178:13-179:25. | **DISPUTED:**  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 54:** GFI issued tweets promoting ONgDB without using the Neo4j® mark or the mark as hashtag.  Ratinoff Decl., Exhs. 86, 88. | **UNDISPUTED** |
| 4. GFI did not use the Neo4j® Mark to describe Plaintiffs' Neo4j® products | **Fact 55:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and gratuitously used the Neo4j® Mark to describe and promote its own software.  *See supra* Facts 41-44. | **DISPUTED:**  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 56: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for the Neo4j® Platform, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**: The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base." There is not a reference to ONgDB and Neo4j being one in the same. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.  ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark <br><br> If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | Fact 57: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, GFI used the mark to promote ONgDB on its website and GitHub repository. *See supra* Facts 41-52. | **DISPUTED**: ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.  ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark <br><br> If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 58: GFI used a hashtag, **#Neo4j** that consists of nothing more than the Neo4j® Mark with a "#" before the mark to promote ONgDB on social media.  Ratinoff Decl., Exhs. 1, 89-96 and Exh. 31 at 233:17-237:21. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| | Fact 59: GFI chose the following format that relied on using the Neo4j® Mark as a hashtag to announce its new releases of ONgDB:  "**#ONgDB** (**#FOSS#Neo4j** Enterprise) 3.5.x support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate, competing products.[1]   Ratinoff Decl., Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element.<br>Further, as is shown in the cited exhibits, each announcement contained the following statement distinguishing ONgDB from Neo4j EE: "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| | Fact 60: GFI issued a tweet that stated "**#ONgDB**, Open **#Neo4j** Enterprise," and in another instance "Our **#ONgDB**/**#Neo4j** Enterprise CI server is up and running builds…." Ratinoff Decl., Exhs. 91, 93. | **UNDISPUTED**-that the cited tweets contain the quoted language.<br><br>**DISPUTED** – that the cited language is the only language in the tweets. Exh. 93 contains the following additional language distinguishing ONgDB from Neo4j EE:  "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  And "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |

---

[1] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 61: GFI used "#Neo4j Enterprise 3.5" to solicit end-users of official Neo4j® EE v3.5 to report bugs to GFI so that it could identify bugs in the closed enterprise directory for Neo4j® EE and attempt to mimic such fixes in ONgDB.  Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:13. | **DISPUTED** The hashtag "#Neo4j" was used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project where to report enterprise issues on open source.  Ratinoff Decl., Exh. 31 at 170:11-22. |
| | Fact 62: GFI used **#Neo4j** to promote ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out. https://github.com/graphfoundatio... **#Neo4j**." Ratinoff Decl., Exh. 96. | **UNDISPUTED** – that the language appears on the exhibit.<br><br>**DISPUTED –** that there is no reference to Neo4j EE.  To the contrary, Exhibit 96 tweet contains the following language <u>distinguishing ONgDB from Neo4j EE:</u>  "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | Fact 63: GFI admitted intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches in relation to Neo4j® EE.  Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** – GFI did not use the Neo4j Mark.  GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project.  Ratinoff Decl., Exh. 31 at 236:3-11 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. | |
| 7. GFI prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 64: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark  If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 65:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**: The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base." There is not a reference to ONgDB and Neo4j being one in the same. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark  If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 66:** GFI's (1) use of "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs all containing the Neo4j® Mark rather than creating and hosting their own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and GitHub goes beyond what is reasonably necessary to identify ONgDB as a fork of Neoj4® EE. *See supra* Facts 41-51, 56-58; *see also* Ratinoff Decl., Exhs. 37, 57-58; Dkt. No. 89, ¶¶ 3-16. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 67: GFI used the Neo4j® Mark as a hashtag, **#Neo4j**, to promote ONgDB rather than to merely describe ONgDB as a fork of Neo4j® EE. *See supra* Facts 59-64. | **DISPUTED** GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11. GFI's tweets referenced in Facts 59-64 <u>contained the following additional language distinguishing ONgDB from Neo4j EE:</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." See Responses to Facts 59-64. And Exhibit 93 also states: "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. Ratinoff Decl., Exh. 1. GFI admitted that it used Neo4j® Mark as a hashtag for the purpose of promoting ONgDB. *Id.*, Exh. 31 at 174:11-23; 176:15-18, 233:17-236:15, 240:12-241:25, 242-243:21, 246:5-249:2. | |
| | Fact 68: GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. Ratinoff Decl., Exh. 31 at 236:4-15. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible to write a tweet without a hashtag. GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | users who wanted to participate in the open source project.  Ratinoff Decl., Exh. 31 at 236:3-11 |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. Ratinoff Decl., Exh. 1.  GFI further testified that the reason it used the Neo4j® Mark as a hashtag was to bring ONgDB to the attention of users of Neo4j® via searches.  *Id.,* Exh. 31 at 236:17-239:7, 241:15-243:7, 243:15-22. | |
| | Fact 69:  GFI It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#Neo4j Enterprise" with "#ONgDB."  Ratinoff Decl., Exh. 31 at 243:23-245:12; Exh. 93. | **DISPUTED** the cited testimony relates to a different type of tweet that still used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. |
| 8. GFI's  use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | Fact 70: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE.  *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked.

See also Responses to Facts 41-55. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** There was no overt difference between GFI's original landing page for ONgDB and Plaintiffs' landing page on GitHub. Compare Dkt. No. 89, Exh. 18 *and* Ratinoff Decl., Exh. 59. | |
| | <u>Fact 71</u>: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**:  The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base."  There is not a reference to ONgDB and Neo4j being one in the same.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.  ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users.  Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | <u>Fact  72</u>: GFI (1) used "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) used embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) stated on its GitHub repository for ONgDB for customers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout that repository; (4) hyperlinked to Plaintiffs' build instructions, support documentation and change logs on GFI's website and GitHub repository all containing the Neo4j® Mark; (5) interchangeably used "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and Github repository; and (6) used the Neo4j® as a hashtag on Twitter to promote ONgDB.  *See supra* Facts 42-43, 56-70. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.  ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users.  Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions. *Id.*, Exh. 1. | |
| | Fact 73: GFI's intended audience in using the Neoj4® Mark as a hashtag were users of Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** the cited testimony contains no such admission.  The testimony is only that it is possible to write a tweet without a hashtag.  GFI did not use the Neo4j Mark.  GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project.  Ratinoff Decl., Exh. 31 at 236:3-11 |
| 9. GFI's use of the Neo4j® Mark caused actual consumer confusion | Fact 74: GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED** – The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | Fact 75: GFI lead consumers to believe that ONgDB and Neo4j® EE were one and the same.  *See, e.g.,* Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED**:  Defendants consistently present ONgDB as an alternative to Neo4j EE.  As is set out above, in numerous statements, on the GFI website and on Twitter, GFI describes ONgDB as "an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  Ratinoff Decl., Exhs. 89, 92, 94, 95.  GFI has also described, on its website, the distinction between ONgDB and the Neo4j EE software distributed by Neo4j, Inc., while also disassociating itself from Neo4j, Inc.  Open Native Graph DB (ONgDB) is a fork of the neo4j project that continues development of the neo4j enterprise code base as a fully open source project after Neo4j, Inc. Open Core Shift that closed ongoing development and removed existing source code. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Ratinoff Decl., Exh. 66.  . |
| | **Fact 76:** GFI's use of the Neo4j® Mark to promote ONgDB as free open source and falsely comparing it with commercially licensed Neo4j® EE created actual customer confusion, and diverted sales from Neo4j USA, including the IRS and Next Century/MPO.  Ratinoff Decl., Exh. 48-50, 117-120, 127, 131, 134-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | **DISPUTED**:  Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110).  Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only state because they removed the Commons Clause and its commercial restrictions.  Ratinoff Decl., Exh. 48-50, 120. | |
| **Claim 3: False Advertising Against GFI and the PT Defendants** | | |
| 1. Defendants made a false statement of fact about a product in a commercial advertisement, which is (a) commercial speech; (b) made in commercial competition with Neo4j USA; (c) for the purpose of influencing consumers to buy their goods or services; and (d) | **Fact 77:** Defendants made the following false statements interstate commerce via their websites and Twitter: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition" [*id.*, Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." [*id.*, Exhs. 62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*, Exhs. 62-66, | DISPUTED: Objection none of the evidence cited supports the alleged fact they are false. The legal standard is not correct. See, *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495. The statements are all true: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number"; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3"; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| sufficiently disseminated to the relevant purchasing public | 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" [*id.,* Exhs. 67-69, 75]; (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.,* Exh. 72-74]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.,* Exh. 93]; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." [*id.,* Exh. 98-104, 108]. | available proprietary native graph offerings such as Neo4j Enterprise Edition"; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number."; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" ; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions"; (8) "[ONgDB] is an open source fork of #Neo4j"; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." Suhy Dec. ¶30 |
|  | <u>Fact 78:</u> The PT Defendants also stated on iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation."  Ratinoff Decl., Exhs. 67-70; *see also* Exh. 21. | <u>DISPUTED:</u> The PT Defendants did not all say this. Only iGov's website stated: that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation."  Defendants  do  not  sell  ONgDB, ONgDB is licensed under AGPL and AGPL is an open source license for free software. Suhy Dec. ¶31, Ratinoff Decl. Exh. 39, 11:635-638<br><br>ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Substituting the matching |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Pernick Dec. Ex. B |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3. This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| | **Fact 79:** Defendants actively encourage actual and potential users of commercially licensed Neo4j® EE to adopt ONgDB and obtain support services from iGov and GraphGrid instead of Plaintiffs. Ratinoff Decl., Exhs. 23, 28-29, 40, 42-54, 76-77, 126, 134-135. | **DISPUTED:** None of the evidence cited identifies any party that would have used Neo4J EE. Further, Plaintiffs present no evidence that they competed with GraphGrid or provided similar services.

Plaintiffs are misidentified as if they both do the same thing. Sweden is not a party to the cause of action. Sweden licenses the open source software USA does not. See APGL license. USA does not support open source software licensed by Sweden. Suhy Dec. 32 |
| | **Fact 80:** Neo4j Sweden is the owner of all copyrights in Neo4j® CE and Neo4j® EE, including the source code and has licensed said copyrights to Neo4j USA. Rathle Decl., ¶¶ 3-4. | **UNDISPUTED** |
| | **Fact 81:** Plaintiffs released Neo4j® EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:** Neo4J USA did no such thing. Neo4J Sweden release the open source software, not Neo4J USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |
| | **Fact 82:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibits commercial resale and certain commercial support services. Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:** Versions of Neo4j Enterprise open source distributions using AGPL only have no terms mentioning these prohibitions. When the commons clause was added to AGPL, Sweden did not change license forms and used the AGPL form which bars additions and also allows licensees to remove non- |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | permissive additional restriction. AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393<br><br>Furthermore - the commons clause does not use the word "commercial". It only uses the word "sell". Ratinoff Decl. Exh. 39, 25:681-693<br><br>The author of the commons clause clarifies the intention and meaning of the commons clause as well. Support services are not barred as they do not consist entirely or substantially of the Software or Functionality of the Software as limited in the commons clause. The restriction of services is using the software as a service as in a SaaS implementation. Suhy Dec. ¶34 Ex. 2 |
| | **Additional Facts:** The Common Clause states the Neo4j® Sweden Software License "does not grant to you, the right to Sell the Software. For purposes of the foregoing, 'Sell' means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software." Rathle Decl., Exh. 3.  The ex post facto statement allegedly made by Heather Meeker is contrary to the foregoing and inadmissible hearsay and lacks foundation.  Contrary to Suhy, it was not posted on Plaintiffs' GitHub repository or made on behalf of Plaintiffs.  *See* Reply Ratinoff Decl., Exh. G. | |
| | Fact 83: After Plaintiffs released Neo4j® EE v3.4, the PT Defendants downloaded Neo4j's source code from Neo4j's GitHub repository, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j Enterprise and offering commercial support services.  Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21. | DISPUTED:  USA did no such thing. Sweden release the open source software not USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33<br>Suhy only removed the commons clause as allowed in the AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393<br>Suhy did not remove any commercial restrictions. He simply ensured the LICENSE.txt file was verbatim as required by the copyright holder of the LICENSE.txt files : the free software foundation. Suhy did not modify any other files, and the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | commons commercial restrictions were still in effect.   Following the FSF copyright instructions for the AGPL License.txt file did not remove any restrictions from the distribution - as the restrictions were documented across the repository.  Following the rules for just the specific files did not remove legal terms from the distributions. Suhy Dec. ¶35 |
| | **Fact 84:** Rather than develop ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Defendants stripped the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source equivalent of Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28; *see also* Exh. 31 at 87:24-90:9. | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.   For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent.

Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date. This is allowed under the AGPL.
Suhy Dec. ¶36 |
| | **Fact 85:** Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial license in November 2018, and were no longer publishing source code for Neo4j® EE on GitHub under any open source license. Rathle Decl., ¶ 13, Exh. 4. | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.   For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent. Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date. This is allowed under the AGPL. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Suhy Dec. ¶36 |
| | **Fact 86:** Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software License, with Neo4j® v3.5.0-RC1 being the last pre-release version available to Defendants via GitHub.  Rathle Decl., ¶ 14; *see also* Ratinoff Decl., Exh. 31 at 158:18-159:20. | **DISPUTED:**  USA did not release version on GitHub.  Only Sweden released the open source Neo4J software under the AGPL license. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33<br><br>There are no pre-release terms in the GitHub repository.  It's possible that a pre-release agreement was added to the compiled packages - but that would be in the actual download of the package, not the GitHub source code as they state. Furthermore - enterprise code was not available in v3.5.0-RC1 but it was available in 3.5.0-beta03. Suhy Dec. ¶37<br><br>Also - the License.txt files for the above mentioned releases clearly shows the license as being AGPL, complete with the AGPL preamble - and does not say anything about a "Neo4j Sweden Software License" Decl. Exh. 39, 12-13 |
| | **Fact 87:** GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29. | Disputed. USA does not release the open source software. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |
| | **Fact 88:** In order for Defendants to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in 28 LICENSE.txt files. Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30. | DISPUTED:  The AGPL license.txt file is copyrighted to the free software foundation.  Suhy followed the guidance from the free software foundation relating to the license being verbatim. By following the FSF copyright guidance he did not remove the legal terms from the distribution as a whole.   There are 1000s of Neo4j files in the repository which clearly state the commons clause is still part of the license.  I.E.  Using the verbatim AGPL license content as instructed by the Free software foundation did not remove the commons license in any way as it was stated in many other |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | places. There is no obligation to repeat Sweden's copyright notice on every file. And Sweden owns the copyright (undisputed Fact 80 above) USA has not standing to argue about the copyright notice. Phase 1 does not address the DCMA claim. Suhy Dec. ¶38 |
| | **Additional Fact:** The AGPL and the Neo4j Sweden Software License requires each copy of the software subject to the license to bear copyright notices.  Rathle Decl., Exh. 3 at §§ 4-5. | |
| | Fact 89: The Neo4j Sweden Software License did not permit a licensees such as Defendants to remove "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor.  Rathle Decl., Exh. 3 at §§ 7, 10; GFI Dkt. No. 88 at 5:23-8:9. | DISPUTED:  Suhy only worked on the License.txt file which he believes is copyrighted to the Free software foundation.  When Suhy replaced the file with verbatim - it was following the copyright holder's instructions.  All the other files which Neo4j held the copyright for were not modified by Suhy and clearly stated that the commons clause was there. Suhy Dec. ¶35

Following the copyright holder's instructions for the License.txt file did not remove restrictions as these were mentioned in many other files in the github repository. Suhy Dec. ¶35 |
| | Fact 90: Defendants knew that they could not unilaterally replace the Neo4j Sweden Software License with the APGL without authorization.  Ratinoff Decl., Exhs. 34-36, Exh. 31 at 183:14-184:24, 207:10-210:8. | DISPUTED:  Suhy did not replace the Neo4j Software License - He only followed the instructions given by the AGPL license copyright holder to make the actual license verbatim.   The Neo4j Sweden Software License was still in effect as the commons clause was mentioned in many other neo4j files which Neo4j Inc owned the copyright for. Suhy Dec. ¶35 |
| | Fact 91: Defendants' statements that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x and the like were false because they knew that Neo4j Sweden owned the copyright for Neo4j® EE and never gave permission to remove Commons Clause and offer it as ONgDB under | DISPUTED:  Suhy only acted on License.txt files who's copyright is owned by the free software foundation.  Furthermore, Suhy only made AGPL license.txt files verbatim as the free software foundation required.  The commons clause was |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the AGPL.   Ratinoff Decl., Exh. 55-56; Exh. 3 at 183:12-183:1, 187:12-188:5, 189:1-191:3, 235:21-237:14, 240:22-243:22. | referenced and defined in almost every one of the thousands of enterprise code headers - all of which were left untouched by Suhy. Suhy Dec. ¶35 |
| | **Fact 92:** The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB, and benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services.  Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17; *see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135. | DISPUTED: GFI does not "share the same office" with GraphGrid and AtomRain.  GFI uses 111 South Buckeye Street for receiving mail and 111 Buckeye Street is leased by AtomRain and is used by AtomRain and GraphGrid for business activities.  Nussbaum Depo., 65:18-67:3. Pernick Dec. Ex. A |
| | **Fact 93:** Defendants removed the Commons Clause without Neo4j Sweden's authorization as the copyright holder in an attempt to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB.  Ratinoff Decl., Exh. 23-26, 28-29, 39, 76-77, 126, 134-135; Exh. 3 at 28:25-29:11; Rathle Decl., ¶¶ 29-30. | DISPUTED:  The free software foundation owns the copyright for the AGPL License.txt file and clearly states that the license must be verbatim.  Suhy Dec. 35. Suhy's commit message for the changes to the license files to be in line with the FSF requirements clearly states the reason for the change. Suhy Dec. 47. Furthermore - the commons clause does not say anything about commercial use and support, the commons clause author Heather Meaker clarifies the commons clause in her article and states they do not cover professional services: Suhy Dec. ¶34 Ex. 2 |
| | **Additional Facts:** The Common Clause states the Neo4j® Sweden Software License "does not grant to you, the right to Sell the Software. For purposes of the foregoing, 'Sell' means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software." Rathle Decl., Exh. 3.  The ex post facto statement allegedly made by Heather Meeker is contrary to the foregoing and inadmissible hearsay and lacks foundation.  Contrary to Suhy's sworn statement, it was not posted on Plaintiffs' GitHub repository or made on behalf of Plaintiffs. *See* Reply Ratinoff Decl., Exh. G.

GFI promoted "training, advisory and production support through our commercial sponsors such as GraphGrid" for ONgDB.  Ratinoff Decl., | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Exh. 52. iGov promoted similar services for government agencies that adopt ONgDB. *See, e.g., id.,* Exhs. 62-66. | |
| | <u>Fact 94:</u> ONgDB v3.5.1 and later versions are not 100% identical to equivalent version numbers of Neo4j® EE. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:2. Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE 3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors. *See id.* | UNDISPUTED:  ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br><br>DISPUTED:  ONgDB is not a "patchwork" or "glue" of code - it has been proven in large production deployments.   After the enterprise code was closed - Suhy and other contributors continued it's development.   The enterprise code came from Neo4j - so it is calling the code it developed a patchwork of code. Suhy Dec. ¶39 |
| | <u>**Additional Fact:**</u> Suhy testified in his deposition that he and other developers needed to author code to implement enterprise features into ONgDB. *See* Ratinoff Decl., Exh. 3 at 124:2-127-23. | |
| | <u>Fact 95:</u> By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs because GFI does not have access to the same rigorous build infrastructure for official Neo4j® Software, which goes beyond what is built into Neo4j® CC and carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality. Rathle Decl. ¶¶ 31-34; Ratinoff Decl., Exh. 31 at 168:14-169:6. | **UNDISPUTED**:  GFI does not have access to Neo4j software build infrastructure and ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br>**DISPUTED**:  That GFI does not do its own quality testing of ONgDB.  To the contrary, GFI conducts about 64,000 tests for each build.  Nussbaum Depo., 166:18-168:13. |
| | <u>Fact 96:</u> GFI is dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12. | UNDISPUTED – GFI uses information from users of Neo4j software to identify bugs and uses open source patches made available in Neo4j CE.<br><br>DISPUTED – GFI is not dependent on information about Neo4j EE bugs to develop ONgDB.  To the contrary, GFI is no longer developing ONgDB versions as drop in replacements for Neo4j EE (and does not describe versions after 3.5.4 as such. Indeed, GFI has developed ONgDB 3.6 even though there is no Neo4j EE 3.6 and is developing ONgDB |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | 4 independent from Neo4j EE 4.  Nussbaum Depo., 190:17-191:6. |
| | **Fact 97:** Since GFI introduced modifications and patches to ONgDB 3.5.x in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases.  Rathle Decl., ¶ 34; Ratinoff Decl., Exh. 31 at 161:23-163:12. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| | **Fact 98:** Defendants had no way of knowing this after Plaintiffs closed off public access to the source code for enterprise-only features in November 2018 and had no visibility into Neo4j Sweden's proprietary testing and patches.  Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40; Rathle Decl., ¶¶ 31-34. | **DISPUTED:**  Defendants are not sure what "this" means in the context of this statement.  If it is referencing Fact 97 then it would be true.<br><br>Furthermore, defendants believe that the older approach for the enterprise features (which include the tests) is more stable and higher quality than newer re-implementations.  See GitHub bug tickets.  Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 99:** Defendants knew that ONgDB 3.5.x does not include every closed enterprise feature in equivalent Neo4j® EE 3.5.x.  Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | **UNDISPUTED:**  Defendants did know that ONgDB did not include every closed enterprise feature and did not ever say that the 2 were equivalent.   The defendants used the term "Drop in replacement" which has nothing to do with feature by feature equivalency. |
| | **Fact 100:** GFI admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4.  Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. | **UNDISPUTED**:  ONgDB 3.5.4 is not 100% identical to equivalent Neo4j enterprise versions and that claim was never made. |
| | **Fact 101:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate."  Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 102**: As a result, Defendants were leading consumers to believe they were downloading an exact copy of the same version of commercial-only releases of NEO4J® EE, which in actuality they were receiving an inferior ONgDB product that was not a true "drop in" replacement. *See supra* Facts 80-101. | DISPUTED:  Suhy, PureThink and iGov never lead consumers into believing they were downloading an exact copy of the same commercial only releases. For versions when the enterprise code was present and no modifications were made in the source code - defendents made clear that Neo4j did not compile the code, even though the code was the same for Neo4j Enterprise and ONgDB.  The defendants knew that knowledgeable users only needed to know specific facts such as the code being unchanged in specific versions.   Furthermore ONgDB is a drop in replacement for Neo4j community and enterprise for all versions including 3.5.   Drop in replacement has nothing to do with feature parity. |
| | | Suhy believes that the original code for causal clustering and other features is actual superior to the feature rewrites Neo4j Inc made when it closed the Neo4j Enterprise code in 3.5 |
| | | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393<br><br>Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software.  Suhy Dec. ¶40 |
| | **Additional Fact:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 101. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent.  Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23).  As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| | Fact 103: Neo4j® EE has been subject to trademark policies and guidelines published on Plaintiffs' website, which along with the terms of the GPL, AGPL and Neo4j Sweden Software License, made clear that to the extent any authorized modifications are made to Neo4j® Software, such modified software should indicate so and no longer bear the Neo4j® Mark.  Rathle Decl., ¶¶ 15-18. Exhs. 5-7. | DISPUTED:  Those terms were only recently added.  Furthermore - Neo4j Inc never provided us with trademark policies and these policies were not found on their websites until recently. Furthermore - The neo4j word is only used in a descriptive manner.  The Neo4j® Mark was not used. Suhy Dec.41 USA trademark policies only cover its limited license to the trademark covering the commercial version of Neo4J. See Beene Dec. Exhibit 1. |
| | **Additional Fact:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  *Id.*, Exh. 1. Defendants do not dispute that at least PureThink and Suhy were on | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | notice of the October 13, 2015 guidelines. PureThink agreed to be bound by them via Partner Agreement. *See* Fact 5. Defendants also admitted to becoming aware of the guidelines as a result of this lawsuit. *See* Raitnoff Decl., Exh. 3 at 67:18-70:1; Reply Ratinoff Decl., Exh. H at 152:5-153:1, 181:19-182:25. | |
| 2. Defendants' statements actually deceive or has the tendency to deceive a substantial segment of its audience | Fact 104: Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE, and pay iGov, Graph Grid and/or AtomRain for related consulting and support services. *See supra* Facts 78-80, 83-84, 86-93. | **DISPUTED:** The statements referenced are true. The statements made by Suhy and iGov were made to educate the community about ONgDB and Neo4j. Furthermore - the word drop-in replacement was used which is still true for all versions of ONgDB. The term "drop in replacement/equivalent" not used in combination the way Neo4j fact suggests.  The term "drop in replacement" was used on its own. Suhy Dec.42<br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent.  Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23.  As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  This is also confirmed by the Stipulated Judgment entered in the GFI Action.  Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| | <u>Fact 105:</u> Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 48-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | DISPUTED: the representations made about being a drop-in replacement are true.  The term "drop in replacement/equivalent" was not used together in the manner Neo4j referenced.  Only the term "drop-in replacement" was used. Suhy Dec.42

To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Neo4j and ONgDB are highly technical products and the end-users who use them are knowledgeable about the technology.<br><br>Furthermore, defendants focused on educating the community with facts.  In the case of the IRS - defendants laid out the facts including differences, license, features, and future of ONgDB were all taken into consideration.<br><br>The agencies mentioned in this fact would not have have been effected by the commons clause restriction as they are using ONgDB for their projects and not creating or selling anything. Suhy Dec. 42<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23).<br><br>As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3. Next Century | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only state because they removed the Commons Clause and its commercial restrictions.  Ratinoff Decl., Exh. 48-50, 120. | |
| 3. Defendants' deception is material | **Fact 106:** Defendants' false statements that ONgDB is a drop-in replacement/equivalent to paid-for, commercial licensed Neo4® EE was material to potential consumers' purchasing decision because Defendants were offering it for free under the AGPL, and unbeknownst to consumers, in violation of the Neo4j Sweden Software License and Neo4j Sweden's copyright.  *See supra* Facts 78-93. | DISPUTED:  ONgDB is a drop-in replacement for any Neo4j (community or enterprise) with the same version number.  ONgDB is a superset of Neo4j Core.  Furthermore:  the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact. |
| | **Additional Facts:** Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only state because they removed the Commons Clause and its commercial restrictions.  *Id*. Exh. 48-50, 120; *see also* Dkt. No. 98-3, ¶¶ 22-23; Exh. 12-13. | |
| | **Fact 107:** Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE.  *See supra* Facts 78-93. | DISPUTED:  The statements mentioned are true statements, not false.  Suhy and iGov clearly state that there are no limitations to cores and causal clustering - free and open would still apply to the AGPL with commons clause as all the terms in AGPL are still present.  Had Neo4j removed some terms from AGPL - then it may be harder to use the term free and open

Furthermore:  the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact.

To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 4. Defendants caused the false statement to enter interstate commerce | **Fact 108:**  Defendants' false statements entered interstate commerce through the internet via their websites and Twitter, as well as emails sent to consumers.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | DISPUTED:  Defendants statements were / are true. To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 5. Neo4j USA has been or is likely to be injured as a result | **Fact 109:** Defendants' false statements diverted sales from Neo4j USA. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 | DISPUTED:  Defendants statements were / are true. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| of the false statement | at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23).    As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶  11, 27, 29, Exh. 3. Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs, which they could only say after removing the Commons Clause. *Id.* Exh. 48-50, 120; *see also* Dkt. No. 98-3, ¶¶ 22-23; Exh. 12-13. | |
| | **Fact 110**: Neo4j USA lost multi-year deal with the IRS.  Broad Decl., ¶¶ 20-21. | DISPUTED:  PureThink lost a multi-year deal with IRS, not Neo4j USA. Suhy Dec. ¶7, Ex. 1 Furthermore - IRS created a competitive procurement  which Neo4j or Resellers could have competed on.  Mr. Suhy is not aware of Neo4j Inc or other resellers providing competitive responses to the procurement. Suhy Dec. ¶49 |
| | **Additional Facts:** Defendants testified in their depositions that the IRS is using ONgDB instead of Neo4j® EE. *See* Ratinoff Decl., Exh. 3 at 142:15-144:15, 224:13-224:23; Exh. 31 at 191:15-24, 194:23-25. iGov also was paid six figures by the IRS for providing support services for ONgDB. *Id.*, Exh. 3 at 227:9-24. | |
| | Fact 111: Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over over $2.2 million in lost revenue. Broad Decl., ¶¶ 22-24, Exhs. 12-13. | DISPUTED:  Mr Suhy is not aware of Neo4j USA having a multi-year deal with Next Centry / MPO which it could have lost in the first place.

The evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** Defendants emails show that Next Century chose ONgDB after Defendants told them that they could use it under the AGPL for free, and did not need paid license from Plaintiffs.  Ratinoff Decl., Exh. 48-50, 120. Suhy participated in Defendants' email exchange with Next Century, and thus has knowledge its decision to use ONgDB instead of Neo4j® EE. *See id.* | |
| **Claim 4: False Designation of** | | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Origin Against GFI and the PT Defendants** | | |
| 1. used in commerce any word, false designation of origin, false or misleading description, or representation of fact | **Fact 112:** Defendants' false and misleading statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were made in commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114; *see also* Facts 78-80. | DISPUTED:  The statements made are not misleading or false.   ONgDB is a drop in replacement for Neo4j distributions.   ONgDB is free and open - it has no limitations on number of cores, number of cluster instances, etc - while Neo4j Enterprise commercial packages have legal terms limiting these features making them not free and open.

To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Fact 113:**  Defendants' statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading | DISPUTED:  ONgDB is a free and open drop-in replacement.  iGov or Suhy talk about free and open meaning that there were no limitations on the number of cores or cluster instances. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | because Defendants did not have the right to replace the Neo4j Sweden Software License with the AGPL.  *See* Facts 78-93. | Furthermore - Neo4j Sweden still uses the AGPL license with the AGPL preamble.  They added the commons clause restriction which defendants question - but they added this to the AGPL license which is known as a free and open source license. Had they removed the preamble or just copied the terms they liked from the AGPL into a new license then the story may be different.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original); *see also* Rathle Decl., ¶¶ 11, 27, 29, Exh. 3.  This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 114:** Defendants' statements ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4j® EE were false and misleading because ONgDB was not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 19-22, 29-34; Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 161:23-163:12, 168:14-169:6. | DISPUTED: These statements are true. They are also not misleading. ONgDB is a superset of Neo4j as it forks and does not modify the core code. All versions of ONgDB (even 3.5 ) are drop in replacements for neo4j community and enterprise versions of the same version number. <br><br> If different people compile the same code using the same build configuration - then there will not be any quality differences between the 2 compiled distributions. In fact - Neo4j does not technically compile their code, the build system they use from atlassian does the job. It should be noted that the GFI build system also uses atlassian tooling and automation. <br><br> To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | When ONgDB and Neo4j Enterprise share the same code base - the compiled distributions are identical from a functionality and feature perspective. Only the metadata timestamps of the compile time differ which has no effect on the quality.<br><br>ONgDB ensures that the same JVM and other parameters are used as the Neo4j compiled binaries - there are no quality differences because of the fact that the source code across versions using the same code are the same. |
| | **Additional Facts:** Defendants confirm above that GFI "is no longer developing ONgDB versions as drop in replacements for Neo4j EE [] and does not describe versions after 3.5.4 as such." Fact 96-97, 100. This is because GFI "no longer could … reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate" with the code become more divergent. Ratinoff Decl., Exh. 31 at 188:5-17, 188:23-189:23. | |
| | Fact 115:  Since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases.  *See* Rathle Decl., ¶¶ 29-24; *see also* Ratinoff Decl., Exh. 31 at 158:18-160:5, 161:23-163:12; Exh. 3 at 223:1-224:9; Exh. 40. | DISPUTED:  GFI does not modify the core code it keeps in sync from the Neo4j official GitHub repository.   The same can be said about Neo4j - and historically they have had many stability and other issues across different releases.  ONgDB skipped over some 4.x releases as it waited for Neo4j Inc to address issues and tickets relating to the releases before GFI felt it was stable enough to upgrade. GFI conducts about 64,000 tests for each build. Nussbaum Depo., 166:18-168:13. |
| | Fact 116:  ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE.  Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | DISPUTED:  Versions of Neo4j Enterprise below 3.5 had the same code and therefore has every equivalent feature of the corresponding ONgDB version that did not change the source code.   Only ONgDB 3.5 and higher do not include every enterprise feature and defendants don't claim that ongdb 3.5 and above have every feature.<br><br>See fact 32. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5. This shows we are not saying we have every feature - the features are only the ones removed from the code base as of v3.5 |
| | Fact 117:  GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees.  Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.  **UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| 2. which is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. | | |
| (a) strength of the mark | The Neo4j® Mark is inherently distinctive and Plaintiffs have used it in commerce since 2007, and as a result has gained strong brand recognition via various awards and recognition in the graph database software market.  Broad Decl., ¶¶ 2-19, Exhs. 1-11. | **DISPUTED**: The word Neo4J is used to describe various software versions and companies, so it is not distinct, and the recognition is not as a company brand but as a type of graph database widely distributed on GitHub under open source licenses. Suhy Dec. 50 |
| | **Additional Facts:** The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions.  Ratinoff Decl., Exh. 1.  The Court already rejected Defendants' company name versus software "confusion argument."  *See* PT Dkt. No. 70 9:3-10:24. | |
| (b) relatedness of the goods and similarity of sight, sound and meaning | Defendants promote ONgDB as Neo4j® EE except that they are free and licensed without restrictions under the AGPL.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | DISPUTED:  The website content clearly says that there are no restrictions in usage of cores or number of instances, something the commercial edition enforced via legal terms.  These features have no usage restrictions in ONgDB. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Exhibit 19 states:  "**They have no restrictions on the number of cluster instances or cores** that the commercial licensed packages impose!"<br><br>Exhibit 42 states: "More agencies are adopting it as they learn about it. ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no **limits on cores or cluster instances** that 'commercial subscriptions' impose.<br><br>Exhibit 43 states:  1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.<br><br>Exhibit 43 states:<br>More agencies are adopting ONgDB over Neo4j as they learn that it is just the free and open Neo4j enterprise alternative.<br>ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, **all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose.**<br><br>The exhibits cited do not support the proposition.  To the contrary, GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  See Responses to Facts 59-64.  And  Exhibit 93 also states:  "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | removal of enterprise code from the main Github repository." |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). | |
| (c) evidence of actual confusion; | **Fact 118:** Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  Ratinoff Decl., Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED:**  Defendants to do mislead consumers about ONgDB and Neo4j Enterprise.  The statements are true for some versions of Neo4j Enterprise and ONgDB.   Defendants clearly communicate what ONgDB is, what it's origin is.  GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation."  See Responses to Facts 59-64.  And Exhibit 93 also states:  "What is ONgDB:  Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository."<br><br>Defendants have never mislead and tried to confuse people into thinking ONgDB is just another name for Neo4j Enterprise.  In fact defendants work hard at educating the community about the facts.  The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | **Fact 119:** Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL caused | DISPUTED: the statements made are not misrepresentations.   ONgDB is a drop in |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | actual confusion over Defendants' unauthorized modification to the Neo4j Sweden Software License and justification for doing so. *See* Ratinoff Decl., Exhs. 40, 49, 55, 118-119, 131, 133-134. | replacement of Neo4j community and enterprise versions with the same version number. ONgDB is a superset of Neo4j and does not modify the Neo4j core code.  Furthermore - the combined term "drop-in replacement/equivalent" is not used.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | <u>Fact 120:</u> GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB over Neo4j® EE and encountering compatibility issues.  Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br>The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | Fact 121: Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 224:13-23, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Exh. 38 at 23:14-24:4; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p. 2:12-13; p. 32:6:10.<br><br>Price is the material concern on the purchase,  not the license or drop in capability. This is obvious in the analysis. Consumers can test whether the software is drop in and review the license. As users of ONgDB do not sell the software, whether the commons clause is valid or not has no impact. Under the AGPL, if you use the open source software internally, as for example what the IRS does, there is |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | no issue with the commons clause. Consumers do not face any copyright infringement claim from Sweden as they are licensed under the AGPL. Suhy Dec. ¶44<br><br>The terms mentioned are not misrepresentations about ONgDB.  They are true.<br>Defendants do not use the term "drop-in replacement/equivalent".  ONgDB is free and open - it still contains all the AGPL terms that make it so. All the agencies listed use ONgDB for free. Furthermore - the commons clause would have no effect on the agencies mentioned from Mr Suhy's knowledge. Suhy Dec. ¶43<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice based on the statements in defendants' websites.<br><br>Most people do not make million dollar decision to decide on the use of a database from website statements.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | **Additional Facts:** As noted by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110).  Next Century chose ONgDB after Defendants said they could use ONgDB under the AGPL for free, and did not need a paid license from Plaintiffs, which Defendants could only state because they | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | removed the Commons Clause.  Ratinoff Decl., Exh. 48-50, 120; *see also* Rathle Decl., ¶¶ 5-13, 27, 29, Exh. 3. | |
| (d) marketing channels and likelihood of expansion | Fact 122: Defendants continue to target the same potential users of graph database platforms and software and use the same channels via the internet.  *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 118-119, 120, 127, 130-132, 134-135. | UNDISPUTED:  Objection this fact does not support the claim. Because ONgDB is an unmodified fork of Neo4j Core code, and a superset of Neo4j Core - then anyone who is currently using Neo4j commercial or open source distributions can switch over to ONgDB.   In other words - people that use Neo4j are the people who would want to switch to ONgDB if they wanted enterprise features with no limitations on cores or cluster instances for free. Suhy Dec. ¶45 |
| | Fact 123: Neo4j USA and the PT Defendants competed for the same contracts in the government sector.  Ratinoff Decl., Exhs. 42-51, 54-55, 100, 120, 127, 130-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  To Mr Suhy's knowledge, Neo4j USA does not directly respond to contracts.  Neo4j partners bid on a contracts. Purthink has no contracts with the government. Igov does not license software to the government. Suhy Dec. ¶46 |
| (e) intent | Fact 124: Defendants' use of the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license shows that they intend to copy them and confuse the public.  *See supra* Facts 78-102. | DISPUTED:  Defendants do not use the Neo4j® Mark, they use the neo4j word in a descriptive manner.  Suhy Dec. ¶41  Defendants aim at educating the public not causing confusion.  Mr. Suhy did not modify any copyrighted content which is owned by USA, it only updated Sweden's  License.txt file which the free software foundation owns the copyright for under the express terms of the AGPL.  Suhy Dec. ¶29  Furthermore - when Suhy made the AGPL license verbatim - the commit message clearly states the intention:  The commit which replaced the modified License.txt file copyrighted to the FSF has a commit message which clarifies the intent of replacing the modified license with the verbatim. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **"Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license."**<br><br>ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term."  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. |
| | **Additional Facts:** As recognized by the Court, "read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so." *See* GFI Dkt. No. 88 at 7:6-9 (emphasis in original). This is also confirmed by the Stipulated Judgment entered in the GFI Action. Reply Ratinoff Decl., Exh. I (GFI Dkt. No. 110). Defendants promoted ONgDB as Neo4j® EE except that ONgDB is free and without commercial restrictions only because they removed the Commons Clause. Rathle Decl., ¶¶ 5-13, 27, 29, Exh. 3. | |

### Attestation

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports or disputes the facts asserted.

Dated:  February 16, 2021            By: */s/ Jeffrey M. Ratinoff*
_____
                              Jeffrey M. Ratinoff
                              Attorney for Plaintiffs and Counter-Defendants
                              Neo4j, Inc. and Neo4j Sweden AB

**EXHIBIT B**

**PLAINTIFFS' RESPONSE TO DEFENDANT'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Neo4J USA's Trademark Infringement Claim** | | |
| Plaintiff Neo4j Inc. ("USA") Does not own a protectable trademark in Neo4J which is a required element of a trademark claim | <u>Fact 125</u>: **USA Fka, Neo Techonolgy, Inc. does not own the trademark to Neo4J. Neo4J Sweden AB, Fka Network Engine for Objects in Lund AB) ("Sweden") owns the trademark to Neo4J.** Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | **DISPUTED**: This is not a material fact. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Ratinoff Decl., Exh. 1. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in the U.S. application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). |
| | <u>Fact 126</u>: Sweden licensed its Neo4J software and trademarks on a **non-exclusive basis** to USA. Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). | **DISPUTED**: Defendants' stated interpretation of the Amended and Restated License Agreement mischaracterizes the express terms thereof.<br><br>**UNDISPUTED:** Under Section 2.1 of the referenced agreement, Neo4j Sweden granted Neo4j USA a non-exclusive worldwide license to Neo-Sweden Intellectual Property Rights (as defined in Section 1.6), and royalty payments are required as set forth in Section 4.1 and Exhibit B. *See* Beene Dec, Exh. 1. |
| | <u>Fact 127</u>: Sweden retained exclusive ownership of the mark in the license agreement. Beene Dec ¶ 2-7 Exhibit 1, (recital 1, Section 1.6. (b), 1.7, Article 3 (Reservation of Rights [to Sweden]) | **DISPUTED**: This is not a material fact. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark in the United States. Ratinoff Decl., Exh. 1. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in that application. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). |
| | <u>Fact 128</u>: Sweden has in fact made trademark applications claiming ownership of the Neo4J mark throughout the world further providing evidence of Sweden's ownership of the Neo4J mark. Beene Dec ¶ 7, Exhibit 3. | **DISPUTED**: Whether Neo4j Sweden holds trademark registrations for "Neo4j" outside the United States, is irrelevant and immaterial. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Ratinoff Decl., Exh. 1. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 129:** USA has paid Sweden royalties for the license. Beene Dec ¶ 6, Exhibits 2. | **UNDISPUTED:** Neo4j USA has paid Neo4j Sweden royalties as required by the referenced agreement. |
| Fraud on the PTO defense | **Fact 130:** Lars Nordwall, as the COO of USA, knew USA did not own the NEO4J trademark and did not use the trademark since 6/04/2006 which is before USA was formed on July 7, 2011. Beene Dec. Ex. 6 (NEO4J trademark application, principle register) and Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | **DISPUTED:** This is pure speculation with no cited admissible evidence of Mr. Nordwall's intent. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in Neo4j USA's application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl., ¶¶ 19-21; Beene Decl., Exh. 6 at p. 101 of 125. |
| Naked license defense | **Fact 131:** USA provides no evidence that Sweden controlled quality on Sweden's software the years before the software and trademark was licensed to USA. Declaration of John Mark Suhy (Suhy Dec.) ¶51. | **DISPUTED:** This is defense was stricken with prejudice, and which Defendants otherwise have the evidentiary burden to establish a lack of quality would control. The cited paragraph from the Suhy Dec is inadmissible argument and lacks foundation. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA. Rathle, Decl. at 1:17-18; Broad Decl., ¶¶ 19-21. Plaintiffs work closely together ensure that software bearing the Neo4j® Mark is of the highest quality. Rathle Decl., ¶¶ 2-3, 19-22. |
| | **Fact 132:** The License Agreement from Sweden to USA has no quality control provisions. Beene Dec ¶ 2-7 Exhibit 1 (no quality control provision in license agreement.) | **DISPUTED:** The cited paragraphs to the Beene Dec are not admissible evidence and do not establish any lack of quality control. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA. Rathle, Decl. at 1:17-18. Plaintiffs work closely together ensure that the software bearing the Neo4j® Mark is of the highest quality. *Id.*, ¶¶ 2-3, 19-22. |
| Defendants did not infringe on USA's limited trademark license when referring to the open source software | **Fact 133:** Sweden is the licensor of the open source version of Neo4J under the AGPL and the owner of the Neo4J trademark. Fact 125 and Ratinoff Dec. Ex 39 at 25:11-13 | **DISPUTED:** Neo4j Sweden licensed Neo4j® EE under the AGPL through version 3.3. Rathle Decl., ¶¶ 5-11. Subsequent versions of Neo4j EE were no longer licensed on an open source basis. *Id.*, ¶¶ 12-13. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Ratinoff Decl., Exh. 1. |
| Defendants use of Neo4J was nominative which is not infringing. | **Fact 134:** Defendants references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software | **DISPUTED:** The cited statement is inadmissible argument and lacks foundation. The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions, including Plaintiffs' |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and uses USA's company name and products to identify them in comparative advertisement.<br>Suhy Dec. ¶9 | exclusive right of use in connection with the Neo4j® products and services.  Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24. Defendants' repetitive use of the Neo4j® Mark on their websites to promote their recompiled patchwork binaries goes beyond what is reasonably necessary for purposes of comparative advertising. *Id.*, Exhs. 14-18, 62-75. |
| Defendants use of Neo4J does not suggest sponsorship or endorsement | <u>Fact 135</u> Defendants websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. Defendants did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been for marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶9, 16 | **DISPUTED:**  The cited statements are inadmissible argument and lack foundation.  The Neo4j® Mark is a registered standard character mark covering the word in all types of depictions, including Plaintiffs' exclusive right of use in connection with the Neo4j® products and services.  Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24. Defendants' repetitive use of the Neo4j® Mark on their websites to promote their recompiled patchwork binaries goes beyond what is reasonably necessary for purposes comparative advertising.  *Id.*, Exhs. 14-18, 62-75. The GitHub Terms of Service do not expressly license a user's trademarks to other GitHub users and no admissible evidence is offered establishing that Plaintiffs agreed to such terms. *See* Beene Decl., ¶ 13 Exh. 9 at §§ C., A.4, D.5. |
| PT defendants engaged in no conduct leading to an inequitable result to support Alter Ego Liability | <u>Fact 136:</u> The Partner Agreement seeks to prevent PT from dealing in all versions of Sweden's Neo4j open source software when USA is not the licensor under the AGPL and the AGPL freely allows anyone to use the software. Fact 133; Suhy Dec. ¶52 | **DISPUTED**: The cited statement is inadmissible argument.  PureThink voluntarily agreed to the restrictions imposed by the Partner Agreement.  *See* Ratinoff Decl., Exh. 4. Neo4j Sweden authorized Neo4j USA to license its software in the United States. *See* Beene Decl., Exh. 1 at §2.1.1(a); Rathle Decl., ¶ 4. |
| | <u>Fact 137:</u> The purpose of USA' restriction in the Partner Agreement is to prevent any terminated partner from supporting Sweden's open source version of Neo4J which is unlawful. Suhy Dec. ¶4, 53 | **DISPUTED**: The cited statements are inadmissible argument, lack foundation, and are immaterial. While their validity is a Phase 2 issue, Suhy and PureThink admittedly formed iGov to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 138: USA wrongfully and successfully asserted the unlawful restriction to interfere with PT efforts to get business from the IRS. Suhy Dec. ¶7, 54, Ex. 1 | DISPUTED: The cited statement is inadmissible argument, lacks foundation and is immaterial because the validity of the restrictions and any alleged interference are a Phase 2 issues. See PT Dkt. No. 68. |
| The PT Defendants did not used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 139: The PT defendants are not using the Neo4J mark to sell USA's commercial software. Suhy Dec. ¶31 | DISPUTED: The Neo4j® Mark is registered as a standard character mark and is evidence of Plaintiffs' exclusive right to use in connection with Neo4j® products and services. Ratinoff Decl., Exh. 1; PT Dkt. No. 70 at 9:3-10:24. Defendants' repeatedly used the Neo4j® Mark to promote their recompiled patchwork of binaries and ONgDB. See Ratinoff Decl., Exhs. 14-18, 62-75. The AGPL is not a trademark license, and thus does not grant Defendants the right to use the Neo4j® Mark with their recompiled binaries. See Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. |
| | Fact 140: USA agreed Sweden owns the intellectual property, including marks for Neo4J. Fact 125. | DISPUTED: This is not a material fact. Neo4j USA is the owner of the U.S. registration for the Neo4j® Mark. Ratinoff Decl., Exh. 1. Neo4j Sweden is a wholly owned subsidiary of and controlled by Neo4j USA, and is considered a "related company" as referenced in the U.S. application for the Neo4j® Mark. Rathle, Decl. at 1:17-18; Broad Decl. at ¶¶ 19-21; Beene Decl., Exh. 6 (p. 101 of 125). |
| | Fact 141: Here there is an issue of fact on the false designation of origin element as ONgDB is a fork of Sweden's open source software licensed under the AGPL. Suhy Dec. ¶19 | DISPUTED: The cited statement is inadmissible argument and lacks foundation. It is indisputable that ONgDB is not a "free and open source" fork of Neo4j® EE because Defendants impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor. Rathle Decl., ¶¶ 11-14, 27-30; Exh. 3 at §§ 7, 10; Ratinoff Decl., Exhs. 24-26, 28, 39; Exh. 31 at 87:24-90:9, 159:3-10; GFI Dkt. No. 110 and No. 88 at 5:23-8:9. |
| | Fact 142: USA even admits, the open source version has the same great features as the commercial version. Suhy Dec. ¶55; Beene Dec. Ex. 8 | DISPUTED: The cited statement is inadmissible argument and lacks foundation. The alleged website printout has no URL address and is unverifiable, and |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | actually states that Neo4j® EE has additional features, such as enterprise-grade availability, management and scale-up and scale-out capabilities. *See* Beene Dec. Ex. 8; *see also* Rathle Decl., ¶¶ 5-9. |
| | **Fact 143:** Whether ONgDB is a "drop in" replacement for USA's "commercial" Neo4J software, is a disputed issue of fact. | **DISPUTED**: This is unsupported argument, and not a material fact supported by admissible evidence. |
| | **Fact 144:** Data and queries, the key function of a databases, from either version work on both versions. Suhy Dec. ¶56 | **DISPUTED**: This statement is vague and ambiguous, lacks foundation as it is unclear what software and versions thereof are being referred to in the cited paragraph.  To the extent that it refers to the open source and commercial versions of Neo4j® software in preceding paragraph, Neo4j® EE has additional commercial-grade features that are not offered with open source Neo4j® CE.  *See* Suhy Dec., ¶ 55; *see also* Rathle Decl., ¶¶ 5-9. |
| ONgDB is a Drop in replacement to versions of Neo4J | **Fact 145:** USA, in its website, stated that its commercial Enterprise version of Neo4J has "same great features" as the open source version of Neo4j.  Suhy Dec. ¶55, Ex 3 | **DISPUTED:**  The cited statement lacks foundation and there is no Exhibit 3 to the Suhy Declaration. Neo4j® EE has additional commercial-grade features that is not offered with open source Neo4j® CE.  *See* Beene Dec. Ex. 8; *see also* Rathle Decl., ¶¶ 5-9. |
| | **Fact 146:** ONgBD allows users of other versions of Neo4J (including older versions of commercial and open source) to drop in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database. Defendants have not heard of any consumer suggest otherwise. Suhy Dec. ¶57 | **DISPUTED**: This statement is vague and ambiguous as to which software and versions thereof Suhy is referring.  He testified that only in "certain versions" of Neo4j® EE and ONgDB can a user copy the data directories directly between two software instances. Reply Ratinoff Decl., Exh. F 120:18-122:25. Yet, Suhy tweeted that they must be identical versions. Ratinoff Decl., Exh. 104. GFI admitted that after ONgDB version 3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. |
| Use of USA documentation is | **Fact 147:** Any user of open source software from Sweden's Neo4J GitHub repository are allowed to use all content on the site. This is | **DISPUTED**: This is inadmissible argument, not a material fact. There is nothing in the GitHub Terms |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| licensed Content and is not actionable on any claim. | permitted under the GitHub Terms of Service.  GitHub Terms of service A. 4 definition of Content and ¶ D 5 license. (including "You may grant further rights… " inferring rights to End Users under the GitHub license may **not** be limited.) Suhy Dec. ¶58 Beene Dec. Ex. 9. | of Service (GTOS) that expressly or implicitly contemplates a user licensing their trademarks to other GitHub users. To the contrary, the GTOS warns them that "use of the Website and Service must not violate any applicable laws, including copyright or trademark laws…." Beene, Exh. 9 at § C.  It also does not include trademarks in the definition of "Content" that other users may have a right to use under the GTOS.  *Id.*, ¶ 13, Exh. 9 at §§ A.4, D.5.  There is also no admissible evidence is offered establishing that Plaintiffs agreed to such terms. *Id.* |
| Defendants product and services are not readily identifiable without use of the Neo4J trademark | <u>Fact. 148:</u> Neo4J is a type of database that must be identified so consumers looking for the database may find it. Defendants properly used Neo4J to identify companies and products in marketing and comparative advertisements to provide knowledgeable consumers with information for fair competition. Suhy Dec. ¶2, 59 | **DISPUTED:** The cited statements are inadmissible argument, lack foundation and not a material facts. ONgDB can be readily identified as "Open Native Graph Database" without use of Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 178:13-179:25, Exhs. 86, 88.  Defendants' use the Neo4j® Mark to promote their own recompiled patchwork of binaries beyond what is reasonably necessary for identifying ONgDB as a fork of Neo4j® EE or for purposes of comparative advertising.  *Id.*, Exhs. 14-18, 62-75. |
| **2. False Advertising Claims 2nd, 3rd and 4th causes of action.** | | |
| ONgDB is based on the open source version of Neo4J licensed under the AGPL and is free. | <u>Fact 149:</u> ONgDB is a free fork of Neo4J software licensed under the Sweden's AGPL. Suhy Dec. ¶36 | **DISPUTED:** The cited "evidence" is inadmissible argument, not a material fact.  The undisputed facts show that ONgDB is not a free fork of Neo4j® EE under Sweden's AGPL because Defendants impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor. Rathle Decl., ¶¶ 11-14, 27-30; Exh. 3 at §§ 7, 10; Ratinoff Decl., Exhs. 24-26, 28, 39; Exh. 31 at 87:24-90:9, 159:3-10; GFI Dkt. No. 88 at 5:23-8:9. |
| | <u>Fact 150:</u> The AGPL is a free open source license. AGPL Preamble, Ratinoff Dec. Ex. 39, 1-2 | **DISPUTED:** The cited evidentiary support is a printout of a GitHub commit showing Defendants' replacement of the Neo4j Sweden Software License |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | with the AGPL. Ratinoff Decl., ¶ 41. The AGPL preamble actually states that it "is a free, copyleft license for software and other kinds of works…" *See* Rathle Decl., Exh. 1. |
| Consumer did not materially rely on the defendants' representations to determine to use ONgDB software for free instead of paying USA money for a commercial version of Neo4J. | <u>Fact 151:</u> Sophisticated consumers of databases make purchase decisions based on price. Suhy Dec. ¶44; USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p.2:12-13 p. 32:6:10. Information Analysis Incorporated's GSA price list has a $500,000 bid for a Neo4J term license. (Beene Dec. Exhibit 5, p.1.) Beene Dec Ex. 7 | **UNDISPUTED**: Price is a material factor in customers' decision to choosing ONgDB because Defendants advertised it as a "free" version of Neo4j® EE. <br><br> **DISPUTED**: ONgDB is not a "free" version of Neo4j® EE because Defendants impermissibly replaced the commercially restrictive Neo4j Sweden Software License with a generic copy of the AGPL. Rathle Decl., ¶¶ 11-14, 27-30; Exh. 3 at §§ 7, 10; Ratinoff Decl., Exhs. 24-26, 28, 39; Exh. 31 at 87:24-90:9, 159:3-10; GFI Dkt. No. 88 at 5:23-8:9. Defendants admitted that potential customers of ONgDB and Neo4j® EE are less sophisticated than they originally believed. Ratinoff Decl., Exh. 3 at 207:12-209:3. The cited GSA price list is irrelevant, is not properly authenticated and lacks foundation. |
| An ONgDB licensee that only internally uses the software does not violate the commons clause-valid or not. | <u>Fact 152:</u> The common clause, valid or not, only restricts licensees from selling the software. It does not prevent a licensee from internally using the software. Ratinoff Dec. Ex 39 at 25:11-13, Suhy Dec. ¶36, 60, Ex. 2 | **DISPUTED**: The Neo4j Sweden Software License imposes limits on licensees' right to "sell" the licensed source code (including without limitation fees for hosting or consulting/ support services related to the Software) underlying Neo4j® EE and offering professional services that are substantially derived from Neo4j® EE or the functionality thereof. Rathle Decl., ¶¶ 11-13, Exh. 3. |
| | <u>Fact 153:</u> Not all versions of Sweden's open source software are subject to the common clause. Suhy Dec. ¶61 | **UNDISPUTED:** However, this is not a material fact, and is inadmissible because Paragraph 61 if the Suhy Dec. does not support this statement. |
| | | **Additional Fact:** Neo4j® EE was offered under a paid-for commercial license and under the AGPL prior to version 3.4. Neo4j® EE v3.4 and several pre-release versions of Neo4j® EE v3.5 were subject to the Commons Clause. Rathle Decl., ¶¶ 7-14. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 154: A licensee who wants to sell an open source Neo4J fork, may do so with a prior version of Neo4j where the license does not include the added common clause if they have concerns of the validity of the commons clause. Suhy Dec. ¶62 | **DISPUTED**: There is no evidentiary support offered because the Suhy Dec does not contain a Paragraph 62. A licensee may "sell" source code licensed under the AGPL so long as any modifications are redistributed and all copyrights and license terms are retained therewith. Rathle Decl., Exh. 1, §§ 4, 5. 3. The AGPL is not a trademark license, and thus does not grant a licensee the right to use the Neo4j® Mark. *See* PT Dkt. No. 85 at 7:27-8:2. |
| The commons clauses added to the AGPL does not bar professional services. | Fact 155: Even if valid, the commons clause only bars services that "consists, entirely or substantially of the Software or the functionality of the Software." Ratinoff Dec. Ex 39 at 25:681-693 | **DISPUTED:** The statement is incomplete representation of the Commons Clause, which states: "For purposes of the foregoing, 'Sell' means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (<u>including without limitation fees for hosting or consulting/ support services related to the Software</u>), a product or service whose value derives, entirely or substantially, from the functionality of the Software." Rathle Decl., Exh. 3. |
| | Fact 156: Professional services to support a licensee of open source Neo4j do not "consists, entirely or substantially of the Software or the functionality of the Software." Ratinoff Dec. Ex 39 at 25:681-693, Suhy Dec. ¶36, 60, Ex.2 | **DISPUTED**: This is inadmissible argument, not a material fact. It is also vague and ambiguous as to which version of Neo4j® software and the type of professional services are being referred to in this context. The Neo4j Sweden Software License restricts third-parties from selling Neo4j® EE and offering professional services that are substantially derived from Neo4j® EE or the functionality thereof. Rathle Decl., ¶¶ 11-13, Exh. 3. The AGPL is not a trademark license, and thus does not grant Defendants the right to use the Neo4j® Mark with their recompiled binaries. *See* Rathle Decl., ¶¶ 15-18, Exhs. 5-7; PT Dkt. No. 85 at 7:27-8:2. |

## Attestation

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports or disputes the facts asserted.

Dated: February 16, 2021   By:  */s/ Jeffrey M. Ratinoff*

Jeffrey M. Ratinoff, Attorney for Plaintiffs and Counter-Defendants Neo4j, Inc. and Neo4j Sweden AB

**EXHIBIT C**

**Plaintiffs' Evidentiary Objections to the Declaration of John Mark Suhy**

| Suhy Declaration Paragraph | Basis of Evidentiary Objection |
|---|---|
| Para 2, 3 and 4 (PT nominative use of TM and reasons for forming iGov) | FRE 701 (Improper opinion testimony, improper legal conclusion); |
| Para 6 (iGov's intent) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for iGov's intent, or to what solicitations are being referred) |
| Para 7, 46, 49, 52, 53, 54; and Exh. 1 (Alleged interference and Partner Agreement restrictions) | FRE 701 (Improper opinion testimony, improper legal conclusion); FRE 401 (IRS issues are irrelevant and immaterial to Phase 1 issues) |
| Para 8 (Development of Neo4j Government Edition) | FRE 602 (No foundation for iGov's development and where they stated PT's relationship with Neo4j USA was terminated) |
| Para 9 (iGov's intent in referencing Neo4j's TM) | FRE 701 (Improper opinion testimony, improper legal conclusion and argument); FRE 602 (no foundation for alleged "references" to the Neo4j® Mark) |
| Para 10 (PT's intent regarding use of Neo4j's mark in PT's email address) | FRE 701 (Improper opinion testimony, improper legal conclusion and argument); FRE 602 (no foundation for purposes of email address); FRE 401 (PT's intent in using mark is irrelevant and immaterial) |
| Para 11 (iGov's software offerings) | FRE 602 (no foundation for existing open source distributions or what evidence is being referred to) |
| Para 12 (iGov's use of Neo4j's trademark) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for purposes of email address); FRE 401 (PT's intent in using mark is irrelevant and immaterial) |
| Para 13, 14, 15 and 16 (Use of Neo4j software under the AGPL, Graphstack and the partner agreement) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for iGov's or PT's open source and contractual claims); FRE 401 (PT's intent in using mark is irrelevant and immaterial) |
| Para 18 (Neo4j Sweden's distributions). | FRE 602 (No foundation for how Neo4j Sweden compiles it software and creates distributions, and vague as to which version(s) thereof are referenced) |
| Para 19, 22 (ONgDB) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for the open source, forking and licensing averments) |
| Para 20 and 21 (PT & iGov websites and ONgDB) | FRE 602 (no foundation for referenced websites and specific statements thereon); FRE 802 (what PT and iGov websites said is hearsay); FRE 701 (Improper opinion testimony and legal conclusion as to whether their use of the Neo4j® Mark is nominative fair use) |

842\3710620.2

| | |
|---|---|
| Para 20 (ONgDB) | FRE 602 (no foundation for referenced websites and specific statements thereon); FRE 802 (what PT and iGov websites said is hearsay); FRE 701 (Improper opinion testimony and legal conclusion as to whether their use of the Neo4j® Mark is nominative fair use) |
| Para 23, 24, 25, 26, 27 and 28 (Consumer confusion, PT and iGov's use of trademark) | FRE 701 (Improper opinion testimony and legal conclusions as to terms of service and licensing, and as to whether their use of the Neo4j® Mark is nominative fair use); FRE 602 (no foundation); FRE 602, 701 (improper speculation as to alleged lack of consumer confusion and source of technical issues) |
| Para 29 and 30 (Removal of commercial restriction and veracity of statements) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for referenced files and vague as to which files and version(s) of software is being referred to) |
| Para 31, 32, 33, 34, 35, 36, 37 and 38; and Exhibit 2 (Defendants' statements, interpretation of the AGPL, and GitHub policy) | FRE 602 (no foundation); FRE 802 (FSF and Heather Meek's statements are inadmissible hearsay); FRE 701 (Improper opinion testimony and legal conclusion regarding AGPL interpretation, standing and the requirements of the DMCA and Copyright Act); FRE 401 (PT's meaning and intent in making "drop in replacement" is irrelevant and immaterial); FRE 901a (lack of authentication of Exh. 2) |
| Para 39, and 40 (Defendants' statement re ONgDB and nature of Neo4j Sweden's source code) | FRE 602 (no foundation regarding content and nature Neo4j enterprise code); FRE 701 (Improper opinion testimony regarding content and nature Neo4j enterprise code) |
| Para 41, 42, 43, 44 and 45 (Use of the Neo4j® Mark, price, use of ONgDB and AGPL) | FRE 602, 701 (no foundation and speculative as to technical and pricing averments, and customers' purchasing decisions); FRE 701 (Improper opinion testimony re AGPL interpretation and characterization of ONgDB, as well as improper opinion testimony and legal conclusion as to whether use of the Neo4j® Mark qualifies as nominative fair use) |
| Para 47 (AGPL and FSF) | FRE 802 (FSF and other third party statements are hearsay); FRE 701 (Improper opinion testimony re AGPL interpretation and copyrights) |
| Para 50, 51, 55, 56, 57, 58, 59, and 60 (Use of Neo4j® Mark, quality control, technical and legal claims re ONgDB, GitHub terms of service and the Commons Clause) | FRE 701 (Improper opinion testimony); FRE 602 (no foundation for iGov's or PT's open source, technical and/or contractual averments) FRE 602, 701 (no foundation and impermissible speculation regarding customers) |