1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, CA  95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:    (408) 286-9800
8   Facsimile:    (408) 998-4790

9   Attorneys for Plaintiff and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J, INC., a Delaware corporation, and       CASE NO.  5:18-cv-07182-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                   **REPLY DECLARATION OF JEFFREY M.
                                                   RATINOFF IN SUPPORT OF
                    Plaintiffs,                    PLAINTIFFS' CONSOLIDATED MOTION
15                                                 FOR SUMMARY JUDGMENT AND
                                                   OPPOSITION TO DEFENDANTS' CROSS-
16          v.                                     MOTION FOR SUMMARY JUDGMENT**

17  PURETHINK LLC, a Delaware limited              Date:      April 15, 2021
    liability company, IGOV INC., a Virginia       Time:      9:00 a.m.
18  corporation, and JOHN MARK SUHY, an            Dept.:     Courtroom 4, 5th Floor
    individual,                                    Judge:     Hon. Edward J. Davila
19                  Defendants.

20  AND RELATED COUNTERCLAIM.

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3703619.1
REPLY DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

I, Jeffrey M. Ratinoff, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all courts of the State of California, and am of counsel with Hopkins & Carley, a Law Corporation, attorney of record for Plaintiff Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs") in the above-captioned matter.  I make this declaration in support of Plaintiffs' Consolidated Reply in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment concurrently filed herewith.

2.      The facts stated herein are based on my personal knowledge, except with respect to those matters stated to be on information and belief, and as to those matters, I believe them to be true.  If called upon to testify as a witness in this matter, I could and would do so competently.

3.      Attached hereto as **Exhibit A** is a true and correct copy of Neo4j USA's webpage, http://www.neotechnology.com, archived on August 23, 2011, which was downloaded from the Wayback Machine website, a digital archive of the World Wide Web (https://web.archive.org).

4.      Attached hereto as **Exhibit B** is a true and correct copy of Neo4j USA's webpage, http://neotechnology.com/products/price-list/, archived on August 23, 2011, which was downloaded from the Wayback Machine website, a digital archive of the World Wide Web (https://web.archive.org).

5.      Attached hereto as **Exhibit C** is a true and correct copy of Neo4j USA's webpage, http://neotechnology.com/neo4j-graph-database/, archived on March 26, 2014, which was downloaded from the Wayback Machine website, a digital archive of the World Wide Web (https://web.archive.org).

6.      Attached hereto as **Exhibit D** is a true and correct copy of Neo4j USA's webpage, http://neotechnology.com/products/price-list/, archived on March 26, 2014, which was downloaded from the Wayback Machine website, a digital archive of the World Wide Web (https://web.archive.org).

7.      Attached hereto as **Exhibit E,** is a true and correct copy of relevant excerpts from Purethink LLC and iGov Inc.'s Amended Response To Neo4j, Inc.'s First Set of Interrogatories to Purethink LLC and iGov Inc., and John Mark Suhy's verification thereof.  The redacted

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3703619.1                                    - 1 -
REPLY DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION; CASE NO. 5:18-CV-07182-EJD

portions contain personal contact information for potential witnesses, and are not cited to or relevant to the parties' pending motions.

8.     Attached hereto as **Exhibit F** are true and correct copies of additional relevant pages from the transcript for the Rule 30(b)(6) Deposition of iGov taken on October 22, 2020.

9.     Attached hereto as **Exhibit G**, is a true and correct copy of an issue posted on FOSSA's GitHub repository at https://github.com/fossas/commons-clause/issues/4 on August 22, 2018, which I printed out on February 4, 2021.  It appears to contain the post by Heather Meeker attached as Exhibit 2 to the Declaration of John Mark Suhy in Support of Defendants Consolidated Opposition and Motion for Summary Judgment.

10.     Attached hereto as **Exhibit H** are true and correct copies of additional pages from the transcript for the Rule 30(b)(6) Deposition of Graph Foundation Inc. taken on October 16, 2020.

11.     Attached hereto as **Exhibit I** is a true and correct copy of the Stipulated Judgment and Permanent Injunction (Dkt. No. 110) entered by the Court in *Neo4j, Inc., et al. v.  Graph Foundation, Inc., et al.*, United States District Court for the Northern District of California, Case No. 5:19-CV-06226-EJD.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 16th day of February 2021, at San Jose, California.

   */s/ Jeffrey M. Ratinoff*
   Jeffrey M. Ratinoff

**EXHIBIT A**

http://neotechnology.com/  Go

673 captures
19 May 2001 - 6 Nov 2019

JUL **AUG** SEP
◄ **23** ►
**2010 2011 2012**

About this capture

Contact Us | Blog

HOME | SOLUTIONS | PRODUCT | SERVICES | CUSTOMERS | COMMUNITY | ABOUT US

# The Leader in Graph Databases

### The World's Leading NOSQL Graph Database

Neo4j is the world's leading high performance, scalable graph database. Based on more than 8 years of R&D, it has been in 24/7 production since 2003. Neo4j scales to billions of entities on a single machine, with searches up to 1000 times faster than traditional relational databases.

**Learn More**



### Upcoming Webinar

Introduction to graph databases

**Join Us**



### New Releases

Neo4j 1.4.1 "Kiruna Stol"

**Get the Details**



### Announcing

Spring Data Graph

**Learn More**

**Products & Solutions**

Solutions
Neo4j Executive Overview
Product Guide
Price List

**Community**

Neo4j.org
Download Neo4j
Neo4j Blog
Discussion Forums
Documentation
Wiki

**About Us**

Overview
Company Blog
Press Page
Jobs

**Subscribe to our Newsletter**

Your email address

Subscribe

Contact Us for Information

Copyright © 2011 - Neo Technology | Site Credits

**EXHIBIT B**

http://neotechnology.com/products/price-list/    Go

84 captures
23 Aug 2011 - 20 May 2014

JUL   **AUG**   SEP
◀   **23**   ▶
2010   **2011**   2012

▼ About this capture



Contact Us   |   Blog

| HOME | SOLUTIONS | **PRODUCT** | SERVICES | CUSTOMERS | COMMUNITY | ABOUT US |

Executive Overview     Product Licensing Guide     Price List

## Neo4j Price List

### Price List

Neo Technology offers two commercial editions based on the Neo4j open source graph database.

Both commercial editions can be used in closed-source environments. They are available under a subscription model. Prices are per instance. New releases are included as long as the subscription or annual support and maintenance fees are paid.

| Feature | Neo4j Community | Neo4j Advanced | Neo4j Enterprise |
|---|---|---|---|
| **Licensing** | | | |
| License | Open source (GPLv3) | Commercial and AGPL | Commercial and AGPL |
| Can be used with closed source software | Yes, except OEM | Yes, with commercial license | Yes, with commercial license |
| **Functionality** | | | |
| Neo4j high performance graph database | Yes | Yes | Yes |
| Batch inserter for bulk uploads | Yes | Yes | Yes |
| Shell for console access | Yes | Yes | Yes |
| Graph algorithm package | Yes | Yes | Yes |
| Native language bindings[1] | Yes | Yes | Yes |
| Web frameworks integration[2] | Yes | Yes | Yes |
| Neo4j Server | Yes | Yes | Yes |
| **Operations and Monitoring** | | | |
| SNMP & JMX monitoring | | Yes | Yes |
| Neo4j Web Management console | Basic | Full | Enterprise |
| **High load & high availability** | | | |
| Online backup of running instance | | | Yes |
| Online failover to warm spare | | | Yes |
| Read slave replication | | | Yes |
| Read/write slave replication | | | Yes |
| High availability with master failover | | | Yes |
| **Support & Services** | | | |
| Support hours | | 5x10 | 7x24 |
| Response time | | 24h | 1h |
| Communication channel | | Email | Phone |
| Technical alerts | | Yes | Yes |

http://neotechnology.com/products/price-list/    Go

JUL  **AUG**  SEP
◀ **23** ▶
2010 **2011** 2012

84 captures
23 Aug 2011 - 20 May 2014

▼ About this capture



| OEM and Volume discount: | Contact Sales | Contact Sales | Contact Sales |

1 Native bindings to Ruby, Python, Scala, Clojure and Groovy
2 Integration with Spring Framework, Grails, Rails, Django, PHP and more
3 Available to Early Access Program customers

**Products & Solutions**
Solutions
Neo4j Executive Overview
Product Guide
Price List

**Community**
Neo4j.org
Download Neo4j
Neo4j Blog
Discussion Forums
Documentation
Wiki

**About Us**
Overview
Company Blog
Press Page
Jobs

**Subscribe to our Newsletter**
Your email address
Subscribe

**Contact Us for Information**

Copyright © 2011 - Neo Technology | Site Credits

**EXHIBIT C**



63 captures
13 Jan 2013 - 4 May 2017

FEB   **MAR**   MAY
◀   **26**   ▶
2013   **2014**   2015

○  ▢  ▢
🔘 About this capture
f

NEOTECHNOLOGY.COM   |   NEO4J.ORG   |   GRAPHCONNECT.COM

🇺🇸 🇩🇪   🔍



neotechnology  graphs are everywhere

| **NEO4J GRAPH DB** | CUSTOMERS | PARTNERS | EVENTS | COMMUNITY | ABOUT | CONTACT US |



# Neo4j
## World's Leading Graph Database

Neo4j is a robust and proven database technology built from the ground up for use in mission-critical systems with highly inter-connected data models.



**Curses!**
This video can't be played with your current setup.

Intro to Neo4j(38:14)

## Key benefits of Neo4j

### ☐ Minutes-to-Milliseconds Performance
Over relational database and other NOSQL alternatives, Neo4j turns complex joins into simple & fast graph traversals.

### ☐ Fully ACID, Robust & Scalable
Neo4j is an enterprise database with full ACIDity, support for high-availability clustering, and transaction support.

### ☐ Drastically-Accelerated Development Cycles
Thanks to its flexible data model and Cypher, an intuitive graph query language, Neo4j is easy to use.

### ☐ Extreme Business Responsiveness
Schemaless, unlike relational, Neo4j is flexible, yet, unlike other NOSQL databases, offers structure and meaning.

## Neo4j Enterprise Edition
Neo4j Enterprise Edition is built to perform at scale for startups to enterprise implementations. Commercial subscriptions include the permission to integrate the enterprise editions in closed-source software products, service and support by Neo Technology.

Learn more about Neo4j's Commercial Subscriptions »

### Latest Neo4j News

**Neo4j 2.0.1 Community Released on Windows Azure VM Depot**

We have released a Linux distribution of Neo4j 2.0.1 community on Windows Azure's VM Depot website. Users of Windows Azure are now able to copy a platform image of Neo4j 2.0.1 directly from the VM Depot. Once provisioned, a fresh Neo4j database instance is made available via HTTP through port 7474. Check out the slides below for instructions on

### Neo4j White Papers



**Graph Databases: The Super Fast New Way to Access Social Data**

A new type of database significantly changes the standard direction taken by NOSQL. Graph databases, unlike their NOSQL and relational brethren, are designed for lightning-fast access

how to setup and provision the virtual machine

to complex data found in social networks, recommendation engines and networked systems. Get the White Paper »



## NoSQL, Big Data, and Graphs

It used to be that databases were just tasked with digitizing forms and automating business processes. The data was often tabular – take an accounting ledger, for example –and the processes being modeled were reasonably static. Today, the types of data that we are interested in are much more diverse and dynamic. Get the White Paper »

Read More »

---

**© 2014 Neo Technology Inc.**
All Rights Reserved
Privacy Policy
Terms

**PRODUCTS**
Neo4j Executive Overview
Neo4j Use Cases
Services
Price List
Resources
Hardware Sizing Calculator
Download Neo4j

**RELATED SEARCHES**
Graph Databases
Customer Stories
Press Release
Video
German Edition
French Edition

**ABOUT US**
About Neo Technology
Jobs
Staff
Book Store
Press

**USA:** 1-855-636-4532   **UK:** +44 808 189 0493   **GERMANY:** +49 800 010 1090   **FRANCE:** +33 (0)8 05 08 00 31

**EXHIBIT D**



FEB **MAR** MAY
◀ **26** ▶
2013 **2014** 2015

128 captures
27 Feb 2010 - 9 Nov 2017

About this capture

NEOTECHNOLOGY.COM | NEO4J.ORG | GRAPHCONNECT.COM



*neo*technology — graphs are everywhere

| NEO4J GRAPH DB | CUSTOMERS | PARTNERS | EVENTS | COMMUNITY | ABOUT | CONTACT US |

# Neo4j Commercial Subscriptions

**Need help deciding?**
**Contact Sales**

– Neo4j Commercial Subscriptions –

| Graph Database Features | Community<br>**Open Source** | Personal<br>**Startups with up to 3 employees and $100K in annual revenue**<br>**Free** | Startups<br>**< $10M in funding < $5M in annual revenue**<br>$12K / €12K | Business & Enterprise<br>**Medium Business to Global 2000**<br>Contact Sales |
|---|---|---|---|---|
| Property Graph Model | ✓ | ✓ | ✓ | ✓ |
| Native Graph Processing | ✓ | ✓ | ✓ | ✓ |
| Native Graph Storage | ✓ | ✓ | ✓ | ✓ |
| ACID | ✓ | ✓ | ✓ | ✓ |
| Cypher – Graph Query Language | ✓ | ✓ | ✓ | ✓ |
| Language Drivers (most popular languages) | ✓ | ✓ | ✓ | ✓ |
| REST API | ✓ | ✓ | ✓ | ✓ |
| High-Performance Native API | ✓ | ✓ | ✓ | ✓ |
| HTTPS (via Plug-in) | ✓ | ✓ | ✓ | ✓ |
| **Performance & Scalability** | | | | |
| High-Performance Cache | – | ✓ | ✓ | ✓ |
| Clustering | – | ✓ | ✓ | ✓ |
| Online Backup | – | ✓ | ✓ | ✓ |
| Advanced Monitoring | – | ✓ | ✓ | ✓ |
| **Maintenance** | | | | |

| | | | | |
|---|---|---|---|---|
| Certified for Windows | – | ✔ | ✔ | ✔ |
| Certified for Linux | – | ✔ | ✔ | ✔ |
| Maintenance Releases & Schedules Fixes | ✔ | ✔ | ✔ | ✔ |
| Emergency Patches | – | – | – | Available |
| **Support** | | | | |
| Community Support | ✔ | ✔ | ✔ | ✔ |
| Commercial Email Support | – | – | ✔ | ✔ |
| Commercial Phone Support | | | | ✔ |
| Support Hours | – | – | 10 x 5 | Up to 24 x 7 |
| **License** | | | | |
| Commercial License | – | ✔ | ✔ | ✔ |
| Production Instances | – | 3* | 3* | 3+ |
| Test Instances | – | 3* | 3* | 3+ |
| # of Developers | – | up to 2 developers | 2 developers* | 3+ developers |

**PRICES ABOVE ARE QUOTED IN US DOLLARS FOR THE US AND CANADIAN MARKETS; FOR PRICING OUTSIDE THESE AREAS PLEASE CONTACT SALES.**

*Contact Neo about larger clusters, or more developers.

**Join the Partner Graph**

If you are looking to embed & redistribute Neo4j with your software, please Contact Us.

© 2014 Neo Technology Inc.
All Rights Reserved
Privacy Policy
Terms

**PRODUCTS**
Neo4j Executive Overview
Neo4j Use Cases
Services
Price List
Resources
Hardware Sizing Calculator
Download Neo4j

**RELATED SEARCHES**
Graph Databases
Customer Stories
Press Release
Video
German Edition
French Edition

**ABOUT US**
About Neo Technology
Jobs
Staff
Book Store
Press

**USA:** 1-855-636-4532   **UK:** +44 808 189 0493   **GERMANY:** +49 800 010 1090   **FRANCE:** +33 (0)8 05 08 00 31

**EXHIBIT E**

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorneys for Defendants and Counter
Claimants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>PURETHINK LLC, a Delaware limited<br>liability company, IGOV INC., a Virginia<br>corporation, and JOHN MARK SUHY, an<br>individual,<br><br>              Defendants. | CASE NO.  5:18-cv-07182-EJD<br><br>**PURETHINK LLC AND IGOV INC.'S<br>AMENDED RESPONSE TO NEO4J, INC.'S<br>FIRST SET OF INTERROGATORIES TO<br>PURETHINK LLC AND IGOV INC.** |
| AND RELATED COUNTERCLAIM. | |

**PROPOUNDING PARTY:**     **NEO4J, INC.**

**RESPONDING PARTY:**      **PURETHINK LLC and IGOV INC.**

**DISCOVERY:**            **Interrogatories**

**SET:**                 **One – Amended Response**

**OBJECTIONS TO DEFINITIONS**

1.    Responding party objects to the definition of "YOU," or "YOUR" as they are overbroad Defendants and Counter-Claimants PureThink LLC and iGov Inc., will provide information in their custody and control and without distinguishing between which party may or may not have specific information regarding the responses as, for example, iGov Inc. has no agreements with plaintiff.

2.    Responding parties object to the definition "IDENTIFY" and "IDENTITY" as it is overbroad and overly burdensome, and plaintiffs may review the same documents and information to derive the information. Responding parties will meet and confer over specific requests if required.

**RESPONSE TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

*IDENTIFY all facts and DOCUMENTS supporting YOUR contention in Paragraph 14 of YOUR COUNTERCLAIM that "a separate agreement came into place for the new Neo4j version for the government which was supposed to protect the investment PureThink was making and was going to make," and the four (4) persons most knowledgeable about such facts.*

**RESPONSE:**

- 1.1 Removed.

- 1.2 Before April 2015, John Mark Suhy had several verbal discussions over phone and skype with Erik Nolten regarding setting up an exclusivity agreement between PureThink and Neo Technology Inc. to help streamline US government procurements.

- 1.3 On or about April 10, 2015, Erik Nolten voiced concern about giving exclusivity

- 2 -

agreement among other subjects.

See file: INTEROGS-PURETHINK-IGOV-1/000001-000063.pdf

- 1.14 On or about  March 18, 2016 – Bryce Merki Sasaki from Neo4j Inc, posted a blog post on the official Neo4j.com blog. In the post John Mark Suhy was introduced as "John Mark Suhy, the CTO of PureThink – the exclusive provider of Neo4j Government Edition to U.S. federal, state, Department of Defense and intelligence agencies."

See file: INTEROGS-PURETHINK-IGOV-1/000125-000129.pdf

- 1.15 On or about April 11, 2016 – John Broad introduced John Mark Suhy to David Clark, the CTO of FactGem. In the introduction John Broad introduced John Mark Suhy as follows: "@Clark, John Mark is CTO of our partner PureThink, the partner exclusively offering the Government Edition to the US Federal Sector."

See file: INTEROGS-PURETHINK-IGOV-1/000067-000067.pdf

- 1.16 Once the exclusivity agreement for Neo4j Government Edition was in place: FBI, Sandia Laboratories, and IRS all procured the Government Edition through PureThink as was expected, and shown by the following facts:

  a. GraphAware Inc.
     PureThink and John Mark Suhy were working with GraphAware on several potential opportunities including a cyber threat intelligence prototype.

  b. IRS –  PureThink was awarded a contract with IRS which it completed. It was awarded a follow up contract which was canceled due to Neo4j Inc. interference.

- 7 -

**INTERROGATORY NO. 5:**

  *IDENTIFY all facts, DOCUMENTS and the legal basis supporting YOUR contention in Paragraph 18 of the YOUR COUNTERCLAIM that "NEO4J, Inc. unlawfully restricts third parties from supporting the free open source version so NEO4J, Inc. can license and support the same software under an expensive commercial license without fear of honest competition," and the four (4) persons most knowledgeable about such facts.*

  **RESPONSE:**

- 5.1 Neo4j Inc. has restricted PureThink and John Suhy from using the open source version of Neo4j by telling third parties they cannot do business with them under the restrictive terms of the Partner Agreement ( Sections 4.3.1 and 4.3.2 Exhibit B to the Counterclaim) which is violation of California Business and Professions Code §16600 and responding parties have a license from the owner of the software, Neo4J Sweden AB, to license and support the open source software which Neo4j Inc. has no right to restrict.

- 5.2 On or about April 2016 PureThink and Neo4j Inc. entered into an agreement over an upcoming IRS procurement. Over the previous year Neo4j Inc. had been trying to get IRS to procure a Neo4j Enterprise package.  IRS was using Neo4j Community Edition under its open source license already and did not see the benefit of paying a large amount of money for support when their existing system was being operated and supported already.   IRS indicated they were not interested in purchasing a Neo4j subscription around March-April 2016 because they needed a solution built before they could pay to have anything supported for the solution. See file: INTEROGS-PURETHINK-IGOV-1/00005893-A001-A010.pdf

  John Mark Suhy spoke with Neo4j and proposed that PureThink submit a proposal to build the solution they needed, which would lead to re-occurring revenue in the follow up years from Neo4j Government Edition package subscriptions.   Over many emails and phone conversations, John Mark convinced the Neo4j Team that not taking the

1

2

3

4

5

6

- 5.24 On information and belief similar interference as to the above statements is believed to have occurred with other agencies to include but not limited to NGA, other DHS organizations, Airforce, Northrup Grumman, and unknown organizations which would have considered PureThink as part of the government procurement process.

7

8

9

10

11

12

13

14

15

- 5.25 In a September 19, 2017 letter to the IRS, Counsel for Neo4j Inc. represented that

"PureThink, is not authorized to provide the solicited graph database software and services in support of the CKGE."

and

"Neo owns software that meets all requirements for the continued operation of the CKGE to meet user demands...".

The statement above is false as Neo4j was just one piece of CKGE and Neo4j Inc. did not own the other software that made up or could have been dropped in to make CKGE.

See file: INTEROGS-PURETHINK-IGOV-1/000267-000279.pdf

16

17

18

19

20

21

22

23

24

25

- 5.26 On or about 2018 John Mark Suhy spoke with Steven Baker via skype. Steven worked for Neo4j Inc.  Steven told John Mark that Neo4j Inc. was "out to get him" and that PureThink and John Mark were hated at Neo4j Inc.   He stated that he was told that John Mark's promotion of open source licenses was causing Neo4j Inc.to lose a lot of money.  He also said that Neo4j had been planning on trying to sue John Mark Suhy with the expectation that he would not have the money to "lawyer up".  He said they expected a quick settlement which would take John Mark and his companies out of the picture.   He said they told employees they would go after John Mark and his company(s) using trademark law.

26

27

28

- 5.27 On or about March 15, 2017:  Mike Dunn from IRS had a phone call with John Mark Suhy and told him that Jason Zagalsky and John Broad had several discussions

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 6:**

IDENTIFY all facts and DOCUMENTS supporting YOUR contention in Paragraph 19 of

YOUR COUNTERCLAIM that "NEO4J, Inc. retaliated, terminating the Government Edition, the

Government Edition Agreement, the Partner Agreement and eliminating PureThink as a

*competitor by telling users and potential users PureThink could not support the open source*

*version of Neo4j," and the four (4) persons most knowledgeable about such facts.*

**RESPONSE:**

- 6.1 Removed.

- 6.2 On or about April 2016 PureThink and Neo4j Inc. entered into an agreement over
  an upcoming IRS procurement. Over the previous year Neo4j Inc. had been trying to
  get IRS to procure a Neo4j Enterprise package.  IRS was using Neo4j Community
  Edition under its open source license already and did not see the benefit of paying a
  large amount of money for support when their existing system was being operated and
  supported already.   IRS indicated they were not interested in purchasing a Neo4j
  subscription around March-April 2016 because they needed a solution built before
  they could pay to have anything supported for the solution. See file: INTEROGS-
  PURETHINK-IGOV-1/00005893-A001-A010.pdf
  John Mark Suhy spoke with Neo4j and proposed that PureThink submit a proposal to
  build the solution they needed, which would lead to re-occurring revenue in the follow
  up years from Neo4j Government Edition package subscriptions.   Over many emails
  and phone conversations, John Mark convinced the Neo4j Team that not taking the
  proposed approach would mean Neo4j would lose out altogether instead of getting a
  footing at IRS, and almost guaranteed recurring revenue on the follow up years.  The
  Neo4j Team agreed.

  The agreement around the IRS deal was as follows:

  - John Mark Suhy could make all decisions around the agreement between
    PureThink and IRS relating to the deal.  This came about because time was of

1    told John Mark Suhy that the legal issues were between PureThink and Neo4j Inc.

2    John Mark Suhy told IRS that he had no control over Jason as Jason did not work for

3    PureThink.

4

5    -  6.22 PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark

6        Suhy where he explained why PureThink did not get the award.

7

8    -  6.23 On or about May to July 2017 –  Neo4j Inc. employees had a phone conversation

9        with the DHS USCIS who had reached out to Neo4j to gather / and or verify some

10       details for the Neo4j Government Edition procurement. At this point, Brian Rodrigue

11       had already told John Mark Suhy via email, that the recommendation was to procure

12       Neo4j Government Edition with PureThink.

13       On the phone call, Neo4j Inc. was told that DHS had decided to procure Neo4j

14       Government Edition through PureThink.  The Neo4j people on the phone told DHS

15       team that DHS could not work with PureThink and had to go through another vendor.

16       Brian Rodrigue (DHS Team) who told John Mark about the incident, and who was on

17       the call said it was an uncomfortable situation and caught the DHS team by surprise as

18       the recommendation to go with Neo4j  because in part because of PureThink's time

19       and effort helping around the procurement / research process.

20       See file: INTEROGS-PURETHINK-IGOV-1/000304-000306.pdf

21

22    -  6.24 On information and belief similar interference as to the above statements is

23       believed to have occurred with other agencies to include but not limited to NGA, other

24       DHS organizations, Airforce, Northrup Grumman, and unknown organizations which

25       would have considered PureThink as part of the government procurement process.

26

27    -  6.25 In a September 19, 2017 letter to the IRS, Counsel for Neo4j Inc. represented that

28

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF
INTERROGATORIES

**INTERROGATORY NO. 8:**

IDENTIFY each prospective and actual economic relationship that YOU allege that NEO4J intentionally interfered with in YOUR First Cause of Action of the COUNTERCLAIM and describe in detail the nature and basis of each such relationship.

**RESPONSE:**

- 8.1 Removed.

- 8.2 GraphAware Inc.
  PureThink and John Mark Suhy were working with GraphAware on several potential opportunities including a cyber threat intelligence prototype.

- 8.3 IRS –  PureThink was awarded a contract with IRS which it completed. It was awarded a follow up contract which was canceled due to Neo4j Inc. interference.

- 8.4 IRS – iGov Inc. was working with a team to bid on an IRS BPA procurement

- 8.5 DHS USCIS – PureThink worked with the DHS team on a Neo4j Government Edition procurement.

- 8.6 PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark Suhy where he explained why PureThink did not get the award.

- 8.7 On or about May to July 2017 –  Neo4j Inc. employees had a phone conversation

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF INTERROGATORIES

1    advertised and which did not have proper brand name justification.

2

3    -    8.13 US Airforce: (Airforce) – iGov Inc. was an interested vendor in providing a

4         support subscription for an Airforce Neo4j procurement that was advertised and which

5         did not have proper brand name justification.

6

7    -    8.14 Northrup Grumman – iGov Inc. was asked to quote a graph solution for Northrup

8         Grumman which leveraged Neo4j Enterprise under the free open source AGPL

9         license.

10

11   -    8.15 United States Parcel Service (USPS) – PureThink worked with USPS to try

12        getting them to procure a Neo4j Government Edition package.

13

14   -    8.16 US Army – PureThink worked with Army answering questions about a potential

15        procurement, as well as providing quotes.  The introduction was originally made by

16        Neo4j Inc.

17

18   -    8.17 Accenture – iGov Inc

19        iGov Inc. was working with DHS USCIS and their Accenture backed team on a

20        potential opportunity that was different than the DHS deal which PureThink is owed

21        the commission on.

22

23   -    8.18 Information Analysis Incorporated (IAI) – PureThink was working with IAI

24        around a potential partnership or acquisition of PureThink and the Government

25        Edition exclusivity agreement.

26

27        People knowledgeable of facts:

28

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF
INTERROGATORIES

**INTERROGATORY NO. 13:**

      *For each economic relationship identified in Interrogatory No. 8, IDENTIFY all facts and DOCUMENTS evidencing the economic harm YOU contend YOU suffered as a proximate result of NEO4J's intentional acts of interference, and the four (4) persons most knowledgeable about such facts.*

      **RESPONSE:**

1    -   13.1 Removed.

2

3    -   13.2 PureThink:  1,200,000 – which is the value of the contract for solicitation

4        M7M528ROO00 which was awarded, then canceled.

5        See files: INTEROGS-PURETHINK-IGOV-1/000309-000310.pdf, INTEROGS-

6        PURETHINK-IGOV-1/000311-000312.pdf

7

8    -   13.3 John Mark Suhy:  Lost income for the date range of Sept 22, 2016  to May 2018

9        while waiting on IRS to validate claims and decide if the procurement could go

10       through, or a new solicitation was in order.

11

12   -   13.4 PureThink lost $26,020 which is 25% of a $104,028 deal for DHS USCIS

13       PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark Suhy

14       where he explained why PureThink did not get the award.

15

16

17   -   13.5 On information and belief similar interference as to the above and other

18       interrogatory responses .  Purethink would have won and made  25% commission

19       from government procurements including but not limited to DHS, NGA, and Airforce.

20       The Neo4j Government Edition exclusivity agreement specifically stated that only the

21       Neo4j Government Edition could be sold to these agencies.  The reason for this term

22       was to ensure government agencies would put the effort to get PureThink on the

23       proper vehicles and schedules.

24

25   -   13.6 Neo4j Exclusivity agreement for Neo4j Government Edition had terms agreeing

26       that only US Government agencies could only purchase Neo4j Government Edition,

27       there was no way any other vendor could have one any awards because of the

28       agreement.

- 60 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24  **INTERROGATORY NO. 14:**

25       *IDENTIFY each contractual relationship that YOU allege that Neo4j intentionally*

26  *interfered with in the Second Cause of Action of YOUR COUNTERCLAIM, and describe in detail*

27  *the nature of each such relationship, including but not limited to the parties to the contract, the*

28  *nature and subject matter of each such contract and the terms of each contract.*

**RESPONSE:**

- 14.1 Removed.

- 14.2 GraphAware Inc.

    PureThink and John Mark Suhy were working with GraphAware on several potential

    opportunities including a cyber threat intelligence prototype.

- 14.3 IRS –  PureThink was awarded a contract with IRS which it completed. It was

    awarded a follow up contract which was canceled due to Neo4j Inc. interference.

- 14.4 IRS – iGov Inc. was working with a team to bid on an IRS BPA procurement

- 14.5 DHS USCIS – PureThink worked with the DHS team on a Neo4j Government

    Edition procurement,

- 14.6 PureThink and DHS:  In 2017 Brian Rodrigue had a phone call with John Mark

    Suhy where he explained why PureThink did not get the award.

- 14.7 On or about May to July 2017 –  Neo4j Inc. employees had a phone conversation

    with the DHS USCIS who had reached out to Neo4j to gather / and or verify some

    details for the Neo4j Government Edition procurement. At this point, Brian Rodrigue

    had already told John Mark Suhy via email, that the recommendation was to procure

    Neo4j Government Edition with PureThink.

    On the phone call, Neo4j Inc. was told that DHS had decided to procure Neo4j

    Government Edition through PureThink.  The Neo4j people on the phone told DHS

    team that DHS could not work with PureThink and had to go through another vendor.

    Brian Rodrigue (DHS Team) who told John Mark about the incident, and who was on

    the call said it was an uncomfortable situation and caught the DHS team by surprise as

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF
INTERROGATORIES

goods and services sold under the trademark are maintained. Uncontrolled licensing is called

naked licensing and results in abandonment of the trademark.  Neo4j Inc. claims to own the

trademark to NEO4J. Yet a software product names NEO4J, without any ® designation is

licensed and freely available for download on GitHub-a repository for open source software-

without any quality controls over the software. Anyone may then download the software and

modify it without any quality control standards imposed by anyone. Thus, Neo4j Inc. has not

imposed any quality standards over a product bearing its trademark and has abandoned the

trademark.    People who have read the AGPL license and understands that Neo4j Inc. claims to

own the trademark but the software is licensed by a third party and that the source code to the

software may be modified in any fashion and there are no quality controls in the license and

owner of the software imposes no quality controls over use or modification of the software.


                    People knowledgeable of facts:

                    John Mark Suhy
                    703-862-7780
                    jmsuhy@purethink.com
                    Alexandria, VA


Discovery is ongoing, Responding party reserves the right to supplement its response to this

interrogatory.

Dated: November 22, 2019                        _____
                                                Adron W. Beene SB# 129040
                                                Adron G. Beene SB# 298088
                                                Attorney At Law
                                                1754 Technology Drive, Suite 228
                                                San Jose, CA 95110
                                                Tel: (408) 392-9233
                                                Fax: (866) 329-0453
                                                adron@adronlaw.com

                                                Attorney For Defendants and Counter
                                                Claimants PURETHINK LLC, a Delaware
                                                Limited Liability Company, IGOV INC., a
                                                Virginia Corporation, and JOHN MARK
                                                SUHY

PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF
INTERROGATORIES

1

## Verification

2

3
I, John Mark Suhy, am a defendant, and an officer for defendants Purethink LLC and IGOV Inc. in the above cause of action. I have read the following:

4
**PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF INTERROGATORIES TO PURETHINK LLC AND IGOV INC.**

5

6
I am familiar with the contents of the above.

7

8
I declare under penalty of perjury under the laws of the United Stated of America that the

9
foregoing responses are true and correct, except as to those matters which are therein stated to be

10
on information or belief, and as to those matters, I believe them to be true.

11

12
Signed in Tampa Bay, Florida on November 22, 2019.

13

14
John Mark Suhy

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Re:     *NEO4J, INC. v. PURETHINK LLC et al.* UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, Case No. 5:18-cv-7182 EJD

PROOF OF SERVICE

I am a citizen of the United States. My business address is 1754 Technology Drive, Suite 228, San Jose, CA 95110. I am over the age of eighteen years and not a party to the within action. On the date stated below, I served the attached:

**PURETHINK LLC AND IGOV INC.'S AMENDED RESPONSE TO NEO4J, INC.'S FIRST SET OF INTERROGATORIES TO PURETHINK LLC AND IGOV INC.**

On the parties listed below at the addresses listed:

**to NEO4J, INC., a Delaware corporation, attorneys of record:**

Jeffrey M. Ratinoff
jratinoff@hopkinscarley.com
John V. Picone III
jpicone@hopkinscarley.com
Hopkins & Carley, a Law Corporation
70 South First Street
San Jose, CA 95113
Telephone (408) 286-9800
Facsimile (408) 998-4790

__ (By Mailing) I caused a true copy of each document identified above to be placed in a sealed envelope with first class postage affixed. Each such envelope was deposited for collection and mailing that same day in the ordinary course of business in the United States Mail at San Jose, California.

___(By Personal Service) I caused a true copy of each documents identified above to be delivered by hand to the offices of each addressee above.

___(By Overnight Delivery) I caused a true copy of each documents identified above to be sealed in an envelope to be delivered to an overnight carrier with delivery fees provided for, addressed of each addressee above.

_X__ (By Electronic Service) by transmitting via my electronic service address (adronjr@adronlaw.com) the document(s) listed above to the persons at the e-mail addresses set forth above.

        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.


Dated: 11-22-19                              _____

                                                    Adron G. Beene

**EXHIBIT F**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA


NEO4J, INC., a Delaware
corporation; and NEO4J SWEDEN
AB, a Swedish corporation,

        Plaintiffs,

                                  CASE NO.
vs.                             5:18-cv-07182-EJD

PURETHINK, LLC, a Delaware
limited liability company;
IGOV, INC., a Virginia
corporation; and JOHN MARK
SUHY, an individual,

        Defendants.
_____/

REMOTE VIDEOTAPED DEPOSITION OF
JOHN MARK SUHY
as representative of IGOV, INC.
pursuant to Federal Rule of Civil Procedure 30(b)(6)


**Confidential Pursuant to Protective Order**


DATE:         October 22, 2020

TIME:         9:12 a.m.

LOCATION:    Via videoconference


REPORTED BY:  BENJAMIN GERALD
             California CSR No. 14203
             Washington CSR No. 3468

1

1    email address neo4j@igovsol.com; is that right?

2         A.  That never replaced the info@igovsol.com.

3         Q.  I see.  Let me ask that a different way.

4              At any time in -- in the operations of iGov,

5    did -- did the company use an email address,

6    neo4j@igovsol.com?

7         A.  Yes.

8         Q.  Okay.  And what -- you said it didn't replace

9    that, so what was the use of the neo4j@igovsol.com?

10        A.  That was for any questions relating to the

11   open-source Neo4j project around graphs.  Anything where

12   somebody would want consulting around that project.

13        Q.  Okay.  You didn't receive authorization from

14   Neo4j, the company, to use neo4j@igovsol.com as an email

15   address, did you?

16        A.  No.  I should point out that it wasn't actually

17   an email address; it was a catchall.  You can make email

18   address x1234@igovsol.com, and it will still come to a

19   catchall account.

20        Q.  Okay.  But if someone addressed a message to

21   neo4j@igovsol.com, that would go to iGov?

22        MR. STARR:  I'm sorry.  I -- I need to make an

23   objection in there.  I don't want to ruin your flow.

24             But John, if I'm objecting, please don't talk.

25   Just let me finish.  We can't talk over each other on

                                                          41

1   website and it has not been corrupted or altered in any

2   way, the -- the 10/18/2020 date, is that when you

3   remember making the change?

4       A.  Well, I don't remember making the change.  I

5   don't remember the date of making the change.  I just

6   remember I made it.

7       Q.  Okay.  And this doesn't help -- help you

8   remember when you made it?

9       A.  No, this does not.

10      Q.  Okay.  Well, we looked at Tab 123, and assuming

11  the date on that was accurate, that was October 2nd --

12  I'm sorry.  That's -- that's wrong.  Strike that.

13          Mr. Suhy, are you familiar with the term

14  "drop-in replacement" as it's used in a computer-science

15  context?

16      A.  I've never heard an official "drop-in

17  replacement" term used in computer science.

18      Q.  Okay.  What does the term "drop-in replacement"

19  mean to you?

20      A.  What does the term "drop-in replacement" --

21  well, it means to me -- in the context of -- of what?

22      Q.  Graph database software.

23      A.  Are you specifically talking about my use of

24  using "drop-in replacement" of ONgDB being a drop-in

25  replacement for Neo4j?

                                                        120

    Q.  Yes.  I'm going to get around to it.

    A.  Okay.  All right.

        So -- so that term means -- to me, it's that
it's using -- as long as you're using the same
underlying core, then you can easily switch back and
forth the data, the version of Cypher that you're using,
will all work the same across different versions.

        So for example, Neo4j Core, which you can call
Community -- sometimes I hear it both ways -- is a
drop-in replacement for Neo4j Enterprise.  ONgDB, since
it's using Neo4j Core in superset, is also a drop-in
replacement.

        So as an example, in certain versions, you can
copy the data directories directly over to the -- to
between the two software instances.  So Neo4j Enterprise
Commercial, for example, or Neo4j Enterprise AGPL over
to ONgDB, and those data files would work.  In other
instances, you can actually do an export and an import,
and since you're using the same Cypher versioning, you
can do the same things that you would -- do queries and
whatnot.  It would be -- it would be -- wouldn't be a
big change.

        So for example, something that's not a drop-in
replacement would be changing from Neo4j to ArangoDB or
to TerminusDB, which are two different open-source graph

                                                    121

1   databases.

2       Q.  Right.  So there's a lot there, so let's try to

3   unpack it.

4           So you're not saying that -- that the software

5   packages are identical?  You're not saying that?

6       A.  The only time that they would be identical

7   would be when they -- when AGPL -- like, if you

8   compiled -- if you compiled -- the source would be

9   identical for certain versions of Neo4j Enterprise AGPL,

10  but remember, there's source and then there's object

11  code, the compiled code.

12      Q.  Right.  So you're saying only under certain

13  circumstances would the Neo4j Enterprise be identical to

14  you ONgDB?

15      A.  Well, it depends what "identical" means.  I

16  need you to define.  Is it -- identical how?

17      Q.  Like, the code.  The code's identical?

18      A.  Yeah, the source code is identical in certain

19  versions, and I'm trying to think if -- because the

20  source code itself would be identical for certain

21  versions, in some versions, there's changes.  Like for

22  example, you could never be identical source when we

23  don't have the source after a version.  But before a

24  certain version, when it was still open, they're

25  identical, the source code.

                                                        122

1                         CERTIFICATE
2          I, BENJAMIN GERALD, Certified Shorthand Reporter,
3   Certificate No. 14203, for the State of California do
4   hereby certify:
5          That prior to being examined, the witness named in
6   the foregoing deposition was by me duly sworn to testify
7   to the truth, the whole truth, and nothing but the truth
8   in the within-entitled cause;
9          That said deposition was taken shorthand at the
10  time and place herein named;
11         That the deposition is a true record of the
12  witness's testimony as reported to the best of my
13  ability by me, and was thereafter transcribed to
14  typewriting by computer under my direction;
15         That request [X] was [ ] was not made to read and
16  correct said deposition.
17         I further certify that I am not interested in
18  the outcome of said action, nor am I connected with, nor
19  related to any of the parties in said action, nor to
20  their respective counsel.
21         Witness my hand this 29th day of October, 2020.
22
23                    _____
24                    BENJAMIN GERALD, CSR No. 14203
                      STATE OF CALIFORNIA
25

                                                        261

**EXHIBIT G**

📖 **fossas** / **commons-clause**

<> Code    ⊙ Issues  `7`    ⑫ Pull requests  `2`    ▷ Actions    ▥ Projects    ⊙ Security    ⟋ Insights

# Preventing specialized consultants? #4

[New issue]

⊙ Closed    **saibotsivad** opened this issue on Aug 22, 2018 · 15 comments



**saibotsivad** commented on Aug 22, 2018

The section defining "sell" raised a question:

> "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (including without limitation fees for hosting or consulting/ support services related to the Software), a product or service whose value derives, entirely or substantially, from the functionality of the Software.

The relevant section of that paragraph being the following:

> to provide to third parties, for a fee … consulting/ support services related to the Software

That sounds like I couldn't offer consulting specializing in software that uses the Commons Clause.

For example, if this clause were applied to something like MySQL, I wouldn't be able to offer services like:

- Pay me X$ and I will install and configure a MySQL server.
- Pay me X$ and I will fix your broken MySQL server.
- Pay me X$ and I will consult you on what sort of MySQL server you need for your business.

Question: is preventing examples like I listed one of the goals of the Commons Clause?

I think the motivation for the Commons Clause in general is well explained, but it would be useful to expound a bit more on what the reasoning is in having the "consulting/support" clause. More details would be helpful in understanding motivation and intent for companies who want to use this license addendum.

**Assignees**

No one assigned

**Labels**

None yet

**Projects**

None yet

**Milestone**

No milestone

**Linked pull requests**

Successfully merging a pull request may close this issue.

None yet

**7 participants**

    

 6

 **saibotsivad** commented on Aug 22, 2018                          Author

For a more at-hand example, Redis Labs is adding the Commons Clause to certain modules, for example RedisSearch.

My interpretation of the "consulting/support" clause of the text would be that the use of the Commons Clause disallows a consultancy engineer offering services like:

- Pay me X$ and I will add and configure RedisSearch in your existing Redis server setup.
- Pay me X$ and I will consult you on whether you need the RedisSearch module and how you will want to configure it.

 **heathermeeker** commented on Aug 23, 2018

Consulting would not be "a product or service whose value derives, entirely or substantially, from the functionality of the Software." The value of consulting doesn't derive from what the software does ("functionality").

 **saibotsivad** commented on Aug 23, 2018                          Author

So are you saying that the Commons Clause is *not* meant to prevent the examples I listed?

The structure of the sentence I quoted seems to tie "consulting/support" to the word "sell" in some way, and I'm not sure how else to interpret it other than forbidding the examples I listed.

Can you write a bit about what that parenthesis is trying to prevent? That would probably help me understand it better.

 6

**xizhao** commented on Aug 23, 2018                          Contributor

2/4/2021
Preventing special use consultants as issue #4 fossas/commons-clause GitHub
Case 5:18-cv-07182-EJD   Document 109-1   Filed 02/16/21   Page 43 of 80



@saibotsivad Yes, I believe so, as the value of consulting is additive, not "substantially" the same value.

If this is a major area of confusion for people, we can clarify this in the FAQ.

👍 1



**heathermeeker** commented on Aug 23, 2018

Bear with a legal technicality, but the Commons Clause is not a restriction on performing services -- it can't be. The license grant for the software is in the underlying license, and the Commons Clause claws back one kind of commercial use right. So, picture the original grant as a Venn diagram circle, and the excluded right to Sell as a little circle inside that. Providing services was not in the big circle in the first place, so the small circle can't change it.

But perhaps you are thinking, can I use the software in order to provide my services? That's a reasonable question. In other words, is the right to use the software in support of professional services -- like development, maintenance, or analysis, clawed back by the exclusion? No, because that use is not a service that derives its value from the functionality of the software. Your professional services derive their value from your expertise, not what the software does. The exclusion has to cover services, though, or it would have a big loophole. Offering the software via SaaS as a substitute for distributing it, and selling that access, is the main kind of service that is meant to be limited. Your consulting is not an economic substitute for the software. SaaS is.

Of course, I'm not your lawyer, so technically I can't give you advice. The clause means what it means, and although I led the drafting of the clause, that doesn't mean I have authority to interpret documents. That's not how the law works -- in the end, only a court has that power, no matter who wrote the document. But I hope to be helpful and dispel any confusion.

👍 3    ♡ 3



**xizhao** commented on Aug 23, 2018                    Contributor

@heathermeeker, I suggest we can add a quick clarification in the FAQ and link to this Github Issue as I've seen this pop up before on HN and Twitter.

Preventing special documentations issue #4 · fossas/commons-clause · GitHub



**mpdehaan** commented on Aug 24, 2018

I've shared on twitter, but here's some long-form comments on why I think this is a good idea to *start* here, but the terms about "substantial value" may possibly block people that, for instance, are using a product as a key internal component but are not reselling.

I think the language to describe what reselling to third parties is should be more explicit.

For instance, making a hosted-RDS type solution of a database is reselling, but using that database inside your .com petstore isn't.

As such I can't use this *NOW*, but want to use something like this. Definitely up for a larger conversation. Anyway, see blog post:

https://medium.com/@michaeldehaan/why-open-source-needs-new-licenses-d2d9d819a10



**mpdehaan** commented on Aug 24, 2018 • edited ▾

Further clarification is I don't really want to *block* consulting either, consultants are great for patches and spreading software sometime, but I would like to encourage them (in my case) to buy a commercial license. They are making money off the thing, so they should be able to share some of the funds with that thing.

 1



**Lmpessoa** commented on Aug 24, 2018

I'm also considering switching from a regular open source license to Commons Clause but I also don't like the inclusion of "consulting/support" in this restriction. As well as **@mpdehaan** I would like to encourage people to use my software even to offer consulting/support services and (one I haven't seen explicitly covered here) educational courses. I believe these encourage people to use the software and even work as advertising for it. What we should be wary of is selling the software itself.

Thus, it is my opinion only, of course, that a license in these terms should restrict only the "right" to sell/rent the software itself, derivative works (from using the provided source code) or other services or applications embedding the software subject to the license and thus exclude completely the restriction to offer support/consulting services in any way.

I believe we need new "open-source" licenses that may help sustain this development model and this is a great initiative but I also believe it needs more discussing. After this, I may think of drafting my own "open-source except for sale" license and see how it goes but always keeping an eye here.

 2

 **saibotsivad** commented on Aug 27, 2018                                          Author

@heathermeeker says:

> Your professional services derive their value from your expertise, not what the software does.

But if consulting/support is excluded because of the phrase "from the functionality of the Software" then why even have "consulting/support" in the CC at all? Doesn't it just add confusion?

For me, as a software consultant, offering consultancy specializing in software that uses the CC is a risk because 1) the general reading implies that some sort of limitation on consultancy exists, and 2) trying to get an answer on interpretation through a court cost is crazy expensive.

The only interpretation I have been able to make is that the intended desire of the Commons Clause is to *prevent* consulting/support services specific to the Software, e.g. the examples I listed originally.

Maybe that's my failure to understand English legalese, but if that's not the intent I would love to hear more about what the intent of the "consulting/support" phrase actually *is*, instead of what it *is not*.

 2

 **mpdehaan** commented on Aug 30, 2018

Here's the approach that I personally arrived at (trademarks, not copyright). Thanks to Adam Jacob from Chef for being a good sounding board:

https://gist.github.com/mpdehaan/6c1bf2314ce89cac961b31da36c60252

While I like the idea of authors and communities having more control, it is clear there are some that are religiously opposed to new licenses, and that *does* suck. However I sympathetize with legal departments who have preapproved license lists and can see that being an adoption barrier.

So I'm stuck between what I feel is right and smart vs what might not cause a lot of blowback.

This is possibly a good middle ground.

 **Lmpessoa** commented on Aug 30, 2018

**@mpdehaan** I liked this approach. Instead of preventing a person from offering consulting/supporting services, you prevent them from using the trademark so they can barely advertise they do unless they support the project and offer to list those supporting in order to even help them be found by those who need. Very clever!

However, this approach seems only to cover consulting/supporting and not derivative works made using your code. You mention they are on their own and have to rebrand the app but they are still able to sell the resulting software commercially either directly or embedded as another product or service and you are still maintaining their source of revenue without getting a dime for. That's what I wanted to avoid using CC.

As I said, I like your approach and I'd like to follow it but I wanted to have it structured in the form of a new generic open-source license anyone could adopt. I'm thinking about pausing my project to work on this.

 **xizhao** commented on Sep 20, 2018                                    `Contributor`

I think this has been substantially discussed here for now.

I'm adding some clarifications to the FAQ that should address this. I'm linking this discussion in the FAQ and closing this issue.

 1      2

 **xizhao** closed this on Sep 20, 2018

 **kortschak** commented on Oct 2, 2018

This has been closed, but the question above "Maybe that's my failure to understand English legalese, but if that's not the intent I would love to hear more <span style="color:#1a73e8">about</span> what the intent of the "consulting/support" phrase actually *is*, instead of what it *is not*." has not been answered. That would go a long way towards clarifying this concerns here.

 4

 **miraculixx** commented on Oct 8, 2018 • edited ▾

I came here from the link provided in the FAQ at https://commonsclause.com. I was specifically trying to understand what the Commons Clause means in relation to the very type of services asked in this thread. Unfortunatley this thread does not do anything to clarify, nor does the FAQ. All they do is confirm that there is an issue, but no resolve.

I am guessing that the author of the license wanted to add a provision against "smart" vendors who might claim to host the software for free but then charge for support/consulting instead, effectively just mincing words.

On the other hand, the reference to consulting/support services in the clause is the source of confusion and does nothing to provide better protection against such providers - they could always claim that their consulting/support services does not derive its value from the functionality of the Software itself and thus is not affected by the clause anyway. Also "product or service" already covers the case of a service (including support services) that is merely circumventing "hosting".

As a constructive proposal I suggest to remove the consulting/support services part from the Commons Clause as follows (IANAL):

*For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration (including without limitation fees for hosting Software), a product or service whose value derives, entirely or substantially, from the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.*

Effectively this change would allow those providing consulting/support to continue to offer services as described by the original question, without taking away from the original intent.

 7

Case 5:18-cv-07182-EJD Document 109-1 Filed 02/16/21 Page 48 of 80



**ComodoMelih** mentioned this issue on Nov 14, 2020

**Stop calling it Open Source if you only provide Commons Clause license**

ComodoSecurity/openedr#4



**EXHIBIT H**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


NEO4J, INC., a Delaware          ) CASE NO.
corporation, and NEO4J          ) 5:19-CV-06226-EJD
SWEDEN AB, a Swedish            )
corporation,                   )
                               )
            Plaintiffs,         )
                               )
    vs.                         )
                               )
GRAPH FOUNDATION, INC., an      )
Ohio corporation,               )
GRAPHGRID, INC., an Ohio        )
corporation, and ATOMRAIN       )
INC., a Nevada corporation,     )
                               )
            Defendants.         )

REMOTE VIA ZOOM


30(b)(6) DEPOSITION OF NEO4J INC


BY BRAD NUSSBAUM


_____
                9:17 A.M. PDT
          FRIDAY, OCTOBER 16, 2020

_____



By:  Denise Myers Byrd, CSR 8340, RPR

1

1    A.  No.  This case was the first time I found out

2  that this existed.

3    Q.  Are you sure about that?

4    A.  Yeah, I think it's pretty recent.

5    Q.  Do you remember the first time that you saw

6  these trademark guidelines?

7    A.  I think we looked at them when we got the case

8  filing that Neo sent us.  It's the first time that I

9  really remember seeing all this.

10    Q.  Okay.  You said remember, so before you said

11  you're sure -- well, let me strike that.

12    So you're sure you didn't see these trademark

13  guidelines prior to the filing of the lawsuit?

14    A.  Yeah, I don't remember these guidelines before.

15    Q.  I'm not asking whether you remember.  I'm

16  asking you whether you've seen them or not.

17    Your testimony is -- correct me if I'm wrong,

18  your testimony is that you had not seen these guidelines

19  prior to the filing of the lawsuit; is that correct?

20    A.  Okay, so I guess it's assumed that from what I

21  remember.  So, yeah, no, I have not seen these

22  guidelines before the start of the lawsuit.

23    Q.  Since the lawsuit was filed, have you reviewed

24  these guidelines?

25    A.  I think on the date that the lawsuit was filed

152

1    I saw them.

2        Q.  I'm asking did you actually read them after you

3    became aware of them?

4        A.  Yes, I believe, but, yeah, I read through --

5    not -- I don't think it was this version.  I don't know

6    if it was this version, but I read through a version.

7    It was a lot less than this when I first read it at the

8    time of our case, I think, but I don't know.

9        Q.  Okay.  So I'm just going to make this clear for

10   the record.  This was attached to the complaint as an

11   exhibit which was filed on October 1, 2019, so that's

12   when the complaint was filed and it would have been the

13   first time that you could have possibly reviewed this in

14   the complaint.  So you said in reviewing the case file

15   you saw these guidelines.  So there's a different

16   version of guidelines other than these that you

17   reviewed?  Is that your testimony?

18       A.  I think that whatever version was attached is

19   what we read.  So this doesn't -- yeah, it was a long

20   time ago when we read it.  I don't remember exactly what

21   was in here.

22       Q.  Do you have any reason to believe this wasn't

23   the version that you reviewed after the case was filed?

24       A.  Do I have any -- I'm sorry, I'm not sure what

25   the question is.

153

1   them what would be okay in terms of doing a fork?

2       A.  Unfortunately, because they caused the

3   confusion, they didn't have great answers.  They were

4   sort of the source of it all.

5       Q.  That wasn't my question.

6           My question was did you ever think to go to

7   Neo4j to ask how you can refer to Neo4j as a project?

8       A.  No.  No.  Because I think that they had moved

9   to a place -- I don't know.  Everything -- I don't think

10  there was really much to be -- to be done in terms of,

11  like, how do we talk about the project, Neo4j Community

12  versus Enterprise.  I don't know.  We didn't think -- we

13  didn't think about it.

14      Q.  And you never went to their website to see if

15  there was any guidance on how to refer to Neo4j as a

16  fork?

17      A.  No.  I don't see why that -- I don't see why

18  they would really have an answer on it.

19      Q.  Well, but you remember those trademark

20  guidelines you saw, right, that you looked at?

21      A.  Yeah.

22      Q.  So at least as of when the complaint was filed,

23  Neo4j provided guidance to people that fork Neo4j

24  software, correct?

25          MR. PERNICK:  Objection; misstates the

                                                        181

 1    document.  The document speaks for itself.

 2            THE WITNESS:  I think we said what we said

 3    because it made sense of how to describe the project.

 4    BY MR. RATINOFF:

 5        Q.  But that's not the question.

 6            So my question is, there is guidance that

 7    you're now aware of on Neo4j's website explaining how to

 8    refer to Neo4j as a fork, correct?

 9        A.  So -- sorry.  Are you saying, like, as of today

10    there is guidance?

11        Q.  Yes.

12        A.  Yeah, as of today there is guidance on Neo4j's

13    website that does talk about, like, how to talk about a

14    fork of Neo4j, which is interesting that they put that

15    up there, I guess.

16        Q.  Okay.  And you also testified earlier that you

17    read those trademark guidelines around sometime after

18    the complaint was filed, right?

19        A.  When the case was filed, yeah.

20        Q.  And then you said you testified I believe you

21    went to Neo4j's website and actually found the

22    guidelines, right?

23        A.  Yes, uh-huh.

24        Q.  And you read the guidelines at that time?

25        A.  Yes.

                                                    182

1                    COURT REPORTER'S CERTIFICATE

2

3          I, DENISE MYERS BYRD, CA CSR 8340, RPR, the officer

4   before whom the foregoing proceeding was conducted, do hereby

5   certify that the witness whose testimony appears in the

6   foregoing proceeding was duly sworn by me; that the testimony

7   of said witness was taken down by me in stenotype to the best

8   of my ability and thereafter transcribed under my supervision;

9   and that the foregoing pages, inclusive, constitute a true and

10  accurate transcription of the testimony of the witness.

11         Before completion of the deposition, review of the

12  transcript [X] was [ ] was not requested.  If requested, any

13  changes made by the deponent (and provided to the reporter)

14  during the period allowed are appended hereto.

15         I further certify that I am neither counsel for,

16  related to, nor employed by any of the parties to this action,

17  and further, that I am not a relative or employee of any

18  attorney or counsel employed by the parties thereof, nor

19  financially or otherwise interested in the outcome of said

20  action.  Signed this 9th day of October 2020.

21

22

23

                    Denise Myers Byrd

24                  CSR 8340, RPR, CLR 102409-02

25

                                                             253

**EXHIBIT I**

1   John V. Picone III, Bar No. 187226
    jpicone@hopkinscarley.com
2   Jeffrey M. Ratinoff, Bar No. 197241
    jratinoff@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 S First Street
5   San Jose, CA  95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:     (408) 286-9800
8   Facsimile:     (408) 998-4790

9   Attorneys for Plaintiffs
    NEO4J, INC. and NEO4J SWEDEN AB
10

11                  UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13  NEO4J, INC., a Delaware corporation; and      CASE NO.  5:19-cv-06226-EJD
    NEO4J SWEDEN AB, a Swedish
14  corporation,                                  [PROPOSED] STIPULATED JUDGMENT
                                                  AND PERMANENT INJUNCTION
15              Plaintiffs,

16        v.

17  GRAPH FOUNDATION, INC., an Ohio
    corporation, GRAPHGRID, INC., an Ohio
18  corporation, and ATOMRAIN INC., a
    Nevada corporation,
19
                Defendants.
20

21          Plaintiffs Neo4j, Inc. and Neo4j Sweden AB (collectively "Neo4j" or "Plaintiffs"), and

22  Graph Foundation, Inc. ("GFI"), AtomRain and GraphGrid (GFI, AtomRain and GraphGrid

23  collectively "Defendants" and with Plaintiffs collectively "Parties"), through their undersigned

24  counsel, hereby stipulate and move this Court for entry of judgment and a permanent injunction

25  ("Stipulated Judgment"):

26          Accordingly, IT IS HEREBY ADJUDGED AND ORDERED that:

27          1.      Neo4j and Defendants have entered into a Confidential Settlement Agreement to

28  resolve this action and these parties have agreed on terms of this Stipulated Judgment.

2. On Plaintiffs' claims for (a) trademark infringement, 15 U.S.C. § 1114; (b) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (c) federal unfair competition, 15 U.S.C. § 1125(a); (d) state unfair competition, Cal. Bus. Prof. Code §§ 17200 et seq.; (e) violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b); and (f) breach of license agreement, Plaintiffs shall recover the injunctive and equitable relief against Defendants herein.

3. Defendants affirm and acknowledge that Neo4j, Inc. is the rightful owner in the United States of all right, title and interest in and to U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Defendants affirm and acknowledge that the Neo4j® Mark and its registration are valid and subsisting. Defendants agree and affirm that they will not at any time or for any reason challenge either the validity of the Neo4j® Mark, its registration or the ownership thereof, or assist any third party in challenging the validity of the Neo4j® Mark or the registration thereof.

4. Defendants also declare and affirm that Neo4j, Inc. is the owner of U.S. Trademark Application No. 90056224 for the word mark "NEO4J." Defendants affirm and acknowledge that the word mark "NEO4J" subject to that application valid and subsisting. Furthermore, Defendants agree and affirm that they will abandon all efforts to oppose this application and will not challenge the validity or ownership thereof, or the validity or ownership of any resulting registration thereof, or assist any third party in opposing this application or challenging the validity or ownership of the mark subject to this application or the validity of any resulting registration thereof.

5. Defendants further declare and affirm that Plaintiffs' inclusion of the Commons Clause in the Neo4j Sweden Software License, and example of which is attached hereto as Exhibit A, is valid; and Defendants' removal, replacement and/or omission thereof, and related copyright management information from source code to which Plaintiffs hold the copyright, was not authorized by Plaintiffs, allowed by the terms of the Neo4j Sweden Software License and violated the DMCA, 17 U.S.C § 1202(b) ("DMCA Violation").

6. Defendants agree and affirm that they will not assist or encourage John Mark Suhy, PureThink LLC and iGov Inc. or any third party in challenging the validity of the Neo4j Sweden

Software License, or in the copying and distribution of source code with a DMCA Violation, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6 and any subversions or derivatives thereof, or that has been subject to the Neo4j Sweden Software License, including Neo4j® Enterprise Edition 3.4, Neo4j® Enterprise Edition 3.5, or any subsequent versions, subversions, or derivatives thereof.

7. Defendants, as well as their shareholders, directors, officers, agents, employees, parents, subsidiaries, successors and assigns, and all those acting under their direction, control or on their behalf, as well as any entity that is spun-off from or formed by them, or acquires or merges with any Defendant are hereby permanently enjoined as follows:

(a) Defendants may not make further use of, or fork any source code first released under the Neo4j Sweden Software License, including Neo4j® Enterprise Edition 3.4, Neo4j® Enterprise Edition 3.5, or any subsequent subversions or derivatives thereof.

(b) Defendants shall not offer for sale, advertise, promote, represent or refer to ONgDB as follows:

    i. A free and open source drop-in replacement of Neo4j® Enterprise Edition distributions with the same version number;

    ii. A drop-in replacement for commercially licensed Neo4j® Enterprise Edition;

    iii. A drop-in replacement for Neo4j® Enterprise Edition under the GNU Affero General Public License, version 3 ("AGPLv3"), without limitations on causal cluster instances, cores, or production usage;

    iv. A fork of the Neo4j® graph database platform that adds enterprise code back into Neo4j® core; and

    v. One hundred percent (100%) free and open source version of Neo4j® Enterprise Edition version 3.4, Neo4j® Enterprise Edition version 3.5, or any version of Neo4j® Enterprise Edition released by Neo4j thereafter.

(c) Defendants shall not represent that Neo4j Sweden AB's inclusion of the Commons Clause to the license governing Neo4j® Enterprise Edition violated the terms of AGPLv3, or make similar statements.

(d)     Defendants shall not represent that the Free Software Foundation (FSF) or that any government agency determined and/or confirmed that (a) the inclusion of the Commons Clause to any license governing Neo4j® Enterprise Edition violated the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any software license governing Neo4j® Enterprise Edition and/or ONgDB.

(e)     Defendants may only make further use of the following publicly available open source code, subject to the terms of their respective open source licenses: (i) Neo4j Community Edition Source Code under the GNU General Public License, version 3 ("GPL"); (ii) Neo4j® Enterprise Edition version 3.2.14 source code released under the AGPLv3; (iii) Neo4j® Enterprise Edition version 3.3.10 source code released under the AGPLv3; (iv) Neo4j® Enterprise Edition version 3.4.0.RC02 source code released under the AGPLv3.  Nothing herein, however, shall be construed as a license or otherwise entitle Defendants to use any source code, patches or source code commits for Neo4j® Enterprise Edition version 3.3 or Neo4j® Enterprise Edition version 3.4 that were first released under the Neo4j Sweden Software License.  Further, nothing herein shall be construed as a license or otherwise entitle Defendants to use or fork, any of Plaintiffs' source code that was first released as Neo4j® Enterprise Edition version 3.5 or otherwise under the Neo4j Sweden Software License, including but not limited to, all beta releases, release candidates, production releases, stable releases, and official releases, or any subsequent subversions, patches or derivatives thereof.

(f)     Defendants may not make representations about the AGPLv3, and shall instead refer to the Free Software Foundation's website for any interpretation of its meaning.

(g)     Defendants may continue to use the name "ONgDB" for its products so long as (i) it states on any website and/or any public statement that the name stands for "Open Native Graph DB" and removes all references to ONgDB in reference to Plaintiffs and the Neo4j® Mark, other than what is allowed in Paragraph 7(r); and (ii) restarts the version number for ONgDB to version 1.0.

(h)     Within three (3) days of entry of this Stipulated Judgment, Defendants shall permanently remove, take down, destroy and prevent further access to all source code, object code,

binaries, build files, build scripts and distributions from its repositories located at https://github.com/graphfoundation and https://hub.docker.com/r/graphfoundation that contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6, and any subversions thereof.

(i)     Within seven (7) days of entry of this Stipulated Judgment, Defendants shall permanently remove, take down, destroy and prevent further access to any version of ONgDB (or any similar software created and/or maintained by Defendants that is within their possession, custody or control) that contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6 and any subversions or derivatives thereof.  This removal and destruction shall be effectuated regardless of where that code resides, e.g., Defendants' websites (i.e., https://www.graphfoundation.org/projects/ongdb/, https://www.graphgrid.com/gdp/, https://www.graphgrid.com/ongdb/, and https://www.atomrain.com/products/, and any the Content Delivery Services invoked therein), AWS, AWS Gov Cloud, Docker, GitHub and/or any other source code repository or host service.

(j)     Within ten (10) days of entry of this Stipulated Judgment, Defendants shall identify in writing any known third-party commercial and/or governmental use of any version of ONgDB containing any Neo4j Enterprise Edition source code with a DMCA Violation, that was first released subject to the Neo4j Sweden Software License, or not otherwise permitted for use by Paragraph 7(e).

(k)     Defendants shall not offer any development, support, maintenance or hosting services for any version of ONgDB that includes any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6 and any subversions or derivatives thereof.  Defendants can offer consulting services for commercial installations of Neo4j® software, but only where the third party receiving such services has a commercial license and has fully paid the commercial license fees to Plaintiffs. Should Defendants continue to offer

ONgDB consulting services alongside consulting services with Neo4j® software as permitted herein, then any advertising of Defendant's services related to Neo4j® software is subject to adhering to Plaintiffs' then-current Trademark Policy.

(l)  Defendants will not make any negative or disparaging comments or representations about Plaintiffs, and their founders, officers, directors, investors, employees, customers, products, partnership practices, licensing practices or pricing.

(m)  Defendants will take down, delete and otherwise remove all webpages, posts on GitHub, discussion forums, social media posts and blog posts (and all links thereto) that they own, control, or have the ability and/or right to remove wherein they (i) reference Plaintiffs, their licensing policies and practices, (ii) make the same or similar statements referenced in Paragraph 7(b) above, or (iii) use the Neo4j® Mark. Defendants also shall not use the Neo4j® Mark as a hashtag on their respective websites or in any posts made on Twitter, Facebook or similar social media sites.

(n)  Defendants shall not make use of, or direct others to use, any of Plaintiffs' documents or materials, such as software documentation, guides, manuals, change logs, release notes and/or other publicly available technical information to create, maintain, market, use, and/or sell ONgDB (or the equivalent). Any links to Plaintiffs' documentation in Defendants' software shall be removed, or replaced with ONgDB documentation, bearing in mind that Plaintiffs' documentation is licensed under the Creative Commons Attribution-NonCommercial-ShareAlike 4.0 International (CC BY-NC-SA 4.0) and its use by third parties, such as Defendants and their customers, would be restricted to noncommercial purposes.

(o)  Defendants shall not make any statement and/or representations to any third party, affirmatively or in response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j® Enterprise Edition source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by Paragraph 7(e).

(p)  Defendants shall not have any expressed or implied license to use and shall not make any further use of any of Plaintiffs' trademarks, including U.S. Trademark Registration

No. 4775253 for "CYPHER," Trademark Registration No. 4784280 for "NEO4J," U.S. Trademark Registration No. 4824877 for "NEO TECHNOLOGY," U.S. Trademark Registration No. 5250026 for the Neo4j Logo, and U.S. Trademark Application No. 90056224 for "NEO4J" (collectively "Plaintiffs' US Marks"), other than what is permitted in Paragraph 7(r).

(q)     Defendants (and those acting in concert with them) will also permanently remove Plaintiffs' US Marks from their websites, marketing literature, social media sites, and any other public facing resource, including all software interfaces, including, but not limited to, GUIs and command lines.

(r)     If Defendants continue to attempt to fork any of Plaintiffs' source code subject to the terms herein, their description of that source code and/or software, if it includes the Neo4j® Mark, may only be made by the following statement: "ONgDB (or any equivalent) is an independent fork of [Neo4j® Enterprise Edition version 3.2.14, Neo4j® Enterprise Edition version 3.3.10, and/or Neo4j® Enterprise Edition Source Code version 3.4.0.RC02 licensed under the AGPLv3 and/or Community Edition licensed under the GPL].  ONgDB and [Defendants to insert name of specific Defendant(s)] is not affiliated in any way with Neo4j, Inc. or Neo4j Sweden AB. Neo4j, Inc. and Neo4j Sweden AB do not sponsor or endorse ONgDB and [Defendants to insert name of the specific Defendant(s)].  Neo4j Sweden AB is the owner of the copyrights for Neo4j® software and commercial use of any source code from Neo4j® Enterprise Edition beyond [Neo4j® Enterprise Edition version 3.2.14, Neo4j® Enterprise Edition version 3.3.10, and/or Neo4j® Enterprise Edition Source Code version 3.4.0.RC02] is prohibited and could subject the user to claims of copyright infringement."

8.     Neo4j, Inc. and AtomRain Inc. agree that the Neo4j Solution Partner Agreement between AtomRain Inc. and Neo4j, Inc. was previously terminated and no surviving terms remain in effect or enforceable other than any confidentiality obligations that remain.

9.     As between Plaintiffs, on one hand, and Defendants, on the other, each shall bear its own costs and attorneys' fees except as specified below in Paragraph 11.

10.     The Parties waive any rights to appeal this Stipulated Judgment.

/ / /

11. This Stipulated Judgment adjudicates all claims in this litigation and is a final judgment. However, the Court expressly retains jurisdiction over any action to enforce this Stipulated Judgment and the underlying Confidential Settlement Agreement concurrently entered into by the Parties herewith. In any such action, the prevailing party shall be entitled to reasonable attorneys' fees and costs. The Parties request that in any future action to enforce or resolve any disputes regarding this Stipulated Judgment and the underlying Confidential Settlement Agreement, the Court refer the matter to Hon. Edward Davila for all purposes provided he is available.

Dated: February 15, 2021

HOPKINS & CARLEY
A Law Corporation

By: */s/ Jeffrey M. Ratinoff*
    John V. Picone III
    Jeffrey M. Ratinoff
    Attorneys for Plaintiffs
    NEO4J, INC. and NEO4J SWEDEN AB

Dated: February 15, 2021

BERGESON, LLP

By: */s/ John D. Pernick*
    John D. Pernick
    Attorneys for Defendant
    GRAPH FOUNDATION, INC.

Dated: February 15, 2021

SKAGGS FAUCETTE LLP

By: */s/ Jeffrey E. Faucette*
    Jeffrey E. Faucette
    Attorneys for Defendants GRAPHGRID,
    INC. and ATOMRAIN INC.

PURSUANT TO STIPULATION, IT IS SO ORDERED AND ADJUDICATED.

Dated:   February 16  , 2021

EDWARD J. DAVILA
United States District Court Judge

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

**EXHIBIT A**



neo4j / neo4j

<> Code   ⊙ Issues 214   �welcome Pull requests 2   ⊙ Actions   ⊞ Projects   ⊞ Wiki   ⊙ Sec



ℹ 3.4 ▾

neo4j / enterprise / neo4j-enterprise / **LICENSE.txt**

🐾 **digitalstain** Updates enterprise LICENSE.txt and NOTICE.txt ...   ⟳ History

👥 **3 contributors**

Raw   Blame

693 lines (568 sloc)   35.1 KB



```
 1  NOTICE
 2  This package contains software licensed under different
 3  licenses, please refer to the NOTICE.txt file for further
 4  information and LICENSES.txt for full license texts.
 5
 6  Neo4j Enterprise object code can be licensed independently from
 7  the source under separate commercial terms. Email inquiries can be
 8  directed to: licensing@neo4j.com. More information is also
 9  available at:https://neo4j.com/licensing/
10
11  The software ("Software") is developed and owned by Neo4j Sweden AB
12  (referred to in this notice as "Neo4j") and is subject to the terms
13  of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause as follows:
14
15
16
17              GNU AFFERO GENERAL PUBLIC LICENSE
18                 Version 3, 19 November 2007
19
20   Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
21   Everyone is permitted to copy and distribute verbatim copies
22   of this license document, but changing it is not allowed.
23
24                     Preamble
25
26   The GNU Affero General Public License is a free, copyleft license
27  for software and other kinds of works, specifically designed to ensure
```

cooperation with the community in the case of network server software.

  The licenses for most software and other practical works are
designed to take away your freedom to share and change the works.  By
contrast, our General Public Licenses are intended to guarantee your
freedom to share and change all versions of a program--to make sure it
remains free software for all its users.

  When we speak of free software, we are referring to freedom, not
price.  Our General Public Licenses are designed to make sure that you
have the freedom to distribute copies of free software (and charge for
them if you wish), that you receive source code or can get it if you
want it, that you can change the software or use pieces of it in new
free programs, and that you know you can do these things.

  Developers that use our General Public Licenses protect your rights
with two steps: (1) assert copyright on the software, and (2) offer
you this License which gives you legal permission to copy, distribute
and/or modify the software.

  A secondary benefit of defending all users' freedom is that
improvements made in alternate versions of the program, if they
receive widespread use, become available for other developers to
incorporate.  Many developers of free software are heartened and
encouraged by the resulting cooperation.  However, in the case of
software used on network servers, this result may fail to come about.
The GNU General Public License permits making a modified version and
letting the public access it on a server without ever releasing its
source code to the public.

  The GNU Affero General Public License is designed specifically to
ensure that, in such cases, the modified source code becomes available
to the community.  It requires the operator of a network server to
provide the source code of the modified version running there to the
users of that server.  Therefore, public use of a modified version, on
a publicly accessible server, gives the public access to the source
code of the modified version.

  An older license, called the Affero General Public License and
published by Affero, was designed to accomplish similar goals.  This is
a different license, not a version of the Affero GPL, but Affero has
released a new version of the Affero GPL which permits relicensing under
this license.

  The precise terms and conditions for copying, distribution and
modification follow.

                    TERMS AND CONDITIONS

  0. Definitions.

  "This License" refers to version 3 of the GNU Affero General Public
License.

  "Copyright" also means copyright-like laws that apply to other kinds
of works, such as semiconductor masks.

  "The Program" refers to any copyrightable work licensed under this
License.  Each licensee is addressed as "you".  "Licensees" and
"recipients" may be individuals or organizations.

  To "modify" a work means to copy from or adapt all or part of the work
in a fashion requiring copyright permission, other than the making of an
exact copy.  The resulting work is called a "modified version" of the
earlier work or a work "based on" the earlier work.

  A "covered work" means either the unmodified Program or a work based
on the Program.

  To "propagate" a work means to do anything with it that, without
permission, would make you directly or secondarily liable for
infringement under applicable copyright law, except executing it on a
computer or modifying a private copy.  Propagation includes copying,
distribution (with or without modification), making available to the
public, and in some countries other activities as well.

  To "convey" a work means any kind of propagation that enables other
parties to make or receive copies.  Mere interaction with a user through
a computer network, with no transfer of a copy, is not conveying.

  An interactive user interface displays "Appropriate Legal Notices"
to the extent that it includes a convenient and prominently visible
feature that (1) displays an appropriate copyright notice, and (2)
tells the user that there is no warranty for the work (except to the
extent that warranties are provided), that licensees may convey the
work under this License, and how to view a copy of this License.  If
the interface presents a list of user commands or options, such as a
menu, a prominent item in the list meets this criterion.

  1. Source Code.

  The "source code" for a work means the preferred form of the work
for making modifications to it.  "Object code" means any non-source
form of a work.

  A "Standard Interface" means an interface that either is an official

standard defined by a recognized standards body, or, in the case of
interfaces specified for a particular programming language, one that
is widely used among developers working in that language.

  The "System Libraries" of an executable work include anything, other
than the work as a whole, that (a) is included in the normal form of
packaging a Major Component, but which is not part of that Major
Component, and (b) serves only to enable use of the work with that
Major Component, or to implement a Standard Interface for which an
implementation is available to the public in source code form.  A
"Major Component", in this context, means a major essential component
(kernel, window system, and so on) of the specific operating system
(if any) on which the executable work runs, or a compiler used to
produce the work, or an object code interpreter used to run it.

  The "Corresponding Source" for a work in object code form means all
the source code needed to generate, install, and (for an executable
work) run the object code and to modify the work, including scripts to
control those activities.  However, it does not include the work's
System Libraries, or general-purpose tools or generally available free
programs which are used unmodified in performing those activities but
which are not part of the work.  For example, Corresponding Source
includes interface definition files associated with source files for
the work, and the source code for shared libraries and dynamically
linked subprograms that the work is specifically designed to require,
such as by intimate data communication or control flow between those
subprograms and other parts of the work.

  The Corresponding Source need not include anything that users
can regenerate automatically from other parts of the Corresponding
Source.

  The Corresponding Source for a work in source code form is that
same work.

  2. Basic Permissions.

  All rights granted under this License are granted for the term of
copyright on the Program, and are irrevocable provided the stated
conditions are met.  This License explicitly affirms your unlimited
permission to run the unmodified Program.  The output from running a
covered work is covered by this License only if the output, given its
content, constitutes a covered work.  This License acknowledges your
rights of fair use or other equivalent, as provided by copyright law.

  You may make, run and propagate covered works that you do not
convey, without conditions so long as your license otherwise remains
in force.  You may convey covered works to others for the sole purpose

of having them make modifications exclusively for you, or provide you
with facilities for running those works, provided that you comply with
the terms of this License in conveying all material for which you do
not control copyright.  Those thus making or running the covered works
for you must do so exclusively on your behalf, under your direction
and control, on terms that prohibit them from making any copies of
your copyrighted material outside their relationship with you.

  Conveying under any other circumstances is permitted solely under
the conditions stated below.  Sublicensing is not allowed; section 10
makes it unnecessary.

  3. Protecting Users' Legal Rights From Anti-Circumvention Law.

  No covered work shall be deemed part of an effective technological
measure under any applicable law fulfilling obligations under article
11 of the WIPO copyright treaty adopted on 20 December 1996, or
similar laws prohibiting or restricting circumvention of such
measures.

  When you convey a covered work, you waive any legal power to forbid
circumvention of technological measures to the extent such circumvention
is effected by exercising rights under this License with respect to
the covered work, and you disclaim any intention to limit operation or
modification of the work as a means of enforcing, against the work's
users, your or third parties' legal rights to forbid circumvention of
technological measures.

  4. Conveying Verbatim Copies.

  You may convey verbatim copies of the Program's source code as you
receive it, in any medium, provided that you conspicuously and
appropriately publish on each copy an appropriate copyright notice;
keep intact all notices stating that this License and any
non-permissive terms added in accord with section 7 apply to the code;
keep intact all notices of the absence of any warranty; and give all
recipients a copy of this License along with the Program.

  You may charge any price or no price for each copy that you convey,
and you may offer support or warranty protection for a fee.

  5. Conveying Modified Source Versions.

  You may convey a work based on the Program, or the modifications to
produce it from the Program, in the form of source code under the
terms of section 4, provided that you also meet all of these conditions:

    a) The work must carry prominent notices stating that you modified

it, and giving a relevant date.

    b) The work must carry prominent notices stating that it is
released under this License and any conditions added under section
7.  This requirement modifies the requirement in section 4 to
"keep intact all notices".

    c) You must license the entire work, as a whole, under this
License to anyone who comes into possession of a copy.  This
License will therefore apply, along with any applicable section 7
additional terms, to the whole of the work, and all its parts,
regardless of how they are packaged.  This License gives no
permission to license the work in any other way, but it does not
invalidate such permission if you have separately received it.

    d) If the work has interactive user interfaces, each must display
Appropriate Legal Notices; however, if the Program has interactive
interfaces that do not display Appropriate Legal Notices, your
work need not make them do so.

  A compilation of a covered work with other separate and independent
works, which are not by their nature extensions of the covered work,
and which are not combined with it such as to form a larger program,
in or on a volume of a storage or distribution medium, is called an
"aggregate" if the compilation and its resulting copyright are not
used to limit the access or legal rights of the compilation's users
beyond what the individual works permit.  Inclusion of a covered work
in an aggregate does not cause this License to apply to the other
parts of the aggregate.

  6. Conveying Non-Source Forms.

  You may convey a covered work in object code form under the terms
of sections 4 and 5, provided that you also convey the
machine-readable Corresponding Source under the terms of this License,
in one of these ways:

    a) Convey the object code in, or embodied in, a physical product
(including a physical distribution medium), accompanied by the
Corresponding Source fixed on a durable physical medium
customarily used for software interchange.

    b) Convey the object code in, or embodied in, a physical product
(including a physical distribution medium), accompanied by a
written offer, valid for at least three years and valid for as
long as you offer spare parts or customer support for that product
model, to give anyone who possesses the object code either (1) a
copy of the Corresponding Source for all the software in the

       product that is covered by this License, on a durable physical
       medium customarily used for software interchange, for a price no
       more than your reasonable cost of physically performing this
       conveying of source, or (2) access to copy the
       Corresponding Source from a network server at no charge.

       c) Convey individual copies of the object code with a copy of the
       written offer to provide the Corresponding Source.  This
       alternative is allowed only occasionally and noncommercially, and
       only if you received the object code with such an offer, in accord
       with subsection 6b.

       d) Convey the object code by offering access from a designated
       place (gratis or for a charge), and offer equivalent access to the
       Corresponding Source in the same way through the same place at no
       further charge.  You need not require recipients to copy the
       Corresponding Source along with the object code.  If the place to
       copy the object code is a network server, the Corresponding Source
       may be on a different server (operated by you or a third party)
       that supports equivalent copying facilities, provided you maintain
       clear directions next to the object code saying where to find the
       Corresponding Source.  Regardless of what server hosts the
       Corresponding Source, you remain obligated to ensure that it is
       available for as long as needed to satisfy these requirements.

       e) Convey the object code using peer-to-peer transmission, provided
       you inform other peers where the object code and Corresponding
       Source of the work are being offered to the general public at no
       charge under subsection 6d.

    A separable portion of the object code, whose source code is excluded
  from the Corresponding Source as a System Library, need not be
  included in conveying the object code work.

    A "User Product" is either (1) a "consumer product", which means any
  tangible personal property which is normally used for personal, family,
  or household purposes, or (2) anything designed or sold for incorporation
  into a dwelling.  In determining whether a product is a consumer product,
  doubtful cases shall be resolved in favor of coverage.  For a particular
  product received by a particular user, "normally used" refers to a
  typical or common use of that class of product, regardless of the status
  of the particular user or of the way in which the particular user
  actually uses, or expects or is expected to use, the product.  A product
  is a consumer product regardless of whether the product has substantial
  commercial, industrial or non-consumer uses, unless such uses represent
  the only significant mode of use of the product.

    "Installation Information" for a User Product means any methods,

procedures, authorization keys, or other information required to install
and execute modified versions of a covered work in that User Product from
a modified version of its Corresponding Source.  The information must
suffice to ensure that the continued functioning of the modified object
code is in no case prevented or interfered with solely because
modification has been made.

  If you convey an object code work under this section in, or with, or
specifically for use in, a User Product, and the conveying occurs as
part of a transaction in which the right of possession and use of the
User Product is transferred to the recipient in perpetuity or for a
fixed term (regardless of how the transaction is characterized), the
Corresponding Source conveyed under this section must be accompanied
by the Installation Information.  But this requirement does not apply
if neither you nor any third party retains the ability to install
modified object code on the User Product (for example, the work has
been installed in ROM).

  The requirement to provide Installation Information does not include a
requirement to continue to provide support service, warranty, or updates
for a work that has been modified or installed by the recipient, or for
the User Product in which it has been modified or installed.  Access to a
network may be denied when the modification itself materially and
adversely affects the operation of the network or violates the rules and
protocols for communication across the network.

  Corresponding Source conveyed, and Installation Information provided,
in accord with this section must be in a format that is publicly
documented (and with an implementation available to the public in
source code form), and must require no special password or key for
unpacking, reading or copying.

  7. Additional Terms.

  "Additional permissions" are terms that supplement the terms of this
License by making exceptions from one or more of its conditions.
Additional permissions that are applicable to the entire Program shall
be treated as though they were included in this License, to the extent
that they are valid under applicable law.  If additional permissions
apply only to part of the Program, that part may be used separately
under those permissions, but the entire Program remains governed by
this License without regard to the additional permissions.

  When you convey a copy of a covered work, you may at your option
remove any additional permissions from that copy, or from any part of
it.  (Additional permissions may be written to require their own
removal in certain cases when you modify the work.)  You may place
additional permissions on material, added by you to a covered work,

for which you have or can give appropriate copyright permission.

  Notwithstanding any other provision of this License, for material you
add to a covered work, you may (if authorized by the copyright holders of
that material) supplement the terms of this License with terms:

    a) Disclaiming warranty or limiting liability differently from the
    terms of sections 15 and 16 of this License; or

    b) Requiring preservation of specified reasonable legal notices or
    author attributions in that material or in the Appropriate Legal
    Notices displayed by works containing it; or

    c) Prohibiting misrepresentation of the origin of that material, or
    requiring that modified versions of such material be marked in
    reasonable ways as different from the original version; or

    d) Limiting the use for publicity purposes of names of licensors or
    authors of the material; or

    e) Declining to grant rights under trademark law for use of some
    trade names, trademarks, or service marks; or

    f) Requiring indemnification of licensors and authors of that
    material by anyone who conveys the material (or modified versions of
    it) with contractual assumptions of liability to the recipient, for
    any liability that these contractual assumptions directly impose on
    those licensors and authors.

  All other non-permissive additional terms are considered "further
restrictions" within the meaning of section 10.  If the Program as you
received it, or any part of it, contains a notice stating that it is
governed by this License along with a term that is a further restriction,
you may remove that term.  If a license document contains a further
restriction but permits relicensing or conveying under this License, you
may add to a covered work material governed by the terms of that license
document, provided that the further restriction does not survive such
relicensing or conveying.

  If you add terms to a covered work in accord with this section, you
must place, in the relevant source files, a statement of the
additional terms that apply to those files, or a notice indicating
where to find the applicable terms.

  Additional terms, permissive or non-permissive, may be stated in the
form of a separately written license, or stated as exceptions;
the above requirements apply either way.

8. Termination.

You may not propagate or modify a covered work except as expressly
provided under this License.  Any attempt otherwise to propagate or
modify it is void, and will automatically terminate your rights under
this License (including any patent licenses granted under the third
paragraph of section 11).

However, if you cease all violation of this License, then your
license from a particular copyright holder is reinstated (a)
provisionally, unless and until the copyright holder explicitly and
finally terminates your license, and (b) permanently, if the copyright
holder fails to notify you of the violation by some reasonable means
prior to 60 days after the cessation.

Moreover, your license from a particular copyright holder is
reinstated permanently if the copyright holder notifies you of the
violation by some reasonable means, this is the first time you have
received notice of violation of this License (for any work) from that
copyright holder, and you cure the violation prior to 30 days after
your receipt of the notice.

Termination of your rights under this section does not terminate the
licenses of parties who have received copies or rights from you under
this License.  If your rights have been terminated and not permanently
reinstated, you do not qualify to receive new licenses for the same
material under section 10.

9. Acceptance Not Required for Having Copies.

You are not required to accept this License in order to receive or
run a copy of the Program.  Ancillary propagation of a covered work
occurring solely as a consequence of using peer-to-peer transmission
to receive a copy likewise does not require acceptance.  However,
nothing other than this License grants you permission to propagate or
modify any covered work.  These actions infringe copyright if you do
not accept this License.  Therefore, by modifying or propagating a
covered work, you indicate your acceptance of this License to do so.

10. Automatic Licensing of Downstream Recipients.

Each time you convey a covered work, the recipient automatically
receives a license from the original licensors, to run, modify and
propagate that work, subject to this License.  You are not responsible
for enforcing compliance by third parties with this License.

An "entity transaction" is a transaction transferring control of an
organization, or substantially all assets of one, or subdividing an

organization, or merging organizations.  If propagation of a covered
work results from an entity transaction, each party to that
transaction who receives a copy of the work also receives whatever
licenses to the work the party's predecessor in interest had or could
give under the previous paragraph, plus a right to possession of the
Corresponding Source of the work from the predecessor in interest, if
the predecessor has it or can get it with reasonable efforts.

  You may not impose any further restrictions on the exercise of the
rights granted or affirmed under this License.  For example, you may
not impose a license fee, royalty, or other charge for exercise of
rights granted under this License, and you may not initiate litigation
(including a cross-claim or counterclaim in a lawsuit) alleging that
any patent claim is infringed by making, using, selling, offering for
sale, or importing the Program or any portion of it.

  11. Patents.

  A "contributor" is a copyright holder who authorizes use under this
License of the Program or a work on which the Program is based.  The
work thus licensed is called the contributor's "contributor version".

  A contributor's "essential patent claims" are all patent claims
owned or controlled by the contributor, whether already acquired or
hereafter acquired, that would be infringed by some manner, permitted
by this License, of making, using, or selling its contributor version,
but do not include claims that would be infringed only as a
consequence of further modification of the contributor version.  For
purposes of this definition, "control" includes the right to grant
patent sublicenses in a manner consistent with the requirements of
this License.

  Each contributor grants you a non-exclusive, worldwide, royalty-free
patent license under the contributor's essential patent claims, to
make, use, sell, offer for sale, import and otherwise run, modify and
propagate the contents of its contributor version.

  In the following three paragraphs, a "patent license" is any express
agreement or commitment, however denominated, not to enforce a patent
(such as an express permission to practice a patent or covenant not to
sue for patent infringement).  To "grant" such a patent license to a
party means to make such an agreement or commitment not to enforce a
patent against the party.

  If you convey a covered work, knowingly relying on a patent license,
and the Corresponding Source of the work is not available for anyone
to copy, free of charge and under the terms of this License, through a
publicly available network server or other readily accessible means,

then you must either (1) cause the Corresponding Source to be so
available, or (2) arrange to deprive yourself of the benefit of the
patent license for this particular work, or (3) arrange, in a manner
consistent with the requirements of this License, to extend the patent
license to downstream recipients.  "Knowingly relying" means you have
actual knowledge that, but for the patent license, your conveying the
covered work in a country, or your recipient's use of the covered work
in a country, would infringe one or more identifiable patents in that
country that you have reason to believe are valid.

   If, pursuant to or in connection with a single transaction or
arrangement, you convey, or propagate by procuring conveyance of, a
covered work, and grant a patent license to some of the parties
receiving the covered work authorizing them to use, propagate, modify
or convey a specific copy of the covered work, then the patent license
you grant is automatically extended to all recipients of the covered
work and works based on it.

   A patent license is "discriminatory" if it does not include within
the scope of its coverage, prohibits the exercise of, or is
conditioned on the non-exercise of one or more of the rights that are
specifically granted under this License.  You may not convey a covered
work if you are a party to an arrangement with a third party that is
in the business of distributing software, under which you make payment
to the third party based on the extent of your activity of conveying
the work, and under which the third party grants, to any of the
parties who would receive the covered work from you, a discriminatory
patent license (a) in connection with copies of the covered work
conveyed by you (or copies made from those copies), or (b) primarily
for and in connection with specific products or compilations that
contain the covered work, unless you entered into that arrangement,
or that patent license was granted, prior to 28 March 2007.

   Nothing in this License shall be construed as excluding or limiting
any implied license or other defenses to infringement that may
otherwise be available to you under applicable patent law.

   12. No Surrender of Others' Freedom.

   If conditions are imposed on you (whether by court order, agreement or
otherwise) that contradict the conditions of this License, they do not
excuse you from the conditions of this License.  If you cannot convey a
covered work so as to satisfy simultaneously your obligations under this
License and any other pertinent obligations, then as a consequence you may
not convey it at all.  For example, if you agree to terms that obligate you
to collect a royalty for further conveying from those to whom you convey
the Program, the only way you could satisfy both those terms and this
License would be to refrain entirely from conveying the Program.

13. Remote Network Interaction; Use with the GNU General Public License.

  Notwithstanding any other provision of this License, if you modify the
Program, your modified version must prominently offer all users
interacting with it remotely through a computer network (if your version
supports such interaction) an opportunity to receive the Corresponding
Source of your version by providing access to the Corresponding Source
from a network server at no charge, through some standard or customary
means of facilitating copying of software.  This Corresponding Source
shall include the Corresponding Source for any work covered by version 3
of the GNU General Public License that is incorporated pursuant to the
following paragraph.

  Notwithstanding any other provision of this License, you have permission
to link or combine any covered work with a work licensed under version 3
of the GNU General Public License into a single combined work, and to
convey the resulting work.  The terms of this License will continue to
apply to the part which is the covered work, but the work with which it is
combined will remain governed by version 3 of the GNU General Public
License.

14. Revised Versions of this License.

  The Free Software Foundation may publish revised and/or new versions of
the GNU Affero General Public License from time to time.  Such new
versions will be similar in spirit to the present version, but may differ
in detail to address new problems or concerns.

  Each version is given a distinguishing version number.  If the
Program specifies that a certain numbered version of the GNU Affero
General Public License "or any later version" applies to it, you have
the option of following the terms and conditions either of that
numbered version or of any later version published by the Free
Software Foundation.  If the Program does not specify a version number
of the GNU Affero General Public License, you may choose any version
ever published by the Free Software Foundation.

  If the Program specifies that a proxy can decide which future
versions of the GNU Affero General Public License can be used, that
proxy's public statement of acceptance of a version permanently
authorizes you to choose that version for the Program.

  Later license versions may give you additional or different
permissions.  However, no additional obligations are imposed on any
author or copyright holder as a result of your choosing to follow a
later version.

```
604    15. Disclaimer of Warranty.
605
606      THERE IS NO WARRANTY FOR THE PROGRAM, TO THE EXTENT PERMITTED BY
607    APPLICABLE LAW.  EXCEPT WHEN OTHERWISE STATED IN WRITING THE COPYRIGHT
608    HOLDERS AND/OR OTHER PARTIES PROVIDE THE PROGRAM "AS IS" WITHOUT WARRANTY
609    OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
610    THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR
611    PURPOSE.  THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM
612    IS WITH YOU.  SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE COST OF
613    ALL NECESSARY SERVICING, REPAIR OR CORRECTION.
614
615      16. Limitation of Liability.
616
617      IN NO EVENT UNLESS REQUIRED BY APPLICABLE LAW OR AGREED TO IN WRITING
618    WILL ANY COPYRIGHT HOLDER, OR ANY OTHER PARTY WHO MODIFIES AND/OR CONVEYS
619    THE PROGRAM AS PERMITTED ABOVE, BE LIABLE TO YOU FOR DAMAGES, INCLUDING ANY
620    GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE
621    USE OR INABILITY TO USE THE PROGRAM (INCLUDING BUT NOT LIMITED TO LOSS OF
622    DATA OR DATA BEING RENDERED INACCURATE OR LOSSES SUSTAINED BY YOU OR THIRD
623    PARTIES OR A FAILURE OF THE PROGRAM TO OPERATE WITH ANY OTHER PROGRAMS),
624    EVEN IF SUCH HOLDER OR OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF
625    SUCH DAMAGES.
626
627      17. Interpretation of Sections 15 and 16.
628
629      If the disclaimer of warranty and limitation of liability provided
630    above cannot be given local legal effect according to their terms,
631    reviewing courts shall apply local law that most closely approximates
632    an absolute waiver of all civil liability in connection with the
633    Program, unless a warranty or assumption of liability accompanies a
634    copy of the Program in return for a fee.
635
636                    END OF TERMS AND CONDITIONS
637
638           How to Apply These Terms to Your New Programs
639
640      If you develop a new program, and you want it to be of the greatest
641    possible use to the public, the best way to achieve this is to make it
642    free software which everyone can redistribute and change under these terms.
643
644      To do so, attach the following notices to the program.  It is safest
645    to attach them to the start of each source file to most effectively
646    state the exclusion of warranty; and each file should have at least
647    the "copyright" line and a pointer to where the full notice is found.
648
649        <one line to give the program's name and a brief idea of what it does.>
650        Copyright (C) <year>  <name of author>
651
```

```
652        This program is free software: you can redistribute it and/or modify
653        it under the terms of the GNU Affero General Public License as
654        published by the Free Software Foundation, either version 3 of the
655        License, or (at your option) any later version.
656
657        This program is distributed in the hope that it will be useful,
658        but WITHOUT ANY WARRANTY; without even the implied warranty of
659        MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.  See the
660        GNU Affero General Public License for more details.
661
662        You should have received a copy of the GNU Affero General Public License
663        along with this program.  If not, see <http://www.gnu.org/licenses/>.
664
665    Also add information on how to contact you by electronic and paper mail.
666
667      If your software can interact with users remotely through a computer
668    network, you should also make sure that it provides a way for users to
669    get its source.  For example, if your program is a web application, its
670    interface could display a "Source" link that leads users to an archive
671    of the code.  There are many ways you could offer source, and different
672    solutions will be better for different programs; see section 13 for the
673    specific requirements.
674
675      You should also get your employer (if you work as a programmer) or school,
676    if any, to sign a "copyright disclaimer" for the program, if necessary.
677    For more information on this, and how to apply and follow the GNU AGPL, see
678    <http://www.gnu.org/licenses/>.
679
680
681    "Commons Clause" License Condition
682
683    The Software is provided to you by the Licensor under the License, as
684    defined below, subject to the following condition. Without limiting
685    other conditions in the License, the grant of rights under the License
686    will not include, and the License does not grant to you, the right to
687    Sell the Software.  For purposes of the foregoing, "Sell" means
688    practicing any or all of the rights granted to you under the License
689    to provide to third parties, for a fee or other consideration,
690    a product or service that consists, entirely or substantially,
691    of the Software or the functionality of the Software. Any license
692    notice or attribution required by the License must also include
693    this Commons Cause License Condition notice.
```