1
2
3
4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PURETHINK, LLC, et al.,<br><br>                    Defendants. | Case No.  5:18-cv-07182-EJD<br><br>**ORDER GRANTING PLAINTIFFS'<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT; DENYING<br>DEFENDANTS' CROSS-MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 98, 100 |

Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden," and collectively, "Plaintiffs") brought the present lawsuit against Defendants PureThink LLC, iGov Inc., and John Mark Suhy ("Defendants") alleging trademark and copyright infringement, among other claims, related to Plaintiffs' proprietary software.  Currently before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Neo4j USA's Lanham Act and related California Unfair Competition Law ("UCL") claims against Defendants.  Dkt. No. 98 ("Motion").  Also, before the Court is Defendants' Consolidated Cross-Motion for Summary Judgment as to the same subset of claims.  Dkt. No. 100 ("Cross-Motion").

Both the Motion and Cross-Motion were originally filed on a consolidated basis with the corresponding motions in the related action against Defendants Graph Foundation, Inc., GraphGrid, Inc., and AtomRain, Inc.  *See Neo4j, Inc. v. Graph Foundation, Inc.*, Case No. 5:19-cv-06226-EJD ("GFI Action").  Before the Motions were fully briefed, however, the parties to the GFI Action reached a settlement and the Court entered a stipulated judgment terminating the case.

United States District Court
Northern District of California

1   *See* GFI Action, Dkt. No. 110.

2   The Court took the Motion and Cross-Motion under submission for decision without oral

3   argument pursuant to Civil Local Rule 7-1(b).  Having considered all the papers filed in support of

4   or in opposition to the Motion and Cross-Motion, the Court GRANTS Plaintiffs' Motion and

5   DENIES Defendants' Cross-Motion.

6   **I.    Background**

7   **A.  Plaintiffs' Business**

8   Neo4j USA is a Delaware corporation with its principal place of business in San Mateo,

9   California, specializing in graph database management systems.  Neo4j USA's platform helps

10  organizations make sense of their data by revealing how people, processes and digital systems are

11  interrelated.  Declaration of John Broad ("Broad Decl."), ¶¶ 2-3.  Neo4j USA has more than 400

12  commercial customers, including global enterprises such as Walmart, Comcast, Cisco, and eBay,

13  and also does substantial business with government agencies, including agencies within the United

14  States Government.  *Id.* ¶ 4.

15  Neo4j USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned

16  subsidiary of Neo4j USA.  Declaration of Philip Rathle ("Rathle Decl."), ¶ 3.  Neo4j Sweden

17  owns of all copyrights related to the Neo4j graph database platform, including the source code,

18  and has licensed those copyrights to Neo4j USA.  *Id.* ¶¶ 3-4.  In conjunction with its business,

19  Neo4j USA filed for and obtained several federally registered trademarks, including U.S.

20  Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and

21  services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").  Dkt. No. 98-1,

22  Declaration of Jeffrey M. Ratinoff in Support of Neo4j, Inc. and Neo4j Sweden AB's

23  Consolidated Motion for Summary Judgment ("Ratinoff Decl."), Ex. 1.  In its registration

24  application, Neo4j USA claimed first use of the Neo4j Mark was in June 2006 and first use in

25  commerce in May 2007 based on the use of that mark by Neo4j Sweden, Neo4j USA's

26  predecessor-in-interest and related company.  *See id.*

27

28  ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
    DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Plaintiffs originally offered a free and open source version of the Neo4j platform, meaning that the source code was available to the public on GitHub pursuant to the GNU General Public License version 3 ("GPL").  Rathle Decl., ¶¶ 4-5.  This version was known as the Neo4j Community Edition ("Neo4j CE").  *Id.*  Neo4j CE is limited in its feature set and does not come with technical or administrative support.  *Id.* ¶¶ 5-6.  Plaintiffs also offered a more advanced commercial version with included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE").  *Id* ¶ 8.  Neo4j EE was originally offered under both a paid-for commercial license and the free GNU Affero General Public License, version 3 ("APGL").  *Id.* ¶ 9.  In May 2018, Plaintiffs released Neo4j EE version 3.4, which they continued to offer under an open source license; however, they replaced the AGPL with a stricter license, which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  *Id.*, ¶ 11, Ex. 3.  The new terms prohibited the non-paying public from engaging in commercial resale and certain commercial support services.  In November 2018, Plaintiffs released Neo4j EE version 3.5 under a commercial license only.  From that point on, Plaintiffs were no longer providing Neo4j EE on an open source basis.  Rathle Decl., ¶ 13 Ex. 4.

### B.  Plaintiffs Partnership with PureThink

PureThink is a software and information technology consulting company founded by Mr. Suhy, which specializes in supporting agencies within the U.S. Government.  *See* Ratinoff Decl., Ex. 2.  Neo4j USA contracted with PureThink to sell and support the commercial version of Neo4j pursuant to a Solution Partner Agreement ("SPA").  *Id.*, Ex. 4.  Under this agreement, PureThink had a non-exclusive, non-transferable limited license to, inter alia, use the Neo4j Mark solely to market and resell commercial licenses to Neo4j EE and related support services in exchange for shared revenue for the licenses that it resold.  *Id.*, Ex. 4 at § 4.1.  The SPA was subject to a 1-year term and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the Neo4j USA's "then-current trademark usage guidelines."  *Id.*, Ex. 4 at §7.1; Ex. 3 at 67:18-24.  All rights and licenses to the

United States District Court
Northern District of California

1  Neo4j Platform and the Neo4j Mark under the SPA terminate upon the expiration or termination,

2  and upon such an event, PureThink expressly agreed to "cease using any trademarks, service

3  marks and other designations of Plaintiffs." *Id.*, Ex. 4 at §7.3.

4        In the hopes of increased sales, PureThink developed the Neo4j Government Edition

5  ("Gov't Edition"), which was a package designed to streamline government procurements. *See*

6  *Id.*, Ext. 5-6.  PureThink focused mainly on selling Gov't Edition packages to various government

7  agencies.  *Id.*  PureThink initially marketed Gov't Edition to the IRS, however, the IRS indicated

8  that it would require a prototype before purchasing a full subscription.  To secure the IRS's

9  business, Mr. Suhy told the IRS that it could use the open source version of Neo4j EE and pay

10 PureThink for consulting services instead of buying a commercial subscription from Neo4j USA.

11 *Id.*, Ex. 8. The facts regarding what PureThink said and offered to the IRS are disputed and are

12 relevant to the breach of contract claims which are not at issue in this motion.

13       It is undisputed that on May 30, 2017, Neo4j USA sent PureThink notice that Mr. Suhy's

14 use, distribution, and marketing of Neo4j's open source products and his marketing of consulting

15 services focused on those products constitute a material breach of the SPA.  *Id.*, Ex. 9.  The notice

16 triggered a 30-day cure period, during which Mr. Suhy incorporated a new company, iGov Inc., in

17 order to support open source Neo4j software without being bound by restrictions in the SPA that

18 he believed to be unlawful.  *Id.*, Ex 11; Dkt. No. 72, Second Amended Counterclaim, ¶ 20.  On

19 July 11, 2017, Neo4j USA terminated the SPA, demanding that PureThink "cease using [Neo4j's]

20 trademarks, service marks, and other designations . . . and remove from PureThink's website(s)

21 marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j."

22 Ratinoff Decl., Ex. 12.

23       **C.  Defendants' Use of the Neo4j Mark**

24       After the partnership agreement terminated, Mr. Suhy and iGov continued marketing the

25 Gov't Edition to government agencies.  *See id.*, Exs. 14-15.  Around this time, PureThink and

26 iGov put the following statement on their websites:

27 Case No.: 5:18-cv-07182-EJD

28 ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

> The principle [sic] behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!
>
> * * *
>
> iGov Inc's new Government Package for Neo4j can be added to any Neo4j instance making it a "Government Edition". By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's [sic] open source license!

*Id.* The iGov website contained numerous uses of the Neo4j Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *Id.*, Exs. 14-19. iGov advertised itself as "the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source license!" *See id.*, Ex. 17 ("iGov Inc's Government Development Package with Neo4j Enterprise . . . Comes with same physical Neo4j Enterprise software").

The website also (1) uses "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; (2) displays "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; (3) encourages consumers to obtain more information by sending an email to "neo4j@igovsol.com;" and (4) uses "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of the Neo4j EE software. Ratinoff Decl., Exs. 15-18, 21, 62-64, 67-69. The parties do not dispute that the website used the Neo4j Mark in these ways, however, they disagree about whether the uses were authorized.

The "Neo4j Enterprise" software that iGov packaged and sold was a modified version of the open source Neo4j EE software, which was only publicly available through Neo4j EE v3.3. It did not include several "closed-source" features of Neo4j EE that were only available under the Neo4j USA's commercial license. In May 2018, Plaintiffs released Neo4j EE v3.4 but replaced the AGPL with the Neo4j Sweden Software License, a stricter license which included additional restrictions provided by the Commons Clause. Rathle Decl. ¶ 11, Ex. 2. The Commons Clause

United States District Court
Northern District of California

1    prohibited resale and commercial support services.  *Id.*

2         Following the release of version 3.4, Mr. Suhy told Plaintiffs that he was forming a non-

3    profit "for a community fork of Neo4j to get things started, and to ensure it's [sic] long term

4    success."  Ratinoff Decl., Ex. 27.  He worked with Brad and Ben Nussbaum, owners of Atom Inc.

5    and GraphGrid, Inc., to form Graph Foundation, Inc.  *Id.*, Ex. 29 ("Our team: iGov Inc, GraphGrid

6    [], and AtomRain [].  We work together as one company.  We all are the founders of the Graph

7    Foundation.").  Once formed, GFI began promoting a software called "ONgDB."  *Id.*, Ex. 28.

8    Defendants and GFI used Neo4j EE version 3.4, which was openly available subject to the Neo4j

9    Sweden Software License, as a base for ONgDB, but they replaced the Neo4j Sweden Software

10   License with the AGPL.  *See id.*, Exs. 24-26, 28; see also Ex. 3 at 28:25-29:11; Ex. 31 at 87:24-

11   90:9.  After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use

12   "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that

13   page sometime after July 27, 2020.  Ratinoff Decl., Exs. 62-65; Ex. 13 at RFA No. 5.  While iGov

14   replaced this URL with "https://igovsol.com/graph.html," the contents of the page remained the

15   same.  Compare *id.*, Ex. 65 and Ex. 66.  GFI further used a "Download Neo4j Enterprise"

16   hyperlink on its "downloads" page, which redirected consumers to download links for ONgDB

17   until July 27, 2020.  *Id.*, Exs. 66-68.

18        In November 2018, Plaintiffs released Neo4j EE v3.5 solely under a commercial license.

19   *Id.*, Ex. 4.  In January 2019, GFI released ONgDB v3.5.1, which contained at least 182 source

20   code files that had only been previously released under the Neo4j Sweden Software License in a

21   publicly available beta version of Neo4j EE 3.5.  Defendants continued to promote ONgDB as

22   "free and open source" by replacing the Neo4j Sweden Software License with the AGPL in certain

23   LICENSE.txt files alongside the source code.  *Id.*, Exs. 39-40; Dkt. No. 91 at 19:9-25; Ex. 31 at

24   159:3-10; Rathle Decl. ¶ 30.  Doing so removed certain legal notices identifying Neo4j Sweden as

25   the copyright holder and licensor, and removed the Commons Clause, effectively allowing

26   Defendants to commercially use and support ONgDB.  The "landing page" for ONgDB on GitHub

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

was very similar to that of Neo4j EE.  It was titled "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone," and contained numerous references to Neo4j throughout.  Defendants communicated to potential customers that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j EE v3.5.x.  *See* Ratinoff Decl., Exs. 42-47; *see also* Ex. 126.  Defendants made various representations about ONgDB relevant to Plaintiffs' copyright and contract claims that are not pertinent to the trademark claims at issue here.

Defendants do not claim that ONgDB is identical to its Neo4j counterpart versions.  Rather, it combines the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and "glue code" authored by Mr. Suhy and other contributors.  *Id.*, Ex. 31 at 158:18-163:5, 163:13-165:6; Ex. 3 at 124:2-126:23.  Nevertheless, the GFI website stated "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number."  *Id.*, Ex. 57.  On its "downloads" page, GFI specifically described "ONgDB Enterprise 3.5.5" as a "Drop in replacement for Neo4j Core and Enterprise 3.5.5."  *Id.*, Exs. 67- 69.  GFI instructed potential users of Neo4j EE on its "neo4j" page to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number" and still does so on the successor "graph" page.  *Id.*, Exs. 63-66.

Similarly, iGov also continues to assert that "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions."  *Id.*, Ex. 71-74.  iGov also continues to offer "commercial equivalent support packages for Neo4j Enterprise open source licensed distributions," and interchangeability refers to "ONgDB Enterprise" and "Neo4j Enterprise" on its website.  *See id.*, Exs. 62-70.  Defendants have made similar statements directly to potential customers, such as "[ONgDB] is 100% open source and a drop in replacement for the same Neo4j version."  *Id.*, Ex. 43; *see also* Exs. 44-46, 76-77.

GFI used hyperlinks on its website to redirect users to Plaintiffs' operation and developer manuals located on Plaintiffs' website.  Dkt. No. 89, ¶¶ 3-8, 13-16; Ratinoff Decl., Exs. 78-83.

United States District Court
Northern District of California

1    For example, GFI's webpage for ONgDB v3.5.3 stated, "Look for 3.5 Operations manual here"

2    with an embedded hyperlink to https://neo4j.com/docs/operations-manual/3.5.  Dkt. No. 89, ¶ 7;

3    Ratinoff Decl., Exs. 82-83.  Similarly, on GFI's GitHub repository the word "ONgDB 3.5" under

4    the heading "LTS release" contains an embedded hyperlink that redirects users to Neo4j USA's

5    copyrighted "Neo4j Operations Manual v3.5" located on Neo4j, USA's website.  *Id.*, ¶¶ 9-10; Exs.

6    82-83; Ex. 31 at 276:19-279:15, 284:2-285:18.

7         Defendants also regularly used the Neo4j Mark as a hashtag on twitter.  For example, GFI

8    announced its release of a new ONgDB version by tweeting "#ONgDB (#FOSS#Neo4j

9    Enterprise) 3.5.x support release is out."  *Id.*, 89, 92, 94-95; Ex. 31 at 233:17-236:15, 240:12-

10    241:25.  Mr. Suhy regularly retweeted those posts, increasing their circulation.  *See id.* Exs. 105-

11    111.

12                 **D.  Customer Response**

13         By December 2020, just under two years after the release of ONgDB v3.5.1, the ONgDB

14    software had been downloaded over 14,000 times, signaling its widespread success.  *See id.*, Exs.

15    113-114.  Plaintiffs generally contend that Defendants' actions with respect to ONgDB and use of

16    the Neo4j Mark have caused significant consumer confusion.

17         For example, consumers have encountered compatibility issues, technical problems or

18    glitches with ONgDB and sought assistance from Plaintiffs.  *See e.g.*, *id.*, Ex. 115; Ex. 121

19    ("Unable to connect to Neo4j/ONgDB Browser when port forwarding"); Ex. 122 ("ONgDB neoj

20    not starting up"); Ex. 123 ("I also tried ONgdb (neo4j) with different gremlin server versions");

21    Ex. 124 ("I'm having some difficulty loading a Cypher file into Neo4J . . . note that I am using an

22    recent ONGDB build, rather than straight Neo4J; I do not believe this will make any substantial

23    difference."); *see also* Ex. 133.

24         Furthermore, consumers have expressed uncertainty about the propriety of Defendants'

25    modification to the Neo4j Sweden Software License.  This has caused some confusion about

26    whether and when a commercial license from Neo4j USA is necessary to use, modify or

27

28    Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

redistribute the software in a commercial setting.  *See id.*, Exs. 49, 117, 118.

### E.  Relevant Procedural Background

On April 10, 2020, the Court granted the parties' stipulation concerning the claims, counterclaims and affirmative defenses ("Phase 1 Issues") that would be subject to the first motions for summary judgment/adjudication filed by each party.  Dkt. No. 68.  The Phase 1 Issues include Plaintiffs' claims for trademark infringement, false designation of origin and false advertising, and unfair competition, as well as Defendants' counterclaims and affirmative defenses related to abandonment of trademark, cancellation of trademark, and fair use.  *Id.*  The parties have since clarified the scope of and have modified that schedule several times.

On May 21, 2020, the Court granted Plaintiffs' Motion for Judgment on the Pleadings, dismissing with prejudice Defendants' affirmative defense and counterclaim for "cancellation of trademark procured by fraud," and dismissing without prejudice Defendants' counterclaim and affirmative defense based on abandonment of trademark by naked licensing.  Dkt. No. 70.  Defendants filed a Second Amended Counterclaim and First Amended Answer, realleging the naked licensing defense and counterclaim.  Plaintiffs brought another motion to dismiss and strike, and on August 20, 2020, the Court granted it, dismissing with prejudice Defendants' tenth cause of action based on naked licensing and striking the related affirmative defense.  Dkt. No. 85.

The parties stipulated to the filing of Plaintiffs' Third Amended Complaint.  Defendants filed an Answer to the TAC, which reasserted the affirmative defenses based on cancellation of trademark and abandonment by naked licensing.  Dkt. No. 91.  Plaintiffs filed a motion to strike those affirmative defenses, which the Court granted on March 3, 2021.  Dkt. No. 110.

On December 11, 2020, Plaintiffs filed the present Motion for Summary Judgment as to the Phase 1 Issues ("Motion").  On January 15, 2021, Defendants filed a combined Cross-Motion for Summary Judgment and Opposition ("Cross-Motion").  Both of those motions applied to this action as well as the GFI Action, however, the parties to the GFI Action reached a settlement before the motions were fully briefed.  Plaintiffs then filed a combined Reply in support of their

United States District Court
Northern District of California

1   Motion and Opposition to Defendants' Cross-Motion ("Plaintiffs' Reply"), and Defendants' filed

2   a final Reply in support of their Cross-Motion ("Defendants' Reply").

3   **II.     Legal Standard**

4     Summary judgement is appropriate where the moving party "shows that there is no

5   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

6   Fed. R. Civ. P. 56(a).  A dispute is "genuine" if there is sufficient evidence that a reasonable fact

7   finder could find for the nonmoving party.  *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d

8   980, 984 (N.D. Cal. 2019).  A fact is "material" if it could change the outcome of the case.  *Id.*

9   The Court must read the evidence and draw all reasonable inferences in the light most favorable to

10   the nonmoving party.  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

11     Where the moving party will bear the ultimate burden of proof at trial, such as with

12   Plaintiffs' Motion in this case, the moving party "must prove each element essential of the claims

13   upon which it seeks judgment by undisputed facts" in order to succeed.  *eOnline Global, Inc.*, 387

14   F. Supp. 3d at 984 (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513

15   (N.D. Cal. 1995).  This showing "must be sufficient for the court to hold that no reasonable trier of

16   fact could find other than for the moving party."  *t'Bear v. Forman*, 359 F. Supp. 3d 882, 905

17   (N.D. Cal. 2019) (quoting *First Pacific Networks, Inc.*, 891 F. Supp. at 513).  Only then must the

18   nonmoving party "present significant probative evidence tending to support its claim or defense"

19   to defeat the motion.  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474,

20   480 (9th Cir. 2000).

21     If the moving party will not bear the ultimate burden of persuasion at trial, like Defendants

22   on their Cross-Motion, then it must carry both the burden of production and the burden of

23   persuasion on its motion for summary judgment.  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d

24   1180, 1188 (9th Cir. 2016) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

25   F.3d 1099, 1102 (9th Cir. 2000)).  To carry the burden of production, the moving party "must

26   either produce evidence negating an essential element of the nonmoving party's claim . . . or show

27

28
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03.  To successfully carry the burden of persuasion, the moving party must show the court that no genuine dispute of material fact exists.  *Id.* at 1102.  "If the moving party does not carry its initial burden of production, then the nonmoving party need not produce any evidence to defeat the motion.  But, if the moving party does carry the burden of production, then the nonmoving party must identify with reasonable particularity enough evidence supporting its claim or defense to create a genuine dispute of material fact to defeat the motion." *eOnline Global, Inc.*, 387 F. Supp. 3d at 984 (citations omitted) (citing *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03).  Otherwise, the moving party will win on its motion.  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103.

In both types of motions, the evidence presented by the nonmoving party must be enough for a jury to return a verdict for the nonmoving party.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "If the nonmoving party's 'evidence is merely colorable or is not significantly probative,' then summary judgment may be granted." *eOnline Global, Inc.*, 387 F. Supp. 3d at 984.

### III.   Discussion

#### A.  Standing

"To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:20–21, 32:3, 32:12 (4th ed.2008) (noting that standing to sue for trademark infringement under the Lanham Act extends to owners of registered and unregistered marks, and nonowners with a protectable interest in the mark)).  Trademark claims under 15 U.S.C. § 1114(1) may be brought by the registrant of the trademark, and the registrant's "legal representatives, predecessors,

successors, and assigns." 15 U.S.C. § 1127.

Neo4j USA is the registrant of the Neo4j Mark.  Defendants argue that despite being the registrant of the mark, Neo4j USA does not actually own the mark.  As discussed further in Section B(i) *infra*, the Court disagrees with that assessment.  As it pertains to standing, Defendants argue that because "[Neo4j] USA does not own the Neo4J trademark, its lacks standing to bring an infringement claim."  Cross-Motion at 11.  Defendants do not cite any case law to support this argument, nor do they address the fact that 15 U.S.C. § 1114 expressly contemplates that the registrant of a trademark may bring suit for infringement.

Moreover, even if Neo4j USA was not the owner of the mark, Defendants do not raise any argument that Neo4j USA is not a "nonowner with a cognizable interest in the allegedly infringing trademark."  *See Halicki Films, LLC*, 547 F.3d at 1225.  As the registrant of the Neo4j Mark and parent company of Neo4j Sweden—which, according to Defendants, is the true owner of the mark—Neo4j USA undoubtedly has a cognizable interest in the mark.  *See Hem & Thread, Inc. v. Wholesalefashionsquare.com*, No. 2:19-CV-283-CBM-AFM, 2019 WL 3017669, at *2 (C.D. Cal. Mar. 27, 2019) (finding standing to bring claim under 15 U.S.C. § 1125 where plaintiff was not the owner or registrant but had "express authority and permission" to use the mark in commerce and therefore had a cognizable interest in the trademark).

Defendant further argues that "[n]one of defendants' conduct with respect to the use [of] [Neo4j] Sweden's software is germane to [Neo4j] USA's claims" because "[u]se of [Neo4j] Sweden's software is governed by AGPL license" and because Neo4j USA is not the licensor, it "has no standing to assert claims related to that license agreement."  Cross-Motion at 11.  Defendants' use of the software and any dispute about the terms or limitations of the AGPL are relevant to Plaintiffs' copyright claims, which are not at issue in this summary judgment motion.  Defendants' use of the trademark, not the software, is pertinent to Plaintiffs' trademark infringement and false advertising claims, and Defendants' do not contend that the AGPL constituted a trademark license.

United States District Court
Northern District of California

1    Thus, the Court concludes that Neo4j USA has standing to pursue its trademark claims.

2    **B.  Trademark Infringement**

3    To prevail on its claim under 15 U.S.C. § 1114, Neo4j USA must prove (1) an ownership

4    interest in a protectable mark; and (2) that Defendants' use of the mark is likely to cause consumer

5    confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th

6    Cir. 2011). "The core element of trademark infringement is the likelihood of confusion, i.e.,

7    whether the similarity of the marks is likely to confuse customers about the source of the

8    products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

9    Furthermore, although disfavored in trademark infringement cases, summary judgment

10   may be entered when no genuine issue of material fact exists. *See Surfvivor Media, Inc. v.*

11   *Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). Whether likelihood of confusion is more a

12   question of law or one of fact can depend on the circumstances of each particular case. *DC*

13   *Comics v. Towle*, 989 F. Supp. 2d 948, 956 (C.D. Cal. 2013), *aff'd*, 802 F.3d 1012 (9th Cir. 2015)

14   (citing *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir. 1980)).

15   A question of fact may be resolved as a matter of law if reasonable minds cannot differ and the

16   evidence permits only one conclusion. *Id.* (citing *Sanders v. Parker Drilling Co.*, 911 F.2d 191,

17   194 (9th Cir. 1990).

18   **i.  Ownership**

19   "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's

20   ownership of the mark, and the registrant's exclusive right to use the mark in connection with the

21   goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th

22   Cir. 2014) (citing 15 U.S.C. § 1115(a)); *see also Align Tech., Inc. v. Strauss Diamond Instruments,*

23   *Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *4 (N.D. Cal. Apr. 12, 2019) (same). Under

24   the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is

25   valid, but the presumption evaporates as soon as evidence of invalidity is presented. 15 U.S.C. §

26   1051. This "presumption of validity is a strong one, and the burden on the defendant necessary to

27

28

*United States District Court*
*Northern District of California*

1    overcome that presumption at summary judgment is heavy." *Zombondo Ent., LLC v. Falls Media,*

2    *LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010).

3         The parties do not dispute that Neo4j USA is the registrant of the mark. *See* Cross-Motion

4    at 5 ("Defendants are not attacking the registration."). Thus, there is no dispute that Neo4j USA

5    benefits from a presumption of ownership and a presumption that the mark is valid. *Pom*

6    *Wonderful LLC*, 775 F.3d at 1124. Nevertheless, Defendants argue that Neo4j USA is not the

7    *owner* of the trademark. Under section 1 of the Lanham Act, only the owner of a mark is entitled

8    to apply for registration. 15 U.S.C. § 1051 ("The owner of a trademark . . . may request

9    registration of its trademark on the principal register hereby established by paying the prescribed

10   fee and filing in the Patent and Trademark Office an application and a verified statement"). If one

11   who is not the owner seeks registration, the application must be denied and any registration which

12   issues is invalid. *Smith v. Tobacco By-Prod. & Chem. Corp.*, 243 F.2d 188 (C.C.P.A. 1957).

13   Thus, although Defendants state that they challenge ownership and not registration, the distinction

14   is without difference.

15        Defendants contend that Neo4j Sweden is the actual owner of the Neo4j Mark because it

16   was undisputedly the first to use the mark. Defendants point to a License Agreement between

17   Neo4j Sweden and Neo4j USA ("License Agreement"), by which Neo4j Sweden granted Neo4j

18   USA a non-exclusive license to use the mark in the United States. Dkt. No. 101, Declaration of

19   Adron G. Beene In Support Of Defendants And Counterclaimants' Administrative Motion To File

20   Exhibits Under Seal ("Beene Decl."), Ex. 1 ("Neo-Sweden has agreed to grant to Neo-US and

21   Neo-US has agreed to receive, a non-exclusive license under such Neo-Sweden Intellectual

22   Property Rights on the terms and conditions of this Agreement"). The License Agreement was

23   executed in August 2010, approximately six years before Neo4j USA's registration of the Neo4j

24   Mark in the United States.

25        Plaintiffs argue that "the [License] Agreement relied upon by Defendants simply reflects

26   the intercompany division of assets, including trademarks, between Neo4j USA and Neo4j

27

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                          14

United States District Court
Northern District of California

1    Sweden as parent and wholly-owned subsidiary, and does not damage the validity of the mark

2    either at the time of registration or thereafter."  Plaintiffs' Reply at 8.  Plaintiffs cite 15 U.S.C. §

3    1055, also referred to as the related companies doctrine, in support of their general proposition that

4    Neo4j USA was entitled to rely on Neo4j Sweden's first use of the mark in its registration.

5    Section 1055 states:

6            "Where a registered mark or a mark sought to be registered is or may be
             used legitimately by related companies, such use shall inure to the benefit
7            of the registrant or applicant for registration, and such use shall not affect
             the validity of such mark or of its registration, provided such mark is not
8            used in such manner as to deceive the public.  If first use of a mark by a
             person is controlled by the registrant or applicant for registration of the
9            mark with respect to the nature and quality of the goods or services, such
             first use shall inure to the benefit of the registrant or applicant, as the case
10           may be."

11

12   *Id.*  "The term 'related company' means any person whose use of a mark is controlled by the

13   owner of the mark with respect to the nature and quality of the goods or services on or in

14   connection with which the mark is used."  15 U.S.C. § 1127.  Given that the registrant of a

15   trademark must be the owner of the trademark and given that "related companies" specifically

16   refers to entities under the control of the owner, Section 1055 only benefits the owner of a mark.

17   Thus, Neo4j USA was only entitled to rely on Neo4j Sweden's prior use if Neo4j USA was the

18   owner of the Neo4j Mark at the time.  Likewise, Neo4j USA must have been the owner of the

19   Neo4j Mark at the time it registered for the registration to be valid.

20           Both Plaintiffs and Defendants rely on and dispute the relevance of *In re Wella A.G.*, 787

21   F.2d 1549, 1555 (Fed. Cir. 1986) (*Wella I*) and *In re Wella A.G.*, 858 F.2d 725 (Fed. Cir. 1988)

22   ("*Wella II*").  In *Wella I*, the Federal Circuit considered whether a foreign parent corporation,

23   Wella A.G., could properly register a trademark which was "the same or similar" to trademarks

24   already registered in the U.S. by Wella A.G.'s subsidiary, Wella U.S.  The registration had been

25   rejected by the examining attorney and TTAB because it was "confusingly similar" to the existing

26   Wella U.S. registered marks under Section 2(d).  The Federal Circuit reversed and remanded,

27

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

15

1    finding that the Board had misinterpreted and misapplied Section 2(d).  *Wella I*, 787 F. 2d at 1553.

2    Specifically, the Circuit held that the correct question under Section 2(d) is whether there is any

3    likelihood of consumer confusion from allowing both the parent and the subsidiary companies to

4    register the same or similar marks.  *Id.* at 1552–53.  Given the fact that Wella A.G. wholly

5    controlled Wella U.S., and that the entities operated as one brand in the view of consumers, the

6    registration was unlikely to result in any consumer confusion.  *Id.*

7         Judge Nies wrote separately in *Wella I* to express certain "additional views."  *Id.* at 1554.

8    Judge Nies agreed with the majority's analysis regarding Section 2(d) but felt there was a different

9    potentially dispositive question regarding ownership of U.S. rights in the Wella marks.  According

10   to Judge Nies, Wella A.G.'s registration could also properly be denied because Wella U.S., and

11   not Wella A.G., appeared to own the U.S. rights to the marks.  *Id.*  She explained that the

12   registrant must be the owner of the marks, that there could only be one owner of the marks, and

13   that therefore, Wella A.G. had no right to register the marks unless it was the owner, despite its

14   status as the parent company of Wella U.S.  *Id.* at 1555.

15        On remand, the Board held that there was no likelihood of confusion, but nonetheless

16   rejected the application again based on Judge Nies' concurrence, finding that the parent and

17   subsidiary could not both own the Wella trademarks.  On a second appeal, the Federal Circuit

18   chastised the Board for considering the ownership issue.  *Wella II*, 858 F.2d at 728 ("the unusual

19   nature of our limiting instruction to the Board--we did not merely reverse the Board's denial of

20   registration but explicitly told the Board what it could consider on remand--should have led the

21   Board to realize that the majority of the court did not view the additional issue Judge Nies had

22   raised as something for the Board to address on remand.").  The Federal Circuit, therefore,

23   rejected the idea that a trademark registered by a parent company could be invalidated simply

24   based on the fact that the company's wholly owned subsidiary technically owned the marks.

25   While the facts of the *Wella* cases are not precisely similar to the facts at issue in this case, the

26   Court finds it instructive that the Federal Circuit did not find it necessary to determine ownership

27

28
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   of a mark as between a parent and wholly owned subsidiary when deciding whether registration of

2   the mark was valid.  *See W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1126–27

3   (Fed. Cir. 1994) (separate entities operating as a single entity in the eyes of the consuming public

4   may be treated as such for trademark purposes).

5   　　　The Trademark Manual of Examining Procedure ("TMEP"), which governs the

6   application for trademark registrations, is also instructive.  The TMEP expressly states that

7   "[e]ither a parent corporation or a subsidiary corporation may be the proper applicant, depending

8   on the facts concerning ownership of the mark."  § 1201.03(c) Wholly Owned Related Companies,

9   TMEP5th 1201.03(c).  Furthermore, it states that the PTO "will consider the filing of the

10   application in the name of either the parent or the subsidiary *to be the expression of the intention*

11   *of the parties as to ownership* in accord with the arrangements between them."  *Id.* (emphasis

12   added).  Under these rules, the fact that Neo4j USA registered the Neo4j Mark can, therefore, be

13   understood as evidence of the intention of the parties as to ownership of the mark.  Thus, while the

14   License Agreement tends to show that Plaintiffs considered Neo4j Sweden to be the owner of the

15   Neo4j Mark in 2010, the fact that Neo4j USA registered the mark tends to show that the parties

16   considered Neo4j USA to be the owner of the mark in 2015.  It is also clear that Defendants

17   understood Neo4j USA to be the owner of the mark when they signed the SPA, by which Neo4j

18   USA granted PureThink a non-exclusive license to use the mark.

19   　　　The TMEP further explains that "[w]here the mark is used by a related company, the

20   owner is the party who controls the nature and quality of the goods sold or services rendered under

21   the mark."  § 1201.01 Claim of Ownership May Be Based on Use By Related Companies,

22   TMEP5th 1201.01.  It is undisputed that Neo4j USA wholly owns and controls Neo4j Sweden and

23   did so at the time of the registration.  *See* Fact 1; Dkt. No. 98-2 at 1:17-18; Neo4j USA is also the

24   only party who exercises control over the mark in the United States.  Thus, the Court finds that the

25   License Agreement alone is insufficient to rebut the presumption of ownership from which Neo4j

26   USA benefits as the registrant of the Neo4j Mark, especially where significant evidence supports

27

United States District Court
Northern District of California

1   that presumption.

2   **ii.  Customer Confusion and Nominative Fair Use**

3          Typically, Plaintiffs would need to establish that Defendants' use of the mark is likely to

4   confuse consumers, under the eight factor analysis in *Sleekcraft*.  *See Fortune Dynamic, Inc. v.*

5   *Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010); *AMF Inc. v.*

6   *Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  When a nominative fair use defense is

7   raised, however the fair-use analysis replaces the likelihood-of-consumer confusion analysis set

8   forth in *Sleekcraft*.  *See Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

9          A defendant may raise a nominative fair use defense if "the use of the trademark does not

10  attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a

11  different one." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308–09 (9th Cir.

12  1992.  The nominative fair use analysis is appropriate where a defendant has used the plaintiff's

13  mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his*

14  *own product.*"  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).  To establish a

15  nominative fair use defense, a defendant must prove the following three elements:

> First, the [plaintiff's] product or service in question must be one not readily
> identifiable without use of the trademark; second, only so much of the mark
> or marks may be used as is reasonably necessary to identify the [plaintiff's]
> product or service; and third, the user must do nothing that would, in
> conjunction with the mark, suggest sponsorship or endorsement by the
> trademark holder.

20  *Id.* (citing *New Kids on the Block*, 971 F.2d at 308).  "This test 'evaluates the likelihood of

21  confusion in nominative use cases.'" *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171,

22  1176 (9th Cir. 2010) (quoting *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1041 (9th Cir. 2007).

23  Plaintiffs need only negate one of these elements to defeat Defendants' reliance on the nominative

24  fair defense.  *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030

25  (9th Cir. 2004) (because defendants use of plaintiff's mark ran afoul of the first prong for

26  nominative use, no need to consider the other two); *see also Horphag Research Ltd. v. Garcia*,

27  Case No.: 5:18-cv-07182-EJD
28  ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
    DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    475 F.3d 1029, 1041 (9th Cir. 2007) (defendant's use must meet all three fair use prongs).

2        In this case, Defendants claim to be "using the Neo4J mark to identify [Neo4j] USA, the

3    commercial Neo4J software and Sweden's open source Neo4J software."  Cross-Motion at 14.

4    Plaintiffs first argue that Defendants cannot rely on a fair use defense because PureThink was a

5    licensee of the Neo4J Mark under the SPA, until the SPA terminated.  Plaintiffs cite to several

6    cases in which courts found a likelihood of confusion where a former licensee continued using a

7    trademark after the license agreement terminated.  *See, e.g.*, *State of Idaho Potato Comm'n v. G &*

8    *T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) ("courts have held that an ex-

9    licensee's continued use of a trademark is enough to establish likelihood of confusion").  None of

10   those cases, however, involved a nominative fair use defense, and the Court is not persuaded that

11   nominative fair use cannot apply in the context of a dispute between a licensor and former

12   licensee.

13       Plaintiffs next argue that Defendants have not engaged in nominative fair use because

14   Defendants used the Neo4j Mark to refer to Defendants' own products, rather than Plaintiffs'

15   products.  It is undisputed that PureThink and iGov initially marketed a product called "Neo4j

16   Enterprise," and a "Government Package for Neo4j," before rebranding Neo4j Enterprise as

17   ONgDB.  *See* Cross-Motion, Ex. A Defendants' Response to Neo4j Inc.'s Consolidated Separate

18   Statement Of Undisputed Material Facts ("Defendants' Statement of Facts"), at 4 (disputing Fact

19   16 by explaining that "'Government Packages for Neo4j' and 'Neo4j Enterprise' were used to

20   describe the government packages iGov provided support for around the free and open source

21   neo4j database.").  While Defendants claim that these products consisted of genuine open source

22   Neo4j EE software, neither product was in fact a Neo4j USA product.  Rather, "Neo4j Enterprise"

23   consisted of the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and

24   "glue code" authored by Mr. Suhy and other contributors.  Ratinoff Decl., Ex. 31 at 158:18-163:5,

25   163:13-165:6; Ex. 3 at 124:2-126:23.  Moreover, Defendants assured potential customers both on

26   iGov's website and in direct email communications that "Neo4j Enterprise" was the "same official

27

28

United States District Court
Northern District of California

1   Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" except

2   distributed under an open source license.  *See, e.g.*, *id.*, Exs. 15, 18-19, 21.

3          Thus, Defendants were not using "Neo4j" to refer to Plaintiffs' products, they were using it

4   to create the misleading perception that Defendants' products *were* Plaintiffs' products.  *See*

5   *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1143 (N.D. Cal. 2015) (not fair use

6   because defendant's use of Adobe's marks was not intended to describe Adobe's product, but

7   rather to make it appear that the software was sanctioned by Adobe for sale and distribution).  Any

8   reasonable consumer reading about "Neo4j Enterprise" would conclude that they are getting

9   official Neo4j EE, or in the case of the "Government Package for Neo4j," consumers would

10  conclude they are getting Neo4j EE in a specialized government package.  Thus, because

11  Defendants used "Neo4j Enterprise" and "Government Package for Neo4j" to refer to their own

12  products, they do not benefit from a nominative fair use defense as to those uses.  *Align*

13  *Technology, Inc.*, 2019 WL 1586776, at *5 ("[i]n nominative fair use, the defendant uses the

14  trademarked term not to describe its product but to describe the plaintiff's [product]").

15         The same is true of iGov's use of the Neo4j Mark in its email address and URL.

16  Defendants do not refute their use of the Neo4j Mark in the URL https://igovsol.com/neo4j.html to

17  promote "Neo4j Enterprise," and later to promote ONgDB.  *See* Defendants' Statement of Facts at

18  4 (failing to substantively refute Fact 16); *id.* at 5 (not disputing that "iGov continued to use

19  'https://igovsol.com/neo4j.html' as a URL address to promote ONgDB until it deactivated that

20  page sometime after July 27, 2020.").  Similarly, Defendants do not refute that they used

21  neo4j@igovsol.com as means for consumers to inquire about ONgDB.  *Id.* (Fact 19).  Instead,

22  they argue that the email address is for inquiries about "Sweden's open source Neo4j," as "a way

23  to inquire about iGov support services and support for the neo4j open source database," and "a

24  means to inquire about ONgDB" and "[ONgDB] open source license support."  *Id.*

25         Nothing about the use of the Neo4j Mark in the URL or email can be reasonably

26  interpreted to refer to Plaintiffs' products.  Indeed, the URL brings users to a page marketing

27

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
    DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Defendants' products, and the email address is offered to answer questions about Defendants'

2    products. Thus, Defendants' use of the Neo4j Mark in their URLs or email addresses are not

3    protected by the nominative fair use defense. S*ee Brookfield Commc'ns, Inc. v. W. Coast Ent.*

4    *Corp.*, 174 F.3d 1036, 1064–65 (9th Cir. 1999) ("[u]sing another trademark in one's metatags is

5    much like posting a sign with another's trademark in front of one's store"); *see also Experience*

6    *Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, No. C09-285Z, 2010 WL 2104239, at *6 (W.D.

7    Wash. May 19, 2010) (use of plaintiff's HENDRIX mark in defendants' URL addresses and

8    business names did not describe plaintiffs' products but rather defendants' products); *State St.*

9    *Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 342 (S.D.N.Y. 2020) (holding that use of a

10   trademark in a URL is not fair use).

11       By contrast, to the extent Defendants offer "support services" targeted at software that

12   Neo4j Sweden or Neo4j USA provide on an open source basis, use of the Neo4j Mark to explain

13   those services could potentially benefit from a fair-use defense because such uses reference

14   Plaintiffs' products, not Defendants'. Likewise, Defendants are permitted to describe their

15   product as an unaffiliated or independent "fork" of Neo4j source code because that phrasing

16   makes clear that the product is not itself a Neo4j product. Defendants can also comparatively

17   advertise ONgDB in relation to Neo4J USA's products, however, the trademark guidelines

18   provided on Neo4j USA's website would likely apply to these uses. *Network Automation, Inc.*,

19   638 F.3d at 1153.

20       Defendants further argue that they "have a right to tell consumers they can use Sweden's

21   Neo4J open source software for free instead of paying for USA's commercial license." Cross-

22   Motion at 15. Although Defendants have the right to comparatively advertise their products and

23   refer to Plaintiffs' products in the process, they still cannot use the Neo4j Mark more than

24   necessary and cannot falsely suggest endorsement by Neo4j USA. *See Toyota Motor Sales,*

25   *U.S.A., Inc.*, 610 F.3d at 1176. Defendants' use goes beyond what is necessary to identify

26   ONgDB as a fork of Neo4j by (1) extensively using of "Neo4j' and "Neo4j Enterprise" on iGov

27   

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

and PureThink websites without proper trademark notices; (2) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (4) using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites.  The Court finds that these embedded links to Plaintiffs' sites and links to Plaintiffs' documentation, along with the repeated references to "Neo4j," including in the title of the products themselves, create the misleading perception that Defendants and Plaintiffs are affiliated.  Thus, the Court finds these undisputed facts sufficient to establish that Defendants' use of the Neo4j Mark falsely suggests endorsement by Neo4j USA, and therefore, is not nominative fair use.

Finally, Plaintiffs argue that Defendants' use of the Neo4j Mark on Twitter constitutes infringement and not nominative fair use because Defendants' tweets do not differentiate between Plaintiffs' products and Defendants' products.  For example, on January 23, 2019, GFI tweeted ""#ONgDB (Open #Neo4j Enterprise) 3.4.12 support release is out." Ratinoff Decl., Ex. 105.  All of the tweets that Plaintiffs point to, however, are from GFI, not Defendants.  The GFI Action have settled and there are no arguments that the tweets may be attributed to Defendants in this action.

The Court finds that Plaintiffs have satisfied their burden of proving each essential element of their trademark infringement claim.  Defendants have not produced sufficient evidence that a jury could find in their favor.  Thus, the Court GRANTS Plaintiffs' Motion as to trademark infringement and DENIES Defendants' Cross-Motion as to the same.

### C.  False Advertising Under the Lanham Act and UCL

The elements of a Lanham Act false advertising claim are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

1  caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

2  be injured as a result of the false statement, either by direct diversion of sales from itself to

3  defendant or by a lessening of the goodwill associated with its products." *Align Technology, Inc.*,

4  2019 WL 1586776, at *13 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139

5  (9th Cir. 1997)).

6      Defendants do not dispute that statements made via their websites, email, and social media

7  qualify as commercial advertisements under element one.  Likewise, they do not raise any

8  argument to dispute that statements made through these channels were placed into interstate

9  commerce, as required under element four.  *See Healthport Corp. v. Tanita Corp. of Am.*, 563 F.

10  Supp. 2d 1169, 1178 (D. Or. 2008), *aff'd*, 324 F. App'x 921 (Fed. Cir. 2009) (holding that

11  statements made on website were advertisements placed into interstate commerce);

12  *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 982 (N.D. Cal. 2008) (likelihood of

13  success on interstate commerce element met where defendant had disseminated the misleading

14  statement via email and on its website).

15      Proof establishing these Lanham Act claims will also establish Neo4j USA's UCL claim.

16  "State common law claims of unfair competition and actions pursuant to California Business and

17  Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."

18  *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994); *Acad. of Acad. of Motion Picture*

19  *Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (same).

20          **i.  False Statement**

21      "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that

22  the statement was literally false, either on its face or by necessary implication, or that the

23  statement was literally true but likely to mislead or confuse consumers."  *Southland Sod Farms*,

24  108 F.3d at 1139.  Plaintiffs argue that Defendants have made the following misrepresentations in

25  the advertisement and promotion of ONgDB in interstate commerce via their websites and Twitter.

26

27

28  ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Plaintiffs argue that Defendants have made numerous misrepresentations in their

2 advertisement and promotion of ONgDB.  These statements generally fall into two groups: (1)

3 statements that ONgDB and Neo4j Enterprise are "free and open source" versions of or

4 alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a "drop-in

5 replacement for an existing commercial licensed distribution of the same version number" of

6 Neo4j EE.  *See* Motion at 29-30 (listing ten discreet statements that Plaintiffs allege are false).

7    With respect to the first group of statements, Plaintiffs argue that Defendants'

8 representations that ONgDB is "free and open source" is false because "the Neo4j Sweden

9 Software License did not permit Defendants to remove the commercial restrictions imposed by the

10 Commons Clause."  Motion at 30.  The parties agree that the truth or falsity of Defendants'

11 statements hinge on "the interpretation of Section 7 [of the Neo4j Sweden Software License], and

12 GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."  Cross-

13 Motion at 30; *see also* Plaintiffs' Reply at 18 ("Defendants do not dispute that their marketing of

14 ONgDB as 'free and open source' Neo4j® EE is primarily based on their (mis)interpretation of

15 the Neo4j Sweden Software License and the form AGPLE upon which it was based.").

16    Defendants argue that there is a reasonable interpretation of the Neo4j Sweden Software

17 License that permits licensees, like GFI or Defendants, to remove the Commons Clause and

18 redistribute the software under the standardized AGPL license.  Cross-Motion at 27-30.  The

19 Court disagrees.  In fact, the Court considered precisely this question in the GFI Action and found

20 as follows:

21    Neither of the two provisions in the form AGPLv3 that Defendants point to
      give licensees the right to remove the information at issue.  Section 10 of
22    the AGPLv3, which is incorporated into the Neo4J Sweden Software
      License, states: "You may not impose any further restrictions on the
23    exercise of rights granted or affirmed under this License."  . . . Section 7
      states: "[i]f the Program as you received it, or any part of it, contains a notice
24    stating that it is governed by this License along with a term that is a further
      restriction, you may remove that term."  [] Defendants argue that these
25    provisions mean that "there can be no liability for removing the further
      licensing restrictions which Neo4j incorporated into the license," namely
26    the Commons Clause. [] As Plaintiffs point out, however, the AGPLv3
      defines "you" as the licensee, not the licensor.  Ex. 1 at § 0 ("Each licensee

27

28 ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
   DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1

2

is addressed as 'you'"). Thus, read correctly, Sections 7 and 10 prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* from doing so.

Indeed, it would be contrary to principles of contract and copyright law to interpret these provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted software under terms of its choosing. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may choose to simply exclude others from their work" or "use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions"). Even "[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material." *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008). The Court, therefore, rejects the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.

3

4

5

6

7

8

9

10

11

12

*Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020).

13

14

15

16

17

18

19

Despite this Court's prior ruling on point, Defendants maintain that because the definition of "License" in the Neo4j Sweden Software License is actually the AGPL, licensees may remove any terms in the license that are not in the AGPL pursuant to Section 7. Defendants do not raise any new evidence or arguments to support their interpretation. Defendants also fail to address the Court's reasoning that "further restriction" refers only to further restrictions imposed by a licensee, not the licensor. Thus, the Court finds that Plaintiffs have established that Defendants' statements regarding ONgDB as "free and open source" versions of Neo4j EE are false.

20

21

22

23

24

25

26

The next group of statements Plaintiffs challenge are those that refer to ONgDB as a "drop-in replacement" for Neo4j EE. Plaintiffs argue that ONgDB is not a true drop-in replacement for equivalent versions of Neo4j EE because ONgDB contains source code filed that were wrongly licensed under the AGPL in violation of Neo4j Sweden's copyright and because the software was not of the same quality and did not contain all of the features of Neo4j EE. Motion at 31. Defendants do not argue that ONgDB was of the same quality or that it did offer all of the features of Neo4j EE, rather, they argue that the phrase "drop-in replacement" was not meant to

27

28

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1    signify that the two products were identical.  Cross-Motion at 23-24.

2         In response to an interrogatory, iGov asserted that "no claim is made that ONgDB matches

3    every feature of Neo4j Enterprise Edition."  Ratinoff Decl., Ex. 38 (Defendant iGov Inc.'s

4    Amended Response to Neo4j Sweden AB's Second Set of Interrogatories to iGov Inc) at 17.  iGov

5    further explains that "'[d]rop-in replacement' as used by [iGov] means the ability for a user to

6    copy their data from a neo4j instance and place into an ONgDB instance of the same version and

7    have it function with ONgDB using the cypher language version defined in neo4j core for that

8    version."  *Id.*  Similarly, in his deposition, GFI representative Brad Nussbaum explained that

9    "Drop-in replacement refers more to compatibility of features, so we were able to take a Neo4j

10   3.5.4 version, create a database and just show that it worked with ONgDB at that same version."

11   Ratinoff Decl., Ex. 31 at 160:9-14.

12        Plaintiffs first argue that even if "drop-in replacement" merely indicates compatibility,

13   iGov's representations related to ONgDB versions 3.5 and later are still false.  Mr. Nussbaum

14   admitted in his deposition that after Neo4j EE 3.5 was released entirely closed source, GFI "no

15   longer could . . . reliably guarantee that [ONgDB] was a drop-in replacement" and was unwilling

16   to do the testing to make such compatibility guarantees because it was "too hard to demonstrate"

17   with the Neo4j EE code becoming more divergent.  Fact 101 (Dkt. No. 98-1, Ex. 31 at 188:5-17,

18   188:23-189:23).  Despite GFI's admission that there is no way to prove compatibility without

19   access to the Neo4j EE source code of the same version, iGov continues to make drop-in

20   replacement claims for later versions.  *See, e.g.*, Ratinoff Decl., Ex. 46 ("ONgDB 3.5.8 is a drop-in

21   replacement for Neo4j Enterprise 3.5.8 and so on").  The Court agrees that in light of the

22   undisputed fact that Neo4j EE v3.5 and later versions were all closed source, ONgDB's

23   representations that the equivalent versions of ONgDB were "drop-in replacements" could not be

24   verified and were therefore false or misleading.

25        With respect to Defendants' "drop-in replacement" statements about earlier versions,

26   Plaintiffs argue that Defendants' interpretation of what "drop-in replacement" implies is irrelevant.

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    For the purpose of this false advertising claim, Plaintiffs can prove either that the statement was

2    "literally false" or that the statement was "likely to mislead or confuse consumers." *See Southland*

3    *Sod Farms*, 108 F.3d at 1139;.  The Court therefore considers whether there is a genuine dispute

4    of fact about whether Defendants' "drop in replacement" claims were likely to mislead or confuse

5    consumers.

6        Although the phrase "drop-in replacement" on its own may not necessarily indicate that the

7    software systems were identical, in context, that is precisely what Defendants' statements implied.

8    For example, in an email to a Northwestern University representative, Mr. Suhy stated: "I would

9    recommend using the Neo4j Enterprise fork called ONgDB (Open Native Graph Database) if you

10   want all the enterprise features with no limitations on cores, cluster instances, etc. . . . It is Neo4j

11   Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the

12   same version." *Id.*, Ex. 44.[1]  Similarly, on the "Downloads" page of the iGov website, iGov

13   provides a link to download ONgDB Enterprise 3.5.5, calling it a "[d]rop in replacement for Neo4j

14   Core and Enterprise 3.5.5 AGPLv3 Open Source License, no limitations on causal cluster

15   _____

16   [1] *See also*, *id.*, Ex. 43 (email sent by Mr. Suhy to a representative from the Securities and

     Exchange Commission, Mr. Suhy represented that ONgDB "is just the Neo4j code

18   (https://github.com/neo4j/neo4j) combined with the enterprise code.  It is 100% open source and a

19   drop in replacement for the same Neo4j version."); Ex. 46 (emails with U.S. army, in which Mr.

20   Suhy states that "[a]ll ONgDB distributions are drop-in replacements for Neo4j Enterprise and

21   Neo4j Community as they use the same code base and versioning. Ex: ONgDB 3.5.8 is a drop-in

22   replacement for Neo4j Enterprise 3.5.8 and so on."); Ex. 19 (Sending comparison chart to the

23   National Geospatial Intelligence Agency, asserting that the open source version packaged by iGov

24   is the "same physical software" as Neo4j EE); Ex 21 ("We compile and packaged the open source

25   licen[sed] distributions from the same official Neo4j Github Repositories as Neo4j Inc uses for

26   their paid commercial licensed builds.").

27   Case No.: 5:18-cv-07182-EJD

28   ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    instances, cores, or production usage." *Id.*, Ex. 67.   The site links to Neo4j USA's release notes

2    and website for the same version.  Elsewhere on the website, iGov asserts that "commercial

3    packages available from Neo4j Inc and their partners are essentially support offerings . . . [i]f you

4    do not need support for your ONgDB Enterprise or Neo4j Enterprise open source licensed

5    distribution, then simply download ONgDB Enterprise as a drop in replacement for an existing

6    commercial licensed distribution of the same version number." *Id.*, Ex. 62.  It further provides a

7    chart comparing Neo4j EE and "Neo4j Enterprise open source license," which is captioned:

8    "There are no physical differences between Neo4j Enterprise commercial and AGPL open source

9    licenses!" *Id.*, Ex. 67.  The chart purports to show the differences between the two software

10   products but does not identify or disclaim that there may be source code differences or that

11   ONgDB is not an identical replica of Neo4j EE.

12        The Court finds that the use of "drop-in replacement" in these instances clearly implies that

13   ONgDB "has all the enterprise features" and is essentially the same software as Neo4j EE.  No

14   reasonable consumer would understand these statements to indicate mere compatibility with Neo4j

15   EE.  Thus, the Court concludes that the "drop-in replacement" claims are false or likely to mislead

16   consumers for the purposes of Plaintiffs' false advertising claim.

### ii.  Actual Deception or Tendency to Deceive

18        For the same reasons that Defendants' statements regarding ONgDB as "free and open

19   source" and as a "drop-in replacement" for Neo4j are likely to mislead consumers, they also have

20   a tendency to deceive.  Moreover, Plaintiffs offer evidence that consumers who chose ONgDB and

21   encountered technical issues reached out to Neo4j USA for help, indicating that those consumers

22   thought they were operating genuine Neo4j EE.  *See, e.g.*, Ratinoff Decl. Ex. 115, 121-124.  Thus,

23   the Court finds sufficient evidence that Defendants' misstatements caused actual deception or had

24   a tendency to deceive.

### iii.  Materiality

26        "A finding of consumer deception does not amount to a Lanham Act violation unless the

United States District Court
Northern District of California

1    deception 'is material, in that it is likely to influence the purchasing decision.'"  *R & A Synergy*

2    *LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *12 (C.D. Cal. May 1,

3    2019) (quoting *Southland Sod Farms*, 108 F.3d at 1139).

4            It is undisputed that Defendants made the statements at issue to convince customers to

5    adopt ONgDB over Neo4j EE.  Because Defendants misrepresented ONgDB as a free version of

6    Neo4j EE licensed under the APGL, there is no doubt that this price differential (free versus paid)

7    was likely to influence customers purchasing decisions.  *See Hinojos v. Kohl's Corp.*, 718 F.3d

8    1098, 1106–1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)

9    (recognizing under the UCL that price is material to purchasing decisions).  Thus, the Court finds

10   that Defendants' statements suggesting that customers could obtain a "free and open source drop

11   in replacement" for Neo4j EE were material.

12                           **iv.   Injury**

13           "Under the Lanham Act, the plaintiff must "plead (and ultimately prove) an injury to a

14   commercial interest in sales or business reputation proximately caused by the defendant's

15   misrepresentations."  *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 644 (N.D.

16   Cal. 2019).  "Lost sales for the plaintiff because of the defendant's false advertising is the

17   'paradigmatic direct injury from false advertising.'"  *Id.* (quoting *Lexmark Int'l, Inc. v. Static

18   Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1393, 188 L. Ed. 2d 392 (2014)).

19            Plaintiffs maintain that there is undisputed evidence that Defendants' false statements

20   diverted sales from Neo4j USA.  *See, e.g.*, Ratinoff Decl., Exs. 47-50, 53, 120, 127; Ex. 3 at 53:4-

21   54:25, 224:13-23; Broad Decl., ¶¶ 20-24.  Indeed, Neo4j USA lost multi-year deal when Next

22   Century adopted ONgDB via the Maryland Procurement Office, amounting to over $2.2 million in

23   lost revenue.  Broad Decl., ¶¶ 22-24, Exs. 12-13.  Defendants claim that Plaintiffs have failed to

24   establish that customers like Next Century would have purchased a Neo4j subscription but for

25   Defendants' offering ONgDB as a "free and open source drop-in replacement."  The Court does

26   not find this argument persuasive.  Commercial injury is generally presumed "in false comparative

27

28   Case No.:  5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
                                          29

United States District Court
Northern District of California

1    advertising cases, where it's reasonable to presume that every dollar defendant makes has come

2    directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th

3    Cir. 2011); *see also Lexmark Intern., Inc.*, 134 S. Ct. at 1393 ("diversion of sales to a direct

4    competitor may be the paradigmatic direct injury from false advertising").  Defendants provide no

5    evidence to dispute Plaintiffs' evidence that customers chose ONgDB based on Defendants

6    misrepresentations at the commercial detriment to Plaintiffs.

7         Thus, the Court finds that Plaintiffs have established each element of their claims for false

8    advertising under the Lanham Act and that Defendants have not raised any disputed issues of

9    material fact on which a jury could find in Defendants' favor.  The Court GRANTS Plaintiffs'

10   Motion as to the false advertising claim.

11        Because the Court finds that summary judgment is appropriate as to the Lanham Act

12   claims, the Court also GRANTS Plaintiffs' Motion as to the related UCL claim.  *See Cleary*, 30

13   F.3d at 1262–63.

14                          **D.  False Designation of Origin**

15        Similar to the a false advertising claim, a false designation of origin claim under Section

16   1125(a)(1)(A) requires that Plaintiffs show: (1) the defendants used a false designation of origin;

17   (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause

18   confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or

19   services by another person; and (4) that plaintiff has been or is likely to be damaged.  *Hokto*

20   *Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1039 (C.D. Cal. 2011), *aff'd,* 738 F.3d

21   1085 (9th Cir. 2013) (citing 15 U.S.C. § 1125(a)).

22        Plaintiffs argue that Defendants' holding out of ONgDB as free and open source Neo4j EE

23   constitutes a false designation of origin under the first element.  Defendants argue that "there is an

24   issue of fact on this element because "ONgDB is a fork of Sweden's open source software

25   licensed under the AGPL . . . [and] [t]he designation of origin is, therefore, not false."  Cross-

26   Motion at 22.  Plaintiffs, however, do not challenge statements in which Defendants refer to

27

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
     DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    ONgDB as a "fork" or Neo4j core source code.  Rather, Plaintiffs take issue with Defendants

2    identifying ONgDB as "free and open source" Neo4j EE.  As discussed above, Defendants' claim

3    that ONgDB *is* free and open source Neo4j is false because it relies on an interpretation of the

4    Neo4j Sweden Software License that this Court has rejected.  *See* Section C(i) *supra*.

5         Defendants do not raise any arguments regarding the remaining elements of a false

6    designation of origin claim.  Nevertheless, Plaintiffs must still establish each element of the claim

7    to warrant summary judgment.  There is no dispute that Defendants used the Neo4j Mark to

8    falsely imply origin in interstate commerce (element 2).  Plaintiffs have also established that they

9    have been or are likely to be damaged, as discussed in Section C(iv) *supra* (element 4).

10        As to the likelihood of confusion, "[t]he Ninth Circuit has held that the *Sleekcraft* test is

11   appropriate to determine likelihood of confusion regarding a claim for false designation of origin.

12   *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL 5199434, at

13   *7 (N.D. Cal. Aug. 17, 2020) (citing *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536

14   (9th Cir. 1989)).  The *Sleekcraft* factors include: "(1) [T]he similarity of the marks; (2) the strength

15   of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the

16   defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing

17   channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely

18   to be exercised by purchasers of the defendant's product.  *Align Technology, Inc.*, 2019 WL

19   1586776, at *8 (citing *Fortune Dynamic, Inc.*, 618 F.3d at 1030).

20        For reasons similar to why the Court rejected Defendants' nominative fair use defense, the

21   Court also finds that the *Sleekcraft* factors weigh in favor of finding a likelihood of confusion to

22   establish the third element of Plaintiffs' false designation of origin claim.  Specifically, it is

23   undisputed that the Defendants used the Neo4j Mark (factor 1), which Plaintiffs' have used in

24   commerce since 2007 and which enjoys strong brand recognition in the graph database software

25   market (factor 2).  *See* Broad Decl. ¶¶ 2-19; Ratinoff Decl., Ex. 72 (iGov website recognizing that

26   Neo4j is the "world's leading Graph Database").  There is also no dispute as to the relatedness of

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the products, given that Defendants hold out ONgDB as a free and open source drop-in

2   replacement for Neo4j EE (factor 3).  Although Defendants may assert that their intent was to

3   describe their own products, the evidence also makes clear that Defendants intended to convince

4   consumers to buy Defendants' products instead of Neo4j EE commercial licenses; in other words,

5   Defendants used the Neo4j Mark to unfairly compete with Plaintiffs (factor 4).  As noted above,

6   Plaintiffs have introduced evidence of actual customer confusion (factor 5).  The evidence also

7   shows that both Plaintiffs and Defendants were attempting to gain the business of various

8   government entities, and even bid for the same contracts.  This particularly weighs in Plaintiffs'

9   favor because, as Defendants recognize, government entities prefer cost-effective and open source

10  products where possible (factor 6-8).

11          Thus, the Court finds that Plaintiffs have established each element of their false

12  designation of origin claim.  Defendants have not offered any evidence of a factual dispute

13  sufficient to withstand summary judgment.  The Court, therefore, GRANTS Plaintiffs' Motion as

14  to the false designation of origin claim.

15                    **E.  Injunctive Relief**

16          The Lanham Act vests the Court with the "power to grant injunctions according to

17  principles of equity and upon such terms as the court may deem reasonable, to prevent the

18  violation of any right" of the trademark owner.  15 U.S.C. § 1116(a); *see Century 21 Real Est.*

19  *LLC v. Ed/Var Inc.*, No. 5:13-CV-00887 EJD, 2014 WL 3378278, at *6 (N.D. Cal. July 10, 2014)

20  (issuing a permanent injunction after granting summary judgment on plaintiff's Lanham Act

21  claims).  To obtain an injunction, a plaintiff must show: "(1) that it has suffered an irreparable

22  injury; (2) that remedies available at law, such as monetary damages, are inadequate to

23  compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

24  defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

25  by a permanent injunction."  *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867,

26  879 (9th Cir. 2014).  "The decision to grant or deny such relief is an act of equitable discretion by

27

28

the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 388, 126 S. Ct. 1837, 1838, 164 L. Ed. 2d 641 (2006).

Plaintiffs argue that they have established all the necessary elements and are entitled to injunctive relief.  First, Neo4j USA has suffered and will continue to suffer irreparable harm because Defendants' trademark infringement, false advertising, and false designation of origin damage Plaintiffs' reputation and the goodwill of the Neo4j Mark.  When a plaintiff demonstrates a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable injury if injunctive relief is not granted."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998).  Thus, the Court agrees that Plaintiffs face irreparable harm, not compensable by money damages alone, in the absence of injunctive relief.

The balance of hardships and public interest factors are less straightforward.  Plaintiffs argue that requiring Defendants to comply with the law will impose no cognizable hardship on Defendants and that the public interest is served by preventing consumer confusion.  Motion at 35 (citing *Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC EX, 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012) ("no hardship to cease intentionally infringing someone else's trademark rights"); *Stark v. Diageo Chateau & Est. Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012) ("Preventing consumer confusion serves the public interest")).  Indeed, "[t]he public has an interest in avoiding confusion between two companies' products."  *Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).  However, Defendants argue that they have a legitimate First Amendment interest in using the Neo4j Mark to identify Plaintiffs' products and to comparatively advertise their own products.  Cross-Motion at 32.  Indeed, iGov's business depends on marketing ONgDB, which does include some or all Neo4j CE open source code.

Given the First Amendment interests involved, the Court "may not enjoin nominative use of the mark altogether."  *Toyota Motor Sales, U.S.A., Inc.*, 610 F.3d at 1176.  In *Toyota*, the Court held that if a defendant fails to satisfy all the *New Kids* factors for a nominative fair use defense,

United States District Court
Northern District of California

1   "the district court may order defendants to modify their use of the mark so that all three factors are

2   satisfied."  *Id.*  In other words, the Court may order that if Defendants' products are not "readily

3   identifiable" without use of the Neo4j Mark, Defendants may not use more of the mark than

4   necessary, nor use the mark in any way that suggests sponsorship or endorsement by Plaintiffs.

5   *See New Kids on the Block*, 971 F.2d at 308–09).  But the Court "must [e]nsure that [the

6   injunction] is tailored to eliminate only the specific harm alleged."  *Toyota Motor Sales, U.S.A.,*

7   *Inc.*, 610 F.3d at 1176 (striking down overbroad injunction which prevented "truthful and non-

8   misleading speech").

9        Moreover, the Court recognizes that there are still additional "Phase 2" claims, issues, and

10  defenses to be adjudicated in this case.  Among other defenses, Defendants have raised an

11  "unclean hands" defense, which was reserved for Phase 2 summary judgment motions.

12  Defendants argue that "[a]ll defenses must be considered before any final action may be taken."

13  Cross-Motion at 6.  The Court agrees that it would be improper to impose permanent relief at this

14  stage in the case.

15       Thus, the Court GRANTS Plaintiffs' request for injunctive relief and issues a preliminary

16  injunction enjoining Defendants' use of the Neo4j Mark only to the extent necessary to prevent

17  unlawful use, as detailed below, without prejudice to Plaintiffs renewing their request for a

18  permanent injunction at the conclusion of the case.

19  **IV.    Conclusion**

20       For the reasons stated above, the Court hereby GRANTS Plaintiffs' Motion for Partial

21  Summary Judgment as to Neo4j USA's first, second, third, and fourth causes of action for

22  trademark infringement, false designation of origin and false advertising, federal unfair

23  competition, and state unfair competition, respectively.

24       IT IS FURTHER ORDERED that the Court DENIES Defendants' Cross-Motion as to the

25  same claims.

26       IT IS FURTHER ORDERED that the Court enters the following PRELIMINARY

27

28

United States District Court
Northern District of California

1   INJUNCTION against Defendants as follows.

2          Defendants and their owners, principals, agents, managers, officers, directors, members,

3   servants, employees, successors, assigns, and all other persons acting in concert and participation

4   with them (collectively, the "Enjoined Parties") ARE HEREBY ENJOINED from:

5          1.   Infringing U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J"

6              covering the goods and services in International Classes, 009, 035, 041, 042 and 045

7              (the "Neo4j Mark").

8          2.   Advertising, promoting, representing or referring to ONgDB as a free and open source

9              drop-in replacement of Neo4j Enterprise Edition distributions with the same version

10             number, and any similar statement that may lead consumers to believe that ONgDB is a

11             Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden

12             product.

13         3.   Advertising, promoting, representing, or referring to Neo4 Enterprise or Neo4j

14             Enterprise Edition being released only under the AGPL.

15         4.   Representing that Neo4j Sweden AB's addition of the Commons Clause to the license

16             governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the

17             Commons Clause is lawful, and similar statements.

18         5.   Advertising, displaying or distributing products, literature or any other materials that

19             use the Neo4j Mark to advertise or promote ONgDB in any way that suggests

20             sponsorship or endorsement by Neo4j USA or Neo4j Sweden or that may lead

21             consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is

22             identical to a Neo4j USA or Neo4j Sweden product.

23         6.   Affixing, applying, annexing, or using in connection with the sale of any goods, a false

24             description or representation including words or other symbols tending to falsely

25             describe or represent such goods as being Neo4j products and from offering such goods

26             in commerce.

27

United States District Court
Northern District of California

7. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 1-6 above.

Within three business days of the date of this Order, the Enjoined Parties shall remove all infringing material and enjoined uses of the Neo4j Mark from all websites, webpages, and GitHub repositories owned or managed by the Enjoined Parties.

**IT IS SO ORDERED.**

Dated: May 18, 2021

EDWARD J. DAVILA
United States District Judge