John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406

***mailing address:***
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NEO4J, INC., a Delaware corporation, NEO4J SWEDEN AB, a Swedish corporation,

Plaintiffs,

v.

PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,

Defendants.

AND RELATED COUNTERCLAIMS.

CASE NO. 5:18-cv-07182-EJD

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS RE: DEFENDANTS' SECOND AMENDED COUNTERCLAIMS AND ANSWER TO THIRD AMENDED COMPLAINT**

**[Fed. R. Civ. P. 12(c)]**

Date: January 13, 2022
Time: 9:00 a.m.
Dept.: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. LEGAL ARGUMENT ........ 2

A. The SACC Fails to Allege an Independently Wrongful Act........ 2

1. Defendants Fail to Allege Facts Establishing Section 4.3.2 Violates the Rule of Reason Governing Commercial Contracts ........ 3

2. Defendants' Remaining Arguments Fail to Establish a Violation of Section 16600........ 6

B. Defendants Do Not Address the Other Defects in their IIPEA Claim........ 8

C. Defendants Fail to Address There is No Longer Any Case or Controversy to Assert their Fifth Cause of Action and First Affirmative Defense ........ 10

D. Defendants' Sixth Cause of Action and Second and Sixth Affirmative Defenses Fail to State a Claim ........ 12

E. Granting Defendants Leave to Amend their SACC Would be Futile........ 13

III. CONCLUSION ........ 15




HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

# TABLE OF AUTHORITIES

**Page**

**Cases**


*Albrecht v. Lund*,
845 F.2d 193 (9th Cir. 1988) ........ 15

*Apple, Inc. v. Psystar Corp.*,
586 F.Supp.2d 1190 (N.D. Cal. 2008) ........ 14

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
630 F.Supp.2d 1084 (N.D. Cal. 2009) ........ 11

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
47 Cal.App.4th 464 (1996) ........ 7

*Artifex Software, Inc. v. Hancom, Inc.*,
2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Austin v. McNamara*,
979 F.2d 728 (9th Cir. 1992) ........ 5

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ........ 5, 15

*Cath. Charities CYO v. Chertoff*,
622 F.Supp.2d 865 (N.D. Cal. 2008) ........ 11

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ........ 7

*In re Cipro Cases I & II*,
61 Cal.4th 116 (2015) ........ 4

*D'sa v. Playhut, Inc.*,
85 Cal.App.4th 927 (2000) ........ 5

*Dang v. San Francisco Forty Niners*,
964 F.Supp.2d 1097 (N.D. Cal. 2013) ........ 4

*Dooley v. Crab Boat Owners Ass'n*,
271 F.Supp.2d 1207 (N.D. Cal. 2003) ........ 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ..... 5, 7

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
55 Cal.App.5th 381 (2020) ..... 4, 15

*Foster v. Carson*,
347 F.3d 742 (9th Cir. 2003) ..... 11

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal.5th 1130 (2020) ..... *passim*

*Kendis v. Cohn*,
90 Cal.App. 41 (1928) ..... 12

*King v. Gerold*,
109 Cal.App.2d 316 (1952) ..... 5, 6, 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) ..... 2, 3, 8

*Kremens v. Bartley*,
431 U.S. 119 (1977) ..... 11

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) ..... 15

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
795 F.3d 1124 (9th Cir. 2015) ..... 2, 3, 8

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
202 F.3d 1088 (9th Cir. 2000) ..... 4

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
2 Cal.5th 505 (2017) ..... 8, 9

*Schneider v. Calif. Dep't of Corrections*,
151 F.3d 1194 (9th Cir. 1998) ..... 3

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
983 F.Supp. 1303 (N.D. Cal. 1997) ..... 10

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ..... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Steffel v. Thompson*,
415 U.S. 452 (1974) ........ 11

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ........ 9

*Tanaka v. University of Southern California*,
252 F.3d 1059 (9th Cir. 2001) ........ 4, 11

*Telesaurus VPC, LLC v. Power*,
623 F.3d 998 (9th Cir. 2010) ........ 14

*Universal Gym Equip., Inc. v. ERWA Exercise Equip. Ltd.*,
827 F.2d 1542 (Fed. Cir. 1987) ........ 5, 6, 7, 13

*Weisbuch v. Cty. of L.A.*,
119 F.3d 778 (9th Cir. 1997) ........ 15

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*,
42 Cal.App.4th 507 (1996) ........ 9, 10

**Statutes**

Bus. & Prof. Code, § 16600 ........ *passim*

**Other Authorities**

Fed. R. Civ. Proc., 8(c)(1) ........ 11

Fed. R. Civ. Proc., 12(b)(6) ........ 3, 14

## I. INTRODUCTION

Defendants skirt around the main defect in their Intentional Interference with Prospective Economic Advantage ("IIPEA") claim identified by Plaintiffs in their moving papers – they can no longer rely on allegations the restrictions in Section 4.3.2 of the Partner Agreement are automatically void as a matter of public policy in light of *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130 (2020). Since this is the only allegation in Defendants' Second Amended Counterclaim ("SACC") purporting to establish an independent wrongful act by Neo4j, Inc. ("Neo4j USA"), their IIPEA claim fails as a matter of law. For this same reason, Defendants' Fifth Cause of Action for Declaratory Relief and First Affirmative Defense asserted in their Answer to the Third Amended Complaint ("Answer") are no longer legally viable.

Defendants' unsupported assertion that these claims and affirmative defense can be salvaged under the "rule of reason" is fundamentally flawed. There are no facts alleged – and none proposed to be added via amendment – that establish the relevant market and that Neo4j USA has market power within such market, which is necessary under California law to establish that Section 4.3.2 violates the rule of reason. Nor can Defendants establish that Section 4.3.2 amounts to an unlawful restraint on trade because a manufacturer's own products cannot as a matter of law comprise a relevant product market. Likewise, Defendants' allegations that they were injured as competitors of Neo4j USA would negate any attempt by them to establish a violation of the rule of reason. To establish an unlawful restraint on trade based on the rule of reason, Defendants must allege harm to competition in the market. Consequently, granting them leave to amend their First and Fifth Causes of Action and First Affirmative Defense would be futile.

Defendants also fail to recognize their admission that the restrictions in Section 4.3.2 expired in July 2020 means there is no current case and controversy that would give this Court jurisdiction over their Fifth Causes of Action and First Affirmative Defense under the Declaratory Judgment Act. The same is true with Defendants' Sixth Cause of Action, and Second and Sixth Affirmative Defenses, which seek a declaration that Sections 4.3.1 and 4.3.2 of the Partner Agreement constitute "additional restrictions" and violate the terms of the AGPL. Since these restrictions are no longer in force or effect by their own terms, the question of whether these

provisions violate the AGPL is moot. Accordingly, the Court should grant a judgment on the pleadings in favor of Neo4j USA and dismiss these claims and defenses with prejudice as there are no set of facts alleged by Defendants that could revive these claims and defenses.

## II. LEGAL ARGUMENT

### A. The SACC Fails to Allege an Independently Wrongful Act

Defendants allege that Neo4j USA interfered with their prospective economic relationships by telling potential customers Defendants could not provide support services to licensees of open source versions of Neo4j software for a period of 36 months pursuant to Section 4.3.2 of the Partner Agreement. Dkt. No. 72, ¶ 27. There is no debate that Defendants must plead and prove that these acts are wrongful apart from the interference itself. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1154 (2003).

Defendants concede that *Biogen* confirms non-compete provisions in contracts entered into between businesses are not void as a matter of public policy pursuant to Section 16600. *See* Dkt. No. 137 at 5:11-6:1. Remarkably, Defendants then claim the SACC does not allege Section 4.3.2 of the Partner Agreement amounts to a per se violation of Section 16600. *Id.* at 6:2-3. This is contrary to their prior representation to the Court that "this provision restricting them from engaging is certain business practices for three years violated public policy pursuant to [] §16600." Dkt. No. 58 at 3:19-21. Defendants also conclusively allege in the SACC that

> The Partner Agreement seeks to restrict partners from working with the open source version of Neo4j software during the Partner Agreement and for 3 years after termination. But these restrictions are invalid under California Business and Professions Code §16600.
>
> * * *
>
> NEO4J USA's interference was an independent wrongful act as it violated California Business and Professions Code §16600

*See* Dkt. No. 137, ¶¶ 13, 29; *see also* Dkt. No. 137, ¶¶ 55-57 and Dkt. No. 91 at 14:4-22. Since Defendants do not allege any other independently wrongful act, their IIPEA claim must fail as a matter of law. *See Korea Supply Co.,* 29 Cal.4th at 1154; *accord Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th Cir. 2015) (recognizing that under *Korea Supply* "the failure to sufficiently allege a wrongful act outside of the interference itself

forecloses an interference with prospective economic advantage claim”).

**1. Defendants Fail to Allege Facts Establishing Section 4.3.2 Violates the Rule of Reason Governing Commercial Contracts**

Defendants claim that *Biogen* still allows businesses to challenge contractual restrictions as a restraint on trade under the “rule of reason.” Dkt. No. 137 at 5:12-6:1. Yet, assert “it is unclear if claims by entities must now allege the restriction violates the rule of reason.” *Id.* at 6:3-5. This is a disingenuous assertion because it was conclusively established long ago that Defendants must allege facts establishing an independent wrong to maintain their IIPEA claim. *See Korea Supply,* 29 Cal.4th at 1154; *Name.Space, Inc.*, 795 F.3d at 1134.

Defendants claim the now-expired restriction imposed by Section 4.3.2 is a restraint on trade because it prevents them from using or supporting Neo4j Sweden’s open source software. Dkt. No. 137 at 5:14-19. This somehow constitutes a “total suppression of competition” because Neo4j USA is “preventing knowledge [sic] people from supporting the open source software” and “can charge money for the same software.” *Id.* at 5:16-18. Other than not making any sense, this argument is untethered to any ultimate facts alleged in the SACC. *See Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (“‘new’ allegations contained in the [plaintiff]’s opposition ... are irrelevant for Rule 12(b)(6) purposes”).

More importantly, Defendants do not understand what constitutes an unlawful restraint on trade. A contract amounts to a restraint on trade where it creates a monopoly, restricts supply, or fixes prices. *Biogen*, 9 Cal.5th at 1154. However, “[c]ontracts with the purpose and effect of promoting trade and competition are valid even if their terms incidentally restrain commercial freedom in some way.” 9 Cal.5th at 1156. As recognized by the *Biogen* court, “[b]usinesses engaged in commerce routinely employ legitimate partnership and exclusive dealing arrangements, which limit the parties’ freedom to engage in commerce with third parties. *Id.* at 1160–61. Thus, the reasonableness of contractual restraints on business operations and commercial dealings, must “be read in accordance with the Cartwright Act….” *Id.*

“The rule of reason weighs the anticompetitive effects of the conduct in the relevant market against its procompetitive effects, and determines whether, on balance, the practice harms

competition. *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal.App.5th 381, 400 (2020). In particular, the court examines "facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption." *In re Cipro Cases I & II*, 61 Cal.4th 116, 146 (2015) (cited by Defendants); *accord Biogen*, 9 Cal. 5th at 1151 (quoting same). To state a valid antitrust claim based on the rule of reason,

> a plaintiff must allege that the defendant has market power within a legally cognizable relevant market. "[T]he plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." A plaintiff must delineate a relevant market and show that the defendant plays enough of a role in that market to impair competition significantly.

*Dang v. San Francisco Forty Niners*, 964 F.Supp.2d 1097, 1104 (N.D. Cal. 2013) (internal citations omitted). Thus, a plaintiff fails to state a claim based on the rule of reason when it fails to identify the relevant market or fails to allege defendant has market power within such market. *See Tanaka v. University of Southern California*, 252 F.3d 1059, 1062–63 (9th Cir. 2001) (affirming dismissal where plaintiff failed to identify an "appropriately defined" market and failed to allege defendant's conduct had "significant anticompetitive effects within a relevant market"); *see also Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000) ("[t]he Cartwright Act is patterned after the Sherman Act, and federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act") (internal quotes and citations omitted).

Defendants do not allege that Neo4j Software is the only graph database software available in that market. Indeed, there are ***no facts*** alleged in the SACC identifying the relevant market or that Neo4j USA has market power therein. The SACC also fails to explain how Section 4.3.2 of the Partner Agreement restricts ***overall competition*** or otherwise harms competition in ***any*** relevant market. Rather, citing to Neo4j USA's email informing the IRS it had terminated its agreement with PureThink, Defendants allege that Section 4.3.2 restricted only PureThink's ability to support open source Neo4j Software for a period of 36 months. *See* SACC at 5:18-22, 9:11-20, 11:1-15 and Exh. D. This is insufficient as a matter of law because "antitrust law generally does not view the elimination of a particular competitor—without more—as harm to competition." *Flagship*

*Theatres*, 55 Cal.App.5th at 420; *see also Brantley v. NBC Universal, Inc.,* 675 F.3d 1192, 1200 (9th Cir. 2012) (plaintiff claiming unlawful restraint on trade based on the rule of reason must allege harm to competition in the market and cannot succeed by merely showing harm to itself as a competitor); *Austin v. McNamara*, 979 F.2d 728, 738–739 (9th Cir. 1992) (plaintiff "was required to show not merely injury to himself as a competitor, but rather injury to competition").

Defendants also misapprehend the additional authority cited by Plaintiffs establishing that the contractual provision in question does not violate Section 16600 as a matter of law. In particular, Plaintiffs argued that PureThink cannot claim that Section 4.3.2 is invalid because PureThink agreed to be bound by a specific license to support and distribute Neo4j Software in exchange for good and valuable consideration. *See* Dkt. No. 132 at 7:26-8:7. Rather than directly address this point, Defendants argue by analogy that "firing a person who refuses to sign an agreement with a restrictive convent is actionable." *See* Dkt. No. 137 at 3:23-4:3.

This analogy misses the mark because, as discussed above, contractual limitations on business operations and commercial dealings are treated differently under Section 16600 than contracts between employers and employees. *See Biogen*, 9 Cal. 5th at 1158-60. Thus, *D'sa v. Playhut, Inc.,* 85 Cal.App.4th 927 (2000), a wrongful termination case brought by an employee against their employer, is inapplicable. It is also distinguishable because Defendants do not allege in the SACC that Neo4j USA coerced PureThink to enter into the Partner Agreement. *See Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim").

Defendants' attempt to distinguish *Universal Gym* by arguing it did not involve "an unlawful restrictive convent" also misses the mark. *See* Dkt. No. 137 at 4:4-12. This case stands for the proposition that it is ***lawful*** to limit a party's right to use the features and designs of product it obtained a license to manufacture after termination of that agreement. *Universal Gym Equip., Inc. v. ERWA Exercise Equip. Ltd.,* 827 F.2d 1542, 1550 (Fed. Cir. 1987). Contrary to Defendants, *King v. Gerold*, 109 Cal.App.2d 316 (1952) similarly holds that barring a licensee from making the licensed product if the license was not renewed does not violate Section 16600 since the licensee

/ / /

could still make other competing products.[1]

These cases are instructive here. Prior to entering into the Partner Agreement, PureThink was free to provide support services to licensees using Neo4j Software under the AGPL. *See* Dkt. No. 72, ¶¶ 9, 30. PureThink voluntarily entered into the Partner Agreement and obtained tangible benefits, such as a 25% commission and access to confidential sales and customer information, in exchange for giving up the right to offer or provide support services to licensees of open source Neo4j Software for 36 months after termination of that agreement. *See* Dkt. No. 72, ¶ 12 and Exh. B (p. 53 of 63). If anything, the Partner Agreement is ***less*** restrictive than those in *Universal Gym* and *King,* which imposed indefinite post-termination restrictions on the licensees.

Defendants further ignore that there were no restrictions in Section 4.3.2 on PureThink's right to provide support services for end-users that purchase a commercial license for Neo4j Software or end-users of any other graph database software. As a result, Defendants cannot claim establish the necessary independent wrong because Section 4.3.2 is not a restraint on trade and thus does not violate Section 16600.

**2. Defendants' Remaining Arguments Fail to Establish a Violation of Section 16600.**

In an attempt to save their IIPEA claim, Defendants make additional arguments that are not supported by allegations in the SACC or are contrary to law. In this regard, Defendants assert the restrictions in Section 4.3.2 are unlawful because Neo4j Software source code licensed on an open source basis is not a trade secret. *See* Dkt. No. 137 at 5:5-10. This ignores that in exchange for agreeing to the restrictions imposed by the Partner Agreement, PureThink obtained access to Neo4j USA's proprietary customer database, sales and marketing material and pricing information

[1] Defendants attempt to distinguish this case by arguing that it speaks to an employer's right to protect its proprietary information by restricting its employee's use thereof. *See* Dkt. No. 137 at 4:18-5:4. Defendants misconstrue *King*, which involved a trailer designer granting a license to a trailer manufacturer. This was a commercial relationship, not an employer-employee relationship. *King,* 109 Cal.App.2d at 317-18 ("Appellant is not thereby prohibited from carrying on his lawful business of manufacturing trailers but is barred merely from manufacturing and selling trailers of the particular design and style invented by respondent who in the first instance licensed appellant to use such design for a limited time only.").

pursuant to the confidentiality provisions therein. *See* Dkt. No. 72, Exh. B at § 3 and Dkt. No. 72 at p. 53 of 63. As such, it was reasonable for Neo4j USA to restrict PureThink's ability to use such proprietary and confidential information to compete with Neo4j USA in providing support for Neo4j Software for a certain period of time after termination. *See Universal Gym Equip*., 827 F.2d at 1551 (non-compete clause was valid under California law despite its lack of "temporal and geographic limitations" because it did not prohibit defendant from competing altogether—rather, merely limited the use of plaintiffs' actual confidential and non-confidential proprietary features, designs, technical knowledge, and know-how); *see also King*, 109 Cal.App.2d at 318.

Defendants' attempt to turn their IIPEA claim into an employee mobility case fares no better. Without citing to any facts alleged in the SACC, Defendants suggest that because Neo4j USA alleges that Suhy is the alter ego of PureThink, Section 4.3.2 can be construed as unlawful restriction on employee mobility, which is a per se violation of Section 16600. Dkt. No. 137 at 6:8-22. This is untenable since immediately before making this argument, Defendants assert that the SACC does ***not*** allege such a per se violation. *Id.* at 6:2-3. It is also irrelevant what Plaintiffs may allege in their complaint since the Court only looks to the legal sufficiency of the allegations in the challenged pleadings for the purposes of ruling on the present motion. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In this regard, Defendants only allege that PureThink is a signatory to the Partner Agreement, and do not assert the IIPEA claim on behalf of Suhy. *See* Dkt. No. 72, ¶¶ 15, 35-43. Thus, Defendants are asking the Court to make an unwarranted inference. *See Epstein*, 83 F.3d at 1140.

Even if Plaintiffs' alter ego allegations could be considered part of the SACC, Defendants are misrepresenting them to the Court. In their operative complaint, Plaintiffs only allege that iGov is the alter ego of PureThink, and do not allege that Suhy is the alter ego of PureThink or iGov. *See* Dkt. No. 90, ¶¶ 9-14, 42, 141. Consequently, Defendants' "employee alter ego" arguments are based on a false premise, and as a result, the Court should disregard them.

Finally, Defendants do not dispute that *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal.App.4th 464 (1996) stands for the proposition that truthful statements about standard business practices are "not wrongful conduct actionable as intentional interference with

prospective economic relations." Dkt. No. 137 at 6:24-7:7. In doing so, Defendants effectively concede that if the restrictions imposed by Section 4.3.2 do not violate Section 16600, then Neo4j USA's alleged communications to potential customers about those restrictions ***cannot*** constitute an independent wrong. *See* Dkt. No. 72, ¶¶ 27-29. It then logically follows that because the SACC fails to plausibly allege any other independently wrongful act, their IIPEA fails as a matter of law. *See Name.Space, Inc*. 795 F.3d at 1133 (recognizing that an IIPEA claim "requires that the defendant's conduct be 'wrongful by some legal measure other than the fact of interference itself'") (quoting *Korea Supply,* 29 Cal.4th at 1154).

**B. Defendants Do Not Address the Other Defects in their IIPEA Claim**

Plaintiffs argue in their moving papers that the SACC fails to allege sufficient facts establishing that a real economic relationship was actually disrupted. *See* Dkt. No. 132 at 9:28-11:2. In response, Defendants argue that their listing specific entities and the purported "exclusivity agreement" with Neo4j USA to sell Government Edition meets this requirement. Dkt. No. 137 at 7:14-22. These allegations fall well short of what is required to plead an IIPEA claim.

First, Defendants cannot predicate their claim on the exclusivity agreement for the Government Edition of Neo4j Software because Neo4j USA was a party to that agreement. *See Korea Supply Co.*, 29 Cal. 4th at 1153. That agreement is alleged to be "a separate and distinct agreement from the Partner Agreement" for that version of the software and does not contain any post-termination restrictions. *See* Dkt. No. 72, ¶¶ 16, 50 and Exh. C. It also cannot logically establish any ***prospective*** relationship with third parties because Defendants allege that Neo4j USA terminated it ***prior*** to engaging in the alleged acts of interference. *See* Dkt. No. 72 at 9:11-14.

Second, Defendants fail to address that the SACC merely alleges in a conclusory manner that Defendants had "an economic relationship with the possibility of future economic relationships" and were "working on potential business opportunities" with a laundry list of third parties. Dkt. No. 72 at ¶¶ 23-25. The economic relationship element of an IIPEA claim "has two parts: (1) an existing economic relationship that (2) contains the probability of an economic benefit to the plaintiff." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal.5th 505, 512 (2017). An IIPEA claim "protects the expectation that the relationship eventually will yield the desired benefit,

not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise." *Id.* at 516 (internal quotations and citation omitted); *see also Westside Ctr. Assoc. v. Safeway Stores 23*, *Inc.*, 42 Cal.App.4th 507, 523 (1996) (plaintiffs must plead facts showing that it is reasonably probable that they would have received some expected benefit).

There are also no facts alleged in the SACC plausibly establishing that these "business opportunities" were real, i.e. Defendants were in actual contractual negotiations or had responded to request for proposal for supporting open source Neo4j Software. Rather, these allegations are speculative and conclusory, and thus are insufficient to establish it was reasonably probable that Defendants would have received some expected benefit had it not been for Neo4j USA's wrongful interference. *See Sybersound Recs., Inc. v. UAV Corp*., 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal of interference claim that set forth only general allegations of relationships being disrupted, as opposed to a lost contract or failed negotiation); *accord Dooley v. Crab Boat Owners Ass'n*, 271 F.Supp.2d 1207, 1216-17 (N.D. Cal. 2003) ("economic relationship must be either in the form of a contract or an existing relationship with an identifiable third party").

Defendants' reliance on Paragraph 31 as evidencing Neo4j USA's communications with third parties does not change things. *See* Dkt. No. 137 at 7:21-22. This paragraph merely alleges that "PureThink and iGov's relationship with the Agencies and companies was actually and totally disrupted by NEO4J USA's wrongful interference." *See* Dkt. No. 72, ¶ 31. There are no substantive facts alleged elsewhere in the SACC to support such conclusory allegations.

Finally, Defendants' reliance on allegations about its relationship with the IRS do not save its IIPEA claim. *See* Dkt. No. 137 at 7:23-8:8. While the SACC alleges that PureThink had a contract with the IRS, it does not allege any facts plausibly establishing that Neo4j USA's July 11, 2017 letter to the IRS disrupted a ***future economic benefit*** expected from the IRS *See* Dkt. No. 72, ¶ 20. Defendants argue that this letter was dated before the expiration of that contract, but there are no facts alleged in the SACC that would permit a reasonable inference that IRS terminated the existing contract, let alone refuse to renew or enter into a new contract due to that letter.

Even if it were sufficient to establish an IIPEA claim as to the IRS, there are still no facts alleged in the SACC that PureThink had a lost contract or a failed negotiation with any of the other

entities identified in the SACC.[2] *See* Dkt. No. 72, ¶¶ 23-24. Likewise, there are no such facts alleged for any of the entities iGov claims to have had prospective economic relations. *See id.,* ¶ 25. Instead, Defendants conclude that they were "working on potential business opportunities with the possibility of future economic relationships," and that Neo4j USA's "interference was intended to and did disrupt the economic relationship between PureThink, iGov and the Agencies and companies." This is not enough to establish a reasonable inference. *See Westside Ctr. Assoc.*, 42 Cal.App.4th 507, 522 (1996) ("[t]he law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained the probability of future economic benefit to the plaintiff") (internal quotes and citations omitted); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1311-12 (N.D. Cal. 1997) (dismissing IIPEA claim where complaint did not provide facts alleging an actual disruption to negotiations or potential contracts).[3] Therefore, at minimum, the Court should dismiss the IIPEA claim asserted by iGov, and to the extent PureThink bases its IIPEA claim on "agencies and companies" other than the IRS.

### C. Defendants Fail to Address There is No Longer Any Case or Controversy to Assert their Fifth Cause of Action and First Affirmative Defense

Defendants argue that they can still seek a determination that Section 4.3.2 violates Section 16600 because it will allow them to revive prior relationships "tarnished" by Neo4 USA's alleged enforcement of that provision. *See* Dkt. Not. 137 at 8:24-9:8. This defies logic since nothing has stopped them from reviving them after it expired over a year ago, and there is nothing in the SACC to allow a reasonable inference to the contrary. *See* Dkt. No. 100 at 17:19-23 (Defendants admitting that the restrictions in Section 4.3.2 of the Partner Agreement "invalid or not, expired July 11, 2020"). Indeed, Defendants do not allege in the SACC that a customer refused to retain them ***after***

---

[2] While Defendants allege PureThink "did deals" with MPO, Sandia National Laboratories, the FBI and the IRS in the past, they only allege facts suggesting that an existing deal with the IRS was allegedly disrupted by Neo4j USA and say nothing as to any future, concrete opportunity with these other entities. *See* Dkt. No. 72, ¶¶ 18, 20-21.

[3] Ironically, Defendants attempt to distinguish *Silicon Knights* by arguing that the IIPEA claim in that case was dismissed because the defendant "did not explain the nature of the relationship or how they were disrupted." Dkt. No. 137 at 8:10-12. This is exactly what Defendants fail to do here.

Defendants were no longer restricted by that provision.

Defendants also completely ignore the legal precedent cited in Plaintiffs' moving papers that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974). Because Defendants admit this provision, "invalid or not," has expired, the issue is moot thereby depriving this Court jurisdiction under the Declaratory Judgment Act. *See Kremens v. Bartley*, 431 U.S. 119, 128–29 (1977); *see also Foster v. Carson*, 347 F.3d 742, 747 (9th Cir.2003) ("[w]e do not have the constitutional authority to decide moot cases"); *Cath. Charities CYO v. Chertoff*, 622 F.Supp.2d 865, 879 (N.D. Cal. 2008) ("[a] federal court has no authority to give opinions on moot questions").

Even assuming jurisdiction remained, Defendants' Fifth Cause of Action and First Affirmative Defense still fail as a matter of law. As detailed above, Defendants concede that a commercial contract restricting one party from competing with the other is ***not*** automatically void pursuant to Section 16600. Since there are no facts alleged plausibly establishing that Section 4.3.2 constitutes an unlawful restraint on trade by violating the rule of reason, Defendants' declaratory relief claim and mirror defense fail as a matter of law. *See Tanaka*, 252 F.3d at 1062–63.

Nonetheless, Defendants assert that they are still entitled to assert an affirmative defense based on the "illegality" of Section 4.3.2. See Dkt. No. 137 at 9:5-8. FRCP 8(c)(1) requires the assertion of such a defense to avoid waiver, and has no bearing on the legal merits of such a defense. In this regard, it is not legally viable in light of Defendants' previous admission that Neo4j USA is not asserting a breach of contract claim based on Section 4.3.2. *See* Dkt. No. 72, ¶ 13; *see also* Dkt. No. 90 at ¶¶ 134-147 (Neo4j USA's claim for breach of contract based on only Sections 3.1, 4.1 and 7.3 of the Partner Agreement).

Finally, Defendants reliance on *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co*., 630 F.Supp.2d 1084 (N.D. Cal. 2009) for the proposition that they may continue to assert a declaratory relief claim based on Section 16600 is misplaced. This was a summary judgment case where the plaintiff-employer sought to enforce an inventions assignment provision in an employment agreement and defendant-employees sought declaratory relief that the provision violated Section 16000. The issue of whether jurisdiction under Declaratory Judgment

Act over this claim was not decided by the court in that case. Moreover, unlike the present case where the provision in question has expired and Neo4j USA is not asserting a claim based thereon, there was an actual case and controversy over the enforceability of that provision. Accordingly, the Court should grant a judgment on the pleadings in favor of Neo4j USA on Defendants' Fifth Cause of Action and First Affirmative Defense and dismiss them with prejudice.

### D. Defendants' Sixth Cause of Action and Second and Sixth Affirmative Defenses Fail to State a Claim

Defendants fail to provide a viable legal basis for their Sixth Cause of Action and Second and Sixth Affirmative Defenses, which seek a declaration that Sections 4.3.1 and 4.3.2 of the Partner Agreement constitute "additional restrictions" in violation of Section 10 of the AGPL. In particular, their assertion that Neo4j USA is somehow bound by the AGPL because Neo4j USA offered a commercial version of Neo4j Software based on Neo4j Sweden's open source version is not a legally cognizable basis to seek declaratory relief. *See* Dkt. No. 137 at 9:19-21.

As an initial matter, Neo4j USA is not a party to the AGPL. *See* Dkt. No. 72, ¶ 7 and Exh. A. Thus, Neo4j USA was not legally bound by the terms of the AGPL when it entered into the Partner Agreement with PureThink. *See Kendis v. Cohn*, 90 Cal. App. 41, 61 (1928) ("[i]t is a proposition of law, so well established as to be almost axiomatic, that a party cannot be charged upon a contract to which he is not a party"). Even if Neo4j USA were somehow legally bound, there is no inherent conflict. As recognized by another court in this District a licensor may distribute software on an open source basis via the APGL, while simultaneously requiring an end-user to obtain a commercial license. *See Artifex Software, Inc. v. Hancom, Inc.*, 2017 WL 1477373, at *3 (N.D. Cal. Apr. 25, 2017) (licensor could assert a breach of contract claim where it used a dual-licensing model based on the GPL and APGL, and includes a notice provision in those licenses where the a licensee must abide by the terms thereof or obtain a commercial license from the licensor). To be sure, PureThink acknowledged and accepted the validity of this dual-licensing model when it entered into the Partner Agreement. *See* Dkt. No. 72, Exh. B.

Conversely, Defendants do not cite any legal authority to support their "joint author ownership rights" theory. *See* Dkt. No. 137 at 9:21-22. Nor are there any plausible facts alleged

in the SACC explaining how the terms of the AGPL would subject Neo4j USA to joint author ownership rights or otherwise be bound by its terms.

Defendants' argument that Neo4j USA "cannot evade the limitations to restrictions in the AGPL by adding restrictions in a Partner Agreement" fares no better. This Court has already rejected Defendants' view that Sections 7 and 10 of the AGPL do not allow a licensor to add "further restrictions" to that license. Even under Defendants' reading of the AGPL, any such restrictions would have to be transmitted with the software in question, not in a separate agreement. Dkt. No. 72, Ex. A § 10 ("If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term."). PureThink also voluntarily gave up their right to use open source Neo4j Software when it entered into the Partner Agreement, and cannot now claim there is any conflict between the terms of that agreement and the AGPL. *See Universal Gym Equip.*, 827 F.2d at 1550.

Finally, Defendants fail to reconcile that all of the provisions in the Partner Agreement they claim to be "further restrictions" are no longer in force by their own terms. The restrictions imposed by Section 4.3.1 only lasted for the term of the Partner Agreement, and as admitted by Defendants, the restrictions imposed by Section 4.3.2 expired in July 2020. *See* Dkt. No. 72, Exs. B, D; Dkt. No. 100 at 17:19-23. As discussed above and in Plaintiffs' moving papers, there is no jurisdictional basis under the Declaratory Judgment Act because the issue of whether these provisions violate the AGPL are moot. *See* Dkt. No. 132 at 11:4-12:7, 214:14-27. Accordingly, the Court should grant a judgment on the pleadings in favor of Plaintiffs on Defendants' Sixth Cause of Action, and Second and Sixth Affirmative Defenses, and dismiss them with prejudice.

**E. Granting Defendants Leave to Amend their SACC Would be Futile**

Defendants request leave to amend, while at the same time claiming that "[i]t is unclear if an entity claimant on an interference claim must also allege the restriction violates the rule of reason…." Dkt. No. 137 at 10:10-22. This rings hollow since the *Biogen* court explained at length that Defendants must allege facts establishing that Section 4.3.2 violates Section 16600 pursuant to long-standing "rule of reason" analysis under the Cartwright Act. *See Biogen*, 9 Cal.5th at 1150-1162. The *Biogen* court made clear that this was necessary to establish an independently wrongful

act for an intentional interference claim.[4] *Id.* at 1148.

Defendants have known about the impact of *Biogen* on the claims and defenses subject to this Motion for over a year and did nothing to address it in their pleadings. *See* Dkt. No. 62 at 3:15-4:7, 6:11-18. They also acknowledged during meet and confer that they would need to establish that the restrictions at issue violated the rule of reason. Dkt. No. 132-1, Ex. 2 ("We disagree *Ixchel's* holding is as you stated. In that case, they apply the rule of reason which considers the anticompetitive nature of the restrictions."). Thus, there is no excuse for Defendants' continuing failure to allege facts that plausibly establish that Section 4.3.2 actually harmed competition in the relevant market and that any procompetitive justifications for the conduct did not outweigh that harm. *See Biogen*, 9 Cal.5th at 1150-1151. Defendants' failure to identify facts in their Opposition that would plausibly establish the violation of the rule of reason reconfirms that granting them leave to amend would be futile. *See Somers v. Apple, Inc*., 729 F.3d 953, 960 (9th Cir. 2013) (plaintiff's claim she "might later establish some set of undisclosed facts" establishing antitrust injury not enough to survive Rule 12(b)(6) motion).

As noted in Plaintiffs' moving papers, the Court should deny leave to amend where the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Such is the case here. In particular, Defendants' claims and defenses asserting that Section 4.3.2 violates Section 16600 are premised on how Neo4j USA contracts with partners in the sale and support of Neo4j Software. This cannot as a matter of law establish an unlawful restraint on trade because "a manufacturer's own products do not themselves comprise a relevant product market." *See Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) (recognizing that a company does not violate antitrust laws "by virtue of the natural monopoly it holds over its own product").

Moreover, Defendants allege that Section 4.3.2 only prevented them from competing with

---

[4] *Biogen* addressed the question whether a plaintiff asserting an intentional interference claim based on an at-will contract needed to allege an independently wrongful act. The *Biogen* court concluded that such a claim was akin to claim intentional interference prospective economic advantage, and thus required such a showing. 9 Cal.5th at 1140-1148.

Neo4j USA in supporting open source Neo4j Software, not commercially licensed Neo4j Software or any other graph database software. Thus, they cannot establish as a matter of law that this provision amounted to an unlawful restraint on trade. *See Flagship Theatres*, 55 Cal.App.5th at 420; *Brantley*, 675 F.3d at 1200. Accordingly, it would be futile to grant Defendants leave to amend their IIPEA claim, Fifth Cause of Action for Declaratory Relief and First Affirmative Defense, which all hinge on them establishing that Section 4.3.2 violates the rule of reason. *See Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012) (a court should not grant leave to amend "where doing so would be an exercise in futility"); *see also Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (recognizing that a party may plead itself out of court where that party alleges facts establishing that it cannot prevail on its claim).

The Court should also deny Defendants leave to amend their Fifth and Sixth Causes of Action, along with related First, Second and Sixth Affirmative Defenses. There is no dispute that the cited provisions in the Partner Agreement are no longer enforceable by their own terms. Defendants' request for declaratory judgment deeming those restrictions void is therefore moot and must be dismissed for lack of jurisdiction. As a result, granting Defendants leave to amend would be futile. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Court grant this motion for judgment on the pleadings and dismiss (a) the First, Fifth and Sixth Causes of Action asserted in the SACC; and (b) the First, Second, and Sixth Affirmative Defenses asserted in Defendants' Answer to the Third Amended Complaint with prejudice.

Dated: October 7, 2021

HOPKINS & CARLEY
A Law Corporation

By: */s/ Jeffrey M. Ratinoff*
Jeffrey M. Ratinoff
Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB