UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PURETHINK, LLC, et al.,<br><br>    Defendants. | Case No.  5:18-cv-07182-EJD<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 132 |

This action involves disputes relating to Defendants PureThink LLC's, iGov Inc.'s, and John Mark Suhy's (collectively, "Defendants") use of graph database management software belonging to Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden," collectively with Neo4j USA, "Plaintiffs").  Plaintiffs assert various claims arising out of Defendants' continued use of the Neo4j mark after Defendants' license expired, while Defendants assert counterclaims for interference with prospective economic advantage and declaratory relief.

Presently before the Court is Plaintiffs' motion for judgment on the pleadings ("Motion") to dismiss Defendants' First, Fifth, and Sixth Counterclaims, as well as Defendants' First and Second Affirmative Defenses.  ECF No. 132.  On January 4, 2022, the Court took the Motion under submission without oral argument pursuant to Civil L.R. 7-1(b).  ECF No. 139.  Having considered all briefs filed in support of and opposition to the Motion, the Court GRANTS IN PART Plaintiffs' Motion.

**I.  FACTUAL BACKGROUND**

The Court has previously set forth the facts at length on multiple occasions (*see* ECF Nos. 70, 85, 118) and, accordingly, will summarize here only the facts pertinent to this Order.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

1

### A. Plaintiffs and NEO4J Software

Plaintiff Neo4j USA is a Delaware corporation in San Mateo, California, specializing in graph database management systems. Third Amended Complaint ("TAC") ¶ 2, ECF No. 90. Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA and owns all copyrights relating to the widely used Neo4j graph database platform, including the source code. *Id.* ¶ 4.

Plaintiffs have historically offered a free and open-source version of their Neo4j software called NEO4J Community Edition ("NEO4J CE"), subject to the GNU General Public License ("GPL"). *Id.* ¶ 24. For commercial users, Plaintiffs offered a paid-for version of Neo4j called NEO4J Enterprise Edition ("NEO4J EE"), which, compared to the free NEO4J CE version, contains significant additional functionality and provides support for advanced commercial operations. *Id.* The NEO4J EE software was historically offered under both a paid-for commercial license and the free GNU Affero General Public License ("AGPL"), but as of November 2018, NEO4J EE is only offered under the commercial license. *Id.* ¶¶ 25, 27.

### B. Defendants' Partner Agreement with Plaintiffs

On September 30, 2014, Neo4j USA entered into a NEO4J Solution Partner Agreement ("Partner Agreement")—then under its prior name, "Neo Technology, Inc"—with Defendant PureThink LLC ("PureThink"). *Id.* ¶ 2; Second Amended Counterclaim ("SACC") ¶ 15.

Under the Partner Agreement, Defendant PureThink would provide support to end-users of NEO4J EE software in exchange for annual partner program fees and shared revenue. SACC ¶ 12; TAC ¶ 29. PureThink also received a non-exclusive and non-transferable limited license to use the Neo4j marks "solely to market and promote" the NEO4J commercial products. SACC, Ex. B, NEO4J Solution Partner Agreement ("SPA") § 4.1. The Partner Agreement also provided:

> During the term of this Agreement and up until thirty-six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

SPA § 4.3.2. Under this Partner Agreement, Defendant PureThink procured NEO4J EE

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
2

subscriptions for the Maryland Procurement Office, Sandia National Laboratories, and the FBI with Neo4j USA's approval. SACC ¶ 18.

During this period, PureThink also worked on a "Neo4j Government Package," based on open-source Neo4j software and designed for government clients. SACC ¶¶ 16-17. PureThink called this new software package "Neo4j Government Edition" or "Neo4j Enterprise Government Edition." *Id.* PureThink pitched Neo4j Government Edition with "consulting services" to the Internal Revenue Service ("IRS") "completely outside the Partner Agreement." *Id.* ¶ 20.

On May 30, 2017, Neo4J USA notified Defendants PureThink and Suhy that they had breached the Partner Agreement by performing services using Neo4j open-source software and creating a consulting business around those open-source software products. ECF No. 98-1, Ex. 9. Per the Partner Agreement, the Agreement would be terminated if Defendants did not cure the breach within 30 days. SPA § 7.2. On July 11, 2017, Neo4j USA notified Defendants that the Partner Agreement was terminated. TAC ¶ 35.

### C. Plaintiffs' Communications with Defendants' Customers

Defendants allege that, after Neo4j USA terminated the Partner Agreement with PureThink, Neo4j USA also contacted and informed eighteen (18) of PureThink's potential customers that "PureThink was terminated as a solution partner and could not support open source versions of Neo4j for a period of 36 months following termination." SACC ¶ 27. The SACC specifically references and appends Neo4j USA's communication to the IRS that the PureThink's Partner Agreement was terminated and PureThink was no longer authorized to procure a Neo4j subscription on behalf of the IRS or to provide consulting services and support on open source Neo4j products. SACC, Ex. D.

Defendants allege that Neo4j USA's actions were "intended to and did disrupt the economic relationship" between Defendants and their potential business opportunities, and that their relationship with those customers were "actually and totally disrupted by NEO4J USA's wrongful interference." SACC ¶¶ 28, 31.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
3

## II. PROCEDURAL HISTORY

Although this action has an extensive and bifurcated procedural history, the present Motion is only concerned with the counterclaims asserted in Defendant's SACC (ECF No. 72) and the affirmative defenses in Defendant's Answer to Plaintiffs' TAC (ECF No. 91). Accordingly, the Court here only recounts the procedural history relevant to this Motion.

On November 28, 2018, Plaintiffs brought this suit against Defendants for, *inter alia*, violations of the Lanham Act and California's Unfair Competition Law, based on Defendants' alleged infringement of Neo4j USA's federally registered Neo4j mark. ECF No. 1. Plaintiffs have since amended their Complaint significantly, culminating in the Third Amended Complaint, filed September 28, 2020. ECF No. 90.

On January 9, 2019, Defendants filed their initial countercomplaint, asserting—most relevant for this Motion—counterclaims for intentional interference with prospective economic advantage ("IIPEA") and declaratory relief that certain restrictions in the Partner Agreement are void under California Business & Professions Code § 16600 and the AGPL. ECF No. 22. Defendants' countercomplaint has also undergone significant amendments, resulting in the current Second Amended Counterclaim. ECF No. 72. In addition to their counterclaims, Defendants have also asserted affirmative defenses that are substantially identical to their declaratory relief counterclaims—*i.e.*, the restrictions are void under § 16600 and the AGPL. ECF No. 91, at 14-16.

On September 3, 2021, Plaintiffs filed the instant Motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), specifically as to Defendants' First, Fifth, and Sixth counterclaims and Defendants' First, Second, and Sixth affirmative defenses. ECF No. 132. After the Motion was fully briefed and taken under submission without oral argument, Defendants stipulated to dismiss its Sixth Affirmative Defense, consistent with a subsequently issued Ninth Circuit memorandum disposition in this case. ECF No. 146 ¶ 2; *see also* ECF No. 141.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c)

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
4

1  motion challenges the legal sufficiency of the opposing party's pleadings. Judgment on the

2  pleadings is appropriate when, even if all material facts in the pleadings are true, the moving party

3  is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

4  On a motion for judgment on the pleadings, "all material allegations in the complaint are

5  accepted as true and construed in the light most favorable to the non-moving party." *Turner v.*

6  *Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "A motion for judgment on the pleadings may be

7  granted if, after assessing the complaint and matters for which judicial notice is proper, it appears

8  'beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for

9  relief.'" *Williams v. Nichols Demos, Inc.*, 2018 WL 3046507, at *3 (N.D. Cal. June 20, 2018)

10  (citing *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1155 (E.D. Cal. 2006)). In other words,

11  the standard for a Rule 12(c) motion is essentially the same as that for a Rule 12(b)(6) motion.

12  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

13  Rule 12(c) may be used to challenge individual causes of action, as well as affirmative

14  defenses. *See Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005);

15  *Spears v. First Am. eAppraiseIt*, 2013 WL 1748284, at *6 (N.D. Cal. Apr. 23, 2013) (noting that

16  affirmative defenses are evaluated for sufficiency under the same "plausibility" standard,

17  regardless of whether challenged under a Rule 12(c) or Rule 12(f) motion); *F.T.C. v. Meta*

18  *Platforms Inc.*, 2022 WL 16637996, at *1 (N.D. Cal. Nov. 2, 2022) ("In this district, defendants

19  provide 'fair notice' of an affirmative defense by meeting the *Twombly/Iqbal* pleading standard.").

20  Although Rule 12(c) makes no mention of leave to amend, "courts have discretion both to

21  grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action

22  instead of entry of judgment." *Mitchell v. Corelogic, Inc.*, 2019 WL 7172978, at *4 (C.D. Cal.

23  Nov. 20, 2019) (citing *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal.

24  1997)). Leave to amend should be freely granted absent "undue delay, bad faith or dilatory motive

25  on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

26  undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of

27  amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
5

## IV. DISCUSSION

### A. First Counterclaim: Interference with Prospective Economic Advantage

Plaintiffs first move for judgment on Defendants' First Counterclaim for Intentional Interference with Prospective Economic Advantage ("IIPEA").

To prevail on this claim under California law, Defendants must allege five elements: "(1) the existence, between the [Defendants] and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the [Plaintiffs'] knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the [Plaintiffs'] action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)). With respect to the third factor, the intentionally wrongful acts must be "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).

Here, Plaintiffs argue that Defendants have failed to allege that (1) Plaintiffs committed a wrongful act independent from the interference itself and (2) Plaintiffs' actions—wrongful or otherwise—proximately caused the disruption of an actual business relationship. Mot. 7-11. The Court addresses both arguments in turn.

#### 1. Independent Wrongful Act

Defendants allege that Section 4.3.2 is void under California Business & Professions Code § 16600 and, therefore, Plaintiffs' communications to Defendants' clients regarding Section 4.3.2 were independently wrongful actions. SACC ¶ 29.

California Business & Professions Code § 16600 broadly provides that, with limited exceptions, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Section 4.3.2 of the Partner Agreement states:

> During the term of this Agreement and up until thirty-six (36) months after the termination or expiration of this Agreement, Partner may not develop, market,

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
6

>distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

SPA § 4.3.2; *see also* SACC ¶¶ 55.

However, the state high court has recently clarified that contracts restraining a *business* from engaging in lawful trade or business with another business is not *per se* invalid under § 16600. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1162 (2020). In *Ixchel*, the Ninth Circuit certified a question regarding § 16600 to the California Supreme Court, which was rephrased as, "What is the proper standard to determine whether section 16600 voids a contract by which a business is restrained from engaging in a lawful trade or business with another business?" *Id.* at 1140. To answer this question, Justice Liu conducted a searching inquiry, delving into the statutory text, legislative history, a broad survey of California high court precedent, harmonization within the broader statutory context, and public policy competition concerns. *Id.* at 1148–62. As relevant here, the California Supreme Court held that (1) § 16600 applies to business contracts, *id.* at 1149, and (2) the "rule of reason applies to determine the validity of a contractual provision by which a business is restrained from engaging in a lawful trade or business with another business," as distinguished from employment contracts. *Id.* at 1162. The referenced "rule of reason" inquiry is the same analysis used to assess antitrust violations under the Cartwright Act, *i.e.*, whether the restraint "harms competition more than it helps [in consideration of] the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption." *Id.* at 1150 (internal quotation marks omitted).

Here, the SACC pleads itself into *Ixchel*'s scope by alleging that the Partner Agreement was between two businesses: PureThink and Neo4j USA. SACC ¶ 15. Accordingly, Defendants must allege sufficient facts that would support the unlawfulness of the Partner Agreement restrictions under *Ixchel*, that is, the restrictions harm competition more than they help. *Ixchel*, 9 Cal. 5th at 1150. Presently, Defendants' allegations fail to meet this threshold as they are largely conclusory, *e.g.*, "these restrictions are invalid under California Business and Professions Code §

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
7

16600" (SACC ¶ 13), "NEO4J USA's interference was an independent wrongful act as it violated California Business and Professions Code § 16600" (SACC ¶ 29).  Indeed, Defendants themselves appear to concede this point in their Opposition.  Opp. 6 ("[I]t is unclear if claims by entities must now allege the restriction violates the rule of reason.  If such an element must be plead, Purethink should be permitted to do so.").

Defendants' efforts to distance the Partner Agreement from *Ixchel*'s holding are not persuasive.  They argue that, because Plaintiffs have claimed that Defendant PureThink is an alter ego of individual Defendant John Mark Suhy, the Partner Agreement is essentially one between a business entity and an individual.  Opp. 6.  Defendants also advance the argument that Defendant Suhy is actually Plaintiffs' employee, because he performed work within Plaintiffs' course of business and was controlled by Plaintiffs.  *Id.*  Not only are these newly proposed theories unsupported by any factual allegations in the SACC, but they also conflict with the affirmative allegations asserted by Defendants themselves.  *See* SACC ¶¶ 13–20 (stating that the Partner Agreement was between PureThink and Neo4j USA and describing the parties' arms-length business negotiations).

Because the § 16600 violation is the only independent wrongful act asserted in support of Defendants' First Counterclaim, *see* SACC ¶ 29, Defendants have failed to state a claim for IIPEA.  However, the Court finds that permitting Defendants leave to amend would not be futile, as this deficiency can conceivably be cured by pleading additional facts that supports the unreasonableness of Section 4.3.2. of the Partner Agreement.  Indeed, Defendants have not yet had an opportunity to conform their pleadings to the California Supreme Court's recent decision, because *Ixchel* was issued two months after Defendants filed their SACC.  ECF No. 72.

However, in addition to the failure to plead an independently wrongful act, the Court also notes that the SACC contains additional pleading deficiencies that may defeat their IIPEA claim.

### 2.  Actual Disruption and Causation

Plaintiffs also move to dismiss Defendants' IIPEA claim for failure to allege actual disruption that was caused by Neo4j USA's conduct.  Mot. 9-10.  Although it is not clear if

Plaintiffs are attacking the "actual disruption" or the "proximate causation" IIPEA elements, the Court finds that the SACC is insufficient as to both.

First, the SACC's allegations of "actual disruption" are wholly conclusory. The only allegations that could support this requirement are (1) Plaintiffs "intended to and did disrupt the economic relationship" and (2) Defendants' economic relationship "was actually and totally disrupted by [Plaintiffs'] wrongful interference." SACC ¶¶ 28, 31; *see also* Opp. 7–8 (citing the same). These barebone statements are near verbatim recitals of the "actual disruption" legal requirement and are not supported by any further factual allegations. For example, Defendants do not allege that the IRS terminated or insisted on modifying its contract with Defendants. SACC ¶¶ 20–21. The only apparent consequence resulting from Plaintiffs' alleged interference is a single "initial" question from the IRS asking if Defendants' services would be stopped, far short of the conclusory actual and total disruption alleged in the SACC. SACC, Ex. D ("One question I have for this existing contract is if services are stopped due to what Neo4j states below regarding Purethink's inability to provide open-source version support in the below? Now this is me asking from an initial statement. . . .").

Second, Defendants must not only establish that Plaintiffs actually disrupted their economic relationship, but they must also show that such disruption was the result of Plaintiffs' communications with those third parties. *See Korea Supply*, 29 Cal. 4th at 1153. Because the Court finds that Defendants have not alleged any non-conclusory "actual disruption" of their economic relationships, they are also unable to meet the "proximate causation" requirement. Paragraphs 28 and 31 of the SACC are again insufficient to satisfy this element, as Defendants have provided no basis for the Court to even infer that the supposed disruption was caused by Plaintiffs.[1] Similar barebones allegations were rejected by the Ninth Circuit in *Sybersound Records* and this district in *Silicon Knights*. *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137,

---

[1] The Court notes that Exhibit D to the SACC could suggest that Plaintiffs' communication to the IRS was the proximate cause of the IRS's request for further clarification from Defendants. However, as noted in the preceding paragraph, the IRS's question does not evidence an "actual disruption" to the economic relationship.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
9

1151 (9th Cir. 2008) ("[Plaintiff] merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted.' [Plaintiff] does not allege, for example, that it lost a contract nor that a negotiation with a Customer failed."); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1312 (N.D. Cal. 1997) ("[A]llegations that Defendants' undisclosed statements caused potential customers not to buy [Plaintiff's] video game software assert[] the type of speculative economic relationship disapproved of in [*Westside*].") (citing *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996)).

In sum, Defendants have failed to plead either required elements of "actual disruption" and "proximate causation," which are two independent bases to dismiss Defendants' First Counterclaim. However, as with the other IIPEA deficiency, the Court does not find that amendment would be futile. The deficiencies identified could conceivably be remedied with additional factual allegations regarding disruption Defendants experienced.

Accordingly, Plaintiffs' Motion is GRANTED as to Defendants' First Counterclaim, which is DISMISSED with LEAVE TO AMEND.

### B. Declaratory Relief Counterclaims

Plaintiffs also move to dismiss Defendants' Fifth and Sixth Counterclaims requesting declaratory relief. Plaintiffs' Motion seeks dismissal of these counterclaims on mootness and inadequate pleading grounds.

The Declaratory Judgment Act provides, in relevant part, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C. § 2201(a). To determine whether a "case of actual controversy" exists, courts must evaluate "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The party seeking a declaratory judgment has the

1   burden of establishing the existence of an actual case or controversy. *Cardinal Chem. Co. v.*

2   *Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). The primary purpose of the Act is to "avoid accrual of

3   avoidable damages to one not certain of his rights and to afford him an early adjudication without

4   waiting until his adversary should see fit to begin suit, after damage had accrued." *Cunningham*

5   *Bros. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969).

6       Defendants' counterclaims here seek declarations that certain Partner Agreement

7   restrictions are void. Specifically, the Fifth Counterclaim seeks a "declaration that § 4.3.2. of the

8   Partner Agreement is void under California Business and Professions Code § 16600," and their

9   Sixth Counterclaim requests a "declaration that §§ 4.3.1 and 4.3.2 of the Partner Agreement are

10  void under the AGPL as the restriction violate [sic] the terms of the AGPL." SACC ¶¶ 57, 61.

11      The Court finds that Defendants have not established the existence of an actual case or

12  controversy with respect to the referenced Partner Agreement restrictions and, therefore, does not

13  reach Plaintiffs' arguments to dismiss these counterclaims on the merits. It is undisputed that the

14  Partner Agreement was terminated on July 11, 2017, and that the restrictions in § 4.3.2 expired

15  thirty-six months later on July 11, 2020. Mot. 12-13; Opp. 7-10; *see also* ECF No. 100, at 17

16  (Defendants' acknowledging the same in separate briefing). Furthermore, Plaintiffs are not

17  seeking to enforce either of the restrictions implicated by Defendants' declaratory relief claims.

18  *Cf.* SACC ¶ 13 (noting that Plaintiffs had removed and "waiv[ed] a breach of contract claim based

19  on [§ 4.3.2]" in their First Amended Complaint); *see also* Mot. 12-13 (same). Accordingly,

20  Defendants are not currently bound by or at risk of incurring damages on either expired restriction.

21      The Ninth Circuit has stated, in no uncertain terms, that "[t]here is no basis for awarding

22  declaratory relief on an expired agreement." *S. California Painters & Allied Trades, Dist. Council*

23  *No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1035 (9th Cir. 2009). District courts have also consistently

24  denied declaratory relief where the disputed contract terms had expired and the opposing party

25  was not seeking to enforce the expired terms. *See Imtiaz Khan v. K2 Pure Sols., LP*, 2013 WL

26  4734006, at *4 (N.D. Cal. Sept. 3, 2013) (finding lack of actual controversy where disputed non-

27  compete agreements had already expired); *Smith v. Bioworks, Inc.*, 2007 WL 273948, at *6 (E.D.

28  Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
11

Cal. Jan. 29, 2007) ("Because the non-compete clause expired well before this issue came before the court, and because there is no evidence to indicate that plaintiff faces any further liability under this clause, plaintiff's claims for declaratory relief . . . are MOOT."); *Gutierrez v. Martin Eng'g*, 2007 WL 9702235, at *1 (S.D. Fla. Mar. 16, 2007) ("The challenged non-compete provisions expired by their terms in December, 2006, rendering [plaintiff's] request for declaratory relief on the validity of these clauses moot."). These holdings are consistent with the Declaratory Judgment Act's forward-looking purpose of avoiding "accrual of avoidable damages," as damages typically would not continue to accrue on expired contracts. *See Morcote v. Oracle Corp.*, 2005 WL 3157512, at *5 (N.D. Cal. Nov. 23, 2005) (finding no "actual controversy where there is no possibility that any further damages can accrue under the [contract] in light of the fact that it has expired"). Defendants' sole case cited in support of their declaratory relief—*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084 (N.D. Cal. 2009)—is distinguishable, because that decision involved a motion for summary judgment that did not implicate any justiciability or mootness issues, which are the bases for Plaintiffs' Motion and the Court's opinion here.

Defendants have not represented that they are accruing further damages or that they are at risk of violating the now-expired Partner Agreement restrictions. They also have not identified any risk of future injury or adverse effects that a declaratory judgment may remedy. *See* Opp. 9. Defendants only argues that, "[w]ith an ajudication [sic] of the [restrictions'] unlawfulness, Purethink may revive its relationships long tarnished with NEO4J's clearly shown enforcement efforts."[2] Opp. 9. This point is inapposite because it only purports to establish the *redressability* of declaratory relief—Plaintiffs' Motion, however, asserts that the dispute is moot, not that a favorable decision will provide inadequate remedy.[3] Second, even regarding the possible redress

---

[2] Notably, Defendants do not argue that Plaintiffs' withdrawal of their contract claims falls under the "voluntary cessation" exception to mootness. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). To the contrary, Defendants appear to take the position that Plaintiffs' withdrawal of those claims constitute waiver. SACC ¶ 13.

[3] Indeed, a lack of redressability would be a separate basis to dismiss Defendants' declaratory relief for lack of standing. *See Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) ("To

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
12

1    mentioned in Defendants' Opposition, the Ninth Circuit has disapproved of granting declaratory

2    judgment where, as here, the primary redress would be to improve a plaintiff's position in future

3    dealings with third parties. *See S. California Painters*, 558 F.3d at 1035 ("[Plaintiff] stated,

4    however, that . . . it could use such a judgment in its dealings with other contractors and it would

5    strengthen [plaintiff's] position in future dealings. . . . This sort of declaratory relief would

6    constitute an advisory opinion and does not evidence a live dispute between the parties in this

7    case."). Accordingly, Defendants' argument that they may use the requested declaratory judgment

8    to "revive its relationships long tarnished" is insufficient to support the existence of a live

9    controversy for justiciability purposes.

10        Because the Partner Agreement restrictions at issue are no longer in effect and Plaintiffs

11   have withdrawn their efforts to enforce those restrictions, Defendants' counterclaims for

12   declaratory relief are moot. Furthermore, amendment would be futile, as it is undisputed that the

13   contested restrictions have expired. Plaintiffs' Motion as to Defendants' Fifth and Sixth

14   Counterclaims are GRANTED WITHOUT LEAVE TO AMEND.

15       **C.    Affirmative Defenses**

16        Finally, Plaintiffs seek to dismiss Defendants' First and Second Affirmative Defenses to

17   the Third Amended Complaint. The affirmative defenses assert the same general theories as

18   Defendants' Fifth and Sixth Counterclaims, *i.e.*, that Sections 4.3.1 and 4.3.2 of the Partner

19   Agreement are void pursuant to the AGPL and California Business & Professions Code § 16600,

20   respectively. ECF No. 91, at 14–16. Plaintiffs likewise move to dismiss these affirmative

21   defenses on the same bases as they did Defendants' counterclaims.

22        Although Plaintiffs challenge these affirmative defenses as a Rule 12(c) motion for

23   judgment on the pleadings, the Motion appear to request that these affirmative defenses, in effect,

24   be stricken as per Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an

---

establish standing, a plaintiff must also show that a favorable decision will likely redress his injury."); *cf. Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 934 (3d Cir. 1992) (denying review because the court could only grant "equitable relief with respect to the expired terms by doing the impossible: enjoining the directors from serving expired terms").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
13

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Courts often apply the same plausibility pleading standard to affirmative defenses, regardless of whether they are challenged under either Rule 12(c) or 12(f). *See Spears*, 2013 WL 1748284, at *6. Under Rule 12(f), an immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded," and an impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990)). If the court strikes a defense, "leave to amend should be freely given so long as there is no prejudice to the moving party." *G & G Closed Cir. Events, LLC v. Nguyen*, 2010 WL 3749284, at *2 (N.D. Cal. Sept. 23, 2010) (citing *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826–27 (9th Cir. 1979)).

Here, Defendants' First Affirmative Defense pleads, in relevant part, that "[t]he restriction under Section 4.3.2 cannot be enforced against Defendants as the restriction is void under California Business and Professions Code § 16600." ECF No. 91, at 14. However, as discussed above, Plaintiffs do not attempt to enforce Section 4.3.2 of the Partner Agreement in the TAC. The TAC only cites once to Section 4.3.2—and Defendants' breach thereof—as the basis for Plaintiffs' decision to terminate the Partner Agreement in 2017, not as the basis of any current claims in the TAC. TAC ¶ 138; *see also* SACC ¶ 13. Although Plaintiffs are asserting a breach of contract claim, their claim only seeks to recover for breaches of Sections 3.1, 4.1 and 7.3—not Section 4.3.2—of the Partner Agreement. TAC ¶ 143. Accordingly, even if the affirmative defense's conclusory allegation is accepted as true and Section 4.3.2 is void, it would bear "no essential or important relationship to the claim[s] for relief," nor would it "pertain, and [be] necessary, to the issues in question." *Fantasy*, 984 F.2d at 1527.

The Second Affirmative Defense fares much the same as the First. Defendants assert that "[t]he restrictions in Paragragraphs [*sic*] 4.3.1 and 4.3.2 violate the GNU AFFERO GENERAL PUBLIC LICENSED VERSION 3 for Neo4J enterprise software." ECF No. 91, at 15. Here as well, the TAC does not reflect any attempt to enforce either of the two restrictions asserted in the

Second Affirmative Defense. In fact, Plaintiffs are not attempting to enforce *any* provision from Section 4.3 of the Partner Agreement titled "Restrictions." SPA § 4.3; *see generally* TAC ¶¶ 134-147. Defendants' Second Affirmative Defense, as a result, is also subject to be stricken as an immaterial or impertinent defense.

Defendants argue that, because the TAC references and alleges a breach of Section 4.3.2 at paragraph 138, they are entitled to raise the "illegality of the contract in the answer as an affirmative defense," citing to Federal Rule of Civil Procedure 8(c)(1). Opp. 9. However, the referenced TAC allegation only cites Section 4.3.2 as a basis for Plaintiffs' decision in 2017 to terminate the Partner Agreement—the TAC does not seek to recover damages for an alleged breach of that Section. TAC ¶ 143. Nor would the illegality of one provision necessarily result in the illegality of the entire contract. Defendants' affirmative defenses, as pled, do not purport to render the entire Partner Agreement void and do not contain any facts to support such a theory.[4] Under any interpretation, Defendants' cursory arguments do not establish how the "illegality" of Sections 4.3.1 and 4.3.2 would result in any kind of defense to the claims in the TAC.

Because Plaintiffs are not suing Defendants on any of the restrictions that are the focus of the First and Second Affirmative Defenses, the Court finds those defenses to be immaterial and impertinent per Rule 12(f). The Court will GRANT Plaintiffs' Motion as to those affirmative defenses. The Court also finds that further amendment would be futile, because no amount of additional pleading from Defendants can change the fact that none of the TAC's claims turn on the validity of Sections 4.3.1 or 4.3.2. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.").

Accordingly, Defendants' First and Second Affirmative Defenses are STRICKEN WITHOUT LEAVE TO AMEND.

---

[4] In any event, the Partner Agreement appears to contain a severability clause. SPA § 10.6 ("If any term or provision of this Agreement is found to be invalid under any applicable statute or rule of law then, that provision notwithstanding, this Agreement will remain in full force and effect and such provision will be deemed omitted. . . .").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
15

## V. CONCLUSION

Based on the foregoing, the Court GRANTS IN PART Plaintiffs' Motion, as follows:

1. Defendants' First Counterclaim for Intentional Interference with Prospective Economic Advantage is DISMISSED WITH LEAVE TO AMEND;

2. Defendants' Fifth and Sixth Counterclaim for Declaratory Relief are DISMISSED WITHOUT LEAVE TO AMEND; and

3. Defendants' First and Second Affirmative Defenses are DISMISSED WITHOUT LEAVE TO AMEND.

Defendants shall file any amended pleadings within 21 days of this Order.

**IT IS SO ORDERED.**

Dated:  January 6, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS
16