John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Arthur E. Rothrock, Bar No. 312704
arothrock@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:      (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, NEO4J SWEDEN AB, a Swedish corporation,<br><br>                         Plaintiffs,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>                         Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO.  5:18-cv-07182-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANTS' FIRST CAUSE OF ACTION IN THEIR THIRD AMENDED COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:         April 27, 2023<br>Time:        9:00 a.m.<br>Dept:        Courtroom 4, 5th Floor<br>Judge:       Hon. Edward J. Davila<br><br>Trial Date:  November 14, 2023 |

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4866-5731-7197.4

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 27, 2023, at 9:00 a.m., Courtroom 4, 5th Floor, at the United States District Court located at 280 South First Street, San Jose, CA 95113 before the Honorable Edward J. Davila, Plaintiffs and Counter-Defendants Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden ("Neo4j Sweden") will, and hereby do, move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") the First Cause of Action for Intentional Interference with Prospective Economic Advantage asserted by Defendants John Mark Suhy, PureThink LLC, and iGov Inc. (collectively "Defendants") in their Third Amended Counterclaim (Dkt. No. 171).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jeffrey M. Ratinoff filed herewith, all records and pleadings on file in this action, and all other matters that the Court may take judicial notice or otherwise properly consider.

<u>**REQUESTED RELIEF**</u>

Plaintiffs respectfully requests that the Court dismiss Defendants' First Cause of Action for Intentional Interference with Prospective Economic Advantage with prejudice.

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

1.      Whether Defendants' attempt to amend their First Cause of Action for Intentional Interference with Prospective Economic Advantage exceeded the Court's granting Defendants leave to amend to allege facts establishing that the restriction in Section 4.3.2 of the Partner Agreement violated the "rule of reason" as applied to Cal. Bus. & Prof. Code § 16600.

2.      Whether Defendants' have allege sufficient facts establishing that the restriction in Section 4.3.2 of the Partner Agreement violated the "rule of reason" as required under *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130 (2020) and other controlling authority.

3.      Whether Defendants have otherwise sufficiently alleged a legally viable claim for Intentional Interference with Prospective Economic Advantage.

4.      Whether the Court should dismiss the foregoing counterclaim with prejudice.

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4866-5731-7197.4                                                        - 2 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     PROCEDURAL BACKGROUND............................................................................ 2

    A.   Defendants' Second Amended Counterclaim ......................................................... 2

    B.   Defendants Refuse to Amend their IIPEA Claim to Comport with Ixchel............. 3

    C.   The Court Finds that Defendants' IIPEA Claim Fails to Meet Ixchel's
        Requirements of Establishing a Violation of the Rule of Reason........................... 4

    D.   Defendants File a Third Amended Counterclaim that Remains Deficient .............. 5

III.    DEFENDANTS' AMENDED FIRST CAUSE OF ACTION FOR IIPEA ............. 6

    A.   The Parties' Relationship under the Partner Agreement......................................... 6

    B.   Neo4j USA Terminates the Partner Agreement After PureThink
        Encourages the IRS to Use Open Source Neo4j® Software in Violation of
        Section 4.3.2........................................................................................................... 7

    C.   Neo4j USA's Alleged Acts of Interference with PureThink and the IRS............... 8

    D.   Defendants' Allegations Purporting to Establish a Violation of Section
        16600..................................................................................................................... 10

    E.   Defendants' Ill-Conceived Attempt to Plead Around the Rule of Reason ........... 11

    F.   Defendants Claim Neo4j USA Caused $1.1 Million in Damages ........................ 11

IV.     APPLICABLE LEGAL STANDARDS .................................................................. 12

V.      LEGAL ARGUMENT ............................................................................................ 13

    A.   Defendants Fail to Allege Facts Establishing a Violation of the Rule of
        Reason ................................................................................................................... 14

    B.   Defendants Fail to Allege Facts Plausibly Establishing that Neo4j USA had
        Actual Knowledge of the Sole Source Award to PureThink at the Time it
        Allegedly Interfered with the IRS' Pending Contract Award to PureThink......... 18

    C.   Defendants Cannot Establish that Neo4j USA's Communications with the
        IRS Were the Proximate Cause for Defendants' Alleged Damages.................... 19

    D.   The Court Should Deny Defendants Leave to Amend.......................................... 21

VI.     CONCLUSION ....................................................................................................... 22

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                                - i -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004)....................................................................................... 19

5

6

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
   141 F.3d 947 (9th Cir. 1998)......................................................................................... 14

7

*Albrecht v. Lund*,
   845 F.2d 193 (9th Cir. 1988)......................................................................................... 21

8

9

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
   47 Cal. App. 4th 464 (1996) ......................................................................................... 18

10

11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 12

12

13

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988)......................................................................................... 12

14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 12

15

16

*Bhan v. NME Hospitals, Inc.*,
   929 F.2d 1404 (9th Cir. 1991)....................................................................................... 16

17

18

*BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*,
   No. CV10-01053 SI, 2010 WL 3853025 (N.D. Cal. Sept. 29, 2010) ........................... 20

19

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012).................................................................................. 15, 16

20

21

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .................................................................................................. 15

22

*In re Cir. Breaker Litig.*,
   984 F. Supp. 1267 (C.D. Cal. 1997).............................................................................. 21

23

24

*County of Tuolumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001)....................................................................................... 14

25

26

*E.D.C. Techs., Inc. v. Seidel*,
   216 F. Supp. 3d 1012 (N.D. Cal. 2016) ........................................................................ 18

27

*Epstein v. Wash. Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996)......................................................................................... 13

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4

- ii -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009)................................................................. 12

4

5

*Harris v. Cnty. of Orange*,
    682 F.3d 1126 (9th Cir. 2012)............................................................... 21

6

*Ho v. Marathon Pat. Grp., Inc.*,
    No. EDCV21339PSGSPX, 2022 WL 1600048 (C.D. Cal. Feb. 11, 2022)

7

    ....................................................................................... 15, 16, 17, 18

8

*Integration Tech. v. MuleSoft Inc.*,
    No. C 11-04782 EDL, 2011 WL 5914012 (N.D. Cal. Nov. 28, 2011) ................... 20

9

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ................................... 2, 3, 4, 5, 11, 14, 15, 17, 21

10

11

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)............................................................ 10, 13

12

13

*King v. Gerold*,
    109 Cal.App.2d 316 (1952)............................................................... 17, 18

14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ................................................................ 13, 19

15

16

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)............................................................... 13

17

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
    884 F.2d 504 (9th Cir. 1989).............................................................. 15, 16

18

19

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................... 21

20

21

*Manistee Town Ctr. v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000)............................................................... 21

22

23

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
    200 Cal. App. 4th 480 (2011) .............................................................. 14

24

*McCalden v. California Library Ass'n*,
    955 F.2d 1214 (9th Cir. 1990)............................................................... 13

25

26

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008).............................................................. 12

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                         - iii -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) ........................................................................... 15, 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ............................................................................................... 20

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
379 F. Supp. 3d 857 (N.D. Cal. 2019) ............................................................ 13, 19

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir.1998) ..................................................................................... 9

*PB Farradyne, Inc. v. Peterson*,
No. C 05-3447 SI, 2006 WL 2578273 (N.D. Cal. Sept. 6, 2006) ........................... 13

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
360 F. Supp. 3d 994 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) ........ 20

*Quidel Corp. v. Superior Ct.*,
57 Cal. App. 5th 155 (2020) ................................................................................... 15

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
2 Cal. 5th 505 (2017) .............................................................................................. 13

*Shields v. Fed'n Internationale de Natation*,
--- F. Supp. 3d ----, No. 18-CV-07393-JSC, 2023 WL 121985 (N.D. Cal. Jan.
6, 2023) .................................................................................................................. 22

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) .................................................................................. 21

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................................ 12, 13

*Stearns v. Select Comfort Retail Corp.*,
No. 08-2746 JF (PVT), 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) .................... 13

*Swipe & Bite, Inc. v. Chow*,
147 F. Supp. 3d 924 (N.D. Cal. 2015) ................................................................... 18

*Telesaurus VPC, LLC v. Power*,
623 F.3d 998 (9th Cir. 2010) .................................................................................. 21

*United States v. Syufy Enters.*,
903 F.2d 659 (9th Cir. 1990) .................................................................................. 15

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4
- iv -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Universal Gym Equip., Inc. v. ERWA Exercise Equip. Ltd.*,
  827 F.2d 1542 (Fed. Cir. 1987).............................................................................. 17

4

5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).............................................................................. 20

6

*Weisbuch v. County of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997).............................................................................. 13

7

8

**Statutes**

9

Cal. Bus. & Prof. Code § 16600 ........................................... 1, 2, 3, 4, 9, 10, 17, 18, 19

10

**Other Authorities**

11

Fed. R. Civ. P. 8(a)............................................................................................. 12

12

Fed. R. Civ. P. 9(b) ............................................................................................ 20

13

Fed. R. Civ. P. 11 ................................................................................................ 6

14

Fed. R. Civ. P. 12(b)(6)...................................................................................... 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4

- v -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3   Defendants PureThink LLC ("PureThink"), iGov Inc. ("iGov") (collectively "Defendants")

4   originally sought to maintain a claim for intentional interference with prospective economic

5   advantage ("IIPEA") against Plaintiff Neo4j, Inc. (Neo4j USA) based on allegations that a 3-year

6   contractual restriction on PureThink supporting open-source Neo4j® software violated Cal. Bus.

7   & Prof. Code § 16600 ("Section 16600").  In granting Neo4j USA's motion for judgment on the

8   pleadings, the Court found that Defendants could not maintain that claim because they failed to

9   establish that this restriction violated the "rule of reason," which is necessary to establish that it

10  amounted to an unlawful restraint on trade.  The Court granted Defendants leave to amend to meet

11  this requirement.

12  To establish a violation of the rule of reason under controlling authority, Defendants needed

13  to allege facts establishing the relevant market for graph database software in which Neo4j USA

14  competes, as well as that the provision in question harmed market-wide competition.  Rather than

15  doing so, the Third Amended Counterclaim ("TACC") merely alleges that Neo4j USA harmed

16  Defendants with respect to a single economic opportunity with the IRS.  Defendants' failure to

17  allege facts plausibly establishing the relevant market and the alleged anti-competitive impact

18  beyond themselves dooms their IIPEA claim.

19  Having no colorable basis to allege a violation of the rule of reason, Defendants instead

20  attempt to plead around this requirement by claiming that Neo4j USA falsely stated to the IRS that:

21  (1) PureThink was terminated as a partner and could not support open source versions of Neo4j for

22  36 months following termination; (2) the IRS could not use Neo4j® EE under the AGPL and

23  needed a commercial license for that software; (3) PureThink's "related entity" iGov was also

24  prohibited from providing commercial support services for open source versions of Neo4j; and (4)

25  Neo4j USA owned the copyright to the software that meets the requirements for the CKGE platform

26  at the IRS and was the original developer of that software.  Defendants allege that these false

27  statements were communicated in writing to the IRS and were the sole reason for the IRS

28  withdrawing a $1.1 million support contract it intended to award to PureThink.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

Remarkably, Defendants plead themselves out of court because Neo4j USA sent two of these communications **before** the IRS (1) asked PureThink to provide a quote for the contract; (2) continued to use open source Neo4j® software; and (3) decided to award a contract requiring PureThink to support that open source software in the first place.  The third communication was an official agency-level protest made by Neo4j USA pursuant to applicable federal regulations.  As this protest was a valid exercise of Neo4j USA's First Amendment right to petition the government, it cannot amount to an independently wrongful act as a matter of law pursuant to the *Noerr-Pennington* doctrine.

The Court provided Defendants a fair opportunity to cure the otherwise fatal defects in their IIPEA claim.  Their latest attempt to do so makes clear they cannot plausibly allege any facts that would allow them to maintain that claim.  Accordingly, the Court should grant Plaintiffs' motion and dismiss Defendants' IIPEA claim with prejudice.

## II.   PROCEDURAL BACKGROUND

### A.   Defendants' Second Amended Counterclaim

On June 4, 2020, Defendants filed their Second Amended Counterclaim ("SACC"), which continued to maintain a First Cause of Action for IIPEA against Neo4j USA. *See* Dkt. No. 72.  In support of that claim, Defendants alleged that Neo4j USA told the IRS and other potential customers "PureThink was terminated as a solution partner and could not support open source versions of Neo4j for a period of 36 months following termination." *Id.*, ¶¶ 23-24, 27.  Neo4j USA based these statements on Section 4.3.2 of the Partner Agreement, which PureThink voluntarily agreed to when it became a partner-reseller with Neo4j USA.  *Id.* at ¶¶ 13, 22-34.  Defendants alleged that these statements amounted to "an independent wrongful act" because the 3-year contractual restriction on PureThink supporting open-source Neo4j® software was void as a matter of public policy under Cal. Bus. & Prof. Code § 16600 ("Section 16600"). *Id.*, ¶ 29.

In September 2020, the California Supreme Court held that non-compete provisions in contracts entered into between businesses are not per se violations of Section 16600.  *See Ixchel Pharma, LLC v. Biogen*, Inc., 9 Cal.5th 1130 (2020).  Rather, the "rule of reason applies to determine the validity of a contractual provision by which a business is restrained from engaging

in a lawful trade or business with another business." *Id.* at 1162.  The anticipated outcome of this case was one of the primary reasons for Defendants agreeing to bifurcate this case where its IIPEA claim would be the subject of fact discovery and dispositive motion practice during Phase 2.  See Dkt. No. 59 at ¶¶ 7-9.  Defendants thus knew of the need to amend their SACC to add allegations that would establish the contractual provision in question violated the rule of reason.

## B.  Defendants Refuse to Amend their IIPEA Claim to Comport with *Ixchel*

On May 18, 2021, the Court issued an order granting Plaintiffs' Phase 1 motion for summary judgment.  *See* Dkt. No. 118.  While Defendants immediately appealed that order, they agreed in the July 12, 2021 Joint Case Management Statement that Phase 2 should still proceed. *See* Dkt. No. 125 at 3:18-5:24.  In that same statement, Plaintiffs advised Defendants that they would be filing a motion for judgment on the pleadings seeking a dismissal of Defendants' IIPEA claim.  *See id.* at 10:5-10.

On July 29, 2021, the parties met and conferred over the Phase 2 schedule.  Dkt. No. 132-1, ¶ 3.  During that discussion, Plaintiffs requested that Defendants consider narrowing the counterclaims since their intentional interference claims might require more than 20 third party depositions and that some of Defendants' declaratory relief claims were moot.  *Id*.

On August 6, 2021, Plaintiffs sent a 7-page substantive letter detailing the fatal defects in Defendants' counterclaims and defenses.  Dkt. No. 132-1, ¶ 4 and Ex. 1.  With respect to Defendants' IIPEA claim, Plaintiffs explained that conclusory allegations that Section 4.3.2 of the Partner Agreement was void per se under Section 16600 were no longer sufficient to establish an independent wrong as a matter of law under *Ixchel*.  *See id.*, Ex. 1 at pp. 1-2.  Despite Plaintiffs' meet and confer efforts, Defendants refused to dismiss their IIPEA claim, or identify any new or different facts that could meet the newly articulated "rule of reason" standard under *Ixchel*.  *See id.*, ¶¶ 5-6 and Ex. 2.  Plaintiffs thereafter filed a motion for judgment on the pleadings seeking to dismiss, *inter alia*, Defendants' IIPEA claim on September 3, 2021.  *See* Dkt. No. 132.

As of October 12, 2021, the parties had fully briefed the motion.  *See* Dkt. Nos. 136-138.  On January 4, 2022, the Court notified the parties that it would take Plaintiffs' motion under submission without oral argument.  *See* Dkt. No. 139.  Phase 2 Fact Discovery eventually closed

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4866-5731-7197.4                                      - 3 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    on December 1, 2022 and opening expert disclosures and reports were due on December 22, 2022.

2    *See* Dkt. No. 147.   As a result, Defendants had well over a year to take discovery that would

3    substantiate its IIPEA claim and comport with *Ixchel*.  Defendants, however, inexplicably failed to

4    propound a single discovery request relating to their IIPEA claim or even subpoena any of the

5    prospective customers (including the IRS) that Neo4j USA allegedly told could not use iGov or

6    PureThink to support open source versions of Neo4j® software.  Ratinoff Decl., ¶ 9.  Defendants

7    also did not designate an expert that could testify as to the relevant market and Section 4.3.2's

8    alleged anti-competitive impact.  *Id.*

9    **C.      The Court Finds that Defendants' IIPEA Claim Fails to Meet *Ixchel's***
10   **Requirements of Establishing a Violation of the Rule of Reason**

11          On January 6, 2023, the Court issued its order granting, in part, Plaintiffs' motion for

12   judgment on the pleadings.  Dkt. No. 168.  In particular, the Court found that the SACC "plead

13   itself into *Ixchel's* scope by alleging that the Partner Agreement was between two businesses:

14   PureThink and Neo4j USA." *Id.* at 7:21-23.   Defendants were therefore required to "allege

15   sufficient facts that would support the unlawfulness of the Partner Agreement restrictions under

16   *Ixchel*, that is, the restrictions harm competition more than they help." *Id.* at 7:24-25.  In this regard,

17   the Court found that the SACC did not contain any factual allegations that would meet that

18   threshold.  Dkt. No. 168 at 7:25-8:5. Rather, Defendants alleged in conclusory fashion that Neo4j

19   USA's alleged acts of interference based on Section 4.3.2 of the Partner Agreement amounted to

20   an independent wrongful act because it violated Section 16600.  *Id.*  The Court further found:

21          Defendants' efforts to distance the Partner Agreement from *Ixchel's* holding are
22          not persuasive. They argue that, because Plaintiffs have claimed that Defendant
             PureThink is an alter ego of individual Defendant John Mark Suhy, the Partner
             Agreement is essentially one between a business entity and an individual.
23          Opp. 6. Defendants also advance the argument that Defendant Suhy is actually
             Plaintiffs' employee, because he performed work within Plaintiffs' course of
24          business and was controlled by Plaintiffs. *Id.* Not only are these newly proposed
             theories unsupported by any factual allegations in the SACC, but they also
25          conflict with the affirmative allegations asserted by Defendants themselves. *See*
             SACC ¶¶ 13–20 (stating that the Partner Agreement was between PureThink
26          and Neo4j USA and describing the parties' arms-length business negotiations).

27   Dkt. No. 168 at 8:6-15 (citing Dkt. No. 137 at 6:8-22).

28          The Court concluded, "[b]ecause the Section 16600 violation is the only independent

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4

1   wrongful act asserted in support of Defendants' First Counterclaim, Defendants have failed to state

2   a claim for IIPEA." *Id*. at 8:16-22.  The Court noted, "this deficiency can conceivably be cured by

3   pleading additional facts that supports the unreasonableness of Section 4.3.2 of the Partner

4   Agreement," and granted Defendants leave to amend on that specific basis.  *Id.*

5        Along with Defendants' failure to plead an independently wrongful act based on Section

6   4.3.2, the Court found that the SACC contained two independent deficiencies that also mandated

7   the dismissal of their IIPEA claim. *See* Dkt. No. 168 at 8:23-10:15.  This included the assertion of

8   "wholly conclusory" allegations in support of the "actual disruption" and "proximate causation"

9   IIPEA elements.  Citing to Exhibit D to the SACC, the Court noted that Defendants failed to allege

10  facts establishing that the IRS terminated its contract with Defendants as a direct result of Neo4j

11  USA's communications about the restrictions in Section 4.3.2 of the Partner Agreement.  *See id.*

12  Notwithstanding these fatal defects, the Court granted Defendants leave to amend to allege

13  additional facts "regarding disruption Defendants experienced." *Id.* at 10:9-13.

14        **D.      Defendants File a Third Amended Counterclaim that Remains Deficient**

15        On January 24, 2023, Defendants filed their Third Amended Counterclaim.  Dkt. No. 171

16  ("TACC").  Defendants removed their Second, Fifth, Sixth, Seventh, Tenth, Eleventh and Twelfth

17  Causes of Action to comport with the stipulations and orders requiring the dismissal of those claims

18  with prejudice.  *See id.; see also* Dkt. No. 14 (Eleventh Cause of Action); Dkt. No. 85 (Tenth Cause

19  of Action); Dkt. No. 133 (Second and Twelfth Causes of Action); Dkt. No. 144 (Seventh Cause of

20  Action); Dkt. No. 168 (Fifth and Sixth Cause of Actions).  Defendants also amended their First

21  Cause of Action for IIPEA by narrowing it down to a single prospective economic relationship with

22  the IRS.  While Defendants added allegations that purport to establish that Neo4j USA disrupted

23  that relationship, they added no new exhibits in support beyond the previously referenced Exhibit

24  D.  *See* Redline Comparison of the SACC and TACC attached as Exhibit 1 to the Declaration of

25  Jeffrey M. Ratinoff ("Ratinoff Decl.") filed herewith.

26        On January 31, 2023, Plaintiffs sent an eight-page letter to Defendant detailing why their

27  amended IIPEA claim failed to plead facts establishing that Section 4.3.2 of the Partner Agreement

28  violated the rule of reason as required by *Ixchel*.  *See* Ratinoff Decl., Ex. 2.  Plaintiffs explained

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4866-5731-7197.4                                                    - 5 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1  that Defendants had ignored the Court's order by attempting to plead around the rule of reason via

2  the same "alter ego" argument that the Court *expressly rejected* in its January 6th Order.[1]  *Id.*

3  Defendants' assertion of "alternate" independent wrongs consisting of alleged "false statements"

4  made by Neo4j USA to the IRS was also without any colorable basis.  *Id.*  Yet, they knew *before*

5  *filing the TACC* that the uncontroverted evidence obtained during Neo4j USA's deposition of the

6  IRS established that none of these alleged false statements were the proximate cause for the $1.1

7  million in claimed damages.  *Id.*  Plaintiffs sent that letter with the hope of avoiding further motion

8  practice. *See id.*  Defendants chose to ignore their Rule 11 obligations and refused to withdraw their

9  unmeritorious IIPEA claim, thus necessitating the present motion.

10  **III.  DEFENDANTS' AMENDED FIRST CAUSE OF ACTION FOR IIPEA**

11      **A.  The Parties' Relationship under the Partner Agreement**

12        Neo4j USA specializes in graph database management systems.  Dkt. No. 90, ¶ 2.  Neo4j

13  USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned subsidiary of

14  Neo4j USA.  Dkt. No. 90, ¶ 4; Dkt. No. 118 at 2:8-14.  Neo4j Sweden owns all copyrights related

15  to the Neo4j® graph database platform, including the source code, and has licensed those

16  copyrights to Neo4j USA in connection with the making, use, sale, offer to sell, importation,

17  performance, display, reproduction and distribution of the copyrighted material, and the

18  sublicensing of such rights in the United States.  Dkt. No. 90, ¶ 4; Dkt. No. 118 at 2:15-26.

19        Plaintiffs originally offered a free and open source version of the source code for the

20  Neo4j® software, meaning that the source code was available to the public on GitHub pursuant to

---

22  [1] This is not the first time Defendants have sought an end-around of a dispositive ruling of Court

23  and needlessly increased the costs of litigation. When Defendants improperly sought to revive their

24  affirmative defenses for trademark cancellation and abandonment that the Court previously struck

25  with prejudice, the Court chose not to issue an order to show cause for why it should not sanction

26  Defendants for doing so.  However, the Court warned, "[m]oving forward, the Court expects that

27  Defendants will only advance claims and defenses that are supported by law and evidence and will

28  generally adhere to the proper standard of practice in Federal Court."  Dkt. No. 110 at 7:7-12.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

the GNU General Public License version 3 ("GPL").  Dkt. No. 90, ¶ 24; TACC, ¶¶ 7-11.  This version is known as Neo4j® Community Edition ("Neo4j® CE"), which is limited in features set and does not come with technical support.  *Id.*  Plaintiffs also offered licenses to the source code for a more advanced commercial version with included additional features and support services, known as Neo4j® Enterprise Edition ("Neo4j® EE").  Dkt. No. 90, ¶¶ 24-27; TACC, ¶¶ 7-11.  Neo4j® EE was originally offered under both a paid-for commercial license and the AGPL.  *Id.*

PureThink is a software and information technology consulting company founded by Suhy.  *See* TACC, ¶¶ 12-13.  On September 30, 2014, Neo4j USA entered into a Neo4j Solution Partner Agreement ("Partner Agreement")—then under its prior name, "Neo Technology, Inc."—with PureThink.  TACC, ¶¶ 12, 15 and Ex. B ("Partner Agreement or "SPA"); Dkt. No. 90, ¶ 29.  Under the Partner Agreement, PureThink agreed to sell commercial licenses for Neo4j® EE and provide support to end-users in exchange for annual partner program fees and shared revenue.  *See* SPA §1 and Exhibit A thereto (p. 43 of 53 of Dkt. No. 171).  PureThink also received access to Neo4j USA's confidential customer information and a non-exclusive and non-transferable limited license to use the Neo4j trademarks "solely to market and promote" Neo4j commercial products. SPA, §4.1.  The Partner Agreement also provided:

> During the term of this Agreement and up until thirty-six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.).

SPA, §4.3.2.  The Partner Agreement defined "Community Edition Products" as any "open source version of a Neo Technology software product." *Id.,* §11.

### B.    Neo4j USA Terminates the Partner Agreement After PureThink Encourages the IRS to Use Open Source Neo4j® Software in Violation of Section 4.3.2

Under the Partner Agreement, PureThink procured paid Neo4j® EE subscriptions for the Maryland Procurement Office, Sandia National Laboratories, and the FBI with Neo4j USA's approval.  TACC, ¶ 18.  In the hope of increasing sales, Suhy pitched a software package, which consisted of Neo4j® EE and additional support and professional services to addressed critical

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4866-5731-7197.4                                           - 7 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

government security and procurement requirements for government clients. *Id.*, ¶¶ 16-17. PureThink called this new package "Neo4j Government Edition." *Id.*

By September 2016, the only new sales lead PureThink had was the IRS. *See* TACC, ¶¶ 18-20; *see also* Dkt. No. 118 at 4:4-12. However, the IRS indicated that they first needed a prototype built and that a full commercial subscription would leave them with no development budget. *See id.* To make that deal happen, PureThink told the IRS that it could use an open source version of Neo4j® EE under the AGPL and pay PureThink for consulting services instead of buying a commercial subscription under the Partner Agreement. *See id.*

On May 30, 2017, Neo4j USA notified PureThink that it had breached the Partner Agreement by performing services using open-source versions of Neo4j® software and creating a consulting business around those open-source software products. Dkt. No. 98-1, Ex. 9; Dkt. 118 at 4:13-15. By its terms, Neo4j USA would terminate the Partner Agreement if PureThink did not cure their breach within 30 days. SPA § 7.2; Dkt. No. 98-1, Ex. 9; Dkt. 118 at 4:15-18.

On July 11, 2017, Neo4j USA notified Defendants it had terminated the Partner Agreement. Dkt. No. 98-1, Ex. 9; Dkt. 118 at 4:13-15. Suhy then set up iGov to support open source Neo4j® software, and to evade the restrictions imposed on PureThink by Section 4.3.2 of the Partner Agreement. *See* TACC at 10:5-6; Dkt. 118 at 4:15-18.

## C.    Neo4j USA's Alleged Acts of Interference with PureThink and the IRS

Defendants allege that PureThink had an economic relationship with the possibility of future economic relationships with the IRS when it invited PureThink to provide a quote for a new 1-year professional services contract with four additional 1-year options for a potential total value of $1.1 million on July 27, 2017. *See* TACC, ¶ 23. These services were for development and support of the CDW Knowledge Graph Environment ("CKGE") at the IRS, which was using an open source version of Neo4j® EE software as its main component. *See id.* On July 31, 2017, PureThink provided this quote to the IRS. *See id.* On September 5, 2017, the IRS posted a public notice of its intent to award a sole-source purchase order to PureThink based on that quote. *See id.* Defendants allege that Neo4j USA somehow knew about this opportunity before it existed and told the IRS in Partner Agreement in a ***July 11, 2017*** email that PureThink was terminated as a solution partner

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                                         - 8 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1    and could not support open source versions of Neo4j for a period of 36 months following

2    termination."[2]  TACC, ¶¶ 25-26 and Ex. D at p. 2.

3         Defendants allege that Neo4j USA interfered "with PureThink's $1,100,000 potential

4    contract" – again before the opportunity materialized – when it sent a second email on ***July 17,***

5    ***2017****. See* TACC, ¶ 27.  This email allegedly "stated that until Neo receives such a purchase order,

6    please be advised the IRS does not have a license to use the Government edition or Enterprise

7    edition of Neo4j." *See id.*  Defendants assert this was a false statement because the IRS already had

8    a license for Neo4j® EE under the AGPL.  *See id.*  In the July 17, 2017 email, Neo4j USA also told

9    the IRS that PureThink and iGov where prohibited from supporting open source Neo4j® software.

10    *See* TACC, ¶ 28.  Defendants alleged this was a false statement because iGov was not subject to

11    such restrictions in the Partner Agreement and the restrictions against PureThink "were void under

12    Business and Professions Code §16600." *See id.*  It was also allegedly false because Plaintiffs had

13    yet to add the Commons Clause to the license for Neo4j® EE.  *See id.*

14         On September 19, 2017, Neo4j USA filed a Pre-Award Protest with the IRS on the basis

15    that the IRS should not have awarded the CKGE contract to PureThink on a sole source basis:

16
17
18
19
> Neo is an interested party whose direct economic interests are affected by the
> IRS's intent to make a sole source award to PureThink. Neo is a prospective
> offeror for the services that the IRS seeks to acquire on a sole source basis from
> PureThink. Neo owns software that meets all requirements for the continued
> operation of the CKGE to meet user demands, as referenced in the IRS Special
> Notice of its intent to make a sole source award to PureThink.

20    TACC, ¶ 30; Ratinoff Decl., Ex. 3 at p. 3.[3]  Defendants allege that this statement was not true

21

22    [2] While Defendants allege that the IRS intended to award this sole-source contract to PureThink,

23    they also allege that this was a prospective economic opportunity for iGov.  However, they do not

24    allege any facts that establish that iGov had a separate prospective economic relationship with the

25    IRS.  Thus, there is only one opportunity alleged for PureThink and none for iGov.

26    [3] The TACC relies upon, cites to and quotes from Neo4j USA's Pre-Award Protest, which

27    Defendants produced in discovery.  See Ratinoff Decl., ¶¶ 5-8.  As such, the Court may consider

28    this document and its contents as being part of the TACC.  See *Parrino v. FHP, Inc.,* 146 F.3d 699,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4866-5731-7197.4
- 9 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

because Neo4j USA is not the original developer of and does not own the copyright for Neo4j® software.  *See* TACC, ¶¶ 30-31.  Defendants allege that two similar statements in the Pre-Award Protest, "Neo is the original developer and owner of Neo4j, the graph database product used by the Agency and Purethink" and "Neo owns the intellectual property for the Neo4j graph database and is the sole copyright holder for the Neo4j database," were false for the same reason.  *See* TACC, ¶ 30; Ratinoff Decl., ¶¶ 7-8 Ex. 3 at pp. 4, 6.  Defendants further allege that Neo4j USA made false statements in the Pre-Award Protest similar to those in the July 11 and July 17, 2017 emails that PureThink was not authorized to provide the solicited open source Neo4j® software and related support services.  TACC, ¶ 32; Ratinoff Decl., Ex. 3 at p. 2.

**D.    Defendants' Allegations Purporting to Establish a Violation of Section 16600**

While some of the alleged false statements bear no relation to the restrictions imposed by Section 4.3.2, Defendants assert these statements somehow amount to an independent wrongful act in violation of Section 16600. TACC, ¶¶ 33-34. Defendants first allege in conclusory fashion that the "contractual restriction preventing PureThink and iGov from entering into agreements with the IRS violates California Business and Professions Code §16600 as it violates the rule of reason as the restriction harms competition more than it helps." *Id.*, ¶ 35.  Defendants then allege how it specifically harmed **them** rather than alleging facts establishing how the now-expired restriction in Section 4.3.2 harms **overall competition** in the marketplace.

In particular, Defendants allege that it was improper for Neo4j USA to use a contractual provision that restricted PureThink from providing support services to third parties, such as the IRS, who chose to use open source Neo4j® software **after** PureThink entered into the Partner

---

703 (9th Cir.1998), as amended (July 28, 1998) (the court may consider a document whose contents are alleged in the complaint and whose authenticity is undisputed but which is not physically attached to complaint on a motion to dismiss); *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018) (even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim).

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4866-5731-7197.4
- 10 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Agreement.  TACC, ¶¶ 35-36.  The provision was "anticompetitive" because Neo4j USA "has no right to control open source owned by Neo4J Sweden and licensed under the AGPL." *Id.*, ¶¶ 36.

Defendants then leap to the unsubstantiated conclusion that the three-year restriction somehow (1) "prevent[ed] licensees of free [Neo4j®] software from obtaining support services from knowledgeable people"; (2) "force[d] consumers to pay money for software from Neo4J USA that is otherwise available for free"; and (3) "force[d] consumers to pay Neo4J USA for substainally [sic] similar software they [could] get for free to get support [sic] because Neo4J USA unlawful restriction prevents third parties from supporting the free version." *Id.*, ¶ 37.  Defendants further conclude that "[t]he three year restriction does not promote competition and instead prevents competition because it reduces the availability of support for the open source version." *Id.*, ¶ 38. However, no facts are alleged establishing the relevant market in which Neo4j USA competes and Section 4.3.2's restrictions harm competition (and not just PureThink) in that defined market.

### E.    Defendants' Ill-Conceived Attempt to Plead Around the Rule of Reason

Apparently recognizing that they have no way to plead and prove that the restrictions in Section 4.3.2 violate the rule of reason, Defendants allege "in the alternative" that the rule of reason should not apply based on the ***same theory*** that they unsuccessfully argued in opposition to Plaintiffs' motion for judgment on the pleadings.  Specifically, Defendants allege that *Ixchel* should not apply because Neo4j USA has "alleged Mr. Suhy is an Alter Ego of these entities and obtained a preliminary injunction against him based on these allegations and is thus estopped to claim the restrictions apply to only entities when they treat the restrictions as applying to an individual." TACC, ¶ 39.  Defendants then re-allege that Neo4j USA's "other wrongful conduct" includes (1) terminating the Partner Agreement because PureThink "would not lie to the IRS and tell them they could not use the free open source version" of Neo4j® software; (2) using the restrictions in Section 4.3.2 to prevent PureThink from providing support to the IRS; and (3) falsely claiming that Neo4j USA owned the copyright in Neo4j® software and threatening to "enforce it against the IRS if they went with PureThink and used the open source version of [Neo4j®] software." *Id.*, ¶¶ 40-41.

### F.    Defendants Claim Neo4j USA Caused $1.1 Million in Damages

In an attempt to establish the "actual disruption" and "proximate causation" IIPEA

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4866-5731-7197.4
- 11 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1  elements, Defendants allege that the statements made by Neo4j USA in the July 11 and 17, 2017

2  emails, as well as the September 19, 2017 Pre-Award Protest caused the IRS to not award the sole-

3  source professional services contract to PureThink.  TACC, ¶ 44.  As a result, Defendants claim to

4  have lost $1.1 million in expected profits from that contract.  *See id.*, ¶¶ 45-46.  Defendants also

5  conclude that they lost unspecified "future business," but fail to allege any facts identifying such

6  lost opportunities or explaining how Neo4j USA was the proximate cause thereof.  *See id.*

7  **IV.    APPLICABLE LEGAL STANDARDS**

8          Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

9  specificity to "give the defendant fair notice of what the... claim is and the grounds upon which it

10 rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although particular detail is not

11 generally necessary, the factual allegations "must be enough to raise a right to relief above the

12 speculative level" such that the claim "is plausible on its face." *Id.* at 556-57.  "A claim has facial

13 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14 inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

15 678 (2009).  The Court should dismiss a complaint where it fails to state a claim upon which relief

16 can be granted. Fed. R. Civ. P. 12(b)(6).  The Court may dismiss a claim under Rule 12(b)(6) based

17 on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

18 cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *see*

19 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

20         In deciding whether to grant a Rule 12(b)(6) motion, the Court accepts all material facts

21 alleged as true and construes them in the light most favorable to the non-moving party.  *Fleming v.*

22 *Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  That said, "the tenet that a court must accept as true

23 all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal*, 556

24 U.S. at 678–79.  Indeed, "a plaintiff's obligations to provide the grounds of his entitlement to relief

25 requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

26 action will not do." *Twombly*, 550 U.S. at 555 (citations and quotations omitted); *accord Iqbal*, 555

27 U.S. at 677–80.  Thus, conclusory allegations of law, unwarranted deductions of fact, and

28 unreasonable inferences cannot defeat a motion to dismiss. *Sprewell v. Golden State Warriors*, 266

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4866-5731-7197.4                                    - 12 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

F.3d 979, 988 (9th Cir. 2001); *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996). A plaintiff may also plead itself out of court where it alleges facts establishing that it cannot prevail on his claim. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997); *accord Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 866 (N.D. Cal. 2019).

The Court may also consider documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is uncontested, and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *accord Khoja*, 899 F.3d at 998. The Court need not accept as true allegations contradicted by judicially noticeable facts, or by exhibits attached to or incorporated by reference in the pleading. *Sprewell*, 266 F.3d at 988. The Court may also grant a motion to dismiss where the facts as alleged by Plaintiffs and such exhibits and documents establish the affirmative defense as a matter of law. *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

Finally, the Court may dismiss or strike new theories of liability in an amended pleading that fall outside the scope of the Court's prior order granting leave to amend to cure specific deficiencies. *See, e.g.*, *PB Farradyne, Inc. v. Peterson*, No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (striking new theory of liability in amended pleading without leave to amend because the theory was outside the scope of the prior leave to amend); *Stearns v. Select Comfort Retail Corp*., No. 08-2746 JF (PVT), 2009 WL 4723366, at *6 (N.D. Cal. Dec. 4, 2009) (striking new allegations that were material additions rather than amendments within the limited scope of prior grant of leave to amend).

## V.    LEGAL ARGUMENT

To prevail on their first cause of action for intentional interference with prospective economic advantage, Defendants must plead and prove (1) existence of an economic relationship between them and some third party, with the probability of future economic benefit to Defendants; (2) Neo4j USA's knowledge of the relationship; (3) intentional acts by Neo4j USA designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the Defendants proximately caused by the acts of Neo4j USA. *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                          - 13 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1    Cal. 4th 1134, 1153 (2003)).  As discussed below, Defendants still fail to allege facts plausibly

2    establishing the second, third and fifth elements, and effectively plead themselves out of court.

3        **A.      Defendants Fail to Allege Facts Establishing a Violation of the Rule of Reason**

4              For Defendants to establish an independent wrongful act based on Section 4.3.2, the Court

5    held that they "must allege sufficient facts that would support the unlawfulness of the Partner

6    Agreement restrictions under *Ixchel*, that is, the restrictions **harm competition** more than they

7    help." Dkt. No. 168 at 7:22-26 (emphasis added).  Thus, the Court narrowly granted Defendants

8    leave to amend their IIPEA to "plead[] additional facts that supports the unreasonableness of

9    Section 4.3.2 of the Partner Agreement." *Id.* at 8:18-22.  In other words, Defendants must plead

10   sufficient facts establishing that Section 4.3.2 violates the "rule of reason" as applied by *Ixchel*.

11             The "'rule of reason' inquiry is the same analysis used to assess antitrust violations under

12   the Cartwright Act...."[4] Dkt. No. 168 at 7:16-21 (citing *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.

13   5th 1130, 1150 (2020).  The inquiry asks whether a contractual restraint "harms competition more

14   than it helps [in consideration of] the facts peculiar to the business in which the restraint is applied,

15   the nature of the restraint and its effects, and the history of the restraint and the reasons for its

16   adoption." *Ixchel,* 9 Cal. 5th at 1150 (internal quotation marks omitted). This includes facts

17   establishing "the existence of the relevant market, as a means of demonstrating how the alleged

18   unlawful conduct had evident adverse effects upon competition within that market."  *Marsh v.*

19   *Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 494–95 (2011) (internal quotes and

20   citations omitted); *accord Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947,

21   951 (9th Cir. 1998) ("Proving injury to competition in a rule of reason case almost uniformly

22   requires a claimant to prove the relevant market and to show the effects of competition within that

23   market.") (internal citation omitted).

24             "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper

26   [4] The Cartwright Act is "California's antitrust law" and "was modeled after the Sherman Act."

27   *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001). Accordingly,

28   analysis under the Cartwright Act "mirror the analysis under federal law." *Id*.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4866-5731-7197.4                                   - 14 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

focus of antitrust laws." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 186 (1999); *accord United States v. Syufy Enters*., 903 F.2d 659, 668 (9th Cir. 1990) ("It can't be said often enough that the antitrust laws protect competition, not competitors.").  Moreover, "removal of one or a few competitors need not equate with injury to competition.... [C]laimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989). "In order to plead injury to competition ... sufficiently to withstand a motion to dismiss, 'a [] claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (citing *Les Shockley*, 884 F.2d at 507–08).  A claimant "'must, at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail.'" *Id*. (citing *Les Shockley*, 884 F.2d at 508.  Defendants must therefore delineate a relevant market and allege plausible facts detailing how Neo4j USA plays enough of a role in that market to impair competition significantly as a whole.  *See Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008).

As the *Ixchel* court explained, businesses routinely enter into contracts that limit their ability to conduct business because "[s]uch arrangements can help businesses leverage complementary capabilities, ensure stability in supply or demand, and protect their research, development, and marketing efforts from being exploited by contractual partners." 9 Cal.5th at 1160-61.  In the context of commercial contracts between businesses, "as long as a noncompetition provision does not negatively affect the public interests, is designed to protect the parties in their dealings, and does not attempt to establish a monopoly, it may be reasonable and valid." *Quidel Corp. v. Superior Ct*., 57 Cal. App. 5th 155, 166–68 (2020).  Contractual provisions "'designed to protect the parties in their dealings' by preventing Defendant[s] from circumventing Plaintiff[s] from transactions involving business contacts Plaintiff referred to Defendant" do not violate the rule of reason. *Ho v. Marathon Pat. Grp., Inc.*, No. EDCV21339PSGSPX, 2022 WL 1600048, at *18 (C.D. Cal. Feb. 11, 2022) (citing *Quidel Corp.*, 57 Cal. App. 5th at 168).  Thus, Defendants must also allege sufficient facts establishing that Section 4.3.2 of the Partner Agreement "negatively affected the public

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4
- 15 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1    interest or attempted to establish a monopoly." *Id.*

2          Here, Defendants allege no fact establishing the relevant market for graph database software

3    and support for such software.  *See Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1413 (9th Cir.

4    1991) (market definition requires "both a geographic and a product dimension").  There are also no

5    facts alleged plausibly establishing that the contract provision in question caused harm to market-

6    wide competition. *See Brantley,* 675 F.3d at 1198; *Les Shockley,* 884 F.2d at 507-08.  Defendants

7    instead allege in conclusory fashion that Section 4.3.2 "violates the rule of reason as the restriction

8    harms competition more than it helps." TACC at 15:1-4.  Defendants then only allege facts about

9    the impact that Section 4.3.2 purportedly had on ***PureThink***.  *See, e.g.*, *id.* at 15:4-6 ("The

10   restriction sought to prevent PureThink from providing professional services to third party

11   Licensees of the open source version of [Neo4j®] software."); *id.* at 15:23-3 ("Neo4J USA's three

12   year restriction preventing Purethink from supporting the IRS' use of the open source versions of

13   Neo4J software is anticompetitive as Neo4J USA has no right to control open source owned by

14   Neo4J Sweden and licensed under the AGPL.") (typographical errors in original).

15         In addition, Defendants fail to allege facts establishing that consumers did not have

16   alternative sources in which to obtain support for open source Neo4j® software. *See Newcal Indus.*,

17   513 F.3d at 1045 (the definition of the relevant market "must encompass the product at issue as

18   well as all economic substitutes for the product").  Likewise, they do not even suggest that there

19   are no alternative graph database software (open source or otherwise) available to PureThink, the

20   IRS or any other "consumers" in an undefined marketplace.  Defendants also fail to allege facts

21   establishing that such consumers were unable to obtain commercial support services from providers

22   other than PureThink.  Defendants instead allege that the three-year restriction in Section 4.3.2

23   prevented ***PureThink*** from supporting the ***IRS'*** use of open source versions of Neo4j® software.

24   They even admit that iGov was not bound by the restrictions imposed on PureThink by Section

25   4.3.2 and was formed by Defendants for the express purpose of circumventing those restrictions.

26   *See* TACC at 10:5-6; Dkt. 118 at 4:15-18.  Thus, Defendants have not and cannot plausibly establish

27   that Section 4.3.2 harmed competition in the marketplace.

28         More importantly, the Partner Agreement read as a whole establishes that Section 4.3.2 does

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4866-5731-7197.4                                    - 16 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1    not violate the rule of reason.  As previously recognized by the Court, the Partner Agreement

2    stemmed from arms-length business negotiations between Neo4j USA and PureThink.  *See* Dkt.

3    No. 168 at 8:13-15; *see also* TACC ¶¶ 13-20.  PureThink thus knowingly agreed to be bound by a

4    specific license to support and distribute commercially licensed Neo4j® EE software.  *See* TACC,

5    ¶ 15.  In doing so, it willingly gave up any alleged right to offer or provide support services to

6    licensees of open source Neo4j® Software it may have had under the AGPL in exchange for

7    obtaining a 25% sales commission, a trademark license, a 20% discount on training, access to

8    confidential sales and customer information and over a dozen other partnership benefits.  *See id.*, ¶

9    12; SPA §1 and Exhibit A thereto (p. 43 of 53).  As a result, Defendants cannot now assert that the

10   restriction in Section 4.3.2 violates the rule of reason.  *See Ho v. Marathon Pat. Grp., Inc.*, 2022

11   WL 1600048, at *18 (finding that a contractual restriction was not an unlawful restraint on trade

12   under *Ixchel* because defendant failed to establish that it "negatively affected the public interest or

13   attempted to establish a monopoly," and instead was "designed to protect the parties in their

14   dealings" by preventing defendant from circumventing plaintiff from transactions involving

15   business contacts plaintiff referred to defendant); *see also Universal Gym Equip., Inc. v. ERWA*

16   *Exercise Equip. Ltd.*, 827 F.2d 1542, 1550 (Fed. Cir. 1987) (recognizing that parties to a contract

17   subject to California law may limit their right to take action they previously had been free to take).

18        The post-termination applicability of Section 4.3.2 was proper because it protects Neo4j

19   USA's right to commercially license and distribute Neo4j® EE under the license it received from

20   Neo4j Sweden.  *See King v. Gerold*, 109 Cal.App.2d 316 (1952).  The holding in *King* is instructive

21   here.  In that case, a trailer designer granted a license to a trailer manufacturer to produce a particular

22   trailer model. The parties agreed that if the license was not renewed on its initial expiration date,

23   the manufacturer would "cease to produce said trailer for any purpose whatsoever."  Even though

24   the license was not renewed, the manufacturer persisted in producing the trailer and the designer

25   sued to enforce the contract.  The *King* court upheld the validity of the provision, and rejected the

26   manufacturer's argument that it was an illegal restraint under Section 16600 because it was not

27   prohibited from carrying on its lawful business of manufacturing trailers.  Rather, the manufacturer

28   was only barred from producing one particular model.  *See King,* 109 Cal.App.2d at 318.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                          - 17 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

Similar to *King*, the Partner Agreement did not restrict Defendants' ability to provide consulting and support services to end-users that either purchase a commercial license for Neo4j® EE software or end users of any other graph database software. *See* SPA, §4.3.2. Likewise, there were no restrictions on Defendants independently developing their own graph database software. *See id.* More importantly, in exchange for the contractual limitations, PureThink obtained access to Neo4j's proprietary customer database, sales and marketing material and pricing information subject to the confidentiality provisions in the Partner Agreement. *See* SPA, §§1, 3 and Exhibit A thereto (Dkt. No. 171 at p. 43 of 53). As a result, the post-termination restriction in Section 4.3.2 does not violate Section 16600 as a matter of law. *See Ho v. Marathon Pat. Grp., Inc.*, 2022 WL 1600048, at *18; *see also E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015 (N.D. Cal. 2016) (recognizing that courts have found an exception to Section 16600 where the agreement is necessary to protect trade secrets or confidential information).

Finally, the exercise of contractual rights and "truthful statements to interested parties about one's standard business practices … [are] not wrongful conduct actionable as intentional interference with prospective economic relations." *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 477 (1996). The alleged statements made to the IRS that PureThink (and iGov as its successor-in-interest) was subject to a 36-month restriction on providing support services to licensees of open source Neo4j® software were accurate statements concerning the restrictions that PureThink had ***voluntarily agreed to in an arms-length transaction***. Accordingly, Defendants have again failed to establish an independent wrongful act based on the rule of reason, which the Court found was necessary for Defendants to revive their IIPEA claim.

**B.    Defendants Fail to Allege Facts Plausibly Establishing that Neo4j USA had Actual Knowledge of the Sole Source Award to PureThink at the Time it Allegedly Interfered with the IRS' Pending Contract Award to PureThink**

One of the essential elements that PureThink must plausibly allege is that Neo4j USA had actual knowledge of the IRS's intent to award PureThink the $1.1 million CKGE support contract at the time it allegedly interfered with that economic opportunity. *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (dismissing IIPEA claim where plaintiff failed to allege facts establishing defendant knew of the economic relationships it allegedly disrupted).

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4866-5731-7197.4
- 18 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    Defendants allege that Neo4j USA sent an email on July 11, 2017 and another email on July

2    17, 2017 "in an effort to interfere with PureThink's $1,100,000 potential contract." TACC, ¶¶ 23,

3    26.   Yet, it is implausible that Neo4j had knowledge of or intended to disrupt the award to

4    PureThink at that time.  *See id.*, ¶¶ 26-28 and Ex. D at p. 2.  Defendants' allegations that the IRS

5    did not request a quote from PureThink until ***July 27, 2017*** and did not announce its intent to award

6    the contract to IRS until ***September 5, 2017*** means Neo4j USA could not have known about this

7    opportunity when it sent those two emails.  *See id.,* ¶ 23.  Thus, Defendants cannot establish the

8    actual knowledge element of their IIPEA claim to the extent they rely upon Neo4j USA's

9    communications with the IRS prior to July 27, 2017. *See Orcinus Holdings*, 379 F. Supp. 3d at 866.

10
11   **C.    Defendants Cannot Establish that Neo4j USA's Communications with the IRS Were the Proximate Cause for Defendants' Alleged Damages**

12    To succeed on an IIPEA claim, Defendants must plead and prove that these alleged false

13   statements amounted to an actual disruption of their prospective economic relationship with the

14   IRS, and were the proximate cause for any resulting damages.  *See Korea Supply*, 29 Cal. 4th at

15   1153.  These same July 11 and July 17, 2017 emails confirm that none of the cited communications

16   by Neo4j USA was the proximate cause for the IRS canceling the pending award to PureThink and

17   the alleged $1.1 million in resulting lost revenue.

18    As detailed above, Defendants allege that these emails amount to independently wrongful

19   acts because Neo4j USA told the IRS that PureThink was terminated as a partner and could not

20   support open source Neo4j® software for 36 months.  TACC, ¶¶ 25-26, 28, 32.  They also allege

21   that the July 17, 2017 email also amounted to "other wrongful conduct" because Neo4j USA falsely

22   stated that iGov was subject to these same restrictions; and the IRS could not use Neo4j® EE for

23   free under the AGPL and needed a commercial license from Neo4j USA to use that software. *Id.* at

24   ¶¶ 27-29.  Irrespective of whether these statements violated Section 16600 or were otherwise false,

25   it is still an unwarranted and unreasonable inference to conclude they were the proximate cause for

26   the IRS cancelling the $1.1 million award to PureThink.  *See Adams v. Johnson*, 355 F.3d 1179,

27   1183 (9th Cir. 2004) (recognizing that "unwarranted inferences are insufficient to defeat a motion

28   to dismiss").  The IRS was obviously unconcerned with Neo4j USA's warnings and had no issue

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                    - 19 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD

1  with having PureThink support open source Neo4j® EE as confirmed by the IRS posting a notice
2  of intent to award that contract **over a month after** Neo4j sent these emails.[5] *See id.*, ¶ 23.

3      Defendants also cannot rely on Neo4j USA's September 19, 2017 Pre-Award Protest as the
4  proximate cause for the IRS canceling the award.  *See* TACC, ¶ 30 and Ratinoff Decl., Ex. 3.  It is
5  unreasonable to conclude that the same statements previously made in the July 11 and July 17, 2017
6  emails would later cause the IRS to change its mind.  *See* TACC, ¶ 32.  The other alleged false
7  statements in that protest, including that Neo4j USA was the original developer of and the copyright
8  holder for Neo4j® software and that Neo4j USA would enforce that copyright against the IRS if
9  they used open source Neo4j® software, also could not have been the reason for the cancellation.
10  *See id.*, ¶¶ 30-31, 41.  This is because Defendants allege that the "IRS **continued** to use the open
11  source version of [Neo4j® software]" *after* it canceled the award to PureThink.  *See id.*, ¶¶ 30-31,
12  41 (emphasis added).

13      More importantly, *none* of the statements communicated by Neo4j USA to the IRS can
14  support Defendants' IIPEA claim as a matter of law, especially Neo4j USA's Pre-Award Protest
15  filed based on the IRS failing to comply with sole-source requirements under Federal Acquisition
16  Regulations (FAR).  *See* Ratinoff Decl., Ex. 3, p. 2.  Neo4j USA has an absolute First Amendment
17  right to petition the federal government under the *Noerr–Pennington* doctrine.  *See Octane Fitness,*

18  _____

19  [5] Because Defendants' alternative independently wrongful acts sound in fraud, they must also
20  establish each element of such a claim with particularity as required by FRCP 9(b). *See Vess v.
   Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *accord BioResource, Inc. v. U.S.
21  PharmaCo Distribution, Ltd.*, No. CV10-01053 SI, 2010 WL 3853025, *3 (N.D. Cal. Sept. 29,
22  2010).  For these same reasons stated above, the TACC fails to establish that Neo4j USA's alleged
23  false statements were material to the IRS's decision to cancel the award, and that the IRS actually
24  and reasonably relied upon them in doing so.  *See Integration Tech. v. MuleSoft Inc.*, No. C 11-
25  04782 EDL, 2011 WL 5914012, at *8 (N.D. Cal. Nov. 28, 2011) (dismissing plaintiff's IIPEA
26  claim where it failed to adequately plead a separate cause of action for fraud as the basis of
27  independently wrongful conduct); *see also Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
28  360 F. Supp. 3d 994, 1016 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020).

1    *LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 555–56 (2014) (under the *Noerr–Pennington*

2    doctrine "defendants are immune from antitrust liability for engaging in conduct … aimed at

3    influencing decision making by the government"); *see also Sosa v. DIRECTV, Inc*., 437 F.3d 923,

4    929 (9th Cir. 2006) (recognizing that "those who petition any department of the government for

5    redress are generally immune from statutory liability for their petitioning conduct").  The doctrine

6    covers agency-level protests, such as Neo4j USA's Pre-Award Protest. *See Manistee Town Ctr. v.*

7    *City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) (the *Noerr-Pennington* doctrine "immunizes

8    petitions directed at any branch of government, including the executive [] and administrative

9    agencies").  Accordingly, Defendants' IIPEA fails as a matter of law. *See In re Cir. Breaker Litig*.,

10    984 F. Supp. 1267, 1282 (C.D. Cal. 1997) (independent wrongful acts protected under the *Noerr–*

11    *Pennington* doctrine cannot form the basis of an IIPEA claim).

12          **D.**       **The Court Should Deny Defendants Leave to Amend**

13        If the Court determines the dismissal of Defendants' IIPEA claim is warranted, it must then

14    decide whether to grant leave to amend. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th

15    Cir. 2012).  In this regard, the Court should not grant leave to amend "where doing so would be an

16    exercise in futility." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012).  The

17    Court "may deny a plaintiff leave to amend if it determines that allegation of other facts consistent

18    with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v.*

19    *Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  Likewise, the Court should deny leave to amend where

20    the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive

21    law. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).  Such is the case here.

22        The Court specifically granted Defendants leave to amend to allege facts establishing that

23    restrictions in Section 4.3.2 violated the rule of reason under *Ixchel*.  Rather than doing so,

24    Defendants identified several "false statements" that purport to amount to alternate independent

25    wrongs.  As detailed above, the newly alleged facts supporting Defendants' IIPEA claim are self-

26    defeating and reveal that Defendants' claim is subject to an absolute defense under the *Noerr-*

27    *Pennington* doctrine.  The remaining defects are legal in nature and Defendants cannot overcome

28    them by alleging additional facts.  Moreover, Defendants conducted no discovery on their IIPEA

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4866-5731-7197.4

- 21 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1  claim during Phase 2 and did not disclose an expert witness that could support any attempt by

2  Defendants to establish the relevant market and Section 4.3.2's alleged anti-competitive impact.

3  Thus, even if they could add such allegations, it would be without the support of any admissible

4  evidence. *See Shields v. Fed'n Internationale de Natation*, --- F. Supp. 3d ----, No. 18-CV-07393-

5  JSC, 2023 WL 121985, at \*11 (N.D. Cal. Jan. 6, 2023) (absent expert testimony on relevant market

6  to support the applicable rule of reason analysis, a reasonable trier of fact could not deduce any

7  relevant market).  Consequently, granting Defendants further leave to amend would be futile.

8  **VI.   CONCLUSION**

9        For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this

10  motion in its entirety and dismiss Defendants' IIPEA claim with prejudice.

11  Dated:  February 8, 2023              HOPKINS & CARLEY
                                          A Law Corporation
12

13

14                                       By: */s/ Jeffrey M. Ratinoff*
                                             Jeffrey M. Ratinoff
15                                           Attorneys for Plaintiffs and Counter-
                                             Defendants NEO4J, INC. and
16                                           NEO4J SWEDEN AB

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4866-5731-7197.4                                    - 22 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF; CASE NO. 5:18-CV-07182-EJD