1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  Arthur E. Rothrock, Bar No. 312704
   arothrock@hopkinscarley.com
4  HOPKINS & CARLEY
   A Law Corporation
5  The Letitia Building
   70 South First Street
6  San Jose, CA  95113-2406

7  *mailing address:*
   P.O. Box 1469
8  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
9  Facsimile:    (408) 998-4790

10 Attorneys for Plaintiffs and Counter-Defendants
   NEO4J, INC. and NEO4J SWEDEN AB
11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14 NEO4J, INC., a Delaware corporation, and      CASE NO.  5:18-cv-07182-EJD
   NEO4J SWEDEN AB, a Swedish
15 corporation,                                  **DECLARATION OF JEFFREY M.
                                                 RATINOFF IN SUPPORT OF
16              Plaintiffs,                       PLAINTIFFS' MOTION TO DISMISS
                                                 DEFENDANTS' FIRST CAUSE OF
17        v.                                     ACTION IN THEIR THIRD AMENDED
                                                 COUNTERCLAIM**
18 PURETHINK LLC, a Delaware limited
   liability company, IGOV INC., a Virginia      **[Fed. R. Civ. P. 12(b)(6)]**
19 corporation, and JOHN MARK SUHY, an
   individual,                                   Date:      April 27, 2023
20                                               Time:      9:00 a.m.
                Defendants.                      Dept:      Courtroom 4, 5th Floor
21                                               Judge:     Hon. Edward J. Davila

22                                               Trial Date:  November 14, 2023

23 AND RELATED COUNTERCLAIM.

24

25

26

27

28

I, Jeffrey M. Ratinoff, declare as follows:

1. I am an attorney at law, duly licensed to practice before all courts of the State of California, and am of counsel with Hopkins & Carley, a Law Corporation, attorney of record for Plaintiff Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs") in the above-captioned matter. I make this declaration in support of Plaintiffs' Motion to Dismiss Defendants' First Cause of Action in Their Third Amended Counterclaim concurrently filed herewith.

2. The facts stated herein are based on my personal knowledge, except with respect to those matters stated to be on information and belief, and as to those matters, I believe them to be true. If called upon to testify as a witness in this matter, I could and would do so competently.

3. Attached hereto as **Exhibit 1** is a true and correct redline comparison of the allegations contained in Defendants' Second Amended Counterclaim (Dkt. No. 72) and their Third Amended Counterclaims (Dkt. No. 171).

4. Attached hereto as **Exhibit 2** is a true and correct copy of a January 31, 2023 letter I sent to counsel for Defendants (without enclosures) detailing why Defendants' amended First Cause of Action for Intentional Interference with Prospective Economic Advantage ("IIPEA claim") remained legally and factually deficient, as well as how Defendants' amendments failed to comply with the Court's January 6, 2023 Order. As of the date of this declaration, counsel for Defendants did not provide a response substantively addressing the issues raised in that letter.

5. Attached hereto as **Exhibit 3** is a true and correct copy of a September 19, 2017 Agency-Level Pre-Award Protest Objection to Sole Source Justification Request for Independent Review Award Stay Required submitted to the Internal Revenue Service by Neo4j, Inc.'s counsel Arnold & Porter Kaye Scholer LLP (the "Pre-Award Protest"). The portions that are most relevant to Plaintiffs' motion are highlighted in yellow.

6. The Pre-Award Protest was produced by the Defendants in the above-entitled action during discovery and bears the Bates No. 00269 through 000279. It was also part of Deposition Exhibit 209, which Defendants authenticated during their November 29, 2022 deposition. Thus, the authenticity of this document is not subject to dispute.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4869-6879-4703.1                                              - 1 -
DECLARATION OF JEFFREY M. RATINOFF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS; CASE NO. 5:18-CV-07182-EJD

7.      Defendants rely upon, reference to and quote from the Pre-Award Protest in Paragraphs 30-33 and 41 of their Third Amended Counterclaim.  Specifically, Defendants allege that "Neo4J also falsely state 'Neo is the original developer and owner of Neo4j, the graph database product used by the Agency and Purethink.'" *See* Dkt. No. 171 at 13:20-22.  This quoted language is from the first paragraph of Section II.B. on page 4 of the Pre-Award Protest.

8.      Defendants further allege that "Neo4J USA also falsely told the IRS 'As such, Neo owns the intellectual property for the Neo4j graph database and is the sole copyright holder for the Neo4j database.'" *See* Dkt. No. 171 at 13:23-14:2.  This quoted language is from the third paragraph of Section III.A., which is found on page six of the Pre-Award Protest.

9.      I am familiar with the parties' respective efforts during fact and expert discovery.  Defendants did not serve any written discovery requests on Plaintiffs that appeared to seek information and documents that would support their IIPEA claim.  Defendants also did not subpoena any of the third parties previously identified in their Second Amended Counterclaims, including Internal Revenue Service, in relation to their IIPEA claim.  In addition, Defendants did not disclose an expert that could provide opinions pertaining to their IIPEA claim, such as the relevant market and any alleged anti-competitive impact thereon.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 9th day of February 2023, at San Jose, California.


                                         */s/ Jeffrey M. Ratinoff*
                                        Jeffrey M. Ratinoff

**EXHIBIT 1**

Counter Claimants PURETHINK LLC, a Delaware limited liability company
("PureThink"), IGOV, INC. a Virginia corporation ("iGov") and John Mark Suhy allege against
NEO4J, Inc. ("NEO4J USA") and NEO4J SWEDEN AB ("NEO4J SWEDEN") as follows:

## I.    JURISDICTION

1.    This is a compulsory counterclaim under Federal Rule of Civil Procedure §13(a).
This Court has supplemental jurisdiction under 28 USC § 1367(a).

## II.    PARTIES

2.    Counter Claimant PureThink LLC, is a Delaware limited liability company.

3.    Counter Claimant IGOV, INC. is a Virginia corporation.

4.    Counter Claimant John Mark Suhy is an individual. John Mark Suhy's
Counterclaim (Dkt. No. 48) is superseded by this pleading such that all
counterclaims are consolidated per Order (Dkt. No. 70.)

5.    Counter Defendant NEO4J, Inc. is a Delaware corporation.

6.    Counter Defendant NEO4J SWEDEN is a Swedish corporation.

## III.    INTRODUCTION

7.    NEO4J SWEDEN licenses software called Neo4j as open source software under a
GNU General Public License model. The GNU General Public License "GPL"
license and a variant for server deployment called the GNU Affero General Public
License "AGPL" license have several versions and distinctions. Neo4j is licensed
as a Community edition under the GPLv.3 and an Enterprise edition under the
AGPLv.3 ("License") A true and correct copy of the Neo4j AGPL License is
attached as Exhibit A.

8.    The Neo4j open source software is available at Github.com which is the
preeminent open source software repository:
https://github.com/neo4j/neo4j/tree/3.5

https://github.com/neo4j/neo4j/tree/3.5

9.  PureThink and iGov have downloaded Neo4j source code from GitHub under the APGL license. Anyone may download the Neo4j source code and use, modify, support, combine and convey the software. However, using GPL or AGPL may require distribution of modifications to the source code under "copyleft" license requirements of GPL and AGPL licenses.

10. Using an open source distribution and development model, NEO4J SWEDEN distributes Neo4j software to users and developers. The GPL and AGPL licenses provide for free use of the software and free use of distributed modifications and extended versions of the program as well.

11. After starting the Neo4j software with open source free licensing and benefitting from free third party development, there was a change to a dual-license model. Neo4j SWEDEN continues to license the open source software while NEO4J USA licenses an object code version of the open source software with support under a "commercial" license. PureThink is unable to determine if NEO4J USA claims the commercial version is proprietary or limited in some manner. Neo4j has over 183 contributors and ~~it is unclear if all~~the contributors did not assigned their copyright and moral rights to changes in Neo4j to NEO4J USA. As NEO4J USA used the open source version to develop and convey "commercial" versions of Neo4j, the "commercial" software is subject to the terms of the AGPL. Those terms include:

~~11.~~ Section 2 of the AGPL license provides, in part:

> All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. This License explicitly affirms your unlimited permission to run the unmodified Program. …

You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force."

Section 4 of the AGPL license provides, in part:

"You may charge any price or no price for each copy that you convey, and you may offer support or warranty protection for a fee."

Section 7 of the AGPL license provides, in part:

All other non-permissive additional terms are considered ""further restrictions"" within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term. If a license document contains a further restriction but permits relicensing or conveying under this License, you may add to a covered work material governed by the terms of that license document, provided that the further restriction does not survive such relicensing or conveying.

Section 10 (Automatic licensing of Downstream Recipients) of the AGPL provides, in part:

"Each time you convey a covered work, the receipient automatically receives a license from the original licensors, to run, modify and propagate that work, subject to this license… ."

"You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."

12.     NEO4J USA also set up a sales channel to use partners, such as PureThink, to sell

and support the "commercial" version of Neo4j. As part of that model, the partner would receive 25% of the fee and provide support for customer.

13.     The Partner Agreement seeks to restrict partners from working with the open source version of Neo4j software during the Partner Agreement and for 3 years after termination. But these restrictions are invalid under California Business and Professions Code §16600. PureThink and IGOV filed a motion under FRCP 12 (b)(6) and 12 (f) against the attempt by NEO4J USA to enforce a restrictive covenant preventing defendants from performing any services on the open source versions of Neo4J software for a period of three years post termination of the Partner Agreement. Conceeding the invalidity of the restriction, raised by the motions, Plaintiffs then filed a Second Amended Complaint altering paragraph 112 in the First Amended Complaint removing and waiving a breach of contract claim based on the unlawful restriction. The restriction also violate the no further restrictions clause (Section 10) of the AGPL. The AGPL license limits the rights of a party to restrict rights to use the AGPL. PureThink is informed and believes that NEO4J USA uses these restrictions to prevent partners from working with any customers on open source versions of Neo4j which also prevents such parties from working for or with PureThink and iGov.

14.     During 2014, the MPO (Maryland Procurement Office) was in discussions with NEO4J USA about Neo4j. The MPO referred NEO4J USA to PureThink as PureThink was a registered vendor in the Arcnet Vendor System and with Neo4j listed as one it its capabilities.

15.     PureThink and NEO4J USA signed a NEO4J Solution Partner Agreement with Neo Technology, Inc, effective 9-30-2014. ("Partner Agreement") A true and correct copy of the Partner Agreement is attached as Exhibit B.

16.     John Suhy, of PureThink, had discussions with Lars Nordwall, COO of NEO4J USA concerning the challenges of obtaining business with the US government.

Mr. Suhy and Mr. Nordwall discussed the need to modify the software offering to satisfy security and other requirements the government had. Mr. Nordwall represented to Mr. Suhy that Mr. Suhy could improve the open source Neo4j software offering for the government and that PureThink would have exclusive rights to the Neo4J support and deals with the Government. Furthermore, a separate agreement came into place for the new Neo4j version for the government which was supposed to protect the investment PureThink was making and was going to make. A true and correct copy of the exclusive agreement for Government sales is attached as Exhibit C.

17.     PureThink, worked for months on the new Neo4j Government Package software, determining the requirements, designing and developing enhancements and additional features around Neo4j including support and professional services to addressed critical government security and procurement requirements. PureThink spent an equivalent to $650,000 to design, develop, and build the new Neo4j Government Package software based on Mr. Nordwall's representations that PureThink would have continuing exclusivity with the government sales and support contracts. PureThink's government packaging of Neo4j was called Neo4j Government Edition and a.k.a. Neo4j Enterprise Government Edition. ("Neo4j Government Edition"). The Neo4j Government Edition was a complete package that included additional services, support and software modules enhancing Neo4j to address critical government requirements.

18.     PureThink did deals with MPO, Sandia National Laboratories, and the FBI with NEO4J USA's approval and closed a deal with the IRS which NEO4J USA initially approved but later changed its position and ultimately did not approve.

19.     There were no significant functional differences between the open source version of Neo4j and what NEO4J USA called a commercial version of Neo4j. Further, under the rules of GPL and AGPL open source software, there could not be

proprietary modification as modifications to and conveyance of open source
software under an AGPL license must continue to be licensed on an open source
AGPL license. It appears NEO4J USA's solution to this problem was and is to
misrepresent the truth or actively conceal the issue.

20.     PureThink and IRS entered into a contract which for the first time, was done
completely outside the Partner Agreement, and under the Government Edition
agreement. The contract included consulting services to build out a solution IRS
requested around the Neo4j Government Edition. NEO4J USA told PureThink to
make whatever decisions were needed regarding the much smaller license portion
of the contract. During the performance of the contract, when the IRS asked
PureThink the difference between Neo4j open source and NEO4J USA's
commercial version, NEO4J USA told PureThink to tell the IRS the open source
version had to be an open use. When PureThink would not make this statement to
IRS, NEO4J USA then proceeded to reach out directly to IRS personel directly
with this false message. This scare tactic is utterly false and a user of AGPL
software does not have to license its use to everyone. The other improper control
is NEO4J USA's unlawful restrictions in its Solution Partner Agreement which
claims the partner may not suport the open source software during the Partner
Agreement or for three years after termination. With these invalid restrictions
NEO4J USA unlawfully restricts third parties from supporting the free open
source version so NEO4J USA can license and support the same software under
an expensive commercial license without fear of fair competition. NEO4J
SWEDEN attempted to improperly restrict this open source software by adding a
restriction to the AGPL software license documents referred to as "Commons
Clause" license condition which sought to broadly restrict the rights of anyone
from selling or otherwise profiting from the sales of support services upon such
software.        Such attempt of adding this type of restriction was in violation of

the AGPL license.

21.   When PureThink resisted misrepresenting the differences between the open
      source software and NEO4J USA's commercial version, NEO4J USA retaliated,
      terminating the Government Edition, the Government Edition Agreement, the
      Partner Agreement with the stated intent of shutting down PureThink. NEO4J
      USA told users and potential users PureThink could not support the open source
      version of Neo4j. See Exhibit D where Neo4j Inc. specifically told the IRS
      PureThink could not provided professional services to the IRS for a period of
      three years as a result of the termination of the Partner Agreement. Because of
      NEO4J USA's improper retaliation and interference with PureThink's business,
      tarnishing PureThink's business, iGov was set up to start fresh in providing
      solutions around Neo4j for parties who use the open source software version of
      Neo4J. iGov is informed and believes that NEO4J USA also advised iGov
      potential customers that iGov could not work with them either.

## IV.   COUNTERCLAIMS

### First Cause of Action

### Interference With Prospective Economic Advantage

### (Against NEO4J, Inc.)

22.   PureThink and iGov reincorporate the allegations in paragraph1-21 as alleged
      above.

23.   PureThink had an economic relationship with the possibility of future economic
      relationships with the ~~United States government agencies MPO, FBI, Sandia~~
      ~~National Laboratories, IRS, and others ("Agencies"). PureThink had already~~
      ~~secured prior business with the MPO, FBI and Sandia National Laboratories, and~~
      ~~the US Treasury. PureThink had been awarded a new contract with the IRS.~~<ins>IRS.</ins>
      <ins>On July 27th 2017, the IRS invited a quote from Purethink for professional</ins>

services supporting CDW Knowledge Graph Environment on a 1 year contract with options for 4 more years. The professional services were for development and support of a platform suite which used *an open source version of Neo4J* as one of its components. The total contract value was $1,100,000. On July 31, 2017 Purethink provided a quote to the IRS for the $1,100,000 contract. On September 5, 2017, the IRS posted a notice that it intends to aware the sole source purchase order the PureThink, LLC. The notice stated that "No other vendor has the specialized experience and expertise of the existing particular library of code involving the Federal Information Security Management Act (FIMA) capabilities which they soley developed, or is capable of delivering the unique set of capabilities that are required for the continued operation of the CKGE to meet user demands, especially given time sensitivity to meeting filing season demans, and broder stakeholder demands for additional capabilities to handle other Fraud and other mission critical direct Exam and Collections needs"

24. ~~PureThink was working on potential business opportunities with US Treasury, Linkurious, Excella, Information Analysis Incorporated, Deloitte, GraphAware, Calibre, Lockheed Martin, Modus21 LLC, Mitre, United States Postal Service (USPS), National Institutes of Health (NIH), U.S. Census Bureau, Army, DHS, and others.~~

25. ~~iGov was working on potential business opportunities with the possibility of future economic relationships with Accenture, Northrop Grumman Corporation, Anacapa Micro Products, NASA, NGA, Airforce, and others.~~

24. ~~26. PureThink and iGov are informed and believe~~ NEO4J USA was aware of ~~each of~~ the economic relationships and prospective future relationships PureThink and iGov had with ~~these Agencies and companies~~the IRS on the $1,100,000 quote.

25. ~~27.~~ PureThink and iGov are informed and believes ~~an~~and on said basis alleges that NEO4J USA intentionally interfered with PureThink and iGov's relationships

by telling the ~~Agencies and companies~~IRS, PureThink was terminated as a solution partner and could not support open source versions of Neo4j for a period of 36 months following termination. ~~Upon information and belief, NEO4J USA also informed other 3rd parties that iGov was under the same 36 month restriction.~~

26.   On July 11, 2017, Jason Zagalsky sent an email to Michael Dunn and other at the IRS to disrupt and interfere with Purethink's pending deal with the IRS. That email is part of the thread in Exhibit D. Mr. Zagalsky stated "I understand that IRS has a relationship with PureThink relating to Neo's products." Mr. Zagalsky further told the IRS:

Regarding the consulting services, please be advised that PureThink is not authorized to provide consulting services and support on open source versions of Neo4j products. This prohibition applies not only to the APGL licensed Enterprise Edition but also to the GPL Licensed Community Edition. While IRS has stated its intention to proceed with the AGPL licensed Enterprise Edition, please understand that Neo's agreements with its partners, including PureThink, prohibit them from providing any consulting services on these products during the term of their agreement and for a period of thirty six (36) months following termination.

27.   On July 17, Neo4J sent the IRS another email in an effort to interfere with PureThink's $1,100,000 potential contract. Neo4J fraudulently stated that until Neo receives such a purchase order, please be advised the IRS does not have a license to use the Government edition or Enterprise edition of Neo4j. This statement is false since the IRS had a license from Neo4J Sweden under the

AGPL license to use *the open source version of Neo4J software*.

28.   Neo4j also falsely stated "Should IRS decide to do proceed under such an arrangement, please be advised that PureThink and its related entities iGov, Inc. and eGovernment Solutions are prohibited from providing these services. This is a fraudulent statement as IGov and more importantly eGovernment Solutions Inc. have no restrictions on providing services for the open source version of Neo4J software. The contractual restrictions against Purethink as void under *Business and Professions Code §16600.*

29.   Neo4J's statement was also fraudulent as the AGPL license the IRS was a licensee under specifically allowed the IRS to use third parties to provide support services. The AGPL allows licensees to use third parties to provide professional service to modify a licensee use of the software:

You may convey covered works to others for the sole purpose of having them make modifications exclusively for you, or provide you with facilities for running those works, provided that you comply with the terms of this License in conveying all material for which you do not control copyright.

Exhibit A ¶2. The open source Neo4J software version the IRS was using was under a older AGPL license version the predated when before Neo4J Sweden added the disputed Commons Clause. The issue of the validity of the commons clause does not apply to the version of the AGPL license the IRS had.

30.   On September 19, 2017, Neo4J USA further falsely told the IRS that Neo4J (USA) owned the software that meets the the requirements for the CKGE requirements. This statement is false as Neo4J USA does not own the Neo4J software. Neo4J also falsely state "Neo is the original developer and owner of Neo4j, the graph database product used by the Agency and Purethink." This

statement is false as Neo4J USA is not the original developer or owner of the Neo4J software. Neo4J USA also falsely told the IRS "As such, Neo owns the intellectual property for the Neo4j graph database and is the sole copyright holder for the Neo4j database."

31.   The statements to the IRS are false because Neo4J USA does not own the intellectual property for the Neo4J Graph database and Neo4J USA is not the sole copyright holder for the Neo4J database. Neo4J USA owns no copyright in the Neo4J software. Neo4J USA lied to the IRS that it owned they copyright to the Neo4J software. The Neo4J graph database is mostly owned by Neo4J USA (in 2018, Neo4J USA stated 99%) however, the copyright is also owned by hundreds of contributors who provided free software development under the APLG license for the Neo4J software. As a result of the third party contributions to the software, any license-even by Neo4J Sweden- of the Neo4J software could only be licensed *under the terms of the* AGPL.

32.   Neo4J USA also falsely stated PureThink is not authorized to provide the solicited graph database software and services in support of the CKGE. This is false because the IRS licensed Neo4J software under the AGPL which specifically provides the Licensee may use third parties to modify the software licensed under the AGPL.

33.   ~~28.~~ This interference was intended to and did disrupt the economic relationship between PureThink, iGov and the ~~Agencies and companies~~IRS..

34.   ~~29.~~ NEO4J USA's interference was an independent wrongful act as it violated California Business and Professions Code §16600: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

35.   Neo4J USA contractual restriction preventing PureThink and iGov from entering into agreements with the IRS violates *California Business and Professions Code*

*§16600* as it violates the rule of reason as the restriction harms competition more than it helps. The restriction sought to prevent PureThink from providing professional services to third party Licensees of the open source version of Neo4J software. Neo4J USA does not own the copyright to the open source version *of the Neo4J open source software* and has no right to prevent anyone from supporting the software. The open source version of Neo4J software is available to third parties for free and only subject to terms of the AGPL license terms.

36.   Under *the terms of the AGPL*, the licensee:

*"You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force*."

This provisions means the IRS may use the open source version of Neo4J without conditions so long as they do not convey the software and may have third parties provide professional services for the software. Government agencies internally use the software and do not convey it. As discussed above, the AGPL expressly allowed to have others make modifications and provide facilities for running the Neo4J software.

37.   Neo4J USA's three year restriction preventing Purethink from supporting the IRS' use of the *open source versions of Neo4J* software is anticompetitive as Neo4J USA has no right to control open source owned by Neo4J Sweden and licensed under the AGPL. Such a restriction improperly prevent user of another's copyrighted software which is a misuse of intellectual property rights. The restriction is also anticompetitive as it prevents licensees of free Neo4J software from obtaining support services from knowledgeable people. It is an unlawful tie in that would force consumers to pay money for software from Neo4J USA that is otherwise available for free. This restriction harms forces consumers to pay Neo4J USA for substantially similar software they can get for free to get support because Neo4J USA unlawful restriction prevents third parties from supporting the free

version. Consumer should be allowed to use the rights in the AGPL to have any third parties support the software. Consumer should not be required to pay a license fee for free software to support the software.

38.     The three year restriction does not promote competition and instead prevents competition because it reduces the availability of support for the open source version. The restriction does protect trade secrets as the free version of Neo4J is the open source version. The source code to Neo4J is not a trade secret since it is open and readily available for download for free. The primary, if not sole reason, for the restrictions is to prevent competition.

39.     Purethink and iGov allege, in the alternative, the rule of reason analysis should not apply as Neo4J has alleged Mr. Suhy is an Alter Ego of these entities and obtained a preliminary injunction against him based on these allegations and is thus estopped to claim the restrictions apply to only entities when they treat the restrictions as applying to an individual. As a result, the violation of California Business and Professions Code §16600 is a per se violation.

40.     Other wrongful conduct by Neo4J USA is terminated Purethink because they would not lie to the IRS and tell them they could not use the free open source version. This retaliation is wrongful and compounded by them using the three year restriction to prevent Purethink from providing the IRS support of the open source version. Neo4J USA terminated Purethink in retaliation for not lying to the IRS then used the termination and unlawful restriction in an effort to force the IRS to purchase the software from NEO4J USA.

41.     Neo4J's USA other wrongful conduct in interefering was claiming and misrepresenting that Neo4J USA owned the intellectual property to and copyright in Neo4J software. This was a false threat that Neo4J USA owned the copyright and would enforce it against the IRS if they went with PureThink and used the open source version of the Neo4J software. Neo4J USA does not own the *Neo4J*

*software and does not* own and does not license the free software the IRS choose to use. Neo4J has no right to sue the IRS for using the licensed under the AGPL license and the AGPL would be a complete defense to any copyright infringement claim. The threats were a false threat intending to disrupt the IRS from entering into the $1,100,000 contract with the IRS.

42. Purethink had communications with the government agency NGA regarding *using the open source version of Neo4J.* Neo4J's also had communications with a government official at NGA as relected in a document they marked as Confidential. In summary, Neo4J had discussions with NGA to seek to disbar Mr. Suhy from further work with the government and discussed criminal conduct all in an effort to prevent him from doing business with the government. The NGA stopped further communications with PureThink yet Mr. Suhy was not disbarred and no criminal complaint was made. There was no basis to disbar Mr. Suhy and he engaged in no criminal conduct.

30. PureThink and iGov had the legal right to enter into agreements with the Agencies and third parties using Neo4j open source software under the terms of the APGL software license and could not be prevented from lawfully doing so.

31. PureThink and iGov's relationship with the Agencies and companies was actually and totally disrupted by NEO4J USA's wrongful interference.

32. PureThink and iGov have suffered economic harm proximately caused by NEO4J USA's wrongful interference including lost sales, lost profits, and future business with. PureThink has also lost its investment in developing the Government Edition.

33. PureThink and iGov have suffered damages in an amount believed to exceed $1,354,856.55.

34. NEO4J USA's conduct was oppressive, malicious, and fraudulent justifying an award of punitive damages under California Civil Code §3294. PureThink and iGov are

~~informed and believe that NEO4J USA's conduct was authorized, ratified or made~~

~~by an officer, director or managing agent of NEO4J.~~

~~**Second Cause of Action**~~

~~**Interference With Contract**~~

~~**(Against NEO4J, Inc.)**~~

~~35. PureThink and iGov reincorporate the allegations in paragraph 1-34 as alleged above.~~

~~36. PureThink and iGov have an irrevocable right to use, modify, support and convey~~
~~Neo4j software under an APGL license through NEO4J SWEDEN.~~

~~37. PureThink and iGov are informed and believe NEO4J USA was aware of the License~~
~~between PureThink, iGov and NEO4J SWEDEN.~~

~~38. PureThink is informed and believes and on said basis alleges that NEO4J USA~~
~~intentionally interfered with the License by improperly telling the government~~
~~agencies and companies, PureThink and iGov could not support open source~~
~~versions of Neo4j based on void terms of the Partner Agreement. NEO4J USA~~
~~action was the purpose of shutting down PureThink and causing PureThink~~
~~economic harm. The open source version was freely available under the License~~
~~and the License provides PureThink and iGov may provide support for Neo4j and~~
~~such right may not be restricted.~~

<u>43.</u> ~~39.~~ PureThink and ~~iGov have~~<u>Igov had</u> the legal right to enter into agreements
with the ~~agencies~~<u>IRS</u> and third parties using Neo4j open source software under
the terms of the APGL software license and could not be prevented from lawfully
doing so.

~~40. PureThink's and iGov's relationships with the Agencies and companies was actually~~
~~and totally disrupted by NEO4J USA's interference with the License.~~

<u>44.</u> *PureThink and iGov's relationship with the* <u>IRS</u> *was actually and totally*
*disrupted by NEO4J USA's wrongful interference.* <u>As discussed above, the IRS</u>

was in the process of entering into an purchase agreement with PureThink for $1,100,000. As a proximate result of Exhibit D and other fraudulent statements by Neo4J USA to the IRS, the IRS stopped the procurement from PureThink.. On September 29th 2017 the IRS told Purethink to cease work as the contract was not awarded. On October 4th, 2017 as a result of Neo4J USA's interference, the IRS published an official cancellation notice for the award showing Neo4J's wrongful and fraudulent interference disrupted the relationship between the IRS and Purethink such that the IRS did no further business with Purethink or Igov. The IRS continued to use *the open source version of Neo4J.*

45.   41. PureThink and iGov have both suffered economic harm proximately caused by NEO4J USA's wrongful interference including lost sales, lost profits, and future business with. PureThink has also lost its investment in developing the Government Edition.

46.   42. PureThink and iGov has have suffered damages in an amount believed to exceed $5,000,000 1,100,000.

47.   43. NEO4J's NEO4J USA's conduct was oppressive, malicious, and fraudulent justifying an award of punitive damages under California Civil Code §3294. PureThink and iGov are informed and believes believe that NEO4J USA's conduct was authorized, ratified or made by an officer, director or managing agent of NEO4J USA.

**Second Cause of Action**

**Omitted**

**Third Cause of Action**

**Breach of Contract**

**(Against NEO4J, Inc.)**

48.   44. PureThink reincorporates the allegations in paragraph 1-43 1-47 as alleged

above.

49. ~~45.~~ PureThink and NEO4J USA entered into the Partner Agreement effective 9-30-2014.

50. ~~46.~~ PureThink performed all its obligations under the Partner Agreement, except those which are unlawful, were prevented, waived or excused.

51. ~~47.~~ NEO4J USA breached the Partner Agreement by failing to pay PureThink $26,020 which is 25% of a $104,028 deal with DHS USCIS.

52. ~~48.~~ As a result of NEO4J USA's breach, PureThink has been damaged in the sum of $26,020 plus interest at the legal rate.

<b>Fourth Cause of Action</b>

<b>Breach of Exclusive Contract to Government</b>

<b>(Against NEO4J, Inc.)</b>

53. ~~49.~~ PureThink reincorporates the allegations in paragraph ~~1-48~~ 1-52 as alleged above.

54. ~~50.~~ Under the terms of the exlusive government agreement dated April 11, 2015, Neo4J, Inc., through its COO Lars Nordwall, agreed PureThink is the only Neo4J Government Edition reseller for the US Federal Bovernment, Department of Defense and Intelligence Agencies. This exclusive agreement is Exhibit C. This agreement was a separate and distinct agreement from the Partner Agreement. There are no terms in the Partner Agreement where PureThink would develop software or functionality for the US government as PureThink did to create the Government Edition. NEO4J USA is estopped from denying the April 11, 2015 agreement as PureThink was induced by the agreement to develop the Government Edition for the exclusive sale by PureThink.

55. ~~51.~~ PureThink has performed all its obligations under the April 11, 2015 exclusive government agreement except those which are unlawful, were prevented, waived

or excused.

56. 52. PureThink is informed and believes that NEO4J USA took features developed by PureThink incorporated it into NEO4J. PureThink is informed and believes that NEO4J USA sold Neo4J software and services directly to the US government, Department of Defense and intelligence Agencies in breach of its April 11, 2015 agreement with PureThink.

57. 53. As a result of its breach, PureThink has suffered damages in excess of $1,354,856.55.

**Fifth Cause of Action**

**Declaratory Relief**

**(Void Restrictions)**

**(Against NEO4J, Inc.)Omitted**

54. PureThink and iGov reincorporates the allegations in paragraph1- 53 as alleged above.

55. There is a present controversy where NEO4J USA claims 4.3.2 of the Partner Agreement may be enforced against PureThink and iGov. That clause states:

4.3.2 During the term of this Agreement and up until thirty six (36) months after the termination or expiration of this Agreement, Partner may not develop, market, distribute or offer any services related to any Neo Technology Community Edition Products, derivative works of such products, or any Partner software code made to work with Neo Technology Community Edition Products(including, without limitation, hosting services, training, technical support, configuration and customization services, etc.)

56. PureThink asserts clause 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600. iGov claims the Partner Agreement does not apply to iGov, but if it does, clause 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600.

57. PureThink and iGov requests a declaration that § 4.3.2 of the Partner Agreement is void under California Business and Professions Code §16600.

**Sixth Cause of Action**

~~Declaratory Relief~~

~~(Restrictions Violate AGPL License) (Against NEO4J, Inc.)~~Omitted

**Seventh Cause of Action**

**Omitted**

~~58. PureThink and iGov reincorporate the allegations in paragraph 1-57 as alleged above.~~

~~59. There is a present controversy where NEO4J USA claims 4.3.1 and 4.3.2 of the Partner Agreement may be enforced while PureThink and iGov assert the restriction in those section violate the GNU AFFERO GENERAL PUBLIC LICENSED VERSION 3 or the GPL for Neo4j because the NEO4J's commercial software is based on the open source version of Neo4j from NEO4J SWEDEN. NEO4J USA is subject to the license limitation on restricting use of the open source version of Neo4j. The Section 2 (Basic Permissions) of the APGL provides, in part:~~

~~"All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. This License explicitly affirms your unlimited permission to run the unmodified Program." …~~
~~"You may make, run and propagate covered works that you do not convey, without conditions so long as your license otherwise remains in force"…~~

~~Section 4 of the AGPL license provides, in part:~~

~~"You may charge any price or no price for each copy that you convey, and you may offer support or warranty protection for a fee."~~

~~Section 10 (Automatic licensing of Downstream Recipients) of the AGPL provides, in part:~~

~~"You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."~~

60. PureThink and iGov have the rights granted under the License and may use Neo4j, provide support for Neo4j, charge for support and NEO4J USA may not restrict the use of Neo4j and prevent PureThink, iGov or any third party from exercising the rights granted under the AGPL. Under the AGPL, NEO4J USA may not prohibit anyone from using, modifying or supporting Neo4j.

61. PureThink and iGov request a declaration that §§ 4.3.1 and 4.3.2 of the Partner Agreement are void under the AGPL as the restriction violate the terms of the AGPL.

**Seventh Cause of Action**

**Declaratory Relief**

**(Commons Clause in AGPL is void)**

**(Against NEO4J SWEDEN AB)**

62. PureThink and iGov reincorporate the allegations in paragraph 1-61 as alleged above.

63. There is a present controversy where NEO4J, SWEDEN added a restrictive clause to the AGPL on at least version 3.4 of the open source version of Neo4J known as a Commons Clause License Condition which provides:

"Commons Clause" License Condition The Software is provided to you by the Licensor under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software. For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.

Last page of Exhibit A.

64. These restriction are to 1) prevent users of the open source software from selling modified versions of the software for consideration-thus giving NEO4J USA the

right to sell similar software for a fee, and 2) suggests that no third party may

provide services for the open source version of Neo4J preventing PureThink and

IGov from providing professional services to support the open source version of

Neo4J.

65. These Commons Clause restrictions are not allowed under an AGPL license because

The Free Software Foundation, Inc., the copyright holder of the AGPL, states that

changes to the license agreement are not allowed:

GNU AFFERO GENERAL PUBLIC LICENSE

Version 3, 19 November 2007
Copyright (C) 2007 Free Software Foundation USA
<http://fsf.org/>
Everyone is permitted to copy and distribute verbatim copies of
this license document, but changing it is not allowed.

Exhibit A, page 1.

66. Adding the Commons Clause is a violation of the terms of the AGPL exceeding the

copyright grant and is void.

67. Moreover, under the AGPL, the Commons Clause is a restriction that is not allowed

under the AGPL and may be removed:

If the Program as you received it, or any part of it, contains a
notice stating that it is governed by this License along with a term
that is a further restriction, you may remove that term.

Exhibit A, §7.

68. As the Commons Clause cannot apply to the AGPL and may be removed by any user,

the clause should be voided.

69. PureThink and iGov request a declaration that the Commons Clause NEO4J,

SWEDEN added to the AGPL is void.

**Eighth Cause of Action**

**Declaratory Relief**

**(The Commons Clause in AGPL does not apply to Professional**

**Services for the open source versions of Neo4J)**

**(Against NEO4J SWEDEN AB)**

58.    70. PureThink and iGov reincorporate the allegations in paragraph 1-69 1-57 as alleged above.

59.    71. There is a present controversy where NEO4J, SWEDEN added a restrictive clause to the AGPL on at least version 3.4 of the open source version of Neo4J known as a Commons Clause License Condition which provides:

"Commons Clause" License Condition The Software is provided to you by the Licensor under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software. For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.

Last page of Exhibit A.

60.    72. There is a present controversy whether the Commons Clause, even if valid, prevents professional service providers from supporting open source Neo4J users from using independent third party from supporting upen source Neo4J users. The

reason for this controversy is the definition of Sell in the Commons Clause

provides:

> For purposes of the foregoing, "Sell" ~~meanspracticing~~means
> practicing any or all of the rights granted to you under the License
> to provide to third parties, for a fee or other consideration, a
> product or service that consists, entirely or substantially, of the
> Software or the functionality of the Software.

Exhibit A, last page.

61.   ~~73.~~ PureThink and IGOV should not be prevented from providing professional

support services to open source Neo4J users under the Commons Clause as such

services do not consist of entirely or substantially the software or the functionality

of the software.

62.   ~~74.~~ PureThink and IGOV's position is supported by NEO4J, Inc's own attorney,

Heather Meeker, who led the drafting of the Commons Clause. She stated "[t]he

Commons Clause does not restrict performing services—it can't be.":

**heathermeeker** commented on Aug 23, 2018

Bear with a legal technicality, but the Commons Clause is not a restriction on performing services -- it can't be. The license grant for the software is in the underlying license, and the Commons Clause claws back one kind of commercial use right. So, picture the original grant as a Venn diagram circle, and the excluded right to Sell as a little circle inside that. Providing services was not in the big circle in the first place, so the small circle can't change it.

But perhaps you are thinking, can I use the software in order to provide my services? That's a reasonable question. In other words, is the right to use the software in support of professional services -- like development, maintenance, or analysis, clawed back by the exclusion? No, because that use is not a service that derives its value from the functionality of the software. Your professional services derive their value from your expertise, not what the software does. The exclusion has to cover services, though, or it would have a big loophole. Offering the software via SaaS as a substitute for distributing it, and selling that access, is the main kind of service that is meant to be limited. Your consulting is not an economic substitute for the software. SaaS is.

Of course, I'm not your lawyer, so technically I can't give you advice. The clause means what it means, and although I led the drafting of the clause, that doesn't mean I have authority to interpret documents. That's not how the law works -- in the end, only a court has that power, no matter who wrote the document. But I hope to be helpful and dispel any confusion.

63. ~~75.~~ The AGPL license expressly allows users to have third parties make modifications for users on the licensed open source software. Such use is not considered a conveyance implicating the copyleft requirements of the AGPL. Exhibit A, pg. 3, §2. The Commons Clause, if interpreted to prevent such right, violates the APGL as a further restriction and is void.

64. ~~76.~~ The Commons Clause is unclear whether third parties such as PureThink and IGOV may provide professional services for open source users of Neo4J. PureThink and IGOV's position is that the Commons Clause does not prevent independent service providers from supporting open source code users. The conclusion services provided are not prevent from providing users services under the Commons Clause is fully supported by NEO4J USA's attorney and the drafter of the Commons Clause. The Commons Clause should be judicially interpreted so there is no controversy that prevents open source Neo4J users from using independent service providers such as PureThink and iGov to provide support and development services for open source Neo4J users.

65. ~~77.~~ PureThink and iGov request a declaration that the Commons Clause does not prevent PureThink and IGOV from providing professional services to users of the open source versions of Neo4J where the AGPL has a Commons Clause.

**Ninth Cause of Action**

**Declaratory Relief**

**(Users may use and fork content NEO4J SWEDEN put on a public**

**GitHub respository)**

**(Against NEO4J SWEDEN AB)**

66. ~~78.~~ PureThink and iGov reincorporate the allegations in ~~paragraph1-77~~paragraph 1-65 as alleged above.

67. ~~79.~~ There is a present controversy where NEO4J, SWEDEN contends users of its

github public repository, such as PureThink and IGOV may not use or fork its content NEO4J SWEDEN put on the GitHub repository. NEO4J, SWEDEN has content including the open source versions of Neo4J software, documentation and extensive information about Neo4J software on NEO4J SWEDEN'S public GitHub respository.

68.   80. Under the GitHub terms of services for public repositories, NEO4J SWEDEN agreed: By setting your repositories to be viewed publicly, you agree to allow others to view and "fork" your repositories (this means that others may make their own copies of Content from your repositories in repositories they control).

69.   81. Under the GitHub terms of services for public repositories, NEO4J SWEDEN granted each user the right to "User of GitHub a nonexclusive, worldwide license to use, display, and perform Your Content through the GitHub Service and to reproduce Your Content solely on GitHub as permitted through GitHub's functionality (for example, through forking)." By its express grant, NEO4J may not bar users from using the content NEO4J SWEDEN put on the public GitHub repository.

70.   82. Under the GitHub Terms of Service, "Content" means:

"Content" refers to content featured or displayed through the Website, including without limitation code, text, data, articles, images, photographs, graphics, software, applications, packages, designs, features, and other materials that are available on the Website or otherwise available through the Service. "Content" also includes Services. "User-Generated Content" is Content, written or otherwise, created or uploaded by our Users. "Your Content" is Content that you create or own.

71.   83. PureThink and iGov request a declaration that they may use use NEO4J

SWEDEN's public repository on GitHub and may fork, use, display and perform all Content NEO4J SWEDEN has on its public GitHub Repository.

### Tenth Cause of Action

**Declaratory Relief**

**(Abandonment of Trademark)**

**(Against NEO4J USA)Omitted**

84. PureThink iGov and John Mark Suhy reincorporate the allegations in paragraph 1-83 as alleged above.

85. There is a present controversy where NEO4J USA claims it has the right to use and enforce the Neo4j trademark. PureThink, iGov and John Mark Suhy claim the trademark is should be abandoned because Neo4J Sweden and Neo4J USA did not have contractual, actual or adequate controls of the quality of third party modifications of the open source versions of Neo4J licensed under the GPL and APGL licenses.

86. Neo4J was released as an open source project by Neo4J Sweden in 2006. Neo4J Sweden allowed the unfettered and uncontrolled use of the Neo4J trademarks to successfully launch the Neo4J software and gain a user and development base. In 2006, Neo4J USA did not exist. Neo4J USA, under a different name, incorporated on 7-7-2011. When Neo4J USA obtained rights to the Neo4J trademark years later, the Neo4J trademark was already abandoned by Neo4J Sweden's lack of contractual and actual or adequate quality control for third party's extensive use of the Neo4J trademark.

87. While Neo4J USA may presently be the parent of Neo4J Sweden, the corporate structure is reverse as the parent was born after the subsidiary. Neo4J Sweden was created first and operated for years before Neo4J USA was created and Neo4J's corporate relationship could not establish a trademark control as Neo4J USA did

not exist.

88. For a period of 5 years before the plaintiff existed and thereafter, Neo4J Sweden licensed Neo4J software as open source software under GPL and AGPL licenses. Neo4J Sweden used the GPL and AGPL licenses to proliferate the free use, development and modification of Neo4J software.

89. Neo4J Sweden has not exercise contractual control over GPL and AGPL licensee's use of the Neo4J trademark. The GPL and AGPL provide that a licensee must carry prominent notices stating that you modified it and giving a relevant date. ¶5 GPL. This copyright notice requirement for licensees who modify the source code and convey new versions of Neo4J software and does not control quality to maintain the Neo4J trademark. Likewise, under the GPL and AGPL, trademark rights may be limited by a **licensee** when the **licensee** conveys a modified version of Neo4J. ¶7GPL This restriction applies to the **licensee's** trademarks and does not exercise any contractual control over Neo4J Sweden or Neo4J's USA's trademarks in Neo4J.

90. Neo4J Sweden was the only entity to license the Neo4J software under the GPL and AGPL licenses. Plaintiff is not the licensor of Neo4J under the GPL or the AGPL. As Plaintiff has no privity of contract and no special relationship with GPL and AGPL licensees, Neo4J USA cannot rely on contract terms to show any quality control to maintain the trademark.

91. Neo4J Sweden and, years later, Neo4J USA did not actually or adequately exercise control of the quality for the third party modified versions of Neo4J software to maintain the trademark.

92. Since Neo4J Sweden licensed Neo4J software as open source software, any person could modify the source code to Neo4J software and convey the modified Neo4J software to third parties. That right is expressly included in the GPL and AGPL licenses. But Neo4J Sweden did not actually maintain quality control of how

licensees modify, use or conveyed the Neo4J software while Neo4J Sweden freely

allowed licensees to use the Neo4J trademark. The GPL and AGPL free license

rights were used to proliferate users and third party developers of Neo4J software.

And it worked. There are over 10,564 (June 1, 2020) third party repositories on

github and 99+ projects at GitLab alone:

https://github.com/search?q=neo4j&type=Repositories

https://gitlab.com/search?group_id=&nav_source=navbar&page=2&proj

ect_id=&repository_ref=&search=neo4j).

93. Many of these third party modified versions of Neo4J freely use Neo4J trademarks.

However, Neo4J Sweden and Neo4J USA did not have express contractual terms

or actually exercise any or adequate controls over the quality of the modified

Neo4J software on the third party repositories, projects or modified versions of

Neo4J software that use the Neo4J trademark. The above list is not an exclusive

list of modified versions as there is no actual control of distribution of modified

versions of Neo4J.

94. There are also significant consumer downloads and use of these third party modified

Neo4J versions which use the Neo4J trademark:

1.8k Downloads : https://hub.docker.com/u/neo4jchina

1M+ Downloads: https://hub.docker.com/r/discsports/neo4j-apoc

1M+ Downloads: https://hub.docker.com/r/bitnami/neo4j

500k+ Downloads: https://hub.docker.com/r/phenompeople/neo4j

100k+ Downloads: https://hub.docker.com/r/frodenas/neo4j

100k+ Downloads: https://hub.docker.com/r/amd64/neo4j

50k+ Downloads: https://hub.docker.com/r/tpires/neo4j

10k+ Downloads: https://hub.docker.com/r/primedio/neo4j-cluster-ecs

100k+ Downloads: https://hub.docker.com/r/ryguyrg/neo4j-importer

100k+ Downloads: https://hub.docker.com/r/c12e/neo4j

100k+ Downloads: https://hub.docker.com/r/trollin/neo4j

100k+ Downloads: https://hub.docker.com/r/mmorga/neo4j-3.2.5"

100k+ Downloads https://hub.docker.com/r/centular/neo4j-enterprise

3.8k+ Downloads https://hub.docker.com/r/builddoctor/neo4j

647 Downloads https://hub.docker.com/r/picnicsoftware/neo4j

788 Downloads https://hub.docker.com/r/digitalcloudsa/neo4j

95. There are millions of copies of modified versions of Neo4J downloaded where the modified version of the software uses the Neo4J trademark. While plaintiff's build infrastructure may carry out tens of thousands of functional, performance, load stress and other tests to ensure quality, Neo4J USA and Neo4J Sweden did not require any of these quality controls for the millions of copies of third party modified Neo4J software which use the Neo4J trademarks for well over a decade.

96. Defendant John Suhy modified Neo4J for a special government use and called it "Neo4J Government Edition." John Suhy's Neo4J Government Edition was was distributed to U.S. government agencies. Yet Neo4J USA did **no** quality assurance or verification of the source code or applications distributed as "Neo4J Government Edition." Neo4J USA knew John Suhy modified Neo4J and allowed him to call the product Neo4J Government Edition yet Neo4J did no quality assurance on the modified version.

97. Because Neo4J Sweden and Neo4J USA had no contractual controls and did not exercise actual and adequate controls over the prolific use of the Neo4J trademark by third parties who modified and conveyed modified versions of Neo4J software, the trademark should be deemed abandoned.

98. PureThink, iGov and John Mark Suhy request declaratory relief that the Neo4j registered trademark be abandoned under the doctrine of Naked License.

**Eleventh Cause of Action**

Omitted. See Docket No. 70. But because of numbering references in the case, the Cause of Action numbering has not been altered.

**Twelfth Cause of Action**

~~Unfair Business Practices~~

~~(Against NEO4J SWEDEN and NEO4J USA)~~**Omitted**

~~99. PureThink and iGov reincorporate the allegations in paragraph 1-98 as alleged above.~~

~~100. NEO4J SWEDEN licensed Neo4j software in 2007 as open source software through a GitHub repository in the United States.~~

~~101. PureThink and IGov are informed and believe that NEO4J SWEDEN licensed on an open source basis to accelerate users and free contributors  new authors  for Neo4J software.~~

~~102. NEO4J SWEDEN generated users and people who contributed to the development of the Neo4J open source software. Since May 20, 2007 there have been 183 contributors to Neo4J.~~

~~103. PureThink and IGov are informed and believe that not all contributors have assigned copyright ownership and moral rights to the portions of Neo4J they authored.~~

~~104. NEO4J SWEDEN has allowed NEO4J USA to use the open source version of Neo4J, modify it and license it on a commercial basis without consent of all the contributors. PureThink and IGov are informed and believe that NEO4J SWEDEN has allowed NEO4J USA to license the object code to the modified version of Neo4J without compliance with the terms of the AGPL.~~

~~105. NEO4J USA advertises it can sell the object code of the modified AGPL version of Neo4J and charge a license fee. This advertisement is false and NEO4J USA is in~~

violation of the AGPL and the rights of contributors.

106. In an effort to restrict end users of the AGPL version of Neo4J, NEO4J SWEDEN has included the Commons Clause in violation of the terms of the AGPL. The restriction was added to prevent users from selling modified versions of Neo4J or allow independent service providers to provide services to open source users in an attempt to allow NEO4J USA to have exclusive control of the sale and service of Neo4J.

107. NEO4J SWEDEN advertises an Enterprise Edition which includes closed source components which are not available on GitHub and requires a commercial license.

108. PureThink and IGov are informed and believe NEO4J USA licenses Neo4J on a commercial basis charging a license fee for users of software which is primarily based on the open source version of Neo4J.

109. While NEO4J SWEDEN attempted to limit users with the void Commons Clause amendment, NEO4J USA created a Partner Agreement to sign up companies such as PureThink to resell and support the commercial version of Neo4J.

110. Because NEO4J SWEDEN added the Commons Clause to the AGPL, there was concern that third parties could not provide services to open source code users until the validity and scope of the Commons Clause was resolved.

111. NEO4J USA inserted a clause in the Partner Agreement that partners could not provide services for open source versions of Neo4J during the agreement and for three years after termination. This business practice effectively barred third parties from supporting open source software which harmed and continues to harm PureThink and iGov, users and other companies.

112. NEO4J USA has advertised that if you incorporate Neo4J in a closed, proprietary project, then you require a commercial license. NEO4J USA stated as a user, you can either buy commercial software, or contribute to open-source software. NEO4J USA omitted to state that an internal user, who does not distribute the

open source software modifications is not required to provide the modifications to third parties. This is was a scare tactic to generate commercial licenses.

113. There is perception that any modifications to open source software under a GPL or AGPL license requires the modified software to be open-made available to the open software community. By omitting the fact that internal users are not subject to the copyleft requirments of the GPL and AGPL licenses, NEO4J SWEDEN and NEO4J USA customers were likely deceived in buying a commercial version and paying a license fee and support for Neo4J instead of using the open source version for free and other lower cost service providers.

114. Under the terms of the AGPL license, a user who does not distribute or convey modifications of the open source version of Neo4J software to the public has not duty to provide the modified source code to third parties.

115. In 2016, Neo4J agreed that most users would choose the open source version of Neo4J because it was free. The US government has embraced open source software to save licensing costs. The key reason is the US government does not distribute modified open source so the viral copyleft terms in GPL and AGPL licenses is not an issue for the Government users. The copy left issue with GPL and AGPL licenses are not an issue for users that do not distribute or convey modified versions of open source software. This is confirmed by GNU.org, the group which manages the GPL and AGPL licenses:

If I only make copies of a GPL-covered program and run them, without distributing or conveying them to others, what does the license require of me?( #NoDistributionRequirements)

Nothing. The GPL does not place any conditions on this activity.

The same rules apply to modified versions of the open source code:

Does the GPL require that source code of modified versions be posted to the public? (#GPLRequireSourcePostedPublic)

The GPL does not require you to release your modified version, or any part of it. You are free to make modifications and use them privately, without ever releasing them. This applies to organizations (including companies), too; an organization can make a modified version and use it internally without ever releasing it outside the organization.

But *if* you release the modified version to the public in some way, the GPL requires you to make the modified source code available to the program's users, under the GPL.

Thus, the GPL gives permission to release the modified program in certain ways, and not in other ways; but the decision of whether to release it is up to you.

[Emphasis added]

116. PureThink and IGov are informed and believe that NEO4J USA and NEO4J SWEDEN has falsly advertised to customers, that use of the open source version of Neo4J requires that the use be "Open".

117. When PureThink was working a deal with the IRS for development on the open source government edition developed by PureThink, NEO4J USA demanded that the IRS be charged a license fee on a per server bases for the software.

118. The IRS asked PureThink the difference between free Neo4j open source and Neo4J's commercial version. As there was no significant difference, PureThink asked for Neo4J's guidance. Neo4J USA told PureThink to tell the IRS the open source version had to be an open use and that the IRS could not use the open source version of Neo4J. NEO4J told PureThink it should not be advising the IRS they can use the APGL version.

119. PureThink would not make this false representation and material omission of the APGL license to the IRS. NEO4J takes the position that there position is based on the company's intent but that intent is not what the APGL says. They claim that NEO4J USA's intent described under a document explaining a Fair Trade Software License controls but that is not the APGL under which the open source software is licensed. NEO4J USA and NEO4J SWEDEN falsely advertise that

their intent controls over the APGL. However the open source software has been licensed for years under the AGPL and users are not bound by a separate document which is inconsistent with the terms of the AGPL. And, under the terms of the APGL, the restrictions may not be changed and no further restrictions, such as those NEO4J USA and NEO4J SWEDEN intend to impose, are allowed.

120. PureThink is informed and believes that NEO4J USA directly contacted the IRS and told them using the open source version of Neo4J had to be open which is false advertising.

121. PureThink and IGov are informed and believe that NEO4J USA and NEO4J SWEDEN have false advertised to other users and potential users that using the open source version of Neo4J had to be open otherwise, they had to buy the commercial version of the software.

122. PureThink and IGov are informed and believe that NEO4J USA and NEO4J SWEDEN have false advertised that only authorized service providers may support the open version of Neo4J and have told potential customers that PureThink may not support the open version of Neo4J because of the term in section 4.3.2 of the Partner Agreement that unlawfully bars PureThink from supporting the open source version of Neo4J.

123. PureThink and IGov are informed and believe that NEO4J USA's commercial version of Neo4J software is based on the open source version of Neo4J licensed under the GPL and the AGPL. NEO4J USA has modified the open source version and distributes or conveys the commercial version in object code for a fee while not providing users the source code at no charge in violation of the GPL and AGPL.

124. NEO4J SWEDEN and NEO4J USA have engaged in unfair competition as defined in Busines and Professions Code §17200.

125. PureThink and IGov have suffered actual damages from NEO4J USA and NEO4J

SWEDEN in lost sales of services to potential users and unless enjoined, will continue to suffer loses.

126. It is likely without an injunction the conduct will continue as NEO4J USA has expressly stated it intends to shutdown PureThink, and by implication, IGov.

127. PureThink and IGov request the following injunction as a result of NEO4J USA and NEO4J SWEDEN unfair business practices:

a. That NEO4J USA and NEO4J SWEDEN advise all commercial Neo4J license customers and potential customers and post on each repository where the open source software version of Neo4J is offered:

i. The Commons Clause added to the AGPL license is void and not a term of the license;

ii. That a user of an open source version of Neo4J is not required to make derivatives or modifications to the source code available when the user is only internally using the software;

iii. That any third party may provide support and development services for users of the open source version of Neo4J; and iv. That PureThink and IGov are not barred from providing support and development services for users of the open source version of Neo4J.

128. PureThink and IGov. request the following restition remedy as a result of NEO4J USA and NEO4J SWEDEN unfair business practices:

That NEO4J USA and NEO4J SWEDEN refund all license and support fees paid by commercial Neo4J license customers.

## V.    PRAYER FOR RELIEF

Wherefore PureThink, iGov and John Mark Suhy request judgment against NEO4J USA and NEO4J SWEDEN as follows:

1.    For general, special and punitive damages in an amount of more than $1,100,000

according to proof.

2.    For declaratory relief that:

a.    § 4.3.2 of the Partner Agreement is void under California Business and
Professions Code §16600.

b.    Omitted.

c.    Omitted.

b. §§ 4.3.1 and 4.3.2 of the Partner Agreement are void under the AGPL License.

c. The Commons Clause NEO4J, SWEDEN added to the AGPL is void.

d.    The Commons Clause does not prevent third parties, such as PureThink
and IGOV from providing professional services to users of the open
source versions of Neo4J where the AGPL has a Commons Clause.

e.    PureThink and iGov and any user of NEO4J SWEDEN's public repository
on GitHub may fork, use, display and perform all Content NEO4J
SWEDEN has on its public GitHub Repository.

f.    The Neo4j registered trademark be abandoned under the doctrine of Naked
License.Omitted

3.    Omitted. See Docket No. 70 but because of numbering references in the case, the
numbering has not been altered.

4.    Omitted.

5.    Omitted.

4. For an preliminary and permanent injunction as a result of NEO4J USA and NEO4J
SWEDEN's unfair business practices:

a. That NEO4J USA and NEO4J SWEDEN advise all commercial Neo4j license
customers and potential customers and post on each repository where the
open source software version of Neo4J is offered:

i. The Commons Clause added to the AGPL license is void and not a term
of the license;

ii. That a user of an open source version of Neo4J is not required to make derivatives or modifications to the source code available when the user is only internally using the software;

iii. That any third party may provide support and development services for users of the open source version of Neo4J; and iv.   That PureThink and IGov are not barred from providing support and development services for users of the open source version of Neo4J.

5. For an order of restitution that NEO4J USA and NEO4J SWEDEN refund all license and support fees paid by commercial Neo4J license customers.

6.      That Counter Claimants recover costs and attorneys fees as permitted by law, including under trademark law and copyright law and, because of the significant benefit to the public in preserving the public rights to open source software, Code of Civil Procedure §1021.5;

7.      And for such other relief and remedies as the Court deems just. Dated: June 5January 27, 20202023

　　　　　　　　　　　　　　　/s/ Adron W. Beene     Adron W. Beene SB# 129040 Adron G. Beene SB# 298088 Attorney At Law 1754 Technology Drive, Suite 228 San Jose, CA 95110 Tel: (408) 392-9233 Fax: (866) 329-0453 adron@adronlaw.com Attorney for Counter Claimants PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation and John Mark Suhy.

**DEMAND FOR JURY TRIAL**

Counter Claimant PURETHINK LLC and IGOV, Inc. and John Mark Suhy demand a trial by jury.

_/s/ Adron W. Beene_   Adron W. Beene SB# 129040 Adron G. Beene SB# 298088 Attorney At Law 1754 Technology Drive, Suite 228 San Jose, CA 95110 Tel: (408) 392-9233 Fax: (866) 329-0453 adron@adronlaw.com Attorneys for Counter Claimants PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation.

## FILER'S ATTESTATION

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5- 1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: June 5, 2020

_/s/ Adron G. Beene_   Adron W. Beene SB# 129040 Adron G. Beene SB# 298088 Attorney At Law 1754 Technology Drive, Suite 228 San Jose, CA 95110 Tel: (408) 392-9233 Fax: (866) 329-0453 adron@adronlaw.com Attorney for Defendants PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY

| Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 1/30/2023 1:01:39 PM | |
|---|---|
| **Style name:** H&C Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Defendants' Second Amended Counterclaim conv.docx | |
| **Modified filename:** Defendants' Third Amended Counterclaim conv.docx | |
| **Changes:** | |
| Add | 127 |
| Delete | 345 |
| Move From | 16 |
| Move To | 16 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 504 |

**EXHIBIT 2**

# hopkins carley

**San Jose**
70 South First Street
San Jose, CA  95113
T.  408.286.9800
F.  408.998.4790

January 31, 2023

Jeffrey M. Ratinoff
jratinoff@hopkinscarley.com
T. 408.299.1336
F. 408.998.4790

*Via Electronic Mail (adron@adronlaw.com)*

Adron W. Beene
Law Offices of Adron W. Beene
7960 Soquel Drive, Suite B #296
Aptos, CA 95003

> **Re:    *Neo4j, Inc. v. PureThink LLC, et al.,* Case No.: 5:18-cv-07182-EJD**

Dear Adron,

I am writing regarding Defendants' First Cause of Action for Intentional Interference with Prospective Economic Advantage ("IIPEA") re-alleged in their Third Amended Counterclaim (TACC).  Defendants' amendments do not address the legal and factual defects identified by the Court, are contrary to the actual evidence developed during discovery, and otherwise ignore the Court's findings in its January 6, 2023 Order.

## Defendants Fail to Allege Facts Establishing a Violation of the Rule of Reason

In its Order, the Court specifically found that in order for Defendants to maintain their IIPEA claim, they "must allege sufficient facts that would support the unlawfulness of the Partner Agreement restrictions under *Ixchel*, that is, the restrictions **harm competition** more than they help."  Dkt. No. 168 at 7:22-26 (emphasis added).  The Court granted Defendants leave to amend their IIPEA to "plead[] additional facts that supports the unreasonableness of Section 4.3.2. of the Partner Agreement." *Id.* at 8:18-22.

As confirmed by the Court, the "'rule of reason' inquiry is the same analysis used to assess antitrust violations under the Cartwright Act…." Dkt. No. 168 at 7:16-21 (citing *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1150 (2020).  "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999).  The rule of reason inquiry asks whether a contractual restraint "harms competition more than it helps [in consideration of] the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption." *Ixchel,* 9 Cal. 5th at 1150 (internal quotation marks omitted).

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 2

In the context of commercial contracts between businesses, "as long as a noncompetition provision does not negatively affect the public interests, is designed to protect the parties in their dealings, and does not attempt to establish a monopoly, it may be reasonable and valid." *Quidel Corp. v. Superior Ct*., 57 Cal. App. 5th 155, 166–68 (2020). This includes facts establishing "the existence of the relevant market, as a means of demonstrating how the alleged unlawful conduct had evident adverse effects upon competition within that market." *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 494–95 (2011) (internal quotes and citations omitted). Defendants must delineate a relevant market and show that Neo4j USA plays enough of a role in that market to impair competition significantly. *See Bhan v. NME Hospitals, Inc*., 929 F.2d 1404, 1413 (9th Cir. 1991); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008).

Contractual provisions "'designed to protect the parties in their dealings' by preventing Defendant[s] from circumventing Plaintiff[s] from transactions involving business contacts Plaintiff referred to Defendant" do not violate the rule of reason. *Ho v. Marathon Pat. Grp., Inc.*, No. EDCV21339PSGSPX, 2022 WL 1600048, at *18 (C.D. Cal. Feb. 11, 2022) (citing *Quidel Corp.,* 57 Cal. App. 5th at 168). Defendants thus were required to allege sufficient facts establishing that Section 4.3.1 of the Partner Agreement "negatively affected the public interest or attempted to establish a monopoly." *Id.*

Remarkably, there are no facts alleged in TACC suggesting Neo4j USA caused harm to market-wide competition or establishing the relevant market for graph database software and support for such software. Defendants instead allege in conclusory fashion that Section 4.3.1 "violates the rule of reason as the restriction harms competition more than it helps." Dkt. No. 171 at 15:1-4. Defendants then allege facts that only relate to the effect that provision purportedly had on **PureThink**. *See, e.g.*, *id.* at 15:4-6 ("The restriction sought to prevent PureThink from providing professional services to third party Licensees of the open source version of Neo4J software."); *id.* at 15:23-3 ("Neo4J USA's three year restriction preventing Purethink from supporting the IRS' use of the open source versions of Neo4J software is anticompetitive as Neo4J USA has no right to control open source owned by Neo4J Sweden and licensed under the AGPL.").

Defendants fail to allege facts establishing that consumers did not have alternative sources in which to obtain support for open source Neo4j software. Likewise, Defendants do not allege facts suggesting that there are no alternative graph database software (open source or otherwise) available to PureThink, the IRS or unidentified "consumers" in an undefined marketplace. Defendants also fail to allege facts establishing such consumers were unable to obtain commercial support services from providers other than PureThink. Rather, they merely allege that the three-year restriction in Section 3.4.1 prevented **PureThink** from supporting the **IRS'** use of open source versions of Neo4j software. Accordingly, Defendants once again fail to establish an independent wrongful act based on the rule of reason, which the Court found was necessary for Defendants to revive their IIPEA claim.

4856-4301-9342.2

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 3

**Defendants' Allegations of Other "Wrongful Conduct" Exceed the Scope of Leave to Amend and are Otherwise Contrary to the Court's Order**

Defendants appear to have added several new alternate independent wrongful acts consisting of alleged misrepresentations made by Neo4j USA to the IRS, which allegedly caused the IRS to withdraw $1.1 million contract for either PureThink or iGov to provide professional services to support Neo4j software within the CDW Knowledge Graph Environment ("CKGE"). Specifically, Defendants allege that Neo4j USA falsely stated to the IRS that (1) PureThink was terminated as a partner and could not support open source versions of Neo4j for a period of 36 months following termination [Dkt. No. 171 at ¶¶ 25-26, 32]; (2) the IRS could not use Neo4j® EE under the AGPL and needed a commercial license for that software [*id.* at ¶¶ 27-29]; (3) PureThink's "related entities," iGov and eGovernment Solutions ("eGov Sol"), were prohibited from providing commercial support services for open source versions of Neo4j [*id.* at ¶ 28]; and (4) Neo4j USA owned the copyright to the software that meets the requirements for the CKGE and was the original developer of that software [*id.* at ¶¶ 30-31].

Defendants further allege that "other wrongful conduct" includes Neo4j USA terminating the Partner Agreement because it "would not lie to the IRS and telling them they could not use the free open source version," and then making the false threat "that Neo4J [sic] USA owned the copyright and would enforce it against the IRS if they went with PureThink and used the open source version of the Neo4J [sic] software." Dkt. 171 at ¶¶ 43-44. Defendants base these alternate theories on allegations that the rule of reason should not apply because Neo4j USA alleges that Mr. Suhy is the alter ego of iGov and PureThink and obtained a preliminary injunction based thereon is improper. *See* Dkt. 171 at ¶ 39.

This is contrary to Court granting leave to amend for the limited purpose of Defendants alleging facts sufficient to establish Section 4.3.1 violates the rule of reason. *See* Dkt No. 168 at 8:16-22. Courts in the Northern District will routinely strike or dismiss new theories of liability or claims in an amended pleading that fall outside the scope of the court's prior order granting leave to cure deficiencies. *See, e.g., PB Farradyne, Inc. v. Peterson*, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (striking new theory of liability in amended pleading without leave to amend because the theory was outside the scope of the prior leave to amend); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 WL 4723366, at *6 (N.D. Cal. Dec. 4, 2009) (striking new allegations that were material additions rather than amendments within the limited scope of prior grant of leave to amend).

More importantly, the "alter ego" theory Defendants are using to justify their newly asserted alternate independent wrongful acts amounts to a flagrant disregard of the Court's ***express rejection*** of an identical argument made by Defendants in opposition to Plaintiffs' motion for judgment on the pleadings:

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 4

> Defendants' efforts to distance the Partner Agreement from *Ixchel's* holding are not persuasive. They argue that, because Plaintiffs have claimed that Defendant PureThink is an alter ego of individual Defendant John Mark Suhy, the Partner Agreement is essentially one between a business entity and an individual. Opp. 6. Defendants also advance the argument that Defendant Suhy is actually Plaintiffs' employee, because he performed work within Plaintiffs' course of business and was controlled by Plaintiffs. *Id*. Not only are these newly proposed theories unsupported by any factual allegations in the SACC, but they also conflict with the affirmative allegations asserted by Defendants themselves. *See* SACC ¶¶ 13–20 (stating that the Partner Agreement was between PureThink and Neo4j USA and describing the parties' arms-length business negotiations).

Dkt. No. 168 at (citing Dkt. No.  137 at 6:8-22).  In light of the Court's findings, it is inconceivable why Defendants would attempt to plead around the rule of reason and add alternative independent wrongful acts that conflict with its prior allegations.

## Defendants' Alternative Independent Wrongful Acts Are Contrary to the Evidence

Even if the Court had granted Defendants leave to assert alternative independent wrongful acts, none of the aforementioned false statements can support the conclusion that they caused the IRS to cancel the $1.1 million award to PureThink and iGov, and that "the IRS did no further business with Purethink or Igov [sic]." [1] Dkt. No. 171 at 18:21-25. To succeed on an IIPEA claim, Defendants would have to plead and prove that these alleged false statements amounted to an actual disruption of their economic relationship with the IRS, and were the proximate cause for any resulting damages.  *See Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003).

However, Defendants' alternative allegations are without any colorable basis because they knew ***before*** filing the TACC that none of the alleged false statements were the proximate cause for the IRS withdrawing the $1.1 million sole-source pre-award.  Mike Dunn, the IRS's corporate designee and the recipient of the communications identified in the TACC, confirmed during his deposition that despite Neo4j USA informing the IRS that it terminated the Partner Agreement and PureThink was not allowed to support open source Neo4j software, the IRS decided to allow PureThink to perform its remaining responsibilities under an existing support contract.  *See* Nov. 17, 2022 Deposition of Michael C. Dunn ("Dunn Depo") at 40:16-42:1, 53:8-54:14 and Depo Ex. 159; 56:2-59:11

---

[1] It is unclear why Defendants would now allege that the sole-source award was to PureThink **and** iGov when Mr. Suhy previously cleared up this discrepancy during his deposition and testified that it was to be awarded to iGov and not PureThink. *See* Nov. 29, 2022 Deposition of Defendants at 141:11-142:25; *see also* Depo Ex. 215.

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 5

and Depo Ex. 161; *id.* at 61:11-67:7, 69:8-19.  Mr. Dunn further testified that the IRS continued to use the same version of Neo4j EE under the AGPL that it had been using while receiving support from PureThink notwithstanding Neo4j USA's warnings that it could not do so.  *Id.* at 69:20-70:25, 71:11-73:4, 78:5-16.

Notably, Mr. Dunn testified the name of the entity retained by the IRS to provide support and development services for the CKGE was not material so long as Mr. Suhy was the individual providing them.  *See* Dunn Depo at 61:11-67:2 and Depo Ex. 162.  The IRS then issued a notice that it intended to grant a sole source award to iGov so that Mr. Suhy could continue his work on the CKGE that he had performed under the PureThink contract. *See id.*  Mr. Dunn then confirmed that the **only** reason the IRS canceled the pre-award to iGov was because Neo4j filed an official protest and the IRS agreed with Neo4j USA that the IRS improperly issued the award on a sole-source basis since "[t]here [are] other people that can work on Neo4j." *Id.* at 69:20-70:9, 71:11-74:1.  Defendants' allegations that the IRS canceled the pending award to iGov because of various alleged false statements about needing a commercial license for Neo4j® EE and that the Partner Agreement precluded PureThink and iGov from supporting open source Neo4j software for 36 months are thus demonstratively false.

It seems that Defendants added these spurious allegations because they know full-well that Neo4j USA legitimately protested the pre-award to iGov as an improper sole-source award under FAR 33.103(d)(4).  To be sure, Mr. Suhy admitted to filing agency-level protests on **identical grounds** after the IRS awarded a sole-source contract to one Neo4j USA's resellers. *See* November 29, 2022 Deposition of Defendants at 143:12-149:17 and Exs. 209-211.  As I mentioned at the Joint Trial Setting Conference, Neo4j USA has an absolute defense to Defendants' IIPEA claim because agency-level protests are protected by the First Amendment under the *Noerr–Pennington* doctrine. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 555–56 (2014) (under the *Noerr-Pennington* doctrine "defendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decision making by the government"); *see also Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006) (recognizing that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct"); *Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1092 (9th Cir. 2000) (the *Noerr-Pennington* doctrine "immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies").  As a result, Defendants' attempt to plead around Plaintiffs' *Noerr–Pennington* defense is specious. *See In re Cir. Breaker Litig.,* 984 F. Supp. 1267, 1282 (C.D. Cal. 1997) (independent wrongful acts protected under the Noerr–Pennington doctrine cannot form the basis of a claim for intentional interference with prospective economic advantage).

Finally, Defendants will be unable to prove they suffered any resulting damages as a direct result of the alleged false statements made by Neo4j to the IRS.  Mr. Dunn testified the name of the entity retained by the IRS to provide support and development

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 6

services for the CKGE was not material so long as Mr. Suhy was the individual providing them.  *See* Dunn Depo at 61:11-67:2 and Depo Ex. 162.  Mr. Suhy also made clear to the IRS that he could award the contract to either eGovernment Solutions ("eGov Sol") or iGov for his benefit.  *See, e.g.,* Depo Ex. 162 ("Our lawyer just pointed out that since iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all the obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and would keep working as we always have. iGov owns the new Government Package for Neo4j as well."); *see also* Depo Ex. 214 ("eGovernment Solutions Inc can form a teaming partnership with iGov Inc (sub-contractor").

After canceling the sole source award to iGov, the IRS then issued an open competition opportunity to further develop and support the CKGE for $1.1 million (later increased by the IRS to $1.35 million).  *See* Dunn Depo at 73:2-74:13, 75:14-76:14 and Depo Ex. 101.  At that time, Mr. Suhy was a part owner of eGov Sol, which he used to obtain that contract ("iGov CKGE Contract").  *See* Depo Ex. 214 ("I am a minority partner in eGovernment Solutions, and a majority partner (only partner) in iGov Inc.").  As confirmed during its deposition, eGov Sol viewed the iGov CKGE contract with the IRS as belonging to Suhy.  October 25, 2022 Deposition of Ashwani Mayur ("Mayur Depo") at 30:8-31:21, 34:1-37:14, 50:14-51:20 and Ex. 100.  Mr. Mayur also confirmed that the money it received from the IRS on this contract was to be paid to Mr. Suhy pursuant to a Stock Purchase Agreement.  *See id.* at 31:22-32:25, 36:15-37:14, 39:18-40:18, 47:14-54:3, 50:14-53:4, 54:10-56:15, 56:16-58:23 and Depo Exs. 100, 102-109.

The IRS paid a total of $1,316,000 to eGov Sol under the iGov CKGE Contract over the course of five years.  Mayur Depo at 71:17-79:12 and Depo Exs. 110-114.  eGov Solutions did not take any commission from payments made by the IRS and according to Mr. Mayur the "moment the money comes, John Mark Suhy takes the money out" using an eGov Sol account under his control.  *Id.* at 36:15-37:14, 42:14-19, 62:1-63:12, 94:3-15.  This is because eGov Sol considered the payments made by the IRS under the iGov CKGE Contract to belong to Mr. Suhy and iGov as soon as it was transferred by the IRS.[2] *See id.* Because the payments made under the iGov CKGE Contract exceeded the amount of damages Defendants are now seeking, they cannot succeed on their IIPEA claim. *See Breakdown Servs., Ltd. v. Now Casting, Inc.*, 550 F.Supp.2d 1123, 1142 (C.D. Cal. 2007) (granting summary judgment based, in part, on plaintiff's failure to establish suffered damages as a result of the alleged acts of interference).

---

[2] At some point before making the first payment under the Stock Purchase Agreement, Mr. Suhy asked eGov Sol to make the payments received from the IRS to iGov rather than personally to him.  *Id.* at 62:4-13, 81:6-82:17.

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 7

* * *

In light of the foregoing, should Defendants insist on maintaining their IIPEA it will be in violation of Rule 11, which provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3). "Rule 11 is intended to deter baseless filings in district court and imposes a duty of reasonable inquiry so that anything filed with the court is well grounded in fact, legally tenable, and not interposed for any improper purpose." *Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 872 (9th Cir. 2014) (internal quotation marks omitted). "One of the fundamental purposes of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, ... [thereby] avoiding delay and unnecessary expense in litigation." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (alterations in original) (internal quotation marks omitted).

This is not the first time Defendants have sought an end-around of a dispositive ruling and needlessly increased the costs of litigation. When Defendants attempted to revive their affirmative defenses for trademark cancellation and abandonment previously stricken with prejudice, the Court gave Defendants the benefit of the doubt in choosing not to issue an order to show cause for sanctions when it granted Plaintiffs' motion to strike those defenses. However, the Court warned, "[m]oving forward, the Court expects that Defendants will only advance claims and defenses that are supported by law and evidence and will generally adhere to the proper standard of practice in Federal Court." Dkt. No. 110 at 7:7-12.

Plaintiffs do not believe that the Court will be so lenient this time with Defendants needlessly increasing the cost of litigation by maintaining an IIPEA claim without evidentiary support. There is simply no excuse since Defendants have had the benefit of discovery. To ensure that Defendants fully understand the uncontroverted evidence that contradicts their meritless IIPEA claim, I have enclosed the above-cited pages from Messrs. Dunn, Suhy and Mayur's depositions for your review and consideration. You should already have the referenced exhibits, which Plaintiffs provided during those

Adron W. Beene
Adron G. Beene
January 31, 2023
Page 8

depositions.  Should you need copies of the referenced exhibits, I would be happy to provide them.

At the Trial Setting Conference, the Court mentioned that its docket remains congested and intimated that it still had limited resources due to its criminal calendar and the lingering impact of the COVID pandemic.  As such, it is our hope that the parties can still avoid what should be unnecessary motion to dismiss and/or motion for summary judgment to dispose of their IIPEA claim.  Accordingly, please confirm before close of business on **February 6, 2023** whether Defendants will stipulate to a voluntarily dismissal of their IIPEA claim with prejudice.

Sincerely,

HOPKINS & CARLEY
A Law Corporation

Jeffrey M. Ratinoff

JMR/dlh

cc:    Adron G. Beene (adronjr@adronlaw.com); Richard E. Starr
        (richardestarr@starrlaw.biz)

Enclosures

**EXHIBIT 3**

000268

# ARNOLD & PORTER
# KAYE SCHOLER

Mark J. Maier
+1 202.942.6905 Direct
Mark.Maier@APKS.com

September 19, 2017

**AGENCY-LEVEL PRE-AWARD PROTEST**
**OBJECTION TO SOLE SOURCE JUSTIFICATION**
**REQUEST FOR INDEPENDENT REVIEW**
**AWARD STAY REQUIRED**

(b)(4)

**BY ELECTRONIC MAIL: VIVIAN.D.DANIELS@IRS.GOV**

Vivian Daniels
Contract Specialist
IRS, 1111 Constitution Ave, NW
C7-NCFB
Washington, District of Columbia 20024

> **Re:**  **Pre-Award Protest of Neo4j, Inc.**
> **Under Solicitation No. M7M528ROO00**
> **Department of the Treasury, Internal Revenue Service**

Dear Ms. Daniels:

Neo4j, Inc., successor in interest to Neo Technology, Inc. ("**Neo**"), 111 East 5th Avenue, San Mateo, CA 94401, telephone number 855-636-4532, and e-mail [          ]  (b)(6)  by its undersigned counsel, hereby files this pre-award protest challenging the intended award by the Department of the Treasury, Internal Revenue Service ("**Agency**" or "**IRS**") of a sole source contract and/or purchase order to PureThink, LLC and/or to its affiliate iGov Inc ("**PureThink**") under Solicitation No. M7M528ROO00 ("**Solicitation**") through which the Agency intends to purchase the iGOV Graph Database and related services intended to support the Agency's CDW Knowledge Graph Environment ("**CKGE**").

By this Protest (defined below), Neo also objects to the Agency's sole source justification and the Agency's intended award.

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW  |  Washington, DC  20001-3743  |  www.apks.com

(b)(4)

# ARNOLD & PORTER
# KAYE SCHOLER

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 2

Competition is not only the preferred, [1] but also the required means by which the U.S. Government acquires products and services, subject to only very limited exceptions. Neo files this bid protest in response to the Agency's intent to award a purchase order to PureThink for the iGOV Graph Database without competition. This course of action is improper because there are numerous programmers capable of providing the FISMA compliant software. Furthermore, and equally problematic, PureThink, is not authorized to provide the solicited graph database software and services in support of the CKGE. In addition, the IRS has failed to comply with FAR 6.301(d), which states that when not providing for full and open competition, the contracting officer shall solicit offers from as many potential sources as is practicable under the circumstances.

Neo requests an independent review of this protest at a level above the Contracting Officer, pursuant to FAR 33.103(d)(4). Because there is no proper justification for the IRS to make a sole source award to PureThink and for the other reasons stated herein, the IRS should sustain this protest and cancel the sole source solicitation for its procurement of products and services in support of the CKGE.

---

[1] *See* FAR 1.102-2(a)(5) ("It is the policy of the System to promote competition in the acquisition process.").

(b)(4)

**ARNOLD & PORTER**
**KAYE SCHOLER**

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 3

## I. NEO IS AN INTERESTED PARTY, THE PROTEST IS TIMELY, AND THE COMPETITION IN CONTRACTING ACT REQUIRES A STAY OF AWARD.

### A. Interested Party

Neo is an interested party whose direct economic interests are affected by the IRS's intent to make a sole source award to PureThink. Neo is a prospective offeror for the services that the IRS seeks to acquire on a sole source basis from PureThink. Neo owns software that meets all requirements for the continued operation of the CKGE to meet user demands, as referenced in the IRS Special Notice of its intent to make a sole source award to PureThink ("**Special Notice**").[2] *See* FAR 33.101. The IRS maintains authority to resolve this protest pursuant to FAR Part 33.

### B. Timeliness

The regulations governing agency-level protests provide that protests based on alleged apparent improprieties in a solicitation must be filed before bid opening or the closing date for receipt of proposals. FAR 33.103(e). A Special Notice of the intended sole source award under the Solicitation, published in Federal Business Opportunities on September 5, 2017, requested parties interested in the procurement to provide a response by 12:00pm noon eastern time on September 20, 2017. Neo files this protest ("**Protest**") prior to the due date for submission of responses. This Protest, therefore, is timely. (*Id.*) By this Protest, Neo also objects to the Agency's sole source justification and the Agency's intended award.

### C. Stay of Award

Upon receipt of a protest before award, a purchase order and/or contract may not be awarded, pending agency resolution of the protest. FAR 33.103(f). Therefore, the Agency must stay the intended award to PureThink. (*Id.*).

---

[2] *See*
https://www.fbo.gov/index?s=opportunity&mode=form&id=ac8c10478c4b2cdb169b3eebef7fe8e3&tab=core&_cview=0.

(b)(4)

00073

**ARNOLD & PORTER**
**KAYE SCHOLER**

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 4

## II. BRIEF FACTUAL BACKGROUND

### A. Procurement Background

As noted above, on September 5, 2017 the IRS published a Special Notice of its intent to award a sole source purchase order under the Solicitation to PureThink. Responses to the Special Notice are due on September 20, 2017.

### B. Business Background

<mark>**Neo** is the original developer and owner of Neo4j, the graph database product used by the Agency and PureThink.</mark> Neo4j is an internet-scale, native graph database that leverages connected data to help companies build intelligent applications that meet today's evolving challenges including machine learning and artificial intelligence, fraud detection, real-time recommendations and master data. As the #1 platform for connected data, Neo4j has over three million downloads, the world's largest graph developer community, and thousands of graph-powered applications in production.

A **graph** is composed of two elements: a node and a relationship. Each node represents an entity (a person, place, thing, category or other piece of data), and each relationship represents how two nodes are associated. This general-purpose structure allows you to model all kinds of scenarios – from a system of roads, to a network of devices, to a population's medical history or anything else defined by relationships.

A **graph database** is an online database management system with create, read, update and delete (CRUD) operations working on a graph data model. Unlike other databases, relationships take first priority in graph databases. This means applications that leverage the graph database do not have to infer data connections using things like foreign keys or out-of-band processing, such as MapReduce. The data model for a graph database is also significantly simpler and more expressive than those of relational or other NoSQL databases. Graph databases are built for use with transactional (OLTP) systems and are engineered with transactional integrity and operational availability in mind.

(b)(4)

**ARNOLD & PORTER**
**I KAYE SCHOLER**

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 5

**PureThink** is a former Neo4j authorized reseller and services provider, and was the sole reseller of Neo4j Government Edition until Neo4j Government Edition was discontinued June 19, 2017.

**iGov** and **iGov Inc** appear to be PureThink's effort to market a new set of services based on Neo's Neo4j graph database.

**III.    GROUNDS OF PROTEST**

   **A.    PureThink Is Not The Only Source Of FISMA Compliant Services For The Agency's CKGE Graph Database**

The Agency alleges in the Special Notice that a sole source award is justified in accordance with FAR 16.505(b)(2)(i)(B) [3] which allows an exception to the fair opportunity process if "[o]nly one awardee is capable of providing the supplies or services required at the level of quality required because the supplies or services ordered are unique or highly specialized." Otherwise, and unless another exception applies, the Agency shall give every awardee a fair opportunity to be considered for a delivery-order or task-order.

Here, the Special Notice states that PureThink is the only provider of the FISMA services needed for the Agency's CDW Knowledge Graph Environment as required by FAR 16.505(b)(2)(i)(B) to justify a sole source award. However, Neo and the following non-exhaustive list of programmers have expertise in developing FISMA compliant databases and could perform the services needed by the Agency:

·    Neo4j, Inc.: https://neo4j.com/professional-services/

·    Atom Rain: https://www.atomrain.com/products/

---

[3] The Agency cites to FAR 16.505(b)(2)(i)(B), which would only apply if the requirement were being procured under an indefinite delivery contract. However, the Agency did not provide any information on any purported indefinite delivery contract applicable to PureThink. It is possible that that Agency meant to reference FAR 6.302-1 which allows a sole source exemption if "only one responsible source and no other supplies or services will satisfy agency requirements." These FAR provisions will be treated synonymously until clarified by the Agency.

(b)(4)

**ARNOLD & PORTER**
**I KAYE SCHOLER**

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 6

- Graph Aware: https://graphaware.com/neo4j-consultancy/
- i3solutions: http://www.i3solutions.com/content-collaboration-solutions
- Expero: https://www.experoinc.com/graph/graphs-are-everywhere
- CALIBRE: http://www.calibresys.com/

Among these providers, Neo in particular stands apart because Neo developed the Neo4j graph database. As such, Neo owns the intellectual property for the Neo4j graph database and is the sole copyright holder for the Neo4j database. Therefore Neo necessarily possesses and maintains the deepest level of knowledge and expertise in the Neo4j graph database. Neo has both the experience needed to perform these services as well as the capability to deliver FISMA compliant software. Furthermore, [ (b)(4) ]

[ (b)(4) ] Additionally, [ (b)(4) ]

[ (b)(4) ] making it unnecessary for the U.S. Government to pay a separate contractor [ (b)(4) ]

Similarly for the other programmers, the FISMA requirements for software have been implemented with NIST standards which are publicly available, common across the U.S. Government and being implemented by numerous programmers. As described on their websites, the above programmers have the capabilities to provide FISMA support for the Agency's CKGE system. Accordingly, there is no basis for the IRS to proceed with its solicitation on a sole source basis.

The U.S. Government closely scrutinizes sole source procurements conducted under the exception to the mandate for full and open competition authorized by 10 U.S.C. § 2304(c)(1), which permits an agency to award a sole-source contract where it properly determines that only one responsible source can meet its requirements. *WorldWide Language Resources, Inc.; SOS*

[ (b)(4) ]

# ARNOLD &PORTER
## I KAYE SCHOLER

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 7

*International Ltd.*, B-296993 et al., Nov. 14, 2005, 2005 CPD ¶ 206. When an agency uses noncompetitive procedures under section 2304(c)(1), it must execute a written J&A with sufficient facts and rationale to support the use of the specific authority, FAR §§ 6.302-1(c), 6.303, 6.304, and publish a notice in FBO to permit potential competitors to challenge the agency's intent to procure without full and open competition. 10 U.S.C. § 2304(f). (*Id.*) GAO's review of an agency's decision to conduct a sole-source procurement focuses on the adequacy of the rationale and conclusions set forth in the J&A. (*Id.*) Where the record shows that the agency has failed to adequately justify its sole source award decision, GAO will sustain the protest.

The U.S. Government will sustain a protest challenging a sole source award based on the agency's determination that only one source is available, where the record establishes that alternative sources do in fact exist. *National Aerospace Group, Inc.*, B-282843, Aug. 30, 1999, 99-2 CPD ¶ 43 (agency's justification for sole source procurement inadequate where the documentation did not reasonably show that only the proposed awardee's exact product would satisfy the agency's needs); *Jervis B. Webb Company; Eaton-Kenway, Inc.*, B-211724, B-211724.2, Jan. 14, 1985, 85-1 CPD ¶ 35 (sole source award of contract on total-package basis unjustified where agency took little or no action to identify and to evaluate possible alternatives).

Neo stands prepared to compete for the requirements which the IRS seeks to procure on a sole source basis from PureThink. Additionally, while PureThink may have already developed a set of FISMA compliant modifications to Neo's graph database, numerous other developers (some of which are listed above) also have already developed FISMA compliant databases and can thus offer their performance to the Agency. Given that there are numerous FISMA service providers who could compete to serve the Agency's stated needs, there is no valid basis under the FAR's exceptions to competition  to make a sole source award to PureThink. *Marconi Dynamics, Inc.*, B-252318, June 21, 1993, 93-1 CPD ¶ 475 (proposed sole source award not reasonably based where agency claims--that the unavailability of proprietary data and of certain equipment and facilities (both government furnished and otherwise), combined with the short term of performance and low contract value mean that only the sole source can provide the

(b)(4)

**ARNOLD & PORTER**
**KAYE SCHOLER**

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 8

services--were effectively refuted by the protester who demonstrated that the findings were not supported by fact).

### B.     The Agency Did Not Describe Any Special or Unique Features In The iGOV Graph Database That Would Support A Sole Source Award

The Special Notice provides that its purpose is to announce the Agency intent to purchase the iGOV Graph Database. But, no such product exists in the current marketplace.      Although the CKGE system and ostensibly the so called iGOV Graph Database operate on Neo's Neo4j graph database,                                                               (b)(4)

(b)(4)

(b)(4)

Even if an iGOV Graph Database product existed, the Agency did not provide any descriptions of special or unique features in such product that would justify a sole source award. Thus the Special Notice is invalid and does not support a sole source award.

Furthermore, the Special Notice does not state that the Agency intends to purchase any services, and yet all remaining portions of the Special Notice discuss PureThink's services without any further mention of a graph database product. The Agency appears to improperly solicit an allegedly unique service to support its acquisition of a non-existing product.

Even if PureThink were the only programmer with applicable skills, which it is not, the Special Notice does not in any way explain why the iGOV Graph Database product is unique. As such, the Agency lacks the requisite justification or basis under FAR 16.505(b)(2)(i)(B) to grant a sole source award to purchase the iGOV Graph Database.

(b)(4)

ARNOLD & PORTER
I KAYE SCHOLER

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 9

(b)(4)

Neo's trademarks, materials, other intellectual property, data and trade secrets are valuable assets. Improper use of these assets by any party without proper approvals may give rise to claims of infringement and misappropriation.

* * * * *

Accordingly, for the reasons stated above, it was improper for the IRS to issue a notice of an intent to award a sole source award for PureThink to provide Neo4j-related graph database software or services.

(b)(4)

00278

**ARNOLD & PORTER**
**KAYE SCHOLER**

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 10

## IV.   THE AGENCY'S ACTIONS UNDER THE SPECIAL NOTICE PREJUDICED NEO

Prejudice is an essential element of every protest, including those before an agency. *In re Colonial Storage Co.-Reconsideration, B-253501, B-253501.8, May 31, 1994 CPD ¶ 335.* As in any GAO protest, an agency must sustain a Protest where a reasonable possibility of prejudice is shown or is otherwise evident from the record. *Id.* at 1. If an agency clearly violates procurement requirements, GAO, and the agency must resolve doubts concerning prejudice in favor of the protester. *See United Int'l Eng'g, Inc.; Morrison Knudsen-Dynamics Research; PRC Inc.; Science Applications Int'l Corp., B-245448 et al., Jan. 29, 1992, 92-1 CPD ¶ 122*; *see also Dismas Charities, Inc., B-292091, Jun. 25, 2003, 2003 CPD ¶ 125* (rejecting agency's argument that protester was not prejudiced in light of the multiple procurement errors); *Mechanical Contractors, SA, B-277916, Oct. 27, 1997, 97-2 CPD ¶ 121* ("While the PCC argues that the errors which occurred would not have affected its source selection, we conclude, particularly in light of the multiple errors explained above, that the protester was prejudiced by the agency's actions").

The Agency's errors in issuing the Special Notice clearly prejudiced Neo. But for the errors cited above, there is more than a reasonable possibility that Neo, as developer and owner of the Neo4j software, would have had opportunity to compete for the services in support of the CKGE. *United Int'l Eng'g, Inc., supra.* As such, the Agency should sustain Neo's Protest and cancel the sole source solicitation for the IRS requirement.

## V.   CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Neo is substantially and unfairly prejudiced by the Agency's intended sole source award to PureThink. But for those actions, Neo would have had an opportunity to compete for the services required for the CKGE.

Accordingly, for the reasons stated above, Neo respectfully requests that the Agency sustain its Protest and cancel the sole source solicitation for this IRS requirement.

(b)(4)

000279

# ARNOLD & PORTER
## KAYE SCHOLER

U.S. Internal Revenue Service
ATTN: C7-NCFB
September 19, 2017
Page 11

## VI.   SERVICE OF PROTEST

Neo files this protest for the procurement and respectfully requests that the protest be subject to an independent review, at a level above the Contracting Officer, pursuant to FAR 33.103(d)(4).

Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:

Mark J. Maier
Dominique L. Casimir
Craig A. Holman
601 Massachusetts Avenue, N.W.
Washington D.C. 20001-3743

*Counsel for Neo4j, Inc.*

(b)(4)