# EXHIBIT 4

No. 21-16029

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NEO4J, INC., et al.,**

*Plaintiff and Appellee,*

v.

**PURETHINK, LLC, et al.**,

*Defendant and Appellant.*

---

Appeal From a Judgment of the United States District Court
For the Northern District of California
Hon. Edward J. Davila
United States District Judge
N. D. Cal. No. 5:18-cv-07182 EJD

---

**APPELLANTS' OPENING BRIEF**

---

ADRON W. BEENE, CA Bar # 129040
ADRON G. BEENE, CA Bar # 298088
1754 Technology Drive, Ste. 228
San Jose, CA  95110
Tel.: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Joseph A. Hearst, CA Bar # 130286
1569 Solano Ave. #525
Berkeley, CA  94707
Telephone: (510) 528-6863
Facsimile: (510) 280-2556
jahearst@pacbell.net

Attorneys for defendants, cross-complainants and appellants John Mark Mr. Suhy, PureThink,LLC and iGov, Inc.

# **TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | JURISDICTIONAL STATEMENT | | 3 |
| III. | ISSUES PRESENTED | | 3 |
| IV. | STATEMENT OF THE CASE | | 4 |
| V. | STATEMENT OF FACTS | | 7 |
| VI. | SUMMARY OF ARGUMENT | | 15 |
| VII. | ARGUMENT | | 17 |
| | A. | Standard Of Review. | 17 |
| | B. | Neo4j USA Lacks An Ownership Interest That Would Give It Standing To Sue For Trademark Infringement | 18 |
| | C. | Assuming For The Sake Of Argument That Neo4j Usa Had Standing, There Was No Infringement Because Defendants' Use Of The Mark Was Nominative Fair Use. | 22 |
| | D. | The Court's Finding That Defendants Engaged In False Advertising And False Designation Of Origin Overlooks How Consumers Would View The Igov Website. | 34 |
| | E. | References To Ongdb As "Free And Open-Source" Are Accurate. | 36 |
| | F. | Descriptions Of Ongdb As A "Drop-In" Replacement For An Existing Commercially Licensed Distribution Of The Same Version Number Of Neo4j Are Accurate. | 40 |
| | G. | The Court's Finding Of False Designation Of Origin Is Fatally Flawed. | 43 |
| VIII. | CONCLUSION | | 47 |

PureThink, iGov and Mr. Suhy filed their notice of appeal on June 16, 2021. 9-ER-2159.

## V. STATEMENT OF FACTS

Neo4j Sweden created and supports a graph platform for connected data distributed under the Neo4j mark. Sweden's software initially, and for many years, was distributed free under the Free Software Foundation's open-source GPL (General Public License) and AGPL (Affero General Public License) licenses. 6-ER-1378, ¶¶ 5-7. Because Neo4j was free and open-source, its use grew widely; contributors created more than 2000 forks/derivatives of the Neo4j software.

Neo4j Sweden decided to monetize its software by creating commercial versions of its program. Neo4j Sweden organized Neo Technology, Inc. in the United States, which eventually changed its name to Neo4j, Inc. ("Neo4j USA"). Neo4j USA then became the corporate parent of Neo4j Sweden. Neo4j Sweden granted Neo4j USA a non-exclusive license to use the Neo4j mark in the United States. 11-ER-2414. Notwithstanding that it was neither an owner nor exclusive licensee, Neo4j USA obtained a United States registration for the Neo4j mark. 2-ER-189.

Prior to November 2018, Neo4j offered free open-source versions known as Neo4j Community Edition (sometimes, hereafter "Neo4j CE") under the GPL open source license and Neo4j Enterprise Edition (sometimes, hereafter "Neo4j EE")

7

under the AGPL open source license. 6-ER-1368 ¶¶ 12-14; 6-ER-1369 ¶¶ 6-8. Neo4j USA also offered a commercial edition with commercial support also (confusingly) named Neo4j Enterprise Edition (sometimes, hereafter "Neo4j CEE"). 6-ER-1368, ¶¶ 5-8. Historically, there was no difference between Neo4j EE under its AGPL open-source license and Neo4j EE under its commercial license; the latter was simply packaged and sold as a support solution. *See* 6-ER-1369 ¶ 9. Until Neo4j Enterprise 3.5.0 was released, Neo4j Enterprise open-source distributions and Neo4j Enterprise commercially licensed distributions were compiled from the same official Neo4j public GitHub repository. 6-ER-281.

Up through the "beta" and testing versions of Neo4j EE version 3.4, all Neo4j EE products were offered on an open-source basis under the AGPL license; later, when Neo4j officially released Neo4J EE 3.4, it added restrictions on the AGPL through what the parties referred to as the "Commons Clause." *See* 6-ER-1370, ¶ 11. The new terms prohibited the non-paying public from engaging in commercial resale and certain support services.[3] 6-ER-1370, ¶ 11; *see* 6-ER-1415 (text of Commons Clause). Neo4j USA released Neo4j EE versions 3.5 and later under a commercial license only, and Neo4j Sweden no longer released the enterprise source code to the public on the Neo4j GitHub repository. 6-ER-1371, ¶

---

[3] The propriety of adding the Commons Clause to the AGPL license was a matter of dispute and is discussed further in the Argument.

8

13. Neo4j software under the unmodified AGPL license, through version 3.4 beta and testing versions, is still in use and available under that license at GitHub to this day. *See* 6-ER-1369, ¶ 9.

John Mark Suhy's company, PureThink, became a Neo4j reseller under a Solution Partner Agreement ("SPA") with Neo4j USA in 2014, receiving a non-exclusive license to use the Neo4j mark. 2-ER-197. PureThink, with Neo4j's approval, designed and developed a government edition that would streamline government procurements. PureThink offered this software package under the name Neo4j Government Edition and had an exclusive agreement to resell it to the government. *See* 8-ER-2085.

Neo4j USA had been trying to get the IRS to purchase a Neo4j EE commercial license. *See* 1-ER-6. As the procurement deadline loomed, the IRS informed PureThink that it was not interested in purchasing a commercial license with support. Rather than lose the possibility of a subscription from the IRS, Mr. Suhy informed Neo4j USA that he wanted to build the solution the IRS needed during the first year, so that follow up years could generate commercial license revenues. USA agreed, and PureThink entered into an agreement with the IRS and signed a contract for consulting services to build out a solution for them. 9-ER-2087, 2090.

9

As the initial IRS contract was ending, the IRS informed Mr. Suhy that government policy was to use open-source software to save taxpayer dollars. The IRS asked Mr. Suhy about the Neo4j open-source license. Neo4j USA instructed Mr. Suhy to lie and tell the IRS that it could not use open-source versions of the software. USA contacted the IRS and informed it that it could not use Neo4j EE in any version. Mr. Suhy, on the other hand, refused to lie and informed the IRS that Neo4j EE was available under an open-source license for version 3.4 and earlier, leading to a rift between Mr. Suhy and Neo4j USA. As a result, Neo4j USA terminated the SPA agreement with PureThink.

Neo4j USA retaliated against Mr. Suhy and informed the IRS that PureThink could not provide any services on open-source versions of Neo4j because the SPA had a three-years-after-termination bar on providing services. 7-ER-1660-62. Because the IRS was still only interested in open-source versions, Mr. Suhy set up a new company, iGov, Inc., to be able to work with open-source versions of the software.

After PureThink's termination, Mr. Suhy and iGov changed direction and focused on offering consulting services focused on Neo4j and forks of Neo4j such as GFI's ONgDB. Mr. Suhy created a new offering called the Government Package for Neo4j which was marketed to government agencies as a consulting package. *See* 2-ER-235. It provided consulting, support, and tools focused

10

specifically on government needs relating to solutions development around Neo4j open-source software.

iGov's website stated:

The principle [*sic*] behind PureThink and the Government Package has created a new corporate entity called iGov Inc.**, which is not a Neo4j Solution Partner. Because iGov Inc. is not a solution partner**, it can offer packages at great cost saving to US Government Agencies as it has no restrictions on working with Neo4j Enterprise *open-source licenses*.

…

iGov Inc's new Government Package for Neo4j can be added to any Neo4j instance making it a "Government Edition." By default, all Government Packages for Neo4j now come[] with Neo4j Enterprise included under it's [*sic*] open-source license!

2-ER-235 (emphasis added).

The iGov website noted that it offered a "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." 2-ER-235; 2-ER-253. The website stated that iGov was "the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [*sic*] free Open-source License!" 2-ER-264. The website also used Neo4j in URLs and displayed a "Request Procurement Document Package" link with an email address of mailto:Neo4j@igovsol.com. 5-ER-946.

The court below stated that "[i]t is undisputed that PureThink and iGov initially marketed a product called 'Neo4j Enterprise,' and a 'Government Package for Neo4j,' before rebranding Neo4j Enterprise as ONgDB." 1-ER-21. This

11

statement mischaracterizes both what iGov and PureThink marketed and who controlled ONgDB. iGov offered consulting services, not software products. There is no evidence that iGov ever offered Neo4j Enterprise alone—it marketed the "Government Package for Neo4j" by stating, in part, that "iGov Inc.'s open-source enterprise packages provide a better value than Neo4j Enterprise commercial support subscriptions because 100% of the cost goes to support and development services, not un[n]ecessary and more restrictive commercial licenses," and "[w]e offer the same support features and SLAs as the Neo4j Enterprise commercial subscriptions offered by Neo4j Inc. partners, *but for the open-source licenses enterprise distributions.*" 4-ER-935; 5-ER-937 (emphasis added). In other words, the iGov website made clear that it was *not* offering the commercially-licensed version of Neo4j EE, but rather a consulting package focused on open-source-licensed versions of Neo4j EE or forks such as GFI's ONgDB. Further, the website stated that iGov packages included an optional Neo4j Enterprise distribution that iGov had compiled for the community from the unmodified source code taken directly from Neo4j Sweden's official GitHub repository. 2-ER-276, 279.

Following release of Neo4j EE version 3.5, which Neo4j USA offered only in a commercial version, Brad and Ben Nussbaum, owners of Atom Rain, Inc. and GraphGrid, Inc., formed Graph Foundation, Inc. ("GFI"), the purpose of which

12

was to develop Neo4j on a non-profit basis using open-source versions of the software.[4] 2-ER-314, 315 . The fork of Neo4j which GFI eventually created was named ONgDB (Open Native Graph Database).

The Court's statement that PureThink and iGov had "rebranded" Neo4j Enterprise as ONgDB is not supported by the record. GFI created and controlled ONgDB; there is no evidence PureThink or iGov had anything to do with the way GFI might have marketed ONgDB. Rather, the iGov website recommended ONgDB for clients who did not need the support solutions offered either by iGov or Neo4j USA. 4-ER-935. The website suggested that consumers who did not want to obtain a commercial license for Neo4j Enterprise could use ONgDB as a fork of Neo4j that offered many of the same features as Neo4j Enterprise. 4-ER-935.

GFI began promoting ONgDB, which was available for free. 6-ER-1315, 1322. Mr. Suhy, as a volunteer contributor, replaced the modified AGPL license (*i.e.*, the AGPL license with the Commons Clause) under which Neo4j Sweden released Neo4j EE 3.4 with the unmodified AGPL because he believed that the

---

[4] The Neo4J entities sued GFI at the same time as PureThink, iGov and Mr. Suhy. GFI settled out shortly before the summary judgment was entered.

13

Commons Clause was not a permitted change for the AGPL.[5] 3-ER-478; 7-ER-1651, ¶ 29. The propriety of this change is discussed in the Argument.

The "landing page" for GFI's ONgDB website was titled "ONgDB—Neo4j Enterprise Fork: Graphs for everyone." 4-ER-861. Mr. Suhy promoted GFI's ONgDB fork of Neo4j as "100% free and open" without the limitations imposed by the commercially licensed edition of Neo4jEE v. 3.5.x. *See, e.g.*, 4-ER-871. GFI's ONgDB website further declared that "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number." 4-ER-915. On the "downloads" page, GFI again described ONgDB 3.5.5 as a "drop-in replacement for Neo4j Core and Enterprise 3.5.5."[6] iGov's website made similar statements—but noted that ONgDB was a drop in replacement for Neo4j Community and Neo4j Enterprise commercial distributions. 5-ER-1012. Neo4j Community Edition does not have enterprise features.

By December 2020, ONgDB v 3.5.1 had been downloaded over 14,000 times. *See* 1-ER-10. Neo4j USA provided evidence that a handful of customers

---

[5]  Mr. Suhy only removed the Commons Clause from license texts that indicated that the Free Software Foundation held the copyright and which had directions to users to insert the AGPL content verbatim. 7-ER-1651, ¶ 29. Other contributors later may have removed the Commons Clause from other licenses.

[6]  The parties disagreed about what a "drop-in replacement" actually means—we discuss this dispute in the Argument.

14

who encountered issues with ONgDB have directed questions to Neo4j USA. 5-ER-1138, 1162, 1170, 1186.

## VI. SUMMARY OF ARGUMENT

The court determined that Neo4j USA had standing to bring a trademark infringement claim notwithstanding that it is not the owner or exclusive licensee of the Neo4j mark. It did so based upon the "related companies doctrine," which, in certain circumstances, allow uses by a related entity to inure to the benefit of the trademark registrant. But the related companies doctrine does not apply here because Neo4j Sweden, the owner of the mark, did not control the use of the mark by Neo4j USA.

Even assuming that Neo4j USA had standing, the court's conclusion that defendants had infringed misapplied the nominative fair use doctrine. Under that doctrine, a use of a trademark to describe plaintiffs' mark by the defendants is not infringing. The court rejected application of the doctrine here because it believed that defendants were misusing plaintiffs' mark to dupe consumers into believing that the products and services defendants offered were somehow affiliated with plaintiffs. However, the court overlooked the context of how open-source software is used. Defendants here described their offerings as based on open-source versions of Neo4j. That was an accurate description of what plaintiffs offered, and the language of defendants' websites made clear that defendants worked only with

15

### D. The Court's Finding That Defendants Engaged In False Advertising And False Designation Of Origin Overlooks How Consumers Would View The iGov Website.

In addition to finding trademark infringement under 15 U.S.C. § 1114, the court below determined that defendants had engaged in false designation of origin and false advertising under 15 U.S.C. § 1125. A plaintiff need not have a direct ownership interest in a mark to bring a claim for false advertising under § 1125. Rather, to maintain a claim under § 1125(a), the plaintiff must show that it has a commercial interest in the allegedly misused mark that is "likely to be damaged" by the defendant's use of the mark. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992).

The court below stated that "[d]efendants have made numerous misrepresentations in their advertisement and promotion of ONGDB." 1-ER-26. According to the court, these misrepresentations consist of two separate types: (1) that ONgDB and Neo4j Enterprise are "free and open-source" versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB is a "drop-in replacement" for an existing commercial license distribution of the same version number of Neo4j. 1-ER-26. In each instance, the court ignored that defendants did not have a product called ONgDB (GFI did), and how defendants might legitimately describe a consulting package focused on Neo4j open source licenses and ONgDB.

34

Before turning to the court's reasoning, it is necessary to point out that the evidence on which the court relied for these conclusions consists largely of statements made on the *GFI website*, not on the iGov or PureThink sites. *See* 1-ER-26, referring to pp. 29-30 of plaintiffs' memo, which in turn cites to 4-ER 919, 927, *etc*. The iGov website does contain statements "similar" to those the court relies upon, to the effect that a user who did not "need ONgDB Enterprise or Neo4j Enterprise open-source licensed distribution" could "simply download ONgDB Enterprise … as a drop-in replacement for an existing commercial licensed distribution of the same version number." 4-ER-935. But this statement does not imply that ONgDB is a feature-for-feature replacement for the commercial enterprise versions of Neo4j, since it states that ONgDB is a "drop-in replacement" *for users who don't need the support offered for commercial editions*.

Furthermore, the iGov website also states "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions." 5-ER-1012. Since Neo4j Enterprise has many features not present in Neo4j Community, it is difficult to see how users could believe that, by calling ONgDB a drop-in replacement, iGov was asserting that ONgDB was a feature-for-feature copy of Neo4j Enterprise.

35

### E. References to ONgDB As "Free and Open-Source" Are Accurate.

Moreover, the court's determination that references to ONgDB and Neo4j Enterprise as "free and open-source" versions of Neo4j somehow misrepresent what consumers are actually receiving does not, in fact, describe how these references are misleading. The versions of Neo4j which GFI's ONgDB fork uses are *not* the commercial versions of that software, and nothing in the descriptions of that software on the iGov website implies that they are. Rather, the iGov website accurately describes ONgDB as a fork of the *free* versions of Neo4j.

Neo4j USA, having decided that it wishes to monetize a software program that had previously been free and open-source, is now attempting to shut down any uses of the free and open-source versions, without removing any of those versions from Neo4j Sweden's free and open-source iterations on GitHub.

Consumers interested in Neo4j have options: They can obtain an open-source forked version of the software for free (without service); they can compile Neo4j Enterprise directly from the official Neo4j Sweden GitHub repository or have someone do it for them; or they can pay for the commercial version of the software, with service provided by Neo4j USA. Neo4j USA *cannot* prevent those who create forks of the free software from informing users that (1) there are forks of the Neo4j software that are not subject to expensive licenses and (2) the "open-

36

source" forks of Neo4j can be obtained without obtaining a license from Neo4j USA.

As the court pointed out, plaintiffs' arguments about whether ONgDB is free and open-source largely depend upon whether defendants properly removed the so-called Commons Clause that Neo4j Sweden added to versions 3.4 and later of Neo4j under the AGPL. 1-ER-8, 26-27; *see* 6-ER-1415 (text of Commons Clause). However, defendants argued that, the software is free and open-source and by its own terms, the AGPL license (even with the Commons Clause added by Neo4j Sweden) allowed defendants to inform possible consumers that it was possible—indeed desirable—to use versions of Neo4j EE versions 3.4 and earlier, but did not indicate that iGov or GFI's ONgDB were offerings by Neo4j USA.

In any event, the court's conclusion concerning removal of the Commons Clause is fatally flawed. The court noted that AGPL versions 3.4 and later (which are incorporated into the Neo4j Sweden software license) state, in Section 7, that

> non-permissive additional terms [in this License] are considered 'further restrictions' within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term "You may not impose any further restrictions on the exercise of rights granted or affirmed under this License.

Furthermore, section 10 states that "[y]ou may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." 1-ER 26; 6-ER-1411-13.

37

Together, these provisions state that if a licensee receives the work (*i.e.*, Neo4j in any version covered by the license, including Neo4j EE 3.4 and later) with restrictive "non-permissive additional terms," they can be removed under section 7. Thus, defendants argued below that the Commons Clause which Neo4j Sweden added to the AGPL license from versions 3.4 onward could be removed as more restrictive than the AGPL license itself.

The court rejected this argument on the grounds that the license states that "[e]ach licensee is addressed as 'you'," and therefore "Sections 7 and 10 [of the AGPL] prohibit a *licensee* from imposing further restrictions, but do not prohibit a *licensor* [*i.e.*, Neo4j USA, in the court's view] from doing so." 1 ER-26-27. But even assuming the court's construction is correct, the court overlooks the way the license uses "you." The license states "[i]f the Program as *you* received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, *you* may remove that term." 6-ER-1412 (emphasis added). Even if the AGPL permitted Neo4j to add the Commons Clause, the court does not explain why the licensee was prohibited from removing more restrictive terms.

Moreover, the court's construction has a glaring flaw. The court did not ask who was the copyright holder. Under the AGPL, the Free Software Foundation is the holder of the copyright. This is made clear in the Preamble, which states that

38

the FSF has a 2007 copyright on the document, and that "[e]veryone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." 6-ER-1408. Thus, when the AGPL states that each licensee is addressed as "you," that designation included Neo4j Sweden as a licensee of the copyright holder *and* those who sub-licensed from it. And there is no doubt that anyone using the AGPL to copyright their work is prohibited from adding more restrictive terms and that "downstream" users thus had a right to remove those restrictive terms.

In any event, the district court's conclusions do not distinguish between Neo4j Sweden—which imposes the Commons Clause—and Neo4j USA, which seeks to take advantage of that clause. As noted, Sweden is *not* the plaintiff on any of the trademark-related claims. Thus, Neo4j USA is attempting to enforce rights granted to Neo4j Sweden, with no showing that Neo4j USA had been assigned any of the rights granted under the license which included the Commons Clause.

While the question whether it was illegitimate for ONgDB to have removed the Commons Clause may be difficult, there can be no argument that Neo4j USA had any right to determine whether the Commons Clause applies to the versions of ONgDB offered in the United States. If Neo4j Sweden wished to prove that instances of Neo4j as described on the ONgDB website were not genuine editions of Neo4j, it could have registered the mark and brought a claim for infringement.

39

What it could *not* do was require that instances of the Commons Clause should be applied to software offered by Neo4j USA even though Neo4j Sweden was the author of the versions listed on the website and there was no showing that Neo4j USA had any ownership interest in the versions which involved the Commons Clause.

### F. Descriptions Of ONgDB As A "Drop-In" Replacement For An Existing Commercially Licensed Distribution Of The Same Version Number of Neo4j Are Accurate.

One of the most contentious of the disputes between Neo4j USA and defendants has to do with defendants' descriptions of ONgDB as a "drop-in replacement" for Neo4j EE. As the court recognized, plaintiffs argued that "because the software was not of the same quality and did not contain all of the features of Neo4j EE," it was misleading for defendants to describe it as a "drop-in" replacement.[13] 1-ER-27. Even assuming that plaintiffs' characterization of ONgDB as being of inferior quality or lacking certain features is accurate, the court's resolution of the issue usurps the role of the jury.

We note first that the assertion that ONgDB was an inferior product was based upon a claim from Philip Rathle, the Vice President of Products at Neo4j

---

[13]    As noted, the court overlooked the fact that iGov made statements that ONgDB is a drop in replacement for both Community and Enterprise editions. 5-ER-1012. This implies that ONgDB is *not* a feature-for-feature reproduction of Neo4j, since the Enterprise and Community editions have different features.

*Sleekcraft*. This Court should therefore remand for a determination of the likelihood of consumer confusion under *Sleekcraft*.

## VIII. CONCLUSION

For the foregoing reasons this Court should reverse the summary judgment entered against appellants and vacate the preliminary injunction based upon it, with a remand to the district court to set the issues for trial.

Respectfully submitted,

Dated: August 16, 2021         _____/s/_____
Joseph A. Hearst

Counsel for Appellants John Mark Mr. Suhy, PureThink, LLC
And iGov, Inc.

47