# EXHIBIT 10



Until January 15, the next $16,651 of support we receive will be matched!

**$88,108 matched!** **$16,651 to go!**

Home / News / Blog

# An Erroneous Preliminary Injunction Granted in Neo4j v. PureThink

by Bradley M. Kuhn on March 30, 2022

## Bad Early Court Decision for AGPLv3 Has Not Yet Been Appealed

We at Software Freedom Conservancy proudly and vigilantly watch out for your rights under copyleft licenses such as the Affero GPLv3. Toward this goal, we have studied the Neo4j, Inc. v. PureThink, LLC ongoing case in the Northern District of California , and the preliminary injunction appeal decision in the Ninth Circuit Court this month. The case is complicated, and we've seen much understandable confusion in the public discourse about the status of the case and the impact of the Ninth Circuit's decision to continue the trial court's preliminary injunction while the case continues. While it's true that part of the summary judgment decision in the lower court bodes badly for an important provision in AGPLv3§7¶4, the good news is that the case is not over, nor was the appeal (decided this month) even an *actual appeal* of the decision itself! This lawsuit is far from completion.

### A Brief Summary of the Case So Far

The primary case in question is a dispute between Neo4j, a proprietary relicensing company, against a very small company called PureThink, run by an individual named John Mark Suhy. Studying the docket of the case, and a relevant related case, and other available public materials, we've come to understand some basic facts and events. To paraphrase LeVar Burton, we encourage all our readers to not take our word (or anyone else's) for it, but instead take the time to read the dockets and come to your own conclusions.

After canceling their formal, contractual partnership with Suhy, Neo4j alleged multiple claims in court against Suhy and his companies. Most of these claims centered around trademark rights regarding "Neo4j" and related marks. However, the claims central to our concern relate to a dispute between Suhy and Neo4j regarding Suhy's clarification in downstream licensing of the Enterprise version that Neo4j distributed.

Specifically, Neo4j attempted to license the codebase under something they (later, in their Court filings) dubbed the "Neo4j Sweden Software License" — which consists of a LICENSE.txt file containing the entire text of the Affero General Public License, version 3 ("AGPLv3") (a license that I helped write), and the so-called "Commons Clause" — a toxic proprietary license. Neo4j admits that this license mash-up (if legitimate, which we at Software Freedom Conservancy and Suhy both dispute), is not an "open source license".

There are many complex issues of trademark and breach of other contracts in this case; we agree that there are lots of interesting issues there. However, we focus on the matter of most interest to us and many <u>FOSS</u> activists: Suhy's permissions to remove the "Commons Clause". Neo4j accuses Suhy of improperly removing the <u>"Commons Clause"</u> from the codebase (and subsequently redistributing the software under pure AGPLv3) <u>in paragraph 77 of their third amended complaint</u>. (Note that Suhy <u>denied these allegations in court</u> — asserting that his removal of the "Commons Clause" was legitimate and permitted.

Neo4j <u>filed for summary judgment</u> on all the issues, and throughout their summary judgment motion, Neo4j argued that the removal of the <u>"Commons Clause"</u> from the license information in the repository (and/or Suhy's suggestions to others that removal of the "Commons Clause" was legitimate) constituted behavior that the Court should enjoin or otherwise prohibit. The Court *partially* granted Neo4j's motion for summary judgment. Much of that ruling is not particularly related to FOSS licensing questions, but <u>the section regarding licensing deeply concerns us</u>. Specifically, to support the <u>Court's order that temporarily prevents Suhy and others from saying that the Neo4j Enterprise edition that was released under the so-called "Neo4j Sweden Software License" is a "free and open source" version and/or alternative to proprietary-licensed Neo4j EE</u>, the Court held that removal of the <u>"Commons Clause"</u> was not permitted. (BTW, the court confuses "commercial" and "proprietary" in that section — it seems they do not understand that FOSS can be commercial as well.)

In this instance, we're not as concerned with the names used for the software; as much as the copyleft licensing question — because it's the software's license, not its name, that either assures or prevents users to exercise their fundamental software rights. Notwithstanding our disinterest in the naming issue, we'd all likely agree that — **if** "AGPLv3 WITH Commons-Clause" were a legitimate form of licensing — such a license is not FOSS. The primary issue, therefore, is not about whether or not this software is FOSS, but whether or not the <u>"Commons Clause"</u> can be legitimately removed by downstream licensees when presented with a license of "AGPLv3 WITH Commons-Clause". We believe the Court held incorrectly by concluding that Suhy was not permitted to remove the "Commons Clause". Their order that enjoins Suhy from saying that such removal is permitted is problematic because the underlying holding (if later upheld on appeal) could seriously harm FOSS and copyleft.

## The Confusion About the Appeal

Because this was an incomplete summary judgment and the case is ongoing, the injunction against Suhy's on making such statements is a *preliminary* injunction, and cannot be made permanent until the case actually completes in the trial court. The <u>decision by the Ninth Circuit appeals court regarding this preliminary injunction</u> has been widely reported by others as an "appeal decision" on the issue of what can be called "open source". However, this is **not** an appeal of the entire summary judgment decision, and certainly not an appeal of the entire case (which cannot even been appealed until the case completes). The Ninth Circuit decision *merely* affirms that Suhy remains under the preliminary injunction (which prohibits him and his companies from taking certain actions and saying certain things publicly) while the case continues. In fact, the standard that an appeals Court uses when considering an appeal of a preliminary injunction differs from the standard for ordinary appeals. Generally speaking, appeals Courts are highly deferential to trial courts regarding preliminary injunctions, and appeals of actual decisions have a much more stringent standard.

## The Affero GPL Right to Restriction Removal

In their partial summary judgment ruling, the lower Court erred because they rejected an important and (in our opinion) correct counter-argument made by Suhy's attorneys. Specifically, Suhy's attorneys argued that Neo4j's license expressly permitted the removal of the <u>"Commons Clause"</u> from the license. AGPLv3 was, in fact, drafted to permit such removal in this precise fact pattern.

Specifically, the AGPLv3 itself has the following provisions (found in AGPLv3§0 and AGPLv3§7¶4):

- "This License" refers to version 3 of the GNU Affero General Public License.
- "The Program" refers to any copyrightable work licensed under this License. Each licensee is addressed as "you".
- If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.

That last term was added to address a real-world, known problem with GPLv2. Frequently throughout the time when GPLv2 was the current version, original copyright holders and/or licensors would attempt to license work under the GPL with additional restrictions. The problem was rampant and caused much confusion among licensees. As an attempted solution, the FSF (the publisher of the various GPL's) loosened its restrictions on reuse of the text of the GPL — in hopes that would provide a route for reuse of some GPL text, while also avoiding confusion for licensees. Sadly, many licensors continued to take the confusing route of using the entire text a GPL license with an additional restriction — attached either before or after, or both. Their goals were obvious and nefarious: they wanted to confuse the public into "thinking" the software was under the GPL, but in fact restrict certain other activities (such as commercial redistribution). They combined this practice with proprietary relicensing (i.e., a sole licensor selling separate proprietary licenses while releasing a (seemingly FOSS) public version of the code as demoware for marketing). Their goal is to build on the popularity of the GPL, but in direct opposition to the GPL's policy goals; they manipulate the GPL to open-wash bad policies rather than give actual rights to users. This tactic even permitted bad actors to sell "gotcha" proprietary licenses to those who were legitimately confused. For example, a company would look for users operating commercially with the code in compliance with GPLv2, but hadn't noticed the company's code had the statement: "Licensed GPLv2, but not for commercial use". The user had seen GPLv2, and knew from its brand reputation that it gave certain rights, but hadn't realized that the additional restriction outside of the GPLv2's text might actually be valid. The goal was to catch users in a sneaky trap.

Neo4j tried to use the AGPLv3 to set one of those traps. Neo4j, despite the permission in the FSF's GPL FAQ to "use the GPL terms (possibly modified) in another license provided that you call your license by another name and do not include the GPL preamble", left the entire AGPLv3 intact as the license of the software — adding only a note at the front and at the end. However, their users can escape the trap, because GPLv3 (and AGPLv3) added a clause (which doesn't exist in GPLv2) to defend users from this. Specifically, AGPLv3§7¶4 includes a key provision to help this situation.

Specifically, the clause was designed to give more rights to downstream recipients when bad actors attempt this nasty trick. Indeed, I recall from my direct participation in the A/GPLv3 drafting that this provision was *specifically designed* for the situation where the original, sole copyright holder/licensor[0] added additional restrictions. And, I'm not the only one who recalls this. Richard Fontana (now a lawyer at IBM's Red Hat, but previously legal counsel to the FSF during the GPLv3 process), wrote on a mailing list[1] in response to the Neo4j preliminary injunction ruling:

> For those who care about anecdotal drafting history … the whole point of the section 7 clause ("If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.") was to address the well known problem of an original GPL licensor tacking on non-GPL, non-FOSS, GPL-norm-violating restrictions, precisely like the use of the Commons Clause with the GPL. Around the time that this clause was added to the GPLv3 draft, there had been some recent examples of this phenomenon that had been picked up in the tech press.

Fontana also pointed us to the FSF's own words on the subject, written during their process of drafting this section of the license (emphasis ours):

> Unlike additional permissions, additional requirements that are allowed under subsection 7b may not be removed. The revised section 7 makes clear that **this condition does not apply to any other additional requirements, however, which are removable** just like additional permissions.

Here **we are particularly concerned about the practice of program authors who purport to license their works under the GPL with an additional requirement that contradicts the terms of the GPL, such as a prohibition on commercial use**. Such terms can make the program non-free, and thus contradict the basic purpose of the GNU GPL; but even when the conditions are not fundamentally unethical, adding them in this way invariably makes the rights and obligations of licensees uncertain.

While the intent of the original drafter of a license text is not dispositive over the text as it actually appears in the license, all this information was available to Neo4j as *they* drafted *their* license. Many voices in the community had told them that provision in AGPLv3§7¶4 was added specifically to prevent what Neo4j was trying to do. The FSF, the copyright holder of the actual text of the AGPLv3, also publicly gave Neo4j permission to draft a new license, using any provisions they like from AGPLv3 and putting them together in a new way. But Neo4j made a conscious choice to not do *that*, but instead constructed their license in the exact manner that allowed Suhy's removal of the "Commons Clause".

In addition, that provision in AGPLv3§7¶4 has little meaning if it's *not* intended to bind the original licensor! Many other provisions (such as AGPLv3§10¶3) protect the users against further restrictions imposed later in the distribution chain of licensees. This clause was targeted from its inception against the exact, specific bad behavior that Neo4j did here.

We don't dispute that copyright and contract law give Neo4j authority to license their work under any terms they wish — including terms that we consider unethical or immoral. In fact, we already pointed out above that Neo4j had permission to pick and choose only *some* text from AGPLv3. As long as they didn't use the name "Affero", "GNU" or "General Public" or include any of the Preamble text in the name/body of their license — we'd readily agree that Neo4j could have put together a bunch of provisions from the AGPLv3, and/or the "Commons Clause", and/or any other license that suited their fancy. They could have made an entirely new license. Lawyers commonly do share text of licenses and contracts to jump-start writing new ones. That's a practice we generally support (since it's sharing a true commons of ideas freely — even if the resulting license might not be FOSS).

But Neo4j consciously chose *not* to do that. Instead, they license their software "subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause". (The name "Neo4j Sweden Software License" only exists in the later Court papers, BTW, not with "The Program" in question.) Neo4j defines "This License" to mean "version 3 of the GNU Affero General Public License.". Then, Neo4j tells all licensees that "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term". Yet, after all that, Neo4j had the audacity to claim to the Court that they didn't actually *mean* that last sentence, and the Court rubber-stamped that view.

Simply put, the Court erred when it said: "Neither of the two provisions in the form AGPLv3 that Defendants point to give licensees the right to remove the information at issue.". The Court then used that error as a basis for its ruling to temporarily enjoin Suhy from stating that software with "Commons Clause" removed by downstream is "free and open source", or tell others that he disagrees with the Court's (temporary) conclusion about removing the "Commons Clause" in this situation.

## What Next?

The case isn't over. The lower Court still has various issues to consider — including a DMCA claim regarding Suhy's removal of the "Commons Clause". We suspect that's why the Court only made a preliminary injunction against Suhy's *words*, and *did not issue an injunction against the actual removal of the clause*! The issue as to whether the clause can be removed is still pending, and the current summary judgment decision doesn't address the DMCA claim from Neo4j's complaint.

Sadly, the Court _has_ temporarily enjoined Suhy from "representing that Neo4j Sweden AB's addition of the Commons Clause to the license governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the Commons Clause is lawful, and similar statements". But they haven't enjoined us, and our view on the matter is as follows:

Clearly, Neo4j gave explicit permission, pursuant to the AGPLv3, for anyone who would like to to remove the "Commons Clause" from their LICENSE.txt file in version 3.4 and other versions of their Enterprise edition where it appears. We believe that you have full permission, pursuant to AGPLv3, to distribute that software under the terms of the AGPLv3 as written. In saying that, we also point out that we're not a law firm, our lawyers are not your lawyers, and this is not legal advice. However, after our decades of work in copyleft licensing, we know well the reason and motivations of this policy in the license (described above), and given the error by the Court, it's our civic duty to inform the public that the licensing conclusions (upon which they based their temporary injunction) are incorrect.

Meanwhile, despite what you may have read last week, the key software licensing issues in this case _have not been decided_ — even by the _lower_ Court. For example, the DMCA issue is still before the trial court. Furthermore, if you do read the docket of this case, it will be obvious that neither party is perfect. We have not analyzed every action Suhy took, nor do we have any comment on any action by Suhy other than this: we believe that Suhy's removal of the "Commons Clause" was fully permitted by the terms of the AGPLv3, and that Neo4j gave him that permission in that license. Suhy also did a great service to the community by taking action that obviously risked litigation against him. Misappropriation and manipulation of the strongest and most freedom-protecting copyleft license ever written to bolster a proprietary relicensing business model is an affront to FOSS and its advancement. It's even worse when the Courts are on the side of the bad actor. Neo4j should not have done this.

Finally, we note that the Court was rather narrow on what it said regarding the question of "What Is Open Source?". The Court ruled that one individual and his companies — when presented with ambiguous licensing information in one part of a document, who then finds another part of the document grants permission to repair and clarify the licensing information, and does so — is temporarily forbidden from telling others that the resulting software is, in fact, FOSS, after making such a change. The ruling does not set precedent, nor does it bind anyone other than the Defendants as to what they can or cannot say is FOSS, which is why we can say _it is_ FOSS, because the AGPLv3 is an OSI-approved license and the AGPLv3 permits removal of the toxic "Commons Clause" in this situation.

We will continue to follow this case and write further when new events occur..

---

[0] We were unable to find anywhere in the Court record that shows Neo4j used a Contributor Licensing Agreement (CLA) or Copyright Assignment Agreement (©AA) that sufficiently gave them exclusive rights as licensor of this software. We did however find evidence online that Neo4j accepted contributions from others. If Neo4j is, in fact, also a licensor of others' AGPLv3'd derivative works that have been incorporated into their upstream versions, then there are many other arguments (in addition to the one presented herein) that would permit removal of the "Commons Clause". This issue remains an open question of fact in this case.

[1] Fontana made these statements on a mailing list governed by an odd confidentiality rule called CHR (which was originally designed for in-person meetings with a beginning and an end, not a mailing list). Nevertheless, Fontana explicitly waived CHR (in writing) to allow me to quote his words publicly.

[permalink]

Tags: conservancy, GPL, law

Please email any comments on this entry to info@sfconservancy.org.

Other Conservancy Blog entries…

## [See all blog posts…](#)

# Blog Index by Year

- [2022](#)
- [2021](#)
- [2020](#)
- [2019](#)
- [2018](#)
- [2017](#)
- [2016](#)
- [2015](#)
- [2014](#)
- [2013](#)
- [2012](#)
- [2011](#)
- [2010](#)

# Blogs by Tag

- [conservancy](#) ([rss](#))
- [GPL](#) ([rss](#))
- [supporter](#) ([rss](#))
- [conferences](#) ([rss](#))
- [licensing](#) ([rss](#))
- [law](#) ([rss](#))
- [events](#) ([rss](#))
- [Member Projects](#) ([rss](#))
- [software freedom for everyone](#) ([rss](#))
- [Outreachy](#) ([rss](#))
- [FOSS Sustainability](#) ([rss](#))
- [diversity](#) ([rss](#))
- [Copyleft Conf](#) ([rss](#))
- [ContractPatch](#) ([rss](#))
- [Filings](#) ([rss](#))
- [Godot](#) ([rss](#))
- [Reproducible Builds](#) ([rss](#))
- [Year In Review 2016](#) ([rss](#))
- [resources](#) ([rss](#))
- [CLA](#) ([rss](#))
- [Wine](#) ([rss](#))
- [Year In Review 2015](#) ([rss](#))
- [Kallithea](#) ([rss](#))
- [QEMU](#) ([rss](#))
- [Selenium](#) ([rss](#))
- [Google Summer of Code](#) ([rss](#))
- [Homebrew](#) ([rss](#))
- [inkscape](#) ([rss](#))
- [patent](#) ([rss](#))

- [Clojars](#) ([rss](#))
- [Git](#) ([rss](#))
- [Hackfests](#) ([rss](#))
- [Racket](#) ([rss](#))
- [cyborg](#) ([rss](#))
- [phpMyAdmin](#) ([rss](#))
- [pypy](#) ([rss](#))
- [security](#) ([rss](#))
- [volunteer](#) ([rss](#))
- [Accounting](#) ([rss](#))
- [LibreHealth](#) ([rss](#))
- [Shotwell](#) ([rss](#))
- [inclusion](#) ([rss](#))
- [jQuery](#) ([rss](#))
- [microblocks](#) ([rss](#))

# Blogs by Author

- [Vladimir Bejdo](#) ([rss](#))
- [Kate Chapman](#) ([rss](#))
- [Pamela Chestek](#) ([rss](#))
- [Denver Gingerich](#) ([rss](#))
- [Will Hawkins](#) ([rss](#))
- [Fred Jennings](#) ([rss](#))
- [Deb and Karen](#) ([rss](#))
- [Jeff King](#) ([rss](#))
- [Bradley M. Kuhn](#) ([rss](#))
- [Denver Gingerich and Bradley M. Kuhn](#) ([rss](#))
- [Conservancy + Bro LT](#) ([rss](#))
- [Deb Nicholson](#) ([rss](#))
- [Bradley M. Kuhn and Karen M. Sandler](#) ([rss](#))
- [Karen Sandler](#) ([rss](#))
- [Tony Sebro](#) ([rss](#))
- [Sage A. Sharp](#) ([rss](#))
- [Brett Smith](#) ([rss](#))
- [Conservancy's Staff](#) ([rss](#))
- [Daniel Takamori](#) ([rss](#))
- [Outreachy Team](#) ([rss](#))
- [Christopher Allan Webber](#) ([rss](#))
- [Marina Zhurakhinskaya](#) ([rss](#))
- [Molly deBlanc](#) ([rss](#))

Connect with Conservancy on [Mastodon](#), [Twitter](#), [Facebook](#), and [YouTube](#).

[Main Page](#) | [Contact](#) | [Sponsors](#) | [Privacy Policy](#) | [RSS Feed](#)

Our privacy policy was last updated **22 December 2020**.



This page, and all contents herein, unless a license is otherwise specified, are licensed under a [Creative](#)

12/23/22, 9:08 AM    Order on Ebbers's Preliminary Injunction Content Neo4j v. PureThink - Conservancy Blog - Software Freedom Conservancy

Case 5:18-cv-07182-EJD    Document 184-11    Filed 04/20/23    Page 9 of 9

Commons Attribution-ShareAlike 4.0 International License.