John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Arthur E. Rothrock, Bar No. 312704
arothrock@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO. 5:18-cv-07182-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS' BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       July 27, 2023<br>Time:      9:00 a.m.<br>Dept.:     Courtroom 4, 5th Floor<br>Judge:    Hon. Edward J. Davila |

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

## NOTICE OF MOTION AND MOTION

2

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on July 27, 2023, at 9:00 a.m., before the Honorable Edward

4 J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, Plaintiffs and

5 Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the

6 Court for an order granting partial summary judgment in Plaintiffs' favor pursuant to Federal Rule

7 of Civil Procedure 56 on their Eighth Cause of Action for the Unauthorized Distribution of Altered

8 Copyright Management Information in violation of 17 U.S.C. § 1202(b) of the Digital Millennium

9 Copyright Act ("DMCA") asserted against Defendants PureThink LLC ("PureThink"), iGov Inc.

10 ("iGov") and John Mark Suhy (collectively "Defendants").  *See* Dkt. No. 90, ¶¶ 166-173.

11      Plaintiffs also move for the Court for an order granting summary judgment in their favor on

12 Defendants' Fourth Affirmative Defense for Unclean Hands asserted in their Answer to Plaintiffs'

13 Third Amended Complaint. *See* Dkt. No. 91 at 16:20-19:7.

14      Finally, Neo4j USA moves for an order granting summary judgment in its favor on the

15 Fourth Cause of Action Breach of Exclusive Contract to Government asserted by PureThink in

16 Defendants' Fourth Amended Counterclaim. *See* Dkt. No. 177, ¶¶ 53-57.

17      This motion ("Motion") is based on (1) this Notice of Motion and Motion; (2) the

18 Memorandum of Points and Authorities below and the Separate Statement of Undisputed Facts

19 attached thereto as **Exhibit A**; (3) the Declaration of Jeffrey M. Ratinoff filed in support of

20 Plaintiffs' first Motion for Summary Judgment [Dkt. No. 98-1]; (4) the Declaration of Philip Rathle

21 filed in support of Plaintiffs first summary judgement motion [Dkt. No. 98-2]; (5) the Declaration

22 of John Broad filed in support of Plaintiffs' first Motion for Summary Judgment [Dkt. No. 98-3];

23 (6) the Court's order granting partial summary judgment in favor of Neo4j USA on its Lanham Act

24 and UCL claims [Dkt. No. 118] and the Ninth Circuit's Memorandum of Disposition affirming the

25 same [Dkt. No. 140]; (7) the additional Declaration of Jeffrey M. Ratinoff filed herewith; (8) all

26 other orders, pleadings, records and papers on file in this action; and (9) upon such further oral and

27 documentary evidence as may be presented at the hearing on this Motion.

28 / / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4

- 1 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

**REQUESTED RELIEF**

Plaintiffs respectfully request that the Court grant partial summary judgment in favor of Plaintiffs on their DMCA claim asserted against all Defendants.  The undisputed material facts establish that Defendants violated the DMCA by removing and altering Neo4j Sweden's copyright management information ("CMI") governing the source code for its Neo4j® Enterprise Edition ("Neo4j® EE") software, and distributing it as their improperly licensed ONgDB, GraphStack GDB and GDB software with the understanding that it would induce or result in the infringement of Neo4j Sweden's copyrights.

Plaintiffs are seeking partial summary judgment on this claim because they intend to seek to prove-up their actual damages suffered in conjunction with their Lanham Act claims (which the Court already found Defendants liable for violating 15 U.S.C. §§ 1114(1), 1125(a)), at trial pursuant to 17 U.S.C. § 1203(c)(2). This is in the interest of judicial economy as there is substantial overlap in the evidence supporting Plaintiffs' damages caused by Defendants' violations of the DMCA and the Lanham Act. Plaintiffs also reserve the right to elect to recover statutory damages before final judgment is entered pursuant to 17 U.S.C. § 1203(c)(3)(B).  In addition, Plaintiffs will seek its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4)-(5).

Finally, Plaintiffs respectfully request that the Court enter the proposed preliminary injunction concurrently filed herewith pursuant to 17 U.S.C. § 1203(b)(1).  Plaintiffs have already suffered a reputational loss as result of Defendants' unauthorized "relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j® EE.  Defendants have already infringed on and caused others to infringe on Neo4j Sweden's copyrights associated with Neo4j® EE. It is also clear that Defendants will continue to do so unless enjoined by the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether the undisputed material facts establish that Defendants intentionally removed and/or altered Neo4j Sweden's CMI without its authorization.

2.     Whether the undisputed material facts establish that Defendants knew that CMI was removed or altered without Neo4j Sweden's authorization.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4

- 2 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

3.      Whether the undisputed material facts establish that Defendants distributing works with the knowledge that Neo4j Sweden's CMI was removed.

4.      Whether the undisputed material facts establish that Defendants knew or had reasonable grounds to know that the removal of Neo4j Sweden's CMI would induce, enable, facilitate, or conceal copyright infringement.

5.      Whether the Court should enjoin Defendants from further violations of the DMCA in relation to the distribution of graph database software containing a DMCA violation and/or that infringes Neo4j Sweden's copyrights in Neo4j® EE.

6.      Whether Neo4j USA is entitled to summary judgment on Defendants' unclean hands defense because they cannot establish that Neo4j USA's conduct is inequitable.

7.      Whether Neo4j USA is are entitled to summary judgment on Defendants' unclean hands defense because they cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act, UCL and breach of contract claims.

8.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because it cannot establish the existence of an enforceable contract.

9.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink did not perform and/or has no excuse for its non-performance under the alleged contract.

10.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink cannot establish Neo4j USA breached the alleged contract.

11.      Whether Neo4j USA is entitled to summary judgment on PureThink's breach of exclusivity contract counterclaim because PureThink did not suffer any damages from the alleged breach thereof.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4

- 3 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................................ 2

    A.  The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform ............... 2

    B.  PureThink Enters Into the Neo Solution Partner Agreement with Neo4j USA ..................................................................................................................... 3

    C.  The IRS's Adoption of the Government Edition .................................................. 4

    D.  Suhy and iGov Offer "Government Packages for Neo4j" to the IRS ................... 4

    E.  The IRS Awards the CKGE Contract to Suhy via eGovernment Solutions ........... 5

    F.  Defendants Improperly Remove the Commercial Restrictions in the Neo4j Sweden Software License in Order to Promote ONgDB as a "Free and Open Source" Neo4j® EE ................................................................................... 6

    G.  The IRS Adopts ONgDB Rather Than Pay for a License to Use Neo4j® EE........ 7

III.  APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS ..................... 7

IV.  THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON THEIR DMCA CLAIM .......................................................... 8

    A.  Neo4j® EE and the License Thereto Contained Neo4j Sweden's CMI ............... 9

    B.  Suhy Intentionally Removed Neo4j Sweden's CMI from Neo4j® EE Without its Authorization and PureThink and iGov Had Actual Knowledge Thereof ......................................................................................... 9

    C.  Defendants Distributed Neo4j Sweden's Works with its CMI Removed ............. 10

    D.  The Undisputed Facts Establish that Defendants Knew or Had a Reasonable Basis to Know the Removal of the Neo4j Sweden's CMI Would Induce, Enable and Facilitate Copyright Infringement ............................... 11

    E.  Plaintiffs are Entitled to Injunctive Relief Under 17 U.S.C ............................... 15

V.  NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' UNCLEAN HANDS DEFENSE ......................................................................... 16

VI.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT  PURETHINK'S BREACH OF EXCLUSIVELY CONTRACT COUNTERCLAIM ............................ 20

    A.  Neo4j Never Consented to Separate Exclusivity Agreement with PureThink ........................................................................................................ 21

    B.  Neo4j Did Not Breach the Alleged Exclusivity Agreement ............................... 23

    C.  Defendants Failed to Perform and Did Not Suffer Any Monetary Damages ....... 23

VII.  CONCLUSION ....................................................................................................... 25

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- i -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000)..................................................................................... 8

*Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*,
No. C-96-0385 VRW, 2006 WL 408538 (N.D. Cal. Feb. 20, 2006)...................................... 18

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
No. CV182133MWFMRWX, 2022 WL 18638819 (C.D. Cal. Apr. 27, 2022)...................... 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................................... 8

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) .................. 15, 16

*Carson v. Verismart Software*,
2012 WL 1038713 (N.D. Cal. Mar. 27, 2012)................................................................. 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................... 8, 21

*Curley v. Wells Fargo & Co.*,
120 F. Supp. 3d 992 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017) ................... 23

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987)................................................................................... 17, 19

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000)...................................................................................... 17

*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990)...................................................................................... 8

*Harrington v. Pinterest, Inc.*,
No. 5:20-CV-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)........................... 10

*Hickox-Huffman v. US Airways, Inc.*,
855 F.3d 1057 (9th Cir. 2017)...................................................................................... 20

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008)..................................................................................... 13

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
287 F.3d 866 (9th Cir. 2002)........................................................................................ 17

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4

- ii -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
4
    304 F.3d 829 (9th Cir. 2002)................................................................. 18

*Keystone Driller Co. v. Gen. Excavator Co.*,
5
    290 U.S. 240 (1933).......................................................................... 17

6
*Lujan v. National Wildlife Fed'n*,
7
    497 U.S. 871 (1990)............................................................................ 8

8
*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (9th Cir. 2020)........................................................ 9, 15
9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
10
    475 U.S. 574 (1986)............................................................................ 8

11
*Maui Jim, Inc. v. SmartBuy Guru Enterprises*,
12
    386 F. Supp. 3d 926 (N.D. Ill. 2019) ................................................ 20

13
*MDY Indus., LLC v. Blizzard Ent., Inc.*,
    629 F.3d 928 (9th Cir. 2010)............................................................. 13
14

*Merced County Sheriff's Employees' Ass'n v. Merced County*,
15
    188 Cal.App.3d 662 (1987).............................................................. 21

16
*Meta Platforms, Inc. v. BrandTotal Ltd.*,
17
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ........................................... 23

18
*Michael Grecco Prods., Inc. v. WrapMarket, LLC*,
    2017 WL 10434020 (C.D. Cal. Nov. 8, 2017)................................... 15
19

*Mitchell v. Specialized Loan Servicing LLC*, 600 F. Supp. 3d 1112 (C.D. Cal. 2021),
20
    *aff'd*, No. 22-55107, 2022 WL 17883609 (9th Cir. Dec. 23, 2022) ...................... 23

21
*Neo4j, Inc. v. Graph Found., Inc.*,
22
    No. 5:19-CV-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ............ 12

23
*Netbula, LLC v. Bindview Dev. Corp.*,
    516 F. Supp. 2d 1137 (N.D. Cal. 2007) .................................... 21, 23
24

*Oasis W. Realty, LLC v. Goldman*,
25
    51 Cal.4th 811 (2011) ...................................................................... 20

26
*Online Glob., Inc. v. Google LLC*,
27
    387 F. Supp. 3d 980 (N.D. Cal. 2019) ............................................... 8

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4
*Perfumebay.com, Inc. v. eBay, Inc.*,
506 F.3d 1165 (9th Cir. 2007) ................................................................................. 18

5
*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
894 F.3d 1015 (9th Cir. 2018) ................................................................................. 17

6

7
*Republic Molding Corp. v. B.W. Photo Utils.*,
319 F.2d 347 (9th Cir. 1963) ................................................................................... 18

8

9
*S. Cal. Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014) ............................................................................. 17, 19

10
*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*,
621 F.3d 981 (9th Cir. 2010) ................................................................................... 19

11

12
*Snapkeys, Ltd. v. Google LLC*,
539 F. Supp. 3d 1040 (N.D. Cal. 2021) ................................................................... 21

13

14
*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) ............................................................................. 11, 14

15
*The Comm. for Idaho's High Desert, Inc. v. Yost*,
92 F.3d 814 (9th Cir. 1996) ..................................................................................... 10

16

17
*Tveter v. AB Turn–O–Matic*,
633 F.2d 831 (9th Cir. 1980) ................................................................................... 19

18

19
*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
515 F. Supp. 3d 1061 (N.D. Cal. 2021) ................................................................... 17

20
*Warner Bros. v. Gay Toys, Inc.*,
724 F.2d 327 (2d Cir. 1983) .................................................................................... 20

21

22
*Wells Fargo & Co. v. Stagecoach Properties, Inc.*,
685 F.2d 302 (9th Cir. 1982) ................................................................................... 18

23

24

25

26

27

28

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4892-9596-9103.4

- iv -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

17 U.S.C.
§ 1202(b) ........................................................................................................ 11, 12, 15
§ 1202(b)(1) ............................................................................................................. 9, 10
§ 1202(b)(3) ............................................................................................................. 9, 10
§ 1202(c)(1)-(3) ............................................................................................................. 9
§ 1202(c)(6) ................................................................................................................... 9
§ 1202(c)(7) ................................................................................................................... 9
§ 1203 ......................................................................................................................... 15
§ 1203(b)(1) ................................................................................................................. 15

**Other Authorities**

6 McCarthy on Trademarks and Unfair Competition § 31:55 (5th ed.) ....................... 19

Fed. R. Civ. P.
56(a) ............................................................................................................................. 8
56(c) ............................................................................................................................. 8

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4                                                    - v -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs are entitled to summary judgment on their DMCA claim because this Court has already determined that Defendants improperly replaced the Neo4j Sweden Software License governing Neo4j® EE software with a generic copy of the AGPL open source license.  In doing so, Defendants removed CMI identifying Neo4j Sweden as the copyright holder and licensor of Neo4j® EE, as well as the commercial restrictions imposed by Neo4j Sweden.  The undisputed facts establish that Defendants knew that the removal of this CMI would result in the violation of the commercial restrictions in that license and the infringement of Neo4j Sweden's copyrights. Defendants promoted this improperly licensed software (first called "ONgDB" and later renamed "Graphstack GDB") as being a free and open source drop-in replacement for commercially licensed Neo4j® EE.  Further confirming their violation of the DMCA, Defendants sought to profit off the removal of the CMI by offering commercial support services otherwise prohibited by the Neo4j Sweden Software License.

Neo4j USA is also entitled to summary judgment on Defendants' unclean hands defense, which they asserted in response to Neo4j USA's Lanham Act, UCL and breach of contract claims. As admitted by Defendants, none of Neo4j USA's alleged bad acts bear any substantive relationship to those claims since the alleged bad acts relate to Neo4j Sweden's copyright licensing practices, and not Neo4j USA's acquisition or use of the Neo4j Mark.  The indisputable fact that Neo4j USA's alleged bad acts occurred 2017, which predate the introduction of Neo4j® EE under the Neo4j Sweden Software license in May 2018 and Defendants' subsequent Lanham Act violations, is also fatal to the defense.  Defendants simply cannot establish by clear and convincing evidence that Neo4j USA engaged in any inequitable conduct.

Lastly, Neo4j USA is entitled to summary judgment on PureThink's breach of contract claim that allegedly made PureThink the exclusive reseller of Neo4j Gov't Edition.  Suhy sent multiple emails to Neo4j USA confirming that it never agreed to the terms as alleged.  These same emails also make clear that Neo4j USA could not have breached that alleged agreement when it discontinued that software.  Suhy admitted that the Gov't Edition was merely a means to obtain sole source consideration and that PureThink had no ownership rights to that software.

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4892-9596-9103.4
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

## II.    STATEMENT OF FACTS

### A.    The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform

Neo4j, Inc. ("Neo4j USA") is the company behind the number one graph platform for connected data, marketed and sold under the registered trademark "NEO4J".  Dkt. No. 118 at 2:8-26.  Neo4j USA's platform helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated.  *Id.* at 2:9-11.  Neo4j Sweden is a wholly owned subsidiary of Neo4j USA.  Dkt. No. 118 at 2:11-16.  It is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States.  Exhibit A, Undisputed Fact ("UDF") No. 1.

Prior to May 2018, Plaintiffs' business model was to offer a free open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license.  UDF No. 2.  This edition is limited in its feature set and does not come with technical or administrative support.  *Id*.  Plaintiffs also offered a more advanced commercial version with included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). *Id*.

Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("AGPL"). UDF No. 3.  A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  *Id*. Purchasing a commercial license at a fair price supported the continued development and improvement of Neo4j® EE and the Neo4j® graph database platform, including Neo4j® CE.  *Id.*

On May 17, 2018, Plaintiffs announced the release of Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). UDF No. 4. This new license, while still allowing code to be publicly viewable and used within a certain licensed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4

- 2 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

scope, prohibited the non-paying public from engaging in commercial resale and support services. UDF No. 5.  The NOTICE provision in the Neo4j Sweden Software License also contained the copyright owner's name (Neo4j Sweden), the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden. UDF No. 6.

In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. UDF No. 7.  This meant that Plaintiffs were no longer offering Neo4j® EE on an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects.  *Id.* Prior to the official release of Neo4j® EE v3.5, however, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. UDF No. 8.  Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. UDF No. 9. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL. *Id.*

**B.      PureThink Enters Into the Neo Solution Partner Agreement with Neo4j USA**

PureThink is a software and information technology consulting company founded by Suhy, which purports to specialize in supporting agencies within the U.S. Government.  *See* Dkt. No. 118 at 3:17-19; *see also* Dkt. No. 177, ¶¶ 12-13.  On September 30, 2014, PureThink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement" or "SPA").  *Id.*, ¶¶ 12, 15 and Ex. B ("SPA").   Under the SPA, PureThink agreed to sell commercial licenses for Neo4j® EE and provide support to end-users in exchange for a commission on each licenses that it resold and would be paid for providing related support services to those purchases.  *See* SPA §1 and Exhibit A thereto (p. 43 of 53); Dkt. No. 118 at 3:20-23.   PureThink also gained access to Neo4j USA's confidential customer information and a non-exclusive and non-transferable limited license to use the Neo4j trademarks "solely to market and promote" Neo4j commercial products. SPA, § 4.1. PureThink further agreed that for a period of 36 months after termination of the SPA, it would not "develop, market, distribute or offer any services related to any Community Edition Products, derivative works of such products, or any [PureThink] software code made to work with Community Edition Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.)."  SPA, § 4.3.2.  The SPA defined "Community

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                                    - 3 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Edition Products" as any "open source version of a Neo Technology software product."  SPA, § 11.

### C.     The IRS's Adoption of the Government Edition

In the hope of increasing sales, Suhy came up with the idea of rebranding Neo4j® EE as Neo4j® Government Edition ("Gov't Edition").  Dkt. No. 118 at 4:4-6 (citing Dkt. No. 98-1, Exs. 5-6).  PureThink had limited success in convincing government agencies to pay for licenses to Gov't Edition and support services from PureThink.  By September 2016, the only promising lead PureThink had was the IRS.  Dkt. No. 98-1, ¶ 9 and Ex. 7.  However, the IRS indicated that they first needed a prototype built and that a full commercial subscription would leave them with no development budget.  Dkt. No. 118 at 4:7-8.  To make that deal happen, Suhy told the IRS they could use Neo4j® EE under the AGPL for free and pay PureThink for its consulting services.  *Id*. at 4:8-11.  Based on those representations, the IRS awarded PureThink a $229,000 support contract. Dkt. No. 177, Ex. D; Ratinoff Decl., ¶ 20 and Ex. 18.  In early 2017, Suhy revealed to Neo4j USA that PureThink had compiled its own modified version of the Neo4j® EE software under the AGPL, which the IRS had already installed and PureThink was supporting.  *Id*. Dkt. No. 98-1, Ex. 8.

On May 30, 2017, Neo4j USA sent PureThink notice that that Suhy's use, distribution, and marketing of the open source version of Neo4j® EE and his marketing of consulting services focused on those products constitute a material breach of the SPA.  Dkt. No. 118 at 4:13-15. PureThink made no effort to cure its breaches, and instead formed iGov on June 23, 2017 to evade the restrictions in Section 4.3.1 of the SPA.  Dkt. No. 98-1, Exs. 10-11; Dkt. No. 177 at 10:5-8.  On July 11, 2017, Neo4j terminated the SPA.  Dkt. No. 118 at 4:18-22; Dkt. No. 98-1, Ex. 12.

On July 11, 2017, Neo4j USA also notified the IRS that it had terminated its partnership with PureThink.  UDF No. 53.  Neo4j USA advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  *Id.* Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's existing support contract.   UDF No. 54.

### D.     Suhy and iGov Offer "Government Packages for Neo4j" to the IRS

The same day that Neo4j USA terminated the SPA, Suhy began targeting the same federal agencies that PureThink previously solicited under the SPA by offering iGov's "Government

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- 4 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Packages for Neo4j."  UDF Nos. 77-79.  Suhy assured potential customers that iGov's package included the ***same*** framework and security add-ons as the Gov't Edition.  Ratinoff Decl., ¶ 23 and Ex. 21 ("The Neo4j Government Edition is just [Neo4j® EE] + FISMA Framework plugins + Additional Support and services…."); *id*., ¶ 26 and Ex. 24 ("Neo4j Government Edition is being retired and the framework and services we developed are going to be offered under the new name: Government Package for Neo4j."); *accord* UDF Nos. 78-79.  The only difference was the "Government Packages for Neo4j" included Neo4j® EE for free under the AGPL rather than a commercial license.  Ratinoff Decl., ¶ 26 and Ex. 24 ("you get everything you physically get in the commercial package except the license is a Neo4j Enterprise open source license"); *accord* UDF No. 78.  Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition.  UDF No. 80.

At that time, Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j.  His efforts proved successful when in late July 2017, the IRS invited iGov to submit a quote for a sole-source contract for the development and support of its CDW Knowledge Graph Environment ("CKGE"), which used an open source version of Neo4j® EE software as a main component.  UDF No. 55.  At that point, it was immaterial to the IRS whether iGov or PureThink would be the contracting entity so long as Suhy was the individual providing them.  UDF No. 56.

On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote.  UDF No. 57.  Neo4j USA filed an official protest with the IRS.  UDF No. 58.  The IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason.[1]  *Id.*

**E.     The IRS Awards the CKGE Contract to Suhy via eGovernment Solutions**

The IRS re-issued the CKGE contract for open bidding, and awarded it on May 24, 2018 to another entity that Suhy had an ownership interest in at the time, eGovernment Solutions, Inc.

---

[1] As conceded by Defendants in dismissing their IIPEA counterclaim with prejudice in the face of Plaintiffs' motion to dismiss, Neo4j USA's right to protest the sole source nature of that government contract was absolutely protected by the First Amendment under the *Noerr-Pennington* doctrine. *See* Dkt. No. 172 at 20:13-21:11 *and* Dkt. No. 176.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4
- 5 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   ("eGov Sol").  UDF No. 25.  Before the IRS awarded the contract, however, Suhy made clear that

2   *iGov* would be providing the "Government Package for Neo4j" for the CKGE and he would be

3   performing the necessary support through *iGov*.   UDF No. 26.  Consistent with Suhy's statements

4   made to the IRS, eGov Sol considered the CKGE contract to belong to Suhy, which he had sole

5   responsibility and control over.  UDF No. 27.  The IRS paid a total of $1,316,000 to eGov Sol under

6   the CKGE contract over the course of five years, which in turn Suhy paid to iGov. UDF No. 28.

7        eGov Sol did not take any commission from the payments made by the IRS.  UDF No. 29.

8   Instead, Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE

9   contract.  *Id*., *accord* Ratinoff Decl., Ex. 3 at 30:13-32:25 ("If we get the money from IRS, we will

10   pay it to [Suhy] without keeping anything out of that. That was the agreement with him.").  eGov

11   Sol maintained a bank account for all the payments received from the IRS, which Suhy had access

12   to and was authorized to disburse the payments made by the IRS as he saw fit.   UDF No. 30*, accord*

13   Ex. 3 at 61:1-63:12 ("I went back and I checked all of our payments which were outgoing, because

14   this account was -- all of the money coming in from IRS, [Suhy] was allowed to use this account to

15   pay to himself for iGov. And I recently noticed in 2019, all of the money went to iGov[].").

16   **F.    Defendants Improperly Remove the Commercial Restrictions in the Neo4j**
**Sweden Software License in Order to Promote ONgDB as a "Free and Open**
17   **Source" Neo4j® EE**

18        Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to

19   form Graph Foundation, Inc. ("GFI") in June 2018.  UDF No. 10.  After forming GFI, Defendants

20   began offering a graph database software called "ONgDB." UDF No. 11.  Rather than develop

21   ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Suhy copied

22   the source code for Neo4j® EE v3.4 and stripped the commercial restrictions out of the Neo4j

23   Sweden Software License by replacing it with the AGPL.  UDF No. 12.  Suhy also removed legal

24   notices identifying Neo4j Sweden as the copyright holder and licensor.  *Id.*

25        In January 2019, GFI and Defendants released ONgDB v3.5.1, which contained at least 182

26   source code files previously released under the Neo4j Sweden Software License in the last beta

27   version of Neo4j® EE 3.5.  UDF No. 13. Defendants falsely advertised ONgDB as "free and open

28   source" with no limitations or restrictions imposed by equivalent version of commercial licensed

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4                                    - 6 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   Neo4j® EE.  Dkt. No. 118 at 6:21-24, 7:18-24.  To do so, they replaced the Neo4j Sweden Software

2   License with a generic copy of the AGPL in 28 LICENSE.txt files governing those 182 source code

3   files.  UDF No. 14.  This not only removed the commercially restrictive Commons Clause, but also

4   stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor.  *Id.*

5          **G.      The IRS Adopts ONgDB Rather Than Pay for a License to Use Neo4j® EE**

6          By removing the Commons Clause, Defendants were able to induce several potential

7   customers, including the IRS, to use the money they should pay Plaintiffs for a commercial license

8   for NEO4J® EE and instead download ONgDB for free and use those funds to obtain support and

9   development services from Defendants.  *See* Dkt. No. 118 at 6:21-26, 29:4-11, 29:22-30:6.  On May

10  22, 2018, Suhy sent an email to the IRS falsely stating that Plaintiffs could not add the Commons

11  Clause to the license for Neo4j® EE v3.4.  UDF No. 24.  The IRS did not obtain an independent

12  legal opinion on Suhy's claim regarding the alleged impropriety of adding commercial restrictions

13  to the AGPL.  *Id.*  Two days later, the IRS awarded the aforementioned CKGE contract to Suhy and

14  iGov via eGov Sol, which did not contemplate a paid license for Neo4j® EE.  UDF No. 25-26.

15         In July 2018, a sales representative from Neo4j USA met with the IRS and provided a one-

16  year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.

17  UDF No. 31.  The IRS ultimately decided to not allocate $156,000 for a license to use Neo4j® EE

18  in the CKGE platform because ONgDB was a free and open, unrestricted alternative.  UDF No. 32.

19  This coincided with Suhy convincing the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4

20  into the CKGE platform in August 2018. UDF No. 33.  Under the CKGE contract, Suhy and iGov

21  were responsible for supporting, maintaining and updating ONgDB on an internal repository at the

22  IRS.  UDF Nos. 34-37.  They helped the IRS upgrade the CKGE platform to ONgDB v3.5 and

23  integrated subsequent subversions through at least April 2022.  UDF No. 35.  After April 2022, the

24  IRS started calling ONgDB just "GDB," which still used Neo4j Sweden's source code improperly

25  licensed under the AGPL and was compiled by Suhy on the IRS' internal repository.  UDF No. 36.

26  **III.    APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS**

27         A motion for summary judgment or partial summary judgment should be granted if "there is

28  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4892-9596-9103.4
- 7 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). A fact is

2   material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

3   248 (1986).  The moving party bears the initial burden of informing the court of the basis for the

4   motion and identifying the portions of the pleadings, depositions, answers to interrogatories,

5   admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex*

6   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7        Where the moving party bears the ultimate burden of proof at trial, it must prove each

8   essential element of the claims upon which it seeks judgment based on undisputed facts that are

9   sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

10   party.  *Online Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984–85 (N.D. Cal. 2019).  Where

11   the non-moving party bears the burden of proof, "the burden on the moving party may be discharged

12   by … pointing out … that there is an absence of evidence to support the nonmoving party's case."

13   *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence

14   of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving

15   party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

16        If the moving party meets this initial burden, the burden then shifts to the non-moving party

17   to designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R.

18   Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-moving party does not meet this burden by showing

19   "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

20   *Corp.*, 475 U.S. 574, 586 (1986).  Rather, it must come forward with admissible evidence to satisfy

21   the burden.  Fed. R. Civ. P. 56(c); *see Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542,

22   1550 (9th Cir. 1990).  "If the nonmoving party's 'evidence is merely colorable or is not significantly

23   probative," then summary judgment may be granted."  *Online Glob., Inc*., 387 F. Supp. 3d at 985

24   (citation omitted); *see also Anderson*, 477 U.S. at 248-49.

25   **IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF**
           **PLAINTIFFS ON THEIR DMCA CLAIM**
26

27        A defendant is liable under the DMCA for knowingly removing copyright management

28   information ("CMI"), or for distributing works with the knowledge that CMI was removed, even if

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4892-9596-9103.4

- 8 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

the defendant itself did not remove the CMI. 17 U.S.C. § 1202(b)(1), (3).   To prevail on a claim for the removal or alteration of CMI, a plaintiff must establish that a defendant: (1) without the authority of the copyright owner or the law; (2); intentionally removed or altered CMI; and (3) knowing or having reasonable grounds to know that the removal will induce, enable, facilitate, or conceal copyright infringement. 17 U.S.C. § 1202(b)(1).  Similarly, to prevail on a claim for the distribution of CMI or material from which CMI has been removed, require a showing that (1) the defendant distributing that material knew that CMI "has been removed or altered without authority of the copyright owner or the law;" and (2) the defendant knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement." 17 U.S.C. § 1202(b)(3); *see also Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (9th Cir. 2020).

## A.    Neo4j® EE and the License Thereto Contained Neo4j Sweden's CMI

Both §1202(b)(1) and §1202(b)(3) require that the original copyrighted work contained CMI. CMI includes, *inter alia*, the title or identifying information of the work, author or copyright owner, the terms and identifying numbers or symbols referring to such information.  17 U.S.C. § 1202(c) (1)-(3), (7).  CMI also includes the "[t]erms and conditions for use of the work."  17 U.S.C. § 1202(c)(6).  It is undisputed that Neo4j Sweden owns the copyrights for Neo4j® EE v3.4 and v3.5 and licensed them subject to the Neo4j Sweden Software License. UDF Nos. 1-8.  It is also undisputed that this license constitutes Neo4j Sweden's CMI because the NOTICE provision at the top clearly states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], **with the Commons Clause as follows**…." Dkt. No. 98-2, ¶ 11 and Ex. 3 (emphasis added); *accord* UDF Nos. 5-6.   It also contains the terms and conditions for the use of that software, including instructions on where to obtain a commercial license in the NOTICE provision and the commercial restrictions imposed by the "'Commons Clause' License Condition" at the bottom. *Id.*

## B.    Suhy Intentionally Removed Neo4j Sweden's CMI from Neo4j® EE Without its Authorization and PureThink and iGov Had Actual Knowledge Thereof

To establish a violation of Section 1202(b)(1), Plaintiffs must show Defendants intentionally removed Neo4j Sweden's CMI without Neo4j Sweden's authorization. *See* 17 U.S.C. § 1202(b)(1).

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4892-9596-9103.4                                                    - 9 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

Similarly, to prove a violation of Section 1202(b)(3), Plaintiffs must show that Defendants had actual knowledge that CMI "has been removed or altered" without Neo4j Sweden's authorization. *See* 17 U.S.C. § 1202(b)(3); *see also Harrington v. Pinterest, Inc*., No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *3 (N.D. Cal. Sept. 19, 2022).

The undisputed evidence establishes that Suhy intentionally removed Neo4j Sweden's CMI in Neo4j® EE v3.4 by replacing the Neo4j Sweden Software License with a generic copy of AGPL in the LICENSE.txt files governing ONgDB v3.4.  UDF No. 12. Suhy did the same to Neo4j® EE v3.5 when he replaced the Neo4j Sweden Software License with the AGPL in 28 LICENSE.txt files governing 182 source code files that had only been released under the Neo4j Sweden Software License.  UDF Nos. 13-14.   Suhy did so without Neo4j Sweden's authorization.  UDF Nos. 15-16.

The undisputed evidence further establishes that PureThink and iGov are liable for Suhy's removal of the CMI and had actual knowledge of the removal thereof because Suhy was the sole officer and director of those entities when he engaged in that misconduct.   UDF Nos. 17-18. Likewise, it is undisputed that Suhy's removal of Neo4j Sweden's CMI was for the pecuniary benefit of all Defendants as evidenced by their extensive promotion of ONgDB as a "free and open" version of Neo4j® EE and offering paid support services that would have otherwise been prohibited by the Commons Clause. UDF Nos. 19-23, 38, 44-47.  Consequently, Suhy's intentional removal of Neo4j Sweden's CMI and his knowledge thereof is imputed on his entities and vice-versa for purposes of §1202(b)(1) and §1202(b)(3).  *See Carson v. Verismart Software*, 2012 WL 1038713, at *4 (N.D. Cal. Mar. 27, 2012) ("corporate officers, shareholders, and employees may be held personally liable for the corporation's copyright infringements when they are a 'moving, active conscious force behind the corporation's infringement'") (internal citation omitted); *The Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 823 (9th Cir. 1996) ("a corporate officer or director is… personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf") (internal citation omitted).

## C.   Defendants Distributed Neo4j Sweden's Works with its CMI Removed

The undisputed facts also establish that Defendants distributed Neo4j Sweden's copyrighted source code without the Neo4j Sweden Software License in violation of §1202(b)(3).  Suhy made

1    Neo4j Sweden's source code under the AGPL available via GFI's Github repository for ONgDB.

2    UDF No. 19.  Likewise, Defendants provided links to potential users of Neo4j® EE to download

3    ONgDB from GFI's GitHub repository and iGov's website. UDF Nos. 20-23.  As of December

4    2020, users had downloaded infringing ONgDB over 14,000 times.  Dkt. No. 118 at 8:13-15.

5          In addition, Suhy and iGov were responsible for the IRS' adoption of ONgDB, as well as

6    continuing to upload and distribute infringing ONgDB and rebranded "GDB" at the IRS.  UDF Nos.

7    24-26, 32-36.  Between August 2018 and April 2022, they facilitated the use of ONgDB on at least

8    three servers within the CKGE (a/k/a "main graph") environment. UDF No. 37.

9          Finally, iGov operated a website, www.graphstack.io, to promote ONgDB over Neo4j® EE.

10   UDF No. 38.  This website contained download links for this improperly compiled and licensed

11   software.  *Id.*  iGov continued make several versions of ONgDB available on this website even after

12   GFI entered into a stipulated injunction on February 16, 2021, which prohibited the further

13   distribution of those same versions.  *Compare* Ratinoff Decl., Exs. 48-51 *and* GFI Dkt. No. 110.

14         **D.     The Undisputed Facts Establish that Defendants Knew or Had a Reasonable
               Basis to Know the Removal of the Neo4j Sweden's CMI Would Induce,
15             Enable and Facilitate Copyright Infringement**

16         To establish knowing or having reasonable grounds to know that conduct will "induce,

17   enable, facilitate or conceal" infringement under §1202(b), Plaintiffs "need not show that any

18   specific infringement has already occurred."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir.

19   2018).   Rather, they can "provide evidence from which one can infer that future infringement is

20   likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Id.*  Such evidence

21   may include "a past 'pattern of conduct' or "modus operandi' that the defendant was aware or had

22   reasonable grounds to be aware of the probable future impact of its actions."  Here, Defendants

23   clearly engaged in a pattern of conduct where they had reasonable grounds to know that the removal

24   of Neo4j Sweden's CMI from Neo4j® EE would result in infringement of its copyright.

25         As previously held by this Court and affirmed by the Ninth Circuit, Suhy did so under the

26   false premise that Section 7 of the Neo4j Sweden Software License permitted licensees to remove

27   "further restrictions," *i.e.* the Commons Clause, imposed by Neo4j Sweden as the copyright holder

28   / / /

- 11 -

and original licensor.[2]  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3; Dkt. No. 98-2, ¶ 11 and Exh. 3 at §§ 7, 10.  This contradicted what Sections 7 and 10 of that license actually states—that only a downstream licensee may remove unauthorized restrictions when placed by an upstream licensee who redistributes the copyrightable program, not those placed by the copyright owner offering the terms to the licensees.  *See id*.  The fact that Defendants "misinterpreted" the provisions of the Neo4j Sweden Software License does not negate the knowledge element under §1202(b).  *See Neo4j, Inc. v. Graph Found., Inc*., No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020) (rejecting GFI's argument that it is not possible for a "contractually permitted action" to have been "taken with knowledge that it would aid infringement" under the DMCA).

More importantly, Defendants knew or had reason to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization.   UDF No. 39.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that was admittedly inconclusive.  *Id*.  In May 2018. Suhy also participated in a discussion thread on Plaintiffs' GitHub repository where someone claiming to represent Plaintiffs told Suhy that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. UDF No. 40. Despite this obvious red flag, Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position.  *Id*.  Thus, Suhy chose to remain willfully blind of Neo4j Sweden's rights as the copyright holder and licensor.

Suhy also sought guidance from the Free Software Foundation ("FSF") on the removal of the Commons Clause.  UDF No. 41.  The FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license."  *Id*.  The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel."  *Id*.  Suhy admittedly ignored the FSF's admonitions

---

[2] As detailed in Plaintiffs' concurrently filed Motion to Strike the Expert Report of Bradley Kuhn, the Court's findings on the interpretation of the provisions in the Neo4j Sweden Software License are now law of the case and thus not subject to further argument or challenges by Defendants.

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4892-9596-9103.4                                                      - 12 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    to seek such advice, and instead chose to replace the Neo4j Sweden Software License with a generic

2    copy of the AGPL, thereby removing *all* of Neo4j Sweden's CMI in that license. UDF No. 42.

3         Finally, Defendants knew or had reason to know their removal of the Commons Clause

4    would result in end-users infringing Neo4j Sweden's right to limit the use of Neo4j® EE to paid

5    subscribers. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders

6    who engage in open source licensing have the right to control the modification and distribution of

7    copyrighted material" and where "a license is limited in scope and the licensee acts outside the

8    scope, the licensor can bring an action for copyright infringement"); *accord MDY Indus., LLC v.*

9    *Blizzard Ent., Inc*., 629 F.3d 928, 939 (9th Cir. 2010).   Suhy understood that Neo4j Sweden owned

10   the copyright for Neo4j® EE and that Neo4j Sweden controlled the licensing thereof.  UDF No. 15.

11   He also understood that the Common Clause imposed commercial restrictions on the use of Neo4j®

12   EE. UDF No. 43; *accord* Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j] tried adding a 'commons clause'

13   to the AGPL license, trying to precent [sic] companies from selling (and competing against them on

14   procurements)"); *id.,* ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license,

15   or use Neo4j Enterprise for free under it's open source license. [] This fact is very counterintuitive.

16   What the commercial 'subscription' really offers is support, because it's better to use the open source

17   license than the commercial license in this case.").

18        Nevertheless, Suhy copied source code from Neo4j® EE licensed under the Neo4j Sweden

19   Software License and stripped out the CMI for that source code, including the commercial

20   restrictions imposed by the Commons Clause.  UDF Nos. 12-14.  Defendants then distributed that

21   source code as ONgDB without Neo4j Sweden's CMI with the specific intent of providing an open-

22   source, restriction-free version of the software in violation of the Neo4j Sweden Software License.

23   UDF No. 19-38, 43-44.  Defendants intentionally did so to profit off providing paid support services

24   – in direct contradiction to the commercial restrictions in the missing Commons Clause – based off

25   the savings users would gain by not paying Plaintiffs for a commercial license for Neo4j® EE.  UDF

26   No. 44; *accord* Dkt. No. 98-1, ¶¶ 64-68 and Exs. 62-66 ("We only focus on only supporting 100%

27   free and open source ONgDB Enterprise [] Not only does this cut down on unnecessary [sic]

28   commercial license costs, the open source licenses do not place any restrictions on the number of

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4892-9596-9103.4

- 13 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

cluster instances or cores like the commercial licenses do."); *id.,* ¶ 128 and Ex. 126 ("[Y]ou can have a huge ONgDB causal cluster with as many instances, cores, etc as you wish with no licensing costs - as it's 100% free and open.  You can purchase enterprise production support for the open source distributions as well - just not from Neo4j Inc partners.").  Consequently, any reasonable jury would concluded that Defendants knew this would induce or enable the infringement of Neo4j Sweden's copyrights in Neo4j® EE. *See Stevens*, 899 F.3d at 674.

While Plaintiffs are not required to show Defendants' removal of Neo4j Sweden's CMI resulted in actual copyright infringement in order to prevail, there is clear evidence of this occurring. For example, Suhy concealing the infringing nature of ONgDB and misleading the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement.  UDF No. 45; *accord* Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc.").  This deception caused the IRS to adopt ONgDB over Neo4j® EE in August 2018 and paid Suhy and iGov over $1.3 million to support that software in violation of the Neo4j Sweden License that they had replaced with the AGPL. UDF Nos. 24-37.

Defendants then leveraged the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same.    UDF No. 46.   This included convincing Greystones Consulting Group, LLC ("Greystones") to use ONgDB in an analytics platform branded as "GreyRaven."  UDF No. 47.  Greystones was able to secure at least two contracts with United States Air Force that contemplated the use of GreyRaven and ONgDB.  UDF No. 48.

Perhaps the most egregious example of Defendants facilitating infringement was with the Maryland Procurement Office (a/k/a the National Security Agency, NSA and MPO), which had tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  UDF No. 49.  After the release of ONgDB v3.4, Next Century reconfirmed with Suhy the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license as advertised on the iGov's website.  UDF No. 50.  After the release of ONgDB v3.5, Next Century again asked Suhy whether it had the same closed enterprise features as Neo4j® EE v3.5, and could use it without restrictions or paying Neo4j for a commercial license.    UDF No. 51.   Suhy

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- 14 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1   reconfirmed the same. *Id.* Defendants' removal of Neo4j Sweden's CMI and false statements about

2   the same caused Neo4j USA to lose a multi-year $2.2 million deal when the MPO chose ONgDB

3   over paying for a subscription to Neo4j® EE.  UDF No. 52.

4        In sum, any reasonable jury would find that Defendants knew that their removal of Neo4j

5   Sweden's CMI  would enable the infringement of Neo4j Sweden's copyrights in Neo4j® EE in a

6   commercial setting. *See Mango v. BuzzFeed Inc.*, 970 F.3d 167 (2nd Cir. 2020) (upholding district

7   court's finding that defendant violated the DMCA by distributing the photo knowing that the

8   photographer's CMI had been removed and knowing that distributing it with a false credit would

9   conceal that defendant did not have authority to use the photo).  The Court should therefore grant

10  summary judgment in favor of Plaintiffs on their DMCA claim.

11       **E.    Plaintiffs are Entitled to Injunctive Relief Under 17 U.S.C. § 1203**

12       The DMCA vests the Court with the "may grant temporary and permanent injunctions on

13  such terms as it deems reasonable to prevent or restrain a violation" of §1202(b).   17 U.S.C.

14  § 1203(b)(1).  To obtain an injunction, a plaintiff must show that (1) it suffered an irreparable injury;

15  (2) remedies available at law, such as monetary damages, are inadequate; (3) considering the balance

16  of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public

17  interest would not be disserved by a permanent injunction. *Apple Inc. v. Psystar Corp.,* 673 F. Supp.

18  2d 943, 948 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

19       If the Court does not enjoin Defendants, Plaintiffs will suffer irreparable injury from the

20  ongoing damage resulting from the proliferation of improperly licensed ONgDB and its derivatives

21  such as GraphStack GDB and GDB.  *See Apple*, 673 F. Supp. 2d at 948 (recognizing that monetary

22  damages would not prevent defendant from continuing to infringe plaintiff's copyrights and violate

23  the DMCA in the future, and will not prevent third-parties from infringing plaintiff's copyrights);

24  accord *Michael Grecco Prods., Inc. v. WrapMarket, LLC*, 2017 WL 10434020, at *4 (C.D. Cal.

25  Nov. 8, 2017) (irreparable injury exists where infringement harms the competitive position and

26  market share of the copyrighted work).

27       As detailed above, there is compelling evidence that Plaintiffs have suffered a loss to control

28  over licensing of the commercial licensing of Neo4j® EE as result of Defendants' unauthorized

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4
- 15 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

"relicensing" of that software under the AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j® EE.  It is also clear that Defendants will continue to do so (as evidenced by the IRS' continued use of GDB and Suhy's maintenance thereof) unless enjoined by the Court.  Further, the balance of hardships favors Neo4j USA because an injunction would serve the narrow purpose of preventing or restraining further infringement of Neo4j Sweden's copyrights and violations of the DMCA; and Defendants cannot "claim any legitimate hardships as a result of being enjoined from committing unlawful activities." *Apple*, 673 F. Supp. 2d at 950.

Finally, a preliminary injunction "would serve no purpose other than to vindicate the legitimate rights of [Neo4j Sweden] in its copyrights." *Apple*, 673 F. Supp. 2d at 950.  "Such equitable relief would not harm the interests of the public; rather, consistent with the policies underlying copyright protection, an injunction preventing [Defendants] from continuing to commit infringing and illegal, if not criminal, acts under the Copyright Act and DMCA would ensure that the public will continue to benefit from the creative fruits of [Neo4j Sweden's] labor. *Id.* The public interest would be further served by preventing Defendants from inducing unsuspecting customers to use improperly licensed software in violation of Neo4j Sweden's copyright.   The Court should thus enter the proposed preliminary injunction filed herewith.

## V.   NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' UNCLEAN HANDS DEFENSE

Defendants asserted an unclean hands defense to Neo4j USA's Lanham Act and UCL claims, as well as a breach contract claim based on PureThink's breaches of the confidentiality and trademark licensing provisions in the SPA.[3]  *See* Dkt. No. 91 at 16:20-19:7; Dkt. No. 169 at 10:4-8 ("[t]he unclean hands defense applies to the breach of [the SPA] and the trademark claims"); *see also* Dkt. No. 91 at 16:20-24. To prevail on an unclean defense, a trademark defendant must prove by clear and convincing evidence that (1) plaintiff's conduct is inequitable; and (2) the conduct

---

[3] Neo4j USA bases its Lanham Act and UCL claims on the same misconduct. *See* Dkt. No. 118 at 23:15-19. Neo4j USA also bases its breach of contract claim on the same acts of infringement of the Neo4j Mark and harm to the goodwill associated therewith. *See* Dkt. No. 90, ¶¶ 134-147.  Thus, the analysis of whether Defendants can maintain an unclean hands defense to these claims is the same.

relates to the subject matter of the trademark claims. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 847 (9th Cir. 1987); *accord Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1078 (N.D. Cal. 2021) (citing same).  With respect to the first requirement, "only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands."  *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) (internal citation and quotes omitted); *see also GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (a party's hands need not be "clean as snow" to avoid the unclean hands doctrine).

With respect to the second requirement, "[t]o show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers." *Japan Telecom, Inc. v. Japan Telecom Am. Inc*., 287 F.3d 866, 870 (9th Cir. 2002).  To do so, defendant must show that that plaintiff's "misdeeds ... have an immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation."  *S. Cal. Darts Ass'n v. Zaffina,* 762 F.3d 921, 932 (9th Cir. 2014) (*quoting Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)).  Summary judgment in favor of a trademark plaintiff is thus appropriate where an unclean hands defense fails to meet the relatedness requirement.  *See id.*

Defendants do not assert that Neo4j USA engaged in fraud in obtaining the Neo4j Mark or that it used the mark to deceive consumers.  Nor could they do so because this Court already struck Defendants' fraud in the procurement and naked licensing defenses asserting the same.  *See* Dkt. Nos. 70, 85.  Defendants instead allege Neo4j USA engaged in "unlawful" licensing practices by "attempting to improperly use a dual licensing practice having a commercial version controlled by plaintiff and an open source software licensed under [the GPL]."  Dkt. No. 91 at 16:21-24, 17:16-19.  They cite to Neo4j USA and PureThink's dispute over whether the IRS needed to purchase a commercial license for Neo4j® EE rather than use that software under the AGPL as evidence thereof.  *Id.*, 16:23-17:16.  Defendants then conclude that "plaintiff cannot lawfully operate a dual license model since the open source is based on GPL or AGPL, plaintiff resorts to sharp and false practices with customers (lying about the difference between the commercial versions and open

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4

- 17 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

1    source version) attempting to restrict partners from supporting the open source Neo4j version with

2    unlawful restrictions and interfering in attempts to use open source Neo4j software." *Id.* at 18:4-12.

3        Even assuming Defendants could prove Neo4j USA engaged in these alleged acts, there is

4    no clear and convincing evidence that it acted with any fraudulent intent. *See Wells Fargo & Co. v.*

5    *Stagecoach Properties, Inc.*, 685 F.2d 302, 308 (9th Cir. 1982) (bad intent is the essence of the

6    defense of unclean hands); *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 841 (9th

7    Cir. 2002) (application of unclean hands to Lanham Act claims requires evidence of fraudulent

8    intent).  There is also no clear and convincing evidence establishing Neo4j USA's alleged conduct

9    resulted in any consumer deception.  *See Perfumebay.com, Inc. v. eBay, Inc*., 506 F.3d 1165, 1178

10   (9th Cir. 2007) (holding that the record must "affirmatively demonstrate" consumer deception); *see*

11   *also Republic Molding Corp. v. B.W. Photo Utils*., 319 F.2d 347, 349–50 (9th Cir. 1963) (the "extent

12   of actual harm caused by the conduct in question" is "highly relevant" to whether the plaintiff's

13   conduct was inequitable); *Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*, No. C-96-0385 VRW,

14   2006 WL 408538, at *7 (N.D. Cal. Feb. 20, 2006) (recognizing that "courts do not apply the doctrine

15   of unclean hands where the defendant has suffered no harm as a result of the plaintiff's actions").

16   To the contrary, it is undisputed the IRS ***ignored*** Neo4j USA's assertion that it needed to buy a

17   commercial license and continued to use Neo4j® EE for free under the AGPL. UDF Nos. 53-57.

18   The IRS ultimately awarded Defendants the CKGE contract via eGov Sol.  UDF Nos. 25-30, 58.

19       More importantly, ***none*** of Neo4j USA's alleged "bad acts" are materially related to

20   Defendants' infringement of the Neo4j Mark, or their false advertising in connection with the

21   distribution, offering, and promotion of ONgDB software as a free and open, drop-in replacement

22   for Neo4j® EE.  *See* Dkt. No. 118 at 18:2-32:14.  Rather, Neo4j USA's alleged "bad acts" pertain

23   to the ***prior*** dual license model for Neo4j® EE.  *See* Dkt. No. 91 at 16:21-19:7.  This is fatal to their

24   unclean hands defense because it is undisputed that ***Neo4j Sweden*** rather than Neo4j USA owned

25   the copyright to Neo4j® EE and was licensor of Neo4j® EE under the GPL and AGPL at all relevant

26   times.  UDF Nos. 1, 15, 59.

27       Even if Neo4j USA were the licensor, this Court already determined that the GPL and AGPL

28   "are copyright licenses, not trademark licenses."  Dkt. No. 85 at 7:27-8:7.  Such copyright-based

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4892-9596-9103.4                                    - 18 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

licensing practices do not bear the requisite "immediate and necessary" relationship to Neo4j USA's Lanham Act and UCL claims.  *See S. Cal. Darts Ass'n*, 762 F.3d at 931-33; *see also Fuddruckers*, 826 F.2d at 847 (9th Cir. 1987) (plaintiff's deceptive marketing of its hamburger meat as "ground steak" did not bar trade dress infringement suit); *Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 839 (9th Cir. 1980) (plaintiff's use of "patent pending" in connection with trademark at issue when no patent application was on file did not bar claims for trademark infringement and unfair competition).

In addition, Defendants' unclean hands defense bears no temporal relationship to the crux of Neo4j USA's Lanham Act claims.  It is undisputed that Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) *in May 2018*, and as a result, ceased its dual licensing model under the GPL and AGPL.  UDF Nos. 2-5, 61-62.  It is also undisputed that by this time, Neo4j® EE included advanced scalability, availability, security, and operational features that were not previously released under either the GPL or AGPL, at least 182 files that had never been released under either license. UDF No. 63. Defendants released ONgDB sometime *in July 2018*, and thereafter engaged in the misconduct that the Court found constituted trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 18:2-32:14; *see also* UDF Nos. 10-11, 64.

Conversely, Neo4j USA's alleged false statements that the IRS needing to obtain a paid license for Neo4j® EE were made *before October 2017*.  *See* UDF No. 65; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 171 at ¶¶ 20-21.  For this additional reason, Defendants' unclean hands defense fails as a matter of law.  *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 987 (9th Cir. 2010) (recognizing that conduct which came to an end prior to the events which are in issue cannot constitute an unclean hands defense); *see also* 6 McCarthy on Trademarks and Unfair Competition § 31:55 (5th ed.) ("[d]efendant cannot dredge up inequitable conduct of plaintiff which had been discontinued for some time prior to suit") (citing same).

The remainder of Neo4j USA's alleged misconduct cannot save Defendants' unclean hands defense.  By stipulating to the dismissal of their IIPEA claim, Defendants conceded that the SPA's 3-year post termination restriction on PureThink supporting open source version of Neo4j® software did not amount to an unlawful restrict on trade.  Dkt. Nos. 172, 176.  Thus, Neo4j USA telling the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4892-9596-9103.4

- 19 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

IRS the PureThink was subject to such restrictions cannot amount to wrongful conduct. *See* Dkt. No. 91 at 17:14-16.   Likewise, the subsequent inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct. *See id* at 17:24-18:1.  This Court already held that Neo4j Sweden as the copyright holder could license Neo4j® EE how it saw fit. *See* Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3.  In any event, Neo4j USA telling the IRS that it could not work with PureThink and needed to purchase a commercial license does not have an "immediate and necessary relationship to the subsequent enforcement of its trademark rights against Defendants' promotion of ONgDB. *See, e.g., Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926 (N.D. Ill. 2019) (striking unclean hands defense based on trademark owner's allegedly improper motive to restrict sales of trademarked product to certain desired channels of trade); *Warner Bros. v. Gay Toys, Inc*., 724 F.2d 327 (2nd Cir. 1983) (threatening enforcement of prosecution for copyright violations did not amount to unclean hands because it was unrelated to trademark rights).

Accordingly, the Court should grant summary judgment in favor of Neo4j USA on Defendants' unclean hands defense because they cannot prove by clear and convincing evidence that (1) any of Neo4j USA's alleged acts were inequitable; and (2) that such acts bear an immediate and necessary relation to Neo4j USA's Lanham, UCL and breach of contract claims.

## VI.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT  PURETHINK'S BREACH OF EXCLUSIVELY CONTRACT COUNTERCLAIM

The essential elements of a breach of contract claim are: (1) the existence of an enforceable contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *accord Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).  Defendants claim that Neo4j USA entered into a separate agreement with PureThink on April 11, 2015 where it allegedly agreed that PureThink would be the exclusive reseller of the Gov't Edition to government agencies and have continuing exclusivity to support users of that version of Neo4j® Software.  Dkt. No. 177, ¶¶ 15-16, 54 and Ex. C.

Defendants identify an April 11, 2015 letter addressed "[t]o whom it may concern" signed by Lars Nordwall on behalf of Neo4j USA as the written contract between the parties. Dkt. No. 177,

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

- 20 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

¶ 16 and Ex. C. However, this letter merely states "PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies." *Id.*, Ex. C.  They further allege that in reliance on this agreement, Defendants "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition, which consisted of Neo4j® EE and "additional services, support and software modules" to address government security requirements. *Id.*, ¶ 17.  Defendants then claim that Neo4j USA breached the exclusive agreement when it discontinued the Gov't Edition, and as a result, PureThink "suffered damages "excess of $1,354,856.55." *Id.*, ¶ 57.

Summary judgment is appropriate where the party claiming breach cannot establish one (or more) of the four essential elements. *Celotex*, 477 U.S. at 322-23; *accord Snapkeys, Ltd. v. Google LLC*, 539 F. Supp. 3d 1040, 1048 (N.D. Cal. 2021) (citing same).  As detailed below, PureThink cannot establish the first element because the undisputed facts show that Neo4j USA never entered into a contract on the terms alleged.  Even if it had done so, PureThink still cannot prevail because there was no breach by Neo4j USA, no excused performance and no alleged damages to PureThink.

### A. Neo4j Never Consented to Separate Exclusivity Agreement with PureThink

Under California law, contract formation "requires that the parties' reach mutual assent or consent on definite or complete terms." *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (citing *Merced County Sheriff's Employees' Ass'n v. Merced County*, 188 Cal.App.3d 662, 670 (1987)). "Mutual assent is determined from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understandings." *Id.* "Terms of a contract must also be sufficiently definite in all particulars essential to its enforcement." *Id.* "Consent" means "mutual assent or consent on definite or complete terms." *Netbula*, 516 F. Supp. 2d at 1155.  "A contract is void and unenforceable if it is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained." *Id.*

While Neo4j may have permitted PureThink to act as the exclusive reseller of Neo4j Gov't Edition to the government ***under the SPA***, there is no evidence that Neo4j USA ever consented to or entering into an exclusivity agreement with PureThink apart from the SPA.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that it was merely a "virtual

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4892-9596-9103.4

- 21 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  UDF No. 66; *accord* Dkt. No. 98-1, Ex. 5 ("we created the Government Edition … specifically for US government procurements to help with sole source"); *id.*, Ex. 17 ("[Gov't Edition] can be sole sourced because Neo Technology has given Pure Think exclusivity to this specific edition specifically just to support sole source. This means fast procurements.").  Suhy even told potential customers the same.  UDF No. 67; *accord* Ratinoff Decl., Ex. 14 ("We are the only reseller of the [Gov't Edition] which allows for sole source procurement justification for Federal agencies."). The letter purporting to be a separate agreement was simply the means for PureThink to establish sole source justification. UDF No. 68; *accord* Dkt. No. 98-1, Ex. 12 ("Among other supporting documents, we provide a copy of the 'Government Edition Exclusivity Agreement' between Neo Technology and PureThink to the contract officer as part of the sole source justification. It's the key sole source justification document.").

Finally, Neo4j USA never agreed to give PureThink ownership rights in the Gov't Edition, or the right to be compensated for any development work upon.  Suhy admitted – again before and after April 11, 2015 – that Neo4j USA owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***.  UDF Nos. 69-70; *accord* Ratinoff Decl., Ex. 12 ("The Government Edition is Neo Technology's product, not ours and you have full control over it. You can reassign exclusivity … at any time for instance."). Suhy also sent proposed drafts of the external and internal versions of the letters with the internal one stating, "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., Ex. 8 (green highlight); *see also id.,* Ex. 7 ("We can basically have 2 documents - one that we give to agencies on your letterhead (I would just scan and send to them initially), and 1 between us that says you can cancel at any time for any reason.").

Suhy's representations were consistent with the internal version of the April 11, 2015 letter signed by Lars Nordwall on behalf of Neo4j USA, which stated "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."[4]  Ratinoff Decl., Ex. 9 (green

---

[4] The internal version of the sole source letter signed by Neo4j USA also omitted Suhy's proposed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4

1   highlight). Other employees of Neo4j USA working with PureThink shared the same understanding

2   based on Suhy's prior written representations. UDF Nos. 71-73. After the parties allegedly entered

3   into the exclusivity agreement, Suhy prepared documents for Neo4j USA's new Vice President of

4   Strategic Alliances and Channels, John Broad, wherein Suhy reconfirmed the same. UDF No. 74.

5   Consequently, no reasonable juror would conclude that there was a meeting of the minds and that

6   Neo4j USA consented to an exclusivity agreement separate from the SPA on the terms claimed by

7   PureThink. For this reason, the Court should grant summary judgment in favor of Neo4j USA. *See*

8   *Netbula*, 516 F. Supp. 2d at 1155; *Mitchell v. Specialized Loan Servicing LLC*, 600 F. Supp. 3d

9   1112, 1120 (C.D. Cal. 2021), *aff'd*, No. 22-55107, 2022 WL 17883609 (9th Cir. Dec. 23, 2022).

10          **B.      Neo4j Did Not Breach the Alleged Exclusivity Agreement**

11          Even assuming arguendo a separate exclusivity agreement came into existence, PureThink

12   cannot establish any alleged breach thereof. As detailed above, Neo4j USA indisputably had the

13   right to discontinue the Gov't Edition and terminate PureThink as the exclusive reseller thereof

14   without cause and without further compensating PureThink. UDF Nos. 69-74. Consequently, Neo4j

15   USA could not have breached the alleged exclusivity agreement when it notified PureThink that it

16   was discontinuing the Gov't Edition on June 19, 2017. UDF No. 84. Neo4j USA is therefore entitled

17   to summary judgment on PureThink's counterclaim because the uncontroverted evidence

18   establishes Neo4j USA did not breach the alleged exclusivity agreement. *See Curley v. Wells Fargo*

19   *& Co.*, 120 F. Supp. 3d 992, 1002 (N.D. Cal. 2015), *aff'd*, 692 F. App'x 900 (9th Cir. 2017) (granting

20   summary judgment in favor of defendant where plaintiff could not establish a genuine issue of fact

21   that a breach occurred); *accord Netbula*, 516 F. Supp. 2d at 1157.

22          **C.      Defendants Failed to Perform and Did Not Suffer Any Monetary Damages[5]**

23          Neo4j is also entitled to summary judgment because PureThink cannot establish that it

24

25   language "[t]his agreement supersedes any other agreements." UDF No. 72. This is further evidence

26   that there was never a meeting of the minds between Neo4j USA and PureThink.

27   [5] One court recently recognized "nominal damages are available for breach of contract and can

28   support entry of judgment in favor of a plaintiff who suffered 'no appreciable harm.'" *Meta*

1  performed all its obligations under the exclusive contract or is otherwise excused from performing

2  such obligations.  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA

3  informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide

4  training on the Neo4j Government Edition."  UDF No. 75.

5        Suhy acknowledged this and agreed to remove all references from PureThink's website.

6  UDF No. 76.  Yet, Defendants continued to exploit the intellectual property associated with the

7  Gov't Edition (UDF Nos. 77-80)—despite previously admitting they had no right to do so (UDF

8  Nos. 69-74).  The same day Neo4j USA terminated the SPA, Suhy sent emails to government

9  contractors and agencies admitting that iGov was reusing the ***same*** framework and add-ons:

10
11  > Neo4j Government Edition is being retired and the framework and services we developed are going to be offered under the new name: **Government Package for Neo4j.** [] PureThink is still a Neo4j Solution partner and has the same exact team.   In order to be able to offer the best value to our US agency client, we had to move the Government Package to under our other company iGov Inc[.], because Neo4j Solution partners are forbidden from dealing with any Neo4j open source licenses and this package gives you the option to choose between open source or commercial licenses.

12
13

14  > We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j).

15

16  Ratinoff Decl., Ex. 24 (emphasis in original); *id.* Ex. 25 ("iGov owns the new Government Package

17  for Neo4j as well"); *accord* UDF Nos. 77-80.  PureThink and its successor-in-interest iGov

18  continued to actively marketed "Government Package for Neo4j" until they released ONgDB.  UDF

19  Nos. 81-83.  PureThink thus cannot establish that it performed all of its contractual obligations or

20  that its performance was otherwise excused **because *it never stopped using the Gov't Edition***.

21        For these same reasons, no reasonable juror would conclude that PureThink and suffered

22  $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount

23

24  *Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1258 (N.D. Cal. 2022).  However, this

25  does not preclude this Court from holding that PureThink is not entitled to either monetary damages

26  or nominal damages.  *See Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV182133MWFMRWX,

27  2022 WL 18638819, at *6 (C.D. Cal. Apr. 27, 2022) (denying motion for reconsideration of summary judgment finding that plaintiff suffered no damages because "at least one California

28  appellate court has held that an award of nominal damages under California law is discretionary").

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

- 24 -

1   so that iGov could continue to implement the framework PureThink had developed with the Gov't

2   Edition.  UDF Nos. 25-30, 85.

3          PureThink also did not maintain any time sheets that could support their claim that PureThink

4   "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  UDF No. 86.

5   Likewise, the financial statements produced by PureThink indicated that it never incurred any

6   expenses or overhead related to the development of the Gov't Edition.  UDF No. 87.  Suhy even

7   testified that PureThink did not spend any money in developing Gov't Edition.  UDF No. 88.  This

8   is because PureThink never customized Neo4j® EE, and simply integrated security provided plug-

9   ins and provided support.  Ratinoff Decl., ¶ 23 and Ex. 21 ("We don't even customize Neo4j

10  Enterprise, we just make plugins (Java jar files that are dropped into the plug-in directory which add

11  features to support NIST Security controls….").  Suhy also confirmed that he did not turn over

12  PureThink's work product to Neo4j USA upon termination because "I don't think that would be

13  theirs" and used it for iGov's "Government Packages for Neo4j."  Ratinoff Decl., Ex. 2 at 186:14-24;

14  *accord* UDF No. 89  Accordingly, the Court should grant summary judgment in favor of Neo4j USA

15  on the additional ground that PureThink failed to perform under the alleged exclusivity agreement,

16  as well as suffered no actual damages resulting from any alleged breach by Neo4j USA.

17  **VII.    CONCLUSION**

18         For the reasons set forth herein, Plaintiffs respectfully request that the Court (1) grant partial

19  summary judgment in favor of Neo4j USA on its DMCA claim; (2) enter a preliminary injunction as

20  set forth in the proposed order filed herewith; (3) grant summary judgment in favor of Neo4j USA

21  on Defendants' unclean hands defense; and (4) grant summary judgment in favor of Neo4j USA on

22  PureThink's breach of contract claim with respect to the alleged exclusivity agreement.

23   Dated:  April 20, 2023                          HOPKINS & CARLEY
                                                      A Law Corporation
24

25

26                                                  By: */s/ Jeffrey M. Ratinoff*
                                                       Jeffrey M. Ratinoff
27                                                     Attorneys for Plaintiffs
                                                       NEO4J, INC. and NEO4J SWEDEN AB
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4892-9596-9103.4                                    - 25 -
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF; CASE NO. 5:18-CV-07182-EJD

# EXHIBIT A

**PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1:</u>  Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | |
| | <u>Fact 2:</u> Prior to May 2018, Plaintiffs offer a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). Neo4j® CE is limited in its feature set and does not come with technical or administrative support.  Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6).  Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE").  Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | |
| | <u>Fact 3:</u> Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8).  A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  Dkt. No. 98-2, ¶¶ 7-9. | |
| | <u>Fact 4:</u> On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 5: The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services. Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | |
| | Fact 6: The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3. It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. *Id.* | |
| | Fact 7: In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.* This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects. Dkt. No. 98-2, ¶ 13. | |
| | Fact 8: Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | |
| | Fact 9: Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via Github. *Id.* | |
| 2. Defendants' intentional removal and/or alteration of CMI without the authorization of Neo4j Sweden | Fact 10: Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June 2018. Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | |
| | Fact 11: After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 12:</u> To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | |
| | <u>Fact 13:</u> ONgGB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE 3.5.  Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | |
| | <u>Fact 14:</u> Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39. | |
| | <u>Fact 15:</u> Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the APGL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3. | |
| | <u>Fact 16:</u> Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL.  Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | |
| | <u>Fact 17:</u> Suhy has been the sole officer and director of PureThink since he formed the corporation.  Ratinoff Decl., Ex. 2 at 176:4-11; see also Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 18:</u> Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | <u>Fact 19:</u> Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and Github repository for ONDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id.,* ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.,* ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.,* Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.,* ¶¶ 41 and Ex. 39 (GFI Github commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020.  Dkt. No. 118 at 8:13-15. | |
| | <u>Fact 20:</u> Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb/); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | |
| | <u>Fact 21:</u> Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id.,* ¶ 59 and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., ¶ 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage.  Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 22</u>: iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | |
| | <u>Fact 23</u>: iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); <i>id.</i>, Ex. 13 at RFA Nos. 10, 14. | |
| | <u>Fact 24</u>: On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4.  Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. <i>Id.</i>, Ex. 4 at 96:6-98:21. | |
| | <u>Fact 25</u>: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used an open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; <i>id.</i>, Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; <i>id.</i>, Ex. 3 at 47:14-50:8, 50:14-54:3. | |
| | <u>Fact 26</u>: Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov.  <i>See</i> Ratinoff Decl., Ex. 4 at 61:11-64:23,  72:2-74:21,  75:14-76:14,  77:7-78:11, 85:3-18; <i>id</i>, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; <i>id.</i>, Ex. 2 at 188:10-193:25; <i>id.</i>, ¶ 30 and Ex. 28. | |
| | <u>Fact 27</u>: eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over. Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; <i>id.</i>, ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3. | |
| | <u>Fact 28</u>: The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3  at  54:10-59:5,  59:18-62:3,  63:13-65:25,  67:7-69:11,  69:16-70:19, 71:17-79:12; <i>id.</i>, ¶¶ 38-44 and Exs. 36-42. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 29: Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; id., ¶ 44 and Ex. 42. | |
| | Fact 30: eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | |
| | Fact 31: In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; id., Ex. 4 at 113:5-115:20, 116:5-117:21. | |
| | Fact 32: As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | |
| | Fact 33: In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on misrepresentations about GFI being the copyright holder and licensor of ONgDB.  Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; id., ¶¶ 35-36 and Exs. 33-34. | |
| | Fact 34: While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.  Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; id., Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; id., ¶ 36 and Ex. 34; id., ¶ 47 and Ex. 45 (yellow highlights). | |
| | Fact 35: Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; id., ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 36:</u> After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository. Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15. | |
| | <u>Fact 37:</u> Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | |
| | <u>Fact 38:</u> iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions.  *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | <u>Fact 39:</u> Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization.  *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive.  *Id.* at 196:22-201:16. | |
| | <u>Fact 40:</u> Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16. Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. Ratinoff Decl., Ex. 1 at 205:17-206:11. | |
| | <u>Fact 41:</u> When Suhy sought guidance from the FSF on the removal of the Commons Clause the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights).  The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel."  *Id.* | |
| | <u>Fact 42</u>:  Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | |
| | <u>Fact 43</u>: Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE.  Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.*, ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.,* ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | |
| | <u>Fact 44</u>: Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users.  Dkt. No. 98-1, ¶ 31 and Ex. 29; *id.*, ¶¶ 64-68 and Exs. 62-66; *id.,* ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.,* ¶ 49 and Ex. 47; *id.,* ¶ 56 and Ex. 54; *id.,* ¶¶ 128 and Ex. 126; *id.,* ¶¶ 132-134 and Exs. 130-132. | |
| | <u>Fact 45</u>: Suhy concealed the infringing nature of ONgDB and misled the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement.  Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc"); *id.*, Ex. 4 at 127:19-129:25, 132:2-133:13, 134:7-136:9, 137:24-138:11, 139:22-141:17. | |
| | <u>Fact 46</u>: Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services. Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47. | |
| | <u>Fact 47</u>: Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 48:</u> The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB.  Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60. | |
| | <u>Fact 49:</u> The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | |
| | <u>Fact 50:</u> After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.,* Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.*, ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶¶ 49 and Ex. 47. | |
| | <u>Fact 51:</u>  Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license.  *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.*, ¶ 66 and Ex. 64.  This led Next Century to upgrade to ONgDB v3.5.  Dkt. No. 98-1, ¶ 122 and Ex. 120. | |
| | <u>Fact 52:</u> As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE.  Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13. | |
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* <u>Facts 1-9.</u> | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority of the copyright owner; and | *See* Facts 10-18. | |
| 3. Defendants knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | *See* Facts 39-52. | |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | Fact 53: On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months. Ratinoff Decl., ¶ 24 and Ex. 22. | |
| | Fact 54: Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract. Ratinoff Decl. at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | |
| | Fact 55: Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component. Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4. | |
| | Fact 56: It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them. Ratinoff Decl., Ex. 4 at 61:11-64:23. | |
| | Fact 57: On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | |
| | Fact 58: Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1. After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol. *See* Facts 25-30. | |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act claims. | Fact 59: Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE. *See* Dkt. No. 91 at 16:21-19:7. However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:11-16 (citing same). | |
| | Fact 60: The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | |
| | Fact 61: Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | |
| | Fact 62: The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit. Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | |
| | Fact 63: By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | Fact 64: Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | |
| | Fact 65: Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in ***May 2018*** and Neo4j USA's alleged false statements about the IRS needing to obtain a commercial license for Neo4j® EE were made before ***October 2017***. *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | Fact 66: There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination. Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track. Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights). | |
| | Fact 67: Suhy told third parties Gov't Edition was only created for sole-source justification. Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | |
| | Fact 68: The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | |
| | Fact 69: Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***. Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights). | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 70:  Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id*., ¶ 9 and Ex. 7 (green highlights). | |
| | Fact 71: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight) | |
| | Fact 72: The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements."  *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id*., ¶ 11 and Ex. 9 at p. 3. | |
| | Fact 73: Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.,* ¶ 15 and Ex. 13). | |
| | Fact 74: After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason.  Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights). | |
| 2. PureThink's performance or excuse for nonperformance; | Fact 75:  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition."  Ratinoff Decl., ¶ 21 and Ex. 19. | |
| | Fact 76: Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website.  Ratinoff Decl., ¶¶ 22 and Ex. 20. | |
| | Fact 77: After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | offering "Government Packages for Neo4j." Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | |
| | <u>Fact 78</u>: iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition. Ratinoff Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24. The only difference was it included Neo4j® EE for free under the AGPL. *Id.* | |
| | <u>Fact 79</u>: On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | |
| | <u>Fact 80</u>: Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | |
| | <u>Fact 81</u>: Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | |
| | <u>Fact 82</u>: iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.*, ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | |
| | <u>Fact 83</u>: Defendants continued to actively marketed "Government Package for Neo4j" until they released ONgDB. Dkt No. 118 at 4:24- | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24. | |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | <u>Fact 84:</u> Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink.  *See* Facts 69-74. | |
| 4. There are no resulting damages to PureThink. | <u>Fact 85:</u> PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract.  *See* Facts 25-30. | |
| | <u>Fact 86:</u>  PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  Ratinoff Decl., Ex. 2 at 173:15-177:17. | |
| | <u>Fact 87:</u> PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition.  Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.*, ¶¶ 68-69 and Exs. 66-67. | |
| | <u>Fact 88:</u>  PureThink did not spend any money to develop the Gov't Edition.  Ratinoff Decl., Ex. 2 at 170:10-171:13. | |
| | <u>Fact 89:</u> Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j."  Ratinoff Decl., Ex. at 186:14-24; *id.*, ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted by Plaintiffs Neo4j, Inc. and Neo4j Sweden AB.

Dated:  April 20, 2023                              By: _/s/ Jeffrey M. Ratinoff_
                                        Jeffrey M. Ratinoff, Attorney for Plaintiffs Neo4j, Inc. and Neo4j Sweden AB