1  Adron W. Beene SB# 129040
2  Adron G. Beene SB# 298088
   Attorney at Law
3  7960 Soquel Drive Ste B #296
   Aptos CA 95003
4  Tel: (408) 392-9233
   adron@adronlaw.com
5
6  Attorneys for defendants:
   PURETHINK LLC, a Delaware limited
7  liability company, IGOV INC., a Virginia
   corporation, and JOHN MARK SUHY

8
9                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
10
11 NEO4J, INC., a Delaware corporation, and      CASE NO. 5:18-CV-7182 EJD
   NEO4J SWEDEN AB, a Swedish
12 corporation,
   Plaintiffs,                                   **DEFENDANTS' OPPOSITION
13 v.                                             TO PLAINTIFF'S MOTION FOR
                                                  SUMMARY JUDGMENT ON
14 PURETHINK LLC, a Delaware limited             THEIR DCMA CLAIM AND
   liability company, IGOV INC., a Virginia      DEFENDANTS' BREACH OF
15 corporation, and JOHN MARK SUHY, an           CONTRACT COUNTERCLAIM
   individual,                                    AND UNCLEAN HANDS
16 Defendants.                                    DEFENSE**

17
18                                                Date: July 27, 2023
                                                  Time: 9:00 a.m.
19 AND RELATED COUNTERCLAIMS                      Dept. Courtroom 4, 5th floor
                                                  Judge: Hon. Edward J. Davila
20
21                                                Trial Date November 14, 2023

22
23
24
25

   DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT        i
   CASE NO. 5:18-cv-7182 EJD

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................... 2

II.  STANDARD FOR SUMMARY JUDGMENT ............................................. 8

III. ARGUMENT ................................................................................ 10

  A.   The Court Should Deny Summary Judgment on the DCMA Claims. 10

    1.   The Law of The Case Doctrine Does Not Apply To Interim Orders 10

    2.   Removal of the Commons Clause Was Proper. ................................. 11

    3.   Removal of the Common Clause Prevents Further Infringement of FSF's copyright. ...................................................................... 14

    4.   Defendants do not control the GFI Website or Github. ................... 17

  B.   Plaintiffs Have Acted with Unclean Hands ........................................ 17

  C.   Plaintiffs Are Not Entitled To Summary Judgment Purethink's On Breach Of Exclusively Contract Counterclaim ............................................ 21

    1.   The Parties Consented to a Separate Exclusivity Agreement ......... 22

    2.   Neo4j USA Breached the Exclusivity Agreement. ........................... 22

    3.   Purethink Performed its Obligations Under the Exclusivity Agreement .............................................................................. 23

    4.   PureThink Has Been Damaged in Excess of $1.3M ....................... 24

IV. INJUNCTION ............................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ........................... 8, 9

*Braxton-Secret v. A.H. Robins Co.* (9th Cir. 1985) 769 F2d 528, 531 .............. 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ........................................ 8

*Chevron Corp. v. Pennzoil Co.*, 974 F.2dll56, 1161 (9th Cir. 1992).................. 8

*Columbia Pictures Industries v. Redd Horne*, 749 F.2d 154, 160 (3d Cir. 1984) ...................................................................................................... 13

Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir.1989) ...................................................................................................... 17

*Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 US 451, 112 S.Ct. 2072........................................................................................... 9

Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir.1987) ...................................................................................................... 17

*Gordon v. Nextel Commc'ns. & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003)................................................................................................. 12

*Japan Telecom, Inc. v. Japan Telecom America Inc.* (9th Cir. 2002) 287 F.3d 866 ............................................................................................................. 17

*Langevine v. District of Columbia* (D.C. Cir. 1997) 106 F.3d 1018................. 10

*Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990)...................................... 8

*Ray Thomas, Inc., v. Cowan,* 99 Cal.App. 140 [ 277 P. 1086]. ........................ 24

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235........................................................................................... 9

*Taylor v. Sapritch,* 38 Cal.App.2d 478, 481 (Cal. Ct. App. 1940)................... 24

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992) ................................. 8

Wells Fargo & Co. v. Stagecoach Props., Inc., 685 F.2d 302, 308 (9th Cir.1982) ....................................................................................................... 17

Worden v. Cal. Fig Syrup Co., 187 U.S. 516, 528, 23 S.Ct. 161, 47 L.Ed. 282 (1903) ......................................................................................... 17, 21

*Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.,* 80 Cal.App.4th 1, 10 (Cal. Ct. App. 2000) ............................................................................. 22

**Statutes**

17 U.S.C. § 1202(b)(1) .......................................................................... 11

Cal. Civ. Proc. Code § 1856 .................................................................. 22

FRCP 54 .............................................................................................. 10

FRCP 56 ............................................................................................. 8, 9

FRCP 59 .............................................................................................. 11

# I.    INTRODUCTION

Defendants and Counterclaimants Purethink LLC, John Mark Suhy and IGOV INC., ("Defendants") oppose Plaintiff and Counter defendant Neo4J, Inc.'s and Neo4j Sweden AB's motion Motion For Summary Judgment On Neo4J Swedens' DMCA Claim, Defendants' Breach of Contract Counterclaim and Unclean Hands Defense.

Plaintiffs rely on the Phase 1 summary judgment ruling to improperly conclude Phase 2 issues. Plaintiffs improperly brought the review of the AGPL clauses into the Phase 1 dispositive motions. See Dkt. 100, 25:3-11. This has resulted in a chain of critical errors, which Defendants may properly seek to correct.

As shown by the unopposed[1] Expert Report of Bradley M. Kuhn, Defendant's removal of the commons clause from the AGPL was proper. Declaration of Adron G. Beene ("Beene Dec."), Exhibit 33 ("Kuhn Expert Report"), ¶¶71-78. As the facts surrounding the removal of the commons clause are in clear dispute, no summary judgment should be granted on Plaintiffs' DMCA claim.

The DMCA claim lacks merit as Neo4J Sweden does not own the copyright to the AGPL license. The GPL and AGPL licenses were created, copyrighted, and trademarked by the Free Software Foundation ("FSF"). That is what the licenses say.

Neo4J Sweden uses FSF trademark and AGPL license under a license from FSF. That license grants Neo4J Sweden the license to use the copyrighted license under stated restrictions. "Everyone is permitted to copy

---

[1] Plaintiffs have not disclosed any contra-expert, and the deadline for doing so has passed.

and distribute verbatim copies of this license document, but changing it is not allowed." Neo4J Sweden's addition of the commons clause is a violation of FSF' copyright license. Neo4J Sweden's adding the commons clause is false copyright management information which violates 17 U.S. Code §1202 (a).

That is a copyright infringement violating FSF's copyright. Suhy's removal of the commons clause, which is of the infringing addition, prevents further copyright infringement and stops contributory infringement. FSF, owner of the copyright to the AGPL, provides this permission in the AGPL license agreement. Removal of Neo4J's Sweden's infringing terms, is not a violation of the DMCA.

There is clear evidence that Neo4j USA and Neo4J Sweden has acted with unclean hands. Neo4j Sweden started licensing Neo4J software under FSF's GPL and AGPL licenses. In 2012, Neo4J published a Fair Trade Software Licensing document to claim an intention of only allowing use of open source software for open projects. The claim is any use of Neo4J software requires the user to make the source code available to "benefit the world at large." If that was Neo4J's intention, they should not have used the GPL and AGPL licenses. Neo4J cannot join the GPL and AGPL community, using FSF's license and Trademarks then claim the license means other than what it does.

The Fair Trade Licensing concept is inconsistent with FSF's GPL and AGPL licenses.  Under the AGPL, the license granted in §2 broad (You may make, run and propagate covered works that you no convey without conditions so long as you license otherwise remains in force.) Under the GPL and AGPL licenses, the copyleft requirement (providing a license to all source

code) only applies on conveyance- distribution. If a licensee under a GPL or AGPL, modifies the source code but never distributes it, there is no copyleft requirement. A licensee may modify the source code and never has the obligation, as Neo4J claims, to make the project open and share the modifications for the benefit of the world. The falsity of Neo4J's purported intention is shown in the GNU.org FAQ:

**Does the GPL require that source code of modified versions be posted to the public?** (#GPLRequireSourcePostedPublic)

> The GPL does not require you to release your modified version, or any part of it. You are free to make modifications and use them privately, without ever releasing them. This applies to organizations (including companies), too; an organization can make a modified version and use it internally without ever releasing it outside the organization.

> But *if* you release the modified version to the public in some way, the GPL requires you to make the modified source code available to the program's users, under the GPL.

> Thus, the GPL gives permission to release the modified program in certain ways, and not in other ways; but the decision of whether to release it is up to you.

https://www.gnu.org/licenses/gplfaq.html#GPLRequireSourcePostedPublic

Under the AGPL, §5 states the rule for Conveying Modified Source Versions: "You must convey the entire work, as a whole under this License to anyone who comes into possession of a copy." In §6, if you convey Non-Source Forms, you must also provide the Corresponding Source. The obligation to provide modified source code is only when it is conveyed. There is no term in the GPL/AGPL that can be construed to mean whenever you use or modify the source, you must publish it to the world.  Neo4J USA told the IRS, "If you

choose to open source your Neo4J-based application…" you can use the AGPL. This is a false claim by Neo4J USA.

Neo4J's Fair Trade Licensing concept was to scare people to purchase Neo4J out of concern they would have to make any use of their open source public. See Suhy Dec. Ex 21, (Zagalsky email to Dunn IRS 4-4-2017).  Neo4J USA bolstered this false claim with litigation ""[we] do expect that a court would rule based on the intent of the owner of the copyright [Neo Technology]." This false statement conflates Neo4J's partial copyright ownership of the software with the FSF' copyright ownership of the GPL/AGPL license.

Neo4J has no basis to claim they can state the intention of FSF in creating the GPL/AGPL licenses. Nor is intention relevant when the terms of the GPL/AGPL state that conveying the software is the only time the source code must be provided to the licensee. There is no duty in the GPL/AGPL to grant a worldwide license to modifications to the source code at all. There is no obligation to provide modifications of the source code when the software is not conveyed.

The IRS' decision to use the AGPL version of Neo4J software is more than likely the result of Neo4J's false claims. The IRS was familiar with the AGPL and could glean Mr. Zagalsky's statements were false. It is Neo4J USA's unclean hands that loses business.

If it was Neo4J's intention to require such an obligation that any use of AGPL software had to be open, they used the wrong license form. They cannot promote they use the GPL/AGPL trademarks and licenses, then claim

to change the terms of the GPL/AGPL licenses. Such practice violates FSF's copyright license:

> Copyright © 2007 Free Software Foundation, Inc. <https://fsf.org/>
> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed.

While the AGPL has been referred to as Neo4J Sweden's license, it is not. It is the license they choose to use. The AGPL defines the license in §0 as: "This License" refers to version 3 of the GNU Affero General Public License. The Program is defined as: "The Program" refers to any copyrightable work licensed under this License. Each licensee is addressed as "you". "Licensees" and "recipients" may be individuals or organizations.

The basic rights granted under §2 of the AGPL is: All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met. Applying this to the Neo4J software, All rights granted under this AGPL license are granted for the term of the copyright in Neo4J software and are irrevocable. This License [AGPL] explicitly affirms your unlimited permission to run the unmodified Program.

The AGPL limits how software licensed under the AGPL may be conveyed: "Conveying under any other circumstances is permitted solely under the conditions stated below."

Ironically, Neo4J Sweden's license to Neo4J USA violates the AGPL. Under §4 of the AGPL, all licenses to the Program must be under the AGPL license. Neo4J Sweden licensed Neo4J software and trademark to Neo4J USA. This creates two distinct problems. First, software licensed under the GPL/AGPL, may only be licensed under the GPL/AGPL. GPL/AGPL §4. The

license from Neo4J Sweden for Neo4J software was not the GPL or AGPL. See Beene Dec. Ex. 28 That license is a standard non-exclusive software and trademark license. There is no compliance with the GPL/AGPL. Neo4J USA further violates the GPL/AGPL license by not licensing NEO4J software under the GPL or AGPL and only licenses in binary and does not provide the source code. See N4J 001735. It's an object code only and no source is provided. Neo4J USA's licenses violates §6 of the GPL/AGPL. Suhy Dec. Ex. 24; Beene Dec., Ex 26,

The foundation for the trademark claim is unclean hands. Sweden's Neo4J licensed its Neo4J trademark to Neo4J USA on a nonexclusive basis. Beene Dec. Ex. 28, § 2.1.1. When Neo4J USA applied for registration with the PTO, they claimed they owned the trademark and had been using it in commerce before they existed. When these false statements were called into question in this litigation, Neo4J USA did not bring these misrepresentations in the trademark application to the attention of the PTO. See DKT 95 3:17-23, 6:8-20, DKT 95-1; DKT 100, 12:13-14:9. The foundation of the trademark claim is two lies and a concealment.

Neo4J USA failed to start with the correct license to close source its software. Kuhn Expert Report ¶98. Instead, plaintiffs have sought to threaten open source users improperly, prevent third parties from providing services to open source code users. These acts are unclean hands barring the Lanham act claims.

Further, Neo4j USA cannot escape its obligations under the exclusivity agreement. The internal drafts are not the agreement and should be disregarded. Neo4j USA is estopped from denying the April 11, 2015

agreement as PureThink was induced by the agreement to develop the Government Edition for the exclusive sale by PureThink.  PureThink has incurred substantial damages due to Neo4j USA's breach of the exclusivity agreement.

Movant improperly uses excessive immaterial facts to create a burden on the opposition and this court. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Following Burch, defendants decline to accept the burden and further burden the court. Defendants address the material facts as those are all that are proper on a Rule 56 motion.

Plaintiffs' motion for summary judgment should be denied in its entirety.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d ll56, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the

moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. See *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. See *Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law ...." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. See id. The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The court must view the evidence presented on the motion in the light most favorable to the opposing party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." [*Anderson v. Liberty Lobby, Inc.*, supra, 477 US at 255, 106 S.Ct. at 2513.  At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 US 451, 112 S.Ct. 2072. A person's state of mind (motive, intent, knowledge, etc.) may be inferred from his or her conduct. But summary judgment is improper where conflicting inferences can be drawn from such conduct (i.e., where reasonable minds could disagree as to a

person's motives, etc.). See, *Braxton-Secret v. A.H. Robins Co.* (9th Cir. 1985) 769 F2d 528, 531

## III.   ARGUMENT

### A.   The Court Should Deny Summary Judgment on the DCMA Claims

#### 1.   The Law of The Case Doctrine Does Not Apply To Interim Orders

Plaintiffs assert AGPL issues have been conclusively decided under the The Law of the Case Doctrine. This position is inaccurate. The Law of the Case Doctrine does not apply to interlocutory orders. *Langevine v. District of Columbia* 106 F.3d 1018, 1023 (D.C. Cir. 1997).  Interlocutory orders are not subject to the law of the case doctrine and may "always be reconsidered prior to final judgment." The ruling on the summary judgment motion was a partial ruling. As the standard authority explains, this is an interlocutory order:

> [14:35] **Effect of "partial summary judgment":** Unlike a summary judgment, a "partial summary judgment" does not terminate the action. It is merely an interlocutory order and is subject to revision. It is *not* immediately appealable without a specific judicial finding (FRCP 54(b), ¶ 14:377); and is *not* entitled to res judicata or collateral estoppel effect in other litigation. [*Information Resources, Inc. v. Dun & Bradstreet Corp.* 294 F3d 447, 452-453 (2nd Cir. 2002); *Solis v. Jasmine Hall Care Homes, Inc.* 610 F3d 541, 543-544 (9th Cir. 2010); *Burge v. Parish of St. Tammany* 187 F3d 452, 467 (5th Cir. 1999)]

A. General Considerations, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 14-A

This follows FRCP 54. The Court's interlocutory ruling may be revised before final judgment. The other rulings in this case are not final and are not subject to the Law of the Case Doctrine either.

Plaintiffs claim the summary judgment ruling was decided on appeal. They conflate the name of the order with the nature of the appeal. Defendants appealed the order on the preliminary injunction. A partial summary judgment ruling is not appealable.

There is a further anomaly, as the AGPL Further Restrictions Clause issue was relegated to Phase 2, yet Neo4J moved forward on the issue in Phase 1. The Court relied on a pleading motion in another case (Graph Foundation 5:19-CV-06226-EJD) and noted nothing new was added. That is because Neo4J prematurely moved forward with an issue for Phase 2 in Phase 1. The party in the other case settled out and added nothing new. This procedure is not appropriate.

Defendants intend to address this in a FRCP 59 motion, unless the Court is inclined to consider the issue earlier. Plaintiffs seek to exclude the evidence of why the further restriction clause allows removal of improper terms. Licensees may not be able to enforce FSF copyright violations but have permission to remove offending terms under the Further Restrictions clause.

### 2.    Removal of the Commons Clause Was Proper.

Even given the prior interim rulings of this court, Mr. Suhy did not engage in some improper intentional act in removing the non-permissive additional clause from the AGPL. Section 1202(b)(1) of the DMCA prohibits, *inter alia*, "intentionally remov[ing] or alter[ing] any copyright management information" with the knowledge, or with "reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1).

1    "A section 1202(b)(1) violation occurs when a person (i) without

2    authority of the copyright owner or the law (ii) intentionally removes or alters

3    any copyright management information (iii) knowing or having reasonable

4    grounds to know that it will induce, enable, facilitate, or conceal an

5    infringement of the federal copyright laws." *Gordon v. Nextel Commc'ns. &*

6    *Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003).

7    Neo4J Sweden does not own the CMI as it claims. The license is owned

8    by FSF. FSF, in in the AGPL gives permission for the licensee to remove

9    additional restrictions. As discussed above, "you" means licensee under the

10    GPL/AGPL. The right to remove additional terms is triggered when the

11    Program owner uses the GPL/AGPL. The court has ruled that only the person

12    using the license -the licensor-has that right. Mr. Kuhn explains the genesis

13    and basis of the Further Restrictions clause and opines that Mr. Suhy

14    followed the permission granted in the AGPL when removing the commons

15    clause.

16    If the licensor is the only person who can remove an addition, as the

17    court has ruled, then the license agreement has been changed by Neo4J

18    Sweden. But, under the copyright license for the AGPL, FSF which owns the

19    copyright, granted a license allowing only verbatim copies with no changes

20    allowed:

GNU AFFERO GENERAL
PUBLIC LICENSE
Version 3, 19 November 2007

Copyright © 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone
is permitted to copy and distribute verbatim copies of this license document,
but changing it is not allowed.

Suhy Decl. Ex. 2.

1   Neo4J Sweden's addition of the Commons Clause is not a verbatim copy

2   of the AGPL and is change. Mr. Suhy did not remove the AGPL. He removed

3   the common clause as allowed and which violated the AGPL. Neo4J's use of

4   the commons clause violates the AGPL. This is a copyright violation of FSF's

5   copyright to the AGPL. Neo4J Sweden was only licensed to use the AGPL

6   form without change. Neo4J Sweden violated the terms of the AGPL license

7   scope in its use of the FSF form.

8   As Neo4J Sweden does not own the copyright to the AGPL, they cannot

9   meet the requirements for a DCMA claim (ownership of the copyright). While

10   Suhy does not have standing to assert FSF's copyright[2], he does have a duty

11   to **not** contribute to Neo4J' Sweden's copyright infringement:  " 'one who,

12   with knowledge of the infringing activity, induces, causes or materially

13   contributes to the infringing activity of another, may be held liable as a

14   "contributory" infringer' " *Columbia Pictures Industries v. Redd Horne*, 749

15   F.2d 154, 160 (3d Cir. 1984), *quoting Gershwin Publishing Corp. v. Columbia*

16   *Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)

17   Neo4J Sweden violated FSF's copyright in the AGPL license by adding

18   the common clause. Suhy prevented further infringement by removing the

19   offending terms.

20   Since Neo4J software is licensed under the GPL and AGPL license,

21   licensees have express permission under the terms of the FSF license to

22   remove the additional terms.[3] This right is granted for permissive and non-

23   permissive terms. Any licensee has the right to license the Program only

24

25

---

[3] This is an express right to remove terms that violate FSF's copyright.

under the GPL/AGPL without additional terms. AGPL §7. That is what Suhy did which is not a violation of FSF's copyright.

By choosing to use the GPL/AGPL license for Neo4J software, FSF ,the copyright holder, permits removal of additional terms. With the copyright holder's permission, no claim under 17 U.S. Code §1202. Suhy has permission for FSF, the copyright holder. "No person shall, **without the authority of the copyright owner** or the law—" [Emphasis added] Suhy has express permission to remove additional clauses from FSF in the FSF's AGPL license. As Mr. Suhy avoided Neo4J Sweden's violation of FSF's copyrighted license and did what is permitted under the terms of the FSF's license, there is no DMCA claim.

### 3.     Removal of the Common Clause Prevents Further Infringement of FSF's copyright.

Neo4J Sweden choose to use the FSF copyrighted AGPL license agreement. Neo4J Sweden has the burden of proof to show that Mr. Suhy intended to violate Neo4J's copyright. But the copyright to the license is owned by FSF. While Neo4J Sweden claims the license is its to do what it wants. It is not. Neo4J Sweden could not change the license terms unless, as Mr. Kuhn states, they complied with change provisions. Kuhn Expert Report, ¶85. (change the name of the license and delete the preamble).

Neo4J Sweden cannot enjoy the benefits of using the GPL/AGPL without the burdens of complying with the terms of the GPL/AGPL. Under the terms of the License form Neo4J choose to use, they must comply with the restriction, "no changes are permitted", and live up to the irrevocable license grant.

"All rights granted under this License are granted for the term of copyright on the Program, and are irrevocable provided the stated conditions are met." §2 GPL.

Neo4J Sweden did not modify the license by removing references to the GPL/AGPL and removing of the preamble. Exhibits 2 and 21 to Mr. Suhy's declaration shows the licenses Neo4J Sweden used. Neo4J Sweden references the GNU AFFERO GENERAL PUBLIC LICENSE VERSION and includes the Preamble. Neo4J Sweden uses FSF trademark and copyrighted license which means Neo4J Sweden is obligated to comply with the GPL/AGPL license terms.

Mr. Kuhn's opinion is Mr. Suhy's conduct in removing the Common Clause was customary, permissible and widely encouraged:

> In my opinion, when John Mark Suhy encountered the Neo4j Sweden Software License, his removal of the CC and redistribution of the Covered Work under pure AGPLv3 would be considered customary, permissible, and even widely encouraged in the field of FOSS.

Kuhn Expert Report ¶75.

The AGPL term at issue on the Further Restrictions aspect of his opinions is "**All other non-permissive additional terms are considered "further restrictions" within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term**." There appear two interpretations of that term. The question is who is the "you" who may remove further restrictions. The Court ruled on this issue based on a pleading motion in another case without the benefit of evidence on this term.

The AGPL states in the definition of The Program §0,  Each licensee is addressed as "you". The license is defined as the GNU General Public License or the GNU Affero General Public License. Neo4J Sweden provides a notice that the Neo4J software (Program) is licensed under the GPL and AGPL. Thus, Mr. Suhy ("you") received Neo4J software (Program) governed by the AGPL and had permission to remove the terms of further restrictions.

Prior rulings were based on a concept the license was Neo4J' license and they are free to do what they want with it. This omits the foundation that the license is FSF's license Neo4J Sweden choose to use. They could have used any other license form but by the election to use FSF's license, Neo4J Sweden is bound by it and must comply with it.

Mr. Suhy relied on the standard of industry reading of the AGPL license. The existence of a license is a defense to a claim for copyright infringement. *CMS Software Design Sys., Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1248 (5th Cir. 1986). Suhy was licensed under the GPL/AGPL. The "you" in the further restrictions clause is the licensee, the person reading it. He did not think that meant the person who uses the FSF license form. His understanding is supported by Mr. Kuhn and the definition of you in the FSF license.

Mr. Kuhn was involved in the addition of the "Further Restriction" clause and reasons for it. Kuhn Expert Report ¶¶27-74.  He opines that Mr. Suhy's removal of the Commons Clause was customary and permissible and even widely encouraged in the field of FOSS. Kuhn Expert Report ¶75 and permitted under the terms of the "Neo4J Sweden license". Kuhn Expert Report ¶78.

1

2

### 4.    Defendants do not control the GFI Website or Github.

3    Plaintiffs claim that Defendants are responsible for making ONgDB

4    publicly available, and responsible for it being downloaded over 14,000 times.

5    However, Defendants do not control GFI, nor control what is placed on GFI's

6    Github or website. See RUDF 19. As they do not control GFI's dissemination

7    of ONgDB, Defendants cannot be responsible for its distribution.

8    ### B.    Plaintiffs Have Acted with Unclean Hands

9    "Unclean hands is a defense to a Lanham Act infringement suit."

10   *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th
     Cir.1987).Trademark law's unclean hands defense springs from

11   the rationale that "it is essential that the plaintiff should not in his
     trade mark, or in his advertisements and business, be himself

12   guilty of any false or misleading representation." *Worden v. Cal.*
     *Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903). To make out

13   an unclean hands defense, a trademark defendant "must
     demonstrate that the plaintiff's conduct is inequitable and that the

14   conduct relates to the subject matter of its claims." *Fuddruckers,*
     826 F.2d at 847. To show that a trademark plaintiff's conduct is

15   inequitable, defendant must show that plaintiff used the
     trademark to deceive consumers. *See Dollar Sys., Inc. v. Avcar*

16   *Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir.1989) ("Bad intent is
     the essence of the defense of unclean hands.") (citing *Wells Fargo*

17   *& Co. v. Stagecoach Props., Inc.,* 685 F.2d 302, 308 (9th Cir.1982)).

18   *Japan Telecom, Inc. v. Japan Telecom America Inc.* 287 F.3d 866, 870–871

19   (9th Cir. 2002).

20   Neo4J USA's business is built on a license of the Neo4J trademark and

21   Neo4J software from Neo4J Sweden. That software is subject to the terms of

22   the AGPL license. Neo4J USA is using the Neo4J trademark to sell the

23   Neo4J software through the misuse of the AGPL license.

24

25

1   Mr. Kuhn contrasts Neo4J Sweden's' misuse of the AGPL with how

2   MongoDB converted from open source to proprietary.  Kuhn Expert Report

3   ¶¶90-98.

4   Neo4J Sweden took the Neo4J software licensed under the AGPL and

5   licensed it to Neo4J USA, but not under the terms of the AGPL. Then Neo4J

6   USA licenses the Neo4J software under a non AGPL license in binary code

7   only and does not provide the source code of modification. This is a violation

8   of the AGPL §6. Neo4J USA licensing only the binary code under a non AGPL

9   license is a violation of the AGPL too.

10   Kuhn contrast Neo4J wrong way with the correct way MondoDB closed

11   its source code. MondoDB used the terms of the AGPL but did not use FSF's

12   trademark. They named the license a Server Side Public License. MongoDB

13   did not include the AGPL preamble. See Exhibit K to Kuhn Expert Report.

14   This means MondoDB complied with FSF rules for modifications of the

15   AGPL. Kuhn Expert Report ¶90-93.  The further restriction removal right

16   only applies when the Program states it is governed by the AGPL license.

17   AGPL §7. MondoDB changed the name of its license and did not say it was

18   governed by the AGPL so the right to remove would not apply. Neo4J Sweden

19   references the AGPL license, so the removal right does apply.

20   The evidence shows, Neo4J Sweden does not own the complete code to

21   the Neo4J software. See RUDF 1.  They did not produce contribution

22   agreements from all the authors of the code. *Id.* Under the Copyright Act, 17

23   U.S.C. §204 (a), transfers of copyright ownership requires a writing signed by

24   the owner. Neo4J Sweden had a community of people working on the

25   GPL/AGPL versions of Neo4J software for free. Those contributors are part

authors of Neo4J software. Without agreements from the authors, Neo4J Sweden did not own 100% of the copyright to Neo4J software and had no right to license Neo4J software outside of the GPL/AGPL license. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Kuhn Expert Report ¶¶99-107.

By embarking on using the GPL/AGPL license and community of free developers, Neo4J cut a deal, they got free development help but lost ownership in all the code. That is the GPL/AGPL bargain. Neo4J is not allowed to use free development efforts over the years from the open source community under the guise of a GPL/AGPL license, take the copyright of others to sell commercially. This is unclean hands in the operation of the business under the Neo4J trademark.

Plaintiffs' violation of FSF trademark, copyright, the AGPL license terms and use of the Neo4J trademark to improperly license Neo4J software is unclean hands.  Neo4J USA misrepresentations of time of use, ownership of trademark and failure to correct those misrepresentation is unclean hands under the PTO's standards.[4] See DKT 95 3:17-23, 6:8-20; DKT 91-1;  *Chutter v. Great Mgmt. Group*, 2021 U.S.P.Q.2d 1001 (T.T.A.B. 2021).

Kuhn confirms Neo4J Sweden had other license options. Defendants agree Kuhn may not speculate on the reasons Neo4J choose to use FSF's license. But they certainly had other license forms to choose-and could make up their own. That is what MongoDB did. MongoDB modified the AGPL

---

[4] While Defendants are presently foreclosed from invalidating the trademark, the facts remain to support an unclean hands defense.

created and called it the SS Public license. That license complies with FSF's rules. Kuhn Expert Report ¶93. Neo4J Sweden' misuse of the FSF license does not.

Kuhn also explains that unless a licensor, such as Neo4J Sweden, has all the rights to the software, they cannot relicense on the software on a proprietary bases. Kuhn Expert Report ¶¶99-107. The evidence in this case is Neo4J did not have ownership of all code to allow license to Neo4J USA. RUDF 1, Suhy Decl., ¶¶13-14 , Beene Dec., Ex. 32 (Defendants asked for copies of each assignment from the other authors and Neo4J Sweden did not produce them).  Neo4J's USA licensing of the software on a commercial basis is a violation of the AGPL.

Neo4J Sweden choose to license and use FSF's license form.  FSF states a party may use the GPL terms if they call the license another name and do not include the GPL preamble or mention GNU. Kuhn Expert Report ¶85. Neo4J Sweden did do that.  Neo4J Sweden used the FSF trademarks, the entire FSF agreement and did not remove the preamble. With that election, the terms of the FSF license (GPL and AGPL) apply to all Neo4J software and Neo4J Sweden is not allowed, under the AGPL, to change the license or license it other than through the AGPL. Neo4J USA, a licensee is not allowed to change the AGPL either: "Each time you convey a covered work, the recipient automatically receives a license from the original licensors, to run, modify and propagate that work, subject to this **License**." [Emphasis added] AGPL §10.

The heart of unclean hands is "[It is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself

guilty of any false or misleading representation." *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903). Neo4J Sweden and Neo4J USA have marketed Neo4J software in violation of the AGPL. This is false and misleading use of the Neo4J trademark.

Neo4J USA through false representations obtained its trademark registration in violations of PTO rules. USA obtained the Neo4J software through violation of the GPL/AGPL licenses. USA conveys the Neo4J software through violation of the GPL/AGPL. USA falsely claims using GPL/AGPL software must comply with a " Fair Trade Licensing" option which 1) is a false interpretation of the GPL/AGPL or 2) a violation of §10 of the AGPL which states, "You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." Neo4J USA's marketing under the Neo4J trademark is false. See Suhy Dec. Ex 22.

Neo4J Sweden may not license under the GPL/AGPL then have Neo4J USA proclaim the license cannot be used under threat of litigation. Neo4J Sweden's' grant is for the life of the copyright and irrevocable and may not be restricted- by anyone. AGPL §2.

## C.    Plaintiffs Are Not Entitled To Summary Judgment Purethink's On Breach Of Exclusively Contract Counterclaim

The contract is clear:
To whom it may concern,

PureThink LLC a Delaware Company, is the only Neo4j Government Edition reseller that is certified to resell and support to the US Federal Government, Department of Defense (DOD), and Intelligence Agencies.

This agreement can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.

Suhy Dec., Ex 20 (the "Exclusivity Agreement.")

### 1.    The Parties Consented to a Separate Exclusivity Agreement

Neo4j USA consented to the Exclusivity Agreement. The terms include the words "This agreement." *Id.* Neo4j USA does not dispute that Lars Nordwall signed the Exclusivity Agreement on their behalf. *See* UDF 73, "signed by Lars Nordwall."

The terms of the Exclusivity Agreement make no mention of the SPA, and Mr. Suhy confirmed at deposition that the Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3

Plaintiffs attempt to extricate themselves from this unambiguous agreement based on contradictory parol evidence. The internal Neo4j USA drafts and communications are not the Exclusivity Agreement and should be disregarded. Cal. Civ. Proc. Code § 1856

### 2.    Neo4j USA Breached the Exclusivity Agreement.

While the Exclusivity Agreement contains no termination clause, Plaintiffs are not free to insert one so purely in their favor. Without an express term, "The court determines whether one can be implied from the nature and circumstances of the contract." *Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.,* 80 Cal.App.4th 1, 10 (Cal. Ct. App. 2000)

The nature of government contracting involves substantial up-front work, which would be recovered over a long-term relationship. This is contemplated when Mr. Suhy states "Neo Technology can **request** to revoke exclusivity" and "our contract requires us to be part of the decision to retire

1  it." Ratinoff Dec. Ex 15, pg. 4 [emphasis added]; Beene Dec., Ex 13 pg. 1.

2  Termination of the Exclusivity Agreement would include necessarily include

3  protections for PureThink LLC's investment on an exit. Suhy Dec. ¶10.

4      A fair analysis of the nature and circumstances of the Exclusivity

5  Agreement would not permit a termination clause that permitted Neo4j USA

6  to "terminate PureThink as the exclusive reseller thereof without cause and

7  without further compensating PureThink." DKT 183, 23:13-14

8      As Neo4j USA impermissibly terminated the Exclusivity Agreement,

9  its actions to take features developed by PureThink, incorporate it into

10  NEO4Jthe sell Neo4J software and services directly to the US government,

11  Department of Defense and intelligence Agencies, is a breach of the

12  Exclusivity Agreement.

13      ### 3.    Purethink Performed its Obligations Under the

14      ### Exclusivity Agreement

15      Plaintiffs argue that PureThink did not perform its obligations, as

16  iGov, as successor in interest continued to use Gov't Edition. But iGov is not

17  a party to the Exclusivity Agreement, there is no evidence that the

18  agreement was assigned from PureThink to iGov. iGov is not a successor in

19  interest, it is a separate entity that did not use any assets of PureThink.

20  Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. It is not disputed

21  that Purethink sought to and was successful in reselling to the Gov't Edition.

22      But even if the court finds PureThink did not perform all its

23  obigations, its performance is excused as Neo4j USA prevented PureThink's

24  performance by prohibiting it from engaging with government agencies. Dkt.

25

No. 177, Ex. D; *Ray Thomas, Inc., v. Cowan,* 99 Cal.App. 140 [ 277 P. 1086]."

*Taylor v. Sapritch,* 38 Cal.App.2d 478, 481 (Cal. Ct. App. 1940)

### 4. PureThink Has Been Damaged in Excess of $1.3M

As discussed above PureThink and IGOV are separate entities and no assets were transferred, so the successor in interest theory does not work. The work scope for PureThink and IGOV were substantially different. Beene Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. Mr. Suhy worked full time for PureThink See Adron Decl., Ex. 17, The value of that effort, determining the government requirements using the software and creating it along with the amount of damages for breach of the Exclusivity Agreement, is a disputed issue of material fact, that no timecards were kept is not dispositive of the damages. RUDF 85.

In addition to the loss of revenue related to the IRS, there are other substantial government sales, as shown in Exhibit 29.

As there are disputed issues of material fact as to each element of the breach of exclusive contract cause of action, summary judgment should not be granted.

## IV. INJUNCTION

Neo4J USA seeks the courts injunction to support a trademark obtained through violation of the PTO requirements and an invalid DMCA claim. They seek injunction to support persistent violation of FSF's trademarks and copyright in the GPL/AGPL. While Neo4J claim this case is only against the defendants, they want to obtain an injunction to prevent everyone from questioning how they converted a GPL/AGPL license to a commercial license. The case has far reaching impact.

The ruling on this motion is existential to the future of the GPL/AGPL license. If Neo4J Sweden can change the license terms in contraction to the license grant, if they can add contradiction terms no licensee can remove, and license rights they do not own, everyone can use Neo4J's bait and switch method. Anyone can lure people into using, supporting, and developing software under the GPL/AGPL open source model and then be cut off when the company wants to make money off of other people's labor. The GPL/AGPL does not allow this practice and this practice should not be supported by the court.

Dated: June 1, 2023

       __/s/ Adron W. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for Defendants
PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY

**ATTESTATION OF E-FILED SIGNATURE**

Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in the filing of this document from all signatories for whom a signature is indicated by a "conformed" signature (/s/) within this electronically filed document and I have on file records to support this concurrence for subsequent production to the Court if so ordered or for inspection upon request.

Dated:  June 1, 2023

/s/ Adron G. Beene
Adron W. Beene
Adron G. Beene
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233

Attorneys for Defendants and
Counter-Claimants
PURETHINK LLC, IGOV INC., and
JOHN MARK SUHY

**DEFENDANTS RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1:</u> Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | **DISPUTED** Neo4j does not own all the code to the Neo4j software. Beene Decl., Ex. 27.<br><br>Hundreds of committers to Neo4j code do not appear to be associated with Neo4j Sweden, and Neo4j Sweden does not have assignments from committers or authors of Neo4j Software. Copies of agreements were requested in discovery but not provided Suhy Decl. ¶¶13-14, Beene Dec., Ex 32. |
| | <u>Fact 2:</u> Prior to May 2018, Plaintiffs offer a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL"). Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6). Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | **DISPUTED** Prior to May 2018 Plaintiffs also released Neo4j Enterprise Edition under the vanilla AGPL open source license.  Neo4j Enterprise under the AGPL and Neo4j Enterprise under the commercial license were the same physical software as they were compiled from the same source code.<br><br>See Suhy Decl., ¶2. |
| | <u>Fact 3:</u> Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8).  A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  Dkt. No. 98-2, ¶¶ 7-9. | **UNDISPUTED** that Neo4j EE was available under both a commercial and free open source AGPL license and that a commercial license came with support.<br><br>**DISPUTED** that the commercial license was the only license which allowed Neo4j EE to be used in a proprietary setting or receive updates.  Neo4j Enterprise under the open source AGPL (< v3.4) as well as under AGPL + Commons clause  (v3.4) could be used in a proprietary setting for free, and since the code was the same for the commercial and open-source versions, they both received updates together. See Suhy Decl.,  Ex. 2 |

1

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 4:</u> On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | **UNDISPUTED** that Neo4j Sweden released Neo4j® EE v3.4 on May 17, 2018 was the AGPL with the commons clause which added prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that this was ever called "Neo4j Sweden Software License" outside of court.  The License terms include the AGPL preamble and the NOTICE states: "The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."  See Suhy Decl., Ex. 3<br><br>**DISPUTED t**hat the AGPL was replaced with a stricter license.  The AGPL was not replaced.  The AGPL License file had the full preamble, stated it was copyrighted to the free software foundation.  The commons clause was appended to the AGPL terms. Note, the commons clause did not affect end-users wishing to use the software, it was targeted at anyone trying to sell or offer a competing support offering as Neo4j USA offered.<br>See Suhy Decl., Exs. 2-3 |
| | <u>Fact 5:</u> The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services.  Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | **UNDISPUTED** that the commons clause states that it prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that there was ever a reference outside of court of a license called  "The Neo4j Sweden Software License".  The License was always referred to as AGPL, even when the commons clause was appended to the AGPL terms.<br><br>**DISPUTED** that "The Neo4j Sweden Software License" had a certain licensed scope for use.  The commons clause stated that it prevented others from selling or offering certain services, but did it did not affect the end-users who were using the software under the license. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Dec., Exs. 2-3 |
| | **Fact 6:** The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3.  It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE.  *Id.* | **UNDISPUTED**  The NOTICE provision was found in a separate file called NOTICE.txt which was always present next to the AGPL License file called LICENSE.txt<br><br>Every directory in the enterprise source code that has a LICENSE.txt file also has the corresponding NOTICE.txt.<br><br>See Suhy Dec., ¶ 3. and Exs. 1,3 |
| | **Fact 7:** In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects. Dkt. No. 98-2, ¶ 13. | **UNDISPUTED** that Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license.<br><br>**DISPUTED** that plaintiffs were no longer publishing the source code for Neo4j EE or offering it on an open source basis.  All Neo4j EE versions prior to v3.5 were public and received updates from Neo4j Sweden.<br><br>**DISPUTED** that this was done to simply the licensing model, as well as prevent bad actors from profiting by providing commercial services in closed, proprietary projects.<br><br>See Suhy Decl., ¶ 4. |
| | **Fact 8:** Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | **UNDISPUTED** that plaintiffs published several beta versions of EE v3.5 via their GitHub repository.<br><br>**DISPUTED** that the license was ever called "Neo4j Sweden Software License." outside of court proceedings.   The beta versions were licensed under the AGPL and had the commons clause restriction appended to the AGPL license file. |
| | **Fact 9:** Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via Github. *Id.* | **UNDISPUTED** Note that all prior versions of Neo4j EE remain publicly available on the Neo4j GitHub repository.<br><br>See Suhy Decl., ¶ 2. |
| 2. Defendants' intentional removal and/or | **Fact 10:** Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June | **DISPUTED** that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI").  Mr. Suhy was part of the volunteer committer team, and gave guidance as an |

3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| alteration of CMI without the authorization of Neo4j Sweden | 2018.  Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | open source advocate, but was not involved in forming the GFI entity.   Mr. Suhy declined any official role with the foundation.   There are no legal documents and Plaintiff's have not shown any official documents, or business records that show Mr. Suhy being involved in the formation of the GFI or serving as any official officer or director.  Plaintiff has not produced any business records, certificates, or any evidence that Mr. Suhy had a formal role in the GFI other than being on the volunteer committer team.  Beene Dec. Ex 30, Brad Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24 |
|  | <u>Fact 11</u>: After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED** that Suhy helped form GFI.  See Fact 10.  **UNDISPUTED** that GFI began offering and promoting a graph database software called "ONgDB".  **UNDISPUTED** that Mr. Suhy promoted ONgDB as part of his open-source advocacy activities. Mr. Suhy also promotes other open source innovative technologies. |
|  | <u>Fact 12</u>: To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | **DISPUTED.**  Mr. Suhy did not create ONgDB, he was on the volunteer team of committers and gave the guidance on how to set it up, but GFI came up with the name and created the GitHub repositories.  **DISPUTED.**  Mr. Suhy did not make any modifications to the source code in v3.4 code related to the AGPL in any way. See Suhy Decl., Exs. 1-4, 9 |
|  | <u>Fact 13</u>: ONgGB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE 3.5.  Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | **UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause.  **DISPUTED** that the AGPL + Commons was ever called "Neo4j Sweden Software License" outside of court proceedings.   The files were released under AGPL + Commons clause. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Decl., Exs. 2-3<br><br>See Fact 12. |
| | **Fact 14:** Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39. | **DISPUTED.**<br>Mr. Suhy had not previously replaced anything relating to the AGPL and commons for v3.4 of Neo4j Enterprise.   See Fact 12 above.<br><br>The NOTICE provision in the NOTICE.txt files which corresponded to each LICENSE.txt files, along with the 1000s of source code files which also had Neo4j Sweden CMI and the commons clause were untouched by Mr. Suhy and still clearly shows that the commons clause was present.<br><br>The only files Mr. Suhy touched were the AGPL LICENSE.txt files which clearly stated that the copyright to the file / license was to the free software foundation.<br><br>See Suhy Decl.,  Ex. 2<br><br>"Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed."<br><br>The NOTICE.txt files and all source code files still had the legal notices identifying Neo4j Sweden as the copyright holder and licensor, and also stated the license was AGPL + Commons.<br><br>See Suhy Decl., Ex. 3<br><br>"The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."<br><br>See Suhy Decl.,  Exs. 1-10 |

5

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 15:** Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the APGL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3. | UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.<br><br>DISPUTED that Mr. Suhy replaced anything called the Neo4j Sweden Software License.  He only made the AGPL License file verbatim as the copyright holder, the free software foundation instructed.  He did not replace the NOTICE.txt (notice provision) or any source code CMI which clearly stated that the software was copyrighted to Neo4j Sweden and had additional restrictions in the form of the common clause.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license." See Suhy Decl., Ex. 9<br><br>See Fact 14.<br><br>See Suhy Decl.,  Exs. 1-10<br><br>Neo4J Sweden does not own 100% of the code for Neo4J and the AGPL control how the software is licensed. Neo4J Sweden's misused the AGPL and Suhy corrected that. See response to Fact 1 and Facts 94 and 100. |
| | **Fact 16:** Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL.  Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | **UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons Clause or rename "it" ONgDB.<br><br>**DISPUTED** that Mr. Suhy renamed anything ONgDB.  Mr. Suhy did not have any part in coming up with the name ONgDB.<br><br>**DISPUTED** that Mr. Suhy offered ONgDB – this is a project that is sponsored and offered by GFI.<br><br>The AGPL authorizes licensee to remove any additional terms. See Suhy Dec., Ex. 6. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 17:** Suhy has been the sole officer and director of PureThink since he formed the corporation.  Ratinoff Decl., Ex. 2 at 176:4-11; see also Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | **DISPUTED.**  Mr. Suhy has had other partners who served as officers and directors since PureThink was formed in 2002.<br><br>See Suhy Decl., ¶ 8. |
| | **Fact 18:** Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | **UNDISPUTED** |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | **Fact 19:** Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and Github repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id*., ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id*., ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id*., Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id*., ¶¶ 41 and Ex. 39 (GFI Github commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020.  Dkt. No. 118 at 8:13-15. | **DISPUTED** – Mr. Suhy does not control or run the GFI website or GFI Github repositories.  He is one of many volunteer open source committers on the team.<br><br>Beene Dec. Ex 30, Brady Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24<br><br>The CMI is not (its) Neo4J Sweden's CMI. The copyright to the AGPL is owned by FSF. Neo4J Sweden's violation of FSF's copyright means the CMI was false in violation of the DMCA. Suhy corrected that violation with the removal of the commons clause. See Fact 98. |
| | **Fact 20:** Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb/); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | UNDISPUTED that Mr. Suhy provided hyperlinks references for users of the website to view the source code and download distributions.   These links sent the users who clicked on them to the GFI website, which Mr. Suhy has no official role, has no control over, and whom is just one of the many volunteer committers who volunteers time to make the software better for the open source community.<br><br>Note: Dkt. No. 98-1, Ex. 26 shows date of 08/28/2018<br><br>The code still had commons as of Nov 2019.<br><br>See Suhy Decl.,   Exs. 1-4 |
| | **Fact 21:** Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id*., ¶ 59 | UNDISPUTED – see Fact 20 above. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage.  Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | |
| | **Fact 22:** iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | UNDISPUTED – it should be noted that all the downloads from GFI and from the mirror site I setup on iGov's website had the commons clause in the AGPL license files. |
| | <u>Fact  23:</u> iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); *id.,* Ex. 13 at RFA Nos. 10, 14. | UNDISPUTED that the hyperlink was on the iGov downloads page.  It was a mistake and should have said "Download ONgDB Enterprise".   The link was fixed as soon as it was brought to Mr. Suhy's attention.<br><br>See Fact 22 above. |
| | <u>Fact 24:</u> On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4.  Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. *Id.,* Ex. 4 at 96:6-98:21. | DISPUTED the reference in Ratinoff Decl., ¶ 31 and Ex. 29.<br>Does not mention anything related to trying to get IRS to move to an "unrestricted" version. Furthermore, Plaintiffs have never shown Mr. Suhy ever used the terms "unrestricted" or "restrictions" in describing the AGPL license without the commons clause.<br><br>Mr. Suhy has only used the word "restriction" in only 2 scenarios.  1. when explaining that the commercial license adds restrictions, and 2. around physical restrictions of software itself relating to number of cores, instances, or other physical attributes of Neo4j Enterprise.<br><br>See:  Dkt. No. 98-1, Exs. 68,75<br>"no limitations on causal cluster instances, cores, or production usage." |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Dkt. No. 98-1, ¶¶ 45 and Ex. 43 "ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose." Further, the commons clause does not prevent IRS from using Neo4j v3.4 in production.  Mr. Suhy stated this in the email. "Again this does not effect IRS in any way, even if the term was enforceable." See Ratinoff Decl., ¶ 31 and Ex. 29. The email referenced in Ex. 29 above, was sent May 22nd, 2018. At this date, even the AGPL license files had the references to the commons clause. See Suhy Decl., Exs. 1-4,9 |
| | Fact 25: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used an open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; *id.,* Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; *id.,* Ex. 3 at 47:14-50:8, 50:14-54:3. | UNDISPUTED that IRS awarded eGovernment Solutions a contract to develop and support the CDW Knowledge Graph ("CKGE") environment which used an open source Neo4j software. DISPUTED that Neo4j was a main component in the platform.  It was in fact just one small component of one service that made up the complex platform. The SOW for the CKGE project does not have anything referencing Neo4j EE as a component, let alone the main component of CKGE. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "The CKGE framework includes a graph database: elastic search capabilities; java-script based, user-interface; and microservices components."<br><br>The only time the word Neo4j was mentioned was under the "skills section" of the SOW. (underlined below) "The vendor will need to work with the following components: React, Angularjs, Neo4j, JAVA, micro-services architecture, and Hadoop/Spark, Elastic Search, Kafta, Agile methodology, GitLab, and Plottable." See Suhy Decl., Ex. 11<br><br>See Suhy Decl., ¶ 5. |
| | Fact 26: Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov. *See* Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; *id*, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; *id.,* Ex. 2 at 188:10-193:25; *id.,* ¶ 30 and Ex. 28. | |
| | Fact 27: eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over. Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; *id.,* ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3. | DISPUTED:  The stock purchase agreement between Mr. Suhy and eGovernment Solutions does not state anywhere that Mr. Suhy has the sole responsibility or sole control.  The stock purchase agreement gave Mr. Suhy the authority to drive the direction, but not absolute control.<br><br>"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid…"<br><br>"5.2 eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project as long as the agreements are in line with government contracting laws and hubzone regulations."<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | <u>Fact 28</u>: The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; *id.*, ¶¶ 38-44 and Exs. 36-42. | UNDISPUTED that IRS paid a total of $1,316,000 to eGovernment Solutions under the CKGE contract.<br><br>DISPUTED that eGovernment Solutions turned around and paid that amount to Mr. Suhy and/or iGov Inc.<br><br>eGovernment Solutions paid a $200,000 to support the CKGE contract, act as the official facility clearance officer for eGovernment Solutions because Mr. Suhy had an active clearance, and help with business development.  See Fact 27 and Ratinoff Decl., ¶ 37 and Ex. 35<br><br>Over $251,450 of the revenue from IRS did not go to Mr. Suhy in any manner.<br><br>The total payments made to iGov Inc were $1,064,550.00<br><br>See Suhy Decl., ¶¶ 6,7 |
| | <u>Fact 29</u>: Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; *id.,* ¶ 44 and Ex. 42. | **DISPUTED** that Mr. Suhy was entitled to all payments eGov Sol received from the IRS on the CKGE contract.<br>See Facts 27-28,<br>See Suhy Decl., ¶¶ 6,7<br><br>**"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when** |

11

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | eGovernment Solutions gets paid. eGovernment Solutions will not be liable to pay John Mark Suhy for any work done on this contract in the event they donot get paid from the client. If the payment for the project is received all at once, then John Mark Suhy will also be paid his total salary for the option year up front, otherwise salary will be paid as eGovernment Solutions Inc get paid by the Treasury."<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | Fact 30: eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | **UNDISPUTED** that eGovernment Solutions had a bank account that received payments from clients including IRS. Mr. Suhy had access to the account because it had not been removed when he sold his shares.    Mr. Suhy just happened to still have checks and helped out of convenience since there was a bank branch near his home.<br><br>**DISPUTED** Mr. Suhy was not authorized to disburse the payments made by the IRS as he saw fit.  He had to request permission anytime he wanted to write a check for his salary.<br><br>See Facts 27-29<br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | Fact 31: In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; id., Ex. 4 at 113:5-115:20, 116:5-117:21. | **DISPUTED** that CKGE had any requirement for Neo4j EE at all.<br><br>Otherwise **UNDISPUTED** that a sales representative from Neo4j USA met with IRS and provided the quote mentioned. |
| | Fact 32: As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | **DISPUTED.**  Plaintiff's do not provide any evidence  citing a  "reason""  to why IRS did not allocate money for a Neo4j EE license.   See Fact 24.<br><br>**UNDISPUTED** that Neo4j EE had enterprise only features compared to Neo4j CE, and that the Neo4j EE commercial license came with support.<br><br>Zagalsky of Neo4J USA misrepresented a Fare Trade |

12

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Licensing document as applying to the AGPL code on 4-4-2017 before the IRS to decline to do business with Neo4J USA. There is no obligation under the AGPL to make a project open when using AGPL licensed software. AGPL §2, Suhy Dec. Ex 22.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 33:</u> In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on misrepresentations about GFI being the copyright holder and licensor of ONgDB.  Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.*, ¶¶ 35-36 and Exs. 33-34. | **DISPUTED**<br><br>Mr. Suhy never claimed GFI was the copyright holder.  The only place in Ex. 4 that even mentions the word "copyright" shows IRS knew the copyright holder was Neo4j.<br><br>**"Q. So the Neo4j source code, Neo4j would own the copyright to that.  Correct?**<br>**A.  Yes.  I would assume it would be available based on whatever Neo4j allowed it to be used from**."<br>Ratinoff Decl., Ex. 4 at 130:1-4<br><br>IRS was not even sure about who the license came from, and did not associate the license to be anything related to copyright.<br><br>**"A.  My understanding it was not the Enterprise. It was the core source code from GitLab, Neo4j's GitLab, whatever that licensing was of that core source code brought over, and then the additional elements, whatever elements ONgDB, The Graph Foundation added onto that.  That's how I understood from my point of view who was -- who was distributing and licensing it and the follow-through from whatever the licensing was of the Neo4j core that was off of GitLab.  That's how I understood it."** Ratinoff Decl., Ex. 4 at 135:14-23 |

13

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The source code for v3.4 clearly stated that Neo4j Sweden was the copyright holder.<br><br>"Neo4j Copyright © 2002-2018 Neo4j Sweden AB (referred to in this notice as "Neo4j") [http://neo4j.com]<br>This product includes software ("Software") developed and owned by Neo4j."   Suhy Decl., and Ex. 3<br><br>See also Suhy Decl.,  Exs. 1-4<br><br>There is no evidence that shows that IRS was convinced by Mr. Suhy.<br><br>See Fact 24<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 34: While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.  Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | **DISPUTED** Suhy and iGov were NOT responsible for supporting, maintaining, and updating ONgDB on the internal repository.<br><br>The Statement of Work for the CKGE project had no requirement to support, maintain or update ONgDB.  See Suhy Decl., Ex. 11<br><br>Mr. Suhy helped IRS with technologies on his own time and not as part of any paid consulting.  Mr. Suhy also assisted with other technologies that he had expertise around when time permitted.<br><br>Mr. Suhy simply helped IRS get the source code into the IRS internal repository so that IRS could perform security |

14

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | scanning outside any contractual obligation between IRS and eGovernment Solutions Inc.  This happened around the time that a serious Log4j Vulnerability was found to exist in Neo4j.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 35:</u> Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | **DISPUTED**  The CKGE platform does not require upgrades to use specific graph databases.<br><br>The CKGE platform is suite of micro-services, many of which have nothing to do with graphs. The only service that end-users used which even touched the graph was called the graph explorer.  It provides a way to explore graph structure through visualization.   It is not dependent on any specific underlying graph database and does not require any sort of upgrade to switch between backend graph and non-graph databases.<br><br>See also Fact 34.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 36:</u> After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository. Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15. | **DISPUTED.**  There is not any ONgDB, GDB, Neo4j, or other source code based on Neo4j in use at IRS which is "improperly licensed".  All the source code within IRS clearly states that the license is AGPL + Commons.   Plaintiff has provided no evidence to the contrary.<br><br>See Suhy Decl., ¶ 9 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "Q.  I didn't get -- I didn't quite follow that. I apologize.  To clarify, so you understood -- so you understood that the license that ONgDB was under was the AGPL version 3 but with the Commons Clause removed by Mr. Suhy?<br><br> A.  Yeah.  I don't -- I don't remember if he removed it.  I don't remember it being discussed.  I just remember the description of taking the core source code from GitLab, compiling it, and then, as we discussed, adding the additional capabilities that would be the ONgDB release.<br><br>So I can't remember the Commons Clause being part of the discussion.  I can't remember if he said that he took it out or what, but I can't say that.  Yeah.  I just can't say that.  In my mind, I'm tracing it from the GitLab source code, whatever that licensing was, and then released by ONgDB under their licensing." Ratinoff Decl., Ex. 4 at 133:14-134:6<br><br>**UNDISPUTED** that IRS started calling ONgDB just "GDB,"<br><br>**DISPUTED** that the graph used Neo4j EE 3.5 source code, as Neo4j did not release the enterprise source code for v3.5 after the pre-releases. |
| | <u>Fact 37</u>: Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16,  157:23-158:11,  161:23-163:4,  166:19-167:4,  168:24-172:10, 174:19-175:5, 179:13-23. | **DISPUTED** that Mr. Suhy or iGov Inc facilitated the use of four instances of ONgDB.  Mr. Suhy gave guidance on the servers needed for the entire CKGE stack, which the graph database was not the main piece of.  Furthermore, the references Plaintiff give show that the person being deposed |

16

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | was not sure of the number of ONgDB instances, and was guessing.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 38</u>: iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions.  *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | **DISPUTED**  www.graphstack.io was not operated just to promote ONgDB over Neo4j EE.  The website promoted a stack of tools that abstracted out knowledge graphs from the underlying implementation.<br><br>The term "restrictions" mentioned are in the context of physical restrictions and have nothing to do with license restrictions.<br><br>*See* Dkt. No. 98-1, ¶ 77 and Ex. 75<br>"Open Native Graph DB (ONgDB) is a non-restrictive fork of Neo4j managed by the Non profit Graph Foundation.  ONgDB is 100% free and open, and **there are no limitations on instances in clusters, cores, etc!**"<br><br>"What is GraphStack?<br> **GraphStack is a development suite that allows teams to build large scale graph apps.**"<br><br>See also Fact 24. |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | <u>Fact 39</u>: Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization.  *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive.  *Id.* at 196:22-201:16. | **DISPUTED** defendants only created a commit to make the AGPL LICENSE.txt files verbatim as instructed in the AGPL preamble  by the copyright holder,  the free software foundation.  Suhy Dec., Ex. 6<br><br>The commit message shows the intent.<br><br>Furthermore, the defendants did not replace anything called |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "Neo4j Sweden Software License". The license has always been called the AGPL, even when the commons clause was appended to it.<br><br>Mr. Suhy was speaking of the files owned by the FSF only.<br><br>Mr. Nussbaum from the Graph Foundation did get independent legal guidance which was communicated to Mr. Suhy as well.<br><br>**"We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3"**. See also Suhy Decl., Ex. 12 |
| | Fact 40: Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16. Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. Ratinoff Decl., Ex. 1 at 205:17-206:11. | **UNDISPUTED** that Mr. Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018.<br><br>DISPUTED that Mr. Suhy chose not to seek legal advice concerning those views. The Graph Foundation did get independent legal advice and communicated that to Mr. Suhy.<br><br>Furthermore, Mr. Suhy did do quite a bit of due diligence which is one of the reasons that he only followed the instructions in the files that specifically stated they were copyrighted to the free software foundation. |
| | Fact 41: When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights). The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | UNDISPUTED the free software foundation gave guidance which Mr. Suhy followed. |

18

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | <u>Fact 42:</u>  Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | **DISPUTED** Mr. Suhy did not remove the commons clause from Neo4j.  In March 2019, he only made the AGPL License file verbatim as the copyright holder of the file, the free software foundation, instructed in the preamble.   The commons clause was still present in all NOTICE provisions and source code headers.<br><br>See also Fact 14 |
| | <u>Fact 43:</u> Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE.  Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.*, ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.,* ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | **DISPUTED** Mr. Suhy did not use the term "commercial restrictions" in relationship to the commons clause.   Mr. Suhy knew that the commons clause forbid re-selling, but was unsure about the rest as the language of the commons clause did not define what "support services" was exactly. |
| | <u>Fact 44:</u> Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users.  Dkt. No. 98-1, ¶ 31 and Ex. 29; *id.*, ¶¶ 64-68 and Exs. 62-66; *id.,* ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.,* ¶ 49 and Ex. 47; *id.,* ¶ 56 and Ex. 54; *id.,* ¶¶ 128 and Ex. 126; *id.,* ¶¶ 132-134 and Exs. 130-132. | **DISPUTED**  Mr. Suhy removed the commons clause from only the AGPL License files and gave the reason for the removal clearly in the commit message.  The commons clause was not removed from the NOTICE provision (NOTICE.txt) or any source code files.   See Fact 14.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "**Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license.**" See Suhy Decl., Ex. 9<br><br>Furthermore, the commons clause did not prevent end-users from using Neo4j EE for free in commercial applications or elsewhere.  Plain |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 45:** Suhy concealed the infringing nature of ONgDB and misled the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement.  Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc"); *id.*, Ex. 4 at 127:19-129:25, 132:2-133:13, 134:7-136:9, 137:24-138:11, 139:22-141:17. | DISPUTED Mr. Suhy was not aware that ONgDB was infringing on anything and would have called out the Graph Foundation had he thought this. |
| | | The Graph Foundation Inc communicated to Mr. Suhy and others that their legal counsel had given them the guidance as well. |
| | | "**We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3**". See also Suhy Decl.,  Ex. 12 |
| | | Mr. Suhy clearly stated the reason for replacing only the AGPL License file with the verbatim AGPL, while leaving all Neo4j CMI untouched.  See Fact 14 and 44. |
| | | Plaintiffs have not shown that IRS was misled in any way. |
| | | Mr. Suhy never misled or stated that the copyright came from GFI.     See Fact 36 |
| | | Ratinoff Decl., ¶ 35 and Ex. 33, Shows an email dated 08/13/2018.   No modifications to the AGPL code were done as before March 2nd, 2019. See Suhy Decl.,  Exs. 1-4 |
| | | Suhy removed Neo4J Sweden's infringement of FSF' AGPL license and did not conceal that. |
| | **Fact 46:** Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services. Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47. | UNDISPUTED that defendants referenced IRS's adoption. |
| | | DISPUTED – that defendants did this in order for agencies and contractors to pay defendants. |
| | | In all the references given by plaintiff for Fact 46, only one was related to trying to get paid, and it was for a package of |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | software.  "**Neo4J Server including the Graphsware PHP-Neo4J Client (Guzzlehttp, Heoku, Myclabs, Pimple, Psr, Silex, Symfony, and Composer**" Dkt. No. 98-1, ¶ 44 and Ex. 42 <br><br> Not only did defendants not encourage agencies or contractors to pay them, they told them they could find companies with past performance such as AtomRain and GraphGrid. <br><br> "**Usually which one you go with falls to the cost of production support. From a past performance perspective, the open source distributions are actually in production in the Federal government and there are companies such as us , AtomRain, GraphGrid, etc all have past performance providing production support for federal agencies for Neo4j Enterprise open source licenses.**" Dkt. No. 98-1, ¶ 49 and Ex. 47 <br><br> Furthermore, Defendants were promoting the open and free nature of ONgDB. <br><br> "**I wanted to make sure you knew that you can use Neo4j Enterprise AGPL distributions at no cost, and with no limitations.**" Dkt. No. 98-1, ¶ 47 and Ex. 45 <br><br> "**1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.**" Dkt. No. 98-1, ¶ 45 and Ex. 43 |
| | <u>Fact 47</u>: Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | **DISPUTED**  None of the evidence provided by plaintiff relating to this fact suggest that Mr. Suhy convinced Greystones Consulting Group, LLC to implement ONgDB. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | Fact 48: The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB.  Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60. | **UNDISPUTED**<br>Note however that GreyRaven was not based on ONgDB.<br><br>This was a marketing mistake and the website was updated once it was brought to GreyStone's attention. |
| | Fact 49: The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | **UNDISPUTED** |
| | Fact 50: After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.,* Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.*, ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶ 49 and Ex. 47. | **DISPUTED** as this mischaracterizes the evidence,  there were no restrictions on the number of cluster instances and cores, however the Software resticted under the AGPL license terms.<br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | Fact 51:   Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license.  *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.*, ¶ 66 and Ex. 64.  This led Next Century to upgrade to ONgDB v3.5.  Dkt. No. 98-1, ¶ 122 and Ex. 120. | DISPUTED It is not known what led Next Century to upgrade to ONgDB v3.5.<br><br>There is nothing in the evidence provided by plaintiff that "restrictions" had anything to do with the commons clause. In fact Next Century mentions open source and free as being important to them, and this, for example,  could have led to them upgrading to ONgDB v3.5<br><br><br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |

22

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 52:** As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE.  Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13. | **DISPUTED** Defendants did not remove any "Neo4j Sweden's CMI" nor made any false statements about the same.   See Fact 14 above.<br><br>The commons clause does not prevent the MPO from using the software for free in their projects.  Next Century stated that cost and being open source were 2 important criteria.  There was another open source alternative to Neo4j called JanusGraph on the list of databases NextCentury was evaluating for the MPO.<br><br>No-where in the evidence provided by plaintiff does the MPO say they would have purchased Neo4j Enterprise if ONgDB was not available.<br><br>**"Q. And was this -- sorry. Strike that. What graph database technologies did Next Century consider for Task Order 39?**<br><br>**A. Several, including -- so there was -- Neo4j was one, Oracle was a second one, DataStax and <u>JanusGraph</u> were others that were the primary thrust. There were several others that I don't have the names of that -- that were also under initial consideration."** See Ratinoff Decl., Ex. 5 at 29:19-30:1<br><br>**"The analysis started with the teams reviewing  other implementations of graph database technologies at the NSA and in other -- other applications to assess the performance, the security, lessons learned, <u>and costs</u> of the wide range of initial technologies under consideration."** See Ratinoff Decl., Ex. 5 at 31:16-21<br><br>" |

23

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Q. All right. And did the NSA provide any guidance on -- on pricing for the graph database software or the -- strike that. Were you provided any instructions from on pricing considerations for the graph database software that was being considered? **A. The NSA asked us to provide an analysis alternatives that <u>considered cost as one of the many factors</u>, and we were tasked to provide -- not provide -- <u>to consider cost as one of the factors</u>.**" See Ratinoff Decl., Ex. 5 at 44:9-18<br><br>"<br>**A. An alternative to the Neo4j Enterprise solution.**<br>Q. And how was it an alternative?<br>**A. <u>Similar features, less cost.</u>**<br>Q. And when you say "less cost," there was no cost for a license to iGov's offering of Neo4j Enterprise, correct?<br>**A. Not to my knowledge.**<br>" See Ratinoff Decl., Ex. 5 at 50:15-22<br><br>It was clear that government preferred free, no cost and open source licenses over paid.<br><br>"**A. Our government customer was interested in open-source technologies.**" See Ratinoff Decl., Ex. 5 at 56:10-11<br><br>Next Century was not even sure what the license ONgDB came under. Plaintiff's attorney had to guide the answer.<br><br>"   **Q.  And what license did Next Century understand that ONgDB was distributed under?**<br>    A. The -- (unintelligible).<br>        THE REPORTER:  I'm sorry.  One more time?<br>        THE WITNESS:  GPLv3 license.<br>        BY MR. RATINOFF:<br>    Q.  AGPL Version 3; is that correct?<br>    A.  Yes.**" See Ratinoff Decl., Ex. 5 at 59:10-17 |

24

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | On Jan 2019, Mr. Suhy had not even replaced the AGPL License file with the verbatim version.   See Fact #14 above.<br><br>"    **Q.  So as of January 2019, had Next Century been using ONgDB to the exclusion of Neo4j Enterprise?**<br>    **A.  I don't know that it was to the exclusion of Neo4j.**<br>    **Q.  But at that time, Next Century hadn't obtained an commercial license for a copy of -- or an installation of Neo4j Enterprise, correct?**<br>**A. Correct."** See Ratinoff Decl., Ex. 5 at 64:2-9<br><br>Suhy did not remove Neo4J Swedens' CMI. The CMI is FSF's copyrighted license. Neo4J was obligated to use only a compliant AGPL license and used false CMI instead. |
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* Facts 1-9. | **DISPUTED** – See responses to Facts 1-9 |
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority | *See* Facts 10-18. | **DISPUTED –** See responses to facts 14, 10-18<br>Defendants never distributed any material that had modifications to Neo4j Sweden's CMI.  In fact – the mirror downloads provided by Defendants had the full commons in the LICENSE files of the distribution.   Other than the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| of the copyright owner; and | | mirrors, defendants only shared links to GFI and were not aware of any wrong doing. |
| 3. Defendants knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | *See* <u>Facts 39-52</u>. | DISPUTED – See responses to facts 14,39-52. |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | <u>Fact 53:</u> On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | **UNDISPUTED** Note that the SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 54:</u> Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | **UNDISPUTED**.  IRS was able to use Neo4j EE free both under the AGPL as well as under the AGPL with the commons clause.<br><br>Note that the PureThink SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 55:</u> Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component.  Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4. | **DISPUTED** that CKGE used Neo4j EE or any other graph database as a "main component".  Out of the many components and services inside CKGE, only one the graph explorer even connected to a graph to allow for visual exploration.  See Suhy Decl., ¶ 5.<br><br>None of the references provided by Plaintiff show Neo4j EE as being a main component of CKGE. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "The CKGE framework includes a Neo4j's Enterprise Edition open-source version2, Elastic Search capabilities, and micro-services components useful for supporting graph-related research; " Ratinoff Decl., ¶ 28 and Ex. 26 at IGOV0001570513.001 |
| | **Fact 56:** It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them.  Ratinoff Decl., Ex. 4 at 61:11-64:23. | **DISPUTED.**  Although IRS wanted to work with Mr. Suhy, the IRS had to properly procure the requirement under the FAR. Ratinoff Decl., Ex. 4 at 63:23-64:21 shows that Plaintiff's attorney tried to get IRS to make this statement but the IRS response was unclear and did not show that it was immaterial who the contracting entity was.  IRS was planning on competing the opportunity. "**And then we started a new procurement process for new competition**" Ratinoff Decl., Ex. 4 at 69:23-25  "**A.  Yes.  It was a new procurement order that had started -- or was executed for sort of open competition.  I believe it was AA companies or small business companies originally, but it was open competition, and it was awarded to eGov for professional services to work, you know, to further the development of CKGE.**" Ratinoff Decl., Ex. 4 at 74:4-10 |
| | **Fact 57:** On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | **UNDISPUTED** |
| | **Fact 58:** Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1.  After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol. *See* Facts 25-30. | **DISPUTED** IRS did not award any contract to iGov and Suhy through eGov Sol. eGovernment Solutions paid Mr. Suhy a salary for a range of services.  See Suhy Decl., ¶ 7 See fact  28 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act claims. | **Fact 59:** Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE. *See* Dkt. No. 91 at 16:21-19:7.  However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:11-16 (citing same). | See Fact 1 |
| | **Fact 60:** The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | UNDISPUTED |
| | **Fact 61:** Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | **DISPUTED.** Neo4j EE v3.4 clearly stated its license was AGPL + commons clause. They did not "cease" licensing under AGPL.  Neo4j Sweden used the full AGPL preamble and called the License AGPL. They never called it  "Neo4j Sweden Software License" until the court case started. |
| | **Fact 62:** The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit.  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | **Objection**, this is not a fact, the law of the case doctrine does not apply to interlocutory orders. |
| | **Fact 63:** By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | DISPUTED  See Fact 61.The 182 files licensed under the AGPL + commons clause was still referred to as AGPL and had the full AGPL preamble. |
| | **Fact 64:** Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | DISPUTED  Defendants did not release ONgDB.  The Graph Foundation did.  Beene Dec., Ex. 30. |
| | **Fact 65:** Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in *May 2018* and Neo4j USA's alleged false statements about | DISPUTED – In May 2018 Neo4j released enterprise under AGPL with the commons clause.   After v3.4 – the source |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the IRS needing to obtain a commercial license for Neo4j® EE were made before **October 2017**.  *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | code clearly showed that it was using the AGPL license with commons along with the full AGPL preamble.<br><br>See Suhy Decl., Exs 1-8 |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | Fact 66: There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights). | **UNDISPUTED** that PureThink did not have ownership rights to the Government Edition.   The Exclusivity agreement was designed to ensure Neo4j Inc had the proper rights to make business decisions, while still protecting PureThink's investment.<br><br>**DISPUTED**  The Government Edition Exclusivity agreement had an "exit agreement" that was designed to protect PureThink's investment and ensure PureThink would recognize a return on investment and be compensated in an "exit" situation ("Exit Agreement").<br><br>Until the exit clause algorithm could be put down in writing, Neo4j Inc and PureThink agreed that all decisions relating to the Government Edition and the Government Edition |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Exclusivity agreement would have to be agreed on unanimously by both parties. ("unanimous agreement") See Suhy Decl., ¶ 10.<br><br>Mr. Suhy's references the "unanimous agreement" requiring unanimous approval in communications with Neo4j.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl., Ex. 13, green highlights<br><br>The Government Edition is not just a concept.  It is a software product combined with services which were specifically designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs.<br><br>Adron Decl.,  Exs. 14, 15<br><br>"**Neo4j US Government Edition is an "officially sponsored" package of offerings strategically designed to drive Neo4j adoption in the US Government market by drastically cutting overall cost of ownership, addressing critical government specific requirements, providing an efficient sole source path (sole source), and more…**" Suhy Decl.,  Ex. 16<br><br>"**Purpose of US Government Edition**<br><br>**Why the approach of defining a new edition compared to other approaches? This approach lowers the barrier of entry for Neo4j into the archaic us government market. How?**<br><br>**- Fast, Efficient Procurement (Sole source - no timely** |

30

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | competitive procurements.) This has already been proven - every US Government sale has been through sole source.<br><br>- Drastically cuts down the total cost of ownership for an agency by addressing FISMA via features and support. Infact, this also applies to the community edition. The total cost of ownership for Neo4j Community Edition compared to Neo4j Government Edition can now be compared because of the high costs of FISMA. (This is one focus we address during the sales cycle - when a lead agency is considering the community edition, ignoring all the enterprise benefits they receive.)" Suhy Decl., Ex. 16<br><br>Adron Decl., Ex. 18<br><br>UNDISPUTED that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement.<br><br>--------<br>UNDISPUTED that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement.  In return for Neo4j USA owning the software and benefiting from the business plan, an "exit agreement" was in place to ensure a return on investment would be recognized by PureThink that addressed re-assignment, retirement, or termination.  Suhy Decl., ¶ 10 |

31

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 67:</u> Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | **DISPUTED**<br><br>The government edition was created to address more than just sole source justification.  It was created to address requirements that the US Government needed and which Neo4j Enterprise did not have.   The ability to sole source was one important aspect,  but not the only reason for creating the government edition.  See Fact 66 above. |
| | <u>Fact 68:</u> The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | **DISPUTED**<br>The agreement between PureThink and Neo4j USA was specifically focused on exclusivity around the Neo4j Government Edition.   The agreement itself protected PureThink's investment into the Government Edition and ensured it could see a return on the investment.  The agreement also allowed for sole source justification, but that was not its sole purpose.<br><br>See Fact 66. |
| | <u>Fact 69:</u> Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***.  Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights). | **UNDISPUTED** that Neo4j USA owned the intellectual property making up the Gov't Edition.  Under the Neo4j Government Exclusivity Agreement, PureThink built the Government Edition for Neo4j as part of the agreement.<br><br>**DISPUTED** that Neo4j USA could terminate PureThink as the exclusive reseller at any time and for any reason.<br><br>PureThink and Neo4j Inc agreed that until the exit agreement would be written down, both PureThink and Neo4j USA had to both fully agree on any changes to the Government Edition and the agreement which included revoking, retirement, re-assignment, or termination of any kind.  This was done to protect the investment PureThink was making into the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Government Edition Exclusivity agreement.<br><br>See Fact 66.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl Ex. 13, green highlights |
| | <u>Fact 70</u>:  Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id*., ¶ 9 and Ex. 7 (green highlights). | **UNDISPUTED** that Suhy sent proposed language for an internal version of the agreement, which  stated that the agreement could be canceled at any time for any reason. However, this language was dropped and was not executed. See Fact 66<br><br>**DISPUTED** that there were prior representations relating to being able to cancel the agreement at any time.  The exhibits referenced by plaintiff were the first documents related to the planning of the government edition.  Mr. Suhy proposed this language, but that was dropped after speaking to Mr. Tim Brown, who pointed out that having that in there without a corresponding exit agreement would not make sense.<br><br>"I am sending it to Tim Brown who is our Govt procurement expert to see if the version we send to them is suitable." Ratinoff Decl., ¶ 9 and Ex. 7<br><br>After a discuss with Neo4j Inc, the wording to cancel the exclusivity agreement at any time for any reason was never signed or executed. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The only exclusivity agreement signed and executed had no mention of being able to cancel.   Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl., Ex. 20<br><br>Until the exit agreement was written down, Neo4j and PureThink agreed that any changes to the agreement would require both parties to approve until the exit agreement was written down.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl.,  Ex. 13 |
| | <u>Fact 71</u>: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight) | **DISPUTED**<br>An internal version of the sole source letter was never executed or agreed upon.<br><br>Ratinoff Decl., ¶ 11 and Ex. 9 simply shows 2 documents sent to Mr. Suhy for review but not executed on behalf of PureThink.<br><br>Mr. Suhy did not agree or sign the document stating that exclusivity agreement could be canceled.<br><br>The only exclusivity agreement signed and executed had no mention of being able to cancel.   Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl.,  Ex. 20<br><br>See fact 66, 70. |

34

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 72:** The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements." *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id.*, ¶ 11 and Ex. 9 at p. 3. | **DISPUTED** <br> The document was not executed by Mr. Suhy or PureThink. <br><br> See fact 71. |
| | **Fact 73:** Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.*, ¶ 15 and Ex. 13). | **DISPUTED** The executed agreements, both signed on April 11th, 2015 then on June 23rd, 2016 (Suhy Decl., Ex. 20 ) do not say anything about being able to cancel the exclusivity agreement. <br><br> Ratinoff Decl., ¶ 15 and Ex. 13 simply shows Erik Nolten sending unsigned documents to Charles Fischer on July 31st, 2015. |
| | **Fact 74:** After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason. Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights). | **DISPUTED** <br> Nowhere in the email referenced in Ratinoff Decl., ¶ 17 and Ex. 15 does it say anything about Neo4j USA having the right to cancel PureThink's status as exclusive reseller any time or any reason.  It in fact highlights that the "unanimous agreement" was in place. Mr. Suhy told Mr. Broad – that Neo4j could request to revoke and assign to another company.   The agreement was specifically designed to ensure both parties had to agree. <br><br> "**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts. <br><br> **UNDISPUTED** that Neo4j USA owned the Government Edition. <br><br> See fact 66. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 2. PureThink's performance or excuse for nonperformance; | **Fact 75:** In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition." Ratinoff Decl., ¶ 21 and Ex. 19. | **DISPUTED**: The Government Edition was discontinued, not terminated on June 19th, 2015.<br><br>Ratinoff Decl., ¶ 21 and Ex. 19 "Neo4j is hereby providing notice that Neo4j is **discontinuing Neo4j Government Edition**.."<br><br>**UNDISPUTED** that Neo4j USA sent an email stating that PureThink was no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition. |
| | **Fact 76:** Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website. Ratinoff Decl., ¶¶ 22 and Ex. 20. | **DISPUTED**<br>The Government Edition was discontinued, not "terminated". See Fact 75.<br><br>Mr. Suhy's email referenced in Ratinoff Decl., ¶¶ 22 and Ex. 20. Simply states: "We are removing references from the website. It hurts you guys as well but it does no good leaving it up as of now. There is no acknowledgement or acceptance of any of Neo4j's actions as PureThink did not agree to this as was required in the Neo4j Government Exclusivity agreement.<br><br>**UNDISPUTED** that Suhy removed the references on the website. |
| | **Fact 77:** After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by offering "Government Packages for Neo4j." Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | **DISPUTED** that Neo4j USA terminated the service provider agreement (SPA).<br><br>The Government Packages for Neo4j were not the same packages that PureThink offered. |
| | **Fact 78:** iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition. Ratinoff Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24. The only difference was it included Neo4j® EE for free under the AGPL. *Id.* | **DISPUTED** – Though originally in the marketing material, the Government Package for Neo4j did not ever bring anything over from PureThink or the Government Edition. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Though this was originally the plan, it was never executed. The Government Packages for Neo4j were never sold.<br><br>See Suhy Decl., ¶ 11 |
| | Fact 79:  On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | **DISPUTED** the emails referenced in Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24.  Only show what was planned.  The plan was scrapped however and no packages were ever sold. |
| | Fact 80:  Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | **UNDISPUTED** – The same "principle" behind PureThink and the Gov't Edition was John Mark Suhy. |
| | Fact 81:  Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | **DISPUTED**:  iGov did not need to evade any restrictions, as it was not part of the "partner agreement" also known as "service provider agreement (SPA)". There are no terms in the SPA / partner agreement which forbid Mr. Suhy from creating a new company that would not be restricted by the SPA.<br><br> Note: Plaintiff's using the term. "partner agreement" here, but in Fact #77 above, they use the term "SPA". |
| | Fact 82:  iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.,* ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | DISPUTED:  iGov was not PureThink's successor-in-interest.<br>iGov was created from scratch and no assets, or IP was transferred from PureThink.<br><br>Mr. Suhy was the only member of both companies at the time. |
| | Fact 83:  Defendants continued to actively marketed "Government Package for Neo4j" until they released ONgDB.  Dkt No. 118 at 4:24- | **DISPUTED**<br>Defendants did not release ONgDB.  The Graph Foundation is the owner of ONgDB and responsible for its development |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24. | and release.<br><br>Though the graph foundation was once part of the case, it has since settled with plaintiff and is no longer part of the case.<br><br>Mr. Suhy is only one of several volunteer committers and has no control or official position with the Graph Foundation. |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | Fact 84: Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74. | **DISPUTED.**<br>Neo4j USA had to get PureThink's agreement to make any changes which would have included cancellation, retirement, discontinuation, or any other activities that could risk the investment and expected return on the investment PureThink had.<br><br>See Fact 66. |
| 4. There are no resulting damages to PureThink. | Fact 85: PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30. | DISPUTED<br>iGov is not the successor in interest to PureThink.<br><br>IRS did not award anything to iGov.<br><br>eGovernment Solutions paid Mr. Suhy a salary, the revenue from IRS was not passed through to iGov.<br><br>See Suhy Decl., ¶ 7<br>See fact 28 |
| | Fact 86: PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  Ratinoff Decl., Ex. 2 at 173:15-177:17. | **DISPUTED**<br>PureThink told Neo4j that they would be working full time on the Government Edition.   Full time means at or over 40 hours a week. See Adron Decl., Ex. 17 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 87:** PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition.  Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.*, ¶¶ 68-69 and Exs. 66-67. | DISPUTED – PureThink is a single person company filing as an s-corporation for tax purposes.  All the money remaining was invested into building the Government Edition by paying Mr. Suhy for his focus.   The references in Exs 66-77 do not reflect the expenses which came in the form of paying Mr. Suhy to focus full time on the Government Edition.<br><br>**"The partner fees we receive from non-partner government sales help support these initiatives - they are not looked at as 'commissions'. For example - as government adoption grows and many more sales come in - we understand if the fees must be cut to help drive your growth - and since the <u>fees only go towards 'funding' our execution of the initiatives</u>. They are not part of our future business modeling outside of operating costs. "** Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 1 under Important Concepts.<br><br>PureThink's re-invested its money and time into building out the government edition.<br>**"Unlike other partners, we plan on re-investing revenue from the partner fees made from sales to help drive the expansion and adoption of Neo4j in the US Government. This is a key differentiator between us and other partners."**  See Suhy Decl., Ex. 19 |
| | **Fact 88:** PureThink did not spend any money to develop the Gov't Edition.  Ratinoff Decl., Ex. 2 at 170:10-171:13. | **DISPUTED**<br>PureThink reinvested the revenue from the partner fees into developing the government edition and performing the tasks required to uphold PureThink's side of the agreement.  The money paid Mr. Suhy to focus full time on the Government Edition.<br><br>See fact 87. |
| | **Fact 89:** Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. at 186:14-24; *id.*, ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework | **DISPUTED**<br>Suhy did not use PureThink's work product from the Government Edition for iGov's "Government Packages for |

| <u>Claim or Defense</u> | <u>Moving Party's Undisputed Facts/Supporting Evidence</u> | <u>Opposing Parties' Response/Supporting Evidence</u> |
|---|---|---|
|  | and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | Neo4j".   The statements made were incorrect and iGov never used any work product from the Government Edition, nor did iGov ever sell any of these packages.<br><br>See fact 78<br>See Suhy Decl., ¶ 11 |

40

**DEFENDANTS UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' did not violate the DMCA [17 U.S.C. § 1202(b)(1)]; [17 U.S.C. § 202(b)(3)]** | | |
| | Fact 90: Neo4J does not license the commercial product under the AGPL. Beene Dec. Ex 26 | |
| | Fact 91: The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | |
| | Fact 92: The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | |
| | Fact 93: the Amended and Restated License Agreement required NEO4 J USA to comply with all third party software licenses including licenses approved by the Open Source Initiative such as the AGPL. Beene Dec. Ex 28, Section 2.1.3. | |
| | Fact 94: Neo4J does not own all the code to Neo4J software. Beene Dec. Ex 27. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Beene Dec., Ex. 33, Kuhn Expert Report ¶¶99-107. Suhy Dec. Exs. 6, 21. | |
| | Fact 95: Neo4J told the IRS they could only use the AGPL version if they made the project open in violation of the terms of the AGPL. Suhy Dec. Exs. 22, 23 | |
| | Fact 96: The Fair Trade License document is a misrepresentation of the terms of the AGPL. Suhy Dec. Exs. 22, 23. Under the AGPL, anyone is licensed to use the software. The obligation to provide modified source code is only on conveyance. AGPL sections 2, 5 and 6. Suhy Dec., Ex 6. | |
| | Fact 97: There is no obligation under the AGPL to make use of Neo4J software an open project. AGPL, Suhy Dec., Ex 6. | |
| | Fact 98: The AGPL trademark is owned by FSF. AGPL, Suhy Dec., Ex 6. | |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 99: The license grant to use AGPL license restricts changes:  AGPL "Everyone is permitted to copy and distribute verbatim copies of this license Document, but changing is not allowed." Suhy Dec., Ex 6. | |
| | Fact 100: Neo4J Sweden violated the AGPL by changing the AGPL adding the commons clause. Suhy Dec., Ex 6. | |
| | Fact 101: Neo4J Sweden inclusion of the commons clause violated FSF' AGPL license terms. Suhy Dec., Ex 6. | |
| | Fact 102: Neo4J USA failed to provide verbatim copies of the AGPL license with its commercial license as required under the AGPL section 4.  Suhy Dec. Exs. 6, 24; Beene Ex. 26 | |
| **Plaintiffs Acted With Unclean Hands** | See Facts 90-102 | |
| | Fact 103: No communication shows Neo4j, Inc. advised the PTO they did not own the NEO4J Trademark or change the date of first use. Suhy Dec., ¶15 | |
| **Neo4j USA Breached the Exclusivity Agreement** | | |
| | Fact 104: Neo4j consented to an Exclusivity Agreement with PureTink LLC. Suhy Dec., Ex. 20 | |
| | Fact 105: The Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3 | |
| | Fact 106: The Exclusivity Agreement was subject to an exit clause. Suhy Dec. ¶10, Ex. 20 | |
| | Fact 107: iGov is not a successor in interest to PureThink. The work scope for PureThink and iGov were substantially different. Beene Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. iGove did not use any assets of PureThink. Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. | |
| | Fact 108: Neo4j USA prevented PureThink's performance by prohibiting it from engaging with government agencies. Dkt. No. 177, Ex. D | |
| | Fact 109: Mr. Suhy worked full time under the Exclusivity Agreement. Beene Decl., Ex. 17 | |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 110: Plaintiffs have made substantial government sales. Beene Dec., Ex. 29 | |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted by Defendants.

Dated:  June 1, 2023                                 By:  /s/ Adron G. Beene
                                                                    Adron G. Beene, Attorney for Defendants