John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Arthur E. Rothrock, Bar No. 312704
arothrock@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO.  5:18-cv-07182-EJD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS' BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE**<br><br>Date:      July 27, 2023<br>Time:      9:00 a.m.<br>Dept.:     Courtroom 4, 5th Floor<br>Judge:     Hon. Edward J. Davila |

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    OBJECTION TO DEFENDANTS' USE OF THE KUHN REPORT .............................. 1

III.   OBJECTION TO DEFENDANTS' RESPONSIVE SEPARATE STATEMENT ............ 2

IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS
       ON THEIR DMCA CLAIM ...................................................................... 2

    A.   The Law of the Case Bars Defendants From Rearguing that the Neo4j
            Sweden Software License Permitted Them to Remove the Commons
            Clause ............................................................................................... 2

    B.   It is Undisputed that Suhy Impermissibly Removed Neo4j Sweden's CMI .......... 3

    C.   Defendants' Interpretation of AGPL Remains Untenable ..................................... 5

    D.   Defendants Cannot use the FSF's Alleged Copyright in the AGPL to
            Excuse the Improper Removal of Neo4j Sweden's CMI ..................................... 6

    E.   It is Undisputed that Defendants Knowingly Distributed Neo4j Sweden's
            Copyrighted Works with its CMI Removed and Knew that this Would
            Result in Copyright Infringement ..................................................................... 6

V.     DEFENDANTS' UNCLEAN HANDS DEFENSE FAILS AS A MATTER OF
       LAW ..................................................................................................... 8

VI.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
       NEO4J USA ON PURETHINK'S BREACH OF EXCLUSIVITY CONTRACT
       CLAIM ................................................................................................. 10

    A.   Defendants' Opposition Confirms the Lack of Mutual Assent ........................... 10

    B.   Defendants Cannot Invent an Oral Agreement to Prevent Summary
            Judgment .................................................................................................... 13

    C.   Defendants Fail to Establish a Breach of the Alleged Exclusivity
            Agreement .................................................................................................. 14

    D.   PureThink Fails to Provide Competent Evidence of Its Alleged Damages .......... 14

VII.   CONCLUSION ..................................................................................... 15

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4890-7686-1031.5
- i -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                        5:18-CV-07182-EJD

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aquino v. Cnty. of Monterey Sheriff's Dep't*,
No. 5:14-CV-03387-EJD, 2018 WL 3845718 (N.D. Cal. Aug. 12, 2018) .................................3

*Banner Entm't, Inc. v. Sup. Court*,
62 Cal. App. 4th 348 (1998) .................................................................................................11

*Bullard v. Wastequip Mfg. Co. LLC*,
2015 WL 12766467 (C.D. Cal. Apr. 14, 2015) ...................................................................13

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199 (2006) ...............................................................................................12

*Codding v. Pearson Educ., Inc.*,
2019 WL 5864579 (N.D. Cal. Nov. 8, 2019), *aff'd*, 842 F. App'x 70 (9th Cir. 2021)............15

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)...............................................................................................8

*Davidson v. ConocoPhillips Co.*,
2009 WL 2136535 (N.D. Cal. July 10, 2009) ......................................................................14

*F.T.C. v. Publ'g Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997)...............................................................................................13

*GoE3 LLC v. Eaton Corp.*,
798 F. App'x 998 (9th Cir. 2020) .........................................................................................13

*Hansen v. United States*,
7 F.3d 137 (9th Cir. 1993).....................................................................................................13

*Herrington v. County of Sonoma*,
12 F.3d 901 (9th Cir. 1993).....................................................................................................3

*Hohs v. Allstate Ins. Co.*,
2010 WL 11706760 (N.D. Cal. Feb. 10, 2010) ...................................................................13

*ICONICS, Inc. v. Massaro*,
192 F.Supp.3d 254 (D. Mass. 2016) .......................................................................................4

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008)...............................................................................................8

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.*,
2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) .....................................................................14

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4890-7686-1031.5

- ii -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Kennedy v. Allied Mut. Ins. Co.*,
4   952 F.2d 262 (9th Cir. 1991).................................................................................3

5

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988)........................................................................14, 15

6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
7   545 U.S. 913 (2005)..........................................................................................8

8

*Neo4j, Inc. v. Graph Found., Inc.*,
9   2020 WL 6700480 (N.D. Cal. Nov. 13, 2020)................................................4, 6, 9

10

*Netbula, LLC v. Bindview Dev. Corp.*,
516 F. Supp. 2d 1137 (N.D. Cal. 2007) ...............................................................11

11

*Performance Plastering v. Richmond Am. Homes of California, Inc.*,
12   153 Cal.App. 4th 659 (2007) ..............................................................................12

13

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006)................................................................................13

14

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
15   894 F.3d 1015 (9th Cir. 2018)..............................................................................9

16

*RHUB Commc'ns, Inc. v. Karon, No. 16-CV-06669-BLF*,
17   2019 WL 8267743 (N.D. Cal. Nov. 22, 2019) ......................................................12

18

*S. Cal. Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014).................................................................................8

19

*Scott v. Harris*,
20   550 U.S. 372 (2007)...........................................................................................12

21

*Sneller v. City of Bainbridge Island*,
22   606 F.3d 636 (9th Cir. 2010).................................................................................10

23

*Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*,
2008 WL 5221071 (N.D. Cal. Dec. 12, 2008) ......................................................14

24

*Tveter v. AB Turn–O–Matic*,
25   633 F.2d 831 (9th Cir. 1980)................................................................................9

26

*Warner Constr. Corp. v. City of Los Angeles*,
2 Cal.3d 285 (1970) ...........................................................................................12

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) .......................................................................................13

*Wolsey, Ltd. v. Foodmaker, Inc.*,
   144 F.3d 1205 (9th Cir. 1998) .................................................................................12, 13

**STATUTES**

Cal. Civ. Code § 1636 ..................................................................................................11

Cal. Civ. Code § 1639 ..................................................................................................11

Cal. Civ. Proc. Code § 1856(f)-(g) ..............................................................................11

**OTHER AUTHORITIES**

17 U.S.C. § 1202(b) ...................................................................................................4, 6

17 U.S.C. § 1202(b)(3) ..................................................................................................7

Fed. Rule Civ. Proc. 11 ................................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4890-7686-1031.5                                    - iv -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

## I.        INTRODUCTION

Defendants' Opposition reads more as rambling recap of Phase 1 than a meaningful effort to address Plaintiffs' legal arguments and identify disputed issues of material fact.  All of their arguments seeking to justify Suhy's removal of Neo4j Sweden's CMI are identical to those already rejected by this Court and the Ninth Circuit.  Defendants do not refute the undisputed evidence establishing they intentionally removed Neo4j Sweden's CMI when creating ONgDB.  There is also no dispute that Defendants helped distribute that infringing software and encouraged end-users to infringe Neo4j's copyright by violating the now-removed commercial restrictions. Consequently, Plaintiffs are entitled to summary judgment establishing Defendants' violation of their DMCA claim.

Likewise, in apparent recognition that none of the allegations supporting their unclean hands defense bears the necessary relationship to Neo4j USA's Lanham Act claims, Defendants brazenly re-assert the same fraud and trademark cancelation theories that the Court previously dismissed with prejudice and expressly warned could not be raised to support ***any*** affirmative defense.  Defendants even attempt to reargue that Neo4j USA does not really own the Neo4j Mark despite this Court's prior determination that it was the owner for purposes of registration in the United States.  Without any other allegations showing that Neo4j USA's trademark usage amounted to inequitable conduct related thereto, Defendants' unclean hands defense fails as a matter of law.

Finally, Defendants fail to offer any competent evidence establishing that there was any mutual assent to an alleged exclusivity agreement relating to the Gov't Edition.  If anything, their Opposition confirms that the parties had divergent views regarding whether the April 11, 2015 "To whom it may concern" letter was an actual binding agreement separate and apart from the SPA.  To the extent that any such agreement ever existed, the undisputed evidence establishes that there was no meeting of the minds with respect to Neo4j USA's cancelation rights.  Accordingly, the Court should grant summary judgment in favor of Neo4j USA on PureThink's breach of contract claim.

## II.       OBJECTION TO DEFENDANTS' USE OF THE KUHN REPORT

Plaintiffs object to Defendants' reliance on the December 22, 2022 Expert Report of Bradley M. Kuhn ("the Kuhn Report"), which is attached as Exhibit 33 to the Declaration of Adron G. Beene, Dkt. No. 188-2 ("Beene Decl.").  Defendants' Opposition relies on the Kuhn Report

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4890-7686-1031.5                                          - 1 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

1    to support the same arguments they made in opposition to Plaintiffs' Motion to Strike that report and

2    exclude Mr. Kuhn's testimony.  *Compare* Dkt. No. 186 at 6:15-8:10 *and* Dkt. No. 188 ("Opp.") at

3    11:18-13:19 (DMCA); *compare* Dkt. No. 186 at 8:11-9:14 *and* Opp. at 14:12-15:16 (DMCA);

4    *compare* Dkt. No. 186 at 13:6-21 *and* Opp. at 16:12-25 (DMCA); *compare* Dkt. No. 186 at 9:17-

5    10:25 *and* Opp. at 17:9-19:6 (Unclean Hands); *compare* Dkt. No. 186 at 13:16-14:11 *and* Opp. at

6    19:20-20:23 (Unclean Hands).  Accordingly, for the reasons detailed in Plaintiffs' pending Motion

7    to Strike (Dkt. Nos. 181, 189), the Court should exclude the Kuhn Report pursuant to *Daubert*, and

8    disregard Defendants' arguments based thereon in ruling on the present summary judgment motion.

9    ### III.    OBJECTION TO DEFENDANTS' RESPONSIVE SEPARATE STATEMENT

10    Plaintiffs object to Defendants' 43-page Response to Plaintiffs' Separate Statement of

11    Undisputed Material Facts.  Section V.B.2. of the Court's Standing Order provides that where an

12    opposing party contends that a fact is in dispute, it must cite to evidence in the record establishing

13    the dispute. However, Defendants' responsive statement largely consists of attorney argument that

14    either does not refute the evidence cited by Plaintiffs, or is unsupported by evidence that would be

15    admissible at trial; and/or seeks to dispute facts that this Court previously found to be undisputed in

16    Dkt. No. 118.  Section V.B.2. further provides that a responsive statement add no more than five (5)

17    pages to the moving parties' statement.  Since Plaintiffs' original statement was only 15 pages,

18    Defendants' additional 23 pages over this limit amounts to an improper attempt to evade Civil L.R.

19    7-3(a)'s 25-page limit on opposition briefs.  The Court should thus strike Defendants' response.

20    ### IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFFS ON THEIR DMCA CLAIM

21
22    #### A.    The Law of the Case Bars Defendants From Rearguing that the Neo4j Sweden Software License Permitted Them to Remove the Commons Clause

23    Defendants erroneously argue that the law of the case doctrine does not bar them from re-

24    litigating whether the "further restrictions" provision in Sections 7 and 10 of the Neo4j Sweden

25    License permitted them to remove the Commons Clause because this Court only granted partial

26    summary judgment.  Defendants made the same arguments in opposition to Plaintiffs' pending

27    Motion to Strike.  Compare Dkt. No. 186 at 4:12-6:8 and Dkt. No. 188 at 10:6-11:17.  In the interest

28    of judicial economy, Plaintiffs incorporate by reference, the portions of that motion addressing these

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                    - 2 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

1   same untenable arguments.  See Dkt. No. 181 at 7:15-13:8, 20:1-21:6; Dkt No. 189 at 2:9-6:27.

2         Defendants then reassert the same arguments and untenable interpretation of these provisions

3   they previously made in opposition to Plaintiffs' Phase 1 motion for summary judgment.  *Compare*

4   Opp. at 15:17-16:6 *and* Dkt. No. 100 at 28:15-29:27.  However, the parties previously agreed that

5   their respective interpretations of the Neo4j Sweden Software License should be decided on summary

6   judgment.  *See* Dkt. No. 118 at 24:7-15.  The Court then determined that the license did not permit

7   downstream licensees, such as Defendants, to remove the Commons Clause and redistribute Neo4j®

8   EE under the AGPL license.  Dkt. No. 118 at 24:16-25:19.  Since Defendants filed an interlocutory

9   appeal, the resulting affirmation of that ruling is now the law of the case.  *See Herrington v. County*

10  *of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("[t]he law of the case doctrine states that the decision

11  of an appellate court on a legal issue must be followed in all subsequent proceedings in the same

12  case") (internal quotations omitted); *Aquino v. Cnty. of Monterey Sheriff's Dep't*, No. 5:14-CV-

13  03387-EJD, 2018 WL 3845718, at *1 (N.D. Cal. Aug. 12, 2018) (citing same in recognizing decision

14  on an interlocutory appeal of the summary judgment order "was now law of the case").  To be sure,

15  the Ninth Circuit **affirmed that its opinion was precedential for the purpose of the law of the case.**

16  Dkt. No. 140 at 3.  Consequently, Defendants cannot re-litigate this issue for a third time.

17        **B.    It is Undisputed that Suhy Impermissibly Removed Neo4j Sweden's CMI**

18        Defendants do not dispute that Suhy removed Neo4j Sweden's CMI without authorization.[1]

---

19

20  [1] Based on Exhibits 1-4 to Suhy's declaration, Defendants now claim that Suhy did not remove the
    Commons Clause when he created ONgDB 3.4 from Neo4j® EE v3.4.  *See* UDF Nos. 12, 14, 42,

21  45.  The Court should disregard these documents because (a) Defendants did not produce them

22  during discovery; and (b) Suhy generated them for the sole purpose of opposing this motion.  These

23  newly created documents are also unreliable because the permanent injunction entered against GFI

24  required it to remove all versions of ONgDB that contained DMCA violations in February 2022.

25  Moreover, Defendants cannot create a disputed issue of fact by submitting a sham declaration and

26  manufacturing evidence that contradicts Suhy's prior deposition testimony.  *See Kennedy v. Allied*
    *Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991).  In this regard, Suhy testified that when he created

27  ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in

28  LICENSE.txt files with "verbatim" copies of the AGPL to remove the Commons Clause.  Dkt. No.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4890-7686-1031.5                                    - 3 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

1    Instead, they argue that the removal of the Commons Clause did not violate §1202(b) because "Neo4J

2    Sweden does not own the CMI as it claims." Opp. at 12:7-15.  This is absurd given Defendants do

3    not dispute that prior to making Neo4j® EE a commercial-only product, Neo4j Sweden released

4    certain source code files for Neo4j® EE governed by LICENSE.txt files, consisting of the Neo4j

5    Sweden Software License (AGPL + Commons) that contained following CMI: (a) the Commons

6    Clause, which they admit "prohibited the non-paying public from engaging in commercial resale and

7    support services;" (b) a NOTICE provision identifying ***Neo4j Sweden*** as the copyright holder and

8    the licensor of Neo4j® EE; and (c) the title, terms and conditions for use of the work, and other

9    identifying information and how to obtain a commercial license for Neo4j® EE.  *See* Exhibit A hereto

10   (hereafter referred to as "UDF") Nos. 4-9, 12-15.  More importantly, the Court already held that

11   when Suhy replaced the LICENSE.txt files with the form AGPL, he removed ***all*** of the foregoing

12   CMI in those files.  *See* Dkt. No. 118 at 6:2-7:6; *see also* Dkt. No. 98-2, ¶¶ 11, 27, 29-30.

13          Defendants further suggest they did not violate the DMCA because the NOTICE.txt files in

14   ONgDB still identified Neo4j Sweden as the copyright holder and referenced the Commons Clause.

15   *See* UDF Nos. 6, 14-15; Dkt. No. 188-1 ("Suhy Decl.") at ¶¶ 22-24 and Exs. 7-9.  This does not

16   insulate Defendants from liability because §1202(b) prohibits ***any removal <u>or</u> <u>alteration</u>*** of the title

17   of the work, terms and conditions for use of the copyrighted work and other conspicuous displays

18   identifying the owner of these copyrighted works. *See ICONICS, Inc. v. Massaro*, 192 F.Supp.3d 254

19   (D. Mass. 2016) (copyright headers of individual source code files constituted CMI because they

20   conveyed information about copyright owner, and certain terms of use for the file, and were conveyed

21   along with source code files precisely to keep identifying information together with the code).

22   Indeed, this Court ***rejected*** a similar argument made by GFI.  *See Neo4j, Inc. v. Graph Found., Inc.*,

23   2020 WL 6700480, at *5 (N.D. Cal. Nov. 13, 2020) (holding that "moving the CMI into separate

24   NOTICE.txt files constitutes altering the CMI, and conveying the Neo4j Sweden Software License

25   without the Commons Clause constitutes removing CMI").

26

27   98-1, Ex. 3 at 28:25-29:11, 172:4-23; Dkt. No. 183-1, Ex. 1 at 199:22-201:16.  The Court also a

28   found the same. *See* Dkt. No. 118 at 5:21-6:11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11).

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4890-7686-1031.5                                          - 4 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

Defendants also fail to reconcile that the referenced source code headers and NOTICE.txt files do not contain the Commons Clause. Rather, they merely direct a user to the LICENSE.txt files that originally contained those terms and conditions. *See* Suhy Decl., ¶ 18 and Ex. 3 (NOTICE.txt files for ONgDB v3.4); ¶ 19 and Ex. 4 (source code headers for ONgDB v3.4); *id.,* ¶ 22 and Ex. 7 (NOTICE.txt files for ONgDB v3.5); ¶ 23 and Ex. 8 (source code headers for ONgDB v3.5). After Suhy replaced the Neo4j Sweden Software License with the generic AGPL, the Commons Clause and its terms and conditions ceased to exist in those LICENSE.txt files, thereby rendered the cross-referencing meaningless. Dkt. No. 98-2, ¶ 11 and Ex. 3 (LICENSE.txt file for Neo4j v3.4); *id.,* ¶ 27 (confirming replacement of same with AGPL in ONgDB v3.4); Dkt. No. 98-1, ¶ 41 and Ex. 39 (commit showing replacement of LICENSE.text files with AGPL for ONgDB v3.5); Dkt. No. 98-2, ¶¶ 29-30 (referencing same); *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10 (confirming same).

Finally, none of the other CMI that Suhy removed from the LICENSE.txt files amounted to "further restrictions" even under his erroneous reading of the Neo4j Sweden Software License. Accordingly, it remains undisputed that Suhy intentionally removed Neo4j Sweden's CMI without authorization by replacing the Neo4j Sweden Software License with "verbatim" copies of the AGPL in Neo4j® EE v3.4 and Neo4j® EE v3.5. *See* Dkt. No. 118 at 6:7-11, 6:21-26; *see also* UDF No. 14 ("The only files Mr. Suhy touched were the AGPL LICENSE.txt files ...."); UDF No. 15 ("UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE"); UDF No. 16 ("**UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons Clause"); UDF No. 19 ("Suhy corrected that violation with the removal of the commons clause"); UDF No. 44 ("Mr. Suhy removed the commons clause from only the AGPL License files...").

## C.    Defendants' Interpretation of AGPL Remains Untenable

Defendants argue that the "you" as used throughout the Neo4j Sweden Software License means both a licensee of the form AGPL ***and*** the licensee of the computer program subject to an independent copyright when it is licensed under AGPL. Opp. at 5:22-6:10, 12:7-15. They further argue that "This License" as used in the Neo4j Sweden Software License means the form AGPL. *Id.* at 6:5-10. This somehow implies that "the AGPL gives permission for the licensee to remove additional restrictions" and "[t]he right to remove additional terms is triggered when the Program

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4890-7686-1031.5                                          - 5 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

1    owner uses the GPL/AGPL." *Id.* at 12:7-15.  Based on that false assumption, Defendants then argue

2    that Suhy could remove the Commons Clause "because Neo4j Sweden's "addition of the Commons

3    Clause is not a verbatim copy of the AGPL…." *Id.* at 12:16-13:3.  Defendants are wrong again.  The

4    Court considered rejected the same arguments during Phase 1.  *See* Dkt. No. 118 at 24:16-25:19.  In

5    particular, it held that Section 0 defines "you" (*i.e.* Defendants) as the downstream licensee of "the

6    Program" (*i.e.* Neo4j® EE") and not the licensee of any copyright the Free Software Foundation

7    ("FSF") may have in the form AGPL.  *Id.*

8           **D.     Defendants Cannot use the FSF's Alleged Copyright in the AGPL to Excuse
9                    the Improper Removal of Neo4j Sweden's CMI**

10          Defendants insist that they were justified in removing the Commons Clause because the FSF

11   owns the copyright to the AGPL. Opp. at 2:18-3:10, 13:17-15:10.  Defendants similarly argue that

12   because "Neo4J Sweden does not own the copyright to the AGPL, [it] cannot meet the requirements

13   for a DCMA claim (ownership of the copyright)."  Opp. at 13:8-9.  Defendants even claim that Suhy

14   was justified in removing the Commons Clause to prevent Neo4j Sweden's infringement of the FSF's

15   copyright. *Id.* at 13:17-19.  FSF's copyright in the AGPL is immaterial to Plaintiffs' DMCA claim.

16          Defendants asserted the same argument during Phase 1.  Dkt. No. 100 at 5:23-6:3, 29:14-23

17   and Dkt. No. 100, Ex. A at 42-43 (UDF No. 113).  This Court **rejected** "'the notion that the terms

18   drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the

19   rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own

20   copyright license.'"  Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc.*, 2020 WL 6700480, at *4

21   ("Defendants argue that Plaintiffs were not permitted to alter the form license agreement under the

22   terms of the [FSF's] copyright over the form AGPLv3. But whether Plaintiffs acted in accordance

23   with the copyright covering the AGPLv3 is not at issue before this Court, as Defendants are not

24   entitled to enforce the FSF's copyright.").  Thus, Defendants are not absolved from liability under

25   §1202(b) because Suhy thought he was preventing the infringement of the FSF's copyright.

26          **E.     It is Undisputed that Defendants Knowingly Distributed Neo4j Sweden's
27                   Copyrighted Works with its CMI Removed and Knew that this Would Result
                     in Copyright Infringement**

28          Plaintiffs' moving papers explain how Defendants distributed Neo4j® EE without the Neo4j

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

Sweden Software License re-branded as ONgDB in violation of §1202(b)(3).  *See* Dkt. No. 183 at 10:26-11:13.  Defendants do not deny that they did so via the iGov and Graphstack websites, which by itself is a DMCA violation.  *See* UDF Nos. 22-23.  Instead, Defendants argue they were not responsible for the downloads of ONgDB through GFI's website and GitHub repository because they did not control them. Opp. at 17:1-7.  This is a distinction without a difference because Defendants admit that they provided potential users with hyperlinks to download ONgDB with the DMCA violations from GFI's website and GitHub repository.  *See* UDF No. 20 ("UNDISPUTED that Mr. Suhy provided hyperlinks references for users of the website to view the source code and download distributions."); *see also* UDF Nos. 19, 21-22.

This amounts to distribution especially since Suhy was one who ***created*** infringing versions of ONgDB on GFI's GitHub repository where others were free to download the software.  *See* Dkt. No. 118 at 5:21-7:6, 24:7-25:19; *accord* Dkt. No. 98-1, Ex. 3 at 172:4-23, 200:9-16; *id.,* Exs. 24-26. It is also undisputed that Suhy was integral to the IRS' adoption and continuing use of ONgDB in the CKGE Platform.  *See* UDF No. 33-35 (Defendants do not cite to any contravening evidence).  To be sure, Suhy told potential customers that he assigned ONgDB to GFI and was responsible for managing the ONgDB distributions used by the IRS.  *See* Dkt. No. 98-1, Exs. 24, 26 (yellow highlights); *see also id.,* Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be").

Plaintiffs' moving papers detail how Defendants knew or had reason to know their removal of the Commons Clause would result in end-users infringing Neo4j Sweden's right to limit the use of Neo4j® EE to paid subscribers.  Dkt. No. 183 at 11:16-14:6.  Defendants do not substantively address these arguments, thus conceding they had the requisite knowledge and intent.

Last of all, Defendants admit that the Commons Clause "prohibited the non-paying public from engaging in commercial resale and support services." *See* UDF Nos. 4-5.  Defendants built their entire business around inducing others to use "free and open source" ONgDB and pay Defendants for support services that they clearly understood violated the now-removed Commons Clause.  *See* Dkt. No. 118 at 6:18-26 (Defendants' replacement of Neo4j Sweden Software License with the AGPL "removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5
- 7 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1  and removed the Commons Clause, effectively allowing Defendants to commercially use and support

2  ONgDB"); *see also* UDF No. 43.  This amounts to copyright infringement.  *See Jacobsen v. Katzer*,

3  535 F.3d 1373, 1382 (Fed. Cir. 2008) (the use and distribution of software in violation of an open

4  source license constitutes copyright infringement); *see also Metro-Goldwyn-Mayer Studios Inc. v.*

5  *Grokster, Ltd*., 545 U.S. 913, 930 (2005) ("[o]ne infringes contributorily by intentionally inducing

6  or encouraging direct infringement," which includes providing a service "with the object of

7  promoting its use to infringe copyright") *accord Columbia Pictures Indus., Inc. v. Fung,* 710 F.3d

8  1020, 1037-38 (9th Cir. 2013) (liability for copyright infringement on an inducement theory is where

9  the product or service was used to infringe the plaintiff's copyrights).  Accordingly, the Court should

10  grant summary judgment in favor of Plaintiffs on their DMCA claim.

11  ## V.    DEFENDANTS' UNCLEAN HANDS DEFENSE FAILS AS A MATTER OF LAW

12  Defendants previously represented to the Court *twice* that they are not asserting an unclean

13  hands defense to Neo4j Sweden's DMCA claim. *See* Dkt. No. 91 at 16:20-19:7; Dkt. No. 169 at

14  10:4-8.  Their opposition reconfirms that this defense is limited to Neo4j USA's trademark

15  infringement claims, and to succeed thereon, they "must show that plaintiff used the trademark to

16  deceive consumers."  Opp. at 17:9-19.  Defendants then attempt to equate ***Neo4j Sweden's*** alleged

17  misuse of the AGPL with respect to Neo4j® EE with ***Neo4j USA's*** use of the Neo4j Mark to sell that

18  software.  *Id.* at 17:20-20:23.  This does not save their unclean hands defense because Defendants

19  concede that Neo4j Sweden is the licensor of source code for Neo4j® EE under the Neo4j Sweden

20  Software License (Dkt. No. 118 at 2:16-18; UDF Nos. 13, 15 and 58), and these licenses "are

21  copyright licenses, not trademark licenses" (Dkt. No. 85 at 7:27-8:7; UDF No. 59).  Consequently,

22  Neo4j Sweden's copyright-based licensing practices do not bear the requisite "immediate and

23  necessary" relationship to Neo4j USA's trademark infringement claims as a matter of law.[2]  *See S.*

---

[2] Defendants also argue that Neo4j Sweden "does not own the complete code to [Neo4j® EE]" because it did not produce any contributor license agreements in response to Defendants' discovery requests. Dkt. No. 188 at 20:4-11. This is pure speculation since Neo4j Sweden objected to those requests as overbroad, and limited its response to Neo4j® EE v4.0.  *See* Beene Decl., Ex. 32 at RFP Nos. 4-5.  Thus, the only reasonable inference drawn from an alleged lack of CLAs is there were no

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                                          - 8 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                            5:18-CV-07182-EJD

1  *Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014); *Tveter v. AB Turn–O–Matic*, 633 F.2d

2  831, 839 (9th Cir. 1980).

3  Defendants further argue that Neo4j USA somehow engaged in unclean hands because

4  "Neo4j Sweden had other license options" instead of simply adding the Commons Clause to the

5  AGPLv3.  Opp. at 19:20-20:3, 20:12-23.  Defendants made the same argument in opposition to

6  Plaintiffs' first motion for summary judgment (Dkt. No. 100 at 30:9-16), which this Court rejected

7  (Dkt. No. 118 at 24:16-25:19).  More importantly, as conclusively determined by this Court, Neo4j

8  Sweden did not "violate" the AGPL by adding the Commons Clause to create the Neo4j Sweden

9  Software License.  *See* Dkt. No. 118 at 22:23-28:24, *aff'd* Dkt. No. 140; *see also Neo4j, Inc.*, 2020

10  WL 6700480, at *4.  Thus, even if Defendants could show an immediate and necessary relationship

11  with Neo4j USA's trademark usage and Neo4j Sweden's copyright licensing practices, which they

12  cannot, Defendants still cannot show any inequitable conduct related thereto. *See Pinkette Clothing,*

13  *Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) ("only a showing of wrongfulness,

14  willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish

15  sufficient culpability for invocation of the doctrine of unclean hands.").

16  Defendants also cite to Neo4j USA's 2012 "Fair Trade Licensing" article as a "false

17  interpretation" of the AGPL.  Opp. at 3:11-4:6, 21:8-13.  This relates to Neo4j Sweden's licensing

18  of Neo4j® EE, not Neo4j USA's alleged use of the Neo4j Mark in a way that deceived consumers.

19  Moreover, Neo4j USA's use of this article in conjunction with the parties' dispute over the IRS

20  contract occurred in April 2017.  *See* Suhy Decl., Ex. 22.  This predates Neo4j Sweden's first use of

21  the Neo4j Sweden Software License by more than a year.  *See* UDF No. 4.  It also predates

22  Defendants' infringement of the Neo4j® Mark, which only dates back to November 2017.  *See* Dkt.

23

24  third party contributors to the source code associated with the 28 LICENSE.txt files subject to the

25  DMCA claim.  More importantly, Defendants ***reconfirm*** that Neo4j® EE v3.4 and v3.5 contained

26  at least 182 source code files that were never released under either the GPL or AGPL, and were

     instead released for the first time under the Neo4j Sweden Software License making Neo4j Sweden

27  the sole copyright owner of those files.  *See* UDF Nos. 13, 15; *see also* Dkt. No. 118 at 6:18-21; Dkt.

28  No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶ 29.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4890-7686-1031.5
- 9 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1   No. 90 at ¶ 41; Dkt. No. 98-1, ¶¶ 16-20, 22 and Exs. 14-18, 20.  As noted in Plaintiffs' moving papers,

2   these alleged acts do not bear the requisite temporal relationship to Neo4j USA's Lanham Act claims,

3   and as a result, cannot support an unclean hands defense.  *See* Dkt. No. 183 at 19:7-24.

4          Finally, in recognition that their unclean hands defense bears no relationship to Neo4j USA's

5   trademark claims, Defendants argue that Neo4J USA's "misrepresentations of time of use, ownership

6   of trademark and failure to correct those misrepresentations is unclean hands under the PTO's

7   standards."  Opp. at 19:16-19; *see also id.* at 7:9-17.  Remarkably, Defendants **admit** these are the

8   same facts underpinning their twice-stricken cancellation/fraud on the PTO defense, and then

9   blatantly misrepresent that "[w]hile Defendants are presently foreclosed from invalidating the

10  trademark, the facts remain to support an unclean hands defense." *Id.* at 19:25, fn 4.

11         Defendants' reassertion of these same facts is in direct violation of the Court's prior warning

12  that "Defendants are not permitted to reassert ***any affirmative defense*** or counterclaim in this action

13  based on the cancellation or abandonment theories asserted in the stricken defenses."  Dkt. No. 110

14  at 5:16-6:4 (emphasis added).  This Court also held in granting summary judgment on Neo4j USA's

15  Lanham Act claims that Neo4j USA was the owner of the Neo4j Mark.  Dkt. No. 118 at 11:16-12:26,

16  13:18-18:1 *aff'd* Dkt. No. 140.  Since the Defendants did not heed this Court's clear admonition, it

17  should (a) grant summary judgment in favor of Plaintiffs on Defendants' unclean hands defense; and

18  (b) issue an Order to Show Cause why sanctions in the form of paying Plaintiffs' attorneys' fees

19  should not be levied against Defendants pursuant to FRCP 11.  *See Sneller v. City of Bainbridge*

20  *Island*, 606 F.3d 636, 638-39 (9th Cir. 2010).

21  **VI.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J**
        **USA ON PURETHINK'S BREACH OF EXCLUSIVITY CONTRACT CLAIM**
22
        **A.     Defendants' Opposition Confirms the Lack of Mutual Assent**
23

24         PureThink argues that the Neo4j USA "consented" to an April 11, 2015 letter, which purports

25  to be a separate agreement from the SPA.  Opp. at 21:20-25.  The only evidence they cite in support

26  is the letter using the word "agreement" and not mentioning the SPA, along with Suhy's testimony

27  confirming the same. *Id.* at 22:4-15.  Assuming this were true, the lack of any reference to the SPA

28  means that the parties did not contemplate altering their obligations or entering into an agreement

Hopkins & Carley
Attorneys At Law
San Jose ♦ Redwood City

4890-7686-1031.5                                      - 10 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                                5:18-CV-07182-EJD

1   separate from the SPA at the time they signed the April 11, 2015 letter.  *See* Cal. Civ. Code § 1636

2   ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed

3   at the time of contracting"); Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the

4   intention of the parties is to be ascertained from the writing alone, if possible.").

5   Further, "[m]utual assent is determined from the reasonable meaning of the words and acts

6   of the parties, and not from their unexpressed intentions or understandings."  *Netbula, LLC v.*

7   *Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007).  In this regard, extrinsic evidence

8   is admissible to determine whether contracting parties achieved mutual assent for purposes of

9   formation.  *See* Cal. Civ. Proc. Code § 1856(f)-(g); *accord Banner Entm't, Inc. v. Sup. Court,* 62 Cal.

10  App. 4th 348, 358 (1998) ("[e]vidence as to the parties' understanding and intent … is admissible to

11  ascertain when or whether a binding agreement was ever reached") (citing same).

12  Despite having the burden of proof to establish the existence of an enforceable contract,

13  PureThink fails to offer competent evidence establishing that ***both*** parties understood that the

14  April 11, 2015 letter was a separate agreement rather than simply a tool to seek sole-source

15  procurements.  *See* UDF Nos. 65-67.  Indeed, none of the emails cited by PureThink establish the

16  existence of an enforceable contract separate from the SPA.  *See* Suhy Decl., Ex. 16; Beene Decl.,

17  Exs. 13-15, 18.  Conversely, Suhy's indisputable written representations made immediately before

18  and after the April 11, 2015 letter confirm that there was no contract apart from the SPA.  *See, e.g.*,

19  Dkt. No. 98-1, Ex. 6 (yellow highlights); Dkt. No. 183-1, Exs. 6-8, 10-12, 14 (yellow highlights).

20  The undisputed evidence also shows that ***Suhy told*** Neo4j USA that the alleged "exclusivity

21  agreement" consisted of ***two letters***: "one that we give to agencies on your letterhead [], and 1

22  between us that says you can cancel at any time for any reason." Dkt. No. 183-1, Ex. 7 (green

23  highlights).  Suhy then sent proposed drafts of those letters in an April 10, 2015 email where the

24  internal version stated "[Neo4j USA] has the right to cancel this exclusivity agreement at any time

25  and for any reason." *Id.*, Ex. 8 (green highlights).  Suhy instructed Neo4j USA to "copy and paste"

26  that language in the internal version.  *Id.*  Consistent with Suhy's representations, Neo4j USA created

27  and signed both letters on April 11, 2015, with the internal letter providing that "Neo Technology

28  has the right to cancel this exclusivity agreement at any time and for any reason."  *Id.*, ¶ 11 and Ex.

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4890-7686-1031.5                                             - 11 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                              5:18-CV-07182-EJD

9 (green highlight); *see also id.,* Exs. 12-13.  Suhy confirmed receipt without objection and assured Neo4j USA that he would sign them.  *See* Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H.

PureThink now seeks to disavow the unilateral termination provision by claiming that Suhy never signed the internal letter.  *See* UDF No. 69-72.  However, the lack of a party's signature does not make a contract unenforceable.  *Performance Plastering v. Richmond Am. Homes of California, Inc*., 153 Cal.App. 4th 659, 668 (2007).  Nevertheless, if PureThink contends it refused to sign the internal letter because of that provision, then there was no mutual consent to a fully executed, enforceable contract.  *See Bustamante v. Intuit, Inc*., 141 Cal. App. 4th 199, 209, 215 (2006) (affirming summary judgment for defendant, holding that "the undisputed facts here show no meeting of the minds as to the essential structure and operation of the alleged joint venture, even if there was agreement on some of the terms"); *see also RHUB Commc'ns, Inc. v. Karon, No. 16-CV-06669-BLF,* 2019 WL 8267743, at *4 (N.D. Cal. Nov. 22, 2019) ("failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract") (internal citation omitted).

Lastly, the email Defendants rely on to argue that Neo4j USA did not have the unilateral right to terminate the Gov't Edition was sent by Suhy on June 20, 2017 in response to Neo4j USA's cancelation of Neo4j Gov't edition and a month after providing notice of PureThink's breach of the PSA. *See* Beene Decl., Ex. 13 ("I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court."); Dkt. No. 118 at 4:13-15 (citing Dkt. No. 98-1, Ex. 9).  This does not create a disputed issue of fact since Suhy sent it in anticipation of litigation and in direct contradiction to the representations he made to Neo4j USA prior to a dispute arising.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (an assertion that is "blatantly contradicted by the record, so that no reasonable jury could believe it" will not create a genuine issue of material fact at summary judgment); *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296–97 (1970) (refusing to admit "negotiations" after the date on which "the parties had reached a stage of clear disagreement on the crucial question"); *accord Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (recognizing that the principle of "practical construction" only applies to acts before any dispute has arisen) (citing same).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5
- 12 -
PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                    5:18-CV-07182-EJD

1

**B.      Defendants Cannot Invent an Oral Agreement to Prevent Summary Judgment**

2      Defendants attempt to invent from whole cloth a subsequent oral "exit agreement" (or oral

3   modification to the April 11, 2015 letters) that purportedly required the discontinuation of the Gov't

4   Edition to be "unanimous" and for Neo4j USA to compensate PureThink.  *See* UDF No. 65 (citing

5   Suhy Decl., ¶ 10).  Defendants admit that no such written instrument executed by the parties exists,

6   and instead rely upon a declaration describing this purported agreement.  *Id.*  Notably, there is no

7   reference to any alleged second oral agreement or modification in any of the **four** iterations of

8   Defendants' counterclaims.  *See* Dkt. No. 22, ¶¶ 14-15; Dkt. No. 55, ¶¶ 16-17, 40-53; Dkt. No. 72,

9   ¶¶ 16-17, 49-53; Dkt. No. 171, ¶¶ 16-17, 53-57.  Since they never alleged that such an agreement or

10  modification existed, they cannot "advance new theories presented for the first time in [] opposition

11  to summary judgment." *Pickern v. Pier 1 Imports (U.S.), Inc*., 457 F.3d 963, 968–69 (9th Cir. 2006);

12  *accord Wasco Prods., Inc. v. Southwall Techs., Inc*., 435 F.3d 989, 992 (9th Cir. 2006).

13      Even if Defendants could do so, Suhy's "conclusory, self-serving affidavit, lacking detailed

14  facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  *F.T.C.*

15  *v. Publ'g Clearing House, Inc*., 104 F.3d 1168, 1171 (9th Cir. 1997); *accord GoE3 LLC v. Eaton*

16  *Corp.*, 798 F. App'x 998, 999 (9th Cir. 2020) (affirming summary judgment for defendant where the

17  district court disregarded plaintiff's self-serving declaration that failed to identify evidence that

18  defendant accepted certain terms as part of the original contract terms or as part of a subsequent

19  contractual modification) (citing same); *Bullard v. Wastequip Mfg. Co. LLC*, 2015 WL 12766467, at

20  *12 (C.D. Cal. Apr. 14, 2015) (prohibiting party from defeating summary judgment by asserting oral

21  contract theory not alleged in the operative pleading); *see also Hansen v. United States*, 7 F.3d 137,

22  138 (9th Cir. 1993) ("[w]hen the nonmoving party relies only on its own affidavits to oppose

23  summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an

24  issue of material fact").

25      In this regard, PureThink fails to offer competent evidence establishing **when** Neo4j USA

26  consented to such an oral agreement or modification, **who** consented on behalf of Neo4j USA, **how**

27  much compensation would be, and **what** additional consideration PureThink offered.  Thus, no such

28  oral agreement or modification can exist. *See Hohs v. Allstate Ins. Co.*, 2010 WL 11706760, at *5-

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4890-7686-1031.5                                    - 13 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

6 (N.D. Cal. Feb. 10, 2010) (granting summary judgment where plaintiff failed to provide evidence of when the oral contract was entered into and defendant's consent to the terms thereof); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, 2011 WL 1195680, at *3-5 (C.D. Cal. Mar. 29, 2011) (same); *see also Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*, 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind); *Davidson v. ConocoPhillips Co.*, 2009 WL 2136535, at *3 (N.D. Cal. July 10, 2009) (granting summary judgment for defendant where plaintiffs failed to show the oral modification to a written contract was supported by new consideration).

### C.   Defendants Fail to Establish a Breach of the Alleged Exclusivity Agreement

Defendants argue that because the external April 11, 2015 letter does not contain the unilateral termination provision, Neo4j USA is "not free to insert one so purely in their favor." Opp. at 22:17-23:23. However, this is exactly what PureThink is doing by disavowing the internal letter that ***Suhy proposed contain that provision*** and Neo4j USA's reliance thereon when it signed both letters. PureThink cannot have it both ways. Either the two letters constituted parties' exclusivity agreement and gave Neo4j USA the unilateral right to terminate without having to pay PureThink, or there was never a meeting of the minds on any alleged agreement. Under both scenarios, PureThink cannot establish any breach thereof by Neo4j USA.

### D.   PureThink Fails to Provide Competent Evidence of Its Alleged Damages

Defendants do not indicate they intend to seek any nominal damages, and instead confirm that they are seeking monetary damages based on the alleged "full time" effort Suhy put into developing the add-ons to Neo4j® EE to create the Gov't Edition. Opp. at 24:4-12. However, Defendants do not offer competent evidence that would allow a trier of fact to determine the actual time spent and the value of that time. *See* UDF Nos. 85, 109. Defendants further admit that PureThink's financial statements "do not reflect the expenses which came in the form of paying Mr. Suhy to focus full time on the [Gov't Edition]," while they fail to cite to any evidence such as paychecks or bank records that would support such expenses. *See* UDF No. 86. PureThink thus cannot make the required showing with "reasonable certainty and probability." *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988) (affirming summary judgment where plaintiffs

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ● REDWOOD CITY

4890-7686-1031.5                                    - 14 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

1  failed to submit evidence "upon which a finder of fact could reasonably conclude that [they] actually

2  suffered damages, caused by [] defendants, in any quantifiable amount").

3      PureThink's attempt to recover $1.3 million in damages for the alleged loss of the CKGE

4  Contract with the IRS is also untenable.  *See* Opp. at 24:13-14.  By agreeing to dismiss their IIPEA

5  claim with prejudice in the face of a motion to dismiss, Defendants conceded that Neo4j USA had a

6  constitutional right to protest that award.  *See* Dkt. Nos. 171, 172 and 176; *see also* UDF No. 57.

7  Moreover, it is undisputed that the IRS continued to use the Gov't Edition and PureThink's support

8  services after Neo4j notified all concerned that it was discontinuing the Gov't Edition and terminating

9  PureThink as Solutions Partner. *See* UDF Nos. 52-53, 74, 77, 88.  Consequently, Defendants cannot

10  establish a causal connection between Neo4j USA's alleged breach of the exclusivity agreement and

11  the IRS's subsequent decision to award the CKGE Contract to Suhy via one of his other entities,

12  eGovernment Solutions.  *See* UDF No. 25-26.

13      Finally, Defendants cite to a spreadsheet of Neo4j USA's government sales as somehow

14  establishing its alleged damages.  *See* Opp. at 24:13-14.  This is insufficient to establish damages

15  because Defendants fail to offer evidence establishing that but for the termination, PureThink would

16  have sold the Gov't Edition to them.  Without any evidence of a causal connection, PureThink cannot

17  rely on speculation that they would have made any of those sales.  *See McGlinchy,* 845 F.2d at 809;

18  *Codding v. Pearson Educ., Inc.,* 2019 WL 5864579, at *12 (N.D. Cal. Nov. 8, 2019), *aff'd*, 842 F.

19  App'x 70 (9th Cir. 2021) (granting summary judgment in favor of defendant where plaintiff failed to

20  provide evidence "establish[ing] a causal connection between the breach and the damages sought").

21  **VII.    CONCLUSION**

22      For the reasons set forth herein and in their opening brief, Plaintiffs respectfully request that

23  the Court grant summary judgment in favor of Neo4j USA on all grounds sought.

24   Dated:  June 29, 2023                          HOPKINS & CARLEY, ALC

25

26                                                          By: */s/ Jeffrey M. Ratinoff*
                                                                 Jeffrey M. Ratinoff
27                                                              Attorneys for Plaintiffs and Counter-
                                                                 Defendants NEO4J, INC. and NEO4J
28                                                              SWEDEN AB

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ REDWOOD CITY

4890-7686-1031.5                                    - 15 -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR DMCA CLAIM AND DEFENDANTS'
BREACH OF CONTRACT COUNTERCLAIM AND UNCLEAN HANDS DEFENSE                          5:18-CV-07182-EJD

**PLAINTIFFS' REPLY TO DEFENDANTS RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1:</u> Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | **DISPUTED** Neo4j does not own all the code to the Neo4j software.<br>Beene Decl., Ex. 27.<br><br>Hundreds of committers to Neo4j code do not appear to be associated with Neo4j Sweden, and Neo4j Sweden does not have assignments from committers or authors of Neo4j Software. Copies of assignments were requested in discovery but not provided<br>Suhy Decl. ¶¶13-14, Beene Dec., Ex 32. |
| | <u>Additional Fact:</u> The Court previously found it was undisputed that "Neo4j Sweden owns of all copyrights related to the Neo4j graph database platform, including the source code." Dkt. No. 118 at 2:16-18; *accord* Fact 15 ("UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE").<br><br><u>Additional Fact:</u> Neo4j® EE v3.4 and v3.5 contained at least 182 source code files that were never released under either the GPL or AGPL, and were instead release for the first time under the Neo4j Sweden Software License making Neo4j Sweden the sole copyright owner of those files that are subject to Plaintiffs' DMCA claim. Dkt. No. 98-1, Ex. 38 at 6:23-16:24, 8:4-16:24;  (iGov's verified interrogatory response identifying at least 182 source code files in Neo4j® EE that had not previously been released under the AGPL); Fact 13 ("**UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause"); Dkt. No. 118 at 6:18-21 ("GFI released ONgDB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in a publicly available beta version of Neo4j EE 3.5."); *accord* Dkt. No. 98-2, ¶¶ 27-30. | |
| | <u>Fact 2:</u> Prior to May 2018, Plaintiffs offered a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). | **DISPUTED**  Prior to May 2018 Plaintiffs also released Neo4j Enterprise Edition under the vanilla AGPL open source license.  Neo4j Enterprise under the AGPL and Neo4j Enterprise under the commercial license were the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6). Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | same physical software as they were compiled from the same source code.<br><br>See Suhy Decl., ¶2. |
| | <u>Fact 3:</u> Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("AGPL"). Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8). A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance. Dkt. No. 98-2, ¶¶ 7-9. | **UNDISPUTED** that Neo4j EE was available under both a commercial and free open source AGPL license and that a commercial license came with support.<br><br>**DISPUTED** that the commercial license was the only license which allowed Neo4j EE to be used in a proprietary setting or receive updates. Neo4j Enterprise under the open source AGPL (< v3.4) as well as under AGPL + Commons clause (v3.4) could be used in a proprietary setting for free, and since the code was the same for the commercial and open-source versions, they both received updates together.<br>See Suhy Decl., Ex. 2 |
| | <u>Fact 4:</u> On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | **UNDISPUTED** that Neo4j Sweden released Neo4j® EE v3.4 on May 17, 2018 which was the AGPL with the commons clause which added prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that this was ever called "Neo4j Sweden Software License" outside of court. The License terms include the AGPL preamble and the NOTICE states: "The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause." See Suhy Decl., Ex. 3<br><br>**DISPUTED** that the AGPL was replaced with a stricter license. The AGPL was not replaced. The AGPL License file had the full preamble, stated it was copyrighted to the free software foundation. The commons clause was appended to the AGPL terms. Note, the commons clause did not affect end-users |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | wishing to use the software, it was targeted at anyone trying to sell or offer a competing support offering as Neo4j USA offered.<br>See Suhy Decl., Exs. 2-3 |
| | **Fact 5:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services. Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | **UNDISPUTED** that the commons clause states that it prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that there was ever a reference outside of court of a license called "The Neo4j Sweden Software License". The License was always referred to as AGPL, even when the commons clause was appended to the AGPL terms.<br><br>**DISPUTED** that "The Neo4j Sweden Software License" had a certain licensed scope for use. The commons clause stated that it prevented others from selling or offering certain services, but did it did not affect the end-users who were using the software under the license.<br><br>See Suhy Dec., Exs. 2-3 |
| | **Fact 6:** The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3. It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. *Id.* | **UNDISPUTED** The NOTICE provision was found in a separate file called NOTICE.txt which was always present next to the AGPL License file called LICENSE.txt<br><br>Every directory in the enterprise source code that has a LICENSE.txt file also has the corresponding NOTICE.txt.<br><br>See Suhy Dec., ¶ 3. and Exs. 1,3 |
| | **Fact 7:** In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.* This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects. Dkt. No. 98-2, ¶ 13. | **UNDISPUTED** that Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license.<br><br>**DISPUTED** that plaintiffs were no longer publishing the source code for Neo4j EE or offering it on an open source basis. All Neo4j EE versions prior to v3.5 were public and received updates from Neo4j Sweden. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **DISPUTED** that this was done to simply the licensing model, as well as prevent bad actors from profiting by providing commercial services in closed, proprietary projects.<br><br>See Suhy Decl., ¶ 4. |
| | **Fact 8:** Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | **UNDISPUTED** that plaintiffs published several beta versions of EE v3.5 to their GitHub repository.<br><br>**DISPUTED** that the license was ever called "Neo4j Sweden Software License." outside of court proceedings.  The beta versions were licensed under the AGPL and had the commons clause restriction appended to the AGPL license file. |
| | **Fact 9:** Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via GitHub. *Id.* | **UNDISPUTED** Note that all prior versions of Neo4j EE remain publicly available on the Neo4j GitHub repository.<br><br>See Suhy Decl., ¶ 2. |
| 2. Defendants' intentional removal and/or alteration of CMI without the authorization of Neo4j Sweden | **Fact 10:** Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June 2018.  Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | **DISPUTED** that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI").  Mr. Suhy was part of the volunteer committer team, and gave guidance as an open source advocate, but was not involved in forming the GFI entity.  Mr. Suhy declined any official role with the foundation.   There are no legal documents and Plaintiff's have not shown any official documents, or business records that show Mr. Suhy being involved in the formation of the GFI or serving as any official officer or director.<br><br>Plaintiff has not produced any business records, certificates, or any evidence that Mr. Suhy had a formal role in the GFI other than being on the volunteer committer team.<br><br>Beene Dec. Ex 30, Brad Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** Defendants literally **admit** "that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI")." Further, a month after GFI was formed, Suhy sent an email to the Nussbaums stating, "We work together as one company. We all are the founders of the Graph Foundation." Dkt. No. 98-1, Exs. 29-30. | |
| | <u>Fact 11:</u> After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED** that Suhy helped form GFI. See Fact 10.<br><br>**UNDISPUTED** that GFI began offering and promoting a graph database software called "ONgDB".<br><br>**UNDISPUTED** that Mr. Suhy promoted ONgDB as part of his open-source advocacy activities. Mr. Suhy also promotes other open source innovative technologies. |
| | <u>Fact 12:</u> To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | **DISPUTED.** Mr. Suhy did not create ONgDB, he was on the volunteer team of committers and gave the guidance on how to set it up, but GFI came up with the name and created the GitHub repositories.<br><br>**DISPUTED.** Mr. Suhy did not make any modifications to the source code in v3.4 code related to the AGPL in any way.<br>See Suhy Decl., Exs. 1-4, 9 |
| | **Additional Fact/Objection:** Suhy testified under oath that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI. Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Ratinoff Decl., Ex. 1 at 199:14-201:16. This is consistent with contemporaneous statements Suhy made to potential customers. *See, e.g.,* Dkt. No. 98-1, ¶ 27 and Ex. 25 (Check out https://graphfoundation.org [] All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license"). This is also consistent with Plaintiffs' inspection of ONgDB v3.4 around the time of its release in 2018. Dkt. No. 98-2, ¶ 27. | |
| | <u>Fact 13:</u> ONgDB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE | **UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 3.5. Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | **DISPUTED** that the AGPL + Commons was ever called "Neo4j Sweden Software License" outside of court proceedings.  The files were released under AGPL + Commons clause.  <br><br>See Suhy Decl., Exs. 2-3 <br><br>See Fact 12. |
| | **Additional Fact:** In particular, ONgDB v3.5.9 contained 247 Java classes that were released for the first time under the Neo4j Sweden Software License either in (a) Neo4j® EE version 3.4 and were incorporated into Neo4j® EE version 3.5; or (b) Neo4j® EE version 3.5.0-RC1, and were therefore never previously licensed under the AGPLv3.   Additionally, the full underlying source code for the enterprise-only components of Neo4j® EE version 3.5.9 was never made available or released under the Neo4j Sweden Software License, or any open source license. Dkt. No. 98-2, ¶ 29. | |
| | Fact 14: Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39.  <br><br>**Additional Fact/Objection**:  Suhy testified under oath that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI.  *See* Additional Fact 12, *supra*.  <br><br>**Additional Fact**:  The cited source code headers and NOTICE.txt files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause.  *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8.  Once Suhy replaced the Neo4j Sweden Software License with a generic copy of the AGPL, the Commons Clause (along with the other notices, terms and conditions listed by Neo4j Sweden) ceased to exist in those LICENSE.txt files, thereby rendered the cross-references in the NOTICE.txt files | **DISPUTED.** <br>Mr. Suhy had not previously replaced anything relating to the AGPL and commons for v3.4 of Neo4j Enterprise.   See Fact 12 above.  <br><br>The NOTICE provision in the NOTICE.txt files which corresponded to each LICENSE.txt files, along with the 1000s of source code files which also had Neo4j Sweden CMI and the commons clause were untouched by Mr. Suhy and still clearly shows that the commons clause was present.  <br><br>The only files Mr. Suhy touched were the AGPL LICENSE.txt files which clearly stated that the copyright to the file / license was to the free software foundation.  <br><br>See Suhy Decl.,  Ex. 2  <br><br>"Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | meaningless. Dkt. No. 98-2, ¶¶ 27, 29-30; Dkt. No. 98-1, ¶ 41 and Ex. 39; *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10.<br><br>**Additional Fact**: The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt files consisting of the Neo4j Sweden Software License with 28 LICENSE.txt files consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files. Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | The NOTICE.txt files and all source code files still had the legal notices identifying Neo4j Sweden as the copyright holder and licensor, and also stated the license was AGPL + Commons.<br><br>See Suhy Decl., Ex. 3<br><br>"The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."<br><br>See Suhy Decl., Exs. 1-10 |
| | **Fact 15:** Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3.<br><br>**Additional Fact**: The cited source code headers and NOTICE.txt files do not contain the Commons Clause. Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause. *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8. Once Suhy replaced the Neo4j Sweden Software License with a generic copy of the AGPL, the Commons Clause (along with the other notices, terms and conditions listed by Neo4j Sweden) ceased to exist in those LICENSE.txt files, thereby rendered the cross-references in the NOTICE.txt files meaningless. Dkt. No. 98-2, ¶¶ 27, 29-30; Dkt. No. 98-1, ¶ 41 and Ex. 39; *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10.<br><br>**Additional Fact**: The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt consisting of the Neo4j Sweden Software License with LICENSE.txt consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files. Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf | UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.<br><br>DISPUTED that Mr. Suhy replaced anything called the Neo4j Sweden Software License. He only made the AGPL License file verbatim as the copyright holder, the free software foundation instructed. He did not replace the NOTICE.txt (notice provision) or any source code CMI which clearly stated that the software was copyrighted to Neo4j Sweden and had additional restrictions in the form of the common clause.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license." See Suhy Decl., Ex. 9<br><br>See Fact 14.<br><br>See Suhy Decl., Exs. 1-10<br><br>Neo4J Sweden does not own 100% of the code for Neo4J and the AGPL control how the software is licensed. Neo4J Sweden's misused the AGPL and Suhy corrected that. See response to Fact 1 and Facts 94 and |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | 100. |
| | <u>Fact 16</u>: Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL.  Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | **UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons Clause or rename "it" ONgDB.<br><br>**DISPUTED** that Mr. Suhy renamed anything ONgDB. Mr. Suhy did not have any part in coming up with the name ONgDB.<br><br>**DISPUTED** that Mr. Suhy offered ONgDB – this is a project that is sponsored and offered by GFI.<br><br>The AGPL authorizes licensee to remove any additional terms. See Suhy Dec., Ex. 6. |
| | <u>Fact 17</u>: Suhy has been the sole officer and director of PureThink since he formed the corporation.  Ratinoff Decl., Ex. 2 at 176:4-11; *see also* Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | **DISPUTED.**  Mr. Suhy has had other partners who served as officers and directors since PureThink was formed in 2002.<br><br>See Suhy Decl., ¶ 8. |
| | **Additional Fact**: Defendants state "PureThink is a single person company filing as an s-corporation for tax purposes."  *See* Fact 86, *infra*. | |
| | <u>Fact 18</u>: Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | **UNDISPUTED** |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | <u>Fact 19</u>: Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and GitHub repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id.*, ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.*, ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.*, Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.*, ¶¶ 41 and Ex. 39 (GFI GitHub commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020. Dkt. No. 118 at 8:13-15. | **DISPUTED** – Mr. Suhy does not control or run the GFI website or GFI Github repositories.  He is one of many volunteer open source committers on the team.<br><br>Beene Dec. Ex 30, Brady Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24<br><br>The CMI is not (its) Neo4J Sweden's CMI. The copyright to the AGPL is owned by FSF. Neo4J Sweden's violation of FSF's copyright means the CMI was false in violation of the DMCA. Suhy corrected that violation with the removal of the commons clause. See |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Fact 98. |
| | **Additional Fact**: On July 9, 2018, Suhy offered a sponsor of GFI an "explain[ation] why [GFI] was created and *how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS* and most likely DHS as they are already using the open source distributions we packaged before we assigned them to [GFI]." Dkt. No. 98-1, ¶ 26 and Ex. 24 (emphasis added). GFI also confirmed Suhy was involved in the initial development of ONgDB, including making commits and developing solutions for that software.  Ratinoff Reply Decl., Ex. B at 82:20-25. | |
| | Fact 20: Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | UNDISPUTED that Mr. Suhy provided hyperlinks references for users of the website to view the source code and download distributions.  These links sent the users who clicked on them to the GFI website, which Mr. Suhy has no official role, has no control over, and whom is just one of the many volunteer committers who volunteers time to make the software better for the open source community.<br><br>Note: Dkt. No. 98-1, Ex. 26 shows date of 08/28/2018<br><br>The code still had commons as of Nov 2019.<br><br>See Suhy Decl.,  Exs. 1-4 |
| | Fact 21: Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id.*, ¶ 59 and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage. Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | UNDISPUTED – see Fact 20 above. |
| | Fact 22: iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | UNDISPUTED – it should be noted that all the downloads from GFI and from the mirror site I setup on iGov's website had the commons clause in the AGPL |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | license files. |
| | <u>Fact 23</u>: iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); *id.,* Ex. 13 at RFA Nos. 10, 14. | UNDISPUTED that the hyperlink was on the iGov downloads page.  It was a mistake and should have said "Download ONgDB Enterprise".   The link was fixed as soon as it was brought to Mr. Suhy's attention.<br><br>See Fact 22 above. |
| | <u>Fact 24</u>: On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4.  Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. *Id.,* Ex. 4 at 96:6-98:21.<br><br>**Additional Fact:** Defendants admit, "the AGPL with the commons clause … prohibited the non-paying public from engaging in commercial resale and support services." *See* Facts 4-5.  The word "unrestricted" also means "freely available for use …." <u>https://www.merriam-webster.com/thesaurus/unrestricted</u>. | DISPUTED the reference in Ratinoff Decl., ¶ 31 and Ex. 29.<br>Does not mention anything related to trying to get IRS to move to an "unrestricted" version. Furthermore, Plaintiffs have never shown Mr. Suhy ever used the terms "unrestricted" or "restrictions" in describing the AGPL license without the commons clause.<br><br>Mr. Suhy has only used the word "restriction" in only 2 scenarios.  1. when explaining that the commercial license adds restrictions, and 2. around physical restrictions of software itself relating to number of cores, instances, or other physical attributes of Neo4j Enterprise.<br><br>See:  Dkt. No. 98-1, Exs. 68,75<br>"no limitations on causal cluster instances, cores, or production usage."<br><br>Dkt. No. 98-1, ¶¶ 45 and Ex. 43<br>"ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose."<br><br>Further, the commons clause does not prevent IRS from using Neo4j v3.4 in production.  Mr. Suhy stated this in the email. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "Again this does not effect IRS in any way, even if the term was enforceable." See Ratinoff Decl., ¶ 31 and Ex. 29.<br><br>The email referenced in Ex. 29 above, was sent May 22nd, 2018.<br>At this date, even the AGPL license files had the references to the commons clause.<br><br>See Suhy Decl., Exs. 1-4,9 |
| | <u>Fact 25</u>: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; *id.,* Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; *id.,* Ex. 3 at 47:14-50:8, 50:14-54:3.<br><br>**Additional Fact:** Prior to the award of the CKGE Contract, Suhy sent an email to the IRS stating, "[t]he current CKGE environment will require any potential vendor to provide 2 critical components 1) The Government Package / Suite for Neo4j and 2) professional services for continued development."  Ratinoff Decl., ¶ 32 and Ex. 30 (yellow highlight). | UNDISPUTED that IRS awarded eGovernment Solutions a contract to develop and support the CDW Knowledge Graph ("CKGE") environment which used an open source Neo4j software.<br><br>DISPUTED that Neo4j was a main component in the platform.  It was in fact just one small component of one service that made up the complex platform.<br><br>The SOW for the CKGE project does not have anything referencing Neo4j EE as a component, let alone the main component of CKGE.<br><br>"The CKGE framework includes a graph database: elastic search capabilities; java-script based, user-interface; and microservices components."<br><br>The only time the word Neo4j was mentioned was under the "skills section" of the SOW. (underlined below) "The vendor will need to work with the following components: React, Angularjs, Neo4j, JAVA, micro-services architecture, and Hadoop/Spark, Elastic Search, Kafta, Agile methodology, GitLab, and Plottable." See Suhy Decl., Ex. 11 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Decl., ¶ 5. |
| | **Fact 26:** Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov. *See* Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; *id*, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; *id.,* Ex. 2 at 188:10-193:25; *id.,* ¶ 30 and Ex. 28. | |
| | **Fact 27:** eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over. Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; *id.*, ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3.<br><br>**Additional Fact:** Consistent with the testimony of eGov Sol, Section 5.2 of the stock purchase agreement cited by Defendants states "eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project…." *Compare* Ratinoff Decl., Ex. 35 at §5.2 *and id.*, Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20. | DISPUTED:  The stock purchase agreement between Mr. Suhy and eGovernment Solutions does not state anywhere that Mr. Suhy has the sole responsibility or sole control.  The stock purchase agreement gave Mr. Suhy the authority to drive the direction, but not absolute control.<br><br>"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid…"<br><br>"5.2 eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project as long as the agreements are in line with government contracting laws and hubzone regulations."<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | **Fact 28:** The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; *id*., ¶¶ 38-44 and Exs. 36-42. | UNDISPUTED that IRS paid a total of $1,316,000 to eGovernment Solutions under the CKGE contract.<br><br>DISPUTED that eGovernment Solutions turned around and paid that amount to Mr. Suhy and/or iGov Inc. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | eGovernment Solutions paid a $200,000 to support the CKGE contract, act as the official facility clearance officer for eGovernment Solutions because Mr. Suhy had an active clearance, and help with business development.  See Fact 27 and Ratinoff Decl., ¶ 37 and Ex. 35<br><br>Over $251,450 of the revenue from IRS did not go to Mr. Suhy in any manner.<br><br>The total payments made to iGov Inc were $1,064,550.00<br><br>See Suhy Decl., ¶¶ 6,7 |
| | **Fact 29:** Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14, 39:18-40:18, 42:14-19, 50:14-54:3, 71:17-79:12, 81:6-82:17; *id.,* ¶ 44 and Ex. 42.<br><br>**Additional Fact:** eGov Sol confirmed that Suhy was entitled to the $200,000 payments referenced in Section 5.1 of the stock purchase agreement, which reflected the option year payments made by the IRS under the CKGE Contact.  Dkt. No. 183, Ex. 3 at 31:7-32:21, 34:1-37:14, 50:14-53:4. | **DISPUTED** that Mr. Suhy was entitled to all payments eGov Sol received from the IRS on the CKGE contract.<br>See Facts 27-28,<br>See Suhy Decl., ¶¶ 6,7<br><br>**"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid. eGovernment Solutions will not be liable to pay John Mark Suhy for any work done on this contract in the event they donot get paid from the client. If the payment for the project is received all at once, then John Mark Suhy will also be paid his total salary for the option year up front, otherwise salary will be paid as eGovernment Solutions Inc get paid by the Treasury."**<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | **Fact 30:** eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | **UNDISPUTED** that eGovernment Solutions had a bank account that received payments from clients including IRS. Mr. Suhy had access to the account because it had not been |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | removed when he sold his shares.    Mr. Suhy just happened to still have checks and helped out of convenience since there was a bank branch near his home.<br><br>**DISPUTED** Mr. Suhy was not authorized to disburse the payments made by the IRS as he saw fit.  He had to request permission anytime he wanted to write a check for his salary.<br><br>See Facts 27-29<br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | <u>Fact 31:</u> In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; *id.*, Ex. 4 at 113:5-115:20, 116:5-117:21. | **DISPUTED** that CKGE had any requirement for Neo4j EE at all.<br><br>Otherwise **UNDISPUTED** that a sales representative from Neo4j USA met with IRS and provided the quote mentioned. |
| | <u>Fact 32:</u> As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | **DISPUTED.**  Plaintiff's do not provide any evidence  citing a "reason"" to why IRS did not allocate money for a Neo4j EE license.    See Fact 24.<br><br>**UNDISPUTED** that Neo4j EE had enterprise only features compared to Neo4j CE, and that the Neo4j EE commercial license came with support.<br><br>Zagalsky of Neo4J USA misrepresented a Fare Trade Licensing document as applying to the AGPL code on 4-4-2017 before the IRS to decline to do business with Neo4J USA. There is no obligation under the AGPL to make a project open when using AGPL licensed software. AGPL §2, Suhy Dec. Ex 22.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 33:</u> In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on | **DISPUTED** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | misrepresentations about GFI being the copyright holder and licensor of ONgDB.  Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.*, ¶¶ 35-36 and Exs. 33-34.<br><br>**Additional Fact:** The testimony cited by Defendants is consistent with the foregoing.  On August 13, 2018, Suhy sent an email to the IRS stating "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc.…"  Ratinoff Decl., ¶35 and Ex. 33.  Mr. Dunn confirmed the IRS understood from this email and conversations with Suhy that GFI added the source code for the enterprise features to Neo4j® CE (core) to create ONgDB and the open source license for those features came from GFI.  Ratinoff Decl., Ex. 4 at 132:2-19, 133:15-137:6. | Mr. Suhy never claimed GFI was the copyright holder.  The only place in Ex. 4 that even mentions the word "copyright" shows that IRS knew the copyright holder was Neo4j.<br><br>"**Q. So the Neo4j source code, Neo4j would own the copyright to that.  Correct?**<br>**A.  Yes.  I would assume it would be available based on whatever Neo4j allowed it to be used from**."  Ratinoff Decl., Ex. 4 at 130:1-4<br><br>IRS was not even sure about who the license came from, and did not associate the license to be anything related to copyright.<br><br>"**A.  My understanding it was not the Enterprise. It was the core source code from GitLab, Neo4j's GitLab, whatever that licensing was of that core source code brought over, and then the additional elements, whatever elements ONgDB, The Graph Foundation added onto that.  That's how I understood from my point of view who was -- who was distributing and licensing it and the follow-through from whatever the licensing was of the Neo4j core that was off of GitLab.  That's how I understood it**." Ratinoff Decl., Ex. 4 at 135:14-23<br><br>The source code for v3.4 clearly stated that Neo4j Sweden was the copyright holder.<br><br>"Neo4j Copyright © 2002-2018 Neo4j Sweden AB (referred to in this notice as "Neo4j") [http://neo4j.com]<br>This product includes software ("Software") developed and owned by Neo4j."   Suhy Decl., and Ex. 3<br><br>See also Suhy Decl.,  Exs. 1-4 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | There is no evidence that shows that IRS was convinced by Mr. Suhy.<br><br>See Fact 24<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 34:** While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.  Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | **DISPUTED** Suhy and iGov were NOT responsible for supporting, maintaining, and updating ONgDB on the internal repository.<br><br>The Statement of Work for the CKGE project had no requirement to support, maintain or update ONgDB.  See Suhy Decl., Ex. 11<br><br>Mr. Suhy helped IRS with technologies on his own time and not as part of any paid consulting.  Mr. Suhy also assisted with other technologies that he had expertise around when time permitted.<br><br>Mr. Suhy simply helped IRS get the source code into the IRS internal repository so that IRS could perform security scanning outside any contractual obligation between IRS and eGovernment Solutions Inc.  This happened around the time that a serious Log4j Vulnerability was found to exist in Neo4j.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 35:** Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | **DISPUTED**  The CKGE platform does not require upgrades to use specific graph databases.<br><br>The CKGE platform is suite of micro-services, many of which have nothing to do with graphs. The only service that |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | end-users used which even touched the graph was called the graph explorer.  It provides a way to explore graph structure through visualization.  It is not dependent on any specific underlying graph database and does not require any sort of upgrade to switch between backend graph and non-graph databases.<br><br>See also Fact 34.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 36:</u> After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository.  Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15.<br><br>**Additional Fact:** The IRS confirmed what it calls "GDB" was licensed under the AGPL without the Commons Clause, which was compiled from Neo4j® EE 3.5 source code by Suhy.  Ratinoff Decl., Ex. 4 at 195:2-198:15; Fact 14, *supra*.  Specifically, Mr. Dunn testified:<br><br>Q.  So you're saying that -- okay. So you're saying that for in 2022 that the version of ONgDB that was being run on the servers showed up as being Neo4j source code version 3.5.2.6? Is that fair?<br>A.  Yes. Yes. [] But your main point there is what I understand when I talked with Puru, and he looked at the code base of the graph database, and it's referred to as Neo4j 3.5, and if it's 2.6, that's what it would be. Does that make sense?<br><br>Q.  Yeah. I think so. And you said the different name. So from the IRS's perspective, the program is the same, it's just the names have 16 changed from ONgDB to GDB. Is that correct?<br>A.  Yeah.<br><br>Ratinoff Decl., Ex. 4 at 195:2-13<br><br>Q.  So where did that Neo4j source code that is now maintained | **DISPUTED.**  There is not any ONgDB, GDB, Neo4j, or other source code based on Neo4j in use at IRS which is "improperly licensed".  All the source code within IRS clearly states that the license is AGPL + Commons.   Plaintiff has provided no evidence to the contrary.<br><br>See Suhy Decl., ¶ 9<br><br>**"Q.  I didn't get -- I didn't quite follow that. I apologize.  To clarify, so you understood -- so you understood that the license that ONgDB was under was the AGPL version 3 but with the Commons Clause removed by Mr. Suhy?**<br><br>**A.  Yeah.  I don't -- I don't remember if he removed it.  I don't remember it being discussed.  I just remember the description of taking the core source code from GitLab, compiling it, and then, as we discussed, adding the additional capabilities that would be the ONgDB release.**<br><br>**So I can't remember the Commons Clause being part of the discussion.  I can't remember if he said that he** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | internally come from?<br>A. John Mark Suhy.<br><br>Q. And to your knowledge, what license is that source code under? Is it under the AGPL?<br>A. As far as I know. Yeah. I haven't been informed of any other requirements.<br><br>Q. And it's not under the AGPL clause comm[ons]?<br>A. I'm not -- as far as I know, no.<br><br>*Id.*, Ex. 4 at 198:5-13 | **took it out or what, but I can't say that. Yeah. I just can't say that. In my mind, I'm tracing it from the GitLab source code, whatever that licensing was, and then released by ONgDB under their licensing**."<br>Ratinoff Decl., Ex. 4 at 133:14-134:6<br><br>**UNDISPUTED** that IRS started calling ONgDB just "GDB,"<br><br>**DISPUTED** that the graph used Neo4j EE 3.5 source code, as Neo4j did not release the enterprise source code for v3.5 after the pre-releases. |
| | <u>Fact 37:</u> Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | **DISPUTED** that Mr. Suhy or iGov Inc facilitated the use of four instances of ONgDB.  Mr. Suhy gave guidance on the servers needed for the entire CKGE stack, which the graph database was not the main piece of.  Furthermore, the references Plaintiff give show that the person being deposed was not sure of the number of ONgDB instances, and was guessing.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 38:</u> iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions.  *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | **DISPUTED** www.graphstack.io was not operated just to promote ONgDB over Neo4j EE.  The website promoted a stack of tools that abstracted out knowledge graphs from the underlying implementation.<br><br>The term "restrictions" mentioned are in the context of physical restrictions and have nothing to do with license restrictions.<br><br>*See* Dkt. No. 98-1, ¶ 77 and Ex. 75<br>"Open Native Graph DB (ONgDB) is a non-restrictive fork of Neo4j managed by the Non profit Graph Foundation. ONgDB is 100% free and open, and **there are no limitations** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | on instances in clusters, cores, etc!"<br><br>"What is GraphStack?<br>**GraphStack is a development suite that allows teams to build large scale graph apps.**"<br><br>See also Fact 24. |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | **Fact 39:** Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive. *Id.* at 196:22-201:16.<br><br>**Additional Fact:** Suhy did not seek legal advice concerning whether he could remove the Commons Clause from the Neo4j Sweden Software License.  *See* Facts 40-42. GFI also did not obtain a legal opinion on whether it could remove the Commons Clause as "further restriction" from the Neo4j Sweden Software License before GFI and Suhy replaced the Neo4j Sweden Software License with the AGPL in ONgDB.  Ratinoff Reply Decl., Ex. B at 117:8-118:11; *id.,* Ex. C at 288:14-24. | **DISPUTED** defendants only created a commit to make the AGPL LICENSE.txt files verbatim as instructed in the AGPL preamble  by the copyright holder,  the free software foundation.  Suhy Dec., Ex. 6<br><br>The commit message shows the intent.<br><br>Furthermore, the defendants did not replace anything called "Neo4j Sweden Software License".  The license has always been called the AGPL, even when the commons clause was appended to it.<br><br>Mr. Suhy was speaking of the files owned by the FSF only.<br><br>Mr. Nussbaum from the Graph Foundation did get independent legal guidance which was communicated to Mr. Suhy as well.<br><br>**"We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3"**. See also Suhy Decl.,  Ex. 12 |
| | **Fact 40:** Suhy participated in a discussion thread on Plaintiffs' GitHub repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16.  Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. | **UNDISPUTED** that Mr. Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018.<br><br>DISPUTED that Mr. Suhy chose not to seek legal advice concerning those views.  The Graph Foundation did get independent legal advice and communicated that to Mr. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Ratinoff Decl., Ex. 1 at 205:17-206:11. | Suhy.<br><br>Furthermore, Mr. Suhy did do quite a bit of due diligence which is one of the reasons that he only followed the instructions in the files that specifically stated they were copyrighted to the free software foundation. |
| | **Fact 41:** When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights). The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | UNDISPUTED the free software foundation gave the guidance which Mr. Suhy followed. |
| | **Fact 42:** Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | **DISPUTED** Mr. Suhy did not remove the commons clause from Neo4j. In March 2019, he only made the AGPL License file verbatim as the copyright holder of the file, the free software foundation, instructed in the preamble. The commons clause was still present in all NOTICE provisions and source code headers.<br><br>See also Fact 14 |
| | **Fact 43:** Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE. Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.*, ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.*, ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | **DISPUTED** Mr. Suhy did not use the term "commercial restrictions" in relationship to the commons clause. Mr. Suhy knew that the commons clause forbid re-selling, but was unsure about the rest as the language of the commons clause did not define what "support services" was exactly. |
| | **Additional Fact:** Defendants admit that "the AGPL with the commons clause … prohibited the non-paying public from engaging in commercial resale and support services." *See* UDF Nos. 4-5. | |
| | **Fact 44:** Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users. Dkt. No. | **DISPUTED** Mr. Suhy removed the commons clause from only the AGPL License files and gave the reason for the removal clearly in the commit message. The commons |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 98-1, ¶ 31 and Ex. 29; *id.*, ¶¶ 64-68 and Exs. 62-66; *id.*, ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.*, ¶ 49 and Ex. 47; *id.*, ¶ 56 and Ex. 54; *id.*, ¶¶ 128 and Ex. 126; *id.*, ¶¶ 132-134 and Exs. 130-132.<br><br>**Additional Fact:** The cited source code headers and NOTICE.txt files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause prior Suhy's removal thereof.  *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8; *see also* Facts 14-15.  Defendants further admit that the Commons Clause "prohibited the non-paying public from engaging in commercial resale and support services."  *See* Facts 4-5, *supra*. | clause was not removed from the NOTICE provision (NOTICE.txt) or any source code files.   See Fact 14.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "**Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license.**" See Suhy Decl., Ex. 9<br><br>Furthermore, the commons clause did not prevent end-users from using Neo4j EE for free in commercial applications or elsewhere.  Plain |
| | Fact 45: Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services.  Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47.<br><br>**Additional Fact:** iGov, AtomRain and GraphGrid worked together to provide paid support services to users of ONgDB, as confirmed by Suhy:<br><br>Once you are supporting Airforce with Neo4j, then there is a large potential for custom software development services.  Since Neo4j partners are usually forbidden from using Neo4j under it's open source license - this puts you in a very unique position for anyone who wants custom Neo4j development. We could support you on all development tasks, and bring past performance from our other federal Neo4j projects.<br>* * *<br>Our team: iGov Inc, GraphGrid (https://graphgrid.com), and AtomRain (https://atomrain.com). We work together as one company."<br><br>Dkt. No. 98-1, Ex. 29. | UNDISPUTED that defendants referenced IRS's adoption.<br><br>DISPUTED – that defendants did this in order for agencies and contractors to pay defendants.<br><br>In all the references given by plaintiff for Fact 46, only one was related to trying to get paid, and it was for a package of software.  "**Neo4J Server including the Graphsware PHP-Neo4J Client (Guzzlehttp, Heoku, Myclabs, Pimple, Psr, Silex, Symfony, and Composer**" Dkt. No. 98-1, ¶ 44 and Ex. 42<br><br>Not only did defendants not encourage agencies or contractors to pay them, they told them they could find companies with past performance such as AtomRain and GraphGrid.<br><br>"**Usually which one you go with falls to the cost of production support. From a past performance perspective, the open source distributions are actually in production in the Federal government and there are companies such as us , AtomRain, GraphGrid, etc all have past performance providing production support for federal agencies for Neo4j Enterprise open source licenses.**" Dkt. No. 98-1, ¶ 49 and Ex. 47 |

21

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Furthermore, Defendants were promoting the open and free nature of ONgDB.<br><br>"**I wanted to make sure you knew that you can use Neo4j Enterprise AGPL distributions at no cost, and with no limitations.**" Dkt. No. 98-1, ¶ 47 and Ex. 45<br><br>"**1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.**" Dkt. No. 98-1, ¶ 45 and Ex. 43 |
| | <u>Fact 46:</u> Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | **DISPUTED**  None of the evidence provided by plaintiff relating to this fact suggest that Mr. Suhy convinced Greystones Consulting Group, LLC to implement ONgDB. |
| | **Additional Fact:** Suhy worked with Greystone in marketing "GreyRaven" and ONgDB to the U.S. Army.  *See* Ratinoff Decl., ¶¶ 56-59 and Exs. 54-57. | |
| | <u>Fact 47:</u> The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB.  Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60.<br><br>**Additional Fact:** Suhy told the U.S. Army that Greystones was "working with Neo4j / ONgDB open source distributions" and Greystones confirmed, "Our GreyRAVEN platform is based on ONgDB." Ratinoff Decl., ¶¶ 58-59 and Exs. 56-57. | **UNDISPUTED**<br>Note however that GreyRaven was not based on ONgDB.<br><br>This was a marketing mistake and the website was updated once it was brought to GreyStone's attention. |
| | <u>Fact 48:</u> The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | **UNDISPUTED** |
| | <u>Fact 49:</u> After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's | **DISPUTED** as this mischaracterizes the evidence,  there were no restrictions on the number of cluster instances and cores, however the Software rested under the AGPL |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | website.  Ratinoff Decl., Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.*, ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶¶ 49 and Ex. 47. | license terms.<br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | Fact 50:   Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license.  *See* Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.*, ¶ 66 and Ex. 64.  This led Next Century to upgrade to ONgDB v3.5.  Dkt. No. 98-1, ¶ 122 and Ex. 120.<br><br>**Additional Fact**: Next Century informed Neo4j USA that open-sourced (non-commercial) ONgDB builds from the Neo4j® EE source code "provide the clustering and security requirements needed in our environment."  Ratinoff Reply Decl., Ex. E; *see also id.*, Ex. F ("we're pursuing an open-source alternative (the same Neo4j source code but built and licensed separately) which bundles all the same features as the Neo4j enterprise version but without the costs"); *id.*, Ex. D at 65:18-67:21, 69:11-70:19, 73:21-74:3, 76:11-78:14, 80:10-83:9. | DISPUTED It is not known what led Next Century to upgrade to ONgDB v3.5.<br><br>There is nothing in the evidence provided by plaintiff that "restrictions" had anything to do with the commons clause. In fact Next Century mentions open source and free as being important to them, and this, for example,  could have led to them upgrading to ONgDB v3.5<br><br><br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | Fact 51: As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE.  Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13.<br><br>**Additional Fact**: Next Century confirmed that the MPO chose ONgDB over Neo4j® EE based on not having to pay Neo4j USA for a license. Ratinoff Reply Decl., Ex. D at 80:10-83:9, 85:11-88:3, 107:5-108:1, 110:11-111:24. | **DISPUTED** Defendants did not remove any "Neo4j Sweden's CMI" nor made any false statements about the same.   See Fact 14 above.<br><br>The commons clause does not prevent the MPO from using the software for free in their projects.  Next Century stated that cost and being open source were 2 important criteria. There was another open source alternative to Neo4j called JanusGraph on the list of databases NextCentury was evaluating for the MPO.<br><br>No-where in the evidence provided by plaintiff does the MPO say they would have purchased Neo4j Enterprise if ONgDB was not available.<br><br><br>**"Q. And was this -- sorry. Strike that. What graph** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | database technologies did Next Century consider for Task Order 39?<br><br>**A. Several, including -- so there was -- Neo4j was one, Oracle was a second one, DataStax and <u>JanusGraph</u> were others that were the primary thrust. There were several others that I don't have the names of that -- that were also under initial consideration.**" See Ratinoff Decl., Ex. 5 at 29:19-30:1<br><br>**"The analysis started with the teams reviewing other implementations of graph database technologies at the NSA and in other -- other applications to assess the performance, the security, lessons learned, <u>and costs</u> of the wide range of initial technologies under consideration.**" See Ratinoff Decl., Ex. 5 at 31:16-21<br><br>"<br>**Q. All right. And did the NSA provide any guidance on -- on pricing for the graph database software or the -- strike that. Were you provided any instructions from on pricing considerations for the graph database software that was being considered?**<br>**A. The NSA asked us to provide an analysis alternatives that <u>considered cost as one of the many factors</u>, and we were tasked to provide -- not provide -- <u>to consider cost as one of the factors</u>.**" See Ratinoff Decl., Ex. 5 at 44:9-18<br><br>"<br>**A. An alternative to the Neo4j Enterprise solution.**<br>**Q. And how was it an alternative?**<br>**A. <u>Similar features, less cost.</u>**<br>**Q. And when you say "less cost," there was no cost for a license to iGov's offering of Neo4j Enterprise, correct?**<br>**A. Not to my knowledge.**<br>" See Ratinoff Decl., Ex. 5 at 50:15-22 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | It was clear that government preferred free, no cost and open source licenses over paid.<br><br>"**A. Our government customer was interested in open-source technologies.**" See Ratinoff Decl., Ex. 5 at 56:10-11<br><br>Next Century was not even sure what the license ONgDB came under. Plaintiff's attorney had to guide the answer.<br><br>"   **Q.  And what license did Next Century understand that ONgDB was distributed under?**<br>      **A.  The -- (unintelligible.)**<br>         **THE REPORTER:  I'm sorry.  One more time?**<br>         **THE WITNESS:  GPLv3 license.**<br>          **BY MR. RATINOFF:**<br>      **Q.  AGPL Version 3; is that correct?**<br>      **A.  Yes.**" See Ratinoff Decl., Ex. 5 at 59:10-17<br><br><br><br>On Jan 2019, Mr. Suhy had not even replaced the AGPL License file with the verbatim version.   See Fact #14 above.<br><br>"   **Q.  So as of January 2019, had Next Century been using ONgDB to the exclusion of Neo4j Enterprise?**<br>      **A.  I don't know that it was to the exclusion of Neo4j.**<br>      **Q.  But at that time, Next Century hadn't obtained an commercial license for a copy of -- or an installation of Neo4j Enterprise, correct?**<br>   **A.  Correct.**" See Ratinoff Decl., Ex. 5 at 64:2-9<br><br><br>Suhy did not remove Neo4J Swedens' CMI. The CMI is FSF's copyrighted license. Neo4J was obligated to use only a compliant AGPL license and used false CMI instead. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* <u>Facts 1-9</u>. | **DISPUTED** – See responses to Facts 1-9 |
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority of the copyright owner; and | *See* <u>Facts 10-18</u>. | **DISPUTED** – See responses to facts 14, 10-18 Defendants never distributed any material that had modifications to Neo4j Sweden's CMI.  In fact – the mirror downloads provided by Defendants had the full commons in the LICENSE files of the distribution.   Other than the mirrors, defendants only shared links to GFI and were not aware of any wrong doing. |
| | **Additional Fact**:  Suhy testified that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI. Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Ratinoff Decl., Ex. 1 at 199:14-201:16. This is consistent with contemporaneous statements Suhy made to potential customers. *See, e.g.,* Dkt. No. 98-1, ¶ 27 and Ex. 25 (Check out https://graphfoundation.org [] All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license"). This is also consistent with Plaintiffs' inspection of ONgDB v3.4 around the time of its release in 2018.  Dkt. No. 98-2, ¶ 27. | |
| | **Additional Fact**:  The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt consisting of the Neo4j Sweden Software License with LICENSE.txt consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | |
| 3. Defendants knew or had | *See* <u>Facts 39-52</u>. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | | |
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | <u>Fact 52</u>: On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | **UNDISPUTED** Note that the SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 53</u>: Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | **UNDISPUTED**.  IRS was able to use Neo4j EE free both under the AGPL as well as under the AGPL with the commons clause.  Note that the PureThink SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 54</u>: Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component.  Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4.<br><br>**Additional Fact:** Prior to the award of the CKGE Contract, Suhy sent an email to the IRS stating, "[t]he current CKGE environment will require any potential vendor to provide 2 critical components 1) The Government Package / Suite for Neo4j and 2) professional services for continued development."  Ratinoff Decl., ¶ 32 and Ex. 30 (yellow highlight). | **DISPUTED** that CKGE used Neo4j EE or any other graph database as a "main component".  Out of the many components and services inside CKGE, only one the graph explorer even connected to a graph to allow for visual exploration.  See Suhy Decl., ¶ 5.<br><br>None of the references provided by Plaintiff show Neo4j EE as being a main component of CKGE.  "The CKGE framework includes a Neo4j's Enterprise Edition open-source version2, Elastic Search capabilities, and micro-services components useful for supporting graph-related research; " Ratinoff Decl., ¶ 28 and Ex. 26  at IGOV0001570513.001 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 55:** It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them. Ratinoff Decl., Ex. 4 at 61:11-64:23. | **DISPUTED.** Although IRS wanted to work with Mr. Suhy, the IRS had to properly procure the requirement under the FAR. Ratinoff Decl., Ex. 4 at 63:23-64:21 shows that Plaintiff's attorney tried to get IRS to make this statement but the IRS response was unclear and did not show that it was immaterial who the contracting entity was.<br><br>IRS was planning on competing the opportunity. "**And then we started a new procurement process for <u>new competition</u>**" Ratinoff Decl., Ex. 4 at 69:23-25<br><br>"**A.  Yes.  It was a new procurement order that had started -- or was executed for sort of open competition.  <u>I believe it was AA companies or small business companies originally, but it was open competition,</u> and it was awarded to eGov for professional services to work, you know, to further the development of CKGE.**" Ratinoff Decl., Ex. 4 at 74:4-10 |
| | **Fact 56:** On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | **UNDISPUTED** |
| | **Fact 57:** Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1.  After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol.  *See* Facts 25-30. | **DISPUTED**<br>IRS did not award any contract to iGov and Suhy through eGov Sol.<br>eGovernment Solutions paid Mr. Suhy a salary for a range of services.<br><br>See Suhy Decl., ¶ 7<br>See fact  28 |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to | **Fact 58:** Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE.  *See* Dkt. No. 91 at 16:21-19:7.  However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. | See Fact 1 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| the subject matter of its Lanham Act claims. | 118 at 2:11-16 (citing same). | |
| | **Additional Fact:** Neo4j Sweden wholly owns the copyrights to and was the licensor of the 182 source code files release for the first time under the Neo4j Sweden Software License that are subject to the DMCA claim. *See* Additional Facts in Fact 1. | |
| | Fact 59: The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | UNDISPUTED |
| | Fact 60: Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | **DISPUTED**. Neo4j EE v3.4 clearly stated its license was AGPL + commons clause. They did not "cease" licensing under AGPL.  Neo4j Sweden used the full AGPL preamble and called the License AGPL. They never called it "Neo4j Sweden Software License" until the court case started. |
| | Fact 61: The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit.  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | **Objection**, this is not a fact, the law of the case doctrine does not apply to interlocutory orders. |
| | Fact 62: By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | DISPUTED  See Fact 61.The 182 files licensed under the AGPL + commons clause was still referred to as AGPL and had the full AGPL preamble. |
| | Fact 63: Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | DISPUTED  Defendants did not release ONgDB.  The Graph Foundation did.   Beene Dec., Ex. 30. |
| | **Additional Fact:** Suhy was involved in the initial development of ONgDB, including making commits and developing solutions for that software. Ratinoff Reply Decl., Ex. B at 82:20-25.  On July 9, 2018, Suhy told a potential sponsor of GFI that they had ***assigned*** to GFI the "Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and most likely DHS." Dkt. No. 98-1, ¶ 26 and Ex. 24. | |
| | <u>Fact 64:</u> Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in **May 2018** and Neo4j USA's alleged false statements about the IRS needing to obtain a commercial license for Neo4j® EE were made before **October 2017**.  *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | DISPUTED – In May 2018 Neo4j released enterprise under AGPL with the commons clause.   After v3.4 – the source code clearly showed that it was using the AGPL license with commons along with the full AGPL preamble.<br><br>See Suhy Decl., Exs 1-8 |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |
| 1. No enforceable contract existed; | <u>Fact 65:</u> There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.   Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent to an alleged "exit agreement" because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding.  *See Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.,* 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind). | **UNDISPUTED** that PureThink did not have ownership rights to the Government Edition.   The Exclusivity agreement was designed to ensure Neo4j Inc had the proper rights to make business decisions, while still protecting PureThink's investment.<br><br>**DISPUTED**  The Government Edition Exclusivity agreement had an "exit agreement" that was designed to protect PureThink's investment and ensure PureThink would recognize a return on investment and be compensated in an "exit" situation ("Exit Agreement").<br><br>Until the exit clause algorithm could be put down in writing, Neo4j Inc and PureThink agreed that all decisions relating to the Government Edition and the Government Edition Exclusivity agreement would have to be agreed on unanimously by both parties. ("unanimous agreement") See Suhy Decl., ¶ 10.<br><br>Mr. Suhy's references the "unanimous agreement" requiring unanimous approval in communications with Neo4j.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296–97 (1970) (refusing to admit "negotiations" after the date on which "the parties had reached a stage of clear disagreement on the crucial question"); *accord Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (recognizing that the principle of "practical construction" only applies to acts before any dispute has arisen) (citing same). | Adron Decl., Ex. 13, green highlights

The Government Edition is not just a concept.  It is a software product combined with services which were specifically designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs.

Adron Decl.,  Exs. 14, 15

**"Neo4j US Government Edition is an "officially sponsored" package of offerings strategically designed to drive Neo4j adoption in the US Government market by drastically cutting overall cost of ownership, addressing critical government specific requirements, providing an efficient sole source path (sole source), and more…"** Suhy Decl.,  Ex. 16

**"Purpose of US Government Edition**

**Why the approach of defining a new edition compared to other approaches? This approach lowers the barrier of entry for Neo4j into the archaic us government market. How?**

**- Fast, Efficient Procurement (Sole source - no timely competitive procurements.) This has already been proven - every US Government sale has been through sole source.**

**- Drastically cuts down the total cost of ownership for an agency by addressing FISMA via features and support. Infact, this also applies to the community edition. The total cost of ownership for Neo4j Community Edition compared to Neo4j Government Edition can now be compared because of the high** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **costs of FISMA. (This is one focus we address during the sales cycle - when a lead agency is considering the community edition, ignoring all the enterprise benefits they receive.)"** Suhy Decl.,  Ex. 16 <br><br> Adron Decl., Ex. 18 <br><br> **UNDISPUTED** that Neo4j USA had the ownership rights of the Neo4j Government Edition.    The government edition was built for Neo4j Inc under the government edition exclusivity agreement. <br><br> -------- <br> **UNDISPUTED** that Neo4j USA had the ownership rights of the Neo4j Government Edition.    The government edition was built for Neo4j Inc under the government edition exclusivity agreement.  In return for Neo4j USA owning the software and benefiting from the business plan, an "exit agreement" was in place to ensure a return on investment would be recognized by PureThink that addressed re-assignment, retirement, or termination.  Suhy Decl., ¶ 10 |
| | <u>Fact 66:</u> Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | **DISPUTED** <br><br> The government edition was created to address more than just sole source justification.  It was created to address requirements that the US Government needed and which Neo4j Enterprise did not have.   The ability to sole source was one important aspect,  but not the only reason for creating the government edition.  See Fact 66 above. |
| | <u>Fact 67:</u> The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | **DISPUTED** <br> The agreement between PureThink and Neo4j USA was specifically focused on exclusivity around the Neo4j Government Edition.   The agreement itself protected PureThink's investment into the Government Edition and ensured it could see a return on the investment.  The agreement also allowed for sole source justification, but that was not its sole purpose. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Fact 66. |
| | **Fact 68:** Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller ***at any time and for any reason***. Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I). Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4. Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding. *See Stanford Hosp. & Clinics,* 2008 WL 5221071, at *7.<br><br>**Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination. It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr.,* 2 Cal.3d at 296–97 (1970); *accord Wolsey, Ltd.,* 144 F.3d at 1210. | **UNDISPUTED** that Neo4j USA owned the intellectual property making up the Gov't Edition. Under the Neo4j Government Exclusivity Agreement, PureThink built the Government Edition for Neo4j as part of the agreement.<br><br>**DISPUTED** that Neo4j USA could terminate PureThink as the exclusive reseller at any time and for any reason.<br><br>PureThink and Neo4j Inc agreed that until the exit agreement would be written down, both PureThink and Neo4j USA had to both fully agree on any changes to the Government Edition and the agreement which included revoking, retirement, re-assignment, or termination of any kind. This was done to protect the investment PureThink was making into the Government Edition Exclusivity agreement.<br><br>See Fact 66.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl Ex. 13, green highlights |
| | **Fact 69:** Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason." Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id.*, ¶ 9 and Ex. 7 (green highlights).<br><br>**Additional Fact:** There is no evidence cited establishing that the parties agreed to drop the language that Neo4j USA could cancel at any time for any reason. Rather, as demonstrated by the internal April 11, 2015 letter that was returned with Mr. Nordwall's signature contained this language. | **UNDISPUTED** that Suhy sent proposed language for an internal version of the agreement, which stated that the agreement could be canceled at any time for any reason. However, this language was dropped and was not executed. See Fact 66<br><br>**DISPUTED** that there were prior representations relating to being able to cancel the agreement at any time. The exhibits referenced by plaintiff were the first documents related to the planning of the government edition. Mr. Suhy proposed this |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | *See* Ratinoff Decl., ¶ 11 and Ex. 9.  After Neo4j USA returned the signed letters for a second time, Suhy acknowledged receipt and assured Neo4j USA that he would be signing.  Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H.<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding.  *See Stanford Hosp. & Clinics,* 2008 WL 5221071, at *7.<br><br>**Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr.,* 2 Cal.3d at 296–97 (1970); *accord Wolsey, Ltd.,* 144 F.3d at 1210. | language, but that was dropped after speaking to Mr. Tim Brown, who pointed out that having that in there without a corresponding exit agreement would not make sense.<br><br> "I am sending it to Tim Brown who is our Govt procurement expert to see if the version we send to them is suitable." Ratinoff Decl., ¶ 9 and Ex. 7<br><br>After a discuss with Neo4j Inc, the wording to cancel the exclusivity agreement at any time for any reason was never signed or executed.<br><br>The only exclusivity agreement signed and executed had no mention of being able to cancel.  Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl., Ex. 20<br><br>Until the exit agreement was written down, Neo4j and PureThink agreed that any changes to the agreement would require both parties to approve until the exit agreement was written down.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl.,  Ex. 13 |
| | <u>Fact 70</u>: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight). | **DISPUTED**<br>An internal version of the sole source letter was never executed or agreed upon.<br><br>Ratinoff Decl., ¶ 11 and Ex. 9 simply shows 2 documents sent to Mr. Suhy for review but not executed on behalf of PureThink.<br><br>Mr. Suhy did not agree or sign the document stating that exclusivity agreement could be canceled. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | The only exclusivity agreement signed and executed had no mention of being able to cancel.  Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.  See Suhy Decl.,  Ex. 20<br><br>See fact 66, 70. |
| | **Fact 71:** The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements."  *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id*., ¶ 11 and Ex. 9 at p. 3. | **DISPUTED**<br>The document was not executed by Mr. Suhy or PureThink.<br><br>See fact 71. |
| | **Fact 72:** Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.,* ¶ 15 and Ex. 13). | **DISPUTED**  The executed agreements, both signed on April 11th, 2015 then on June 23rd, 2016 (Suhy Decl., Ex. 20 ) do not say anything about being able to cancel the exclusivity agreement.<br><br>Ratinoff Decl., ¶ 15 and Ex. 13 simply shows Erik Nolten sending unsigned documents to Charles Fischer on July 31st, 2015. |
| | **Fact 73:** After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason.  Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., ¶ 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same | **DISPUTED**<br>Nowhere in the email referenced in Ratinoff Decl., ¶ 17 and Ex. 15 does it say anything about Neo4j USA having the right to cancel PureThink's status as exclusive reseller any time or any reason.   It in fact highlights that the "unanimous agreement" was in place. Mr. Suhy told Mr. Broad – that Neo4j could request to revoke and assign to another company.  The agreement was specifically designed to ensure both parties had to agree.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>**UNDISPUTED** that Neo4j USA owned the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | understanding.  *See Stanford Hosp. & Clinics,* 2008 WL 5221071, at *7. | Government Edition.<br>See fact 66. |
| 2. PureThink's performance or excuse for nonperformance; | Fact 74:  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition."  Ratinoff Decl., ¶ 21 and Ex. 19. | **DISPUTED**:  The Government Edition was discontinued, not terminated on June 19th, 2015.<br><br>Ratinoff Decl., ¶ 21 and Ex. 19 "Neo4j is hereby providing notice that Neo4j is **discontinuing Neo4j Government Edition**.."<br><br>**UNDISPUTED** that Neo4j USA sent an email stating that PureThink was no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition. |
| | Fact 75:  Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website.  Ratinoff Decl., ¶¶ 22 and Ex. 20. | **DISPUTED**<br>The Government Edition was discontinued, not "terminated".  See Fact 75.<br><br>Mr. Suhy's email referenced in Ratinoff Decl., ¶¶ 22 and Ex. 20. Simply states:  "We are removing references from the website.  It hurts you guys as well but it does no good leaving it up as of now.  There is no acknowledgement or acceptance of any of Neo4j's actions as PureThink did not agree to this as was required in the Neo4j Government Exclusivity agreement.<br><br>**UNDISPUTED** that Suhy removed the references on the website. |
| | Fact 76:  After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by offering "Government Packages for Neo4j."  Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | **DISPUTED** that Neo4j USA terminated the service provider agreement (SPA).<br><br>The Government Packages for Neo4j were not the same packages that PureThink offered. |
| | Fact 77:  iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition.  Ratinoff | **DISPUTED** – Though originally in the marketing material, the Government Package for Neo4j did not ever bring |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24.  The only difference was it included Neo4j® EE for free under the AGPL.  *Id.* | anything over from PureThink or the Government Edition. Though this was originally the plan, it was never executed. The Government Packages for Neo4j were never sold.<br><br>See Suhy Decl., ¶ 11 |
| | **Additional Fact**:  Despite admitting "Neo4j USA owned the intellectual property making up the Gov't Edition," PureThink, continued to support the IRS's use of the Gov't Edition after Neo4j USA discontinued the Gov't Edition and terminated the PSA.  *See* Fact 68; Ratinoff Decl., ¶¶ 27, 29 and Exs. 25, 27 (yellow highlights).  iGov also told the IRS it intended to continue the use that same intellectual property under the CKGE Contract.  *See* Ratinoff Decl., ¶ 30 and Ex. 28. | |
| | Fact 78:  On July 11, 2017, the same day Neo4j USA terminated the SPA, Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | **DISPUTED** the emails referenced in Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24.  Only show what was planned.  The plan was scrapped however and no packages were ever sold. |
| | Fact 79:  Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition.  Dkt. No. 98-1, Exs. 14-15. | **UNDISPUTED** – The same "principle" behind PureThink and the Gov't Edition was John Mark Suhy. |
| | Fact 80:  Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement. Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | **DISPUTED**: iGov did not need to evade any restrictions, as it was not part of the "partner agreement" also known as "service provider agreement (SPA)". There are no terms in the SPA / partner agreement which forbid Mr. Suhy from creating a new company that would not be restricted by the SPA.<br><br>Note: Plaintiff's using the term. "partner agreement" here, but in Fact #77 above, they use the term "SPA". |
| | Fact 81:  iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, | DISPUTED: iGov was not PureThink's successor-in-interest.<br>iGov was created from scratch and no assets, or IP was transferred from PureThink.<br><br>Mr. Suhy was the only member of both companies at the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | locations and would keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.,* ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | time. |
| | **Additional Fact:** Suhy admitted to forming iGov to evade the restrictions in the PSA imposed on PureThink. Dkt. No. 98-1, Exs. 11, 14-15; accord Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. Suhy also informed the IRS that iGov was effectively PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. See Ratinoff Decl., Ex. 25, 27-28 (yellow highlights). Defendants further admit that Suhy is the sole shareholder of both Purethink and iGov, which is consistent with his representations to the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. | |
| | Fact 82: Defendants continued to actively market "Government Package for Neo4j" until they released ONgDB. Dkt No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24.<br><br>**Additional Fact/Objection:** There is no evidence to support Defendants' statement. Suhy was involved in the initial development of ONgDB, including making various commits and developing various solutions for that software. Ratinoff Reply Decl., Ex. B at 82:20-25. On July 9, 2018, Suhy told a potential sponsor of GFI that they had **assigned** to GFI the "Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS and most likely DHS." Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED**<br>Defendants did not release ONgDB. The Graph Foundation is the owner of ONgDB and responsible for its development and release.<br><br>Though the graph foundation was once part of the case, it has since settled with plaintiff and is no longer part of the case.<br><br>Mr. Suhy is only one of several volunteer committers and has no control or official position with the Graph Foundation. |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | Fact 83: Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence of Neo4j USA consented to an "exit agreement" requiring it to obtain PureThink's consent to discontinue the Gov't Edition. *See* Fact 66. | **DISPUTED.**<br>Neo4j USA had to get PureThink's agreement to make any changes which would have included cancellation, retirement, discontinuation, or any other activities that could risk the investment and expected return on the investment PureThink had.<br><br>See Fact 66. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 4. There are no resulting damages to PureThink. | **Fact 84:** PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30.<br><br>**Additional Fact:** Suhy told the IRS that iGov was acting as PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. See Ratinoff Decl., Ex. 25, 27-28 (yellow highlights). Defendants also admit that Suhy is the sole shareholder of PureThink and iGov, which is consistent with what he told the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. | DISPUTED<br>iGov is not the successor in interest to PureThink.<br><br>IRS did not award anything to iGov.<br><br>eGovernment Solutions paid Mr. Suhy a salary, the revenue from IRS was not passed through to iGov.<br><br>See Suhy Decl., ¶ 7<br>See fact 28 |
| | **Fact 85:** PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition. Ratinoff Decl., Ex. 2 at 173:15-177:17.<br><br>**Additional Fact:** Suhy speculated that PureThink might have other records reflecting time he spent allegedly working on the Gov't Edition, but could not specifically identify them. Ratinoff Decl., Ex. 2 at 173:15-178:24. Defendants did not produce such records during discovery and do not attach any to their opposition. | **DISPUTED**<br>PureThink told Neo4j that they would be working full time on the Government Edition. Full time means at or over 40 hours a week. See Adron Decl., Ex. 17 |
| | **Fact 86:** PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition. Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.,* ¶¶ 68-69 and Exs. 66-67.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence showing that PureThink "reinvested" any revenue into developing the Gov't Edition, and confirm that PureThink's financial statements do not show the alleged "reinvestment" made and expenses incurred in having Suhy allegedly work on the Gov't Edition. The fact that PureThink is an s-corporation, by definition, means Suhy as the sole shareholder is the receipt and beneficiary of all income received by PureThink. *See* 26 U.S.C. §§ 1361, 1366. | DISPUTED – PureThink is a single person company filing as an s-corporation for tax purposes. All the money remaining was invested into building the Government Edition by paying Mr. Suhy for his focus. The references in Exs 66-77 do not reflect the expenses which came in the form of paying Mr. Suhy to focus full time on the Government Edition.<br><br>**"The partner fees we receive from non-partner government sales help support these initiatives - they are not looked at as 'commissions'. For example - as government adoption grows and many more sales come in - we understand if the fees must be cut to help drive your growth - and since the <u>fees only go towards 'funding' our execution of the initiatives</u>. They are not part of our** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | future business modeling outside of operating costs. " Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 1 under Important Concepts.<br><br>PureThink's re-invested its money and time into building out the government edition.<br>**"Unlike other partners, we plan on re-investing revenue from the partner fees made from sales to help drive the expansion and adoption of Neo4j in the US Government. This is a key differentiator between us and other partners."** See Suhy Decl., Ex. 19 |
| | <u>Fact 87</u>: PureThink did not spend any money to develop the Gov't Edition.  Ratinoff Decl., Ex. 2 at 170:10-171:13.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence showing that PureThink "reinvested" any revenue into developing the Gov't Edition, and confirm that PureThink's financial statements do not show the alleged "reinvestment" made and expenses incurred in having Suhy allegedly work on the Gov't Edition. *See* Fact 86. | **DISPUTED**<br>PureThink reinvested the revenue from the partner fees into developing the government edition and performing the tasks required to uphold PureThink's side of the agreement.  The money paid Mr. Suhy to focus full time on the Government Edition.<br><br>See fact 87. |
| | <u>Fact 88</u>: Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. at 186:14-24; *id.*, ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | **DISPUTED**<br>Suhy did not use PureThink's work product from the Government Edition for iGov's "Government Packages for Neo4j".   The statements made were incorrect and iGov never used any work product from the Government Edition, nor did iGov ever sell any of these packages.<br><br>See fact 78<br>See Suhy Decl., ¶ 11 |
| | **Additional Fact**:  Despite admitting "Neo4j USA owned the intellectual property making up the Gov't Edition," PureThink, continued to support the IRS's use of the Gov't Edition after Neo4j USA discontinued the Gov't Edition and terminated the PSA.  *See* Fact 68; Ratinoff Decl., ¶¶ 27, 29 and Exs. 25, 27 (yellow highlights).  iGov also told the IRS it intended to continue the use that same intellectual property under the CKGE Contract.  *See* Ratinoff Decl., ¶ 30 and Ex. 28. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' did not violate the DMCA [17 U.S.C. § 1202(b)(1)]; [17 U.S.C. § 202(b)(3)]** | | |
| | Fact 90: Neo4J does not license the commercial product under the AGPL. Beene Dec. Ex 26 | UNDISPUTED: Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the AGPL. Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8). As of May 17, 2018, Neo4j stopped licensing Neo4j® EE under the AGPL. Dkt. No. 118 at 3:9-12. |
| | Fact 91: The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | UNDISPUTED: However, this is not a material fact that is relevant to Plaintiffs' DMCA claim. |
| | Fact 92: The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | UNDISPUTED: However, this is not a material fact that is relevant to Plaintiffs' DMCA claim. |
| | Fact 93: the Amended and Restated License Agreement required NEO4 J USA to comply with all third party software licenses including licenses approved by the Open Source Initiative such as the AGPL. Beene Dec. Ex 28, Section 2.1.3. | DISPUTED: This is a legal argument and conclusion, and is not a material fact relevant to Plaintiffs' DMCA claim. Neo4j Sweden is the licensor under the Neo4j Sweden Software License, which contains the only CMI subject to the DMCA claim. *See* Dkt. No. 98-2, ¶¶ 3-4, 11 and Ex. 3; Dkt. No. 118 at 2:15-18. |
| | Fact 94: Neo4J does not own all the code to Neo4J software. Beene Dec. Ex 27. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Beene Dec., Ex. 33, Kuhn Expert Report ¶¶99-107. Suhy Dec. Exs. 6, 21. | DISPUTED: This is not a material fact that is relevant to Plaintiffs' DMCA claim. *See Echostar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1205 (S.D. Cal. 2008) ("Nothing in the DMCA limits standing to the copyright owner"). Defendants further admit "Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE." *See* Fact 15; *accord* Dkt. No. 118 at 2:16-18 ("Neo4j Sweden owns of all copyrights related to the |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | Neo4j graph database platform, including the source code"). Moreover, the alleged DMCA violation is Defendants' unauthorized removal of CMI from 28 copies of the Neo4j Sweden Software License that governed 182 source code files in Neo4j® EE.  Dkt. No. 90 at ¶¶ 76-78, 166-173; Dkt. No. 183 at 6:18-7:4, 9:27-10:10.  In that regard, it is undisputed Neo4j Sweden owns the copyright to and released those 182 files for the first time under the Neo4j Sweden Software License. Fact 13; Dkt. No. 98-1, Ex. 38 at 6:23-16:24. |
| | Fact 95: Neo4J told the IRS they could only use the AGPL version if they made the project open in violation of the terms of the AGPL. Suhy Dec. Exs. 22, 23 | DISPUTED:  This is not a material fact that is relevant to Plaintiffs' DMCA claim, which is based on Defendants' violations that occurred after May 2018. See Facts 4-15. The communications cited by Defendants occurred on April 4, 2017, and thus pre-date and do not bear any relationship to Neo4j Sweden's subsequent release of Neo4j® EE v3.4 under the Neo4j Sweden Software License in May 2018.  See Facts 4, 7. |
| | Fact 96: The Fair Trade License document is a misrepresentation of the terms of the AGPL. Suhy Dec. Exs. 22, 23. Under the AGPL, anyone is licensed to use the software. The obligation to provide modified source code is only on conveyance. AGPL sections 2, 5 and 6. Suhy Dec., Ex 6. | DISPUTED: This is a legal argument, and is a not a material fact that is relevant to Plaintiffs' DMCA claim, which is based on Defendants' violations that occurred after May 2018. See Facts 4-15.  The cited Fair Trade License document is from 2012 and the referenced communications are from April 2017, and as a result do not bear any relationship to the subsequent release of Neo4j® EE under the Neo4j Sweden Software License. Compare Suhy Decl., Exs. 22-23 and Dkt. No. 98-2, ¶¶ 11-13. |
| | Fact 97: There is no obligation under the AGPL to make use of Neo4J software an open project. AGPL, Suhy Dec., Ex 6. | DISPUTED: This is a legal argument, and is a not a material fact that is relevant to Plaintiffs' DMCA claim and Suhy's removal of Neo4j Sweden's CMI. Defendants do not cite to this "fact" in their opposition. It is also unclear what Defendants mean by "to make use of Neo4J software an open project." |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 98: The AGPL trademark is owned by FSF. AGPL, Suhy Dec., Ex 6. | DISPUTED: This is not a material fact that is relevant to Plaintiffs' DMCA claim.  The Court previously rejected "'the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.'"  Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc. v. Graph Found.*, Inc., No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020), *aff'd* Dkt. No. 140. |
| | Fact 99: The license grant to use AGPL license restricts changes:  AGPL "Everyone is permitted to copy and distribute verbatim copies of this license Document, but changing is not allowed." Suhy Dec., Ex 6. | DISPUTED: This is a legal argument that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | Fact 100: Neo4J Sweden violated the AGPL by changing the AGPL adding the commons clause. Suhy Dec., Ex 6. | DISPUTED: This is a legal argument and conclusion that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | Fact 101: Neo4J Sweden inclusion of the commons clause violated FSF' AGPL license terms. Suhy Dec., Ex 6. | DISPUTED: This is a legal argument and conclusion that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | Fact 102: Neo4J USA failed to provide verbatim copies of the AGPL license with its commercial license as required under the AGPL section 4.  Suhy Dec. Exs. 6, 24; Beene Ex. 26 | DISPUTED: This is a legal argument that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| **Plaintiffs Acted With Unclean Hands** | See Facts 90-102 | *See* Facts 90-102 |
| | Fact 103: No communication shows Neo4j, Inc. advised the PTO they did not own the NEO4J Trademark or change the date of first use. Suhy Dec., ¶15 | DISPUTED:  This is not a material fact.  The Court already dismissed/struck with prejudice Defendants' counterclaim and affirmative defense based on Neo4j USA allegedly misrepresenting the date of first use and |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | its ownership of the Neo4j Mark. Dkt. No. 70 at 8:4-18. The Court further held that Defendants could not base *any* affirmative defense on such facts. Dkt. No. 110 at 5:16-6:4. Moreover, as affirmed by the Ninth Circuit, Neo4j USA was and is the owner of the Neo4j Mark for purposes of registration in the United States. Dkt. No. 118 at 11:16-12:26, 13:18-18:1 *aff'd* Dkt. No. 140. |
| **Neo4j USA Breached the Exclusivity Agreement** | | |
| | Fact 104: Neo4j consented to an Exclusivity Agreement with PureTink LLC. Suhy Dec., Ex. 20 | **DISPUTED:** This is a legal conclusion unsupported by competent evidence of Neo4j USA's consent to the terms described in the Suhy Declaration. Suhy told Neo4j USA that the alleged exclusivity agreement consisted of two letters: "one that we give to agencies on your letterhead [], and 1 between us that says you can cancel at any time for any reason." Ratinoff Decl., Ex. 7 (green highlights). Suhy sent proposed drafts of those letters in an April 10, 2015 email where the internal letter stated "[Neo4j USA] has the right to cancel this exclusivity agreement at any time and for any reason." *Id.*, Ex. 8 (green highlights). Consistent with Suhy's representations, Neo4j USA signed two letters on April 11, 2015 with the internal letter containing provision giving Neo4j USA the unilateral and unconditional right to cancel the arrangement. *Id.*, Exs. 9, 13. After Neo4j USA returned the signed letters for a second time, Suhy acknowledged receipt and assured Neo4j USA that he would be signing. Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H. |
| | Fact 105: The Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3 | **DISPUTED:** Defendants fail to cite to competent evidence establishing that Neo4j USA understood that there was an enforceable exclusivity agreement separate from the SPA and consented to the same, which is necessary to establish mutual consent. *See Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*, 2008 |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind); *see also Hohs v. Allstate Ins. Co.,* 2010 WL 11706760, at *5-6 (N.D. Cal. Feb. 10, 2010); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.,* 2011 WL 1195680, at *3-5 (C.D. Cal. Mar. 29, 2011). |
| | Fact 106: The Exclusivity Agreement was subject to an exit clause. Suhy Dec. ¶10, Ex. 20 | DISPUTED: There is no exit clause in Exhibit 20 to the Suhy Declaration, and Defendants fail to offer any competent evidence establishing that Neo4j USA agreed to one when it allegedly entered into the exclusivity agreement on April 11, 2015. Likewise, Defendants fail to cite to any competent evidence that Neo4j USA assented to subsequent oral "exit agreement." The uncontroverted evidence also suggests the contrary. *See* UDF No. 104. |
| | Fact 107: iGov is not a successor in interest to PureThink. The work scope for PureThink and iGov were substantially different. Beene Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. iGove did not use any assets of PureThink. Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. | DISPUTED: Suhy admitted to forming iGov to evade the restrictions in the PSA imposed on PureThink. Dkt. No. 98-1, Exs. 11, 14-15; *accord* Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. Suhy also informed the IRS that iGov was effectively PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. *See* Ratinoff Decl., Ex. 25, 27-28 (yellow highlights). Defendants further admit that Suhy is the sole shareholder of both Purethink and iGov, which is consistent with his representations to the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. |
| | Fact 108: Neo4j USA prevented PureThink's performance by prohibiting it from engaging with government agencies. Dkt. No. 177, Ex. D | DISPUTED: PureThink was restricted by Section 4.3.1 of the SPA from providing paid support services to government agencies using open source versions of Neo4j® softer. By agreeing to dismiss their IIPEA claim with prejudice in the face of a motion to dismiss, Defendants conceded the validity of those restrictions. |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | *See* Dkt. No. 171, ¶¶ 22-47; Dkt. Nos. 172, 176. |
| | Fact 109: Mr. Suhy worked full time under the Exclusivity Agreement. Beene Decl., Ex. 17 | **DISPUTED:** This assertion is not supported by competent evidence.  PureThink did not maintain any time sheets that could support this assertion.  Ratinoff Decl., Ex. 2 at 173:15-178:24.  Defendants also do not provide any other records accounting for the time he spent allegedly working on  the Gov't Edition.  *See* Ratinoff Reply Decl., Ex. A at 177:7-178:14. |
| | Fact 110: Plaintiffs have made substantial government sales. Beene Dec., Ex. 29 | **UNDISPUTED:** However, this is not a material fact that is relevant to PureThink's breach of contract claim. |

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports the facts as asserted by Plaintiffs.

Dated:  June 29, 2023        By:  */s/ Jeffrey M. Ratinoff*
                                             Jeffrey M. Ratinoff, Attorney for Plaintiffs