John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Arthur E. Rothrock, Bar No. 312704
arothrock@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiffs
NEO4J, INC. and NEO4J SWEDEN AB

Adron W. Beene, Bar No. 129040
adron@adronlaw.com
Adron G. Beene SB# 298088
adronjr@adronlaw.com
Attorney at Law
7960 Soquel Drive Suite #296
Aptos, CA 95003
Tel: (408) 392-9233

Attorneys for Defendants and
Counterclaimants PURETHINK LLC,
IGOV INC., and JOHN MARK SUHY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO.  5:18-cv-07182-EJD<br><br>**JOINT FINAL PRETRIAL CONFERENCE STATEMENT** |

Plaintiffs and Counter-Defendants Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs" or "Neo4j") and Defendants and Counterclaimants PureThink LLC and iGov, Inc., and Defendant John Mark Suhy (collectively "Defendants"), by and through their undersigned attorneys, and in accordance with this Court's Standing Order for Civil Cases, respectfully submit this Joint Final Pretrial Conference Statement.

## I.        SUBSTANCE OF THE ACTION

Neo4j, Inc. ("Neo4j USA") is a Delaware corporation with its principal place of business in San Mateo, California, specializing in graph database management systems. Neo4j USA's platform helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated.  Neo4j USA is the parent corporation of Neo4j Sweden AB ("Neo4j Sweden"), which in turn is a wholly owned subsidiary of Neo4j USA. Neo4j Sweden owns the copyrights related to the Neo4j graph database platform, including the source code, and has licensed those copyrights to Neo4j USA.  Defendants dispute Neo4j Sweden's complete ownership of underlying the source code in response to Plaintiffs' DMCA claim.

In conjunction with its business, Neo4j USA filed for and obtained several federally registered trademarks, including U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").  Defendants contend that Neo4j USA made certain misrepresentations to the USPTO in obtaining that registration in the context of their unclean hands defense.

John Mark Suhy is the individual that founded PureThink LLC ("PureThink"), which was a software and information technology consulting company specializing in supporting agencies within the U.S. Government that use Neo4j graph database software.  Mr. Suhy also founded iGov Inc. ("iGov"), which similarly specializes in providing support and development services to agencies within the U.S. Government using Neo4j graph database software licensed under the AGPL, ONgDB, and other graph database software as part of a larger platform.

On November 28, 2018, Neo4j USA filed suit against PureThink, iGov and Mr. Suhy (collectively "Defendants") for violations of the Lanham Act and California's Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200 et seq.  These claims were primarily based on Defendants'

1    infringement of the Neo4j Mark and the false advertising in relation thereto. Neo4j USA also

2    asserted a claim for breach of a reseller partner agreement that PureThink had entered into with

3    Neo4j USA in September 2014 (the "Partner Agreement") and was terminated by Neo4j USA in

4    July 2017 for breach. *See* Dkt. No. 1.

5         Neo4j USA filed its First Amended Complaint ("FAC") on October 23, 2019. *See* Dkt. Nos.

6    35, 37. The FAC provided, *inter alia*, additional and more recent examples of Defendants'

7    continuing violations of the Lanham Act. The FAC also added Neo4j Sweden as a plaintiff, which

8    in turn asserted claims against Defendants for violations of the DMCA.  Plaintiffs have since filed

9    their Third Amended Complaint, which is their current operative pleading. Dkt. No. 90.   On

10   October 19, 2020, Defendants filed their operative answer thereto.  Dkt. No. 91.

11        On February 9, 2019, Defendants filed their original counterclaim.   Dkt. No. 22.

12   Defendants, *inter alia*, asserted causes of actions for: (1) intentional interference with prospective

13   economic advantage; (2) intentional interference with contract; (3) breach of contract; and (4)

14   declaratory relief on whether certain post-termination restrictions in the Partner Agreement violated

15   Cal. Bus. & Prof. Code §16000 and the AGPL. Defendants filed their First Amended Counterclaims

16   on December 9, 2019 adding additional declaratory relief claims raising several legal issues.   On

17   March 17, 2023, Defendants filed their Fourth Amended Counterclaim, which is their operative

18   pleading.  Dkt. No. 177.  Plaintiffs filed their answer thereto on March 24, 2023.  Dkt. No. 178.

19        On May 31, 2021, the Court bifurcating the case into two phases. Dkt. Nos. 66, 68. Phase 1

20   was to adjudicate Plaintiffs' claims pursuant to the Lanham Act and California's unfair competition

21   law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") and Defendants' counterclaims and related

22   defenses (excluding their unclean hands defense).  *See* Dkt. No. 68, ¶ 3. The Court found in favor

23   of Plaintiffs on several claims and defenses via a motion for judgment on the pleadings and motions

24   to dismiss and to strike (Dkt. Nos. 70, 85, 110), and ultimately on a motion for partial summary

25   judgment that was granted in favor of Neo4j USA on issues pertaining to Defendants liability under

26   the Lanham Act and UCL claims and issued a Preliminary Injunction against Defendants

27   prohibiting more unlawful conduct (Dkt. No. 118). Defendants have asserted an unclean hands

28   defense in response to Neo4j USA's Lanham Act and UCL claims, the viability of which is subject

1   to Plaintiffs' pending second motion for summary judgment which defendants have opposed based
2   on evidence of unclean hands.

3        Defendants appealed the Court's May 18, 2021 order. *See* Dkt. No. 121. The Ninth Circuit
4   heard the appeal on an expedited basis pursuant to its rules on appeals of preliminary injunctions
5   and affirmed the Court's ruling. Dkt. No. 141.

6        After the conclusion of Phase 2, Plaintiffs filed a second motion for summary judgment on
7   the issue of Defendants' liability under the DMCA claim, as well as for summary judgment on
8   Defendants' Fourth Cause of Action for Breach of Exclusivity Agreement and their unclean hands
9   affirmative defense. Dkt. No. 183.  After the motion was fully briefed by parties, the Court took it
10  under submission after hearing oral argument by parties on July 27, 2023.  Dkt. No. 192.  As of the
11  time of this Statement, that motion remains under submission.

12       The parties have also entered into a series of stipulations wherein they agreed to dismiss
13  certain claims, counterclaims and defenses to streamline this action.  *See* Dkt. Nos. 133, 144, 176.
14  As a result of these stipulations and the Court's rulings on the aforementioned dispositive motions,
15  the following claims, counterclaims and defenses remain to be decided.

16       ***Plaintiffs' Remaining Claims Asserted in their Third Amended Complaint (TAC)[1]***

17       1.       Neo4j USA's First Cause of Action for Trademark Infringement, 15 U.S.C. § 1114,
18  against Defendants.  Dkt. No. 90 at ¶¶ 99-111.  With the Court already holding that Defendants
19  infringed the Neo4j Mark (Dkt. No. 118), the only issues that remain to be tried with this claim are
20  the (a) amount of actual damages caused by the infringement that Neo4j USA may recover; (b) the
21  amount of Defendants' ill-gotten profits from their acts of infringement subject to disgorgement;
22  (c) whether Defendants' infringement of the Neo4j Mark constitutes an exceptional case where
23  Neo4j USA is entitled to its attorneys' fees, and if so the amount of fees that it may recover; and
24  (d) whether a permanent injunction should be imposed and the terms thereof.  *See* 15 U.S.C. §
25  1117(a).

26

27

28

---

[1] Defendants do not adopt and dispute some of Plaintiffs' contentions regarding its claims.

2.      Neo4j USA's Second Cause of Action for False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a), against Defendants.  Dkt. No. 90 at ¶¶ 112-119.  With the Court already finding that Defendants engaged in false advertising and false designation of origin (Dkt. No. 118), the only issues that remain to be tried with this claim are (a) the amount of actual damages caused by the false advertising and false designation of origin that Plaintiffs are entitled to recover; (b) the amount of Defendants' profits generated from their violations of the Lanham Act that are subject to disgorgement; (c) whether this constitutes an exceptional case entitling Neo4j USA to its attorney's fees, and if so the amount of attorneys' fees that it may recover; and (d) whether a permeant injunction should be imposed and the terms thereof.  *See* 15 U.S.C. §§ 1116, 1117.

3.      Neo4j USA's Third Cause of Action for Unfair Competition, 15 U.S.C. § 1125(a) against Defendants.  Dkt. No. 90 at ¶¶ 120-126.   With the Court already finding that Defendants engaged in unfair competition under the Lanham Act (Dkt. No. 118), the only issues that remain to be tried with this claim are (a) the amount of actual damages caused by unfair competition that Plaintiffs may recover; (b) the amount of Defendants' profits generated from their violations of the Lanham Act that are subject to disgorgement; (c) whether this constitutes an exceptional case entitling Neo4j USA to its attorney's fees, and if so the amount of fees that it may recover; and (d) whether a permeant injunction should be imposed and the terms thereof.  *See* 15 U.S.C. §§ 1116, 1117.

4.      Neo4j USA's Fourth Cause of Action for Unfair Competition, Cal. Bus. Prof. Code §§ 17200 et seq., against Defendants.  Dkt. No. 90 at ¶¶ 127-133.  With the Court already finding that Defendants engaged in unfair competition in violation of California's Unfair Competition Law (Dkt. No. 118), the only issues that remain to be tried with this claim are the (a) the amount of Defendants' profits generated from their acts of unfair competition are subject to disgorgement; and (b) whether a permeant injunction should be imposed and the terms thereof.

5.      Plaintiffs' Eighth Cause of Action for Unauthorized Distribution of Altered Copyright Management Information, 17 U.S.C. § 1202(b), against Defendants.  Dkt. No. 90 at ¶¶ 166-173.   Plaintiffs' DMCA claim is based on Defendants' unauthorized removal and alteration of Neo4j Sweden's copyright management information (CMI) found in the Neo4j Sweden Software

License governing certain source code files found in Neo4j® EE v3.4 and Neo4j® EE v3.5, and their redistributing that source code as ONgDB v3.4 and ONgDB v3.5 in manner that would result in the infringement of Neo4j Sweden's copyrights.  Plaintiffs filed a motion for summary judgment on liability under 17 U.S.C. § 1202(b)(1) and (3).  *See* Dkt. No. 183.  If the Court were to grant Plaintiffs' pending motion, it would resolve the question of Defendants' liability under the DMCA and only leave the issues of (a) the amount of actual damages that Plaintiffs are entitled to recover as provided by 17 U.S.C. §1203(c)(1)(A) ; (b) the amount of Defendants' profits generated from their violations that are subject to disgorgement; and (c) whether the Court should award Plaintiffs their attorneys' fees.

### *Defendants' Affirmative Defenses Asserted in their Answer to Plaintiffs' TAC*

1.      Fourth Affirmative Defense of Unclean Hands. Dkt. No. 91 at 16:20-19:7.

2.      Tenth Affirmative Defense for Waiver. *Id.* at 22:11-15

3.      Eleventh Affirmative Defense for Setoff. *Id.* at 22:17-19

### *Defendants' Counterclaims Asserted in their Fourth Amended Counterclaims (FACC)*

1.      PureThink's Fourth Cause of Action for Breach of Exclusivity Contract to Government against Neo4j USA.  Dkt. No. 177 at ¶¶ 53-57.

2.      Defendants' Eighth Cause of Action for Declaratory Relief, Commons Clause in AGPL does not Apply to Professional Services against Neo4j Sweden.  Dkt. No. 177 at ¶¶ 58-65.

### *Plaintiffs' Affirmative Defenses Asserted in their Answer to Defendants' FACC*

1.      Second Affirmative Defense for Lack of Jurisdiction based there being no actual case and controversy with Defendants' Eighth Cause of Action.  Dkt. No. 178 at 10:6-9.

2.      Ninth Affirmative Defense for Intervening Cause and/or Lack of Cause with respect to the damages Defendants are seeking in conjunction with their counterclaim for breach of exclusivity contract. Dkt. No. 178 at 11:9-17.

3.      Twelfth Affirmative Defense for Unclean Hands, which is based on Defendants' violations of the Partner Agreement's restriction on supporting open source Neo4j software with the IRS, as well as their violations of the Lanham Act and DMCA.  Dkt. No. 178 at 12:9-15.

4.     Fourteenth Affirmative Defense for Set-Off, where any alleged damages suffered by Defendants should be set-off by: (a) the amounts PureThink withheld from the initial IRS CKGE contract due under the SPA; and (b) Defendants' ill-gotten profits generated from their violations of the Lanham Act and the DMCA.  *Id.* at 12:20-27.

5.     Fifteenth Affirmative Defense for Unjust Enrichment for sums including (a) the amounts Defendants withheld from the initial IRS contract due under the SPA; and (2) Defendants' ill-gotten profits generated from their violations of the Lanham Act and the DMCA. *Id.* at 13:1-12.

6.     Eighteenth Affirmative Defense for First Amendment Freedom of Petition, which applies to Defendants' breach of contract claim and unclean hands defense, which rely upon or cite to Neo4j USA's official protest of the IRS' intent to award the CKGE contract to PureThink. *Id.* at 13:25-14:2.

## II.    RELIEF SOUGHT

Without the parties waiving any of their respective remaining claims or defenses, or conceding any legal or factual issues, the parties are seeking the following relief:

### A.    Plaintiffs' Statement of Relief Sought

#### 1.    Remedies Available under the Lanham Act

Upon establishing a violation of the Lanham Act, "the plaintiff shall be entitled … to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  Actual damages sustained by a plaintiff can include commercial injury, such as lost sales.  *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 644 (N.D. Cal. 2019) ("Lost sales for the plaintiff because of the defendant's false advertising is the 'paradigmatic direct injury from false advertising.'") (*quoting Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014)). The Ninth Circuit has held that commercial injury is generally presumed "when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers."  *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (emphasis in original), 653 F.3d at 826; *see also Lexmark*, 134 S.Ct. at 1393 ("diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising").

A plaintiff may recover an infringing defendant's profits in two scenarios: (1) as a measure of the plaintiff's own damages; or (2) on a theory of disgorgement of the defendant's unjustly obtained profits. *See Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016); *see also Quia Corp. v. Mattel, Inc*., No. C 10-1902 JF HRL, 2011 WL 2749576, at *7 (N.D. Cal. July 14, 2011).   In either scenario, a plaintiff need only prove "defendant's gross profits from the infringing activity with reasonable certainty." *Quia Corp*., 2011 WL 2749576, at *8.  The defendant then "must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).

In exceptional Lanham Act cases, the Court may award reasonable attorneys' fees to the prevailing party.  District courts analyzing a request for fees under the Lanham Act should examine the "totality of the circumstances" to determine if the case was exceptional.  *See SunEarth, Inc*., 839 F.3d at 1181.  District courts may exercise equitable discretion and consider nonexclusive factors including, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" based on the preponderance of the evidence. *Id*. (*quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 fn 6, (2014)).

A case may be exceptional where the infringement was willful. *See Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 fn 13 (9th Cir. 2023) ("[b]ecause the *SunEarth* test is less stringent than the previous 'willful infringement' standard, it stands to reason that this case of willful infringement would satisfy the *SunEarth* test"); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc*., 2019 WL 1429588, at *7 (S.D. Cal. Mar. 29, 2019) (recognizing that inequitable conduct or willful infringement still may make a case exceptional under *SunEarth*).   Willful infringement occurs where a defendant engages in deliberate, false, misleading, or fraudulent conduct.  *Lindy Pen*, 982 F.2d at 1406.  The Ninth Circuit has also stated willful infringement as "attempting to gain the value of an established name of another." *Id*.

The Court also has the discretion to award prejudgment interest, and willful violations of the Lanham Act are reasons for doing so.  *See Fitness Anywhere LLC v. WOSS Enterprises LLC*, No. 14-CV-01725-BLF, 2018 WL 6069511, at *7 (N.D. Cal. Nov. 20, 2018) (court awarded pre-

judgment interest based on the 52-week T-Bill rate, compounded annually due to the willful and deliberate nature of defendant's infringement of plaintiff's mark).

In cases where attorneys' fees are awarded, the Court may make the non-prevailing party's attorneys jointly and severally liable for the payment thereof pursuant to 28 U.S.C. § 1927. *See Int'l Intell. Mgmt. Corp. v. Lee Yunn Enterprises*, Inc. (U.S.A.), No. CV 08-7587 R JWJX, 2009 WL 9137315, at *3–4 (C.D. Cal. Dec. 14, 2009). Under Section 1927, The Court has the inherent authority to order the attorney for the non-prevailing party to compensate a prevailing party if the attorney "so multiplies the proceedings in any case unreasonably and vexatiously...." 28 U.S.C. § 1927. In such a case, the Cour may order the non-prevailing attorney to "satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." Section 1927 is not limited to patent law, so the Federal Circuit has held that regional circuit law controls the analysis of whether to impose Section 1927 sanctions against a party in a patent infringement case. *See, e.g., Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed.Cir.2003).

In the Ninth Circuit, fees may be awarded under Section 1927 on a showing of subjective bad faith, which may be met where counsel "'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.' " *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1107 (9th Cir. 2002) (*quoting In re Keegan Mgmt. Co., Sec. Lit*., 78 F.3d 431, 436 (9th Cir. 1996)). Thus, sanctions are available when counsel either knowingly or recklessly asserts a frivolous claim or defense. *Id*. Section 1927 permits a prevailing party to recover "the excess costs, expenses and attorneys' fees reasonably incurred" as a result of the opposing counsel's misconduct. *Int'l Intell. Mgmt. Corp.*, 2009 WL 9137315, at *3–4.

Finally, the Lanham Act vests the Court with the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner. 15 U.S.C. § 1116(a); *see Century 21 Real Estate LLC v. Ed/Var Inc.*, 2014 WL 3378278, at *6 (N.D. Cal. July 10, 2014). Generally, where "a plaintiff demonstrates a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable injury if injunctive relief is not granted." *Sun Microsystems, Inc. v. Microsoft Corp*., 999 F.Supp. 1301, 1311 (N.D. Cal. 1998).

### 2.	Remedies Available under the DMCA

Under the DMCA, Plaintiffs may recover "the actual damages suffered … as a result of the violation, ***and*** any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages." 17 U.S.C. § 1203(c)(2) (emphasis added). Actual damages may consist of lost licensing fees and renewal fees, as well as lost profits. *See Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 707-708 (9th Cir. 2004) (affirming an actual damages award based on the copyright holder's actual price quote to the infringer). A plaintiff may also recover hypothetical-license damages as actual damages. *Id.* The Court has the discretion to award prejudgment interest. *Id.* at 718. With respect to disgorgement, plaintiff must only prove defendants' gross revenue in establishing defendant's ill-gotten profits. *See Netdragon Websoft, Inc. v. Toft*, 2012 WL 13008123, at *3 (C.D. Cal. Apr. 24, 2012); Defendant must then prove its deductible expenses and the elements of profit attributable to factors other than the wrongful conduct. *Id.* If defendant fails to present such poof, "the gross [revenue] figure stands as the defendant's profits." *Enter. Tech. Holdings, Inc. v. Noveon Sys.*, Inc., No. 05-CV-2236 W (CAB), 2008 WL 11338356, at *15 (S.D. Cal. July 29, 2008) (internal quotes and citation omitted).

The DMCA allows for an award of "reasonable attorney's fee to the prevailing party." 17 U.S.C. § 1203(b)(5). In deciding whether the award of attorney's fees is appropriate in cases brought under the Copyright Act, courts consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 n.19 (1994); *see also Unicom Systems, Inc. v. Farmers Group, Inc*., 405 F. App'x 152, 155 (9th Cir. 2010) (approving of use of the *Fogerty* factors in determining whether to award fees under Section 1203(b)(5)). Courts will award a plaintiff its attorneys' fees where defendant's violations of the DMCA were willful. *See, e.g., Sony Computer Entm't Am., Inc. v. Divineo, Inc*., 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006); *Dish Network, L.L.C. v. SatFTA*, No. 5:08-CV-01561 JF PSG, 2011 WL 856268, at *7 (N.D. Cal. Mar. 9, 2011).

Finally, the DMCA provides that the Court "may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of Section

1    1202(b).  17 U.S.C. § 1203(b)(1); *see also Apple Inc. v. Psystar Corp.,* 673 F. Supp. 2d 943, 948

2    (N.D. Cal. 2009), *aff'd,* 658 F.3d 1150 (9th Cir. 2011).  To obtain injunctive relief, a plaintiff must

3    show that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary

4    damages, are inadequate to compensate for that injury; (3) considering the balance of hardships

5    between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest

6    would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange*, L.L.C., 547

7    U.S. 388, 391 (2006); *accord Apple Inc.,* 673 F. Supp. 2d at 948 (citing same).

8            **3.**        **Remedies Sought by Plaintiffs Under the Lanham Act and DMCA**

9            **a.**        **Plaintiffs' Lost Profits**

10         In its May 18, 2021 Order, the Court held that Defendants' use of the Neo4j Mark in relation

11   to their promotion of "Neo4j Enterprise", "Neo4j for Government" and similar uses, as well as their

12   promotion of ONgDB, which was based on the source code for certain versions of Neo4j Enterprise

13   Edition ("Neo4j® EE"), constituted trademark infringement in violation of Sections 1114(1) and

14   1125(a) of the Lanham Act.  Dkt No. 118 at 13:2-22:21.  Likewise, the Court held that statements

15   made by Defendant in promoting ONgDB and their support services of users of that software

16   constituted false advertising and false designation of origin in violation of Section 1125(a) of the

17   Lanham Act and California's Unfair Competition Law (UCL).  *Id.* at 22:22-32:14.  As found by

18   the Court, Defendants' false statements generally fell into two groups: (1) that "ONgDB were "free

19   and open source" versions of or alternatives to commercially licensed Neo4j® EE; and (2) that

20   ONgDB was a "drop-in replacement for an existing commercial licensed distribution of the same

21   version number" of Neo4j® EE.  *Id.* at 23:20-28:19.

22         Plaintiffs' DMCA claim is based on Defendants' unauthorized removal and alteration of

23   the Commons Clause, which prohibited the non-paying public from engaging in commercial resale

24   and certain commercial support services, and Neo4j Sweden's other CMI from the software license

25   governing the source code for Neo4j® EE v3.4 and Neo4j® EE v3.5. *Id.* Defendants then

26   redistributed that source code containing the DMCA violations as rebranded ONgDB v3.4 and

27   ONgDB v3.5 software to commercial users and offered paid support services to those users or

28   otherwise caused that source code to be redistributed containing the DMCA violations.  This is the

1   same misconduct that the Court found to constitute false advertising under the Lanham Act.  *See*

2   Dkt. No. 118 at 24:7-25:19; *see also Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD,

3   2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020).

4   During expert discovery, Plaintiffs disclosed Steven Boyles, a forensic and certified public

5   accountant, as an expert witness who will testify at trial that Plaintiffs' actual damages comprise of

6   lost profits caused by Defendants' violations of the Lanham Act and DMCA in an amount totaling

7   at least **$4,857,790**.  This includes $2,113,218 in lost revenue after Next Century and the Maryland

8   Procurement Office (MPO) adopted ONgDB for free rather than pay for a two-year commercial

9   subscription for Neo4j® EE, which the Court previously recognized in granting summary judgment

10   on Neo4j USA's false advertising claims. *See* Dkt. No. 118 at 29:13-30:19.

11   Documents supporting this component of Plaintiffs' damages will primarily include: (a)

12   internal email communications between stakeholders at Next Century; (b) emails between

13   employees of Next Century and Neo4j USA (c) emails between Suhy and stakeholders at Next

14   Century; (d) emails between Suhy and stakeholders at Graph Foundation, Inc. ("GFI"); (e) emails

15   between stakeholders at GFI and Next Century; (f) Neo4j USA's $2.2 million proposed

16   subscription bundle; and (g) certain internal Neo4j USA pricing and financial information.

17   Plaintiffs will also expect to present testimony from Jason Zagalsky of Neo4j USA and Jim Weyant

18   of Next Century (subsequently acquired by CACI).

19   Plaintiffs' lost revenue also consists of $2,744,572 attributed to the IRS's adoption and use

20   of ONgDB in a number of servers and projects under the improper license in lieu of purchasing a

21   commercial license for Neo4j® EE.  Documents supporting this damages claim will primarily

22   include: (a) internal email communications between stakeholders at the IRS; (b) emails between

23   employees of IRS and Neo4j USA; (c) emails between Suhy and stakeholders at the IRS; and (d)

24   internal Neo4j USA financial and pricing information.  Plaintiffs also expect to offer testimony

25   from Jason Zagalsky of Neo4j USA, Michael Dunn of the IRS and Mr. Suhy as an adverse witness

26   in establishing these lost profits.

27   **b.     Disgorgement of Defendants' Profits**

28   Mr. Boyles will testify at trial that Defendants generated **$1,562,082** in ill-gotten profits as

1   a result of their violations of the Lanham Act and DMCA. The evidence will show this consists of

2   $1,316,000 iGov and Suhy received from providing support services under a 5-year contract to

3   build and support the IRS' CKGE analytics platform ("CKGE Contract") between the IRS and

4   eGovernment Solutions ("eGov Sol"), another entity in which Suhy had an ownership interest at

5   the time the IRS awarded the contract.

6        The evidence will show that the scope of work under this contract, required iGov and Suhy

7   to perform all operations and maintenances duties for all components of the CKGE framework,

8   which included the installation and use of graph database software. During the course of

9   performance, the IRS obtained Suhy's input on whether to implement unrestricted and improper

10  licensed ONgDB for free instead of paying for a commercial license Neo4j® EE as the graph

11  database software in the CKGE framework. Thereafter, Suhy and iGov were responsible for

12  supporting, maintaining and updating ONgDB on an internal repository at the IRS, which violated

13  the commercial restrictions of the now-removed Commons Clause.

14       The evidence also will show that eGov Sol considered the CKGE Contract to belong to

15  Suhy, which he had sole responsibility and control over the $1,316,000 received from the IRS.

16  While Plaintiffs need only show Defendants' gross profits, Mr. Boyles is expected to testify that

17  the financial statement produced by iGov do not reflect any cost of goods sold. Thus, Defendants

18  cannot show they are entitled to any deductions from their gross profits.

19       Documents supporting the disgorgement of the gross profits received by Defendants in

20  supporting improperly licensed ONgDB at the IRS will primarily include: (a) CKGE Contract

21  documents; (b) internal email communications between stakeholders at the IRS; (c) emails between

22  Suhy and stakeholders at the IRS; (d) emails between Suhy and stakeholders at eGov Solutions; (e)

23  a stock sale agreement between Suhy and other shareholders of eGov Solutions; (f) iGov's financial

24  documents; and (f) eGov Solutions' banking and financial documents. Plaintiffs also expect to

25  offer testimony from Michael Dunn of the IRS, Ashwani Mayur of eGov Solutions, and Mr. Suhy

26  as an adverse witness.

27       The evidence will show that Defendants ill-gotten profits also consists of $246,082.55

28  received by Suhy and iGov under certain subcontracts with ASR Analytics, LLC ("ASR"). The

1   evidence will also show that the work under these subcontracts and related task order required Suhy

2   and iGov to provide support, consulting and development services for the CKGE and other

3   installations of ONgDB at the IRS between 2019 and 2022.  Had Suhy not removed the Commons

4   Clause and misinformed the IRS of the infringing nature of the ONgDB product and that in order

5   to utilize the features as it was, it would have needed to obtain the commercial license from

6   Plaintiffs. The paid support work performed by Mr. Suhy and iGov under the ASR subcontracts

7   relating to Neo4j® EE software would have otherwise violated the commercial restrictions imposed

8   by the Commons Clause that Defendants removed without Neo4j Sweden's authorization.

9         Documents supporting the disgorgement of the gross profits received by Defendants in

10   supporting improperly licensed ONgDB at the IRS versions will primarily include: (a) ASR

11   subcontracts and task orders; (b) internal email communications between stakeholders at ASR; (c)

12   emails between Suhy and stakeholders at the IRS; (d) emails between Suhy and stakeholders at

13   ASR; (e) emails between Suhy and other contractors and subcontracts working at the IRS; and (f)

14   iGov's financial documents.  Plaintiffs also expect to offer testimony from Michael Dunn of the

15   IRS, Michael Stavrianos of ASR Analytics, LLC, and Mr. Suhy as an adverse witness.

16                          **c.     Plaintiffs' Attorneys' Fees**

17         Plaintiffs have incurred over $2,974,296 in attorneys' fees thus far in prosecuting their

18   Lanham Act and DMCA claims.  Plaintiffs assert this is an exceptional case under the Lanham Act

19   warranting an award of those attorneys' fees. The Court already found that "Defendants were not

20   using 'Neo4j' to refer to Plaintiffs' products, they were using it to create the misleading perception

21   that Defendants' products *were* Plaintiffs' products." Dkt. No. 118 at 20:3-4 (emphasis in original);

22   *see also id.* at 32:12-5 ("the evidence also makes clear that Defendants intended to convince

23   consumers to buy Defendants' products instead of Neo4j® EE commercial licenses; in other words,

24   Defendants used the Neo4j Mark to unfairly compete with Plaintiffs").  This constitutes willful

25   infringement because Defendants clearly sought to gain the value of the established name of Neo4j.

26   *Lindy Pen*, 982 F.2d at 1406. The Court also determined that Defendants intentionally engaged in

27   false advertising through the intentional removal of the commercial restrictions by replacing the

28   Neo4j Sweden Software License with the AGPL.  *Id.* at 23:20-28:16.  This included a finding that

1    Defendants' false statements actually deceived consumers. *Id.* at 28:17-24.

2        The Court's prior findings that Defendants removed the Commons Clause in order to

3    commercially use and support ONgDB also establishes their intentional violation of the DMCA.

4    Dkt. No. 118 at 6:2-7:6, 24:7-25:19.  Suhy did so without Neo4j Sweden's authorization under the

5    false premise that Section 7 of the Neo4j Sweden Software License permitted licensees to remove

6    "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder

7    and original licensor.  *See Neo4j, Inc.*, 2020 WL 6700480, at *4 (rejecting argument that it is not

8    possible for a "contractually permitted action" to have been "taken with knowledge that it would

9    aid infringement" under the DMCA).

10       Finally, Defendants have litigated this case in an unreasonable manner.  Defendants have

11   repeatedly sought to reassert legal arguments, claims and defenses that the Court previously

12   dismissed with prejudice or otherwise determined to be meritless.  For example, Defendants argued

13   in opposition to Plaintiffs' summary judgment motion that Neo4j USA's "misrepresentations of

14   time of use, ownership of trademark and failure to correct those misrepresentations is unclean hands

15   under the PTO's standards."  Dkt. No. 188 at 7:9-17, 19:16-19.  These were the same facts

16   underpinning their twice-stricken cancellation/fraud on the PTO defense, which the Court warned

17   that and then blatantly misrepresent that "[w]hile Defendants are presently foreclosed from

18   invalidating the trademark, the facts remain to support an unclean hands defense." Dkt. No. 110.

19       To be sure, the issue of whether Neo4j USA misrepresented that it was the owner of the

20   trademark rights to the Neo4j® Mark to the PTO was conclusively resolved when the Court granted

21   summary judgment in favor of Neo4j USA during Phase 1.  In doing so, the Court provided a

22   detailed legal and factual analysis to reach the conclusion that Neo4j USA was the owner of the

23   Neo4j Mark at the time of registration.  Dkt. No. 118 at 11:16-12:26, 13:18-18:1 *aff'd* Dkt. Nos.

24   140-141. Relying on the same intercompany license between Neo4j Sweden and Neo4j USA,

25   Defendants seek to assert the same facts and arguments at trial in support of their unclean hands

26   defense. *See* Dkt. No. 100 at 7:13-8:2, 12:13-14:9.

27       Perhaps the most egregious example is Defendants' attempt to use an alleged expert witness

28   to re-litigate this Court's interpretation of Sections 7 and 10 of the Neo4j Sweden Software License

after the Ninth Circuit affirmed that interpretation.  *See, e.g.*, Dkt. No. 183.  Defendants' attempt to re-litigate this issue also violates their prior stipulation (and the resulting order) dismissing one of their counterclaims and three affirmative defenses – all of which required determining whether Neo4j Sweden AB's inclusion of Common Clause in the Neo4j Sweden Software License violated these same provisions and whether Suhy was entitled to remove it as a "further restriction."  *See* Dkt. Nos. 133, 144.  In doing so, Defendants ***expressly admitted their positions were*** "***no longer legally viable***."  Dkt. No. 144 at 1:23-28 (emphasis added).

Defendants' failure to comply with the Court's prior orders, reneging on their prior stipulation, and "persistent desire to re-litigate issues already decided" makes this an exceptional case thereby entitling Plaintiffs to recover their attorneys' fees.  *See San Diego Comic Convention*, 807 F. App'x at 676.  Since Defendants' counsel has knowingly and recklessly re-litigated these issues in complete disregard of the Court's orders granting Plaintiffs' dispositive motions, their prior stipulations, and the preclusive effect of their appeal of the Court's summary judgment order, Defendants and their counsel should be joint and severally responsible for payment of Plaintiffs' attorneys' fees incurred from March 22, 2022 when the Ninth Circuit affirmed this Court's May 18, 2021 order through trial.[2]  *See* 28 U.S.C. § 1927; *see also*, *B.K.B.,* 276 F.3d at 1107; *Int'l Intell. Mgmt. Corp.*, 2009 WL 9137315, at *3–4.   For these same reasons, the Court should award Plaintiffs prejudgment interest, which they will establish such amounts via expert testimony.  *See Fitness Anywhere*, 2018 WL 6069511, at *7.

---

[2] Plaintiffs object to Defendants' assertion that they are attempting to chill Defendants' unclean hands defense by seeking its attorneys' fees pursuant to 28 U.S.C. § 1927.  Plaintiffs are doing so because Defendants and their counsel are willfully disregarding the Court's express directive that they may not reassert the same facts that supported their now-dismissed cancelation counterclaim and affirmative defense in support of any other affirmative defense.  *See* Dkt. No. 110 at 3:14-6:4.  Defendants and their counsel also continue ignore that the Ninth Circuit's affirmation of the Court's May 18, 2021 Order has foreclosed the re-litigation of the legal and factual issues therein.  Their wanton disregard of this Court's orders and controlling Ninth Circuit authority has unnecessarily increased the costs of this litigation and will continue to do so.

1

#### d.      Permanent Injunctive Relief

2      Plaintiffs are requesting that the Court make the preliminary injunction it issued on May 18,

3  2021 in granting summary judgment on Neo4j USA's Lanham Act and UCL claims.  *See* Dkt. No.

4  118 at 32:15-36:6.  Since the Court previously found that Defendants' violations of the Lanham

5  Act were likely to cause confusion and did cause actual confusion, it should make the preliminary

6  injunction entered on May 18, 2021 permanent. Dkt. No. 118 at 8:13-9:1, 19:2-22:10, 31:20-32:10,

7  33:3-10 (citing *Sun Microsystems*, 999 F.Supp. at 1311).  Plaintiffs are also seeking permanent

8  injunctive relief with respect to their DMCA claim that mirrors the relief sought in its pending

9  motion for summary judgment.   Dkt. No. 183 at 15:11-16:16; Dkt. No. 183-73 (proposed

10  preliminary injunction).

11

### B.      Defendants' Statement of Relief Requested[3]

12      With respect to Plaintiffs' damage claims, the Lanham Act claims seek damages arising out

13  of iGov comparative advertisement comparing two software products: Neo4j USA's commercial

14  version of Neo4j software and Neo4j Sweden's AGPL version of Neo4j software. ONgDB is a

15  version of the Neo4j AGPL software.  The court found the following statements were false: (1) that

16  "ONgDB were "free and open source" versions of or alternatives to commercially licensed Neo4j®

17  EE; and (2) that ONgDB was a "drop-in replacement for an existing commercial licensed

18  distribution of the same version number" of Neo4j® EE. Dkt 118 at 23:20-28:19. Lanham Act

19  damages must proximately flow directly from iGov's advertising. *LexMark Intern., Inc. v. Static

20  Control Components, Inc.* 572 U.S. 118 (2014).

21      Defendants in this case do not license any software. So do not compete is software licensing.

22  The advertisement only addressed licensing. ONgDB was compiled from Neo4j Sweden's

23  repository, hosted and licensed by the defendants in the GFI case (5:19-cv-6226.)  Those defendants

24  made the same statements in advertising ONgDB on their website where people downloaded and

25  licensed ONgDB.

26      The GFI defendants were sued for the same conduct and are the licensors of ONgDB. As

27

28  [3] Plaintiffs object to Defendants' Statement of Relief as it contains excessive argument, and do
not waive the right to address such argument in the appropriate context.

Defendants in this case are not the licensors of ONgDB. Neo4j would have to show the damages did not proximately come from the GFI defendants' actions. Neo4j obtained a judgment from those defendants based on GFI's conduct Dkt. 110 (in GFI case 5:19-cv-6226.) Neo4j is precluded from seeking the same claims and damages again. *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1306 (9th Cir. 2022).

As Neo4j must directly tie the damages to the advertisement, no damages arise out of the "free and open source" or "drop in engine" statements. The falsity of the "free and open source" statement was derived from the construction it meant not subject to the commons clause. That clause restricts licensees of the Neo4j Sweden AGPL version from selling the software. iGov only provides services to the US government. iGov has no commercial licenses or service agreements. The IRS version of Neo4j software includes the commons clause so there is no improper licensing. The IRS decided to use the AGPL version before the advertising. The US government does not sell software or services derived from the software. The commons clause does not apply to the US Government. The "drop in replacement" statement does not impact any sales as it would only apply to an existing Neo4j USA customer who changed from the paid for commercial version to Neo4j Sweden's free version based on iGov's statements. That did not occur.

The judgment in the GFI case, resolved all issues regarding the distribution and licensing of ONgDB. Defendants caused no direct damages to Neo4j USA under the Lanham Act or unfair competition claims. The DMCA claim is similar as the GFI defendants were licensing ONgDB, maintained the repository to obtain the GFI licenses. Again, a judgment has issued in that case resolving all issues related to GFI's replacement of Sweden's AGPL license on ONgDB and Licensing and distribution of ONgDB.

Mr. Suhy committed one copy of the Sweden AGPL software with the Sweden AGPL license replaced with a verbatim copy of the Free Software Foundation's AGPL license. This was consistent with his understanding of the license terms of the AGPL. GFI independently confirmed the right to do that and licensed and distributed ONgDB.

In the GFI action, the court held GFI could not raise the issue of Neo4j Sweden's breach of FSF' scope of license in the AGPL license as GFI was not the copyright holder. There was no

discussion on GFI's rights to assert the restriction on license terms as a licensee. The court determined the APGL licensee was Neo4j's license, and they could change it is they wanted. But Neo4j Sweden's change to the AGPL was a violation of FSF' license scope. Suhy's reverting Neo4j Sweden's to the AGPL license within the scope of FSF copyright scope avoided secondary infringement.

> To establish secondary infringement, [a claimant] must first demonstrate direct infringement" by another. *MDY Indus., LLC v. Blizzard Entm't, Inc*., 629 F.3d 928, 937 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). In order to establish direct infringement under 17 U.S.C. section 501(a), a claimant must allege facts to establish: (1) ownership of the allegedly infringed material; and (2) the alleged direct infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. section 106. A&M *Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001). Liability for contributory infringement may then be established by allegations that the contributor infringer knows of the third party's direct infringing activity and has "intentionally induc[ed] or encourag[ed] [the] direct infringement." Id. at 937-38 (quoting *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930 (2005)).

*Microsoft Corp. v. A&S Elecs., Inc.*, No. 15-cv-03570-YGR, at *4 (N.D. Cal. Dec. 11, 2015).

Neo4j Sweden's change to the AGPL was a violation of the FSF license terms. The DMCA cannot be used by Neo4j Sweden to enforce its copyright and license agreement violation. FSF's copyrighted license agreement must be maintained and should not be overridden without express permission of FSF. There is no such permission in evidence. Suhy reverted the changed license to the compliant license avoiding contributory infringement of FSF's copyright. As discussed in the pending summary judgment motion, Suhy's conduct is not a violation of the DMCA. Even if it were, the actual damages are nil and statutory damages should be remitted as allowed by law. As a result, plaintiffs should take nothing and defendants awarded attorneys fees on the complaint.

On the Exclusive Agreement, PureThink should be awarded damages for all sales Neo4j made to the government and the cost of PureThink's development of software developed by PureThink to meet the government standard.

The commons clause prevents licensees from selling the AGPL software including providing services which are based substantially on the functionality of the software. By its terms,

the license does not prevent third parties-who are not licensees- from supporting licensees use of the software. It appears Neo4j believes the software license limits third parties from supporting AGPL licensees. Preventing third parties from supporting others is not within the rights of a copyright holder. Defendants request declaratory judgment that the commons clause does not permit third parties from supporting AGPL users.

PureThink seeks damages against Neo4j USA arising out of the breach of exclusive license agreement.  Those damages are $750,000 to create the Government addition and the amount of lost sales that are reflected in an AEO document provided in discovery Bates No. N4J_020132.  The amount is sales Neo4j made to the US government, but claims are subject to the AEO standard of the protective order in this case so is not stated here.

Plaintiffs seek an award of fees against defendants and counsel.[4] Plaintiffs claim this is an exceptional claim because of the relitigation of issues. Plaintiffs claim the failure to correct the misrepresentations of unclean hands under the PTO's standards was already decided in the prior motions. *Chutter, Inc. v. Greater Management Group LLC* 2021 WL 4494251 (Trademark Tr. & App. Bd.) The case that established the new rule was decided in 2021 after those motions. Defendants do not raise *Chutter* to obtain invalidity of the Trademark. The ruling supports the unclean hands defense to bar enforcement of the trademark. Defense did not raise the new *Chutter* case for invalidity given the court's threat of sanction in dismissing its affirmative defense on invalidity.

Plaintiffs claim defendants are violating stipulations and prior rulings. Defendants have objected to rulings on phase 2 issues in phase 1 but that is plaintiffs' violation of the stipulation. The key issue appears to be the ruling that Neo4j Sweden could add the commons clause and Mr. Suhy (or anyone) could not remove it. Defendants do not challenge that ruling. Mr. Kuhn's testimony is to support defendants' position that his conduct was standard practice. Under 17 U.S.C. §1203 (5) : "The court in its discretion may reduce or remit the total award of damages in any case

---

[4] The claim against counsel, to chill the defense, was first raised 9-27-23. Thus the discussion on that point is limited as there are many filing due today.

in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation." Mr. Suhy did not replace the licenses after this Court's rulings. The issue is whether Mr. Suhy was not aware and had no reason to believe his removal and replacement of the AGPL license was wrong which allows the court to reduce or remit statutory damages.

Plaintiffs contend this is a defense which is an unplead affirmative defense. In a similar situation with copyright, the court held innocence it is not an affirmative defense. *Howarth v. Greenhaw* (W.D. Tex., June 9, 2022, No. A-21-CV-00643-RP) 2022 WL 2072221, at *5, report and recommendation adopted (W.D. Tex., July 18, 2022, No. 1:21-CV-643-RP) 2022 WL 20470458. The innocence is a reduction of damages under a statutory damages claim. Plaintiffs have advised, they have not elected remedies at this point. Defendants have the right to show, even where the court has ruled he is now wrong, at the time of the removal, his conduct was innocent. Plaintiffs seek to chill the defense by raising a position that defense attorneys should be liable for fees. A similar motion was denied even where the case was fought aggressively, and the defense filed every motion possible. *Schrader Cellars, LLC v. Roach*, No. 21-CV-01431-SK, 2023 WL 3902696, at *4 (N.D. Cal. June 8, 2023). Defendants have not aggressively litigated this case. They filed no motions in case (other than to seal plaintiffs' documents). Defendants have defended against a persistent onslaught of motions from plaintiffs.

On Lanham Act attorney's fees, as *Schrader* pointed out, "The Supreme Court held, in interpreting a similar provision for the award of attorneys' fees in patent cases: an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness*, 572 U.S. at 554. This case deals with an open source license agreement in a legal landscape with limited jurisprudence on the GPL/AGPL. The Lanham act claims are defended under applicable case and statutory law.

Plaintiffs' rely on *Int'l Intell. Mgmt. Corp. v. Lee Yunn Enterprises*, Inc. (U.S.A.), No. CV 08-7587 R JWJX, 2009 WL 9137315, at *3–4 (C.D. Cal. Dec. 14, 2009) ("IIMC"). This case has been distinguished. IIMC involved an award of defendants' fees payable by plaintiffs' counsel under 28 U.S.C. § 1927. Here, the parties are reversed. Plaintiff is seeking fees from defense counsel. In analyzing the IIMC case, the central district denied fees sought against defense counsel as they were not the ones who chose to file the lawsuit, and defendants were obligated to defend themselves. *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1031 (C.D. Cal. 2018), *aff'd in part, vacated in part, remanded*, 830 F. App'x 634 (Fed. Cir. 2020).  This is akin to the rule, an attorney is not required to forfeit client's right to avoid sanctions: "In *USS-POSCO Industries v. Contra Costa County Building & Construction Trades Council*, we held that the rule "only applies to amended complaints that follow upon dismissal with leave to amend, and not to those that follow summary judgment." 31 F.3d 800, 812 (9th Cir.1994). As we explained, "[c]ounsel were not required to risk forfeiting their client's right to appeal in order to avoid sanctions." *Id. Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).

## III.  UNDISPUTED FACTS

The following list constitutes the relevant facts to which the parties will stipulate for incorporation into the trial record without the necessity of supporting testimony or exhibits, as well as which facts can be presented at trial upon an agreed statement:

1.  Neo4j USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned subsidiary of Neo4j USA.  Dkt. No. 118 at 2:15-16.

2.  In conjunction with its business, Neo4j USA filed for and obtained several federally registered trademarks, including U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" (the "Neo4j Mark"). Dkt. No. 118 at 2:18-21.

3.  In its registration application, Neo4j USA claimed first use of the Neo4j Mark was in June 2006 and first use in commerce in May 2007 based on the use of that mark by Neo4j Sweden, Neo4j USA's predecessor-in-interest and related company.  Dkt. No. 118 at 2:18-21.

4.  The Court determined that Neo4j USA owns the rights to the Neo4j Mark in the United States and is the proper registrant. Dkt. No. 118 at 2:23-26.

5.  Prior to May 2018, Neo4j Sweden  offered a free and open source version of the

Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4.  Neo4j® CE is limited in its feature set and does not come with technical or administrative support. *Id.* at 3:4-5.

6.  Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7. Prior to May 2018, Plaintiffs offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). *Id.* at 3:7-9.

7.  The Court found that on May 17, 2018, Neo4j Sweden "released Neo4j EE v3.4 but replaced the AGPL with the Neo4j Sweden Software License, a stricter license which included additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License")." Dkt. No. 118 at 3:9-12.

8.  The Court previously recognized that the new terms added by Neo4j Sweden, "prohibited the non-paying public from engaging in commercial resale and certain commercial support services." Dkt. No. 118 at 3:12-13.

9.  The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3; Dkt. No. 118 at 6:21-26.  It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE. *Id.*

10.  Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available.  Dkt. No. 118 at 3:1-15

11.  In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 118 at 3:18-19.

12.  Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden AGPL Software License. Dkt. No. 118 at 6:18-21. Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. *Id.* Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via Github.  *Id.*

13.  Neo4j® EE v3.4 and v3.5 contained at least 182 source code files that were never released under either the GPL or AGPL, and were instead release for the first time under the Neo4j Sweden Software License.  Dkt. No. 98-1, Ex. 38 at 6:23-16:24, 8:4-16:24 (iGov's interrogatory response identifying 182 source code files in Neo4j® EE that had not previously been released under the AGPL); Dkt. No. 188, UDF No. 13 ("UNDISPUTED that there were at least 182 source code files released under AGPL + Commons clause"); *see also* Dkt. No. 118 at 6:18-21.

14.  The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 188, UDF No. 60.

15.  John Mark Suhy founded PureThink in 2002, which is a software and information technology consulting company specializing in supporting agencies within the U.S. Government that use Neo4j® graph database software.  Dkt. No. 118. at 3:17-19.

16.  PureThink is a single person company filing as an s-corporation for tax purposes. Dkt. No. 188, UDF No. 87. Since at least September 1, 2014, Suhy has been the sole employee, member and manager of PureThink.

17.  On September 30, 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution Partner Agreement ("Partner Agreement" or "SPA").

18.  Neo4j Government Edition ("Gov't Edition") consisted of Neo4j® EE and certain FISMA security plug-ins provided by PureThink, and a framework provided by GraphAware.  Dkt. No. 183-1, Exs. 16-17, 21.

19.  PureThink marketed Gov't Edition to the IRS, however, the IRS indicated that it would require a prototype before purchasing a full subscription.

20.  The Court found that "[t]o secure the IRS's business, Mr. Suhy told the IRS that it could use the open source version of Neo4j EE and pay PureThink for consulting services instead of buying a commercial subscription from Neo4j USA." Dkt. No. 118 at 4:7-12.

21.  On September 23, 2016, the IRS's Office of Research, Applied Analytics and Statistics ("RAAS") awarded PureThink a one-year contract for the "Implementation of the Government Neo4j project" for $229,000.

22.  On May 30, 2017, Neo4j USA sent PureThink notice that Mr. Suhy's use, distribution, and marketing of Neo4j Sweden's open source products and his marketing of consulting services focused on those products constitute a material breach of the SPA. Dkt. 118 at 4:13-15.

23.  This notice triggered a 30-day cure period, during which Mr. Suhy formed iGov to support open source Neo4j® software without being bound by restrictions in the SPA on June 23, 2017.  Dkt. No. 118 at 4:15-18.

24.  Mr. Suhy has been the sole employee, officer and director of iGov since he formed the corporation. Dkt. No. 188, UDF No. 18.

25.  On July 11, 2017, Neo4j USA terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement.  Dkt. No. 118 at 4:19-42.

26.  After the termination of the SPA, the Court found that "Mr. Suhy and iGov continued marketing the Gov't Edition to government agencies." Dkt. No. 118 at 4:24-5:7.

27.  The Court found, Defendants continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." Dkt. No. 118 at 5:7-12.

28.  The Court found, Defendants stated on iGov and PureThink's websites that "[t]he principle [sic] behind PureThink and the Government Package has created a new corporate entity called iGov Inc." and "iGov Inc's new Government Package for

Neo4j can be added to any Neo4j instance making it a 'Government Edition'." Dkt. No. 118 at 4:25-5:7. .

29. As recognized by the Court, "iGov advertised itself as 'the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source license!'" and "iGov Inc's Government Development Package with Neo4j Enterprise . . . Comes with same physical Neo4j Enterprise software." Dkt. No. 118 at 9-12.

30. The Court found Defendants infringed the Neo4j Mark by operating a website (www.igovsol.com) that contained numerous uses of the Neo4j Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." Dkt. No. 118 at 4:24-5:12, 20:3-21:3.

31. The Court found the iGov website infringed the Neo4j Mark by (1) using "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; (2) displaying "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "neo4j@igovsol.com;" and (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of Neo4j® EE software. Dkt. No. 118 at 5:13-20, 20:3-21:3.

32. The Court found, without Plaintiffs' authorization, "Defendants and GFI used Neo4j EE version 3.4, which was openly available subject to the Neo4j Sweden Software License, as a base for ONgDB, but they replaced the Neo4j Sweden Software License with the AGPL." Dkt. No. 118 at 6:8-10. "Doing so removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor, and removed the Commons Clause." *Id.* at 6:24-25.

33. Prior to replacing the Neo4j Sweden Software License with the AGPL, Suhy sought guidance from the FSF, which told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." Dkt. No. 188, UDF No. 41; Dkt. No. 98-1, Ex. 34.

34. Prior to replacing the Neo4j Sweden Software License with the AGPL, Suhy did not seek independent legal advice from any attorney. Dkt. No. 188, UDF No. 42.

35. The Court found that after the release of ONgDB in July 2018, Defendants continued to infringe the Neo4j Mark by using "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page after July 27, 2020. While iGov replaced this URL with "https://igovsol.com/graph.html," the contents of the page remained the same. Defendants further used a "Download Neo4j Enterprise" hyperlink on iGov's "downloads" page, which redirected consumers to download links for ONgDB until July 27, 2020. Dkt. No. 118 at 6:11-17.

36. In January 2019, GFI released ONgDB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in a publicly available beta version of Neo4j® EE 3.5. Dkt.

1          No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:23-16:24, 8:4-16:24.

2      37.   As recognized by the Court, "Defendants continued to promote ONgDB as 'free
            and open source' by replacing the Neo4j Sweden Software License with the
3           AGPL in [28] LICENSE.txt files alongside the source code. [] Doing so removed
            certain legal notices identifying Neo4j Sweden as the copyright holder and
4           licensor, and removed the Commons Clause, effectively allowing Defendants to
            commercially use and support ONgDB." Dkt. No. 118 at 6:21-26.

5

6      38.   The Court found, "Defendants do not claim that ONgDB is identical to its Neo4j
            counterpart versions. Rather, it combines the last public Neo4j EE code (beta
            version of Neo4j EE 3.5), the Neo4j CE code, and 'glue code' authored by Mr.
7           Suhy and other contributors." Dkt. No. 118 at 7:7-10.

8      39.   The Court found Defendants falsely advertised via their websites and through
            direct communications with potential users that ONgDB was licensed under
9           AGPLv3 as a free and open drop-in replacement for Neo4j Enterprise commercial
            licensed distributions with the same version number. Dkt. No. 118 at 6:18-7:5,
10          7:18-24, 24:1-28:16.

11     40.   The Court found Defendants used the Neo4j Mark to create the misleading
            perception that the products were Plaintiffs' product. For example, Defendants
12          used the Neo4j Mark in the URL https://igovsol.com/neo4j.html to promote
            ONgDB and in the email address neo4j@igovsol.com as means for consumers to
13          inquire about ONgDB. Dkt. No. 118 at 20:3-21:3.

14     41.   The Court found Defendants infringed the Neo4j Mark by (1) extensively using
            of "Neo4j' and "Neo4j Enterprise" on iGov and PureThink's websites without
15          proper trademark notices; (2) using embedded "Neo4j" links to Neo4j USA's
            website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs'
16          build instructions, support documentation and change logs containing the Neo4j
            Mark rather than creating and hosting their own with the ONgDB name; and (4)
17          using of "Neo4j Enterprise" and ONgDB" interchangeably to promote ONgDB
            on their websites. Dkt. No. 118 at 21:25-22:21.

18

19     42.   Mr. Suhy provided hyperlinks to potential users of Neo4j® EE to view and
            download ONgDB from GFI's website and GitHub repository from his
20          jmsuhy@purethink.com email account. Dkt. No. 188, UDF No. 20.

21     43.   Mr. Suhy provided hyperlinks to potential users of Neo4j® EE to download
            ONgDB   from   GFI's   website   and   GitHub   repository   from   his
22          jmsuhy@igovsol.com email account. Dkt. No. 188, UDF No. 21.

23     44.   iGov's website provided links to potential users of Neo4j® EE to download
            ONgDB directly from iGov and from GFI's website. Dkt. No. 188, UDF No. 22.

24     45.   iGov and Mr. Suhy operated www.graphstack.io, which provided information
            about ONgDB and hyperlinks for consumers to directly download ONgDB
25          v.3.5.x and ONgDB v.3.6.x. Dkt. No. 188, UDF No. 38.

26     46.   As recognized by the Court, "[b]y December 2020, just under two years after the
            release of ONgDB v3.5.1, the ONgDB software had been downloaded over
27          14,000 times, signaling its widespread success." Dkt. No. 118 at 8:13-15.

28     47.   The Court found Defendants' use of the Neo4j Mark created the misleading

perception that Defendants and Plaintiffs are affiliated and falsely suggested endorsement by Neo4j USA. Dkt. No. 118 at 21:25-22:21.

48. The Court found Defendants' actions with respect to ONgDB and use of the Neo4j Mark is likely to cause and have caused significant consumer confusion. For example, "consumers have encountered compatibility issues, technical problems or glitches with ONgDB and sought assistance from Plaintiffs." Dkt. No. 118 at 8:15-23.

49. The Court found Consumers expressed uncertainty about the propriety of the removal of the Commons Clause from the Neo4j Sweden Software License. This caused actual confusion about whether and when a commercial license from Neo4j USA is necessary to use, modify or redistribute the software in a commercial setting. Dkt. No. 118 at 8:24-9:1.

50. The Court has ruled that Sections 7 and 10 of the Neo4j Sweden Software License prohibit a licensee from imposing further restrictions, but do not prohibit Neo4j Sweden as the original licensor of the underlying software from doing so.  Dkt. No. 118 at 24:16-25:12.

51. The Court found that Defendants' statements that ONgDB and their version of "Neo4j Enterprise" are "free and open source" versions of or alternatives to commercially licensed Neo4j® EE amount to false advertising because they improperly removed Commons Clause in violation of the Neo4j Sweden Software License.  Dkt. No. 118 at 25:13-19.

52. The Court found that Defendants' statements that ONgDB is a "drop-in replacement for an existing commercial licensed distribution of the same version number" of Neo4j® EE were false or misleading. Dkt. No. 118 at 25:20-28:16.

53. The Court found that Defendants made such false and misleading statements to convince customers to adopt ONgDB over Neo4j® EE. Because Defendants misrepresented ONgDB as a free version of Neo4j® EE licensed under the APGL, this price differential (free versus paid) was likely to influence customers purchasing decisions. Dkt. No. 118 at 29:4-11.

54. As recognized by the Court, Defendants' false and misleading statements regarding ONgDB diverted sales from Neo4j USA, including when Next Century adopted ONgDB via the Maryland Procurement Office, amounting to over $2.2 million in lost licensing revenue. Dkt. No. 118 at 29:19-30:13.

55. As recognized by the Court, [t]he Neo4j Mark enjoys strong brand recognition in the graph database software market and is an industry leader.  Dkt. No. 118 at 29:19-30:13.

56. As recognized by the Court, Defendants used the Neo4j Mark unfairly compete with Plaintiffs and to convince consumers to use or buy Defendants' products instead of Neo4j® EE commercial licenses, and in doing so caused actual consumer confusion. Dkt. No. 118 at 31:20-32:10

57. As recognized by the Court, Defendants' holding out of ONgDB as free and open source Neo4j® EE is likely to cause consumer confusion, and did cause actual consumer confusion, and as a result constitutes a false designation of origin.  Dkt. No. 118 at 30:22-32:15.

1   IV.   **FACTUAL ISSUES THAT REMAIN IN DISPUTE**[5]

2        Without the parties waiving any of their respective remaining claims or defenses, or

3   conceding any legal or factual issues, the following factual issues remain in dispute:

4        1.   Neo4j Sweden owns of all copyrights related to the Neo4j graph database
             platform, including the source code, and has licensed those copyrights to Neo4j
5            USA.[6]

6        2.   Neo4j USA made misrepresentations to the USPTO concerning its ownership of
             the Neo4j Mark or date of first use, and is the owner and the proper registrant of
7            the Neo4j Mark.[7]

8        3.   Neo4J USA did not disclose to the Patent and Trademark office in its application
             or thereafter that it is a non-exclusive licensee of the Neo4j Sweden's
9            trademark.[8]

10       4.   On July 11, 2017, Neo4j USA notified the IRS that it had terminated its

11   ───────────────────────────

12   [5] On September 15, 2021, Plaintiffs provided Defendants with specific evidentiary citations for

13   Disputed Fact Nos. 3-109 in a good faith effort to reduce the number of matters upon which

14   evidence need be presented at trial.  In many instances, this included facts that they did not

15   previously dispute or provide contrary evidence in response to Plaintiffs' two motions for summary

     judgment.  In response, Defendants simply refused to agree that any of these facts were undisputed

16   on the basis that "[t]his is just to [sic] many facts." Defendants further stated that 174 facts is

17   excessive and offered if there are material facts related to the trial, they would consider them.

18   Defendants should not have to wade through 174 facts which are not material. *See* FRCP Rule 1.

19   [6] Plaintiffs contend this is not a disputed issue because it was conclusively determined on summary

     judgment. *See* Dkt. No. 118 at 2:16-18; Dkt. 100, Ex. A at UDF No. 80; *see also* Dkt. No. 199.

20
     [7] Plaintiffs contend this is not a relevant or disputed issue because Defendants conceded it could
21
     not form the basis their cancelation counterclaim and defense based on an alleged fraud on the PTO.
22
     Dkt. Nos. 70 at 8:4-18; Dkt. No. 110 at 3:14-6:4.  Defendants' reassertion of these facts is in direct
23
     violation of the Court's prior warning that "Defendants are not permitted to reassert any affirmative
24
     defense or counterclaim in this action based on the cancellation or abandonment theories asserted
25
     in the stricken defenses." Dkt. No. 110 at 6:2-4 (emphasis added).  The Court also found that Neo4j
26
     USA did not make any misrepresentations to the PTO concerning its ownership of the Neo4j Mark
27
     or date of first use, and is the owner and the proper registrant of the Neo4j Mark.   Dkt. No. 118 at

     12:2-17, 13:18-18:1.

28   [8] Plaintiffs contend this is not a relevant or disputed issue for the reasons stated in in Footnote 7.

partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.

5.   Despite Neo4j USA's warnings about those contractual restrictions, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Mr. Suhy to perform under PureThink's support contract.

6.   In late July 2017, the IRS invited iGov and Suhy to provide a quote for a sole-source contract for the development and support of the CKGE framework, which used an open source version of Neo4j® EE as a component.

7.   On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on Mr. Suhy's quote.

8.   Neo4j USA filed an official protest with the IRS on the grounds that it was improper to award the contract to iGov on a sole source basis, and the IRS withdrew the award for that reason.

9.   On May 22, 2018, Neo4j USA informed the IRS, including those in RAAS, of the Commons Clause being added to Neo4j® EE 3.4.x and the need to obtain a commercial subscription if they intend to use that software in the CKGE platform.

10.   On May 22, 2018, Mr. Suhy sent an email to the IRS claiming Neo4j Sweden could not add the Commons Clause to the license governing Neo4j® EE v3.4.

11.   On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CKGE framework, which used open source Neo4j® EE software.

12.   Before the IRS awarded the CKGE Contract to eGov Sol, Suhy made clear to the IRS that he would be performing the work via iGov.

13.   According to the proposal for the iGov CKGE Contract signed by Mr. Suhy, the "CKGE framework includes a graph database; elastic search capabilities; java-script based, user-interface; and micro-services components."  The scope of work required iGov to perform "all operations and maintenances duties for all components of the CKGE framework…."   iGov would also be "responsible for ensuring any open source products within the CKGE conform to their license-terms" and iGov would "need to work with the following components: React, Angularjs, Neo4j…."

14.   In July 2018, Jason Zagalasky, a sales representative from Neo4j USA, met with employees of the IRS, and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription for the CKGE platform.

15.   As of August 2018, the IRS understood that Neo4j® CE had a performance limitation to only 4 cores, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions, and was priced based on number of cores.

16.   Mr. Suhy provided input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE.

17. In August 2018, Suhy recommended that the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 in the CKGE framework, and also stated "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."

18. Based on Mr. Suhy's recommendation, Mike Dunn at the IRS instructed him to "[g]o ahead and integrate the ONgDB into the CKGE framework we'll deploy" on August 14, 2018.

19. While working at the IRS, Mr. Suhy helped the IRS upload ONgDB source code into the IRS's internal repository.

20. After eGov Solutions obtaining the initial contractual award and performing work for the IRS on the CKGE, Mr. Suhy sold his ownership interest in eGov Solutions to its remaining shareholders in December 2018. Depo Ex. 100.

21. Consistent with Section 5 of the Stock Purchase Agreement between Mr. Suhy and the other shareholders of eGov Solutions, Suhy had the responsibility and authority with respect to the CKGE Contract to "to drive the direction of the project" and "the authority to enter into agreements on behalf of [eGov Sol] relating to this project as long as the agreements are in line with government contracting laws and hubzone regulations."

22. Under Section 5.1 of the eGov Solutions Stock Purchase Agreement, Suhy was entitled to $200,000 for each option year on the CKGE contract that was exercised by the IRS.

23. eGov Solutions viewed the CKGE Contract with the IRS as belonging to Suhy to which he had sole control over.

24. eGov Solutions maintained a Wells Fargo bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS.

25. eGov Solutions did not take any commission from payments made by the IRS and according to Mr. Mayur the "moment the money comes, John Mark Suhy takes the money out" using an account under his control.

26. At some point, Mr. Suhy asked eGov Sol to make the payments received from the IRS to iGov rather than personally to him as required by the Stock Purchase Agreement.

27. eGov Solutions considered all the payments made by the IRS under the CKGE Contract into the eGov Solutions Wells Fargo Account to belong Mr. Suhy and later iGov.

28. The IRS paid a total of $1,316,000 to eGov Solutions under the CKGE Contract, which was deposited into the eGov Solutions Wells Fargo Account.

29. This total amount is based on the following contractual increases/renewals: (a) $300,000 for 2018 Base Contract Award; (b) $200,000 for 2019 Option Year 1 exercised; (c) $216,000 for 2019 Modification Option Year 1; (d) $200,000 for 2020 Option Year 2 exercised; (e) $200,000 for 2021 Option Year 3 exercised; and $200,000 for 2022 Option Year 4 exercised.

30.     iGov's financial statements reflect that it received $1,064,550 in revenue for work Suhy performed under the CKGE Contract.

31.     iGov and Suhy were entitled to the entire $1,316,000 for the work they performed under the CKGE Contract.

32.     The $251,450 difference between the amounts paid by the IRS to eGov Sol and the amounts paid by eGov Sol to iGov and Mr. Suhy are partially explained by Mr. Suhy paying $111,400 to AtomRain via the eGov Solutions Wells Fargo account for work performed by AtomRain at the IRS under the CKGE Contract.

33.     The $251,450 difference between the amounts paid by the IRS to eGov Sol and the amounts paid by eGov Sol to iGov and Mr. Suhy are also partially explained by a total of $105,835 in payments made from the eGov Solutions Wells Fargo Account by Mr. Suhy to the Irving Starr law firm.

34.     The Profit & Loss statements produced by iGov do not reflect any cost of goods sold (i.e., any expenses that would have been incurred in generating the revenues reported by the company).

35.     The IRS used at least one Neo4j® enterprise-only feature, node ID, via ONgDB in CKGE.

36.     The IRS understood that Neo4j® EE can run Cypher queries significantly faster than Neo4j® CE, which is advantageous in terms of productivity.

37.     Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same.

38.     The initial hardware available to run Neo4j® EE in the IRS's pre-CKGE platform were for one server with at least 16 cores and 1 terabyte of RAM under the September 23, 2016 award to PureThink.

39.     As of December 2018, CKGE was running or was expected to be running on at least two production servers and one development / test server utilizing ONgDB. Each machine was comprised of a DL380 with 32 cores and 256GB of RAM at minimum.

40.     As of March 2019, the IRS was running ONgDB on at least three production servers in the CKGE.  However, there were an estimated four total instances of ONgDB.

41.     In 2020, the IRS continued to run ONgDB on at least three production servers in the CKGE with four total instances of ONgDB..

42.     In 2021, the IRS continued to run ONgDB on at least three production servers in the CKGE with four total instances of ONgDB.

43.     In 2022, the IRS continued to run ONgDB on at least two production servers in the CKGE with at least three total instances of ONgDB.

44.     As of November 2022, the IRS would only want the bare-minimum Neo4j® EE package for two nodes, each with 16 cores and 256GB RAM for the CKGE.

45.     Each machine in the CKGE running ONgDB was comprised of a DL380 with

1          32 cores and 256GB of RAM.

2    46.   On August 14, 2018, Mike Dunn asked Mr. Suhy to inform the YK1 team of the switch to ONgDB 3.4.x into the CKGE framework "we'll deploy."

3

4    47.   By December 2018, The IRS's YK1 began using one instance of ONgDB.

5    48.   The minimum server specifications for YK1 was a DL380 with 12 cores and 256GB of RAM.

6    49.   In 2019, one instance of ONgDB was running on its own server in YK1.

7    50.   In 2020, one instance of ONgDB was in production and running on its own server in YK1.

8
9    51.   In 2021, one instance of ONgDB was in production and running on its own server in YK1.

10   52.   In 2022, two instance of ONgDB in production and two instances of ONgDB in development/test in YK1.

11
12   53.   Starting in 2019 and continuing through 2022, the IRS ran a separate instance of ONgDB in development called "Corporate Graph."

13   54.   The minimum server specifications for Corporate Graph are DL380 with 12 cores and 256GB of RAM.

14
15   55.   Starting in 2020 and continuing through 2022, the IRS ran one instance of ONgDB in production called "Excise Graph."

16   56.   The minimum server specifications for Excise Graph are DL380 with 12 cores and 256GB of RAM.

17
18   57.   Starting in summer of 2020 and continuing through September/October 2021, the IRS ran one separate instance of ONgDB in development for its COVID Graph project.

19
20   58.   Starting in September/October 2021 and continuing through October 2022, the IRS ran one separate instance of ONgDB in production for its COVID Graph project.

21
22   59.   The minimum server specifications for COVID Graph are DL380 with 12 cores and 256GB of RAM.

23   60.   Starting in 2021 and continuing through 2022, the IRS ran one separate instance of ONgDB in development called "Policy Net."

24
25   61.   The minimum server specifications for Policy Net are DL380 with 12 cores and 256GB of RAM.

26   62.   Starting in 2021 and continuing through 2022, the IRS ran one separate instance of ONgDB in development called "Individual Graph."

27
28   63.   The minimum server specifications for Individual Graph are DL380 with 12 cores and 256GB of RAM.

64. In 2022, the IRS ran one separate instance of ONgDB in development called "CPEO Graph."

65. The minimum server specifications for CPEO Graph are DL380 with 12 cores and 256GB of RAM.

66. In 2022, the IRS ran one separate instance of ONgDB in development called "Ghost Preparer."

67. The minimum server specifications for Ghost Preparer graph are DL380 with 12 cores and 256GB of RAM.

68. As a result of the IRS using ONgDB in the CKGE, Neo4j USA lost $1,471,800 (after the application of a 15% discount) in licensing revenue.

69. As a result of the IRS using ONgDB in YK1, Neo4j USA lost $537,200 (after the application of a 15% discount) in licensing revenue.

70. As a result of the IRS using ONgDB in Corporate Graph, Neo4j USA lost $217,600 (after the application of a 15% discount) in licensing revenue.

71. As a result of the IRS using ONgDB in Excise Graph, Neo4j USA lost $188,700 (after the application of a 15% discount) in licensing revenue.

72. As a result of the IRS using ONgDB in COVID Graph, Neo4j USA lost $188,700 (after the application of a 15% discount) in licensing revenue.

73. As a result of the IRS using ONgDB in Policy Net, Neo4j USA lost $125,800 (after the application of a 15% discount) in licensing revenue.

74. Asj a result of the IRS using ONgDB in Individual Graph, Neo4j USA lost $125,800 (after the application of a 15% discount) in licensing revenue.

75. As a result of the IRS using ONgDB in CPEO Graph, Neo4j USA lost $62,900 (after the application of a 15% discount) in licensing revenue.

76. As a result of the IRS using ONgDB in Ghost Preparer Graph, Neo4j USA lost $62,900 (after the application of a 15% discount) in licensing revenue.

77. On a discounted basis, Neo4j USA's total loss of revenue in conjunction with the IRS using ONgDB for free instead of paying for commercial subscriptions for Neo4j® EE is at least $2,981,000.

78. After accounting for saved expenses, the lost profits suffered by Neo4j USA in conjunction with the IRS using ONgDB for free instead of paying for commercial subscriptions for Neo4j® EE is $2,744,572.

79. The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.

80. Next Century learned about the pricing of Neo4j Enterprise software bundles offered by Neo4j USA and iGov from iGov's website.

81. Next Century and the MPO required the enterprise-only features, such as causal

1    clustering and multi-data centers, offered by both Neo4j® EE and ONgDB.

2    82.   In October 2018, Next Century exchanged emails with Mr. Suhy regarding
           representations made on iGov's website that ONgDB was an open source
3          version of Neo4j® EE that provided the same enterprise-only features for free.

4    83.   During the course of these communications with Next Century, Mr. Suhy
           reconfirmed iGov's claims. Depo Exs. 44-46. Specifically, Mr. Suhy told Next
5          Century that the MPO could use ONgDB under the AGPL "without any limits
           on the number of clusters, instances, cores, etc – not to mention they are 100%
6          free." Mr. Suhy also told Next Century that "the US Treasury has now adopted
           ONgDB Enterprise - which is the same code base, with just a different name and
7          removal of the commons clause.

8    84.   In a series of emails with Next Century ending on January 4, 2019, Mr. Suhy
           confirmed that ONgDB v3.5.x would have feature parity with the enterprise
9          features of Neo4j® EE v3.5.x, and would also be available without restrictions
           on the number of clusters, instances and cores and without paying Neo4j USA
10         for a commercial license.

11   85.   By February 2019, the MPO had chosen to use ONgDB over Neo4j® EE for
           continued development work. Depo Exs. 48, 52-53. On February 5, 2019, Next
12         Century informed Neo4j USA of this decision, stating "[w]e have found that
           open-sourced (non-commercial) builds from the Neo4j source code provide the
13         clustering and security requirements needed in our environment."

14   86.   In March 2019, Next Century gave Neo4j USA the required specifications for
           the ongoing project for the MPO and ask for Neo4j USA for a quote for use in a
15         production environment.

16   87.   On April 19, 2019, Jason Zagalsky of Neo4j USA sent a 3-year Neo4j Enterprise
           Edition Enterprise Bundle for $2,266,950 based on those requirements. This
17         included a commercial license and technical support for (a) 12 Production
           Machines (up to 12 cores and 256GB of RAM per Machine); and (b) 12 Test
18         Machines (up to 12 cores and 256GB of RAM per Machine). Neo4j USA also
           provided a 15% multi-year discount.
19
20   88.   On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal
           with the MPO, and was instructed by the MPO to continue using ONgDB. Depo
21         Ex. 56. The reason for the MPO continuing to use ONgDB over Neo4j® EE
           was price.

22   89.   On July 21, 2019, Next Century informed Neo4j USA that the MPO was not
           interested in the Neo4j® EE proposal. Depo Ex. 57; Weyant Depo at 110:4-
23         111:18. Again, the deciding factor between ONgDB and Neo4j® EE was price.

24   90.   Next Century continued to use ONgDB, which was placed into a production
           environment for the NSA in or about October 2020.
25
26   91.   After accounting for saved expenses, the lost profits suffered by Neo4j USA in
           conjunction with the MPO using ONgDB for free instead of paying for a
           commercial subscription for Neo4j® EE is $2,113,218.
27
28   92.   ASR Analytics LLC ("ASR") also engaged Mr. Suhy via iGov as a subcontractor
           to provide support, consulting and development services for the CKGE and other

implementations of ONgDB at the IRS between 2019 and 2022.

93. The subcontracts and task orders provided by ASR to iGov included: (1) Knowledge Graph API (KG-API) for CKGE; (2) Support for Corporate Graph Database; (3) Emerging Compliance Issues; and (4) IDT Innovation.

94. The consulting work that iGov and Mr. Suhy performed under the KG-API subcontract related to ONgDB interfacing with Spark.

95. KG-API contract expired in September 2021.  Immediately thereafter, ASR entered into a similar contract with Tylor Data, which Mr. Suhy continued to work on as a subcontractor.

96. The work that iGov and Mr. Suhy performed under Corporate Graph Database (Subcontractor Task Order Number 0002) involved supporting GraphGrid, a microservices-based application programming interface (API) that includes ONgDB, at the IRS.

97. The work that iGov and Mr. Suhy performed relating to Emerging Compliance Issues involved the analysis of graph data, including graphs generated using ONgDB.

98. IDT Innovation was a task order awarded to ASR relating to identity theft, which involved the use of a graph database, which was ONgDB.

99. iGov was paid a total of $246,082.55 by ASR Analytics for work performed under these subcontracts and task orders at the IRS.

100. Neo4j USA owned the intellectual property making up the Neo4j Government Edition.

101. PureThink did not have ownership rights to the Neo4j Government Edition.

102. Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason."

103. The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA stated, "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."

104. The external version of the April 11, 2015 sole-source letter signed by both Neo4j USA and PureThink did not contain terms requiring Neo4j USA to obtain PureThink's consent prior to discontinuing the Gov't Edition or terminating it as the exclusive reseller of the Gov't Edition.

105. The external version of the April 11, 2015 sole-source letter signed by the parties did not contain terms requiring Neo4j USA to compensate PureThink for development work on the Gov't Edition..

106. The external version of the June 23, 2015 version of the sole-source letter signed by the parties did not contain terms requiring Neo4j USA to obtain PureThink's consent prior to discontinuing the Gov't Edition or terminating it as the exclusive reseller of that software.

- 34 -

107. The external version of the June 23, 2015 version of the sole-source letter signed by the parties did not contain terms requiring Neo4j USA to compensate PureThink for development work on the Gov't Edition.

108. On June 19, 2017, Neo4j USA sent an email to PureThink notifying it that Neo4j USA was discontinuing the Gov't Edition and that PureThink was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition."

109. Suhy acknowledged receipt of the June 19, 2017 email and represented that "[w]e are removing references from the website."

110. PureThink did not maintain any time sheets documenting the time that Mr. Suhy claimed to have spent developing the Gov't Edition.

111. PureThink's financial statements do not reflect any expenses or overhead for the development of the Gov't Edition.

112. Neo4J Sweden's AGPL based software license states "Copyright (c) 2007 Free Software Foundation, Inc. http://fsf.org/ Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed."

113. Neo4J Sweden's AGPL license states it is subject to the terms of the GNU AFFERRO General Public License Version 3, with the Commons Clause. .

114. Neo4j Sweden's license of Neo4j software was not licensed to Neo4j USA under a verbatim copy of the AGPL license as required under the scope of the FSF AGPL license.[9]

115. The AGPL is a copyrighted license created by and licensed by Free Software Foundation.[10]

116. Neo4j Sweden's use of the AGPL was subject to the terms of the FSF license terms.[11]

117. Neo4J USA's commercial license for Neo4j software was and is not licensed to licensee under a verbatim copy of the AGPL license as required under the scope of the FSF AGPL license. [12]

118. The Graph Foundation obtained advice of counsel and talked to the FSF about removal of the Common Clause which was communicated to Suhy and a potential licensee.

---

[9] Plaintiffs contend this is not a disputed issue of fact.  It is dependent on the interpretation of contractual language, which is a question of law that the Court conclusively addressed in its May 18, 2021 Order and was affirmed by the Ninth Circuit, thus making it law of the case.

[10] Plaintiffs contend this is not a disputed issue of fact for the same reason set forth in Footnote 9.

[11] Plaintiffs contend this is not a disputed issue of fact for the same reason set forth in Footnote 9.

[12] Plaintiffs contend this is not a disputed issue of fact for the same reason set forth in Footnote 9.

119. Neo4j told the IRS and other government agencies that defendants were not related to or an authorized agent of Neo4j.

120. Neo4j Sweden did not give Mr. Suhy permission to replace the Neo4j Sweden Software License with verbatim copies of the AGPL in the 28 LICENSE.txt files in ONgDB v3.4 and ONgDB v3.5.

121. iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.[13]

## V.    LEGAL ISSUES THAT REMAIN IN DISPUTE

Without the parties waiving any of their respective remaining claims or defenses, the following legal issues remain in dispute with respect to the parties' claims and defenses:

### A.    **Plaintiffs' Claims and Affirmative Defenses**

#### 1.    Neo4j USA's Lanham Act Claims

a.    *Whether Defendants' violations of the Lanham Act under the totality of the circumstances constitutes an exceptional case where Neo4j USA is entitled to its attorney's fees pursuant to 15 U.S.C. § 1117(a).*

As detailed above, Plaintiffs contend that this is an exceptional case because Defendants engaged in willful infringement, intentionally engaged in false advertising and actually deceived consumers.  They have also litigated this case in an unreasonable manner by repeatedly re-litigating settled issues and dismissed claims and defenses. *See SunEarth*, 839 F.3d at 1181; *see also Octane Fitness*, 572 U.S. at 554 fn 6; *Jason Scott Collection*, 68 F.4th at 1223 fn 13.

Defendants dispute this is an exceptional case because their use of the Neo4j was to describe the names of the companies and the products all called Neo4j. The court ruled the use was excessive. This is not a case were defendants palmed some other product as a Neo4j product. ONgDB, the software licensed by GFI, is based on Neo4j software. It is an open source version and GFI is permitted to license the product under the terms of the AGPL. The court ruled GFI could not contest Neo4j's Sweden's change to the FSF license as GFI was not the copyright holder of the

---

[13] Plaintiffs contend this is not a disputed issue of fact based on the Court' May 18, 2021 Order. *See* Dkt. No. 118 at 6:11-17.

1  FSF license. Suhy thought the AGPL allowed Licensee's to remove additional terms under the

2  terms of the FSF AGPL license when the developer, Neo4j Sweden, used FSF' AGPL License.

3  Defendants are not re-litigating that issue. It was relegated to phase 2 but raised and decided

4  in phase 1. It is raised in response to the DMCA claim under the innocent party defense as the

5  replacement of the Neo4j Sweden changed AGPL was replaced with the AGPL license because

6  that is what most people thought could be done before the court's rulings in these cases. The

7  removal of the additional clause was a self-executing right of a licensee. And, while Suhy does not

8  have the right to assert FSF's copyright, he has the right and duty to not contribute to Neo4j

9  Sweden's copyright infringement of the FSF copyright license.

10  The genisis of the problem is before the rulings in this case, a developer could not use the

11  AGPL license then convert to commercial. That defeats the very concept of open source licensing,

12  the FSF license agreement; the very terms of the license agreement the developer agreed to.

13  The trademark issue is more complex. Neo4j USA does not own the Trademark. There is

14  an express license where Neo4j Sweden licensed the mark to Neo4j USA. The court held that the

15  implied ownership rule applied.

16  b.   *Whether Neo4j USA is entitled to prejudgment interest violations of the*

17  *Lanham pursuant to 15 U.S.C. § 1117(a).*

18  As detailed above, Plaintiffs contend Defendants' willful infringement thereby warranting

19  an award of prejudgment interest.  *See Fitness Anywhere*, 2018 WL 6069511, at *7.  As detailed

20  above, Defendants dispute this is an exceptional case.

21  c.   *Whether Neo4j USA is entitled to permanent injunction pursuant to 15*

22  *U.S.C. § 1116(a).*

23  As detailed above, Plaintiffs assert that the Court's previously findings that Defendants'

24  violations of the Lanham Act were likely to cause confusion and did cause actual confusion,

25  justifies making the preliminary injunction entered on May 18, 2021 permanent.  *See Century 21*

26  *Real Estate LLC*, 2014 WL 3378278, at *6; *Sun Microsystems*, 999 F.Supp. at 1311.

27  Defendants assert they have already complied with the preliminary injunction such that no

28  permanent injunction is required.

1          **2. Neo4j USA's UCL Claim**

2                a.      *Whether Neo4j USA is entitled to permanent injunction pursuant to Cal. Bus.*

3      *& Prof. Code § 17203.*

4          Section 17203 provides that "[a]ny person who engages, has engaged, or proposes to engage

5      in unfair competition may be enjoined in any court of competent jurisdiction." Plaintiffs contend

6      that the same reasons the Court entered a preliminary injunction pursuant to both the Lanham Act

7      and the UCL also justify making that injunction permanent.  The fact that there is a permanent

8      injunction entered against the GFI defendants is irrelevant, especially since Defendants insist they

9      are not bound by it.

10         Defendants contend that such an injunction is unnecessary. Neo4j has a judgment of a

11     permanent injunction against the GFI defendants who were the licensors of ONgDB.

12         **3. Plaintiffs' DMCA Claim**

13               a.      *Whether Defendants' removal of the Commons Clause from the license*

14     *governing Neo4j® EE v3.4 and Neo4j® EE v3.5 constituted the unauthorized removal of Neo4j*

15     *Sweden's copyright management information (CMI) in violation of 17 U.S.C. § 1202(b).*

16         This issue hinges on whether the contractual language of Sections 7 and 10 of the Neo4j

17     Sweden Software License permits a downstream licensee to remove "further restrictions," *i.e.* the

18     Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor.  It is

19     Plaintiffs' position that the Court conclusively determined Sections 7 and 10 only allow a

20     downstream licensee to remove unauthorized restrictions when placed by an upstream licensee who

21     redistributes the copyrightable program, not those placed by the copyright owner offering the terms

22     to the licensees.  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3.

23         Defendants contend this is not the "law of the case" because partial summary judgment

24     orders are interlocutory in nature. *See Solis v. Jasmine Hall Care Homes, Inc.,* 610 F.3d 541, 543-

25     544 (9th Cir. 2010).  Plaintiffs dispute this notion because Defendants filed an interlocutory appeal

26     of that order and lost on the same issue.  *See Herrington v. County of Sonoma*, 12 F.3d 901, 904

27     (9th Cir. 1993) ("[t]he law of the case doctrine states that the decision of an appellate court on a

28     legal issue must be followed in all subsequent proceedings in the same case." ) (internal quotations

1    omitted); *accord Aquino v. Cnty. of Monterey Sheriff's Dep't*, No. 5:14-CV-03387-EJD, 2018 WL

2    3845718, at *1 (N.D. Cal. Aug. 12, 2018) (citing same in recognizing the Ninth Circuit's decision

3    on an interlocutory appeal of the summary judgment order "was now law of the case").  Plaintiffs

4    further contend that the Ninth Circuit expressly affirmed that "Section 7 of the Sweden Software

5    License only permits a downstream licensee to remove 'further restrictions' added by an upstream

6    licensee to the original work." Dkt. No. 140 at 3 (emphasis added).  The Ninth Circuit also removed

7    all doubt as to the conclusiveness of its decision by indicating that the opinion was precedential for

8    the purpose of the doctrine of law of the case. *See id.* at 1.

9           Defendants also contend that they were permitted to remove the Commons Clause by

10   replacing the Neo4j Sweden Software License with a copy of the AGPL and redistribute Neo4j

11   Sweden's source code under that license to avoid contributing to the infringement of the Free

12   Software Foundation's copyright in the underlying form AGPL license.  It is Plaintiffs' position

13   that the Court previously determined that Defendants do not have standing to enforce the Free

14   Software Foundation's copyright. *See* Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc.*, No. 5:19-

15   CV-06226-EJD, 2020 WL 6700480, at *1 ("Defendants argue that Plaintiffs were not permitted to

16   alter the form license agreement under the terms of the [FSF's] copyright over the form AGPLv3.

17   But whether Plaintiffs acted in accordance with the copyright covering the AGPLv3 is not at issue

18   before this Court, as Defendants are not entitled to enforce the FSF's copyright.").

19           b.      *Whether Defendants' removal of the NOTICE provision identifying Neo4j*

20   *Sweden AB as the copyright owner and licensor from the license governing Neo4j® EE v3.4 and*

21   *Neo4j® EE v3.5 constituted the unauthorized removal of Neo4j Sweden's CMI in violation of 17*

22   *U.S.C. § 1202(b).*

23           It is Defendants' position that they did not violate §1202(b) because the NOTICE.txt files

24   in ONgDB still identified Neo4j Sweden as the copyright holder and referenced the Commons

25   Clause.  It is Plaintiffs' position that this does not insulate Defendants from liability because

26   §1202(b) prohibits any removal or alteration of the title of the work, terms and conditions for use

27   of the copyrighted work and other conspicuous displays identifying the owner of these copyrighted

28   works. *See Neo4j, Inc.*, 2020 WL 6700480, at *5 (holding that "moving the CMI into separate

1   NOTICE.txt files constitutes altering the CMI, and conveying the Neo4j Sweden Software License

2   without the Commons Clause constitutes removing CMI”); *see also ICONICS, Inc. v. Massaro*,

3   192 F.Supp.3d 254 (D. Mass. 2016) (copyright headers of individual source code files constituted

4   CMI because they conveyed information about copyright owner, and certain terms of use for the

5   file, and were conveyed along with source code files precisely to keep identifying information

6   together with the code).

7            c.       *Whether Defendants had actual knowledge that CMI “has been removed or*

8   *altered” without Neo4j Sweden’s authorization. See 17 U.S.C. § 1202(b)(3).*

9          The resolution of this issue also depends on the legal interpretation of Section 7 and 10 of

10  the Neo4j Sweden Software License as detailed above.

11           d.       *Whether Defendants knew or had reasonable grounds to know that their*

12  *removal of Neo4j Sweden’s CMI would “induce, enable, facilitate or conceal” infringement under*

13  *17 U.S.C § 1202(b).*

14         It is Plaintiffs’ position that Defendants knew or had reason to know their removal of the

15  Commons Clause and distribution of Neo4j Sweden’s Neo4j® EE v3.4 and Neo4j® EEv3.5

16  software (rebranded as ONgDB) without Neo4j Sweden’s CMI would result in end-users infringing

17  Neo4j Sweden’s right to limit the use of Neo4j® EE to paid subscribers. *See Jacobsen v. Katzer*,

18  535 F.3d 1373, 1381 (Fed. Cir. 2008) (“[c]opyright holders who engage in open source licensing

19  have the right to control the modification and distribution of copyrighted material” and where “a

20  license is limited in scope and the licensee acts outside the scope, the licensor can bring an action

21  for copyright infringement”).  This Court also previously rejected the argument that Defendants

22  could engage in self-help under the guise of enforcing the FSF’s alleged copyright in the AGPL

23  and that it is not possible for a “contractually permitted action” to have been “taken with knowledge

24  that it would aid infringement” under the DMCA.  *Neo4j, Inc*., 2020 WL 6700480, at *4; Dkt. No.

25  118 at 24:16-25:12.  Defendants again fail to cite to any contrary authority to support their positions.

26         It is Defendants’ position that Suhy made a contribution to GFI’s ONgDB repository

27  suggesting removal of the Neo4j Sweden AGPL license with the commons clause to comport with

28  the AGPL license terms. Suhy thought this is what the AGPL allowed. And that is before this

1    court's rulings on the matter. While Suhy cannot enforce the FSF copyright, he is obliged to not

2    contribute to its violation. Neo4j's Sweden's CMI is a violation of FSF' copyright. They should

3    not be permitted to complain of there own copyright infringement being corrected as the basis of a

4    DMCA claim. The Court has held the AGPL is Neo4j's license and they can change it however

5    they want. Before the court's rulings it was understood the AGPL is FSF's license and, by its terms,

6    could not be changed. The other changes suggested by Neo4j were done by GFI. GFI had advice

7    of FSF and counsel and made changes and distributed ONgDB. Neo4j obtained a judgment against

8    them resolving all disputes with changes and distribution of ONgDB.

9            e.      *Whether Suhy's intentional removal of Neo4j Sweden's CMI and his*

10   *knowledge thereof is imputed on his entities and vice-versa for purposes of 17 U.S.C. § 1202(b).*

11          It is Plaintiffs' position that Suhy's intentional removal of Neo4j Sweden's CMI and his

12   knowledge thereof is imputed on his entities and vice-versa because it was for the pecuniary benefit

13   of all Defendants as evidenced by their extensive promotion of ONgDB as a "free and open" version

14   of Neo4j® EE and offering paid support services that would have otherwise been prohibited by the

15   Commons Clause.  *See Carson v. Verismart Software*, 2012 WL 1038713, at *4 (N.D. Cal. Mar.

16   27, 2012) ("corporate officers, shareholders, and employees may be held personally liable for the

17   corporation's copyright infringements when they are a 'moving, active conscious force behind the

18   corporation's infringement'") (internal citation omitted); *The Comm. for Idaho's High Desert, Inc.*

19   *v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) ("a corporate officer or director is… personally liable for

20   all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as

21   an agent of the corporation and not on his own behalf") (internal citation omitted).

22          It is Defendants' position that the commons clause removal had no impact on defendants

23   business. They only provide services to Neo4j licensees from the federal government. They do not

24   sell anything such that the commons clause has no impact. Suhy made the contribution to GFI as

25   he supports open source software and wants the rules of the AGPL to be followed. His conduct was

26   not a business position. He only provides services to licensees. What he does not want is a company

27   to sign up for an open source business model, use free services of contributors and accelerate end

28   user growth then have the developer pull the rug out from under everyone and change from open

1    to closed source. Before the rulings in this case, that could not be done.

2            f.      *Whether Defendants are jointly and severally liable for GFI, AtomRain, Inc.*

3    *and/or GraphGrid, Inc.'s admitted violations of 17 U.S.C. § 1202(b).*

4            It is Plaintiffs' position that Defendants should be held jointly and severally liable for GFI,

5    AtomRain, Inc. and/or GraphGrid, Inc.'s admitted wrongful distribution of ONgDB containing

6    DMCA violations.  In this regard, Suhy contributed to by removing Neo4j Sweden's CMI via

7    commits on GFI's GitHub repository and provided potential users with links to download the

8    infringing ONgDB software from that repository and GFI's website.  *See Adobe Sys. Inc. v. Blue*

9    *Source Grp., Inc*., 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) (recognizing that "[c]ourts in the

10   Ninth Circuit have held that in patent, trademark, literary property, and copyright infringement

11   cases, any member of the distribution chain of allegedly infringing products can be jointly and

12   severally liable for the alleged misconduct") (internal quotes and citations omitted).

13           Plaintiffs further contend that Defendants cannot escape responsibility for the damages that

14   flowed from their removal of Neo4j Sweden's CMI simply because a judgment was entered against

15   the GFI Defendants.  As recognized by the Supreme Court, "[i]f two or more defendants jointly

16   cause harm, each defendant is held liable for the entire amount of the harm…." *Honeycutt v. United*

17   *States*, 581 U.S. 443, 447-48 (2017); *see also Desire, LLC v. Manna Textiles, Inc*., 986 F.3d 1253,

18   1263 (9th Cir. 2021) ("[w]hen two or more persons have joined in or contributed to a single

19   infringement of a single copyright, each is jointly and severally liable") (internal quotes and citation

20   omitted). Defendants also ignore that they continued to promote and distribute software containing

21   the DMCA violations after judgment was entered against the GFI Defendants.

22           It is Defendants' position that Suhy made a contribution to GFI, it was up to GFI to accept

23   it. They independently looked into it and removed CMI from the AGPL. Neo4j has obtained a

24   judgment against the GFI Defendants and all damages and harm for their conduct has been resolved

25   through judgment.

26           g.      *Whether Plaintiffs are the prevailing party for the purposes of their DMCA*

27   *claim and are entitled to recover their attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5).*

28           The factors justifying an attorneys' fees award amount to an exceptional case under the

1    Lanham Act are virtually the same for awarding Plaintiffs such fees under the DMCA.  *See Fogerty*,

2    510 U.S. at 534 n.19 (1994); *see also Unicom Systems, Inc*, 405 F. App'x 152, 155.  This includes

3    awarding plaintiff its attorneys' fees where defendant's violations of the DMCA were willful.  *See,*

4    *e.g., Sony Computer Entm't Am., Inc. v. Divineo, Inc*., 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006);

5    *Dish Network, L.L.C. v. SatFTA*, No. 5:08-CV-01561 JF PSG, 2011 WL 856268, at *7 (N.D. Cal.

6    Mar. 9, 2011).  It is therefore Plaintiffs' position that they are entitled to recover their attorneys'

7    fees for the same reasons detailed above with respect to Neo4j USA's Lanham Act claims.

8         It is Defendants' position that Suhy's conduct was not willful as discussed above. Neo4j

9    Sweden violated FSF' copyright. Suhy corrected it to avoid contributing infringement of FSF's

10   copyright. Defendants should recover as prevailing parties.

11        h.    *Whether the Court should enjoin Defendants from further violations of the*

12   *DMCA pursuant to 17 U.S.C. § 1203(b)(1).*

13        Plaintiffs contend that the Court should permanent enjoin Defendants from distributing

14   graph database software containing Neo4j Sweden's source code with a DMCA violation and/or in

15   a manner that infringes Neo4j Sweden's copyrights in Neo4j® EE. *See Apple Inc.,* 673 F. Supp. 2d

16   at 948 (recognizing that monetary damages would not prevent defendant from continuing to

17   infringe plaintiff's copyrights and violate the DMCA in the future, and will not prevent third-parties

18   from infringing plaintiff's copyrights).  A permanent injunction is warranted to prevent Defendants

19   from continuing to distribute improperly licensed ONgDB and its derivatives such as GraphStack

20   GDB and GDB, and attempt to compete with Plaintiffs by offering such software containing

21   DMCA violations for free and promoting paid support services.  *Michael Grecco Prods., Inc. v.*

22   *WrapMarket, LLC*, 2017 WL 10434020, at *4 (C.D. Cal. Nov. 8, 2017) (irreparable injury exists

23   where infringement harms the competitive position and market share of the copyrighted work).

24        It is Defendants position that they do not distribute software. Neo4j obtained a judgment

25   against the GFI defendants who license and distribute ONgDB. Any issues on distribution should

26   be resolved by that judgment.

27        **4.  Plaintiffs' Unclean Hands Affirmative Defense**

28

1          *a.       Whether Plaintiffs can establish that Defendants' alleged misconduct is*

2   *inequitable and bears the requisite "immediate and necessary" relationship to the subject matter*

3   *of their claims in order to prevail on their unclean hands defense.*

4          Plaintiffs contend that Defendants acted in a willful and in bad faith by intentionally

5   promoting open source Neo4j software and infringing the Neo4j Mark in violation of the provisions

6   of the PSA, which bears an immediate and necessary relationship to Neo4j USA's termination of

7   the PSA and the discontinuation of the Gov't Edition.  *See Pinkette Clothing, Inc. v. Cosm.*

8   *Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) (a showing of wrongfulness, willfulness, bad

9   faith, or gross negligence by clear and convincing evidence will establish sufficient culpability for

10  invocation of the doctrine of unclean hands); *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th

11  Cir. 2014) (defendant must also show that plaintiff's "misdeeds ... have an immediate and necessary

12  relation to the equity that [plaintiff] seeks in respect of the matter in litigation.") (quoting *Keystone*

13  *Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)).

14         It is Defendants' position that Neo4j USA terminated the PSA because Suhy would not lie

15  to the IRS about the need for a commercial license. Neo4j claimed the IRS had to make the use

16  open to scare them to buy a license. The AGPL does not require providing the source code of

17  modified code unless it is conveyed. The IRS does not convey software. This type of marketing

18  tactic denigrates the validity of the Neo4j product. The IRS can read the AGPL and determine

19  Neo4j's position was false. That is not the basis of unclean hands. The PSA grounds have been set

20  aside as the court dismissed affirmative defense on the grounds they are moot. If they are moot for

21  the defendant, they are moot for the plaintiff.

22         **5.   Plaintiffs' Set-Off Affirmative Defense**

23         *a.       Whether Plaintiffs are entitled to a set off on counterclaims brought by*

24  *Defendants where they are entitled to recover monetary damages.*

25         Plaintiffs contend they are entitled to an offset to any damages awarded to Defendants

26  under their breach of exclusivity contract claim with the damages awarded to Plaintiffs under

27  their Lanham Act and/or DMCA claims.  *See Norton v. LVNV Funding, LLC*, No. 18-CV-05051-

28  DMR, 2021 WL 3129568, at *6 (N.D. Cal. July 23, 2021) (recognizing setoff as a defense "by

which a defendant may seek to offset sums owed to a plaintiff against sums owed by the plaintiff to the defendant").

Defendants assert that both side have an offset defense, which should be properly applied.

### 6. Plaintiffs' Lack of Subject Matter Jurisdiction Affirmative Defense

a.   *Whether there is an actual case and controversy conferring subject matter jurisdiction with respect to Defendants' Declaratory Judgment claim regarding the scope of the commons clause.*

It is Plaintiff's position that there is no case and controversy with respect to the interpretation of the Common Clause because Court has already determined that it prohibits the type of commercial support services offered by Defendants. *See* Dkt. No. 118 at 3:11-13 (the Commons Clause "prohibited the non-paying public from engaging in commercial resale and certain commercial support services"); *id*. at 5:26-6:1 ("[t]he Commons Clause prohibited resale and commercial support services"); *id*. at 6:21-26 (Defendants' removal of the Commons Clause "effectively allow[ed] Defendants to commercially use and support ONgDB").

It is Defendants' position that these rulings are not clear as to scope. The Commons Clause says: The Software is provided to you by the License under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software.  The rulings are too general given the restrictions apply only to the Licensee under the AGPL. If Neo4j agrees the restrictions only applies to Licensees, then there is no case in controversy. Otherwise, the issue needs to be clear on the scope of the restrictions and if applied to non-licensees, on what basis. A copyright holder is only permitted to limit use under the rights of the copyright.

### 7. Other Legal Issues Raised by Plaintiffs

a.   *Whether the law of the case prohibits Defendants from re-litigating the factual and legal issues resolved by the Court' May 18, 2021 summary judgment order and the Ninth Circuit's affirmation thereof.*

As detailed above, Plaintiffs contend that because Defendants filed an interlocutory appeal

of the Court's May 18, 2021 summary judgment order and the Ninth Circuit affirmed it, the law of the case doctrine bars Defendants from re-litigating the Court's factual and legal findings in that order.  *See Herrington*, 12 F.3d at 904; *accord Aquino*, 2018 WL 3845718, at *1.  Defendants' assertion that they only appealed the preliminary injunction misstates the record. Defendants' opening appellate brief characterized the legal and factual basis of this Court's interpretation of the provisions of Neo4j Sweden Software License as being "'inextricably bound up' with its legal resolution of the summary judgment" and therefore sought de novo review thereof.  *See* Dkt. No. Decl., Ex. 4 at 17 (arguing that "the court's preliminary injunction is 'inextricably bound up' with its legal resolution of the summary judgment; this Court therefore exercises plenary review."); *see also id.* at 8, fn 3 ("The propriety of adding the Commons Clause to the AGPL license was a matter of dispute and is discussed further in the Argument").

Defendants contend that they appealed only the preliminary injunction. The summary judgment was partial and not a final order and may be revised at any time under FRCP Rule 54.

b.      *Whether Defendants' are estopped from re-litigating the Courts' interpretation of the Neo4j Sweden Software License based on its prior stipulated dismissal of a counterclaim and affirmative defenses dependent on the same determination.*

Plaintiffs contend that Defendants are estopped from rearguing the interpretation of the relevant provisions of the Neo4j Sweden Software License and the AGPL based on their prior stipulations in this case and their judicial admissions made therein.  *See United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 873 (9th Cir. 2001) (stipulation meets the fully litigated requirement where it is clear that the parties intended the stipulation to adjudicate once and for all the issue or claim); *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019) (recognizing the expressed intention of the parties, as evidenced in a stipulation, determines the preclusive effect of the claims or issues resolved in the stipulation); *see also American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988) (recognizing "under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court"); *Park v. Transamerica Ins. Co.,* 917 F. Supp. 731, 735 (D. Haw. 1996) (stipulations fairly entered into are favored and should be upheld by court absent manifest injustice to parties).

On September 2, 2021, the parties stipulated to narrowing the scope of their claims to streamline Phase 2, and the Court adopted that stipulation as an order.  Dkt. No. 133. Defendants therein agreed that should the Ninth Circuit affirm that ruling, Defendants would no longer pursue and take all necessary steps to dismiss their Seventh Cause of Action for Declaratory Relief, which seeks a determination as to whether Neo4j Sweden AB's inclusion of Common Clause in the Neo4j Sweden Software License violated its terms and Suhy's right to remove it as a "further restriction, and similarly pled Fifth, Sixth and Thirteenth Affirmative Defenses. *Id*. at 3:1-9.  In light of the Ninth Circuit affirming this Court's interpretation of the Neo4j Sweden Software license (Dkt. No. 140, 141), Defendants stipulated to dismiss their Seventh Cause of Action for Declaratory Relief (Dkt. No. 72, ¶¶ 62-69), and Fifth, Sixth and Thirteenth Affirmative Defenses (Dkt. No. 91 at 19:9-20:9, 22:22-24:5) because they were "***no longer legally viable***."  Dkt. No. 144 at 1:23-28.

Defendants assert that claims and defenses may be dismissed but that does not mean the facts are waived or disappear and cannot be used on other claims and defenses. Neo4j's misrepresentations to the IRS have been withdrawn for the interference claim but still apply to the unclean hand defense. The fact Neo4j Sweden violated FSF' AGPL copyright and license is part of the defense in the DMCA claim.  Likewise, the parties agreed to Phase 1 and Phase 2 issues yet Plaintiffs claim phase 2 issues cannot be raised as they were resolved in Phase 1. This position is inconsistent with Plaintiffs' discussion above and due process.

### B.      Defendants' Counterclaims and Affirmative Defenses

#### 1.    PureThink's Counterclaim for Breach of Exclusivity Agreement

a.      *Whether PureThink can establish the parties had a meeting of the minds on April 11, 2015 as to an enforceable exclusivity contract for the resale of the Gov't Edition.*

Under California law, contract formation "requires that the parties' reach mutual assent or consent on definite or complete terms." *Netbula, LLC v. Bindview Dev. Corp*., 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007). "Terms of a contract must also be sufficiently definite in all particulars essential to its enforcement." *Id*.  "Consent" means "mutual assent or consent on definite or complete terms." *Id*.

Neo4j USA contends that it never consented to or entering into an exclusivity agreement with PureThink as alleged.  Likewise, the evidence shows that it understood that it owned the rights to the Gov't Edition and could unilaterally terminate PureThink as the exclusive reseller thereof at any time and for any reason without compensating PureThink for any alleged development work. As a result, there was never any meeting of the minds or an enforceable "exclusively contract" as alleged by PureThink. *See Bustamante v. Intuit, Inc*., 141 Cal. App. 4th 199, 209, 215 (2006) (affirming summary judgment for defendant, holding that "the undisputed facts here show no meeting of the minds as to the essential structure and operation of the alleged joint venture, even if there was agreement on some of the terms"); *see also RHUB Commc'ns, Inc. v. Karon*, No. 16-CV-06669-BLF, 2019 WL 8267743, at *4 (N.D. Cal. Nov. 22, 2019) ("failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract").

Defendants contend that this issue has been briefed in the summary judgment motion. There is a clear writing, PureThink relied on the agreement to develop software that opened the market. Neo4j is estopped to deny the agreement. The agreement was not part of the PSA and was an independent agreement. Exclusive has a very clear meaning. PureThink had the exclusive right to sell to the government.

b. *Whether PureThink can assert and establish that the parties later orally modified the alleged April 11, 2015 exclusivity contract to include terms requiring (i) Neo4j USA to obtain PureThink's consent before terminating that contract; and (ii) compensate PureThink for its development work on Neo4j Government Edition after the time for amending the pleadings has past and discovery has closed.*

Neo4j USA contends that PureThink failed to produce competent evidence establishing when Neo4j USA consented to such an oral agreement or modification, who consented on behalf of Neo4j USA, how much compensation would be, and what additional consideration PureThink offered.  Thus, no such oral agreement or modification can exist as a matter of law.  *See Hohs v. Allstate Ins. Co.*, 2010 WL 11706760, at *5-6 (N.D. Cal. Feb. 10, 2010) (granting summary judgment where plaintiff failed to provide evidence of when the oral contract was entered into and

- 48 -

1  defendant's consent to the terms thereof); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, 2011

2  WL 1195680, at *3-5 (C.D. Cal. Mar. 29, 2011) (same); s*ee also Stanford Hosp. & Clinics v.*

3  *Multinat'l Underwriters, Inc.*, 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no

4  mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind);

5  *Davidson v. ConocoPhillips Co.*, 2009 WL 2136535, at *3 (N.D. Cal. July 10, 2009) (granting

6  summary judgment for defendant where plaintiffs failed to show the oral modification to a written

7  contract was supported by new consideration).

8      Defendants contend that while the Exclusivity Agreement contains no termination clause,

9  Plaintiffs are not free to insert one purely in their favor. Without an express term, "The court

10  determines whether one can be implied from the nature and circumstances of the contract." *Zee*

11  *Medical Distributor Assn. Inc. v. Zee Medical, Inc.*, 80 Cal. App. 4th 1, 10 (Cal. Ct. App. 2000).

12      A fair analysis of the nature and circumstances of the Exclusivity Agreement would not

13  permit a termination clause that permitted Neo4j USA to "terminate PureThink as the exclusive

14  reseller thereof without cause and without further compensating PureThink." Dkt. 183 at 23:13-14.

15  A fair implied termination clause would instead compensate Mr. Suhy for the government edition.

16      *c.*   *Whether PureThink performed and/or is excused for its non-performance*

17  *under the alleged April 11, 2015 exclusivity contract.*

18      Neo4j USA contends that PureThink cannot establish performance of its contractual

19  obligations or that its performance was excused because it never stopped using the Gov't Edition

20  and used Neo4j USA's trademark without authorization in promoting it.  *See* Cal. Civ. Code, §

21  1439 ("Before any party to an obligation can require another party to perform any act under it, he

22  must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to

23  fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party ..."");

24  *Wiz Technology, Inc. v. Coopers & Lybrand,* 106 Cal. App. 4th 1, 12 (App. 2 Dist. 2003)*, as*

25  *modified* (Feb. 6, 2003) (a party complaining of the breach of a contract is not entitled to recover

26  therefor unless he has fulfilled his obligations; *accord eOnline Glob., Inc. v. Google LLC*, 387 F.

27  Supp. 3d 980, 986 (N.D. Cal. 2019) (citing same).

28      Defendants contend that this point is not part of PureThink's performance. PureThink

1    performed its obligation by developing and selling the software.

2              d.      *Whether PureThink can establish it suffered damages with reasonable*

3    *certainty from Neo4j USA's alleged breach thereof.*

4         In order to succeed on its breach of contract claim, PureThink must be able to establish it

5    suffered damages with "reasonable certainty and probability." *See McGlinchy v. Shell Chem. Co*.,

6    845 F.2d 802, 809 (9th Cir. 1988).

7         Plaintiffs contend that because PureThink failed to produce competent evidence of its

8    alleged damages and that its financial statements indicated there was no costs incurred relating to

9    the development Gov't Edition, its breach of contract claim fails as a matter of law.  *See McGlinchy,*

10   845 F.2d at 809.  Likewise, Plaintiffs contend that PureThink cannot recover $1.3 million for the

11   alleged loss of the CKGE Contract with the IRS as contract damages because it previously

12   conceded that Neo4j USA had a constitutionally protected right to protest that award under the

13   *Noerr–Pennington* doctrine.  *See* Dkt. Nos. 171, 172 and 176; *see also Octane Fitness,* 572 U.S. at

14   555–56 (under the *Noerr–Pennington* doctrine "defendants are immune from antitrust liability for

15   engaging in conduct … aimed at influencing decision making by the government"); *Empress LLC*

16   *v. City & Cty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (recognizing that the *Noerr-*

17   *Pennington* doctrine shields individuals and entities from liability for petitioning any part of the

18   government for redress, even if the outcome of the petitioning results in harm to a competitor).

19        Finally, Plaintiffs contend that Defendants cannot simply rely on a spreadsheet of Neo4j

20   USA's government to establishing its alleged damages without establishing but for the termination

21   of the alleged exclusivity agreement, PureThink would have sold the Gov't Edition to them.  *See*

22   *McGlinchy, 845 F.2d at 809; Codding v. Pearson Educ., Inc.*, 2019 WL 5864579, at *12 (N.D. Cal.

23   Nov. 8, 2019), *aff'd,* 842 F. App'x 70 (9th Cir. 2021).

24        Defendants contend that Mr. Suhy's statements as to time and value of his development

25   services are competent to prove the damages of his developing the software to satisfy the

26   government requirements. His damages are the sales Neo4j made to the US government.

27        **2.  Defendants' Declaratory Relief Claim re Scope of the Commons Clause**

28

1          *a.        Whether the Commons Clause prohibits the type of commercial support*

2   *services offered by Defendants.*

3          This is an issue of contractual interpretation, which is a question of law. *See* Cal. Civ. Code

4   §§ 1638, 1639, 1641; *see also SDR Cap. Mgmt., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 320 F.

5   Supp. 2d 1043, 1046 (S.D. Cal. 2004) (recognizing that "[u] nder California law, it is well settled

6   that the interpretation of a contract is a question of law for the trial court's determination").

7          As noted above, it is Plaintiff's position that there is no case and controversy because Court

8   has already determined that the Commons Clause prohibits the type of commercial support services

9   offered by Defendants. *See* Dkt. No. 118 at 3:11-13, 5:26-6:1, 6:21-26.

10         Defendants contend that these determinations are not clear as to scope. This is a Phase 2

11  issue not addressed in Phase 1. The Commons Clause in Neo4j's changed AGPL license agreement

12  states: The Software is provided to you by the License under the License, as defined below, subject

13  to the following condition. Without limiting other conditions in the License, the grant of rights

14  under the License will not include, and the License does not grant to you, the right to Sell the

15  Software.

16         The determinations in other motions are too general given the restrictions apply only to the

17  Licensee under the AGPL. If Neo4j agrees the restrictions only apply to Licensees, as the term

18  state, then there is no case in controversy. Otherwise, the issue needs to be clear on the scope of the

19  restrictions and if applied to non-licensees, on what basis applied to a party not in contractual

20  privity.

21              **3.   Defendants' Unclean Hands Affirmative Defense**

22         *a.        Whether Defendants can establish by clear and convincing evidence that*

23  *Neo4j USA's alleged misconduct is inequitable in order to prevail on their unclean hands defense*

24  *asserted against Neo4j USA's Lanham Act and UCL claims.*

25         Plaintiffs contend that Defendants cannot meet this element because none of Neo4j USA's

26  alleged "bad acts" arise to inequitable conduct. *See Pinkette Clothing, Inc.*, 894 F.3d at 1029.

27  Defendants also have no evidence that Neo4j USA acted with the requisite fraudulent intent or

28  caused consumer deception. *See Wells Fargo & Co. v. Stagecoach Properties, Inc.*, 685 F.2d 302,

1   308 (9th Cir. 1982) (bad intent is the essence of the defense of unclean hands); *Jarrow Formulas,*

2   *Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 841 (9th Cir. 2002) (application of unclean hands to

3   Lanham Act claims requires evidence of fraudulent intent); *Perfumebay.com, Inc. v. eBay, Inc*.,

4   506 F.3d 1165, 1178 (9th Cir. 2007) (holding that the record must "affirmatively demonstrate"

5   consumer deception to prevail on unclean hands); *Japan Telecom, Inc. v. Japan Telecom Am. Inc*.,

6   287 F.3d 866, 870 (9th Cir. 2002) ("[t]o show that a trademark plaintiff's conduct is inequitable,

7   defendant must show that plaintiff used the trademark to deceive consumers").   Similarly,

8   Defendants cannot show that they suffered any harm caused by Neo4j USA's alleged misconduct.

9   *See Allmerica Fin. Life Ins. & Annuity Co. v. Dalessio*, No. C-96-0385 VRW, 2006 WL 408538,

10   at \*7 (N.D. Cal. Feb. 20, 2006) (recognizing that "courts do not apply the doctrine of unclean hands

11   where the defendant has suffered no harm as a result of the plaintiff's actions").

12      Plaintiffs further contend that Defendants unclean hands defense fails because Neo4j USA's

13   alleged misrepresentations of first date of use, ownership of trademark and failure to correct those

14   misrepresentations" are the same facts underpinning their cancellation/fraud on the USPTO

15   counterclaim/defense that was previously dismissed with prejudice.   The reassertion of these facts

16   violates the law of the case doctrine.  *See Herrington*, 12 F.3d at 904; *accord Aquino*, 2018 WL

17   3845718, at \*1.

18      Likewise, Defendants' assertion that TTAB's *Chutter* opinion obligated Plaintiffs to

19   disclose the existence of the intercompany license between Neo4j USA and Neo4j Sweden to the

20   PTO is without merit. There is no alleged misrepresentation to correct or intent to deceive because

21   this Court held in granting summary judgment on Neo4j USA's Lanham Act claims that Neo4j

22   USA was the owner of the Neo4j Mark and the registration for that mark was valid.  Dkt. No. 118

23   at 11:16-12:26, 13:18-18:1 *aff'd* Dkt. Nos. 140-141.  It also violates the Court's prior directive that

24   "Defendants are not permitted to reassert ***any affirmative defense*** or counterclaim in this action

25   based on the cancellation or abandonment theories asserted in the stricken defenses."  Dkt. No. 110

26   at 5:16-6:4 (emphasis added).

27      Defendants contend that Neo4j USA has been guilty of false and misleading representations

28   in the application for the Neo4j trademark (false representations on application and concealment of

falsity), falsely representing the scope of the AGPL, changing the AGPL in violation of FSF' copyright, using FSF's trademark "AGPL" to misrepresent the license when they license and relicenses are not AGPL compliant. They take the benefits of contributors who developed portions of the software then convert the software to commercial software profiting off the work of the contributors. And misrepresent the scope of the AGPL license to require open access to users databases. This conduct violates the standard in *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903).  ("it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation.")

Neo4j claims this is another attempt to raise the invalidity of the Trademark which the court has not allowed. It is not. It is to prevent Neo4j from enforcing trademarks. Having the registration and being able to enforce it are two different matters. There is no clear use of unclean hands than to disallowing a party who lies to and conceals from the PTO clear evidence that they are only a nonexclusive licensee when they must be an owner to file the application. The willful violation of FSF's copyright to try to force consumers to pay money for software that is free is unclean hands.

b.      *Whether Neo4j USA's allege bad acts bear the requisite "immediate and necessary" relationship to the subject matter of its Lanham Act and UCL claims.*

In order to prevail on their unclean hands defense, Defendants must also establish that the alleged bad acts bear an "immediate and necessary" relationship to the subject matter of Neo4j USA's Lanham Act claims.  *See S. Cal. Darts Ass'n*, 762 F.3d at 932; *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *accord Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1078 (N.D. Cal. 2021).

Plaintiffs contend that ***none*** of Neo4j USA's alleged "bad acts" are materially related to Defendants' infringement of the Neo4j Mark, or their false advertising in connection with the distribution, offering, and promotion of ONgDB software as a free and open, drop-in replacement for Neo4j® EE.  Thus, they cannot succeed on their unclean hands defense. *See Fuddruckers*, 826 F.2d at 847  (plaintiff's deceptive marketing of its hamburger meat as "ground steak" did not bar trade dress infringement suit); *Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 839 (9th Cir. 1980)

(plaintiff's use of "patent pending" in connection with trademark at issue when no patent application was on file did not bar claims for trademark infringement and unfair competition).

Defendants assert that obtaining a trademark registration based on 2 lies and a concealment are an immediate and necessary event to try to enforce marks they do not own. Violating FSF's AGPL license creates the basis of the commons clause. Violating all the contributor's copyright to convert to a commercial sale creates the change to the code and abandonment of the open source version in violation of the AGPL copyrighted license. All the conduct directly impacts the Lanham Act claims. If Neo4j told the TPO they did not own the trademark and were non-exclusive licensees, it is likely they would not have been granted the registration. (Neo4j sought an injunction to prevent Mr. Suhy for providing the license agreement to the PTO for a reason). If Neo4j Sweden complied with FSF's scope of copyright license (no changes are allowed) there would be no common clause issue in this case, there would be no need to have a comparison of the two versions of software to warn consumers they do not have to pay for the software. The contributors would not have been sold out so Neo4j USA could sell the software on an object code only license with no right to the source as required under the AGPL.

### 4. Defendants' Set-Off Affirmative Defense

a.    *Whether Defendants are entitled to a set off on claims brought by Plaintiffs where they are entitled to recover monetary damages.*

Plaintiffs contend that Defendants are not entitled to invoke the principle of equitable set-off.  Such a defense must "rest on a claim enforceable in its own right, e.g. a claim that the contract at issue is void and unenforceable or a claim for breach of contract."  *See Lincoln Nat. Corp. v. TakeCare, Inc*., No. C 97-02193 CW, 1998 WL 281290, at *8 (N.D. Cal. May 11, 1998).  As detailed above, Plaintiffs contend that there was never a meeting of the minds over an exclusivity contract for the Gov't Edition and therefore no contract upon which to impose a set-off.  Likewise, Defendants cannot establish it suffered damages with "reasonable certainty and probability", and thus have nothing to use as a set-off.

Defendants contend they are entitled to a set off if a claim is established.

### 5. Defendants' Waiver Affirmative Defense

1            *a.*       *Whether Neo4j USA waived enforcement of the terms of the Partner*

2  *Agreement by entering into an exclusive agreement for government contracts and allowing*

3  *defendants to modify the open source version of Neo4j to satisfy government buyers.*

4          Waiver is the intentional relinquishment of a known right after full knowledge of the facts.

5  *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000); *accord*

6  *MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-CV-02220-JCS, 2017 WL 1848470, at *19

7  (N.D. Cal. May 8, 2017) (citing same).  Neo4j USA contends this defense fails as a matter of law

8  because PureThink has never identified any specific contractual right waived by Neo4j USA under

9  the Partner Agreement or any evidence of its intentional relinquishment thereof.

10          Defendants contend that Neo4j USA cannot enter into an agreement for to develop the govt

11  government edition then claim they cannot use the code to develop the government edition.

12            **6.   Other Legal Issues Raised by Defendants**

13          *a.*       *Related to the defense of Plaintiffs' DMCA claim, whether Neo4j Sweden's*

14  *addition of the Commons Clause to FSF' AGPL license violates the license scope of no further*

15  *changes, FSF granted for use of the AGPL license.*

16          Plaintiffs contend this is not a disputed legal issue because the Court determined that Neo4j

17  Sweden was entitled to include the Commons Clause as the licensor of the underlying software.

18  Defendants also previously sought declaratory relief based, *inter alia*, on the allegations that

19  "Commons Clause restrictions are not allowed under an AGPL license because [the FSF], the

20  copyright holder of the AGPL, states that changes to the license agreement are not allowed" and

21  "[a]dding the Commons Clause is a violation of the terms of the AGPL exceeding the copyright

22  grant and is void."  Dkt. No. 72, ¶¶ 65-66.  After the Ninth Circuit affirmed this Court's reading of

23  the relevant provisions, Defendants stipulated to the dismissal of this declaratory relief claim

24  because it was "***no longer legally viable***."  Dkt. No. 144 at 1:23-28.  As detailed above, Defendants

25  are now estopped from circumventing this stipulation and their judicial admission.

26          *b.*       *Related to the defense of Plaintiffs' DMCA claim, whether Neo4j Sweden*

27  *can enforce its CMI which is a copyright infringement of the FSF AGPL license restriction.*

28          Plaintiffs contend that even under Defendants' incorrect interpretation of the AGPL, there

are no provisions therein that prohibited Neo4j Sweden from including the title of the copyrighted work, terms and conditions for use of the work and other conspicuous displays identifying Neo4j Sweden owner of these copyrighted works – all of which falls within the definition of CMI under the DMCA.  *See* 17 U.S.C. § 1202(c) (1)-(3), (7).  Thus, Defendants' undisputed removal and alteration thereof continues a violation of the DMCA irrespective of any copyright the FSF may have in the AGPL. *See Neo4j, Inc.*, 2020 WL 6700480, at \*5; *ICONICS*, 192 F. Supp. 3d at 272.

> c.      *Related to the defense of Plantiffs' DMCA claim, whether a licensee under the AGPL has the right to assert license terms when Neo4j Sweden violated the terms of the license.*

To the extent Plaintiffs understand Defendants' circular proposition, this appears to be a restatement of Defendants' argument that their removal of Neo4j Sweden's CMI was justified by their perception that Neo4j Sweden's inclusion of the Commons Clause violated the FSF's copyright.  As detailed above, the Court previously rejected this and similar arguments made by Defendants in granting summary judgment in favor of Plaintiffs  *See* Dkt. No. 118 at 24:7-25:19; *see also Neo4j, Inc.*, No. 5:19-CV-06226-EJD, 2020 WL 6700480, at \*4.  Defendants also previously stipulated that their counterclaim based on the same premise was no longer legally viable after the Ninth Circuit affirmed that summary judgment order. *See* Dkt. No. 144.

Defendants assert that this is as opposed to lack of standing on copyright as the court has already ruled. A breach of license agreement may be enforced by copyright and breach of contract. Copyright claims are more restrictive. The breach of license claim may be enforced by the licensee. Here the AGPL provides a license for self-executing removal of terms which breach the terms of the AGPL. This is not a copyright issue. It's a right under the license issue.

> d.      *Whether Lanham Act damages can be applied for false advertising and conduct related to licensing software when defendants do not license software.*

Plaintiffs contend that Defendants are once again seeking to circumvent legal issues settled by Court's prior summary judgment order in violation of the law of the case. To be sure, the Court rejected Defendants' assertion that "customers like Next Century would have purchased a Neo4j subscription but for Defendants' offering ONgDB as a 'free and open source drop-in replacement,'"

1  finding that commercial injury was presumed because this is a comparative advertising case. Dkt.

2  No. 118 at 29:12-30:13 (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir.

3  2011)); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct.

4  1377, 1393 (2014) ("diversion of sales to a direct competitor may be the paradigmatic direct injury

5  from false advertising").  This also appears to be immaterial since the Court separately found that

6  Defendants engaged in false advertising by claiming ONgDB was a "drop-in replacement" for

7  equivalent versions Neo4j® EE.

8  **VI.    TRIAL STIPULATIONS**

9      ***Stipulation on Further Dismissal of Claims, Counterclaims and Defenses***

10         During the parties' meet and confer discussions in conjunction with the preparation of this

11  Statement, the parties discussed ways to further streamline and narrow the claims and defenses to

12  be tried by the Court.  Fed. R. Civ. P. 41 only permits the complete dismissal of a complaint or

13  counterclaim, and does not permit the dismissal of only certain claims "from a multi-claim

14  complaint." *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988).  Instead,

15  where a party seeks to drop certain claims, the proper procedure is to either amend the complaint

16  pursuant to Fed. R. Civ. P. 15(a) or stipulate that certain claims will not be pursued or will be

17  dismissed.  *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 688 (9th Cir. 2005).

18  As a result of these discussions, the parties agreed to following:

19         1.      Defendants will no longer pursue with no determination of liability and to dismiss

20  their: (a) Third Cause of Action for Breach of Contract against Neo4j USA [Dkt. No. 177 at ¶¶

21  48-52]; (b) Ninth Cause of Action for Declaratory Relief (Users May Use and Fork Content

22  Neo4j Sweden put on a Public GitHub Repository) against Neo4j Sweden [Dkt. No. 177 at ¶¶ 66-

23  71]; and (c) Third Affirmative Defense of Right to Fork and Use Neo4j Open Source Under

24  GitHub Terms of Service [Dkt. No. 91 at 16:7-19].

25         2.      Plaintiffs will no longer pursue with no determination of liability and to dismiss

26  their: (a) Fifth Cause of Action for Breach of Contract against PureThink and iGov [Dkt. No. 90

27  at ¶¶ 134-147]; and (b) Seventh Cause of Action for Defamation against Defendants [Dkt. No. 90

28  at ¶¶ 157-165].

3.     Plaintiffs agree to provide Defendants with a $26,000 deduction to the total amount of damages awarded to Plaintiffs on their Lanham Act claims and/or DMCA claim.

***Evidentiary Stipulations***

The parties propose the following stipulations that will expedite the presentation of evidence at trial:

1.     The parties agree to the authenticity of printouts of archived webpages maintained by the Internet Archive (https://web.archive.org/), also known as the Wayback Machine, where the footer reflects the Internet Archive as the source and the date of that particular printout.

2.     The parties agree that they will not contest the authenticity of any documents that were marked as exhibits during the party and non-party depositions taken in the case unless the party contesting the authenticity made such an objection during that deposition

3.     The parties agree that deposition designations may be submitted for the Court's consideration without having them read in open court where in the interest of judicial economy.

## VII.   FURTHER DISCOVERY OR MOTIONS

The parties agree that there is no further discovery warranted at this time.  The parties agree that the Court should decide the following motions before trial:

1.     Plaintiffs' Motion and Motion to Strike the Report and Exclude the Testimony of Defendants' Expert Witness Bradley M. Kuhn (Dkt. No. 181).

2.     Plaintiffs' Motion for Summary Judgment on their DMCA claim and Defendants' Breach of Contract Counterclaim and Unclean Hands Defense (Dkt. No. 183).

3.     Plaintiffs' Motions in Limine Nos. 1-6 (Dkt. Nos. 194-199).

## VIII.   DISPUTED EVIDENTIARY ISSUES

1.     The admissibility of Mr. Kuhn's opinions disclosed in his expert report, including (a) the meaning of the provisions in the AGPLv3 and the propriety of Defendants' removal of the Commons Clause from the Neo4j Sweden Software License as a "further restriction;" (b) Defendants' alleged understanding of Section 7 of the AGPLv3 was "reasonable, customary, in good faith, and correct"; (c) Defendants "acted in a reasonable, customary, good faith, and correct manner" when removing Commons Clause from the Neo4j Sweden Software License as a

"further restriction"; and (d) Neo4j should have expected the Commons Clause to have been removed based on the same.  *See* Dkt. No. 181.

2.      Whether Defendants may offer evidence that does not bear an immediate and necessary relationship to the subject matter of Neo4j USA's Lanham Act and UCL claims.   Dkt. No. 194 (Plaintiffs' MIL No. 1).

3.      Whether Defendants can assert the same evidence and arguments in support of their Unclean Hands Defense at trial that are identical to the facts underlying their cancelation counterclaim and defense, which the Court previously dismissed with prejudice.  Dkt. No. 110 and Dkt. No. 194 (Plaintiffs' MIL No. 1).

4.      Whether the Court should exclude Defendants from presenting any and all evidence, argument, and testimony related to their now-dismissed Intentional Interference with Prospective Economic Advantage counterclaim at trial. Dkt. Nos. 175-176 and Dkt. No. 195 (Plaintiffs' MIL No. 2).

5.      Whether the Court should preclude Defendants from revisiting the legal and factual issues resolved by the Court' May 18, 2021 Order; and offering arguments, testimony and evidence that would contract the determinations previously made in that order.  Dkt. No. 196 (Plaintiffs' MIL No. 3).

6.      Whether the Court should preclude Defendants from offering evidence regarding Plaintiffs' motives for filing the present suit against Defendants, as well as any alleged animosity Plaintiffs held towards Defendants.  Dkt. No. 197 (Plaintiffs' MIL No. 4).

7.      Whether the Court should preclude Defendants from offering evidence purported to support their breach of exclusivity contract for (a) $650,000 in restitution; (b) actual damages in excess of $1.3 million attributable to the IRS withdrawing the CKGE Contract award to PureThink; (3) future lost sales based on sales Neo4j USA made after discontinuing the Neo4j Gov't edition; and (4) any claim for nominal damages.  Dkt. No. 198 (Plaintiffs' MIL No. 5).

8.      Whether the Court should preclude Defendants from offering any and all argument, testimony and evidence that Neo4j Sweden does not own the copyrights for Neo4j® CE and Neo4j® EE, and in particular the source code files subject to Plaintiffs' DMCA claims.

Dkt. No. 199 (Plaintiffs' MIL No. 6)

9.      Whether Defendants can assert and offer evidence that the Graph Foundation obtained advice of counsel about removal of the Common Clause.

## IX.      SETTLEMENT AND ADR

The parties engaged in preliminary settlement discussions, and then conducted mediation at JAMS in September 2019. The parties have exchanged settlement proposals since that time, including after the Court entered summary judgment in favor of Plaintiffs.  The Parties also recently discussed potential settlement, but the parties remain far apart.

## X.      TRIAL ESTIMATE

If Plaintiffs' dispositive motions reduce the number of claims and defenses at issue in any material way, Plaintiffs believe it is likely that the case could be tried in less than 5 trial days.  If the case goes to trial as it is currently constituted on all claims, counterclaims and affirmative defenses asserted, the Plaintiff contends that it will require 7 trial days. Defendants contend under FRCP Rule 1, the trial should be limited to 3 days or 12 hours each side.

## XI.      OTHER MATTERS

None.

Dated:  September 28, 2023

HOPKINS & CARLEY
A Law Corporation


By: _/s/ Jeffrey M. Ratinoff_
John V. Picone III
Jeffrey M. Ratinoff
Arthur E. Rothrock
Attorneys for Plaintiffs and Counter-Defendants NEO4J, INC. and NEO4J SWEDEN AB


Dated:  September 28, 2023

By: _/s/ Adron W. Beene_
Adron W. Beene
Adron G. Beene
Attorneys for Defendants and Counterclaimants PURETHINK LLC, IGOV INC., and JOHN MARK SUHY

1

**ATTESTATION OF E-FILED SIGNATURE**

2          Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in

3    the filing of this document from all signatories for whom a signature is indicated by a

4    "conformed" signature (/s/) within this electronically filed document and I have on file records to

5    support this concurrence for subsequent production to the Court if so ordered or for inspection

6    upon request.

7    Dated:  September 28, 2023                    HOPKINS & CARLEY
                                                   A Law Corporation
8

9
                                                   By: /s/ Jeffrey M. Ratinoff
10                                                     Jeffrey M. Ratinoff
                                                       Attorneys for Plaintiffs and Counter-
11                                                     Defendants NEO4J, INC. and NEO4J
                                                       SWEDEN AB
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28