Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
7960 Soquel Drive Ste B #296
Aptos CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br>Plaintiffs,<br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 5:18-CV-7182 EJD<br><br>**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Date: October 12, 2023<br>Time: 11:00 a.m.<br>Dept. Courtroom 4, 5th floor<br>Judge: Hon. Edward J. Davila<br><br>Trial Date November 14, 2023 |

# <u>TABLE OF CONTENTS</u>

I.   PROPOSED FINDINGS OF FACT ............................................................ 1

   A.   UNCLEAN HANDS AND DMCA ........................................................ 1

   B.   DAMAGES ............................................................................. 3

      1.   Neo4j Entities and the Defendants ...................................... 3

      2.   iGov and PureThink ......................................................... 8

      3.   GFI and Defendants ........................................................ 8

      4.   IRS Opportunity ............................................................. 9

      5.   Professional Services and the Commons Clause ............................ 10

      6.   Next Century .............................................................. 11

   C.   EXCLUSIVITY AGREEMENT .......................................................... 11

II.  PROPOSED CONCLUSIONS OF LAW ....................................................... 13

   A.   PLAINTIFFS ACTED WITH UNCLEAN HANDS AND ARE DENIED RELIEF. ............................................................................. 13

   B.   PLAINTIFFS SUFFERED NO DIRECT DAMAGES ON THEIR TRADEMARK INFRINGEMENT, FALSE DESINATION OF ORIGIN AND FALSE ADVERTISING, LANTHAM ACT AND UCL CLAIMS. ............... 16

   C.   MR. SUHY DID NOT VIOLATE THE DMCA .................................... 18

   D.   MR. SUHY'S REMOVAL OF CMI WAS INNOCENT ......................... 21

   E.   THIS IS NOT AN EXCEPTIONAL CASE ......................................... 22

   F.   SANCTIONS ARE NOT MERITED ................................................ 23

   G.   PLAINTIFFS' AWARDS ARE OFFSET (SETOFF). ........................... 25

   H.   PLAINTIFFS BREACHED THE EXCLUSIVITY AGREEMENT AND DEFENDANTS ARE ENTITLED TO DAMAGES. ..................................... 25

   I.   THE COMMONS CLAUSE USED WITH THE AGPL DOES NOT APPLY TO PROFESSIONAL SERVICES. ................................................. 27

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1230 ........................................................................................................ 25

*California Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 487.). 27

*Chutter v. Great Mgmt. Group*, 2021 U.S.P.Q.2d 1001 (T.T.A.B. 2021) ........ 15

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995) ...................................................................... 25

*Columbia Pictures Industries v. Redd Horne*, 749 F.2d 154, 160 (3d Cir. 1984) ........................................................................................................ 20

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.1989) ........................................................................................................ 13

*EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1031 (C.D. Cal. 2018) .......................................................................... 23

*Fitbit, Inc. v. AliphCom* (N.D. Cal., Oct. 25, 2016, No. 5:15-CV-04073-EJD) 2016 WL 7888035 .................................................................................. 24

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir.1987) .... 13

*Gordon v. Nextel Commc'ns. & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003) ............................................................................................... 19

*Howarth v. Greenhaw* (W.D. Tex., June 9, 2022, No. A-21-CV-00643-RP) 2022 WL 2072221 ..................................................................................... 21

*In re Wella A.G.* (Fed. Cir. 1986) 787 F.2d 1549, 1555 ................................ 22

*Int'l Intell. Mgmt. Corp. v. Lee Yunn Enterprises*, Inc. (U.S.A.), No. CV 08-7587 R JWJX, 2009 WL 9137315, at *3–4 (C.D. Cal. Dec. 14, 2009) ......... 23

*Japan Telecom, Inc. v. Japan Telecom America Inc.* (9th Cir. 2002) 287 F.3d 866 ............................................................................................... 13, 24

*Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012) ....................... 23

*LexMark Intern., Inc. v. Static Control Components, Inc.* 572 U.S. 118, 133 (2014) ........................................................................................ 16, 17, 18

*Microsoft Corp. v. A&S Elecs., Inc.*, No. 15-cv-03570-YGR, at *4 (N.D. Cal. Dec. 11, 2015) ....................................................................................... 20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.* (2014) 572 U.S. 545 ... 22

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.* (1945) 324 U.S. 806 ............................................................................... 15

*S.O.S., Inc. v. Payday, Inc.* (9th Cir. 1989) 886 F.2d 1081 ........................... 13

*Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1306 (9th Cir. 2022) ....... 17

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ... 22

*Wells Fargo & Co. v. Stagecoach Props.*, Inc., 685 F.2d 302, 308 (9th Cir.1982) ........................................................................................................ 13

*Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528, 23 S.Ct. 161, 47 L.Ed. 282 (1903) ............................................................................................. 13, 15

*Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.,* 80 Cal.App.4th 1, 10 (Cal. Ct. App. 2000) ............................................................................. 26

**Statutes**

17 U.S. Code §1202 (a) .............................................................................. 20

17 U.S.C. § 1202(b)(1) ......................................................................... 18, 24

17 U.S.C. §1203 (c) (5) ......................................................................... 21, 24

17 U.S.C. §204 (a) .................................................................................... 14

28 U.S.C. § 1927 .................................................................................. 23, 24

California Civil Code § 3287 ....................................................................... 27

# I.  PROPOSED FINDINGS OF FACT

1. The Court granted Plaintiffs' Motion for Partial Summary Judgment as to Neo4j USA's first, second, third, and fourth causes of action for trademark infringement, false designation of origin and false advertising, federal unfair competition, and state unfair competition, respectively, and issued a preliminary injunction on May 18, 2021("Partial MSJ Order"). Dkt. 118 34:19-36:9

## A.  UNCLEAN HANDS AND DMCA

2. Defendant's unclean hands defense was reserved in the Partial MSJ Order. Dkt.118. 34:9-14

3. Neo4j does not license the commercial product under the AGPL. Ex. 1026.

4. The Amended and Restated License Agreement which Neo4j Sweden licensed Neo4j software to Neo4j USA is not an AGPL license. Ex. 1028.

5. The Amended and Restated License Agreement required NEO4J USA to comply with all third party software licenses including licenses approved by the Open Source Initiative such as the AGPL. Ex 1028, Section 2.1.3.

6. Neo4j does not own all the code to Neo4j software. Ex 1027.

7. Since Neo4j Sweden does not own the complete code, licensing it to Neo4j USA with a non GPL/AGPL license is a violation of the AGPL. Exs. 1006, 1021, Ex. 1033, Kuhn Expert Report ¶¶99-107.

8. Neo4j told the IRS they could only use the AGPL version if they made the project open in violation of the terms of the AGPL. Suhy Dec. Exs. 1022, 1023, 1063, 1068, 1082.

9.  The Fair Trade License document is a misrepresentation of the terms of the AGPL. Exs. 1022, 1023, 1068.

10.     Under the AGPL, anyone is licensed to use the software. The obligation to provide modified source code is only on conveyance. AGPL sections 2, 5 and 6. Ex. 1006.

11.     There is no obligation under the AGPL to make use of Neo4j software an open project. AGPL, Ex 1006.

12.     The AGPL trademark is owned by FSF. AGPL, Ex 1006.

13.     The license grant to use AGPL license restricts changes:  AGPL "Everyone is permitted to copy and distribute verbatim copies of this license Document, but changing is not allowed." Ex. 1006.

14.     Neo4j Sweden violated the AGPL by changing the AGPL adding the commons clause. Ex. 1006.

15.     Neo4j Sweden's inclusion of the commons clause violated FSF' AGPL license terms. Ex. 1006.

16.     Neo4j USA failed to provide verbatim copies of the AGPL license with its commercial license as required under the AGPL section 4.  Exs. 1006, 1024, 1026.

17.     Neo4j, Inc. did not advise the PTO they did not own the NEO4J Trademark and were only non-exclusive licensees of the trademark. Exs. 1025, 1028, 1030, 1031,  Suhy Testimony.

18.     Neo4j did not obtain assignments from contributors to the Neo4j Software. Exs. 1032, 1033; Suhy Testimony.

19.     Mr. Suhy was advised by the Free Software Foundation that the Commons Clause was a further restriction to the AGPLv3 and may be removed. Ex. 1041.

20.     Mr. Suhy pointed customers to Neo4j for a commercial license if there were concerns on ONgDB. Ex. 1100.

21.     Mr. Suhy received emails from GFI to Next Century that stated the Commons Clause was a further restriction to the AGPLv3 and may be removed. Exs. 1101, 1102.

22.     Mr. Suhy received an email from GFI that stated GFI had independently verified through counsel that the Commons Clause was a further restriction to the AGPLv3 and may be removed. Ex. 1012.

23.     Suhy, made a contribution to GFI's ONgDB respository, suggesting an updated the license files to Neo4j Software so as not to violate the Free Software Foundation Copyright. Exs. 1-10.

24.     Neo4j attempts to get individual users to agree to a commercial EULA as an end-around to bind their employers to commercial terms and prevent those entities from using open source versions. Ex. 1067.

### B.     DAMAGES

#### 1.     Neo4j Entities and the Defendants

25.     Neo4j USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned subsidiary of Neo4j USA.  Dkt. No. 118 at 2:15-16.

26.     Prior to May 2018, Neo4j Sweden  offered a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL")

license. Dkt. No. 118 at 3:1-4.   Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Id. at 3:4-5.

27.     Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE"). Dkt. No. 118 at 3:5-7. Prior to May 2018, Plaintiffs offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("APGL"). Id. at 3:7-9.

28.     The Court found that on May 17, 2018, Neo4j Sweden "released Neo4j EE v3.4 but replaced the AGPL with the Neo4j Sweden Software License, a stricter license which included additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License")." Dkt. No. 118 at 3:9-12.

29.     The Court previously recognized that the new terms added by Neo4j Sweden, "prohibited the non-paying public from engaging in commercial resale and certain commercial support services." Dkt. No. 118 at 3:12-13.

30.     The Professional Services Provided by Defendants were not prohibited by the Neo4j Sweden Software License or the Commons Clause. Ex. 1039

31.     The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3; Dkt. No. 118 at 6:21-26.  It also provides additional information, such as the title of the work, terms and conditions for

1   use of the work, and other identifying information about Neo4j Sweden and

2   how to obtain a commercial license for the use of Neo4j® EE. Id.

3       32.     In November 2018, Plaintiffs officially released of Neo4j® EE

4   v3.5 solely under a commercial license. Dkt. No. 118 at 3:18-19.

5       33.     Prior to the official release of Neo4j® EE v3.5, Plaintiffs

6   published several beta versions via their GitHub repository subject to the

7   Neo4j Sweden AGPL Software License.  Dkt. No. 118 at 6:18-21. Neo4j® EE

8   v3.5.0-RC1 was the last pre-release version available to Defendants via

9   GitHub. Id. Thereafter, only the source code for Neo4j® CE was made

10  publicly available under the GPL via Github.  Id.

11      34.     Neo4j® EE v3.4 and v3.5 contained at least 182 source code files

12  that were never released under either the GPL or AGPL, and were instead

13  release for the first time under the Neo4j Sweden Software License.  Dkt. No.

14  98-1, Ex. 38 at 6:23-16:24, 8:4-16:24 (iGov's interrogatory response

15  identifying 182 source code files in Neo4j® EE that had not previously been

16  released under the AGPL); Dkt. No. 188, UDF No. 13 ("UNDISPUTED that

17  there were at least 182 source code files released under AGPL + Commons

18  clause"); see also Dkt. No. 118 at 6:18-21.

19      35.     The GPL, AGPL and Neo4j Sweden Software Licenses are

20  copyright licenses and not trademark licenses. Dkt. No. 188, UDF No. 60.

21      36.     John Mark Suhy founded PureThink in 2002, which is a software

22  and information technology consulting company specializing in supporting

23  agencies within the U.S. Government that use Neo4j® graph database

24  software.  Dkt. No. 118. at 3:17-19.

25

37.     PureThink is a single person company filing as an s-corporation for tax purposes.  Dkt. No. 188, UDF No. 87. Since at least September 1, 2014, Suhy has been the sole employee, member and manager of PureThink.

38.     On September 30, 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution Partner Agreement ("Partner Agreement" or "SPA").

39.     Neo4j Government Edition ("Gov't Edition") consisted of Neo4j® EE and certain FISMA security plug-ins provided by PureThink, and a framework provided by GraphAware.  Dkt. No. 183-1, Exs. 16-17, 21.

40.     PureThink marketed Gov't Edition to the IRS, however, the IRS indicated that it would require a prototype of a platform meeting their business requirements before purchasing a full subscription.

41.     Mr. Suhy has been the sole employee, officer and director of iGov since he formed the corporation. Dkt. No. 188, UDF No. 18.

42.     Prior to replacing the modified AGPL (also known as the Neo4j Sweden Software License) with the AGPL, Suhy sought guidance from the FSF, which told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." Dkt. No. 188, UDF No. 41; Dkt. No. 98-1, Ex. 34.

43.     The Court found that after the release of ONgDB in July 2018, Defendants continued to infringe the Neo4j Mark by using

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

6

"https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page after July 27, 2020. While iGov replaced this URL with "https://igovsol.com/graph.html," the contents of the page remained the same. Defendants further used a "Download Neo4j Enterprise" hyperlink on iGov's "downloads" page, which redirected consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 6:11-17.

44.      In January 2019, GFI released ONgDB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in a publicly available beta version of Neo4j® EE 3.5.  Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:23-16:24, 8:4-16:24.

45.      As recognized by the Court, "Defendants continued to promote ONgDB as 'free and open source' by replacing the Neo4j Sweden Software License with the AGPL in [28] LICENSE.txt files alongside the source code. [] Doing so removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor, and removed the Commons Clause, effectively allowing Defendants to commercially use and support ONgDB."  Dkt. No. 118 at 6:21-26.

46.      The Court found, "Defendants do not claim that ONgDB is identical to its Neo4j counterpart versions. Rather, it combines the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and 'glue code' authored by Mr. Suhy and other contributors." Dkt. No. 118 at 7:7-10.

47.      Mr. Suhy provided hyperlinks to potential users of Neo4j® EE to view and download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 188, UDF No. 20.

48.    Mr. Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 188, UDF No. 21.

49.    Mr. Suhy does not control or run the GFI website or GFI Github repositories. He is one of many volunteer open source committers on the team. Suhy Testimony.

### 2.    iGov and PureThink

50.    The work scope for PureThink and iGov were substantially different. Suhy Testimony.

51.    iGov did not use any assets of PureThink. Suhy Testimony.

52.    The distinction between PureThink and iGov was published on the PureThink website in August of 2018. Ex. 1098.

53.    iGov continues to clarify to potential customers that it is not affiliated with Neo4j. Ex. 1093, 1094.

54.    iGov is not a party to the SPA. Ex. 21

### 3.    GFI and Defendants

55.    GFI is the licensor of ONgDB.

56.    The links to ONgDB software on Purethink and iGov websites were to websites controlled by GFI. Ex. 1097.

57.    Purethink, iGov, and Suhy, did not license Neo4j software or any derivative of it, and Neo4j Enterprise was not part of the scope for CKGE. Suhy Testimony; Ex. 1011.

58.    Mr. Suhy turned potential customers over to GFI. Ex. 1099.

59.    Neo4j accused Defendants of the same conduct as the GFI defendants. Ex. 1035.

1    60.    Neo4j settled with the GFI defendants. Ex. 1034.

2        **4.    IRS Opportunity**

3    61.    Neo4j efforts to commercially license its software with the IRS

4  prior to September 2016 resulted in a broken deal. Ex. 1046.

5    62.    The key issue causing Neo4j's inability to enter into a commercial

6  license with the IRS was Neo4j's own open source community edition versions

7  of their software. Exs. 1042, 1077.

8    63.    The IRS used Neo4j community edition for quite some time prior

9  to 2016. Ex. 1042.

10    64.    Purethink presented a solution to get commercial Neo4j in the

11  door to the IRS through offering PureThink's services combined with Neo4j's

12  commercial license. Exs. 1043, 1044, 1046, 1077.

13    65.    Neo4j was aware that the first year of the IRS deal would be

14  primarily services from Purethink ($200K), with only a small amount going

15  to Neo4j USA to support the contract.($29K). Ex. 1044,1045, 1072, 1073,

16  1075.

17    66.    Purethink heavily discounted its services by half as an

18  investment to get the business with IRS started. Ex 1046.

19    67.    Purethink was told by Neo4j to give whatever word to IRS that

20  you need to in order to move this opportunity forward. Ex. 1044.

21    68.    After Purethink entered into an agreement with the IRS, Neo4j

22  pushed back on Purethink's service fees and increased the license fees

23  payable by Purethink, first to the total value of the contract, ($229K), then to

24  ($129K), then to ($96K). Exs. 1056, 1071, 1074, 1080, 1081.

25

69.     When PureThink pushed back at the increased license fees, Neo4j began meeting with the customer directly.  Exs. 1047, 1071.

70.     During these meetings between Neo4j and the IRS, the AGPL license issue resurfaced. Exs. 1049, 1051, 1083.

71.     Neo4j's handling of the AGPL issue, including an attempt to prevent all use of open source distributions by the IRS, led the IRS to back away once more from a commercial license, and continue with open source distributions of Neo4j and their forks under the AGPL. Ex. 1056, 1064.

72.     Neo4j's dual licensing model means that it created its strongest competitor. Exs. 1077, 1084, 1085, 1086, 1095, 1096.

73.     Neo4j understood that if the relationship with Purethink went south, it would lose revenue from the IRS and others. Exs. 1054, 1055, 1070, 1076, 1079.

74.     Neo4j would not return agree to the initial reduced license fee model for the IRS, and instead pushed list pricing as they intended to kill the Government Edition. Exs. 1048, 1078.

75.     Despite knowing they would lose revenue, Neo4j killed the Government Edition, and terminated the SPA. Exs. 1048, 1056, 1078.

76.     Neo4j terminated the Government Edition and the SPA knowing that they would lose future revenue. Exs. 1054, 1055, 1057, 1058, 1059, 1060, 1062, 1070, 1076, 1079, 1087, 1088, 1089, 1090, 1091, 1092.

### 5.     Professional Services and the Commons Clause

77.     The Commons Clause only forbids a licensee from "selling" the Commons Clause software itself. Ex 1039

78.     Heather Meeker, counsel for Neo4j and author of the Commons Clause, publicly and repeatedly stated that professional services are not barred by the Commons Clause. Exs. 1036, 1037, 1038.

79.     Neo4j stated that it did not care about the ramifications of Mr. Suhy looking for consulting business using AGPL. Ex. 1050.

### 6.    Next Century

80.     Neo4j was one of many potential graph database solutions compared by Next Century for use by the Maryland Procurement Office. Ex. 1103.

## C.    EXCLUSIVITY AGREEMENT

81.     Purethink developed a comprehensive plan for marketing Neo4j to federal agencies. PureThink would develop Neo4j software to meet government standards in exchange it would have the exclusive rights to sell Neo4j software to the US government. Exs. 1020, 1070, 1079; Suhy Testimony.

82.     Neo4j agreed to an Exclusivity Agreement with PureThink LLC. Ex. 1020

83.     The Exclusivity Agreement was separate from the SPA. Suhy Testimony.

84.     The Exclusivity Agreement was subject to an exit clause requiring mutual agreement. Exs. 1013, 1040; Suhy Testimony.

85.     Neo4j USA prevented PureThink's performance by prohibiting it from engaging with government agencies. Dkt. No. 177, Ex. D

86.     Mr. Suhy worked full-time under the Exclusivity Agreement. Ex. 1017.

87.     The Government Edition is a software product combined with services which were specifically designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs. Ex. 1014, 1015, 1016, 1018.

88.     The work on the Government Edition was an investment to further business under the Exclusivity Agreement. Ex. 1019.

89.     PureThink performed its obligation to develop a version of Neo4j software to conform to government standards.

90.     PureThink incurred $650,000 in damages for its work on the Government Edition under the Exclusivity Agreement. Ex. 1017; Suhy Testimony.

91.     The Government Edition was not used by iGov Inc. Suhy Testimony.

92.     Plaintiffs have made substantial government sales. Ex. 1029.

93.     $_____ in profits were made from federal government contracts by Neo4j from June 2015 through May 2018. Ex. 1029.[1]

---

[1] The amount is left blank as it is derived from time frame to be determined by the court and financial information for a document plaintiffs designated as Attorney's Eyes Only.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   PLAINTIFFS ACTED WITH UNCLEAN HANDS AND ARE DENIED RELIEF.

The court granted summary judgment on the Lanham Act claims but that was subject to an unclean hands defense.

> "Unclean hands is a defense to a Lanham Act infringement suit." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987).Trademark law's unclean hands defense springs from the rationale that "it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903). To make out an unclean hands defense, a trademark defendant "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers,* 826 F.2d at 847. To show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers. *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir.1989) ("Bad intent is the essence of the defense of unclean hands.") (citing *Wells Fargo & Co. v. Stagecoach Props., Inc.,* 685 F.2d 302, 308 (9th Cir.1982)).

*Japan Telecom, Inc. v. Japan Telecom America Inc.* 287 F.3d 866, 870–871 (9th Cir. 2002).

Neo4j USA's business is built on a non exclusive license of the Neo4j trademark and Neo4j software from Neo4j Sweden. That software is subject to the terms of the AGPL license. The AGPL is subject to Free Software Foundations copyright and scope of the license. When Neo4j Sweden changed its license agreement and failed to license on verbatim terms, Neo4j Sweden infringed the Free Software Foundation copyright license by exceeding the scope of FSF' license. *S.O.S., Inc. v. Payday, Inc.* (9th Cir. 1989) 886 F.2d 1081, 1087. Defendants may not assert FSF' copyright as a sword but, under unclean hands, may assert the violation as a shield.

1    Neo4j Sweden took the Neo4j software licensed under the AGPL and

2    licensed it to Neo4j USA, but not under the terms of the AGPL. Neo4j USA

3    licenses the Neo4j software under a non AGPL license in binary code only

4    and does not provide the source code of modification. This is a violation of

5    the AGPL §6. Neo4j USA licensing only the binary code under a non AGPL

6    license is a violation of the AGPL too.

7    The evidence shows, Neo4j Sweden does not own the complete code to

8    the Neo4j software. They did not produce contribution agreements from all

9    the authors of the code. Under the Copyright Act, 17 U.S.C. §204 (a),

10   transfers of copyright ownership require a writing signed by the owner.

11   Neo4j Sweden had a community of people working on the GPL/AGPL

12   versions of Neo4j software for free. Those contributors are part authors of

13   Neo4j software. Without agreements from the authors, Neo4j Sweden did not

14   own 100% of the copyright to Neo4j software and had no right to license

15   Neo4j software outside of the GPL/AGPL license. Since Neo4j Sweden does

16   not own the complete code, licensing it to Neo4j USA with a non GPL/AGPL

17   license is a violation of the AGPL. Kuhn Expert Report ¶¶99-107.  This is

18   unclean hands in the operation of the business under the Neo4j trademark.

19   Plaintiffs' violation of FSF trademark, copyright, the AGPL license

20   terms to improperly license Neo4j software is unclean hands.  While the

21   Court has ruled Neo4j USA owns the Neo4j Trademark,  misrepresentations

22   of time of use, ownership of trademark and failure to correct those

23   misrepresentation is unclean hands under the PTO's standards.[2] See DKT

24   95 3:17-23, 6:8-20; DKT 91-1;  *Chutter v. Great Mgmt. Group*, 2021

25

U.S.P.Q.2d 1001 (T.T.A.B. 2021). "The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.* (1945) 324 U.S. 806, 814 (Patent owner barred from enforcing patent for failing to disclose information to Patent Office). The owner of intellectual property may be denied the right to enforce a claim in equity for failure to disclose information to the registration office.

Neo4j USA obtained the Neo4j software through violation of the GPL/AGPL licenses. USA conveys the Neo4j software through violation of the GPL/AGPL. USA falsely claims using GPL/AGPL software must comply with a " Fair Trade Licensing" option which 1) is a false interpretation of the GPL/AGPL or 2) a violation of §10 of the AGPL which states, "You may not impose any further restrictions on the exercise of the rights granted or affirmed under this License."

The unclean hands standard is "[I]t is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161 (1903). Plaintiffs are guilty of false and misleading representations in advertisements and business and may not enforce the Neo4j trademark.

1    **B.     PLAINTIFFS SUFFERED NO DIRECT DAMAGES ON THEIR**

2    **TRADEMARK INFRINGEMENT, FALSE DESINATION OF ORIGIN AND**

3    **FALSE ADVERTISING, LANTHAM ACT AND UCL CLAIMS.**

4         With respect to Plaintiffs' damage claims, the Lanham Act claims seek

5    damages arising out of iGov's comparative advertisement comparing two

6    software products: Neo4j USA's commercial version of Neo4j software and

7    Neo4j Sweden's AGPL version of Neo4j software. ONgDB is a version of the

8    Neo4j AGPL software.  The court found the following statements were false:

9    (1) that "ONgDB were "free and open source" versions of or alternatives to

10   commercially licensed Neo4j® EE; and (2) that ONgDB was a "drop-in

11   replacement for an existing commercial licensed distribution of the same

12   version number" of Neo4j® EE. Dkt 118 at 23:20-28:19.

13        Even if the unclean hands defense is insufficient, Neo4j USA has not

14   shown direct damages from Defendants' conduct. Lanham Act damages must

15   proximately flow **directly** from defendants conducts.  *LexMark Intern., Inc. v.*

16   *Static Control Components, Inc.* 572 U.S. 118, 133 (2014). [Emphasis added]

17        Plaintiff seeks damages from two government agencies who did not

18   purchase a commercial version of Neo4j software.

19        Defendants in this case do not license any software. So do not compete

20   in software licensing. ONgDB was compiled from Neo4j Sweden's repository,

21   hosted and licensed by the defendants in the GFI case (5:19-cv-6226.)  Those

22   defendants made the same statements in advertising ONgDB on their website

23   where people downloaded and licensed ONgDB. The GFI defendants were sued

24   for the same conduct and are the licensors of ONgDB.

25

1   Defendants in this case are not the licensors of ONgDB. Neo4j would

2   have to show the damages did not proximately come from the GFI defendants'

3   actions other competition, and other reasons such as lack of funding. Remote

4   causes do not support a damage claim *LexMark Intern*, at 132.

5   Neo4j obtained a judgment from those defendants based on GFI's

6   conduct Dkt. 110 (in GFI case 5:19-cv-6226.) Neo4j is precluded from seeking

7   the same claims and damages again. *Sonner v. Premier Nutrition Corp.*, 49

8   F.4th 1300, 1306 (9th Cir. 2022).

9   As Neo4j must directly tie the damages to the advertisement, no

10  damages arise out of the "free and open source" or "drop in engine" statements.

11  The falsity of the "free and open source" statement was derived from the

12  construction it meant not subject to the commons clause. That clause restricts

13  licensees of the Neo4j Sweden AGPL version from selling the software. iGov

14  only provides services to the US government. The IRS version of Neo4j

15  software includes the commons clause so there is no improper licensing. The

16  IRS decided to use the AGPL version before the advertising. The US

17  government does not sell software or services derived from the software. The

18  commons clause does not apply to the US Government.

19  The "drop in replacement" statement does not impact any sales as it

20  would only apply to an existing Neo4j USA customer who changed from the

21  paid for commercial version to Neo4j Sweden's free version based on iGov's

22  statements. That did not occur.

23  The IRS never used the commercial version so had no basis to consider

24  the "drop in" issue. After initially agreeing to allow Purethink to provide

25  services to the IRS in an attempt to start a commercial relationship with the

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

IRS, Neo4j changed course, negatively impacting its relationship with the IRS. Neo4j prevented doing business with the IRS. That was before the advertising and had nothing to do with the false advertising.  The Maryland Procurement Office stopped using the commercial version before the advertisements were made. There was no basis to consider the drop in issue. The determination for purchase of Neo4j software is complex and the primary driver is cost. The consumers' decision was not directly based on defendants' false advertising. Under *LexMark Intern,* plaintiff has suffered no damages under its Lanham Act claims.

Although there is no claim defendants have violated or will violate the preliminary injunction, the Court feels an adequate remedy for defendants' conduct is to convert the preliminary injunction to a permanent injunction.

## C.   MR. SUHY DID NOT VIOLATE THE DMCA

Neo4j Sweden brings a claim against Mr. Suhy for removal of copyright management information under the Digital Millennium Copyright Act. Section 1202(b)(1) of the DMCA prohibits, *inter alia,* "intentionally remov[ing] or alter[ing] any copyright management information" with the knowledge, or with "reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1).

"A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an

infringement of the federal copyright laws." *Gordon v. Nextel Commc'ns. & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003).

In the GFI action, the court held GFI could not raise the issue of Neo4j Sweden's breach of FSF' scope of license in the AGPL license as GFI was not the copyright holder. There was no discussion on GFI's rights to assert the restriction on license terms as a licensee. The court determined the APGL licensee was Neo4j's license, and they could change it is they wanted. But Neo4j Sweden's change to the AGPL was a violation of FSF' license scope. Suhy's reverting Neo4j Sweden's to the AGPL license within the scope of FSF copyright scope avoided secondary infringement.

Mr. Suhy removed multiple copies of Neo4j Sweden AGPL license from one copy of Neo4j Sweden's Neo4j open source version of Neo4j software. This was done after he received a communication from the Graph Foundation, Inc. They had checked with Free Software Foundation, Inc., and an attorney. Mr. Suhy removed and replaced the Neo4j Sweden with a verbatim copy of FSF' AGPL license. Mr. Suhy contributed the modification to Graph Foundations repository for ONgDB. The effect of the change was the Commons Clause was removed. All other terms of the AGPL remained.

FSF granted a copyright license to allow use of the AGPL license letting everyone copy and distribute verbatim copies of the AGPL without changes.

GNU AFFERO GENERAL
PUBLIC LICENSE
Version 3, 19 November 2007

Copyright © 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed.

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

1    Neo4j Sweden's  addition of the Commons Clause is not a verbatim

2  copy of the AGPL and is a change. This is a copyright violation of FSF's

3  copyright to the AGPL and a breach of the copyright license. *S.O.S., Inc. v.*

4  *Payday, Inc.* (9th Cir. 1989) 886 F.2d 1081, 1087. Neo4j Sweden is free to

5  change its license agreement but when it did, it violated the terms of the

6  AGPL license scope in its use of the FSF form. The Court has ruled that

7  defendants have no right to enforce FSF' copyright. However, Neo4j Sweden's

8  adding the Commons Clause in violation of FSF's copyright is false copyright

9  management information which violates 17 U.S. Code §1202 (a). Neo4j

10  Sweden cannot enforce its CMI.

11    While Suhy does not have standing to assert FSF's copyright, he has a

12  duty to **not** contribute to Neo4j' Sweden's copyright infringement:  " 'one who,

13  with knowledge of the infringing activity, induces, causes or materially

14  contributes to the infringing activity of another, may be held liable as a

15  "contributory" infringer' " *Columbia Pictures Industries v. Redd Horne*, 749

16  F.2d 154, 160 (3d Cir. 1984), *quoting Gershwin Publishing Corp. v. Columbia*

17  *Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)

18       Liability for contributory infringement may then be established
19    by allegations that the contributor infringer knows of the third
      party's direct infringing activity and has "intentionally
      induc[ed] or encourag[ed] [the] direct infringement." Id. at 937-
20    38 (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,
      930 (2005)).

21

22  *Microsoft Corp. v. A&S Elecs., Inc.*, No. 15-cv-03570-YGR, at *4 (N.D. Cal.

23  Dec. 11, 2015).

24    Neo4j Sweden violated FSF's copyright in the AGPL license by adding

25  the common clause. Suhy prevented further infringement by removing the

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

offending terms.  As Mr. Suhy avoided Neo4j Sweden's violation of FSF's copyrighted license and did what is allowed under the terms of the FSF's copyright license, there is no DMCA claim.

### D.   MR. SUHY'S REMOVAL OF CMI WAS INNOCENT.

Even if there were a violation, the change was to one copy of the license. Removal of multiple copies of CMI in one copy is one violation. What GFI did with the contribution was part of another litigation which has be resolved through a judgment. Dkt 110 (in GFI case 5:19-cv-6226.)

The software is open source such that Neo4j Sweden has no direct damages from the removal. Neo4j Sweden statutory damages are under 17 U.S.C. §1203 (B) are $2,500 to $25,000 per violation at the Court's discretion. However, damages may be reduced or remitted under 17 U.S.C. §1203 (c) (5)[3]:

> (5) INNOCENT VIOLATIONS.-
> (A) IN GENERAL.-The court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation.

Mr. Suhy's conduct in removing the Common Clause was customary, permissible and widely encouraged. Kuhn Expert Report ¶75. Mr. Suhy's conduct is supported by the plain terms of §7 of the AGPL:

> If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.

---

[3] This is not an unpled affirmative defense. _Howarth v. Greenhaw_ (W.D. Tex., June 9, 2022, No. A-21-CV-00643-RP) 2022 WL 2072221, at *5, report and recommendation adopted (W.D. Tex., July 18, 2022, No. 1:21-CV-643-RP) 2022 WL 20470458. (in analogous copyright innocence defense case, innocence is not an affirmative defense. It is not a bar to recovery; it is a limit on damages.)

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

Mr. Suhy did not change Neo4j Sweden license after any court order interpreting §7 of the AGPL to only allow restriction of additions by downstream licensees. The Court finds that Mr. Suhy was not aware and had no reason to believe that his acts constituted a violation such that damages should be remitted.

### E.     THIS IS NOT AN EXCEPTIONAL CASE

Plaintiffs seek attorneys' fees on the Lanham Act and DMCA claims contending they are exceptional cases. "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* (2014) 572 U.S. 545, 554

This case deals with an open source license agreement in a legal landscape with limited jurisprudence on the GPL/AGPL license agreement. The Lanham Act claims were defended under applicable case and statutory law. Defendants often challenge the validity of patents, trademarks, and copyright in intellectual property cases. Defendants' reliance on Judge Nies additional view in *In re Wella A.G.* (Fed. Cir. 1986) 787 F.2d 1549, 1554 was not frivolous. The trademark use was a standard nominative use issue under *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171 (9th Cir. 2010). The

DMCA claim was an innocent change in a license agreement. There is nothing exceptional about this case, therefore attorneys fees are not ordered.

## F.   SANCTIONS ARE NOT MERITED

Plaintiffs' seek sanctions of all its attorney's fees against counsel under 28 U.S.C. § 1927.  Plaintiffs rely on *Int'l Intell. Mgmt. Corp. v. Lee Yunn Enterprises*, Inc. (U.S.A.), No. CV 08-7587 R JWJX, 2009 WL 9137315, at *3–4 (C.D. Cal. Dec. 14, 2009) ("IIMC"). IIMC involved an award of defendants' fees payable by plaintiffs' counsel under 28 U.S.C. § 1927. In IIMC, Plaintiffs' counsel did no investigation that defendants infringed prior to filing a patent lawsuit or during the litigation and was involved in ethical violations of improperly contacting a party.

In analyzing the IIMC case, a court denied fees sought against defense counsel as they were not the ones who chose to file the lawsuit, and defendants were obligated to defend themselves. *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1031 (C.D. Cal. 2018), *aff'd in part, vacated in part, remanded*, 830 F. App'x 634 (Fed. Cir. 2020).  An attorney is not required to forfeit client's right to avoid sanctions. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).

Plaintiffs broadly seek sanctions, but they are only permitted for specific frivolous or harassing conduct.

> "The imposition of attorneys' fees under § 1927 serves "as a sanction against counsel personally for reckless or bad faith conduct in the course of litigation." *Yue v. Storage Tech. Corp.,* No. C-07-05850-MJJ, 2008 WL 361142, at *2 (N.D. Cal. Feb. 11, 2008) (citations and internal quotations omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Z-Rock Comme'n Corp. v. William A. Exline, Inc.,* No. C-0302436-WHA, 2004 WL 2496158, at *7 (N.D. Cal. Nov. 5, 2004) (citations and internal quotations omitted).

1

2

Moreover, "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." <u>Id.</u> (citations and internal quotations omitted) (emphasis added). Carelessly, negligently, or unreasonably multiplying the proceedings, however, is insufficient for the imposition of sanctions. <u>In re Girardi</u>, 611 F.3d 1027, 1061 (9th Cir. 2010).

3

4

5

6

*Fitbit, Inc. v. AliphCom* (N.D. Cal., Oct. 25, 2016, No. 5:15-CV-04073-EJD) 2016 WL 7888035, at *1

7

8

9

10

11

12

13

Plaintiffs claim the unclean hands defense raises issues already ruled upon in the 1st summary judgment motion. The unclean hands defense was specifically reserved as a phase 2 issue and invokes the equitable jurisdiction of the court on a defensive claim. The owner of a trademark may be barred from enforcing it under unclean hands. *Japan Telecom, Inc. v. Japan Telecom America Inc.* 287 F.3d 866, 870–871 (9th Cir. 2002). Counsel assertion of an unclean hands defense is not a violation of §1927.

14

15

16

17

18

19

20

21

22

23

Plaintiffs claim counsel violated §1927 by asserting the propriety of the removal of the common clause after the court ruled on the issue. The issue is, however, a proper defense to the DMCA claim. Neo4j Sweden  must show Mr. Suhy's acted intentionally to cause infringement. 17 U.S.C. § 1202(b)(1).  Mr. Suhy is also allowed to show he was not aware the §7 only applied to downstream licensee and his conduct was reasonable. 17 U.S.C. §1203 (c) (5):  While the court ruled he was not correct to do so, he is permitted to defend the claim showing his conduct was reasonable and not to cause infringement. Counsel's conduct has not been frivolous or harassing supporting the request.

24

25

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

24

G.    PLAINTIFFS' AWARDS ARE OFFSET (SETOFF).

The Plaintiffs stipulated to a defense set off of $26,000. To the extent this court awards any amounts from Defendants to Plaintiffs, those amounts are offset by the amounts this court has awarded from Plaintiffs to Defendants. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995).

H.    PLAINTIFFS BREACHED THE EXCLUSIVITY AGREEMENT AND DEFENDANTS ARE ENTITLED TO DAMAGES.

PureThink brings a claim against Neo4j USA for breach of an exclusive contract for PureThink to sell to the United States government.

> The elements of a breach of oral contract cause are: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 [elements of breach of contract]; *Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 453, 183 Cal.Rptr.3d 186 [elements of breach of oral contract and breach of written contract claims are the same].)

*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1230

PureThink asserts there was an oral agreement, confirmed in writing that it had exclusive rights to sell Neo4j software to the United States government. The terms were: PureThink would develop Neo4j software to meet government standards in exchange it would have the exclusive rights to sell Neo4j software to the US government. PureThink's exclusive rights were confirmed in writing by Lars Nordwall COO of Neo4j on April 11, 2015,

and June 23, 2016. PureThink performed its obligation to develop a version of Neo4j software to conform to government standards.

Neo4j USA breached the contract by taking over sales to the US government. There is a dispute on the term of the contract. As the Exclusivity Agreement contains no termination clause, "The court determines whether one can be implied from the nature and circumstances of the contract." *Zee Medical Distributor Assn. Inc. v. Zee Medical, Inc.,* 80 Cal.App.4th 1, 10 (Cal. Ct. App. 2000). PureThink undertook to develop Neo4j software for compliance with government standards. That effort took over a year and worth $650,000 of effort.

The development of the government addition by PureThink was done under the assumption it would receive a return on its development costs over several years of the exclusive right to sell. Neo4j USA terminated the agreement and released a version of government software and sold software to the US government. This shows the modifications to the software were required and were successful.

PureThink is entitled to reliance damages for the reasonable value of its services in preparation of the government addition and performance in reliance on the exclusive contract. *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 105. Neo4j USA has not shown that the $650,000 value of developing the government addition was extravagant or unnecessary. *Id* at 307. Neo4j USA asserts the development cost damages are not supported by evidence. These amounts were plead in ¶17 of the Fourth Amended Counter Claim. Dkt. 177.

1    Mr. Suhy testified to the damages which is sufficient evidence. [T]he

2   fact that the amount of damage may not be susceptible of exact proof or may

3   be uncertain, contingent or difficult of ascertainment does not bar recovery."

4   *California Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 487.)  .

5   . . [W]hen it clearly appears that a party has suffered damage a liberal rule

6   should be applied in allowing a court or jury to determine the amount, and . .

7   ., given proof of damage, uncertainty as to the exact amount is no reason for

8   denying all recovery." (Id. at pp. 486-487.) PureThink is awarded $650,000 in

9   reliance damages.

10    The parties dispute the term of the contract. Given the time to develop

11   the government addition, and the sales Neo4j USA earned after termination,

12   the term should be sufficient for PureThink to recover a profit on its

13   development costs. The Court finds the agreement should have a term of

14   _____ years after PureThink's release of the government addition.

15   PureThink in entitled to recover its lost revenues based on Neo4j USA sales

16   during that period.

17    PureThink is also entitled to prejudgment interest under California

18   Civil Code § 3287 at the rate of 10% per annum (Civil Code § 3289) from 11-

19   28-18 (the date the action was filed Civil Code § 3287 (b)).

20

21   **I.    THE COMMONS CLAUSE USED WITH THE AGPL DOES NOT**

22   **APPLY TO PROFESSIONAL SERVICES.**

23    Defendants' Eighth counter claim for Declaratory Relief is against Neo4j

24   Sweden (Commons Clause in AGPL does not apply to professional services).

25   This issue was reserved for Phase 2. There is a present controversy whether

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

the Commons Clause prevents professional service providers from supporting open source Neo4j users from using independent third party from supporting open source Neo4j users under the Commons Clause.

The Commons Clause in Neo4j Sweden's AGPL license is:

"Commons Clause" License Condition The Software is provided to you by the Licensor under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software. For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.

This is an issue of contractual interpretation for the court.

The commons clause prevents **licensees** from selling the AGPL software including providing services which are based substantially on the functionality of the software. By its terms, the license does not prevent third parties-who are not licensees- from supporting licensees use of the software. Defendants request for declaratory judgment that the Commons Clause does not prevent third parties from supporting AGPL Licensees.

Dated: October 2, 2023

_/s/ Adron W. Beene_

Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Attorneys for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

### ATTESTATION OF E-FILED SIGNATURE

Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the

concurrence in the filing of this document from all signatories for whom a

signature is indicated by a "conformed" signature (/s/) within this

electronically filed document and I have on file records to support this

concurrence for subsequent production to the Court if so ordered or for

inspection upon request.

Dated:  October 2, 2023

_/s/ Adron G. Beene_
Adron W. Beene
Adron G. Beene
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233

Attorneys for Defendants and
Counter-Claimants
PURETHINK LLC, IGOV INC.,
and JOHN MARK SUHY

DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD

29