# EXHIBIT A

**PLAINTIFFS' CORRECTED REPLY TO DEFENDANTS RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(1)]** | | |
| 1. the existence of CMI on the infringed work; | <u>Fact 1:</u> Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code, and has licensed those copyrights to Neo4j USA in connection with the making, use, creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and distribution of the copyrighted material, and the sublicensing of such rights in the United States. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:15-18 (citing same). | **DISPUTED** Neo4j does not own all the code to the Neo4j software. Beene Decl., Ex. 27.<br><br>Hundreds of committers to Neo4j code do not appear to be associated with Neo4j Sweden, and Neo4j Sweden does not have assignments from committers or authors of Neo4j Software. Copies of assignments were requested in discovery but not provided Suhy Decl. ¶¶13-14, Beene Dec., Ex 32. |
| | **Additional Fact:** The Court previously found it was undisputed that "Neo4j Sweden owns of all copyrights related to the Neo4j graph database platform, including the source code." Dkt. No. 118 at 2:16-18; *accord* Fact 15 ("UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE").<br><br>**Additional Fact:** Neo4j® EE v3.4 and v3.5 contained at least 182 source code files that were never released under either the GPL or AGPL, and were instead release for the first time under the Neo4j Sweden Software License making Neo4j Sweden the sole copyright owner of those files that are subject to Plaintiffs' DMCA claim. Dkt. No. 98-1, Ex. 38 at 6:23-16:24, 8:4-16:24; (iGov's verified interrogatory response identifying at least 182 source code files in Neo4j® EE that had not previously been released under the AGPL); Fact 13 ("**UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause"); Dkt. No. 118 at 6:18-21 ("GFI released ONgDB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in a publicly available beta version of Neo4j EE 3.5."); *accord* Dkt. No. 98-2, ¶¶ 27-30. | |
| | <u>Fact 2:</u> Prior to May 2018, Plaintiffs offered a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4 (citing Dkt. No. 98-2, ¶¶ 4-5). | **DISPUTED** Prior to May 2018 Plaintiffs also released Neo4j Enterprise Edition under the vanilla AGPL open source license. Neo4j Enterprise under the AGPL and Neo4j Enterprise under the commercial license were the |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Neo4j® CE is limited in its feature set and does not come with technical or administrative support.  Dkt. No. 118 at 3:4-5 (citing Dkt. No. 98-2, ¶¶ 5-6).  Plaintiffs also offered a more advanced commercial version, which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j® EE").  Dkt. No. 118 at 3:5-7 (citing Dkt. No. 98-2, ¶ 8). | same physical software as they were compiled from the same source code.  See Suhy Decl., ¶2. |
| | <u>Fact 3:</u>  Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the GNU Affero General Public License, version 3 ("AGPL").  Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8).  A commercial license to Neo4j® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  Dkt. No. 98-2, ¶¶ 7-9. | **UNDISPUTED** that Neo4j EE was available under both a commercial and free open source AGPL license and that a commercial license came with support.  **DISPUTED** that the commercial license was the only license which allowed Neo4j EE to be used in a proprietary setting or receive updates.  Neo4j Enterprise under the open source AGPL (< v3.4) as well as under AGPL + Commons clause  (v3.4) could be used in a proprietary setting for free, and since the code was the same for the commercial and open-source versions, they both received updates together.  See Suhy Decl., Ex. 2 |
| | <u>Fact 4:</u>  On May 17, 2018, Neo4j Sweden released Neo4j® EE v3.4 and replaced the AGPL with a stricter license, which included the terms from the AGPL and additional commercial restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  Dkt. No. 118 at 3:9-12 (citing Dkt. No. 98-2, ¶ 11 and Ex. 3). | **UNDISPUTED** that Neo4j Sweden released Neo4j® EE v3.4 on May 17, 2018 which was the AGPL with the commons clause which added prohibited the non-paying public from engaging in commercial resale and support services.  **DISPUTED** that this was ever called "Neo4j Sweden Software License" outside of court.  The License terms include the AGPL preamble and the NOTICE states: "The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."  See Suhy Decl., Ex. 3  **DISPUTED t**hat the AGPL was replaced with a stricter license.  The AGPL was not replaced.  The AGPL License file had the full preamble, stated it was copyrighted to the free software foundation.  The commons clause was appended to the AGPL terms.  Note, the commons clause did not affect end-users |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | wishing to use the software, it was targeted at anyone trying to sell or offer a competing support offering as Neo4j USA offered.<br>See Suhy Decl., Exs. 2-3 |
| | **Fact 5:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibited the non-paying public from engaging in commercial resale and support services.  Dkt. No. 118 at 3:12-13; Dkt. No. 98-2, ¶¶ 11-12 and Ex. 3. | **UNDISPUTED** that the commons clause states that it prohibited the non-paying public from engaging in commercial resale and support services.<br><br>**DISPUTED** that there was ever a reference outside of court of a license called  "The Neo4j Sweden Software License".   The License was always referred to as AGPL, even when the commons clause was appended to the AGPL terms.<br><br>**DISPUTED** that "The Neo4j Sweden Software License" had a certain licensed scope for use.  The commons clause stated that it prevented others from selling or offering certain services, but did it did not affect the end-users who were using the software under the license.<br><br>See Suhy Dec., Exs. 2-3 |
| | **Fact 6:** The NOTICE provision in the Neo4j Sweden Software License states that Neo4j® EE is developed and owned by Neo4j Sweden… and is subject to the terms of the [AGPL], with the Commons Clause as follows…." Dkt. No. 98-2, ¶ 11 and Ex. 3.  It also provides additional information, such as the title of the work, terms and conditions for use of the work, and other identifying information about Neo4j Sweden and how to obtain a commercial license for the use of Neo4j® EE.  *Id.* | **UNDISPUTED**  The NOTICE provision was found in a separate file called NOTICE.txt which was always present next to the AGPL License file called LICENSE.txt<br><br>Every directory in the enterprise source code that has a LICENSE.txt file also has the corresponding NOTICE.txt.<br><br>See Suhy Dec., ¶ 3. and Exs. 1,3 |
| | **Fact 7:** In November 2018, Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license. Dkt. No. 98-2, ¶ 13 and Ex. 4; Dkt. No. 118 at 3:13-15 (citing same). This meant that Plaintiffs were no longer publishing the source code for Neo4j® EE and offering it on an open source basis. *Id.*  This was done to simplify the licensing model, as well as prevent bad actors from profiting by providing commercial support services in closed, proprietary projects.  Dkt. No. 98-2, ¶ 13. | **UNDISPUTED** that Plaintiffs officially released of Neo4j® EE v3.5 solely under a commercial license.<br><br>**DISPUTED** that plaintiffs were no longer publishing the source code for Neo4j EE or offering it on an open source basis. All Neo4j EE versions prior to v3.5 were public and received updates from Neo4j Sweden. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **DISPUTED** that this was done to simply the licensing model, as well as prevent bad actors from profiting by providing commercial services in closed, proprietary projects.<br><br>See Suhy Decl., ¶ 4. |
| | **Fact 8:** Prior to the official release of Neo4j® EE v3.5, Plaintiffs published several beta versions via their GitHub repository subject to the Neo4j Sweden Software License. Dkt. No. 118 at 6:18-21; Dkt. No. 98-2, ¶ 14. | **UNDISPUTED** that plaintiffs published several beta versions of EE v3.5 to their GitHub repository.<br><br>**DISPUTED** that the license was ever called "Neo4j Sweden Software License." outside of court proceedings.   The beta versions were licensed under the AGPL and had the commons clause restriction appended to the AGPL license file. |
| | **Fact 9:** Neo4j® EE v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. Thereafter, only the source code for Neo4j® CE was made publicly available under the GPL via GitHub. *Id.* | **UNDISPUTED** Note that all prior versions of Neo4j EE remain publicly available on the Neo4j GitHub repository.<br><br>See Suhy Decl., ¶ 2. |
| 2. Defendants' intentional removal and/or alteration of CMI without the authorization of Neo4j Sweden | **Fact 10:** Following the release of Neo4j® EE v3.4, Suhy worked with Brad and Ben Nussbaum to form Graph Foundation, Inc. ("GFI") in June 2018.  Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Exs. 27-29); Dkt. No. 98-1, ¶¶ 24-26 and Exs. 22-24. | **DISPUTED** that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI").  Mr. Suhy was part of the volunteer committer team, and gave guidance as an open source advocate, but was not involved in forming the GFI entity.  Mr. Suhy declined any official role with the foundation.   There are no legal documents and Plaintiff's have not shown any official documents, or business records that show Mr. Suhy being involved in the formation of the GFI or serving as any official officer or director.<br><br>Plaintiff has not produced any business records, certificates, or any evidence that Mr. Suhy had a formal role in the GFI other than being on the volunteer committer team.<br><br>Beene Dec. Ex 30, Brad Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Additional Fact:** Defendants literally ***admit*** "that Mr. Suhy worked to form the Graph Foundation, Inc. ("GFI")." Further, a month after GFI was formed, Suhy sent an email to the Nussbaums stating, "We work together as one company. We all are the founders of the Graph Foundation." Dkt. No. 98-1, Exs. 29-30. | |
| | <u>Fact 11</u>: After Suhy helped form GFI, Defendants began offering and promoting a graph database software called "ONgDB." Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 27-29); Dkt. No. 98-1, ¶ 26 and Ex. 24. | **DISPUTED** that Suhy helped form GFI. See Fact 10.<br><br>**UNDISPUTED** that GFI began offering and promoting a graph database software called "ONgDB".<br><br>**UNDISPUTED** that Mr. Suhy promoted ONgDB as part of his open-source advocacy activities. Mr. Suhy also promotes other open source innovative technologies. |
| | <u>Fact 12</u>: To create ONgDB, Suhy downloaded the source code for Neo4j® EE v3.4 from Neo4j's GitHub repository and impermissibly replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL, which removed (a) the valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in the NOTICE provision; and (b) the commercial restrictions imposed by the Commons Clause. Dkt. No. 118 at 6:7-11 (citing Dkt. No. 98-1, Ex. 3 at 28:25-29:11; Exs. 24-26, 28; Ex. 31 at 87:24-90:9); Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Dkt. No. 98-2, ¶¶ 11-12, 27. | **DISPUTED.** Mr. Suhy did not create ONgDB, he was on the volunteer team of committers and gave the guidance on how to set it up, but GFI came up with the name and created the GitHub repositories.<br><br>**DISPUTED.** Mr. Suhy did not make any modifications to the source code in v3.4 code related to the AGPL in any way.<br>See Suhy Decl., Exs. 1-4, 9 |
| | **Additional Fact/Objection**: Suhy testified under oath that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI. Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Ratinoff Decl., Ex. 1 at 199:14-201:16. This is consistent with contemporaneous statements Suhy made to potential customers. *See, e.g.*, Dkt. No. 98-1, ¶ 27 and Ex. 25 (Check out https://graphfoundation.org [] All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license"). This is also consistent with Plaintiffs' inspection of ONgDB v3.4 around the time of its release in 2018. Dkt. No. 98-2, ¶ 27. | |
| | <u>Fact 13</u>: ONgDB v3.5 contained at least 182 source code files that had only been previously released by Neo4j Sweden under the Neo4j Sweden Software License in the last publicly available beta version of Neo4j® EE | **UNDISPUTED** that there were at least 182 source code files released under AGPL + Commons clause. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 3.5. Dkt. No. 118 at 6:18-21; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:4-16:24; Dkt. No. 98-2, ¶¶ 13-14, 29. | **DISPUTED** that the AGPL + Commons was ever called "Neo4j Sweden Software License" outside of court proceedings.  The files were released under AGPL + Commons clause.<br><br>See Suhy Decl., Exs. 2-3<br><br>See Fact 12. |
| | **Additional Fact:** In particular, ONgDB v3.5.9 contained 247 Java classes that were released for the first time under the Neo4j Sweden Software License either in (a) Neo4j® EE version 3.4 and were incorporated into Neo4j® EE version 3.5; or (b) Neo4j® EE version 3.5.0-RC1, and were therefore never previously licensed under the AGPLv3.   Additionally, the full underlying source code for the enterprise-only components of Neo4j® EE version 3.5.9 was never made available or released under the Neo4j Sweden Software License, or any open source license. Dkt. No. 98-2, ¶ 29. | |
| | Fact 14: Suhy again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in ONgDB v3.5, which (a) stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor; and (b) removed the commercial restrictions imposed by the Commons Clause in 28 LICENSE.txt files. Dkt. No. 118 at 6:21-26 (citing Dkt No. 98-1, Ex. 31 at 159:3-10 and Exs. 39-40; Dkt. No. 98-2, ¶ 30; Dkt. No. 91 at 19:2-25); Dkt. No. 98-1, ¶ 41 and Ex. 39.<br><br>**Additional Fact/Objection**:  Suhy testified under oath that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI.  *See* Additional Fact 12, *supra*.<br><br>**Additional Fact**:  The cited source code headers and NOTICE.txt files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause.  *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8.  Once Suhy replaced the Neo4j Sweden Software License with a generic copy of the AGPL, the Commons Clause (along with the other notices, terms and conditions listed by Neo4j Sweden) ceased to exist in those LICENSE.txt files, thereby rendered the cross-references in the NOTICE.txt files | **DISPUTED.**<br>Mr. Suhy had not previously replaced anything relating to the AGPL and commons for v3.4 of Neo4j Enterprise.   See Fact 12 above.<br><br>The NOTICE provision in the NOTICE.txt files which corresponded to each LICENSE.txt files, along with the 1000s of source code files which also had Neo4j Sweden CMI and the commons clause were untouched by Mr. Suhy and still clearly shows that the commons clause was present.<br><br>The only files Mr. Suhy touched were the AGPL LICENSE.txt files which clearly stated that the copyright to the file / license was to the free software foundation.<br><br>See Suhy Decl.,  Ex. 2<br><br>"Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/> Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed." |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | meaningless.  Dkt. No. 98-2, ¶¶ 27, 29-30; Dkt. No. 98-1, ¶ 41 and Ex. 39; *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10.<br><br>**Additional Fact**: The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt files consisting of the Neo4j Sweden Software License with 28 LICENSE.txt files consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | The NOTICE.txt files and all source code files still had the legal notices identifying Neo4j Sweden as the copyright holder and licensor, and also stated the license was AGPL + Commons.<br><br>See Suhy Decl., Ex. 3<br><br>"The Software is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 (http://www.fsf.org/licensing/licenses/agpl-3.0.html), included in the LICENSE.txt file, with the Commons Clause."<br><br>See Suhy Decl.,  Exs. 1-10 |
| | <u>Fact 15:</u> Suhy knew that Neo4j Sweden owned the copyright for Neo4j® EE, that Neo4j Sweden controlled the licensing thereof, and he could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. Dkt. No. 98-1, ¶ 36 and Ex. 34 ("As the copyright holder, is Neo4j allowed to add the specific additional terms mentioned above to the License.txt file …?"); *id.,* ¶ 58 and Ex. 56 (yellow highlights); *id.,* Ex. 3 at 183:12-25, 187:12-188:15, 189:1-191:3.<br><br>**Additional Fact**:  The cited source code headers and NOTICE.txt files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause.  *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8.  Once Suhy replaced the Neo4j Sweden Software License with a generic copy of the AGPL, the Commons Clause (along with the other notices, terms and conditions listed by Neo4j Sweden) ceased to exist in those LICENSE.txt files, thereby rendered the cross-references in the NOTICE.txt files meaningless.  Dkt. No. 98-2, ¶¶ 27, 29-30; Dkt. No. 98-1, ¶ 41 and Ex. 39; *accord* Suhy Decl., ¶¶ 21, 24-25 and Exs. 6, 9-10.<br><br>**Additional Fact**: The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt consisting of the Neo4j Sweden Software License with LICENSE.txt consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf | UNDISPUTED that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.<br><br>DISPUTED that Mr. Suhy replaced anything called the Neo4j Sweden Software License.  He only made the AGPL License file verbatim as the copyright holder, the free software foundation instructed. He did not replace the NOTICE.txt (notice provision) or any source code CMI which clearly stated that the software was copyrighted to Neo4j Sweden and had additional restrictions in the form of the common clause.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license." See Suhy Decl., Ex. 9<br><br>See Fact 14.<br><br>See Suhy Decl.,  Exs. 1-10<br><br>Neo4J Sweden does not own 100% of the code for Neo4J and the AGPL control how the software is licensed. Neo4J Sweden's misused the AGPL and Suhy corrected that. See response to Fact 1 and Facts 94 and |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | 100. |
| | **Fact 16:** Neo4j Sweden never gave Suhy permission to remove Commons Clause, rename it "ONgDB" and offer it for free under the AGPL.  Dkt. No. 98-1, ¶¶ 11-14, 27, 29-30. | **UNDISPUTED** that Neo4j Sweden never gave Suhy permission to remove Commons Clause or rename "it" ONgDB.<br><br>**DISPUTED** that Mr. Suhy renamed anything ONgDB. Mr. Suhy did not have any part in coming up with the name ONgDB.<br><br>**DISPUTED** that Mr. Suhy offered ONgDB – this is a project that is sponsored and offered by GFI.<br><br>The AGPL authorizes licensee to remove any additional terms. See Suhy Dec., Ex. 6. |
| | **Fact 17:** Suhy has been the sole officer and director of PureThink since he formed the corporation.  Ratinoff Decl., Ex. 2 at 176:4-11; *see also* Dkt. No. 98-1, ¶ 16 and Ex. 14 ("[t]he principle behind PureThink … has created a new corporate entity called iGov Inc."). | **DISPUTED.**  Mr. Suhy has had other partners who served as officers and directors since PureThink was formed in 2002.<br><br>See Suhy Decl., ¶ 8. |
| | **Additional Fact**: Defendants state "PureThink is a single person company filing as an s-corporation for tax purposes."  *See* Fact 86, *infra*. | |
| | **Fact 18:** Suhy has been the sole officer and director of iGov Inc. since he formed the corporation.  Dkt. No. 98-1, ¶ 12 and Ex. 10; *id.,* Ex. 3 at 21:20-23:25. | **UNDISPUTED** |
| 3. Defendants Distributed Neo4j Sweden's Works with its CMI Removed | **Fact 19:** Suhy made Neo4j Sweden's source code with its CMI removed publicly available via GFI's website and GitHub repository for ONgDB. Dkt. No. 98-1, Ex. 24 ("IRS is adopting the open source Neo4j Enterprise distributions we are transfered [sic] to [GFI]"); *id.*, ¶¶ 27 and Ex. 25 ("All the Neo4j enterprise distributions we package from now on will come from [GFI] and have the standard vanilla AGPLv3 open source license."); *id.*, ¶¶ 28 and Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); *id.*, Ex. 3 at 172:4-23, 200:9-25, 211:7-24; *id.*, ¶¶ 41 and Ex. 39 (GFI GitHub commit); Dkt. No. 98-2, ¶¶ 27, 29-30.  This resulted in users downloading infringing ONgDB over 14,000 times by December 2020. Dkt. No. 118 at 8:13-15. | **DISPUTED** – Mr. Suhy does not control or run the GFI website or GFI Github repositories.  He is one of many volunteer open source committers on the team.<br><br>Beene Dec. Ex 30, Brady Nussbaum Deposition, 40:7-16, 42:9-14, 44:6-8, 78:19-24<br><br>The CMI is not (its) Neo4J Sweden's CMI. The copyright to the AGPL is owned by FSF. Neo4J Sweden's violation of FSF's copyright means the CMI was false in violation of the DMCA. Suhy corrected that violation with the removal of the commons clause. See |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Fact 98. |
| | **Additional Fact**: On July 9, 2018, Suhy offered a sponsor of GFI an "explain[ation] why [GFI] was created and ***how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS*** and most likely DHS as they are already using the open source distributions we packaged before we assigned them to [GFI]." Dkt. No. 98-1, ¶ 26 and Ex. 24 (emphasis added). GFI also confirmed Suhy was involved in the initial development of ONgDB, including making commits and developing solutions for that software.  Ratinoff Reply Decl., Ex. B at 82:20-25. | |
| | <u>Fact 20</u>: Suhy provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com email account. Dkt. No. 98-1, Ex. 26 ("I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. [] Our open-source fork we manage can be found at https://graphfoundation.org"); Ex. 40 ("I just wanted to let you know that for ONgDB 3.5 - we merged the build framework and enterprise code back into the code repository like it used to be before Neo started stripping it out. [] See: https://github.com/GraphFoundation/ongdb"); Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); Ex. 45 (emailing hyperlink to https://graphfoundation.org/ongdb); Dkt. No. 98-1, ¶¶ 43, 60 and Exs. 41, 58 (landing page for https://github.com/graphfoundation/ongdb). | UNDISPUTED that Mr. Suhy provided hyperlinks references for users of the website to view the source code and download distributions.  These links sent the users who clicked on them to the GFI website, which Mr. Suhy has no official role, has no control over, and whom is just one of the many volunteer committers who volunteers time to make the software better for the open source community.<br><br>Note: Dkt. No. 98-1, Ex. 26 shows date of 08/28/2018<br><br>The code still had commons as of Nov 2019.<br><br>See Suhy Decl.,  Exs. 1-4 |
| | <u>Fact 21</u>: Suhy also provided hyperlinks to potential users of Neo4j® EE to download ONgDB from GFI's website and GitHub repository from his jmsuhy@igovsol.com email account.  Dkt. No. 98-1, ¶ 43 and Ex. 41 (landing page for https://github.com/graphfoundation/ongdb); *id.*, ¶ 59 and Ex. 57 (GFI webpage https://github.com/graphfoundation/ongdb), Exs. 44, 46, 54, 76-77 (emails with hyperlinks); Ratinoff Decl., Ex. 70 (email with hyperlink to https://graphfoundation.org/ongdb/).  He also tweeted and retweeted links to GFI's ONgDB webpage. Dkt. No. 98-1, Exs. 98-100, 102-104 (tweets); Exs. 105-111 (retweets). | UNDISPUTED – see Fact 20 above. |
| | <u>Fact 22</u>: iGov's website provided links to potential users of Neo4j® EE to download ONgDB directly from iGov and from GFI's website.  Dkt. No. 98-1, ¶¶ 65-72 and Exs. 63-70; Dkt. No. 98-2, ¶ 27. | UNDISPUTED – it should be noted that all the downloads from GFI and from the mirror site I setup on iGov's website had the commons clause in the AGPL |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | license files. |
| | Fact 23: iGov used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Dkt. No. 118 at 27:12-28:1; Dkt. No. 98-1, Exs. 66-68 (highlighted in red); *id.*, Ex. 13 at RFA Nos. 10, 14. | UNDISPUTED that the hyperlink was on the iGov downloads page.  It was a mistake and should have said "Download ONgDB Enterprise".   The link was fixed as soon as it was brought to Mr. Suhy's attention.<br><br>See Fact 22 above. |
| | Fact 24: On May 22, 2018, Suhy emailed the IRS telling them the addition of the Common Clause to the license for Neo4j® EE v3.4 was improper and sought to convince the IRS to move to an unrestricted version of Neo4j® EE 3.4.  Ratinoff Decl., ¶ 31 and Ex. 29. The IRS did not obtain an independent legal opinion on Suhy's representations regarding the alleged impropriety of adding commercial restrictions to the AGPL. *Id.*, Ex. 4 at 96:6-98:21.<br><br>**Additional Fact:** Defendants admit, "the AGPL with the commons clause … prohibited the non-paying public from engaging in commercial resale and support services." *See* Facts 4-5.  The word "unrestricted" also means "freely available for use …." https://www.merriam-webster.com/thesaurus/unrestricted. | DISPUTED the reference in Ratinoff Decl., ¶ 31 and Ex. 29.<br>Does not mention anything related to trying to get IRS to move to an "unrestricted" version. Furthermore, Plaintiffs have never shown Mr. Suhy ever used the terms "unrestricted" or "restrictions" in describing the AGPL license without the commons clause.<br><br>Mr. Suhy has only used the word "restriction" in only 2 scenarios.  1. when explaining that the commercial license adds restrictions, and 2. around physical restrictions of software itself relating to number of cores, instances, or other physical attributes of Neo4j Enterprise.<br><br>See:  Dkt. No. 98-1, Exs. 68,75<br>"no limitations on causal cluster instances, cores, or production usage."<br><br>Dkt. No. 98-1, ¶¶ 45 and Ex. 43<br>"ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose."<br><br>Further, the commons clause does not prevent IRS from using Neo4j v3.4 in production.  Mr. Suhy stated this in the email. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "Again this does not effect IRS in any way, even if the term was enforceable." See Ratinoff Decl., ¶ 31 and Ex. 29.<br><br>The email referenced in Ex. 29 above, was sent May 22nd, 2018.<br>At this date, even the AGPL license files had the references to the commons clause.<br><br>See Suhy Decl., Exs. 1-4,9 |
| | Fact 25: On May 24, 2018, the IRS awarded another entity that Suhy had an ownership interest in at the time, eGovernment Solutions ("eGov Sol"), a contract for the development and support of the CDW Knowledge Graph Environment ("CKGE"), which used open source Neo4j® EE software as a main component.  Ratinoff Decl., ¶¶ 30, 32 and Exs. 28, 30; id., Ex. 4 at 71:2-74:21, 75:14-76:14, 77:7-78:16, 85:3-18, 126:5-127:15; id., Ex. 3 at 47:14-50:8, 50:14-54:3.<br><br>**Additional Fact:** Prior to the award of the CKGE Contract, Suhy sent an email to the IRS stating, "[t]he current CKGE environment will require any potential vendor to provide 2 critical components 1) The Government Package / Suite for Neo4j and 2) professional services for continued development."  Ratinoff Decl., ¶ 32 and Ex. 30 (yellow highlight). | UNDISPUTED that IRS awarded eGovernment Solutions a contract to develop and support the CDW Knowledge Graph ("CKGE") environment which used an open source Neo4j software.<br><br>DISPUTED that Neo4j was a main component in the platform.  It was in fact just one small component of one service that made up the complex platform.<br><br>The SOW for the CKGE project does not have anything referencing Neo4j EE as a component, let alone the main component of CKGE.<br><br>"The CKGE framework includes a graph database: elastic search capabilities; java-script based, user-interface; and microservices components."<br><br>The only time the word Neo4j was mentioned was under the "skills section" of the SOW. (underlined below) "The vendor will need to work with the following components: React, Angularjs, Neo4j, JAVA, micro-services architecture, and Hadoop/Spark, Elastic Search, Kafta, Agile methodology, GitLab, and Plottable." See Suhy Decl., Ex. 11 |

11

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See Suhy Decl., ¶ 5. |
| | <u>Fact 26:</u> Before the IRS awarded the CKGE contract to eGov Sol, Suhy made clear that he would be performing the work through iGov.  *See* Ratinoff Decl., Ex. 4 at 61:11-64:23, 72:2-74:21, 75:14-76:14, 77:7-78:11, 85:3-18; *id*, Ex. 3 at 30:8-31:21, 32:9-37:14, 50:14-54:3; *id.,* Ex. 2 at 188:10-193:25; *id.,* ¶ 30 and Ex. 28. | |
| | <u>Fact 27:</u> eGov Sol viewed the CKGE contract as belonging to Suhy to which he had sole responsibility for and control over.  Ratinoff Decl., Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20; *id.*, ¶ 37 and Ex. 35 at §§ 5, 5.1, 5.2 and 5.3.<br><br>**Additional Fact:** Consistent with the testimony of eGov Sol, Section 5.2 of the stock purchase agreement cited by Defendants states "eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project…." *Compare* Ratinoff Decl., Ex. 35 at §5.2 *and id.*, Ex. 3 at 30:8-32:23, 34:1-37:14, 50:14-51:20. | DISPUTED:  The stock purchase agreement between Mr. Suhy and eGovernment Solutions does not state anywhere that Mr. Suhy has the sole responsibility or sole control.  The stock purchase agreement gave Mr. Suhy the authority to drive the direction, but not absolute control.<br><br>"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid…"<br><br>"5.2 eGovernment Solutions Inc will give John Mark Suhy the authority to drive the direction of the project (Section 5) and is given the authority to enter into agreements on behalf of eGovernment Solutions Inc relating to this project as long as the agreements are in line with government contracting laws and hubzone regulations."<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | <u>Fact 28:</u> The IRS paid a total of $1,316,000 to eGov Sol under the CKGE contract, which in turn eGov paid to Suhy and iGov. Ratinoff Decl., Ex. 3 at 54:10-59:5, 59:18-62:3, 63:13-65:25, 67:7-69:11, 69:16-70:19, 71:17-79:12; *id*., ¶¶ 38-44 and Exs. 36-42. | UNDISPUTED that IRS paid a total of $1,316,000 to eGovernment Solutions under the CKGE contract.<br><br>DISPUTED that eGovernment Solutions turned around and paid that amount to Mr. Suhy and/or iGov Inc. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | eGovernment Solutions paid a $200,000 to support the CKGE contract, act as the official facility clearance officer for eGovernment Solutions because Mr. Suhy had an active clearance, and help with business development.  See Fact 27 and Ratinoff Decl., ¶ 37 and Ex. 35<br><br>Over $251,450 of the revenue from IRS did not go to Mr. Suhy in any manner.<br><br>The total payments made to iGov Inc were $1,064,550.00<br><br>See Suhy Decl., ¶¶ 6,7 |
| | **Fact 29**: Suhy was entitled to all the payments eGov Sol received from the IRS on the CKGE contract.  Ratinoff Decl., Ex. 3 at 30:13-32:25, 36:15-37:14,  39:18-40:18,  42:14-19,  50:14-54:3,  71:17-79:12,  81:6-82:17; *id.*, ¶ 44 and Ex. 42.<br><br>**Additional Fact:** eGov Sol confirmed that Suhy was entitled to the $200,000 payments referenced in Section 5.1 of the stock purchase agreement, which reflected the option year payments made by the IRS under the CKGE Contact.  Dkt. No. 183, Ex. 3 at 31:7-32:21, 34:1-37:14, 50:14-53:4. | **DISPUTED** that Mr. Suhy was entitled to all payments eGov Sol received from the IRS on the CKGE contract.<br>See Facts 27-28,<br>See Suhy Decl., ¶¶ 6,7<br><br>**"5.1 eGovernment Solutions Inc hereby hires John Mark Suhy as an Independent Contractor for all option years that are exercised on the CKGE contract. His compensation will be $200,000 per year paid when eGovernment Solutions gets paid. eGovernment Solutions will not be liable to pay John Mark Suhy for any work done on this contract in the event they donot get paid from the client. If the payment for the project is received all at once, then John Mark Suhy will also be paid his total salary for the option year up front, otherwise salary will be paid as eGovernment Solutions Inc get paid by the Treasury."**<br><br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | **Fact 30:** eGov Sol maintained a bank account for all the payments received from the IRS, which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.  Ratinoff Decl., Ex. 3 at 42:14-19, 62:1-63:12, 66:1-15. | **UNDISPUTED** that eGovernment Solutions had a bank account that received payments from clients including IRS. Mr. Suhy had access to the account because it had not been |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | removed when he sold his shares.    Mr. Suhy just happened to still have checks and helped out of convenience since there was a bank branch near his home.<br><br>**DISPUTED** Mr. Suhy was not authorized to disburse the payments made by the IRS as he saw fit.  He had to request permission anytime he wanted to write a check for his salary.<br><br>See Facts 27-29<br>See Ratinoff Decl., ¶ 37 and Ex. 35 |
| | Fact 31: In July 2018, a sales representative from Neo4j USA met with the IRS and then provided a one-year $156,000 quote for a Neo4j® EE v3.4 subscription on then-current requirements of CKGE.  Ratinoff Decl., ¶ 34 and Ex. 32; *id*., Ex. 4 at 113:5-115:20, 116:5-117:21. | **DISPUTED** that CKGE had any requirement for Neo4j EE at all.<br><br>Otherwise **UNDISPUTED** that a sales representative from Neo4j USA met with IRS and provided the quote mentioned. |
| | Fact 32: As of August 2018, the IRS understood that Neo4j® CE had a performance limitations, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions.  The IRS ultimately decided to not allocate $156,000 for a license for Neo4j® EE because ONgDB was a free unrestricted alternative.  Ratinoff Decl., Ex. 4 at 103:2-104:12, 121:18-124:4, 126:5-129:25, 130:9-132:1. | **DISPUTED.**  Plaintiff's do not provide any evidence  citing a "reason"" to why IRS did not allocate money for a Neo4j EE license.    See Fact 24.<br><br>**UNDISPUTED** that Neo4j EE had enterprise only features compared to Neo4j CE, and that the Neo4j EE commercial license came with support.<br><br>Zagalsky of Neo4J USA misrepresented a Fare Trade Licensing document as applying to the AGPL code on 4-4-2017 before the IRS to decline to do business with Neo4J USA. There is no obligation under the AGPL to make a project open when using AGPL licensed software. AGPL §2, Suhy Dec. Ex 22.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 33: In August 2018, Suhy convinced the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 into the CKGE platform based, in part, on | **DISPUTED** |

14

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | misrepresentations about GFI being the copyright holder and licensor of ONgDB.  Ratinoff Decl., Ex. 4 at 126:5-129:25, 132:2-23, 133:15-138:2, 138:22-140:20, 141:8-24, 142:15-143:20; *id.*, ¶¶ 35-36 and Exs. 33-34.<br><br>**Additional Fact:** The testimony cited by Defendants is consistent with the foregoing.  On August 13, 2018, Suhy sent an email to the IRS stating "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc…."  Ratinoff Decl., ¶35 and Ex. 33. Mr. Dunn confirmed the IRS understood from this email and conversations with Suhy that GFI added the source code for the enterprise features to Neo4j® CE (core) to create ONgDB and the open source license for those features came from GFI.  Ratinoff Decl., Ex. 4 at 132:2-19, 133:15-137:6. | Mr. Suhy never claimed GFI was the copyright holder.  The only place in Ex. 4 that even mentions the word "copyright" shows that IRS knew the copyright holder was Neo4j.<br><br>"**Q. So the Neo4j source code, Neo4j would own the copyright to that.  Correct?**<br>**A.  Yes.  I would assume it would be available based on whatever Neo4j allowed it to be used from**."  Ratinoff Decl., Ex. 4 at 130:1-4<br><br>IRS was not even sure about who the license came from, and did not associate the license to be anything related to copyright.<br><br>"**A.  My understanding it was not the Enterprise. It was the core source code from GitLab, Neo4j's GitLab, whatever that licensing was of that core source code brought over, and then the additional elements, whatever elements ONgDB, The Graph Foundation added onto that.  That's how I understood from my point of view who was -- who was distributing and licensing it and the follow-through from whatever the licensing was of the Neo4j core that was off of GitLab.  That's how I understood it**." Ratinoff Decl., Ex. 4 at 135:14-23<br><br>The source code for v3.4 clearly stated that Neo4j Sweden was the copyright holder.<br><br>"Neo4j Copyright © 2002-2018 Neo4j Sweden AB (referred to in this notice as "Neo4j") [http://neo4j.com]<br>This product includes software ("Software") developed and owned by Neo4j."   Suhy Decl., and Ex. 3<br><br>See also Suhy Decl.,  Exs. 1-4 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | There is no evidence that shows that IRS was convinced by Mr. Suhy.<br><br>See Fact 24<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 34:** While working under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB on an internal repository at the IRS.  Dkt. No. 98-1, Ex. 38 at 23:14-24:4; Ratinoff Decl., Ex. 3 at 366:13-368:9; *id.,* Ex. 4 at 75:14-77:24, 126:5-128:24, 142:15-143:20, 179:4-23, 204:4-206:9, 207:10-209:11; *id.,* ¶ 36 and Ex. 34; *id.,* ¶ 47 and Ex. 45 (yellow highlights). | **DISPUTED** Suhy and iGov were NOT responsible for supporting, maintaining, and updating ONgDB on the internal repository.<br><br>The Statement of Work for the CKGE project had no requirement to support, maintain or update ONgDB.  See Suhy Decl., Ex. 11<br><br>Mr. Suhy helped IRS with technologies on his own time and not as part of any paid consulting.  Mr. Suhy also assisted with other technologies that he had expertise around when time permitted.<br><br>Mr. Suhy simply helped IRS get the source code into the IRS internal repository so that IRS could perform security scanning outside any contractual obligation between IRS and eGovernment Solutions Inc.  This happened around the time that a serious Log4j Vulnerability was found to exist in Neo4j.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | **Fact 35:** Suhy and iGov helped the IRS upgrade the CKGE platform to ONgDB v3.5 and continued to integrate subsequent subversions through at least April 2022.  Dkt. No. 98-1, Ex. 3 at 224:13-23; Ratinoff Decl., Ex. 4 at 207:7-209:15, 210:5-211:20, 213:1-216:8; *id.,* ¶¶ 45-49 and Exs. 43-47 (yellow highlights). | **DISPUTED**  The CKGE platform does not require upgrades to use specific graph databases.<br><br>The CKGE platform is suite of micro-services, many of which have nothing to do with graphs. The only service that |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | end-users used which even touched the graph was called the graph explorer.  It provides a way to explore graph structure through visualization.  It is not dependent on any specific underlying graph database and does not require any sort of upgrade to switch between backend graph and non-graph databases.<br><br>See also Fact 34.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | <u>Fact 36:</u> After April 2022, the IRS started calling ONgDB just "GDB," which still used Neo4j® EE 3.5 source code improperly licensed under the AGPL, which Suhy compiled on the IRS's internal GitLab repository.  Ratinoff Decl., Ex. 4 at 175:6-176:21, 193:9-198:15.<br><br>**Additional Fact:** The IRS confirmed what it calls "GDB" was licensed under the AGPL without the Commons Clause, which was compiled from Neo4j® EE 3.5 source code by Suhy.  Ratinoff Decl., Ex. 4 at 195:2-198:15; Fact 14, *supra*.  Specifically, Mr. Dunn testified:<br><br>    Q. So you're saying that -- okay. So you're saying that for in 2022 that the version of ONgDB that was being run on the servers showed up as being Neo4j source code version 3.5.2.6? Is that fair?<br>    A. Yes. Yes. [] But your main point there is what I understand when I talked with Puru, and he looked at the code base of the graph database, and it's referred to as Neo4j 3.5, and if it's 2.6, that's what it would be. Does that make sense?<br><br>    Q. Yeah. I think so. And you said the different name. So from the IRS's perspective, the program is the same, it's just the names have 16 changed from ONgDB to GDB. Is that correct?<br>    A. Yeah.<br><br>Ratinoff Decl., Ex. 4 at 195:2-13<br><br>    Q. So where did that Neo4j source code that is now maintained | **DISPUTED.**  There is not any ONgDB, GDB, Neo4j, or other source code based on Neo4j in use at IRS which is "improperly licensed".  All the source code within IRS clearly states that the license is AGPL + Commons.   Plaintiff has provided no evidence to the contrary.<br><br>See Suhy Decl., ¶ 9<br><br>**"Q.  I didn't get -- I didn't quite follow that. I apologize.  To clarify, so you understood -- so you understood that the license that ONgDB was under was the AGPL version 3 but with the Commons Clause removed by Mr. Suhy?**<br><br> **A.  Yeah.  I don't -- I don't remember if he removed it.  I don't remember it being discussed.  I just remember the description of taking the core source code from GitLab, compiling it, and then, as we discussed, adding the additional capabilities that would be the ONgDB release.**<br><br>**So I can't remember the Commons Clause being part of the discussion.  I can't remember if he said that he** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | internally come from?<br>A. John Mark Suhy.<br><br>Q. And to your knowledge, what license is that source code under? Is it under the AGPL?<br>A. As far as I know. Yeah. I haven't been informed of any other requirements.<br><br>Q. And it's not under the AGPL clause comm[ons]?<br>A. I'm not -- as far as I know, no.<br><br>*Id.*, Ex. 4 at 198:5-13 | took it out or what, but I can't say that. Yeah. I just can't say that. In my mind, I'm tracing it from the GitLab source code, whatever that licensing was, and then released by ONgDB under their licensing." Ratinoff Decl., Ex. 4 at 133:14-134:6<br><br>UNDISPUTED that IRS started calling ONgDB just "GDB,"<br><br>DISPUTED that the graph used Neo4j EE 3.5 source code, as Neo4j did not release the enterprise source code for v3.5 after the pre-releases. |
| | Fact 37: Between August 2018 and April 2022, they facilitated the use of four instances of ONgDB on at least three servers within the CKGE platform (a/k/a "main graph") environment. Ratinoff Decl., Ex. 4 at 152:21-156:16, 157:23-158:11, 161:23-163:4, 166:19-167:4, 168:24-172:10, 174:19-175:5, 179:13-23. | DISPUTED that Mr. Suhy or iGov Inc facilitated the use of four instances of ONgDB.  Mr. Suhy gave guidance on the servers needed for the entire CKGE stack, which the graph database was not the main piece of.  Furthermore, the references Plaintiff give show that the person being deposed was not sure of the number of ONgDB instances, and was guessing.<br><br>There is no evidence the IRS conveyed its copy of Neo4J software used under the terms of the AGPL and had no obligation to provide the source code to any licensee.  AGPL §2. |
| | Fact 38: iGov operated www.graphstack.io to further promote ONgDB over Neo4j® EE and allowed consumers to directly download ONgDB without any restrictions.  *See* Dkt. No. 98-1, ¶ 77 and Ex. 75 ("iGov Inc is the company behind GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies"); *id.*, Ex. 13 (RFA No. 40); *see also* Ratinoff Decl., ¶¶ 50-54 and Exs. 48-52. | DISPUTED  www.graphstack.io was not operated just to promote ONgDB over Neo4j EE.  The website promoted a stack of tools that abstracted out knowledge graphs from the underlying implementation.<br><br>The term "restrictions" mentioned are in the context of physical restrictions and have nothing to do with license restrictions.<br><br>*See* Dkt. No. 98-1, ¶ 77 and Ex. 75<br>"Open Native Graph DB (ONgDB) is a non-restrictive fork of Neo4j managed by the Non profit Graph Foundation ONgDB is 100% free and open, and there are no limitations |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | on instances in clusters, cores, etc!"<br><br>"What is GraphStack?<br>**GraphStack is a development suite that allows teams to build large scale graph apps.**"<br><br>See also Fact 24. |
| 3. Defendants had reason to know that their actions would induce, enable, facilitate, or conceal copyright infringement | **Fact 39:** Defendants knew or had reasonable grounds to know that they could not replace the Neo4j Sweden Software License with the AGPL without Neo4j Sweden's authorization. *See* Ratinoff Decl., Ex. 1 at 178:17-179:8, 186:5-184:10.  This is further evidenced by their failure to seek competent legal advice, and reliance on Suhy's unqualified analysis of the provisions of the AGPL and "internet research" that he admitted was inconclusive. *Id.* at 196:22-201:16.<br><br>**Additional Fact:** Suhy did not seek legal advice concerning whether he could remove the Commons Clause from the Neo4j Sweden Software License.  *See* Facts 40-42. GFI also did not obtain a legal opinion on whether it could remove the Commons Clause as "further restriction" from the Neo4j Sweden Software License before GFI and Suhy replaced the Neo4j Sweden Software License with the AGPL in ONgDB.  Ratinoff Reply Decl., Ex. B at 117:8-118:11; *id.,* Ex. C at 288:14-24. | **DISPUTED** defendants only created a commit to make the AGPL LICENSE.txt files verbatim as instructed in the AGPL preamble  by the copyright holder,  the free software foundation.  Suhy Dec., Ex. 6<br><br>The commit message shows the intent.<br><br>Furthermore, the defendants did not replace anything called "Neo4j Sweden Software License".  The license has always been called the AGPL, even when the commons clause was appended to it.<br><br>Mr. Suhy was speaking of the files owned by the FSF only.<br><br>Mr. Nussbaum from the Graph Foundation did get independent legal guidance which was communicated to Mr. Suhy as well.<br><br>"**We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3**". See also Suhy Decl.,  Ex. 12 |
| | **Fact 40:** Suhy participated in a discussion thread on Plaintiffs' GitHub repository in May 2018 where a person claiming to represent Neo4j told him that his interpretation of Section 7 was wrong for reasons similar to those found by this Court. Dkt. No. 98-1, ¶ 119 and Ex. 117; Ratinoff Decl., Ex. 1 at 201:18-205:16.  Suhy "didn't have time to go and dive into it" and chose not to seek legal advice concerning those views despite not understanding Plaintiffs' legal position on the interpretation of the AGPL. | **UNDISPUTED** that Mr. Suhy participated in a discussion thread on Plaintiffs' Github repository in May 2018.<br><br>DISPUTED that Mr. Suhy chose not to seek legal advice concerning those views.  The Graph Foundation did get independent legal advice and communicated that to Mr. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Ratinoff Decl., Ex. 1 at 205:17-206:11. | Suhy.<br><br>Furthermore, Mr. Suhy did do quite a bit of due diligence which is one of the reasons that he only followed the instructions in the files that specifically stated they were copyrighted to the free software foundation. |
| | **Fact 41:** When Suhy sought guidance from the FSF on the removal of the Commons Clause, the FSF told him "[t]he copyright holder on a work is the one with the power to enforce the terms of the license" and "[i]f a work was previously available under a free license, and later that license is changed, users can always use that earlier version under the terms of the free license." Dkt. No. 98-1, ¶ 36 and Ex. 34 (yellow highlights). The FSF also warned that "we cannot provide you with legal advice" and that he should "talk with legal counsel." *Id.* | UNDISPUTED the free software foundation gave the guidance which Mr. Suhy followed. |
| | **Fact 42:** Suhy ignored the FSF's admonitions, and did not consult an attorney before removing the Commons Clause. Ratinoff Decl., Ex. 1 at 183:2-184:9, 187:12-188:15, 189:1-191:3, 192:18-193:24, 196:22-24. | **DISPUTED** Mr. Suhy did not remove the commons clause from Neo4j. In March 2019, he only made the AGPL License file verbatim as the copyright holder of the file, the free software foundation, instructed in the preamble. The commons clause was still present in all NOTICE provisions and source code headers.<br><br>See also Fact 14 |
| | **Fact 43:** Suhy understood that the Common Clause imposed commercial restrictions on the use of Neo4j® EE. Dkt. No. 98-1, ¶ 27 and Ex. 25 ("[Neo4j Sweden] tried adding a 'commons clause' to the AGPL license, trying to precent [sic] companies from selling (and competing against them on procurements)"); *id.*, ¶ 31 and Ex. 29 ("People can pay money for a restrictive commercial license, or use Neo4j Enterprise for free under it's open source license"); *id.,* ¶¶ 44-45; Exs. 42-43 (yellow highlights); Ratinoff Decl., Ex. 1 at 154:22-156:1. | **DISPUTED** Mr. Suhy did not use the term "commercial restrictions" in relationship to the commons clause. Mr. Suhy knew that the commons clause forbid re-selling, but was unsure about the rest as the language of the commons clause did not define what "support services" was exactly. |
| | **Additional Fact:** Defendants admit that "the AGPL with the commons clause … prohibited the non-paying public from engaging in commercial resale and support services." *See* UDF Nos. 4-5. | |
| | **Fact 44:** Suhy removed the Commons Clause to induce end-users to use ONgDB in commercial applications for free and then use the cost savings to pay Defendants to provide support services to those users. Dkt. No. | **DISPUTED** Mr. Suhy removed the commons clause from only the AGPL License files and gave the reason for the removal clearly in the commit message. The commons |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | 98-1, ¶ 31 and Ex. 29; *id.*, ¶¶ 64-68 and Exs. 62-66; *id.*, ¶ 128 and Ex. 126; *see also* Dkt. No. 118 at 5:24-6:1, 6:11-7:5, 29:4-11; Dkt. No. 98-1, ¶¶ 44-45, 49 and Exs. 42-43, 47; *id.*, ¶ 49 and Ex. 47; *id.*, ¶ 56 and Ex. 54; *id.*, ¶¶ 128 and Ex. 126; *id.*, ¶¶ 132-134 and Exs. 130-132.<br><br>**Additional Fact:** The cited source code headers and NOTICE.txt files do not contain the Commons Clause.  Rather, they merely direct a user to the LICENSE.txt, which originally contained the Commons Clause prior Suhy's removal thereof.  *See* Suhy Decl., ¶¶ 18-19, 22-23 and Exs. 3-4, 7-8; *see also* Facts 14-15.  Defendants further admit that the Commons Clause "prohibited the non-paying public from engaging in commercial resale and support services."  *See* Facts 4-5, *supra*. | clause was not removed from the NOTICE provision (NOTICE.txt) or any source code files.   See Fact 14.<br><br>Mr. Suhy's commit message which is used to explain why a commit / change was made states: "**Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license.**" See Suhy Decl., Ex. 9<br><br>Furthermore, the commons clause did not prevent end-users from using Neo4j EE for free in commercial applications or elsewhere.  Plain |
| | Fact 45: Suhy concealed the infringing nature of ONgDB and misled the IRS to believe that GFI licensed the software rather than Neo4j Sweden exemplifies their actual knowledge that the removal of Neo4j Sweden's CMI would result in copyright infringement.  Ratinoff Decl., ¶ 35 and Ex. 33 ("ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc"); *id.*, Ex. 4 at 127:19-129:25, 132:2-133:13, 134:7-136:9, 137:24-138:11, 139:22-141:17. | DISPUTED Mr. Suhy was not aware that ONgDB was infringing on anything and would have called out the Graph Foundation had he thought this.<br><br>The Graph Foundation Inc communicated to Mr. Suhy and others that their legal counsel had given them the guidance as well.<br><br>"**We have been advised by The Free Software Foundation in a non-legal capacity and have verified with our legal counsel independently that the Commons Clause is a "further restriction" to AGPLv3 and may be removed according to this clause of AGPLv3**". See also Suhy Decl.,  Ex. 12<br><br>Mr. Suhy clearly stated the reason for replacing only the AGPL License file with the verbatim AGPL, while leaving all Neo4j CMI untouched.  See Fact 14 and 44.<br><br>Plaintiffs have not shown that IRS was misled in any way.<br><br>Mr. Suhy never misled or stated that the copyright came from GFI.    See Fact 36<br><br>Ratinoff Decl., ¶ 35 and Ex. 33, Shows an email dated 08/13/2018.   No modifications to the AGPL code were done |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | as before March 2nd, 2019. See Suhy Decl., Exs. 1-4<br><br>Suhy removed Neo4J Sweden's infringement of FSF' AGPL license and did not conceal that. |
| | **Fact 46:** Defendants used the IRS's adoption of ONgDB to encourage other government agencies and contractors to do the same and pay them for support services.  Dkt. No. 98-1, ¶¶ 26, 44-49 and Exs. 24, 42-47.<br><br>**Additional Fact:** iGov, AtomRain and GraphGrid worked together to provide paid support services to users of ONgDB, as confirmed by Suhy:<br><br>Once you are supporting Airforce with Neo4j, then there is a large potential for custom software development services.  Since Neo4j partners are usually forbidden from using Neo4j under it's open source license - this puts you in a very unique position for anyone who wants custom Neo4j development. We could support you on all development tasks, and bring past performance from our other federal Neo4j projects.<br>* * *<br>Our team: iGov Inc, GraphGrid (https://graphgrid.com), and AtomRain (https://atomrain.com). We work together as one company."<br><br>Dkt. No. 98-1, Ex. 29. | UNDISPUTED that defendants referenced IRS's adoption.<br><br>DISPUTED – that defendants did this in order for agencies and contractors to pay defendants.<br><br>In all the references given by plaintiff for Fact 46, only one was related to trying to get paid, and it was for a package of software.  **"Neo4J Server including the Graphsware PHP-Neo4J Client (Guzzlehttp, Heoku, Myclabs, Pimple, Psr, Silex, Symfony, and Composer"** Dkt. No. 98-1, ¶ 44 and Ex. 42<br><br>Not only did defendants not encourage agencies or contractors to pay them, they told them they could find companies with past performance such as AtomRain and GraphGrid.<br><br>**"Usually which one you go with falls to the cost of production support. From a past performance perspective, the open source distributions are actually in production in the Federal government and there are companies such as us , AtomRain, GraphGrid, etc all have past performance providing production support for federal agencies for Neo4j Enterprise open source licenses."** Dkt. No. 98-1, ¶ 49 and Ex. 47<br><br>Furthermore, Defendants were promoting the open and free nature of ONgDB.<br><br>**"I wanted to make sure you knew that you can use Neo4j Enterprise AGPL distributions at no cost, and with no limitations."** Dkt. No. 98-1, ¶ 47 and Ex. 45 |

4853-5930-0200.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **"1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production."** Dkt. No. 98-1, ¶ 45 and Ex. 43 |
| | <u>Fact 47</u>: Suhy also convinced another company, Greystones Consulting Group, LLC ("Greystones"), to implement ONgDB in an analytics platform branded by Greystones as "GreyRaven" and worked with them to solicit government agencies.  Ratinoff Decl., ¶¶ 55-60 and Exs. 53-58. | **DISPUTED**  None of the evidence provided by plaintiff relating to this fact suggest that Mr. Suhy convinced Greystones Consulting Group, LLC to implement ONgDB. |
| | **Additional Fact:** Suhy worked with Greystone in marketing "GreyRaven" and ONgDB to the U.S. Army.  *See* Ratinoff Decl., ¶¶ 56-59 and Exs. 54-57. | |
| | <u>Fact 48</u>: The United States Air Force awarded Greystones two SBIR contracts based on its GreyRaven platform, which Greystones touted as being based on ONgDB.  Ratinoff Decl., ¶¶ 61-62 and Exs. 59-60. <br><br>**Additional Fact:** Suhy told the U.S. Army that Greystones was "working with Neo4j / ONgDB open source distributions" and Greystones confirmed, "Our GreyRAVEN platform is based on ONgDB." Ratinoff Decl., ¶¶ 58-59 and Exs. 56-57. | **UNDISPUTED** Note however that GreyRaven was not based on ONgDB. <br><br>This was a marketing mistake and the website was updated once it was brought to GreyStone's attention. |
| | <u>Fact 49</u>: The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.  Ratinoff Decl., Ex. 5 at 19:5-20:8, 28:10-31:21. | **UNDISPUTED** |
| | <u>Fact 50</u>: After the release of ONgDB v3.4, Suhy told Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website. Ratinoff Decl.*,* Ex. 5 at 35:7-37:3, 40:3-42:3, 42:16-48:22, 49:9-51:14, 51:23-25, 54:7-56:21, 57:18-62:12; *id.*, ¶¶ 63-66 and Exs. 61-63; *see also* Dkt. No. 98-1, ¶¶ 49 and Ex. 47. | **DISPUTED** as this mischaracterizes the evidence,  there were no restrictions on the number of cluster instances and cores, however the Software resticted under the AGPL license terms. Dkt. No. 98-1, ¶¶ 64 and Ex. 62; **"Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | <u>Fact  51</u>:  Suhy confirmed that ONgDB v3.5 had the same closed enterprise features as Neo4j® EE v3.5, and Next Century could use it without restrictions or paying Neo4j for a commercial license.  *See* | DISPUTED It is not known what led Next Century to upgrade to ONgDB v3.5. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Ratinoff Decl., Ex. 5 at 62:13-65:17; *id.*, ¶ 66 and Ex. 64.  This led Next Century to upgrade to ONgDB v3.5.  Dkt. No. 98-1, ¶ 122 and Ex. 120.<br><br>**Additional Fact**: Next Century informed Neo4j USA that open-sourced (non-commercial) ONgDB builds from the Neo4j® EE source code "provide the clustering and security requirements needed in our environment."  Ratinoff Reply Decl., Ex. E; *see also id.*, Ex. F ("we're pursuing an open-source alternative (the same Neo4j source code but built and licensed separately) which bundles all the same features as the Neo4j enterprise version but without the costs"); *id.*, Ex. D at 65:18-67:21, 69:11-70:19, 73:21-74:3, 76:11-78:14, 80:10-83:9. | There is nothing in the evidence provided by plaintiff that "restrictions" had anything to do with the commons clause.  In fact Next Century mentions open source and free as being important to them, and this, for example,  could have led to them upgrading to ONgDB v3.5<br><br>Dkt. No. 98-1, ¶¶ 64 and Ex. 62;<br>**Are you aware that, unlike the commercial licensed options, the Neo4j Enterprise open source AGPL license does not place any restrictions on the number of cluster instances and cores?"** |
| | Fact 52: As result of Defendants' removal of Neo4j Sweden's CMI and false statements about the same, Neo4j USA lost a multi-year $2.2 million deal when the MPO chose ONgDB instead of paying for a subscription to Neo4j® EE.  Dkt. No. 118 at 29:19-30:6; Dkt. No. 98-3, ¶¶ 22-24 and Exs. 12-13.<br><br>**Additional Fact**: Next Century confirmed that the MPO chose ONgDB over Neo4j® EE based on not having to pay Neo4j USA for a license.  Ratinoff Reply Decl., Ex. D at 80:10-83:9, 85:11-88:3, 107:5-108:1, 110:11-111:24. | **DISPUTED** Defendants did not remove any "Neo4j Sweden's CMI" nor made any false statements about the same.  See Fact 14 above.<br><br>The commons clause does not prevent the MPO from using the software for free in their projects.  Next Century stated that cost and being open source were 2 important criteria.  There was another open source alternative to Neo4j called JanusGraph on the list of databases NextCentury was evaluating for the MPO.<br><br>No-where in the evidence provided by plaintiff does the MPO say they would have purchased Neo4j Enterprise if ONgDB was not available.<br><br>**"Q. And was this -- sorry. Strike that. What graph database technologies did Next Century consider for Task Order 39?**<br><br>**A. Several, including -- so there was -- Neo4j was one, Oracle was a second one, DataStax and JanusGraph were others that were the primary thrust. There were several others that I don't have the names of that -- that were also under initial consideration." See Ratinoff Decl., Ex. 5 at 29:19-30:1** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **"The analysis started with the teams reviewing other implementations of graph database technologies at the NSA and in other -- other applications to assess the performance, the security, lessons learned, <u>and costs</u> of the wide range of initial technologies under consideration.**" See Ratinoff Decl., Ex. 5 at 31:16-21 <br><br> **"** <br><br> **Q. All right. And did the NSA provide any guidance on -- on pricing for the graph database software or the -- strike that. Were you provided any instructions from on pricing considerations for the graph database software that was being considered?** <br> **A. The NSA asked us to provide an analysis alternatives that <u>considered cost as one of the many factors</u>, and we were tasked to provide -- not provide -- <u>to consider cost as one of the factors</u>.**" See Ratinoff Decl., Ex. 5 at 44:9-18 <br><br> **"** <br><br> **A. An alternative to the Neo4j Enterprise solution.** <br> **Q. And how was it an alternative?** <br> **A. <u>Similar features, less cost.</u>** <br> **Q. And when you say "less cost," there was no cost for a license to iGov's offering of Neo4j Enterprise, correct?** <br> **A. Not to my knowledge.** <br> **"** See Ratinoff Decl., Ex. 5 at 50:15-22 <br><br> It was clear that government preferred free, no cost and open source licenses over paid. <br><br> **"A. Our government customer was interested in open-source technologies.**" See Ratinoff Decl., Ex. 5 at 56:10-11 <br><br> Next Century was not even sure what the license ONgDB |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | came under. Plaintiff's attorney had to guide the answer.<br><br>"    **Q.  And what license did Next Century understand that ONgDB was distributed under?**<br>    A.  The -- (unintelligible.)<br>       THE REPORTER:  I'm sorry.  One more time?<br>       THE WITNESS:  GPLv3 license.<br>       BY MR. RATINOFF:<br>    Q.  AGPL Version 3; is that correct?<br>    A.  Yes."  See Ratinoff Decl., Ex. 5 at 59:10-17<br><br><br><br>On Jan 2019, Mr. Suhy had not even replaced the AGPL License file with the verbatim version.   See Fact #14 above.<br><br>"    **Q.  So as of January 2019, had Next Century been using ONgDB to the exclusion of Neo4j Enterprise?**<br>    A.  I don't know that it was to the exclusion of Neo4j.**<br>    Q.  But at that time, Next Century hadn't obtained an commercial license for a copy of -- or an installation of Neo4j Enterprise, correct?**<br>    A. Correct."  See Ratinoff Decl., Ex. 5 at 64:2-9<br><br><br>Suhy did not remove Neo4J Swedens' CMI. The CMI is FSF's copyrighted license. Neo4J was obligated to use only a compliant AGPL license and used false CMI instead. |
| **Defendants' Violation of the DMCA [17 U.S.C. § 1202(b)(3)]** | | |
| 1. the existence of CMI on the infringed work; | *See* Facts 1-9. | **DISPUTED** – See responses to Facts 1-9 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| 2. Defendants distributing that material knew that CMI had been removed or altered without authority of the copyright owner; and | *See* <u>Facts 10-18</u>. | **DISPUTED –** See responses to facts 14, 10-18 Defendants never distributed any material that had modifications to Neo4j Sweden's CMI.  In fact – the mirror downloads provided by Defendants had the full commons in the LICENSE files of the distribution.   Other than the mirrors, defendants only shared links to GFI and were not aware of any wrong doing. |
| | **Additional Fact**:  Suhy testified that when he created ONgDB v3.4 from Neo4j® EE v3.4, he replaced the Neo4j Sweden Software License found in LICENSE.txt files with "verbatim" copies of the AGPL thereby removing Neo4j Sweden's CMI.  Dkt. No. 98-1, Ex. 3 at 171:23-172:23; Ratinoff Decl., Ex. 1 at 199:14-201:16.  This is consistent with contemporaneous statements Suhy made to potential customers. *See, e.g.*, Dkt. No. 98-1, ¶ 27 and Ex. 25 (Check out https://graphfoundation.org [] All the Neo4j enterprise distributions we package from now on will come from the foundation and have the standard vanilla AGPLv3 open source license").  This is also consistent with Plaintiffs' inspection of ONgDB v3.4 around the time of its release in 2018.  Dkt. No. 98-2, ¶ 27. | |
| | **Additional Fact**:  The commit to the GitHub repository for ONgDB v3.5 cited by Defendants shows that Suhy replaced 28 LICENSE.txt consisting of the Neo4j Sweden Software License with LICENSE.txt consisting of generic copies of the AGPL, which deleted <u>all</u> of Neo4j Sweden's CMI in those files.  Dkt. No. 98-1, ¶ 41 and Ex. 39 (3/1/19 commit titled "Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license"); Dkt. No. 98-2, ¶ 30 (referencing same commit that replaced the 28 LICENSE.txt files). | |
| 3. Defendants knew or had reason to know that distributing works without CMI would "induce, enable, facilitate or conceal an infringement. | *See* <u>Facts 39-52</u>. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' Unclean Hands Defense** | | |
| 1. Defendants cannot establish that Neo4j USA's conduct is inequitable; and | <u>Fact 53</u>: On July 11, 2017, Neo4j USA notified the IRS that it had terminated its partnership with PureThink, and advised the IRS that PureThink was contractually restricted from providing support services for open source versions of Neo4j® software for 36 months.  Ratinoff Decl., ¶ 24 and Ex. 22. | **UNDISPUTED**<br>Note that the SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 54</u>: Despite Neo4j USA's warnings, the IRS continued to use Neo4j® EE for free under the AGPL and allowed Suhy to perform under PureThink's support contract.  Ratinoff Decl., Ex. 4 at 40:16-43:13; 55:10-59:24; 69:8-70:25, 78:5-16; *id.*, ¶ 27 and Ex. 25. | **UNDISPUTED**.  IRS was able to use Neo4j EE free both under the AGPL as well as under the AGPL with the commons clause.<br><br>Note that the PureThink SOW for the contract work did not require support of any of the graphs the platform could explore. |
| | <u>Fact 55</u>: Suhy specifically targeted the IRS to transition to iGov's Government Package for Neo4j, and as a result in late July 2017, the IRS invited iGov to provide a quote for a sole-source contract for the development and support of the CKGE, which used an open source version of Neo4j® EE software as a main component. Dkt. No. 171, ¶ 23; Ratinoff Decl., ¶ 27 and Ex. 25; *id.*, ¶ 28 and Ex. 26 (blue highlights at IGOV0001570513.001–IGOV0001570513.002); *id.*, Ex. 4 at 71:1-73:4.<br><br>**Additional Fact:** Prior to the award of the CKGE Contract, Suhy sent an email to the IRS stating, "[t]he current CKGE environment will require any potential vendor to provide 2 critical components 1) The Government Package / Suite for Neo4j and 2) professional services for continued development."  Ratinoff Decl., ¶ 32 and Ex. 30 (yellow highlight). | **DISPUTED** that CKGE used Neo4j EE or any other graph database as a "main component".  Out of the many components and services inside CKGE, only one the graph explorer even connected to a graph to allow for visual exploration.  See Suhy Decl., ¶ 5.<br><br>None of the references provided by Plaintiff show Neo4j EE as being a main component of CKGE.<br>"The CKGE framework includes a Neo4j's Enterprise Edition open-source version2, Elastic Search capabilities, and micro-services components useful for supporting graph-related research; " Ratinoff Decl., ¶ 28 and Ex. 26  at IGOV0001570513.001 |
| | <u>Fact 56</u>: It was immaterial to the IRS who was the contracting entity so long as Suhy was the individual providing them. Ratinoff Decl., Ex. 4 at 61:11-64:23. | **DISPUTED.**  Although IRS wanted to work with Mr. Suhy, the IRS had to properly procure the requirement under the FAR. Ratinoff Decl., Ex. 4 at 63:23-64:21 shows that Plaintiff's attorney tried to get IRS to make this statement but the IRS response was unclear and did not show that it was immaterial who the contracting entity was.<br><br>IRS was planning on competing the opportunity. "And |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | then we started a new procurement process for **new competition**" Ratinoff Decl., Ex. 4 at 69:23-25<br><br>"**A.  Yes.  It was a new procurement order that had started -- or was executed for sort of open competition.  I believe it was AA companies or small business companies originally, but it was open competition**, and it was awarded to eGov for professional services to work, you know, to further the development of CKGE." Ratinoff Decl., Ex. 4 at 74:4-10 |
| | Fact 57: On September 5, 2017, the IRS announced its intent to award a sole-source contract to iGov based on that quote. Dkt. No. 171, ¶ 23; Dkt. No. 98-2, ¶ 23. | **UNDISPUTED** |
| | Fact 58: Neo4j USA filed an official protest with the IRS, which the IRS agreed with Neo4j USA that it had improperly awarded the contract to iGov on a sole source basis and canceled it for that reason. Dkt. No. 98-2, ¶ 23; Dkt. No. 172-1, ¶¶ 5-7 and Ex. 3; Ratinoff Decl., Ex. 4 at 69:20-70:9, 71:1-74:1.  After cancelling the award to iGov, the IRS awarded iGov and Suhy the CKGE contract via eGov Sol.  *See* Facts 25-30. | **DISPUTED**<br>IRS did not award any contract to iGov and Suhy through eGov Sol.<br>eGovernment Solutions paid Mr. Suhy a salary for a range of services.<br><br>See Suhy Decl., ¶ 7<br>See fact 28 |
| 2. Defendants cannot establish that Neo4j USA's conduct relates to the subject matter of its Lanham Act claims. | Fact 59: Neo4j USA's alleged "bad acts" pertain to the licensing of Neo4j® EE.  *See* Dkt. No. 91 at 16:21-19:7.  However, Neo4j Sweden owns the copyright to Neo4j® EE and was licensor of that software under the GPL and AGPL, and not Neo4j USA. Dkt. No. 98-2, ¶¶ 3-4; Dkt. No. 118 at 2:11-16 (citing same). | See Fact 1 |
| | **Additional Fact:** Neo4j Sweden wholly owns the copyrights to and was the licensor of the 182 source code files release for the first time under the Neo4j Sweden Software License that are subject to the DMCA claim. *See* Additional Facts in Fact 1. | |
| | Fact 60: The GPL, AGPL and Neo4j Sweden Software Licenses are copyright licenses and not trademark licenses. Dkt. No. 85 at 7:27-8:7. | UNDISPUTED |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 61:** Neo4j Sweden release Neo4j® EE v3.4 (the first version subject to the more restrictive Neo4j Sweden Software License) in May 2018, and as a result, ceased licensing Neo4j® EE under the AGPL at that time. Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶¶ 11-12, Ex. 3. | **DISPUTED.** Neo4j EE v3.4 clearly stated its license was AGPL + commons clause. They did not "cease" licensing under AGPL.   Neo4j Sweden used the full AGPL preamble and called the License AGPL. They never called it  "Neo4j Sweden Software License" until the court case started. |
| | **Fact 62:** The inclusion of the Commons Clause in Neo4j® EE v3.4 does not amount to inequitable conduct because the Court already held that as the copyright holder Neo4j Sweden could license Neo4j® EE how it saw fit.  Dkt. No. 118 at 24:7-25:19, *aff'd* Dkt. No. 140 at 3. | **Objection**, this is not a fact, the law of the case doctrine does not apply to interlocutory orders. |
| | **Fact 63:** By May 2018, Neo4j® EE v3.4 included advanced scalability, availability, security, and operational features that were not previously available under the GPL or AGPL, and at least 182 files that were never released under either license. Dkt. No. 118 at 3:1-15; Dkt. No. 98-2, ¶¶ 6-7, 10-11; Dkt. No. 98-1, Ex. 38 at 6:22-7:1, 8:6-16:24. | DISPUTED  See Fact 61.The 182 files licensed under the AGPL + commons clause was still referred to as AGPL and had the full AGPL preamble. |
| | **Fact 64:** Defendants released ONgDB sometime in July 2018 and their promotion thereof amounted to trademark infringement, false advertising and false designation of origin in violation of the Lanham Act and UCL. *See* Dkt. No. 118 at 6:2-7 (citing Dkt. No. 98-1, Ex. 28); Dkt. No., 98-1, ¶ 26 and Ex. 24; Dkt. No. 118 at 18:2-32:14. | DISPUTED  Defendants did not release ONgDB.  The Graph Foundation did.  Beene Dec., Ex. 30. |
| | **Additional Fact:** Suhy was involved in the initial development of ONgDB, including making commits and developing solutions for that software. Ratinoff Reply Decl., Ex. B at 82:20-25.  On July 9, 2018, Suhy told a potential sponsor of GFI that they had ***assigned*** to GFI the "Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS and most likely DHS."  Dkt. No. 98-1, ¶ 26 and Ex. 24. | |
| | **Fact 65:** Neo4j Sweden ceased its dual licensing model under the GPL and AGPL in ***May 2018*** and Neo4j USA's alleged false statements about the IRS needing to obtain a commercial license for Neo4j® EE were made before ***October 2017***.  *See* Ratinoff Decl., Ex. 65 at 14:9-15:28, 17:1-27:7; *see also* Dkt. No. 118 at 3:17-4:22; Dkt. No. 177 at ¶¶ 20-21. | DISPUTED – In May 2018 Neo4j released enterprise under AGPL with the commons clause.  After v3.4 – the source code clearly showed that it was using the AGPL license with commons along with the full AGPL preamble.<br><br>See Suhy Decl., Exs 1-8 |
| **PureThink's Claim for Breach of Exclusivity Contract** | | |

4853-5930-0200.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 1. No enforceable contract existed; | **Fact 66:** There is no contract consented to or signed by Neo4j USA giving PureThink ownership rights in the Gov't Edition, the right to be paid for the development thereof, or the right to be compensated for that development work upon termination.  Instead, Suhy repeatedly told Neo4j USA – both before and after April 11, 2015 – that the Gov't Edition was a "concept" for PureThink to bypass protracted mandatory competitive bidding processes and take advantage of a faster sole-source procurement track.  Dkt. No. 98-1, ¶¶ 7-8 and Exs. 5-6; Ratinoff Decl., ¶¶ 8, 10, 12-14, 17, 19 and Exs. 6, 8, 10-12, 15, 17 (yellow highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4. Consequently, this is not competent evidence of mutual assent to an alleged "exit agreement" because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding.  *See Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.,* 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind).<br><br>**Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296–97 (1970) (refusing to admit "negotiations" after the date on which "the parties had reached a stage of clear disagreement on the crucial question"); *accord Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (recognizing that the principle of "practical construction" only applies to acts before any dispute has arisen) (citing same). | **UNDISPUTED** that PureThink did not have ownership rights to the Government Edition.  The Exclusivity agreement was designed to ensure Neo4j Inc had the proper rights to make business decisions, while still protecting PureThink's investment.<br><br>**DISPUTED**  The Government Edition Exclusivity agreement had an "exit agreement" that was designed to protect PureThink's investment and ensure PureThink would recognize a return on investment and be compensated in an "exit" situation ("Exit Agreement").<br><br>Until the exit clause algorithm could be put down in writing, Neo4j Inc and PureThink agreed that all decisions relating to the Government Edition and the Government Edition Exclusivity agreement would have to be agreed on unanimously by both parties. ("unanimous agreement") See Suhy Decl., ¶ 10.<br><br>Mr. Suhy's references the "unanimous agreement" requiring unanimous approval in communications with Neo4j.<br><br>"**Neo Technology can request to revoke exclusivity and assign to another company.**" Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl., Ex. 13, green highlights<br><br>The Government Edition is not just a concept.  It is a software product combined with services which were specifically designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs.<br><br>Adron Decl.,  Exs. 14, 15<br><br>"**Neo4j US Government Edition is an "officially sponsored" package of offerings strategically designed to** |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | drive Neo4j adoption in the US Government market by drastically cutting overall cost of ownership, addressing critical government specific requirements, providing an efficient sole source path (sole source), and more…" Suhy Decl., Ex. 16

"**Purpose of US Government Edition**

**Why the approach of defining a new edition compared to other approaches? This approach lowers the barrier of entry for Neo4j into the archaic us government market. How?**

**- Fast, Efficient Procurement (Sole source - no timely competitive procurements.) This has already been proven - every US Government sale has been through sole source.**

**- Drastically cuts down the total cost of ownership for an agency by addressing FISMA via features and support. Infact, this also applies to the community edition. The total cost of ownership for Neo4j Community Edition compared to Neo4j Government Edition can now be compared because of the high costs of FISMA. (This is one focus we address during the sales cycle - when a lead agency is considering the community edition, ignoring all the enterprise benefits they receive.)"** Suhy Decl., Ex. 16

Adron Decl., Ex. 18

**UNDISPUTED** that Neo4j USA had the ownership rights of the Neo4j Government Edition.    The government edition was built for Neo4j Inc under the government edition exclusivity agreement.

-------- |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **UNDISPUTED** that Neo4j USA had the ownership rights of the Neo4j Government Edition.   The government edition was built for Neo4j Inc under the government edition exclusivity agreement.  In return for Neo4j USA owning the software and benefiting from the business plan, an "exit agreement" was in place to ensure a return on investment would be recognized by PureThink that addressed re-assignment, retirement, or termination.  Suhy Decl., ¶ 10 |
| | Fact 67: Suhy told third parties Gov't Edition was only created for sole-source justification.  Ratinoff Decl., ¶ 16 and Ex. 14 (yellow highlights). | **DISPUTED**<br><br>The government edition was created to address more than just sole source justification.  It was created to address requirements that the US Government needed and which Neo4j Enterprise did not have.   The ability to sole source was one important aspect,  but not the only reason for creating the government edition.  See Fact 66 above. |
| | Fact 68: The letter purporting to be a separate agreement between Neo4j USA and PureThink was simply the means for PureThink to establish sole source justification. Dkt. No. 98-1, ¶ 8 and Ex. 6; Ratinoff Decl., ¶¶ 14, 18-19 and Exs. 12, 16-17 (yellow highlights). | **DISPUTED**<br>The agreement between PureThink and Neo4j USA was specifically focused on exclusivity around the Neo4j Government Edition.   The agreement itself protected PureThink's investment into the Government Edition and ensured it could see a return on the investment.  The agreement also allowed for sole source justification, but that was not its sole purpose.<br>See Fact 66. |
| | Fact 69: Suhy repeated confirmed and assured Neo4j USA that it owned the intellectual property making up the Gov't Edition, as well could terminate PureThink as the exclusive reseller *at any time and for any reason*. Dkt. No. 98-1, Ex. 6 (yellow highlights); Ratinoff Decl., ¶¶ 9-10, 14, 17, 19 and Exs. 7-8, 12, 15, 17 (green highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] | **UNDISPUTED** that Neo4j USA owned the intellectual property making up the Gov't Edition.  Under the Neo4j Government Exclusivity Agreement, PureThink built the Government Edition for Neo4j as part of the agreement.<br><br>**DISPUTED** that Neo4j USA could terminate PureThink as the exclusive reseller at any time and for any reason.<br><br>PureThink and Neo4j Inc agreed that until the exit agreement would be written down, both PureThink and Neo4j USA had to both fully agree on any changes to the Government Edition |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4. Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding. *See Stanford Hosp. & Clinics*, 2008 WL 5221071, at *7.<br><br>**Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court." *See Warner Constr.*, 2 Cal.3d at 296–97 (1970); *accord Wolsey, Ltd.*, 144 F.3d at 1210. | and the agreement which included revoking, retirement, re-assignment, or termination of any kind.  This was done to protect the investment PureThink was making into the Government Edition Exclusivity agreement.<br><br>See Fact 66.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl Ex. 13, green highlights |
| | Fact 70:  Consistent with his prior representations, Suhy sent proposed language for the external and internal versions of the sole-source justification letters to Neo4j USA on April 10, 2015, with the internal version stating "Neo Technologies has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 10 and Ex. 8 (green highlight); *see also id*., ¶ 9 and Ex. 7 (green highlights).<br><br>**Additional Fact:** There is no evidence cited establishing that the parties agreed to drop the language that Neo4j USA could cancel at any time for any reason.  Rather, as demonstrated by the internal April 11, 2015 letter that was returned with Mr. Nordwall's signature contained this language. *See* Ratinoff Decl., ¶ 11 and Ex. 9.  After Neo4j USA returned the signed letters for a second time, Suhy acknowledged receipt and assured Neo4j USA that he would be signing.  Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H.<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4. Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same | **UNDISPUTED** that Suhy sent proposed language for an internal version of the agreement, which  stated that the agreement could be canceled at any time for any reason. However, this language was dropped and was not executed. See Fact 66<br><br>**DISPUTED** that there were prior representations relating to being able to cancel the agreement at any time.  The exhibits referenced by plaintiff were the first documents related to the planning of the government edition.  Mr. Suhy proposed this language, but that was dropped after speaking to Mr. Tim Brown, who pointed out that having that in there without a corresponding exit agreement would not make sense.<br><br> "I am sending it to Tim Brown who is our Govt procurement expert to see if the version we send to them is suitable." Ratinoff Decl., ¶ 9 and Ex. 7<br><br>After a discuss with Neo4j Inc, the wording to cancel the exclusivity agreement at any time for any reason was never signed or executed.<br><br>The only exclusivity agreement signed and executed had no mention of being able to cancel.  Furthermore, the same |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | understanding.  *See Stanford Hosp. & Clinics*, 2008 WL 5221071, at *7.<br><br>**Additional Fact/Objection:** The June 20, 2017 email (Beene Decl., Ex. 13) cited by Defendants does not establish that Neo4j USA was required to obtain PureThink's consent before termination.  It was sent more than two years after the alleged formation of the exclusivity agreement in response to Neo4j USA's discontinuation of Neo4j Gov't and in anticipation of litigation: "I believe our contract requires us to be part of the decision to retire it…. Of course I am assuming you don't agree to this, so just another thing to add to the list for court."  *See Warner Constr.*, 2 Cal.3d at 296–97 (1970); *accord Wolsey, Ltd.*, 144 F.3d at 1210. | exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl., Ex. 20<br><br>Until the exit agreement was written down, Neo4j and PureThink agreed that any changes to the agreement would require both parties to approve until the exit agreement was written down.<br><br>"**Neo Technology can request to revoke exclusivity and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>Adron Decl.,  Ex. 13 |
| | Fact 71: The internal version of the April 11, 2015 sole-source letter signed by Lars Nordwall on behalf of Neo4j USA expressly stated that "Neo Technology has the right to cancel this exclusivity agreement at any time and for any reason."  Ratinoff Decl., ¶ 11 and Ex. 9 (green highlight). | **DISPUTED**<br>An internal version of the sole source letter was never executed or agreed upon.<br><br>Ratinoff Decl., ¶ 11 and Ex. 9 simply shows 2 documents sent to Mr. Suhy for review but not executed on behalf of PureThink.<br><br>Mr. Suhy did not agree or sign the document stating that exclusivity agreement could be canceled.<br><br>The only exclusivity agreement signed and executed had no mention of being able to cancel.   Furthermore, the same exclusivity agreement was re-signed on June 23rd, 2016, a year later, with no mention of being able to cancel.   See Suhy Decl.,  Ex. 20<br><br>See fact 66, 70. |
| | Fact 72: The internal version of the April 11, 2015 letter signed by Neo4j USA omitted Suhy's proposed language "[t]his agreement supersedes any other agreements."  *Compare* Ratinoff Decl., ¶ 10 and Ex. 8 (red highlight) *and id.*, ¶ 11 and Ex. 9 at p. 3. | **DISPUTED**<br>The document was not executed by Mr. Suhy or PureThink.<br><br>See fact 71. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 73:</u> Erik Nolten of Neo4j USA shared the same understanding that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as an exclusive reseller thereof any time and for any reason based on Suhy's representations made before April 11, 2015 (Ratinoff Decl., ¶¶ 8-10 and Exs. 6-8) and from the express language of the sole-source letters signed by Lars Nordwall (*id.,* ¶ 15 and Ex. 13). | **DISPUTED**  The executed agreements, both signed on April 11th, 2015 then on June 23rd, 2016 (Suhy Decl., Ex. 20 ) do not say anything about being able to cancel the exclusivity agreement.<br><br>Ratinoff Decl., ¶ 15 and Ex. 13 simply shows Erik Nolten sending unsigned documents to Charles Fischer on July 31st, 2015. |
| | <u>Fact 74:</u> After meeting with Neo4j's new Vice President of Strategic Alliances and Channels, John Broad, in October 2015, Suhy prepared documents for him reconfirming that Neo4j USA owned the Gov't Edition and had the right to cancel PureThink's status as the exclusive reseller thereof any time and for any reason.  Ratinoff Decl., ¶ 17 and Ex. 15 (green highlights).<br><br>**Additional Fact/Objection:** The October 26, 2015 email and attachment (Ratinoff Decl., Ex. 15) cited by Defendants was sent by Suhy over six months after the parties allegedly entered into the exclusivity agreement to John Broad, who had just joined Neo4j USA and thus was not privy to any prior discussions relating thereto (Ratinoff Reply Decl., ¶ 11 and Ex. I).  Suhy described the attachment as something he just wrote to "lay[] out some concepts … from PureThink's perspective." Ratinoff Decl., Ex. 15 pp. 1, 4.  Consequently, this is not competent evidence of mutual assent because at most it merely establishes Suhy's state of mind, while Defendants fail offer evidence that Neo4j USA had the same understanding. *See Stanford Hosp. & Clinics,* 2008 WL 5221071, at *7. | **DISPUTED**<br>Nowhere in the email referenced in Ratinoff Decl., ¶ 17 and Ex. 15 does it say anything about Neo4j USA having the right to cancel PureThink's status as exclusive reseller any time or any reason.   It in fact highlights that the "unanimous agreement" was in place. Mr. Suhy told Mr. Broad – that Neo4j could request to revoke and assign to another company.   The agreement was specifically designed to ensure both parties had to agree.<br><br>"**Neo Technology <u>can request to revoke exclusivity</u> and assign to another company**." Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 2 under Important Concepts.<br><br>**UNDISPUTED** that Neo4j USA owned the Government Edition.<br>See fact 66. |
| 2. PureThink's performance or excuse for nonperformance; | <u>Fact 75:</u>  In conjunction with terminating the Gov't Edition on June 19, 2015, Neo4j USA informed PureThink that it was "no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition."  Ratinoff Decl., ¶ 21 and Ex. 19. | **DISPUTED**:  The Government Edition was discontinued, not terminated on June 19th, 2015.<br><br>Ratinoff Decl., ¶ 21 and Ex. 19 "Neo4j is hereby providing notice that Neo4j is **discontinuing Neo4j Government Edition..**"<br><br>**UNDISPUTED** that Neo4j USA sent an email stating that PureThink was no longer authorized to market, resell, demonstrate or provide training on the Neo4j Government Edition. |

4853-5930-0200.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 76:** Suhy acknowledged the termination of the Gov't Edition and agreed to remove all references from PureThink's website.   Ratinoff Decl., ¶¶ 22 and Ex. 20. | **DISPUTED**<br>The Government Edition was discontinued, not "terminated". See Fact 75.<br><br>Mr. Suhy's email referenced in Ratinoff Decl., ¶¶ 22 and Ex. 20. Simply states:  "We are removing references from the website.  It hurts you guys as well but it does no good leaving it up as of now.  There is no acknowledgement or acceptance of any of Neo4j's actions as PureThink did not agree to this as was required in the Neo4j Government Exclusivity agreement.<br><br>**UNDISPUTED** that Suhy removed the references on the website. |
| | **Fact 77:**  After Neo4j USA terminated the SPA, Defendants targeted same federal agencies that PureThink previously solicited under the SPA by offering "Government Packages for Neo4j."  Dkt. No. 118 at 4:24-5:20 (citing Dkt. No. 98-1, Exs. 14-19). | **DISPUTED** that Neo4j USA terminated the service provider agreement (SPA).<br><br>The Government Packages for Neo4j were not the same packages that PureThink offered. |
| | **Fact 78:**  iGov's "Government Packages for Neo4j" included the same framework and FISMA security add-ons the Gov't Edition.  Ratinoff Decl., ¶ 23 and Ex. 21; *id.*, ¶¶ 25-26 and Ex. 23-24.  The only difference was it included Neo4j® EE for free under the AGPL.  *Id.* | **DISPUTED** – Though originally in the marketing material, the Government Package for Neo4j did not ever bring anything over from PureThink or the Government Edition. Though this was originally the plan, it was never executed. The Government Packages for Neo4j were never sold.<br><br>See Suhy Decl., ¶ 11 |
| | **Additional Fact**: Despite admitting "Neo4j USA owned the intellectual property making up the Gov't Edition," PureThink, continued to support the IRS's use of the Gov't Edition after Neo4j USA discontinued the Gov't Edition and terminated the PSA.  *See* Fact 68; Ratinoff Decl., ¶¶ 27, 29 and Exs. 25, 27 (yellow highlights).  iGov also told the IRS it intended to continue the use that same intellectual property under the CKGE Contract.  *See* Ratinoff Decl., ¶ 30 and Ex. 28. | |
| | **Fact 79:**  On July 11, 2017, the same day Neo4j USA terminated the SPA, | **DISPUTED** the emails referenced in Ratinoff Decl., ¶¶ 25- |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Suhy emailed government contractors and agencies confirming that iGov was reusing the framework and add-ons developed for the Gov't Edition (contrary to his prior admissions that Neo4j USA owned them). Dkt. No. 98-1, ¶ 14 and Ex. 12; Ratinoff Decl., ¶¶ 25-26 and Exs. 23-24. | 26 and Exs. 23-24.  Only show what was planned.  The plan was scrapped however and no packages were ever sold. |
| | <u>Fact 80:</u>  Defendants made clear on iGov and PureThink's websites that the "Government Package for Neo4j" was from the same "principle" behind PureThink and Gov't Edition. Dkt. No. 98-1, Exs. 14-15. | **UNDISPUTED** – The same "principle" behind PureThink and the Gov't Edition was John Mark Suhy. |
| | <u>Fact 81:</u>  Suhy and PureThink formed iGov to evade the restrictions in the Partner Agreement.  Dkt. No. 98-1, ¶ 13 and Ex. 11; *id.*, ¶¶ 16-17 and Exs. 14-15 ("The principle behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses!"); Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6. | **DISPUTED**:  iGov did not need to evade any restrictions, as it was not part of the "partner agreement" also known as "service provider agreement (SPA)". There are no terms in the SPA / partner agreement which forbid Mr. Suhy from creating a new company that would not be restricted by the SPA.  Note: Plaintiff's using the term. "partner agreement" here, but in Fact #77 above, they use the term "SPA". |
| | <u>Fact 82:</u>  iGov thereafter operated as PureThink's successor-in-interest. Ratinoff Decl., ¶ 27 and Ex. 25 ("[S]ince iGov Inc has no limitations on supporting or providing services for Neo4j Enterprise open source licenses, we can just have iGov Inc. assume over all [PureThink's] obligations of the current contract now instead of waiting for the next procurement. Nothing would change, we would have the same team, locations and keep working as we always have."); Ratinoff Decl., Ex. 27 ("US Treasury has decided to make the move to our new company iGov Inc and the new Government Packages for Neo4j Enterprise"); *id.*, ¶¶ 29-30 and Ex. 27-28 (yellow highlights); Dkt. No. 98-1, ¶¶ 13, 16-17 and Exs. 11, 14-15; *see also* Facts 17, 77-80. | DISPUTED:  iGov was not PureThink's successor-in-interest. iGov was created from scratch and no assets, or IP was transferred from PureThink.  Mr. Suhy was the only member of both companies at the time. |
| | <u>**Additional Fact:**</u> Suhy admitted to forming iGov to evade the restrictions in the PSA imposed on PureThink. Dkt. No. 98-1, Exs. 11, 14-15; accord Dkt. No. 118 at 24-5:7 (citing same); Dkt. No. 177 at 10:3-6.  Suhy also informed the IRS that iGov was effectively PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. See Ratinoff Decl., Ex. 25, 27-28 (yellow highlights).  Defendants further admit that Suhy is the sole shareholder of both Purethink and iGov, which is consistent with his representations to the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. | |
| | <u>Fact 83:</u> Defendants continued to actively market "Government Package for Neo4j" until they released ONgDB. Dkt No. 118 at 4:24-5:20 (citing | **DISPUTED** Defendants did not release ONgDB.  The Graph Foundation |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Dkt. No. 98-1, Exs. 14-19, 21, 62-64, 67-69); Dkt. No. 118 at 19:13-20:24.<br><br>**Additional Fact/Objection:** There is no evidence to support Defendants' statement. Suhy was involved in the initial development of ONgDB, including making various commits and developing various solutions for that software. Ratinoff Reply Decl., Ex. B at 82:20-25. On July 9, 2018, Suhy told a potential sponsor of GFI that they had ***assigned*** to GFI the "Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS and most likely DHS." Dkt. No. 98-1, ¶ 26 and Ex. 24. | is the owner of ONgDB and responsible for its development and release.<br><br>Though the graph foundation was once part of the case, it has since settled with plaintiff and is no longer part of the case.<br><br>Mr. Suhy is only one of several volunteer committers and has no control or official position with the Graph Foundation. |
| 3. Neo4j USA did not breach the alleged exclusivity agreement; and | <u>Fact 84:</u> Assuming a separate exclusivity agreement existed, Neo4j USA had the unfettered right to discontinue the Gov't Edition and terminate PureThink as its exclusive reseller without cause and without compensating PureThink. *See* Facts 69-74.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence of Neo4j USA consented to an "exit agreement" requiring it to obtain PureThink's consent to discontinue the Gov't Edition. *See* Fact 66. | **DISPUTED**.<br>Neo4j USA had to get PureThink's agreement to make any changes which would have included cancellation, retirement, discontinuation, or any other activities that could risk the investment and expected return on the investment PureThink had.<br><br>See Fact 66. |
| 4. There are no resulting damages to PureThink. | <u>Fact 85:</u> PureThink could not have suffered $1.3 million in damages since the IRS ultimately awarded the CKGE contract for the same amount to its successor-in-interest iGov via eGovernment Solutions in order for it to continue developing the CKGE the framework that PureThink had started with the Gov't Edition under the prior contract. *See* Facts 25-30.<br><br>**Additional Fact:** Suhy told the IRS that iGov was acting as PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. See Ratinoff Decl., Ex. 25, 27-28 (yellow highlights).  Defendants also admit that Suhy is the sole shareholder of PureThink and iGov, which is consistent with what he told the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. | DISPUTED<br>iGov is not the successor in interest to PureThink.<br><br>IRS did not award anything to iGov.<br><br>eGovernment  Solutions paid Mr. Suhy a salary, the revenue from IRS was not passed through to iGov.<br><br>See Suhy Decl., ¶ 7<br>See fact 28 |
| | <u>Fact 86:</u>  PureThink did not maintain any time sheets that could support their claim that PureThink "spent an equivalent to $650,000 to design, develop, and build" the Gov't Edition.  Ratinoff Decl., Ex. 2 at 173:15-177:17.<br><br>**Additional  Fact:** Suhy speculated that PureThink might have other | **DISPUTED**<br>PureThink told Neo4j that they would be working full time on the Government Edition.  Full time means at or over 40 hours a week. See Adron Decl., Ex. 17 |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | records reflecting time he spent allegedly working on the Gov't Edition, but could not specifically identify them.  Ratinoff Decl., Ex. 2 at 173:15-178:24.  Defendants did not produce such records during discovery and do not attach any to their opposition. | |
| | <u>Fact 87:</u> PureThink's financial statements showed it did not incur any expenses or overhead for the development of the Gov't Edition.  Ratinoff Decl., Ex. 2 at 59:6-63:15; *id.,* ¶¶ 68-69 and Exs. 66-67.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence showing that PureThink "reinvested" any revenue into developing the Gov't Edition, and confirm that PureThink's financial statements do not show the alleged "reinvestment" made and expenses incurred in having Suhy allegedly work on the Gov't Edition. The fact that PureThink is an s-corporation, by definition, means Suhy as the sole shareholder is the receipt and beneficiary of all income received by PureThink.  *See* 26 U.S.C. §§ 1361, 1366. | DISPUTED – PureThink is a single person company filing as an s-corporation for tax purposes.  All the money remaining was invested into building the Government Edition by paying Mr. Suhy for his focus.   The references in Exs 66-77 do not reflect the expenses which came in the form of paying Mr. Suhy to focus full time on the Government Edition.<br><br>**"The partner fees we receive from non-partner government sales help support these initiatives - they are not looked at as 'commissions'. For example - as government adoption grows and many more sales come in - we understand if the fees must be cut to help drive your growth - and since the <u>fees only go towards 'funding' our execution of the initiatives</u>. They are not part of our future business modeling outside of operating costs. "** Ratinoff Decl., ¶ 17 and Ex. 15 page 4 paragraph 1 under Important Concepts.<br><br>PureThink's re-invested its money and time into building out the government edition.<br>**"Unlike other partners, we plan on re-investing revenue from the partner fees made from sales to help drive the expansion and adoption of Neo4j in the US Government. This is a key differentiator between us and other partners."** See Suhy Decl., Ex. 19 |
| | <u>Fact 88:</u> PureThink did not spend any money to develop the Gov't Edition.  Ratinoff Decl., Ex. 2 at 170:10-171:13.<br><br>**Additional Fact/Objection:** Defendants fail to offer competent evidence showing that PureThink "reinvested" any revenue into developing the Gov't Edition, and confirm that PureThink's financial statements do not show the alleged "reinvestment" made and expenses incurred in having Suhy allegedly work on the Gov't Edition. *See* Fact 86. | **DISPUTED**<br>PureThink reinvested the revenue from the partner fees into developing the government edition and performing the tasks required to uphold PureThink's side of the agreement.  The money paid Mr. Suhy to focus full time on the Government Edition.<br><br>See fact 87. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 89**: Suhy used PureThink's work product from the Gov't Edition for iGov's "Government Packages for Neo4j." Ratinoff Decl., Ex. at 186:14-24; *id.*, ¶¶ 25-26 and Exs. 23-24 ("We've simply taken the framework and services that made a Neo4j Enterprise (Commercial only) into Neo4j Government Edition and made them available as a stand alone package we call (Government Package for Neo4j)"); *id.*, ¶¶ 29-20 and Exs. 27-28. | **DISPUTED** Suhy did not use PureThink's work product from the Government Edition for iGov's "Government Packages for Neo4j". The statements made were incorrect and iGov never used any work product from the Government Edition, nor did iGov ever sell any of these packages.<br><br>See fact 78<br>See Suhy Decl., ¶ 11 |
| | **Additional Fact**: Despite admitting "Neo4j USA owned the intellectual property making up the Gov't Edition," PureThink, continued to support the IRS's use of the Gov't Edition after Neo4j USA discontinued the Gov't Edition and terminated the PSA. *See* Fact 68; Ratinoff Decl., ¶¶ 27, 29 and Exs. 25, 27 (yellow highlights). iGov also told the IRS it intended to continue the use that same intellectual property under the CKGE Contract. *See* Ratinoff Decl., ¶ 30 and Ex. 28. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| **Defendants' did not violate the DMCA [17 U.S.C. § 1202(b)(1)]; [17 U.S.C. § 202(b)(3)]** | | |
| | **Fact 90:** Neo4J does not license the commercial product under the AGPL. Beene Dec. Ex 26 | **UNDISPUTED**: Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and for free under the AGPL. Dkt. No. 118 at 3:7-9 (citing Dkt. No. 98-2, ¶ 8). As of May 17, 2018, Neo4j stopped licensing Neo4j® EE under the AGPL. Dkt. No. 118 at 3:9-12. |
| | **Fact 91:** The Amended and Restated License Agreement which Neo4J Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | **UNDISPUTED**: However, this is not a material fact that is relevant to Plaintiffs' DMCA claim. |
| | **Fact 92:** The Amended and Restated License Agreement which Neo4J | **UNDISPUTED**: However, this is not a material fact |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | Sweden licensed Neo4J software to Neo4J USA is not an AGPL license. Been Dec. Ex. 28 | that is relevant to Plaintiffs' DMCA claim. |
| | <u>Fact 93</u>: the Amended and Restated License Agreement required NEO4J USA to comply with all third party software licenses including licenses approved by the Open Source Initiative such as the AGPL. Beene Dec. Ex 28, Section 2.1.3. | **DISPUTED**: This is a legal argument and conclusion, and is not a material fact relevant to Plaintiffs' DMCA claim.  Neo4j Sweden is the licensor under the Neo4j Sweden Software License, which contains the only CMI subject to the DMCA claim. *See* Dkt. No. 98-2, ¶¶ 3-4, 11 and Ex. 3; Dkt. No. 118 at 2:15-18. |
| | <u>Fact 94</u>: Neo4J does not own all the code to Neo4J software. Beene Dec. Ex 27. Since Neo4J Sweden does not own the complete code, licensing it to Neo4J USA with a non GPL/AGPL license is a violation of the AGPL. Beene Dec., Ex. 33, Kuhn Expert Report ¶¶99-107. Suhy Dec. Exs. 6, 21. | **DISPUTED**: This is not a material fact that is relevant to Plaintiffs' DMCA claim.  *See Echostar Satellite, L.L.C. v. Viewtech, Inc*., 543 F. Supp. 2d 1201, 1205 (S.D. Cal. 2008) ("Nothing in the DMCA limits standing to the copyright owner"). Defendants further admit "Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE." *See* Fact 15; *accord* Dkt. No. 118 at 2:16-18 ("Neo4j Sweden owns of all copyrights related to the Neo4j graph database platform, including the source code"). Moreover, the alleged DMCA violation is Defendants' unauthorized removal of CMI from 28 copies of the Neo4j Sweden Software License that governed 182 source code files in Neo4j® EE.  Dkt. No. 90 at ¶¶ 76-78, 166-173; Dkt. No. 183 at 6:18-7:4, 9:27-10:10.  In that regard, it is undisputed Neo4j Sweden owns the copyright to and released those 182 files for the first time under the Neo4j Sweden Software License. Fact 13; Dkt. No. 98-1, Ex. 38 at 6:23-16:24. |
| | <u>Fact 95</u>: Neo4J told the IRS they could only use the AGPL version if they made the project open in violation of the terms of the AGPL. Suhy Dec. Exs. 22, 23 | **DISPUTED:**  This is not a material fact that is relevant to Plaintiffs' DMCA claim, which is based on Defendants' violations that occurred after May 2018. *See* Facts 4-15. The communications cited by Defendants occurred on April 4, 2017, and thus pre-date and do not bear any relationship to Neo4j Sweden's subsequent release of Neo4j® EE v3.4 under the Neo4j Sweden Software License in May 2018.  *See* Facts 4, 7. |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 96: The Fair Trade License document is a misrepresentation of the terms of the AGPL. Suhy Dec. Exs. 22, 23. Under the AGPL, anyone is licensed to use the software. The obligation to provide modified source code is only on conveyance. AGPL sections 2, 5 and 6. Suhy Dec., Ex 6. | DISPUTED: This is a legal argument, and is a not a material fact that is relevant to Plaintiffs' DMCA claim, which is based on Defendants' violations that occurred after May 2018. *See* Facts 4-15.  The cited Fair Trade License document is from 2012 and the referenced communications are from April 2017, and as a result do not bear any relationship to the subsequent release of Neo4j® EE under the Neo4j Sweden Software License. *Compare* Suhy Decl., Exs. 22-23 *and* Dkt. No. 98-2, ¶¶ 11-13. |
| | Fact 97: There is no obligation under the AGPL to make use of Neo4J software an open project. AGPL, Suhy Dec., Ex 6. | DISPUTED: This is a legal argument, and is a not a material fact that is relevant to Plaintiffs' DMCA claim and Suhy's removal of Neo4j Sweden's CMI. Defendants do not cite to this "fact" in their opposition. It is also unclear what Defendants mean by "to make use of Neo4J software an open project." |
| | Fact 98: The AGPL trademark is owned by FSF. AGPL, Suhy Dec., Ex 6. | DISPUTED: This is not a material fact that is relevant to Plaintiffs' DMCA claim.  The Court previously rejected "'the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional restriction in its own copyright license.'" Dkt. No. 118 at 24:16-25:12, *quoting Neo4j, Inc. v. Graph Found.*, Inc., No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *4 (N.D. Cal. Nov. 13, 2020), *aff'd* Dkt. No. 140. |
| | Fact 99: The license grant to use AGPL license restricts changes:  AGPL "Everyone is permitted to copy and distribute verbatim copies of this license Document, but changing is not allowed." Suhy Dec., Ex 6. | DISPUTED: This is a legal argument that the Court previously rejected. Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | Fact 100: Neo4J Sweden violated the AGPL by changing the AGPL adding the commons clause. Suhy Dec., Ex 6. | DISPUTED: This is a legal argument and conclusion that the Court previously rejected.  Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 101**: Neo4J Sweden inclusion of the commons clause violated FSF' AGPL license terms. Suhy Dec., Ex 6. | **DISPUTED:** This is a legal argument and conclusion that the Court previously rejected. Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| | **Fact 102**: Neo4J USA failed to provide verbatim copies of the AGPL license with its commercial license as required under the AGPL section 4.  Suhy Dec. Exs. 6, 24; Beene Ex. 26 | **DISPUTED:** This is a legal argument that the Court previously rejected. Dkt. No. 100 at 27:18-29:23; Dkt. No. 118 at 24:16-25:19, *aff'd* Dkt. No. 140. |
| **Plaintiffs Acted With Unclean Hands** | See Facts 90-102 | *See* Facts 90-102 |
| | **Fact 103:** No communication shows Neo4j, Inc. advised the PTO they did not own the NEO4J Trademark or change the date of first use. Suhy Dec., ¶15 | **DISPUTED:**  This is not a material fact.  The Court already dismissed/struck with prejudice Defendants' counterclaim and affirmative defense based on Neo4j USA allegedly misrepresenting the date of first use and its ownership of the Neo4j Mark.  Dkt. No. 70 at 8:4-18. The Court further held that Defendants could not base *any* affirmative defense on such facts. Dkt. No. 110 at 5:16-6:4.  Moreover, as affirmed by the Ninth Circuit, Neo4j USA was and is the owner of the Neo4j Mark for purposes of registration in the United States.  Dkt. No. 118 at 11:16-12:26, 13:18-18:1 *aff'd* Dkt. No. 140. |
| **Neo4j USA Breached the Exclusivity Agreement** | | |
| | **Fact 104:** Neo4j consented to an Exclusivity Agreement with PureTink LLC. Suhy Dec., Ex. 20 | **DISPUTED:** This is a legal conclusion unsupported by competent evidence of Neo4j USA's consent to the terms described in the Suhy Declaration. Suhy told Neo4j USA that the alleged exclusivity agreement consisted of <u>two</u> letters: "one that we give to agencies on your letterhead [], and 1 between us that says you can cancel at any time for any reason." Ratinoff Decl., Ex. 7 (green highlights). Suhy sent proposed drafts of those letters in an April 10, 2015 email where the internal letter stated "[Neo4j USA] has the right to cancel this exclusivity agreement at any |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | | time and for any reason." *Id.*, Ex. 8 (green highlights). Consistent with Suhy's representations, Neo4j USA signed two letters on April 11, 2015 with the internal letter containing provision giving Neo4j USA the unilateral and unconditional right to cancel the arrangement. *Id.*, Exs. 9, 13. After Neo4j USA returned the signed letters for a second time, Suhy acknowledged receipt and assured Neo4j USA that he would be signing. Ratinoff Reply Decl., ¶¶ 9-10 and Exs. G-H. |
| | Fact 105: The Exclusivity Agreement was separate from the SPA. Beene Dec. Ex 31, Deposition of John Mark Suhy, 43:17 – 45:3 | **DISPUTED:** Defendants fail to cite to competent evidence establishing that Neo4j USA understood that there was an enforceable exclusivity agreement separate from the SPA and consented to the same, which is necessary to establish mutual consent. *See Stanford Hosp. & Clinics v. Multinat'l Underwriters, Inc.*, 2008 WL 5221071, at *7 (N.D. Cal. Dec. 12, 2008) (finding no mutual consent to oral agreement because plaintiff only offered evidence of its own state of mind); *see also Hohs v. Allstate Ins. Co.,* 2010 WL 11706760, at *5-6 (N.D. Cal. Feb. 10, 2010); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, 2011 WL 1195680, at *3-5 (C.D. Cal. Mar. 29, 2011). |
| | Fact 106: The Exclusivity Agreement was subject to an exit clause. Suhy Dec. ¶10, Ex. 20 | **DISPUTED:** There is no exit clause in Exhibit 20 to the Suhy Declaration, and Defendants fail to offer any competent evidence establishing that Neo4j USA agreed to one when it allegedly entered into the exclusivity agreement on April 11, 2015. Likewise, Defendants fail to cite to any competent evidence that Neo4j USA assented to subsequent oral "exit agreement." The uncontroverted evidence also suggests the contrary. *See* UDF No. 104. |
| | Fact 107: iGov is not a successor in interest to PureThink. The work scope for PureThink and iGov were substantially different. Beene Dec. Ex 31, Deposition of John Mark Suhy, 53:19-54:4. iGove did not use | **DISPUTED:** Suhy admitted to forming iGov to evade the restrictions in the PSA imposed on PureThink. Dkt. No. 98-1, Exs. 11, 14-15; *accord* Dkt. No. 118 at 24-5:7 |

| Claim or Defense | Opposing Party's Undisputed Facts/Supporting Evidence | Moving Parties' Response/Supporting Evidence |
|---|---|---|
| | any assets of PureThink. Beene Dec. Ex 31, Deposition of John Mark Suhy, 52:5-8. | (citing same); Dkt. No. 177 at 10:3-6.   Suhy also informed the IRS that iGov was effectively PureThink's successor-in-interest, and iGov would be providing the same technology and know-how for the CKGE Contract. *See* Ratinoff Decl., Ex. 25, 27-28 (yellow highlights). Defendants further admit that Suhy is the sole shareholder of both Purethink and iGov, which is consistent with his representations to the IRS, making Suhy the sole beneficiary. *See* Facts 18, 86. |
| | Fact 108: Neo4j USA prevented PureThink's performance by prohibiting it from engaging with government agencies. Dkt. No. 177, Ex. D | DISPUTED: PureThink was restricted by Section 4.3.1 of the SPA from providing paid support services to government agencies using open source versions of Neo4j® softer.  By agreeing to dismiss their IIPEA claim with prejudice in the face of a motion to dismiss, Defendants conceded the validity of those restrictions. *See* Dkt. No. 171, ¶¶ 22-47; Dkt. Nos. 172, 176. |
| | Fact 109: Mr. Suhy worked full time under the Exclusivity Agreement. Beene Decl., Ex. 17 | DISPUTED:  This assertion is not supported by competent evidence.  PureThink did not maintain any time sheets that could support this assertion.  Ratinoff Decl., Ex. 2 at 173:15-178:24.  Defendants also do not provide any other records accounting for the time he spent allegedly working on the Gov't Edition.   *See* Ratinoff Reply Decl., Ex. A at 177:7-178:14. |
| | Fact 110: Plaintiffs have made substantial government sales. Beene Dec., Ex. 29 | UNDISPUTED: However, this is not a material fact that is relevant to PureThink's breach of contract claim. |

I attest that the evidence cited herein by Plaintiffs fairly and accurately supports the facts as asserted by Plaintiffs.

Dated:  October 4, 2023                    By:  */s/ Jeffrey M. Ratinoff*
                                    Jeffrey M. Ratinoff, Attorney for Plaintiffs

4853-5930-0200.3