1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    NEO4J, INC., et al.,

Case No.  5:18-cv-07182-EJD

9                              Plaintiffs,

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT; GRANTING
PLAINTIFFS'** *DAUBERT* **MOTION**

10              v.

11    PURETHINK, LLC, et al.,

12                              Defendants.

Re: ECF No. 181, 183

13          Plaintiffs Neo4j, Inc. ("Neo4j") and Neo4j Sweden AB ("Neo4j Sweden") (collectively,

14    "Plaintiffs") move to exclude expert testimony of Dr. Kuhn and for partial summary judgment.

15    ECF Nos. 181, 183.  The Court heard oral argument on July 27, 2023.  For the reasons stated

16    herein, the Court GRANTS the *Daubert* motion and GRANTS the motion for partial summary

17    judgment.

18    **I.      BACKGROUND**

19          The Court has previously set forth the facts of this case on multiple occasions (*see* ECF

20    Nos. 70, 85, 118, 168) and, accordingly, will summarize here only the facts pertinent to this Order.

21          **A.     Plaintiffs and Neo4j Software**

22          Plaintiff Neo4j USA is Delaware corporation that specializes in graph database

23    management systems and software.  Third Am. Compl. ("TAC"), ECF No. 90 ¶¶ 2, 20.  Neo4j

24    USA markets and sells its graph database platform under the Neo4j mark.  *Id.* ¶ 2.  Plaintiff Neo4j

25    Sweden is a wholly owned subsidiary of Neo4j USA that owns all copyrights relating to the

26    NEO4J graph database platform, including the source code.  *Id.* ¶ 4.  Neo4j Sweden licenses the

27    copyrights to Neo4j USA under the Neo4j Sweden Software License (the "Software License"),

28

which sublicenses the rights in the U.S.  *Id.*  Neo4j owns several federally registered trademarks. *Id.* ¶ 21.  All versions of Neo4j's graph platform software are subject to Neo4j USA's Trademark Policy found on its website.  *Id.* ¶ 28.

Plaintiffs have historically offered a free and open-source version of their Neo4j software called Neo4j Community Edition ("Neo4j CE"), subject to the GNU General Public License ("GPL").  *Id.* ¶ 24.  For commercial users, Plaintiffs offered a paid-for version of Neo4j called Neo4j Enterprise Edition ("Neo4j EE"), which, compared to the free Neo4j CE version, contains significant additional functionality and provides support for advanced commercial operations.  *Id.* The Neo4j J EE software was historically offered under both a paid-for commercial license and the free GNU Affero General Public License ("AGPL").  As of May 17, 2018, Neo4j EE v.3.4 and later iterations including Neo4j EE 3.5, are only offered under the commercial license, meaning new features to Neo4j EE will be developed as closed source.  *Id.* ¶¶ 25, 27; *see* ECF No. 213-2, Ex. A ("Undisputed Facts"), Facts 4 and 7.

### 1.    The Neo4j Sweden Software License

The Neo4j Sweden Software License includes the language of the AGPL with additional "Terms and Conditions" to using the license.  The Section 7 "Additional Terms" contain certain restrictions to using the license, including, in relevant part, that:

> When you convey a copy of a covered work, you may at your option remove any additional permissions from that copy, or from any part of it. (Additional permissions may be written to require their own removal in certain cases when you modify the work.) You may place additional permissions on material, added by you to a covered work, for which you have or can give appropriate copyright permission.

ECF No. 188-1 ("Suhy Decl."), Ex. 7.  "Additional Permissions" are defined as "terms that supplement the terms of this License by making exceptions from one or more of its conditions." *Id.* § 7.  If an Additional Permission applies to the entire program, it will be "treated as though they were included in this License, to the extent that they are valid under applicable law."  *Id.*

This section also states that "for material you add to a covered work, you may (if authorized by the copyright holders of that material) supplement the terms of this License" with the following enumerated terms:

United States District Court
Northern District of California

a) Disclaiming warranty or limiting liability differently from the terms of sections 15 and 16 of this License; or b) Requiring preservation of specified reasonable legal notices or author attributions in that material or in the Appropriate Legal Notices displayed by works containing it; or c) Prohibiting misrepresentation of the origin of that material, or requiring that modified versions of such material be marked in reasonable ways as different from the original version; or d) Limiting the use for publicity purposes of names of licensors or authors of the material; or e) Declining to grant rights under trademark law for use of some trade names, trademarks, or service marks; or f) Requiring indemnification of licensors and authors of that material by anyone who conveys the material (or modified versions of it) with contractual assumptions of liability to the recipient, for any liability that these contractual assumptions directly impose on those licensors and authors.

*Id.* § 7. Other "additional terms" not included in the list of permitted supplementary terms are considered "further restrictions" under Section 10. *Id.*

Section 10 explains that all conveyances of the covered work are subject to the license from the "original licensors." *Id.* § 10. It also restricts a user from "impos[ing] any further restrictions on the exercise of the rights granted or affirmed under this license." *Id.* If a user receives Neo4j EE under the Neo4j Sweden Software License with a "further restriction" affixed, the user may remove that term. *Id.* § 7.

**B.      Defendants' Partner Agreement with Plaintiffs**

Defendant PureThink LLC ("PureThink") is a Delaware company that develops software. *Id.* ¶ 5. Defendant John Mark Suhy is the sole manager and member of PureThink. *Id.* ¶ 8. PureThink had been previously authorized as a Neo4j Solution partner beginning September 30, 2014 until July 11, 2017. *Id.* ¶¶ 5, 29, 35. As a Neo4j Solution Partner, PureThink entered into a Solution Partner Agreement with Neo4j USA (the "Partner Agreement") where PureThink would sell Neo4j EE and provide support to end-users of Neo4j EE software in exchange for annual partner program fees and shared revenue. *Id.* ¶¶ 18, 29.

Defendant iGov inc. ("iGov") is a software development and consulting company that competes with Neo4j and its Solution Partners. *Id.* ¶ 6. iGov also does business as "GraphStack." *Id.* ¶ 7. Suhy is also the sole shareholder and the officer and director of iGov. *Id.* ¶ 8. Plaintiffs believe that iGov is a successor-in-interest to PureThink, or that iGov has acquired substantially

1    all of PureThinks assets in or around 2017.  *Id.* ¶ 6.

2          The Partner Agreement provided PureThink with a non-exclusive, non-transferrable

3    limited license to use Neo4j's trademarks to market and promote products under the terms of the

4    Agreement.  *Id.* ¶ 30.  Section 4.1 of the Partner Agreement incorporated Neo4j's trademark

5    policies as additional limitations on Defendants' use of the Neo4j mark and making

6    representations about Neo4j EE and Neo4j CE software products.  *Id.*  Section 4.3.2 provides that

7    PureThink would not "develop, market, distribute or offer any services related to any Community

8    Edition Products, derivative works of such products, or any [PureThink] software code made to

9    work with Community Edition Products (including, without limitation, hosting services, training,

10   technical support, configuration and customization services, etc.)" for a period of 36 months after

11   termination or expiration of the Partnership Agreement.  ECF. No. 177 ("FACC"), Ex. B.

12         In March 2017, Plaintiffs allegedly learned that Defendants encouraged or misled the IRS

13   to use "free and open source Neo4j EE under the AGPL," referred to as ONgDB software,[1] and

14   pay PureThink for support services to avoid paying for the commercial license under Neo4j EE.

15   *Id.* ¶ 31.  Plaintiffs allege that Defendants used a different server to compile the open-source

16   software in order to recompile it with modifications in an attempt to avoid the restrictions imposed

17   by the Partner Agreement on PureThink.  *Id.* ¶¶ 31, 32.  Plaintiffs allege that this misleading

18   conduct potentially damaged he Neo4j mark and its goodwill.  *Id.* ¶ 32.

19         As a result, on May 30, 2017 Neo4j USA notified PureThink that its actions constituted

20   material breach of the Partner Agreement § 7, and on July 11, 2017, Neo4j USA provided written

21   notice that the Partner Agreement was terminated.  *Id.* ¶¶ 33, 35.  Several provisions of the

22   Partnership Agreement survived termination, including Section 7.3 and 10.  *Id.* ¶¶ 36, 37.  Neo4j

23

24   _____

     [1] "ONgDB" is a software released by the Graph Foundation, founded in part by Suhy, that used
25   Neo4j EE v3.4 (which was openly available subject to the Neo4j Sweden Software License)
     replaced with the AGPL.  First MSJ Order at 6; *see* FAC ¶¶ 55–56. Plaintiffs allege that ONgDB
26   combines the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and
     "glue code" authored by Mr. Suhy and other contributors. *Id.* ¶ 58.  ONgDB was later renamed
27   "Graphstack GDB."  MSJ at 1.  For the purposes of this motion the Court will only refer to the
     software as "ONgDB."
28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

USA demanded that PureThink cease using its trademarks.  *Id.* ¶ 38.

### C.     Removal or Alteration of Copyright Management Information

Plaintiffs include copyright management information ("CMI") within the electronic source code files for Neo4j EE.  *Id.* ¶ 76.  The CMI includes information identifying the copyright owner as Neo4j Sweden, the title of the work, licensing information, terms and conditions for use of the copyrighted work, and other "conspicuous displays identifying the owner or title of these copyrighted works," such as "Neo4j" in the source code and notice headers with terms and conditions.  *Id.*

Plaintiffs allege that Defendant Suhy, with Graph Foundation Inc.'s approval and encouragement, replicated the Neo4j EE source code files and either removed or altered the Neo4j Sweden Software License, the copyright owner information, and the terms and conditions of at least 28 separate files from Neo4j EE.  *Id.* ¶ 77.  Suhy also replaced the Neo4j Sweden Software License with a generic version of the AGPL, which effectively removed the commercial restrictions imposed by the license, and republished the source code files on Graph Foundation's Github repository for ONgDB software.  *Id.*  ONgDB is allegedly a "patchwork of source code" compiled from older versions of Neo4j software that includes "glue" source code authored by the Graph Foundation and Suhy.  *Id.* ¶ 58.

 It is therefore not the same quality as Plaintiffs' software, as it lacks "tens of thousands of functional, performance, load, stress, and other tests to ensure quality and consistency" and other fixes and improvements made by Plaintiffs to Neo4j EE.  *Id.* ¶ 59.  Defendants purportedly characterized ONgDB as identical to Plaintiffs' commercial-only releases of Neo4j EE.  *Id.* ¶ 58.  Plaintiffs allege that Defendants are misleading consumers into believing they are downloading an exact copy of Plaintiffs' current commercial-only releases of Neo4j EE, or a "drop in" replacement.  *Id.* ¶ 59.  Although Defendants have at times disclaimed a relationship or affiliation with Neo4j, any disclaimer is allegedly undermined by Defendants' misinformation, such as displaying the software as display as "Neo4j," "Neo4j Enterprise," "neo4j project" and "Neo4j open source."  *Id.* ¶ 60.  This misinformation has confused customers "as to the nature of its

United States District Court
Northern District of California

1    'forked' version of ONgDB" and failure to include trademark notices after the Neo4j mark.  *Id.*

2    plaintiffs allege Defendants' actions have caused actual consumer confusion over license

3    obligations.  *Id.* ¶ 70.

4        **D.        Exclusive Contract to Resell Neo4j Software to the Government**

5        In their Fourth Amended Counterclaim, Defendants allege that Suhy and Neo4j USA's

6    COO Lars Nordwall discussed modifications to the software to satisfy U.S. government security

7    requirements.  FACC ¶ 16.  During this discussion, Nordwall purportedly represented that Suhy

8    could improve the Neo4j software for government use.  *Id.*  According to Defendants, PureThink

9    and Nordwall entered an agreement (the "Exclusivity Contract") dated April 11, 2015, separate

10   from the Partnership Agreement, which stated PureThink is the only Neo4j "Government Edition"

11   reseller for the US Federal Government, Department of Defense and Intelligence Agencies.  *Id.* ¶

12   54; *see* Ex. C.

13       PureThink alleges that it subsequently designed and developed Neo4j Government Edition

14   software package that included additional enhancements and features to the Neo4j Software to

15   address the security requirements.  *Id.* ¶ 17.  PureThink expended $650,000 on this endeavor.  *Id.*

16   PureThink alleges that the Government Edition was a "complete package" that included additional

17   services and support and software modules.  *Id.*

18       Pursuant to the Exclusivity Contract, PureThink entered into an agreement with the IRS.

19   *Id.* ¶ 20.  During the performance of the agreement, the IRS inquired into the difference between

20   the Neo4j CE and Neo4j EE.  *Id.* ¶ 20.  Neo4j USA allegedly told PureThink to tell the IRS that

21   Neo4j CE was open use.  *Id.*  Believing that this information misrepresented the differences

22   between open source software and the commercial software, Neo4j refused to answer the IRS as

23   instructed.  *Id.* ¶¶ 20–21.  PureThink alleges that Neo4j USA directly reached out to the IRS to

24   impart this information.  *Id.* ¶ 20.  Neo4j USA allegedly retaliated against PureThink by telling the

25   IRS that PureThink could not provide professional service to the IRS for a period of 3 years as a

26   result of the termination of the Partnership Agreement.  *Id.* ¶ 21; *see* Ex. D.  Neo4j USA also

27   advised iGov potential customers using Neo4j software that iGov was not permitted to work with

28   Case No.: 5:18-cv-07182-EJD

United States District Court
Northern District of California

them.  *Id.* ¶ 21.  PureThink alleges that Neo4j USA's actions interfered with and harmed its business.  *Id.*

### E.      Relevant Procedural Background

This action has an extensive and convoluted procedural history.  Because the present motion is only concerned with the Plaintiffs' eighth cause of action, Defendant's fourth cause of action, and Defendant's fourth affirmative defense, the Court only recounts the procedural history relevant to the present motion.

In this case the parties stipulated to two rounds of motions for summary judgment in which claims, counterclaims, and affirmative defenses would be resolved at two separate phases: "Phase 1" and "Phase 2".  *See* ECF No. 68.  On May 18, 2021, the Court granted Plaintiffs' motion for partial summary judgment ("First MSJ Order") as to the Phase 1 issues and denied Defendants' cross-motion for summary judgment.  *See* ECF No. 118.  The Court found that Plaintiffs established trademark infringement under the Lanham Act and granted summary judgment as to false designation of origin and false advertising, federal unfair competition, and state unfair competition.  *Id.* at 22.  The First MSJ Order preliminarily enjoined Defendants from infringing on the mark.  Defendants appealed the First MSJ Order based on the preliminary injunction.  *See* ECF Nos. 121, 122.  The Ninth Circuit affirmed.  *See* ECF No. 140; *see also* ECF Nos. 141, 142.

On April 20, 2023, Plaintiffs moved for partial summary judgment to resolve the Phase 2 issues.  *See* ECF No. 183 ("MSJ").  Plaintiffs seek summary judgment on Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim, the breach of exclusive contract to government counterclaim asserted in Defendant's Fourth Amended Counterclaim (ECF No. 177), and the unclean hands affirmative defense asserted in Defendant's Answer to Plaintiffs' TAC (ECF No. 91).  Defendants oppose the motion.  *See* ECF No. 188 ("Opp'n to MSJ").  After the motion was fully briefed and the Court heard oral argument, Defendants withdrew its unclean hands defense to be dismissed upon final judgment.  ECF No. 215.

In addition to moving for summary judgment on the Phase 2 issues, Plaintiffs also moved to strike the entirety of the December 22, 2022 expert report and exclude the testimony of

United States District Court
Northern District of California

Defendants' expert witness, Bradely M. Kuhn.  *See* ECF No. 181 ("Daubert Mot."); *see also* ECF No. 181-2 Ex. 1 ("Kuhn Report").

## II.     *DAUBERT* MOTION

Plaintiffs move to exclude the expert report of Bradley M. Kuhn ("Kuhn Report") as irrelevant, prejudicial under Rule 403, inadmissible legal interpretation, and as inadmissible speculation regarding Defendant's state of mind.  *See generally* Daubert Mot.

### A.     Legal Standard

Courts act as gatekeepers of expert testimony to ensure that such testimony is reliable and relevant under Federal Rule of Evidence 702.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The proponent of expert testimony has the burden of proving admissibility.  *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 931 (N.D. Cal. 2017) (citations omitted).  Before an expert can offer his or her opinions, they must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Once he or she is qualified, Rule 702 permits her to testify as long as "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  *Id.*  This multifactor inquiry is flexible, and "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted).

### B.     Discussion

#### 1.     Relevancy of the Kuhn Expert Report

Plaintiffs argue that the Kuhn Report is irrelevant based on two grounds: it is barred under the Law of Case Doctrine and at is inadmissible hearsay testimony.  Defendants assert that Kuhn's testimony is relevant and supports Defendants' unclean hands defense, the defense that Neo4j violated the AGPL by adding restrictions, the estoppel defense, and the defense to the DMCA claim.  Opp'n to Daubert Mot. at 6.

United States District Court
Northern District of California

First, Plaintiffs contend that the Kuhn Report is irrelevant to the remaining issues in this action because Kuhn interprets Section 7 (pertaining to further restrictions) of the Neo4j Sweden Software License, and the parties have conclusively litigated whether Section 7 permits Defendants to remove the Commons Clause from the license in Phase 1.  Daubert Mot. at 9.  The stated purpose of the Kuhn Report is to address the issues arising from the "removal of the Commons Clause" from the Neo4j Sweden Software License and Defendants' "redistribution of the Neo4j software under the AGPLv3 with the [Commons Clause] removed."  Kuhn Report ¶ 2.  According to Plaintiffs, Defendants are barred under the law of case doctrine from relitigating the Section 7 issue regarding the removal of the Commons Clause.  *See e.g.*, *Arizona v. California*, 460 U.S. 605, 618 (1983); *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.").  The Court agrees that testimony relating to previously litigated issues is not relevant to the remaining disputed issues.

During Phase 1, Plaintiffs argued in their First MSJ Motion (ECF No. 98) that Defendants made false statements in violation of the Lanham Act, which included "statements that ONgDB and Neo4j Enterprise are "free and open source" versions of or alternatives to commercially licensed Neo4j EE."  First MSJ Order at 24.  Plaintiffs argued these statements were false because "the Neo4j Sweden Software License did not permit Defendants to remove the commercial restrictions imposed by the Commons Clause."  *Id.*  The Court agreed and rejected Defendants' argument that the Neo4j Sweden Software License permits licensees, such as Defendants, to remove the Commons Clause and redistribute the software under the standardized AGPL license.[2] *Id.*  The First MSJ Order also preliminarily enjoined Defendants from infringing on the mark.  *Id.* at 32–34.  Defendants appealed the Court's order based on the preliminary injunction, and raised

---

[2]Although this finding was made with respect to Plaintiffs' false advertising under the Lanham Act and UCL claims, the parties had agreed that "the truth or falsity of Defendants' statements hinge on the interpretation of Section 7 [of the Neo4j Sweden Software License], and GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."  First Order at 24 (alteration in original) (quotations and citation omitted).

the Section 7 argument in their opening appellate brief, asserting that this Court incorrectly concluded that copyright holders may add more restrictive terms to the AGPL and that downstream users could not remove those terms.  ECF No. 181-5, Ex. 4 at 36–40.  The Ninth Circuit affirmed, holding that "[t]he representation that ONgDB is a "free and open-source" version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove "further restrictions" added by an upstream licensee to the original work."  *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037, at *1 (9th Cir. Mar. 14, 2022).  That holding is now the law of the case, and Defendants have made no showing that an exception to the doctrine should apply.[3]  *See Aquino*, 2018 WL 3845718, at *1.

Thus, the Court agrees that testimony relating to an issue that has already been decided in this case is not relevant and permitting such testimony would not promote judicial efficiency.  *See Allied Erecting & Dismantling Co. v. United States Steel Corp.*, No. 22-3585, 2023 WL 5322213, at *5 (6th Cir. Aug. 18, 2023) ("[C]ourts have discretion to apply the law-of-the-case doctrine to evidentiary rulings.") (citing *United States v. Todd*, 920 F.2d 399, 402–04 (6th Cir. 1990)).  Defendants had an opportunity to make their Section 7 argument on appeal—that Suhy permissibly removed the Commons Clause from the Neo4j Sweden Software License—and it cannot rehash this argument through expert testimony.

Second, Plaintiffs contend that Kuhn's Report is inadmissible hearsay testimony.  Daubert Mot. at 17.  Based on his time volunteering and working at the FSF from 1996 until March 2005, Kuhn opines on the Free Software Foundation's ("FSF") view of Neo4j Sweden's license and whether Neo4j violated the AGPLv3's Further Restrictions Clause by including the Commons Clause with the AGPLv3 in their license.  *Id.*; *see* Kuhn Report ¶¶ 12–13, 15–16, 19–21, 26 81–

---

[3] Defendants argue that the law of the case doctrine does not bar them from aguing this issue partial summary judgment rulings are interlocutory orders not subject to appeal.  Opp'n at 4–6. Defendants' argument is unavailing.  On appeal, Defendants represented to the Ninth Circuit that "the court's preliminary injunction is 'inextricably bound up' with its legal resolution of the summary judgment;" the Court agrees.  Reply to Daubert Mot. at 2–3; *see infra* Section II.B.1 at 14.  The law of the case doctrine bars consideration of those issues which have been decided, and the Ninth Circuit expressly addressed the Section 7 issue.

85.  He purportedly bases his opinions, in part, on personal knowledge gleaned from internal discussions with unnamed "staff and Board members of the FSF," including "the GPLv3 drafters themselves," and his involvement "in the early stages of the public comment process for [drafting] the GPLv3 . . . regarding whether the Affero Clause would be incorporated into the GPLv3 itself, or remain a separate license from the main GPLv3" and committee participation.  Kuhn Report ¶¶ 18, 21, 23–24, 26, 52, 81.  Plaintiffs argue that Kuhn's testimony is offered for the truth of the matter asserted and that no hearsay exception is applicable.

Pursuant to Rule 703, "expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"  *Daubert*, 509 U.S. at 595 (quoting Fed. R. Civ. P. 703).  In other words, experts may rely on hearsay in formulating expert opinions only if the hearsay is the 'type of information upon which experts may reasonably rely."  *United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975).  Plaintiffs argue that the hearsay statements made by unnamed individuals relied on in the Kuhn Report are *not* the type of evidence on which an industry expert or an expert in license agreements could reasonably rely.  Daubert Mot. at 17. Although the Kuhn Report purports to attach, *inter alia*, the "GPLv3 Second Discussion Draft Rationale" (Ex. C), the FSF's "Opinion on Additional Terms" (Ex. D), and the "GPLvs Third Discussion Draft Markup of Changes from Second Discussion Draft" (Ex. F), Plaintiffs contend that Defendants failed to produce markups and/or comments from the GPLv3 during discovery, failed to subpoena the FSF to authenticate these materials, or otherwise obtain the FSF's view on the AGPLv3.  *Id.*

While Kuhn may opine on matters within his experience in the software industry and with respect to software licensing, Kuhn may not state views of the FSF without proper attribution or foundation.  *Williams v. Illinois*, 567 U.S. 50, 50 (2012) (experts may not "act as mere conduits" for hearsay); *see People v. Veamatahau*, 9 Cal. 5th 16, 34 (2020) (experts may not "regurgitate information from another source without applying any of his or her own expertise").

## 2.    Testimony Interpreting the Software License

Next, Plaintiffs contend that the Kuhn Report impermissibly opines on the meaning and interpretation of Section 7 of the Neo4j Sweden Software License.  Dauber Mot. at 13.  Plaintiffs seek to exclude paragraphs 51–61, 71–75, 76–78, 79–89, 96–97, 109–110 and 112 of the Kuhn report as inadmissible legal interpretation of the software license.  *Id.* at 14.

It is well established that experts are prohibited from testifying about the law or providing legal meaning.  *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.") (quotations and citation omitted); *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("[Expert] testimony cannot be used to provide legal meaning or interpret the policies as written."); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (explaining that the role of experts is to interpret and analyze factual evidence and not to testify about the law); *see also Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (excluding expert opinion "as to the meaning of the contract terms at issue").

The Kuhn Report contains numerous legal conclusions:

- "I conclude . . . that the Further Restrictions Clause was specifically design[ed] to allow removal of an additional term when a licensor chose to use the text of the GPLv3 and/or AGPLv3 along with a term that the licensee viewed as a "Further Restriction." Kuhn Report ¶ 61.

- "In my professional opinion, the Neo4j Sweden Software License is structured and presented precisely in the manner that the Further Restrictions Clause anticipated." *Id.* ¶ 72.

- "Specifically, I believe that the AGPLv3 contemplated this precise situation: namely, a licensor licenses under the unmodified text of the AGPLv3, but also includes another term that contradicts, limits, and/or restricts the permissions granted under the AGPLv3." *Id.* ¶ 73.

- "In my opinion, the Neo4j Sweden Software License itself gave Suhy, PureThink, LLC, and IGOV, Inc. this permission explicitly . . . . " *Id.* ¶ 76.

- "In my opinion, given the common FOSS practices of either explicitly or implicitly changing terms upon redistribution within the confines and requirements stated in the license, any reasonable party would determine that the Neo4j Sweden Software License intends — given that it was intentionally drafted to include the Further Restrictions Clause — that the [Commons Clause] can be removed by anyone who engages in redistribution (be it commercial or non-commercial) of the

software covered by the Neo4j Sweden Software License." *Id.* ¶ 78.

- "I believe that the Further Restrictions Clause was, in part, included in the GPLv3 and AGPLv3 to assure that the community could rely on the fact that if the text of the entire AGPLv3 was included in the licensing of some software, that Further Restrictions could not be placed on that software." *Id.* ¶ 83.

- "In my opinion, the Neo4j Sweden Software License intentionally includes the Further Restrictions Clause as a term of that license." *Id.* ¶ 109.

- "In my opinion, if a single firm failed to diligently and formally collect explicit, written relicensing permission from all contributors to all code that was licensed under AGPLv3, that distribution of the Neo4j software under the Neo4j Sweden Software License is in violation of AGPLv3 (wholly unrelated to the Further Restrictions Clause). If such rights have not been diligently and carefully collected and consolidated, no entity may engage in Proprietary Relicensing business nor issue the Neo4j Sweden Software License legitimately. In other words, without such consolidation of rights, the only legitimate license of the Neo4j software is AGPLv3." *Id.* ¶ 113.

Although these statements are couched in language suggesting that they are Kuhn's professional opinion or industry custom, they ultimately discuss whether Neo4j violated the AGPL's Further Restrictions Clause by adding the Commons Clause to the AGPL to create the Neo4j Sweden Software License. Kuhn's belief that it was permissible for Suhy to remove the Commons Clause is based in part on his interpretation of the Neo4j Sweden Software License and the AGPL's Further Restriction Clause.

In addition, paragraphs 74–75 of the Kuhn Report impermissibly opines that Suhy's removal of the Commons Clause from the license was "permitted":

- "If I had encountered the "Neo4j Sweden Software License" during the normal course of my work as a FOSS activist and FOSS licensing expert, I would have felt removal of the [Commons Clause] portion, upon redistribution of the software, was ***permitted*** by the AGPLv3's Further Restrictions Clause." Kuhn Report ¶ 74 (emphasis added).

- "In my opinion, when John Mark Suhy encountered the Neo4j Sweden Software License, his removal of the [Commons Clause] and redistribution of the Covered Work under pure AGPLv3 would be considered customary, ***permissible***, and even widely encouraged in the field of FOSS." *Id.* ¶ 75 (emphasis added).

Experts may not opine on whether conduct is or was legally acceptable or permissible. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding sections of an exert report that described a parties' conduct as "wrongful").

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
13

United States District Court
Northern District of California

1    To the extent that Kuhn opines on the permissibility of Suhy's actions or the legal effect

2    and interpretation of any provision of the Neo4j Sweden Software License—such as what conduct

3    is permitted or not permitted under the license—such testimony is improper legal opinion.

### 3.    Opinions on Defendants' State of Mind

5    Finally, Plaintiffs seek to exclude paragraphs 71–74, 76–78, and 79–89 of the Kuhn Report

6    as inadmissible opinions on Suhy's subjective intent in removing the Commons Clause from the

7    Neo4j Sweden Software License.  Daubert Mot. at 15.

8    Expert Witnesses may not opine on "the intent, motives, or states of mind of corporations,

9    regulatory agencies and others . . . . "  *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-CV-

10    331, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020) (quotations and citation omitted).

11    Paragraphs 88 and 89 describe how "Software users and/or redistributors" in Suhy's position

12    would have a good faith belief that the Commons Clause and any other additional restrictions in

13    an AGPLv3-based license could be removed pursuant to the Further Restrictions Clause.  Kuhn

14    Report ¶ 88 ("[T]he users and/or redistributors customarily believe ***in good faith*** that the choice of

15    licensing in this manner was intentional); *id.* ¶ 89 ("[U]sers and/or redistributors ***have a***

16    ***good faith basis*** to exercise any and all clauses of the AGPLv3 — including the Further

17    Restrictions Clause and its permission to strike and remove additional restriction clauses.")

18    (emphasis added).  Although these statements do not expressly reference Suhy, they describe an

19    individual in Suhy's position and impermissibly infer intent, motive, or state of mind from

20    "considerations on which persons in the field generally rely."  *Oracle Am., Inc. v. Hewlett Packard*

21    *Enter. Co.*, No. 16-CV-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018).  The trier

22    of fact is sufficiently capable of drawing its own inferences regarding whether Suhy believed in

23    good faith that his actions were permissible.  *See id.*

24    The remaining paragraphs identified by Plaintiffs do not specifically speak to Suhy's

25    intent, motive, or state of mind.  In fact, many of these paragraphs are appropriately characterized

26    as legal conclusions.  *See supra* Section II.B.2.  For example, paragraph 78 opines how a

27    "reasonable party" would interpret the intent of the Neo4j Sweden Software License.  Paragraph

28

United States District Court
Northern District of California

74 speaks more to the permissibility, *i.e.*, the "wrongfulness," of Suhy's conduct than to his intent or state of mind, and paragraph 76 impermissibly interprets the legal effect of the Neo4j Sweden Software License.

Accordingly, Kuhn may not opine about why Suhy (or any other person in this case) took a particular action or made a particular decision.  *See Oracle Am., Inc.*, 2018 WL 6511146, at *3.

### 4.     Conclusion

In sum, the Court GRANTS Plaintiff's *Daubert* motion.  Much of the Kuhn Report testimony relates to the Section 7 issue already decided in this case, and the law of the case doctrine bars reconsideration of that issue.  *See Allied Erecting & Dismantling Co.*, 2023 WL 5322213, at *6 (affirming district court's exclusion of an expert report based on the law of the case doctrine).  Moreover, because Defendants have withdrawn their unclean hands defense, and the only remaining counterclaims and defenses are not addressed by, or related to, the Kuhn testimony, the Court finds it appropriate to exclude the Kuhn Report in its entirety as not relevant.[4]

## III.     MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.     Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it would affect the outcome of the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See*

---

[4] Defendants' remaining asserted affirmative defenses are waiver and set off, and the remaining asserted counterclaims are Defendants' Fourth Cause of Action for Breach of Exclusivity Contract to Government against Neo4j USA (at issue in Plaintiffs' contemporaneously filed partial motion for summary judgment addressed Section III of this Order), and the Eighth Cause of Action for Declaratory Relief that the Commons Clause in the AGPL does not Apply to Professional Services against Neo4j Sweden (also addressed in Section III of this Order).  *See* ECF No. 206 at 5.

1    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden

2    of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is,

3    pointing out to the district court—that there is an absence of evidence to support the nonmoving

4    party's case." *Id.* at 325.  If the moving party can meet this initial burden, the burden then shifts to

5    the non-moving party to produce admissible evidence and set forth specific facts showing that a

6    genuine issue of material fact does indeed exist for trial.  *See Nissan Fire & Marine Ins. Co. v.*

7    *Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If the non-moving party produces

8    enough evidence to show a genuine issue of material fact exists, then it defeats the motion;

9    otherwise, the moving party is entitled to summary judgment.  *Id.*

10       In considering a motion for summary judgment, the Court must view the evidence in the

11   light most favorable to the non-moving party.  *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014).

12   The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility

13   determinations; any disputed factual issues must be resolved in favor of the non-moving party.

14   *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

15   However, the Court need not credit the non-moving party's version of events where it is blatantly

16   contradicted by the record.  *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

17       **B.    Discussion**

18       Plaintiffs move for partial summary judgment on the following claims: (1) Plaintiffs'

19   DMCA claim; (2) Defendants' breach of contract counterclaim; and (3) Defendants' unclean

20   hands affirmative defense.  *See generally* ECF No. 183 ("MSJ").  Because Defendants have since

21   withdrawn the unclean hands defense (*see* ECF No. 215), the Court only addresses Plaintiffs' first

22   and second arguments.

23       **1.    Plaintiffs' DMCA Claim**

24       Plaintiffs' eighth cause of action asserts unauthorized distribution of altered CMI in

25   violation of the DMCA, 17 U.S.C. § 1202(b), against all Defendants.  TAC ¶¶ 166–73.

26       Plaintiffs allege that the Neo4j EE software was published and distributed with CMI that

27   includes the owner's name, a copyright notice, and a license providing the terms and conditions

28   Case No.: 5:18-cv-07182-EJD

for the use of copyrighted work. *Id.* ¶¶ 76, 168.  Plaintiffs allege that Defendants replicated the Neo4j EE source code files and knowingly removed and/or altered and distributed their CMI in violation of § 1202(b)(1) and (3), including licensing terms and conditions and 28 source code files for the Neo4j EE platform. *Id.* ¶¶ 77, 169.  Suhy replaced the Neo4j Sweden Software license with "a generic version of the APGLv3 thereby removing the additional license imposed by the Neo4j Sweden Software License to prevent commercial abuse and other copyright management information." *Id.* ¶ 77.  Defendants allegedly publicly distribute these altered source code files as part of the ONgDB graph database software on iGov's website and Github repository.  *Id.*

To prove alteration or removal of CMI under § 1202(b)(1), Plaintiffs must demonstrate that Defendants, (i) without the permission of the copyright owner, (ii) "intentionally remove[d] or alter[ed] any copyright management information" (iii) with knowledge "or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . . "  17 U.S.C. § 1202(b).

To prove distribution of CMI under § 1202(b)(3), Plaintiffs must show that Defendants, (i) without the permission of the copyright owner, (ii) "distribute[d], import[ed] for distribution, or publicly perform[ed] works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law" (iii) with knowledge "or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . ."  17 U.S.C. § 1202(b).

CMI refers to, in relevant part:

> [I]nformation conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work: (1) The title and other information identifying the work, including the information set forth on a notice of copyright.  (2) The name of, and other identifying information about, the author of a work.  (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright . . . . (6) Terms and conditions for use of the work.  (7) Identifying numbers or symbols referring to such information or links to such information.

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

17 U.S.C.A. §§ 1202(c)(1)(3), (6)–(7).

As an initial matter, Defendants essentially argue that Suhy removed or altered the Commons Clause, not Plaintiffs' CMI.  *See, e.g.*, Undisputed Facts, Fact 51.  Plaintiffs assert that Suhy removed legal notices identifying Neo4j Sweden as the copyright holder and licensor.  MSJ at 6.  It is undisputed that the Notice provision states that Neo4j EE is developed and owned by Neo4j Sweden and that "[t]he NOTICE provision was found in a separate file called NOTICE.txt which was always present next to the AGPL License file called LICENSE.txt."  Undisputed Facts, Fact 6.  Defendants contend that "[t]he only files Mr. Suhy touched were the AGPL LICENSE.txt files" which contained the commercial restrictions.  *Id.*, Fact 14.  Plaintiffs submit that during Suhy's deposition, Suhy admitted to replacing the Neo4j Sweden Software License with a "verbatim" copy of the standard AGPL, effectively removing the Commons Clause.  Undisputed Fact, Fact 12 "Additional Fact/Objection"; ECF No. 98-1, Ex. 3, 172:4–23, 200:5–12.  According to Plaintiffs, once the Licence.txt files were replaced with the standard AGPL, the cross-references to the Licence.txt files in the Notice.txt files became "meaningless."  Undisputed Fact, Fact 12 "Additional Fact."  Removal or alteration of the Commons Clause as referenced by the CMI satisfies the "removed or altered" prong under 1202(b)(3).  *See Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-CV-06226-EJD, 2020 WL 6700480, at *5 (N.D. Cal. Nov. 13, 2020) (finding that "moving the CMI into separate NOTICE.txt files constitutes altering the CMI, and conveying the Neo4j Sweden Software License without the Commons Clause constitutes removing CMI.").

With respect to the first prong of §§ 1202(b)(1) and 1202(b)(3), it is undisputed that Plaintiffs did not give permission to Defendants to alter, remove, or distribute the copyright.  Undisputed Facts, Fact 16 ("Undisputed that Neo4j Sweden never gave Suhy permission to remove Commons Clause or rename 'it' ONgDB and offer it for free under the AGPL.").  The second prong of § 1202(b)(3) is also satisfied because Suhy distributed Neo4j's source code without the Neo4j Sweden Software License.[5]  Undisputed Facts, Fact 19 ("Suhy made Neo4j

---

[5] Defendants challenge whether Plaintiffs can show that Suhy is responsible for distribution, *i.e.*, making ONgDB publicly available, because "Defendants do not control GFI, nor control what is

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
18

United States District Court
Northern District of California

1    Sweden's source code with its CMI removed publicly available via GFI's website and GitHub

2    repository for ONgDB."); *id.*, Fact 20 ("Suhy provided hyperlinks to potential users of Neo4j® EE

3    to download ONgDB from GFI's website and GitHub repository from his jmsuhy@purethink.com

4    email account."); *id.*, Fact 21 (" iGov's website provided links to potential users of Neo4j® EE to

5    download ONgDB directly from iGov and from GFI's website.").  For the reasons discussed

6    below, the Court finds that Plaintiffs have established the third prongs of §§ 1202(b)(1) and

7    1202(b)(3).

8        Plaintiffs contend that it is an undisputed fact that Neo4j Sweden owns the copyrights for

9    Neo4j EE Versions 3.4 and 3.5 and licensed them subject to the Neo4j Sweden Software License,

10   and that this license constitutes Neo4j Sweden's CMI because the "Notice" provision clearly states

11   that Neo4j® EE is developed and owned by Neo4j Sweden . . . and is subject to the terms of the

12   [AGPL], with the Commons Clause as follows . . . . "  MSJ at 9; *see* ECF No. 98-2, ¶ 11 and Ex.

13   3.  According to Plaintiffs, Defendants replaced the Neo4j Sweden Software License with the

14   generic AGLP, or in other words, Defendants deleted the commercial restrictions from the Neo4j

15   Sweden Software License, in effect stripping the license to the generic AGPL license.  MSJ at 6.

16   Plaintiffs allege that, by removing Neo4j's commercial restrictions and stripping down the CMI in

17   the license, Defendants violated commercial restrictions in the Neo4j Sweden Software license

18   and infringed Neo4j Sweden's copyrights.  *Id.* at 12–13.  Defendants then distributed that source

19   code as ONgDB graph database software "with the specific intent of providing an open-source,

20   restriction-free version of the software."  *Id.* at 13; *see also* Undisputed Facts, Fact 15

21   ("Undisputed that Mr. Suhy knew that Neo4j Sweden owned the copyright for Neo4j EE.").  Suhy

22   misled the IRS to believe that Graph Foundation, Inc. (and not Neo4j) licensed the software.

23   Undisputed Facts, Fact 45.  Defendants referenced the IRS's adoption of ONgDB to other

24   government agencies, *id.*, Fact 46, which Defendants allegedly did to encourage other government

25

26   ──────────────

27   placed on GFI's Github or website."  Opp'n to MSJ at 17.  Defendants cite no case law or
     authority to support this argument.  In any event, it is undisputed that Suhy provided hyperlinks of
     the Neo4j EE to users of the website.

28

United States District Court
Northern District of California

1   agencies and contractors to do the same and pay Defendants for their support services.  *Id.*; *see id.*,

2   Facts 47, 49, 51.

3        With respect to the knowledge and intent prong, the statute requires that Defendants

4   "possess the mental state of knowing, or having a reasonable basis to know, that [their] actions

5   'will induce, enable, facilitate, or conceal' infringement."  *Stevens v. Corelogic, Inc.*, 899 F.3d

6   666, 673 (9th Cir. 2018).  For the reasons discussed below, the Court finds that Suhy has not

7   successfully argued lack of requisite knowledge or intent under § 1202(b).

8        It is undisputed that Plaintiffs historically offered a free and open-source version (Neo4j

9   CE) subject to the GPL and a commercial version (Neo4j EE) under both a paid-for commercial

10  license and the free AGPL license.  Undisputed Facts, Fact 3.  According to Neo4j, a commercial

11  license to Neo4j EE entitled a purchaser to use the product in a proprietary setting and to receive

12  professional support and services from Neo4j USA, software updates, and other assistance.  *Id.*

13  Defendants dispute that Neo4j EE commercial license was the only license that permitted

14  proprietary use of Neo4j EE.  *Id.*  According to Defendants, both the Neo4j EE commercial license

15  *and* the Neo4j EE free AGPL license permitted Suhy to use Neo4j EE in a proprietary setting "for

16  free."  *Id.*

17       Defendants' understanding of the Neo4j EE license stems from the AGPL license, which

18  contains the following language "[t]his Software is subject to the terms of the GNU Affero

19  General public License [AGPL] Version 3."  Suhy Decl., Ex. 7.  Defendants assert that this

20  language does not permit a licensor to use and alter the terms of the AGPL, and because the Neo4j

21  Sweden Software License is comprised of the language of the AGPL plus additional commercial

22  restrictions, Plaintiffs improperly altered the AGPL.  The gravamen of Defendants argument, then,

23  is that Suhy permissibly removed the Commons Clause and altered the CMI because Neo4j

24  Sweden does not own the copyright to the AGPL license, which forms part of the Neo4j Sweden

25  Software License.  Opp'n to MSJ at 12; *see* Undisputed Facts, Fact 1.

26       Defendants argue that the GPL and AGPL licenses are owned, copyrighted, and

27  trademarked by the FSF.  Opp'n to MSJ at 2, 12.  Defendants assert that the FSF license grants

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1    Neo4J Sweden the license to use the GPL/AGPL copyrighted licenses under certain enumerated

2    restrictions.  *Id.*  One such restriction prohibits making changes to the license document terms.

3    Opp'n to MSJ at 6.  As noted, Defendants argue that Neo4j violated the FSF copyright license by

4    adding commercial restrictions to the AGPL license in violation of 17 U.S.C. §1202(a).  *Id.* at 3.

5    Therefore, Defendants argue that Suhy's removal and/or alteration of the Commons Clause and

6    CMI was not an "improper intentional act" in violation of the DMCA.  Rather, Defendants accuse

7    Plaintiffs of violating the AGPL by modifying it (*i.e.*, adding commercial restrictions such as the

8    Commons Clause and CMI) and, thus, Suhy "prevented further infringement" by removing the

9    offending terms.  Opp'n to MSJ at 13.

10         In sum, Defendants challenge whether they intentionally or knowingly removed CMI

11   pursuant to §§ 1202(b)(1) and (b)(3) because Defendants argue that Suhy purportedly only

12   intended to remove the improper addition to the AGPL license terms, *i.e.*, the commercial

13   restrictions in the Neo4j Sweden Software License, to prevent infringement to FSF's copyright.  In

14   support, Defendants include expert testimony of Dr. Kuhn opining that "Mr. Suhy's conduct in

15   removing the Common Clause was customary, permissible and widely encouraged."  Opp'n to

16   MSJ at 15 (citing Kuhn Report ¶ 75).

17         The Court is unpersuaded by Defendants' argument that Neo4j violated the FSF copyright

18   license.  The basis of Defendants' argument challenging the existence or ownership of the CMI

19   rests on whether Suhy believed that the FSF owned the copyright due to the inclusion of the

20   AGPL language in the Neo4j Sweden Software License.  Opp'n to MSJ at 12.  Even if true,

21   Defendants are not the owners of the copyright at issue and cannot enforce the FSF's copyright.

22   *Graph Found., Inc.*, 2020 WL 6700480, at *3 ("[W]hether Plaintiffs acted in accordance with the

23   copyright covering the AGPLv3 is not at issue before this Court, as Defendants are not entitled to

24   enforce the FSF's copyright.").  The issue before this Court, then, is whether the Neo4j Sweden

25   Software License permits the alleged removal or alteration of CMI in the Neo4j EE source code

26   such that Defendants' alleged distribution of the altered source is not actionable.

27         Plaintiffs argue that this issue has been decided by the Court's First MSJ Order granting

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

partial summary judgment such that the law of the case bars Defendants from rehashing a different version of the same argument.  Reply at 2–3.  Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009). It further provides "that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case."  *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (quotations omitted).  As discussed in detail in Section II.B.1, the Court agrees with Plaintiffs that Defendants are in effect barred from raising this argument again because they raised a substantially similar argument in the prior MSJ that was decided against them in May 2021, that was affirmed by the Ninth Circuit.  *See supra* Section II.B.1; s*ee* First MSJ Order at 24.

Defendants once again argue that the First MSJ Order is an interlocutory order and "the Law of Case Doctrine does not apply to interlocutory orders," *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997).  Opp'n to MSJ at 10.  *Langevine* stands for the uncontroversial and longstanding rule that a trial court *may* reconsider or revise its own interlocutory order.  *See Space Sys./Loral, Inc. v. Martin Marietta Corp.*, No. 95-CV-20122 SW, 1995 WL 562171, at *2 (N.D. Cal. Sept. 18, 1995) ("[A] district court has discretion to reconsider its own interlocutory orders.") (citing *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990)).  It does not suggest that this Court could not or should not be guided by its previous findings in rendering a decision on a pending motion.  Moreover, this action's procedural posture differs from *Langevine*.  Here, Defendants did not move for reconsideration of the Court's First MSJ Order; instead, Defendants appealed the Court's First MSJ Order because it enjoined Defendants from infringing on the mark.  The Ninth Circuit affirmed the Court's entry of a preliminarily injunction enjoining Defendants from infringing on the mark and, in doing so, it affirmed the Court's findings with respect to the Neo4j Sweden Software License.

Defendants further argue that the appeal only addressed the preliminary injunction, since a partial MSJ order is not appealable.  But the interpretation of Sections 7 and 10 of the Neo4j

1   Sweden Software License in the First MSJ Order is relevant and applicable to Plaintiffs' DMCA

2   claim.  *See* First MSJ Order at 24 ("The parties agree that the truth or falsity of Defendants'

3   statements hinge on "the interpretation of Section 7 [of the Neo4j Sweden Software License], and

4   GFI's right to remove the Commons Clause from the Neo4j Sweden Software License."); *id.* at 25

5   ("Thus, read correctly, Sections 7 and 10 prohibit a licensee from imposing further restrictions, but

6   do not prohibit a licensor from doing so.") (quoting *Graph Found., Inc.*, 2020 WL 6700480, at

7   *4).  Defendants' appellate brief expressly argued that the Court's preliminary injunction ruling

8   was "inextricably bound" with the resolution of the summary judgment, *i.e.*, the Court's

9   interpretation of the Neo4j Sweden Software License.  *See* ECF No. 181 at 12.  Indeed, The Ninth

10  Circuit expressly affirmed that "Defendants' representation that ONgDB is a 'free and open-

11  source' version of Neo4j® EE was literally false, because Section 7 of the Sweden Software

12  License only permits a downstream licensee to remove 'further restrictions' added by an upstream

13  licensee to the original work." *Id.* (citing USCA Memorandum, ECF No. 140 at 3).  The Court's

14  findings in the First MSJ Order, affirmed by the Ninth Circuit, address what Defendants now

15  argue with respect to the DMCA claim: that Suhy's removal of the Commons Clause from the

16  Neo4j Sweden Software License was proper.  Pursuant to the Ninth Circuit's holding, the Neo4j

17  Sweden Software License does not permit a licensee, such as Suhy, to remove the CMI and

18  commercial restrictions imposed by the license.

19      Even setting aside these rulings, this Court has rejected the very argument that the AGPL

20  permits a licensee to remove CMI and/orcommercial restrictions from the Neo4j license.  *See*

21  *Graph Found., Inc.*, 2020 WL 6700480, at *4.  In *Graph Foundation*, the defendant similarly

22  argued that Neo4j Sweden could not draw terms from the AGPL and impose additional

23  restrictions, an argument which this Court rejected.  *Id.* ("The Court, therefore, rejects the notion

24  that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License is based,

25  somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other additional

26  restriction in its own copyright license.").  In interpreting the AGPLv3, the Undersigned

27  concluded that it does not "give licensees the right to remove the [CMI]."  *Id.*

28  Case No.: 5:18-cv-07182-EJD
    ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.
    23

United States District Court
Northern District of California

1    For these reasons, the Court does not agree with the premise that Defendants' alleged

2    actions were contractually permitted and, therefore, rejects this argument as to Defendants' lack of

3    knowledge.  Thus, Plaintiffs have sufficiently shown knowledge as required under Section

4    1202(b), as well as the other requisite elements, in satisfaction of their burden.  Because

5    Defendants have not shown to the contrary, the Court GRANTS Plaintiffs' request for summary

6    judgment on the DMCA claim.

7                                      a.       **Injunctive Relief**

8    The Copyright Act and the DMCA permits the Court to "grant temporary and permanent

9    injunctions on such terms as it deems reasonable to prevent or restrain a violation" of §1202(b).

10   17 U.S.C. §§ 502(a), 1203(b)(1).  Plaintiffs seek a preliminary injunction restraining Defendants

11   from further infringement of Neo4j Sweden's copyrights and violations of the DMCA.  MSJ at

12   15–16.  To obtain an injunction, a plaintiff must show: "1) that it has suffered an irreparable

13   injury; (2) that remedies available at law, such as monetary damages, are inadequate to

14   compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

15   defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

16   by a permanent injunction."  *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal.

17   2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (citation omitted).

18   Plaintiffs argue that they have established all the requisite elements and are entitled to

19   injunctive relief.  First, Plaintiffs contend that they will suffer irreparable injury if the Court does

20   not enjoin Defendants from continuing to "relicense" Neo4j EE under the AGPL and falsely refer

21   to ONgDB and its derivatives as a "free and unrestricted" replacement for Neo4j EE.  MSJ at 15–

22   16; *see* Undisputed Facts, Facts 35–36.  Plaintiffs contend that by removing the commercial

23   restrictions from the Neo4j Sweden Software License, Defendants were able to convince the IRS

24   to download ONgDB software for free rather than acquire a commercial license from Plaintiffs.

25   MSJ at 7 (citing First MSJ Order at 6:21-26, 29:4-11, 29:22-30:6).  Plaintiffs allege that the IRS's

26   continued use of the improperly licensed ONgDB software and Suhy's maintenance of the

27   software is evidence that Suhy will continue this conduct unless enjoined.  *Id.*; *see id.* at 2.  The

1   Court agrees; "compelling support for a finding of irreparable harm" includes to a company's

2   "band, business, reputation, and goodwill." *Apple Inc.*, 673 F. Supp. 2d at 948; *see Rent-A-Ctr.,*

3   *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

4          Second, Plaintiffs contend that the loss of control over licensing of the Neo4j EE

5   commercial license cannot be compensated by monetary damages alone.  MSJ at 15.  While

6   economic injury alone does not constitute irreparable harm, intangible injuries do.  *Rent-A-Ctr.,*

7   *Inc.*, 944 F.2d at 603; *Apple Inc.*, 673 F. Supp. 2d at 949–50 ("[A]n award of damages would be

8   inadequate, simply because the harm caused to [the liscensor's] reputation, goodwill, and brand is

9   difficult, if not impossible, to quantify.").

10         Third, "courts must balance the competing claims of injury and must consider the effect on

11   each party of the granting or withholding of the requested relief."  *Klein v. City of San Clemente,*

12   584 F.3d 1196, 1199–1200 (9th Cir. 2009) (internal citation omitted).  Plaintiffs argue that the

13   balance of hardships weigh in their favor because "an injunction would serve the narrow purpose

14   of preventing or restraining further infringement of Neo4j Sweden's copyrights and violations of

15   the DMCA."  *Id.* at 16.  In contrast, Defendants cannot legitimately and reasonably assert that

16   refraining from violating the DMCA would impose a hardship on them.  *Id.*; *see Apple Inc.*, 673 F.

17   Supp. 2d at 950 (reasoning that defendant "does not (and cannot) claim any *legitimate* hardships

18   as a result of being enjoined from committing unlawful activities.").   Finally, Plaintiffs contend

19   that the only narrow purpose of the injunction is to vindicate Neo4j's rights in its copyright, and

20   the Court agrees.  *Id.*

21         Defendants oppose injunctive relief but their opposition to Plaintiffs' request is based on

22   the same premise that the AGPL does not permit Neo4j to "convert" it into a commercial license.

23   Opp'n to MSJ at 24–25.  For the reasons already discussed, this argument is unavailing.

24         For these reasons, the Court GRANTS Plaintiff's request for a preliminary injunction.

25                **2.    Defendants' Breach of Exclusivity Contract Counterclaim**

26         Next, Defendants allege that Neo4j USA and PureThink entered into the Exclusivity

27   Agreement permitting PureThink to sell Neo4j Government Edition to the U.S. Government.

28   Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1    Opp'n to MSJ at 24; *see* ECF No. 177 ¶¶ 53–57.  Plaintiffs contend they are entitled to summary

2    judgment on Defendants' counterclaim because Defendants have failed to show the existence of

3    an Exclusivity Agreement; even if there had been an Exclusivity Agreement, Plaintiffs argue that

4    Neo4j did not breach the purported contract.  MSJ at 21.

5         The alleged Exclusivity Agreement is based on a discussion between Neo4j COO Lars

6    Nordwall and Suhy and a letter provided to PureThink on April 11, 2015, and again on June 23,

7    2016.  FACC ¶ 16; *see id.* Exs. C, D.  The letter is addressed "[t]o whom it may concern" and

8    states that PureThink is "the only Neo4j Government Edition reseller" authorized to "resell and

9    support to the US Federal Government, Department of Defense (DOD), and Intelligence

10   Agencies."  *Id.*  It further states that "[t]his agreement can be provided to Government Agencies to

11   support any Federal Acquisition Regulation (FAR) regulations."  *Id.*  The letter is signed by both

12   Nordwall and Suhy.  *Id.*

13        On June 19, 2017, Neo4j emailed Defendants notice that Neo4j is "discontinuing [the]

14   Neo4j Government Edition effective June 19, 2017 such that it is no longer available for sale."

15   Decl. of Jeffrey M. Ratinoff, ECF No. 183-1 ("Ratinoff Decl."), Ex. 19.  Neo4j instructed Suhy

16   that "[a]ll references to Neo4j Government Edition must be removed immediately from any

17   marketing materials, including any web sites."  *Id.*  Approximately one month later, Plaintiffs

18   emailed Michael C. Dunn at IRS, notifying IRS of the termination of the Partnership Agreement

19   and offering assistance with transitioning to an authorized partner "to ensure IRS continues to

20   receive the support it requires in a manner that respects Neo's intellectual property rights and

21   contractual relationships."  FACC, Ex. D at 2.  It also states, in relevant part:

22        Neo understands that IRS entered into an agreement with PureThink
          in September 2016 to purchase a commercial license to Neo4j
23        Government Edition and for consulting services and support. We
          understand that the term of that agreement expires on September 22,
24        2017. We further understand that IRS paid PureThink $229,000 for a
          Neo4j subscription and the consulting services.

25        Regarding IRS's purchase of a Neo4j subscription, Neo still has not
          received a purchase order from PureThink. As a result of PureThink's
26        termination, please be advised that PureThink is no longer authorized
          to purchase a Neo4j subscription on behalf of IRS.  Neo will work
27        with IRS to purchase a subscription through an authorized Neo4j

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

partner.

FACC, Ex. D (emphasis added).

Defendants allege that Plaintiffs breached this Exclusivity Agreement when Plaintiffs terminated the contract.  Opp'n to MSJ at 22–23.  Because the Exclusivity Agreement does not contain an express termination clause, Defendants contend that the Court must determine whether termination of the agreement would impliedly include protections for PureThink's up-front investment.  *Id.*  According to Defendants, "[a] fair analysis of the nature and circumstances of the Exclusivity Agreement would not permit a termination clause that permitted Neo4j USA to terminate PureThink as the exclusive reseller thereof without cause and without further compensating PureThink."  *Id.* at 23 (quotations and citation omitted).  PureThink allegedly spent $650,000 to "design, develop, and build" the Government Edition and suffered $1.3 million in damages as a result of Plaintiffs' breach.  *Id.*; *see* ECF No. 177 ¶ 57.

Plaintiffs assert they are entitled to summary judgment on Defendants' counterclaim because Defendants have failed to establish the four requisite elements of a contract.  Mot. at 20–21.  Summary judgment is appropriate where the party claiming breach cannot establish one of the four essential elements.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiffs deny the existence of a separate Exclusivity Agreement, contending that Defendants cannot establish contract formation based on the letter because they never reached mutual assent or consented to any terms of any agreement.  MSJ at 21.

Defendants argue that the Nordwell letter constitutes an enforceable contract, in part, because it expressly refers to an agreement.  Opp'n to MSJ at 22; *see* FACC Ex. C ("This ***agreement*** can be provided to Government Agencies to support any Federal Acquisition Regulation (FAR) regulations.") (emphasis added).  Moreover, it is undisputed that the letter is signed by both parties.  Opp'n to MSJ at 22.

However, the purported Exclusivity Agreement lacks any contractual terms, and without express terms, the obligations that the parties have agreed to, and the scope of the duties, are unknown.  "Under California law, a contract will be enforced if it is sufficiently definite (and this

is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 208 (Cal. Ct. App. 2006) (finding that "because essential terms were only sketched out, with their final form to be agreed upon in the future" such that "the parties had at best an 'agreement to agree,' which is unenforceable."). "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Id.* (alteration in original) (quoting *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal.2d 474, 481 (1955)). A contract that is "so uncertain and indefinite" that the intention of the parties cannot be ascertained is void and unenforceable. *Id.* at 209 (quotations and citations omitted). Here, the letter that forms the basis of the Exclusivity Agreement contains only two sentences stating that PureThink is the only Neo4j Government Edition Reseller and that the letter may be provided to government agencies. *See* FACC Ex. C. Defendant argues that the agreement is "unambiguous" and, inexplicably argues that "[t]he terms include the words "[t]his agreement." Opp'n at 22. But aside from the letter referring to itself as "this agreement," it lacks any language indicating that the parties intended to enter into an agreement or what obligations such an agreement would entail.

Even if the letter contained sufficient information to suggest the existence of a contract, there appears to be no ambiguity as to the purpose of the letter and the meaning of "exclusive reseller" in the context of the Government Edition. *See, e.g.*, *Wolf v. Superior Ct.*, 114 Cal. App. 4th 1343, 1350 (Cal. App. Ct. 2004), *as modified on denial of reh'g* (Feb. 19, 2004) (Courts may look to extrinsic evidence to resolve ambiguous contact terms); *Walter E. Heller W., Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (Cal. Ct. App. 1987) ("[P]arol evidence is admissible to aid in interpreting the agreement."). Plaintiffs contend that, as made clear by the Neo4j letter, PureThink was permitted to act as the exclusive reseller of the Government Edition under the Partnership Agreement, but that Neo4j USA never consented to or entered into a formal exclusivity agreement with PureThink separate from the Partnership Agreement as Defendants argue. MSJ at 21. According to Plaintiffs, the letter's language that PureThink is "the only Neo4j

Government Edition reseller" refers to the fact that the Government Edition was created for "sole-source justification," meaning that it enabled PureThink to bypass mandatory competitive bidding processes and utilize a faster sole-source procurement track.  MSJ at 22.  The parties agree that the Government Edition was created to address sole source justification, but Defendants argue that it was also "designed to address the shortcomings that Neo4j Enterprise had at the time relating to US government security and accessibility needs."  Undisputed Facts, Fact 66.  However, there is a dearth of evidence in the record that the Government Edition was developed by Defendants for PureThink's exclusive sale.

In emails sent by Suhy to Neo4j, Suhy acknowledges that PureThink is "the only reseller of the Government Edition which allows *for sole source procurement justification for Federal agencies*."  Ratinoff Decl., Ex. 14 at 4 (emphasis added).  In the same email, Suhy expressly recognizes that the Government Edition was created to streamline government procurements.  *Id.* He states:

> We have all the necessary contractual paperwork for *sole source justification*. We have had several sole source procurements already. I know that government procurement can provide quite a few obstacles, *which is why Neo Technology created the Government Edition*.

*Id.* at 2 (emphasis added).  Earlier in the email thread, Suhy also states that "Neo4j Government Edition is an official Neo Technology product specifically created for US Government procurement."  *Id.* at 4.  Other emails from Suhy to Neo4j representatives refer to "create[ing] something called the 'Government Edition' *so that we can more easily 'sole source' it to government agencies*."  Ratinoff Decl., Ex. 10 (emphasis added).

Suhy's emails support a finding that the express intent of the letter and the contemporaneous understanding between the parties at the time it was sent was that the Government Edition was created for sole source justification so that PureThink could more efficiently sell the package to various government agencies; it does not reveal an understanding between the parties that the Government Edition was created for the purpose put forth by Defendants.  *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the

1    mutual intention of the parties as it existed at the time of contracting").  "If there is no evidence

2    establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual

3    consent to contract and no contract formation." *Bustamante*, 141 Cal.App.4th at 208 (quoting

4    *Weddington Prods., Inc. v. Flick*, 60 Cal.App.4th 793, 811, 71 Cal.Rptr.2d 265 (Cal. Ct. App.

5    1998)).  "Mutual consent is determined under an objective standard applied to the outward

6    manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts,

7    and not their unexpressed intentions or understandings." *Id*. (quotations and citations omitted).

8    The evidence before the Court only shows that the parties mutually agreed that the Government

9    Edition allows for sole source procurement justification, and the Neo4j letter was provided so that

10   PureThink could bypass mandatory government bidding processes and fast track sole-source

11   procurement.

12        Although Suhy's emails reference an "exclusivity agreement," the language of the

13   "contract" attached to Suhy's email states that:

14          ***The purpose of this agreement is to ensure that US Federal, DOD
            and State governments can quickly*** procure Neo4J Enterprise
15          licenses via Sole-Source using the justification defined by Federal
            Acquisition Regulation 6.302-1 which states: "Only one responsible
16          source and no other supplies or services will satisfy agency
            requirements."

17   Ratinoff Decl., Ex. 7 (emphasis added).  In Suhy's follow-up email inquiring whether Neo4j had

18   "any comments on the agreement," Neo4j responded that they were forwarding it to their legal

19   department for discussion.  *Id.*  Neo4j did not, for example, express a different understanding of

20   PureThink being the "only reseller" of the Government Edition other than the clearly stated

21   understanding that the language was specifically used in the context of streamlining government

22   procurements of the Government Edition package.  The exchanges between the parties reveal that

23   the letter was essentially used to satisfy government bureaucracy to the benefit of each party.

24        Finally, the evidence before the Court suggests that, even if there was an Exclusivity

25   Agreement and the contractual obligations had been performed, Neo4j could not have breached

26   the agreement by terminating PureThink.  The "agreement" that Suhy provided to Neo4j states

27   that Neo4j may cancel "at any time for any reason."  Ratinoff Decl., Ex. 8.  Indeed, Suhy's email

28

1  to Erik Nolten at Neo4j expressly provides that "you can cancel the agreement tomorrow - for any

2  reason." Ratinoff Decl., Ex. 7. A reasonable jury could not find, even if Suhy established the

3  existence of an Exclusivity Agreement, that Neo4j breached the agreement by terminating it

4  "without cause" as Defendants argue.[6]

5        In sum, Plaintiffs have met their burden. Defendants have failed to product evidence

6  sufficient to establish the existence of a contract. Because the existence of a contract is an

7  essential element of a breach of contract cause of action, Defendants counterclaim for Breach of

8  Exclusivity Contract fails. Accordingly, the Court GRANTS Plaintiff's request for summary

9  judgment.

10 **IV.    CONCLUSION**

11       For the foregoing reasons, the Court GRANTS Plaintiff's *Daubert* motion to exclude the

12 Kuhn Report in its entirety.

13       The Court also GRANTS Plaintiffs' motion for summary judgment in Plaintiffs' favor

14 with respect to Plaintiff's DMCA claim and Defendants' breach of contract claim.

15       The Court further ORDERS the following preliminary injunction against Defendants:

16       1)  Defendants may not make further use of, or fork any source code first released under

17            the Neo4j Sweden Software License, including Neo4j EE 3.4, Neo4j EE 3.5, or any

18            subsequent versions, subversions or derivatives thereof.

19       2)  Defendants may not make further use of, or fork any source code first released under a

20

21  ───────────────

22  [6] Defendants assert that consideration of Suhy's emails is barred by the parol evidence rule, but as
     the Court has made clear, the Neo4j letter cannot constitute a contract because it lacks any terms
     or any specific description of the parties' obligations and their scope. Even if the Neo4j letter did
23  contain definite terms to infer the existence of a contract, parol evidence and/or extrinsic evidence
     would be permitted to determine the parties' interpretation of "exclusivity" with respect to the
24  Government Edition. *Walter E. Heller Western, Inc.*, 196 Cal.App.3d at 158 ("When two equally
     plausible interpretations of the language of a contract may be made . . . parol evidence is
25  admissible to aid in interpreting the agreement . . . ."). Likewise, evidence would be permissible
     to determine ambiguities—such as how and when the agreement may be terminated—although,
26  here, extrinsic evidence still does not support the existence of a contract as discussed above. *Wolf*,
     114 Cal. App. 4th at 1350 ("Where the meaning of the words used in a contract is disputed, the
27  trial court must provisionally receive any proffered extrinsic evidence which is relevant to show
     whether the contract is reasonably susceptible of a particular meaning.").

28  Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

1   commercial license, including Neo4j EE 3.5, Neo4j EE version 4.x, Neo4j EE version

2   5.x, or any subsequent versions, subversions or derivatives thereof.

3)   Defendants shall not offer for sale, advertise or promote ONgDB, GraphStack GDB

and GDB (and any derivative or similar software created and/or maintained by

Defendants), or any other software containing Neo4j EE source code with a DMCA

Violation or that was first released subject to the Neo4j Sweden Software License.

4)   Defendants shall not state, claim, advertise, or represent that Neo4j Sweden AB's

inclusion of the Commons Clause to the license governing Neo4j EE violated the terms

of the GNU Affero General Public License, version 3 ("AGPLv3"), or make similar

statements interpreting the terms of the AGPLv3.

5)   Defendants shall not state, claim, advertise or represent that the Free Software

Foundation ("FSF") or that any government agency determined and/or confirmed that

(a) the inclusion of the Commons Clause to any license governing Neo4j EE violated

the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any

software license governing Neo4j EE and/or ONgDB.

6)   Defendants may only make further use of the following publicly available Neo4j open

source code, subject to the terms of their respective open source licenses: (i) Neo4j CE

Source Code under the GNU General Public License, version 3 ("GPL"); (ii) Neo4j EE

version 3.2.14 source code released under the AGPLv3; (iii) Neo4j EE version 3.3.10

source code released under the AGPLv3; (iv) Neo4j EE version 3.4.0.RC02 source

code released under the AGPLv3.  Nothing herein, however, shall be construed as a

license or otherwise permit Defendants to use any source code, patches or source code

commits for Neo4j EE version 3.3 or Neo4j EE version 3.4 that were first released

under the Neo4j Sweden Software License.  Further, nothing herein shall be construed

as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source

code that was first released as Neo4j EE version 3.5 or otherwise under the Neo4j

Sweden Software License, including but not limited to, all beta releases, release

Case No.: 5:18-cv-07182-EJD
ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.

United States District Court
Northern District of California

candidates, production releases, stable releases, and official releases, or any subsequent versions, subversions, patches or derivatives thereof.

7) Within three (3) days of entry of this Order, Defendants shall remove, take down, destroy and prevent further access to all source code, object code, binaries, build files, build scripts, plug-ins and distributions from any and all public and private repositories (e.g., Docker, GitHub and GitLab) that they have access to, control and/or maintain, including but not limited to

https://hub.docker.com/repository/docker/graphstack/ongdb,

https://hub.docker.com/repository/docker/graphstack/gdb,

https://github.com/graphstackio/gdb, that contains any Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.  This includes, but is not limited to the removal of (a) ONgDB version 3.4, ONgDB version 3.5, ONgDB version 3.6, ONgDB version 4.x, ONgDB version 2.x, and any versions or subversions thereof; (b) GraphStack GDB version 3.4, GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof; and (c) GDB version 3.4, GDB version 3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof.

8) Within three (3) days of entry of this Order, Defendants shall permanently remove, take down, destroy and prevent further access to any version of ONgDB, GraphStack GDB and GDB (and any derivative or similar software created and/or maintained by Defendants) that is within their possession, custody or control, contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License, including but not limited to (a) OngDB version 3.4, OngDB version 3.5, OngDB version 3.6, OngDB version 4.x, OngDB version 2.x, and any versions or subversions thereof; (b) GraphStack GDB version 3.4, GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof; and (c) GDB version 3.4, GDB version

United States District Court
Northern District of California

3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof. This removal and destruction shall be effectuated regardless of where that code resides, e.g., Defendants' websites (i.e., https://igovsol.com/, https://purethink.com/, https://graphstack.io/), and any the Content Delivery Services invoked therein), AWS, AWS Gov Cloud, Docker, GitHub, GitLab and/or any other source code repository or hosting service.

9)  Within three (3) days of entry of this Order, Defendants shall take down, delete and otherwise remove all webpages, posts on GitHub, discussion forums, social media posts on Twitter, Facebook, Instagram or similar social media sites, and blog posts (and all links thereto) that they own, control, or have the ability and/or right to remove that directs, redirects, offers, advertises, promotes, represents or refers to ONgDB, GraphStack GDB, GDB (and any derivative or similar software created and/or maintained by Defendants that is within their possession, custody or control) or any other software containing Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.

10) Within fourteen (14) days of entry of this Order, Defendants shall provide a certification from the Internal Revenue Service (IRS) that all versions of ONgDB, GraphStack GDB and GDB, and all other source code and software that contains any Neo4j® Enterprise Edition source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License has been removed from the Internal Revenue Service's internal servers and repositories (i.e. GitLab and GitHub) and cloud storage (i.e. Gov Cloud). This includes, but is not limited to the removal of (a) OngDB version 3.4, OngDB version 3.5, OngDB version 3.6, OngDB version 4.x, OngDB version 2.x, and any versions or subversions thereof; (b) GraphStack GDB version 3.4, GraphStack GDB version 3.5, GraphStack GDB version 3.6, GraphStack GDB version 4.x, and any versions or subversions thereof; and (c) GDB version 3.4, GDB version 3.5, GDB version 3.6, GraphStack GDB version 4.x, and any versions or

United States District Court
Northern District of California

subversions thereof.

11) Defendants shall not offer for sale or provide for any paid development, support, maintenance or hosting services for ONgDB, GraphStack GDB, GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License. However, nothing herein prevents Defendants from offering paid consulting services for installations of Neo4j EE software, but only where the customer receiving such services has a commercial license and has fully paid the commercial license fees to Plaintiffs.

12) Defendants shall not make any statement and/or representations to any third party, affirmatively or in response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j EE source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by Paragraph 6.

13) Defendants shall not have any expressed or implied license to use and shall not make any further use of any of Plaintiffs' source code, object code, machine code and software that is subject to a commercial license or paid commercial subscription, including but not limited to Neo4j EE version 3.4, and all versions and subversions thereof; Neo4j EE version 3.5, and all versions and subversions thereof; Neo4j EE version 4.x, and all versions and subversions thereof; and Neo4j EE version 5.x, and all versions and subversions thereof.  Nothing herein, however, restricts Defendants from purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs or their authorized resellers.

The Parties are further ORDERED to file an amended Joint Final Pretrial Conference Statement in light of this Order no later than **October 31, 2023**.

1    **IT IS SO ORDERED.**

2    Dated: October 25, 2023

3

4    _____

5    EDWARD J. DAVILA
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:18-cv-07182-EJD
     ORDER GRANTING MOT. FOR PARTIAL SUMM. J.; GRANTING *DAUBERT* MOT.