John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406
*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

Adron W. Beene, Bar No. 129040
adron@adronlaw.com
Adron G. Beene SB# 298088
adronjr@adronlaw.com
Attorney at Law
7960 Soquel Drive Suite #296
Aptos, CA 95003
Tel: (408) 392-9233

Attorneys for Defendants and Counterclaimants
PURETHINK LLC, IGOV INC., and JOHN
MARK SUHY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, NEO4J SWEDEN, AB, a Swedish corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>    Defendants.<br> | CASE NO.  5:18-cv-07182-EJD<br><br>**STIPULATION TO THE AMOUNT OF PLAINTIFFS' LOST PROFITS AND DEFENDANTS' PROFITS**<br><br>Trial Date: November 14, 2023 |
| AND RELATED COUNTERCLAIMS. | |

**STIPULATION**

This Stipulation is made between Plaintiffs and Counter-Defendants Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB (collectively "Plaintiffs") and Defendants and Counterclaimants PureThink LLC, iGov Inc. and John Mark Suhy (collectively, "Defendants") through their respective counsel as follows:

WHEREAS, on November 28, 2023 at trial, Plaintiffs offered Steven Boyles an expert witness to provide his opinions and conclusions on the actual damages in the form of net lost profits that Plaintiffs incurred as a result of Defendants' violations of the DMCA and Lanham Act that were the subject of the Court's orders granting Plaintiffs' motions for summary judgment. *See* Dkt. Nos. 118, 216, 229.

WHEREAS, on November 28, 2023 at trial, Plaintiffs also offered Steven Boyles an expert witness to provide his opinions and conclusions on the gross profits that Defendants generated from providing support and development services to the IRS through contracts with eGovernment Solutions and ASR Analytics, LLC. *See* Dkt. Nos. 118, 216, 229.

WHEREAS, Plaintiffs and Defendants (collectively, the "Parties") agreed that in lieu of Mr. Boyles testifying in full regarding the basis for his opinions and calculations of the amount of actual damages that Plaintiffs incurred as a result of Defendants' violations of the DMCA and Lanham Act, and the gross profits that Defendants generated from providing support and development services to the IRS, the parties would stipulate to those calculations and their underlying basis, as well as his conclusions and interest calcuations through December 1, 2023.

ACCORDINGLY, the Parties HEREBY STIPULATE to the following undisputed facts, calculations and conclusions for incorporation into the trial record without the necessity of supporting testimony or exhibits:

1.      The Maryland Procurement Office (a/k/a the National Security Agency, the NSA and the MPO) tasked Next Century to analyze available graph database technologies, including Neo4j® EE.

2.      Next Century and the MPO required the enterprise-only features, such as causal clustering and multi-data centers, offered by both Neo4j® EE and ONgDB.

3.    Next Century learned about the pricing of Neo4j Enterprise software bundles offered by Neo4j USA and iGov from iGov's website.

4.    In October 2018, Next Century exchanged emails with Suhy regarding representations made on iGov's website that ONgDB v3.4 was an open source version of Neo4j® EE that provided the same enterprise-only features for free.

5.    Suhy told Next Century that the MPO could use ONgDB v3.4 under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.

6.    As a result of Next Century's communications with Suhy, Next Century downloaded ONgDB v3.4 and began evaluating against Neo4j® EE v3.4.

7.    Defendants' removal of the Commons Clause from the license governing ONgDB enabled Next Century and the MPO to use ONgDB for free rather than pay for a commercial license to Neo4j® EE.

8.    In a series of emails with Next Century ending on January 4, 2019, Suhy confirmed that ONgDB v3.5 would have feature parity with the enterprise features of Neo4j® EE v3.5, and would also be available without restrictions on the number of clusters, instances and cores and without paying Neo4j USA for a commercial license.  This led Next Century to upgrade from ONgDB v3.4 to ONgDB v3.5 for use in the KMS Project.

9.    By February 2019, the MPO had chosen to use ONgDB v3.5 over Neo4j® EE v3.5 for continued development work for the MPO for use in the KMS Project.

10.    On February 5, 2019, Next Century informed Neo4j USA of this decision, stating, "[w]e have found that open-sourced (non-commercial) builds from the Neo4j source code provide the clustering and security requirements needed in our environment."

11.    In March 2019, Next Century gave Neo4j USA the required specifications for its ongoing KMS Project with the MPO and ask for Neo4j USA for a quote for use in a production environment.

12.    On April 19, 2019, Jason Zagalsky of Neo4j USA sent a 3-year Neo4j Enterprise Edition Enterprise Bundle based on those requirements (TX118).

- 3 -

13.     On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal with the MPO, and was instructed by the MPO to continue using ONgDB. The reason for the MPO continuing to use ONgDB over Neo4j® EE was price.

14.     On July 21, 2019, Next Century informed Neo4j USA that the MPO was not interested in the Neo4j® EE proposal. Again, the deciding factor between ONgDB and Neo4j® EE was price.

15.     Next Century continued to use ONgDB v3.5, which was placed into a production environment for the MPO in or about October 2020.

16.     The hypothetical negotiation between Neo4j USA on one hand, and Next Century and the MPO on the other hand for a commercial license to Neo4j® EE for use in the KMS Project would have occurred in April 2019 (TX118).

17.     Under the April 19, 2019 proposal (TX118), Next Century and the MPO had the option to (a) purchase three one-year subscriptions on an incremental basis for a total of $2,667,00 ("MPO Undiscounted Fee"); or (b) purchase a 3-year subscription for a total of $2,266,950, which reflects a 15% multi-year, paid up front discount ("MPO Discounted Fee").

18.     The MPO's willingness to pay for a commercial license for Neo4j® EE for the KMS Project is supported by its history of purchasing both discounted multi-year commercial licenses for Neo4j® EE and purchasing 1-year commercial licenses and renewing those licenses at undiscounted amounts (TX15, Lines 337-343).

19.     Neo4j USA's sale of a commercial license to Next Century and the MPO for the KMS Project would have been through its reseller, Intellipeak.  As a result, a reseller fee of 7% would be applied to the total discounted amount of a multi-year deal with Next Century and the MPO, as well as to the purchase of a one-year subscription and each subsequent renewal thereof.

20.     In 2018, employee commissions paid by Neo4j USA on commercial license sales averaged 15.26%.  In 2019, employee commissions paid by Neo4j USA on commercial license sales averaged 13.27%.  The employee commission cost would apply to the entire MPO Discounted Fee, while the employee commissions cost would only apply to the first year's revenue of year-to-year renewals on the MPO Undiscounted Fee.

21.     As reflected by **Exhibit 1** (Slide 13) hereto, Neo4j USA's net lost profits for the KMS Project based on the MPO Discounted Fee and the 2018 employee commission fee of 15.26% is $**1,786,542**.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$132,308**.

22.     As reflected by **Exhibit 1** (Slide 13) hereto, Neo4j USA's net lost profits for the KMS Project based on the MPO Discounted Fee and the 2019 employee commission fee of 13.27% is **$1,828,497**. Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$135,282**.

23.     As reflected by **Exhibit 1** (Slide 13) hereto, Neo4j USA's net lost profits for the KMS Project based on the MPO Undiscounted Fee and the 2018 employee commission fee of 15.26% is **$2,354,145**.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$139,069**.

24.     As reflected by **Exhibit 1** (Slide 13) hereto, Neo4j USA's net lost profits for the KMS Project based on the MPO Undiscounted Fee and the 2019 employee commission fee of 13.27% is **$2,370,598**. Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$140,288**.

25.     Suhy submitted a bid for a new contract issued by the IRS via another entity that he had an ownership interest in at the time, eGovernment Solutions, Inc. ("eGov Sol" or "eGov Solutions").

26.     Under the proposal for the new contract signed by Suhy, the scope of work required iGov to perform "all operations and maintenances duties for all components of the CKGE framework…."   iGov would also be "responsible for ensuring any open source products within the CKGE conform to their license-terms" and iGov would "need to work with the following components: React, Angularjs, Neo4j…."

27.     On May 22, 2018, Neo4j USA informed the IRS, including those in RAAS, that Neo4j Sweden added Commons Clause to Neo4j® EE 3.4, and the resulting need to obtain a commercial subscription if they intended to use that software in the CKGE platform.

28.     On May 22, 2018, Suhy sent an email to the IRS claiming Neo4j Sweden could not add the Commons Clause to the license governing Neo4j® EE v3.4.

29.     On May 24, 2018, the RAAS division of the IRS awarded eGov Solutions the new contract, Order No. 2032H8-18-P-00151, as amended Order No. 2032H8-18-P-00168, to further develop and support the CKGE in May 2018 ("CKGE Contract").

30.     In July 2018, Jason Zagalsky of Neo4j USA, met with employees of the IRS, and then provided a requested quote of $156,000 for one-year subscription and a $397,800 for a 3-year subscription for a Neo4j® EE v3.4 based on then-current requirements of CKGE.

31.     As of August 2018, the IRS understood that Neo4j® CE had a performance limitation to only 4 cores, while Neo4j® EE had enterprise-only features, came with professional services and subscriptions, and was priced based on number of cores.

32.     Under the CKGE Contract, Suhy provided input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE.

33.     In August 2018, Suhy recommended that the IRS integrate ONgDB v3.4 rather than Neo4j® EE v3.4 in the CKGE framework, and claimed that "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."

34.     Based on Suhy's recommendation, Mike Dunn at the IRS instructed him to "[g]o ahead and integrate the ONgDB into the CKGE framework we'll deploy" on August 14, 2018.

35.     While working at the IRS, Mr. Suhy helped the IRS upload ONgDB source code into the IRS's internal repository.

36.     The IRS decided to not allocate $156,000 for a license to use Neo4j® EE in the CKGE platform because ONgDB was a free and open, unrestricted alternative.

37.     Under the CKGE contract, Suhy and iGov were responsible for supporting, maintaining and updating ONgDB in an internal GitLab repository for the RAAS at the IRS.

38.     Under the CKGE contract, Suhy and iGov helped the IRS upgrade the CKGE

platform to ONgDB v3.5 in April 2019 and integrated subsequent subversions through at least April 2022.

39.    After April 2022, the IRS started calling ONgDB v3.5 just "GDB" due to the injunction entered against GFI and its rollback of ONgDB source code.

40.    GDB was merely a name change because it was still based on Neo4j® EE v3.5 source code that was improperly licensed under the AGPL without the Commons Clause, which Suhy continued to be responsible for maintaining on the IRS's internal Gitlab repository.

41.    The IRS used at least one Neo4j® enterprise-only feature, node ID, via ONgDB in CKGE.

42.    The IRS understood that Neo4j® EE can run Cypher queries significantly faster than Neo4j® CE, which is advantageous in terms of productivity.

43.    The initial hardware available to run Neo4j® EE in the IRS's pre-CKGE platform were for one server with at least 16 cores and 1 terabyte of RAM under the September 23, 2016 contract award to PureThink.

44.    As of December 2018, the CKGE (a/k/a "main graph") was running, or was expected to be running, on at least two production servers and one development server utilizing ONgDB.  Each machine was comprised of a DL380 with 32 cores and 256GB of RAM at minimum.

45.    Between 2019 and 2022, the IRS was running ONgDB on three production servers, and one development server in the CKGE.

46.    Each machine in the CKGE running ONgDB between December 2018 and November 2022 was comprised of a DL380 with 32 cores and 256GB of RAM.

47.    As of November 2022, the IRS switched to running ONgDB on two production servers in the CKGE.  Thereafter, the IRS would only want the bare-minimum Neo4j® EE package for two nodes, each with 16 cores and 256GB RAM for the CKGE.

48.    Defendants' removal of the Commons Clause from the license governing ONgDB enabled the IRS to use ONgDB for free rather than pay for a commercial license to Neo4j® EE beyond the CKGE.

49.     Between December 2018 and 2021, one instance of ONgDB was running on its own server in YK1 at the IRS.  In 2022, two instance of ONgDB in production and two instances of ONgDB in development/test in YK1 at the IRS.

50.     Starting in 2019 and continuing through 2022, the IRS ran separate instances of ONgDB in additional projects, including Corporate Graph, Excise Graph, COVID Graph, Policy Net, Individual Graph, CPEO Graph and Ghost Preparer.

51.     The minimum server specifications for YK1, Corporate Graph, Excise Graph, COVID Graph project, Policy Net, Individual Graph, CPEO Graph and Ghost Preparer running ONgDB were DL380 with 12 cores and 256GB of RAM.

52.     The IRS's willingness to pay for a commercial license for Neo4j® EE for the CKGE and other projects that used ONgDB is supported by its history of purchasing 1-year commercial licenses to Neo4j® EE at discounted amounts and renewing those licenses in other instances (TX15, Lines 263-277).

53.     August 1, 2018 and August 1, 2019 are two hypothetical negotiation dates for when the IRS would have purchased a commercial license for Neo4j® EE to be used in the CKGE due to a change in hardware specifications and requirements.

54.     The IRS would have purchased a commercial subscription based off a modified Enterprise Bundle for $156,000 from the October 1, 2017 price list (TX16) at the first hypothetical negotiation for the CKGE.

55.     During the second hypothetical negotiation for the CKGE, the IRS would have purchased a commercial subscription for an Enterprise Bundle with additional cores to match the new hardware specifications of the CKGE, plus at least one test machine as reflected in **Exhibit 2** hereto (Slide 17).

56.     Neo4j USA would have offered Discovery Bundle pricing to the IRS from period-correct price list (TX16-TX19) for each project beyond the CKGE that used ONgDB on less than 3 machines.  The hypothetical negotiation dates for when the IRS would have purchased a commercial license for Neo4j® EE for those projects are attached hereto as **Exhibit 3** (Slide 19), and a summary of the gross revenue lost for each project is attached hereto as **Exhibit 4** (Slide 20).

57.     Despite having a history of purchasing commercial subscriptions for Neo4j® EE with year-to-year renewals, with no multi-year subscriptions, the IRS may have negotiated an additional 15% discount on the subscription price during the aforementioned hypothetical negotiations as reflected in **Exhibit 5** (Slide 22) attached hereto.

58.     Neo4j USA's sale of commercial licenses for Neo4j® EE would have been through its reseller, Intellipeak, and would receive a 7% reseller fee after any negotiated discount on the subscription fee.  **Exhibit 6** (Slide 24) hereto reflects the application of the 7% reseller fee in the scenario where the IRS was successful in negotiating an additional 15% discount on the already-discounted subscription price.  **Exhibit 7** (Slide 26) reflects the application of the 7% reseller fee in the scenario where the IRS fails to negotiate an additional 15% discount on the already-discounted subscription price.

59.     The first-year revenue generated from Neo4j USA's sale of commercial licenses for Neo4j® EE to the IRS also would have been subject to the payment of employee commissions at the 2018 average rate of 15.26% or the 2019 average rate of 13.27%.

60.     The left column of the left-hand table in **Exhibit 8** (Slide 28) hereto reflects the application of a 15.26% employee commission applied to the first year of subscription for each IRS project that used ONgDB after the application of a 7% reseller fee and an additional negotiated 15% subscription fee discount, for a total of **$2,627,641** in lost profits that Neo4j USA incurred as a result of the IRS's use of ONgDB.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$126,727**.

61.     The right column of the left-hand table in **Exhibit 8** (Slide 28) hereto reflects the application of a 15.26% employee commission applied to the first year of subscription for each IRS project that used ONgDB after the application of a 7% reseller fee with no additional subscription fee discount, for a total of **$3,069,646** in lost profits that Neo4j USA incurred as a result of the IRS's use of ONgDB.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$147,136**.

62.     The left column of the right-hand table in **Exhibit 8** (Slide 28) hereto reflects the application of a 13.27% employee commission applied to the first year of subscription for each IRS project that used ONgDB after the application of a 7% reseller fee and an additional negotiated 15% subscription fee discount, for a total of **$2,646,557** in lost profits that Neo4j USA incurred as a result of the IRS's use of ONgDB.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$127,867**.

63.     The right column of the right -hand table in **Exhibit 8** (Slide 28) hereto reflects the application of a 13.27% employee commission applied to the first year of subscription for each IRS project that used ONgDB after the application of a 7% reseller fee with no additional subscription fee discount, for a total of **$3,091,392** in lost profits that Neo4j USA incurred as a result of the IRS's use of ONgDB.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$148,431**.

64.     After the IRS awarded the CKGE Contract to eGov Solutions, it made an initial $300,000 payment to eGov Solutions in July 2018.  At that time, the money received from the IRS on the CKGE Contract was to be paid in its entirety to Mr. Suhy, at his sole discretion.

65.     eGov Solutions maintained a Wells Fargo bank account for all the payments received from the IRS ("the Wells Fargo Account"), which Suhy had access to and was authorized to disburse the payments made by the IRS as he saw fit.

66.     At some point, Suhy asked eGov Sol to make the payments received from the IRS to iGov rather than personally.

67.     eGov Solutions considered all the payments made by the IRS under the CKGE Contract into the Wells Fargo Account to belong Suhy and later iGov.

68.     The IRS paid a total of $1,316,000 to eGov Solutions over the course of five years under the CKGE Contract, which was deposited into the Wells Fargo Account.  iGov and Suhy, in turn, realized **$1,316,000** in profits under the CKGE Contract.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total

prejudgment interest accrued on this amount through December 1, 2023 is **$91,044**.

69.     ASR Analytics LLC ("ASR") engaged Suhy via iGov as a subcontractor to provide support, consulting and development services for the CKGE and other projects that involved implementations of ONgDB at the IRS between 2019 and 2022.

70.     The subcontracts and task orders provided by ASR to iGov included: (1) Knowledge Graph API (KG-API) for CKGE; (2) Support for Corporate Graph Database; (3) Emerging Compliance Issues; and (4) IDT Innovation, all of which required iGov and Suhy to provide support, consulting and development services for the CKGE and other implementations of ONgDB at the IRS between 2019 and 2022.

71.     ASR Analytics paid iGov a total of **$246,082.55** for work performed under these subcontracts and task orders at the IRS.  Using the one-year treasury rate, which ranged between .07% and 5.36% and compounding interest on an annual basis, the total prejudgment interest accrued on this amount through December 1, 2023 is **$12,393**.

72.     On February 16, 2021, the Court entered a Stipulated Judgment and Permanent Injunction in favor of Plaintiffs in a related action, *Neo4j, Inc. et al. vs. Graph Foundation, Inc. et al.*, Case No. 5:19-cv-06226-EJD (N.D. Cal.).  As reflected by the Stipulated Judgment and Permanent Injunction, Plaintiffs did not receive any payments from the defendants in that related action in conjunction with the entry thereof.

Dated:  December 12, 2023

HOPKINS & CARLEY
A Law Corporation

By: */s/ Jeffrey M. Ratinoff*
John V. Picone III
Jeffrey M. Ratinoff
Attorneys for Plaintiffs and
Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

Dated:  December 12, 2023

*/s/ Adron W. Beene*
Adron W. Beene
Adron G. Beene
Attorneys for Defendants and Counter-
Claimants
PURETHINK LLC, IGOV INC., and
JOHN MARK SUHY

1

**ATTESTATION OF E-FILED SIGNATURE**

2         Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the concurrence in

3    the filing of this document from all signatories for whom a signature is indicated by a

4    "conformed" signature (/s/) within this electronically filed document and I have on file records to

5    support this concurrence for subsequent production to the Court if so ordered or for inspection

6    upon request.

7    Dated:  December 12, 2023                    HOPKINS & CARLEY
                                                  A Law Corporation
8

9                                                 By: /s/ Jeffrey M. Ratinoff
                                                     John V. Picone III
10                                                   Jeffrey M. Ratinoff
                                                     Attorneys for Plaintiffs and
11                                                   Counter-Defendants
                                                     NEO4J, INC. and NEO4J SWEDEN AB
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

# Next Century – MPO Lost Profits
## Calculated Lost Profits

|  | Discounted Fee | Undiscounted Fee |
|---|---|---|
| Subscription Fee | $ 2,266,950 | $ 2,667,000 |
| Reseller Fee (7%) | $ (158,687) | $ (186,690) |
| Subtotal | $ 2,108,264 | $ 2,480,310 |
| EE Commissions (15.26%) | $ (321,721) | $ (126,165) |
| Lost Net Profits | **$ 1,786,542** | **$ 2,354,145** |
| Lost Net Profits with EE Commissions at 13.27% | **$ 1,828,497** | **$ 2,370,598** |

➤ The Employee Commissions cost on the Undiscounted Fee is only applied to the first year's revenue of year-to-year renewals

13

**EXHIBIT 2**

# Internal Revenue Service Lost Profits
## Lost Revenue – CKGE Example

### CKGE (Main Graph)

| Period | Total Machines | Base Price | Additional Core Price | Test Machine Price | Total List Price |
|---|---|---|---|---|---|
| 8/1/18 – 7/31/19 | 1 | $ 144,000 | $ - | $ 12,000 | $ 156,000 |
| 8/1/19 – 7/31/20 | 3 | 199,000 | 180,000 | 24,000 | 403,000 |
| 8/1/20 – 7/31/21 | 3 | 199,000 | 180,000 | 24,000 | 403,000 |
| 8/1/21 – 7/31/22 | 3 | 199,000 | 180,000 | 24,000 | 403,000 |
| 8/1/22 – 7/31/23 | 2 | 199,000 | 180,000 | 24,000 | 403,000 |
| Totals | | $ 940,000 | $ 720,000 | $ 108,000 | $ 1,768,000 |

➢ 1st Hypothetical Negotiation for pre-CKGE platform: July 2018 (Dkt. No. 227, UDF No. 66; TX131)

➢ 2nd Hypothetical Negotiation for CKGE: July 2019 (Dkt. No. 227, UDF Nos. 80-81)

Dkt. No. 227, UDF Nos. 79-86; TX16-TX19 (Price Lists)

17

**EXHIBIT 3**

# Internal Revenue Service Lost Profits
## Assumed Hypothetical Negotiation Date for Other Instances

| Project | Initial Hypothetical Negotiation Date |
|---|---|
| YK1 | 8/1/2019 |
| Corporate | 8/1/2019 |
| Excise | 8/1/2020 |
| Covid | 8/1/2020 |
| Policy Net | 8/1/2021 |
| Individual | 8/1/2021 |
| CPEO | 8/1/2022 |
| Ghost Prep | 8/1/2022 |

Dkt. No. 227, UDF Nos. 87-108

19

**EXHIBIT 4**

# Internal Revenue Service Lost Profits
## Gross Lost Revenue - Summary

| Project | Period Beginning | | | | | Total |
| | 8/1/2018 | 8/1/2019 | 8/1/2020 | 8/1/2021 | 8/1/2022 | |
|---|---|---|---|---|---|---|
| CKGE | $ 156,000 | $ 403,000 | $ 403,000 | $ 403,000 | $ 403,000 | $ 1,768,000 |
| YK1 | | 124,000 | 134,000 | 134,000 | 268,000 | 660,000 |
| Corporate | | 64,000 | 74,000 | 74,000 | 74,000 | 286,000 |
| Excise | | | 74,000 | 74,000 | 74,000 | 222,000 |
| Covid | | | 74,000 | 74,000 | 74,000 | 222,000 |
| Policy Net | | | | 74,000 | 74,000 | 148,000 |
| Individual | | | | 74,000 | 74,000 | 148,000 |
| CPEO | | | | | 74,000 | 74,000 |
| Ghost Prep | | | | | 74,000 | 74,000 |
| Totals | $ 156,000 | $ 591,000 | $ 759,000 | $ 907,000 | $ 1,189,000 | $ 3,602,000 |

Dkt. No. 227, UDF Nos. 87-108; TX16-TX19 (Price Lists)

**EXHIBIT 5**

# Internal Revenue Service Lost Profits
## Lost Revenue – Net of Discounts

| Project | Total List | Reduction for Applicable Price List | Discount for Test Machine | Adjusted List | After 15% Discount |
|---|---|---|---|---|---|
| CKGE | $ 1,768,000 | $ - | $ 64,000 | $ 1,704,000 | $ 1,471,800 |
| YK1 | 660,000 | 20,000 | 8,000 | 632,000 | 537,200 |
| Corporate | 286,000 | 30,000 | | 256,000 | 217,600 |
| Excise | 222,000 | | | 222,000 | 188,700 |
| Covid | 222,000 | | | 222,000 | 188,700 |
| Policy Net | 148,000 | | | 148,000 | 125,800 |
| Individual | 148,000 | | | 148,000 | 125,800 |
| CPEO | 74,000 | | | 74,000 | 62,900 |
| Ghost Prep | 74,000 | | | 74,000 | 62,900 |
| Totals | $ 3,602,000 | $ 50,000 | $ 72,000 | $ 3,480,000 | $ 2,981,400 |

➢ Assumed IRS would not pay for additional test machines with CKGE and YK1
➢ Deduction of price increase for Discovery Bundle for YK1 and Corporate
➢ While history of year-to-year renewals with no multi-year subscriptions, assumes the IRS would still negotiate an annual 15% discount

**EXHIBIT 6**

# Internal Revenue Service Lost Profits
## Saved Expenses – Reseller Margin

| Project | Net Revenue | Reseller Margin | Net of Reseller Margin |
|---|---|---|---|
| CKGE | $ 1,471,800 | $ 103,026 | $ 1,368,774 |
| YK1 | 537,200 | 37,604 | 499,596 |
| Corporate | 217,600 | 15,232 | 202,368 |
| Excise | 188,700 | 13,209 | 175,491 |
| Covid | 188,700 | 13,209 | 175,491 |
| Policy Net | 125,800 | 8,806 | 116,994 |
| Individual | 125,800 | 8,806 | 116,994 |
| CPEO | 62,900 | 4,403 | 58,497 |
| Ghost Prep | 62,900 | 4,403 | 58,497 |
| Totals | **$ 2,981,400** | **$ 208,698** | **$ 2,772,702** |

➢ Net Revenue is after application of negotiated discounted subscription fee and 15% additional discount

➢ Applying Intellipeak's reseller margin of 7% of Net Revenue

**EXHIBIT 7**

# Internal Revenue Service Lost Profits
## Saved Expenses – Reseller Margin

| Project | Net Revenue | Reseller Margin | Net of Reseller Margin |
|---|---|---|---|
| CKGE | $ 1,704,000 | $ 119,280 | $ 1,584,720 |
| YK1 | 632,000 | 44,240 | 587,760 |
| Corporate | 256,000 | 17,920 | 238,080 |
| Excise | 222,000 | 15,540 | 206,460 |
| Covid | 222,000 | 15,540 | 206,460 |
| Policy Net | 148,000 | 10,360 | 137,640 |
| Individual | 148,000 | 10,360 | 137,640 |
| CPEO | 74,000 | 5,180 | 68,820 |
| Ghost Prep | 74,000 | 5,180 | 68,820 |
| Totals | $ 3,480,000 | $ 243,600 | $ 3,236,400 |

➢ Net Revenue assumes <u>no</u> negotiated additional 15% subscription fee discount

➢ Applying Intellipeak's reseller margin of 7% of Net Revenue

**EXHIBIT 8**

# Internal Revenue Service Lost Profits
## Calculated Lost Profits

| | Lost Profits | |
| Project | Discounted Subscription Fee | Undiscounted Subscription Fee |
|---|---|---|
| CKGE | $ 1,299,951 | $ 1,507,659 |
| YK1 | 484,638 | 570,162 |
| Corporate | 194,648 | 228,997 |
| Excise | 166,564 | 195,958 |
| Covid | 166,564 | 195,958 |
| Policy Net | 108,067 | 127,138 |
| Individual | 108,067 | 127,138 |
| CPEO | 49,570 | 58,318 |
| Ghost Prep | 49,570 | 58,318 |
| Totals | $ 2,627,641 | $ 3,069,646 |

| | Lost Profits | |
| Project | Discounted Subscription Fee | Undiscounted Subscription Fee |
|---|---|---|
| CKGE | $ 1,308,926 | $ 1,517,708 |
| YK1 | 486,588 | 572,457 |
| Corporate | 195,654 | 230,182 |
| Excise | 167,728 | 197,328 |
| Covid | 167,728 | 197,328 |
| Policy Net | 109,231 | 128,508 |
| Individual | 109,231 | 128,508 |
| CPEO | 50,734 | 59,688 |
| Ghost Prep | 50,734 | 59,688 |
| Totals | $ 2,646,557 | $ 3,091,392 |

➢ Based on 15.26% Employee Commission Rate.

➢ Based on 13.27% Employee Commission Rate.