1  Adron W. Beene SB# 129040
   Adron G. Beene SB# 298088
2  Attorney at Law
   7960 Soquel Drive Ste B #296
3  Aptos CA 95003
   Tel: (408) 392-9233
4  adron@adronlaw.com

5
   Attorneys for defendants:
6  PURETHINK LLC, a Delaware limited
   liability company, IGOV INC., a Virginia
7  corporation, and JOHN MARK SUHY

8
                  UNITED STATES DISTRICT COURT
9                NORTHERN DISTRICT OF CALIFORNIA

10
   NEO4J, INC., a Delaware corporation,        CASE NO. 5:18-CV-7182 EJD
11 and NEO4J SWEDEN AB, a Swedish
   corporation,
12 Plaintiffs,                                 **DEFENDANTS' AMENDED**
                                               **PROPOSED FINDINGS OF FACT**
13 v.                                          **AND CONCLUSIONS OF LAW**

14
   PURETHINK LLC, a Delaware               Dept. Courtroom 4, 5th floor
15 limited liability company, IGOV INC.,   Judge: Hon. Edward J. Davila
   a Virginia corporation, and JOHN
16 MARK SUHY, an individual,               Trial Date November 14, 2023
   Defendants.
17
18 AND RELATED COUNTERCLAIMS

19

20

21

22

23

24

25

I.      PROPOSED FINDINGS OF FACT

1. The Court granted Plaintiffs' Motion for Partial Summary Judgment as to Neo4j USA's first, second, third, and fourth causes of action for trademark infringement, false designation of origin and false advertising, federal unfair competition, and state unfair competition, respectively, and issued a preliminary injunction on May 18, 2021 ("Partial MSJ Order"). Dkt. 118 34:19-36:9 The Court granted Plaintiffs' Motion for Partial Summary Judgment as to Neo4j Sweden's Eight Cause of Action for violation of the DMCA, 17 U.S.C. § 1202(b), and issued a preliminary injunction on October 25, 2023. Dkt. 216. All other claims and defenses were dismissed by motion or stipulation. The trial was for damages on Neo4j USA first, second, third, and fourth ("Lanham Act Claims") and Neo4j Sweden's Eight Cause of Action "DMCA claim").

The Court has previously set forth the facts of this case on multiple occasions (*see* ECF Nos. 70, 85, 118, 168) and, accordingly, will summarize here only the facts pertinent to this Order.

2. Mr. Suhy was advised by the Free Software Foundation that the Commons Clause was a further restriction to the AGPLv3 and may be removed. Ex. 61.

3. On February 18, 2029, Mr. Suhy told Next Century "If you are using ONgDB and have any concerns, or don't see it keeping up with enterprise features, you can always switch to a commercial Neo4j Enterprise package through any partner on the Neo4j.com website." Ex. 1101.

4.  Mr. Suhy received emails from GFI to Next Century that stated the Commons Clause was a further restriction to the AGPLv3 and may be removed. Exs. 1012, 1101.

5.  On February 22, 2019, Mr. Suhy received an email from GFI that stated GFI had independently verified through counsel that the Commons Clause was a further restriction to the AGPLv3 and may be removed. Ex. 1012.

6.  Next Century stated they were having a meeting with an attorney regarding Neo4J licensing. Ex. 1012.

7.  The Commons Clause Neo4J Sweden added to the AGPL license restricts licensees from selling the software and selling services based on the functionality of the software. Ex. 1002

8.  Neither the IRS nor the NSA were impacted by the Commons Clause as they do not sell Neo4J Sweden's software or services based on the functionality of the software. Jason Zagalsky Testimony.

9.  Neo4J USA provided NSA extensive information regarding Neo4J's position on the Commons Clause. EX 1027

10.   The NSA had previously licensed the commercial version of Neo4j and did not renew the license. Suhy Test.

11.   Neo4J USA provided an evaluation copy of commercial Enterprise to Next Century as part of their due diligence for the NSA.

12.   The IRS reviewed the commercial version of Neo4j software and told Neo4J they were not going to purchase a commercial license. Ex 1064.

13.     There was no evidence that either the IRS or the NSA had a budget approved to purchase a commercial version of the commercial version of Neo4j Enterprise software. Ex. 131.

14.     The IRS used the GPL version of Neo4j when Mr. Suhy was attempting to sell them a commercial license to Neo4j in 2016. Suhy Test.

15.     The GPL version of Neo4j does not have a commons clause restriction. Suhy Test.

16.     In 2016, The IRS was developing a platform of many different software applications and requirements called CKGE. Ex 1011, Suhy Test.

17.     The IRS did not want to purchase a Neo4j commercial license in 2016 because they wanted to create the CKGE platform. Ex 1043. Suhy Test.

18.     Suhy suggested his company provide services for the CKGE platform and use a commercial Neo4J license so it could be sold later. Ex 1043, Suhy Test.

19.     Lars Norwald, the CEO of Neo4j USA agreed with Suhy's plan. John Broad, Neo4J USA's Director for channels and alliances agreed with the plan too. Exs. 1043 and 1044.

20.     The IRS uses the GPL version of Neo4j inferring they did not need features of commercial enterprise that are not provided with OngDB. Suhy Test.

21.     The NSA uses ONgDB version of Neo4j inferring they did not need features of commercial enterprise that are not provided with OngDB. Ex. 117.

22.     The NSA determined they did not purchase the commercial version of Enterprise because of cost. DKT 227, 11:24 – 12:3, Undisputed Facts 121, 122.

23.     There is no evidence the IRS or NSA relied on defendants' websites in making purchase decisions. Ex. 1097, 1098.

24.     On March 1, 2019, Suhy, made a contribution to GFI's ONgDB repository, suggesting an updated the license files to Neo4j Software so as not to violate the Free Software Foundation Copyright. EX 1010.

25.     GFI controlled the ONgDB repository where people could download the OngDB software. Suhy Test.

26.     GFI could accept or reject contributions to OngDB. Suhy Test.

27.     GFI developed ONgDB from a fork based on Neo4J Sweden's Neo4J enterprise software. Suhy Test.

28.     GFI was sued by plaintiffs for licensing ONgDB. Case:  5:19-cv-06226-EJD.

29.     A Judgment of a permanent injunction was issued against GFI. (Dkt 110 (in GFI case 5:19-cv-6226). GFI paid no money to plaintiffs in the GFI case. Dkt 234, 11:14-18, ¶72.

30.     Neo4J Sweden's Neo4J enterprise software was licensed under the Neo4J Sweden license. EX 1002.

31.     Neo4J Sweden's Neo4J enterprise software is licensed at no cost to the licensee.  EX 1002.

32.     There is no evidence Neo4J Sweden attempted to sell its software to the NSA or IRS.

33.     Neo4J Sweden waived statutory damages on its DMCA claim at trial.

34.     Neo4j USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned subsidiary of Neo4j USA.  Dkt. No. 118 at 2:15-16.

35.     Prior to May 2018, Neo4j Sweden offered a free and open source version of the Neo4j® graph database platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Dkt. No. 118 at 3:1-4.   Neo4j® CE is limited in its feature set and does not come with technical or administrative support. Id. at 3:4-5.

36.     On May 17, 2018, Neo4j Sweden "released Neo4j EE v3.4 but replaced the AGPL with the Neo4j Sweden Software License, a stricter license which included additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License")." Dkt. No. 118 at 3:9-12.

37.     Neo4j settled with the GFI defendants. Ex. 1034.

## II.     PROPOSED CONCLUSIONS OF LAW

### A.     Neo4J USA SUFFERED NO DIRECT DAMAGES ON THEIR TRADEMARK INFRINGEMENT, FALSE DESINATION OF ORIGIN AND FALSE ADVERTISING, LANTHAM ACT AND UCL CLAIMS.

With respect to Plaintiff's damage claims, the Lanham Act claims seek damages arising out of iGov's comparative advertisement comparing two software products: Neo4j USA's commercial version of Neo4j software and Neo4j Sweden's AGPL version of Neo4j software. ONgDB is a version of the Neo4j AGPL software.

The court found the following statements were false: (1) that "ONgDB were "free and open source" versions of or alternatives to commercially licensed Neo4j® EE; and (2) that ONgDB was a "drop-in replacement for an existing commercial licensed distribution of the same version number" of Neo4j® EE. Dkt 118 at 23:20-28:19.

While liability was establish, Neo4j USA has not shown direct damages from Defendants' conduct. Lanham Act damages must proximately flow **directly** from defendants conducts. *LexMark Intern., Inc. v. Static Control Components, Inc.* 572 U.S. 118, 133 (2014). [Emphasis added]

Plaintiff seeks damages from two government agencies who did not purchase a commercial version of Neo4j software.

Defendants in this case do not license any software. So do not compete in software licensing. ONgDB was compiled from Neo4j Sweden's repository, hosted and licensed by the defendants in the GFI case (5:19-cv-6226.) Those defendants made the same statements in advertising ONgDB on their website where people downloaded and licensed ONgDB. The GFI defendants were sued for the same conduct and are the licensors of ONgDB.

Defendants in this case are not the licensors of ONgDB. Neo4j USA would have to show the damages did not proximately come from the GFI defendants' actions, other competition, and other reasons such as lack of funding. Remote causes do not support a damage claim *LexMark Intern*, at 132.

Neo4j obtained a judgment from GFI defendants based on GFI's conduct Dkt. 110 (in GFI case 5:19-cv-6226.)

As Neo4j must directly tie the damages to the advertisement, no damages arise out of the "free and open source" or "drop in engine" statements. The falsity of the "free and open source" statement was derived from the construction it meant not subject to the commons clause. That clause restricts licensees of the Neo4j Sweden AGPL version from selling the software.

iGov only provides services to the US government. The IRS version of Neo4j software includes the commons clause so there is no improper licensing. The US government does not sell software or services derived from the software. The commons clause does not apply to the US Government.

The "drop in replacement" statement does not impact any sales as it would only apply to an existing Neo4j USA customer who changed from the paid for commercial version to Neo4j Sweden's free version based on iGov's statements. That did not occur.

In Lanham Act cases, the causation standard for an award of damages is higher than the general standard for in-junctive relief:

[C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof. A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage. In contrast, courts require a heightened level of proof of injury in order to recover money damages. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1335 (8th Cir. 1997); *see also Parkway Baking v. Freihofer Baking,* 255 F.2d 641, 648-49 (3d Cir. 1958).

Thus, a plaintiff seeking monetary rather than injunctive relief must show "actual damages rather than a mere tendency to be damaged." *Synygy v. Scott-Levin,* 51 F.Supp.2d 570, *Bracco Diagnostics, Inc. v. Amersham*

*Health, Inc.*, 627 F. Supp. 2d 384, 480-81 (D.N.J. 2009) "[T]he court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct, lest the award become speculative or violate section 35(a)'s prohibition against punishment." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990). Damages against defendants would be considered punishment considering GFI, which maintained and licensed OngDB paid no damages.

The plaintiff bears the burden of showing that the sales for which it seeks disgorgement occurred because of the alleged false advertising. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.* (D.N.J. 2009) 627 F.Supp.2d 384, 484. Suhy's work on the CKGE platform for the IRS started in 2016, years before the Commons Clause was added to Neo4J Sweden's AGPL Enterprise license. The IRS never had a commercial license to replace. The IRS had access to the free version and the commercial version and evaluated their needs, requirements, and budget. There is no evidence the IRS looked at defendants' websites and made a decision.

The IRS and NSA are sophisticated consumers not likely to be deceived. This is significant in implied falsity claims. *Bracco Diagnostics, Inc.* at 476. There is no showing the IRS or NSA gleaned the implied falsity of the defendant's advertising. There is also no dispute the IRS and NSA are not impacted by the restrictions in the Commons Clause. They each looked and saw the differences between OngDB and Neo4j USA's commercial version and decided to save the taxpayers' money.

Defendants caused no direct damages to Neo4j USA under the Lanham

Act or unfair competition claims.

The IRS never used the commercial version so had no basis to consider the "drop in" issue. After initially agreeing to allow Purethink to provide services to the IRS in an attempt to start a commercial relationship with the IRS, Neo4j changed course, negatively impacting its relationship with the IRS. Neo4j prevented doing business with the IRS. That was before the advertising and had nothing to do with the false advertising.  The Maryland Procurement Office stopped using the commercial version before the advertisements were made. There was no basis to consider the drop in issue. The determination for purchase of Neo4j software is complex and the primary driver is cost. The consumers' decision was not directly based on defendants' false advertising. Under *LexMark Intern,* plaintiff has suffered no damages under its Lanham Act claims.

Although there is no claim defendants have violated or will violate the preliminary injunction, the Court feels an adequate remedy for defendants' conduct is to convert the preliminary injunction to a permanent injunction.

**DMCA Claim**

Neo4J Sweden does not sell any software and there is no evidence the DMCA violation proximately caused Neo4J Sweden any damages.

The Neo4j Sweden software is free and open source such that Neo4j Sweden has no direct damages from the removal of the Common Clause. Neo4j Sweden waived statutory damages are under 17 U.S.C. §1203 (B) at

trial. Any damages may be reduced or remitted under 17 U.S.C. §1203 (c) (5)[1]:

> (5) INNOCENT VIOLATIONS.-
> (A) IN GENERAL.-The court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation.

Mr. Suhy's conduct is supported by the terms of §7 of the AGPL:

> If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term.

Mr. Suhy did not change Neo4j Sweden's license after any court order interpreting §7 of the AGPL to only allow removal of additions made by downstream licensees. Suhy read the AGPL license, studied information and talked to the Free Software Foundation, the Copyright holder of the AGPL, confirming the addition could be removed. While he did not talk to an attorney, GFI said they had. GFI was the company to accept the removal contribution and post the license to GFI's ONgDB's github repository. The Court finds that Mr. Suhy was not aware and had no reason to believe that his acts constituted a violation such that any damages would be remitted.

## B.   THIS IS NOT AN EXCEPTIONAL CASE

Plaintiffs seek attorneys' fees on the Lanham Act and DMCA claims contending they are exceptional cases. "[A]n exceptional case is simply one

---

[1] This is not an unpled affirmative defense. _Howarth v. Greenhaw_ (W.D. Tex., June 9, 2022, No. A-21-CV-00643-RP) 2022 WL 2072221, at *5, report and recommendation adopted (W.D. Tex., July 18, 2022, No. 1:21-CV-643-RP) 2022 WL 20470458. (in analogous copyright innocence defense case, innocence is not an affirmative defense. It is not a bar to recovery; it is a limit on damages.)

that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* (2014) 572 U.S. 545, 554

This case deals with an open source license agreement in a legal landscape with limited jurisprudence on the GPL/AGPL license agreement. The Lanham Act claims were defended under applicable case and statutory law. Defendants often challenge the validity of patents, trademarks, and copyright in intellectual property cases. Parties should not be punished by attorney's fees awards for exercising their right to challenge weak trademarks. *Earthquake Sound Corp. v. Bumper Industries* (9th Cir. 2003) 352 F.3d 1210, 1221–1222 (Judge Ferguson's concurring opinion.)

Defendants' reliance on Judge Nies additional view in *In re Wella A.G.* (Fed. Cir. 1986) 787 F.2d 1549, 1554 was not frivolous. The trademark use was a standard nominative use issue under *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171 (9th Cir. 2010). The DMCA claim was an innocent change in a license agreement. There is nothing exceptional about this case, therefore, attorneys fees are not ordered.

## C.   SANCTIONS ARE NOT MERITED

Plaintiffs' seek sanctions of attorney's fees against counsel under 28 U.S.C. § 1927.   Plaintiffs rely on *Int'l Intell. Mgmt. Corp. v. Lee Yunn*

*Enterprises*, Inc. (U.S.A.), No. CV 08-7587 R JWJX, 2009 WL 9137315, at *3–4 (C.D. Cal. Dec. 14, 2009) ("IIMC"). IIMC involved an award of defendants' fees payable by plaintiffs' counsel under 28 U.S.C. § 1927. In IIMC, Plaintiffs' counsel did no investigation that defendants infringed prior to filing a patent lawsuit or during the litigation and was involved in ethical violations of improperly contacting a party.

In analyzing the IIMC case, a court denied fees sought against defense counsel as they were not the ones who chose to file the lawsuit, and defendants were obligated to defend themselves. *EcoServices, LLC v. Certified Aviation Servs., LLC*, 340 F. Supp. 3d 1004, 1031 (C.D. Cal. 2018), *aff'd in part, vacated in part, remanded*, 830 F. App'x 634 (Fed. Cir. 2020). An attorney is not required to forfeit client's right to avoid sanctions. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).

Plaintiffs broadly seek sanctions, but they are only permitted for specific frivolous or harassing conduct.

"The imposition of attorneys' fees under § 1927 serves "as a sanction against counsel personally for reckless or bad faith conduct in the course of litigation." *Yue v. Storage Tech. Corp.*, No. C-07-05850-MJJ, 2008 WL 361142, at *2 (N.D. Cal. Feb. 11, 2008) (citations and internal quotations omitted). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Z-Rock Comme'n Corp. v. William A. Exline, Inc.*, No. C-0302436-WHA, 2004 WL 2496158, at *7 (N.D. Cal. Nov. 5, 2004) (citations and internal quotations omitted). Moreover, "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." Id. (citations and internal quotations omitted) (emphasis added). Carelessly, negligently, or unreasonably multiplying the proceedings, however, is insufficient for the imposition of sanctions. In re Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010).

*Fitbit, Inc. v. AliphCom* (N.D. Cal., Oct. 25, 2016, No. 5:15-CV-04073-EJD) 2016 WL 7888035, at *1

DEFENDANTS' AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 5:18-cv-7182 EJD                                                13

Plaintiffs seek fees they claim incurred in the case without any effort to identify which fees apply to which conduct. The unspecific fee request is unreasonable does not support any sanctions request. Plaintiffs claim two events. Defendants assertion of an unclean hands defense and raising defenses to the DMCA claim. The unclean hands defense raises new legal issues not ruled upon in the 1st summary judgment motion. The unclean hands defense was specifically reserved as a phase 2 issue and invokes the equitable jurisdiction of the court on a defensive claim. The owner of a trademark may be barred from enforcing it under unclean hands. *Japan Telecom, Inc. v. Japan Telecom America Inc.* 287 F.3d 866, 870–871 (9th Cir. 2002). *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.* (1945) 324 U.S. 806, 814 (Patent owner barred from enforcing patent by unclean hands for failing to disclose information to Patent Office). The unclean hands defense does not attack the validity of the ownership of the trademark. That is what the court previously ruled on. Unclean hands prevents enforcement of a trademark for improper conduct. Counsel's assertion of an unclean hands defense is not a violation of §1927.

Plaintiffs claim counsel violated §1927 by asserting the propriety of the removal of the common clause as a defense to the DMCA claim after the Court ruled on the issue. The issue is a proper defense to the DMCA claim. The court previously ruled the commons clause could not be removed.  The issue in the DMCA claim was whether Mr. Suhy's acted intentionally to cause infringement and whether his conduct was innocent. "Section 1202(b)(3) contains a so-called "double-scienter" requirement: the defendant who distributed improperly attributed copyrighted material must have

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

actual knowledge that CMI "has been removed or altered without authority of the copyright owner or the law," as well as actual or constructive knowledge that such distribution "will induce, enable, facilitate, or conceal an infringement." *Id.  Mango v. BuzzFeed, Inc.* (2d Cir. 2020) 970 F.3d 167, 171. Plaintiff had the burden to prove the double-scienter elements. Mr. Suhy was allowed to rebut the element. At the time he changed the license to an AGPL license he thought he could do so.

   Mr. Suhy is allowed to show he was not aware the §7 removal clause only applied to downstream licensee and his conduct was reasonable. This evidence was to show plaintiff cannot prove the double-scienter requirement of the DMCA claim and to show innocence under 17 U.S.C. §1203 (c) (5). While the Court ruled he was not correct to remove the additional clause, he is permitted to defend the claim showing his conduct was reasonable and not to cause infringement. Presenting statutory defenses is not frivolous or harassing supporting the claim.

   DMCA damages may be reduced or remitted under 17 U.S.C. §1203 (c) (5)[2]:

   (5) INNOCENT VIOLATIONS.-
   (A) IN GENERAL.-The court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation.

   Mr. Suhy's conduct was supportable under the terms of the AGPL, comments he received from FSF and GraphFoundation. His removal of the commons clause was before the Court ruled, he could not.

   This is similar to a sexual harrasment claim and a retaliation claim. A court may rule there was no sexual harrasment but such a ruling does not

bar a retaliation claim based on a reasonable belief of sexual harrasment. While litigants may be wrong, reasonable belief they were correct is still a valid issue on other claims and defenses.

### D.    PLAINTIFFS' AWARDS ARE OFFSET (SETOFF).

The Plaintiffs stipulated to a defense set off of $26,000. To the extent this court awards any amounts from Defendants to Plaintiffs, those amounts are offset by the amounts this court has awarded from Plaintiffs to Defendants. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995).

## III.   CONCLUSION

While no damages or attorneys' fees are awarded, the preliminary injunctions granted in Dkts. 118 and 216 are now permanent injunctions.


Dated: January 19, 2024

   _/s/ Adron W. Beene_____
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233
adron@adronlaw.com


Attorneys for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

1

## ATTESTATION OF E-FILED SIGNATURE

2

Pursuant to Local Rule 5-1(i)(3), I hereby certify that I have obtained the

3

concurrence in the filing of this document from all signatories for whom a

4

signature is indicated by a "conformed" signature (/s/) within this

5

electronically filed document and I have on file records to support this

6

concurrence for subsequent production to the Court if so ordered or for

7

inspection upon request.

8

Dated:  January 19, 2024

_/s/ Adron G. Beene_

Adron W. Beene
Adron G. Beene
Attorneys At Law
7960 Soquel Drive, Suite B #296
Aptos, CA 95003
Tel: (408) 392-9233

Attorneys for Defendants and
Counter-Claimants
PURETHINK LLC, IGOV INC.,
and JOHN MARK SUHY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25