# TRIAL EXHIBIT 154

Witness: Michael Stavrianos
EX 134
11/7/2022 B. Gerald



1389 Canterbury Way, Potomac, MD 20854 Phone: (301) 738-9502 FAX: (301) 738-9503

# Subcontract Agreement

This Subcontract Agreement (hereinafter, the "Agreement") is between ASR Analytics, LLC, a Maryland limited liability company (hereinafter "ASR"), with offices located at 1389 Canterbury Way, Potomac, MD 20854, and iGov Inc., a Virginia corporation (hereinafter "Subcontractor"), with offices located at : 7686 Richmond Highway Suite 101-B Alexandria, VA 22306. Collectively, ASR and Subcontractor are referred to as the Parties.

**WHEREAS,** the Internal Revenue Service ("IRS," "Client," or "Customer"), Research, Applied Analytics, and Statistics ("RAAS"), has issued a prime contract #2032H8-18-C-00037 to Tylor Data Services, LLC ("Prime Contractor"), including a subsequent task order related to configuring a knowledge graph application program interface (collectively, "Prime Contract"). The Prime Contract has a period of performance from October 1, 2018 through September 30, 2019, unless otherwise extended through written authorization from the Client;

**WHEREAS,** Prime Contractor and ASR have already executed a first-tier subcontract where ASR will provide delivery support to Prime Contractor for certain aspects of the Prime Contract (hereafter, "1st Tier Subcontract");

**WHEREAS,** following approval from the Prime Contractor, the Parties agree that ASR will further subcontract to Subcontractor certain aspects of ASR's work designated within the 1st Tier Contract;

**NOW THEREFORE,** in consideration of the mutual covenants and promises stated herein, the Parties agree as follows:

**1. Services to be Performed by Contractor**

Subcontractor will provide the consulting services of John Mark Suhy in support of ASR's 1st Tier Subcontract. Consulting services will include technical guidance and deployment support related to the Compliance Data Warehouse Knowledge Graph Environment (CKGE).

**2. Term of Agreement**

This Agreement shall be in force and effect as of April 8, 2019 and for the entire term of the 1st Tier Subcontract, including option periods, if any. ASR shall have the right to terminate this Agreement immediately and without prior notice upon:

1. The filing by or against Subcontractor of a petition or consent or application for liquidation under any federal or state bankruptcy law;
2. Conviction of the Subcontractor resource of a felony or any offense involving fraud, deceit, falsification, dishonesty, or moral turpitude;
3. Termination by Client or Prime Contractor ASR's tasking to perform the requested services;
4. Reasonable determination by ASR, that the resource(s) provided by Subcontractor are ineligible, unqualified, or unable to perform the requested services; or
5. Reasonable determination by ASR, that the services provided by the Subcontractor are no longer needed.



Plaintiffs' Trial Exhibit 154





ASR shall have the right to terminate this Agreement for convenience with fifteen (15) calendar days written notice to Subcontractor.

ASR shall terminate by delivering to Subcontractor a Notice of Termination specifying whether termination is for convenience or due to Subcontractor default, the extent of termination, and the effective date of termination.

In the event of termination, ASR shall pay to Subcontractor a fee that is calculated based on hours worked through the termination date. If ASR and Subcontractor fail to agree on the hours incurred, it shall be determined through the procedures defined in Article 17 (Disputes).

**4. Payment**
Subcontractor will provide all services on a time & materials (T&M) basis. ASR will pay Subcontractor $144.51 per billable hour for work performed during the term of this agreement. The total number of labor hours incurred by Contractor shall not exceed 5 hours in any calendar week without previous written consent from ASR.

**5. State and Federal Taxes**
ASR will not: (1) withhold state or federal income tax from Subcontractor's payments; (2) withhold Social Security and Medicare taxes from Subcontractor's payments or make such tax payments on Subcontractor's behalf; or (3) make state or federal unemployment contributions on Subcontractor's behalf. Subcontractor will pay all applicable taxes related to the performance of services under this Agreement—including income, Social Security, Medicare, and self-employment taxes. Subcontractor will also pay any unemployment contributions related to the performance of services under this Agreement. Subcontractor will reimburse ASR if ASR is required to pay such taxes or unemployment contributions.

**6. Fringe Benefits**
Neither Subcontractor nor Subcontractor's employees are eligible to participate in any employee pension, health, vacation pay, sick pay or other fringe benefit plan of ASR.

**7. Timesheets and Invoices**
Subcontractor is required to submit timesheets to ASR. All assigned Subcontractor personnel will report their time incurred within ASR's timekeeping system (SpringAhead). An ASR supervisor will be assigned to Subcontractor personnel and will review and approve or reject (with explanation) submitted timesheets. Subcontractor will promptly correct any rejected timesheets. Subcontractor will submit invoices to ASR on a monthly basis, derived directly from the hours reported on the approved timesheets. Subcontractor invoice shall be submitted to ASR no later than five (5) business days following each month end. Invoices should be submitted to zoya.gleizer@asranalytics.com and lauren.szczerbinski@asranalytics.com with a copy to becky.kraft@asranalytics.com and jill.long@asranalytics.com. ASR will pay Contractor invoices with payment terms of Net 30 days.

Subcontractor MUST submit invoices in a timely manner – delayed submission and/or errors in the invoice information may result in a delayed payment to Subcontractor.






**8. Independent Contractor Status**

The Parties intend Subcontractor to be an independent contractor in the performance of the services. Subcontractor will have the right to control and determine the methods and means of performing the contractual services. The Parties to this Agreement are independent businesses, ASR is the prime contractor, and the Subcontractor is the subcontractor. Nothing herein shall be construed to create a partnership, joint venture, or any business relationship contrary to the parties' independent contractor status. Neither Party shall have the authority to bind the other. The Parties shall remain independent contractors at all times.

**9. Conduct of the Subcontractor**

1. The Subcontractor agrees to return to ASR, Prime Contractor, or the Client, as the case may be, all documents, records, reports and resource information that he may have been obtained during the course of providing said services at the time the Subcontractor's services are terminated.
2. The Subcontractor agrees to execute and deliver to ASR, and to abide by, reasonable confidentiality and secrecy agreements that ASR, Prime Contractor or the Client may require as a result of deeds, grants and undertakings with the Client or other persons, firms or corporations regarding patents, information, analysis, charts, data, correspondence, drawings and other matters directly related hereto.
3. The Subcontractor agrees it will not, either during the term of this Agreement or at any other time thereafter, disclose to any person, firm, or corporation any information concerning the business or affairs of ASR, Prime Contractor, or the Client that may have been obtained during the course of providing said services.
4. The termination or expiration of this Agreement shall not supersede or affect the obligations of the Subcontractor with regard to the protection of any proprietary or confidential information between the Parties, which shall survive such termination or expiration and remain in full force and effect.
5. Subcontractor shall perform the work and its obligations under this Agreement in a professional, efficient and workmanlike manner and in compliance with all applicable laws, regulations, ordinances, permits and licenses.

**10. Proprietary or Confidential Information**

The Parties shall not disclose and shall protect from disclosure all of the other Party's and Client Confidential and or Proprietary Information, acquired under this Agreement, during the term of the Agreement and for a period of three (3) years following the termination of this Agreement.

The Parties shall not use or duplicate, in any way, any Proprietary Information, including trade secrets, belonging to or supplied by or otherwise made available by the other Party, with the exception of such duplication as required for the performance of work or the rendering of services for the other Party or at the direction of the other Party. By definition, all proprietary materials will be clearly stamped and identified as such.

The Parties shall not, without first obtaining the written permission of the other Party, divulge to any other person or organization for any reason, any Proprietary Information belonging to or supplied or otherwise made available by the other Party relating to processes, designs, formulas, products, manufacturing methods, techniques, or any business in which the other Party is engaged or with which ASR may be concerned.





If either Party desires to employ Proprietary Information in the performance of tasks assigned hereunder which the Party wishes to hold outside the requirements of this clause, that Party shall obtain written approval from the other Party prior to the use of said Proprietary Information.

For purposes of this Agreement, "Confidential Information" or "Proprietary Information" means all information in whatever form relating to the past, present or future business concepts, plans or affairs of a Party or its clients, including without limitation, research, development or technical information or data, drawings, computer programs, trading methods, diagrams, specifications, concepts, theories, methods, processes, programs, costs and pricing data, business plans, operations or systems, of a Party or another party whose information the Party has in its possession under obligations of confidentiality, which is disclosed orally or in writing by a Party during the term of this Agreement.

Notwithstanding anything to the contrary herein, "Confidential Information" shall not include information that (i) was previously known to Subcontractor free of any obligation to keep it proprietary, (ii) is disclosed to third parties by ASR without restriction, (iii) is or becomes publicly available by other than unauthorized disclosure, (iv) has been independently developed by the receiving Party without reference to the disclosing Party's confidential information, or (v) is disclosed pursuant to the lawful order of a court or governmental body.

Following the receipt of any item or communication consisting of or relating to the Confidential Information, Subcontractor shall:

(a) Restrict disclosure of the information solely to those individuals that have a need to know and that have executed a written confidentiality agreement obligating them (expressly or implicitly) to protect the Confidential Information, and shall not disclose it to other parties;

(b) Advise those individuals to whom it is disclosed of the obligation to protect and not disclose the Confidential Information; and

(c) Use the information only for the purpose contemplated by the parties under the terms of this Agreement, and for no other purpose.

Within twenty (20) days of the disclosing Party's request, the receiving Party will return all Confidential Information existing in any form, or, upon disclosing Party's authorization, shall destroy all such information.

**11. Ownership of Work Products**

(a) Subject to the rights granted to the Government and the restrictions set forth in Article 11(d) below, all materials developed and produced by Subcontractor hereunder, as well as the patents, patent applications, copyrights, copyright applications and other intellectual property rights attendant thereto, reduced to practice, authored, developed or created in the performance of the Work under this Subcontract Agreement (collectively "Work Products") shall be owned by ASR, Prime Contractor, or the Client. To the extent possible, ASR, Prime Contractor, or the Client agree to grant Subcontractor a royalty free, perpetual license to all materials developed or created in the performance of Work under this Subcontract Agreement. Such license includes, without limitation, the right to use, execute, reproduce, or display, and/or perform by Subcontractor.

(b) The Client shall be afforded all rights of ownership incident thereto, excluding, however,





the limited rights data or restricted computer software (as defined by the FAR), or pre-existing inventions or patents. Subcontractor agrees to grant, assign and convey to ASR, Prime Contractor, or the Client all of Subcontractor's right, title and interest, in and to all Work Products and the intellectual property rights attendant thereto, excluding however, the limited rights data or restricted computer software, or pre-existing inventions or patents.

(c) To the extent that any pre-existing materials owned by Subcontractor are contained in the Work Products, Subcontractor hereby grants to the Government a royalty-free, perpetual license to such pre-existing materials as reasonably needed for operation, modification, repair, or improvement of the Project, subject to the rights of third parties, without right to grant sublicenses. Such license includes, without limitation, the right to use, execute, reproduce, display, perform, copies for sole use of the Project.

(d) Subcontractor warrants and represents that: (i) the Work and Work Products produced by Subcontractor pursuant to this Subcontract Agreement shall be Subcontractor's original work and will not infringe upon or violate any patent, copyright, trademark, trade secret, contractual or any other proprietary right of others; (ii) there are no rights, claims, causes of action or other legal rights or impediments to Subcontractor's ability to perform the Work or sell the Work Products; (iii) ASR's rights in such Work and Work Products, as described in this Paragraph 11, shall be free and clear of any encumbrances, liens, claims, judgments, causes of action or other legal rights or impediments; and (iv) Subcontractor shall grant to the Government any and all rights in Work and the Work Products, deliverables and pre-existing Subcontractor materials included in such Work and Work Products that are required by the Prime Contract, 1st Tier Subcontract, or Government regulations.

**12. Limitation of Liability**

In no event shall either ASR or the Subcontractor be liable to the other for any incidental, indirect, inconsequential, punitive, or special damages or lost revenue or profits, whether or not either has been notified of the possibility of such damages. All damages of whatever nature shall not exceed the total amounts actually paid to the Subcontractor under this Agreement. The provisions of this clause shall survive the term or termination of this Agreement for any reason.




**13. Assistants**
Subcontractor, at Subcontractor's expense, may employ assistants as Subcontractor deems appropriate to perform the contractual services. Subcontractor will be responsible for paying these assistants, and for any expense attributable to them including income, Social Security and Medicare taxes, and unemployment contributions. Subcontractor will maintain workers' compensation insurance for all of its employees.

**14. Equipment and Supplies**
Unless otherwise agreed by the Parties in writing, Subcontractor shall, at Subcontractor's expense, provide all equipment, tools and supplies necessary to perform the contractual services. These expenses shall not be reimbursed by ASR.

**15. Expenses**
Unless otherwise agreed by the parties, Subcontractor shall be responsible for all expenses required for the performance of the contractual services.

**16. Non-Solicitation Clause**
During the period of performance of this Agreement and one year thereafter, ASR shall not solicit for hire or knowingly allow its employees to solicit for hire any consultant of the Subcontractor associated with the performance of this agreement without the consent of the Subcontractor.

During the period of performance of this agreement and one year thereafter, Subcontractor shall not solicit for hire or knowingly allow its employees to solicit for hire any employee of ASR associated with the performance of this agreement without the consent of ASR.

ASR and Subcontractor acknowledge that any breach of this Clause, would cause ASR or the Subcontractor irreparable damage for which any remedies at law may be inadequate and that ASR or the Subcontractor shall have the right to obtain, in addition to all other remedies, such injunctive and other equitable relief from a Court of competent jurisdiction as may be necessary or appropriate to prevent any violation of this Clause.

**For the purpose of this Clause only, the term "ASR" shall include such parties together with all other entities controlling, controlled by or under common control of such Party, including but not limited to any agents or representatives thereof.**

**17. Disputes**
If a dispute arises, the parties will try in good faith to settle it through mediation conducted by a mediator to be mutually selected. The Parties will share the costs of the mediator equally. Each Party will cooperate fully and fairly with the mediator and will attempt to reach a mutually satisfactory compromise to the dispute.

If the dispute is not resolved within 30 days after it is referred to the mediator, it will be settled through final and binding arbitration by an arbitrator to be mutually selected in Maryland in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") by a single arbitrator appointed by the AAA. Pending final decision of any dispute, Subcontractor shall diligently proceed with performance of this subcontract in accordance with ASR's written directions. Each Party shall pay its own expenses in conjunction with any arbitration. Judgment





on the arbitration award may be entered in any court that has jurisdiction over the matter. Costs of arbitration, including lawyers' fees, will be allocated by the arbitrator.

**18. Entire Agreement**
This is the entire agreement between the parties. It replaces and supersedes any and all previous or contemporaneous understandings, commitments, agreements, proposals or representations of any kind, whether oral or written, relating to the subject matter of this Agreement.

**19. Successors and Assignees**
This Agreement binds and benefits the heirs, successors and assignees of the parties.

**20. Notices**
All notices must be in writing. A notice may be delivered to a Party at the address that follows a Party's signature or to a new address that a Party designates in writing. A notice may be delivered: (i) in person; (ii) by certified mail; (iii) by overnight courier; or (iv) by email.

**21. Governing Law**
This agreement will be governed by and construed in accordance with the laws of the state of Maryland, without giving effect to the choice of law principles thereof.

**22. Counterparts**
The Parties may sign several identical counterparts of this Agreement. Any fully signed counterpart shall be treated as an original.

**23. Modification**
This Agreement may be modified, altered, or amended only by a written agreement signed by both Parties and that expressly refers to this Agreement.

**24. Waiver**
If one Party waives any term or provision of this agreement at any time, that waiver will be effective only for the specific instance and specific purpose for which the waiver was given. If either Party fails to exercise or delays exercising any of its rights or remedies under this agreement, that Party retains the right to enforce that term or provision at a later time.

**25. Severability**
If any court determines that any provision of this Agreement is invalid or unenforceable, any invalidity or unenforceability will affect only that provision and will not make any other provision of this Agreement invalid or unenforceable and such provision shall be modified, amended or limited only to the extent necessary to render it valid and enforceable.

**26. No Assignment**
Subcontractor shall not assign the Agreement or any amounts due or to become due without the prior written consent of ASR. The Agreement and these terms and conditions are solely for the benefit of the signatories.





**25. Savings Clause**
Should any clause in the Agreement be held to be invalid or unenforceable, in whole or in part, by any court or arbitration panel, the remaining clauses shall continue in full force and effect.

**SUBCONTRACTOR**
iGov Inc.
1902 Campus Commons Drive, Suite 101
Reston, VA 20191

Dated: **05/01/2019**

By: ______________________

John Mark Suhy
Chief Technology Officer

**ASR**
ASR Analytics, LLC,
1389 Canterbury Way
Potomac, MD 20854

Dated: 5/2/2019

By: ______________________

Michael Stavrianos
Founding Principal