John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO.  5:18-cv-07182-EJD<br><br>**DECLARATION OF JEFFREY RATINOFF IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE PORTIONS OF TRIAL EXHIBIT 209 UNDER SEAL** |

I, Jeffrey M. Ratinoff, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all courts of the State of California, and am of counsel with Hopkins & Carley, a Law Corporation, attorney of record for Plaintiff Neo4j, Inc. and Neo4j Sweden AB (collectively "Plaintiffs") in the above-captioned matter.  I make this declaration in support of Plaintiffs' Plaintiffs' Administrative Motion to File Portions of Trial Exhibit 209 Under Seal.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ REDWOOD CITY

4869-8282-3589.1

DECLARATION OF JEFFREY RATINOFF IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE PORTIONS OF TRIAL EXHIBIT 209 UNDER SEAL; CASE NO. 5:18-CV-07182-EJD

2.      The facts stated herein are based on my personal knowledge, except with respect to those matters stated to be on information and belief, and as to those matters, I believe them to be true. If called upon to testify as a witness in this matter, I could and would do so competently.

3.      Plaintiffs previously sought to file portions of Trial Exhibit 209 underseal, which consisted of excerpts from Plaintiffs' confidential internal price lists and other confidential pricing, sales and financial information. *See* Dkt. No. 239 at 3:13-24; Dkt. No. 239-1, ¶ 3(c) and ¶ 4.  A redacted version of Trial Exhibit 209 was submitted with the parties' Admitted Trial Exhibit List and Joint Certification of Admitted Trial Exhibits.  Dkt. Nos. 242 and 242-30.  A true and correct copy of that redacted exhibit as-filed is attached hereto as **Exhibit A**.

4.      Plaintiffs previously lodged an unredacted version of Trial Exhibit 209 under seal, which inadvertently did not include highlights showing the proposed redacted portions of that exhibit.  A true and correct copy of Trial Exhibit 209 that includes the highlights showing what is being redacted is being provisionally filed under seal herewith.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 14th day of February, 2024, at San Jose, California.


            */s/ Jeffrey M. Ratinoff*
            Jeffrey M. Ratinoff

Hopkins & Carley
Attorneys At Law
San Jose ◆ Redwood City

4869-8282-3589.1                                    - 2 -
DECLARATION OF JEFFREY RATINOFF IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE PORTIONS OF TRIAL
EXHIBIT 209 UNDER SEAL; CASE NO. 5:18-CV-07182-EJD

**EXHIBIT A**

**TRIAL EXHIBIT 209**
**(REDACTED)**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, | Case No. 5:18-cv-07182-EJD |
| Plaintiffs, | |
| v. | **EXPERT REPORT OF** |
| PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual, | **STEVEN B. BOYLES** |
| Defendants. | |

## HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Respectfully submitted December 22, 2022

_____
Steven B. Boyles, CPA/CFF/ABV, ASA

TABLE OF CONTENTS

I.     INTRODUCTION AND ASSIGNMENT .......................................................... 2

II.    INFORMATION CONSIDERED .................................................................. 4

III.   SUMMARY OF OPINIONS ........................................................................ 5

IV.    BACKGROUND ....................................................................................... 6

       A.  PLAINTIFFS' BUSINESS ..................................................................... 6

       B.  PLAINTIFFS' RELATIONSHIP WITH PURETHINK AND DEFENDANTS' INITIAL
           INFRINGEMENT OF THE NEO4J MARK ............................................... 15

       C.  DEFENDANTS' PROMOTION OF ONGDB SOFTWARE AND INFRINGEMENT OF THE
           NEO4J MARK ................................................................................ 18

       D.  DEFENDANTS' ALLEGED VIOLATIONS OF THE DIGITAL MILLENNIUM
           COPYRIGHT ACT ("DMCA") ............................................................ 20

       E.  DAMAGES RECOVERABLE UNDER THE LANHAM ACT AND THE COURT'S
           FINDINGS ON DEFENDANTS' LIABILITY ................................................ 22

       F.  DAMAGES RECOVERABLE UNDER THE DMCA AND ASSUMPTIONS BASED ON
           THE COURT'S SUMMARY JUDGMENT ORDER ........................................ 26

V.     ANALYSIS OF DAMAGES ........................................................................ 27

       A.  PLAINTIFFS' LOST PROFITS FROM LICENSING REVENUE .......................... 27

           a)  Assessment of Prior Licensing activity by Neo4j to MPO and IRS .................... 27

           b)  Lost Revenues from Next Century's Implementation and MPO's Use of
               ONgDB Instead of Purchasing a Commercial License for Neo4j EE ................. 29

           c)  Lost Revenue from the IRS RAAS Division's Implementation and Use of
               ONgDB Instead of Purchasing a Commercial License for Neo4j EE ................. 35

           d)  Lost Revenue from Greystones's Implementation and Use of ONgDB
               Instead of Purchasing a Commercial License for Neo4j EE at the USAF ........... 53

           e)  Summary of Plaintiffs' Saved/Avoided Costs and Lost Profits .......................... 56

       B.  DEFENDANTS' GROSS PROFITS EARNED FROM THE
           INSTALLATION AND SUPPORT OF IMPROPERLY LICENSED ONGDB
           SOFTWARE AT THE IRS ...................................................................... 60

           a)  iGov's Gross Profits from eGovernment Solutions Contract for the
               Implementation and Support of ONgDB at the IRS ...................................... 60

           b)  iGov's Revenues from ASR Analytics Subcontracts and Task Orders for
               Support of ONgDB at the IRS .............................................................. 68

# I.   INTRODUCTION AND ASSIGNMENT

1.    I am a Member of Five Corners Consulting Group, LLC ("Five Corners"). Five Corners is a forensic accounting and litigation-consulting firm, which provides accounting, financial, economic, and valuation services to clients. I have been in public accounting and have provided forensic accounting, business valuation, and damage analyses for more than 23 years. I hold the Certified in Financial Forensics ("CFF") and the Accredited in Business Valuation ("ABV") designations from the American Institute of Certified Public Accountants and the Accredited Senior Appraiser ("ASA") designation from the American Society of Appraisers.

2.    I am a member of the California Society of Certified Public Accountants ("CalCPA"). I have served on the CalCPA statewide Litigation Services Steering Committee and was Chair of its San Francisco Chapter. This Steering Committee provides guidance to the more than 800 members of its four Operating Sections - (1) Business Valuation, (2) Economic Damages, (3) Fraud and (4) Family Law.

3.    Additionally, I co-chaired the Forensic Accounting & Litigation Support Specialty Group of The International Accounting Group ("TIAG"), a worldwide alliance of independent accounting firms.  TIAG is a global accounting industry organization boasting membership of more than 115 firms in more than 65 countries. The organization is part of the broader TAG Alliances, which includes TAG Law, one of the five largest global legal alliances; TAG Strategic Partners, whose membership is comprised of an international group of businesses; and TAG Foundation, a charitable entity. The role of TIAG's Forensic Accounting & Litigation Support Specialty Group is to promote the forensic accounting expertise of its members to all TIAG and TAG Law members and to set up a network of forensic experts.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

4.      As part of my professional experience as a forensic accountant, valuation and damages consultant, I have consulted with a variety of companies regarding various financial aspects of intellectual property, including the valuation and commercialization of intellectual property assets, as well as the quantification of damages in a variety of intellectual property disputes, including patent, trademark, copyright, and trade secret matters. These services have included analyses of sales, costs, profits, license agreements, royalty rates, business plans, forecasts, and other related financial information. I have been qualified as an expert in federal and state courts and have experience in consulting with clients and counsel regarding a diverse range of matters, including the assessment of damages related to intellectual property and breach of contract disputes.

5.      A complete copy of my current curriculum vitae, which summarizes my background and professional experience as well as a listing of my testimony experience over the preceding four years, is attached as **Exhibit A** to this report.

6.      Five Corners charges $525 per hour for time I spend consulting and assessing damages as well as time that may be spent testifying related to my analysis. Neither my, nor Five Corners' compensation is affected in any way by either the conclusions I have reached or the outcome of this matter.

7.      Five Corners has been retained by Hopkins & Carley ("Counsel") on behalf of Neo4j, Inc. and Neo4j Sweden AB (collectively referred to as "Neo4j") to assess the damages sustained by Neo4j as a result of the alleged actions by Defendants Purethink LLC ("Purethink"), iGov Inc. ("iGov"), and John Mark Suhy ("Mr. Suhy") (collectively referred to as "Defendants"). As discussed further below, the present dispute stems from the allegations that, *inter alia*, Mr. Suhy, (by and through the Defendant entities) infringed on Neo4j's trademarks and engaged in

false advertising in violation of the Lanham Act: §§ 1114(1) and 1125(a); and removed copyright management information from Neo4j's software and distributed that software (or caused it to be distributed and used by others) in violation of 17 U.S.C. § 1202(b).  Although not addressed in this report, to the extent that Defendants provide an assessment of alleged damages it has sustained in connection with any claims it has made, I have been asked by Counsel to additionally assess and respond to those as applicable in a rebuttal report.

8.      This report should not be construed as expressing opinions on matters of law, which are outside my expertise and are for the trier-of-fact to determine. However, to the extent I have interpreted evidence, these interpretations necessarily reflect my understanding thereof from an accounting and economic perspective.

## II.    INFORMATION CONSIDERED

9.      In undertaking my assignment, I, and others operating under my direction or supervision (collectively "we"), have considered information from a variety of sources, each of which is of a type that is reasonably relied upon by experts in my field. This includes documents and electronic data produced by the parties, pleadings and related documents, deposition testimony provided in this case, and publicly available information. Documents considered in my analysis are referenced throughout this report and identified in the attached **Exhibit B**.

10.     In addition to the materials referenced, my analyses and opinions are based upon (1) my education and training, (2) an assessment of the facts and circumstances involved in this matter, (3) my experience with situations of a similar nature, and (4) my expertise in areas relevant to the present inquiry.

11.     This report is based upon the information that has been made available as of the date above.  Should additional relevant information come to my attention after the date of this

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

report, such as documents or electronic data produced by the parties, expert reports, or deposition testimony, and/or rulings issued by the Court in this case, I may find it necessary to update my analysis, opinions, and conclusions, if necessary.

12.     In connection with my anticipated testimony at trial, I may create, from various documents produced in this litigation and obtained through independent research, demonstratives, summaries or exhibits that refer or relate to the matters discussed in this report. I have not yet created such demonstratives, summaries or exhibit.

## III.   SUMMARY OF OPINIONS

13.     Based upon my review of the documents referenced throughout this report, the analysis performed, and my education, training and experience, my findings are as follows:

     a.  Neo4j has suffered actual damages comprised of incremental lost profits from lost license fees due to the alleged actions of Defendants in an amount totaling **$4,857,789** and comprised of the following:

        i.  Next Century lost profits - $2,113,218

        ii.  IRS lost profits - $2,744,571, as follows:

| Project | Total |
|---|---|
| CKGE | $1,373,140 |
| YK1 | $486,880 |
| Corporate | $206,533 |
| Excise | $175,903 |
| Covid | $175,903 |
| Policy Net | $113,003 |
| Individual | $113,003 |
| CPEO | $50,103 |
| Ghost Prep | $50,103 |
| Total | **$2,744,571** |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

b.  In the alternative and/or in addition to, I have assessed the unjust enrichment received by Defendants, quantified as the gross revenues received by Defendants, to be **$1,562,082**.

c.   I understand that prejudgment interest is appropriate to be applied to the measures of damage proffered above.  However, I reserve the right to perform such calculation as a trial date is set or upon a ruling of an award to Plaintiffs by the trier-of-fact.

## IV.   BACKGROUND

### A.   PLAINTIFFS' BUSINESS

<u>Overview</u>

14.    Neo4j USA is a Delaware corporation with its principal place of business in San Mateo, California, specializing in graph database management systems. The Company provides the number one graph platform for connected data, marketed and sold under the trademark Neo4j®.[1] The Neo4j® graph database platform helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated.[2] This connections-first approach powers intelligent applications tackling challenges such as artificial intelligence, fraud detection, real-time recommendations and master data. [3]   Neo4j USA's platform helps organizations make sense of their data by revealing how people, processes and digital systems are

---

[1] Third Amended Complaint in Neo4J, Inc. and Neo4J Sweden AB v. Purethink LLC, iGov Inc. and John Mark Suhy dated 9/28/2020 ("TAC" or "Complaint"), ¶ 2, Dkt. No. 118 (Order Granting Plaintiffs' Motion for Partial Summary Judgment; Denying Defendants' Cross-Motion for Summary Judgment) at 2:8-26.

[2] *Id*.

[3] *Id*.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

interrelated.[4] Neo4j USA has hundreds of commercial customers, including global enterprises such as Walmart, Comcast, Cisco, and eBay, and also does substantial business with government agencies, including agencies within the United States Government.[5]

15.     Neo4j USA is the parent corporation of Neo4j Sweden, which in turn is a wholly owned subsidiary of Neo4j USA.[6] Neo4j Sweden owns all copyrights related to the Neo4j graph database platform, including the source code, and has licensed those copyrights to Neo4j USA.[7] In conjunction with its business, Neo4j USA filed for and obtained several federally registered trademarks, including U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").[8] In its registration application, Neo4j USA claimed first use of the Neo4j Mark was in June 2006 and first use in commerce in May 2007 based on the use of that mark by Neo4j Sweden, Neo4j USA's predecessor-in-interest and related company.[9]

16.     Plaintiffs originally offered a free and open source version of the Neo4j platform, meaning that the source code was available to the public on GitHub pursuant to the GNU General Public License version 3 ("GPL").[10] This version was known as the Neo4j Community Edition ("Neo4j CE").[11] Neo4j CE is limited in its feature set and does not come with technical or

---

[4] Dkt. No. 118 at 2:9-11; Dkt. No. 98-3 (Declaration of John Broad), ¶¶ 2-3.

[5] Dkt. No. 118 at 2:11-14; Dkt. No. 98-3 at ¶ 4.

[6] Dkt. No. 118 at 2:15-16; Dkt. No. 98-2 (Declaration of Philip Rathle), ¶ 3.

[7] Dkt. No. 118 at 2:16-18; Dkt. No. 98-2, ¶¶ 3-4.

[8] Dkt. No. 118 at 2:18-23; Dkt. No. 98-1 (Declaration of Jeffrey M. Ratinoff), Ex. 1.

[9] *See id*.

[10] Dkt. No. 118 at 3:1-3; Dkt. No. 98-2., ¶¶ 4-5.

[11] Dkt. No. 118 at 3:3-4; Dkt. No. 98-2, ¶¶ 4-5.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

administrative support.[12] Plaintiffs also offered a more advanced commercial version which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE").[13] Neo4j EE was originally offered under both a paid-for commercial license and the free GNU Affero General Public License, version 3 ("AGPL").[14]

17.    In May 2018, Plaintiffs released Neo4j EE version 3.4, which they continued to offer under an open source license; however, they replaced the AGPL with a stricter license, which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License").[15] The new terms prohibited the non-paying public from engaging in commercial resale and certain commercial support services.[16] In November 2018, Plaintiffs released Neo4j EE version 3.5 under a commercial license only.[17] From that point on, Plaintiffs were no longer providing Neo4j EE on an open source basis.[18]

<u>Price Lists</u>

18.    In connection with my analysis, I have received and reviewed various operative price lists as published by Neo4j in connection with its product and service offerings. Limited information from these price lists is reflected below in the charts below.

19.    The price list, published as being effective on October 1, 2017, reflects the following terms in connection with the Neo4j Enterprise Bundle (described as used for "large

---

[12] Dkt. No. 118 at 3:4-5; Dkt. No. 98-2, ¶¶ 5-6.

[13] Dkt. No. 118 at 3:5-7; Dkt. No. 98-2, ¶ 8.

[14] Dkt. No. 118 at 3:7-8; Dkt. No. 98-2, ¶ 9.

[15] Dkt. No. 118 at 3:9-12; Dkt. No. 98-2, ¶ 11, Ex. 3.

[16] Dkt. No. 118 at 3:12-13.

[17] Dkt. No. 118 at 3:13-14.

[18] Dkt. No. 118 at 3:14-15; Dkt. No. 98-3., ¶ 13, Ex. 4.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

mission-critical applications that are used by more than one department (or by a larger department), or by customer-facing applications)":[19]

### Neo4j Enterprise Bundle Price List Effective October 1, 2017

| Feature | |
|---|---|
| Basic Configuration | |
| | |
| Price | |
| Additional Production Capacity | |
| | |
| Support | |
| | |
| # of Licensed Developers | |
| Disaster Recovery | |
| Test Machines | |

20.     I understand from my conversations with Jason Zagalsky, Neo4j, Inc.'s Federal Technical Account Manager, that a test machine license is specified for every production machine being licensed on a one-to-one basis.  The price list states that multi-year discounts are offered to customers who pre-pay the full amount of a multi-year contract amount at the time of the initial sale.[20]  Discounts from list price offered are between  and ████████ ████████████.[21]

21.     The next price list change did not take place until April 1, 2019; at which time prices were identified as follows for the Neo4j Enterprise Bundle:[22]

---

[19] Depo Ex. 168 (N4J_020187 – 200).

[20] N4J_020192

[21] N4J_020192

[22] N4J_020230 - 248

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Neo4j Enterprise Bundle Price List Effective April 1, 2019**



22.     In addition to the Enterprise Bundle, Neo4j also offered a "Discovery Bundle" which is identified as being applicable for "small single-machine configuration intended for internal departmental applications where 24x7 availability is not required."[23] Limited pricing information pertaining to the Discovery Bundle within the April 1, 2019 price list is reflected below:

---

[23] N4J_020230 - 248

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Neo4j Discovery Bundle Price List Effective April 1, 2019**



23. The April 1, 2019 price list reflected multi-year discounts applicable to Enterprise and Discovery Bundles of up to ████████████████████████████████████████████ ████████████████████████████████████████.[24]

24. The next price list update took place on April 1, 2020; at which time prices were identified as follows for the Neo4j Enterprise Bundle:[25]

---

[24] N4J_020230 – 248.

[25] N4J_020201 – 222.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Neo4j Enterprise Bundle Price List Effective April 1, 2020**



25.     Neo4j again offered a Discovery Bundle which is identified as being applicable for "small single-machine configuration intended for internal departmental applications where 24x7 availability is not required."[26]  Limited pricing information pertaining to the Discovery Bundle within the April 1, 2020 price list is reflected below:[27]

---

[26] N4J_020201 – 222.

[27] N4J_020201 – 222.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Neo4j Discovery Bundle Price List Effective April 1, 2020**



26.     The April 1, 2020 price list also reflected multi-year discounts applicable to Enterprise and Discovery Bundles of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[28] Additionally, the price list indicated that other discounts may be applicable with Sales Management approval ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.”[29]

27.     The next price list update took place on July 1, 2021; at which time prices were identified as follows for the Neo4j Enterprise Bundle.[30]

---

[28] N4J_020201 – 222.

[29] N4J_020201 – 222.

[30] N4J_020153 – 186.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Neo4j Enterpris**



| Feature | |
|---|---|
| **Minimum Production Configuration** | |
| **Production Upgrades (Per Machine)** | |
| | |
| **Support** | |
| **# of Licensed Developers** | |
| **Test Machines** | |

28.     Neo4j again offered a Discovery Bundle which is identified as being applicable for "small single-machine configuration intended for internal departmental applications where 24x7 availability is not required."[31]  Limited pricing information pertaining to the Discovery Bundle within the July 1, 2021 price list is reflected below:[32]

---

[31] N4J_020153 – 186.

[32] N4J_020153 – 186.

**Neo4j Discovery Bundle Price List Effective July 1, 2021**

| Feature | | |
|---|---|---|
| **Basic Configuration** | | |
| **Additional Production Capacity** | | |
| **Test Machines** | | |

29.     The July 1, 2021 price list reflected multi-year discounts consistent with prior price lists in that Enterprise and Discovery Bundles could receive up to a ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮.[33]  Additionally, the price list indicated that other discounts may be applicable with Sales Management approval ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

**B.     PLAINTIFFS' RELATIONSHIP WITH PURETHINK AND DEFENDANTS' INITIAL INFRINGEMENT OF THE NEO4J MARK**

30.     PureThink is a software and information technology consulting company founded by Mr. Suhy, which specializes in supporting agencies within the U.S. Government.[34] Neo4j USA contracted with PureThink to sell and support the commercial version of Neo4j pursuant to a Solution Partner Agreement ("SPA").[35] Under this agreement, PureThink had a non-exclusive,

---

[33] N4J_020153 – 186.  The price list further states that "these discounting guidelines are applicable to new business only, not renewing business.  Discounts for renewing customers who wish to extend their term length from 1-year subscription to a multi-year subscription requires Renewals Team involvement and approval."  The document further states that the Company provides "a range of multi-year discounts to accommodate different situations."

[34] Dkt No. 118 at 3:17-18; Dkt. No. 98-1, Ex. 2.

[35] Dkt No. 118 at 3:19-20; Dkt. No. 98-1, Ex. 4.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

non-transferable limited license to, *inter alia*, use the Neo4j Mark solely to market and resell commercial licenses of Neo4j EE and related support services in exchange for shared revenue for the licenses that it resold.[36]

31.     In the hopes of increased sales, PureThink developed the Neo4j Government Edition ("Gov't Edition"), which was a package designed to streamline government procurements. [37] PureThink focused mainly on selling Gov't Edition packages to various government agencies.[38] PureThink initially marketed Gov't Edition to the IRS, however, the IRS indicated that it would require a prototype before purchasing a full subscription.[39]

32.     On September 23, 2016, the IRS's Office of Research, Applied Analytics and Statistics ("RAAS") awarded PureThink a contract for the "Implementation of the Government Neo4j project" for $229,000.[40]  The IRS understood this purchase to allow the IRS to "use the Government Edition, which would include the Neo4j database that came with [PureThink] during this period of performance"[41] and included professional services provided by Mr. Suhy via PureThink and a 1-year license for Neo4j EE.[42] This work pertained to a precursor for what would become the CDW Knowledge Graph Environment ("CKGE") that used Neo4j EE and later Defendants' Open Native Graph Database ("ONgDB") software in place of Neo4j EE.[43]

---

[36] Dkt No. 118 at 3:20-23; Dkt. No. 98-1, Ex. 4 at § 4.1.

[37] Dkt No. 118 at 4:4-6; Dkt. No. 98-1, Exs. 5-6.

[38] *Id*.

[39] Dkt No. 118 at 4:8-11; Dkt. No. 98-1, Ex. 8.

[40] Depo Ex. 159.

[41] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 41:19-42:1.

[42] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 40:5-43:6.

[43] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 43:21-44:3.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

33.     I understand the allocation of $229,000 between PureThink providing professional services and a paid commercial license for Neo4j EE was disputed.[44] Mr. Suhy encouraged the IRS to continue to use an open source version of Neo4j EE and PureThink kept the entire $229,000.[45] As a result, on May 30, 2017, Neo4j USA sent PureThink notice that Mr. Suhy's use, distribution, and marketing of Neo4j's products and his marketing of consulting services focused on those products constitute a material breach of the SPA.[46] The notice triggered a 30-day cure period, during which Mr. Suhy incorporated a new company, iGov Inc., in order to support open source Neo4j software without being bound by restrictions in the SPA that he believed to be unlawful.[47] On July 11, 2017, Neo4j USA terminated the SPA.[48]

34.     After the partnership agreement terminated, Mr. Suhy and iGov continued marketing the Gov't Edition to government agencies.[49] The iGov website contained numerous uses of the Neo4j Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise."[50] iGov advertised itself as "the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source license!"[51]

35.     The Court's May 18, 2021 Order Granting Plaintiffs' Motion for Partial Summary Judgment; Denying Defendants' Cross-Motion for Summary Judgment ("MSJ Order") found the

---

[44] *See* TAC, ¶¶ 33-35 and Exs. 3-4 ; *see also* Dkt. No. 118 at 4:8-12.

[45] *See id.; see also* 000191, 000205, 000206 and Depo Ex. 161.

[46] Dkt. No. 118 at 4:13-15; Dkt. No. 98-1, Ex. 9.

[47] Dkt No. 118 at 4:15-18; Dkt. No. 98-1, Ex 11; Dkt. No. 72 (Defendants' Second Amended Counterclaim), ¶ 20.

[48] Dkt. No. 98-1, Ex. 12.

[49] Dkt No. 118 at 4:24-25; Dkt. No. 98-1, Exs. 14-15.

[50] Dkt No. 118 at 4:25-5:9; Dkt. No. 98-1, Exs. 14-19.

[51] Dkt No. 118 at 5:9-12; Dkt. No. 98-1, Ex. 17 ("iGov Inc's Government Development Package with Neo4j Enterprise . . . Comes with same physical Neo4j Enterprise software").

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

foregoing and other similar uses of the Neo4j Mark by Defendants constituted trademark infringement in violation of the Lanham Act.[52]

### C. DEFENDANTS' PROMOTION OF ONGDB SOFTWARE AND INFRINGEMENT OF THE NEO4J MARK

36.     In November 2018, Plaintiffs released Neo4j EE v3.5 solely under a commercial license.[53] In January 2019, the Graph Foundation, Inc. ("GFI") released ONgDB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in a publicly available beta version of Neo4j EE v3.5.[54] Defendants continued to promote ONgDB as "free and open source" by replacing the Neo4j Sweden Software License with the AGPL in certain LICENSE.txt files alongside the source code.[55] This removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor, and removed the Commons Clause, effectively allowing Defendants to commercially use and support ONgDB.[56]

37.     I am informed that Defendants did not claim that ONgDB was identical to its Neo4j counterpart versions. Instead, ONgDB combined the last public Neo4j EE code (beta version of Neo4j EE 3.5), the Neo4j CE code, and "glue code" authored by Mr. Suhy and other contributors.[57] Nevertheless, GFI advertised on its website that "ONgDB distributions are licensed under

---

[52] Dkt. No. 118 at 4:24-7:6, 8:7-11, 13:2-22:21.

[53] Dkt. No. 118 at 6:18-19; Dkt. No. 98-1, Ex. 4.

[54] Dkt. No. 118 at 6:19-21.

[55] Dkt. No. 118 at 6:21-24; Dkt. No. 98-1, Exs. 39-40; Dkt. No. 91 at 19:9-25; Ex. 31 at 159:3-10; Dkt. No. 98-3. ¶ 30.

[56] Dkt. No. 118 at 6:24-26; TAC, ¶¶ 76-78, 166-173.

[57] Dkt. No. 118 at 6:21-24; Dkt. No. 98-1, Ex. 31 at 158:18-163:5, 163:13-165:6; Ex. 3 at 124:2-126:23.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number."[58]

38.     On its "downloads" webpage, iGov specifically described "ONgDB Enterprise 3.5.5" as a "Drop in replacement for Neo4j Core and Enterprise 3.5.5."[59] iGov instructed potential users of Neo4j EE on its "neo4j" page to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number" and did so on the successor "graph" page.[60] Similarly, iGov asserted that "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions."[61] iGov also continued to offer "commercial equivalent support packages for Neo4j Enterprise open source licensed distributions," and interchangeably referred to "ONgDB Enterprise" and "Neo4j Enterprise" on its website.[62] Defendants made similar statements directly to potential customers, such as "[ONgDB] is 100% open source and a drop in replacement for the same Neo4j version."[63]

39.     In the MSJ Order, the Court held that the foregoing and other similar uses of the Neo4j Mark in relation to Defendants' promotion of ONgDB constituted trademark infringement in violation of the Lanham Act.[64] Likewise, the Court held that the foregoing and other similar statements made by Defendant in promoting ONgDB constituted False Advertising and False Designation of Origin in violation of the Lanham Act and California's Unfair Competition Law

---

[58] Dkt. No. 118 at 7:10-12; Dkt. No. 98-1, Ex. 57.

[59] Dkt. No. 98-1, Exs. 67-69.

[60] Dkt. No. 98-1, Exs. 63-66.

[61] Dkt. No. 118 at 7:18-19; Dkt. No. 98-1, Ex. 71-74.

[62] Dkt. No. 118 at 7:16-22; Dkt. No. 98-1, Exs. 62-70.

[63] Dkt. No. 118 at 7:22-24; Dkt. No. 98-1, Ex. 43-46, 76-77.

[64] Dkt. No. 118 at 4:24-7:6, 8:7-9:1, 13:2-22:21.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(UCL).[65] As found by the Court, these statements generally fell into two groups: (1) statements that ONgDB and "Neo4j Enterprise" were "free and open source" versions of or alternatives to commercially licensed Neo4j EE; and (2) statements that ONgDB was a "drop-in replacement for an existing commercial licensed distribution of the same version number" of Neo4j EE.[66]

    **D.**    **DEFENDANTS' ALLEGED VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA")**

    40.    As discussed in the Third Amended Complaint, Plaintiffs include copyright management information ("CMI") within the source code for Neo4j EE (including information identifying the copyright owner as Neo4j Sweden, the title of the work, licensing information, etc.).[67]

    41.    Plaintiffs allege that with GFI's approval, Mr. Suhy replicated the Neo4j EE source code files and removed and/or altered copyright management information, including (a) the existing Neo4j Sweden Software License; (b) copyright owner information; and (c) other terms and conditions for the use of the copyrighted work from at least 28 separate files from Neo4j EE.[68] Plaintiffs further allege that Mr. Suhy replaced the Neo4j Sweden Software License with a generic version of the APGLv3 thereby removing the additional license imposed by the Neo4j Sweden Software License to prevent commercial abuse and other copyright management information, and republished these source code files on Graph Foundation's Github repository for ONgDB.[69] The

---

[65] Dkt. No. 118 at 4:24-7:6, 8:7-9:1, 13:2-22:21.

[66] Dkt. No. 118 at 22:22-32:14.

[67] TAC, ¶. 76.

[68] TAC, ¶ 77.

[69] TAC, ¶ 77.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Complaint includes the example below of changes that Mr. Suhy allegedly made within one of the 28 files (with deletions highlighted in red and additions highlighted in green):[70]



42.    Plaintiffs claim that Mr. Suhy, acting in his individual capacity, as well as an agent of iGov, PureThink and GFI, intentionally copied source code files for the Neo4j graph database platform containing Neo4j's CMI, and then intentionally altered and removed Neo4j's CMI, including licensing terms and conditions, in at least 28 separate source code files for the Neo4j graph database platform.[71] Plaintiffs further allege that Defendants publicly distributed the altered source code files as part of GFI's ONgDB software on iGov's website and GFI's Github repository with the intent and knowledge that Neo4j's CMI had been intentionally removed with the

---

[70] TAC, ¶ 77.

[71] TAC, ¶ 169.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

knowledge that doing so would induce, enable, facilitate, or conceal an infringement of Neo4j Sweden's rights under the Copyright Act.[72]

### E.   DAMAGES RECOVERABLE UNDER THE LANHAM ACT AND THE COURT'S FINDINGS ON DEFENDANTS' LIABILITY

43.     The Ninth Circuit has recognized that "the purposes of the Lanham Act can be accomplished by making acts of deliberate trade-mark infringement unprofitable."[73]  The court thus may award "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action" for a "violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a)."[74] In measuring actual damages such as harm to goodwill, I understand that the jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts.[75]

44.     Actual damages sustained by a plaintiff can include commercial injury, such as lost sales.[76] The Ninth Circuit has held that commercial injury is generally presumed "when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers."[77]

45.     Under the Lanham Act, a plaintiff may recover an infringing defendant's profits in two scenarios: (1) as a measure of the plaintiff's own damages; or (2) on a theory of disgorgement

---

[72] TAC, ¶¶ 169- 170.

[73] *Maier Brewing Co. v. Fleischmann Distilling Corp*., 390 F.2d 117, 123 (9th Cir. 1968).

[74] 15 U.S.C. § 1117(a).

[75] *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111–12 (9th Cir. 2012).

[76] *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 644 (N.D. Cal. 2019) ("Lost sales for the plaintiff because of the defendant's false advertising is the 'paradigmatic direct injury from false advertising.'") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014)).

[77] *TrafficSchool.com, Inc. v. Edriver, Inc*., 653 F.3d 820, 831 (9th Cir. 2011) (emphasis in original), 653 F.3d at 826; *see also Lexmark*, 134 S.Ct. at 1393 ("diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising").

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

of the defendant's unjustly obtained profits.[78]  While basis for entitlement may differ, I understand the calculation of defendant's profits generated from its violations of the Lanham Act to be the same.

46.     The first scenario is designed to "compensat[e] the plaintiff for sales which he has lost as a result of his customers being diverted to the infringer," so direct competition is required between the plaintiff and the infringer.[79] Where the defendant's profits are sought as a measure of the plaintiff's lost sales, "plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty."[80]

47.     Under the second scenario, the disgorgement of an infringer's ill-gotten profits is permitted "in those cases where the infringement is 'willfully calculated to exploit the advantage of an established mark'" or "where the defendant is 'attempting to gain the value of an established name of another.'"[81]  Willful infringement occurs where defendant engages in deliberate, false, "misleading," or "fraudulent" conduct.[82] I understand that the Court has the discretion to award prejudgment interest, and willful violations of the Lanham Act are reasons for doing so.[83]

---

[78] *See Lindy Pen*, 982 F.2d at 1407; *see also Quia Corp. v. Mattel, Inc*., No. C 10-1902 JF HRL, 2011 WL 2749576, at *7 (N.D. Cal. July 14, 2011) ("[w]here a plaintiff and defendant are in direct competition and the plaintiff is unable to prove its own lost sales, an award of the defendant's profits may serve as proxy for what the plaintiff would have recovered had the defendant not infringed upon or been likely to dilute the plaintiff's mark").

[79] *Maier Brewing*, 390 F.2d at 121; *see also Quia Corp.*, 2011 WL 2749576, at *7.

[80] *Quia Corp.*, 2011 WL 2749576, at *8.

[81] *Lindy Pen,* 982 F.2d at 1405-06 (quoting *Maier Brewing*, 390 F.2d at 123).

[82] *Lindy Pen,* 982 F.2d at 1406.

[83] *See.Fitness Anywhere LLC v. WOSS Enterprises LLC*, No. 14-CV-01725-BLF, 2018 WL 6069511, at *7 (N.D. Cal. Nov. 20, 2018) (court awarde pre-judgment interest based on the 52-week T-Bill rate, compounded annually due to the willful and deliberate nature of defendant's infringement of plaintiff's mark); *see also  PRL USA Holdings, Inc. v. Designerbrandsforless, Inc*., No. 2:20-CV-01670-AB-RAO, 2020 WL 6694348, at *5 (C.D. Cal. Oct. 29, 2020) (awarding prejudgment interest against trademark counterfeiter at a rate provided by 25 U.S.C. § 6621(a)(2)).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

48.     In this regard, the Court already made findings under these principles in granting Plaintiffs' motion for summary judgment on Neo4j USA's trademark infringement, false advertising and false designation of origin claims under the Lanham Act and mirror claim under California's UCL.[84]

49.     In addition, the Court found Defendants' statements and advertisements that ONgDB was a "free and open source" version of Neo4j Enterprise Edition ("Neo4j EE") with no limitations or restrictions were false and misleading.[85]  I understand that the Court's finding was mainly based on Defendants' improper removal of the Commons Clause from the Neo4j Sweden Software License.[86]

50.     The Court found that the Commons Clause "prohibited the non-paying public from engaging in commercial resale and certain commercial support services."[87] The Court also found that Defendants' improper removal of "certain legal notices identifying Neo4j Sweden as the copyright holder and licensor" and the Commons Clause by replacing the Neo4j Sweden Software License with the AGPLv3 open source license "in certain LICENSE.txt files alongside Neo4j Sweden's source code " allowed Defendants "to commercially use and support ONgDB.[88]

51.     Consequently, I understand that none of the lost customers identified by Neo4j that adopted ONgDB over Neoj4 EE could have legally done so in a commercial setting but for

---

[84] *See, e.g.,* Dkt. No. 118 at 19:13-22:21, 22:23-28:24, 30:14-32:14

[85] *See, e.g.,* Dkt. No. 118 at 22:23-28:24.

[86] *See, e.g.,* Dkt. No. 118 at 3:1-15, 6:18-26.

[87] Dkt. No. 118 at 3:9-15; *see also id.* 5:24-6:1 ("In May 2018, Plaintiffs released Neo4j EE v3.4 but replaced the AGPL with the Neo4j Sweden Software License, a stricter license which included additional restrictions provided by the Commons Clause. [] The Commons Clause prohibited resale and commercial support services. []").

[88] Dkt. No. 118 at 6:18-26.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Defendants' removal of the commercial restrictions imposed by the Neo4j Sweden Software License.

52. Finally, the Court has already found that Neo4j, Inc. and Defendants were competitors and that Neo4j, Inc. suffered damages in the form of lost sales/revenue as a result of Defendants' violations of the Lanham Act and UCL, and in particular with Neo4j, Inc.'s false advertising claims:[89]

> "Plaintiffs maintain that there is undisputed evidence that Defendants' false statements diverted sales from Neo4j USA. See, e.g., Ratinoff Decl., Exs. 47-50, 53, 120, 127; Ex. 3 at 53:4- 54:25, 224:13-23; Broad Decl., ¶¶ 20-24. Indeed, Neo4j USA lost multi-year deal when Next Century adopted ONgDB via the Maryland Procurement Office, amounting to over $2.2 million in lost revenue. Broad Decl., ¶¶ 22-24, Exs. 12-13. Defendants claim that Plaintiffs have failed to establish that customers like Next Century would have purchased a Neo4j subscription but for Defendants' offering ONgDB as a "free and open source drop-in replacement." The Court does not find this argument persuasive. Commercial injury is generally presumed "in false comparative advertising cases, where it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011); *see also Lexmark Intern., Inc.*, 134 S. Ct. at 1393 ("diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising"). Defendants provide no evidence to dispute Plaintiffs' evidence that customers chose ONgDB based on Defendants misrepresentations at the commercial detriment to Plaintiffs."

---

[89] Dkt. No. 118 at 32:16-33:3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### F.   DAMAGES RECOVERABLE UNDER THE DMCA AND ASSUMPTIONS BASED ON THE COURT'S SUMMARY JUDGMENT ORDER

53.    In part, Section 1202(b)(1) of the DMCA provides: "No person shall, without the authority of the copyright owner or the law ... intentionally remove or alter any copyright management information ... knowing, or ... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright.[90]

54.    Further, Section 1202(b)(3) of the DMCA provides: "No person shall, without the authority of the copyright owner or the law ... distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or ... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright.[91]

55.    I understand that courts commonly list the elements of proof for the Removal/Alteration Prohibition as requiring (1) the existence of CMI on the infringed work; (2) the removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally with the knowledge that it will induce, enable, facilitate, or conceal copyright infringement.[92]

56.    I note that the Court's findings made in connection with Neo4j USA's Lanham Act claims regarding Defendants' removal of the Commons Clauses and Neo4j Sweden's other

---

[90] 17 U.S.C. § 1202(b)(1).

[91] 17 U.S.C. § 1202(b)(3).

[92] *See Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4-5 (N.D. Cal. Sept. 19, 2022); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

copyright management information are consistent with the allegations supporting Plaintiffs' DMCA claim.[93]  Since the same conduct forms the basis of Plaintiffs' DMCA claim, this report assumes the Court will find that Defendants violated 17 U.S.C. § 1202(b)(1) and 17 U.S.C. § 1202(b)(3) of the DMCA.

57.     Under the DMCA, Plaintiffs may recover "the actual damages suffered … as a result of the violation, ***and*** any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages."[94]

58.     In addition, actual damages may consist of lost licensing fees and renewal fees.[95] Under the lost licensing fee theory, evidence of a copyright holder's prior licensing or valuation of his work can provide sufficient support for his actual damages claim.[96]

59.     Finally, the Court has the discretion to award prejudgment interest.[97]

## V.     ANALYSIS OF DAMAGES

### A.     PLAINTIFFS' LOST PROFITS FROM LICENSING REVENUE[98]

#### a)   Assessment of Prior Licensing activity by Neo4j to MPO and IRS

60.     As discussed in more detail below, I have assessed measures of lost sales suffered by Neo4j as a result of the alleged actions of Defendants in this matter.   Specifically, I have

---

[93] *Compare* TAC, ¶¶ 76-77 *and* Dkt. No. 118 at 24:7-25:19.

[94] 17 U.S.C. § 1203(c)(2) (emphasis added).

[95] *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (affirming an actual damages award based on the copyright holder's actual price quote to the infringer).

[96] *See id.* at 709.

[97] *See Polar Bear Prods.,* 384 F.3d at 718.

[98] I understand that only Neo4j, Inc. asserted Lanham Act claims, while both Neo4j, Inc. and Neo4j Sweden asserted a DMCA claim.  As previously noted above, Neo4j Sweden is a wholly owned subsidiary of Neo4j, Inc. Thus, my analysis of the lost revenue is applicable to both claims and to both Neo4j USA and Neo4j Sweden.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

estimated Neo4j's lost sales associated with lost contracts with Next Century and the Internal Revenue Service ("IRS"). A starting point of my assessment involves analyzing other instances of sales and licensing activity between Neo4j and Next Century and the IRS.

61.    Between September 2019 and September 2022, Neo4j licensed products and services to the IRS for a total price of approximately ▉▉▉▉▉.[99] These licensed products include a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



---

[99] N4J_020132 – HC–AEO.

[100] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

[101] N4J_020132 – HC–AEO. ▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

[102] N4J_020230 – 248. ▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

[103] N4J_020132 – HC–AEO.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



62.     I have also reviewed other licensing arrangements between Neo4j and the Maryland

Procurement Office ("MPO"). ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ ██ ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████[106]

### b) Lost Revenues from Next Century's Implementation and MPO's Use of ONgDB Instead of Purchasing a Commercial License for Neo4j EE

63.     As detailed above, Plaintiffs may recover lost sales and profits with respect to their

DMCA and Lanham Act claims.   According to the Complaint, the documents and deposition

transcripts I reviewed, and the Court's summary judgment order that the adoption and use of

ONgDB by the Maryland Procurement Office (MPO) under an improper open source license was

due to Defendants' violations of the DMCA and violations the Lanham Act.

64.     The Court has already found that "Neo4j USA lost multi-year deal when Next

Century adopted ONgDB via the Maryland Procurement Office, amounting to over $2.2m in lost

---

[104] N4J_020132 – HC–AEO.

[105] N4J_020230 – 248.

[106] N4J_020132 – HC–AEO.  N4J_020201 – 222.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

revenue."[107] These findings appear to be further supported by exhibits attached to the Declaration of Jeffrey M. Ratinoff filed in support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 98-1).[108] The specific amount paid for the lost commercial subscription, which the Court referenced from the Broad Declaration was $2,266,950.[109]

65.     I have reviewed the documents attached to the Ratinoff Declaration and cited by the Court, and I understand they purport that ONgDB was a "drop-in" replacement for Neo4j EE and a "free and open source" version of Neo4j EE with no limitations or restrictions, and they resulted in adoption of ONgDB instead of a paid commercial subscription for Neo4j EE.   For example, Mr. Suhy exchanged emails with employees of Next Century, the contractor working with the MPO to implement ONgDB, in January 2019 stating:[110]

> ➢ "The 'closed source components' referenced actually do have the related source code in the git repositories. Neo4j Inc removed the code from the current branches but they were still in the history."

> ➢ "We actually package these feature's source code back into the open source distributions. Turning features such as causal clustering encryption back on."

---

[107] Dkt. No. 118 at 29:21-23 (citing Dkt. No. 98-3, ¶¶ 22-24, Exs. 12-13).

[108] *See* Dkt. No. 98-1, Ex. 47 (IGOV0001573500.0001 - IGOV0001573500.0002); Dkt. No. 98-1, Ex. 48 (GFI000071-73; also marked as GFI Ex 32 to 10/16/20 depo of GFI at 204:23-205:12); Dkt. No. 98-1, Ex. 49 (GFI000068-70; also marked as GFI Ex 33 to 10/16/20 depo of GFI at 213:12-214:2); Dkt. No. 98-1, Ex. 50 (GFI000067; also marked as GFI Ex 34 to 10/16/20 depo of GFI at 218:21-219:11); Dkt. No. 98-1, Ex. 51 (GFI000065; also marked as GFI Ex 35 to 10/16/20 depo of GFI at 226:19-227:10); Dkt. No. 98-1 (Ratinoff MSJ Decl), Ex. 120 (Next Century email confirming use of ONgDB; also marked as GFI Depo Ex. 28 to 10/16/20 depo of GFI at 198:3-198:24).

[109] Dkt. No. 118 at 29:21-23 (citing Dkt. No. 98-3, ¶¶ 22-24, Exs. 12-13).

[110] Depo Exs. 30-31 and Deposition of John Mark Suhy as the representative of iGov, Inc., October 22, 2020, at 218:8-224:12.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

➢  "[T]he open source [ONgDB] distributions have no limits on the number of cluster instances, cores, etc - not to mention they are 100% free" and

➢  "Usually which one you go with falls to the cost of production support."

66.     The deposition testimony of Jim Weyant of CACI (Next Century's successor-in-interest) stated that Next Century found out about Neo4j Enterprise software bundles costs from the iGov Sol website that the Court found to contain violations of the Lanham Act.[111]

67.     The deposition testimony of Jim Weyant of CACI stated that the MPO required the enterprise-only features offered by Neo4j EE and ONgDB, such as causal clustering and multi-data centers.[112]

68.     In October 2018, Next Century exchanged emails with Mr. Suhy regarding representations made on iGov's website that ONgDB was an open-source version of Neo4j EE that provided the enterprise-only features for free.[113] During the course of these communications, Mr. Suhy reconfirmed the claims and represented that Next Century could use the product under the AGPL without restrictions or paying Neo4j for a commercial license.[114]  Mr. Suhy also claimed that "the US Treasury has now adopted ONgDB Enterprise - which is the same code base, with just a different name and removal of the commons clause."[115]

---

[111] Depo Ex. 43 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 35:7-37:13, 38:25-39:18, 42:21-44:23; Dkt. No. 118 at 29:19-23 (citing Dkt. No. 98-1, Exs. 47-50 and 120).

[112] Depo Exs. 44 and 46; Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 44:24-51:14, 56:18-62:12;.

[113] *See id.; see also* Depo Ex. 45; Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 51:23-25, 54:7-59:17.

[114] Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 51:23-25, 54:7-59:17.

[115] Depo Ex. 45 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 51:23-25, 54:7-59:17.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

69.     In a series of emails ending on January 4, 2019, Mr. Suhy confirmed that ONgDB v3.5 would have feature parity with the enterprise features of Neo4j and would also be available without restrictions or paying Neo4j for a commercial license. [116]  Mr. Suhy made similar representations regarding ONgDB and the removal of the Commons Clause from the Neo4j EE license.[117]

70.     Next Century confirmed that the NSA chose to use ONgDB over Neo4j EE for continued prototype work in February 2019.[118]  Next Century also informed Neo4j USA that "[w]e have found that open-sourced (non-commercial) builds from the Neo4j source code provide the clustering and security requirements needed in our environment."[119]  Jim Weyant of CACI also testified that clustering and security requirements were enterprise-only features, and that the NSA chose ONgDB over Neo4j EE based on not having to pay for a license.[120]

71.     In March 2019, Next Century gave Neo4j USA the required specifications for the ongoing project for the MPO and asked for Neo4j USA for a quote for use in a production environment.[121]  Neo4j USA provided a proposal that matched these requirements, which the

---

[116] Depo Ex. 47 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 62:13-65:17.

[117] Depo Ex. 50 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 83:21-84:11, 86:4-88:3.

[118] Depo Ex. 48 ("What I haven't told them yet (but likely will need to soon) is that we're pursuing an open-source alternative (the same Neo4j source code but built and licensed separately) which bundles all the same features as the Neo4j enterprise version but without the costs.") and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 65:18-66, 69:11-70:22, 72:15-74:2; Depo Ex. 52 ("Please ensure that, from this point forward, we are only using binaries/containers released by ONgDB, not by Neo4j.") and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 89:24-91:17; Depo Ex. 53 at 3447 ("[W]e are no longer evaluating Neo4J on this project. We are evaluating and using ONgDB.") and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 91:24-92:25.

[119] Depo Ex. 49.

[120] Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 76:11-82:7.

[121] Depo Ex. 54 and Depo Ex 55. Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 98:23-104:17.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Court cited in the MSJ Order as being a lost $2.2 million multi-year deal.[122] The following is an excerpt from the Neo4j proposal provided in April 2019:



72.     As reflected in the proposal, Neo4j provided pricing of its product consistent with its April 1, 2019 price list.

As reflected in the proposal, the lost revenue referenced by the Court was net of a 15% (multi-year) discount.[123]

73.     On April 29, 2019, Next Century confirmed it shared Neo4j USA's proposal with the MPO, and was instructed to continue using ONgDB.[124]  According to the testimony of Jim Weyant of CACI, the big difference between ONgDB and Neo4j EE was price.[125]

---

[122] Depo Ex 55 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 102:18-103:14; Dkt. No. 118 at 32:16-33:3 (citing Dkt. No. 98-3, Exs. 12-13).

[123] 

[124] Depo Ex. 56 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 106:20-107:17.

[125] Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 107:18-109:1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

74.     On July 21, 2019, Next Century informed Neo4j USA that NSA was not interested in the Neo4j EE proposal.[126]  Again, the material factor between ONgDB and Neo4j EE was price.[127]

75.     Next Century continued to use ONgDB and that it was placed into a production environment for the NSA in or about October 2020.[128] As a result of moving to production, the number of servers needed increased and as a result the number of machines running ONgDB increased.[129]

76.     Accordingly, based on my review of the Court's rulings, price lists, and proposal provided by Neo4j to Next Century and the MPO, I have calculated Neo4j's lost revenue associated with Next Century to be **$2,266,950** - applicable to both the Lanham Act and DMCA claims.

77.     It is reasonable to conclude that the MPO would have purchased a paid commercial subscription of Neo4j EE if using ONgDB for free was not an option. ███████████████

███████████████████████████████████████████████████████████

---

[126] Depo Ex. 57 ("Last I spoke with Matt about this subject, he was not interested in pursuing the [Neo4j] EE option at this time.") and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 110:4-111:18.

[127] Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 110:9-111:24.

[128] Depo Ex. 58 ("I work with Shahak Nagiel who wrote to you earlier regarding the possibility of using OngDB [sic] instead of the enterprise edition of Neo4j. I am currently leading the Graph Database team responsible for deploying an OngDB-based solution into production.") and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 111:25-112:11, 115:15-117:14; Depo Ex. 60 and Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 125:14-127:23; *see also* Dkt. No. 98-1, Ex. 120 (marked as Depo Ex. 58) and Dkt. No. 118 at 29:19-23.

[129] Deposition of Jim Weyant, CACI International, Inc., September 16, 2022, at 116:20-118:18.

[130] ███████████████████████████████████████████████

███████████████████████████████████████████████

       c) **Lost Revenue from the IRS RAAS Division's Implementation and Use of ONgDB Instead of Purchasing a Commercial License for Neo4j EE**

78.     As detailed above, Plaintiffs may recover profits from lost sales with respect to their DMCA and Lanham Act claims. According to the Complaint, the documents and deposition transcripts I reviewed, and the Court's summary judgment order that the IRS's adoption and use of ONgDB under an improper license was due to Defendants' violations of the DMCA and violations the Lanham Act. Accordingly, my analysis and calculations of such damages below are applicable to both sets of claims.

79.     The initial hardware available to run Neo4j EE in the IRS's Office of RAAS pre-CKGE platform were for one server with at least 16 cores and 1 terabyte of RAM under the September 23, 2016 award to PureThink.[131]

80.     As of July 2017, RAAS was working on an open source version of Neo4j EE in the CKGE when they put out a new RFQ to iGov.[132]

81.     On May 22, 2018, Neo4j informed the IRS, including those in RAAS, of the Commons Clause being added to Neo4j EE 3.4.x and the need to obtain a commercial subscription if they intend to use it in the CKGE platform in conjunction with the new CKGE contract that had apparently been awarded to eGovernment Solutions.[133]

---

[131] Depo Ex. 159 at p. 1 ("Tasks … Deploy the [Neo4j Government Edition] framework onto a provided IRS server") and 4 ("Government Furnished Property… At least one Linux OS Server with at least 16 cores and 1 TeraByte [sic] of RAM and available hard drive space as needed and feasible by IRS") and Deposition of IRS Designee Michael Dunn, November 17, 2022, at 40:5-42:23, 45:24-47:3.

[132] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 70:3-72:14 and Depo Ex. 163 at p. 2 and 9 ("The CKGE framework includes Neo4j's Enterprise Edition open source version").

[133] Depo Ex. 164 and Deposition of IRS Designee Michael Dunn, November 17, 2022, at 81:21-83:4.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

82.     On May 22, 2018, Mr. Suhy sent an email to the IRS claiming Neo4j could not add restrictive terms to the licensing governing Neo4j EE v3.4.[134] I understand that the IRS did not form its own legal opinion on Mr. Suhy's representations regarding the alleged impropriety of adding restrictions to the license through the Commons Clause.[135]

83.     On May 24, 2018, the IRS's RAAS awarded Mr. Suhy, via eGov Sol, the new CKGE contract, which contemplated supporting Neo4j EE software ("iGov CKGE Contract").[136]

84.     In July 2018, Jason Zagalsky of Neo4j met with the IRS and subsequently provided a quote on then-current requirements of CKGE:[137]

> *For large memory configs, we build in blocks of 24 cores / 256GB RAM... so even if you don't need more than 12 cores, with 512GB of memory (gives you some headroom on the 300GB you have), you will be licensed for up to 48 cores, if you want to cut your server back from 1TB of RAM to 512GB of RAM.*
>
> *So it would be* ▮▮▮▮▮▮▮▮▮▮▮ ***$156k for 1-year subscription,*** ▮▮▮▮▮▮▮▮
> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

85.     Also in July 2018, the RAAS decided they did not need to allocate ▮▮▮▮▮▮ to a license for Neo4j EE. Instead, the RAAS was considering using ONgDB as an open source alternative introduced to the IRS by Mr. Suhy.[138]

---

[134] Depo Ex. 165

[135] Depo Ex. 165 and Deposition of IRS Designee Michael Dunn, November 17, 2022, at 96:6-98:21.

[136] Depo Ex. 102 and Ex. 103. Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 47:14-52:14; and Deposition of IRS Designee Michael Dunn, November 17, 2022, at 74:2-76:14, 78:5-19.

[137] Depo Ex. 168 (emphasis in the original) and Deposition of IRS Designee Michael Dunn, November 17, 2022, 113:5-115:20.

[138] IGOV0001573225; Deposition of IRS Designee Michael Dunn, November 17, 2022, at 122:20-124:4, 126:5-129:7 and Depo Ex. 169.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

86.     On August 13, 2018, during the course of working under the iGov CKGE contract Mr. Suhy recommended that the RAAS start using ONgDB Enterprise rather than Neo4j EE in the CKGE environment.[139]  According to the IRS deponent, Mr. Suhy's comments to the IRS resulted in IRS personnel believing that ONgDB was licensed by GFI and not Neo4j.[140]

87.     On August 14, 2018, the IRS authorized iGov and Mr. Suhy to "integrate the ONgDB [3.4.x] into the CKGE framework we'll deploy."[141]

88.     As of August 2018, the IRS understood that Neo4j CE had a performance limitation to only 4 cores; while Neo4j EE had enterprise-only features, came with professional services and subscriptions, and was priced based on the number of cores.[142]  ONgDB had equivalent performance and did not have the same limitations.[143]  From my review of the documents and testimony, the IRS utilized the following versions of ONgDB:

> ➢ August 2018, the IRS started using ONgDB [Enterprise] v3.4.5.[144]

> ➢ April 2019, the IRS was using ONgDB [Enterprise] v3.5.3.[145]

> ➢ September 2019, the IRS was using ONgDB [Enterprise] v3.5.9.[146]

> ➢ November 2019, the IRS was using ONgDB [Enterprise] v3.5.11.[147]

---

[139] Deposition of IRS Designee Michael Dunn, November 17, 2022,126:5-130:25, 132:2-133:13 and Depo Ex. 169.

[140] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 134:7-136:9, 139:22-141:17 and Depo Ex. 169.

[141] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 142:15-143:20 and Depo Ex. 170.

[142] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 103:2-104:12, 130:9-132:1.

[143] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 103:2-104:12, 130:9-132:1.

[144] IRS_PROD_00009175.

[145] IRS_PROD_00001638.

[146] IRS_PROD_00002210

[147] Depo Ex. 181 and Deposition of IRS Designee Michael Dunn, November 17, 2022, at 210:5-211:20.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

➤ March/April 2022, the IRS was using ONgDB [Enterprise] 3.5.26.[148]

89.     The IRS uses at least one Neo4j EE feature, node ID, via ONgDB in CKGE and understands that a commercial subscription for Neo4j EE also comes with professional services.[149] The IRS "would have to do a work-around" of that enterprise-only feature if it had to revert to Neo4j Community Edition.[150] However, the IRS agreed that if Neo4j EE can run Cypher queries significantly faster than Neo4j CE, it could be advantageous to the IRS in terms of productivity.[151]

90.     Based on the above, and the fact that Neo4j has sold commercial subscriptions of Neo4j EE to divisions at the IRS other than RAAS, it is reasonable to conclude that the RAAS at the IRS would have purchased a paid commercial subscription for Neo4j EE if using ONgDB for free was not an option.[152]

91.     Based on the above, as well as the additional evidence referenced below, I have assessed the lost sale value to Neo4j as a result of the IRS inappropriately deploying ONgDB on each of the following nine named projects/instances: CKGE, YK1, Corporate Graph, Excise Graph, Covid Graph, Policy Net Graph, Individual Graph, CPEO Graph, and Ghost Preparer.

---

[148] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 175:6-176:21. Mr. Dunn appears to have mistakenly referred to version 3.5.2.6. I understand from Neo4j that version 3.5.26, not version 3.5.2.6 was an official release. This also consistent with iGov offering ONgDB Enterprise v3.5.22 and ONgDB rebranded as Graphstack GDB v3.5.26 via its GraphStack website as of March 24, 2022.

https://web.archive.org/web/20220324204910/https://graphstack.io/

As of January 18, 2021, the latest version of ONgDB Enterprise offered by GFI was v3.5.22 before judgment and injunction entered.

https://web.archive.org/web/20210118044412/https://www.graphfoundation.org/projects/ongdb/

After March/April 2022, the IRS started calling ONgDB just "GDB" but was still using Neo4j source code licensed under just the AGPL that was compiled by Mr. Suhy on the IRS' internal repository. Deposition of IRS Designee Michael Dunn, November 17, 2022, at 175:6-176:21, 195:2-198:15.

[149] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 94:17-95:22, 103:2-104:12.

[150] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 253:13-254:14.

[151] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 262:16-263:11.

[152] *See, e.g.,* N4J_020132 - HC-AEO (all Government sales as of 2022-11-14) at Lines 263-279.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**CKGE (Main Graph):**

92.  Relevant facts regarding the IRS needs and usage include:

    i.  As of December 2018, CKGE was running or was expected to be running on at least two production servers and one development / test server utilizing ONgDB.  Each machine was comprised of a DL380 with 32 cores and 256GB of RAM at minimum.[153]

    ii.  As of March 2019, the IRS was running ONgDB on at least three production servers in the CKGE.  However, there were an estimated four total instances of ONgDB.[154]

    iii.  In 2020, the IRS continued to run ONgDB on at least three production servers in the CKGE with four total instances of ONgDB.[155]

    iv.  In 2021, the IRS continued to run ONgDB on at least three production servers in the CKGE with four total instances of ONgDB.[156]

    v.  In 2022, the IRS continued to run ONgDB on at least two production servers in the CKGE with at least three total instances of ONgDB.[157]

    vi.  As of 2022, the IRS currently has 6,000 logins to the CKGE a month, or about 200 logins per hour, and as of now it would only want the bare-

---

[153] Deposition of IRS Designee Michael Dunn, November 17, 2022, 152:19-161:22 and Depo Ex. 173.

[154] Deposition of IRS Designee Michael Dunn, November 17, 2022, 161:19-163:4, 166:14-167:4 and Depo Ex. 174.

[155] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 167:1-171:5.

[156] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 171:6-172:10.

[157] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 174:19-175:5.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

minimum EE package for two nodes, each with 16 cores and 256GB RAM for CKGE.[158]

93.    As previously discussed, in July 2018, Neo4j was asked by the IRS to provide budgetary pricing.  In response, Jason Zagalsky stated that based on the needs of the IRS, the subscription pricing "would be ███████████████████████████████████████ ████████████████████████████████████.".[159]

94.    The IRS ultimately opted to not follow-up with the new acquisition but stated that the reason was based on consideration of other options as well as their current budget position.[160] Based on this email and the other evidence reviewed, it appears as though a potential reason for the IRS passing on the acquisition was that it had already been working with Mr. Suhy and was under the impression that it did not need to incur the additional cost to obtain the benefits it would receive by using ONgDB.

95.    It can be reasonably concluded that, had Mr. Suhy not misinformed the IRS of the infringing nature of the ONgDB product and that in order to utilize the features as it was, it would have needed to obtain the commercial license from Neo4j, it would have acquired such license at the quoted (yet already discounted) price.[161]  Based on the communications between Neo4j and the IRS, I have estimated that the price would have been established July 2018 and that a one-year license would have started effective August 1, 2018 (running through July 31, 2019).  As

---

[158] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 257:16-258:11, 259:3-260:10, 261:13-262:4.

[159] Depo Ex. 168 at N4J_020132.

[160] Depo Ex. 168 at N4J_020130.

[161] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

referenced, the license would have been agreed to at a price of **$156,000** for the year ( ██████████ ) ██████████ .[162]

96.     As referenced above, the IRS not only continued to run ONgDB on its systems through the current date, it ran such on more production machines than initially quoted by Neo4j in July 2018. Each machine was comprised of a DL380 with 32 cores and 256GB of RAM at minimum.[163] The table below applies the relevant pricing (per the relevant price list) to each subsequent year's licensing need for the IRS based on the parameters discussed above:

| Period | Total Machines | Base Price | Additional Core Price[164] | Test Machine Price[165] | Total List Price | f/n |
|---|---|---|---|---|---|---|
| 8/1/19 – 7/31/20 | 3 | | | | | |
| 8/1/20 – 7/31/21 | 3 | | | | | |
| 8/1/21 – 7/31/22 | 3 | | | | | |
| 8/1/22 – 7/31/23 | 2 | | | | | |

---

[162] ██████████████████████████████

[163] Deposition of IRS Designee Michael Dunn, November 17, 2022, 152:19-161:22 and Depo Ex. 173.

[164] ████████████████████████████████████████

[165] I understand from my conversations with Jason Zagalsky that Neo4j's policy is that it requires one testing machine per each production machine. This is consistent with the proposals I have reviewed.

[166] Based on Neo4j April 1, 2019 Price List. *See* N4J_020230.

[167] Based on Neo4j April 1, 2020 Price List. *See* N4J_020201.

[168] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[169] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153; I understand that regardless of the number of production machines utilized by the IRS, Neo4j's base price is ██████ for up to three production machines. Accordingly, despite only utilizing two production machines beginning in August 2022, the starting point of the negotiations would have been at the ██████ base price. Additionally, for purposes of calculating against list price (prior to any potential negotiations of the parties to the potential license), I have followed Neo4j's requirement of one test machine for every one production machine in its pricing.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**YK1:**

97.     Relevant facts regarding the IRS needs and usage include:

  i.  On August 14, 2018, Mike Dunn asked Mr. Suhy / iGov to inform the YK1 team of the switch to ONgDB 3.4.x into the CKGE framework "we'll deploy."[170]

  ii.  By December 2018, YK1 likely began using one instance of ONgDB.[171]

  iii.  Assumed minimum server specifications:  DL380 with 12 cores and 256GB of RAM.[172]

  iv.  In 2019, one instance of ONgDB was running on its own server in YK1.[173]

  v.  In 2020, one instance of ONgDB was in production and running on its own server in YK1.[174]

  vi.  In 2021, one instance of ONgDB was in production and running on its own server in YK1.[175]

  vii.  In 2022, two instance of ONgDB in production and two instances of ONgDB in development/test in YK1.[176]

---

[170] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 142:15-143:20 and Depo Ex. 170. *See also* Depo Ex. 171 and Deposition of IRS Designee Michael Dunn, November 17, 2022, at 145:2-146:21.

[171] IRS_PROD_00008771; IRS_PROD_00009018- IRS_PROD_00009019; Depo Ex 173.

[172] This appears to be a reasonable assumption given that the IRS's discussion of server specifications for CKGE with Mr. Suhy also encompass requirements for YK1. *See* Depo Ex. 173.

[173] *See* IRS_PROD_00001356; IRS-PROD-00006330; Deposition of IRS Designee Michael Dunn, November 17, 2022, at 147:8-22, 204:21-205:4.

[174] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 167:1-171:1.

[175] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 171:6-172:1, 177:16-23.

[176] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 174:19-175:5.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

98.     The table below applies the relevant pricing (per the relevant price list for the Discovery Bundle) to each subsequent year's licensing need for the IRS based on the parameters discussed above:

| Period | Total Machines | Base Price | Additional Core Price[177] | Test Machine Price[178] | Total List Price | f/n |
|--------|----------------|------------|------------------|-----------------|------------------|-----|
| 8/1/19 – 7/31/20 | 1 | | | | | |
| 8/1/20 – 7/31/21 | 1 | | | | | |
| 8/1/21 – 7/31/22 | 1 | | | | | |
| 8/1/22 – 7/31/23 | 2 | | | | | |

**Corporate Graph:**

99.     Relevant facts regarding the IRS needs and usage include:

    i.   Starting in 2019 and continuing through 2022, the IRS ran a separate instance of ONgDB in development called "Corporate Graph."[183]

    ii.   Assumed minimum server specifications:  DL380 with 12 cores and 256GB of RAM.

---

[177] The base price is based upon a 12 core system while the IRS was utilizing 32 cores.  Accordingly, they would have been required to obtain a license for 20 additional cores at a list price of ███████ ██████████████████████████

[178] I understand from my conversations with Jason Zagalsky that Neo4J's policy is one testing machine per each production machine.  This is consistent with the proposals I have reviewed.

[179] Based on Neo4j April 1, 2019 Price List.  *See* N4J_020230.

[180] Based on Neo4j April 1, 2020 Price List.  *See* N4J_020201.

[181] Based on Neo4j July 1, 2021 Price List.  *See* N4J_020153.

[182] Based on Neo4j July 1, 2021 Price List.  *See* N4J_020153.

[183] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 167:1-172:10, 174:19-176:21, 178:19-23, 237:15-25, 239:22-242:14.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. This appears to be a reasonable assumption given server specifications for CKGE: DL380 with 32 cores and 256GB of RAM.[184]

100. The table below applies the relevant pricing (per the relevant price list for the Discovery Bundle) to each subsequent year's licensing need for the IRS based on the parameters discussed above:

| Period | Total Machines | Base Price | Additional Core Price[185] | Test Machine Price[186] | Total List Price | f/n |
|---|---|---|---|---|---|---|
| 8/1/19 – 7/31/20 | 1 | | | | | |
| 8/1/20 – 7/31/21 | 1 | | | | | |
| 8/1/21 – 7/31/22 | 1 | | | | | |
| 8/1/22 – 7/31/23 | 1 | | | | | |

**Excise Graph:**

101. Relevant facts regarding the IRS needs and usage include:

  i. Starting in 2020 and continuing through 2022, the IRS ran one instance of ONgDB in production called "Excise Graph."[191]

  ii. Assumed minimum server specifications: DL380 with 12 cores and 256GB of RAM.

---

[184] *See* Depo Ex. 173.

[185] Assuming no additional cores (beyond 12) within the utilized servers.

[186] I understand from my conversations with Jason Zagalsky that Neo4J's policy is one testing machine per each production machine. This is consistent with the proposals I have reviewed.

[187] Based on Neo4j April 1, 2019 Price List. *See* N4J_020230.

[188] Based on Neo4j April 1, 2020 Price List. *See* N4J_020201.

[189] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[190] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[191] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 168:1-172:10; Deposition of IRS Designee Michael Dunn, November 17, 2022, at 177:24-178:1.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. This appears to be a reasonable assumption given server specifications for CKGE: DL380 with 32 cores and 256GB of RAM.[192]

102. The table below applies the relevant pricing (per the relevant price list for the Discovery Bundle) to each subsequent year's licensing need for the IRS based on the parameters discussed above:

| Period | Total Machines | Base Price | Additional Core Price[193] | Test Machine Price[194] | Total List Price | f/n |
|---|---|---|---|---|---|---|
| 8/1/20 – 7/31/21 | 1 | | | | | |
| 8/1/21 – 7/31/22 | 1 | | | | | |
| 8/1/22 – 7/31/23 | 1 | | | | | |

### Covid Graph:

103. Relevant facts regarding the IRS needs and usage include:

i. Starting in summer of 2020 and continuing through September/October 2021, the IRS ran one separate instance of ONgDB in development for its COVID Graph project.[198]

---

[192] *See* Depo Ex. 173.

[193] Assuming no additional cores (beyond 12) within the utilized servers.

[194] I understand from my conversations with Jason Zagalsky that Neo4J's policy is one testing machine per each production machine. This is consistent with the proposals I have reviewed.

[195] Based on Neo4j April 1, 2020 Price List. *See* N4J_020201.

[196] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[197] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[198] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 171:6-172:10, 174:19-175:12, 177:4-15.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

    ii.   Starting in September/October 2021 and continuing through October 2022, the IRS ran one separate instance of ONgDB in production for its COVID Graph project.[199]

    iii.   Assumed minimum server specifications: DL380 with 12 cores and 256GB of RAM.

        1.   This appears to be a reasonable assumption given server specifications for CKGE: DL380 with 32 cores and 256GB of RAM.[200]

| Period | Total Machines | Base Price | Additional Core Price[201] | Test Machine Price[202] | Total List Price | f/n |
|--------|----------------|------------|----------------------------|-------------------------|------------------|-----|
| 8/1/20 – 7/31/21 | 1 | | | | | |
| 8/1/21 – 7/31/22 | 1 | | | | | |
| 8/1/22 – 7/31/23 | 1 | | | | | |

**Policy Net Graph:**

104.    Relevant facts regarding the IRS needs and usage include:

    i.   Starting in 2021 and continuing through 2022, the IRS ran one separate instance of ONgDB in development called "Policy Net".[206]

---

[199] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 171:6-172:10, 174:19-175:12, 177:4-15.

[200] *See* Depo Ex. 173.

[201] Assuming no additional cores (beyond 12) within the utilized servers.

[202] I understand from my conversations with Jason Zagalsky that Neo4J's policy is that it requires one testing machine per each production machine. This is consistent with the proposals I have reviewed.

[203] Based on Neo4j April 1, 2020 Price List. *See* N4J_020201.

[204] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[205] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[206] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 172:2-173:3, 178:24-179:3.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

    ii.  Assumed minimum server specifications: DL380 with 12 cores and 256GB of RAM.

        1.  This appears to be a reasonable assumption given server specifications for CKGE: DL380 with 32 cores and 256GB of RAM.[207]

| Period | Total Machines | Base Price | Additional Core Price[208] | Test Machine Price[209] | Total List Price | f/n |
|--------|----------------|------------|----------------------------|-------------------------|------------------|-----|
| 8/1/21 – 7/31/22 | 1 | | | | | 210 |
| 8/1/22 – 7/31/23 | 1 | | | | | 211 |

### Individual Graph:

105.  Relevant facts regarding the IRS needs and usage include:

    i.  Starting in 2021 and continuing through 2022, the IRS ran one separate instance of ONgDB in development called "Individual Graph".[212]

    ii.  Assumed minimum server specifications: DL380 with 12 cores and 256GB of RAM.

---

[207] *See* Depo Ex. 173.

[208] Assuming no additional cores (beyond 12) within the utilized servers.

[209] I understand from my conversations with Jason Zagalsky that Neo4J's policy is that it requires one testing machine per each production machine. This is consistent with the proposals I have reviewed.

[210] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[211] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[212] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 172:2-25, 175:6-16.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. This appears to be a reasonable assumption given server specifications for CKGE: DL380 with 32 cores and 256GB of RAM.[213]

| Period | Total Machines | Base Price | Additional Core Price[214] | Test Machine Price[215] | Total List Price | f/n |
|---|---|---|---|---|---|---|
| 8/1/21 – 7/31/22 | 1 | | | | | 216 |
| 8/1/22 – 7/31/23 | 1 | | | | | 217 |

**CPEO Graph:**

106. Relevant facts regarding the IRS needs and usage include:

    i. In 2022, the IRS ran one separate instance of ONgDB in development called "CPEO Graph".[218]

    ii. Assumed minimum server specifications: DL380 with 12 cores and 256GB of RAM.

        1. This appears to be a reasonable assumption given server specifications for CKGE: DL380 with 32 cores and 256GB of RAM.[219]

---

[213] *See* Depo Ex. 173.

[214] Assuming no additional cores (beyond 12) within the utilized servers.

[215] I understand from my conversations with Jason Zagalsky that Neo4J's policy is that it requires one testing machine per each production machine. This is consistent with the proposals I have reviewed.

[216] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[217] Based on Neo4j July 1, 2021 Price List. *See* N4J_020153.

[218] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 175:6-16.

[219] *See* Depo Ex. 173.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| Period | Total Machines | Base Price | Additional Core Price[220] | Test Machine Price[221] | Total List Price | f/n |
|--------|---------------|-----------|---------------------------|------------------------|-----------------|-----|
| 8/1/22 – 7/31/23 | 1 | | | | | 222 |

**Ghost Preparer:**

107.  Relevant facts regarding the IRS needs and usage include:

    i.  In 2022, the IRS ran one separate instance of ONgDB in development called "Ghost Preparer".[223]

    ii.  Assumed minimum server specifications:  DL380 with 12 cores and 256GB of RAM.

        1.  This appears to be a reasonable assumption given server specifications for CKGE:  DL380 with 32 cores and 256GB of RAM.[224]

| Period | Total Machines | Base Price | Additional Core Price[225] | Test Machine Price[226] | Total List Price | f/n |
|--------|---------------|-----------|---------------------------|------------------------|-----------------|-----|
| 8/1/22 – 7/31/23 | 1 | | | | | 227 |

---

[220] Assuming no additional cores (beyond 12) within the utilized servers.

[221] I understand from my conversations with Jason Zagalsky that Neo4J's policy is that it requires one testing machine per each production machine.  This is consistent with the proposals I have reviewed.

[222] Based on Neo4j July 1, 2021 Price List.  *See* N4J_020153

[223] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 175:6-16, 237:19-22.

[224] *See* Depo Ex. 173.

[225] Assuming no additional cores (beyond 12) within the utilized servers.

[226] I understand from my conversations with Jason Zagalsky that Neo4J's policy is that it requires one testing machine per each production machine.  This is consistent with the proposals I have reviewed.

[227] Based on Neo4j July 1, 2021 Price List.  *See* N4J_020153.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

108.    The table below summarizes the relevant list prices associated with the various needs and usage by the IRS in each of their distinct projects. As discussed above, the caveats to the previous statement are that the CKGE price reflected ($156,000) ████████████████

████████

|  | Period Ending | | | | | |
|---|---|---|---|---|---|---|
| **Project** | **7/31/19** | **7/31/20** | **7/31/21** | **7/31/22** | **7/31/23** | **Total** |
| CKGE | $156,000 | | | | | |
| YK1 | | | | | | |
| Corporate | | | | | | |
| Excise | | | | | | |
| Covid | | | | | | |
| Policy Net | | | | | | |
| Individual | | | | | | |
| CPEO | | | | | | |
| Ghost Prep | | | | | | |
| Total | $156,000 | $591,000 | $759,000 | $907,000 | $1,189,000 | $3,602,000 |

109.    As previously referenced, it can be reasonably concluded that, had Mr. Suhy not misinformed the IRS of the infringing nature of the ONGDB product and that in order to utilize the features as it was, it would have acquired the necessary commercial licenses from Neo4j.[228]  For purposes of my calculations, I have assumed that the negotiations for each project would have been conducted at or around August 1 of the year in which ONgDB was first utilized as reflected in the following table:

---

[228] ███████████████████████████████████████████████

| Project | Initial Hypothetical Negotiation Date |
|---|---|
| CKGE | 8/1/2019 |
| YK1 | 8/1/2019 |
| Corporate | 8/1/2019 |
| Excise | 8/1/2020 |
| Covid | 8/1/2020 |
| Policy Net | 8/1/2021 |
| Individual | 8/1/2021 |
| CPEO | 8/1/2022 |
| Ghost Prep | 8/1/2022 |

110.    While the above table reflects project costs based on list prices, I have assumed that, consistent with practice on other projects, the IRS would have negotiated with Neo4j for a lower licensing fee. To begin, I understand that in deploying ONgDB, the IRS was only utilizing one or two test machines for each project. As a starting point, it is reasonable to assume that the IRS would have requested a reduction of costs associated with Neo4j's one-to-one test to production machine requirement. Accordingly, this results in a total reduction of ███████████████ ███████████████████████████████████. Additionally, I have assumed that the IRS would have based its negotiations on the list prices applicable at the time the negotiation would have taken place and would have negotiated for the duration of the periods referenced above (unless there was a change to the number of machines or cores utilized).[229]

111.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[229] For example, the YK1 negotiation would have taken place at or around August 1, 2019 utilizing the applicable base list price of ███████ per machine. This would have been the applicable pricing for the future periods until August 1, 2022 when the number of machines utilized increased, at which time, the 2021 price list would have been utilized to renegotiate the ongoing pricing.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

[REDACTED], I have provided a discount of 15% off of list price to derive the lost revenues associated with the IRS projects as follows:[230]

| Project | Total List | Reduction for Applicable Price List | Discount for Test Machine | Adjusted List | After 15% Discount |
|---|---|---|---|---|---|
| CKGE[231] | | | | | |
| YK1 | | | | | |
| Corporate | | | | | |
| Excise | | | | | |
| Covid | | | | | |
| Policy Net | | | | | |
| Individual | | | | | |
| CPEO | | | | | |
| Ghost Prep | | | | | |
| Total | $3,602,000 | $50,000 | $72,000 | $3,480,000 | $2,981,400 |

112. The above discounted price of $2,981,400 is broken down by year as follows:

| | Period Ending | | | | | |
|---|---|---|---|---|---|---|
| Project | 7/31/19 | 7/31/20 | 7/31/21 | 7/31/22 | 7/31/23 | Total |
| CKGE | | | | | | |
| YK1 | | | | | | |
| Corporate | | | | | | |
| Excise | | | | | | |
| Covid | | | | | | |
| Policy Net | | | | | | |
| Individual | | | | | | |
| CPEO | | | | | | |
| Ghost Prep | | | | | | |
| Total | $156,000 | $488,750 | $614,550 | $740,350 | $981,750 | $2,981,400 |

---



[230] [REDACTED]

[231] [REDACTED]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

113.   As discussed further below (in connection with the unjust enrichment analysis), I have determined that the IRS provided payments totaling more than $1,316,000 to iGov in connection with its support of the iGov CKGE Contract.  As previously addressed, under the Lanham Act, a plaintiff may recover an infringing defendant's profits as a measure of the plaintiff's own damages.[232]  As such, the low end of the range of actual damages suffered by Plaintiff as it pertains to lost IRS licensing revenue amounts to **$1,316,000** per the iGov CKGE Contract.[233]

114.   On a discounted basis, as reflected in the above table, the lost licensing revenue from the iGov CKGE Contract approximates **$1,471,800**.  Including the other IRS projects where Neo4j lost out on licensing revenues as a result of the actions of Defendants, the total loss of revenue approximated (on a discounted basis) **$2,981,000**.

### d) Lost Revenue from Greystones's Implementation and Use of ONgDB Instead of Purchasing a Commercial License for Neo4j EE at the USAF

115.   I understand that Mr. Suhy also worked with another company, Greystones Consulting Group, LLC ("Greystones"), in implementing ONgDB in a software platform branded

---

[232] *See Lindy Pen*, 982 F.2d at 1407; *see also Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF HRL, 2011 WL 2749576, at *7 (N.D. Cal. July 14, 2011) ("[w]here a plaintiff and defendant are in direct competition and the plaintiff is unable to prove its own lost sales, an award of the defendant's profits may serve as proxy for what the plaintiff would have recovered had the defendant not infringed upon or been likely to dilute the plaintiff's mark").

[233] Considering the full amounts that iGov and Mr. Suhy received from the IRS in connection with this project (incorporating the amounts that were received through ASR, the total received from the IRS amounts more than $1,562,000.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

by Greystones as "GreyRaven." [234] Ben Nussbaum of AtomRain also worked on implementing ONgDB in GreyRaven.[235]

116.   I understand that Greystones with the help of Messrs. Suhy and Nussbaum obtained an SBIR Phase 1 contract with the United States Air Force (USAF) by using NEO4J Mark in its proposal. [236] However, I understand that Greystones actually used ONgDB rather than Neo4j EE in completing the SBIR Phase I contract. [237]

117.   I understand that Greystones applied for a ▮▮▮▮ follow-on SBIR Phase II contract with the USAF to develop a prototype of GreyRaven that used ONgDB:

> a.   "AFWIC personnel have seen several demonstrations of GreyRAVEN and made detailed notes of the requirements to be customized. GreyRAVEN was one of the finalists at the AFWERX Multi Domain Challenge (MDO) in July 2019. The key technology underlying this solution is GreyRAVEN, a COTS platform that combines ONgDB and other big data technologies, to allow faster and simpler

---

[234] *See* Depo Ex. 242 at Greystones000557 "(Name: John Mark Suhy… Title: Principal Investigator"); *see also* Depo Exs. 240, 245, 247; Deposition of Deposition of Greystones Designee Turin Pollard, at 52:7-55:15, 56:1-60:24, 72:23-75:3, 84:10-22, 105:16-108:17; and the GFI Defendant,

[235] *See* Depo Ex. 242 at



*see also* IGOV0002909188; Depo Ex. 239.

[236] *See, e.g,* Depo Ex. 242 at Greystones000558

*see also* Deposition of Deposition of Greystones Designee Turin Pollard, at 72:21-75:21.

[237] *See* Depo Ex. 244 ("We were recently awarded a Phase 1 SBIR for data analytics, specifically ingestion, fusion and visualization of big data sets using ONgDB (Open Native Graph Database).").

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

integration of new data sources as well as explainable artificial intelligence and machine learning technologies as they become available."[238]

b.    "Greystones engineers will work with AFWIC engineers using an Agile methodology to create a derivative of the COTS solution, customizing the GreyRAVEN platform and configure the data sources and applications to develop a dashboard that will support leadership situational awareness of DOD efforts and programs."[239]

118.    Greystones obtained a 1-year SBIR Phase 2 contract with the USAF, developed a prototype of GreyRaven using ONgDB and was paid ▮▮▮▮▮ for this work. [240]

119.    I understand this amounts to either a commercial use or sale of Neo4j EE software in violation of the commercial restrictions imposed by the Commons Clause that Defendants (along with GFI, AtomRain Inc., and GrapGrid Inc., collectively the "GFI Defendants") removed without Neo4j Sweden's authorization. [241] Thus, had Defendants not removed those restrictions, it is reasonable to assume that Greystones might have purchased a 1-year commercial license to Neo4j EE for this project given their prior reliance on the brand-name appeal of Neo4j to obtain the first contact with the USAF.

120.    However, as of the issuance of this report, I am informed that there is additional discovery outstanding that will possibly be relevant to my analysis and any calculation of damages

---

[238] *See* Depo Ex. 247 at Greystones000626; *see also* Deposition of Deposition of Greystones Designee Turin Pollard, at 126:20-132:23.

[239] *See* Depo Ex. 247 at Greystones000629.

[240] *See* Depo Ex. 248 at Greystones000670; IGOV0002991415; IGOV0002991420 at pp. 6, 8; IGOV0002991421 at pp. 3, 6-8; *see also* Deposition of Deposition of Greystones Designee Turin Pollard, at 137:2-140:10.

[241] *See* Dkt. No. 118 at 3:1-15; 5:24-6:1, 6:18-26, 32:16-33:3; Depo Ex. 190 (Stipulated Judgment and Permanent Injunction against GFI Defendants).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

related to Greystone's implementation and use of ONgDB. Accordingly, I have not yet assessed the appropriateness of a measurement of damages, nor have I performed any calculations of such damages suffered by Neo4j related to Greystone. I reserve the right to supplement my report should additional information be produced relevant to Greystone and any damages that may stem from its commercial use of ONgDB.

### e) Summary of Plaintiffs' Saved/Avoided Costs and Lost Profits

121. After deriving the estimate of lost revenues, it is necessary to identify and calculate avoided (incremental) costs that Neo4j did not incur as a result of not receiving such revenues. Through my review and discussions with Kelly Zawalski (VP of Finance at Neo4j, Inc.), I have identified the following as avoided costs to be applied to the lost revenues:

> ➢ _Reseller Margin_ – I understand that all federal business at Neo4j is ultimately facilitated through a reseller. In facilitating the execution of the transaction, the reseller receives ███████████████████████████████

---

[242] N4J_020264 – 286.

█████████████████████, I have utilized the 6% rate for assessing avoided costs associated with the lost revenue.

I understand that the 6% reseller margin is applicable only to the first year of the contract being executed. Accordingly, the reseller fee for the Next Century project would amount to a saved cost from the lost sale of ████████[243] In connection with the lost licensing revenue pertaining to the various IRS projects, I have calculated saved reseller fee costs to be $74,589 as follows:

| Project | Period Ending | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 7/31/19 | 7/31/20 | 7/31/21 | 7/31/22 | 7/31/23 | Total |
| CKGE | | | | | | |
| YK1 | | | | | | |
| Corporate | | | | | | |
| Excise | | | | | | |
| Covid | | | | | | |
| Policy Net | | | | | | |
| Individual | | | | | | |
| CPEO | | | | | | |
| Ghost Prep | | | | | | |
| Total | $9,360 | $29,325 | $7,548 | $7,548 | $20,808 | $74,589 |

Accordingly, total saved reseller fee costs associated with the quantified lost sales amount to $119,928.

➢ _Employee Commission_ – I understand from my conversations with Ms. Zawalski that net sales (e.g., revenues less the reseller margin) of new business also trigger various levels of employee commissions. █████████████

████████████████████████████████████████████

███████████████████████████████████

---

[243] ████████████████████████.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



| | Average Commission Rate (2018) | Average Commission Rate (2019) |
|---|---|---|
| Account Executive | | |
| Sales Manager | | |
| Head of Global Sales | | |
| Sales Engineer | | |
| Regional Sales Engineering Manager | | |
| Added Incentive for multi-year contract | | |
| Total % of Commissions | | |

The applicable net sales that the employee commissions would be applied to are as follows (and are after deducting reseller fees from lost revenues):

---

[244] The exception to this application in my analysis is that for CKGE, I have applied the commission structure in both 2018 and 2019. Additionally, I have also provided the commission rate to the incremental revenue associated with the YK1 contract beginning August 1, 2022.

[245] ████████████████████████████████████████.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Period Ending | | | | | |
|---|---|---|---|---|---|---|
| **Project** | **7/31/19** | **7/31/20** | **7/31/21** | **7/31/22** | **7/31/23** | **Total** |
| CKGE | | | | | | |
| YK1 | | | | | | |
| Corporate | | | | | | |
| Excise | | | | | | |
| Covid | | | | | | |
| Policy Net | | | | | | |
| Individual | | | | | | |
| CPEO | | | | | | |
| Ghost Prep | | | | | | |
| Total | | | | | | |

In connection with the lost licensing revenue pertaining to the various IRS projects, I have calculated saved employee commission costs to be $162,240 as follows:

| | Period Ending | | | | | |
|---|---|---|---|---|---|---|
| **Project** | **7/31/19** | **7/31/20** | **7/31/21** | **7/31/22** | **7/31/23** | **Total** |
| CKGE | | | | | | |
| YK1 | | | | | | |
| Corporate | | | | | | |
| Excise | | | | | | |
| Covid | | | | | | |
| Policy Net | | | | | | |
| Individual | | | | | | |
| CPEO | | | | | | |
| Ghost Prep | | | | | | |
| Total | | | | | | |

Accordingly, total saved reseller fee costs associated with the quantified lost sales amount to $270,633.

122.    After accounting for the above referenced saved expenses, the lost profits suffered by Neo4j as a result of Defendants' actions total **$4,857,789**, as follows:

> ➤ Next Century - **$2,113,218**

> ➤ IRS - **$2,744,571,** as follows:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Period Ending | | | | | |
|---|---|---|---|---|---|---|
| *Project* | **7/31/19** | **7/31/20** | **7/31/21** | **7/31/22** | **7/31/23** | **Total** |
| *CKGE* | | | | | | |
| *YK1* | | | | | | |
| *Corporate* | | | | | | |
| *Excise* | | | | | | |
| *Covid* | | | | | | |
| *Policy Net* | | | | | | |
| *Individual* | | | | | | |
| *CPEO* | | | | | | |
| *Ghost Prep* | | | | | | |
| *Total* | | | | | | |

123.    While I understand that prejudgment interest can be awarded, as there is no trial date currently set for this matter, nor has there been an order awarding damages, I have not yet performed such calculations.  Accordingly, I reserve the right to provide such calculation at trial or upon a verdict by the trier-of-fact.

### B.    DEFENDANTS' GROSS PROFITS EARNED FROM THE INSTALLATION AND SUPPORT OF IMPROPERLY LICENSED ONGDB SOFTWARE AT THE IRS

#### a) iGov's Gross Profits from eGovernment Solutions Contract for the Implementation and Support of ONgDB at the IRS

124.    I understand that Mr. Suhy was a part owner in a company called eGovernment Solutions Inc. ("eGov Sol"), which he used to obtain a contract from the RAAS division of the IRS, Order No. 2032H8-18-P-00151, as amended Order No. 2032H8-18-P-00168, to further develop and support the CKGE in May 2018 ("iGov CKGE Contract"), as money was received from the IRS on this contract it would be paid in its entirety to Mr. Suhy, at his sole discretion.[246]

---

[246] Depo Ex. 102 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 47:14-50:13; Depo Ex. 103 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 50:14-54:3; Depo Ex. 104 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 54:10-56:15.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

The iGov CKGE Contract was a continuation of the work that Mr. Suhy had performed under the 2016 contract awarded to PureThink.[247]

125.     According to the proposal for the iGov CKGE Contract signed by Mr. Suhy, the "CKGE framework includes *a graph database*; elastic search capabilities; java-script based, user-interface; and micro-services components."[248] The scope of work required iGov to perform "all operations and maintenances duties for *all components of the CKGE framework*...."[249] iGov would also be "responsible for ensuring any open source products within the CKGE conform to their license-terms" and iGov would "need to work with the following components: React, Angularjs, *Neo4j*...."[250]

126.     This scope of work appears consistent with the IRS obtaining Mr. Suhy's input on which version of Neo4j to use in the CKGE and ultimately whether to implement ONgDB instead of Neo4j EE as the aforementioned graph database software in the CKGE framework.[251]

127.     Mr. Suhy provided input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE.[252]

---

[247] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 75:14-76:14, 85:3-7.

[248] Depo Ex. 102 at EGOVS_000002 (emphasis added).

[249] *Id.* at EGOVS_000003 (emphasis added).

[250] *Id.* at EGOVS_000004- EGOVS_000005 (emphasis added).

[251] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 75:14-77:24, 126:5-130:25, 132:2-133:13, 134:7-136:9, 139:22-140:20, 141:11-17 and Depo Ex. 169; *see also* Deposition of IRS Designee Michael Dunn, November 17, 2022, at 142:15-143:20 and Depo Ex. 170.

[252] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 126:5-129:7 and Depo Ex. 169; Deposition of IRS Designee Michael Dunn, November 17, 2022, 152:19-155:9 and Depo Ex. 173; Deposition of IRS Designee Michael Dunn, November 17, 2022, at 161:4-165:13, 166:19-167:25 and Depo Ex. 174.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

128.     Mr. Suhy also was responsible for supporting, maintaining and updating ONgDB software under the iGov CKGE Contract.[253]   This included upgrading the CKGE to ONgDB version 3.5.x.[254]

129.     After obtaining the initial contractual award and performing work for the IRS on the CKGE, Mr. Suhy sold his ownership interest in eGov Sol to the remaining shareholders in December 2018.[255]   As part of this sale, Mr. Suhy was entitled to the entire amounts for each option year exercised by the IRS.[256]   Mr. Suhy thereafter was treated by eGov Sol as an independent contractor.[257]

130.     eGov Sol viewed the iGov CKGE contract with the IRS as belonging to Suhy to which he had sole control over.[258]   eGov Solutions did not take any commission from payments made by the IRS and according to Mr. Mayur the "moment the money comes, John Mark Suhy takes the money out" using an account under his control.[259]   According to the testimony of Mr. Mayur of eGov Sol, Mr. Suhy was solely responsible for invoicing the IRS and making sure

---

[253] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 179:4-23, 205:5-206:9, 207:10-209:11; *see also* 2020 10 27 iGov's Verified, Response to Interrogatory No. 8.

[254] Deposition of John Mark Suhy representative of iGov, Inc., October 22, 2020, at 142:13-145:1 and Depo Ex. 19; Deposition of IRS Designee Michael Dunn, November 17, 2022, at 210:5-211:20 and Depo Ex. 181 (on 11/8/19 Suhy directs IRS employee to the "latest" version of ONgDB, "ongdb-enterprise-3.5.11"); Deposition of IRS Designee Michael Dunn, November 17, 2022, at 213:1-216:5 (IRS would have been using at least ONgDB enterprise 3.5.11 in 2020 and 2021); Deposition of John Mark Suhy representative of iGov, Inc., October 22, 2020, at 224:13-23 (as of 10/22/20 the IRS was using ONgDB v3.5.x somewhere between v3.5.1 and v3.5.20).

[255] Depo Ex. 100.

[256] Depo Ex. 100 at §5, §5.1, §5.2, §5.3 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 31:22-32:25, 36:15-37:14, 39:18-40:18, 50:14-53:4, 56:16-58:23.

[257] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 80:13-23.

[258] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 30:8-31:21, 34:1-36:14, 50:14-51:20.

[259] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 37:11-14, 42:14-19, 62:1-63:12.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

payments were received.[260] In turn, the payments made by the IRS into the eGov account were considered to be Mr. Suhy's money.[261] At some point, Mr. Suhy asked eGov Sol to make the payments received from the IRS to iGov rather than personally to him.[262] Accordingly, I understand that Mr. Suhy and iGov were entitled to amounts paid by the IRS to eGov Sol under Order No. 2032H8-18-P-00151/Order No. 2032H8-18-P-00168.

131.    The IRS contracted and paid a total of $1,316,000 to eGov Sol under the iGov CKGE Contract over the course of five years.[263]   These payments were made based on the following contractual increases/renewals:

| Amount | Reference |
|---|---|
| $   300,000 | 2018 Base Contract Award[264] |
| $   200,000 | 2019 Option Year 1 exercised[265] |
| $   216,000 | 2019 Modification Option Year 1[266] |
| $   200,000 | 2020 Option Year 2 exercised[267] |
| $   200,000 | 2021 Option Year 3 exercised[268] |
| $   200,000 | 2022 Option Year 4 exercised[269] |
| **$ 1,316,000** | |

---

[260] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 71:17-79:12.

[261] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 94:3-15.

[262] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 62:4-13, 81:6-82:17.

[263] Depo Ex. 110 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 71:17-79:12.

[264] Depo Ex. 103 [TAB373] EGOVS_000015 (Order No. 2032H8-18-P-00151); Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 50:14-51:20.

[265] Depo Ex. 105 [TAB375] EGOVS_000030 (Order No. 2032H8-18-P-00168); Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 56:16-57:24.

[266] Depo Ex. 106 [TAB376] EGOVS_000034 (Order No. 2032H8-18-P-00168); Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 59:18-61:15.

[267] Depo Ex. 107 [TAB377] EGOVS_000042 (Order No. 2032H8-18-P-00168); Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 63:13-64:21.

[268] Depo Ex. 108 [TAB378] EGOVS_000058 (Order No. 2032H8-18-P-00168); Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 67:21-68:16.

[269] Depo Ex. 109 [TAB379] EGOVS_000062 (Order No. 2032H8-18-P-00168); Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 69:12-70:19.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

132.    eGov Sol maintained a Wells Fargo bank account for all the payments received from the IRS, which Mr. Suhy had access to and was permitted to disburse the payments made by the IRS how he saw fit.[270]  As confirmed by my review of the Wells Fargo bank statements produced by eGov Sol, payments made by the IRS under the iGov CKGE Contract were received as follows:[271]

| Date | Amount | f/n |
|---|---|---|
| 7/26/2018 | $  300,000 | [272] |
| 6/5/2019 | $  200,000 | [273] |
| 1/9/2020 | $  216,000 | [274] |
| 6/17/2020 | $  200,000 | [275] |
| 6/15/2021 | $  200,000 | [276] |
| 6/13/2022 | $  200,000 | [277] |
| | **$ 1,316,000** | |

133.    I have reviewed the 1099s issued by EGov Sol to iGov for the years 2018 through 2021 (pertaining to Option Years 1 through 3) and identified $875,550 being reflected as amounts purportedly paid to iGov as follows:[278]

---

[270] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 62:1-63:12, 66:1-15, 95:7-96:13; Depo Ex. 115 [Tab 385].

[271] Depo Ex. 115 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 95:7-96:13.

[272] EGOV PRODUCTION 82.

[273] EGOV PRODUCTION 94.

[274] EGOV PRODUCTION 99.

[275] EGOV PRODUCTION 113.

[276] EGOV PRODUCTION 135.

[277] EGOV PRODUCTION 134.

[278] Depo Exs. 111-114 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 80:24-82:21, 84:16-85:8, 91:1-94:15.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| Year | Amount |
|------|--------|
| 2018 | $ 285,700 |
| 2019 | $ 199,850 |
| 2020 | $ 193,000 |
| 2021 | $ 197,000 |
| | **$ 875,550** |

134.    In addition to these amounts paid, eGov paid iGov $189,000 for Option Year 4, resulting in total payments made to iGov from eGov Sol of $1,064,550.[279]   This is consistent with the Wells Fargo bank statements, which also shows payments made to iGov totaling $1,064,550.[280]

135.    The $251,450 difference between amounts paid by the IRS to eGov Sol and the amounts paid by eGov Sol to iGov and Mr. Suhy are partially explained by Mr. Suhy and iGov paying $111,400 to AtomRain via the eGov Sol account Mr. Suhy controlled.[281]  I understand that this was for work AtomRain purportedly performed under the iGov CKGE Contract.[282]  Mr. Mayur of eGov Sol testified that the payments made to AtomRain were directed by Mr. Suhy without any input or direction from eGov Sol.[283]

136.    I further understand that AtomRain along with GrapGrid and GFI are subject to a Stipulated Judgment and Permanent Injunction wherein they were found to have engaged in the same violations of the Lanham Act and DMCA with respect to ONgDB and the Neo4j Mark at issue in this case.[284]

---

[279] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 94:16-95:6; Depo Ex. 216.

[280] Depo Ex. 115 and Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 95:7-96:13, 99:8-111:15 ($139,000+$146,700+$74,850+$125,000+$125,000+$68,000+$197,000+$189,000 = $1,064,55).

[281] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 42:5-13, 82:18-83:13, 86:7-89:2, 99:19-100:3 ($10,000+$101,400 = $111,400).

[282] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 117:6-124:1.

[283] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 90:9-25.

[284] Depo Ex. 190 (Stipulated Judgment and Permanent Injunction against GFI Defendants).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

137.    I also note from my review of the Wells Fargo account, payments totaling $105,835 to Irving Starr law firm which I understand were for the benefit of iGov and Mr. Suhy. These payments were as follows:

| Check No. | Date | Amount | f/n |
|-----------|------|--------|-----|
| 800 | 1/24/2020 | $ 5,000 | [285] |
| 801 | 2/5/2020 | $ 25,835 | [286] |
| 802 | 4/1/2020 | $ 20,000 | [287] |
| 1000 | 8/10/2020 | $ 25,000 | [288] |
| 1001 | 10/28/2020 | $ 30,000 | [289] |
| | | **$ 105,835** | |

138.    I understand that Richard Starr of the law firm Irving Starr is one of Defendants' attorneys of record in this litigation and all of the foregoing payments were made after Plaintiffs filed the present lawsuit against Defendants.[290] Mr. Mayur of eGov Sol also testified that the payments made to Irving Starr from payments for work done on the iGov CKGE Contract were directed by Mr. Suhy without input from eGov Sol.[291] eGov Sol assumed Irving Starr was a company performing work on the iGov CKGE Contract and never retained Irving Starr as its

---

[285] Depo Ex. 218 at EGOVS_00151; Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 102:23-103:12 and Depo Ex. 115; Depo Ex. 217 at EGOVS_00152.

[286] Depo Ex. 218 at EGOVS_00152; Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 102:23-103:12 and Depo Ex. 115; Depo Ex. 217 at EGOVS_00156.

[287] Depo Ex. 219 at EGOVS_00148; Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 104:1-5 and Depo Ex. 115; Depo Ex. 217 at EGOVS_00159.

[288] Depo Ex. 219 at EGOVS_00146; Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 105:9-17 and Depo Exh. 115; Depo Ex. 217 at EGOVS_00175.

[289] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 106:1-6 and Depo Ex. 115; Depo Ex. 217 at EGOVS_00180.

[290] Depo Ex. 116; Deposition of John Mark Suhy as individual and Most Knowledgeable for iGov and PureThink, November 29, 2022, Vol. 2 at 253:24-254:5.

[291] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 90:9-25.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

counsel.[292]  I understand that eGov Sol did not know that Irving Starr was a law firm until its deposition was taken by Plaintiffs.[293]

139.     I have also reviewed the profit & loss statements produced by iGov and note that none of them reflect any cost of goods sold (i.e., any expenses that would have been incurred in generating the revenues reported by the company) as reflected by the following chart:

| Description | 2018[294] | 2019[295] | 2020[296] | 2021[297] |
|---|---|---|---|---|
| Income | $ 285,792 | $ 203,810 | $ 263,493 | $ 325,337 |
| Cost of Goods Sold | $          0 | $          0 | $          0 | $          0 |
| Gross Profit | $ 285,792 | $ 203,810 | $ 263,493 | $ 325,337 |

140.     As discussed above, I identified invoices from eGov Sol to the IRS totaling $1,316,000, all of which were paid by the IRS.  Per reviewed testimony, all of this money was effectively owned and under the control of iGov and Mr. Suhy and as such, Mr. Suhy received the full benefit of the amounts received from the IRS.  While the amounts paid from eGov Sol to iGov (totaling $1,064,550) were less than the amounts paid by the IRS, $1,316,000), I note that more than $217,000 of that difference pertained to amounts paid out of the eGov Sol bank account to AtomRain and attorneys representing Defendants in this action.[298]

---

[292] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 103:8-19, 114:9-117:5.

[293] Deposition of Ashwani Mayur, eGovernment Solutions, October 25, 2022, at 103:8-19, 114:9-117:5.

[294] Depo Ex. 33 - Tab 143 - iGov Inc Profit and Loss 2018.

[295] Depo Ex. 223 [TAB511] iGov Inc Profit and Loss 2019.

[296] Depo Ex. 225 [TAB513] iGov Inc Profit and Loss 2020.

[297] Depo Ex. 227 [TAB515] iGov Inc Profit and Loss 2021.

[298] I understand that eGov Sol made clear that all monies received from the IRS belonged to Mr. Suhy and iGov and that iGov and AtomRain either acted in concert or are subject to joint and several liability for the same violations of the Lanham Act and DMCA that would make the amounts paid to AtomRain potentially non-deductible for purposes of assessing iGov's and Mr. Suhy's unjust enrichment. Furthermore, as the amounts paid to Irving Starr were presumably for legal fees associated with the present action, and not incurred in connection with generating the revenues received from the IRS, I understand that such payments would be non-deductible for purposes of assessing iGov's and Mr. Suhy's unjust enrichment.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

141.    As discussed above, and based upon the evidence reviewed, I have concluded that the $1,316,000 paid by the IRS under the iGov CKGE Contract amounts to unjust enrichment damages resulting from Defendants' alleged violations of the Lanham Act and/or the DMCA.

### b) iGov's Revenues from ASR Analytics Subcontracts and Task Orders for Support of ONgDB at the IRS

142.    I understand that Mr. Suhy via iGov was also engaged by ASR Analytics LLC ("ASR") as a subcontractor to provide support, consulting and development services for the CKGE and other installations of ONgDB at the IRS between 2019 and 2022.   The subcontracts and task orders provided by ASR to iGov include: (1) Knowledge Graph API (KG-API) for CKGE; (2) Support for Corporate Graph Database; (3) Emerging Compliance Issues; and (4) IDT Innovation.[299]

➤ Knowledge Graph API (KG API) for CKGE Subcontract:

    i.    Tylor Data was prime contractor to the IRS, with ASR as subcontractor that engaged iGov as a subcontractor.[300]

    ii.    Mr. Stavrianos testified that his "understanding is that CKGE uses ONgDB technology" and that the CKGE platform is "an environment for building and managing graph data and analysis tools."[301]

---

[299] *See* Depo Exs. 134, 135, 136, 138, 139, 140, 141.

[300]   Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 94:2-96:19 and Depo Ex. 133; Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 102:8-105:17 and Depo Ex. 134.

[301] Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 97:23-99:20 (at 98:17-24).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

iii.    The consulting work that iGov/Suhy performed under the KG-API
        subcontract related to ONgDB interfacing with Spark.[302]

iv.     KG-API contract expired in September 2021.  Immediately thereafter, ASR
        entered into a similar contract with Tylor Data, which Mr. Suhy continued to
        work on as a subcontractor.[303]

➢  Support for Corporate Graph Database (Subcontractor Task Order Number 0002):

i.      "The recent adoption of graph database technology by the IRS has rapidly led
        to new insights and is now used by over 4,000 employees in Examination,
        Collection, Criminal Investigation, and even cybersecurity functions.
        Understanding graph data models, graph storage layers, and processes for
        loading and updating graph data is needed for this effort. RAAS graph data
        models are accessible by employees through a web-based user interface (UI)
        that provides authentication, query, visualization, datasheet views, and other
        functionality. Many of these services are messaged through GraphGrid, a
        microservices-based application programming interface (API) that includes
        ONgDB."[304]

ii.     The services contemplated under this task order related to ONgDB being used
        at the IRS.[305]

---

[302] Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 69:6-70:11, 95:3-96:3, 103:9-15; *see also* Depo Ex. 137 and Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 124:15-126:7.

[303] Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 175:17-177:2.

[304] Depo Ex. 139 and Depo Ex. 141.

[305] Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 144:15-146:13, 147:13-148:10, 162:20-163:6; Depo Ex. 139 and Depo Ex. 141.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

       iii.    This is further confirmed by the IRS that one instance of ONgDB is being used with the Corporate Graph Database.[306]

➢ Emerging Compliance Issues:

       i.    Modification to iGov's Master Subcontract with ASR to include Emerging Compliance Issues work.[307]

       ii.    Subcontractor Task Order Number 0001 and Modification 1: "The recent adoption of graph database technology by the IRS has rapidly led to new insights and is now used by over 3,000 employees in Examination, Collection, Criminal Investigation, and even cybersecurity functions. Understanding graph data models, graph storage layers, and processes for loading and updating graph data is needed for this effort."[308]

       iii.    Mr. Stavrianos of ASR Analytics testified that Mr. Suhy's work on Emerging Compliance Issues involved the analysis of graph data, including graphs generated using ONgDB.[309]

➢ Identity Theft Innovation / IDT Innovation:

       i.    IDT Innovation was a task order awarded to ASR relating to identity theft, which involved the use of a graph database.[310]

---

[306] Deposition of IRS Designee Michael Dunn, November 17, 2022, at 167:1-172:10, 174:19-176:21, 178:19-23, 237:15-25, 238:23-242:14 and Depo Ex. 185.

[307] Depo Ex. 136 and Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 119:1-121:14.

[308] Depo Ex. 138 and Depo Ex. 140.

[309] Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 121:19-123:9.

[310] Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 50:3-52:21, 167:16-169:17.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

143. Based on my review, I note that iGov was paid $246,082.55 on these subcontracts as follows:

- ➢ 2019: $5,830.97.[311]

- ➢ 2020: $70,447.22.[312]

- ➢ 2021: ASR paid iGov: $127,657.40.[313]

- ➢ 2022: ASR paid iGov: $42,146.96.[314]

144. As detailed above, had Mr. Suhy not removed the Commons Clause and misinformed the IRS of the infringing nature of the ONgDB product and that in order to utilize the features as it was, it would have needed to obtain the commercial license from Neo4j. I further understand that the paid support work performed by Mr. Suhy and iGov Neo4j EE software would have otherwise violated the commercial restrictions imposed by the Commons Clause that Defendants removed without Neo4j Sweden's authorization.

145. Based upon the evidence reviewed, it is reasonable to conclude that the $246,082.55 received by iGov under the ASR Analytics Subcontracts represents unjust enrichment damages resulting from Defendants' alleged violations of the Lanham Act and/or the DMCA.

---

[311] Depo Ex. 145; Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 174:3-175:16; Deposition of John Mark Suhy as individual and Most Knowledgeable for iGov and PureThink, November 29, 2022, Vol. 2 at 296:6-298:23.

[312] Depo Ex. 220; *see also* Depo Ex. 145; Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 174:3-175:16; Deposition of John Mark Suhy as individual and Most Knowledgeable for iGov and PureThink, November 29, 2022, Vol. 2 at 296:6-298:23.

[313] Depo Ex. 221; *see also* Depo Ex. 145; Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 174:3-175:16; Deposition of John Mark Suhy as individual and Most Knowledgeable for iGov and PureThink, November 29, 2022, Vol. 2 at 296:6-298:23.

[314] Depo Ex. 145; Deposition of Michael Stavrianos, ASR Analytics, LLC, November 7, 2022, at 174:3-175:16; Deposition of John Mark Suhy as individual and Most Knowledgeable for iGov and PureThink, November 29, 2022, Vol. 2 at 296:6-298:23.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

146.    Accordingly, as described above, the total revenues received by iGov (which represent gross unjust enrichment damages to Neo4j) amount to **$1,562,082.55.**[315]

147.    While I understand that prejudgment interest can be awarded, as there is no trial date currently set for this matter, nor has there been an order awarding damages, I have not yet performed such calculations.  Accordingly, I reserve the right to provide such calculation at trial or upon a verdict by the trier-of-fact.

---

[315] ($1,316,000 + $246,082.55 = $1,562,082.55)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

## Profile

Steven Boyles is a Principal at Five Corners Group and has over 23 years of experience conducting accounting, financial, economic, and valuation analyses for clients. In addition to being a Certified Public Accountant (CPA), Steven maintains a number of specialized professional designations including being Certified in Financial Forensics (CFF) and Accredited in Business Valuation (ABV), both issued by the American Institute of Certified Public Accountants. Steven is also recognized as an Accredited Senior Appraiser (ASA) by the American Society of Appraisers.

Steven possesses significant experience, being engaged in both consulting and expert roles on hundreds of occasions, in complex business disputes requiring the investigation, evaluation, and quantification of economic damages. Additionally, Steven has conducted hundreds of valuations of businesses and intellectual property assets, as well as options, derivatives, and other complex investments for both consulting and litigation purposes. His experience encompasses a diverse range of matters including assessing damages resulting from patent infringement, copyright and trademark infringement, trade secret misappropriation, shareholder and partnership disputes, post-acquisition claims, alter ego analyses, licensing (royalty) disputes, and other forensic and fraud investigations stemming from contract and tort claims.

Steven has testified more than 70 times as an expert witness in federal and state courts as well as in arbitration and deposition in connection with the work performed in these areas.

## Professional Affiliations

◆ **Certified Public Accountant (CPA) – State of Massachusetts**

◆ **California Society of Certified Public Accountants, Member**
 ▪ Forensic Services Section Steering Committee, past
 ▪ Chair, San Francisco Chapter Litigation Consulting Services Committee, past
 ▪ Treasurer, Forensic Services Valuation Section, past

◆ **American Society of Appraisers, Member**
 ▪ Accredited Senior Appraiser (ASA)

◆ **American Institute of Certified Public Accountants, Member**
 ▪ Accredited in Business Valuation (ABV)
 ▪ Certified in Financial Forensics (CFF)
 ▪ Forensic & Litigation Services Section

◆ **The International Accounting Group**
 ▪ Chair, Forensic / Litigation Support Specialty Group, past

◆ **Golden Gate University Forensic Accounting Program**
 ▪ Advisory Board to Forensic Accounting Program, past
 ▪ Adjunct Professor, past



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

## Education

University of South Florida, 1998
*Bachelor of Science - Accounting*

## Professional Experience

| | |
|---|---|
| Five Corners Consulting Group, LLC<br>*Principal* | 2018 – Present |
| Golden Gate University<br>*Adjunct Professor* | 2011 – Present |
| Hemming Morse, LLP<br>*Partner* | 2011 – 2018 |
| StoneTurn Group, LLP<br>*Managing Director* | 2007 – 2011 |
| CCR Group, LLP<br>*Manager* | 2003 – 2007 |
| Johnson Eubank Pankratz & Company<br>*Manager* | 2002 – 2003 |
| Hoffman & Associates, LLP<br>*Manager* | 1999 – 2002 |
| Matson Driscoll & Damico, LLP<br>*Associate* | 2000 – 2001 |
| Pershing Yoakley & Associates, LLP<br>*Associate* | 1998 – 1999 |

## Presentations

◆ *"Alter Ego Liability: Prove it or Lose it,"* Bar Association of San Francisco, Spring 2015

◆ *"Trade Secrets, Enforceability and Damages,"* TAGLaw - Edinburgh, Scotland, Spring 2015

◆ *"The Wild World of Corporate Espionage: Measuring Economic Damages when Trade Secrets are Misappropriated,"* American Institute of Certified Public Accountants Forensic and Valuation Services Conference, Fall 2013

◆ *"Understanding the Key Accounting Pieces of the Legal Puzzle,"* Bar Association of San Francisco, Spring 2013

◆ *"The Use of Forensic Accountants in Solving Unconventional Matters,"* DLA Piper - San Francisco, Spring 2013



**Steven B. Boyles,** CPA/CFF/ABV, ASA
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

- ◆ *"Very Small Business Valuations,"* Family Law Section of the Contra Costa Bar Association, Summer 2012
- ◆ *"The Reasonable Certainty of Your Expert's Damages Analysis,"* Caldwell Leslie & Proctor, PC, Winter 2012
- ◆ *"Post-Acquisition Disputes – Lessons Learned,"* Wilson Sonsini Goodrich & Rosati, Winter 2011
- ◆ *"Post-Acquisition Disputes – Lessons Learned from a Forensic Accountant,"* Bar Association of San Francisco, Fall 2010
- ◆ *"The Forensic Accounting Investigation of an Alter Ego Claim,"* Nixon Peabody, LLP, Spring 2010
- ◆ *"Dr. Jekyll and Mr. Hyde: What Counsel Should know about Alter Ego,"* Marin County Bar Association, Winter 2009
- ◆ *"Dr. Jekyll and Mr. Hyde: What Counsel Should know about Alter Ego,"* Bar Association of San Francisco, Fall 2009
- ◆ *"Common Techniques in Quantifying Commercial Damages,"* Seyfarth Shaw, LLP, Fall 2008

## Publications

- ◆ *"Lost Profits Damages: Principles, Methods, and Applications – Chapter 7 Proving Loss Causation,"* Valuation Products and Services, October 2017
- ◆ *"Get the Most Value From Your Damages Expert,"* The Recorder, October 2015

## Testimony

- Trial

  - ◆ **Winjet Trading, Inc. and America Plastics Trading, Inc. v. Jim Yueh Hsieh et al. (2022)**
    California Superior Court, County of Riverside
    Case No. RIC 1905805

  - ◆ **Mario Raddavero and Amanda Raddavero, doing business as Hofbrau Catering v. The Carvery, Inc., Harry's Hofbrau, Inc., et al (2021/2022)**
    California Superior Court, County of San Mateo
    Case No. CIV532008

  - ◆ **Rameshchandra Patel v. Sanwar Harshwal and Patel & Associates, LLP (2020)**
    California Superior Court, County of Alameda
    Case No. RG-1893328

  - ◆ **Jeanette Gaub v. Safeway Stores, Inc. (2019)**
    California Superior Court, County of Alameda
    Case No. RG16825586

  - ◆ **United States of America v. Jonathan Chang and Grace Chang (2019)**
    United States District Court, Northern District of California
    Case No. CR-16-0047-EJD



**Steven B. Boyles,** CPA/CFF/ABV, ASA
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

◆ **Christopher Cardinal, Kitchen Experts of California, Inc. and American Appliance Outlet, LLC v. John Lupo, Andreana Michael, Kitchen Fantastic, Inc., Appliance Fantastic Inc., Bryce Phelton, and Moheba D'Anna (2019)**
United States District Court, Northern District of California
Case No. 18-CV-00272-JCS

◆ **Giganews, Inc. and Livewire Services, Inc. v. Perfect 10, Inc. and Norman Zada (2019)**
United States District Court, Central District of California
Case No. 2:17-cv-05075-AB

◆ **Wonderworks Pte. Ltd., vs. Hewlett-Packard Company; HP Enterprise Services, LLC and Hewlett-Packard SDN, BHD. (2018)**
California Superior Court, County of Santa Clara
Case No. 114CV273632

◆ **Ran Sendrovitz v. Tal Amir Sendrovitz (2018)**
Superior Court of California, Contra Costa County
Case No. D14-03563

◆ **Independent Electric Supply v. Laurence William Dashiell, et al. (2018)**
Superior Court of California, County of Marin
Case No. CIV-14-01675

◆ **Loytr, Inc. v. TinyCo, Inc. (2018)**
Superior Court of California, County of San Francisco
Case No. CGC-16-551519

◆ **Steven Brisson and Laura Maness v. Propane Studio LLC, Neil Chaudhari, Rahul Odedra, Lilu Odedra, and Michelle Viray (2014)**
Superior Court of California, County of San Francisco
Case No. CGC-13-531005

◆ **American TonerServ Corp., iPrint Technologies, LLC v. Chad Solter, Darrell Tso, Scott Muckley, MTS Partners, Inc. (March 2014)**
Superior Court of California, County of Marin
Case No. CIV1102020

◆ **Jeffrey C. Coury v. William P. Foley, II and Chicago Title Insurance Company (May 2013)**
Superior Court of California, County of Sonoma
Case No. SCV250985

◆ **Brandon Abbey, Burst Communications, Inc. and Britt Miller v. John Sheputis, William Fleming, Fortune Drive Associates, LLC, Sheputis DC Investments, LLC, and California Acquisition and Development Company, LLC (January 2013)**
Superior Court of California, County of San Francisco
Case No. CG-08-479301



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

- ❖ **Brandon Abbey, Burst Communications, Inc. and Britt Miller v. John Sheputis, William Fleming, Fortune Drive Associates, LLC, Sheputis DC Investments, LLC, and California Acquisition and-Development Company, LLC (November 2012)**
  Superior Court of California, County of San Francisco
  Case No. CG-08-479301

- ❖ **Innovention Toys, LLC v. MGA Entertainment, Inc. and Wal-Mart Stores, Inc. and Toys "R" Us, Inc. (2012)**
  United States District Court, Eastern District of Louisiana
  Case No. 07-6510

- ❖ **Peter Bennett v. Cynthia Foss (2012)**
  Superior Court of California, County of San Francisco
  Case No. FPT-09-376032

- Arbitration

  - ❖ **Martin R. Prince, M.D., Ph.D. v. General Electric Company (2021)**
    JAMS Alternative Dispute Resolution, New York, New York
    Case No. 1425027949

  - ❖ **Sonal Kaza v. Farmers Insurance Exchange (2020)**
    Uninsured Motorist Arbitration
    Case No. None

  - ❖ **Multi Cable, Inc. and Mousa Golbahar v. Jackson Lewis, P.C., and Joel Kelly (2020)**
    ADR Services, Inc. Los Angeles, California
    Case No. 18-2477-JZ

  - ❖ **Rameshchandra Patel v. Sanwar Harshwal and Patel & Associates, LLP (2020)**
    ADR Services, Inc.
    Case No. 18-6508-MW

  - ❖ **California Residential Opportunity Fund, LP v. HPROF, LLC, Harbour Partners, LLC, Jeff Hutchinson, and David Bell (2018)**
    American Arbitration Association
    Case No. 01-18-0000-1325

  - ❖ **Bijoux Corp. v. Deepa Sood (2018)**
    American Arbitration Association
    Case No. 01-16-000-9656

  - ❖ **350 WSJ, LLC and Asset Management, LLC v. Winchester Plaza on the Row, LLC et al. (2018)**
    JAMS Arbitration

  - ❖ **Lena Kwak v. French Laundry Partners, L.P., French Laundry Restaurant Corporation, and Thomas Keller (2018)**
    JAMS Alternative Dispute Resolution



Steven B. Boyles, **CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

- ◆ **Nunzio Alioto vs. Alioto Fish Company Ltd. (2017)**
  JAMS Arbitration
  Case No. 1100084167

- ◆ **David Seto, Sharon Seto and Anthony Sam v. Asset Management LLC, et al. (2017)**
  JAMS Arbitration

- ◆ **Cancer Imaging Associates, LLC v. California Cancer Associates for Research and Excellence, Inc. (2016)**
  JAMS Arbitration
  Case No. 1120012598

- ◆ **InterDigital Technology Corporation and IPR Licensing, Inc. v. Inventec Appliances Corporation (2015)**
  ICDR Arbitration
  Case No. 50-20-1400-0225

- ◆ **Frederick H. DiRienzo, et al. v. Banc of America Investment Services, Inc. (2011)**
  FINRA Arbitration
  Case No. 10-01011

- Depositions

  - ◆ **TriReme Singapore Ltd and Quattro Vascular PTE Ltd v. InnoRa GMBH (2022)**
    American Arbitration Association
    Case No. 01-21-0016-9104

  - ◆ **Matthew Harris, M.D. and Nathan Rutkowski vs. Lyft, Inc., Garegin Menejyan, and Candice Marie Lee. (2022)**
    California Superior Court, County of San Francisco
    Case No. CGC-19-576503

  - ◆ **Paltalk Holdings, Inc. vs. Cisco Systems, Inc. (2022)**
    United States District Court, Western District of Texas Waco Division
    Case No. 6:21-cv-00757-ADA

  - ◆ **Roger Ordonez-Castellon and Minerva Lopez Cervantes v. Aerotek, Inc., Allegis Group Holdings, Inc., Allegis Group, Inc., and Mettler-Toledo Rainin (2022)**
    California Superior Court, County of Alameda
    Case No. RG19045302

  - ◆ **Victaulic Company vs. ASC Engineered Solutions, LLC (2022)**
    United States District Court, District of Delaware
    Case No. 20-887 (CFC) (JLH)

  - ◆ **Quackenbush et al., vs. American Honda Motor Company, Inc. et al. (2022)**
    United States District Court, Northern District of California
    Case No. 3:20-cv-05599-WHA



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

◆ **Symmetrix Video Systems LLC v. Cisco Webex LLC (2022)**
United States District Court, District of Delaware
Case No. 1:20-cv-00914

◆ **In Re: Juul Labs Inc. Marketing, Sales Practices, and Products Liability Litigation (2021)**
United States District Court, Northern District of California
Case No. 19-md-02913-WHO

◆ **The Pennsylvania State University v. Keystone Alternatives, LLC, d/b/a GoPSUrv.com, and Mark Lauer (2021)**
United States District Court, Middle District of Pennsylvania
Case No. 3:02-at-06000

◆ **Steve Zuehlsdorf, individually and on behalf of a class of similarly situated individuals v. FCA US LLC (2021)**
United States District Court, Central District of California
Case No. 5:18-cv-01877 JGB (KKx)

◆ **Oyster Optics, LLC v. Cisco Systems, Inc. (2021)**
United States District Court, Eastern District of Texas – Marshall Division
Case No. 2:20-CV-00211-JRG

◆ **Kathleen Ryan-Blaufuss, Cathleen Mills, and Khek Kuan v. Toyota Motor Corporation and Toyota Motor Sales USA, Inc. (2021)**
United States District Court, Central District of California
Case No. 8:18-cv-00201-JLS-KES

◆ **Jamie Lynn Jordan v. Carolyn Lonner (2021)**
California Superior Court, County of Alameda
Case No. RG17881922

◆ **Martin R. Prince, M.D., Ph.D. v. General Electric Company (2021)**
JAMS Alternative Dispute Resolution, New York, New York
Case No. 1425027949

◆ **Monarch Networking Solutions LLC v. Cisco Systems, Inc. (2020)**
United States District Court, Eastern District of Texas (Marshall Division)
Case No. 2:20-cv-00015-JRG

◆ **Alfonso and Arlene Moran v FCA US LLC (2020)**
United States District Court, Southern District of California
Case No. 3:17-CV-02594-GPC (AHG)

◆ **Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc. (2020)**
United States District Court, Eastern District of Texas (Marshall Division)
Case No. 2:14-cv-1018



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

◆ **Mario Raddavero and Amanda Raddavero, doing business as Hofbrau Catering v. The Carvery, Inc., Harry's Hofbrau, Inc., et al (2020)**
California Superior Court, County of San Mateo
Case No. CIV532008

◆ **TecSec Incorporated v. Cisco Systems, Inc. et al (2020)**
United States District Court, Northern District of California
Case No. 1:10-cv-00115-LO-TCB

◆ **Multi Cable, Inc. and Mousa Golbahar v. Jackson Lewis, P.C., and Joel Kelly (2020)**
ADR Services, Inc. Los Angeles, California
Case No. 18-2477-JZ

◆ **Rameshchandra Patel v. Sanwar Harshwal and Patel & Associates, LLP (2020)**
ADR Services, Inc.
Case No. 18-6508-MW

◆ **Centripetal Networks, Inc. v. Cisco Systems, Inc. (2019)**
United States District Court, Eastern District of Virginia
Case No. 2:18-CV-00094-HCM-LRL

◆ **Jeanette Gaub v. Safeway Stores, Inc. (2019)**
California Superior Court, County of Alameda
Case No. RG16825586

◆ **Christopher Cardinal, Kitchen Experts of California, Inc. and American Appliance Outlet, LLC v. John Lupo, Andreana Michael, Kitchen Fantastic, Inc., Appliance Fantastic Inc., Bryce Phelton, and Moheba D'Anna (2019)**
United States District Court, Northern District of California
Case No. 18-CV-00272-JCS

◆ **Campus Oaks Apartments I, LLC v. Dahlin Group, Inc. and BBC Roseville Oaks, LLC (2019)**
California Superior Court, County of Placer
Case No. SCV0040173

◆ **Max W. Goodwin and Sally S. Goodwin, individually and as Trustees of the Goodwin Family Trust Dated September 23, 1993 v. James N. Hardwick (2019)**
California Superior Court, County of Alameda
Case No. HG 16836677

◆ **The Sonoma County Airport Express, Inc.; Howard I. Emigh and Janet E. Emigh, individually and as Co-Trustees of the Emigh Trust Dated March 1, 2006; and Raymond A. Neese v. Amy A. Smith, aka Amy A. Smith-Wahl; Amy A. Smith-Wahl, Trustee of the Smith Family Trust Dated January 5, 2006; Daniel J. Christiansen, Sr., CPA; and Fidelity National Title Company (2019)**
California Superior Court, County of Sonoma
Case No. SCV-261976

◆ **Diamond Foods, Inc. v. Hottrix, LLC (2018)**
United States District Court, Northern District of California
Case No. 14-CV-03162-BLF



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

- ◆ **California Residential Opportunity Fund, LP v. HPROF, LLC, Harbour Partners, LLC, Jeff Hutchinson, and David Bell (2018)**
  American Arbitration Association
  Case No. 01-18-0000-1325

- ◆ **Sunming Cheung, as Administrator of the Estate of Helen Yung Chang and as Trustee of the Helen Yung Chang Revocable Trust vs. Gleaming International Company Limited, Lilian Chang Wai, Paul Chu Kong Chang, Chris Chao Yuan Chang, Lincoln Chang, and Pacific Grace Limited (2018)**
  California Superior Court, County of Santa Clara
  Case No. 1-14-CV-272501

- ◆ **Lena Kwak v. French Laundry Partners, L.P., French Laundry Restaurant Corporation, and Thomas Keller (2018)**
  JAMS Alternative Dispute Resolution

- ◆ **Maxim Integrated Products, Inc. v. Novinium, Inc. and UtilX Corporation (2018)**
  Superior Court of California
  Santa Clara County No. 16CV297468

- ◆ **Wonderworks Pte. Ltd., vs. Hewlett-Packard Company; HP Enterprise Services, LLC and Hewlett-Packard SDN, BHD. (2018)**
  California Superior Court, County of Santa Clara
  Case No. 114CV273632

- ◆ **Jeremy Wiesen v Ram Telecom International, Inc., Brian Mass, and Russ Matulich (2018)**
  Superior Court of California, County of San Francisco
  Case No. CGC-16-554331

- ◆ **350 WSJ, LLC and Asset Management, LLC v. Winchester Plaza on the Row, LLC et al. (2018)**
  JAMS Arbitration

- ◆ **Independent Electric Supply v. Laurence William Dashiell, et al. (2018)**
  Superior Court of California, County of Marin
  CIV-14-01675

- ◆ **Loytr, Inc. v. TinyCo, Inc. (2018)**
  Superior Court of California, County of San Francisco
  Case No. CGC-16-551519

- ◆ **Huu Nguyen, individually, and on behalf of a class of similarly situated individuals v. Nissan North America, Inc. (2018)**
  United States District Court, Northern District of California
  Case No. 5:16-cv-05591-LHK (NCx)

- ◆ **In Re Intuitive Surgical Securities Litigation (2017)**
  United States District Court, Northern District of California
  Case No. 5:13-cv-01920-EJD



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

◆ **Carlos Victorino and Adam Tavitian, individually, and on behalf of a class of similarly situated individuals v FCA US LLC (2017)**
United States District Court, Southern District of California,
Case No. 3:16-cv-01617-GPC-JLB

◆ **In the Matter of Howard P. Huey and Soo Ong Huey Revocable Trust dated June 22, 2007 and its sub-trusts (2017)**
Superior Court of California, County of San Mateo
Case No. 125931

◆ **Sofia New and Joseph New v. Manuel Langit and Aurora M. Langit (2017)**
Superior Court of California, County of San Francisco
Case No. CGC-14-540706

◆ **Nunzio Alioto vs. Alioto Fish Company Ltd. (2017)**
JAMS Arbitration
Case No. 1100084167

◆ **Maria Ford, et al. v. Gary Yasuda and Amarillo College of Hairdressing, Inc. (2017)**
United States District Court, Central District of California
Case No. 5:13-CV-1961-PSG-DTB

◆ **David Seto, Sharon Seto and Anthony Sam v. Asset Management LLC, et al. (2016)**
JAMS Arbitration

◆ **Synopsys, Inc. v. ATopTech, Inc. (2016)**
United States District Court, Northern District of California
Case No. 13-02965 (MMC)

◆ **Sukru Bayramoglu and Gulay Bayramoglu v. CitiMortgage, Inc., Federal National Mortgage Associations, aka Fannie Mae, and Nationstar Mortgage, LLC (2016)**
Superior Court of California, County of Sacramento
Case No. 34-2014-00166510-CU-OR-GDS

◆ **Seth Samuels, et al. v. Hamrick & Evans, LLP, et al. (2016)**
Superior Court of California, County of San Francisco
Case No. CGC-13-534626

◆ **Derek Benham v. Norman A. Barnes, Kenneth Everett, Seiler, LLP (2016)**
Superior Court of California, County of San Francisco
Case No. CGC-15-54427

◆ **Cancer Imaging Associates, LLC v. California Cancer Associates for Research and Excellence, Inc. (2016)**
JAMS Arbitration
Case No. 1120012598

◆ **C&J Express and Charlie Lu v. Golden Int'l Travel, Inc. and Chaoying Guo (January 2016)**
United States District Court, Central District of California
Case No. 2:14-cv-06030-FMO-JC



**Steven B. Boyles, CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

- **Alana Kaselitz and Melissa Kaselitz v. HiSoft Technology International, Ltd. and Tiak Koon Loh (June 2015)**
  Superior Court of California, County of San Francisco
  Case No. CGC-12-525000

- **Efren Guerra and Robin Guerra v. Nationstar Mortgage, LLC; Aurora Loan Services, LLC; and Cal-Western Reconveyance (2015)**
  Superior Court of California, County of Nevada
  Case No. CU13-079943

- **Lloyds TSB Bank PLC v. Michael Joseph Kilroy (March 2015)**
  Superior Court of California, County of Riverside
  Case No. 1202040

- **Steven Brisson and Laura Maness v. Propane Studio LLC, Neil Chaudhari, Rahul Odedra, Lilu Odedra, and Michelle Viray (2014)**
  Superior Court of California, County of San Francisco
  Case No. CGC-13-531005

- **American TonerServ Corp., iPrint Technologies, LLC v. Chad Solter, Darrell Tso, Scott Muckley, MTS Partners, Inc. (February 2014)**
  Superior Court of California, County of Marin
  Case No. CIV1102020

- **Deanna Roth Fairchild, Trustee of the Deanna Trust v. Carolyn G. Roth, Trustee of the Gerald K. Roth and Carolyn G. Roth Trust (January 2014)**
  Superior Court of California, County of Contra Costa
  Case No. P11-01078

- **Jeffrey C. Coury v. William P. Foley, II and Chicago Title Insurance Company (February 2013)**
  Superior Court of California, County of Sonoma
  Case No. SCV250985

- **Brandon Abbey, Burst Communications, Inc. and Britt Miller v. John Sheputis, William Fleming, Fortune Drive Associates, LLC, Sheputis DC Investments, LLC, and California Acquisition and Development Company, LLC (September 2012)**
  Superior Court of California, County of San Francisco
  Case No. CG-08-479301

- **Innovention Toys, LLC v. MGA Entertainment, Inc. and Wal-Mart Stores, Inc. and Toys "R" Us, Inc. (2012)**
  United States District Court, Eastern District of Louisiana
  Case No. 07-6510

- **Brandon Abbey, Burst Communications, Inc. and Britt Miller v. John Sheputis, William Fleming, Fortune Drive Associates, LLC, Sheputis DC Investments, LLC, and California Acquisition and Development Company, LLC (July 2012)**
  Superior Court of California, County of San Francisco
  Case No. CG-08-479301



Steven B. Boyles, **CPA/CFF/ABV, ASA**
*Principal*

steven.boyles@5cornersgroup.com
415.508.3377

- ◆ **Carol Barnes Lucero v. Wells Fargo Bank, N.A. (2012)**
  Superior Court of California, Alameda County
  Case No. RG 11583019

- ◆ **Cycle Shack, Inc. v. Harley-Davidson Motor Company Inc. and Markland Industries (2012)**
  Superior Court of California, Orange County
  Case No. 00126460

- ◆ **Elpida Memory, Inc. v. Semiconductor Manufacturing International Corporation (2011)**
  American Arbitration Association
  Case No. 50 117 T 732 10

- ◆ **Elpida Memory, Inc. v. Cension Semiconductor Manufacturing Corporation and Semiconductor Manufacturing International Corporation (2010)**
  American Arbitration Association
  Case No. 50 117 T 0001710

Exhibit B - Documents Considered

| PLEADINGS |
|---|
| Neo4J, Inc. and Neo4J Sweden AB for 1) Interference with Prospective Economic Advantage 2) Interfence with Contract 3) Breach of Contract 4) Breach of Exclusive Contract to Government 5) Declaratory Relief (Void Restrictions) 6) Declaratory Relief (Restrictions Violate AGPL License) 7) Declaratory Relief (Commons Clause in AGPL is invalid) 8) Declaratory Relief (Commons Clause in AGPL does not apply to professional services) 9) Declaratory Relief (Users may use and fork content NEO4J SWEDEN put on a public GitHub respository) 10) Declaratory Relief (Abandonment of Trademark) 11) OMMITTED 12) Unfair Business Practices (California |
| Advertising; (4) Defamatino; (5) Federal and State Unfair Competition; (6) Breach of Contract; (7) Invasion of Privacy; and (8) Violations of the DMCA |
| Complaint |
| Doc 98-1 Declaration of Jeffrey M. Ratinoff in Support of Plaintiffs' Consolidated Motion for Summary Judgment |
| Doc 98-2 Declaration of Philip Rathle in Support of Plaintiffs' Consolidated Motion for Summary Judgment |
| Doc 98-3 Declaration of John Broad in Support of Plaintiffs' Consolidated Motion for Summary Judgment |
| Summary Judgment |
| **DEPOSITION TRANSCRIPTS** |
| 2022-11-29  Remote Videotaped Deposition of John Mark Suhy, Jr. Indvidually and as a Person Most Knowledge Pursuant to Fed. R. Civ. P. 30(b) (1) for Igov Inc. and Purethink LLC |
| 2022-11-17 Remote Videotaped Deposition of Internal Revenue Service through its Designee Michael C. Dunn |
| 2022-11-07 Videotaped Deposition of Michael Stavrianos as Representative of ASR Analytics, LLC |
| Solutions |
| 2022-10-22 Remote Videotaped Deposition of John Mark Suhy as Representative of IGOV, Inc. |
| 2022-09-16 Videotaped Deposition of Jim Weyant as Representative of CACI International, Inc. |
| 2020-10-16 Rmote Via Zoom 30(b)(6) Deposition of Neo4J Inc by Brad Nussbaum taken in matter *Neo4J, Inc. v. Graph Foundation, Inc.*, United States District Court Norther District of California, Case No.: 5:19-CV-06226 |
| **DISCOVERY RESPONSES** |
| 2020-10-27 iGov's Verified Amended Responses to Neo4j Sweden's Special Interrogatories, Set Two |
| **PRODUCTION DOCUMENTS BY BATES-STAMP NUMBER** |
| 000191-000191 |
| 000205-000205 |
| 000206-000206 |
| EGOV PROD 82 |
| EGOV PROD 94 |
| EGOV PROD 99 |
| EGOV PROD 113 |
| EGOV PROD 134 |
| EGOV PROD 135 |
| IGOV0001573225 |
| IGOV0002991415 |
| IGOV0002909188 |
| IGOV0002991420 |
| IRS_PROD_00001356 |
| IRS_PROD_00001638 |
| IRS_PROD_00002210 |
| IRS_PROD_00006330 |
| IRS_PROD_00008771 |

Exhibit B - Documents Considered

| |
|---|
| IRS_PROD_00009018 |
| IRS_PROD_00009019 |
| IRS_PROD_00009175 |
| N4J_019991 - HC-AEO |
| N4J_019992 - HC-AEO |
| N4J_020130 - HC-AEO |
| N4J_020132 - HC-AEO |
| N4J_020153 - HC-AEO |
| N4J_020187 - HC-AEO |
| N4J_020201 - HC-AEO |
| N4J_020230 - HC-AEO |
| N4J_020264-N4J_020286 |
| N4J_020287-N4J_020288 |
| N4J_020289-N4J_020290 |
| **DEPOSITION EXHIBITS** |
| Ex 19 - Tab 170 - IGOV0001573588 - 2018 08 22 JMS email re adding ONgDB as alternate to Neo4 |
| Ex 28 - Tab 141 - IGOV0001570039 - 2019 01 18 JMS Email re 3.5-beta03 being first closed EE 31 |
| Ex 31 - Tab 48.1 - IGOV0001573400.0001 - 2019 02 19 email from Ben after intro from JMS |
| Ex 32 - Tab 135 - IGOV0001573396 - 2019 02 19 - Email re IRS Internal Review re AGPL 1 |
| Ex 33 - Tab 143 - iGov Inc Profit and Loss 2018 |
| Ex 43 - [TAB302] CACI00005178 |
| Ex 44 - [TAB303] CACI00004994 |
| Ex 45 - [TAB304] CACI00004966 |
| Ex 46 - [TAB305] CACI00004931 |
| Ex 47 - [TAB306] CACI00003832 |
| Ex 48 - [TAB307] CACI00003635 |
| Ex 49 - [TAB308] CACI00003597 |
| Ex 50 - [TAB309] CACI00003512 |
| Ex 52 - [TAB311] CACI00003476 |
| Ex 53 - [TAB312] CACI00003446 |
| Ex 54 - [TAB313] CACI00003301 |
| Ex 55 - [TAB314] CACI00003155-56 |
| Ex 56 - [TAB315] CACI00003132 |
| Ex 57 - [TAB317] CACI00002845 |
| Ex 58 - [TAB318] CACI00006260 |
| Ex 60 - [TAB321] CACI00005838 |
| Ex 100 [TAB367] 2. egovsol-stock-sale |
| Ex 102 [TAB372] EGOVS_000001 2018.4.6 - 2018 - Quote eGovernment Solutions Inc |
| Ex 103 [TAB373] EGOVS_000015 2018.5.24 - OF347_executed |
| Ex 104 [TAB374] EGOVS_000021 2018.5.31 - 2018-admin-mod - SF30 MOD 1signed |
| Ex 105 [TAB375] EGOVS_000030 2019.5.14 - 2019-option-year-1 SF30 - Mod 1_signed signed - Copy |
| SOLICITATIONMODIFICATION OF CONTRACT i |
| Ex 108 [TAB378] EGOVS_000058 2021.3.18 - 2021-option-year -22 SF 30 Mod P00016 signed |

Exhibit B - Documents Considered

| |
|---|
| Ex 109 [TAB379] EGOVS_000062 2022.3.10 - 2022-option-2032H8-18-P-00168-P00017 dated 3.10.22 (for prod) |
| Ex 110 [TAB380] EGOVS_000068 Combined Invoicing Docs |
| Ex 111 [TAB381] EGOVS_000140 IGov_1099_2018 |
| Ex 112 [TAB382] EGOVS_000141 IGov_1099_2019 |
| Ex 113 [TAB383] EGOVS_000142 IGov_1099_2020 |
| Ex 114 [TAB384] EGOVS_000143 IGov_1099_2021 |
| Ex 115 [TAB385] Combined Bank Statements Bates 81-136 |
| Ex 116 Richard Starr - Attorney - Irving Starr Esq., P.C. _ LinkedIn |
| Ex 133 2019 03 29 ASR_00719-721 |
| Ex 134 ASR 01764 |
| Ex 135 ASR_RAAS-DAIS_iGov_0001_Master SubK Agreement_20191007_FE |
| Ex 136 ASR 01898 |
| Ex 137 Volume 1 - Technical Proposal (RFQ-20-U0016) - ASR Analytics |
| Ex 138 ASR 01752 |
| Ex 139 ASR 01758 |
| Ex 140 ASR 01755 |
| Ex 141 ASR 01761 |
| Ex 142 ASR 01901 |
| Ex 143 ASR 01915 |
| Ex 144 ASR 01956 |
| Ex 145 ASR 01999 |
| Ex 159 - Order for Supplies 000105-000113 |
| Ex 161 - Email N4J_010916 |
| Ex 163 - Email IGOV0001570511 |
| Ex 164 - N4J_019998 |
| Ex 165 - Emails GOV0001573245 |
| Ex 166 - Emails IGOV0001573231 |
| Ex 168 - Emails N4J_020130 |
| Ex 169 - Emails IGOV0001573217 |
| Ex 170 - Emails IGOV0001573216 |
| Ex 171 - Emails IGOV0001573215 |
| Ex 172 - Emails IRS_PROD_00000129 |
| Ex 173 - Emails IRS_PROD_00009220 |
| Ex 174 - Emails IRS_PROD_00001738 |
| Ex 181 - Emails IRS_PROD_00000473 |
| Ex 185 - 2032H8-20-F-00163 FE |
| Ex 190 - 2021.02.16 Stipulated Judgment |
| Ex 216 [TAB391] 2022-iGov-Invoice-CKGE-400 |
| Ex 217 [TAB505] EGOVS_000151-EGOVS_000202 |
| Ex 218 [TAB507] EGOVS_000150 |
| Ex 219 [TAB506] EGOVS_000144 |
| Ex 220 [TAB517] ASR 02000 |
| Ex 221 [TAB518] ASR 02002 |
| Ex 223 [TAB511] iGov Inc Profit and Loss 2019 |
| Ex 225 [TAB513] iGov Inc Profit and Loss 2020 |

Exhibit B - Documents Considered

| |
|---|
| Ex 227 [TAB515] iGov Inc Profit and Loss 2021 |
| EX 239 Greystones000093 - Joint Marketing Agreement |
| EX 240 IGOV0001570113 |
| EX 242 [TAB529] Greystones000555 SBIR Phase I Proposal |
| Response |
| EX 245 [TAB532] IGOV0001573313-15 |
| EX 247 [TAB535] Greystones000621 SBIR Direct to Phase II Proposal |
| EX 248 [TAB536] Greystones000656 Award-Contract |