# EXHIBIT B

Findings of Fact and Conclusions of Law, Northern District of California,
Case No. 5:18-cv-07182-EJD

Date: July 22, 2024

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NEO4J, INC., et al.,

        Plaintiffs,

   v.

PURETHINK, LLC, et al.,

        Defendants.

Case No.  5:18-cv-07182-EJD

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden") (collectively, "Plaintiffs") brought the present lawsuit against Defendants PureThink LLC ("PureThink"), iGov Inc. ("iGov"), and John Mark Suhy ("Suhy") (collectively, "Defendants") alleging claims under the Lanham Act and the Digital Millennium Copyright Act ("DMCA"), among other claims, related to Plaintiffs' proprietary software. Third Am. Compl., ECF No. 90.

The Court previously found Defendants liable as to Neo4j USA's first, second, third, and fourth Lanham Act and unfair competition claims. Order Granting Mot. for Partial Summ. J.; Den. Cross-Mot. for Summ. J. ("First MSJ Order"), ECF No. 118. The Court also found Defendants liable as to Neo4j Sweden's eighth cause of action for violation of the DMCA. Order Granting Mot. to Strike Expert Report and Exclude Expert Testimony; Granting Mot. for Partial Summ. J. ("Second MSJ Order"), ECF No. 216. The only issue remaining before the Court is damages.

The Court held a bench trial on November 14, 2023, and November 28, 2023, and heard oral arguments and evidence presented by both Parties. ECF Nos. 225, 229. The Court also received pre-trial and post-trial submissions of the Parties' proposed findings of fact and conclusions of law. *See* Pls.' Proposed Findings of Fact and Conclusions of Law ("Pls.' FFCL"),

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1

United States District Court
Northern District of California

ECF No. 238; Defs.' Proposed Findings of Fact and Conclusions of Law ("Defs.' FFCL"), ECF No. 237.

Having considered the Parties' submissions and evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[1]

## I. FINDINGS OF FACT

The Court finds the following facts based on factual findings from the Court's two prior summary judgment orders, facts stipulated to by the Parties, and all other relevant evidence in the record.

### A. The Parties

1. Plaintiff Neo4j USA is a corporation specializing in graph database management systems. First MSJ Order 2. Plaintiff Neo4j Sweden is a wholly owned subsidiary of Neo4j USA and owns all copyrights relating to the Neo4j graph database platform, including the source code. *Id.*

2. Defendant Suhy is the founder and sole employee, member, and manager of Defendant PureThink, which is a single person limited liability software and information technology consulting company specializing in supporting agencies within the U.S. Government that use Neo4j graph database software. Stip. of Undisputed Facts for Trial ("Undisputed Facts") ¶ 15, ECF No. 227. Suhy also formed Defendant iGov, a software development and consulting company, to offer paid support services for open source Neo4j software to the IRS and other government agencies. First MSJ Order 4.

### B. The Neo4j Platforms

3. Neo4j USA originally offered a free and open-source version of the Neo4j platform known as the Neo4j Community Edition ("Neo4j CE") under the GNU General Public License version 3 ("GPL") license. Undisputed Facts ¶ 5. The Neo4j CE source code was available to the

---

[1] Any findings of fact that constitute conclusions of law shall be deemed to have been found by the Court as a matter of law. Likewise, any conclusions of law that constitute findings of fact shall be deemed to have been found by the Court as a matter of fact.

public on GitHub pursuant to the GPL. First MSJ Order 3. Neo4j CE is limited in its feature set and does not come with technical or administrative support. Undisputed Facts ¶ 5. Neo4j CE under the GPL license remains publicly available and free. *See id.* ¶ 12.

4.      Neo4j USA also offered a more advanced commercial version which included additional features and support services, known as the Neo4j Enterprise Edition ("Neo4j EE"). Undisputed Facts ¶ 6. Neo4j EE was originally offered under both a paid-for commercial license and the free GNU Affero General Public License ("APGL"). *Id.*

5.      In May 2018, Neo4j USA released Neo4j EE version ("v") 3.4, which they continued to offer under an open-source license; however, they replaced the AGPL with a stricter license, which included additional restrictions provided by the new Commons Clause. First MSJ Order 3. The Commons Clause prohibited the non-paying public from engaging in commercial resale and certain commercial support services. *Id.* This stricter license is referred to as the "Neo4j Sweden Software License." *Id.*

6.      In November 2018, Neo4j USA released Neo4j EE v3.5 under a commercial license only. Undisputed Facts ¶ 11. Moving forward, Plaintiffs were no longer publishing open source code for new versions of Neo4j EE. First MSJ Order 3.

### C.      Former Partnership Agreement Between the Parties

7.      In 2014, PureThink and Neo4j USA entered into the Neo Technologies Solution Partner Agreement ("Partnership Agreement"). Undisputed Facts ¶ 17. In conjunction with its business, Neo4j USA owns several federally registered trademarks, including the word mark "NEO4J" ("Neo4j Mark"). First MSJ Order 2. Under the Partnership Agreement, PureThink had a non-exclusive, non-transferable limited license to use the Neo4j Mark solely to market and resell commercial licenses to Neo4j EE and related support services in exchange for shared revenue for the licenses that it resold. *Id.* at 3.

8.      In the hopes of increased sales, PureThink developed the Neo4j Government Edition ("Gov't Edition"), which was a package designed to use Neo4j EE to streamline the government's procurements. *Id.* at 4.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
3

9.      After a dispute concerning Suhy's use, distribution, and marketing of Neo4j's open source products, rather than the commercial products, and his marketing of consulting services focused on those products to the Internal Revenue Services ("IRS"), Neo4j USA terminated the Partnership Agreement on July 11, 2017.  *Id.* at 4.  Neo4j USA demanded that PureThink no longer use Neo4j's trademarks, service marks, and other designations, as well as remove marketing materials and Neo4j's trademarks and tradenames from PureThink's website.  *Id.*

10.     Suhy incorporated iGov to continue supporting open source Neo4j software without being bound by restrictions in the Partnership Agreement, which he believed to be unlawful.  *Id.*

**D.      Defendants' Conduct Following the Partnership Agreement Termination**

11.     Suhy and iGov continued marketing the Gov't Edition and using the Neo4j Mark after the Partnership Agreement was terminated.  First MSJ Order 4.  For example, the iGov website used "https://igovsol.com/neo4j.html" as a URL to promote "Government Development Packages for Neo4j"; displayed a "Request Procurement Document Package" link with "mailto:neo4j@igovsol.com" embedded that creates an email addressed thereto upon activation; encouraged consumers to obtain more information by sending an email to "neo4j@igovsol.com"; and used "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's modified version of the Neo4j EE software.  *Id.* at 5.

12.     After Plaintiffs released Neo4j EE v3.4—which replaced the AGPL with the Neo4j Sweden Software License—Suhy helped form Graph Foundation, Inc. ("the Graph Foundation").[2]  First MSJ Order 6.

13.     The Graph Foundation began promoting a software called ONgDB, which it referred to as "free and open source."  First MSJ Order 6.  Suhy created ONgDB using Neo4j EE v3.4 as a base, which was subject to the Neo4j Sweden Software License, but he removed the stricter Neo4j Sweden Software License and replaced it with the AGPL.  *Id.*; Am. Dep.

---

[2] The Graph Foundation is not a defendant in this matter.

Designations, Ex. 2, Dep. of John Mark Suhy ("Suhy Dep.") 171:23–172:23, ECF No. 226. Doing so removed certain legal notices identifying Neo4j Sweden as the copyright holder and licensor and removed the Commons Clause, effectively allowing Defendants to commercially use and support ONgDB. First MSJ Order 6. Suhy testified that he believed he was permitted to remove the Commons Clause based on his research of existing case law, research of other companies who had removed similar information, and consultations with the Graph Foundation and the IRS. [3] Suhy Dep. 196:22–199:21; Trial Tr. Vol. II 328:9–19, ECF No. 233; Trial Ex. 1012, ECF No. 242-38.

14.     Following the creation of ONgDB, Suhy provided hyperlinks to potential users of Neo4j EE to view and download ONgDB from the Graph Foundation's website and GitHub repository using his iGov and PureThink email addresses. Undisputed Facts ¶¶ 42, 43. iGov's website also provided links to potential users of Neo4j EE to download ONgDB directly from iGov and from the Graph Foundation's website. *Id.* ¶¶ 44, 45. The "landing page" for ONgDB on GitHub was very similar to that of Neo4j EE. First MSJ Order 7. It was titled "ONgDB – Neo4j Enterprise Fork: Graphs for Everyone," and contained numerous references to Neo4j throughout. *Id.*

15.     Defendants also made a series of representations regarding ONgDB, including communicating to potential customers that ONgDB v3.5 was "100% free and open" with no limitations or restrictions imposed by the Neo4j EE v3.5 commercial license. First MSJ Order 7. iGov also promoted ONgDB and asserted that "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions." *Id.* Defendants have made similar statements directly to potential customers, such as characterizing ONgDB as a "100% open source and a drop

---

[3] Plaintiffs argue that Suhy's statement regarding consulting the IRS is contradicted by the IRS representative's deposition. Pls.' FFCL 9 n.2. However, Suhy specifically stated that he discussed his ability to *remove* the Commons Clause with the IRS, whereas, in the section cited to by Plaintiffs, the IRS representative testified that he did not know of any conversation with Suhy regarding Neo4j USA's ability to *add* the Commons Clause. *Compare* Trial Tr. Vol. II 328:9–19, *with* Dep. Designations, Ex. 5, Dep. of Internal Revenue Service Through its Designee Michael C. Dunn ("Dunn Dep.") 97:17–98:21, ECF No. 210.

in replacement for the same Neo4j version." *Id.*

16.     Relying on these and other facts, the Court made three findings relevant to the present Findings of Fact and Conclusions of Law.

17.     First, the Court found that the following conduct constituted trademark infringement: (1) extensively using "Neo4j' and "Neo4j Enterprise" on iGov and PureThink websites without proper trademark notices; (2) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (4) using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 21.  The Court found that Defendants were not using "Neo4j" to refer to Plaintiffs' products; they were using it to create the misleading perception that Defendants' products were Plaintiffs' products.  *Id.* at 20.

18.     Second, the Court found that Defendants' claims that ONgDB was a "drop-in replacement" or "open source" constituted false advertising and false designation of origin.  *Id.* at 28–32.

19.     Third, the Court found that Suhy's removal of the copyright management information ("CMI"), that is, the removal of the Commons Clause and replacement of the Neo4j Sweden Software license with a generic open source APGL license, violated the DMCA.  Second MSJ Order 23.

**E.     Damages**

20.     Given that the Court has determined liability, the only issue remaining is damages. Central to Plaintiffs' claims for damages are offers made to, and rejected by, (1) the Maryland Procurement Office ("MPO"), and (2) the IRS.

**1.     MPO**

21.     The MPO, on behalf of the National Security Agency ("NSA"), tasked third party company Next Century to analyze available graph database technologies for a project referred to as the "KMS Project."  Stip. to the Amount of Pls.' Lost Profits and Defs.' Profits ("Stip. to

Amount") ¶¶ 1, 8, ECF No. 234. The KMS Project was essentially a continuation of prior projects where the MPO had similarly tasked Next Century with analyzing available graph database technologies, including projects referred to as "Task Order 39" and "Blue Rocket Task Order 50." Dep. Designations, Ex. 4, Dep. of Jim Weyant as a Representative of CACI International, Inc. ("Weyant Dep.") 92:23–94:12, 96:4–11, 103:21–104:3, 108:2–19, ECF No. 210.

22.     Next Century was looking for enterprise-only features, such as causal clustering and multi-data centers, which were offered by both Neo4j EE and ONgDB. Stip. to Amount ¶ 2.

23.     In June 2018, Next Century sought information from Neo4j USA regarding certain Neo4j EE features, including causal clustering. Trial Ex. 103, ECF No. 241-27. In response, Neo4j USA confirmed those features required a commercial subscription for Neo4j EE, and the pricing for it was based on the number of servers in the cluster, cores per server, and RAM per server. *Id.* Neo4j USA informed Next Century that their prices started at $111,000 per year for a 3-server cluster with standard support. *Id.* This price rose to $199,000, by April 2019. Trial Ex. 17, ECF No. 239-4.

24.     Next Century obtained additional information about the pricing of Neo4j USA's Neo4j EE software bundles from iGov's website and learned that iGov offered the same software for free under the AGPL bundled with iGov's consulting services. Stip. to Amount ¶ 3.

25.     In October 2018, Next Century exchanged emails with Suhy regarding representations made on iGov's website that ONgDB was an open source version of Neo4j EE that provided the same enterprise-only features for free. *Id.* ¶ 4.

26.     Suhy told Next Century that they could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website. Undisputed Facts ¶ 114.

27.     As a result of Next Century's communications with Suhy, Next Century downloaded ONgDB v3.4 and began evaluating it against Neo4j EE v3.4. *Id.* ¶ 15.

28.     In a series of emails with Next Century ending on January 4, 2019, Suhy confirmed that ONgDB v3.5 would have feature parity with the enterprise features of Neo4j EE v3.5 and

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
7

United States District Court
Northern District of California

1  would also be available without restrictions on the number of clusters, instances, and cores, and

2  without paying Neo4j USA for a commercial license. *Id.* ¶ 16. This led Next Century to upgrade

3  from ONgDB v3.4 to ONgDB v3.5 for use in the KMS Project. *Id.*

4       29. By February 2019, the MPO had chosen to use ONgDB v3.5 over Neo4j EE v3.5

5  for continued development work for the KMS Project. *Id.* ¶ 117. On February 5, 2019, Next

6  Century informed Neo4j USA of this decision, stating, "[w]e have found that open-sourced (non-

7  commercial) builds from the Neo4j source code provide the clustering and security requirements

8  needed in our environment." *Id.* ¶ 118.

9       30. However, Next Century was still researching other graph databases, including

10  Neo4j EE. Weyant Dep. 92:19–25. Next Century and Neo4j USA continued their discussions,

11  and in March 2019, Next Century gave Neo4j USA the required specifications for its ongoing

12  KMS Project and asked Neo4j USA to provide a quote for use in a production environment. Trial

13  Ex. 116, ECF No. 241-40. Although Next Century cautioned that they did not "have a firm grasp

14  on what the (eventual) production posture will be," Next Century provided Neo4j with some

15  information "for now." Trial Ex. 116.

16       31. On April 19, 2019, Neo4j USA sent a 3-year Neo4j EE Enterprise Bundle offer

17  based on those requirements ("April 2019 Offer"). Trial Ex. 118, ECF No. 241-42. Under this

18  proposal, Next Century and the MPO had the option to (a) purchase three one-year subscriptions

19  on an incremental basis for a total of $2,667,000; or (b) purchase a 3-year subscription for a total

20  of $2,266,950, which reflects a 15% multi-year, paid up front discount. *Id.*

21       32. On April 29, 2019, Next Century confirmed that it shared Neo4j USA's proposal

22  with the MPO and was instructed by the MPO to continue using ONgDB. Trial Ex. 119, ECF No.

23  241-43.

24       33. A few months later, as a follow up to a meeting between Neo4j USA and Next

25  Century that occurred in May 2019, Neo4j USA emailed Next Century stating that they were

26  prepared to offer "a more robust capability that provides the same SLA as your Neo4j CE based

27  solution for a much lower price point than what we originally proposed based on your initial stated

28  Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW

requirements." Trial Ex. 120, ECF No. 241-44.

34.    That same day, Next Century informed Neo4j USA that the MPO was not interested in the Neo4j EE proposal for the KMS project. *Id.* The reason for the MPO continuing to use ONgDB over Neo4j EE was price. *Id.*; Stip. to Amount ¶ 101.

35.    The project immediately following the expiration of the KMS Project, referred to as "Route 66," continued on to deploy an ONgDB-based solution, and the subcontracts and renewals that followed continued deploying ONgDB-based solutions until as recently as October 2022. Weyant Dep. 116:25–117:5, 126:12–127:23.

36.    While the MPO declined Neo4j USA's offer in this instance, MPO has purchased six other one-year commercial licenses from Neo4j USA between 2014 and 2022, which ranged from $9,300 to $248,310, as well as one two-year commercial license for $66,249. Trial Ex. 15, at lines 337–43, ECF No. 240.

37.    The Parties stipulated to the calculations as to the profits Neo4j USA would have generated had the MPO accepted their April 2019 Offer as written, which range from $1,786,542 to $2,370,598. Stip. to Amount ¶¶ 21–24.

### 2.    IRS

38.    In April 2018, Suhy submitted a bid for a new contract issued by the IRS for a project referred to as the "CKGE Project" on behalf of eGovernment Solutions, Inc. ("eGov"), another entity that he had an ownership interest in at the time.[4] Under Suhy's proposal, eGov would perform "all operations and maintenance duties for all components of the CKGE framework," including working with Neo4j components. Trial Ex. 181, ECF No. 242-5; Undisputed Facts ¶¶ 61, 62.

39.    In May 2018, the IRS publicly posted an intent to award the sole source contract for the CKGE Project to eGov. Trial Tr. Vol. I 79:20–23, ECF No. 231. Under this contract, eGov would perform all operations and maintenance duties for all components of the CKGE

---

[4] eGov is not a Defendant in this matter.

United States District Court
Northern District of California

1    framework.  Trial Ex. 124, ECF No. 241-48.  At that time, the CKGE Project had been using the

2    publicly available Neo4j EE v3.2.  Dep. Designations, Ex. 5, Dep. of Internal Revenue Service

3    Through its Designee Michael C. Dunn ("Dunn Dep.") 99:3–100:10, ECF No. 210.

4         40.    Neo4j USA saw this public post and emailed the IRS on May 22, 2018.  Trial Ex.

5    126, ECF No. 241-50; Trial Tr. Vol. I 79:20–82:8.  Neo4j USA believed that the CKGE Project

6    would require Neo4j EE v3.4, so they contacted the IRS to inform them of the licensing changes

7    to the Neo4j EE v3.4, namely the addition of the Commons Clause, and encourage them to

8    purchase a commercial license and support services for that license from Neo4j USA.  Trial Tr.

9    Vol. I 81:22–82:8. That same day, Suhy sent an email to the IRS opining that Neo4j Sweden could

10   not lawfully add the Commons Clause to the license governing Neo4j EE v3.4.  Trial Ex. 128,

11   ECF No. 241-52.  The IRS subsequently declined the invitation to purchase the Neo4j EE v3.4

12   license, informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and

13   they would be sticking with the publicly available Neo4j EE v3.2 that they had been using.  Trial

14   Ex. 128; Trial Ex. 131.  However, the IRS welcomed Neo4j USA to provide a demonstration of

15   the 3.4 version for planning purposes.  *Id.*

16        41.    On May 24, 2018, the IRS officially awarded eGov the new contract to further

17   develop and support the CKGE Project.  Trial Ex. 182, ECF No. 242-6; Trial Ex. 183, ECF No.

18   242-7.  The project proceeded using the publicly available Neo4j EE v3.2.  Dunn Dep. 99:3–

19   100:10.

20        42.    In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the

21   Neo4j 3.3.1 CE because, given the amount of users and the demand requirements, "it wasn't

22   necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF

23   No. 241-53. [5]  Suhy responded by suggesting that, instead of switching to Neo4j CE v3.3.1, the

24

25   _____

     [5] The Court took into consideration the Parties' stipulation that the IRS used at least one Neo4j
26   enterprise-only feature, node ID, via ONgDB in CKGE, Stip. to Amount ¶ 41, and weighed that
     fact against the IRS representative's email and testimony stating that they were not seeking
     enterprise features at the time,  Dunn. Dep. 110:11–101:4; Trial Ex. 129, as well as Suhy's
27   testimony consistent with this evidence, Trial Tr. Vol. II 322:5–323:5.  The Court also notes that it
     has considered and rejected Plaintiffs' blanket assertion that Suhy's testimony disagreeing with
28   Case No.: 5:18-cv-07182-EJD

     FINDINGS OF FACT AND CONCLUSIONS OF LAW

IRS should adopt the open fork software managed by eGov for the CKEG project, which was later released as ONgDB. Trial Ex. 129. The IRS accepted Suhy's advice and planned to integrate ONgDB rather than switch to Neo4j CE v3.3.1. Dunn. Dep. 102:3–15.

43. Meanwhile, the IRS had been continuing its discussions with Neo4j USA about Neo4j EE v3.4 "for planning purposes." Trial Ex. 128, 131. After some back and forth, on July 18, 2018, Neo4j USA provided IRS a quote for $156,000 for a one-year Neo4j EE subscription and $397,800 for three years to use in the CKGE Project ("July 2018 Offer"), with the understanding that the IRS was "just looking for budgetary pricing at the moment." Trial Ex. 131, ECF No. 241-55. On July 27, 2018, the IRS replied that the quote was helpful "for planning purposes," but informed Neo4j USA again that they still did not intend to purchase the subscription at that time. *Id.*

44. In August 2018, approximately one month after the IRS had declined to purchase a Neo4j EE v3.4 license for the second time, the IRS followed up on their June 2018 plan to integrate ONgDB instead of Neo4j CE v3.3.1. Trial Ex. 132, ECF No. 241-56. The IRS asked Suhy if it would be easier to switch to ONgDB in the CKGE Project at that time, or if they should wait and deploy the CKGE with Neo4j EE v3.3.2 and then later transition. Trial Ex. 132. Suhy recommended that the IRS integrate ONgDB v3.4 at that time rather than continue using Neo4j EE v3.3.2 in the CKGE framework, claiming that "ONgDB open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc." Trial Ex. 132, 133.

45. Based on Suhy's recommendation, the IRS instructed him to "[g]o ahead and integrate the ONgDB into the CKGE framework we'll deploy" on August 14, 2018. Trial Ex. 133, ECF No. 241-57.

46. The IRS had a team dedicated to supporting ONgDB, and Suhy's contract for the CKGE Project did not specifically require him to provide support for ONgDB. Trial Tr. Vol. II

this, and other stipulated facts, renders him an unreliable witness in all regards. Pls.' FFCL 3 n.1, 9 n.2, 35. The Court will continue to exercise its discretion to give appropriate weight to Suhy's testimony in light of other evidence in the record.

316:16–17; 320:11–321:25.[6]  However, Suhy did provide input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE. *Id.*; Undisputed Facts ¶ 32.

47.    After the Court's preliminary injunction requiring that the IRS remove ONgDB from their servers, the IRS switched back to Neo4j CE.  Trial Tr. Vol. I 277:18–278:14, 280:22.

48.    The Parties stipulated to the calculations as to the profits Neo4j USA would have generated had the IRS accepted their July 2018 Offer as written, along with additional commercial subscriptions for every integration of ONgDB that followed, ranging from $2,646,557 to $3,069,646 in lost profits.  Stip. to Amount ¶¶ 60, 63.

49.    The Parties also stipulated that iGov and Suhy gained $1,316,000 in profits from the IRS under the CKGE Contract, as well as an additional $246,082.55 for work performed under IRS subcontracts.  *Id.* ¶¶ 68, 71.

## II.    CONCLUSIONS OF LAW

The Court previously found Defendants liable under the Lanham Act's prohibition of trademark infringement and false advertising and designation of origin, as well as the DMCA's prohibition of copyright infringement.  *See* First MSJ Order; Second MSJ Order.  Plaintiffs now seek relief in the form of monetary damages under the Lanham Act and the DMCA, as well as a permanent injunction.  Pls.' FFCL.  The Court will address each request below.

### A.    Monetary Damages

Under the Lanham Act, the court may, "in its discretion and subject to the principles of equity," award monetary damages in the form of actual damages, the defendant's illicit profits, and attorneys' fees.  *Jason Scott Collection, Inc. v. Trendily Furniture*, LLC, 68 F.4th 1203, 1220 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550 (2024) (internal quotation marks omitted) (quoting  15 U.S.C. § 1117(a)).  Courts "assess trademark damages in the same manner as tort damages: the

---

[6] The Court weighed the IRS representative's testimony on this point, Dunn Dep. 97:17–98:21, against Suhy's testimony and the other evidence in the record, including Suhy's contract, Trial Ex. 1011, ECF No. 242-37.

reasonably foreseeable harms caused by the wrong." *Id.* (internal quotation marks omitted) (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110, 1113 (9th Cir. 2012)).

To recover actual damages sustained by a plaintiff, the plaintiff must prove both (1) the fact of the damages and (2) the amount of damages. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012); *see also eAdGear, Inc. v. Liu*, No. CV-11-05398 JCS, 2012 WL 2367805, at \*18 (N.D. Cal. June 21, 2012), *report and recommendation adopted*, No. C-11-05398 RMW JCS, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012).  Once the fact of damages is established, plaintiffs are held to a lower standard of proof regarding the exact amount of actual damages. *Skydive Arizona*, 673 F.3d at 1112.

Regarding a defendant's profits, a plaintiff may recover an infringing defendant's profits as a measure of the plaintiff's own damages or on a theory of disgorgement. *Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV14921JGBSPX, 2016 WL 6661175, at \*6 (C.D. Cal. Mar. 17, 2016) (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)).  "[A] trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

Attorneys' fees may be awarded at a court's discretion in "exceptional cases."  15 U.S.C. § 1117(a).  Courts determine whether a case is "exceptional" by examining the totality of the circumstances and "evaluating whether the case is one that stands out from others with respect to the substantive strength of the party's litigating position . . . or the unreasonable manner in which the case was litigated based on a preponderance of the evidence." *Jason Scott Collection*, 68 F.4th at 1223.

Similarly, under the DMCA, a plaintiff may also recover "the actual damages suffered . . . as a result of the violation, and any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages."  17 U.S.C. § 1203(c)(2).  Actual damages may consist of lost licensing fees and renewal fees, as well as lost profits. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004) (affirming an actual damages award based on the copyright holder's actual price quote to the infringer).  A plaintiff

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
13

may also recover hypothetical-license damages as actual damages. *Id*

Here, Plaintiffs argue that Defendants' trademark infringement, false advertising and false designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing contracts with, and caused Defendants to gain illicit profits from, the MPO and the IRS.[7] Plaintiffs also argue that Defendants' conduct makes this case "exceptional" and gives rise to attorneys' fees and prejudgment interest.

The Court will address in turn Plaintiffs' requests for monetary damages regarding: (1) the MPO offer, (2) the IRS offer, (3) attorneys' fees, and (4) prejudgment interest. Where the Court finds monetary damages appropriate, the Court will also address Defendants' argument that any award should be reduced pursuant to the DMCA's innocent copyright infringer defense.

### 1. MPO

Plaintiffs argue that Defendants' trademark infringement, false advertising and false designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing revenue after the MPO rejected their April 2019 Offer for a Neo4j EE commercial license subscription and instead adopted ONgDB for free. *See* Pls.' FFCL 29–31. Plaintiffs seek an award of $2,370,598 in lost licensing revenue. *Id.* at 30. Given that Defendants did not generate any profit from these circumstances, Plaintiffs do not seek damages in the form of Defendants' illicit profits. *See id.* at 29–31.

To reiterate, in order to recover actual damages, Plaintiffs must prove both (1) the fact of the damages and (2) the amount of damages. *Skydive Arizona*, 673 F.3d at 1112. Once the fact of damages is established, plaintiffs are held to a lower standard of proof regarding the exact amount of actual damages. *Id.*

For the reasons explained below, the Court finds that, although there is evidence that Defendants' conduct caused the MPO to integrate ONgDB v3.5 for free rather than pay for a Neo4j EE commercial license, there is insufficient evidence to show that the MPO would have

---

[7] Plaintiffs' briefing does not request independent damages for the unfair competition claims. *See* Pls.' FFCL 28.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
14

accepted the specific prices quoted in Plaintiffs' April 2019 Offer but for Defendants' conduct.

### a.   Fact of Damages

The Court finds that Defendants' (1) trademark infringement, (2) false advertising and designation of origin, and (3) copyright infringement caused Neo4j USA damages in the form of lost licensing revenue from the MPO.

<u>First</u>, the evidence shows that Defendants' trademark infringement violation contributed to the MPO choosing ONgDB over Neo4j EE.

The Court previously found that the following conduct was likely to create customer confusion and thus gave rise to trademark infringement: (1) marketing without proper trademark notices products called "Neo4j Enterprise" and "Government Package for Neo4j" to create the misleading perception that Defendants' products were Plaintiffs' products; (2) using the Neo4j Mark in their URLs and email addresses; (3) using embedded "Neo4j" links to Neo4j USA's website and GitHub repository on their websites; (4) hyperlinking to Plaintiffs' build instructions, support documentation and change logs containing the Neo4j Mark rather than creating and hosting their own with the ONgDB name; and (5) using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites.  First MSJ Order 19–22.

Here, the KMS Project required the enterprise features found in both Neo4j EE and ONgDB.  Undisputed Facts ¶ 111.  The MPO learned about the pricing of Neo4j Enterprise software bundles offered by Neo4j USA and iGov from iGov's website, and subsequently exchanged emails with Suhy regarding representations made on iGov's website that ONgDB was an open source version of Neo4j EE that provided the same enterprise-only features for free.  *Id.* ¶¶ 3, 4.  Suhy also informed Next Century that the MPO could use ONgDB under the AGPL without restrictions or paying Plaintiffs for a commercial license, as advertised on the iGov's website.  *Id.* ¶ 5.  As a result of Next Century's communications with Suhy, Next Century downloaded ONgDB v3.4 and began evaluating against Neo4j EE v3.4.  *Id.* ¶ 6.  The MPO subsequently chose to integrate ONgDB v3.4 for free instead of Neo4j EE v3.4, and later upgraded to ONgDB v3.5 instead of purchasing Neo4j EE v3.5.  *Id.*  This series of events makes clear that

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
15

United States District Court
Northern District of California

1  the trademark infringements on iGov's website led to the MPO learning of ONgDB and ultimately

2  choosing ONgDB v3.5 over Neo4j EE v3.5.

3      Second, the evidence shows that Defendants' false advertising and false designation of

4  origin violation contributed to the MPO choosing to integrate ONgDB over Neo4j EE.

5      The Court previously found that Defendants' characterization of ONgDB as a "drop-in

6  replacement" and "open source" are material statements that were false or likely to mislead

7  consumers. First MSJ Order 28–32.

8      Here, for similar reasons, the Court finds that Defendants' advertisement of ONgDB to

9  Next Century as a "drop-in replacement" and "open source" contributed to the MPO integrating

10  ONgDB rather than Neo4j EE. As discussed above, the KMS Project required the enterprise

11  features found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part on

12  the belief that it was a "drop-in replacement" and "open source" version of Neo4j EE. Undisputed

13  Facts ¶ 111.

14      Third, the evidence shows that Defendants' DMCA violation contributed to the MPO

15  choosing ONgDB over Neo4j EE.

16      The Court previously found that Defendants' removal of the Commons Clause and

17  replacement of the Neo4j Sweden Software license with a generic open source APGL license

18  violated the DMCA. Second MSJ Order 16–24.

19      Again here, the evidence shows that the KMS Project required the enterprise features

20  found in both Neo4j EE and ONgDB, and the MPO ultimately chose ONgDB in part because it

21  offered the same features as Neo4j EE, but for free. Because Defendants' removal of the

22  Commons Clause allowed the MPO to use ONgDB v3.5 for free rather than pay for a Neo4j EE

23  v3.5 commercial license, the DMCA violation necessarily contributed to the MPO choosing

24  ONgDB over Neo4j EE.

25      Based on the foregoing, the Court finds sufficient evidence that Defendants' Lanham Act

26  and DMCA violations caused the MPO to implement ONgDB instead of purchasing a commercial

27  license from Neo4j USA.

28  Case No.: 5:18-cv-07182-EJD
    FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

**b.      Amount of Damages**

While Plaintiffs have proven the fact of damages, the Court finds the evidence insufficient to establish that this conduct caused Plaintiffs to lose $2,370,598 in potential licensing revenue. However, the Court finds sufficient evidence to show that the MPO would have accepted an offer for a lesser amount.

**i.      Insufficient Evidence to Support Damages Requested**

Most notably, the evidence shows that the April 2019 Offer was not final.  When Next Century provided the information to generate the April 2019 quote, they informed Neo4j USA that they did not "have a firm grasp on what the (eventual) production posture will be," but provided Neo4j with some information "for now."  Trial Ex. 116, ECF No. 241-40.  A few months later, after a meeting between Neo4j USA and Next Century, Neo4j USA emailed Next Century stating that they were prepared to offer a "much lower" quote—in Neo4j USA representative's own words, Neo4jUSA was willing to offer "a more robust capability that provides the same SLA as your Neo4j CE based solution for a *much lower price* point than what we originally proposed based on your initial stated requirements."  Trial Ex. 120 (emphasis added).  Plaintiffs have provided no evidence for the Court to presume what amount this new quote may have been.

Further, there is no evidence that the MPO had the budget to accept the April 2019 Offer for the KMS Project; to the contrary, the only evidence regarding funding is evidence showing that the MPO's prior similar projects with Next Century never budgeted for a commercial license.  Weyant Dep. 30:6–17, 37:6–13, 67:11–21, 92:23–94:12, 96:4–11, 108:2–19, 103:21–104:3.

Finally, while the Parties' stipulation states that the MPO's willingness to purchase a commercial license for Neo4j EE for the KMS Project is supported by its history of purchasing other Neo4j EE commercial licenses, the Court finds this support tenuous.  It is true that the MPO has a history of purchasing Neo4j EE commercial licenses, and this fact serves to support Plaintiffs' argument.  Undisputed Facts ¶ 18.  However, there is a significant price disparity between the licenses purchased and the April 2019 Offer.  The evidence shows that between 2014 and 2022, the MPO purchased six one-year commercial licenses from Neo4j USA, which ranged

United States District Court
Northern District of California

from $9,300 to $248,310, as well as one two-year commercial license for $66,249. Trial Ex. 15, at lines 337–43. In total, the MPO has spent $929,208.00 in various licenses across the course of eight years. But here, the April 2019 Offer gave the MPO the option to purchase three one-year subscriptions for a total of $2,667,000 or purchase a three-year subscription for a total of $2,266,950. Undisputed Facts ¶ 17. There is no evidence of any comparable purchases or other evidence of the MPO's budget which would support Plaintiffs' argument that the MPO had the ability to accept a multi-million dollar licensing package. Considering this extreme price disparity, there is insufficient evidence to support the damages sought by Plaintiffs.

Together, these facts demonstrate the lack of evidence sufficient to show that the MPO would have accepted the April 2019 Offer as written but for Defendants' conduct. While Plaintiffs are correct that the Court had previously found that the circumstances surrounding the April 2019 Offer gave rise to a presumption of injury under the Lanham Act, the Court cannot presume that Plaintiffs would have generated over two million dollars in revenue given these facts.[8]

### ii. Sufficient Evidence to Show Lesser Amount of Damages

However, Plaintiffs are correct that they have a lower burden of proof in calculating the exact amount of actual damages here. *Skydive Arizona*, 673 F.3d at 1112. Calculations need not rely on, for example, empirical quantification or expert testimony—they must only be supported by "reasonable inferences and assessments, based upon substantial evidence in the record." *Id.* at 1113. While there is insufficient evidence to establish that the MPO would have accepted the April 2019 Offer as written, the evidence of other purchases and the ongoing negotiations does support a conclusion that the MPO would have been more likely to accept an offer of a lower amount but for Defendants' conduct.

---

[8] To clarify, the Court did not make a finding as to the specific amount of actual damages incurred by the loss of the MPO contract in its First MSJ Order, as Plaintiffs argue. *See* Pls.' FFCL 22. While the Court found that Plaintiffs provided evidence sufficient to show an injury arising from Defendants' Lanham Act violations, the issue of calculating monetary damages was not presented before the Court at that time. First MSJ Order 16.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
18

Aside from Neo4j USA's multi-million dollar offer, the only other estimate in the evidence is in Neo4j USA's initial communications with Next Century in June 2018, where Neo4j USA informed Next Century that the Enterprise Edition bundles started at $111,000 per year for a 3-server cluster with standard support.  Trial Ex. 103.  By the time Neo4j USA made its April 2019 Offer, this starting bundle price rose to $199,000, with optional add-ons for an increased price.  Trial Ex. 17.  This number is also reflected in the breakdown of Neo4j USA's April 2019 Offer.  Trial Ex. 118.

The Court finds sufficient evidence to show that the MPO would have at least purchased this starting bundle for $199,000 but for Defendants' conduct.  This price reflects the lowest possible bundle price, therefore even a "much lower quote" would not have fell below this amount.  *See* Steven Boyles Expert Report, Trial Ex. 209, Expert Report of Steven B. Boyles, at 41 n.169, ECF No. 244-3.  This price also falls within the range of other licenses that the MPO has purchased from Neo4j USA, and it is an amount that could have conceivably been allocated from Next Century's awards in similar prior projects.  Trial Ex. 15, at lines 337–43; Weyant Dep. 30:6–17.  The Court notes that it cannot be certain whether this base configuration would have ultimately been enough to fit the MPO's specific needs for the KMS Project—it is possible that the KMS Project required additional servers or machines; but as discussed above, there is no evidence regarding exactly what the MPO required beyond the base package given Neo4j USA's email indicating that the specifications used for the April 2019 quote had changed.

Finding that the evidence shows the MPO likely would have purchased, at a minimum, the starting bundle for $199,000 but for Defendants' conduct, the Court now considers how many years of that subscription the MPO would have purchased.  Neo4j USA's April 2019 offer was limited to the KMS Project, which terminated in September 2019, and Neo4jUSA did not make any additional offers.  *See* Trial Ex. 103.  However, the evidence also shows that the project immediately following the expiration of the KMS Project, referred to as "Route 66," continued on to deploy an ONgDB-based solution, and the subcontracts and renewals that followed continued deploying ONgDB-based solutions until as recently as October 2022.  Weyant Dep. 116:25–117:5,

126:12–127:23.[9]  There is also evidence that the MPO has historically renewed other Neo4j EE license subscriptions.  Trial Ex. 15, at lines 337–43.  Taken together, the evidence supports a finding that, if the MPO had implemented a Neo4j EE subscription in the KMS Project, the projects immediately following would have done the same until October 2022; thus, the MPO would have renewed this contract for at least three years following the April 2019 Offer for a total of $597,000.

Therefore, in consideration of Plaintiffs' lower burden of proof in calculating the exact amount of actual damages, *Skydive Arizona*, 673 F.3d at 1112, the Court exercises its discretion in evaluating the evidence and equities and awards $597,000 in actual damages.

### c.    Innocent Infringer

Defendants argue that any monetary award should be reduced or remitted because Suhy's DMCA violation was "innocent" pursuant to 17 U.S.C. § 1203(c).  Defs.' FFCL 11.  Defendants argue that Suhy had no reason to believe that removing the Commons Clause would violate the DMCA, highlighting that Suhy read the AGPL license, studied information, and spoke with the Free Software Foundation, the copyright holder of the AGPL, which confirmed that the addition could be removed.  *Id.*

The Court finds Defendants' arguments irrelevant to its award of damages here.  The Court found that the actual damages arising out of the lost MPO contract was the result of not only Defendants' DMCA violation, but also Defendants' violation of the Lanham Act.  Thus, even if the Court were to find that Suhy was an innocent copyright infringer because he believed he could lawfully remove the Commons Clause, this would not alter the actual damages award arising from the Lanham Act violations.  Therefore, the Court finds it unnecessary to address Defendants' DMCA innocent copyright infringer arguments.

* * *

---

[9] While the MPO increased the number of servers and machines once ONgDB was placed into production, there is no evidence that this increase met or exceeded the specifications in Neo4j USA's April 2019 Offer.  Weyant Dep. 118:7–24.

United States District Court
Northern District of California

The Court finds that Plaintiffs have provided evidence sufficient to show the fact of damages, but not sufficient to show the amount Plaintiffs requested. Therefore, the Court exercises its discretion to award Plaintiffs $597,000 in actual damages.

### 2. IRS

Plaintiffs argue that Suhy's trademark infringement, false advertising and false designation of origin, and copyright infringement caused Plaintiffs to lose potential licensing revenue after the IRS rejected their July 2018 Offer for a Neo4j EE v§3.4 commercial subscription and instead adopted ONgDB for free. Pls.' FFCL 30. Plaintiffs seek an award of $3,069,646 in potential licensing revenue, as well as $1,562,082.55 in Defendants' illicit profits. *Id.* at 31.

Again here, to recover actual damages, Plaintiffs must prove both (1) the fact of the damages and (2) the amount of damages. *Skydive Arizona*, 673 F.3d at 1112.

For the reasons explained below, the Court finds that Plaintiffs fail at the first step—there is insufficient evidence to show that Suhy's conduct caused Plaintiffs to lose potential licensing revenue or caused Suhy to gain illicit profits.

### a. Fact of Damages

The Court finds insufficient evidence to show that Defendants' (1) trademark infringement, (2) false advertising and designation of origin, or (3) copyright infringement caused Neo4j USA damages in the form of lost licensing revenue from the IRS.

First, the Court finds insufficient evidence to show that Suhy's trademark infringement contributed to Plaintiffs losing potential licensing revenue from their July 2018 Offer.

There is simply no evidence that the IRS ever came across or experienced the online conduct that the Court found constituted trademark infringement, i.e., marketing "Neo4j Enterprise" and "Government Package for Neo4j" without proper trademark notices; using the Neo4j Mark in their URLs and email addresses; using embedded "Neo4j" links on their websites; hyperlinking to Plaintiffs' materials containing the Neo4j Mark; or using of "Neo4j Enterprise" and "ONgDB" interchangeably to promote ONgDB on their websites. First MSJ Order 19–22. For those same reasons, the Court finds that there is no evidence to show that Suhy and eGov were

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
21

United States District Court
Northern District of California

1    awarded their contract due to any of the conduct the Court found gave rise to trademark

2    infringement.

3           Second, the Court finds insufficient evidence to show that Suhy's false advertising and

4    false designation of origin violation contributed to Plaintiffs losing potential licensing revenue

5    from their July 2018 Offer.

6           Plaintiffs argue that Suhy's characterization of ONgDB as an "open source license" that

7    "come[s] directly from the Graph Foundation" caused the IRS to reject their July 2018 Offer. *See*

8    Pls.' FFCL 29–30.  However, the evidence shows that Suhy made these statements months after

9    the IRS had already rejected Neo4j USA's July 2018 Offer, and more importantly, these

10   statements were made to convince the IRS to integrate ONgDB instead of another open source

11   Neo4j CE license, not Neo4j EE v3.4.

12          A brief reiteration of the relevant timeline will aid the Court's discussion on this point.

13   *May 2018*

14          In May 2018, the IRS publicly posted an intent to award the sole source contract for the

15   CKGE Project to eGov.  Trial Tr. Vol. I 79:20–23.  At that time, the CKGE Project had been using

16   the publicly available Neo4j EE v3.2.  Dunn Dep. 99:3–100:10, ECF No. 210, Ex. 5.  Neo4j USA

17   saw this public post and emailed the IRS.  Trial Ex. 126; Trial Tr. Vol. I 79:20–82:8.  Neo4j USA

18   believed that the CKGE Project would require Neo4j EE v3.4, so they informed the IRS of the

19   licensing changes to Neo4j EE v3.4, namely the addition of the Commons Clause, and encouraged

20   them to purchase a commercial license and support services from Neo4j USA.  Trial Tr. Vol. I

21   81:22–82:8.  That same day, Suhy contacted the IRS to share his opinion that Neo4j Sweden was

22   not permitted to add the Commons Clause to the license governing Neo4j EE v3.4.  Trial Ex. 128.

23   The following day, the IRS declined the invitation to purchase the Neo4j EE v3.4 license,

24   informing Neo4j USA that their budget was "extraordinarily limited in all avenues," and they

25   would be sticking with the publicly available Neo4j EE v3.2 that they had been using.  Trial Ex.

26   128; Trial Ex. 131.  However, the IRS welcomed Neo4j USA to provide a demonstration of Neo4j

27   EE 3.4 for planning purposes.  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    On May 24, 2018, the IRS carried forward with its plan to award eGov the contract for the

2    CKGE Project.  Trial Ex. 182; Trial Ex. 183.  The project proceeded using the publicly available

3    Neo4j EE v3.2.  Dunn Dep. 99:3–100:10.

4        *June 2018*

5        In June 2018, the IRS had asked Suhy about switching from Neo4j EE v3.2 to the Neo4j

6    3.3.1 CE (the open-source community edition) because, given the amount of users and the demand

7    requirements, "it wasn't necessary to have any of the Enterprise features."  Dunn. Dep. 110:11–

8    101:4.  Suhy suggested that the IRS should adopt the open fork software managed by eGov for the

9    CKEG project, later released as ONgDB, instead of switching to Neo4j CE 3.3.1.  Trial Ex. 129.

10   The IRS ultimately followed Suhy's advice and made a plan to integrate what would later be

11   called ONgDB.  Dunn. Dep. 102:3–15.

12       *July 2018*

13       Meanwhile, the IRS had been continuing its discussions with Neo4j USA about Neo4j EE

14   v3.4 "for planning purposes."  Trial Ex. 128, 131.  After some back and forth, Neo4j USA

15   provided its July 2018 Offer, with the understanding that the IRS was "just looking for budgetary

16   pricing at the moment."  Trial Ex. 131.  On July 27, 2018, the IRS replied that the quote was

17   helpful "for planning purposes," but informed Neo4j again that they still did not intend to follow

18   up with a new acquisition at that time.  Trial Ex. 131.

19       *August 2018*

20       In August 2018, approximately one month after the IRS declined to purchase a Neo4j EE

21   v3.4 license for the second time, the IRS revisited its June 2018 plan to integrate ONgDB instead

22   of Neo4j CE v3.3.1.  Trial Ex. 132.  When asked about when to integrate ONgDB, Suhy

23   recommended that the IRS integrate ONgDB v3.4 sooner rather than later, claiming that "ONgDB

24   open source licenses come directly from the Graph Foundation as well, not from Neo4j Inc."  Trial

25   Ex. 132, 133.  The Court later found that this statement constituted false advertising and false

26   designation of origin.  First MSJ Order 28–32.  Based on Suhy's recommendation, the IRS

27   instructed him to integrate the ONgDB into the CKGE framework on August 14, 2018.  Trial Ex.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW

133.

The evidence clearly shows that Suhy's representations caused the IRS to integrate ONgDB; however, the evidence also shows that the IRS chose ONgDB over Neo4j *CE v3.3.1*, not Neo4j *EE v3.4*.[10] The IRS did not need Neo4j v3.4 features for the CKGE Project—they were considering a switch to the free and publicly available Community Edition software when Suhy recommended ONgDB. Dunn. Dep. 110:11–101:4; Trial Ex. 129, ECF No. 241-53. And notably, since removing ONgDB after the Court's preliminary injunction, the IRS has returned to the Community Edition across the board with no evidence of any issues or need for additional features. Trial Tr. Vol. I 277:18–278:14, 280:22. While the IRS invited Neo4j USA to demonstrate Neo4j EE v3.4, the evidence shows that this invitation was to gain information "for planning purposes." Trial Ex. 131. Neo4j USA understood that the IRS was merely looking for "budgetary pricing" when it allowed Neo4j USA to demo the software for them and provide a quote. *Id.*

The Court also finds the evidence insufficient to prove that Defendants' profits from the CKEG contract were the result of his statements. Suhy's contract for the CKGE Project did not require him to provide support for ONgDB—the IRS had a team dedicated to supporting ONgDB. Trial Tr. Vol. II 316:16–17; 320:11–321:25. While Suhy voluntarily provided input in the architecture design and hardware requirements needed to run ONgDB installations on multiple servers within the CKGE, his income from the project was not dependent on that support. *Id.* Even if Suhy was required under his contract to provide the support services for whichever

---

[10] The Court notes that, pursuant to Rule 52, it reached its conclusion by weighing the Parties' stipulation that the IRS decided to not allocate $156,000 for a license to use Neo4j EE in the CKGE platform because ONgDB was a free and open, unrestricted alternative, with the other evidence cited to in this section. *See, e.g., In re Jagar*, No. 13-46850 CN, 2015 WL 4327902, at *1 (Bankr. N.D. Cal. July 15, 2015), *aff'd*, No. 4:14-AP-04037-CN, 2017 WL 1371297 (B.A.P. 9th Cir. Apr. 12, 2017), *aff'd*, 742 F. App'x 310 (9th Cir. 2018) ("When considering a Rule 52(c) motion, this court must take an unbiased view of all of the evidence, direct and circumstantial, and accord it such weight as the court believes it is entitled to receive.") (internal quotation marks omitted); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002) (stating that it is the obligation of the trier of fact to resolve conflicting evidence).

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
24

United States District Court
Northern District of California

1    software the IRS chose, the Court reiterates that the IRS was considering ONgDB and Neo4j *CE*

2    *v3.3.1*, thus Suhy would have been able to provide support to both, as Neo4j CE was a publicly

3    available software.

4           Third, the Court finds insufficient evidence to show that Suhy's DMCA violation, that is,

5    his removal of the Commons Clause, contributed to Plaintiffs losing potential licensing revenue

6    from their July 2018 Offer.  Again here, the evidence clearly shows that the IRS did not need the

7    enterprise features.  Dunn. Dep. 110:11–101:4.[11]  Thus, for all the reasons described above, the

8    evidence does not support Plaintiffs' argument that Suhy's profits resulted from his removal of the

9    Commons Clause in ONgDB v3.5.

10                        **b.      Amount of Damages**

11          Because the Court finds insufficient evidence to show the fact of damages, the Court finds

12   it unnecessary to address the Parties' arguments regarding the amount of damages.

13                                        * * *

14          The Court finds that Plaintiffs have failed to provide sufficient evidence to show the fact of

15   damages resulting from their July 2018 Offer.  Therefore, the Court awards no damages as to the

16   July 2018 Offer.

17                    **3.      Attorneys' Fees**

18          Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award

19   reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  Similarly, the DMCA

20   provides in relevant part that "the court may . . . award a reasonable attorney's fee to the prevailing

21   party as part of the costs."  17 U.S.C. § 505.  An "exceptional" case under either statute "is simply

22   one that stands out from others" where there is a showing "that a defendant engaged in malicious,

23   fraudulent, deliberate or willful infringement."  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839

24

25   ───────────────
     [11] Again here, the Court took into consideration the Parties' stipulation that Defendants' removal
26   of the Commons Clause from the license governing ONgDB enabled the IRS to use ONgDB for
     free rather than pay for a commercial license to Neo4j EE,  Stip. to Amount ¶ 48, and weighed that
27   fact against the IRS representative's email and testimony stating that they were not seeking
     enterprise features at the time.  Dunn. Dep. 110:11–101:4; Trial Ex. 129.

28   Case No.: 5:18-cv-07182-EJD
     FINDINGS OF FACT AND CONCLUSIONS OF LAW
                                    25

United States District Court
Northern District of California

F.3d 1179, 1180 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993), *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218)); *see also, e.g., Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023); *Dish Network, L.L.C. v. SatFTA*, No. 5:08-CV-01561 JF PSG, 2011 WL 856268, at *7 (N.D. Cal. Mar. 9, 2011). Courts "should examine the totality of the circumstances to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth*, 839 F.3d at 1181 (internal quotation marks omitted) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (internal quotation marks omitted) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Courts generally understand the term "exceptional" to mean cases in which the infringement can be characterized as "malicious, fraudulent, deliberate or willful." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). But ultimately, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the[se] considerations." *Fogerty*, 510 U.S. at 534 (internal quotation marks omitted).

Here, Plaintiffs argue that this is an "exceptional" case because Defendants' violations of the Lanham Act and the DMCA were willful. In support, Plaintiffs highlight the Court's prior findings that Defendants' use of the Neo4j Mark created the misleading perception that Defendants' products were Plaintiffs' products, Defendants' statements that ONgDB was "open source" and a "drop in replacement" were false, and that Defendants' removal of the Commons Clause was unlawful under Neo4j USA's copyright. Pls.' FFCL 31–32. Plaintiffs also argue that Defendants litigated this case in an unreasonable manner by repeatedly reasserting legal arguments, claims, and defenses that the Court previously dismissed with prejudice or otherwise

United States District Court
Northern District of California

1 determined to be meritless. *Id.* at 33–34.

2    Upon consideration of the totality of the circumstances and the factors referenced in

3 *SunEarth*, the Court finds that this is not an "exceptional" case warranting attorneys' fees.

4    First, while some of Defendants' conduct in this case could be considered frivolous, such

5 as re-litigating settled issues or raising affirmative defenses without a proper basis, the Court does

6 not find this conduct egregious enough to be considered "exceptional." *See, e.g., TransPerfect*

7 *Glob., Inc. v. MotionPoint Corp.*, No. C 10-2590 CW, 2014 WL 6068384, at *8 (N.D. Cal. Nov.

8 13, 2014) (finding "frivolous arguments" and other missteps, only some of which were

9 inadvertent, too minor to justify a fee award).

10    Next, the evidence shows that Suhy's conduct was largely motivated by his belief in the

11 freedom and liberty of open-source software rather than financial or other motivation. Trial Tr.

12 Vol. II 251:11–21; 299:25–17. As the Court discussed above, Suhy did not make any financial

13 gains from his interactions with the MPO, and the IRS's choice between Neo4j CE or ONgDB did

14 not impact his ability to continue his work with the IRS.

15    Further, while some of Defendants' arguments in this case, as noted above, were objectively

16 unreasonable, the Court observes that this case dealt with issues lacking the benefit of a body of

17 established case law to guide Defendants' conduct or litigation strategy, particularly the legal

18 implications of removing a Commons Clause. Thus, Defendants' conduct, when viewed in the

19 totality of the limited legal landscape surrounding this case, does not make this case "exceptional."

20    Moreover, the Court weighs the equities and finds that the monetary award of $597,000

21 plus the prejudgment interest and injunctive relief described below is sufficient to advance

22 considerations of compensation and deterrence.

23    Finally, the Court is unpersuaded by Plaintiffs' arguments that the conduct here constitutes

24 "exceptional" malicious, fraudulent, deliberate or willful infringement. Plaintiffs' reliance on the

25 Court's findings that Defendants violated the Lanham Act and the DMCA does not aid the Court

26 in its analysis here—liability does not automatically trigger an award of attorneys' fees.

27    In consideration of the above, the Court finds that Plaintiffs have failed to show that this

28

case "stands out" from others and denies Plaintiffs' request for attorneys' fees.

Given that the Court has not awarded attorneys' fees, the Court finds it unnecessary to address Plaintiffs' remaining arguments regarding whether Defendants' counsel should be held jointly and severally liable for those fees.

### 4. Prejudgment Interest

"An award of pre-judgment interest in a case under federal law is left to the sound discretion of the trial court." *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1310 (9th Cir. 1982). "Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *United States v. Cal. State Bd. of Equalization,* 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd mem.*, 456 U.S. 901 (1982) (citation omitted). Courts may, in their discretion, award prejudgment interest under the DMCA if necessary "to effectuate the legislative purpose of making copyright holders whole and removing incentives for copyright infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716–18 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004). Although not specifically provided in the statute, Courts may also award prejudgment interest under the Lanham Act under the federal common law, which "authorizes the award of such interest in appropriate cases to victims of violations of federal law." *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, No. CV 03-992-AJW, 2010 WL 2132378, at *1 (CD. Cal. May 24, 2010) (quoting *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)).

Here, the Court exercises its discretion and awards prejudgment interest on the $597,000 award using the agreed-upon treasury-bill rate. *See* Stip. to Amount 1 (stipulating to Mr. Boyles's interest calculations); *see also S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1083 (9th Cir. 2010) ("The treasury-bill rate is the rate typically used in most cases for prejudgment interest calculation."). The Court finds prejudgment interest appropriate under these circumstances to make Plaintiffs whole and remove incentives for any future infringement.

The Court grants Plaintiffs leave to provide a declaration from Mr. Boyles on the final

prejudgment interest calculations pursuant to the Parties' stipulated method and in accordance with this Order by **August 5, 2024**.

### B. Injunctive Relief

Under the Lanham Act, a district court has the power to grant injunctions according to the rules of equity and to prevent the violation of a trademark holder's rights. 15 U.S.C. §§ 1116(a), 1125(a); *see also Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 939, 948 (9th Cir. 2002); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997). The Lanham Act entitles a trademark owner to an injunction if the owner's rights are being violated. *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1094 (N.D. Cal. 2008); *see also Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180–81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). The DMCA also permits the Court to "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" of Section 1202(b). 17 U.S.C. §§ 502(a), 1203(b)(1).

Here, the Court had previously granted a preliminary injunction upon finding that Plaintiffs established a likelihood of success on the merits. First MSJ Order 32–34. The Ninth Circuit affirmed the Court's ruling. *Neo4j, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037 (9th Cir. Mar. 14, 2022). Now, Plaintiffs have proven success on the merits, and Defendants consent to a permanent injunction. Def.'s FFCL 10. Therefore, the Court finds good cause to convert the preliminary injunctions entered in this action into a permanent injunction.

## III. CONCLUSIONS AND ORDERS

The Court **AWARDS** $597,000 in actual damages, subject to prejudgment interest. All other requests for damages and attorneys' fees are **DENIED**.

Plaintiffs are **ORDERED** to provide the Court an amended proposed judgment and revised prejudgment interest calculations consistent with the Court's Findings of Fact and Conclusions of Law by **August 5, 2024**.

The Court **GRANTS** Plaintiffs' unopposed request for a permanent injunction.

Case No.: 5:18-cv-07182-EJD
FINDINGS OF FACT AND CONCLUSIONS OF LAW
29

United States District Court
Northern District of California

Accordingly, consistent with the prior preliminary injunctions, *see* First MSJ Order; Second MSJ Order, Defendants are **HEREBY ENJOINED** from the following:

(1)     Infringing U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j Mark").

(2)     Advertising, promoting, representing or referring to ONgDB as a free and open source drop-in replacement of Neo4j Enterprise Edition distributions with the same version number, and any similar statement that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

(3)     Advertising, promoting, representing, or referring to Neo4 Enterprise or Neo4j Enterprise Edition being released only under the AGPL.

(4)     Representing that Neo4j Sweden AB's addition of the Commons Clause to the license governing Neo4j Enterprise Edition violated the terms of AGPL or that removal of the Commons Clause is lawful, and similar statements.

(5)     Advertising, displaying or distributing products, literature or any other materials that use the Neo4j Mark to advertise or promote ONgDB in any way that suggests sponsorship or endorsement by Neo4j USA or Neo4j Sweden or that may lead consumers to believe that ONgDB is a Neo4j USA or Neo4j Sweden product, or is identical to a Neo4j USA or Neo4j Sweden product.

(6)     Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Neo4j products and from offering such goods in commerce.

(7)     Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in Paragraphs 1-6 above.

(8)     Making further use of or fork any source code first released under the Neo4j Sweden

United States District Court
Northern District of California

Case 5:18-cv-07182-EJD   Document 263-2   Filed 07/22/24   Page 32 of 34

Software License, including Neo4j EE v3.4, Neo4j EE v3.5, or any subsequent versions, subversions or derivatives thereof.

(9)   Making further use of or fork any source code first released under a commercial license, including Neo4j EE v3.5, Neo4j EE v4.x, Neo4j EE 5.x, or any subsequent versions, subversions or derivatives thereof.

(10)  Offering for sale, advertising or promoting ONgDB, GraphStack GDB and GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License.

(11)  Stating, claiming, advertising, or representing that Neo4j Sweden AB's inclusion of the Commons Clause to the license governing Neo4j EE violated the terms of the GNU Affero General Public License, version 3 ("AGPLv3"), or make similar statements interpreting the terms of the AGPLv3.

(12)  Stating, claiming, advertising, or representing that the Free Software Foundation ("FSF") or that any government agency determined and/or confirmed that (a) the inclusion of the Commons Clause to any license governing Neo4j EE violated the terms of AGPLv3; and/or (b) the Commons Clause can be removed from any software license governing Neo4j EE and/or ONgDB.

(13)  Offering for sale or providing for any paid development, support, maintenance or hosting services for ONgDB, GraphStack GDB, GDB (and any derivative or similar software created and/or maintained by Defendants), or any other software containing Neo4j EE source code with a DMCA Violation or that was first released subject to the Neo4j Sweden Software License. However, nothing herein prevents Defendants from offering paid consulting services for installations of Neo4j EE software, but only where the customer receiving such services has a commercial license and has fully paid the commercial license fees to Plaintiffs.

(14)  Making any statement and/or representations to any third party, affirmatively or in

response to an inquiry, that state or imply that they can provide access to or can obtain any software containing any Neo4j EE source code with a DMCA Violation, that is subject to the Neo4j Sweden Software License, or not otherwise permitted for use by this Order.

(15) Having any expressed or implied license to use and making any further use of any of Plaintiffs' source code, object code, machine code and software that is subject to a commercial license or paid commercial subscription, including but not limited to Neo4j EE v3.4, and all versions and subversions thereof; Neo4j EE v3.5, and all versions and subversions thereof; Neo4j EE v4.x, and all versions and subversions thereof; and Neo4j EE v5.x, and all versions and subversions thereof. Nothing herein, however, restricts Defendants from purchasing a commercial license or subscription to Neo4j EE software from Plaintiffs or their authorized resellers.

(16) Defendants may only make further use of the following publicly available Neo4j open source code, subject to the terms of their respective open source licenses: (i) Neo4j CE Source Code under the GNU General Public License, v3 ("GPL"); (ii) Neo4j EE v3.2.14 source code released under the AGPLv3; (iii) Neo4j EE v3.3.10 source code released under the AGPLv3; (iv) Neo4j EE v3.4.0.RC02 source code released under the AGPLv3. Nothing herein, however, shall be construed as a license or otherwise permit Defendants to use any source code, patches or source code commits for Neo4j EE v3.3 or Neo4j EE v3.4 that were first released under the Neo4j Sweden Software License. Further, nothing herein shall be construed as a license or otherwise permit Defendants to use or fork, any of Plaintiffs' source code that was first released as Neo4j EE v3.5 or otherwise under the Neo4j Sweden Software License, including but not limited to, all beta releases, release candidates, production releases, stable releases, and official releases, or any subsequent versions, subversions, patches or derivatives thereof.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: July 22, 2024

EDWARD J. DAVILA
United States District Judge