**SPENCER FANE LLP**
John V. Picone III, CA Bar No. 187226
jpicone@spencerfane.com
Jeffrey M. Ratinoff, CA Bar No. 197241
jratinoff@spencerfane.com
225 West Santa Clara Street
Suite 1500
San Jose, California 95113
Telephone:   408.286.5100
Facsimile:   408.286.5722

Attorneys for Plaintiffs and Counter-Defendants
NEO4J, INC. and NEO4J SWEDEN AB

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation; NEO4J SWEDEN, AB,<br><br>*Plaintiffs*,<br><br>v.<br><br>PURETHINK LLC, a Delaware limited liability company; IGOV INC., a Virginia corporation; and JOHN MARK SUHY, an individual,<br><br>*Defendants*. | Case No. 5:18-cv-07182-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT JOHN MARK SUHY'S EMERGENCY MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL WITHOUT BOND** |
| AND RELATED COUNTERCLAIMS. | |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. PROCEDURAL BACKGROUND .................................................................................... 2

III. RELEVANT FACTS RELATING TO SUHY'S FINANCIAL CONDITION ................. 3

IV. LEGAL STANDARD ........................................................................................................ 4

V. ARGUMENT ..................................................................................................................... 6

    A. The First and Second Factors Go Against Waiving the Bond Requirement .......... 6

    B. Suhy's Alleged Inability to Post a Bond or Satisfy the Judgment Weighs Heavily Against the Third *Dillon* Factor ................................................................ 7

    C. The Fourth *Dillon* Factor Weighs Against Waiving the Bond Requirement ......... 9

    D. The Fifth Factor Does Not Support the Waiver of the Bond Requirement ......... 10

    E. The Stated Grounds for Suhy's Appeal are Meritless and Further Support the Need for Him to Post a Bond ............................................................................. 10

        1. The Ninth Circuit Previously Affirmed that Suhy's Removal of the Commons Clause was Improper .............................................................. 10

        2. Suhy is Bound by Stipulated Facts that MPO Chose ONgDB Over Neo4j® EE Because It Could Avoid Paying a License Fee to Plaintiffs ..................................................................................................... 11

        3. Suhy Stipulated to Facts Supporting the Court's Determination of the Amount of Plaintiffs' Lost Licensing Fees ........................................ 12

    F. Any Alleged "Imbalance of Resources and Disproportionate Impact" is Inconsequential to a Potential Waiver of Rule 62(b)'s Bond Requirement ......... 12

    G. Not Requiring Suhy to Post a Bond Would Irreparably Harm Plaintiffs ............. 13

    H. There is No Public Interest Affected by Requiring Suhy to Post a Bond ............ 13

VI. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AngioScore, Inc. v. TriReme Medical, Inc.*,
  No. 12-CV-03393-YGR, 2015 WL 13387576 .............................................................. 5, 6, 7

*Aristocrat Techs. v. Int'l Game Tech.*,
  No. C06-03717 MJJ, 2008 WL 114985 (N.D. Cal. Jan. 10, 2008) ........................................ 6

*Block v. City of Los Angeles*,
  253 F.3d 410 (9th Cir.2001) ................................................................................................. 12

*Clark v. Hidden Valley Lake Ass'n*,
  No. 16-CV-02009-SI, 2018 WL 2412136 (N.D. Cal. May 29, 2018) ........................... 8, 9, 10

*Cotton ex rel. McClure v. City of Eureka*,
  860 F. Supp. 2d 999 (N.D. Cal. 2012) ........................................................................... 5, 7, 8

*Dillon v. City of Chicago*,
  866 F.2d 902 (7th Cir.1988) .......................................................................................... *passim*

*Erickson Prods. Inc. v. Kast*,
  No. 13-CV-05472-DMR, 2022 WL 698148 (N.D. Cal. Feb. 10, 2022) ............................... 8, 9

*Geddes v. United Fin. Grp.*,
  559 F.2d 557 (9th Cir. 1977) ................................................................................................... 9

*Hines v. California Pub. Utils. Comm'n*,
  No. C 07-04145 CW, 2010 WL 3565498 (N.D. Cal. Sept. 10, 2010) ................................. 5, 8

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
  No. 11-cv-3838-ODW, 2013 WL 361109 (C.D. Cal. Jan. 30, 2013) ...................................... 9

*Int'l Petroleum Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.*,
  115 F.4th 1202 (9th Cir. 2024) ......................................................................................... 10, 13

*Int'l Telemeter, Corp. v. Hamlin Int'l Corp.*,
  754 F.2d 1492 (9th Cir. 1985) .................................................................................................. 5

*Lowery v. Rhapsody Int'l, Inc.*,
  No. 16-CV-01135-JSW, 2022 WL 267442 (N.D. Cal. Jan. 28, 2022) ................................. 8, 9

*Max Sound Corp. v. Google LLC*,
  No. 5:14-CV-04412-EJD, 2019 WL 480544 (N.D. Cal. Feb. 7, 2019) ........................... *passim*

*N.L.R.B. v. Westphal*,
  859 F.2d 818 (9th Cir. 1988) ...................................................................................... 5, 12, 14

*Neo4j, Inc. v. PureThink*,
  LLC, No. 5:18-CV-07182-EJD, 2021 WL 2483778 (N.D. Cal. May 18, 2021),
  *aff'd*, No. 21-16029, 2022 WL 501120 (9th Cir. Feb. 18, 2022), *amended on
  denial of reh'g*, No. 21-16029, 2022 WL 781037 (9th Cir. Mar. 14, 2022) ........................... 4

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................................................. 13

*Popular Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*,
    600 F.2d 1189 (5th Cir. 1979) ..................................................................................................... 5

*Rachel v. Banana Republic, Inc.*,
    831 F.2d 1503 (9th Cir.1987) ................................................................................................ 5, 12

*Ram v. Infinity Select Ins.*,
    807 F. Supp. 2d 843 (N.D. Cal. 2011) ...................................................................................... 12

*Richardson v. United States*,
    841 F.2d 993 (9th Cir. 1988) ..................................................................................................... 11

*Sarver v. The Hurt Locker LLC*,
    No. 10-cv-09034-JHN, 2012 WL 12892147 (C.D. Cal. Feb. 2, 2012) ....................................... 9

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ..................................................................................................... 5

*United States v. Park Place Assoc.*,
    563 F.3d 907 (9th Cir. 2009) ..................................................................................................... 11

*Walnut Creek Manor, LLC v. Mayhew Ctr.*,
    LLC, No. C 07-5664 CW, 2010 WL 653561 (N.D. Cal. Feb. 22, 2010) .................................... 8

*Zoellner v. City of Arcata*,
    No. 3:18-CV-04471-JSC, 2024 WL 4700633 (N.D. Cal. Nov. 5, 2024) .................................... 5

**Statutes**

Cal. Bus. Prof. Code §§ 17200, *et seq.* ............................................................................................ 2

**Other Authorities**

17 U.S.C. 1202(b) ............................................................................................................................ 2

Federal Rules of Civil Procedure 62(a) ........................................................................................... 4

Federal Rule of Civil Procedure 62(b) .................................................................................... *passim*

Federal Rule of Civil Procedure 62(c) ............................................................................................ 6

Ninth Circuit Rule 36-3 .................................................................................................................. 11

# I. INTRODUCTION

The Emergency Motion filed by Defendant John Mark Suhy ("Suhy") is another attempt to frustrate efforts by Plaintiffs Neo4j Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden, collectively "Neo4j" or "Plaintiffs") to recoup the lost licensing revenue caused by Suhy's violations of the Lanham Act and the DMCA. During the pendency of this case, Suhy sold his house for which the proceeds remain unaccounted for. After the Court's summary judgment findings that Suhy violated the Lanham Act were affirmed by the Ninth Circuit in March 2022, Suhy sold intellectual property assets owned by him and iGov valued over $1.3 million to his current employer, Greystones Consulting Group, LLC ("Greystones"). Suhy also transferred iGov's outstanding government subcontracts over to Greystones, which he continued to provide services under as an employee of Greystones. Thus, Suhy's claim that he does not have the financial resources to post a bond is untenable, if not false.

Suhy's motion also amounts to forum shopping and an improper second bite of the apple. Suhy, a Virginia resident, previously filed a motion for a stay without posting a bond in the Virginia Circuit Court for Fairfax County, which was recently denied. Suhy raises identical arguments here – none of which meet the applicable legal standard under Federal Rule of Civil Procedure 62(b) ("Rule 62(b)") for imposing a stay of execution pending appeal without the required supersedeas bond. Courts in this District and the Ninth Circuit employ a five-factor test to determine whether to waive the bond requirement under this rule. Suhy's arguments based on equity, imbalance of resources, disproportionate impact and an alleged lack of prejudice to Plaintiffs are neither among nor address these five factors.

Conversely, Suhy's unsupported claims of financial hardship cut against the applicable five factors and amplify the need for him to post a supersedeas bond sufficient to secure Plaintiffs from further loss. Accordingly, the Court should deny Suhy's motion and order him to post a supersedeas bond in the amount of $843,043 should he wish to stay execution, which is equal to 1.25 times the amount of the Judgment, interest and costs, should he still wish to stay enforcement of the Judgment while his appeal is pending.

///

## II. PROCEDURAL BACKGROUND

On November 28, 2018, Neo4j USA filed suit against Defendants for violations of the Lanham Act and California's Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200, *et seq*. ("UCL"). These claims were primarily based on Defendants' infringement of the Neo4j Mark in promoting ONgDB software and false advertising in relation thereto. *See* ECF No. 1. Neo4j USA later amended its complaint to add Neo4j Sweden as a plaintiff and assert claims against Defendants for violations of Section 1202(b) of the DMCA.

On May 18, 2021, the Court granted Plaintiffs' motion for partial summary judgment in favor of Neo4j USA wherein it found Defendants liable for trademark infringement, false advertising and false designation of origin under the Lanham Act and for violating the UCL. ECF No. 118 ("First MSJ Order"). The Court also imposed a preliminary injunction against Defendants prohibiting further unlawful conduct. *Id.* Defendants immediately appealed the First MSJ Order. ECF No. 121. The Ninth Circuit heard the appeal on an expedited basis pursuant to its rules on appeals of preliminary injunctions and affirmed the Court's underlying rulings on liability in conjunction with the issuance of the preliminary injunction. ECF Nos. 140, 141.

On October 25, 2023, this Court granted a second motion for partial summary judgment in favor of Plaintiffs wherein it found Defendants liable for violating Section 1202(b) of the DMCA. ECF No. 216 ("Second MSJ Order"). The Court held a bench trial on November 14, 2023, and November 28, 2023, and heard oral arguments and evidence presented by both Parties. ECF Nos. 225, 229. The Court also received pre-trial and post-trial stipulations of fact, including the amount of lost licensing fees caused by Defendants' violations of the Lanham Act and DMCA. *See* ECF Nos. 227, 230, 234).

On July 22, 2024, the Court issued its Findings of Fact and Conclusions of Law (ECF No. 248) and a final judgment on August 15, 2024, wherein it awarded Plaintiffs $597,000 in actual damages plus $57,288 in prejudgment interest, less a stipulated $26,000 deduction, and a permanent injunction (ECF No. 251, "the Judgment"). The Clerk of the Court subsequently awarded Plaintiffs $46,146.02 in costs that Suhy did not contest. ECF No. 257.

///

On September 5, 2024, Plaintiffs domesticated the judgment in Virginia where Defendants reside and began collection efforts. Three days later, Suhy appealed the Judgment to the United States Court of Appeals for the Ninth Circuit. ECF No. 255.

On October 15, 2024, Plaintiffs served a notice of garnishment Suhy's current employer, Greystones. *See* ECF No. 263-7. Greystones's response is due on December 13, 2024. Plaintiffs also served Suhy with debtor interrogatories to determine location, type and value of all monies and assets owned by Suhy. His responses are due on January 17, 2025.

On October 23, 2024, Suhy filed a motion to stay enforcement of the Judgment without a bond with the Circuit Court of Fairfax County in Virginia. Declaration of Jeffrey M. Ratinoff in Support of Plaintiffs' Opposition to Defendants' Motion to Stay ("Ratinoff Decl."), Ex. 1. Suhy raised identical arguments in that motion that he is asserting before this Court. *See id.* On November 8, 2024, that court denied Suhy's motion. *Id.*, Ex. 2.

Between November 6 and November 27, 2024, the parties engaged in a mediation process through the Ninth Circuit's program. *See* Ratinoff Decl., Exs. 3-4. Despite Plaintiffs' best efforts, mediation was unsuccessful. Suhy has not posted a supersedeas bond with the Court and now seeks to have this Court stay enforcement of the Judgment pending appeal without posting one.

### III.     RELEVANT FACTS RELATING TO SUHY'S FINANCIAL CONDITION

At the time Plaintiffs filed suit against Defendants, Suhy owned real property located at 4202 Adrienne Drive, Alexandria, Virginia. Ratinoff Decl., Ex. 5. On January 28, 2020, Suhy purchased real property located at 8814 Danewood Drive, Alexandria, Virginia for $644,000. *Id.*, Ex. 6. That property was last valued at $798,150 by the tax assessor in 2024. *Id.*, Ex. 7. Suhy then sold the Adrienne Drive property for $600,000 on May 28, 2020. *Id.*, Ex. 5. Suhy fails to explain what happened to the proceeds from that sale or why the Danewood Drive property cannot be used to satisfy the Judgment.

During the pendency of this litigation, Suhy generated $1,316,000 in revenue supporting the IRS's use of ONgDB. ECF No. 234 at ¶ 68. ASR Analytics also paid Suhy and iGov a total of $246,082.55 for supporting ONgDB. ECF No. 234 at ¶ 71. Suhy does not account for the disposition of any of this revenue during this litigation.

1   After this Court found Suhy liable for violating the Lanham Act, he transferred and otherwise obfuscated money and assets that could satisfy the Judgment. Between May and July 2022, Suhy shut down iGov and hollowed out that entity after the Ninth Circuit affirmed that Suhy violated the Lanham Act. In May 2022, Suhy went to work for Greystones, which took over iGov's contracts with the IRS and ASR Analytics, and all the work Suhy performed under those contracts thereafter was for the benefit of Greystones. Ratinoff Decl., Ex. 8 [Suhy Depo Vol. 2] at 343:12-16, 345:11-346:1, 347:17-349:25 (employed by Greystones in May 2022); ECF No. 210, Ex. 7 [Pollard Depo] at 66:8-68:25, 167:11-168:21 (transfer of IRS contracts); ECF No. 210, Ex. 7 [Pollard Depo] at 160:5-162:18, 163:23-167:10, 180:12-183:5, 185:2-20, 186:5-10, 206:24-207:12 (transfer of ASR contracts); ECF No. 210, Ex. 6 [Stavrianos Depo] at 115:4-116:16, 173:24-174:21 (transfer of ASR contracts); Ratinoff Decl., Ex. 8 [Suhy Depo Vol. 2] at 284:24-286:10, 292:14-293:12 (transfer of ASR contracts). Suhy also expressly promised Greystones that he "only would be dedicated to them" and would no longer pursue work on behalf of iGov. Ratinoff Decl., Ex. 8 [Suhy Depo Vol. 2] at 349:21-25.

Between May and July 2022, Suhy sold off intellectual property owned by him to Greystones for $1.3 million. ECF No. 210, Ex. 7 [Pollard Depo] at 169:8-170:8-11, 171:22-172:21. This too appears to bear badges of fraud because this occurred during the litigation, after the 9th Circuit affirmed this Court's findings that Suhy violated the Lanham Act. *See Neo4j, Inc. v. PureThink*, LLC, No. 5:18-CV-07182-EJD, 2021 WL 2483778, at *1 (N.D. Cal. May 18, 2021), *aff'd*, No. 21-16029, 2022 WL 501120 (9th Cir. Feb. 18, 2022), *amended on denial of reh'g*, No. 21-16029, 2022 WL 781037 (9th Cir. Mar. 14, 2022). Suhy fails to explain what happened to the proceeds from this sale or why they cannot be used to post a bond or otherwise satisfy the Judgment.

Finally, Suhy effectively shut down PureThink on January 31, 2021, after he failed to pay the annual registration fee to the Virginia Secretary of State. Ratinoff Decl., Ex. 9. Suhy has not explained the disposition of any assets owned by PureThink.

**IV.   LEGAL STANDARD**

Federal Rules of Civil Procedure 62(a) provides a 30-day automatic stay on executing and enforcing a judgment unless the court orders otherwise. Fed. R. Civ. P. 62(a). If a party appeals,

4
PLAINTIFFS' OPPOSITION TO SUHY'S EMERGENCY MOTION TO STAY     Case No. 5:18-cv-07182-EJD

1 then it "may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n. 1 (9th Cir.1987); *accord N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). Consequently, a supersedeas bond should be sufficient to pay the judgment plus interest, costs, and any other relief that the appellate court may award. *See Cotton ex rel. McClure v. City of Eureka*, 860 F. Supp. 2d 999, 1027-28 (N.D. Cal. 2012).

The trial court, however, has the inherent discretion to stay execution of a judgment without security or with an alternate form of security. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990); *Int'l Telemeter, Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985). The moving party carries the burden to "objectively demonstrate" that relief from the bond requirement is justified. *Popular Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) (cited by Suhy); *accord Hines v. California Pub. Utils. Comm'n*, No. C 07-04145 CW, 2010 WL 3565498, at *1 (N.D. Cal. Sept. 10, 2010) (citing same in denying motion for stay pending appeal without posting a supersedeas bond); *Zoellner v. City of Arcata*, No. 3:18-CV-04471-JSC, 2024 WL 4700633, at *2 (N.D. Cal. Nov. 5, 2024) (same).

When analyzing whether a bond waiver is justified, courts in the Northern District of California and the Ninth Circuit consider the following five factors enumerated in *Dillon v. City of Chicago*, 866 F.2d 902, 904–905 (7th Cir.1988):

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Max Sound Corp. v. Google LLC*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2 (N.D. Cal. Feb. 7, 2019) (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904–905 (7th Cir. 1988); *accord AngioScore, Inc. v. TriReme Medical, Inc.*, No. 12-CV-03393-YGR, 2015 WL 13387576, at *2

(N.D. Cal. Oct. 23, 2015) (citing *Dillion*).[1]

Suhy does not substantively address any of the five *Dillon* factors.[2] Rather, Suhy attempts to satisfy the factors used to determine the waiver of the bond normally required to stay a preliminary injunction pending appeal. *See* Motion at 7:18-17:13. As previously held by this Court, "[t]hat is not correct. *Max Sound Corp.*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2 (courts in the Ninth Circuit and in this District "have held that the preliminary injunction test specifically applies to a stay of injunctive relief pursuant to Federal Rule of Civil Procedure 62(c), and is irrelevant in a case involving a monetary judgment") (internal quotations and citation omitted). To the extent that Suhy's arguments can be applied to the *Dillon* factors, as detailed below, such arguments go against waiving the supersedeas bond requirement and Suhy fails to carry his burden.

## V.  ARGUMENT

### A.  The First and Second Factors Go Against Waiving the Bond Requirement

Suhy offers no argument or evidence in relation to the first and second *Dillon* factors. However, both the potential complexity of the collection process and the possible amount of time required to obtain a judgment after any affirmance on appeal make clear he cannot establish either *Dillon* factor in his favor.

As detailed above, Suhy transferred assets generated from the sale of intellectual property

---

[1] Without citing to any supporting authority, Suhy asserts that "Courts have consistently held that requiring a bond is unnecessary where the defendant demonstrates limited financial resources or where enforcement would impose severe hardship." Motion at 7:18-8:2. This is an incorrect statement of the law as reflected by the application of the *Dillon* factors by this Court and other courts in the Ninth Circuit. As discussed below, Suhy's alleged limited financial resources is the primary reason why courts require the imposition of a bond as a condition for a stay pending appeal.

[2] None of the out-of-circuit authorities cited by Suhy supporting his "equitable grounds" arguments contradict or negate the application of the *Dillon* factors by Courts in the Ninth Circuit and this District. *See* Motion at 6:8-7:8. Suhy's reliance on *Aristocrat Techs. v. Int'l Game Tech.*, No. C06-03717 MJJ, 2008 WL 114985 (N.D. Cal. Jan. 10, 2008) is also misplaced as the court ***required*** the posting of supersedeas bond in excess of the judgment to stay its execution pending appeal. *See* Motion at 7:10-16.

valued at $1.3 million during the pendency of the litigation. As a result, Neo4j USA will be required to engage in additional legal proceedings to undue that fraudulent transaction. Likewise, Neo4j USA will be required to engage in a lengthy process of tracing the proceeds of Suhy's sale of the Adrienne Drive property and potentially having to undo any subsequent fraudulent transfer or hiding of those proceeds.

Lastly, Suhy's alleged inability to secure a bond or satisfy the judgment "suggest the collection process may be arduous and the availability of sufficient funds in future years… is questionable." *AngioScore, Inc.*, 2015 WL 13387576, at *2 (defendants' claims of financial hardship go against the first and second *Dillon* factors in considering waiving the bond requirement). Consequently, the first and second *Dillon* factors weigh against waiving the supersedeas bond requirement.

### B.  Suhy's Alleged Inability to Post a Bond or Satisfy the Judgment Weighs Heavily Against the Third *Dillon* Factor

Suhy's "ability to pay the judgment is but one of many factors the Court is to consider in connection with a request to waive a supersedeas bond." *See Cotton*, 860 F. Supp. 2d at 1029. In this regard, Suhy argues that execution of the Court's judgment will impose an undue hardship upon him, including unspecified "financial circumstances" that would lead to bankruptcy and "the potential loss of employment due to wage garnishment and the resulting impact on Defendant's government security clearance."[3]  Motion at 7:20-8:2, 9:19-10:14. Suhy offers no objective evidence to support these assertions.

Instead, Suhy submitted a declaration that conclusory states that the enforcement of the judgment, including the garnishment of his wages, would "significantly impact" his ability to cover his family's living expenses. ECF No. 263-5 at ¶ 4. Suhy does not provide evidence of what amount of money is required to meet those financial obligations, what cash he has on hand, what his spouse earns or could earn as part-time versus full-time employee, or what assets he owns and other

---

[3] Suhy's characterization of Plaintiffs' enforcement efforts as "aggressive legal actions" and "legal overreach" is wrong. *See* Motion at 3:4-10. Wage garnishment is a routine method of enforcing a judgment and is expressly authorized by statute.

1  information that would allow an objective determination of whether the garnishment of his wages
2  would require him to seek bankruptcy protection. Suhy's failure to offer such evidence alone
3  warrants the denial of his motion. *Hines*, 2010 WL 3565498, at *1 (denying motion to stay
4  judgment pending an appeal without posting a bond because defendant failed to offer evidence
5  concerning her financial condition that would establish the claimed undue hardship); *Walnut Creek*
6  *Manor, LLC v. Mayhew Ctr.*, LLC, No. C 07-5664 CW, 2010 WL 653561, at *7 (N.D. Cal. Feb.
7  22, 2010) (same); *see also Cotton*, 860 F. Supp. 2d at 1029 (denying motion for stay and waiver of
8  supersedeas bond where defendants only addressed one of the five *Dillon* factors in arguing
9  financial condition).

More importantly, Suhy's claim of financial hardship strongly weighs against the third factor. *See Max Sound Corp*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2 (finding that party's "financial insecurity weighs in favor of requiring a bond or security" and denying motion to stay judgment without a bond); *see also Lowery v. Rhapsody Int'l, Inc.*, No. 16-CV-01135-JSW, 2022 WL 267442, at *2 (N.D. Cal. Jan. 28, 2022) (Defendant's claim of undue financial hardship "directly undermines the Court's confidence in Defendant's ultimate ability to pay the judgment."); *Clark*, 2018 WL 2412136, at *3 ("the Court's lack of confidence that defendant has funds available to pay the judgment weighs against waiver").  Judge Ryu's denial of motion based on similar facts in *Erickson Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2022 WL 698148, at *4 (N.D. Cal. Feb. 10, 2022) is particularly instructive here given the factual similarities.

In *Erickson,* a *pro se* defendant, Kast, filed a motion to stay the proceedings and enforcement of a $450,000 judgment for copyright infringement without posting a bond pursuant to Fed. R. Civ. P. 62(b).  2022 WL 698148, at *1, *3.  Kast argued that he satisfied the *Dillon* factors on the grounds, *inter alia*, that Kast's only income was from social security income, the lawsuit "placed a stigma on his professional licenses preventing him from earning a living," and was unable to obtain a bond "because of his precarious financial condition and because [he] cannot earn a living"; and Kast was a severe financial burden to his fiancé to whom he owed more than $1 million.  Judge Ryu found that

> Kast's arguments do not support waiver of the bond requirement; to the

> contrary, his assertions that his financial condition is "precarious" and that he is unable to "earn a living" weigh in favor of requiring a bond, since "[t]he purpose of the supersedeas bond is to protect the prevailing party from the risk of a later uncollectible judgment."

*Erickson*, 2022 WL 698148, at *4 (N.D. Cal. Feb. 10, 2022) (quoting *Max Sound Corp.*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2).

Here, Suhy similarly argues without waiving the bond requirement, he will suffer financial hardship, a potential loss of employment and will impose a financial burden on his family. *See* ECF No. 263-at 7:20-8:2, 9:19-10:14. Just as the defendant in *Erickson,* his claims **reinforce** the need to post a supersedeas bond to protect Plaintiffs' interest in the eventual collection of the judgment. *See, e.g., Inhale, Inc. v. Starbuzz Tobacco, Inc*., No. 11-cv-3838-ODW, 2013 WL 361109, at *2 (C.D. Cal. Jan. 30, 2013) ("The fact that Inhale 'does not have sufficient liquid assets' to cover the award of attorneys' fees and costs is precisely why it must post a supersedeas bond.");

As this Court previously recognized in *Max Sound Corp.*, it cannot put Plaintiffs' right to enforce the Judgment "at risk solely on the basis of [Suhy's] ability to pay" because "it may be an abuse of discretion to do so." 2019 WL 480544, at *2 (internal quotations and citations omitted); *accord Sarver v. The Hurt Locker LLC*, No. 10-cv-09034-JHN, 2012 WL 12892147, at *3 (C.D. Cal. Feb. 2, 2012); *see also Geddes v. United Fin. Grp*., 559 F.2d 557, 561 (9th Cir. 1977) (finding that the trial court abused its discretion in staying an execution of judgment based on the ability to pay). An unsecured stay would also prevent Plaintiffs from receiving responses to the outstanding debtor interrogatories and discovering all monies and assets in Suhy's possession, while making it much easier for him to squander or hide them.

### C. The Fourth *Dillon* Factor Weighs Against Waiving the Bond Requirement

Suhy also cannot satisfy the fourth *Dillon* factor for reasons similar to the third factor. Suhy's alleged "'financial frailty' indicates that a bond is necessary to protect [Plaintiffs'] interests, and that it will not be a waste of money." *Clark v. Hidden Valley Lake Ass'n*, No. 16-CV-02009-SI, 2018 WL 2412136, at *3 (N.D. Cal. May 29, 2018) (denying defendant's motion to stay enforcement of the judgment without posting a supersedeas bond) at *3; *accord Lowery*, 2022 WL 267442, at *2 (finding that defendant's claim of undue financial hardship "means that [it's] ability

to pay the final judgment is not so plain as to make a bond a waste of money").

### D. The Fifth Factor Does Not Support the Waiver of the Bond Requirement

Finally, Suhy has not identified any creditors (other than Plaintiffs) that the requirement to post a bond would place in an insecure position. *See* ECF No. 263-5 at ¶ 4. Nor has he explained how requiring a supersedeas bond would affect those other unnamed creditors even if they did exist. As such, the fifth *Dillon* factor does not support Suhy's request for a stay without first posting a supersedeas bond. *Clark*, 2018 WL 2412136, at *3 (finding that the fifth *Dillon* factor did not support a waiver because defendant failed to identify any other creditors or explain how requiring a bond would affect those creditors).

### E. The Stated Grounds for Suhy's Appeal are Meritless and Further Support the Need for Him to Post a Bond

Suhy argues that the Court should waive the bond requirement because he is likely to succeed on his appeal. This is based on the following "critical errors" that Suhy claims were made by this Court: (1) Neo4j Sweden's addition of the Commons Clause to the Neo4j Sweden Software License violated the terms of the AGPLv3; (2) a factual error in determining "that the removal of the Commons Clause allowed ONgDB to be offered for free, enabling the MPO to choose ONgDB over Neo4j EE;" and (3) the calculation of the licensing fee the MPO would have paid for Neo4j EE was speculative. While the merits of Suhy's appeal are not relevant to the five *Dillon* factors, he is unlikely to succeed on any of these stated grounds. As a result, it is even more important that any stay of execution be conditioned on Suhy posting a sufficient bond to protect Plaintiffs. *See Int'l Petroleum Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.*, 115 F.4th 1202, 1213 (9th Cir. 2024) (recognizing a bond sufficient to protect the prevailing party from a later uncollectible judgment is "especially" important "where 'the chances of success' on appeal are 'dim'…")

#### 1. The Ninth Circuit Previously Affirmed that Suhy's Removal of the Commons Clause was Improper

Suhy's primary grounds for appeal is that this Court's interpretation of Sections 7 and 10 of the Neo4j Sweden Software License (and the AGPL upon which it was based), which were at the heart of the parties' dispute as to whether Suhy's removal of the Commons Clause from that

license, was erroneous.[4]  *See* ECF No. 118 at 24:7-25:19; *see also* ECF No. 216 at 20:17-23:6. However, the Ninth Circuit previously affirmed this Court's determination that these contractual provisions prohibited a licensee from imposing further restrictions, but do not prohibit Neo4j Sweden as the copyright holder and licensor from doing so.  *See* ECF No. 140.

Suhy cannot succeed because the law of case doctrine precludes him from again appealing on these grounds.  *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."); *accord United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").  To be sure, the Ninth Circuit expressly affirmed that "Defendants' representation that ONgDB is a 'free and open-source' version of Neo4j® EE was literally false, because Section 7 of the Sweden Software License only permits a downstream licensee to remove 'further restrictions' added by an upstream licensee to the original work." ECF No. 140 at 3.  The Ninth Circuit removed all doubt as to the conclusiveness of its decision by indicating that the opinion was precedential for the purpose of the doctrine of law of the case "as provided by Ninth Circuit Rule 36-3." *See id.* at 1.

**2.    Suhy is Bound by Stipulated Facts that MPO Chose ONgDB Over Neo4j® EE Because It Could Avoid Paying a License Fee to Plaintiffs**

Suhy's planned argument on appeal that this Court committed a factual error in determining "that the removal of the Commons Clause allowed ONgDB to be offered for free, enabling the MPO to choose ONgDB over Neo4j EE" will also fail based on the law of the case.  In addition, Suhy *stipulated* to the fact that "Defendants' removal of the Commons Clause from the license governing ONgDB enabled Next Century and the MPO to use ONgDB for free rather than pay for a commercial license to Neo4j® EE."  ECF No. 234 at ¶ 7. Suhy further stipulated to facts

---

[4] Suhy also argues that his appeal is "meritorious" because the Free Software Foundation (FSF) as the copyright holder of the AGPL is now supporting Suhy's interpretation that the Court previously rejected. Motion at 7:4-8:22. Suhy then admits that FSF's position "is not legally binding." Motion at 8:13-14. Thus, Suhy concedes that the FSF's view has no bearing on the merits of his appeal.

establishing that the MPO required the enterprise features found in both Neo4j® EE and ONgDB, and chose ONgDB over Neo4j® EE, in part, on the belief that it was a "drop-in replacement" and "open source" version of Neo4j® EE. ECF No. 227 at ¶¶ 111-118. Suhy is bound by these stipulated facts, and therefore cannot now argue on appeal that the Court somehow committed a factual error in determining that Suhy's infringement of the Neo4j Mark and false advertising caused Plaintiffs' damages with respect to the MPO. *See Block v. City of Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir.2001) ("[a] party is normally bound by its stipulation of facts"); *accord Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 855 (N.D. Cal. 2011).

### 3. Suhy Stipulated to Facts Supporting the Court's Determination of the Amount of Plaintiffs' Lost Licensing Fees

Suhy's intent to argue that the Court "made speculative guesses about what the MPO might have paid for Neo4j EE, with no factual support for these figures" on appeal is also destined to fail. *See* Motion at 13:8-10. After Neo4j presented uncontested expert testimony concerning the amount of Plaintiffs' damages, Suhy stipulated to facts establishing that Neo4j USA's lost profits resulting from the MPO's use of ONgDB over Neo4j® EE ranged between $1,786,542 and 2,370,598. *See* ECF No. 234 at ¶¶ 21-24; *see also* ECF No. 248 at ¶ 37 (citing same). Suhy is bound by such stipulated facts, and thus cannot now argue that the Court erred in awarding a lower amount in damages to Plaintiffs. *See Block*, 253 F.3d at 419 fn. 2; *Ram*, 807 F. Supp. 2d at 855.

## F. Any Alleged "Imbalance of Resources and Disproportionate Impact" is Inconsequential to a Potential Waiver of Rule 62(b)'s Bond Requirement

Without citing to any evidentiary support or controlling legal authority, Suhy argues that because Neo4j USA is "a billion-dollar company" the amount of the judgment is "negligible for Neo4j" while a significant financial burden for Suhy. *See* Motion at 14:17-15:8. This alleged "imbalance of resources and disproportionate impact" is irrelevant to determining whether the Court should waive the supersedeas bond requirement under Rule 62(b). The Ninth Circuit has made clear that "[t]he purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required." *Westphal*, 859 F.2d at 819; *accord Rachel*, 831 F.2d at 1505 n. 1. As detailed above, Suhy's financial

condition reinforces the need to post a bond sufficient to pay the judgment, interest and costs awarded to effectuate any stay during appeal—irrespective of Plaintiffs' financial condition.

### G. Not Requiring Suhy to Post a Bond Would Irreparably Harm Plaintiffs

Suhy asserts that there would be minimal prejudice to Neo4j because the judgment amount is immaterial in the context of Neo4j's overall financial position. Aside from being irrelevant, Suhy offers no evidence of Neo4j USA and Neo4j Sweden's respective financial positions. Even if Plaintiffs were "billion-dollar" corporations, $600,000 represents a sizeable expenditure.

Contrary to Suhy, Plaintiffs will suffer irreparable harm if the Court were to stay enforcement without requiring him to post a sufficient bond. Since Suhy's likelihood of success on appeal is "dim," Suhy has "every incentive to squander or conceal assets while his appeal remain[s] pending." *Int'l Petroleum Prod.*, 115 F.4th at 1213. Indeed, Suhy has already transferred assets valued at $1.3 million to his current employer, Greystones. After Suhy began working for Greystones, ASR Analytics terminated several subcontracts with Suhy and iGov and reassigned them to Greystones, which Suhy continues to perform work under. Thus, it is highly likely that Suhy will further obfuscate his assets. Suhy also ignores the millions of dollars in attorneys' fees and costs Plaintiffs have expended in obtaining injunctive relief to prevent Suhy from engaging in further violations of the Lanham Act and DMCA, and those additional fees and costs it will need to defend responding to Suhy's meritless appeal. Accordingly, the imposition of a stay without first requiring Suhy to post a sufficient supersedeas bond will severely prejudice Plaintiffs.

### H. There is No Public Interest Affected by Requiring Suhy to Post a Bond

Suhy lastly argues that there is a strong public interest in granting the stay without requiring a bond because this case allegedly "will have far-reaching implications for the open-source software community" and that the FSF has a vested policy interest in the outcome of Suhy's appeal of this Court's already-affirmed interpretation of the Neo4j Sweden Software License. Such considerations are irrelevant to determining whether a waiver the supersedeas bond requirement is appropriate under Rule 62(b).[5]

---

[5] Suhy mistakenly relies upon *Nken v. Holder*, 556 U.S. 418, 433 (2009) to argue that the Court should consider the broader public interest when considering a stay. This case addressed a stay of

Moreover, the time for FSF to have voiced its policy concerns has long since passed. After this Court first determined that Sections 7 and 10 of the Neo4j Sweden Software License precluded Suhy from removing the Commons Clause on November 13, 2020, Suhy pleaded with the FSF to intervene and even offered to pay for their attorneys' fees. *See* ECF No. at 241-67 [Trial Ex. 147] and Trial Tr. at 376:4-378:5. The FSF did not take Suhy up on his offer at that time. Three years later, after the close of discovery and on the eve of trial, Suhy colluded with the FSF to manufacture the letter that he is now relying on in the present motion. *See* Trial Tr. at 192:2-202:9. Notably, the Court previously excluded this same letter from evidence at trial as irrelevant and inadmissible hearsay. *See id.*

Finally, there is a strong public interest embodied in Rule 62(b) ensuring that parties who obtain monetary judgments and their ability to enforce them are not jeopardized by a defendants' appeal thereof. *Westphal*, 859 F.2d at 819; *accord Max Sound Corp.*, No. 5:14-CV-04412-EJD, 2019 WL 480544, at *2 (recognizing that "[t]he purpose of the supersedeas bond is to 'protect the prevailing party from the risk of a later uncollectible judgment.'") (citing same).

**VI.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectively request that the Court deny Suhy's request for a stay of execution of the Judgment pending appeal and waiving the bond requirement. Plaintiffs also respectfully request that the Court condition a stay on Suhy posting a supersedeas bond in the amount of $843,043.00, which is roughly equal to 1.25 times the amount of the judgment, interest and costs.

Dated: December 9, 2024

SPENCER FANE LLP

By: */s/ Jeffrey M. Ratinoff*
    John V. Picone III
    Jeffrey M. Ratinoff
    Attorneys for Plaintiffs and Counter-Defendants
    NEO4J, INC. and NEO4J SWEDEN AB

---

an immigration removal order pending appeal, and is not applicable to a stay of execution of a civil monetary judgment. It is worth noting, however, the Supreme Court emphasized that "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433 (internal quotations and citation omitted).